14th amendments)--thereby depriving BRADSHAW of life, liberty and property. Defendant

CASTRO acted recklessly, deliberately, maliciously and with intent and foreknowledge to

bring hurt, damage and injury on BRADSHAW. BRADSHAW's character, professional

reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed,

slandered, maligned and infringed upon by the actions of the defendants. BRADSHAW

accordingly suffered much pain and distress (mentally, emotionally and physically) and

expended much money, personal funds and recourses and efforts in an attempt to obtain

redress and to correct the injury. The remedy is for the court to order restitution, removal of

the illegally gained CNMI judgment and payment of damages to the plaintiff.

### FIFTH CLAIM-- Violations of Civil Rights (42 USC 1983) and Court Rules

189. Plaintiff BRADSHAW herein by reference paragraph 1-188 hereinabove alleged

as if set forth here in full.

190. Defendants MANGLONA and BELLAS (along with Judge Pro Tem Pedro M.

Atalig, now deceased), in the Supreme Court review in Mar.-Sep. 2002, were all exposed to

the violations of court rules, the basic trial results and also BRADSHAW's letter of Jul. 14,

1999 all of which were clear enough that absolute confusion and pandemonium came out of

the trial of 96-1320 in judge CASTRO's courtroom.

191. BRADSHAW was a defendant in the appeal of SC 96-1320 to the Supreme

Court; yet BRADSHAW was never notified of the hearing by the AG or the court, was not

present in court, had no attorney present (as the AG had withdrawn from representing

BRADSHAW six days before the trial), and had no opportunity in court to defend himself;

thus, violating BRADSHAW's civil rights under the US Constitution.

192.  Despite having information from BRADSHAW (in BRADSHAW's letter of Jul. 14, 1999 which was before the court) and totally contradictory documents filed by BISOM, defendants MANGLONA and BELLAS upheld the trial court's actions and also found BRADSHAW guilty--thus denying BRADSHAW due process and his day in court.

193.  Like CASTRO used certain remarks in the CNMI Indemnification Act, MANGLONA and BELLAS followed the established precedent to deny BRADSHAW any hope of obtaining redress/restitution for the fraud lodged against him in the CNMI courts.

194.  The CNMI Supreme Court used provisions in the Indemnification Act to deny BRADSHAW any restitution on the basis that BRADSHAW failed to request legal assistance and indemnification "five days" before the answer on the complaint was filed in court (as cited in the Supreme Court decision and in AG BROWN's letter of Feb. 15, 2005, at Exhibit A). Since "no answer" was ever filed in court on SC 96-1320 by the AG or by BRADSHAW (thus, allowing the default judgment), this provision is totally irrelevant and immaterial.

195.  In any case, it was the AG who had illegally and improperly accepted service on 96-1320 and went into court and allowed BISOM to introduce fraudulent documents into court files.  If there was a need for an answer to the complaint (per the Indemnification Act), the legal duty for filing that answer lay with the AG and not BRADSHAW (who knew nothing about what was happening in court and who relied upon the AG and courts for justice).

196.  Along with the AG failure to properly notify/defend BRADSHAW in court, the judges in both the SC and the Supreme Court watched the whole proceedings with obvious knowledge and understanding of what was happening; yet did nothing to correct the injustice going on and lack of due process in their courtrooms.  The AG and defendants CASTRO,

MANGLONA and BELLAS all were participants in a de facto conspiratorial operation to deprive BRADSHAW his rights under the US Constitution.

197. Clearly defendants MANGLONA and BELLAS read and must have understood the contents of BRADSHAW's letter of Jul. 14, 1999, which was before the court. All of this indicates a furtherance of a conspiracy by the AG and defendant CASTRO to place the monetary losses in 96-1320 on BRADSHAW and to deprive him of his due process and his property and rights under the US Constitution.

198. Defendants MANGLONA and BELLAS, in their review, were in a position to see and understand completely what was happening. Instead of resolving the fraud and conspiracy before them, they joined in in a furtherance of the de facto conspiracy to forever prohibit BRADSHAW from having any restitution of his claims in the CNMI.

199. Though finding repeated illustrations of mistakes and mistaken actions, a conflict of interest between the AG and BRADSHAW, and possible violations of the Bar Association ethics rules by the AG, the Supreme Court judges in their decision found that no attorney-client relationship existed between the AG and BRADSHAW and that BRADSHAW was not entitled to indemnification since no representation and/or indemnification was requested.

200. As was true in the SC case, the only AG evidence supporting its non representation and refusal to allow indemnification decisions was the Jul. 14, 1999 letter where the Supreme Court justices agreed with the trial court that it should not be admitted. In other words, the Supreme Court appears to have used the non-admitted Jul. 14, 1999 letter in its decision as it was the only evidence available.

201.  The defendants MANGLONA and BELLAS likewise denied BRADSHAW an opportunity to be heard in court; denied BRADSHAW due process and equal protection of the law; injured plaintiff BRADSHAW; and violated BRADSHAW's basic civil rights under 42 USC 1983 and rights and benefits under the US Constitution.

202.  Defendants MANGLONA and BELLAS' actions and omissions have involved discrimination against BRADSHAW (who was in the US and not domiciled or present in the CNMI to defend himself) and resulted in a defamation of BRADSHAW's character/reputation as their decision received wide publicity.  Defendants MANGLONA and BELLAS were charged with an affirmative duty to prevent the violation of US constitutional rights in their court.  Defendants MANGLONA and BELLAS maliciously and irresponsibly failed in this duty.

203.  Thus, defendants MANGLONA and BELLAS acted in a de facto conspiracy with defendant CASTRO and a person(s) in the AG's office to deliberately and maliciously violate BRADSHAW's rights under the US Constitution and to defraud BRADSHAW and deny him of any opportunity to be reimbursed or protected by the Indemnification Act.

204.  The actions of the CNMI Supreme Court judges seem to have involved a conspiratorial action involving intentional concealment of the fraud imposed on BRADSHAW to keep BRADSHAW ignorant of the proceedings in court and the violation of his rights by the AG and Judges.  The issue of concealment of fraud seems to have prompted MANGLONA and BELLAS to take no action to notify BRADSHAW of the hearing in their court.

205.  Defendants MANGLONA and BELLAS misused and abused their Supreme Court power in  the 96-1320 appeal to aid, abet, allow, promote, join-in and cover-up the commission of fraud and conspiracy in the CNMI courts and deny plaintiff BRADSHAW of his

rights, property and liberty under 42 USC 1983 and the US Constitution.

206. The actions of the CNMI and its agent judges MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order restitution, removal of the illegally gained judgment and payment of damages to plaintiff.

## SIXTH  CLAIM--Civil  Rights  Violations

### (Civil  Rights  Violations  of  the  Civil  Rights  Act  of  1870)

207.  Plaintiff BRADSHAW herein by reference paragraph 1-206 hereinabove alleged as if set forth here in full.

208.  Defendant CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS each and collectively failed to afford BRADSHAW equal rights under the law in their actions to impose an illegal judgment of $139,000 on BRADSHAW without any recourse for reimbursement or restitution from the CNMI government.  The actions of the defendant CNMI and its agents denied BRADSHAW equal rights under the law and clearly violated the Civil Rights Act of 1870.

209. The actions of defendants in violating the Civil Rights Act of 1870 produced a cause of action, pursuant to which both legal and equitable remedies may be had, including compensatory and under certain circumstances, punitive damages (14A C.J.S. Section 226). This remedy is separate, distinct and independent from other civil rights remedies (ibid.).

210. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order restitution, removal of the illegally gained CNMI judgment and payment of damages to the plaintiff.

## SEVENTH CLAIM--Civil Rights Violations

### (Civil Rights Violations of the Civil Rights Act of 1871)

211.  Plaintiff BRADSHAW herein by reference paragraph 1-210 hereinabove alleged as if set forth here in full.

212.  The actions and omissions of the CNMI and its agents FORELLI, BUSH, CASTRO and SOSEBEE, before Mar 2000 and the actions and inactions of the CNMI and its

agents CLAYTON, MANGLONA, BELLAS and BROWN since Mar. 2000 and Sep. 2002 to address the unconstitutional and illegal actions of the CNMI and its agents in their actions of injustice and damage and hurt put on BRADSHAW results in the constitutional deprivations to BRADSHAW because there has been a failure to act when there has been a duty to act to prevent the deprivations, per the Civil Rights Act of 1871 (14 C.J.S. section 35).

213.  While CNMI government officials since Feb 2000 have clothed themselves under the cloak of alleged color of law, the reality is that they have continued to deny BRADSHAW his rights and benefits under the U. S. Constitution.

214. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order restitution, removal of the illegally gained CNMI judgment and payment of damages to the plaintiff.

**EIGHTH CLAIM--Civil Rights Violations (42 USC section 1981 and 1983) and Breach of CNMI Employment Contract With BRADSHAW**

215.  Plaintiff BRADSHAW herein by reference paragraph 1-214 hereinabove alleged as if set forth here in full.

216.  On being appointed Temporary Public Auditor of the CNMI, BRADSHAW was well aware of the CNMI Indemnification Act designed to protect CNMI employees and officials from monetary damages from their work and the availability of CNMI legal assistance in actions brought against him in the performance of his duties.  This act and its benefits becomes a part and parcel of the contract between the employee/official/officer and the CNMI.  Even if not stated in writing, it is manifestly present as an implied contractual obligation of the CNMI to all of its employees, officials and officers.

217.  Plaintiff BRADSHAW was covered under these contractual obligations of the CNMI as was and is true with other officials/officers/employees.  In denying BRADSHAW this entitlement, defendant CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS breached this contract between the CNMI and BRADSHAW by their actions and omissions.

218.  The CNMI Indemnification Act is commonly used to protect present and former government officials.  Yet, in SC 96-1320 and its appeal, CNMI court judges acted in a deliberate and malicious discriminatory fashion against BRADSHAW who was in the continental US to deny BRADSHAW any option of receiving any of the benefits of the Indemnification Act or of simply fair play and justice in being covered for monetary losses and expenses as a former official of the CNMI government--thereby violating the US Constitution, the equal protection and due process concepts.

219. The intent of the Indemnification Act clearly was not designed to make possible the nullification of the benefits of the Act because of the gross incompetence, malpractice or fraud and conspiracy on the part of the CNMI and its agents.

220. Defendants MANGLONA and BELLAS never really addressed the question of whether service was ever performed or whether BRADSHAW really refused service, in terms of the Indemnification Act; but instead made their decision based on the allegations that BRADSHAW never requested AG assistance or CNMI indemnification.

221. The actions of judges MANGLONA and BELLAS to validate and approve of the actions of SC Judge CASTRO further breached BRADSHAW's contractual rights arising from the presence of the Indemnification Act. These actions were discriminatory against BRADSHAW and violated BRADSHAW's civil rights.

222. Though BRADSHAW did request further AG assistance and ask for indemnification on Sep. 12, 2004, as described herein, to resolve this case, the AG's letter of Feb. 15, 2005 is clear that the court decision of defendants MANGLONA and BELLAS forever destroy any hope that BRADSHAW can ever have in the CNMI or its courts to receive any reimbursement or restitution for the $139,000 judgment against him in the CNMI SC.

223. The AG's letter of Feb. 15, 2005 is also clear that the AG will provide no assistance or help to BRADSHAW--beyond paying for a "telephone consultation" of "limited service" on available options from a local attorney as selected by the AG. Of course, this option is useless and one unacceptable to help BRADSHAW obtain redress.

224. Therefore, based on the decision of defendants CASTRO, MANGLONA and BELLAS; BRADSHAW can never obtain redress or restitution from the CNMI without court

action in a Federal court.

225.  Though BRADSHAW complied with the indemnification Act law by effectively asking for AG assistance and CNMI indemnification five days before an answer in filed in a court case complaint (in his letter of Jul 14, 1999), the problem arose when the CNMI AG and courts in their confusion and pandemonium.  The lack of an answer happened because of the actions and omissions of the AG and CNMI courts and not because of BRADSHAW.

226.  This reality creates the condition of discrimination against BRADSHAW.  This condition arose precisely because of the fact that BRADSHAW was a US state-sider, without representation in court, who could be easily made to accept the blame for the actions and omissions of the CNMI AG and courts.  Thus, BRADSHAW was discriminated against precisely because of his national origin and presence in the US instead of on Saipan.

227. The breach of contract actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  Defendant CNMI and its agents acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order

restitution, removal of the illegally gained judgment and payment of damages to plaintiff.

**NINTH CLAIM--Discrimination (Immigration Reform and Control Act of 1986)**

228. Plaintiff BRADSHAW herein by reference paragraph 1-227 hereinabove alleged as if set forth here in full.

229. In the discrimination shown to BRADSHAW because of his national origin, defendant CNMI, with more than four employees, violated the Immigration and Control Act of 1986 in that in the recruiting, hiring, employment, and discharging of BRADSHAW, there was always a known presence of the CNMI Indemnification Act to protect BRADSHAW.

230. Yet, the defendant CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS collectively all violated the Immigration Reform and Control Act of 1986 by discriminating  against BRADSHAW, because of his national origin as a continental US citizen; in that the defendants arbitrarily breached the CNMI contract with BRADSHAW by not allowing him to have legal assistance and the benefits of the Indemnification Act though the benefits of this act is commonly available to local citizens.

231. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly

suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury. The remedy is for the court to order restitution, removal of the illegally gained CNMI judgment and payment of damages to the plaintiff.

### TENTH CLAIM--Civil Rights Violations (Title 42 USC Section 1986)

232. Plaintiff BRADSHAW herein by reference paragraph 1-231 hereinabove alleged as if set forth here in full.

233. Title 42 USC Section 1986 provides for damages from those defendants who had knowledge of the violations of plaintiff's civil rights and who had the duty and ability to prevent or aid in the prevention of those acts and failed to perform that duty.

234. Manifestly, defendants CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS all had knowledge of the violation of BRADSHAW's rights and could have acted to prevent those violations; but did not so act.

235. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property. The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW. BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants. BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much

money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury. The remedy is for the court to order restitution, removal of the illegally gained CNMI judgment and payment of damages to the plaintiff.

**ELEVENTH CLAIM-Violation of Civil Rights, 18 USC 1961-1964, & Court Rules**

236. Plaintiff BRADSHAW herein by reference paragraph 1-235 hereinabove alleged as if set forth here in full.

237. It is a well known fact that corruption, so-called white collar crime and illegal acts are common, widespread and pervasive in the CNMI as arising from some of the local indigenous people as well as some of the Americans who come there. The US courts and law enforcement people are well aware of this situation.

238. Under Title 18 of the US Code, sections 1961-1964, the Racketeer Influenced Corrupt Organizations Act (RICO), claim arises from a pattern of multiple predicate acts perpetuated by defendants upon BRADSHAW. As a minimum, ROBERT A. BISOM, JAY H. SORENSEN and the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS in 1996-2005 have established a pattern of violating CNMI laws and court rules and denying BRADSHAW his rights under the US Constitution.

239. The RICO acts against BRADSHAW started in 1997-1999 when defendant BISOM began preparing fraudulent documents to deceive and mislead the CNMI courts in order to get a default judgment against BRADSHAW. The RICO acts continued when the AG did little or nothing to address the needs of case 96-1320; and Asst AG SOSEBEE seems to have entered into the BISOM conspiracy to defraud and prepared fraudulent documents of his own to deceive the court; and continued after being notified by BRADSHAW in Jul 1999

63

of the state of alleged mailings from BISOM/AG to BRADSHAW.

240. In the next instance, all of this developing conspiracy and fraud and gross AG malpractice came to the attention of judge CASTRO. He continued the RICO violations by accepting and approving of the fraudulent postal documents submitted to his court and seemingly participated in the conspiracy himself as well. Next, the RICO violations continued in the Supreme Court when judges MANGLONA and BELLAS too had knowledge of the fraud, confusion and pandemonium from the trial court. All of these defendants violated CNMI court rules starting on Apr 5, 1997 when rule 4(m) was not obeyed, and continued on.

241. Finally, all of the fraud and illegal actions were brought to the attention of AG BROWN. The RICO violations continued when BROWN or other CNMI officials reacted by hiding and/or destroying most or all of the fraudulent postal documents in the court files; thereby committing obstruction of justice in cases before the CNMI SC (96-1320) and the US District Court of Idaho (05-84).

242. The actions and omissions of defendants CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS and BISOM and SORENSEN present evidence of fraud and conspiracy and continuing corruption in violation of Title 18 of the US Code, sections 1961-1964, or the RICO act.

243. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS and of BISOM and SORENSEN have violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property. The defendants acted recklessly, deliberately, maliciously and with intent and

foreknowledge to bring hurt, damage and injury on BRADSHAW. BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants. BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury. The remedy is for the court to order restitution, removal of the illegally gained judgment and payment of damages to plaintiff.

### TWELFTH CLAIM--Civil Rights Violations (42 USC 1985)

244. Plaintiff BRADSHAW herein by reference paragraph 1-243 hereinabove alleged as if set forth here in full.

245. The heretofore described actions and omissions of the defendant CNMI; and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS; and ROBERT A. BISOM and his attorney JAY H. SORENSEN combine to present prima facie evidence of conspiracy and/or a case of de facto conspiracy to defraud plaintiff in violation of 42 USC 1985 (as well as 18 USC 241-242) in two possible conspiracies.

246. The similarity of the fraudulent postal receipts from defendant BISOM/SORENSEN and the defendants in the Office of the AG give prima facie evidence of conspiracy to defraud and injure BRADSHAW. These conspiratorial actions combine with defendant CASTRO's reckless and malicious misuse and abuse of power in 96-1320 to outline a de facto case of CASTRO also being involved in the same conspiracy to produce a default judgment in court in order to defraud BRADSHAW.

247.  Another case of alleged conspiracy arrives de facto in the actions and omissions of defendants CASTRO, MANGLONA and BELLAS to ignore the evidence before them and to join with the AG to defraud BRADSHAW and to deny BRADSHAW indemnification or restitution from the CNMI to violate BRADSHAW's rights under the US Constitution.

248.  Either and/or both of these alleged conspiracies have acted to interfere with the civil rights of BRADSHAW and injure his person and property; and to obstruct justice and deprive BRADSHAW of his rights and privileges of the equal protection and equal privileges and immunities under the law.

249. The actions of the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS, and of BISOM and SORENSEN have violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order restitution, removal of the illegally gained judgment and payment of damages to plaintiff.

**THIRTEENTH CLAIM--Civil Rights Violations (Civil Rights Acts of 1870 and 1871; 18 USC 241, 242 and 1961-1965; 42 USC sections 1981-2000; and the**

**Immigration Reform and Control Act of 1986) & Violations of CNMI Court Rules.**

250.  Plaintiff BRADSHAW herein by reference paragraph 1-249 hereinabove alleged as if set forth here in full.

251.  The CNMI acted through its agents, both those named herein and those not presently identified and named, have violated the CNMI court rules and acted in collusion to violate BRADSHAW's due process rights, equal protection rights and civil rights.  Defendants in the CNMI generally and particularly in its office of the AG, the SC and the Supreme Court knowingly and/or unconsciously/unknowingly acted together to join-in, aid, assist, allow and/or facilitate the fraudulent actions of Mr. BISOM court.

252.  In the actions and omissions of the CNMI and its agent judges CASTRO, MANGLONA and BELLAS, the defendants have violated the CNMI civil rules, the Civil Rights Acts of 1870 and 1871 and contributed to the defamation of BRADSHAW's character and reputation by entering judgment against BRADSHAW and to allege the guilt of BRADSHAW in SC 96-1320 in violation of the Civil Rights Acts of 1870 and 1871.

253.  Though the defendants CASTRO, MANGLONA and BELLAS pretended to be clothed with color of law in being in the courtroom and sitting on the bench, the truth is that they acted wrongly to violate plaintiff BRADSHAW's civil rights.  Since they have pretended to have color of law and since their actions/omissions have deprived plaintiff of his rights under the US Constitution, there is this cause of action under the Civil Rights Act of 1871.

254.  Under the Civil Rights Act of 1871, judges, even when they act under alleged color of law, can be sued personally and individually when there is a malicious violation of an individual's civil rights and they act  through a knowing abuse of the legal process (C.J.S.

sections 252 and 275).

255. Judges are charged with an affirmative duty to act to prevent the violation of constitutional rights of individuals. Defendants CASTRO, MANGLONA and BELLAS individually and collectively all have been guilty of exercising that duty with a callous and indifference to the rights of BRADSHAW.

256. The defendant CNMI through its agent judges named herein have intentionally, knowingly and maliciously violated plaintiff BRADSHAW's civil rights. "When a judge acts intentionally and knowingly to deprive a person of his constitutional rights, he exercises no discretion or individual judgment; he acts no longer as a judge, but a minister of his own jurisdiction" (Pierson v. Ray, 386 US 547 at 567 [1967]).

257. "It is the duty of the courts to be watchful for constitutional rights of the citizens, against any stealthy encroachments thereon" (Boyd v. US, 116 US 616, [1885]). Clearly, the CNMI courts have not been watchful of the civil rights of persons appearing before them. As per the RICO act, this seems to be an issue in the CNMI courts.

258. The defendant CNMI acted illegally through its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS to deprive plaintiff of his due process, and equal protection under the law, and to violate the Immigration Reform and Control Act of 1986; the Civil Rights Acts of 1870 and 1871; 18 USC 241-242, 1341-1342, 1349, 1707, 1961-1965; and 42 USC 1981, 1983, 1985 and 1986; and the US Constitution.

259. In the CNMI SC case 96-1320, ROBERT A. BISOM filed suit against BRADSHAW on the basis of an individual capacity. Yet, BISOM also argued that BRADSHAW acted in

color of office and in his "official capacity as Public Auditor, Temporary Public Auditor or Acting Public Auditor" in the scope of his employment and as an agent for the CNMI (p. 3, item 16 of the BISOM complaint 96-1320).

260.  The CNMI allowed this complaint to go forward in its courts without concern that BRADSHAW was charged with actions in his role of official duties for the CNMI.  The courts then went on and found BRADSHAW guilty in his individual capacity and placed a judgment of $139,000 against him for work he did in his CNMI official capacity and color of law.

261.  After entering a default judgment against BRADSHAW, the CNMI courts went on to deny BRADSHAW his rightful benefits under the CNMI Indemnification Act--thereby violating the US Constitution; 18 USC 241, 242, 1341, 1342, and 1961-1965; 42 USC 1981-2000; Immigration Reform and Control Act of 1986; and BRADSHAW's rights to equal protection under the law and due process.

262.  The CNMI through its agents (those identified and named herein and those still unidentified) acted in another possible conspiracy to hide or destroy fraudulent documents in the CNMI 96-1320 file to deprive BRADSHAW an opportunity of addressing these documents in court to prove the presence of conspiracy to defraud BRADSHAW and the CNMI as alleged in this complaint.  The loss of these records by the CNMI and its agents has hurt the efforts of BRADSHAW to receive justice in court.  BRADSHAW hereby makes a demand that the CNMI produce all these records of alleged service or refusal of service or the court should accept the fact of CNMI obstruction of justice.

263.  The actions/omissions of defendants collectively and in unison have deprived plaintiff his due process and civil rights under the US Constitution.  The violation of plaintiff's

civil rights herein described means that the CNMI and its officials, officers and employees have committed individual criminal acts against BRADSHAW's civil rights guaranteed in the US Constitution (18 USC 241 and 242; 42 USC 1985).

264. As described elsewhere herein, much of the CNMI funding and financing comes from a vast array of federal programs and aid.  Under 42 USC 2000, the CNMI and her officials, officers and employees are not immune from the results of their actions to violate a person's civil rights.

265. The actions of the CNMI through its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS has violated BRADSHAW's US Constitutional rights to due process and equal protection of the laws (under the 5th, 9th and 14th amendments)--thereby depriving BRADSHAW of life, liberty and property.  The defendants acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.  BRADSHAW's character, professional reputation, good name, standing, credit rating, property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.  BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.  The remedy is for the court to order restitution, removal of the illegally gained CNMI judgment and payment of damages to the plaintiff.

**FOURTEENTH CLAIM--Intentional, Malicious and/or Irresponsible Actions Causing Damage to Plaintiff BRADSHAW's Reputation**

70

### as an Employer, Supervisor, and as a Person

266. Plaintiff BRADSHAW herein by reference paragraph 1-265 hereinabove alleged as if set forth here in full.

267. The actions/omissions by the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS; and ROBERT A. BISOM; and JAY H. SORENSEN have resulted in the slandering and damage to the professional reputation of BRADSHAW, a Certified Public Accountant, with some professional standing and reputation and to BRADSHAW's public reputation and image for honesty, integrity and morality.

268. One of BISOM's complaints against BRADSHAW was that BRADSHAW filed an ethics complaint against BISOM with the CNMI Bar Association for disclosing confidential attorney-client privileged information when the Bar Association found that BRADSHAW's complaints were allegedly "without legal or factual basis."

269. In the conduct of the AG's deposition of BISOM in 95-0042, BISOM actually admitted the facts of this ethics complaint filed with the Bar Association in that BISOM, under oath, admitted that he had discussed privileged information from BRADSHAW and the Public Auditor's office with certain politicians in the legislature who were known enemies of the then Governor who had appointed BRADSHAW. With the refusal of the CNMI to defend BRADSHAW, this interesting paradox was not properly addressed.

270. Thus, plaintiff was found guilty in the CNMI courts of malicious, unprofessional conduct; when, in fact, the basis for the ethics complaint filed by BRADSHAW to the Bar Association was truly correct, proper and justified. The fact that the Bar Association did not find any fault with BISOM did not alleviate the presence of the alleged fault. Again, plaintiff's

reputation was damaged because of the AG failure to defend BRADSHAW and address this point at the trial as this fact was clearly known to the AG in BISOM deposition.

271.  The judgment against BRADSHAW and validation of BISOM's complaints and charges, arising from the actions and omissions of the defendant CNMI and its agents in the Office of the AG and the CNMI courts, were heavily publicized in the Commonwealth, nearby Guam and the Pacific area and worldwide through the Internet entity--thereby, adding to the slander and damage to the reputation and standing of BRADSHAW.

### FIFTEENTH CLAIM-- Intentional, Malicious and/or Irresponsible Actions Causing Damage to Plaintiff BRADSHAW's Credit Standing

272.  Plaintiff BRADSHAW herein by reference paragraph 1-271 hereinabove alleged as if set forth here in full.

273.  As plaintiff BRADSHAW lacks funds to pay the illegal judgment $139,000 in the CNMI SC from the actions and omissions of the defendants--the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS, and BISOM and SORENSEN--BRADSHAW's credit standing has/will eventually be adversely affected and will imperil BRADSHAW's ability to buy on credit, and particularly if and when defendant BISOM attempts to satisfy the judgment of $139,000 against BRADSHAW;  thereby depriving BRADSHAW of his liberty, property and rights under the US Constitution.

### SIXTEENTH CLAIM--Intentional, Malicious and/or Irresponsible Actions Causing Emotional and Mental Distress On BRADSHAW

274.  Plaintiff BRADSHAW herein by reference paragraph 1-273 hereinabove alleged as if set forth here in full.

275.  The failure to exercise legitimate and proper due care and concern and/or honesty and trueful actions in the conduct of their duties on SC case 96-1320 by defendant CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS; ROBERT A. BISOM; and JAY H. SORENSEN have resulted in the slandering and damage to plaintiff BRADSHAW; and have resulted in placing great emotional and mental distress upon plaintiff BRADSHAW.

276.  The actions and omissions of the defendants were extreme and outrageous and done intentionally, recklessly and/or irresponsibly with the result of causing severe emotional and mental distress or were certain or substantially certain that such distress would result from their conduct, actions and omissions.

### SEVENTEENTH CLAIM--Extra Expense Placed on BRADSHAW

277.  Plaintiff BRADSHAW herein by reference paragraph 1-276 hereinabove alleged as if set forth here in full.

278.  As a result of the actions of the defendants--the CNMI and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, CASTRO, MANGLONA and BELLAS; and BISOM and SORENSEN--BRADSHAW has continued to incur expense in trying to resolve the BISOM complaint and now its after-effects.

279.  In the former US 95-0042 case, BRADSHAW was due some $130.00 which defendant was supposed to pay as a part of the bill of costs due from BISOM on 95-0042. This was never paid.  In the current proceeding with the AG and Public Auditor, since 96-1320 was filed until Feb. 7, 2005, BRADSHAW incurred another $100.00 in expenses.  None of this $230.00 has been paid by the CNMI, AG or Public Auditor, despite requests by

BRADSHAW for this reimbursement.

280.  In legal actions pursued by BRADSHAW since Feb 7, 2005 in CNMI case 96-1320 and US District Court Idaho case 05-84, BRADSHAW has expended another $8,000 in trying to resolve the injustice placed upon BRADSHAW.  The need for this legal action continues to make BRADSHAW incur expenses for investigatory actions/inquiries, administrative matters and legal advice and help.

**WHEREFORE,** Plaintiff BRADSHAW prays for judgment as follows:

1.  For the CNMI to be compelled to produce for BRADSHAW's inspection/copying at the Clerk of SC's office all of the documents on process service/non-service on BRADSHAW and "all" alleged postal receipts as submitted to the SC by BISOM/AG in 96-1320.

2.  For the appointment of a Special Prosecutor to investigate the operations of the CNMI AG and its courts in SC case 96-1320.

3.  For an independent investigation to be made of BRADSHAW's criminal complaint of conspiracy and fraud against ROBERT A. BISOM, JAY H. SORENSEN, and/or whomever of their associates; L. DAVID SOSEBEE and whomever else in the Office of the AG responsible for the preparation and submission in court of alleged postal documents; of CNMI judge ALEXANDRO C. CASTRO for possible conspiracy and fraud; and of AG PAMELA BROWN for obstruction of justice in cases before the CNMI and US courts; and/or alternatively, for the US District Court to forward this case to the FBI and the appropriate US Attorney for investigation and resolution in the vein of criminal violations.

4.  For the US District Court to directly set aside and void the judgment entered by the CNMI SC against BRADSHAW on the basis that it was invalid as BRADSHAW was never properly served in the case (after Apr 5, 1997 per CNMI court rules) and because it was obtained by mistakes, gross incompetence, inexcusable neglect and/or fraud and conspiracy; and/or alternatively, for the court to order the outstanding judgment of $139,000 against BRADSHAW to be paid at once by the CNMI to BISOM on the basis that it was due from the CNMI under the present CNMI Indemnification Act or other form of compensation from the CNMI  because the court judgment arose from actions and omissions of CNMI public officials (if the fraudulent and conspiracy act is prosecuted by the CNMI, the CNMI can recover the $139,000 from BISOM plus some part or all of an earlier $140,000 paid earlier to BISOM);

5.  For other compensatory damages (to include $8,230.00 in previous litigation and expenses by BRADSHAW) against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, L. DAVID SOSEBEE, PAMELA S. BROWN and ANDREW CLAYTON of the Office of the CNMI AG; ALEXANDRO C. CASTRO, JOHN A. MANGLONA and TIMOTHY H. BELLAS of the CNMI courts; ROBERT A. BISOM; and attorney JAY H. SORENSEN according to proof and as apportioned, allocated, and assigned to each defendant by the trier of the facts;

6.  For punitive damages of Seven Hundred and Fifty Thousand Dollars ($750,000.) against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, L. DAVID SOSEBEE, PAMELA S. BROWN and ANDREW CLAYTON of the AG's office; ALEXANDRO C. CASTRO, JOHN A. MANGLONA and TIMOTHY H. BELLAS of the CNMI courts; ROBERT A. BISOM; and JAY H. SORENSEN according to proof, in an amount to be apportioned, allocated and assigned to each defendant at the discretion of the trier of the facts;

7.  For damages against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, L. DAVID SOSEBEE, ANDREW CLAYTON and PAMELA S. BROWN of the Office of the CNMI AG; ALEXANDRO C. CASTRO, JOHN A. MANGLONA and TIMOTHY H. BELLAS of the CNMI courts; ROBERT A. BISOM; and JAY H. SORENSEN; for interest at the prevailing rate thereon for outstanding claims;

8.  For reasonable attorney and investigatory fees and other expenses incurred by BRADSHAW in representation, consultations, inquiries and investigations;

9.  For costs of suit incurred;

10.  For such other and further relief as the court may deem proper.

## BRADSHAW FILES THIS ACTION PRO SE

11.  Pleadings in this case are being filed by plaintiff In Propria Persona, where they are to be considered without regard to technicalities.  Propria pleadings are not to be held to the high standards of perfection as practicing lawyers.  A claim can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  See Haines v. Kerner et. al. 404 US 519; 92 S. Ct. 594, also See Power 914 F2d 1459 [11th Cir 1990], also see Hulsey v. Owens 63 F3d 354 [5th Cir 1995]. also see in Re Hall v. Bellmon 935 F 2d 1106 [10th Cir 1991]).

12.  In Puckett v. Cox, it was held that a pro-se pleading requires less stringent reading than one drafted by a lawyer (456 F2d 233 [Sixth Circuit USCA]).

Dated at Calder, ID, this ___*11th*___ day of ___*August*___ 2005.

ROBERT D. BRADSHAW, Plaintiff, Pro Se