F I L E D
Clerk
District Court

JAN 1 3 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert D. Bradshaw
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone  208-245-1691

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW

      Plaintiff

      v.

COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS (hereafter referred to
as the CNMI); et. al.

      Defendants

) Case No. CV 05-0027
)
)
)
)
)
)
)
)
) **PLAINTIFF'S MEMORANDUM**
) **OPPOSING DEFENDANT**
) **CNMI'S MOTION TO DISMISS AND**
)  **INCORPORATED MEMORANDUM OF**
)  **POINTS AND AUTHORITIES**
)  **[CIV. R. FED. P. 12(B) (6)]**
) Hearing at 9:00 AM, Feb. 09, 2006
) Judge:  Alex R. Munson

1

# TABLE OF CONTENTS

| SECTION | PAGES |
|---|---|
| A. Introduction | 5 |
| B. Bradshaw's Letter of July 14, 1999 | 5 |
| C. Conspiracy | 10 |
| D. Cognizable Legal Theory or Failure to Plead Facts | 10 |
| E. Immunity of CNMI Attorneys and Justices | 12 |
| F. CNMI Immunity | 13 |
| G. Statutes of Limitations | 13 |
| H. Pending Action on Rule 60(b) In the CNMI Superior Court (SC) | 14 |
| I. Eleventh Claim RICO and Third Claim Against Defendant Brown | 17 |
| J. Application of the Fifth Amendment | 18 |
| K. 42 USC 1981 is Limited to Race? | 19 |
| L. Criminal Acts Not Subject to Civil Litigation? | 19 |
| M. No 42 USC 2000? | 19 |
| N. Gross Incompetence Not a Cause of Action? | 19 |
| O. Wrong Use of Rule 12(b)? | 20 |
| P. US Courts have Authority Over CNMI | 20 |
| Q. Conclusion | 20 |
| R. Declaration | 21 |

# TABLE OF AUTHORITIES

**CASES**                                                                  **PAGES**

Bawek v. Kawasaki Motors Corp. S.Ct. Iowa 1981, 313N.W.2d 501, 503    11
Bisom v. CNMI, CNMI Superior Court Case 96-1320    5, 6, 7, 9, 13, 15, 16
Bisom v. CNMI, US District Court, Case 95-0042    16
Blane v. Losh, DCOhio1950, 10 F.R.D. 273    11
CNMI v. Bowie (No 9910552-03/23/2001)    17
Commonwealth v. Oden, 3 N.M.I. 186 (1992), aff'd, 19 F. 3d 26
    (9th Cir. 1994).    18
Dennis v. Sparks, 449 US 24, 28-29, 101 S. Ct. 183,
    186-87, 66 L. Ed. 2d 185 (1980)    12
Flood v. New Hanover County, 125F3d213, 217-18 (4th Cir. 1997)    20
Haines v. Kerner, 404 U.S. 519 (1972)    21
Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc.,
    D.C.Mich. 1952, 13F.R.D. 5    10
Justice Clark in Mapp v. Ohio, 367 US 643, 659 [1961]    18
Karim-Panahi, 839 F 2d at 624.    10
Karim-Panahi v. Los Angeles Police Dept, 839 F 2d 621, 623,
    9th Cir 1988);    20
Kimes v. Stone, 84 F. 3d 1121 (9th Cir 1996)    13
McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100    11
McMaster v. Cabinet for Human Resources, 824 F. 2d 518, 520
    (6th Cir 1987)    20
Monroe v. Pape 365 U.S. 167, 183 91961    16
Motion to Reconsider in RICO/Civil Rights Action filed in the US Distract
    Court, Western District of WA, Railsback v. Harris, No C01-5052 FDB    18
NL Indus., Inc. v. Kaplan, 792F2d 896  898 (9th Cir. 1986)    21
Noll v. Carlson, 809 F 32d 1446, 1448[9th Cir.]    21
Olmstead v. United States, 277 US 438, 485 [1928]    18
Parker v. Commonwealth of Ky Bd of Dentistry, 818 F 504 (6th Cir 1987)    15
Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17, 107 S. Ct. 158, 95
    [6th Cir. 1987]    15
Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc.,
    D.C.N.Y. 1948, 8 F.R.D. 487.    10
Turkish State Hys. Administration v. Vulcan Iron Works,
    D.C.Pa 1957, 153F.Supp. 616)    11
U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293,
    1 F.R.D. 548, 550 (Holly, J.).    11
Wolfe v. O'Neill, DCAlaska 1972, 336 F.Supp. 1255.    11
Younger v. Harris, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 [1971]    15
White, J., in Ankenbrandt v. Richards, 504 U.S. 37 (1971)    17

| STATUTES | PAGES |
|---|---|
| **CNMI** | |
| 7 CMC 1104 | 8 |
| **IDAHO** | |
| Idaho Code (IC) 5-219 | 14 |
| **US** | |
| Civil Rights Act of 1870 | 12 |
| Civil Rights Act of 1871 | 12 |
| US Code, Title 42 | 12, 14 |
| US Code, 42 USC 1981 | 19 |
| US Code, 42 USC 1983 | 10, 12, 13 |
| US Code, 42 USC 1985 | 13 |
| US Code, 42 USC 2000 | 19 |
| RICO statute | 9 |

| RULES | PAGES |
|---|---|
| CNMI Civil Procedures Rule 60 | 6, 14, 16 |
| Fed Rules of Civil Procedure Rule 1 | 11 |
| Fed Rules of Civil Procedure Rule 8 | 10, 11 |
| Fed Rules of Civil Procedure Rule 12 | 5, 11, 19, 20, 21 |

| OTHER | PAGES |
|---|---|
| Bradshaw's Letter of July 14, 1999 | 5 |
| Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America | 18, 19, 20 |
| Fifth Amendment of the US Constitution | 18 |
| 14th Amendment of the US Constitution | 18 |
| Funk & Wagnalls' "Standard Desk Dictionary" | 19 |
| Oran's "Dictionary of the Law" | 19 |
| Proceedings, Cleveland Institute on the Federal Rules, 1938, p 220. | 11 |
| Wright & Miller, "Federal Practice & Procedure" | 11 |

## A. Introduction

1. COMES now plaintiff to oppose defendant's Motion to Dismiss and incorporated memorandum of points and authorities. A proposed order is attached herewith.

2. Defendant's motion cites alleged reasons for a dismissal under the Fed Rules of Civil Procedure (FRCP) 12(b) which primarily boil down to an allegation that Bradshaw wanted no CNMI assistance or indemnification, per Bradshaw letter of Jul 14, 1999; that the CNMI and its agent lawyers and judges are all immune; that the claims are time barred; that the CNMI case 96-1320 is still pending in the CNMI courts; and that the complaint fails to state a cognizable legal theory, to plead essential facts, or both. Finally, in almost all counts and repeatedly, the defendants allege a lack of facts (p. 5, L. 15; p 12, L. 14, 21; p 14, L. 7-9, 17; p 15, L. 1; p 16, L. 12; p. 17, L. 4-5; p. 28, L. 14; p. 32, L. 11; p. 35, L. 6, 13).

## B. Bradshaw's Letter of July 14, 1999

3. The defendants' quote of Bradshaw's letter of Jul 14, 1999 (Pages [p.] 3, Line [L] 2; p. 8, L. 10; p. 30, L. 16-18), out of context, fails to note that this same letter also said: "if you wish to file a motion to have me removed individually from the CNMI case, you have my permission and agreement... Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; .."

4. The time chronology on this case is outlined in pages 1 to 6 of the CNMI Superior Court's (SC) "Order Granting Robert Bradshaw's Motion to Vacate Judgment" on Dec 29, 2005 (reported to be put up at the CNMI Internet website. www.cnmilaw.org. under Bisom v. Commonwealth, case 96-1320). This time chronology lists a series of facts associated with

5

this case as is generally outlined in plaintiff's amended complaint. Yet, the defendants now claim a lack of facts throughout their motion to dismiss. These claims of a lack of facts cannot be supported by the record.

5. Unbeknown to Bradshaw in Jul 1999 (but known to the CNMI and its various agents then and later), Messers Bisom/Sorensen had already entered fraudulent documents into the court record in CNMI 96-1320 alleging service on Bradshaw for the 1st and 2nd amended complaints via US postal mail return receipts for certified mail and also service for Bradshaw upon the AG for the fourth amended complaint as is brought out in the amended complaint (para 68-69) and its reference to Mr Bisom's "Request for Entry of Default: Declaration of Jay H. Sorensen; Entry of Default" and "Supplemental Declaration in Support of Request for Entry of Default." These documents allege that no answers were forthcoming on these services. In July 1999, when Bradshaw wrote his letter, he knew nothing about this alleged service. But the AG knew and chose to not inform Bradshaw.

6. Bradshaw's letter also recognized that there are time limits on when service can be made and that in his case that time limit had expired. But unbeknown to Bradshaw, the AG had already agreed or at least allowed an extension of time for Mr Bisom which lacked a court order since Bradshaw had never authorized the AG to accept service (meaning that the AG had no authority to extend the time deadline; which then was 120 days (and not 180 days as Bradshaw speculated in his Jul 14, 1999 letter) from the complaint filed on Dec 5, 1996. This whole effort legally expired around April 5, 1997. The CNMI AG and judicial agents knew this; but the information was hidden from Bradshaw.

6

7. The AG's knowledge was proven in the case file in the AG's "Motion to Remove Case from Jury Trial Docket" (page 2) filed on Feb 3, 2000 which precisely said: "plaintiff purports to have sent the Amended Summons and Complaint to defendant, Robert D. Bradshaw, 40203 N. Newport Hwy., Elk, WA 99009, on May 5, 1997. Exhibit A. Plaintiff also purports to have sent a Second Complaint and Amended Summons to defendant Bradshaw at the same address, on June 3, 1997. Exhibit B. Plaintiff has previously supplied copies of two United States Mail Domestic Return Receipt cards, neither of which bear the signature of defendant, Robert D. Bradshaw. Exhibit C. Defendant Bradshaw has not authorized anyone to accept service for him and has not been served with the any of the complaints in this case. Exhibit D, July 14, 1999 letter from Bradshaw to the Office of the Attorney General."

8. In the Feb 2, 2000 "Opposition to Motion to Remove case from Trial Docket, Messers Bisom/Sorenson noted Bradshaw's letter of Jul 14, 1999 and said that "This letter states that Mr. Bradshaw received two certified mail packets from Saipan in 1996 and 1997. Plaintiff, in fact, sent two such envelopes with summons and complaints, true copies of which are attached. They were returned unopened." These two returned mailings allegedly represented the first and second amended complaints which were also allegedly served on Bradshaw by certified mail return receipt.

9. In the Jul 2005 Bisom "Opposition to Motion to Void/Vacate Judgment" (p. 4, Messers Bisom/Sorensen declare that on Bradshaw's allegation of the entrance by Messers Bisom/Sorensen of fraudulent US postal Mailing Receipts into the record that "There is nothing to indicate that Plaintiff had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to. Accordingly,

7

there is no basis to conclude there was any fraud."

10. It should not be difficult to see at once that Messers Bisom/Sorensen have entered fraudulent documents into the CNMI Court record showing receipt by Bradshaw on the First and Second amended complaints with certified mail return receipts while simultaneously showing that the Post Office returned the same two mailings as unclaimed. Obviously both sets of documents can't be true.

11. A series of errors thus happened to bring on the default judgment made against Bradshaw. First, there was a limit of 120 days in which service could be made on the complaint. This limit was up about Apr 5, 1997 without service being made. Next, there was the fraudulent documents submitted to the court by Messers Bisom/Sorensen to allegedly prove service. Next, there was the fact that the alleged service did not comply with Washington state rules. Next, there was the fact that the alleged service did not comply with 7 CMC 1104. And assuming that service was made, Bradshaw clearly requested AG assistance (and the implied indemnification) as his letter of Jul 14, 1999 outlined.

12. In all of these proceedings, the CNMI AG and justices knew or came to know the whole status of service. Yet Bradshaw was never told or informed about any of these facts. He knew nothing about what was happening in the CNMI despite his several efforts to write letters and inquire. This is prima facie evidence of facts present proving Bradshaw's argument that he was not afforded due process under the US Constitution.

13. This whole presence of gross fraud and deception entered upon the CNMI court to extort money from both the CNMI and Bradshaw was brought to the attention of AG Brown on Sep 11, 2004. The CNMI spent a year supposedly investigating this fraud and ended up

8

doing nothing but saying that the actual fraudulent documents are now lost. How could a competent investigator investigate alleged fraudulent documents for a year and end up losing the documents? This loss occurred despite Bradshaw's numerous oral and written requests to secure and safeguard the fraudulent documents. Tragically, this issue involved the use of US mail documents which was a proper matter for the United States attorney and postal authorities. Yet, the CNMI did nothing but reportedly lose the documents (or destroy the documents in a conspiratorial action to block Bradshaw's actions in the courts). The defendants' motion to dismiss now claims that the defendant AG found that no fraud occurred (p. 19, L. 10-12).

14. These facts have generally been presented in Bradshaw's Amended Complaint. Yet, defendant CNMI now claims a lack of facts to support the claims made and a whole series of reported conclusions attempting to completely reject the simple facts as shown in this case in the amended complaint.

15. The CNMI and its agents in the AG's office and the justices in the CNMI courts were all ultimately privy to the above facts as is clearly present in the CNMI court 96-1320 file. The only person in the dark was Bradshaw, who has had to go to great effort over the past year trying to learn the facts which the CNMI knew about and hid from Bradshaw all along. The very fact that the CNMI commenced a cover up of these criminal acts perpetuated in case 96-1320 is prima facie evidence of conspiracy and violation of the RICO statutes. After the CNMI was allegedly ripped off of $140,000 by Messers Bisom/Sorensen, why wouldn't the CNMI press for a full investigation and prosecution by US authorities. But unbeknown to Bradshaw, this option was never on the table. This is just one more reason why Bradshaw's

9

case should proceed on in the US court and ultimately result in the appointment of a special prosecutor to independently investigate the violations of US laws involved.

### C. Conspiracy

16. Defendants argue that Bradshaw's allegations of conspiracy are not supported by facts and that allegations of conspiracy do not constitute a cause of action without facts (p. 13, L. 6; p. 18, L. 8, 18-19; p. 19, L. 3; p. 28, L. 7-8; and p. 32. L. 8-12).

17. FRCP Rule 8(e) clearly provides that a pleader need not "plead his evidence" or state "ultimate facts" in an alleged civil conspiracy, as stated by plaintiff--Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc., D.C.N.Y. 1948, 8 F.R.D. 487. The nature of a conspiracy makes it impossible to state details at the pleading stage--Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., D.C.Mich. 1952, 13 F.R.D. 5. Bradshaw's complaint meets those tests.

### D. Cognizable Legal Theory or Failure to Plead Facts

18. Defendants claim that the amended complaint fails to cite cognizable legal theories or plead facts (p 11, I . 21). But defendants have failed to produce any facts or evidence proving the alleged lack of legal theories and facts. The defendants' motion makes broad claims of the alleged deficiencies but provides no proof or evidence of the assertions.

19. To state a claim under 42 USC 1983, the plaintiff must allege that the defendants, acting under color of state law, deprived him of a right guaranteed under the Constitution or federal statute--Karim-Panahi, 839 F 2d at 624. Plaintiff's amended complaint adequately addresses the presence of color of law; yet violations of the law (para 2, 3, 221, 262, 268). There is no basis for the charge that there is a lack of a cognizable legal theory or facts in the

10

amended complaint which is riddled with legal theories of wrong--like fraud, conspiracy, violations of the US Constitution, personal injuries, etc. Too, supporting facts are present throughout the amended complaint--as is established in this opposition.

20. Numerous cases make the point that pleadings (per FRCP Rule 8) have the only function of giving notice of the nature of a claim--Turkish State Rys. Administration v. Vulcan Iron Works, D.C.Pa 1957, 153F.Supp. 616); McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100; U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293, 1 F.R.D. 548, 550 (Holly, J.). These cases all note that other historic issues (stating the facts, narrowing the issues, and providing a means for speedy disposition of sham claims and insubstantial defenses) can be addressed through discovery. Wright & Miller (v. 5, p. 69, Federal Practice & Procedure) note that "pleadings under the rules simply may be a general summary of the party's position that is sufficient to advise the other party of the event being sued upon..." Nowhere does defendant claim to lack knowledge of plaintiff's position from the pleadings.

21. Under the federal rules, it is very difficult for counsel to draft a pleading so badly as to lose the rights of his client (Rawek v. Kawasaki Motors Corp. S.Ct. Iowa 1981, 313N.W.2d 501, 503). A sixteen-year-old boy could plead under these rules (in rule 8)--Proceedings, Cleveland Institute on the Federal Rules, 1938, p. 220.

22. A plaintiff is not required either to disclose the facts underlying his claim or to limit the issues he wishes to raise until after discovery (Wolfe v. O'Neill, DCAlaska 1972, 336 F.Supp. 1255). Too often, a rule 12(e) motion is made for purposes of delay which is a violation of the mandate in rule 1 (Blane v. Losh, DCOhio1950, 10 F.R.D. 273).

11

## E.  Immunity of CNMI Attorneys and Justices

23.  The defendants claim that the CNMI agent judges and attorneys are immune from tort claims as in Bradshaw's amended complaint (p. 6, L. 18; p. 7, L. 6; p. 17, L. 6; p. 22, L. 18-20; p. 25, L. 6-7; and p. 38, L. 9); despite the clear and unambiguous statements found in the Civil Rights acts of 1870 and 1871 as quoted in the amended complaint (paragraphs 215-222). Defendants try to argue that these laws dealt only with the racial issues in the post civil war era in the South.  This charge lacks support.

24.  Some part of 42 USC 1983 is derived from the Civil Rights act of 1871 which clearly allows the suing of officials when they violate the US Constitution under color of state law.  While judicial officials have some exemption in 1983, the law does provide that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." In this case at hand, declaratory relief was unavailable to Bradshaw. Thus, this suit can proceed.

25.  Many states have laws which grant judicial immunity; but the CNMI does not have these laws; nor is there judicial immunity in civil rights violations under Title 42 of the USC. None of the defendants enjoy so called unqualified immunity as charged.

26.  The US Supreme Court and the 9th Circuit have left no doubt that attorneys are liable to section 1983 claims which "subjects any person who deprives someone of a constitutional right under color of state law to civil liability for that deprivation" --42 USC section 1983 (1994).  Dennis v. Sparks, 449 US 24, 28-29, 101 S. Ct. 183, 186-87, 66 L. Ed. 2d 185 (1980).  When a judge conspires with private attorneys (as alleged by Bradshaw) to violate 42 USC 1983 under color of law, he is not immune from civil liability--Dennis v.

12

Sparks, 449 US 24, 28-29, 101 S. Ct. 183, 186-87, 66 L. Ed. 2d 185 (1980), as cited in Kimes
v. Stone, 84 F 3d 1121 (9th Cir 1996).

27. Under 42 USC 1985, the statute is plain enough that the plaintiff can maintain a
cause of action for alleged conspiracy.

## F.  CNMI Immunity

28. Claiming that the CNMI is not a person under 42 USC 1983 (p. 8, L. 1, 15), the
defendants argue that the CNMI is immune.

29. But in CNMI v. US (no. 99-17601), in addressing the Quiet Title Act (28 USC
2409a), the 9th Cir held that the CNMI is to be treated as if it were a state. Since the CNMI is
to be treated as a state, it is included in the 42 USC 1983 applicability because that law
addresses "Every person... of any State or Territory or the District of Columbia..." Clearly, the
CNMI is covered in 1983 and regardless of whether it is or is not a state in terms of the word
person. Certainly, its judicial and attorney agents are persons within the purview of 1983.

## G.  Statutes of Limitations

30. In defendant's motion, argument II raises the time barred issue that Bradshaw's
amended complaint must be dismissed since it does not conform with the statute of
limitations (p 9, L. 1 to p 10, L. 1-7);) but then simultaneously argues that the case is still
pending in the CNMI SC and should be dismissed since it is not finalized (p. 10, L. 18). The
CNMI motion can't have it both ways. It either was still pending (meaning that the statute of
limitations would not apply until Dec 29, 2005 when the CNMI SC acted) or that the case is
completed (meaning that the statute of limitations does apply from its finalization on Sep 13,
2002 with the Supreme Court decision or from Apr 2004 when Bradshaw was first notified by

13

the AG of the outcome on the case and the injury he sustained).

31.  Obviously, since there could be a question over the statute of limitations,
Bradshaw had to file the issue in both the CNMI court under rule 60 and in the US District
Court.  Without filing in the Federal court, Bradshaw would have no recourse if the CNMI
refused to hear the rule 60 issue or ruled against it for being untimely.

32.  In any case, Bradshaw first filed this suit in Idaho in March 2005 where the general
statute of limitations is three years (like on attorney malpractice) and two years on personal
injury (or one year on discovery whichever is later--IC 5-219).  Bradshaw's discovery
happened in April 2004.  Thus, the statute of limitations was covered when Bradshaw filed
his suit in the Idaho US court.  In Aug 2005, the suit was refiled in the NMI US Court.  Idaho
also has a statute of limitations tolling action from continued unlawful acts (as happened in
the CNMI).  So, with the fact that most of the complaint addressed title 42 of the US code and
a limitation of three or four years, the amended complaint meets the time needs.

33.  In any case, the statute of limitations would not apply from Feb 2000 when the
CNMI SC tried the case (per the defendants' motion); but rather, as a minimum, from Sep 13,
2002 (with the Supreme Court's decision); from Apr 2004 when the AG first notified
Bradshaw; from Dec 29, 2005 when the CNMI SC entered its order; or the three year rule in
Idaho as would apply where Bradshaw resided and where he first filed this suit in ID DC.

## H.  Pending Action on Rule 60(b) Hearing in the CNMI Superior Court (SC)

34.  Defendants request dismissal because the action was still pending in the CNMI
SC (p 10, L. 18)--although this issue was settled on Dec 29, 2005 with the CNMI SC order.
The defendants' motion refers to three cases which allegedly establish that this Court abstain

14

in the present case because it is still pending in the CNMI court (Younger v. Harris, 401 U.S. 37. 91 S. Ct. 746, 27 L. Ed. 2d 669 [1971]; Parker v. Commonwealth of Ky Bd of Dentistry (818 F 504 [6th Cir 1987]); and Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17, 107 S. Ct. 158, 95 [6th Cir. 1987]). Plaintiff's review of these three cases finds no linkage between them and 05-0027. These three cases are inapplicable to 05-0027.

35. In Parker, a state administrative body initiated disciplinary action against the plaintiff. Before a hearing could be held on it, the plaintiff filed an action in federal court seeking to enjoin the administrative body from disciplining him and seeking a declaratory judgment that his actions were protected under the First and Fourteenth amendments of the US Constitution. This case at hand has nothing whatever to do with Parker.

36. In Pennzoil, the plaintiff filed suit in Federal court after a jury finding but before the trial court even entered its judgment on the matter. Faced with a need to post a $10.53 billion bond; plaintiff raised US and Texas state constitutional questions despite the fact that those issues were not raised during the trial. Thus, the state courts had no opportunity to adjudicate the constitutional questions. In this one case, the Supreme Court extended Younger to this one civil action. Nothing in the decision extended civil actions automatically to the level of criminal actions in the state courts. There seems to be nothing in this case or other ones at the appellate level to automatically extend the issue to civil proceedings as well as criminal. Thus, Younger does not always apply in all civil cases.

37. In Younger, the court held that a federal district court was prohibited from enjoining state criminal proceedings which were pending in state court. Harris had been indicted for violating the CA Criminal Syndicalism act and sued in Federal court to enjoin the

15

county attorney, Younger, from prosecuting him on the basis of constitutional free speech.

38. In Younger, the US Supreme Court also said that there were exceptions in those situations where the pending state proceeding would not afford an adequate opportunity to vindicate the plaintiff's constitutional rights (which is the situation with Bradshaw and the CNMI). Thus, Younger only applies when (1) plaintiff was given the opportunity to vindicate his claims in state proceedings; (2) action was criminal case; and (3) the court proceedings were not complete. 05-0027 does not meet these tests. The CNMI Supreme Court finalized 96-1320 in 2002 and they denied Bradshaw an opportunity to vindicate his claims.

39. There is nothing in the three cases cited by defendants which place a duty of a plaintiff to exhaust all possible local options before filing an action in federal court. With the situation in the CNMI, plaintiff's efforts to resolve the case without a lawsuit and the fact that two of the three member Supreme Court was involved in plaintiff's complaint, there was little hope of any resolution from the CNMI. Regardless, the issue of the $139,000 is only a part of the damages faced by plaintiff. There were other issues involved--including the fact that plaintiff was not afforded legal assistance for his rule 60 pursuit in the CNMI SC which has now cost plaintiff a large sum of money to pursue; nor was he ever reimbursed for expenses incurred previously in CNMI SC case 96-1320 and US case 05 0042 which are cited in the damages in 05-0027 (17th claim, paras 285-288). Truly, 96-1320 is not over from Bradshaw's point of view, in terms of damages to Bradshaw.

40. On the surface, the case can be made that Plaintiff's actions in the Federal courts certainly influenced and may have contributed to the CNMI SC decision on Dec 29, 2005. It should be noted that defendant Robert A. Bisom in that decision made no appearance in

16

court during the oral argument. In that sense, the decision was a type of default which may have influenced the outcome at the oral hearing. When parties fail to show up for a oral hearing, they run the risk of losing.

41. In Monroe v. Pape (365 U.S. 167, 183 91961)), the US Supreme Court found that "The federal remedy is supplementary to the state remedy, and the latter need not be first sought and refused before the federal one is invoked." Plaintiff was not required to and likely could not have found resolution of his claims in filing further actions in the CNMI courts, beyond the rule 60(b) request.

42. Federal abstention from the local court actions should not be invoked because the Federal Courts have a "virtually unflagging obligation...to exercise the jurisdiction given them" --White, J., in Ankenbrandt v. Richards, 504 U.S. 37 (1971).

### I.  Eleventh Claim RICO and Third Claim Against Defendant Brown

43. In the CNMI v. Bowie (No 9910552-03/23/2001), the 9th Circuit said: "The authentic majesty in our Constitution derives in large measure from the rule of law -- principle and process instead of person. Conceived in the shadow of an abusive and unanswerable tyrant who rejected all authority save his own, our ancestors wisely birthed a government not of leaders, but of servants of the law. Nowhere in the Constitution or in the Declaration of Independence, nor for that matter in the Federalist or in any other writing of the Founding Fathers, can one find a single utterance that could justify a decision by any other-beholden servant of the law to look the other way when confronted by the real possibility of being complicit in the wrongful use of false evidence to secure a conviction in court. When the Preamble of the Constitution consecrates the mission of our Republic in part to the pursuit of

17

Justice, it does not contemplate that the power of the state thereby created could be used improperly to abuse its citizens, whether or not they appear factually guilty of offenses against the public welfare. It is for these reasons that Justice George Sutherland correctly said in Berger that the prosecution is not the representative of an ordinary party to a lawsuit, but of a sovereign with a responsibility not just to win, but to see that justice be done--295 US at 88 (as cited in the Motion to Reconsider in RICO/Civil Rights Action filed in the US Distract Court of the Western District of WA, Railsback v. Harris (No C01-5052 FDB), which added "with the conclusion that the Attorney General's faulty decision and calculated course of non-action in this case deprived Bowie of the fair process that was his due under our Constitution before he could be deprived of his liberty").

44. "If the government becomes a lawbreaker, it breeds contempt for the law, it invites every man to become a law unto himself" (Olmstead v. United States, 277 US 438, 485 [1928]). "Nothing can destroy a government more quickly than its failure to observe its own laws, or worse, its disregard of the charger of its own existence" (Justice Clark in Mapp v. Ohio, 367 US 643, 650 [1961]).

### J. Application of the Fifth Amendment

45. Defendants argue that the first ten amendments of the Constitution (including the fifth amendment) applies only to the Federal government (p. 15, L. 10-11; p. 16, L. 2-3). This charge is incorrect. Even the wording of these amendments make it plain that only the first one could suggest a limitation (in that the first one says that "Congress shall make no law..." Per Section 501(a) of the Covenant, Amendments one through nine apply within the CNMI, along with the 14th and several others. See also Commonwealth v. Oden, 3 N.M.I. 186

18

(1992), aff'd, 19 Γ. 3d 26 (9th Cir. 1994).

### K.   42 USC 1981 is Limited to Race?

46.  Defendants try to limit 42 USC 1981 to race or alienage alone (p. 27, L. 6-7).  But 1981 includes ethnicity, religion and national origin  Bradshaw, whose national origin is the continental US and a US state-sider, is clearly covered in 1981.

### L.   Criminal Acts Not Subject to Civil Litigation?

47.  Defendants argue that some causes in the complaint are criminal acts and not subject to civil litigation (p. 18, L. 7-9; 35, L. 8; and p. 37, L. 1-2).  Regardless, if the local government fails to take action in such instances, it automatically opens the door to civil litigation.  Too, under Section 502 and 903 of the Covenant, the US courts have broad authority to address almost all issues in the CNMI.

### M.   No 42 USC 2000?

48.  Defendants claim there is no 42 USC 2000 (p. 37, L. 9-11).  But there is as the amended compliant notes.

### N.   Gross Incompetence Not a Cause of Action?

49.  Defendants argue that gross incompetence is not a cause of action (p. 20, L. 8-20).  In the amended complaint, gross incompetence is tied to malpractice, omissions, lack of care and malicious denial of Bradshaw's rights (second and third claims).  Per Funk & Wagnalls' "Standard Desk Dictionary" (p. 327), an incompetent is "1. Lacking in ability or skill: Inadequate to the task; unfit. 2, Reflecting a lack of ability or skill.  3.  Law: Not legally qualified.  Oran's "Dictionary of the Law" (p. 260) says that malpractice is "Professional misconduct or unreasonable lack of skill."  Thus, gross incompetence ties to malpractice.

19

### O.  Wrong Use of Rule 12(b)?

50. Even if some of the defendants' stated objections could be argued at law, they vanish in that the defendants' have stated their objections in the vein of "failure to state a claim upon which relief can be granted." Actually, if the defendants arguments on the limitations on the statute of limitations and the immunity of the CNMI and its judges and lawyers, the arguments would have to be made on the basis of a lack of subject matter jurisdiction and not on failure to state a claim upon which relief can be granted. The claims are properly stated in the amended complaint.

### P.  US Courts Have Authority Over CNMI

51. Section 903 of the "Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union With the United States of America," states:  "Nothing herein shall prevent the presentation of cases or controversies arising under this Covenant to courts established by the Constitution or laws of the United States. It is intended that any such cases or controversies will be justifiable in such courts..." The US courts have full authority to hear any and all cases in the CNMI, almost without limitation.

### Q.  Conclusion

52. A complaint must be construed in a light most favorable to the Plaintiff when considering a motion to dismiss--McMaster v. Cabinet for Human Resources, 824 F. 2d 518, 520 (6th Cir 1987); must afford the plaintiff the benefit of any doubt in civil rights cases when the plaintiff appears pro se (Karim-Panahi v. Los Angeles Police Dept, 839 F 2d 621, 623, 9th Cir 1988); must accept the factual allegations contained within the plaintiff's complaint as true--Flood v. New Hanover County, 125F3d213, 217-18 (4th Cir. 1997); must accept as true

20

all material allegations in the complaint, as well as reasonable inferences to be drawn from them--NL Indus., Inc. v. Kaplan, 792F2d 896. 898 (9th Cir. 1986); and complaint must survive dismissal unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief--Haines v. Kerner, 404 U.S. 519 (1972).

53. The defendants have failed to meet their burden to show that plaintiff's Amended Complaint fails to state a claim upon which relief may be granted per FRCP 12(b).

54. If the court does find for the defendants, plaintiff as a pro se litigant requests that he be granted leave of the court to amend the complaint to comply with the courts' rulings--a pro se litigant must be given leave to amend his or her complaint unless it is absolutely clear that the deficiencies could not be cured by amendment (Noll v. Carlson, 809 F 32d 1446, 1448[9th Cir.]). In 05-0027, any of the few possible deficiencies discussed could be addressed and dealt with in an amended complaint.

55. Wherefore, the plaintiff respectfully requests that this Court deny defendants "Motion to Dismiss and Incorporated Memorandum of Points and Authorities [Civ. R. Red. P. 12(b)(6);" or alternatively, allow plaintiff to amend the amended complaint as necessary.

### R. Declaration

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this 27th day of _January_ 2006 at Calder, Idaho.

Robert D. Bradshaw, Plaintiff, Pro Se

21

## Q.  CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the /2ᵗʰ day of January 2006, I caused to be served a
true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristen St Peter, CNMI AG, Caller Box 10007, Capitol Hill, Saipan, MP 96950 (copy also sent
    by fax to the AG at 670-664-2349).
Justice Alexandro Castro, CNMI Supreme Court, Box 502165, Saipan, MP 96950
Justice John Manglona, CNMI Supreme Court, Box 502165, Saipan, MP 96950
Timothy H. Bellas, Box 502845, Saipan, MP 96950.

Robert D. Bradshaw, Plaintiff, Pro Se

22

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW          )   Case No. CV 05-0027

      Plaintiff

      v.

COMMONWEALTH OF THE NORTHERN    )   **(PROPOSED) ORDER**
MARIANA ISLANDS (hereafter referred to    )
as the CNMI); ot. al.                     )

      Defendants                 )
_____ )

      Defendant CNMI's Motion to Dismiss Per Federal Rules of Civil Procedure Rule 12 (b)

(6) is denied.

      DATED this _ _____ day of _____, 2006.

                        _____

                           ALEX R. MUNSON
                             Judge