**ORIGINAL**

F I L E D
Clerk
District Court

JAN 19 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

KRISTIN D. ST. PETER
Assistant Attorney General
Commonwealth of the Northern Mariana Islands
Office of the Attorney General-Civil Division
2nd Floor, Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007
Saipan, MP 96950

Attorney for: Defendants CNMI, Forelli, Bush, Cotton and Brown

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>     Plaintiff,<br><br>  vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et al.<br>     Defendants. | Case No. 05-0027<br><br>**DEFENDANTS' REPLY TO PLAINITIFF'S OPPOSITION TO MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br>**[ L.R. 7.1 (c) (3)]**<br><br>Date: February 9, 2006<br>Time: 9:00 AM<br>Judge: Alex R. Munson |

**MOTION**

Now Come, the Commonwealth of the Northern Mariana Islands Attorney General's Office on behalf of Defendants Commonwealth of the Northern Mariana Islands ("CNMI"), Nicole Forelli, William Bush, D. Douglas Cotton and Pamela Brown (hereafter sometimes collectively "Defendants") and reply to "Plaintiff's Memorandum Opposing Defendant CNMI's Motion to Dismiss and Incorporated Memorandum of Points and Authorities" (hereafter "Opposition Motion").

**NEW FACTS**

As Plaintiff acknowledges in his Opposition Motion, on December 29, 2005, Judge Lizama of

the Commonwealth Superior Court vacated the default judgment against him that served as basis of most, if not all, of Plaintiff's allegations against the Defendants. *See* Lizama Judgment attached.

Judge Lizama's opinion goes on to say that Plaintiff Bradshaw and the Commonwealth Attorney General's Office never "consummated" an attorney-client relationship. *See id* at pg12.

## REPLY MEMORANDUM

a.   <u>As a result of Judge Lizama's December 29, 2005 order vacating the default judgment against Bradshaw, this matter is moot.</u>

Now that the default judgment against Plaintiff Bradshaw has been vacated, his alleged injury no longer exists.   Therefore, any federal questions over which this Court has subject matter jurisdiction are moot.[1]   Whenever an action loses its character as a present live controversy during the course of litigation, federal courts are required to dismiss the action as moot. *In re Di Giorgio,* 134 F.3d 971, 974 (9th Cir.1998).   Accordingly, this matter should be dismissed.

As for damages, the money judgment against Plaintiff was vacated and, therefore no longer an issue.   With regard to punitive damages, it is possible in 42 USC § 1981 and 1983 cases to recover punitive damages without establishing liability for compensatory or nominal damages, but only if the plaintiff can show that the defendant violated a federally protected right. *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 514 (9th Cir. 2000).   In this instance, Plaintiff has not adequately pled, nor do the facts support, that his federally protected rights were violated.

On the contrary, the precise fact that Plaintiff was able to vacate the judgment against him is

---

[1] If this honorable Court rules favorably on Defendants' Motion to Dismiss on the counts over which this Court has subject matter jurisdiction, Defendants will then file a motion to remove this matter to Commonwealth Superior Court on the grounds that the amount

[Footnote continued on next page]

2

1    proof positive that he received the process he was due and equal protection under the law.

2        b.    <u>Even with the minimal notice pleading standards, conclusory allegations are not enough to satisfy pleading requirements.</u>

3

4        In Sections C and D of his Opposition Motion, Plaintiff makes the point that under notice

5    pleading standard he is not requires to "plead his evidence" or "disclose the facts underlying his

6    claim." See Opposition at ¶ 17 and 22.  In support of his thesis, Plaintiff relies heavily on Federal Rule

7    of Civil Procedure 8.  See Opposition at ¶ 16, 17, 20, 21.   In most respects, Plaintiff's assertions about

8    notice pleading requirements are correct.

9        Although it is true that notice-pleading requirements contained in the Federal Rules of Civil

10    Procedure are liberal, they are not so liberal as to allow purely conclusory statements to survive a

11    motion to dismiss under Federal Rule 12(b)(6). *See Miller v. Continental Airlines*, 260 F.Supp.2d 931,

12    935 (N.D. Cal. 2003) "[T]he court is not required to accept legal conclusions cast in the form of

13    factual allegations if those conclusions cannot reasonably be drawn from the facts alleged." *See id.*

14    *citing Clegg v. Cult Awareness Network,* 18 F.3d 752, 754-55 (9th Cir.1994).  Federal Rule 8 (a) (2)

15    provides that when pleading "a short and plain statement of the claim showing that the pleader is

16    entitled to relief" is required.[2]

17        Generally speaking, Plaintiff's allegations throughout his complaint are conclusory and not

18    short plain statements showing the pleader is entitled to relief.  For example, in Count 13 Plaintiff lists

19    _____

20    [Footnote continued from previous page]

    in controversy does not exceed $75,000.  *See* 28 U.S.C. § 1332 (2005).

21

    [2] Defendants once again assert that Plaintiff is not entitled to relief because the judgment against him was vacated and his injury, if any,
    no longer exists.

22

3

at least thirty (30) causes of action under both Federal and Commonwealth law. He then states general facts, many of which do not apply to the cause of actions listed and/or the Defendants identified.[3] In a word, Plaintiff's pleadings are a morass, and impossible to figure out.[4] Instances of Plaintiff's deficient pleadings are identified throughout Defendants' Motion to Dismiss and need not be restated here. Although notice-pleading requirements are liberal, they are not so liberal as to permit Plaintiff's confusing and conclusory pleadings.[5]

c.   Despite Plaintiff's assertions to the contrary, absolute judicial immunity is available to Defendants Forrelli, Bush, Cotton and Brown and none of his Constitutional right were violated.

In Section E of his Opposition Motion, Plaintiff seemingly makes two arguments. First, Plaintiff opines that the Commonwealth has yet to recognize absolute judicial immunity.[6] Opposition Motion ¶ 25. Next, Plaintiff argues that Defendants Forelli, Bush, Cotton and Brown are civilly liable pursuant 42 U.S.C. § 1983 for his alleged deprivation of Constitutional rights. Opposition Motion ¶26.

---

[3] Plaintiff claims Defendants violation a laundry list of criminal statutes, most of which lack a civil remedy, and argues that just because the statute is cited he is entitled to some form of civil relief. See Opposition Motion at § L.

[4] Defendants acknowledge that Plaintiff is appearing *pro se* and entitled to some latitude, but Plaintiff refuses to acknowledge pleading errors even after they are pointed out to him. Specifically, despite Plaintiff's insistence to the contrary, Defendants ( as stated in their Motion to Dismiss) cannot find any statute listed under 42 U.S.C. § 2000. There is a § 2000a, 2000b, etc, but no § 2000. Even after this fact was pointed out to Plaintiff, he steadfastly maintains that such a statute exists. See Opposition Motion at § M. If such a statute does exist, Defendants apologize for the comments within this footnote and would appreciate a copy of it. Until a copy is provided, however, it is impossible for Defendants to prepare a response.

[5] Moreover, the Ninth Circuit Court of Appeals has adopted "a heightened pleading standard in cases in which subjective intent is an element of a constitutional tort action." Porter v. Jones, 319 F.3d 483, 494 (9th Fed. Cir. 2003). Under this standard, in order to survive a motion to dismiss, plaintiffs must state in their complaint non-conclusory allegations setting forth evidence of unlawful intent. *Id.* Plaintiff has failed to plead discriminatory intent of the part of Defendants.

[6] Defendants' Motion to Dismiss identifies four types of immunity cloaking Defendants, Plaintiff seemingly only attacks their claim to judicial immunity.

1.    Absolute Judicial Immunity

With respect to his judicial immunity argument, Plaintiff is incorrect. In the absence of statutory law, the Commonwealth recognizes the "restatements of the law approved by the American Law Institute." 7 C.M.C. § 3401 (2000). The restatements provide that a "public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial function." *See Restatement (Second) of Tort* § 895D (1977). In addition, the restatements further state that attorneys at law are immune from tort liability, generally defamation, alleged in connection with a judicial proceeding. *See id* at § 585-589. Based upon these restatement provisions, it is clear that the Commonwealth does recognize absolute judicial immunity.

It is, however, worth noting that to the extent we are dealing with claims derived under the U.S. Constitution, the Ninth Circuit also recognizes the doctrine of judicial immunity. *See Flood v. Harrington*, 532 F.2d 1248, 1251 (9th Cir. 1976); *see also Fry v. Melarragno,* 939 F.2d 832, 837 (9th Cir.1991) (stating that if a government attorney is performing acts intimately associated with the judicial phase of litigation in either the civil or criminal context, the attorney is entitled to absolute immunity from civil liability for damages).

2.    Plaintiff fails to allege a deprivation of Constitutional rights, thus his § 1983 claim must fail.

Though his argument is unclear, Plaintiff seems to claim that attorneys, even when acting within the scope of their official duties, can be held personally liable when their actions deprive another of constitutional rights. Opposition Motion ¶ 26. Again, the facts as alleged by Plaintiff give no indication that he was deprived of any constitutional rights. In fact, as the judgment against him was vacated, the opposite is true. Because Plaintiff has not demonstrated that he sustained any injury,

**1**    his § 1983 claim must fail and we need not discuss the merits of his immunity counter-argument. 42

**2**    U.S.C. § 1983 (2000).

**3**        d.    The CNMI is a not "person" under § 1983.

**4**        Plaintiff attempts to fashion an argument that the CNMI is a "person" for § 1983 purposes out

**5**    of quiet title action.[7]  Opposition Motion § F.  This Court and the Ninth Circuit, however, previously

**6**    ruled directly upon this issue and held that the Commonwealth is not a "person" for the purposes of §

**7**    1983. *See Ahmed v. Goldberg,* 2001 WL 1842390 at 11 (D.N. Mar. I 2001) *citing DeNieva v. Reyes,*

**8**    966 F.2d 480, 483 (9th Cir. 1992).   As this is binding precedent, Plaintiff's argument must fail.

**9**        e.    Defendants clarify statute of limitations argument .

**10**        In his Opposition Motion, Plaintiff raises a fine point that Defendants "can't have it both way"

**11**    by arguing both that the action is still pending and that the alleged injury, if any, accrued between 1996

**12**    and 2000.  Opposition Motion ¶ 30.  Defendants wish to clarify their position.

**13**        First, Defendants maintain that Plaintiff has not sustained any injury, constitutional or

**14**    otherwise.  This is particularly true now that the judgment, from which all alleged wrong doing

**15**    flowed, has been vacated.  However, in the event this Court does not share this view, Defendants offer

**16**    an alternative argument.

**17**        An action "accrues" when the Plaintiff could have first filed and prosecuted his action to

**18**    successful conclusion."  *See Zhang Gui Juan v. Commonwealth*, Civ. No. 99-0163 (N.M.I. Super.

**19**    Ct.1999).   Plaintiff's alleged due process and equal protection claims, if any, each arose between 1996,

**20**    _____

**21**    [7] Section 1983 requires that the Plaintiff prove: "(1) that a person acting under the color of state law committed the conduct at issue;
and (2) that the conduct deprived the Plaintiff of some right protected by the Constitution or laws of the United States." *Seed v. Hudson,*

**22**                                                                        [Footnote continued on next page]

6

when the original lawsuit was initiated, and 2000, when the default judgment was originally entered against him. *See Bisom v. Commonwealth,* Civ. No. 96-1320 (N.M.I. Super. Ct. 2000). Though Plaintiff Bradshaw may claim that he was not aware of any injury until 2004, Plaintiff knew that there was an ongoing legal action against him as early as 1996. *See* Bradshaw letter to Mr. Bush dated July 14, 1999 attached to Amended Complaint. Therefore, because Plaintiff's RICO, tort and Constitutional causes of action accrued at the very latest in 2000, Plaintiff's claims are time-barred.

> f.    Now that the judgment against Plaintiff has been vacated, the Younger abstention doctrine is most likely inapplicable.

Prior to the Commonwealth Superior Court's ruling vacating the default judgment, the *Younger* doctrine was applicable because there was a matter pending in Commonwealth Court, the proceeding involved an important interest, and Plaintiff's constitutional claims, if any, would have been (and were) redressed. Now that the judgment has been vacated, *Younger* is seemingly inapplicable.

That being said, Defendants once again ask this Court to dismiss this matter. Just as the *Younger* doctrine intended, Plaintiff's constitutional claims, if any, were sufficiently redressed by the Commonwealth Superior Court. Accordingly, Plaintiff has not sustained any injury and; thus, fails to state a claim upon which relief can be granted.[8]

> g.    The Fifth Amendment of the U.S. Constitution does not apply to the CNMI.

Plaintiff Bradshaw relies upon § 501 of the Covenant and Commonwealth Supreme Court's

[Footnote continued from previous page]

1994 WL 229096; *see also Leer v. Murphy,* 844 F.2d 628, 632-33 (9th Cir.1988)

[8] However, in the event the Superior Court is asked to reconsider its decision vacating the judgment against Plaintiff, Defendants would once again ask this Court to abstain until the matter is fully litigated before the Superior Court.

1   decision in *Oden* for the proposition that he can bring suit against the CNMI and its former Attorneys

2   General based upon the Fifth Amendment of the U.S. Constitution. Opposition Motion ¶ 45. Plaintiff's

3   assertion is incorrect.

4        Covenant § 501 (a) states that "to the extent that they are not applicable of their own force, the

5   following provisions of the Constitution of the United States will be applicable within the Northern

6   Mariana Islands **as if the Northern Mariana Islands were one of the several States**: . .Amendments

7   1 through 9, inclusive. . ." 48 U.S.C. § 1801, 501a (1976). Accordingly, Constitutional Amendments 1

8   through 9 are to be applied to the Commonwealth as if it were a state.

9        The U.S. Supreme Court, however, has held that the first ten amendments to the U. S.

10  Constitution do not vest rights in individuals against <u>any</u> government other than the Federal

11  government. *See Delaware v. Van Arsdall*, 475 U.S. 673, 705 (1986), *Dilutaoch v. C& S Concrete*

12  *Block Products*, 1 N.M.I. 478, 576 (1991) (citing *Barron v. The Mayor and City Council of Baltimore*,

13  8 L.Ed. 672, 674 (1833). Plaintiff does not have a direct cause of action against the CNMI under the

14  Fifth Amendment.

15       Moreover, Plaintiff's reliance on *Oden* is misplaced. In *Oden*, the Commonwealth Supreme

16  Court relies upon Fifth Amendment jurisprudence to help interpret the Commonwealth's double

17  jeopardy statute because the two laws share similarities. *See Commonwealth v. Oden*, 3 N.M.I. 186,

18  206 (N. Mar. I 1992). The Commonwealth Supreme Court is not applying the Fifth Amendment of the

19  U.S. Constitution, but rather using it to inform its holding. *Id.* Plaintiff's confusion is understandable in

20  light of the fact that the annotation under Covenant § 501a misstates the *Oden* holding.

21       Plaintiff is not without legal recourse, however. Title 42 U.S.C. § 1983 provides the exclusive

22  remedy for violations of U. S. Constitutional rights. *Sablan v. Tenorio*, 4 N.M.I. 351, 361 (1996)

8

(quoting *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th Cir. 1992). For all of the reasons previously stated herein and within Defendants Motion to Dismiss, Plaintiff has failed to state a claim under § 1983.

  h. The Rooker-Feldman doctrine urges the dismissal of this matter.

   The Rooker-Feldman doctrine holds that when an action in federal court is a de facto appeal of a Commonwealth court ruling, the Federal claim must be dismissed for lack of subject matter jurisdiction. *See Senido v. Office of the Attorney General*, CV-03-0037 ARM pg 4 (D.N. Mar. I. 2003), *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). As this Court has point out, if a litigant "feels a state proceeding has violated their constitutional right" they should appeal "that decision through their state court and thence to the Supreme Court" *Id*.

   Although Defendants remain unclear what Plaintiff's injury is, any injury he sustained flowed from the Commonwealth Superior Court's decision in *Bisom*. *Bisom v. Commonwealth*, Civil No. 96-1320 (N.M.I. Super. Ct. 2000). Defendants, therefore, urge this Court's application of the Rooker-Feldman doctrine and; thus, a dismissal on the grounds that this action is a de facto appeal best resolved in the Commonwealth courts.

  i. Other arguments raised in Plaintiff's Opposition Motion

   Plaintiff's Opposition Motion raises other arguments not addressed in this reply motion. With regard to the arguments not discussed herein, Defendants are confident that their Motion to Dismiss speaks for itself.

  j. Defendants are entitled to attorneys' fees.

   Attorney's fees can be awarded at the court's discretion to a prevailing defendant in civil rights

lawsuits pursuant to 42 USC § 1988.    *Miller v. Los Angeles County Board of Education*, 827 F.2d

617 (9th Cir. 1987).  Attorney's fees may be awarded if the plaintiff's action is "frivolous,

unreasonable, or without foundation." *Christiansburg Garment Co. v. Equal Employment Opportunity*

*Commission*, 434 U.S. 412, 421 (1978).  For all of the reasons stated herein and in Defendants' Motion

to Dismiss and Incorporated Memorandum, Defendants request that they be awarded attorneys' fees.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or in

part, Defendants' Motion to Dismiss and award attorneys' fees.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL

Dated: January 19, 2006

By _____
  Kristin D. St. Peter

10

1

## CERTIFICATE OF SERVICE

2

**I HEREBY CERTIFY** that a copy of the foregoing was served, via U.S. Mail or hand-delivered, on the _19_ day of January, 2006, upon the following:

3

4

ROBERT BRADSHAW
Plaintiff, Pro Se
P.O. Box 473
1530 W. Trout Creek Road
Calder, ID 83808

5

6

JAY SORENSEN
c/o Shanghai
Post Office Box 9022
Warren, MI 48090-9022
Telephone:    (86) 21 5083-8542
Facsimile:    (86) 21 5083-8542

7

8

9

JUSTICE MANGLONA
JUSTICE CASTRO
Supreme Court of the Northern Mariana Islands
PO Box 502165CK
Saipan, MP 96950

10

11

TIMOTHY BELLAS
Law Office of Timothy Bellas
PO Box 502845 CK
Saipan, MP 96950

12

13

14

15

16

Kristin D. St. Peter
Assistant Attorney General

17

18

19

20

21

22

CLERK OF COURT
SUP RT

**For Publication**

2005 DEC 29 PM 3: 45

BY _____

# IN THE SUPERIOR COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM, | CIVIL ACTION NO. 96-1320 |
| Plaintiff, | |
| v. | |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ET AL., | **ORDER GRANTING ROBERT BRADSHAW'S MOTION TO VACATE JUDGMENT** |
| Defendants. | |

This matter was last before the Court on October 11, 2005. Defendant Robert Bradshaw ("Bradshaw"), acting pro se, made an appearance by telephone. James Livingston, Assistant Attorney General, appeared on behalf of the Office of the Attorney General ("AG") of the Commonwealth. Plaintiff Robert Bisom ("Bisom") acting through Counsel Jay Sorensen ("Sorensen") filed a brief opposing Bradshaw's motion. The issue before the Court is the voidability of the February 7, 2005 default judgment against Bradshaw in the Superior Court on grounds of improper personal service or fraud. Having considered the arguments and briefs, the Court is prepared to rule.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

The following timeline summarizes a decade of litigation in this case:

November 14, 1995. Bisom sues the AG, et al. in the district court for the Northern Marianas.

*AG-Civil 9*
*Mailed to*
*Bradshaw*

ENTERED

DATE: _____

1

1.      November 6, 1996. The district court dismisses Bisom's claims for lack of jurisdiction.

2.      December 5, 1996. Bisom files his original complaint against the same defendants in the

3. Superior Court.

4.      December 6, 1996. Assistant Attorney General Doug Cotton sends a letter to Bradshaw,

5.

6. notifying him that a complaint has been filed.

7.      December 24, 1996. Sorensen sends a letter to Cotton asking if the AG will accept service

8. on behalf of Bradshaw.

9.      December 31, 1996. Defendants remove the case to federal court.

10.      January 22, 1997. Cotton sends a letter to Bradshaw, inquiring as to whether Bradshaw

11. wants to have the AG accept service on behalf of Bradshaw.

12.      Late 1996 or early 97. This is the time frame in which Bradshaw claims to have received two

13. large unlabeled packages from Saipan. *See* Answer to Plaintiff's Opposition to Vacate at 5.

14.

15.      January 31, 1997. Bradshaw sends a letter to Cotton saying that Bradshaw has not been

16. served and that he will not authorize the AG to accept service on his behalf.

17.      March 1997. The district court dismisses Bisom's federal claims and remands the rest to the

18. Superior Court.

19.      April 7, 1997. Cotton sends a letter to Bradshaw stating that Cotton told Sorensen that the

20. AG would not accept service for Bradshaw.

21.      May 1, 1997.  Bisom files his First Amended Complaint in the Superior Court.

22.      May 5, 1997.  According to Sorensen's copy of the returned, canceled envelope marked

23. "unclaimed" and bearing the number Z 142 485 879, this is the first date of attempted service on

24. Bradshaw by certified mail. It is also the date that Cotton files receipt of acknowledgement of

25.

26.

27.

28.                          2

1.  receiving the summons on behalf of the CMNI and Defendant Scott Tan. Cotton does not file an
2.  acknowledgement on behalf of Bradshaw.
3.      May 9, 1997. The AG files a Motion for a More Definite Statement pursuant to Com. R.
4.  Civ. P. 12(e), and a Motion to Dismiss pursuant to Com. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(6).
5.  Bradshaw's name is included in the pleadings.
6.      May 30, 1997. Bisom files his Second Amended Complaint in the Superior Court.
7.      June 2, 1997. Cotton sends a letter to Bradshaw stating that the AG will not accept service
8.  on Bradshaw's behalf. The letter states that the AG had filed a motion to dismiss, but that the
9.  motion was not litigated, as Bisom agreed to file a Second Amended Complaint.
10.     June 2, 1997. Bradshaw sends a letter to Cotton saying Bradshaw had not been served and
11. that he would not authorize the AG to accept service on his behalf. Bradshaw admits in the letter
12. that there was unclaimed letter from Sorensen, addressed to Bradshaw and languishing at his local
13. post office.
14.     June 4, 1997. Bisom files a certificate of service to certify mailing the second amended
15. complaint to Bradshaw at his Washington address.
16.     June 9, 1997. According to Sorensen's copy of the returned, canceled envelope marked
17. "unclaimed" and bearing the number Z 142 485 883, this is the second date that Bisom attempts to
18. serve Bradshaw by mail (this time with the second amended complaint).
19.     June 30, 1997. The Court's records reflect that proof of service was filed on this date. The
20. Court has a copy of two return receipts signed by "Manny." Number Z 142 485 879 is dated June 4,
21. 1997, as opposed to the May 5, 1997 date on the returned, unclaimed envelope. Number Z 142 485
22. 883 is dated July 2, 1997, as opposed to the June 9, 1997 date on the returned, unclaimed envelope.
23. In sworn affidavits, Bradshaw, his postal carrier David Vanderholm, and his neighbor Carol

3

1.    D.ssow attest that Bradshaw picked up his own mail, did not authorize anyone else to pick up his

2.    mail, and lived alone. No one could determine the identity of "Manny."

3.          December 11, 1997. Cotton filed notice of substitution of party in Superior Court. Leo

4.    Lamotte, the Public Auditor, is substituted for Bradshaw and Tan in their official capacities.

5.    Bradshaw and Tan continue to remain in the case in their individual capacities.

6.

7.          December 24, 1997. Bisom files his Third Amended Complaint in the Superior Court, which

8.    defendants remove.

9.          May 6, 1998. The district court dismisses the federal claim and remands the Commonwealth

10.    claims.

11.          November 6, 1998. The Superior Court denies defendants' motion to dismiss.

12.          November 18, 1998.  Bisom, with leave from the AG, files his Fourth Amended Complaint

13.    in the Superior Court.

14.          March 30, 1999. The AG files an answer on behalf of the CMNI and Scott Tan, but not

15.    Bradshaw.

16.          June 30 1999. Assistant Attorney General Bush sends Bradshaw a letter asking if Bradshaw

17.    still wants the AG to represent him, and inquiring whether Bradshaw had ever been served.

18.

19.          July 14, 1999. Bradshaw sends Bush a letter suggesting that proof of service was fraudulent.

20.    The letter provides an ambivalent response to Bush's question of whether the AG should continue

21.    to represent Bradshaw, and expresses a (mistaken) understanding that the AG will act to remove

22.    Bradshaw's name from the lawsuit.

23.          August 27, 1999. Sorensen sends Assistant Attorney General David Sosebee a letter, stating

24.    that "Enclosed are copies of the Certificate of Service that show service by certified mail on

25.    [Bradshaw] on two occasions. We also have the return receipt cards."

26.

27.

28.                                      4

August 30, 1999. In the AG's Response to Plaintiff's Motion for Partial Summary Judgment, the AG states that, "Defendant Robert D. Bradshaw, sued in his individual capacity, has not been served with summons in this case and has not appeared or answered in this case and is therefore not before this court for the purposes of this motion and response."

September 3, 1999. Plaintiff's Reply to Opposition to Motion for Partial Summary Judgment at 8 states that proof of service on Bradshaw was filed on May 6, 1997 and again on June 3, 1997, and that these were provided to defendants' counsel at the special request by letter on August 27, 1999.

February 22, 2000 (retroactive February 7, 2000). The Superior Court denies defendants' motion to remove the case from the trial docket on grounds of the lack of service on Bradshaw.

February 14, 2000. The Superior Court enters default judgment against Bradshaw.

March 9, 2000. The AG files an objection to Bisom's request for indemnification of Bradshaw on grounds that Bradshaw had never requested indemnification from the AG.

June 7, 2000. The Superior Court awards Bisom $139,000 against Bradshaw and $110,300 against the CMNI. The Court finds that the AG is not liable for indemnification under the Public Employees Legal Defense and Indemnification Act, 7 CMC § 2304.

April 10, 2000. Both parties appeal, although the AG later abandons its appeal.

July 15, 2000. Bradshaw sends a letter to the AG's office stating that he had not heard from them in a year, reiterating his impression that the AG would remove his name from the case, and stating that he had never been served, and that he would not authorize the AG to accept service on his behalf. Bradshaw received no response to this letter.

September 13, 2002. The Supreme Court issues a decision denying Plaintiff's appeal.

April 2004. Bradshaw calls the AG's office to ask about the case. The Assistant Attorney General Ed Buckingham notifies Bradshaw in an April 6, 2004 letter of the outcome of the Superior Court and Supreme Court judgments.

August 2004. Bradshaw contacts Tom Schweiger, director of Micronesian Legal Services Corporation to find out about entry of default judgment against him. He begins making phone calls to the AG's office.

September 12, 2004. Bradshaw asks the AG to investigate potentially fraudulent return receipts in connection with service. Bradshaw understands that Buckingham has seen the return receipts.

October 7, 2004. Assistant Attorney General Joseph Race sends a letter to Bradshaw informing him that the AG referred the case to AG investigators Frank Kapileo and Alfred Teregeyo.

October 20, 2004. Bradshaw talks to Kapileo and understands that Kapileo saw the return receipts in the case file.

January 2005. Bradshaw talks to Race and understands that case is still being investigated. Bradshaw talks to Teregeyo and understands that Kapileo removed the postal receipts from the file and was taking them to the Saipan Postmaster.

February 15, 2005. AG Pamela Brown sends a letter to Bradshaw informing him that there is still a judgment against Bradshaw, and that the AG does not represent Bradshaw. This is the first time the AG informs Bradshaw that there is no attorney-client relationship.

March 2, 2005. Pursuant to Com. R. Civ. P. 60, Bradshaw files a motion in the Superior Court to void the $139,000 judgment against him.

6

## II.  ANALYSIS

A.    **Bradshaw's claim to void the CMNI judgment under Com. R. Civ. P. 60 is timely.**

Four years passed between the time of the default judgment against Bradshaw and the time Bradshaw filed the instant action. Bradshaw claims that he did not discover the judgment against him for three years because he was under the (mistaken) impression that the AG had removed his name from the case. His reply to Plaintiff's Opposition to Vacate at 7 states that "after three years, four amended complaints and several Bisom motions, Bradshaw came to believe that the AG had removed his name or that Bisom chose not to serve Bradshaw."

Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, misrepresentation, or other misconduct of an adverse party; where it is no longer equitable that the judgment should have prospective application; or for any other reason justifying relief from the operation of the judgment. The statute of limitations for bringing a motion for relief from a judgment is one year, when the basis for relief is newly discovered evidence or fraud by one of the parties. *Id.* However, the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant *not actually personally notified as provided by law*, or to set aside a judgment for fraud upon the court." *Id.* (emphasis added).

Bradshaw seeks to vacate the judgment on grounds of lack of notice and fraud upon the court. Thus, even if more than a year has passed since the Feb 7, 2000 default judgment against Bradshaw, Rule 60 does not limit the Court's ability to grant relief.

B.    **The CMNI judgment against Bradshaw is voidable for improper personal service.**

In determining whether improper service can void the judgment, the Court has considered (1) whether the complaint and summons mailed to Bradshaw by certified mail constituted service or

7

constructive service; (2) whether the service of the complaint and summons on the AG constituted service on Bradshaw; and (3) whether Bradshaw or the AG waived the right to contest service.

In Plaintiff's February 16, 2000 Supplemental Declaration in Support of Request for Entry of Default at 2, Bisom states that the "Amended and Supplemental Complaint and Summons was served to the defendant on May 5, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra." The third paragraph states that a copy of the second amended complaint was served in the same manner on June 3, 1997. The fourth amended complaint was served on only on the AG on November 20, 1998. The validity of the judgment depends on whether Bradshaw was properly served by mail with the initial complaint, whether the November 20, 1998 service of the final complaint on the AG was sufficient, or whether Bradshaw waived service.

    **1.    The two certified mailings to Bradshaw in 1997 did not constitute service.**

        a.    Certified mail, sent without a court order, did not conform to 1996 Commonwealth Rules of Civil Procedure or the Washington State Rules of Civil Procedure.

Com. R. Civ. P. 4(e) provides that service may be effected by any manner authorized by CMNI law, or "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

Com. R. Civ. P. 4(k) provides for service beyond the territorial limits of CMNI "when not prohibited by law." Since Bradshaw was a resident of the State of Washington at the time of

8

service, the form of service would have to conform to Washington law.[1] Washington Superior Court Civil Rule 4(c) states: "Service of summons and process, except when service is by publication, shall be by the sheriff of the court wherein the service is made, or by his deputy, or by any person over 18 years of age who is competent to be a witness in the action, other than a party."

The only circumstance under which service can be made by mail upon a Washington resident is as follows:

> In circumstances justifying service by publication, if the serving party files an affidavit stating facts from which the court determines that service by mail is just as likely to give actual notice as service by publication, the court may order that service be made by any person over 18 years of age, who is competent to be a witness, other than a party, by mailing copies of the summons and other process to the party to be served at his last known address or any other address determined by the court to be appropriate. Two copies shall be mailed, postage prepaid, one by ordinary first class mail and the other by a form of mail requiring a signed receipt showing when and to whom it was delivered. The envelopes must bear the return address of the sender. The summons shall contain the date it was deposited in the mail and shall require the defendant to appear and answer the complaint within 90 days from the date of mailing. Service under this subsection has the same jurisdictional effect as service by publication.

Washington Superior Court Civil Rule 4(d).

Bisom did not pursue any of the means of service provided under Washington law. Although he sent Bradshaw two certified mailings, the mailings were not pursuant to a court order as Washington law requires. Thus, the two mailings that plaintiff sent did not constitute service.[2]

---

[1]    The situation does not require a conflict of law analysis, as the laws governing service of process in the two interested jurisdictions, CMNI and Washington, were not at odds. The laws of both jurisdictions could be respected by the application of the Washington rule.

[2]    Bradshaw has also raised the argument that service was untimely. In his Third Amended Answer to Plaintiff's Opposition to Vacate, he notes that the certified mail sent to him in May and June of 1997 would have arrived more than 120 days after the filing of Bisom's original complaint on December 5, 1997. In 1997, Com. R. Civ. P. 4(m) allowed a plaintiff 120 days in which to serve the defendant. While it appears that service would have been untimely, the Court need not consider this claim since Bisom's mailings in May and June 1997 did not constitute service.

9

b.    The fact that Bradshaw purposefully avoided mail service is irrelevant.

Judge Castro's February 22, 2000 ruling denying Defendant's motion to remove the case from the trial docket suggests both that Bradshaw was served and that he avoided service. Paragraph 2 states: "Defendant Robert D. Bradshaw was properly served by mail, return receipt requested but purposefully avoided service."[3]

Bradshaw clearly was avoiding service. His July 14, 1999 letter to Cotton states: "I moved in 1996 and was sure Bisom didn't have my new address (to serve me if he chose)." In a June 2, 1997 letter to Cotton, he states, "I had a certified letter from Sorenson at the Post Office which was unclaimed by me and returned to him. He should have it returned by now so I suspect he will have to hire a process server which I guess he will." His July 15, 2000 letter to the AG exclaims, "Bisom will have to serve me personally if he wants to pursue this case with me!"

As discussed above, the only lawful means of service under CMNI and Washington law were (1) personal service, (2) service by publication, and (3) service by mail pursuant to a court order. None of these means were used. It is irrelevant whether Bradshaw purposefully avoided a form of service that was impermissible. There is no evidence that Bradshaw avoided the legal forms of service. Bradshaw's answer to Plaintiff's Opposition to Vacate at 7 states that he "operated a business which was open routinely to the public. He could have been served daily and he anticipated that indeed he would be served."

Even if Bradshaw could have been served by mail, his avoidance of service could not have been deemed "constructive service."  While many state courts have deemed service to be valid

---

[3]    As the ruling does not rely on the return receipts signed by "Manny," this portion of the Court's evaluation will focus only on whether any avoidance on Bradshaw's part may be deemed "constructive service."

10

1. where there is proof that the papers were actually sent to and received by the defendant,[4] federal

2. courts interpreting mail service under Rule 4(c)(2)(C)(ii) have held that actual knowledge of the law

3. suit does not substitute for proper service of process.[5] CMNI courts consider the interpretation of

4. counterpart federal rules to be highly persuasive in interpreting Commonwealth procedural rules.

5. *Tudela v. Marianas Pub. Land Corp.*, 1 N.M.I. 179, 184 (MP 1990).

6.

7.     **2.    The AG's appearance in court did not waive the requirement to serve Bradshaw.**

8.     Judge Castro's February 22, 2000 ruling denying defendant's motion to remove the case

9. from the trial docket states in P. 4: "Defendant, Robert D. Bradshaw, has waived any potential

10. challenge to insufficiency of service of process by his previously bringing a motion to dismiss

11. without joining such motion." This result depends on the understandable presumption that, when the

12.

13.

14.   [4]    *See Massengill v. Campbell*, 391 F.2d 233, 235 (5th Cir.1968); *Fields v. Turlington*, 481 So.2d 960, 962 (Fla.App.1986); *Decca Leasing Corp. v. Torres*, 465 So.2d 910, 914 (La.App.1985), *cert. denied*, 468 So.2d 1211

15. (1985); *State of California Dept. of Forestry v. Terry*, 124 Cal.App.3d 140, 177 Cal.Rptr. 92, 95 (1981); *Hankla v. Roseland School Dist.*, 46 Cal.App.3d 644, 120 Cal.Rptr. 827, 834 (1975); *Patel v. Southern Brokers, Ltd.*, 289 S.E.2d

16. 642, 644 (S.C. 1982); *McIntee v. State Dept. of Pub. Safety*, 279 N.W.2d 817, 820 (Minn.1979); *Merriott v. Whitsell*, 251 Ark. 1031, 476 S.W.2d 230, 232 (1972); *Thomas Organ Co. v. Universal Music Co.*, 261 So.2d 323, 327

17. (La.App.1972); *Schaaf v. Brown*, 200 S.W.2d 909, 910 (Ky. 1947). This is not true of the State of Washington, however. Revised Code of Washington (4.28.80) has a case note which reads: "Failing to come to door to receive

18. service of process does not constitute evasion of service; those who are to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. Weiss v. Glemp, 127

19. Wash. 2d 726, 903 P 2d 455 (1955)."     In a more recent case, a court found that a defendant's purposeful concealment from a process server (who

20. staked out defendant's apartment for weeks before finally catching him getting his mail) allowed the plaintiff to exclude the period of concealment from the period of the statute of limitations. *Wilson v. Williams*, 111 Wash. App. 1055, 1055

21. (2002). However, the court maintained, "Simply failing to open the door, even if done repeatedly, may not be sufficient to demonstrate willful evasion of process." *Id.*

22.   [5]    *See e.g., United States v. Gluklick*, 801 F.2d 834, 836 (6th Cir.1986) ("The courts, consistent with the legislative history, have held that the defendant's failure to acknowledge service renders such service invalid"); *Geiger*

23. *v. Allen*, 850 F.2d 330, 332 n. 3 (7th Cir.1988) ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court."); *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53,

24. 57-58 (3rd Cir.1986); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1088-89 (4th Cir.1984).     This Court pays special attention to the position of the Ninth Circuit, which, like the other circuits, does not

25. recognize "constructive service." *See Higgins v. Hames*, 46 F.3d 1141, 1142 (9th Cir. 1995) ("Service fails unless the defendant timely returns the signed acknowledgment form. . . . If the defendant does not return the acknowledgment, the

26. rule provides that other methods of service must be employed."); *Ghana v. Roberts*, 19 F.3d 1440, 1440 (9th Cir. 1994) (same).

27.

28.                     11

1. AG filed motions using Bradshaw's name, the AG was representing Bradshaw.[6] However, the
2. statements and conduct of both Bradshaw and the AG (as well the June 7, 2000 Superior Court
3. ruling) belie this presumption.

4.     Although formalities are typically unnecessary for the formation of an attorney-client
5. relationship, 10 WILLISTON ON CONTRACTS (3d ed.) § 1285, there must be at least an implied
6. agreement between the parties. *See United States v. Costanzo*, 625 F2d 465 (3d Cir. 1980), *Houston*
7. *General Ins. Co. v. Superior Court of Alameda County*, 166 Cal. Rptr. 904 (Cal. App. 1980);
8. *George v Caton*, 600 P.2d. 822 (NM App.1979); *Stormon v. Weiss*, 65 N.W.2d. 475 (ND 1954).
9. While initially, Bradshaw and the AG seem to have been fumbling towards an attorney-client
10. relationship, the relationship was never consummated. After Assistant Attorney General Cotton's
11. June 2, 1997 letter informing Bradshaw that the AG had filed a motion to dismiss, but that the
12. motion was not litigated, the AG did not communicate with Bradshaw for two years. Bradshaw
13. appears to have been clueless as to the course of litigation, outside of the initial proceedings in
14. federal court. Bradshaw's Answer to Plaintiff's Opposition to Vacate Judgment at 3-5, as well as his
15. July 14, 1999 and June 15, 2000 letters, convey his impression that he was no longer a party to the
16. lawsuit in the Superior Court.

17.     The last communication that Bradshaw received from the AG (prior to the communications
18. in 2004) was the June 30, 1999 letter from Assistant Attorney General Bush. Bush inquired as to
19. whether Bradshaw wanted the AG to represent him, and whether Bradshaw had ever been served.

---

[6] Under Com. R. Civ. P. 12(h)(1), the defense of insufficiency of process is waived if omitted from a motion made pursuant to Rule 12. The defense must be raised in the first responsive pleading made during the time period in which the defense is available. If not made then, the only remedy is to amend the first responsive pleading according to Co. R. Civ. P. 15 (a). Com. R. Civ. P. 12(h)(1). *See also Kersh v. Derozier*, 851 F.2d 1509, 1511 (5th Cir. 1988). On May 9, 1997, the AG filed motions pursuant to Rule 12(b)(2), 12(b)(4), 12(b)(6), and 12(e) on behalf of all defendants, including Bradshaw. Rule 12(b)(5), allowing dismissal for insufficiency of service of process, was not raised.

Bradshaw's July 14, 1999 response appears to have been the basis for the AG's abandonment of any interest in Bradshaw:

> Should you represent me further? Again I don't think I am a party to that CMNI case and if that is true, the answer is no (if the answer is yes then of course I would need representation) . . .your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me.

The AG's pleadings filed after this letter do not include Bradshaw's name among those represented by the AG. In its Motion to Remove Case from Jury Trial Docket at 4, the AG states, "The fact that a pleading was filed containing the name of Mr. Bradshaw does not make it a filing by him. Where the pleading was filed without his knowledge or consent it could not be attributed to him." In its opposition to Plaintiff's Motion for Indemnification Determinations Pursuant to 7 CMC §2304 at 4, the AG states: "Mr. Bradshaw has not authorized any such filings on his behalf and has not requested the Office of the Attorney General to represent him it [sic] this matter. . . Any actions taken by the Office of the Attorney General were done by mistake and without the knowledge or ratification by Mr. Bradshaw."

The AG's failure to follow the basic duties of an attorney towards a client provides further support for the notion that the relationship was never truly established. For instance, Rule 1.3 of the American Bar Association's Model Rules of Professional Conduct[7] requires a lawyer to "keep the client reasonably informed about the status of the matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Surely, had the AG been representing Bradshaw, it would have corrected Bradshaw's understanding (as expressed in the July 14, 1999 letter) that the AG had or would remove him from the suit.

---

[7] Rule 2 of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth provides that the Model Rules are applicable in the Commonwealth.

13

1.   Further, the AG would not have blatantly violated Rule 1.16(b) by withdrawing in a manner that

2.   had a seriously adverse impact on Bradshaw: a default judgment.

3.        Finally, Judge Castro's June 7, 2000 ruling on indemnification seems to follow the AG's

4.   reasoning: "The Court finds no evidence that Bradshaw made a request to the public entity to be

5.   indemnified pursuant to 7 CMC §2304." Whether Bradshaw failed to make a timely request for

6.   indemnification or whether he did not do so because he was never served is irrelevant to the

7.   question of the attorney-client relationship. The result is that the AG is deemed to have never

8.   represented Bradshaw. As such, the AG could not waive service through its appearance.

9.

10.       3.    **Service of the complaint and summons on the AG did not constitute service on Bradshaw.**

11.

12.       Com. R. Civ. P. 5(a-b) allows "every pleading *subsequent* to the original complaint" to be

13.  served upon the attorney of record unless service upon the party is ordered by the court. (Emphasis

14.  added). Had the original complaint been properly served on Bradshaw, and, had the AG been the

15.  attorney of record in the Superior Court case, service of subsequent pleadings on the AG would

16.  have been permissible. However, as discussed above, the original complaint was never served on

17.  Bradshaw. Further, the AG was not the attorney of record.

18.       Even if the AG had been Bradshaw's attorney, service on the AG against the express wishes

19.  of Bradshaw would have been improper. While an attorney has implied authority to make

20.  stipulations and decisions in the management or prosecution of an action, a decision that operates as

21.  a surrender of a substantial right of the client will ordinarily not be upheld. *State v. Barley*, 81

22.  S.E.2d 772, 773 (N.C. 1954). Bradshaw had a right, under CMNI and Washington law, to require

23.  plaintiff to serve him personally rather than through the AG. This was communicated to Bisom's

24.  lawyer by both Bradshaw and the AG. Plaintiff's failure to follow these laws should not be

25.  sanctioned by a default judgment in his favor.

26.

27.

28.                                            14

C.    **The fraud alleged does not void the CMNI judgment.**

In determining whether the judgment can be voided on grounds of fraud, the Court has considered (1) whether the actions alleged amounted to fraud; and whether (2) said actions affected the outcome of the judgment.

The documents which Bradshaw alleges to be fraudulent are the two return receipts signed by "Manny." It is clear to the Court that there is a gross inconsistency between the unclaimed packages returned to Sorensen and the return receipts accepted by "Manny," which bear the same certified mail numbers. Either the "Manny" return receipts are invalid, or the copy of the unclaimed envelope bearing Sorensen's address is invalid. Both, however, appear in Bisom's various motions as proof of service.

In his Reply to the Opposition to vacate the judgment, Bradshaw argues that both sets of documents are false. He disavows the existence of Manny and claims that the packages sent by Sorensen were unlabeled. However, in Bradshaw's June 2, 1997 letter to Cotton, he acknowledges that he purposefully failed to claim a package from Sorensen. Thus, the likely candidate for fraud is the set of return receipts signed by "Manny."

A misrepresentation is fraudulent if the actor: (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (3) knows that he does not have the basis for his representation that he states or implies. *Ada v. Sadhwani's, Inc.*, 3 N.M.I. 303, 313 (MP 1992) citing REST. (2D) TORTS § 526 (1977). Regardless of who "Manny" is, if he is not the authorized representative of Bradshaw, and plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record, then it is possible that fraud occurred.

However, it does not appear that the "Manny" return receipts were the basis for the Court's finding that Bradshaw had been constructively served. These returns were not mentioned in either the February 22, 2000 judgment (retroactive February 7, 2000) or the June 7, 2000 judgment. There is no order on record that even acknowledges the return receipts. Thus, while the evidence of mail fraud warrants a separate criminal investigation, it has no bearing on the outcome of this case. Although Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, Bradshaw has not shown that the judgment was grounded in fraud.

### III. CONCLUSION

Bradshaw's motion to vacate the default judgment against him for $139,000 is **GRANTED**, as this Court finds that Bradshaw was never properly served.

SO ORDERED this _29th_ day of December 2005.

Juan T. Lizama
Associate Judge, Superior Court

16