*Robertson v. Northwest Adm's, Inc.*

749 F.2d 530 Page 1
749 F.2d 530, Fed. Sec. L. Rep. P 91,868, 53 USLW 2328
(Cite as: 749 F.2d 530)

▷

United States Court of Appeals, Ninth Circuit.
Robert S. ROBERTSON, Plaintiff-Appellant,
v.
DEAN WITTER REYNOLDS, INC., Defendant-Appellee.
No. 83-1664.

Submitted Jan. 12, 1984.
Decided Dec. 10, 1984.

Margin investor filed suit alleging that a brokerage firm violated its duty under the rule requiring brokers to disclose in writing the terms of credit they extend to customers who wish to purchase securities on margin. The United States District Court for the Northern District of California, Robert H. Schnacke, J., dismissed with prejudice. Investor appealed. The Court of Appeals, Nelson, Circuit Judge, held that: (1) the rule requiring disclosure of credit terms provides a private right of action, and (2) scienter is a requisite element of the action.

Reversed and remanded.

West Headnotes

[1] Consumer Credit 92B ⇐33.1

92B Consumer Credit
　92BII Federal Regulation
　　92BII(A) In General
　　　92Bk33 Persons, Businesses, and Transactions Subject to Regulations
　　　　92Bk33.1 k. In General. Most Cited Cases
　　　　(Formerly 92Bk33)

Securities Regulation 349B ⇐60.34

349B Securities Regulation
　349BI Federal Regulation
　　349BI(C) Trading and Markets
　　　349BI(C)7 Fraud and Manipulation
　　　　349Bk60.34 k. Existence of Private Cause of Action. Most Cited Cases
　　　　(Formerly 349Bk121)
Securities Exchange Act, rather than Truth-In-Lending Act, governed issue whether there was private remedy under rule requiring brokers to disclose in writing the terms of credit they extend to customers who wish to purchase securities on margin. Truth in Lending Act, § § 102 et seq., 104(2), 15 U.S.C.A. § § 1601 et seq., 1603(2); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[2] Securities Regulation 349B ⇐60.34

349B Securities Regulation
　349BI Federal Regulation
　　349BI(C) Trading and Markets
　　　349BI(C)7 Fraud and Manipulation
　　　　349Bk60.34 k. Existence of Private Cause of Action. Most Cited Cases
　　　　(Formerly 349Bk117)
There is private right of action for violations of antifraud provision of Securities Exchange Act. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[3] Securities Regulation 349B ⇐45.20

349B Securities Regulation
　349BI Federal Regulation
　　349BI(C) Trading and Markets
　　　349BI(C)3 Margin or Credit
　　　　349Bk45.11 Extension of Credit by Brokers and Dealers
　　　　　349Bk45.20 k. Existence of Cause of Action for Violation of Regulations. Most Cited Cases
　　　　(Formerly 349Bk121)
For purposes of determining whether there is private right of action under rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase securities on margin, Congress delegated authority to establish rule pursuant to antifraud provision of Securities Exchange Act. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[4] Action 13 ⇐3

13 Action
　13I Grounds and Conditions Precedent
　　13k3 k. Statutory Rights of Action. Most Cited Cases
If rule is valid and further substantive purposes of enabling statute, and statute provides private right of action as matter of congressional intent, private right

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

of action will be implied into rule as well, regardless of agency intent.

**[5] Action 13 ⚷3**

13 Action
   13I Grounds and Conditions Precedent
      13k3 k. Statutory Rights of Action. Most Cited Cases

Where private remedy has been implied not on basis of congressional intent, but rather on basis of well-established judicial construction, there is only strong presumption that rule drafted pursuant to statute reflects governing judicial construction; nonetheless, if strong presumption is not overcome, private remedy will be implied into rule as long as it bears reasonable relation to statutory purposes.

**[6] Administrative Law and Procedure 15A ⚷797**

15A Administrative Law and Procedure
   15AV Judicial Review of Administrative Decisions
      15AV(E) Particular Questions, Review of
         15Ak797 k. Legislative Questions; Rule-Making. Most Cited Cases

Where Congress gives agency authority to issue regulations defining statutory language, rule may be reviewed only to determine if it is reasonably related to substantive purposes of enabling statute.

**[7] Administrative Law and Procedure 15A ⚷391**

15A Administrative Law and Procedure
   15AIV Powers and Proceedings of Administrative Agencies, Officers and Agents
      15AIV(C) Rules and Regulations
         15Ak390 Validity
            15Ak391 k. Determination of Validity; Presumptions. Most Cited Cases

Where Congress gives agency authority to issue regulations defining statutory language, such regulation may be set aside only if agency exceeded its statutory authority or regulation is arbitrary, capricious or otherwise not in accordance with law.

**[8] Action 13 ⚷3**

13 Action
   13I Grounds and Conditions Precedent
      13k3 k. Statutory Rights of Action. Most Cited Cases

Where Congress gives agency authority to issue regulation defining statutory language and regulation is reasonably related to substantive purposes of its enabling statute, Court of Appeals will find that regulation was drafted such that private action may be legitimately implied.

**[9] Securities Regulation 349B ⚷45.29**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)3 Margin or Credit
            349Bk45.29 k. Evidence. Most Cited Cases
      (Formerly 349Bk121)

There is strong presumption that rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase securities on margin provides the private right of action which exists generally for antifraud provisions of Securities Exchange Act, because existence of remedy in statute is based upon long-standing judicial construction rather than direct congressional intent. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[10] Securities Regulation 349B ⚷60.34**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.34 k. Existence of Private Cause of Action. Most Cited Cases
      (Formerly 349Bk117)

Courts should not automatically imply private action under every rule validly promulgated pursuant to antifraud provision of Securities Exchange Act. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

**[11] Securities Regulation 349B ⚷45.16**

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)3 Margin or Credit
            349Bk45.11 Extension of Credit by Brokers and Dealers
               349Bk45.16 k. Disclosure Requirements. Most Cited Cases
      (Formerly 349Bk121)

There was no indication that Securities and Exchange

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Commission intended to prohibit private actions under rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase on margin. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[12] **Securities Regulation 349B** ⚷45.16

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)3 Margin or Credit
            349Bk45.11 Extension of Credit by Brokers and Dealers
              349Bk45.16 k. Disclosure Requirements. Most Cited Cases
              (Formerly 349Bk66)
Rule requiring brokers to disclose in writing the terms of credit they extend to customers who wish to purchase securities on margin was designed as consumer disclosure provision to protect investors, not as measure to restructure brokerage firms' back offices. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[13] **Securities Regulation 349B** ⚷45.16

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)3 Margin or Credit
            349Bk45.11 Extension of Credit by Brokers and Dealers
              349Bk45.16 k. Disclosure Requirements. Most Cited Cases
              (Formerly 349Bk121)
Disclosure provisions of rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase securities on margin are reasonably related to antifraud goals of Securities Exchange Act and, therefore, margin investors may bring private actions for violation of rule. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[14] **Securities Regulation 349B** ⚷60.55

349B Securities Regulation
   349BI Federal Regulation
      349BI(C) Trading and Markets
         349BI(C)7 Fraud and Manipulation
            349Bk60.50 Pleading
              349Bk60.55 k. Conduct of Broker-Dealers. Most Cited Cases

(Formerly 349Bk140)
Allegation of scienter is necessary to maintain private action under rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase securities on margin. Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[15] **Constitutional Law 92** ⚷70.1(11)

92 Constitutional Law
   92III Distribution of Governmental Powers and Functions
      92III(B) Judicial Powers and Functions
         92k70 Encroachment on Legislature
            92k70.1 In General
              92k70.1(7) Particular Subjects, Application to
                  92k70.1(11) k. Remedies and Procedure. Most Cited Cases
Inequalities between protection of investors who borrow less than $25,000 on margin from lenders other than brokers, who are protected under Truth in Lending Act, and investors who borrow from brokers, who are governed by rule requiring brokers to disclose in writing terms of credit they extend to customers who wish to purchase securities on margin, but who must allege scienter to maintain private action under rule, could not be resolved by Court of Appeals; investors who found the remedies inadequate were required to look to Congress. Truth in Lending Act, §§ 102 et seq., 104(2), 15 U.S.C.A. §§ 1601 et seq., 1603(2); Securities Exchange Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b).

[16] **Federal Courts 170B** ⚷946

170B Federal Courts
   170BVIII Courts of Appeals
      170BVIII(L) Determination and Disposition of Cause
         170Bk943 Ordering New Trial or Other Proceeding
            170Bk946 k. Amendment as to Parties or Pleading. Most Cited Cases
Although margin investor chose not to plead any facts from which scienter could be inferred in private action under rule requiring brokers to disclose in writing the terms of credit they extend to customers who wish to purchase securities on margin, it was not clear that he could not plead such facts and, therefore, upon determination that investor could maintain private action, remand was necessary to give investor opportunity to plead scienter. Securities Exchange

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Act of 1934, § 10(b), 15 U.S.C.A. § 78j(b); Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**\*532** Janis Harwell, Thelen, Marrin, Johnson & Bridges, San Francisco, Cal., for plaintiff-appellant.
Richard B. Glickman, San Francisco, Cal., for defendant-appellee.

Appeal from the United States District Court for the Northern District of California.

Before GOODWIN, PREGERSON and NELSON, Circuit Judges.

NELSON, Circuit Judge:
Robert S. Robertson alleges that Dean Witter Reynolds, Inc. violated its duty to him under Securities and Exchange Commission ("SEC") Rule 10b-16. Rule 10b-16 requires brokers to disclose in writing the terms of credit they extend to customers who wish to purchase securities on margin. Robertson lost money after Dean Witter sold treasury bonds from his account because he failed to meet a margin call. The district court dismissed Robertson's claim with prejudice pursuant to Fed.R.Civ.P. 12(b)(6). On appeal Robertson argues (1) that Rule 10b-16 creates an implied cause of action, and (2) that proof of scienter is not a necessary element of such a claim. We find that Rule 10b-16 provides for a private right of action but that scienter is a requisite element thereof. We therefore reverse and remand to allow Robertson to amend his complaint to allege scienter on the part of Dean Witter.

## FACTS AND PROCEDURAL BACKGROUND

This case comes to us on appeal from a judgment on the pleadings pursuant to Fed.R.Civ.P. 12(b)(6); we therefore assume the truth of all material allegations in the complaint. Robertson opened a brokerage account with Dean Witter on August 15, **\*533** 1980. On January 22, 1981, he instructed Dean Witter to buy treasury bonds with a face value of $500,000 for his account. Robertson purchased the bonds for $367,138 on margin. He paid $36,714 as a downpayment and Dean Witter extended him credit for the balance. The bonds were priced at a substantial discount from face value because interest rates had risen since the time the bonds were first issued.

Interest rates continued to rise, reducing the value of Robertson's bonds, which were also Dean Witter's collateral on its loan to Robertson. Over the next seven months Dean Witter made several margin calls-demands for the payment of additional collateral. Robertson promptly met each of these calls. On August 27, 1981, Dean Witter sent Robertson another margin call requiring the payment of $7100 before September 2. When Robertson had not met the margin call on September 1, Dean Witter sold the treasury bonds to satisfy his remaining debt on its loan. [FN1] As a result, Robertson lost his investment in the bonds, including the downpayment, $76,753 in interest charges, and an additional $36,000 he had paid to reduce the principal of his debt, for a total of $149,000. The record does not indicate, however, the amount of interest Robertson received during the seven months he owned the bonds.

> FN1. Robertson does not allege that he was damaged by Dean Witter's early sale of the bonds on September 1, rather than September 2.

On July 7, 1982, Robertson filed a six count complaint in the District Court for the Northern District of California alleging that Dean Witter had violated various federal and state securities laws. In count one, Robertson complained that his loss was caused by Dean Witter's failure to inform him of the terms on which credit was extended to him, in the manner required by section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-16, 17 C.F.R. § 240.10b-16. Counts two and three alleged that Dean Witter had, through misstatements and omissions of material fact, violated sections 17(a)(2) and 17(a)(3) of the Securities Act of 1933, 15 U.S.C. § 77q(a)(2), (3). Count four asserted that Dean Witter's failure to ascertain Robertson's financial situation and needs in connection with the credit arrangement constituted a manipulative or deceptive act in contravention of section 15(c)(2) of the Exchange Act, 15 U.S.C. § 78o(c)(2), and Rule 15c2-5, 17 C.F.R. § 240.15c2-5. Counts five and six raised claims under the California Corporations and Civil Codes and common law.

Dean Witter moved to dismiss all six counts of the complaint on the ground that Robertson had failed to state a claim upon which relief can be granted. The district court granted Dean Witter's motion to dismiss counts one and four-the Rule 10b-16 and Rule 15c2-5 claims-with prejudice and entered an order without opinion. Robertson filed a notice of voluntary dismissal without prejudice of the remaining counts

pursuant to Fed.R.Civ.P. 41(a). The district court then entered judgment dismissing the action. Robertson appeals only the district court's dismissal of count one.[FN2] Because the order disposed of the action and not merely the complaint, we have jurisdiction. See Ruby v. Secretary of the Navy, 365 F.2d 385, 387 (9th Cir.1966), cert. denied, 386 U.S. 1011, 87 S.Ct. 1358, 18 L.Ed.2d 442 (1967).

FN2. On count four Dean Witter had pointed out that the Ninth Circuit recently held, in SEC v. Seaboard Corp., 677 F.2d 1301, 1313-14 (9th Cir.1982), that section 15 does not create a private cause of action.

## DISCUSSION

The district court dismissed Robertson's suit under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. We review a ruling on a motion to dismiss for failure to state a claim upon which relief can be granted de novo, as a question of law. Alonzo v. ACF Property Mgt., Inc., 643 F.2d 578, 579 (9th Cir.1981). We note that a complaint should not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his *534 claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 101-102, 2 L.Ed.2d 80 (1957).

A complaint may be dismissed as a matter of law for one of two reasons: (1) lack of a cognizable legal theory or (2) insufficient facts under a cognizable legal claim. 2A J. Moore, Moore's Federal Practice ¶ 12.08 at 2271 (2d ed. 1982). Robertson's pleadings in district court exposed him to dismissal on either ground. First, he claimed that Rule 10b-16 provides for a private cause of action. Second, he insisted that scienter is not a requisite element of such an action; accordingly, he failed to plead any facts from which scienter could be inferred. The district court failed to specify whether the lack of a private cause of action or the failure to plead scienter was the basis for dismissal.

We believe both issues are fairly presented by the district court's order, and both have been fully briefed and argued. We hold first that Robertson may state a claim for damages under Rule 10b-16. If the order of dismissal were based on the lack of an implied action, therefore, it would be erroneous as a matter of law. Having decided that a private cause of action exists, we also conclude that scienter is an essential element of such an action. We decide this second issue to avoid an immediate successive appeal from either party.

### I. Rule 10b-16 Creates a Private Cause of Action

Rule 10b-16 provides in relevant part:
(a) *It shall be unlawful for any broker or dealer to extend credit,* directly or indirectly, to any customer in connection with any securities transaction *unless* such broker or dealer has established procedures to assure that *each customer*
(1) *is given or sent at the time of opening an account, a written statement or statements disclosing* (i) the conditions under which an interest charge will be imposed; (ii) the annual rate or rates of interest that can be imposed; (iii) the method of computing interest; (iv) if rates of interest are subject to change without prior notice, the specific conditions under which they can be changed; (v) the method of determining the debit balance or balances on which interest is to be charged and whether credit is to be given for credit balances in cash accounts; (vi) what other charges resulting from the extension of credit, if any, will be made and under what conditions; and (vii) the nature of any interest or lien retained by the broker or dealer in the security or other property held as collateral and *the conditions under which additional collateral can be required* ...

17 C.F.R. § 240.10b-16 (emphasis added).

We must examine the legislative and administrative history of Rule 10b-16 and its enabling statute to decide whether it should be read to imply a private cause of action. Because Rule 10b-16 was not enacted by Congress, but rather by the SEC acting on authority delegated by Congress, a two-step inquiry is necessary: (1) whether Congress delegated authority to establish rules implying a private right of action; and (2) whether the rule in question was drafted such that this private right of action may legitimately be implied. Jablon v. Dean Witter & Co., 614 F.2d 677, 679 (9th Cir.1980) (stock exchange rules). This inquiry leads us to the conclusion that Rule 10b-16 does provide a private right of action, a result also reached by the D.C. Circuit, albeit via a radically more abbreviated route. Liang v. Dean Witter & Co., 540 F.2d 1107, 1113 n. 25 (D.C.Cir.1976).

A. *Under the Enabling Statute, Congress Delegated Authority to Establish Rules Implying a Private Right*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*of Action*

1. Section 10(b) Is the Enabling Statute

[1] The parties disagree over which statute to analyze: the Truth-In-Lending Act, 15 U.S.C. § 1601 et seq. (1976) *535 ("TILA"), or section 10(b) of the Exchange Act. The TILA requires merchants and commercial lenders to disclose credit terms to potential customers, but expressly exempts transactions involving securities or commodities accounts. 15 U.S.C. § 1603(2). Congress premised this exemption on the understanding that the SEC would, pursuant to existing statutory authority, promulgate "substantially similar" disclosure rules in the securities field. S.Rep. No. 392, 90th Cong., 1st Sess. 9 (1967). [FN3] In response, the SEC adopted Rule 10b-16. See *Liang, supra,* 540 F.2d at 1111; Securities Exchange Act Release No. 34-8773, 34 F.R. 19717 (1969).

---

FN3. The Senate Report stated:
The Committee has been informed by the Securities and Exchange Commission that the Commission has adequate regulatory authority under the Securities Exchange Act of 1934 to require adequate disclosure of the costs of such credit. The Committee has also been informed in a letter from the SEC that "the Commission is prepared to adopt its own rules to whatever extent may be necessary."
In recommending an exemption for stockbroker margin loans in the bill, the Committee intends for the SEC to require substantially similar disclosure by regulation as soon as it is possible to issue such regulation.
S.Rep. No. 392, 90th Cong., 1st Sess. 9 (1967).

This history does not suggest, as Robertson argues, that congressional intent in the TILA governs the question whether a private remedy exists under Rule 10b-16. [FN4] Rather, the SEC's authority to issue Rule 10b-16 derives from an entirely different statute, section 10(b) of the Exchange Act. See *Abeles v. Oppenheimer & Co., Inc.,* 597 F.Supp. 532 at 535 (N.D.Ill. 1983). Both Congress and the SEC recognized that agency authority to promulgate the desired regulation would come from the Exchange Act, not the TILA. See note 3 *supra.* Therefore, we will not rely upon statements made by the 1968 Congress that passed the TILA in evaluating what the 1934 Congress intended. The underlying statute and the language from which a private right of action must be implied is section 10(b). [FN5] *Abeles,* 597 F.Supp. at 536.

---

FN4. Robertson's position is not without support in the district courts. *See, e.g., Haynes v. Anderson & Strudwick, Inc.,* 508 F.Supp. 1303, 1318-21 (E.D.Va.1981) (finding an implied cause of action under Rule 10b-16 through the TILA); *Furer v. Paine Webber, Inc.,* [1982 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 98,701 at 93,495 (C.D.Cal.1982) (looking to TILA but not finding a cause of action); *Angelastro v. Prudential-Bache Securities, Inc.,* 575 F.Supp. 270 (D.N.J.1983) (finding *Haynes* more persuasive than *Furer*).

FN5. *Abeles* also found that even if the TILA were the statute at issue, the basis for Congress' decision to exempt brokers from that legislation is unclear. The legislative history of the TILA says nothing about how credit disclosure by brokers is to be enforced; the court could find no guidance on whether Congress intended to subject brokers to private suit. See *Abeles,* 597 F.Supp. 535, at 536.

---

2. Section 10(b) Provides an Implied Remedy

[2] Section 10(b) makes it "unlawful for any person ...
(b) To use or employ, in connection, with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b) (1976).

The existence of a private right of action for violations of this subsection is well-established. *See, e.g., Herman & MacLean v. Huddleston,* 459 U.S. 375, 381 n. 10, 103 S.Ct. 683, 687 n. 10, 74 L.Ed.2d 548 (1983); *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 196, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976); *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 730, 95 S.Ct. 1917, 1922, 44 L.Ed.2d

539 (1975); _Superintendent of Ins. v. Bankers Life & Cas. Co.,_ 404 U.S. 6, 13 n. 9, 92 S.Ct. 165, 169 n. 9, 30 L.Ed.2d 128 (1971) ( "It is now established that a private cause of action is implied under § 10(b)."). The availability of this implied remedy is "simply beyond peradventure."*536 _Huddleston,_ 459 U.S. at 380, 103 S.Ct. at 687. FN6

> FN6. Moreover, many efforts, successful and unsuccessful, have been made to amend related sections of the federal securities laws. On none of these occasions did Congress see reason to limit the application of implied remedies under section 10(b). Longstanding judicial application of a court's statutory interpretation, the Supreme Court has said, when added to the failure of Congress to reject its reasoning, "argues significantly in favor of [its] acceptance." _Blue Chip Stamps v. Manor Drug Stores,_ 421 U.S. 723, 733, 95 S.Ct. 1917, 1924, 44 L.Ed.2d 539 (1975). See _Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Curran,_ 456 U.S. 353, 391 n. 92, 102 S.Ct. 1825, 1846 n. 92, 72 L.Ed.2d 182 (1982).

3. Congress Delegated Authority to Establish Rules

[3] To complete the first step in our inquiry under _Jablon, supra,_ we merely need to verify that Congress authorized the implementation of the statute with agency regulations. This is clearly the case here. Section 10(b) has been construed to confer a broad grant of authority on the SEC. See _Hooper v. Mountain States Securities Corp.,_ 282 F.2d 195, 202 (5th Cir.1960), _cert. denied,_ 365 U.S. 814, 81 S.Ct. 695, 5 L.Ed.2d 693 (1961). We have already found above that Rule 10b-16 was issued pursuant to this statutory provision.

B. _Section 10(b)'s Private Right of Action May Legitimately Be Implied into Rule 10b-16_

Having found that section 10(b) provides an implied remedy, we must decide whether Rule 10b-16 also provides one. We conclude that it does, because it is reasonably related to the statute and we find no justification for a departure from the general principle that the rulemaking power of an administrative agency is limited to implementation of statutory purposes. And this is so, even though in the case of section 10(b) the statutory 'purpose' of providing a private right of action has been implied as a matter of longstanding judicial construction rather than direct congressional intent.

1. Analytical Framework

The determination of whether a statute gives rise to an implied right of action is "basically a matter of statutory construction." _Transamerica Mortgage Advisors, Inc. v. Lewis,_ 444 U.S. 11, 15, 100 S.Ct. 242, 245, 62 L.Ed.2d 146 (1979).

[4] In most cases, unlike the present case, the task of statutory construction which leads to finding an implied remedy will focus upon congressional intent. _Id._ at 15-16, 100 S.Ct. at 245. In such cases, the implied remedy will also be read into the accompanying administrative rule, in a straightforward way, because an agency drafting rules pursuant to a statute is restricted to the scope of authority granted by the legislature. _E.g., Hochfelder,_ 425 U.S. at 213-14, 96 S.Ct. at 1391; _California v. Block,_ 663 F.2d 855 (9th Cir.1981). Therefore, if the rule in question is valid and furthers the substantive purposes of the enabling statute, and the statute provides a private right of action as a matter of congressional intent, we will imply the private right of action into the rule as well, regardless of agency intent. To do otherwise might constitute an unwarranted frustration of Congress' desire to supplement agency action with private enforcement.

[5] In the case of section 10(b), on the other hand, the private remedy has been implied not on the basis of congressional intent, but rather on the basis of a well-established judicial construction. Interpretation of rules which have been promulgated pursuant to a statute of this second type does not present the same danger of contravening Congress' desires as does interpretation in the former case. Therefore, a case of the latter type, we believe, gives rise only to a strong presumption that a rule drafted pursuant to such a statute reflects the governing judicial construction. Nonetheless, if this strong presumption is not overcome, the private remedy will be implied into the rule as long as it bears a reasonable relation to the statutory purposes.

[6] [7] [8] Having reached this point in the analysis of a regulation and its underlying *537 statute (of either type), the final task is to inquire whether the rule furthers the substantive purposes of the statute. Where Congress gives an agency authority to issue regulations defining statutory language, we may review a rule only to determine if it is reasonably

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

related to the substantive purposes of the enabling statute. *Mourning v. Family Pub. Serv. Inc.,* 411 U.S. 356, 359, 93 S.Ct. 1652, 1655, 36 L.Ed.2d 318 (1973). Such a regulation may be set aside only if the agency exceeded its statutory authority or the regulation is arbitrary, capricious, or otherwise not in accordance with law. *American Hosp. Mgt. Corp. v. Harris,* 638 F.2d 1208, 1212 (9th Cir.1981). Therefore, and in light of the above analysis, if the rule is reasonably related to the substantive purposes of its enabling statute, we will find that the regulation "was drafted such that a private action may be legitimately implied." *Jablon,* 614 F.2d at 679.

We find support for our analytical framework in *Haas v. Wieboldt Stores, Inc.,* 725 F.2d 71 (7th Cir.1984). There the court confronted the question whether SEC Rule 14a-7, which requires a corporation to mail a shareholder's proxy solicitation materials, creates an implied cause of action. Rule 14a-7 was issued pursuant to section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), which makes it unlawful to solicit a proxy for a registered security in violation of SEC regulations. *Haas* noted that in *J.I. Case Co. v. Borak,* 377 U.S. 426, 84 S.Ct. 1555, 12 L.Ed.2d 423 (1964), the Supreme Court had already implied a private remedy under section 14(a) and Rule 14a-9, which forbids misleading proxy materials. 725 F.2d at 73. The court then analyzed Rule 14a-7 and found that it, like Rule 14a-9, served the goals of section 14(a). *Id.* It held that a plaintiff-investor could therefore state a cause of action under that rule as well.

*Liang v. Dean Witter & Co.,* 540 F.2d 1107 (D.C.Cir.1976), engaged in a similar, albeit more truncated, analysis. In its final footnote that case addressed the very issue presented here: whether Rule 10b-16 provides for a private damage action. *Id.* at 1113 n. 25. *Liang* noted that Rule 10b-5, a broad anti-fraud provision which closely tracks the language of section 10(b), has long implied a civil remedy. Finding Rule 10b-16 to be "a rule of disclosure analogous" to Rule 10b-5, the court concluded that Rule 10b-16 must likewise provide such a remedy. *Id.*

2. Application to the Present Case

(a) The presumption is not overcome

[9] As indicated by the above analysis, there is a strong presumption that Rule 10b-16 provides the private right of action which exists generally for section 10(b), because the existence of the remedy in the statute is based upon a longstanding judicial construction rather than direct congressional intent.

[10] Although Robertson's Rule 10b-16 action does not fall within the following class, there may be certain cases in which the presumption is overcome and the rule in question is found not to provide the private right of action which is implicit in the enabling statute. For example, the SEC might clearly intend to prohibit private actions under a particular rule. Agency intent would then conflict with Congress' acquiescence in the governing judicial construction of section 10(b). In such a case, we believe that a court should consider carefully the SEC's position. In section 4(a) of the Exchange Act, Congress created the SEC to administer a complex regulatory framework. The enforcement scheme of the securities laws consists of a delicate balance of express, implied, and SEC actions. The implication of a new action will necessarily affect that balance in ways that the SEC may be best positioned to know. We do not hold, therefore, that courts should automatically imply a private action under every rule validly promulgated pursuant to section 10(b).

[11] In the present case, however, there is no indication that the SEC intended to prohibit private actions under Rule 10b-16. What little evidence is available points, if anywhere, to the opposite conclusion. Robertson*538 has called our attention to an amicus brief filed by the SEC at the request of the court in *Liang. See* 540 F.2d at 1112 n. 22. The SEC's analysis there seemed to recognize implicitly the existence of a private cause of action:

We do not know whether Dean Witter's disclosure in this case, under all circumstances, was entirely appropriate. *We believe however, that the plaintiff should be given an opportunity to establish whether the disclosure by Dean Witter in this case complied with the requirements of Rule 10b-16,* and that Dean Witter should be given an opportunity to adduce such facts as may demonstrate that it either (a) did not violate Rule 10b-16; or (b) should not be assessed any *damages,* under the circumstances of this case.

Amicus Brief at 9-10.

(b) Rule 10b-16 is reasonably related to section 10(b)

It is well-established that the Exchange Act was designed to protect investors against manipulation of securities prices on exchanges. *Ernst & Ernst v.*

*Hochfelder*, 425 U.S. 185, 195, 96 S.Ct. 1375, 1382, 47 L.Ed.2d 668 (1976). The Supreme Court has described section 10(b) in particular as a "catch-all" anti-fraud statute. *Chiarella v. United States*, 445 U.S. 222, 234-35, 100 S.Ct. 1108, 1117-18, 63 L.Ed.2d 348 (1980). We now examine whether Rule 10b-16 is reasonably related to the anti-fraud purposes of section 10(b). [FN7]

> FN7. We are unaware of specific legislative history showing that the Congress which enacted the Exchange Act believed that failure to disclose credit terms on margin loans could amount to a violation of section 10(b). *See generally* 4 J. Ellenberger & E. Mahar, *Legislative History of the Securities Act of 1933 and Securities Exchange Act of 1934* xvii (1973) (indexing relevant legislative history). In fact, we have already noted that it was Congress' concern with credit practices in the context of the TILA that prodded the SEC to promulgate Rule 10b-16. The lack of such material, however, is hardly fatal to the argument that Rule 10b-16 is reasonably related to the purposes of its enabling statute. Absent a contrary indication from the statute, we should be willing to accept the SEC's judgment to that effect, for it is not
> a reasonable canon of interpretation that the draftsmen of acts delegating agency powers, as a practical and realistic matter, can or do include specific consideration of every evil sought to be corrected.... [N]o great acquaintance with practical affairs is required to know that such prescience, either in fact or in the minds of Congress, does not exist. Its very absence, moreover, is precisely one of the reasons why regulatory agencies such as the Commission are created, for it is the fond hope of their authors that they bring to their work the expert's familiarity with industry conditions which members of the delegating legislatures cannot be expected to possess.
> *Mourning, supra*, 411 U.S. at 372-73, 93 S.Ct. at 1662 (quoting *American Trucking Ass'ns v. United States*, 344 U.S. 298, 309-10, 73 S.Ct. 307, 314-15, 97 L.Ed. 337 (1953) (citations omitted)).

*Liang*, by emphasizing that both Rule 10b-5 and Rule 10b-16 prohibit nondisclosure, implied that Rule 10b-16 was also within its statutory scope. *See* 540 F.2d at 1113 n. 25. We believe the question is more subtle, however, than *Liang*'s brief analysis suggested. Rule 10b-16 is more narrowly drafted than Rule 10b-5. The latter proscribes fraud or the failure to disclose material information in connection with the purchase or sale of securities. Rule 10b-16, by contrast, is concerned only with the disclosure of credit terms in such transactions. We must decide whether the SEC had a rational basis for believing that the extension of margin credit with undisclosed terms and conditions could constitute a manipulative or deceptive act proscribed by section 10(b).

[12] Dean Witter disagrees with the premise that Rule 10b-16 is intended to ensure a particular *level* of disclosure. It argues instead that the Rule is designed only to require that brokers implement *procedures* to disseminate credit terms to customers. We reject this view. The plain language of the Rule mandates that procedures be established precisely to ensure disclosure to customers. A broker may not extend credit unless he has "established procedures *to assure* that *each customer* is given or sent at the time of opening an account, a written statement or statements *disclosing*" applicable credit terms. *531 17 C.F.R. § 240.10b-16 (emphasis added). As we noted above, the SEC intended to issue a regulation whose effect in the securities field would be similar to that of the TILA in the consumer credit business. [FN8] We believe, therefore, that Rule 10b-16 was designed as a consumer disclosure provision to protect investors, not as a measure to restructure brokerage firms' back offices. [FN9] *See* Note, *SEC Rule 10b-16 and the Regulation of Margin Credit*, 87 Yale L.J. 372, 375 (1977) ("Yale Note").

> FN8. When it promulgated Rule 10b-16, the SEC announced its policy of disclosure as follows:
> The initial disclosure is designed to insure that the investor, before his account is opened, understands the terms and conditions under which credit charges will be made. This will enable him to compare the various credit terms available to him and to understand the methods used in computing the actual credit charges.
> Securities Exchange Act Release No. 34-8773, 34 F.R. 19717 (1969).

> FN9. In calling attention here to the SEC's view of what Rule 10b-16 means, we do not retreat from our earlier position that reliance should generally not be placed upon agency

intent in deciding whether a rule creates a private action. Here we are inquiring into what the text of the Rule means and not into whether a private right of action should be implied. The SEC's explanation is important only insofar as it aids us in deciding whether the Rule's overall meaning is consonant with congressional purposes.

[13] We find that the disclosure provisions of Rule 10b-16 are reasonably related to the anti-fraud goals of section 10(b). Indeed, the Rule is a catalogue of the kind of disclosures a customer might consider material with respect to his margin account. *See* Yale Note, 87 Yale L.J. at 394. At the time an investor opens such an account, he may need to understand exactly when the broker will call for additional collateral. That information is obviously important since a failure to supply such collateral can result, as it did here, in a forced sale of the securities from the customer's account. *See Liang,* 540 F.2d at 1111. Furthermore, a customer who receives the information in a timely manner may decide to open his account with another broker whose collateral policies are different, or not to open an account at all. *See* Note, *Rule 10b-16,* 51 N.Y.U.L.Rev. 1050, 1075-76 (1976) ("NYU Note"). We conclude that "Rule 10b-16 ... directly advances the purpose of section 10(b)." *Abeles, supra,* 597 F.Supp. at 536.

We hold, therefore, that the second half of the *Jablon* test is satisfied and margin investors may thus bring private actions for violations of the Rule. [FN10]

FN10. Dean Witter argues that *SEC v. Seaboard,* 677 F.2d 1301 (9th Cir.1982), should apply to our analysis of Rule 10b-16. *Seaboard* held that section 15 of the Exchange Act does not create a private remedy. *Id.* at 1313-14. Dean Witter points out that SEC Rule 15c2-5, promulgated pursuant to section 15(c), proscribes many of the same credit practices as does Rule 10b-16. It then argues that *Seaboard* and the similar subject matter of the two rules would make a private remedy under one rule but not the other anomalous. We do not find this argument persuasive. *Seaboard* based its holding on the specific ground that the legislative history of section 15 indicated that Congress did not intend to imply private liability. *Id.* at 1314 n. 16. Rule 10b-16, of course, was promulgated pursuant to section 10(b) of the Exchange Act. That section is addressed to different legislative concerns and unquestionably provides an implied private remedy. Moreover, the fact that manipulative credit practices may be addressed by another provision of the Exchange Act does not give us reason to carve out an exception to section 10(b). In *Herman & MacLean v. Huddleston,* 459 U.S. 375, 103 S.Ct. 683, 74 L.Ed.2d 548 (1983), the Supreme Court concluded that the existence of an express remedy for defrauded purchasers of registered securities under section 11 of the Securities Act of 1933, 15 U.S.C. § 77k, did not preclude such purchasers from also pursuing their implied remedy under section 10(b). *See* 459 U.S. at 382-83, 103 S.Ct. at 688. We have examined Rule 10b-16 and found that it is reasonably related to the purposes of section 10(b). The presence or absence of remedies elsewhere cannot alter this analysis.

II. *Scienter Is Required*

[14] As we previously noted, the district court may have dismissed this lawsuit on the ground that Robertson failed to plead scienter. Having decided that Rule 10b-16 provides for private actions, we now reach the question whether an allegation of scienter is also necessary to maintain such an action.

*540 The starting point for our inquiry is *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976). There the Supreme Court concluded that plaintiff could not maintain a private cause of action for damages under section 10(b) and Rule 10b-5 without alleging scienter. *See* 425 U.S. at 193, 96 S.Ct. at 1380. Robertson argues that Rule 10b-16 shares the language and history of the TILA, rather than those of the statute and rule at issue in *Hochfelder.* He contends that the mechanical nature of the disclosure standards in the TILA precludes us from imposing a scienter requirement on actions brought under Rule 10b-16. Above, however, we rejected Robertson's premise and decided that the SEC's authority to issue Rule 10b-16 derives instead from section 10(b). *Hochfelder* therefore applies.

*Hochfelder* rested its holding on the plain meaning of the language of section 10(b). The Court found that the words Congress chose-"manipulative," "device," and "contrivance"-clearly evince an intent to proscribe only "knowing or intentional misconduct." 425 U.S. at 197-99, 96 S.Ct. at 1382-83. The plain

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

meaning, in fact, was thought to be so unambiguous as to suggest that "further inquiry may be unnecessary." *Id.* at 201, 96 S.Ct. at 1385. *See Aaron v. SEC,* 446 U.S. 680, 690, 100 S.Ct. 1945, 1952, 64 L.Ed.2d 611 (1980) (holding that scienter must be an element of civil enforcement actions brought by the SEC to enjoin violations of Rule 10b-5).

Turning to Rule 10b-5, *Hochfelder* noted that the SEC's power to promulgate regulations is necessarily limited by what Congress has granted in section 10(b). *Hochfelder,* 425 U.S. at 213, 96 S.Ct. at 1391. Because the scope of Rule 10b-5 could not exceed that power, the Court decided that the Rule also must be restricted to conduct involving scienter. *Id.* at 214, 96 S.Ct. at 1391. The same rationale requires us to hold that pleading scienter is requisite to maintaining an action brought pursuant to Rule 10b-16.

*Hochfelder* also found support for its construction of section 10(b) in the structure of the Securities Act of 1933 and the Exchange Act of 1934. The Court noted that in each instance in which Congress had expressly created a civil remedy, it also specified the standard of liability. *See* 425 U.S. at 208-10, 96 S.Ct. at 1388-89. To apply section 10(b) to conduct that is merely negligent, the Court decided, would ignore the fact that when Congress intended to accomplish that result it did so expressly, and subjected such actions to procedural restrictions not found under section 10(b). *Id.* at 206-11, 96 S.Ct. at 1387-89. Robertson's reliance on the structure of the TILA for the proposition that a Rule 10b-16 action does not require an allegation of scienter is wrong for the same reason. The relevant statute in this case is section 10(b). We would contradict Congress' clear intent were we to allow Robertson to bootstrap the absence of the need to allege scienter under the TILA into section 10(b).

We are well aware of the problem created by subjecting actions based on the disclosure standards of Rule 10b-16 to a scienter requirement. An investor may have difficulty demonstrating that a brokerage firm intended to deceive him about its margin credit terms or forms. *See* Yale Note, 87 Yale L.J. at 390 n. 66. The fact that Rule 10b-16 owes its statutory authority to section 10(b) of the Exchange Act may thus undercut its effectiveness as a scheme of margin disclosure regulation. *Id.* at 384-94; NYU Note, 51 N.Y.U.L.Rev. at 1066-76.

[15] This is not the only anomaly created by Congress' exemption of securities transactions from the TILA in favor of SEC regulation, however. Gaps in the coverage of both the TILA and Rule 10b-16 cause investors who engage in essentially similar transactions to be treated differently. For example, the TILA applies only to commercial credit transactions involving less than $25,000. 15 U.S.C. § 1603(3), (5). The TILA thus covers customers who borrow less than $25,000 on margin from lenders other than brokers, while a similar loan from a broker would be covered by the Rule. On the other hand, the Rule would *541 apply to a margin loan of more than $25,000 from a broker, but such a loan from a bank would be outside both the TILA and the Rule. *See* Yale Note, 87 Yale L.J. at 383-84. It is beyond our power to resolve such inequalities; plaintiffs who find their remedies inadequate must look to Congress.

[16] Although Robertson chose not to plead any facts from which scienter could be inferred, it is not clear from the record that he cannot plead such facts. Since dismissal under Fed.R.Civ.P. 12(b)(6) should not be affirmed unless it is clear that the complaint could not be saved by any amendment, *see Gillespie v. Civiletti,* 629 F.2d 637, 640 (9th Cir.1980), we remand to give Robertson the opportunity to plead scienter.

REVERSED AND REMANDED.

C.A.Cal.,1984.
Robertson v. Dean Witter Reynolds, Inc.
749 F.2d 530, Fed. Sec. L. Rep. P 91,868, 53 USLW 2328

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.