# EXHIBIT A

IN THE SUPERIOR COURT

OF THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A BISOM,<br><br>                Plaintiff,<br><br>         v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, LEO L. LAMOTTE, CNMI Public Auditor, in his official capacity, ROBERT D. BRADSHAW, formerly appointed Temporary Public Auditor, in his <u>individual</u> capacity, SCOTT KHENG SHANG TAN, formerly CNMI Public Auditor, in his <u>individual</u> capacity,<br><br>                Defendants. | CIVIL ACTION NO. 96-1320<br><br><br><br>DECISION AND ORDER |

## I. INTRODUCTION

THIS MATTER came before the court on March 30, 2000 on Plaintiff's Application for Attorney's Fees and Request for Indemnification Determinations pursuant to 7 CMC §2304(d). Jay Sorenson appeared on behalf of the plaintiff, Robert A. Bisom ("Bisom"). David Sosebee appeared on behalf of the defendants, the CNMI government ("CNMI") and Robert D. Bradshaw

("Bradshaw")(collectively the "Defendants"). The court heard counsels' oral arguments and took the matter under advisement. The court now renders its decision.

## II. ISSUES

1. Whether 7 CMC § 2304 ("The Public Employee Legal Defense and Indemnification Act") requires Defendant, Robert D. Bradshaw, to submit a request to be indemnified before the court can make a determination of actual fraud, actual malice or willful criminal intent.

2. Whether Plaintiff, Robert A. Bisom, a prevailing party, is entitled to recover attorney's fees under 1 CMC § 8153 ("The Political Coercion Statute") where Bisom did not adequately identify the time spent on matters related to the political coercion claim.

## III. FACTUAL AND PROCEDURAL BACKGROUND

The issues before this court arose out of an action filed by Bisom against the CNMI, Public Auditor Leo L. Lamotte, and former Public Auditors Robert Bradshaw and Scott Tan. After a jury trial, the jury rendered a general verdict with special findings. On February 28, 2000, Bisom filed a petition, requesting the court to determine whether Bradshaw should be indemnified by the CNMI pursuant to the Public Employee Legal Defense and Indemnification Act, 7 CMC §§ 2301 et seq. Specifically, Bisom asked the court to determine whether Bradshaw acted within the scope of his employment and whether Bradshaw acted with actual fraud, actual malice or with willful criminal intent. (See Pl.'s Req. for Indemnification Determinations Pursuant to 7 CMC §2304(d), p. 1.) On March 1, 2000, Bisom filed a second motion, asking the court to grant his application for attorney's fees for 415.1 hours, which his counsel incurred in litigating this action.

On March 9, 2000, Defendants filed an objection to Bisom's request for indemnification determinations on the basis that Bradshaw never requested to be indemnified by the CNMI. Defendants also argue that Bisom's application for attorney's fees should be denied on the grounds that the total amount of hours identified in the application does not reflect the actual hours attributed to the political coercion claim. Specifically, Defendants challenge the billing of 91.6 hours, which they claim Bisom's attorney spent on matters unrelated to the political coercion claim. They also question

the accounting of 309.1 hours, which Bisom did not clearly identify as time spent on matters dealing with the political coercion claim. On March 10, 2000, the court entered an order and judgment, which included a judgment for Plaintiff against Bradshaw in the amount of $139,000.

## IV. ANALYSIS AND DISCUSSION

A.  Indemnification

7 CMC § 2304 reads as follows:

> **Request for Defense; Payment of Defense, Settlement or Judgment; Implied Right of Indemnification; Findings Required.**
> (a) *General Rule for Public Defense of an Action.* At the public entity's discretion, either a public entity shall pay for an employee's defense by an attorney accepted by the employee and the Attorney General or his designee, or the public entity shall defend the employee, and the public entity shall pay any settlement (to which the public entity has agreed) or any judgment if::
> > (1) The employee requests the public entity to pay for his defense or to defend him against any claim against him for an injury arising out of an act that he reasonably and in good faith believes has occurred within the scope of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);
> > (2) The employee has not acted because of actual fraud, actual malice, or willful criminal misconduct;
> > (3) The employee reasonably cooperates in good faith in the defense of the claim; and
> > (4) The employee makes his request in writing to the public entity not less than five days before an answer must be filed; provided, that an employee against which a claim is pending on June 24, 1986, shall have 60 days within which to make his written request.
> The acceptance of an attorney under this subsection (a) of this section shall not be unreasonably withheld by the Attorney General or his designee.
> (b) *Public Entity's Implied Right of Indemnification.* If a request is made under subsection (a) of this section, and if there is a potential conflict of interest between the defense of the public entity and the employee, the employee shall be notified of the potential conflict of interest, and both parties may waive the potential conflict of interest. The public entity shall be deemed to have reserved the right to seek indemnification against the employee under subsection (a) of this section after settlement of or judgment upon any claim.
> (c) *Public Entity's Right to Seek Indemnification Defined.* If a public entity pays any defense fees or any claim or judgment either itself or against any employee, for an injury arising out of an act of the employee, the public entity may recover from the employee the amount of its payment only if:
> > (1) The employee's liability did not arise out of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);
> > (2) The employee acted because of actual fraud, actual malice, or willful criminal misconduct; or

- 3 -

> (3) The employee willfully failed or refused to conduct the defense of the claim in good faith.
>
> (d) *Findings of Fact Required.* Prior to the entry of judgment upon any claim coming under subsection (a) of this section, any party may request the court to determine if:
>
>> (1) The employee has acted within the scope of his employment; and
>> (2) The employee has acted because of actual fraud, actual malice, or willful criminal misconduct.

7 CMC § 2304. This section imposes a duty upon the defendant employee to request the public entity to defend him or her and within the 5 day time-limit provided for in subsection (a)(4).

Bisom's request for findings of fact under 7 CMC § 2304(d) is futile. 7 CMC § 2304(d) is triggered by a proper request for indemnification, pursuant to 7 CMC § 2304(a), which must be submitted by the defendant employee to the public entity in which he or she works. Without such a request, a finding of actual fraud, actual malice or willful criminal misconduct would not be appropriate.

The court finds no evidence that Bradshaw made a request to the public entity to be indemnified pursuant to 7 CMC § 2304(a). Therefore, Bisom's request for indemnification determinations pursuant to 7 CMC § 2304(d) is hereby **DENIED**.

**B.   Attorney's Fees**

At the close of Bisom's trial, the jury found in his favor on the political coercion claim. A person who prevails in his or her claim of political coercion may recover from the perpetrator of the political coercion attorney's fees incurred in matters related to the prosecution of such claim. 1 CMC § 8153. Initially, Bisom sought this court's approval for its application for attorney's fees in the amount of $83,020.00, which is based on a total of 415.1 hours incurred at a rate of $200.00 per hour. The Defendants objected to Bisom's calculations for attorney's fees and moved the court to require Bisom to resubmit his application in more detail and only as to those hours spent litigating the political coercion claim. Bisom responded by stating the difficulty in dividing the hours spent on every claim based on the fact that they all involved the same set of facts and related legal theories. To support his argument, Bisom cited *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983), for the proposition that the court, in determining reasonable attorney's fees in an action involving both successful and unsuccessful claims, should focus on the significance of the overall relief obtained in

relation to the hours reasonably expended on the litigation. *Id.*, 461 U.S. at 435, 103 S.Ct. at 1940. However, at the hearing held on March 30, 2000, Bisom agreed to accept, in satisfaction of his fees, 50% of his original request.

### 1. The Methodology

In *Hensley*, the Supreme Court addressed the issue of whether a partially prevailing plaintiff may recover attorney's fees for legal services incurred in litigating unsuccessful claims. The Court, in its analysis, began by deriving a "lodestar" figure, which is essentially the result of the hours plaintiff's counsel reasonably spent on the litigation multiplied by a reasonably hourly rate. *Hensley*, 461 U.S. at 433, 103 S.Ct. at 1939. The burden is on the prevailing party to show the reasonableness of the hours claimed. *Id.* The court may then reduce this figure accordingly where the documentation of hours is inadequate or where the hours were not "reasonably expended". *Id.* This "lodestar" figure may then be further adjusted upward or downward based on certain considerations, most importantly whether the unsuccessful claims are related to the successful claims. *Schwarz v. Secretary of Health and Human Services*, 73 F.3d 895, 901 (9th Cir.1995).

If the court finds that the unsuccessful claims are related to the successful claims, then the court should evaluate the significance of the overall relief plaintiff obtained in relation to the hours reasonably expended on the litigation. *Id.* at 901-902. If the successful and unsuccessful claims are unrelated, then the unsuccessful claims should not be considered in any reasonable fee award. *Id.* at 901. The court has discretion in deciding what is a reasonable fee and may attempt to identify specific hours that should be eliminated or simply reduce the award to account for the limited success. *Hensely*, 461 U.S. at 436-437, 103 S.Ct. at 1941.

The court notes that the cases cited above dealt with attorneys' fees under the Civil Rights Attorneys' Fees Award Act, which applies to prevailing parties in federal civil rights cases. The statute, which is the basis for attorney's fees in Bisom's case, allows the recovery of attorney's fees only as to the attorney's time spent in litigating the political coercion claim. The court is not aware of any CNMI statute or case law that addresses the precise issues raised here. Thus, the court will apply the methodology suggested in *Hensley* and its progenies in order to make a reasonable decision as to attorney's fees in this case.

### a. The "Loadstar" Figure

Applying the methodology, the court finds that Bisom's application for 415.1 hours is reasonable in light of the complexity of his case, the number of claims advanced, and the length of time the action was in litigation. The court also finds that Bisom's counsel's fee rate of $200 per hour is reasonable in light of his experience and because the rate is in line with those charged by other lawyers performing similar services in the community. Multiplying the 415.1 hours by the hourly rate of $200 amounts to $83,020.00. This represents the "lodestar" figure.

### b. Inadequate Records

Bisom's time records fail to properly document the subject matter indicating the nature of the time his counsel spent working on his case. Thus, the court finds appropriate a reduction of the "lodestar" figure by 15% or $12,453.00. This percentage is reasonably conservative compared to the lower court's ruling in *Hensley*, which was acknowledged by the U.S. Supreme Court as a proper reduction of one counsel's hours by 30% "to account for his inexperience and failure to keep contemporaneous records." *Hensley*, 461 U.S. at 438 n.13, 103 S.Ct. at 1942 n13. This reduction leaves $70,567.00 as the new "lodestar" figure.

### c. Unsuccessful Claims

Turning to the claims, the court begins its analysis by determining Bisom's success in litigating his case. Bisom originally brought nine claims against the Defendants, one of which was the quantum meruit claim against the CNMI that the parties settled out of court. Of the eight claims that were brought to trial, Bisom was unsuccessful in litigating three of them. He was not successful in his claim for promissory estoppel against the CNMI and Defendant Scott Tan ("Tan"), his claim for fraudulent misrepresentation against Defendant Tan, and his claim for indemnification against the CNMI. If these unsuccessful claims are unrelated to Bisom's successful claims, they should not be considered in assessing reasonable attorneys fees. Related claims are claims involving a common core of facts or that are based on related legal theories. *Thorne v. City of El Segundo*, 802 F.2d 1131, 1141 (9th Cir.1986). Unrelated claims are those that are distinctly different and are based on different facts and legal theories. *Id.* In determining what claims are related and unrelated, the test is "whether the relief

- 6 -

sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and separate from the course of conduct that gave rise to the injury on which the relief granted is premised.'" *Id.* (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir.1983)).

In applying the test in *Thorne*, the court finds that the two unsuccessful claims against Defendant Tan are unrelated to the successful claims in that the alleged course of conduct that gave rise to the claims against Defendant Tan occured after Bisom's employment termination and are therefore distinct. Furthermore, the claim for indemnification arose out of Bradshaw's conduct in filing a complaint against Bisom with the CNMI Bar Association and not in relation to his employment termination. Thus, the court finds it reasonable to reduce the adjusted "lodestar" figure by 37.5%[1], which amounts to $26,462.63. This leaves $44,104.37 as the new "loadstar" figure.

### d. Successful Claims

With respect to the remaining five claims, Bisom was successful in litigating the following: (1) violations of Plaintiff Bisom's due process rights; (2) breach of contract; (3) wrongful termination; (4) intentional infliction of emotional distress; and (5) political coercion. With respect to the claim for violations of due process, Bisom sued both the CNMI and Bradshaw. The claims for breach of contract and wrongful termination were against the CNMI only. And, the claims for intentional infliction of emotional distress and political coercion were against Bradshaw only. All these claims ultimately arose out of the single act of terminating Plaintiff Bisom from his employment. However, only Bradshaw, in his individual capacity, was sued and found liable for political coercion. As such, it is improper to consider the claims against the CNMI, for breach of contract and wrongful termination, in assessing attorney's fees as authorized by the political coercion statute (1 CMC § 8153). Thus, the court finds it reasonable to further adjust the "lodestar" figure downward by 25%[2] or $11,026.09. This leaves a remaining total of $33,078.28.

---

[1] Because of the poor documentation of hours, the court will allocate equal time among the eight claims. Therefore, each claim will be allocated 12.5% of the time spent in the litigation. The 12.5% is derived by dividing 100% by 8 claims.

[2] *Id.*

-7-

With respect to the remaining three claims, (1) violations of due process (by Bradshaw); (2) intentional infliction of emotional distress; and (3) political coercion, the court finds them to be related successful claims. The relief sought in these three cases, including the political coercion claim, was for monetary damages against Bradshaw for his actions in improperly terminating Bisom's employment. These actions arose from the same course of conduct and a common core of facts. Therefore, a reasonable award of attorney's fees for political coercion involves consideration of the time spent litigating these three remaining claims. Thus, the court finds the adjusted "lodestar" figure in the amount of $33,078.28 to be a reasonable award of attorney's fees.

The court finds that the reduction in hours and the ultimate fee award are reasonable in light of Bisom's counsel's vague documentation of hours, the scope of the fee recovery authorized by the political coercion statute, and the level of success achieved against Bradshaw. The court finds support in *Rural Water System v. City of Sioux*, 38 F.Supp.2d 1057 (1999), where the district court reduced the prevailing party's request for attorney's fees based on what the court believed were hours not reasonably expended or hours expended on unrelated claims. In *Rural Water System*, the court made an across-the-board reduction of 20% for lack of success on state law claims where the claims involved proof of facts distinct from those required to prove the federal claim. The court also made an across-the-board reduction of 10% to account for the difference in the prevailing party's relief requested and granted. Then, the court reduced another 10% for the many examples of excessive billing indicated in counsel's application. The court, however, declined to make any reductions for "block billing" because the prevailing party rectified its initial block billing inadequacy by providing clearly itemized records of hours incurred. *Rural Water System*, 38 F.Supp at 1064-66. Unlike the prevailing party in *Rural Water System*, Bisom did not replace the time records he initially submitted with a revised documentation clearly identifying the subject matter of his time expenditures.

As emphasized in both *Hensely* and *Schwarz*, the burden is on the applicant for attorney's fees to provide the court with a record of hours that clearly identifies the basis or subject matter for the expenditure. The court "[will] not view with sympathy any claim that a district court abused its discretion in awarding unreasonably low attorney's fees in a suit in which [plaintiff was] only partially

successful if counsel's records do not provide a proper basis for determining how much time was spent on particular claims." *Hensley*, 461 U.S. at 437 n.12, 103 S.Ct. at 1941 n.12 (quoting *Nadeau v. Helgemoe*, 581 F.2d 275, 279 (1st Cir.1987)).

## V. CONCLUSION

For the foregoing reasons, Bisom's request for determinations of actual fraud, actual malice or willful criminal intent pursuant to 7 CMC § 2304(d) is hereby **DENIED** on the ground that Defendant Bradshaw did not request to be indemnified as required by 7 CMC § 2304(a). As to Bisom's request for attorney's fees, the court hereby reduces Bisom's request from $83,020.00 to $33,078.28. This figure is reasonable in light of Bisom's counsel's vague documentation of hours, the scope of the fee recovery authorized by the political coercion statute, and the level of success achieved against Bradshaw.

SO ORDERED this 7th day of June, 2000.

ALEXANDRO C. CASTRO, Judge Pro Tem