# EXHIBIT B

FOR PUBLICATION

FILED
CLERK OF COURT
CNMI SUPREME COURT
DATE/TIME: 9-13-02  3:19
BY: _____
CLERK

Appeal Nos. 2000-016, 2000-023
(Consolidated)

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

---

**ROBERT A. BISOM,**
Plaintiff-Appellant,

v.

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS and
LEO L. LAMOTTE, CNMI Public Auditor, in his official capacity.**

Defendants-Appellees.

---

**OPINION and ORDER**

Cite as: *Bisom v. Commonwealth*, 2002 MP 19

Hearing held March 28, 2002

For Plaintiff-Appellant:

Jay H. Sorenson, Esq.
P.O. Box 1184
Saipan, MP 96950

For Defendants-Appellees:

Andrew Clayton, Esq.
Assistant Attorney General
Office of the Attorney General
P.O. Box 5241 CHRB
Saipan, MP 96950

BEFORE:    John A. MANGLONA, Associate Justice, Pedro M. ATALIG, Justice Pro Tempore, Timothy H. BELLAS, Justice Pro Tempore.

MANGLONA, Associate Justice:

¶1    Appellant Robert A. Bisom (hereinafter "Plaintiff" or "Bisom") appeals decisions of the trial court excluding evidence and denying plaintiff's request for indemnification determinations. We have jurisdiction pursuant to Article IV § 3 of the Constitution, and 1 CMC § 3102 (a).[1] We affirm the trial court's decisions.

## ISSUES PRESENTED AND STANDARDS OF REVIEW

¶2    The following issues are presented for our consideration:

I.    Whether the trial court erred in limiting the scope of damages by its ruling denying admission into evidence plaintiff's calculations of future loss of income and its rulings limiting plaintiff's closing argument on the subject of future income loss.

II.    Whether the trial court erred in denying plaintiff's request for indemnification determinations pursuant to 7 CMC § 2304(d) on the basis that there was no evidence of a written request by defendant Bradshaw under section 2304(a).

¶3    Rulings pertaining to the admission of evidence are reviewed on appeal for abuse of discretion. *Manglona v. Kaipat*, 3 N.M.I. 322 (1992); *Commonwealth v. Brel*, 4 N.M.I. 200 (1994). The rulings of a trial judge on objections made during closing argument to a jury are reviewed for abuse of discretion. *U.S. v. Patel*, 762 F.2d 784 (9th Cir. 1985).

¶4    Issues involving construction and application of a statute are reviewed de novo on appeal. *In re Estate of Tudela*, 4 N.M.I. 1 (1993). A court's findings of fact are reviewed

---

[1] Com. R. App. P. 28 (l) requires a statement of jurisdiction. The Government provided one in its reply brief. Bisom did not provide one in either of his Opening briefs. Pursuant to Com. R. App. P. 3(a), our Order below includes sanctions in the amount of $100.00 dollars for Bisom's failure to comply with the Commonwealth's rules of appellate procedure.

under a clearly erroneous standard. *Stewart v. Thorpe Holding Co. profit Sharing Plan,* 207 F.3d 1143 (9th Cir. 2000). Mixed questions of law and fact are reviewed de novo. *Sablan v. Cabrera,* 4 N.M.I. 133 (1994).

### FACTUAL AND PROCEDURAL BACKGROUND

¶5        In March, 1993, the Office of the Public Auditor executed a two-year Excepted Service Employment Contract with Bisom to serve as Legal Counsel for the Office of the Public Auditor. Bisom worked under Public Auditor Scott Tan. Subsequently, Robert D. Bradshaw ("Bradshaw") was appointed Temporary Public Auditor. Bradshaw terminated Bisom's employment without cause, later withdrew that termination and then terminated Bisom's employment with cause.

¶6        Bisom filed his original Complaint on December 5, 1996.    On November 18, 1998 plaintiff filed his Fourth Amended Complaint. This complaint sought compensation for various violations of the plaintiff's rights under the CNMI and U.S. Constitutions, breaches of contract, wrongful discharge, intentional infliction of emotional distress, indemnification, violations of the Civil Service Act, quantum meruit, promissory estoppel and fraudulent misrepresentation. The matter came to trial on February 7, 2000.[2]

¶7        During the trial, the plaintiff attempted to offer into evidence testimony informing the jury as to the amount of future income Bisom calculated he lost as a result of the actions of the defendants.    Defendants objected on the ground that it called for speculation and that it was a question that required actuarial and economic input from an expert. The trial court sustained the objection.

¶8        Plaintiff also offered Exhibit BL into evidence, which contained calculations done by plaintiff to illustrate his post-contract loss of income due to his inability to practice

---

[2] The trial court entered default judgment as to defendant Bradshaw.

law. Defendants objected to the admission of Exhibit BL; the trial court sustained the
objection. Additionally, when plaintiff's counsel attempted to argue certain facts for the
recovery of post-contract loss of income during final arguments, the defendants objected;
the trial court sustained the objection.

¶9          The jury returned its general verdict with special findings on February 25, 2000 in
favor of plaintiff as to defendants Bradshaw and the government. The jury found the
government liable for $110,300.00 and Bradshaw liable for $89,000 in compensatory and
$50,000 in punitive damages. On February 28, 2000, plaintiff filed his Request for
Indemnification Determinations pursuant to 7 CMC § 2304(d). On June 7, 2000, the trial
court issued a Decision and Order denying plaintiff's request. This appeal ensued.

## ANALYSIS

I.    **Whether the trial court erred in limiting the scope of damages by its ruling
denying admission into evidence of plaintiff's calculations of future loss of
income and its rulings limiting plaintiff's closing argument on the subject of
future income loss.**

A.    Arguments

¶10          Bisom argues that the trial court abused its discretion in excluding the testimony
and exhibit concerning Bisom's estimates as to his lost future earnings. Bisom
acknowledges that some authority exists for the proposition that expert or actuarial
evidence is required before submitting the issue of future lost earnings and their present
value to a jury, citing *Ballantine v. Central R.R.*, 460 F.2d 540 (3rd Cir. 1972) *cert denied*,
409 U.S. 879, 93 S.Ct. 133, 34 L.Ed.2d 133 (1972). However, Bisom argues that all
courts that have subsequently addressed the issue have rejected that view, citing *Cassino
v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987); *Bonura v. Sea Land Service,
Inc.*, 505 F.2d 665, (5th Cir. 1974); *Heater v. Chesapeake & O. Ry.*, 497 F.2d 1243, 1249-

4

50 (7th Cir.1974); *Duncan v. St. Louis S.F. Ry.*, 480 F.2d 79,87 (8th Cir. 1973); and *Baynum v. Chesapeake & O. Ry.*, 456 F.2d 658, (6th Cir. 1972). As such, Bisom argues "the overwhelming majority and better rule on the issue whether expert and actuarial testimony is a prerequisite to allowing recovery for lost income in the future is that it is not required."

¶11        The Appellees did not address this issue in their brief.  At oral arguments, the Appellees stated:

> There is a split of opinion out there.  It is detailed in [Bisom's] Brief.  And we believe that the actual better interpretation is the one that was reached by [the trial court] and that actuarial evidence is required because it is very difficult for juries to figure out what future loss of earnings means.  And therefore, if you read the cases, I think you will come to that same conclusion.

> B.    The Commonwealth's rules of evidence preclude Bisom from offering his opinions as to his lost future income.

¶12        There is no dispute between the parties that lost future earnings were compensable in this case, should the jury so decide.  Indeed, the trial court correctly instructed the jury with Jury Instruction No. 39, which included "The reasonable value of earnings and earnings capacity, employment and employment opportunities which with reasonable probability will be lost in the future."  The dispute centers on whether Bisom was sufficiently qualified to offer his opinions as to his lost future income.

¶13        Pursuant to Com. R. Evid. 602, "A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."  Also, Com. R. Evid. 701 states "If the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (1) rationally based on the perception of the witness and

5

(2) helpful to a clear understanding of his testimony or the determination of a fact in issue." It is clear, then, that a lay witness may only testify to matters about which he has personal knowledge, and may offer only relevant opinions that are rationally based on his perception.

¶14    None of the cases cited by Bisom convince us that the trial court abused its discretion by disallowing the proffered testimony, exhibit or argument. The majority of cases cited by Bisom and the government are not germane to this issue. The cases focus primarily on whether expert advice is needed to explain to the jury the computation of the present value of any award for lost future earnings that was sufficiently proven. Such is not the case here.

¶15    However, the one 9th Circuit case cited by Bisom, *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987), does stand for the proposition that expert testimony is not needed to establish future earnings and pay raises.

> Moreover, expert testimony is not required to prove what the plaintiff would receive in future earnings and raises. Here, Cassino testified about his projected earnings based primarily on his own periodic pay increases during more than twenty years of employment at Reichhold. Therefore, Cassino's evidence was sufficient to establish the loss of future earnings and benefits.

*Cassino*, 817 F.2d at 1348 (citations omitted). Thus, it appears that in the 9th Circuit, expert testimony is not always required to prove what the plaintiff would receive in future earnings and raises. This is so even though Fed.R.Evid. 602 requires witnesses to have personal knowledge of matters about which they testify.

¶16    However, this is not to say that expert testimony is never required to prove what the plaintiff would receive in future earnings and raises. An examination of *Kolb v. Goldring, Inc.*, 694 F.2d 869 (1st Cir.1982), *Maxfield v. Sinclair International*, 766 F.2d

6

788 (3d Cir. 1985) and *Cassino* is instructive.

¶17        In *Kolb*, the plaintiff was fired after two and one half years on the job. *Kolb*, 694

F.2d at 871. He brought suit alleging age discrimination, and was awarded $90,000 in

compensatory and liquidated damages. *Id.* The defendants appealed, alleging that the

jury award was excessive. *Id.* The jury's award included, among other things, the

amount of prospective raises in salary the plaintiff lost due to his termination. *Id.* at 872.

Reducing this portion of the award[3], the Court stated,

> Recovery for raises an employee might reasonably have anticipated had he
> not been wrongfully discharged has been allowed in ADEA [Age
> Discrimination in Employment Act] cases. However, where awarded,
> either under the ADEA or in other contexts, the projection has been based
> on expert testimony, patterns of past increases, or similar evidence. . . .
>
> Here Kolb did not in fact receive any raise before he was let go. No
> evidence was introduced showing a company policy or practice from
> which it could be inferred that someone in his position would have
> received an $8,000 raise. Nor was other statistical or expert evidence
> introduced showing comparable salary increases in the industry. And
> while the jury had evidence that Kolb had unsuccessfully sought an $8,000
> raise before being fired, this proved little, if anything.

*Id.* at 872-73 (citations omitted). Further, the court stated that a jury is not "free to pull

figures out of a hat. The plaintiff has the burden of placing evidence in the record

*affording reasonable support* for the sums found." *Id.* at 873 (emphasis added).

¶18        In *Maxfield v. Sinclair*, the plaintiff was fired after almost forty years of

continuous employment at his job. 766 F.2d at 790.[4] Maxfield sued, alleging age

discrimination. *Id.* The jury award included $7,500 in future damages, *id.*, which were

---

[3] The court found factors, not in evidence in the instant case, to sustain a portion of the jury's award:
> On the other hand, there was evidence that Kolb's successor was paid $28,000 -- $6,000
> more than Kolb -- and that Kolb's salary went up markedly in his new employment,
> suggesting that it would be unrealistic to believe that he would have remained at $22,000
> in an inflation-ridden economy throughout the period in question.

*Id.* at 873 (footnote omitted).

[4] Maxfield was absent for three years during World War II. *Id.*

7

upheld on appeal, because Maxfield had "based his request for front pay only upon his former earnings history. There were no projections in earnings for which expert testimony was required." *Id.* at 797.

¶19        In *Cassino*, the plaintiff sued his former employer, Reichhold Chemicals, Inc., for age discrimination. 817 F.2d at 1341. Cassino began his career at Reichhold in 1957 as a chemist; subsequently he became human resources director for Reichhold's western region. *Id.* Cassino was fired in June, 1983. *Id.* Thus, Cassino worked for and advanced his career with the company for approximately twenty-six years. The Court, specifically citing the "more than twenty years of employment at Reichhold" held that Cassino's evidence was sufficient to establish the loss of future earnings and benefits. *Id.* at 1348.

¶20        These cases establish that an expert opinion is usually not required to establish the amount of future earnings, or "front pay," to which a plaintiff is entitled when the plaintiff does not claim an increased salary as damages.[5] However, when a plaintiff seeks to increase the amount of front pay by claiming he would have received a raise, he must demonstrate a company policy of increasing salaries, or offer expert opinions as to why an increase in salary would be reasonably certain.

¶21        Applying these principles to the present case, the court below did not abuse its discretion by excluding the proffered evidence. Bisom graduated from law school in 1986. He clerked for a court in the Federated States of Micronesia and the Supreme Court of Palau. He served as a legal assistant in Japan. Thus, his legal experience prior

---

[5] Of course, an expert opinion may be required when the issue of front pay arises in a case dealing with contract workers. While it may sometimes be assumed that an "at-will" employee would have continued his employment absent the illegal discharge, we feel that same assumption can not be made with workers whose contracts must be renewed. Factors other than job performance, such as the future economic forecast, often preclude the renewal of a worker's contract. In such a case, barring a demonstrable practice of renewing contracts, an expert opinion would be required to establish the likelihood that the plaintiff's contract would have been renewed.

to his employment in the Commonwealth spanned 4 years[6] in three different countries; no job being similar to his position with the Office of the Public Auditor. Bisom was granted a limited admission to the CNMI Bar on June 16, 1993 and was terminated from his position in December, 1993. He was a member of the CNMI Bar for six months.

¶22          Appellant made certain assumptions in the excluded testimony and exhibit, namely, that he would be getting 5% raises every year as a lawyer until he retired at age 65. Further, his calculations include a $900 a month stipend for living expenses. There is no showing on the record before this Court how or why the appellant arrived at those figures. Bisom was employed in the Commonwealth for less than one year and had not completed even one contract period. There is no employment history from which one could prove, to a reasonable degree of certainty, the amount of expected front pay.

¶23          With absolutely no foundation for the assumption that his salary would increase five percent per year until he retired, Bisom's projection is nothing more than bare speculation. Further, there is no showing that Bisom's contract likely would have been renewed once, let alone continuously until he retired at age 65. The trial court did not abuse its discretion by disallowing the proffered testimony, exhibit, or argument concerning claimed front pay.[7]

---

[6] Bisom was a teacher (and did not practice law) from 1990 until 1993. Appellants Brief at 4.

[7] After the ruling excluding the proffered testimony and exhibit, there was no effort to voir dire Bisom to convince the trial court of Bisom's qualifications to testify concerning the (expected potential) front pay. In one instance, there was, in effect, a voir dire and the trial court allowed Bisom to testify as to the historical average of the conversion rate between the dollar and the yen. The exchange went as follows:

SORENSEN:    What is the average yen/dollar conversion historically over the last ten years?

SOSEBEE:    Your Honor, that's [sic] calls for historical economic data. Same type of expert opinion that we were talking about. There is nothing to substantiate Mr. Bisom's understanding of what the historical data of yen/dollar ratio is.

SORENSEN:    Your Honor, if all of the rules that Mr. Sosebee were actually rules of evidence, we would have to have experts lined up outside the door to have any kind of trial. It's [sic] just doesn't exist.

**II.    Whether the Superior Court erred in denying plaintiff's request for indemnification determinations pursuant to 7 CMC § 2304(d) on the basis that there was no evidence that a request by defendant Bradshaw under section 2304(a).**

¶24        After the jury trial, Bisom asked the trial court to make the findings of fact required by 7 CMC §2304(d)[8] in an effort to compel the CNMI government to indemnify Bradshaw. The trial court refused to make the findings of fact, stating in its order:

> Bisom's request for findings of fact under 7 CMC § 2304(d) is futile.  7 CMC § 2304(d) is triggered by a proper request for indemnification, pursuant to 7 CMC § 2304(a), which must be submitted by the defendant employee to the public entity in which he or she works.  Without such a request, a finding of actual fraud, actual malice or willful criminal misconduct would not be appropriate.

Appellant's E.R. 58.   The court further stated that it found no evidence that Bradshaw made a request for indemnification and denied Bisom's request to make the findings of fact required by 7 CMC §2304(d).  *Id.*

---

| | |
|---|---|
| SOSEBEE: | Your Honor, with all due respect to Mr. Sorensen, they do have experts to do this kind of stuff. |
| THE COURT: | Come again with the question. |
| SORENSEN: | What has been the average yen/dollar conversion rate over the last ten years? |
| BISOM: | I lived in Japan so I can answer that.  I lived in Japan in 1991 to 1993 and I lived in Japan in 1997 to present and I sent a lot of money to Japan while I was living here, so I know what that average is. |
| THE COURT: | Objection overruled, go ahead. |
| BISOM: | About 110. |

Thus, when presented with an adequate foundation, the trial court allowed Bisom to testify about a subject that seemingly required expert testimony.  There was no attempt to lay a foundation for the excluded testimony or exhibit.

[8] 7 CMC § 2403(d) reads:

> Findings of Fact Required. Prior to the entry of judgment upon any claim coming under subsection (a) of this section, any party may request the court to determine if:
> (1) The employee has acted within the scope of his employment; and
> (2) The employee has acted because of actual fraud, actual malice, or willful   criminal misconduct.

A.    Arguments

¶25        Bisom advances four arguments in support of his contention that the trial court erred in denying Bisom's request for indemnification determinations pursuant to 7 CMC § 2403(d) on the basis that there was no evidence that Bradshaw made a written request for defense and indemnification under section 2304(a).  First, Bisom claims the court erred by misallocating the burden of proof to Bisom.  He contends that the burden of proving that the indemnification request was not made should shift to Bradshaw and the government, due to the privileged nature of the communication.

¶26        Next, Bisom argues the court overlooked important evidence that a request for defense was made.  He claims the numerous times the government appeared as counsel for Bradshaw in the case provide "very persuasive inferences that Bradshaw requested a defense from the government."  Bisom couples these appearances with a presumption that, absent contrary evidence, "where a public officer has been represented by a government attorney . . . requests for representation were made."  For this proposition, Bisom cites *Sinclair v. Arnebergh*, 36 Cal.Rptr. 810, 812 (App. 1964).

¶27        Next, Bisom argues that he is entitled to seek payment of the judgment against Bradshaw from the CNMI government.    He argues that he properly sought a determination under the act as his suit against Bradshaw was of the type contemplated by the Public Employee Legal Defense and Indemnification Act of 1986 ("PELDIA"), Bisom's request for indemnification determinations was timely pursuant to statute, and Bisom had standing to request the determinations.  In support of his contention he had standing to request the determinations, Bisom argues, "Under the plain meaning of section 2304(d), 'any party' may request the court to make the determinations set forth."

11

¶28        Finally, Bisom argues that this Court should not allow the Attorney General's Office to take a position against indemnification of the judgment against Bradshaw because an actual conflict of interest exists between Bradshaw and the government on the issue of indemnification. Bisom notes that the government does not argue that there is no conflict between itself and Bradshaw on the question of indemnification, and he alleges that the conflict is "obvious."

¶29        The government argues that the trial court properly allocated the burden of proof, noting that Bisom made no effort to ascertain the information in discovery and that Bisom had actual notice that the government was not representing Bradshaw at least six days prior to trial.

¶30        The government argues that the trial court properly considered the evidence. The government admits that it did mistakenly represent Bradshaw in previous proceedings, but argues that the mistaken appearances did not create an attorney-client relationship with Bradshaw. Furthermore, the government argues that Bradshaw made clear his "express wishes that no such relationship was authorized or intended," citing a letter purportedly written by Bradshaw.

¶31        The government next argues that Bisom is not entitled to seek payment against the CNMI government, arguing that "[t]he Act is not self-executing. The government employee must seek coverage in order to invoke the protections of the Act." It further argues that the laws of California and Washington,[9] upon which PELDIA is based,[10] require a request from the employee to trigger a defense and indemnification.

---

[9] *See* Cal. Gov't Code Ann. § 825(a) and Wash. Rev. Stat. Ann. §§ 4.92.060, 4.92.070 and 4.92.075.
[10] *See* 7 CMC §2302.

12

¶32        Finally, the government argues that no conflict of interest exists. It argues that

Bisom raises the conflict claim even though he knows it is not supported in fact (referring

to the letter, ruled inadmissible, wherein Bradshaw said he didn't want representation).

It asserts "when Bisom filed this appeal, he knew that Bradshaw was not a client...Bisom

was advised that Bradshaw was not a client in Civil Action No. 96-1320." Further, the

government argues, "To find merit in Bisom's claim, this court would have to establish a

new rule in American law: the unilateral and mistaken actions of an attorney can create

an attorney-client relationship with one who does not seek such a relationship."

> B.    The trial court did not err in denying plaintiff's request for indemnification
> determinations pursuant to 7 CMC § 2304(d).

¶33        The Commonwealth enacted PELDIA[11] to protect government employees from

tort liability "arising out of acts that arise out of the scope of their employment." 7 CMC

§ 2302. The purpose of statutes such as this is to provide government employees with the

resources to defend against lawsuits and pay money judgments incurred as a result of the

discharge of their duties as public servants. It is hoped that, secure in the knowledge that

they will not be driven to financial ruin because they have chosen public service,

government employees will discharge their duties zealously.

¶34        The purpose of PELDIA is not to ensure that a wronged individual is

compensated, but rather to offer protection to government employees.[12]    This is

---

[11] 7 CMC §2301 et seq.

[12] Section 2304(a) reads:

> (a)  General Rule for Public Defense of an Action. At the public entity's discretion,
> either a public entity shall pay for an employee's defense by an attorney accepted by the
> employee and the Attorney General or his designee, or the public entity shall defend the
> employee, and the public entity shall pay any settlement (to which the public entity has
> agreed) or any judgment, if:
>
> > (1)  The employee requests the public entity to pay for his defense or to defend
> > him against any claim against him for an injury arising out of an act that he reasonably
> > and in good faith believes has occurred within the scope of his employment as an

13

evidenced by the plain language of 7 CMC §2302: "the government should self-insure its employees against such claims. It is the purpose of this chapter to provide protection to government employees against the high cost of the legal defense and the judgments for injuries." *Id.*

> 1.    The trial court did not misallocate the burden of proof.

¶35        Far from being a merely academic concept, the burden of proof is of utmost importance. As we stated in *In re San Nicolas*, 1 N.M.I. 329, 336 (1990), the reversal of the burden of proof "is not insubstantial." Further,

> [i]n our adversarial system, defendants have certain advantages in not being required to carry the burden of proof. For example, a defendant can move to dismiss a case if the plaintiff, the party normally charged with the burden of proof, fails to establish a prima facie case. If the defendant were required to carry the burden of proof, this advantage would be lost.

*Id.*

¶36        The general rule concerning the burden of proof is described in *Pacific Portland Cement Co. v. Food Mach. & Chem. Corp.*, 178 F.2d 541, 547 (9th Cir. 1949), which states,

> It is a fundamental rule that the burden of proof in its primary sense rests upon the party who, as determined by the pleadings, asserts the affirmative of an issue and it remains there until the termination of the action. It is generally upon the party who will be defeated if no evidence relating to the issue is given on either side.

---

employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2) The employee has not acted because of actual fraud, actual malice, or willful criminal misconduct;

(3) The employee reasonably cooperates in good faith in the defense of the claim; and

(4) The employee makes his request in writing to the public entity not less than five days before an answer must be filed; provided, that an employee against which a claim is pending on June 24, 1986, shall have 60 days within which to make his written request.

The acceptance of an attorney under this subsection (a) of this section shall not be unreasonably withheld by the Attorney General or his designee.

¶37        This is not to say that the proponent of an issue always carries the burden. An exception to the general rule sometimes shifts the burden to the party most able to come forward with the evidence. "Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence." *Morris v. Williams*, 433 P.2d 697, 715 (Cal. 1967) (citations omitted).

¶38        In this case, Bisom seeks to establish that Bradshaw requested that the government defend and indemnify him; barring an exception to the general rule that the proponent of an issue bears the burden of proof, Bisom carries the burden of establishing that Bradshaw made the requests pursuant to 7 CMC § 2304. We see no reason to deviate from the general rule. While it is certainly true that Bradshaw and the government know whether Bradshaw requested a defense and indemnification, this does not mean that this knowledge "lies peculiarly" with "one of the parties." *Id.*

¶39        Bisom could have sought the information in discovery.[13]   Com. R. Civ. Pro. 26(b)(1) deals with the scope of discovery: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Thus, Bisom could have propounded discovery concerning the request for indemnification and would have been entitled to an answer, unless Bradshaw claimed attorney-client privilege.[14]

---

[13] During the more than three years from the filing of the action in December, 1996, until it was tried in February, 2000, Bisom could have sought the information by utilizing an oral or written deposition, interrogatories, a request for production of documents or requests for admissions pursuant to Com.R.Civ.Pro. 26(a).

[14] We assume, *arguendo*, that Bisom's alleged request for defense and indemnification is, in fact, a confidential communication between a client and an attorney. The issue of whether a government employee's request for a defense is a privileged communication is not squarely before us; consequently, we decline to address it at this time.

¶40        Bisom's contention that this information would likely be privileged is not sufficient to shift his burden to the opposition.  Since privileges in general, and attorney-client privilege specifically, can be waived by failing to object to proper discovery requests, in practice a matter is not deemed privileged until the privilege is asserted.  *See* Com. R.R. Civ. Pro 33(b)(1) ("Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to..."); 34(b) (" . . . The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to..."); 36(a) ("...The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection...").  *See also In re United States,* 864 F.2d 1153, 1156 (5th Cir. Tex. 1989) ("We readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.").

¶41        Bradshaw did not assert a privilege because he was not forced to by any discovery demand from Bisom.  If the information sought by Bisom was exclusive to Bradshaw, it is only because Bisom made absolutely no effort to discover it for himself.  The trial court did not err in assigning the burden of proof to Bisom.

> 2.    The trial court's determination that Bradshaw did not request a defense was not clearly erroneous.

¶42        From the outset, it must be noted that each party to this appeal relies, at least in part, on a letter purportedly written by Bradshaw to prove that Bradshaw did or did not request a defense pursuant to 7CMC § 2304(a).  Although properly part of the record

before us pursuant to Com. R. App. Pro. 10(a)[15], this letter was ruled inadmissible by the trial court; that ruling was not appealed.[16] It does not appear that the trial court relied on it at all when making its determinations; neither shall we.

¶43        Bisom lists several instances where the Attorney General's Office represented Bradshaw. Paired with a presumption that, absent contrary evidence, "where a public officer has been represented by a government attorney . . . requests for representation were made," *Sinclair*, 36 Cal.Rptr. at 811-12, Bisom argues that, regardless of where the burden of proof lies, this is enough to establish that Bradshaw requested a defense.

---

[15] Rule 10(a) reads, in pertinent part: "The original papers and exhibits filed in the Superior Court . . .shall constitute the available record on appeal in all cases." Com. R. App. Pro. 10(a).

[16] The pertinent portions of Bradshaw's purported letter are:

> Regarding CNMI SC 96-1320 and all subsequent complaints, I have never been served on any of these complaints. I have never authorized the AG to accept service for me. As far as I am concerned those cases are all mute and nonexistent. To repeat, I don't want the AG to accept service for me on anything. If Bisom wishes to sue me, he must serve me (actually with a process server).
>
> Some two certified mail packets from an unidentified party came to me from Saipan in 1996 and 1997. I refused to accept either of them and they were returned by the Post Office undelivered. Possibly these mailings were an attempt to accomplish service although I cannot be sure what were in the packets and the sender's name was not identified (beyond a return address post office box). Again, if Bisom wants an answer from me he will have to hire a process server. As I said to Doug Cotton, if I am served I will contact the AG to make the answer. Otherwise, I have not authorized the AG to make any answers for me on anything in the CNMI cases. And I have never been served!
> ...
> Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes). I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on [another] case. As for as the CNMI SC, your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

We include it because each party spent a portion of oral arguments arguing what, in fact, this document (ruled inadmissible below and consequently of no use to us) purported to prove.

17

      a.  The Commonwealth does not recognize the presumption that "requests
were made" in an action of this nature.

¶44        We have yet to recognize the legal presumption that, where a public officer has

been represented by a government attorney, the public officer requested a defense and

indemnification from the government. Our review of PELDIA convinces us that we

should not. This is so due to the emphasis placed on the request by the Commonwealth

Legislature.

¶45        Section 2304(a) of Title 7 lists four conditions which must be met to require the

government to provide a defense for[17] and indemnify an employee. 7 CMC § 2304(a).

The first requires the employee seeking protection under the Act to request that the

government pay for his defense or to defend him. 7 CMC § 2304(a)(1). The fourth

requires the employee to make his request in writing at least five days before an answer

to the complaint must be filed. 7 CMC § 2304(a)(4). The legislature has placed a great

emphasis on the request to the government from the employee.

¶46        Furthermore, PELDIA is based on the laws of California and Washington. 7

CMC § 2302. In Washington, a request of any kind is sufficient. See *Rev. Code Wash.*

(ARCW) § 4.92.060.[18] In California, the request must be in writing and tendered to the

government at least ten days before the trial. *See* Cal. Gov't Code § 825(a).[19]

---

[17] This may be accomplished two ways: "At the public entity's discretion, either a public entity shall pay
for an employee's defense by an attorney accepted by the employee and the Attorney General or his
designee, or the public entity shall defend the employee." 7 CMC § 2304(a).

[18] *Rev. Code Wash.* (ARCW) § 4.92.060 reads:

    Whenever an action or proceeding for damages shall be instituted against any state
    officer, including state elected officials, employee, volunteer, or foster parent licensed in
    accordance with chapter 74.15 RCW, arising from acts or omissions while performing, or
    in good faith purporting to perform, official duties, or, in the case of a foster parent,
    arising from the good faith provision of foster care services, such officer, employee,
    volunteer, or foster parent may request the attorney general to authorize the defense of

¶47      Faced with a variety of options, the Commonwealth Legislature chose the more restrictive route, requiring the request to be not only in writing, but tendered at least five days before an answer to the complaint must be filed. 7 CMC § 2304(a)(4). In this case, we will not presume accomplished that which the legislature has explicitly and emphatically required.

                              b.      It is unclear whether California law would recognize the presumption in a case such as this.

¶48      Bisom points to a California case, *Sinclair v. Arnebergh*, 36 Cal.Rptr. 810 (App. 1964) which states, "[p]resumptions that official duty has been regularly performed, that requests for representation were made and that police officers represented were acting within the scope of their employment are justified." *Id.* at 811-12 (citing *White v. Towers*, 37 Cal.2d 727, 235 P.2d 209). Although it has been cited by California courts, it has never been cited for the proposition that one may presume that requests for indemnification were made in an action similar to Bisom's.

¶49      *Sinclair* is distinguishable from the case at bar. In *Sinclair*, a taxpayer filed suit, alleging that the city attorney's representation of city policemen in civil tort actions was *ultra vires*. The Court of Appeals held that, in an action such as this, the court is not required to accept general allegations in the complaint as true. *Id.* at 811 ("[A]n examination of the complaint shows the allegations to be general and conclusionary and

---

said action or proceeding at the expense of the state.

[19] Cal. Gov't Code § 825(a) reads, in pertinent part:

Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

the complaint should have been amended, if possible."). Consequently, when a taxpayer sues to enjoin a public official from performing his duties, allegations must be pled with specificity.

¶50    This reading of *Sinclair* and cases discussing Cal.Gov't Code § 825(a) which require the employee to request a defense *See DeGrassi v. City of Glendora*, 207 F.3d 636, 641 (9th Cir. 2000) ("Under this section, given a proper request by the employee and her good faith cooperation in the defense of a claim based on conduct occurring within the scope of employment, the City must indemnify the employee against any judgment or the cost of a settlement to which it has agreed."); *Johnson v. State*, 447 P.2d 352, 359 (Cal. 1968) ("[Section 825] provides for defense by the public entity upon notice, and the employee's best interests clearly favor the giving of such notice."), coupled with the general principle that "[n]ormally, in an indemnification action, the burden falls upon the indemnitee to prove all elements of his claim"[20] *Harris v. Howard Univ., Inc.*, 28 F. Supp. 2d 1, 15 (D.DC. 1998), we believe it doubtful that a court in California would apply the *Sinclair* presumptions to a situation such as Bisom's.

¶51    Without regard to our belief that California law does not recognize the presumption in the manner asserted by Bisom, the fact remains that the Commonwealth does not recognize the presumption in a case such as this. *See supra*, ¶¶ 44-47.

     c.    The trial court's finding that Bradshaw did not properly request a defense or indemnification is not clearly erroneous.

¶52    With no presumption available to Bisom, his claim that the trial court improperly considered the evidence is easily dismissed. Bisom points to the numerous times the

---

[20] In this instance, Bisom is not an indemnitee. *See supra*, ¶34. Assuming *arguendo*, that Bradshaw did request a defense and indemnification, he would be the indemnitee. It follows that a person claiming indemnification through the indemnitee should have at least the same burdens as the indemnitee.

Attorney General's Office represented Bradshaw in the case as evidence that Bradshaw did, in fact, request a defense. Also before the trial court was the fact that the Attorney General's Office allowed a default judgment to be taken against Bradshaw. This fact alone[21] permits an equally persuasive inference that Bradshaw had not, in fact, requested a defense. The trial court's determination that Bradshaw did not request a defense was not clearly erroneous.

3.    Bisom improperly sought indemnification determinations.

¶53        Bisom further argues that (1) he properly sought determinations pursuant to 7 CMC § 2304(d) as his suit against Bradshaw was of the type contemplated by PELDIA, (2) his request for indemnification determinations was timely pursuant to statute, and (3) he had standing to request the determinations. We need not address these issues.

¶54        Before the government is obligated to defend and indemnify an employee, an employee must request in writing, at least five days before an answer to the complaint must be filed, that the government pay for his defense or to defend him. 7 CMC §§ 2304(a)(1), (4). The trial court determined that this did not occur, and we will not disturb a factual determination made by the trial court unless, "after reviewing all the evidence, we are left with a firm and definite conviction that a mistake has been made." *Camacho v. L&T Int'l Corp.*, 4 N.M.I. 323, 325 (1996). Consequently, the determinations Bisom sought were superfluous, as the government had no duty to defend or indemnify Bradshaw. The trial court was under no obligation to make the determinations Bisom requested.

---

[21] At oral argument, the Attorney General's Office pointed to the answer filed by the other defendants, which excluded a defense for Bradshaw. See Appellant's E.R. 23-27.

21

4.    It can not be said that a conflict of interest exists between the Attorney General's Office and Bradshaw.

¶55        The Model Rules of Professional Conduct are applicable in the Commonwealth through Com. Dis. R. 2. *Hwang Jae Corp. v. Marianas Trading & Dev. Corp.*, 4 N.M.I. 142, 146 n.13 (1994).    Bisom argues that MRPC 1.9(a) bars the Attorney General's Office from opposing indemnification. MRPC 1.9(a) reads: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

¶56        Bisom notes that the trial court determined that the Attorney General's Office had, in fact, represented Bradshaw in the matter.  In its briefs, the Attorney General's Office concedes it represented Bradshaw, calling the representation "mistaken."  In its defense, the government argues that "the unilateral and mistaken actions of an attorney" can not "create an attorney-client relationship with one who does not seek such a relationship."

¶57        We need not determine whether the mistaken actions of an attorney can create an attorney-client relationship, for even if they could, we could not say that the government violated MRPC 1.9(a).[22]   As there has been no showing that Bradshaw requested a defense or indemnification, it can not be said that Bradshaw wants indemnification.  Thus, the Attorney General's argument against indemnification is not necessarily contrary to Bradshaw's interests, as we have absolutely no way of knowing what

---

[22] This is not to say that the Attorney General's Office did not violate any ethical rules in this action.  While we, of course focus on Rule 1.9 because it deals with alleged unethical conduct while a case was pending before us, a violation of the other rules is best handled by the CNMI Bar Disciplinary Committee.  We are exceptionally curious to learn how an attorney can mistakenly represent a client while "keeping a client reasonably informed about the status of the matter" pursuant to MRPC 1.4(a).

Bradshaw desires.[23]  It can not be said that the Attorney General's Office violated MRCP

1.9(a) by arguing against indemnification.

## CONCLUSION

¶58        The judgment is in all respects AFFIRMED.  Appellant is ordered to pay $100.00

on or before October 15, 2002 for violating Com. R. App. P. 28 (I).


SO ORDERED this  13th day of September, 2002.


JOHN A. MANGLONA, ASSOCIATE JUSTICE


PEDRO M. ATALIG, JUSTICE PRO TEMPORE


TIMOTHY H. BELLAS, JUSTICE PRO TEMPORE

---

[23] While we realize that, in most instances, a person would desire indemnification, we can think of many reasons why a person would not.

23