F I L E D
Clerk
District Court

FEB – 6 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone 208-245-1691**

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW | ) Case No. CV 05-0027 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al. | ) **PLAINTIFF'S MEMORANDUM** ) **OPPOSING DEFENDANTS' MOTION** ) **TO DISMISS AND INCORPORATED** ) **MEMORANDUM OF POINTS AND** |
| Defendants | ) **AUTHORITIES [FED. R. CIV. P. 9(b);** ) **12(b)(1); 12b(6)]** ) Hearing at 0900 AM, March 2, 2006 ) Judge Alex R. Munson |

1

## TABLE OF CONTENTS

**Pages**

### Sections Addressing Defendants' Arguments

Introduction                                                                 5

Defendants' Argument I (p. 5), Judicial Immunity                             6

Argument II (p. 9), The Action of the CNMI Makes the Issue Moot?            14

Defendants' Arguments III, V, VI, X (p. 10, 13, 14, 16) on Legal Theories/Facts 16

Defendants' Argument IV and XII (p. 12, 19) Criminal Actions

   Not for Civil Suits                                         17

Defendants' Arguments XIII & XIV (p. 20) on RICO                            17

Defendants' Arguments VII, VIII & IX (p. 15-16), US Constitution

   Amendments                                                  18

Defendants' Argument XI (p. 18), 1986 Immigration

   Reform & Control Act                                         18

Defendants' Argument XV (p. 21), Attorney's Fees                            19

Conclusion                                                                  19

Declaration                                                                 20

### US Cases

Ableman v. Booth, 21 Howard 506 (1859).                                     10
CNMI US District Court Case 05-0027                                          5, 11, 13,
                                                                            15, 16, 18
Commonwealth v. Oden, 3 N.M.I. 186 (1992), aff'd, 19 F. 3d 26 (9th Cir. 1994). 18
Davis v. Burris, 51 Ariz. 220, 75 P. 2D 689 (1938)                          10

Duncan v. Peck, 844 F2d 1261 (6th Cir. 1988)                                                    19

Forrester v. White U.S. 219, 108 S. Ct. 538, 98 L Ed. 2d 555 (1988)                            7, 12

Guercio v. Brody, 814 F 2d 1115 (1987).                                                         7

Harper v. Merckle, 638 F. 2d 848 (5th Cir.), cert. denied, 454 U.S. 816,
    102 S. Ct. 93, 70 L. Ed. 2d 85 (1981)                                                       12

Harlow et al v. Fitzgerald, 457 U.S. 800, 820-821 (1981).                                       8, 9

Harris v. Harvey, 605 F. 2d 330 (7th Cir. 1979), cert. denied, 445 U.S.
    938, 100 S Ct. 1331, 63 L. Ed. 2d 772 (1980).                                               12

Hunter v. Bryant, 112 S. Ct. @ 537).                                                            9

Imbler v. Pachtman, at 433 [424 U.S. 409, 433, 1976] quoting Monroe v. Pape,
    365 U.S. 167. 172 [1961].                                                                   7

Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc.,
    D.C.Mich. 1952. 13F.R.D. 5.                                                                 16

King v. Love, 766 F. 2d 962, 968 (6th Cir.), cert denied, 474 U.S. 971,
    106 S. Ct. 351, 88 L. Ed. 2d 320 (1985)                                                     12

Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576. 64 Sp. 2d 697.                           10

McDonald v. Krajewski, 649 F. Supp. 370)                                                        19

McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100                                    16

Meyers v. Contra Costa County Dept of Social Services,
    812 F2d 1154, 1158 (9th Cir. 1987)                                                          8, 14

Mireles v. Waco, 112 S. Ct. 286 (1991                                                          8

Monroe v. Pape, 365 U.S. 167 (1961).                                                           7, 9

Morrison v. Lipscomb, 877 F 2d 463 (6th Cir. 1989)                                             12

New Alaska Development Corp. v. Guetschow, 869 F. 2d 1298 (9th Cir. 1988)                      12

Pierson v. Ray, 386 U.S. 547 (1967),                                                           8, 9

Pulliam v. Allen, 456 U.S. 522 (1984); and Forrester v. White, 44 U.S. 219,
    108 S. Ct. 538 (1988), 44 U.S. @ 224;                                                       7, 19

Piper v. Pierson, id. 2 Gray 120, cited in Bradley v. Fischer, 13 Wall. 335,
    20 L. Ed. 646 (1872).                                                                       10

Ranken v. Howard (1980) 633 F. 2d 844, cert den. Zeller v. Howard,
    101 S. Ct. 2020, 451 U.S. 939, 68 L. Ed. 326.                                               10

Scheuer v. Rhodes, 416 U.S. 232, 243 [1974]).                                                  7

Scheuer v. Rhodes, 416 U.S. 232, 94 S. Ct. 1683, 1687 (1974)                                   9, 12

Schucker v. Rockwood, 846 F. 2d 1202.                                                          11

Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc.,
    D.C.N.Y. 1948, 8 F.R.D. 487.                                                                16

Sevier v. Turner. 742 F. 2d 262 (6th Cir. 1984                                                 12;

Stump v. Sparkman, id. 435 U.S. 349.                                                           10

Turkish State Rys. Administration v. Vulcan Iron Works,
    D.C.Pa 1957, 153F.Supp. 616)                                                                16

U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293, 1 F.R.D. 548,
    550 (Holly, J.).                                                                            16

## Other

| | |
|---|---|
| US Constitution | 9, 11, 12, 13, 18 |
| CNMI Constitution | 11 |
| Federal Rules of Civil Procedure, Rule 8 | 16 |
| CNMI Case 96-01320 | 6, 7, 11, 13 17, 18 |
| Idaho Code 5-219 | 17 |
| Washington State Law--42 USC 1981-2000 | 15 |
| 386 U.S. 547, 549] from suit under 17 Stat. 13, 42 U.S.C. 1983. | 9 |
| 1986 Immigration Reform & Control Act | 18 |
| RICO, Title 18 | 17 |
| Title 42 USC 1981 | 6, 13, 16, 17 |
| Title 42 USC 1983 | 6, 7, 8, 11, 13 |
| Title 42 USC 1981-2000 | 13 |
| Oran's Dictionary of the Law | 17 |
| CNMI Covenant | 18 |

## Introduction

1    COMES now plaintiff to oppose defendants Bellas, Manglona and Castro's Motion to Dismiss.  This motion should be denied for several reasons.

2.  Defendants outline a series of alleged "Facts."  However plaintiff rejects many of these alleged facts as not being facts--for example, page (p.) 1, line (l.) 15-17 cites Bradshaw's attempt to participate in the Bisom lawsuit.  There is no basis for such unfounded charge as a fact.  P. 2, l. 15-18 state that the judgment against him "is a product of a conspiracy that involved: most, if not all, of the Attorney General's office; a Superior Court Judge; the entire Supreme Court of the CNMI;..."  This charge is patently false and deserves no comment beyond recognizing how careless, misleading and wrong the motion is.  On p. 3, l. 17-18, defendants claim "Although he continues to maintain the current lawsuit, Bradshaw finally and legitimately moved in the CNMI Superior Court to set aside the default judgment against him."  This so-called fact is also not fact.  Before this case was filed, Bradshaw mailed his motion to void to the CNMI.  Too, the defendants' state so-called facts which are actually their opinions and not facts--p. 1, l. 24-25 "Instead of asking the Attorney General's (AG) Office to defend him, Bradshaw attempted to force Bisom to personally serve him, thus making service as difficult as possible for Bisom."  This false charge is repeated on p. 12, l. 12 where defendants claim that Bradshaw "chose to avoid service and to not respond."

3.  In 05-0027, several defendants have already refused to allow their lawyers to accept service and one has refused to accept a certified mailing.  None of these actions were characterized as avoiding service or making service as difficult as possible   In these

5

instances, as well as the Bradshaw situation in 96-1320, the defendants all acted in accordance with their legal rights. In Bradshaw's case, he relied on legal advice from the AG and notified the AG completely on what was happening on service. The AG made no effort to advise Bradshaw of any problem over his actions. On p. 2, l. 19-20, defendant state as facts "in keeping with his penchant for ineffective and wasteful procedures, Bradshaw resorted to a myriad of devices, other then hiring a lawyer and seeking to set aside the judgment against him, in an attempt to gain relief." This charge is likewise false from start to finish. If Bradshaw would have had the money, he already would have a team of US/Guam lawyers on the case (as Saipan lawyers are in fear of retaliation from Judge Castro). The motion's statement of facts is pregnant with false/misleading statements and/or opinions not supported by facts.

4. Since the defendants' motion to dismiss state "facts" which are not facts, it is patently clear that everything else in their motion must be suspect. It's questionable what part, if any, of the motion is based on facts and truth.

### Defendants' Argument I (p. 5), Judicial Immunity

5. On immunity, there seem to be no CNMI statutory laws granting CNMI judges immunity. Any immunity must come from elsewhere (like from US court decisions which technically only apply to those particular cases and not carte blanche across the board to all cases). The title 42 laws address all persons with no exceptions. 1981 says all persons and 1983 says every person. While some courts have excluded judicial officers (judges, and now prosecutors and other government officials) from all and every, the statutes do not make this exclusion. Every person means every person and not every person but judicial officials.

6

6. In fact, in 1983, there is a stated exception to the law in an action against a judicial officer... in that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The very wording of this law and its exception clause for a certain class of judicial officers means that the preceding statement did and does apply to any and all judicial officers unless they are subject to the exception. The wording of the exception is plain that injunctive relief will not be granted unless one of the stated needs is met. Obviously, this one exception stipulates an exception to the "every person" statement. As a minimum, this very exception demands that judicial officers be subject to the law, if they don't qualify for the exception. In fact, if declaratory relief is not available (as was the situation with Bradshaw in 96-1320), then the judicial officer is automatically covered in 1983.

7. "The central purpose of ... 1983 is to 'give remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position" (Imbler v. Pachtman, at 433 [424 U.S. 409, 433, 1976] quoting Monroe v. Pape, 365 U.S. 167, 172 [1961]). "It is manifest then that all state officials as a class cannot be immune absolutely from damage suits under 42 U.S.C...1983 and that to extend absolute immunity to any group of state officials is to negate *pro tanto* the very remedy which it appears Congress sought to create" (Imbler, at 433-434, citing Scheuer v. Rhodes, 416 U.S. 232, 243 [1974]).

8. Per the US Supreme Court, there is no such thing as automatic absolute judicial immunity--Pulliam v. Allen, 456 U.S. 522 (1984); and Forrester v. White, 44 U.S. 219, 108 S. Ct. 538 (1988), 44 U.S. @ 224; and Guercio v. Brody, 814 F 2d 1115 (1987). There are, as a minimum, two tests--Does the court have subject matter jurisdiction and is the act a judicial

7

act (Mireles v. Waco, 112 S. Ct. 286 (1991). In terms of juridical officials, there seems to be at best a qualified or partial immunity as is true with many other public officials.

9. There is also a "good faith" immunity which is an affirmative defense that must be pled by a defendant official--Harlow et al v. Fitzgerald, 457 U.S. 800, 820-821 (1981).

10. Too, there seems to be a need for the presence of an appellate or review function or opportunity when judges act incorrectly or improperly as stated by Chief Justice Warren of the US Supreme Court. In Pierson v. Ray, 386 U.S. 547 (1967), Justice Warren for Court upheld judicial immunity in terms of 42 USC 1983 by saying: "...It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal..." In that case, the Chief Justice added that "The jury did resolve the factual issues in favor of the officers but... its verdict was influenced by irrelevant and prejudicial evidence. Accordingly the case must be remanded to the trial court for a new trial."

11. In Meyers v Contra Costa County Dept of Social Services, 812 F2d 1154, 1158 (9th Cir. 1987), the 9th Circuit said "in spite of immunity for certain decision makers, the balance might not be struck in favor of absolute immunity were it not for the presence of safeguards build into the judicial process that tend to reduce the need for private damage actions." With absolute judicial immunity, there are no safeguards except as they exist in the adversarial process and the appellate and review functions.

12. Hence, there is need for an adversarial situation and an appellant review procedure to be in effect to allow judicial immunity to exist. Thus, there are several

8

exceptions to believed judicial immunity. It is not automatic and all inclusive. And it certainly is not authorized by statutory law.

13. In the Pierson v. Ray 386 U.S. 547 (1967) case, Justice Douglas dissented and said: "I do not think that all judges, under all circumstances, no matter how outrageous their conduct are immune [386 U.S. 547, 549] from suit under 17 Stat. 13, 42 U.S.C. 1983. The Court's ruling is not justified by the admitted need for a vigorous and independent judiciary,..." So there is judicial belief for a limitation in the use of judicial immunity.

14. When a state official acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual capacity. The State has no power to impart to him any immunity form responsibility of the supreme authority of the United States--Scheuer v. Rhodes, 416 U.S. 232, 84 S. Ct. 1683, 1687 (1974).

15. What then we have for judges is a form of qualified or partial immunity as is the norm for certain other government officials. "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law" (Hunter v. Bryant, 112 S. Ct. @ 537). "Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known" (Harlow v. Fitzgerald, 457 U S. 800). Police officers may be held liable under section 1983 for infringing upon the constitutional rights of others even when their actions are not shown to be willful--Monroe v. Pape, 365 U.S. 167 (1961).

9

16. In terms of the presence of the above exceptions for judicial immunity, it is crucial that the question of jurisdiction be settled. In a jurisdictional vacuum (that is, absence of all jurisdiction) the second prong necessary to absolute judicial immunity is missing Stump v. Sparkman, id, 435 U.S. 349. A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts Davis v. Burris, 51 Ariz. 220, 75 P. 2D 689 (1938).

17. When a judicial officer acts entirely without jurisdiction or without compliance with jurisdictional requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. (State use of) Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576, 64 Sp. 2d 697.

18. "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued..." Ableman v. Booth, 21 Howard 506 (1859). When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statues expressly depriving him of jurisdiction, judicial immunity is lost. Ranken v. Howard (1980) 633 F. 2d 844, cert den. Zeller v. Howard, 101 S. Ct. 2020, 451 U.S. 939, 68 l Ed. 326.

19. "Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction" Piper v. Pierson, id. 2 Gray 120, cited in Bradley v. Fischer, 13 Wall. 335, 20 L. Ed. 646 (1872). An act "done in complete absence of all jurisdiction" cannot be a judicial act. Piper v. Pierson, id., 2 Gray 120.

10

20. "Judge loses his absolute immunity from damage actions when he acts in clear absence of all jurisdiction or performance of an act which is not judicial in nature" (Schucker v. Rockwood, 846 F. 2d 1202).

21. In the case of CNMI 96-1320, the questions of both personal and subject matter jurisdiction were never addressed or settled in the case of defendant Bradshaw. Plainly, per the context of the Dec 29, 2005 void order from the Superior Court, the trial court under judge Castro manifestly lacked personal jurisdiction.

22. Since Bradshaw was never personally under the court, there was never any opportunity for him (or his attorney) to question subject matter jurisdiction. If Bradshaw would have been afforded an opportunity to question subject matter jurisdiction, Bradshaw could have and would have raised opposition to all aspects of the 96-1320 case as were levied against him. Possible some of the issues in the complaint were legitimate in terms of the other defendants but not in terms of Bradshaw. Bradshaw's opposition to Judge Castro's subject matter jurisdiction was spelled out in privileged communications to the AG who filed the Jul 14, 1999 letter in Judge Castro's court (exhibit B to complaint). The Amended Complaint references this lack of jurisdiction in paragraphs 159, 191 200, 204, 205, etc.

23. Effectively, Judge Castro unilaterally and arbitrarily cut off any opportunity for Bradshaw to question subject matter jurisdiction. Recently, the CNMI has raised the question of immunity for all of its agents in case 05-0027. Certainly, Bradshaw could have raised this issue and everything else in the Bisom complaint if Bradshaw would have been given his rights under due process authorized in both the US and CNMI Constitutions.

11

24. Because Bradshaw had no opportunity to address the subject matter issue in the Judge Castro court, the issue of subject matter jurisdiction was never settled. The CNMI justices cannot now come into court and claim that they had subject matter jurisdiction when that issue was not settled with Bradshaw. For sure, the judges had neither subject matter or personal jurisdiction over Bradshaw, So these justices are not entitled to judicial immunity.

25. In Scheuer v. Rhodes, as cited above, a judge, by law, is a state officer. The Judge then acts not as a judge, but as a private individual (in his person). When a judge acts as a trespasser of the law, when a judge does not follow the law, the Judge loses subject-matter jurisdiction and the judges' orders are not violable, but void, and of no legal force or effect. As a minimum, the CNMI Judges would lose subject matter jurisdiction when they acted outside the law to violate Bradshaw's rights under the US Constitution.

26. In terms of the issue of whether their acts were judicial actions or not, there are also questions. US courts have found that judges acting outside of their judicial capacity are not entitled to immunity in Forrester v. White U.S. 219, 108 S. Ct. 538, 98 L Ed. 2d 555 (1988); Morrison v. Lipscomb, 877 F 2d 463 (6th Cir. 1989); King v. Love, 766 F. 2d 962, 968 (6th Cir.), cert denied, 474 U.S. 971, 106 S. Ct. 351, 88 L. Ed. 2d 320 (1985); Sevier v. Turner, 742 F. 2d 262 (6th Cir. 1984); New Alaska Development Corp. v. Guetschow, 869 F. 2d 1298 (9th Cir. 1988); Harper v. Merckle, 638 F. 2d 848 (5th Cir.), cert. denied, 454 U.S. 816, 102 S. Ct. 93, 70 L. Ed. 2d 85 (1981); and Harris v. Harvey, 605 F. 2d 330 (7th Cir. 1979), cert. denied, 445 U.S. 938, 100 S. Ct. 1331, 63 L. Ed. 2d 772 (1980).

27. As a minimum, Bradshaw in the CNMI courts (without presence of him or his attorney) was never allowed due process as envisioned in the US and CNMI Constitutions

12

PAGE 03                    SMHARVEST                    2082452401    15:49  02/05/2006

and had no opportunity to question the subject matter issues before the 96-1320 court.

Bradshaw could have and would have raised objections to both personal and subject matter jurisdiction. There is no question but that Judge Castro lacked personal jurisdiction over Bradshaw as he was never legally served in accordance with CNMI rules/laws. If Bradshaw would have had an opportunity to address the 96 1320 case, he would have also questioned subject matter jurisdiction as there were issues in the Bisom complaint which would have denied the Castro court subject matter jurisdiction .

28. Certainly, plaintiff's allegations of gross incompetence, corruption in the form of conspiracy and violation of Bradshaw's rights under 43 USC 1981-2000 by especially Judge Castro are all sufficient to raise questions of subject matter jurisdiction as well as personal jurisdiction. Judge CASTRO was too grossly incompetent and subject to conspiracy and violations of the US Constitution and 42 USC 1981 and 1983 to be able to properly make a proper and legal determination of subject matter jurisdiction in terms of Bradshaw.

29. Thus Bradshaw was denied his day in court and was found guilty of discriminating against Robert Bisom and of "avoiding service" as defined by Judge CASTRO. This finding was publicized in the CNMI and Bradshaw's professional reputation was damaged.

30. Since Judge Castro and the supreme court judges all found Bradshaw guilty when personal and subject matter jurisdiction was never established over Bradshaw by the CNMI courts, it meant that Bradshaw had no opportunity to appeal their decision to any higher court (except now to the US District Court in terms of case 05-0027). Judge Castro's unconstitutional decision meant that it was made in violation of the US Constitution and title 42 of the USC on due process and equal protection rights.

13

To-US DISTRICT COURT, N   Page 001   From-2082452401   Feb-06-2006 08:43   Received

31. As Bradshaw was afforded no opportunity to appeal the CNMI court decisions (beyond addressing the rule 60 issue over the judgment of $139,000 imposed on him), the presence of judicial immunity does not and cannot exist with the CNMI judges as envisioned by Chief Justice Warren (per the above quote) and in the need for safeguards build into the judicial process that would reduce the need for private damage actions--Meyers v. Contra Costa County Dept of Social Services, 812 F2d 1154, 1158 (9th Cir. 1987).

32. There is one more issue with the Judge Castro court and his outrageous and malicious decisions against Bradshaw. In terms of judicial acts, the matter of establishing jurisdiction and acting in good faith, there is a presumption that the judge involved is competent and acting impartially and fairly without any involvement of conspiracy to defraud and conspiracy to violate the US Constitution on the basis of the national origin of a party (as Bradshaw was a US state-sider being judged in a CNMI court).

33. When a court is being run by a grossly incompetent judge who is totally lost on what is happening in his own courtroom and with the related questions of conspiracy and violations of civil rights of people in his courtroom, can that judge make proper decisions on jurisdiction, on his judicial rights as a judge, or on the good faith theme? The answer is no.

**Argument II (p. 9), The Action of the CNMI SC Makes the Issue Moot?**

34. While the $139,000 judgment against Bradshaw as established by the CNMI courts was voided by the Superior Court, the issue is not moot as it is now reportedly on appeal. Regardless, this action did not diminish, change or void most of the other claims against the defendants as outlined in Claims one through seventeen. In particular, claim fourteen has never been addressed and removed by the CNMI since Bradshaw was found

14

guilty of unprofessional conduct, illegal actions and practicing racial discrimination against Mr Bisom. Too, claim sixteen has never been addressed on the distress placed on Bradshaw.

35. Claim seventeen has not been addressed. The CNMI refused to provide Bradshaw legal assistance as stipulated under the employee's indemnification act. Bradshaw went to great expense to place the void action in 96-1320 in the CNMI with no help or assistance from the CNMI. In the fourth claim, defendant Castro found Bradshaw guilty of "avoiding service" which further damaged his reputation. This condition was cited in the rule 60 hearing though the court's decision effectively found it false. In Bradshaw's Jul 14, 1999 letter, he acknowledged that two unidentified mailings from Saipan came to his post office and that he did not accept them.

36. To this day, Bradshaw's memory recalls that one of the certified letters sent him from Saipan in 1997 was much like one sent to Bradshaw by attorney Sorensen in 1995 (see Exhibit A for copy of the mailing envelope). While not noting the exact the post office box number, Bradshaw did believe at once that the first letter in 1997 was from Mr Sorensen-- though it lacked a identifying name. Too, per Washington state law (where Bradshaw then lived), there is no requirement to accommodate process servers (Weiss v. Glemp, 127 Wash. 2d 726, 903 P. 2d 455 [1995]). Clearly, the action by Bradshaw did not constitute any "avoiding of service" as judged by Judge Castro. In Claim 4 in the Compliant, Bradshaw requests that this issue be settled.

37. Bradshaw has received no restitution on any of these issues from the Dec 29, 2005 void order of the CNMI Court now on appeal. Therefore, it is impossible to argue that

15

case 05-0027 is now settled (because the \$139,000 judgment was only one issue in damages to Bradshaw). There were other issues involved which have never been addressed by the CNMI in its void order and can only be addressed in 05-0027.

**Defendants' Arguments III, V, VI, X (p. 10, 13, 14, 16) on Legal Theories/Facts**

38. A number of defendants' arguments claim that there is a lack of cognizable legal theory or facts which are false as the document is full of facts and legal theories.

39. The issue of proving facts when alleging conspiracy is settled in the Fed Rules of Civil Procedure (FRCP) Rule 8(e) which clearly provides that a pleader need not "plead his evidence" or state "ultimate facts" in an alleged civil conspiracy--Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc., D.C.N.Y. 1948, 8 F.R.D. 487. The nature of a conspiracy makes it impossible to state details at the pleading stage--Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., D.C.Mich. 1952, 13F.R.D. 5. Bradshaw's complaint meets these tests.

40. Numerous cases make the point that pleadings (per FRCP Rule 8) have the only function of giving notice of the nature of a claim--Turkish State Rys. Administration v. Vulcan Iron Works, D.C.Pa 1957, 153F.Supp. 616); McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100; U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293, 1 F.R.D. 548, 550 (Holly, J.). These cases all note that other historic issues (stating the facts, narrowing the issues, and providing a means for speedy disposition of sham claims and insubstantial defenses) can be addressed through discovery.

41. In argument X, defendants emphasize race based discrimination when the issue in 1981 can include discrimination on the basis of national origin. While there is much local

16

discrimination towards Americans (both Black and White from the US) and towards Filipinos and other outsiders, this discrimination often takes the form of national origin discrimination (i.e., that one is from mainland US and a state-sider) which is what Bradshaw claimed in his 1981 claims. The defendants apparently allege that they don't know what a US state-sider is (p. 17, l. 7) but any American on Saipan over time will have no problem with this description.

## Defendants' Argument IV and XII (p. 12, 19) Criminal Actions Not for Civil Suits

42. Defendants oppose plaintiff's use of criminal statutes with a charge that Bradshaw cannot sue under them. Yet, the defendants correctly note (p. 19, l. 10-22) that "The U.S. Supreme Court has 'rarely implied a private right of action under a criminal statute.'" The fact that there is some recognition of the right for a private suit in a criminal matter opens the door automatically to Bradshaw's use of the reported criminal statutes. They can be used!

## Defendants' Arguments XIII & XIV (p. 20) on RICO

43. Defendants attempt to use the trial of 96-1320 in 2000 as the tolling date for the statute of limitations, completely ignoring other relevant dates-- Sep 13, 2002 (with the Supreme Court's decision); Apr 2004 when the AG first notified Bradshaw of the court action; Dec 29, 2005 when the CNMI Superior Court entered its void order; or the three year rule or one year rule on discovery as applicable in Idaho (IC 5 219) where this suit was first filed. There is also a six year tolling provision as applied to certain legal cases.

44. In the RICO statutes, there is a clear right to bring civil suit under section 1964 whenever a person is injured in his business (as in Bradshaw's professional status as a CPA) or property (which includes money [per Oran's Dictionary of the Law," p. 338] both in the judgment against Bradshaw and in his expenditure of funds to obtain redress for the

17

wrong done him) and the illegal use of the US mail.

45. For years, the CNMI Supreme Court has been accused of corruption and racketeering in its judicial decisions. Judge Castro as a probate judge in 2000 arranged for his colleague Pedro Atalig (who was one of the Supreme Court justices who heard the 96-1320 appeal) to receive large sums of money as alleged improper/illegal payments in cases before Judge Castro. Allegations and frequent charges in court of conspiracy, collusion, corruption, racketeering, etc are widespread and common within the CNMI government, the CNMI Supreme Court, etc. Even the former AG Brown publicly noted the extensive corruption in the CNMI and her inability to effectively deal with it. About the only hope of dealing with Saipan corruption is to get a case into Federal court as in 05-0027.

**Defendants' Arguments VII, VIII & IX (p. 15-16), US Constitution Amendments**

46. On these amendments, per Section 501(a) of the Covenant, Amendments one through nine apply within the CNMI, along with the 14th and several others (but not amendments 10 or 11, implying that the CNMI is not the same as a US state). See also Commonwealth v. Oden, 3 N.M.I. 186 (1992), aff'd, 19 F. 3d 26 (9th Cir. 1994). The double jeopardy clause of the 5th amendment is specifically applicable in the Covenant. The 14th amendment's focus on due process, life, liberty, property and equal protection are all issues which can be and have been frequently addressed in Federal Courts.

**Defendants' Argument XI (p. 18), 1986 Immigration Reform & Control Act**

47. While immigration is controlled locally, the aspects of the 1986 act certainly apply in terms of discrimination against US citizens. Nothing in the Act exempts the CNMI.

18

### Defendants' Argument XV (p. 21), Attorney's Fees

48. The argument for attorney's fees on the premise that Bradshaw's complaint is somehow "Frivolous, unreasonable, or without foundation" is absurd. In the real world, much of what has happened or will happen in the CNMI has depended to a great extent upon the presence of this issue in Federal court. Before the filing of this Federal complaint, Bradshaw effectively got nothing from the CNMI. Corrupt/incompetent officials in the CNMI are not going to admit their wrong doings without a fight and a fight essentially in Federal court.

### Conclusion

49. Judicial immunity is not a panacea to use whenever a judge wants protection for his actions. It is something that can be applied only when it is necessary to protect the independence of the judiciary. "Although judicial immunity is absolute, it should apply only when necessary to protect independent nature of judicial decision making process" (McDonald v. Krajewski, 649 F. Supp. 370).

50. As a minimum, its purpose in not to protect a malicious or corrupt judge as seems to be the case with Judge Castro. "It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences" (Pulliam v. Allen, 466 U.S. @ 532).

51. It seems to be a fact of law that the person asserting jurisdiction must, when challenged, prove that that jurisdiction does exists; mere, good faith assertions of power and

authority (jurisdiction) are not sufficient. Bradshaw hereby challenges the jurisdiction which the CNMI justices all allegedly possessed. They should be ordered to prove the existence of jurisdiction to the satisfaction of this honorable court.

52. The defendant judges can claim judicial immunity as a defense. But they must prove it to the court and not merely assert it in a motion to dismiss. In Duncan v. Peck, 844 F2d 1261 (6th Cir. 1988), 6th Cir. rejected a plea to dismiss because of qualified immunity and declared it an "affirmative defense" which the defendant had to plead and prove.

53. Request that the defendants' motion be denied. A proposed order is attached. Alternatively, If necessary to correct any found deficiencies in his pleadings, Bradshaw requests permission to amend the Amended Complaint within forty days (for mailing time).

## Declaration

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this 5th day of February 2006 at Calder, Idaho.

_____
Robert D. Bradshaw, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of February 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen. c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Patrick Civille, Civille & Tang. PLLC, PMB 86, PO Box 10003, Saipan, MP 96950

_____
Robert D. Bradshaw, Plaintiff, Pro Se

20

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW )   Case No. CV 05-0027

     Plaintiff

     v.

COMMONWEALTH OF THE NORTHERN )  **(PROPOSED) ORDER**
MARIANA ISLANDS (hereafter referred to )
as the CNMI); et. al. )

     Defendants )
     )

Defendants Manglona, Bellas and Castro's Motion to Dismiss is denied.

DATED this _____ day of _____, 2006.

                             ALEX R. MUNSON
                                Judge

21

Fold at line over top of envelope to the
right of the return address

CERTIFIED

Z 347 404 518

MAIL

P.O. BOX 1184
SAITPAN, MP 96950

ROBERT D. BRADSHAW
P.O. BOX 359
Cayonville, Oregon 97417

ERAD369  97417000G 1A55 11/22/95
NOTIFY SENDER OF NEW ADDRESS
BRADSHAW
GENERAL DELIVERY
ONTARIO OR 97914-9999

RETURN RECEIPT
REQUESTED

11-25

Chester W. Nimitz 50
Red Cloud 10 USA
USPS