due process, equal protection and other rights under the US Constitution, the 5th, 9th and 14th amendments to the Constitution and 42 USC 1983 and their own oath of office.

234. On Apr 4, 1997, the 120 days were up for service of the BISOM 96-1320 complaint. Defendant COTTON was obligated to move in court for the dismissal of the complaint against BRADSHAW.

235. Since there was a bar to BISOM's suit as presented in the SC in 1996 and thereafter, the AG should have filed for dismissal against BRADSHAW. The AG failed to exercise due diligence.

236. Since there was evidence of malicious prosecution in case 96-1320 in 1996 and thereafter, the AG should have filed for dismissal against BRADSHAW. The AG failed to exercise due diligence.

237. Since the CNMI SC lacked both personal and subject matter jurisdiction over BRADSHAW in 1996 and thereafter, the AG should have moved for a dismissal against BRADSHAW. The AG failed to exercise due diligence.

238. With the filing of the 1st amended compliant by BISOM in May 1997, the two-year statute of limitations was up on CNMI torts. The AG should have filed for dismissal against BRADSHAW in 1997 and thereafter.

239. With the filing of the complaint and the 1st and 2d amendments in 1996-1997 and thereafter, the AG should have moved for dismissal against BRADSHAW for lack of service of process.

240. Per BISOM's later motion for default judgment, COTTON allegedly accepted service of the 4th amended complaint in 96-1320 and failed to file an answer, notify

46

BRADSHAW of the event or advise the SC that the AG did not represent BRADSHAW.

241. Defendant BUSH became the AG lead attorney on 96-1320 in the summer of 1999. BUSH offered to go into court and have BRADSHAW's name removed from the case for lack of service/statute of limitations. BRADSHAW agreed. BUSH did not do so.

242. Defendant SOSEBEE became lead attorney in Aug 1999. He learned in Aug 1999 that BRADSHAW claimed no service and yet BISOM/SORENSEN held US postal receipts showing alleged service on BRADSHAW to a person named Manny.

243. SOSEBEE sat on these facts from Aug 1999 to Feb 2000 and did nothing to resolve them for six months until six days before the trial.

244. On Feb 1, 2000, SOSEBEE filed a motion to take the case off of the 96-1320 calendar on the basis of the contradictory and confusing documents in the case. SOSEBEE filed in court both copies of the fraudulent receipts and the privileged letter from BRADSHAW to BUSH stating the lack of service. SOSEBEE did not have BRADSHAW's permission for the revealing of BRADSHAW's privileged letter in court. This was a lack of due diligence.

245. On or about Feb 1, 2000, SOSEBEE, with the approval of Acting AG FORELLI, notified the SC and SORENSEN that the AG was withdrawing from representing BRADSHAW. But BRADSHAW was never told of this decision.

246. The withdrawal was made despite the fact that BRADSHAW was sued in his official capacity for his duties as an official of the CNMI government. The AG had a fiduciary duty to legally protect the OPA and BRADSHAW.

247. By Feb 3, 2000, both SOSEBEE and FORELLI knew that BISOM/SORENSEN had submitted two sets of postal documents which were totally contradictory. One or both

47

sets had to be fraudulent.

248. Yet, AG FORELLI refused to order a criminal investigation and prosecution of BISOM/SORENSEN though there was incontrovertible court documents showing the presence of fraud/attempted fraud on the CNMI and BRADSHAW.

249. In 1999-2000, SOSEBEE sat back, did nothing and allowed the grossly incompetent CASTRO court to enter a default judgment against BRADSHAW to obtain judgments against BRADSHAW and the CNMI.

250. The AG did file a notice of appeal to the Supreme Court. But later, SOSEBEE/CLAYTON dropped the appeal.

251. The CNMI AG persons were effectively found guilty of gross and malicious incompetence and malpractice by the CNMI Supreme Court in its review of case 96-1320 in 2002.

252. Specifically the court cited AG personnel several times for mistakes (plural), and violation of ethic rules. The court also allowed that the AG person(s) were involved in a conflict of interest in court.

253. The CNMI AG had a fiduciary duty by the CNMI Constitution and laws to render legal assistance and indemnification to BRADSHAW for his official work in the CNMI. The AG persons did not render this help. After Jun 1999, they became adversaries and worked consistently against BRADSHAW.

254. BRADSHAW was sued in his official capacity in the 96-1320 complaint and its 1st and 2d amended complaints. In the pleadings, BRADSHAW was repeatedly cited in his official capacity and for his official duties in the CNMI. Yet, the AG did nothing to defend

18

BRADSHAW in his official capacity.

255. The AG persons abandoned BRADSHAW in about Jul 1999 and allowed a default judgment to be entered against him in the CNMI courts. The AG then refused to appeal the illegal decision made in the CASTRO court.

256. BRADSHAW was due $130 from BISOM in case 95-0042. In the 2003 settlement of 96-1320 by CLAYTON, BRADSHAW lost this $130.

257. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media.

258. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW.

259. The actions of the AG defendants were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

260. To address the illegal judgment, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000. The actions of the AG defendants make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

261. BRADSHAW prays for actual damages of $4,000 in case 96-1320, $4,000 in case 05-0084 and all other costs incurred to date in case 05 0027 as expanded and such

49

Received Mar-30-2006 10:25    From-    To-US DISTRICT COURT, N    Page 001

other relief as the court may decide and order/allocate to the AG defendants.

262. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from SOSEBEE and $139,000 from the other AG defendants as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

263. Defendants are not eligible for qualified immunity in that their acts were outside their designated duties. Their acts were beyond the purview of a reasonable person. Their acts violated US and CNMI laws and rules. And their acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

### THIRD CLAIM--Civil Rights Violations (42 USC section 1983).

264. Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as if set forth here in full.

265. Defendant Pamela BROWN violated BRADSHAW's rights and benefits to the US Constitution, the 5th, 9th and 14th amendments and 42 USC 1983 and her own oath of office.

266. Though having a fiduciary duty to assist BRADSHAW and to indemnify BRADSHAW for his official work in the CNMI, she became an adversary to work against BRADSHAW in 2004/2005. She engaged personally in or by influencing others to obstruct justice in CNMI case 96-1320 and USDC (ID) case 05-0084.

267. Per the affidavit of BRADSHAW's contacts with the AG, BRADSHAW was informed by AG personnel that BROWN's office had possession of the case file 96-1320 and the fraudulent postal receipts in question. BROWN supposedly spent some ten months investigating the alleged fraud in case 96-1320. She ended up hiding, losing or destroying

50

Received Mar-30-2006 10:25        From-        To-US DISTRICT COURT, N        Page 002

the key documents involved.

268. BROWN or others under her influence hid or destroyed various documents in case file 96-1320 in violation of 18 USC 1503, 1510, 1511, and 1519 and 39 USC 3005/4005.

269. Since BRADSHAW contacted the AG in Sep 2004 to obtain relief, BROWN and her office has consistently acted to lie, deceive, twist, distort, deny, obstucate, stall and generally obstruct justice.

270. The actions of AG BROWN were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

271. To address the illegal judgment, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000 because BROWN refused to provide assistance. The actions of BROWN makes BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

272. BRADSHAW prays for relief for the actual damages of $100 due him in 96-1320 from Sep 2004 to Feb 2005; $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to BROWN.

273. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from BROWN as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

51

274. BROWN is not eligible for qualified immunity in that her acts were outside her designated duties. Her acts were not judicial in a courtroom. Her acts were beyond the purview of a reasonable person. Her acts violated US and CNMI laws and rules. And her acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

### FOURTH CLAIM--Civil Rights Violations (42 USC 1983)

275. Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as if set forth here in full.

276. An unknown person or persons in the CNMI took action in about 2000 and again later in 2004-2005 to deprive BRADSHAW of his due process and equal protection rights under the US Constitution.

277. In about 2000, the person(s) misappropriated US postal forms. These forms were prepared to illegally reflect something allegedly sent to BRADSHAW. This unknown person(s) then entered fraudulent US mail postal receipts in case 96-1320. These documents contributed to the illegal $139,000 judgment against BRADSHAW. These acts violated 18 USC 241-242; 1341-1342; 1349; 1707; and 39 USC 3005/4005.

278. Another or the same unknown person(s) was influenced or ordered by AG BROWN to hide, lose or destroy documents from the 96-1320 case file in 2004-2005. This action constituted obstruction of justice in cases before the CNMI SC and the USDC in Idaho.

279. BRADSHAW was injured in his property (money). His character was slandered in the CNMI media and the media coverage affected his ability to earn a living by his profession. He lost the enjoyment of life he was entitled to by the US Constitution.

52

280. BRADSHAW prays for relief for the actual damages of $100 due him in 96-1320 from Sep 2004 to Feb 2005; $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to the unidentified person(s).

281. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from unidentified person(s) as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

282. Defendant is not eligible for qualified immunity in that her acts were outside his/her designated duties. The acts were beyond the purview of a reasonable person. The acts violated US and CNMI laws and rules. And the acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

**FIFTH CLAIM--Civil Rights Violations (42 USC 1983)**

283. Plaintiff incorporates herein by reference paragraphs 1-282 as hereinabove alleged as if set forth here in full.

284. Judge CASTRO was lost in his own courtroom in 2000 in SC case 96-1320. He ran a totally and maliciously incompetent court to deny BRADSHAW his due process, equal protection and other rights under the US Constitution, the 5th, 9th and 14th amendments and 42 USC 1983.

285. As CASTRO was the sitting judge in case 96-1320 in 1996-2000, the Feb-Mar trial was characterized by absolute confusion and pandemonium. CASTRO lacked jurisdiction. But he proceeded with the trial. CASTRO's actions were reckless, malicious, grossly incompetent, and ridiculous in his handling of case 96-1320.

53

286. CASTRO violated BRADSHAW's rights and benefits of the US Constitution and disobeyed both the CNMI rules and 7 CMC Sections 1102 and 1104 and violated his own oath of office.

287. CASTRO violated SC rule 4(m) by not dismissing the action against BRADSHAW on Apr 4, 1997 as it proceeded beyond the 120-day limit for service without a court order.

288. From the 96-1320 case file, it was patently clear that the BISOM action was time barred against BRADSHAW and involved a malicious prosecution. Yet, CASTRO did nothing to correct the injustice in his court.

289. CASTRO should have understood the law and that he lacked both personal and subject matter jurisdiction on BRADSHAW.

290. CASTRO was informed that BRADSHAW had no attorney present and had not been served. Yet, he continued with the trial.

291. CASTRO violated SC rules 4(d), 4(e) and 4(k) and 7 CMC in that he recognized documents showing service on BRADSHAW and made decisions on service to BRADSHAW that were illegal. His rulings were not in compliance with CNMI laws/rules or the laws of the state of WA where BRADSHAW lived.

292. CASTRO could see in the BISOM complaint that BISOM worked outside the purview of government authority to stop and interfere in the audit work of BRADSHAW. BISOM breached his own contract and his oath of office.

293. CASTRO knew from the complaint that BISOM's actions were illegal. Yet, CASTRO allowed a default judgment to be made illegally against BRADSHAW.

54

294. CASTRO knew from the 96 1320 file that BISOM filed the 1st and 2d amended complaints without his order. Yet, he did nothing about it.

295. CASTRO knew that the CNMI AG had a fiduciary duty by the CNMI Constitution and laws to render legal assistance to BRADSHAW for his official work in the CNMI. BRADSHAW was sued in his official capacity in the 96-1320 complaint and its 1st and 2d amended complaints. In the pleadings in all of the complaints, BRADSHAW was repeatedly cited in his official capacity and for his official duties in the CNMI. Yet, CASTRO did nothing.

296. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media.

297. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media, to affect his ability to earn a living when he resumes the practice of accounting.

298. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW.

299. The actions of CASTRO were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

300. To address the illegal judgment entered by CASTRO, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000. The actions of CASTRO make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

301. BRADSHAW prays for relief for the actual damages of $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to CASTRO.

302. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $279,000 from CASTRO ($139,000 for BRADSHAW and $140,000 as paid out by the CNMI) as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

303. Judge CASTRO is not entitled to judicial immunity as subject and personal jurisdiction was never established over BRADSHAW in the CASTRO court. CASTRO lacked jurisdiction. He did not act in a judicial capacity. He is not entitled to judicial immunity.

**SIXTH CLAIM--Civil Rights Violations (42 USC 1981)**

304. Plaintiff incorporates herein by reference paragraphs 1-303 as hereinabove alleged as if set forth here in full.

305. In denying BRADSHAW his due process, equal protection and other rights under the US Constitution, the 5th, 9th and 14th amendments, Judge CASTRO violated the US Constitution, the CNMI Constitution, and 42 USC 1981 in his actions in 2000 in case 96-1320.

306. There is open discrimination against outsiders in the CNMI which is promoted by the CNMI constitution which openly discriminates against non-local people. Article XII of the CNMI Constitution limits land ownership to people of local Chamorro and Carolinian racial descent in violation of the US Constitution and 42 USC 1981.

307. This open discrimination against outsiders extends in many CNMI government operations to include employment and contractual duties.

308. US citizens whose origin is the continental US are exposed to this discrimination on the basis of national origin and race since the CNMI's provisions are predicated upon racial discrimination.

309. This open discrimination against outsiders was promoted by Judge CASTRO in that he allowed a trial to take place against BRADSHAW without BRADSHAW's knowledge, presence, legal representation and legal service of process according to CNMI rules/laws.

310. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media.

311. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media. to affect his ability to earn a living when he resumes the practice of accounting. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW.

312. The actions of CASTRO were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

313. Since BRADSHAW was not present and had no attorney present, it was easy for CASTRO to discriminate against him because of his national origin and his domicile in the US as a US state-sider.

57

314. To address the illegal judgment entered by CASTRO, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000.

315. The actions of CASTRO make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

316. BRADSHAW prays for relief for the actual damages of $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to CASTRO.

317. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $279,000 from CASTRO ($139,000 for BRADSHAW and $140,000 as paid out by the CNMI) as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

### SEVENTH CLAIM--Civil Rights Violations (42 USC 1985)

318. Plaintiff incorporates herein by reference paragraphs 1-317 as hereinabove alleged as if set forth here in full.

319. The CNMI; her agents FORELLI, CASTRO, and SOSEBEE; and defendants BISOM and SORENSEN conspired and committed acts in 1996-2000 individually/collectively to injure BRADSHAW in his person/property, and to interfere in and deprive BRADSHAW of his rights and privileges as a citizen of the United States.

320. The defendants acted in this de facto conspiracy in 2000 at the CNMI SC to interfere in the civil rights of BRADSHAW under the US Constitution and 42 USC 1985. The

prima facie and circumstantial evidence in case 96-1320 establish clear collusion by the defendants to systematically deny BRADSHAW his rights under the US Constitution.

321. The conspiracy in 1996-2000 involved Judge CASTRO who acted in collusion with AG FORELLI, attorneys SOSEBEE and SORENSEN, and Mr BISOM to allow the 06 1320 trial to take place in the CNMI SC against BRADSHAW without BRADSHAW's knowledge, presence, legal representation and legal service of process according to CNMI rules/laws.

322. The defendants all knew and understood that BISOM/SORENSEN had entered fraudulent documents in case 96-1320 to defraud BRADSHAW and the CNMI. They conspired and acted together to hide and alter this fact to make out that the default judgment on BRADSHAW was ostensibly for other reasons.

323. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW.

324. The actions of the defendants were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflict monetary, emotional and other injury on BRADSHAW and/or to interfere in BRADSHAW's civil rights per the US Constitution.

Received Mar-30-2006 10:30    From-    To-US DISTRICT COURT, N    Page 001

325. To address the illegal judgment entered by CASTRO, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000. The actions of the defendants make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

326. BRADSHAW prays for relief for the actual damages of $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to FORELLI, SOSEBEE, CASTRO, BISOM, SORENSEN and the CNMI.

327. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $279,000 from CASTRO, FORELLI, SOSEBEE, BISOM, SORENSEN and the CNMI as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

### EIGHTH CLAIM--RICO Violations (18 USC 1961-1964)

328. Plaintiff incorporates herein by reference paragraphs 1-327 as hereinabove alleged as if set forth here in full.

329. The defendant CNMI conspired and acted through her agents FORELLI, BROWN, CASTRO, CLAYTON, and SOSEBEE and with BISOM and SORENSEN in 1997 to 2005 in the CNMI to defraud BRADSHAW. The defendants violated BRADSHAW's rights and his business and property interests under the US Constitution and the 5th, 9th and 14th amendments and 18 USC 1961-1964.