Received Mar-30-2006 12:00    From-    To-US DISTRICT COURT, N    Page 001



Robert D. Bradshaw
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691

Defendant, Pro Se

## IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM ) | Civil Action No 96-1320 |
| Plaintiff ) | |
| v. ) | |
| COMMONWEALTH OF THE NORTHERN ) | BRADSHAW'S AFFIDAVIT ON |
| MARIANA ISLANDS; ROBERT D. ) | TELEPHONE AND FAX |
| BRADSHAW, former Temporary Public ) | CONTACTS WITH THE CNMI |
| Auditor, in his individual capacity, et al. ) | ATTORNEY GENERAL-- |
| ) | IN REFERENCE TO |
| Defendants ) | CNMI CASE 96-1320 |

1. Attached as exhibit A hereto is a record from Verizon of long distance phone calls made by me to Saipan on the dates indicated. The 234 numbers in Aug and early Sep 2004 were calls to Micronesian Legal Services Corp or calls trying to reach them. The 664 numbers are generally to the CNMI AG but calls to 664-2312 and a few of the other calls were to the AG Investigating office. There were a few other calls made by me to the AG in St Maries, ID, some 30 miles away on a telephone calling card which did not provide a record of calls. I also sent several faxes to the AG. And Mr. Ed Buckingham called me a few times.

1



Received  Mar-30-2006  12:00        From-        To-US DISTRICT COURT, N    Page 002

2. In April 2004, I learned from the CNMI AG that a default judgment for $139,000 was made against me in the CNMI Superior Court Civil Case 96-1320 (as outlined in both the CNMI Superior Court case file 96-1320 and the US District Court of Idaho file 5-84).

3. In Aug 2004, I asked Tom J. Schweiger, former director of Micronesian Legal Services Corp (now with the AG), to help me find out about the 96-1320 default that was entered. He checked the case file and on Sep 9th said that the basis of the judgment was that Robert A. Bisom in 96-1320 filed in court documents showing process service upon me by two means--Bisom served the CNMI AG for me and he also allegedly served on me by alleged certified mailings of summons and complaints which were allegedly receipted by a person apparently named "Manny." Schweiger said that the case files also showed some similar receipts for alleged mailings to me from the AG. He added that he remembered the Bisom case and that the two AG lawyers at the trial of the case had a violent argument which almost turned into a fight.

4. On Sep 12, 2004 (Sep 13, 2004 Saipan time), I contacted the CNMI AG's office and spoke to "Heather" in the Criminal Division. She was briefed on the alleged fraudulent mailing receipts filed in 96-1320 and informed that I wished to file criminal charges against the person(s) who filed the receipts. She referred me to Mr. Lemons who I fully briefed on the alleged fraudulent mailing receipts. He referred me to Asst AG Ed Buckingham who was supposed to be my contact and the person who would conduct an investigation into my allegations.

5. I talked to Mr. Buckingham and informed him fully about the postal receipts and also the fact that the AG had accepted service on the case though Jay Sorensen

2



Received  Mar-30-2006  12:00      From-               To-US DISTRICT COURT, N           Page 003

had been expressly told that the AG would not accept service. In our discussion, I remarked that I thought that the AG had a file copy of the case file in its office. But Mr. Buckingham said that the AG did not have file copies of the cases it defended. He added that he would check the file copy at Superior Court.

6. I went to St Maries, ID and faxed the documents I had in my possession on this case with notarized affidavits of my reply on them or the mailing of them (as are now filed in the CNMI Superior Court file 96-1320 and in the US District Court of Idaho file 5-84). I then called Mr. Buckingham back and he verified that he had seen the process service documents filed with the alleged postal return receipts and return of service forms and that the documents on file were as I described (based on the findings of Tom Schweiger). I had the impression that Mr. Buckingham had the documents in front of him, although this might not have been the case.

7. I specifically noted to Mr. Buckingham that I wanted to file criminal charges against the persons responsible for the fraudulent mailing receipts and that I wanted the AG, which was supposed to be my lawyer in this case, to follow up with a court action in the Saipan Superior Court to have the judgment stricken or voided on me as it was obtained by fraud. Otherwise, I specifically requested that the AG at once to take action to pay the $139,000 to Bisom on the basis of the Indemnification Act.

8. I strongly recommended to Mr. Buckingham that certified true copies of the fraudulent receipts be made and used in the investigation and that his office or the court take action to secure the case file as it involved alleged fraud. I also recommended to Mr. Buckingham that the documents or copies thereof be forwarded to the US Postal authorities as they involved US postal fraud. I then suggested that



tho AG make for me a certified true copy of the postal receipts and I would at once take them to the US postal inspector in Spokane for an investigation. He said that he would refer the case to Pamela Brown for a decision on what the AG would do on it. Ms Brown was off island but due back in a few days.

7. Thereafter, I called Mr. Buckingham back on Sep 19 and many times thereafter to get a response on AG follow-up. He told me that Ms Brown was briefed and she had authorized the AG to investigate the fraud charges. I noted to Buckingham that the mail receipts should also be sent to the FBI as the FBI lab has a capability to completely analyze both the writings and the ink used to try to determine who wrote them and if they were prepared by the same pen, and so forth. While Mr. Buckingham did not confirm that he would go the FBI with the documents, he seemed receptive to the idea. I had a feeling that he was limited in what decisions he could make but would have to refer matters to Pamela Brown for any decisions. In our several conversations, I also suggested that he send me copies of the alleged postal return receipts and that I would take them to US Postal inspectors for a postal investigation. I followed up on Jan 25, 2005 with the letter to the AG at Exhibit B (sent by both fax and mail) which recaps the need to make copies of the alleged fraudulent documents, to secure them adequately, and another mention of the need for US Postal Investigators and the FBI.

8. In late Sep 2004, Mr. Buckingham informed me that he had briefed and asked Mr. Joseph Race, acting director in charge of the CNMI Investigations, to investigate the case. In a Oct 7, 2004 letter from Mr. Race, he noted that he tried to call me and that he had referred the case to Frank Kapileo and Alfred Teregeyo. I called

4



them a few times and on Oct 20, 2004 I talked to Mr. Kapileo and offered my help and any information which he might need from me. He noted to me that he had the case file in front of himself and he and Mr. Toregeyo were both reading it. He did not say why or how that he came into possession of the case file. But he acknowledged seeing the postal receipts in the file.

9. I made several other contacts with Mr. Buckingham and the investigators over the next several weeks. Their responses were always that they were investigating the case and would get back with me. At one point in time, in January 2005, I discussed the case with Mr. Race. I remember his words that it looked to him like I got a dirty deal from the documents filed by Bisom in court. I had the impression that Mr. Race had personally seen the alleged postal receipts. I asked to speak to Mr. Aldan, who had been appointed Chief of Investigations. Mr. Race said that Mr. Aldan was in Pam Brown's office briefing her--presumably on my case.

10. In Jan 2005, I also tried to talk to Mr. Kapileo but he was out of the office, so Mr. Teregeyo took my call and we chatted about the case. Mr. Teregeyo said that he had the file but that Mr. Kapileo had removed the postal return receipts and had taken them with him to the local Saipan Post Office --supposedly Mr. Kapileo was then talking to the Saipan Postmaster about the receipts (suggesting that he by then had shown the receipts to the postmaster or someone at the Post office). I also repeated my earlier comments that if the AG would send me copies, I would take the receipts to the US Postal Inspectors.

11. In late Jan 2005, I became concerned that the CNMI would not supply me copies of the receipts and that the AG was not making any effort to involve the US

5



postal inspectors or the FBI. I called Mr. Buckingham several times in Jan and early Feb 2005 and tried to encourage him to take some action since he was supposed to be the Asst AG in charge of the case, per Mr. Lemons' words to me.

12. Mr. Buckingham was always friendly and seemed cooperative, interested and concerned. He maintained several times that he had spoken to or was going to speak about the case to Pam Brown, Mr. Race and/or Mr. Aldan. Mr. Buckingham conveyed to me his efforts and desire to get a colorable investigation and to resolve the case. At one time, he suggested that he would make copies of the file and/or at least the documents in question and mail them to me. I said that this would be good.

13. In the meantime, I continued to send faxes and write letters to the AG outlining the need for action to secure the documents by making copies and to pay the $139,000 to Bisom.

14. In my last telephone conversation with Mr. Buckingham in early Feb 2005, his demeanor to me had completely changed. Whereas he had always been a nice, friendly person interested in trying to resolve the case, he abruptly became as cold as ice and was clearly putting some distance between himself and me. In terms of sending me any of the documents, he said no that I had misunderstood him and that the case file was then in the possession of the AG "for review" as he put it.

15. He further communicated that he had been taken off the case and that someone else in the AG's office would contact me in the future on the case. While he did not say so, it seemed clear to me that Mr. Buckingham had been reprimanded and disciplined for trying to be friendly and trying to resolve the case with me. It was clear that Pam Brown herself or others had dressed him down, directly or indirectly.

6



16. No other persons in the AG's office contacted me until I received Ms Brown's letter of Feb 15, 2005 which effectively said that the AG would do nothing further on the case (as filed by me in both the CNMI 96-1320 file and the US District Court of Idaho file 5-84). It was then that I clearly understood that the AG had become an hostile, adversarial party who in the future would work against me and act to protect the guilty parties involved in 96-1320 who had filed the fraudulent documents. I then filed a motion with the CNMI Superior Court to void the judgment and filed suit in the Idaho US District Court.

17. In the US District Court case, I tried to obtain the receipts by discovery. But the CNMI, through its attorney so far has refused my discovery request (s).

18. In June 2005, in a conversation I had with Ms Bernie Sablan, Clerk of the CNMI Superior Court, she told me that the case file on 96-1320, was in her possession for the judge to use in my motion to void. She said that the alleged postal receipts showing service are not presently in the file. I had the impression that Ms Sablan was unaware that the AG's office had had possession of the 96-1320 case file.

19. In all my contacts with the CNMI AG, I was led to believe that the AG had possession of certainly the mail receipts and indeed generally the whole 96-1320 file.

DATED this ___21st___ day of ___July___ 2005 at St. Maries, Idaho.

Robert D. Bradshaw

STATE OF IDAHO
COUNTY OF BENEWAH

7

Received Mar-30-2006 12:00      From-      To-US DISTRICT COURT, N      Page 008

I, _Matthew S. Blood_____, Notary of the state of Idaho and county of Benewah, residing at _Benewah County_____ do hereby certify that on this _21st_____ day of _July_____ 2005, personally appeared before me Robert D. Bradshaw, to me known to be the individual described in and who executed the within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _21st_ day of _July_____ 2005.

_Matthew S. Blood_
NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

MATTHEW S. BLOOD
Notary Public
State of Idaho

MY APPOINTMENT EXPIRES

_07-11-06_

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _22_ day of _July_ 2005, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Marc Lyons/Rudy J. Verschoor, Ramsden & Lyons (phone 208-664-5818)
PO Box 1336
Coeur d'Alene, ID 83816-1336

Jay H. Sorenson (phone 805-485-6662), Attorney for Robert A. Bisom
4234 Clubhouse Drive
Somis, CA 93066.

Commonwealth of the Northern Mariana Islands, Attention the Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol Hill
Saipan, MP 96950

SCOTT KHENG SHANG TAN, c/o CNMI Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol Hill
Saipan, MP 96950

_Robert D. Bradshaw_
Robert D. Bradshaw, Defendant, Pro Se

(R-1)

Received Mar-30-2006 12:00   From-   To-US DISTRICT COURT, N   Page 009



**verizon**

*Make progress every day*

Billing Date: 09/01/04   Page 4 of 6
Telephone Number: 208 245-1691 011113
Account Number: 03 0134 1099766705 05
How to Reach Us: See page 2

### CHANGE IN CHARGES

local telephone rates affordable for all customers and for discounts to schools, libraries, rural health care providers, and low income families. As a result of the LNP surcharge, the FUSF surcharge will increase. The LNP and FUSF surcharges are not applied to customers subscribed to Verizon's Lifeline service, except for the FUSF surcharge on incidentals.

## Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to Verizon Long Distance.

### LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount | |
|---|---|---|
| Direct Dialed | 3.37 | |
| Total usage | $ 3.37 | |
| Total Long Distance calls | | $ 3.37 |
| Taxes and Surcharges | | .26 |
| Total Verizon Long Distance Charges | | $ 3.63 |

Your calling plan(s):   Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Mon | Aug 2 | 11:53 am | HaydenLake | ID | 208 762-2310 | 2 | .34 |
| 2 | Mon | Aug 2 | 11:55 am | Coerdalene | ID | 208 667 3100 | 1 | .17 |
| 3 | Thu | Aug 12 | 1:10 pm | Spokane | WA | 509 448-1000 | 2 | .20 |
| 4 | Fri | Aug 13 | 11:23 am | Spokane | WA | 509 448-1000 | 1 | .10 |
| 5 | Fri | Aug 20 | 9:08 am | Coerdalene | ID | 208 667-9559 | 8 | 1.36 |
| 6 | Mon | Aug 23 | 5:03 pm | Susupe | NN | 670 664-2367 | 2 | .20 |
| 7 | Tue | Aug 24 | 4:10 pm | Susupe | NN | 670 234-6243 | | .30 |
| 8 | Tue | Aug 24 | 4:14 pm | Capitolhl | NN | 670 323-6633 | 1 | .10 |
| 9 | Thu | Aug 26 | 4:08 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 10 | Thu | Aug 26 | 4:09 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 11 | Thu | Aug 26 | 4:09 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 12 | Thu | Aug 26 | 5:06 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 13 | Thu | Aug 26 | 5:06 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 14 | Thu | Aug 26 | 5:07 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| | | | | | | Subtotal | | $ 3.37 |

**Summary of Timeless TTY**

| | |
|---|---|
| 15 Plan calls | 3.37 |
| Total | $ 3.37 |

Timeless TTY start date: 02/17/04

Total Long Distance calls   $ 3.37

Thank you for using Verizon Long Distance.

03 0134 2062461691 011113 05 00 ID2107IBRDA1   00008320 350000045842

Schiltz 64

(52)



**Verizon**
Make progress every day

Billing Date: 10/01/04    Page 4 of 6
Telephone Number: 208 245-1691 0111?
Account Number: 03 0134 1099768705 05
How to Reach Us: See page 2

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to Verizon Long Distance.

### LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| | Amount | |
|---|---|---|
| Domestic | | |
| Direct Dialed | 13.90 | |
| Total usage | $ 13.90 | |
| Total Long Distance calls | | $ 13.90 |
| Taxes and Surcharges | | 1.58 |
| Total Verizon Long Distance Charges | | $ 15.48 |

Your calling plan(s):    Timeless TTY

**Timeless TTY**
**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Tue | Aug 31 | 3:45 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 2 | Tue | Aug 31 | 6:14 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 3 | Tue | Aug 31 | 6:15 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 4 | Wed | Sep 1 | 11:08 am | Spokane | WA | 509 998-4575 | 1 | .10 |
| 5 | Mon | Sep 6 | 4:21 pm | Susupe | NN | 670 664-2366 | 6 | .60 |
| 6 | Mon | Sep 6 | 8:25 pm | Susupe | NN | 670 234-6215 | 1 | .10 |
| 7 | Mon | Sep 6 | 9:43 pm | Susupe | NN | 670 234-7729 | 12 | 1.20 |
| 8 | Thu | Sep 9 | 5:29 pm | Susupe | NN | 670 234-7729 | 42 | 4.20 |
| 9 | Thu | Sep 9 | 6:11 pm | Susupe | NN | 670 234-7253 | 1 | .10 |
| 10 | Sun | Sep 12 | 2:41 pm | Susupe | NN | 670 664-2367 | 3 | .30 |
| 11 | Sun | Sep 12 | 2:54 pm | Susupe | NN | 670 664-2366 | 41 | 4.10 |
| 12 | Sun | Sep 19 | 3:07 pm | Susupe | NN | 670 664-2341 | 18 | 1.80 |
| 13 | Sun | Sep 19 | 4:26 pm | Susupe | NN | 670 664-2341 | 3 | .30 |
| 14 | Tue | Sep 21 | 1:51 pm | Susupe | NN | 670 664-2342 | 1 | .10 |
| 15 | Tue | Sep 21 | 2:50 pm | Susupe | NN | 670 664-2342 | 2 | .20 |
| 16 | Fri | Sep 24 | 7:43 pm | Susupe | NN | 670 664-2342 | 1 | .10 |
| 17 | Mon | Sep 27 | 2:54 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 18 | Mon | Sep 27 | 3:35 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 19 | Mon | Sep 27 | 4:31 pm | Susupe | NN | 670 664-2341 | 2 | .20 |
| | | | | | | Subtotal | | $ 13.90 |

**Summary of Timeless TTY**

| | |
|---|---|
| 20 Plan calls | 13.90 |
| Total | $ 13.90 |

Timeless TTY start date: 02/17/04

Total Long Distance calls                $ 13.90

Thank you for using Verizon Long Distance.



Received Mar-30-2006 12:06     From-     To-US DISTRICT COURT, N    Page 001



Billing Date: 11/01/04   Page 4 of 6
Telephone Number : 208 245-1691 011113
Account Number: 03 0134 1090768705 03
How to Reach Us : See page 2

*Make progress every day*

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to Verizon Long Distance.

### LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount |
|---|---|
| Direct Dialed | .70 |
| Total usage | $ .70 |
| Total Long Distance calls | $ .70 |
| Taxes and Surcharges | .08 |
| Total Verizon Long Distance Charges | $ .78 |

Your calling plan(s):   Timeless TTY

**Timeless TTY**

#### Direct Dialed Calls

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Sat | Oct 9 | 10:08 am | Soap Lake | WA | 509 246-1559 | 1 | .10 |
| 2 | Sun | Oct 17 | 3:21 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 3 | Tue | Oct 19 | 2:56 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 4 | Tue | Oct 19 | 4:59 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 5 | Wed | Oct 20 | 3:05 pm | Susupe | NN | 670 664-2312 | 2 | .20 |
| 6 | Tue | Oct 26 | 10:11 am | Summervl | SC | 843 871-5651 | 1 | .10 |
| | | | | | | Subtotal | | $ .70 |

**Summary of Timeless TTY**

| | | |
|---|---|---|
| 7 Plan calls | | .70 |
| Total | | $ .70 |

Timeless TTY start date: 02/17/04

Total Long Distance calls                                    $ .70

Thank you for using Verizon Long Distance.

### TAXES AND FEES ON SERVICES

| | | |
|---|---|---|
| 8 Federal excise tax at 3.00% | | .02 |
| 9 Federal Universal Service Fee - Verizon LD | | .06 |
| Total | | $ .08 |

*Verizon Long Distance charges*                             $ .78

*Total Verizon Long Distance Charges*                       $ .78

Nonpayment of provider charges will not result in the disconnection of your local telephone service; however, collection of unpaid charges may be pursued by the service provider.

03 0134 2082451691 011113 05 01 ID212*HBRDA1    U0016916 550000082240

Received  Mar-30-2006 12:06       From-       To-US DISTRICT COURT, N   Page 002



# Verizon Long Distance

Billing Date: 02/01/05   Page 4 of 4
Telephone Number: 208 245-1691  011113
Account Number: 03 0134 1099768705 05
How to Reach Us: See page 2

We never stop working for you.

SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE (continued)

Total Verizon Long Distance Charges                    $ 6.64

Your calling plan(s):   Timeless TTY
**Timeless TTY**
Direct Dialed Calls

| # | Day | Date | Time | Place called | | Number called | Min. | |
|---|-----|------|------|--------------|---|---------------|------|---|
| 1 | Sun | Jan 23 | 2:52 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 2 | Sun | Jan 23 | 2:56 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 3 | Sun | Jan 23 | 2:57 pm | Susupe | NN | 670 664-2312 | 2 | .20 |
| 4 | Sun | Jan 23 | 3:35 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 5 | Sun | Jan 23 | 3:35 pm | Susupe | NN | 670 664-2312 | 7 | .70 |
| 6 | Sun | Jan 23 | 3:43 pm | Susupe | NN | 670 664 2341 | 17 | 1.70 |
| 7 | Mon | Jan 24 | 10:30 am | Pyatt | AR | 870 427-2819 | 30 | 3.00 |

Subtotal                                                $ 5.90

Summary of Timeless TTY
8  Plan calls                                            5.90
   Total                                                $ 5.90

Timeless TTY start date: 02/17/04

Total Long Distance calls                               $ 5.90

Thank you for using Verizon Long Distance.

**TAXES AND FEES ON SERVICES**
9  Federal excise tax at 3.00%                           .19
10 Federal Universal Service Fee - Verizon LD            .55
   Total                                                $ .74

*Verizon Long Distance charges*                         $ 6.64

***Total Verizon Long Distance Charges***               $ 6.64

Nonpayment of provider charges will not result in the disconnection of your local telephone service; however, collection of unpaid charges may be pursued by the service provider.

The rates for these services are not regulated by the Idaho Public Utilities Commission.

03  0134  2082451691  011113  05  05  ID210*HBRDA1      00006382  350000043968





We never stop working for you.

Billing Date: 03/01/05  Page
Telephone Number : 208 245-16
Account Number: 03 0134 109976
How to Reach Us . See page 2

# Verizon Long Distance

SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE (continued)

Total Verizon Long Distance Charges                                    $ 13.12

Your calling plan(s):    Timeless TTY
**Timeless TTY**
**Direct Dialed Calls**

|    | Day | Date   | Time     | Place called | | Number called | Min. |      |
|----|-----|--------|----------|--------------|----|---------------|------|------|
| 1  | Thu | Feb 3  | 2:57 pm  | Susupe       | NN | 670 664 2341  | 10   | 1.00 |
| 2  | Sun | Feb 6  | 1:57 pm  | Susupe       | NN | 670 664-2314  | 12   | 1.20 |
| 3  | Mon | Feb 7  | 2:57 pm  | Susupe       | NN | 670 234-8662  | 1    | .10  |
| 4  | Mon | Feb 7  | 2:58 pm  | Susupe       | NN | 670 235-8662  | 1    | .10  |
| 5  | Mon | Feb 7  | 3:03 pm  | Susupe       | NN | 670 235-8662  | 1    | .10  |
| 6  | Mon | Feb 7  | 3:08 pm  | Susupe       | NN | 670 235-8662  | 1    | .10  |
| 7  | Mon | Feb 7  | 3:12 pm  | Susupe       | NN | 670 235-8662  | 1    | .10  |
| 8  | Mon | Feb 14 | 2:00 pm  | Susupe       | NN | 670 234-7729  | 1    | .10  |
| 9  | Sat | Feb 19 | 8:10 pm  | Moses Lake   | WA | 509 750-9793  | 8    | .80  |
| 10 | Sun | Feb 20 | 7:04 pm  | Sandpoint    | ID | 208 263-8037  | 1    | .17  |
| 11 | Mon | Feb 21 | 2:13 pm  | Capitolhi    | NN | 670 322-6481  | 1    | .10  |
| 12 | Mon | Feb 21 | 2:14 pm  | Susupe       | NN | 670 234-7729  | 1    | .10  |
| 13 | Mon | Feb 21 | 2:15 pm  | Susupe       | NN | 670 234-6243  | 1    | .10  |
| 14 | Mon | Feb 21 | 2:16 pm  | Susupe       | NN | 670 234-7729  | 1    | .10  |
| 15 | Mon | Feb 21 | 2:16 pm  | Susupe       | NN | 670 235-9006  | 1    | .10  |
| 16 | Mon | Feb 21 | 2:18 pm  | Susupe       | NN | 670 234-7729  | 2    | .20  |
| 17 | Mon | Feb 21 | 2:25 pm  | Susupe       | NN | 670 234-7729  | 1    | .10  |
| 18 | Mon | Feb 21 | 2:27 pm  | Susupe       | NN | 670 235-4528  | 1    | .10  |
| 19 | Mon | Feb 21 | 2:33 pm  | Susupe       | NN | 670 234-7739  | 1    | .10  |
| 20 | Mon | Feb 21 | 2:34 pm  | Susupe       | NN | 670 234-7729  | 1    | .10  |
| 21 | Mon | Feb 21 | 2:36 pm  | Susupe       | NN | 670 235-9006  | 1    | .10  |
| 22 | Mon | Feb 21 | 2:41 pm  | Susupe       | NN | 670 235-4528  | 1    | .10  |
| 23 | Mon | Feb 21 | 2:52 pm  | Susupe       | NN | 670 234 7729  | 1    | .10  |
| 24 | Mon | Feb 21 | 2:53 pm  | Susupe       | NN | 670 235-9006  | 3    | .30  |
| 25 | Mon | Feb 21 | 3:31 pm  | Susupe       | NN | 670 235-9006  | 1    | .10  |
| 26 | Mon | Feb 21 | 3:31 pm  | Susupe       | NN | 670 235-9006  | 2    | .20  |
| 27 | Mon | Feb 21 | 4:40 pm  | Susupe       | NN | 670 235-9006  | 1    | .10  |
| 28 | Mon | Feb 21 | 7:45 pm  | Susupe       | NN | 670 235-9006  | 4    | .40  |
| 29 | Wed | Feb 23 | 3:20 pm  | Susupe       | NN | 670 234-7729  | 5    | .50  |
| 30 | Wed | Feb 23 | 3:42 pm  | Capitolhi    | NN | 670 323-6633  | 1    | .10  |
| 31 | Wed | Feb 23 | 3:43 pm  | Susupe       | NN | 670 235-9315  | 1    | .10  |
| 32 | Wed | Feb 23 | 3:46 pm  | Susupe       | NN | 670 235-4528  | 1    | .10  |
| 33 | Wed | Feb 23 | 3:47 pm  | Agana        | GU | 671 477-8064  | 4    | .40  |
| 34 | Wed | Feb 23 | 3:53 pm  | Susupe       | NN | 670 234-7578  | 1    | .10  |
| 35 | Wed | Feb 23 | 3:54 pm  | Susupe       | NN | 670 234-9797  | 4    | .40  |
| 36 | Wed | Feb 23 | 8:11 pm  | Susupe       | NN | 670 234-6341  | 2    | .20  |
| 37 | Thu | Feb 24 | 2:03 pm  | Agana        | GU | 671 477-8064  | 1    | .10  |
| 38 | Thu | Feb 24 | 2:27 pm  | Agana        | GU | 671 477-8005  | 2    | .20  |
| 39 | Thu | Feb 24 | 5:59 pm  | Capitolhi    | NN | 670 322-1823  | 1    | .10  |
| 40 | Thu | Feb 24 | 5:59 pm  | Capitolhi    | NN | 670 322-1823  | 8    | .80  |
| 41 | Sun | Feb 27 | 4:32 pm  | Susupe       | NN | 670 234-6925  | 2    | .20  |
| 42 | Sun | Feb 27 | 6:45 pm  | Capitolhi    | NN | 670 322 1823  | 1    | .10  |
| 43 | Sun | Feb 27 | 6:46 pm  | Capitolhi    | NN | 670 322-1823  | 7    | .70  |
| 44 | Mon | Feb 28 | 5:49 pm  | Susupe       | NN | 670 236-9820  | 6    | .60  |
| 45 | Mon | Feb 28 | 5:56 pm  | Susupe       | NN | 670 236-9820  | 1    | .10  |
| 46 | Mon | Feb 28 | 5:58 pm  | Susupe       | NN | 670 236-9766  | 1    | .10  |
| 47 | Mon | Feb 28 | 7:16 pm  | Susupe       | NN | 670 236-9767  | 1    | .10  |
| 48 | Mon | Feb 28 | 7:17 pm  | Susupe       | NN | 670 236-9766  | 4    | .40  |

Subtotal    $ 11.67

03 0134 2082451691 011113 05 09 ID210*HBRDA1    00008169 350000042490





Billing Date: 04/01/05   Page 4 of 6
Telephone Number : 208 245-1691  011113
Account Number: 03 0134 1099768705 05
How to Reach Us . See page 2

We never stop working for you.

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to Verizon Long Distance.

**LONG DISTANCE HELPFUL NUMBERS**

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483 7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

**SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE**

| | Amount |
|---|---|
| Domestic | |
|    Direct Dialed | 3.40 |
| Total usage | $ 3.40 |
| Total Long Distance calls | $ 3.40 |
| Taxes and Surcharges | .44 |
| Total Verizon Long Distance Charges | $ 3.84 |

Your calling plan(s):   Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Wed | Mar 2 | 3:00 pm | Susupe | NN | 670 236-9767 | 1 | .10 |
| 2 | Wed | Mar 2 | 3:26 pm | Susupe | NN | 670 236-9766 | 1 | .10 |
| 3 | Wed | Mar 2 | 3:44 pm | Susupe | NN | 670 235-9315 | 1 | .10 |
| 4 | Wed | Mar 2 | 7:40 pm | Susupe | NN | 670 236-9766 | 1 | .10 |
| 5 | Sun | Mar 6 | 3:18 pm | Susupe | NN | 670 236-9767 | 1 | .10 |
| 6 | Sun | Mar 6 | 3:54 pm | Gualo Rai | NN | 670 235-6952 | 2 | .20 |
| 7 | Sun | Mar 6 | 3:59 pm | Susupe | NN | 670 235-9315 | 1 | .10 |
| 8 | Sun | Mar 6 | 4:00 pm | Susupe | NN | 670 235-4529 | 2 | .20 |
| 9 | Sun | Mar 6 | 5:03 pm | Susupe | NN | 670 235-9315 | 2 | .20 |
| 10 | Sun | Mar 6 | 5:05 pm | Susupe | NN | 670 235-7190 | 3 | .30 |
| 11 | Sun | Mar 6 | 5:08 pm | Susupe | NN | 670 234-8946 | 2 | .20 |
| 12 | Sun | Mar 6 | 5:10 pm | Gualo Rai | NN | 670 233-7850 | 2 | .20 |
| 13 | Sun | Mar 6 | 5:12 pm | Susupe | NN | 670 235-4529 | 1 | .10 |
| 14 | Sun | Mar 6 | 5:29 pm | Susupe | NN | 670 235-4529 | 6 | .60 |
| 15 | Sun | Mar 13 | 2:00 pm | Susupe | NN | 670 236-2950 | 8 | .80 |

                                            Subtotal   $ 3.40

**Summary of Timeless TTY**

| | |
|---|---|
| 16 Plan calls | 3.40 |
|    Total | $ 3.40 |

Timeless TTY start date: 02/17/04

Total Long Distance calls     $ 3.40

Thank you for using Verizon Long Distance.



Received Mar-30-2006 12:06      From-      To-US DISTRICT COURT, N      Page 005

The following is transmitted by both FAX and US mail:

an 25, 2005

AG, Commonwealth of the Northern Mariana Islands
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

Reference is made to CNMI Superior Court Case No 96-1320 (in which the case file shows post office receipts allegedly from me showing that I received service on the complaint and its amendments by certified mail), my written and telephone communications on this matter to your office from Sep 12, 2004 on to this date, my attached memo for record (enclosures C and D), and my request from me to file a criminal complaint against the person or persons whom had prepared the receipts, all of which I deem to be forgeries and involving fraud to prompt a $139,000 default judgment against me in the Superior Court case.

It is my understanding that your office has undertaken an investigation commenced on or about Sep 12, 2004 on my request to file criminal charges against the party or parties producing the alleged mail receipts. In my conversation with Mr Buckingham of your office, I noted the possibility that the alleged mail receipts involved could become lost or damaged in the course of your investigation. I strongly recommended that your office make xerox copies of the original receipts and have a notary certify them as certified true copies of an original. These copies can be used in your investigation while the actual receipts can be safeguarded and secured to prevent loss or damage. I hope that this security process was implemented.

I also suggested to Mr Buckingham that Postal inspectors are available in the US to precisely investigate matters such as my complaint. This process could be done fairly quickly and involve little expense to the CNMI (although each passing day since Sep 12, 2004 goes to make it more possible that the Postal records or people will be unable to determine what happened). Finally, I suggested that this whole thing can be referred to the FBI as it involves interstate fraud and possible conspiracy to defraud both me and the CNMI (I note that the CNMI has already paid out over $100,000 in this matter plus the judgment of $139,000 against me).

In the Supreme Court decision on this case, it appears that plaintiff argued that under the CNMI indemnification act, the CNMI should pay the $139,000. The court said that since I allegedly had not asked for any indemnification, none is due (apparently, the court said that if I had asked for indemnification, the plaintiff would have been paid the $139,000 judgment). Of course, it is totally wrong (and I would suggest that it is absurd and virtually impossible to believe) that "I had not asked for indemnification." The truth is that my attorney, the AG, had not informed me on what had happened or was happening on this case, despite my many contacts and persistence with the AG on this matter.

In any case, in accordance with the Supreme Court decision, I sent your office the attached letter (enclosure A) on Sep 12, 2004 by both fax and mail requesting indemnification. Mr Buckingham confirmed by telephone conversation that he had seen my fax. As I desired something in writing on this matter, I wrote the attached letter (enclosure B) on Nov 26, 2004 asking for a formal confirmation. I never received a reply.

Again, I ask for a formal confirmation on this request from me for indemnification of $139,130 and what your response is to my request. I will only note here that if this request is not honored promptly, I am continuing to incur expenses for phone calls, postage, etc, plus much pain and suffering. I hope that your office will address these needs promptly. Thanking you, I am,

Your very truly,

Robert D. Bradshaw
PO Box 473, Calder, ID 83808, Phone 208-245-1691

Exhibit B

Received Mar-30-2006 12:06 From- To-US DISTRICT COURT, N Page 006

# Ex-OPA counsel wins suit

By Ferdie de la Torre
*Variety News Staff*

A LAWYER won his lawsuit for wrongful termination of his employment against the CNMI government and then acting Public Auditor Robert D. Bradshaw.

A jury rendered a verdict Friday afternoon finding the CNMI government and Bradshaw liable to pay plaintiff Robert A. Bisom a total of $249,300 in damages.

The six-man jury, however, did not hold former Public Auditor Scott Tan liable to pay any damages to Bisom.

As against defendant CNMI government, the jurors awarded Bisom $100,000 for breach of contract and 110,300 for wrongful termination.

As against defendant Bradshaw, the jurors awarded plaintiff $55,000 for intentional infliction of emotional distress, $16,000 for discharge for political reasons, $8,000 for due process violations of plaintiff's property interest, $8,000 for due process violations of plaintiff's liberty interest, and $50,000 in punitive damages.

Supreme Court Associate Justice Alexandro C. Castro, as judge pro tem, presided over the three-week jury trial in the Superior Court. Assistant Attorney General L. David Sosebee represented the defendants while Jay H. Sorensen served as counsel for Bison.

Sosebee said the government may appeal the case.

Bisom filed the lawsuit in 1996 against the government, Tan, and Bradshaw after he was terminated from his employment with the commonwealth for alleged political and religious reasons.

Bisom used to serve as legal counsel for the Office of the Public Auditor.

Sorensen in an earlier interview said that after Bisom was terminated, the plaintiff was offered job by then Senate president and now Lt. Gov. Jesus R. Sablan.

Sorensen added that on the day Bisom took the job, there was a change of leadership in the Senate and Sablan's decision was subsequently overturned.

The plaintiff said his termination was politically motivated because he questioned the legality and propriety of a "single audit" as Bradshaw had wanted to conduct.

Bisom added that he was terminated because he was perceived as a political opponent of former Gov. Lorenzo I. Deleon Guerrero as well as a political ally of the previous public auditor.

Bisom stated that Bradshaw also terminated him on account of his being a Jew.

# CPA posts $360,000 earnings in January

*Roman T. Tudela*

By Haidee V. Eugenio
*Variety News Staff*

THE COMMONWEALTH Ports Authority (CPA) realized a total of some $359,392 worth of earnings in January from both the airport and seaport divisions.

In a financial report adopted by the CPA Board of Directors last week, the aviation division's operating revenues climbed up by ...

... sengerby 23 percent, entry fee by 36 percent, and home port fee by 54 percent.

FYTD earnings for the seaport division went up by 34 percent to $1,676,063.

STANFORD RESORT HOTEL
SAN VICENTE HILL - SAIPAN

$29.00/Night
DOUBLE OCCUPANCY
One Month: $199
2 weeks: $300
(With Kitchenette and Daily Hotel Service)
Dinner B.B.Q BUFFET by Reservation
Tel: (670) 235-8500/4 • Fax: (670) 235-3042

Bridge the Gap!

Received Mar-30-2006 12:06 From- To-US DISTRICT COURT, N Page 007

MAR-15-2006 10:43 FROM: TO:2082454991 P.3

September 16, 2002

lacked any evidence supporting the existence, or lack thereof, of female employees within his former position."

DPS asked the court to review CSC's order reinstating Chong to his position where he will not work with female employees.

Wiseman said during the court's hearing on the case, the parties identified a position or the category where no female employees are currently employed.

However, the judge noted, Chong would still have contact [illegible] judicial review.

Wiseman said the order violates constitutional rights respecting equal protection and employment opportunities under the statute.

"Even assuming (Chong) was to be placed in his former position or into a position where he does not work with females, compliance with the order would exclude future employment of females who would otherwise be qualified for a position at the same division of DPS as respondent," said Wiseman. He said he will, however, refrain from de[illegible]

[illegible] sexual innuendos and contributed to a hostile work environment.

But the commission expressed concern that sexually oriented comments and conduct are frequent at the Division of Corrections.

"The commission believes that this is a case where progressive discipline should have been imposed. The employee is a good officer with valuable experience and training," said the CSC decision, adding that Chong has offered to attend counseling at the Community Guidance Center and [illegible]

CSC's order was "arbitrary, capricious, an abuse of discretion, and was unsupported by substantial evidence in a case."

Wiseman ruled that while CSC made evidentiary findings regarding the scope and severity of Chong's inappropriate work behavior and concluded that he engaged in sexual harassment, there is no evidence in the record that supports their finding that a position exists within DPS where the respondent could work without female employees.

Thomas got down from the vehicle and walked toward the booth of the Commonwealth Ports Authority. At the booth, Genetiano also argued with the CPA personnel on duty.

Responding Police Officer Joe Saonas arrested Genetiano for refusing to pay the fare.

In other news, a 31-year-old woman was stabbed and injured by another woman for trying to pacify a fight at the parking lot of Joeten Hafa Adai Shopping Center in Garapan on Thursday night.

# Justices affirm trial court's judgment in Bisom lawsuit

By Ferdinand de la Torre
Variety News Staff

THE CNMI Supreme Court on Friday affirmed the trial court's judgment over legal issues pertaining to a lawyer's lawsuit for wrongful termination of his employment against the government and then acting Public Auditor Robert D. Bradshaw.

The high court ruled that the trial court did not err in limiting the scope of damages by its decision denying admission into evidence of attorney Robert A. Bisom's calculations of his future loss of income.

The high tribunal determined that the trial court did not err in limiting Bisom's closing argument on the subject of his future income loss.

The high court also found that the trial court did not err in denying Bisom's request for determination to compel the government to indemnify Bradshaw.

The lower court denied such motion after it found no evidence that Bradshaw made a request for indemnification.

The high tribunal ruled that none of the cases cited by Bisom convinced them that the trial court abused its discretion by disallowing the proffered testimony, exhibit or argument.

Bisom made certain assumptions in the excluded testimony and exhibit, namely, that he would be getting 5 percent raises every year as a lawyer until he retired at age 65.

Bisom's calculations also include a $900 a month stipend for living expenses.

"There is no showing on the record before this court how or why (Bisom) arrived at those figures," said the high court ruling penned by Associate Justice John A. Manglona and concurred by Justices Pro Tempore Pedro M. Atalig and Timothy H. Bellas.

With absolutely no foundation for the assumption that his salary would increase 5 percent per year until he retired, Bisom's projection is nothing more than bare speculation, the justices said.

They said that before the government is obligated to defend and indemnify an employee, an employee must request in writing, at least five days before an answer to the complaint must be filed, that the government pay for his defense or to defend him.

"The trial court determined that this did not occur, and we will not disturb a factual determination made by the trial court unless, 'after reviewing all the evidence, we are left with a firm and definite conviction that a mistake has been made,'" the justices said.

Consequently, they added, the determinations Bisom sought "were superfluous, as the government has no duty to defend or indemnify Bradshaw."

The trial court, the justices said, was under no obligation to make the determinations Bisom requested.

Court records showed that Bisom filed the lawsuit in 1996 against the government, former Public Auditor Scott Tan, and Bradshaw after he was terminated from his employment for alleged political and religious reasons.

Bisom used to serve as legal counsel for the Office of the Public Auditor.

In Feb. 2000, a jury rendered a verdict finding the CNMI government and Bradshaw liable to pay Bisom a total of $240,306 in damages.

The Law Offices of
GORMAN & GAVRAS
PERSONAL INJURY AND AUTO ACCIDENTS
Insurance Claims
Employment Discrimination - EEOC and Title VII
Business and Civil Litigation
FIRST CONSULTATION IS FREE