F I L E D
Clerk
District Court

JUN 1 6 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

1  **CIVILLE & TANG**
   2nd Floor, Cabrera Center
2  PMB 86, P.O. Box 10003
   Saipan, MP  96950-8908
3  Telephone: (670) 235-1725
   Facsimile: (670) 235-1726
4
   Attorneys for Defendant Justice Alexandro C. Castro
5
6              IN THE UNITED STATES DISTRICT COURT

7              FOR THE NORTHERN MARIANA ISLANDS

8
   ROBERT D. BRADSHAW,                    CIVIL ACTION NO. 05-0027
9
                Plaintiff,
10
                vs.                       **DEFENDANT'S MOTION TO DISMISS**
11                                         **AND INCORPORATED MEMORANDUM**
   COMMONWEALTH OF THE                    **OF POINTS AND AUTHORITIES**
12 NORTHERN MARIANA ISLANDS               **[FED. R. CIV. P. 9(b); 12(b)(1); 12(b)(6)]**
   (hereafter referred to as the CNMI),
13 NICOLE C. FORELLI, former Acting
   Attorney General of the CNMI, in her
14 personal/individual capacity; WILLIAM C.
   BUSH, former Assistant Attorney General
15 of the CNMI, in his personal/individual
   capacity; D. DOUGLAS COTTON;           Date:     July 27, 2006
16 former Assistant Attorney General of the  Time:     9:00 a.m.
   CNMI, in his personal/individual capacity;  Judge:    Honorable Alex R. Munson
17 L. DAVID SOSEBEE, former Assistant
   Attorney General of the CNMI, in his
18 personal/individual capacity; ANDREW
   CLAYTON, former Assistant Attorney
19 General of the CNMI, in his
   personal/individual capacity; Other
20 UNKNOWN and UNNAMED person or
   persons in the CNMI, in their personal/
21 individual capacity; ALEXANDRO C.
   CASTRO, former Justice ProTem of the
22 CNMI SUPERIOR COURT, in his
   personal/individual capacity; PAMELA S.
23 BROWN, former Attorney General of the
   CNMI; in her personal/individual capacity;
24 ROBERT A. BISOM; and JAY H.
   SORENSEN.
25
26
27                        Defendants.
28

1

## TABLE OF CONTENTS

2

Page(s)

3    TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

4    FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

5    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

6    CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

7    ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

8        I.    Justice Castro is entitled to absolute judicial immunity: All Claims . . . . . . . . . . . . 5

9
        II.    The matter must be dismissed under FRCP 12(b)(1) because the controversy is moot:
10             Judge Lizama set aside the default judgment in the Bisom Lawsuit by the order dated
               December 29, 2005. Claims 1-17 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
11

12      III.   Plaintiff's 42 U.S.C. 1983 claims should be dismissed because Bradshaw does not
               raise facts to support those claims and in the alternative they sound in tort and do not
13             raise constitutional issues: Claims 1-7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

14      IV.    "Civil Rights Violations" involving failure to follow court rules should be dismissed:
15             Claims 1-8, 11-12 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

16      V.     Plaintiff has failed to allege the facts necessary to sustain a cause of action under the
               Civil Rights Acts of 1870 and 1871: Claims  6, 11-12  . . . . . . . . . . . . . . . . . . . . . 15
17

18      VI.    The Immigration Reform and Control Act of 1986 does not apply: Claim 10 . . . . . 17

19      VII.   Plaintiff's RICO, tort, contract, and U.S. Constitutional based claims are time-barred:
               Claims 1-17  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
20

21      VIII.  Even if Plaintiff's RICO claims were not barred by the statute of limitations,
               Justice Castro was not engaged in a "Racketeering activity" and is immune from civil
22             liability: Claim 8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

23      IX.    Plaintiff's Employment Contract and Principal /Agent Claims must be dismissed
               because there is no relationship between Justice Castro and Bradshaw.
24             Claims 9 &13  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

25
        X.     Attorney's Fees . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
26

27    CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

28

1

**TABLE OF AUTHORITIES**

2

Page(s)

3

4  *Ashelman v. Pope*, 793 F.2d 1072 (9th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

5  *Associated General Contractors of California, Inc. v. California State*
6      *Council of Carpenters*, 459 U.S. 519 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

7  *Azul-Pacifico, Inc. v. City of Los Angeles*,
8      973 F.2d 704 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

9  *Bass v. First Pacific Networks, Inc.*, 219 F.3d 1052 2 (9th Cir.  2000) . . . . . . . . . . . . . . . . . . . 5

10  *Bisom v. Commonwealth*, Civil No. 96-1320 (N.M.I. Super. Ct. Mar. 10, 2000) . . . . . . . . . . . 2

11  *Bisom v. Commonwealth*, Civil No. 96-1320 (N.M.I. Super. Ct. Dec. 29, 2005) . . . . . . . . . . 2, 3

12  *Bisom v. Commonwealth*, 2002 MP 19 (Sept. 13, 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
13

14  *Bradley v. Fisher*, 80 U.S. 335 (1872) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

15  *Bradshaw v. Commonwealth*, Case No. CV 05-84-N-EJL (D. Idaho. July 25, 2005) . . . . . . . . . 3

16  *Bray v. Alexandria Women's Health Clinic*,
17      506 U.S. 263 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

18  *Brown v. Philip Morris*, 250 F.3d 789 (3d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

19  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336 (9th Cir.1996) . . . . . . . . . . . . . . . . . . . . . . . . . . 4

20  *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . 18

21  *Cholla Ready Mix, Inc. v. Civish*, 383 F.3d 969 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . 17
22

23  *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978) . . . . . . . . . . . . . . . . . . . . . . . . 20

24  *Clegg v. Cult Awareness Network*, 18 F.3d 752 (9th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . 4

25  *Cok v. Consenito*, 876 F.2d 1 (1st Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

26  *Conley v. Gibson*, 355 U.S. 41 (1957) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
27

28  *Cullinan v. Abramson*, 128 F.3d 301 (6th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 19

Page(s)

*Daniels v. Williams*, 474 U.S. 327 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Day v. McDonough*, -- U.S. --, 126 S. Ct. 1675, 1681 (2006) . . . . . . . . . . . . . . . . . . . . . . . . 8

*Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Doe I v. The Gap, Inc.*, No. CV-01-0031,
     2001 WL 1842389 *1 (D.N. Mar. I. Nov. 26, 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Grizzard v. Kiyoshige Terada*, No. Civ. A. 99-0055,
2003 WL 22997238 (D.N. Mar.I. Sept. 17, 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hoffman Plastics Compound, Inc v. N.L.R.B.*, 535 U.S. 137 (2002) . . . . . . . . . . . . . . . . . . . . . 17

*Humphrey v. Court of Common Pleas*, 640 F.Supp. 1239 (M.D.Pa.1986) . . . . . . . . . . . . . . . . . 17

*Ivey v. Bd of Regents of Univ. of Alaska*, 673 F.2d 266 (9th Cir. 1982) . . . . . . . . . . . . . . . . . 4, 13

*Jaco v. Bloechle*, 739 F.2d 239 (6th Cir.1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Jones v. Blanas*, 393 F.3d 918, 927 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Kennedy v. Gabutin*, No. Civ. 03-0016,
2004 W.L. 2085480, at * 2 (D.N. Mar. I. Sept. 17, 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*LeClerc v. Webb*, 419 F.3d 405 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Mangold v. California Pub. Utils. Comm'n*, 67 F.3d 1470 (9th Cir.1995) . . . . . . . . . . . . . . . . . 5

*McDonald v. Santa Fe Trail Transport. Co*, 427 U.S. 273 (1976) . . . . . . . . . . . . . . . . . . . . . . 15

*Miller v. Los Angeles County Board of Education*,
     827 F.2d 617 (9th Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Miller v. Continental Airlines*, 260 F.Supp.2d 931 (N.D. Cal. 2003) . . . . . . . . . . . . . . . . . . . . 4

*Mitchell v. Forsyth*, 472 U.S. 511 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7, 9

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

*Ove v. Gwinn*, 264 F.3d 817 (9 th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Page(s)

*Passantino v. Johnson & Johnson Consumer Products, Inc.*,
    212 F.3d 493 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Pierson v. Ray*, 386 U.S. 547 (1967) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-9

*Pollard v. City of Hartford*, 539 F. Supp. 1156 (D. Conn.1982) . . . . . . . . . . . . . . . . . . . . . 16

*Portman v. Santa Clara*, 995 F.2d 898 (9th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Roberts v. Corrothers*, 812 F.2d 1173 (9th Cir.1987) . . . . . . . . . . . . . . . . . . . . . . . 4

*Robertson v. Dean Witter Reynolds, Inc.*,
    749 F.2d 530 (9th Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4, 14-15, 17

*Rogers v. Furlow*, 729 F. Supp. 657 (D. Minn. 1989) . . . . . . . . . . . . . . . . . . . . . . 14

*Sagana v. Tenorio*, 384 F.3d 731 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Sample v. Johnson*, 771 F.2d 1335 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . 10-11

*Schucker v. Rockwood*, 846 F.2d 1202 (9th Cir. 1988),
    *cert denied*, 488 U.S. 995 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6-7

*Seed v. Hudson*, No. CIV. A. 93-0008,
    1994 WL 229096 at *6 (D.N. Mar. I. May 11, 1994) . . . . . . . . . . . . . . . . . . . 12

*Singh v. Parnes*, 199 F. Supp. 2d 152 (S.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . 6, 10

*Sparks v. Duval County Ranch Co., Inc.*,
    588 F.2d 124 (5th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 8

*Sparks v. Duval County Ranch Co., Inc.*,
    604 F.2d 976 (8th Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Stump v. Sparkman*, 435 U.S. 349 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-8

*Tran v. Com. of Northern Mariana Islands*,
    780 F. Supp. 709 (D.N. Mar. I .1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Borja*, No. CV-02-0016-ARM,
2003 WL 23009006, *2 (D.N. Mar. I. Dec. 12, 2003) . . . . . . . . . . . . . . . . . . . 19

Page(s)

*United States v. Cotton,*
    535 U.S. 625, 630, 122 S. Ct. 1781, 1785 (2002) ............................... 8

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) ......................................... 10

*White v. Pacific Media Group, Inc.* 322 F.Supp.2d 1101 (D. Haw. 2004) ................. 15

*Western Mining Council v. Watt*, 643 F.2d 618 (9th Cir. 1981) .......................... 4

*Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir. 1989) ....................... 13-14

*Zhang Gui Juan v. Commonwealth,*
    Civ. No. 99-0163 (N.M.I. Super. Ct.1999) ................................... 18

*Zipes v. Trans World Airlines, Inc.,*
    455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982) .............................. 8

**CONSTITUTION**

NMI CONST., art. 4 § 5 ........................................................ 20
NMI CONST., art. 4 § 6 ........................................................ 20

**STATUTES**

1 CMC § 3202 ................................................................. 8

7 CMC
    § 2503(d) ............................................................... 17
    § 3401 .................................................................. 5

18 U.S.C.
    § 1961 ............................................................... 5, 18
    § 1962 ................................................................. 18
    § 1962(c) .............................................................. 18
    § 1963 ................................................................. 18
    § 1964 ................................................................. 18
    § 1964(c) .............................................................. 18
    §§ 1961-64 ............................................................. 5
    §§ 1961-68 ............................................................. 7

Page(s)

42 U.S.C.
    § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 11, 15-18, 20
    § 1981(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    § 1982 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 20
    § 1983   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 7, 10, 11-14, 17, 19-20
    §§ 1983-1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    §§ 1984-1986 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    § 1988 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20-21
    § 1988(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
    § 2000a, *et seq.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

48 U.S.C. § 1801 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

FEDERAL RULES OF CIVIL PROCEDURE
    Rule 8(a)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    Rule 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 14-15
    Rule 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 10-11
    Rule 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4, 11

OTHER AUTHORITY

17A Am.Jur.2d *Contracts* § 412 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
RESTATEMENT (SECOND) OF AGENCY §§ 219, 220(2) (1958) . . . . . . . . . . . . . . . . . . . 20
RESTATEMENT (SECOND) OF TORTS § 895D(2) (1979) . . . . . . . . . . . . . . . . . . . . . . . . . 7

1

**MOTION**

2      Defendant, Justice Alexandro C. Castro ("Justice Castro"), moves to dismiss Plaintiff

3 Robert Bradshaw's ("Bradshaw") Amended Complaint in the above entitled action on the

4 grounds that the case is moot, certain claims lack sufficient particularity, and Bradshaw has failed

5 to state a claim upon which relief can be granted. Justice Castro makes this motion pursuant to

6 Rules 9(b), 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

7

**FACTS**

8      When Plaintiff Robert Bradshaw ("Bradshaw") was Temporary Public Auditor of the

9 CNMI, he fired Robert Bisom ("Bisom"), legal counsel for the Public Auditor's Office.  As a

10 result of his termination, Bisom sued Bradshaw and others including the CNMI government

11 ("Bisom Lawsuit"). Bradshaw's Second Amended Complaint ("Amended Complaint") ¶ 27.

12 The Superior Court eventually entered a default judgment of one hundred thirty-nine thousand

13 dollars ($139,000) against Bradshaw.

14      Prolonged correspondence between Bradshaw and the Attorney General's office as well

15 as Bradshaw's attempt to participate in the Bisom Lawsuit took place before Bisom took his

16 default judgment.  On December 6, 1996, Douglas Cotton, in his capacity as an Assistant

17 Attorney General for the CNMI, sent Bradshaw a letter advising him of the Bisom Lawsuit and to

18 expect service of a summons and complaint. *See* AGO letter to Bradshaw dated December 6,

19 1996 attached to Amended Complaint. In a handwritten letter to Mr. Cotton dated January 31,

20 1997, Bradshaw advised, "I will not authorize the CNMI to accept service for me at this time."

21 *See* Bradshaw letter to Cotton dated January 31, 1997 attached to Amended Complaint.

22      Instead of asking the Attorney General's Office to defend him, Bradshaw attempted to

23 force Bisom to personally serve him, thus making service as difficult as possible for Bisom.

24 Upon personal service, he then planned to ask the Attorney General's Office for assistance. *See*

25 Letter to Mr. Bush dated July 14, 1999, ¶ 3, attached to Amended Complaint.  As Bradshaw

26 never allowed the Attorney General's Office to accept service on his behalf, *see* Letter to Mr.

27 Cotton dated January 31, 1997 attached to Amended Complaint, and as he continued to claim

28 that he was unaware of the proceedings, the Bisom Lawsuit continued in his absence.

1    Subsequently, Justice Castro, presiding over the lawsuit in his capacity as a Judge of the CNMI

2    Superior Court, found that Bradshaw was properly served by mail and that, in any event, he

3    waived service by filing a motion to dismiss. On March 10, 2000, Bisom obtained a judgment in

4    the action. *See Bisom v. Commonwealth*, Civil No. 96-1320 (N.M.I. Super. Ct. Mar. 10, 2000)

5    (Attached hereto as **"Exhibit A")**[1].    Bisom appealed a portion of the decision to the

6    Commonwealth Supreme Court.    The CNMI Supreme Court, by a three-justice panel of

7    Associate Justice Manglona, Justice *Pro Tempore* Bellas, and Justice *Pro Tempore* Pedro M.

8    Atalig (now deceased), affirmed the Commonwealth Superior Court judgment. *See Bisom v.*

9    *Commonwealth*, 2002 MP 19 (Sept. 13, 2002) (attached hereto as **"Exhibit B")**.  This Superior

10    Court default judgment and the Supreme Court appellate opinion form the basis of the current

11    lawsuit against Justice Castro.

12        Although this service was, apparently, invalid, *see Bisom v. Commonwealth*, Civil Action

13    No. 96-1320, Order Granting Robert Bradshaw's Motion to Vacate Judgment, p. 16 (N.M.I.

14    Super. Ct. Dec. 29, 2005) (Attached hereto as **"Exhibit C")**, Bradshaw has seized on these

15    events as a grand conspiracy against him.  Bradshaw alleges that the default judgment is a

16    product of a conspiracy that involved: most, if not all, of the Attorney General's Office; a

17    Superior Court Judge; the entire Supreme Court[2] of the CNMI; and the plaintiff in the suit, Mr.

18    Bisom.   Additionally, although this Court ordered Bradshaw to provide more facts and less

19    argument in his Amended Complaint, Bradshaw still fails to identify the purpose of this grand

20    conspiracy beyond "injuring" him.

21        Unhappy with the judgment against him, and in keeping with his penchant for ineffective

22    and wasteful procedures, Bradshaw resorted to a myriad of devices, other than hiring a lawyer

23    and seeking to set aside the judgment against him, in an attempt to gain relief.  Originally, he

24    complained to then Attorney General Pam Brown, which triggered an internal investigation. *See*

25    Amended Complaint ¶ 175.  On or before October 7, 2004, the Attorney General's Investigative

26

27    [1] All exhibits attached hereto are court documents, which this Court may take judicial notice.
28    [2] Although he desperately wants to maintain an action against Justices Manglona and Bellas, Bradshaw admits that judicial immunity bars his claim. *See* Amended Complaint ¶ 150.

1    Unit advised Bradshaw that his allegations of wrongdoing in connection with the *Bisom* case
2    were being investigated. *See* October 7, 2004 letter from AGIU attached to Amended Complaint.
3    Attorney General Brown, acting in her official capacity, then denied his untimely request for
4    indemnification in the Bisom Lawsuit and advised Bradshaw that the CNMI would not reimburse
5    him due to the Supreme Court's holding in *Bisom v. Commonwealth*, 2002 MP 19. *See* February
6    15, 2005 letter from AG Brown attached to Amended Complaint. With this avenue exhausted,
7    Bradshaw turned to federal litigation instead of litigation in the CNMI courts.

8         On March 7, 2005, Bradshaw filed an action very similar to the instant case in the U.S.
9    District Court for the District of Idaho. His Second Amended Complaint in that action asserted
10   at least seventeen claims under an exhaustive list of civil and criminal statutes, including, among
11   others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Immigration
12   Reform and Control Act ("IRCA") and numerous Federal Civil Rights causes of action. *See*
13   *Bradshaw v. Commonwealth*, Case No. CV 05-84-N-EJL (D. Idaho. July 25, 2005) (Attached
14   hereto as **"Exhibit D"**). Bradshaw filed the action against Justices Manglona and Bellas[3] of the
15   CNMI Supreme Court, former Superior Court Judge and now Supreme Court Justice Castro, and
16   four Assistant Attorneys General because of their participation in the Bisom Lawsuit. The Idaho
17   court granted a motion to dismiss Bradshaw's complaint on several grounds, including a lack of
18   personal jurisdiction. *See id.* Bradshaw then filed the instant lawsuit on the same, or
19   substantially similar, grounds. Unfortunately for the Judicial Branch's coffers, this Court
20   dismissed the suit, but allowed Bradshaw to refile. Bradshaw's newest suit is still short on facts
21   but even longer, astonishingly, on baseless accusations and conspiracy theories.

22        Although he continues to maintain the current lawsuit, there is no longer a default
23   judgment against Bradshaw. *See Bisom*, Civil Action No. 96-1320, Order Granting Robert
24   Bradshaw's Motion to Vacate Judgment, (N.M.I. Super. Ct. Dec. 29, 2005), **Exhibit C.** In his
25   decision on the matter, Judge Lizama granted Bradshaw's motion to vacate the judgment against
26   him ("Lizama Order"). *See id.* at p. 16. Judge Lizama held that despite Justice Castro's previous

27   ───────────────

28        [3] Justice Bellas' appointment to the CNMI Supreme Court was *Pro Tem. See Bisson v. Commonwealth*, 2002 MP 19, **Exhibit B.**

1  rulings, Bradshaw was never properly served and therefore the court never obtained personal
2  jurisdiction. *Id.*

3  <center>**STANDARD OF REVIEW**</center>

4  In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must
5  assume the truth of all factual allegations and must construe them in the light most favorable to
6  the non-moving party. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996).
7  Legal conclusions, however, need not be taken as true "'merely because they are cast in the form
8  of factual allegations.'" *Roberts v. Corrothers*, 812 F.2d 1173, 1177 (9th Cir.1987) (quoting
9  *Western Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981) (in parenthesis)); *see also*
10 *Clegg v. Cult Awareness Network*, 18 F.3d 752, 754-55 (9th Cir. 1994).

11 Dismissal under Federal Rule 12(b)(6) is appropriate when "it appears beyond doubt that
12 the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."
13 *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir.
14 2001). Dismissal is warranted where the complaint lacks a cognizable legal theory or where the
15 complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.
16 *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *Doe I v. The*
17 *Gap, Inc.*, No. CV-01-0031, 2001 WL 1842389 *1 (D.N. Mar. I. Nov. 26, 2001). In spite of the
18 deference the court is bound to pay to the plaintiff's allegations, it is not proper for the court to
19 assume that "the [plaintiff] can prove facts which [he or she] has not alleged, or that the
20 defendants have violated the ... laws in ways that have not been alleged." *Associated General*
21 *Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526
22 (1983). "[A] liberal interpretation of a civil rights complaint may not supply essential elements
23 of the claim that were not initially pled. Vague and conclusory allegations of official
24 participation in civil rights violations are not sufficient to withstand a motion to dismiss." *Ivey v.*
25 *Bd of Regents of Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982). While only requiring a
26 short and plain statement of the claim, FRCP 8(a)(2) is not such a liberal requirement that purely
27 conclusory statements can survive a motion to dismiss under Rule 12(b)(6). *Miller v.*
28 *Continental Airlines*, 260 F.Supp.2d 931, 935 (N.D. Cal. 2003).

<center>-4-</center>

1

**CLAIMS**

2       Bradshaw makes numerous claims against Justice Castro that are repeated throughout the

3   17 separate claims. The claims are, generally: Civil Rights violations under 42 U.S.C. §§ 1981,

4   1983, 1985, violations of the CNMI Court Rules, Civil Conspiracy, violations of the Civil Rights

5   Act of 1870, violations of the Civil Rights Act of 1871, "Principal and Agent Relationship,"

6   various "intentional, malicious and/or irresponsible" actions, breach of Bradshaw's employment

7   contract, discrimination under Immigration Reform and Control Act, violations of civil rights

8   under 18 U.S.C. 1961-64 (RICO), violations of Fifth, Ninth and Fourteenth Amendments of the

9   U.S. Constitution, obstruction of justice, hiding criminal acts, damage to Bradshaw's credit, loss

10  of enjoyment of life, and emotional distress which occurred in the course of Superior Court case

11  *Bisom v. Commonwealth,* Civ. Action No. 96-1320.

12      Justice Castro will discuss Bradshaw's claims substantively by subject matter in turn with

13  reference to each claim in heading.[4]

14

**ARGUMENT**

15      **I.    Justice Castro is entitled to absolute judicial immunity: All Claims**

16      In a transparent and misplaced attempt to remove a state court judgment against him,

17  Bradshaw filed a seventy-five page federal lawsuit alleging, among other things, that Justice

18  Castro conspired with an Attorney General (years after the actual lawsuit), a majority of the

19  Attorney General's Office (during the actual lawsuit), Bisom, Bisom's attorney, and an entire

20  panel of the CNMI Supreme Court[5]—without any alleged reason—to allow and "cover up" a

21

22      [4] With regard to claims arising under state law, the Ninth Circuit has recognized that "a

23  federal court exercising supplemental jurisdiction over state law claims is bound to apply the law
    of the forum state to the same extent as if it were exercising its diversity jurisdiction." *Bass v.*

24  *First Pacific Networks, Inc.,* 219 F.3d 1052, 1055 n. 2 (9th Cir. 2000); *see also Mangold v.*
    *California Pub. Utils. Comm'n,* 67 F.3d 1470, 1478 (9th Cir.1995). Pursuant to Title 7 CMC §

25  3401, in analyzing the claims in the Complaint which arise under Commonwealth law, the Court
    must first look to written or customary law of the CNMI, and in the absence thereof, the Court

26  must resort to the principles announced in the "restatements of the law approved by the American
    Law Institute." 7 CMC § 3401.

27      [5] "While the Supreme Court justices were also guilty of misconduct in the way they handled
    case 96-1320, plaintiff Bradshaw is not making a claim against them in this 2d amended

28  complaint." Amended Complaint ¶ 150.

1  default judgment against Bradshaw.  The Complaint must be dismissed against Justice Castro
2  under the doctrine of judicial immunity.

3      Judicial immunity is absolute in nature, and as such, it is the equivalent of immunity from
4  suit, not just a defense to liability.  *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)
5  (analogizing absolute and qualified immunity for purposes of interlocutory jurisdiction).  Judicial
6  immunity cannot be overcome by allegations of bad faith, corruption, or malice.  *See Pierson v.*
7  *Ray*, 386 U.S. 547, 554 (1967) ("[I]mmunity applies even when the judge is accused of acting
8  maliciously and corruptly . . . .").  Judicial immunity also applies to a former sitting judge if the
9  complaints against him arise from judicial acts while he was serving as a judge.  *See Sparks v.*
10  *Duval County Ranch Co., Inc.*, 588 F.2d 124, 125-26 (5th Cir. 1979).[6]  This bar to suits against
11  judges applies even if the acts complained of were "[g]rave procedural errors or acts in excess of
12  judicial authority."  *Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988), *cert denied*, 488
13  U.S. 995 (1988).

14      Although difficult to parse, a complete reading of the Amended Complaint reveals that,
15  as to Justice Castro, all Bradshaw has are claims that Justice Castro: (1) acted in bad faith;[7] (2)
16  was corrupt;[8] or (3) committed grave procedural errors.[9]  As noted above, bad faith, corruption,
17  and procedural errors do not overcome judicial immunity.  *See Pierson*, 386 U.S. at 554; *see also*
18  *Schucker*, 846 F.2d at 1204.  Even if Justice Castro admitted to every single conspiracy charge
19  and bad act attributed to him, the fact remains that Justice Castro, at the time of every single
20  "conspiratorial action" or "bad act," was a properly appointed Commonwealth judge performing
21  his official functions in the Superior Court and thus, he is immune from liability.  *See Mitchell*,
22  472 U.S. at 526.

25  [6] Agreed with on rehearing *en banc*. *See Sparks v. Duval County Ranch Co., Inc.*, 604 F.2d
26  976, 978 (5th Cir. 1979).
27  [7] Amended Complaint ¶¶ 86, 88, 98, 100 & 105.
   [8] Amended Complaint ¶¶ 86, 88, 98, 100 & 105.
28  [9] Amended Complaint ¶¶ 84, 85, 86, 87, 88, 98, 100, 103 & 105.

1    Judicial immunity from *all civil liability* is firmly rooted in the common law.[10]    Its

2    application to tort actions is similarly expressed in the Restatement of Laws. RESTATEMENT

3    (SECOND) OF TORTS § 895D(2) (1979) ("A public officer acting within the general scope of his

4    authority is immune from tort liability for an act or omission involving the exercise of a judicial

5    or legislative function."); *id.* cmt. c ("[A] judge . . . is not liable for his discretionary acts or

6    omissions even though he is found to have acted with malicious or improper motives."). This

7    common law doctrine extends to suits brought under federal law, including claims under section

8    1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, and §§ 1984-1986, and the Racketeering

9    Influenced and Corrupt Organization Act, 18 U.S.C §§ 1961-68 ("RICO"). *See Stump v.*

10   *Sparkman*, 435 U.S. 349, 356 (1978); *Cok v. Consenito*, 876 F.2d 1, 1-2 (1st Cir. 1989)

11   (dismissing claims against a judge brought under 42 U.S.C. §§ 1983-1986); *Cullinan v.*

12   *Abramson*, 128 F.3d 301, 307-08 (6th Cir. 1997) (stating that, like § 1983, the court had no

13   reason to suppose that RICO was intended to abolish the absolute immunity of judges); *See Singh*

14   *v. Parnes*, 199 F. Supp. 2d 152, 155, 164-65 (S.D.N.Y. 2002) (holding that a judge was

15   absolutely immune from a civil RICO action based on decisions made during a court

16   proceeding).

17       "A judge loses absolute immunity only when he acts in the clear absence of all

18   jurisdiction or performs an act that is not judicial in nature." *Schucker*, 846 F.2d at 1204; *see*

19   *also Ashelman v. Pope*, 793 F.2d 1072, 1075 (9th Cir.1986). To determine if the judge acted

20   with jurisdiction, courts analyze whether the judge acted clearly beyond the scope of subject

21   matter jurisdiction, in contrast to personal jurisdiction. *See Ashelman*, 793 F.2d at 1075. "Where

22   not clearly lacking subject matter jurisdiction, a judge is entitled to immunity even if there was

23   no personal jurisdiction over the complaining party. *Id.* at 1076. Jurisdiction is construed

24   liberally when judicial immunity is at issue. *See Stump*, 435 U.S. at 356-57; *see also Ashelman*,

25   973 F.2d at 1076 ("Jurisdiction should be broadly construed to effectuate the policies supporting

26

27   [10] *See Mitchell v. Forsyth*, 472 U.S. 511, 521 (1985); *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967) ("Few doctrines were more solidly established at common law than the immunity of

28   judges from liability for damages for acts committed within their judicial jurisdiction.").

1   immunity."). An act is judicial in nature if it is a "'function normally performed by a judge, and
2   to the expectations of the parties, i.e., whether they dealt with the judge in his judicial capacity.'"
3   *Ashelman*, 793 F.2d at 1075 (quoting *Stump,* 435 U.S. at 362).

4       In this suit's latest incarnation, Bradhaw uses *ignis fatuus* in an effort to mislead this
5   Court, direct it down a dangerous path, and to draw attention away from the fact that, at all times,
6   Justice Castro was acting in his judicial capacity and is entitled to judicial immunity. For the first
7   time ever, Bradshaw now alleges that the statute of limitations expired on Bisom's original claim
8   and, therefore, Justice Castro lacked personal as well as subject-matter jurisdiction to proceed.
9   *See* Amended Complaint ¶¶ 109, 110, 238. Putting aside the fact that Bradshaw has failed to
10  demonstrate a basic understanding of how statute of limitations operate, statute of limitations are
11  a waivable defense. *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393, 102 S. Ct. 1127,
12  1132 (1982) (observing that statute of limitations is not jurisdictional and can be waived). By
13  contrast, subject-matter jurisdiction can never be waived. *United States v. Cotton,* 535 U.S. 625,
14  630, 122 S. Ct. 1781, 1785 (2002) (observing that subject matter jurisdiction, as a limitation on
15  the judicial power, "can never be forfeited or waived"). Although Bradshaw would love nothing
16  more if the statute of limitations were linked to subject-matter jurisdiction, they are not and
17  Justice Castro, as discussed more fully below, had subject matter jurisdiction in the underlying
18  suit. *See, e.g., See Day v. McDonough*, -- U.S. --, 126 S. Ct. 1675, 1681 (2006) (distinguishing
19  jurisdictional issues from statute of limitations).

20      Although Bradshaw claims that Justice Castro acted illegally and without force of law by
21  finding that Bradshaw was properly served, Justice Castro did not act in the clear absence of
22  subject-matter jurisdiction. Regardless of whether his court lacked personal jurisdiction over
23  Bradshaw, Justice Castro had subject-matter authority to preside over the trial, *see* 1 CMC §
24  3202. As Justice Castro was performing a judicial function within the scope of the court's
25  subject-matter jurisdiction, judicial immunity acts as an absolute bar to Bradshaw's lawsuit.
26  Assuming every conspiracy allegation is correct, Bradshaw is still left with absolutely no civil
27  recourse against the Justice Castro, not even the ability to develop his "case." *See Sparks*, 588
28  F.2d at 125; *see also Pierson*, 386 U.S. at 554 (involving a conspiracy claim).

Bradshaw is not permitted discovery to develop his case because to do so would damage all judges, not just Justice Castro.  The Supreme Court has held that:

> The judicial process is an arena of open conflict, and in virtually every case there is, if not always a winner, at least one loser.   It is inevitable that many of those who lose will pin the blame on judges, prosecutors, or witnesses and will bring suit against them in an effort to relitigate the underlying conflict. . . . .[T]he mere threat of litigation may significantly affect the fearless and independent performance of duty by actors in the judicial process . . . .

*Mitchell*, 472 U.S. at 521-22.  In yet another case the Court explained:

> It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants. His errors may be corrected on appeal, but he should not have to fear that unsatisfied litigants may hound him with litigation charging malice or corruption. Imposing such a burden on judges would contribute not to principled and fearless decision making but to intimidation.

*Pierson*, 386 U.S. at 554.

For the benefit of the public, it is imperative that "a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." *Bradley v. Fisher,* 80 U.S. 335, 347, 349 (1872).  Requiring a judge to appear in a civil action based on judicial acts degrades his office and destroys his usefulness. *Bradley,* 80 U.S. at 349.

Bradshaw in Claim Five, ¶ 285, alleges that Justice Castro "...**proceeded with the trial**." (emphasis added).  Additionally, in claim Five, ¶291, Bradshaw alleges that despite having his July 14th letter, and some contradictory documents filed by Bisom, Justice Castro "...**recognized documents** showing service on Bradshaw **and made decisions on service to Bradshaw**...." (emphasis added).  These are two examples of how Bradshaw's pleadings misapprehend the difference between carrying out a judicial function and "injuring" him.

As demonstrated above, Bradshaw's pleadings misapprehend the difference between carrying out a judicial function and "injuring" him.  At all times, Justice Castro acted in his judicial capacity.  At all times, Justice Castro's court had subject-matter jurisdiction while performing a judicial act.  Justice Castro, as the trial judge, made legal and factual findings in the context of the trial.  Accordingly, Justice Castro is absolutely immune from suit for any acts he

1    took during the course of the Bisom Lawsuit. *See Singh*, 199 F. Supp. 2d at 164-65 (S.D.N.Y.

2    2002) (holding that the judge's decisions and orders issued "in connection with foreclosure a

3    proceeding . . . manifestly constitute official judicial acts for which . . . [the judge] is immune

4    from claims for money damages."). The instant action unequivocally must be dismissed.

5    **II.    The matter must be dismissed under FRCP 12(b)(1) because the**

6    **controversy is moot: Judge Lizama set aside the default judgment in the**

7    **Bisom Lawsuit by the order dated December 29, 2005. Claims 1-17.**

8         This action is moot and should be dismissed under FRCP 12(b)(1) for lack of jurisdiction.

9    FRCP 12(b)(1). *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "Rule 12(b)(1) jurisdictional

10   attacks can be either facial or factual." *Id.* It is appropriate for this Court to look to matters of

11   public record in determining mootness under Rule 12(b)(1). *See id.* ("With a factual Rule

12   12(b)(1) attack, . . . a court may look beyond the complaint to matters of public record without

13   having to convert the motion into one for summary judgment.").

14        The basis of Bradshaw's claim is the default judgment against him. The damages sought

15   by Bradshaw in this matter are: relief from the "costs" associated for a judgment no longer

16   entered against him; compensatory damages in the amount of $8,230.00 for previous litigation

17   expenses; and $750,000.00 in punitive damages. Because the judgment has been vacated by the

18   Lizama Order, *see* **Exhibit C,** there is no longer an injury and the action is moot.

19        An action becomes moot when the issue of the lawsuit is "no longer live or the parties

20   lack a legally cognizable interest in the outcome." *See Sample v. Johnson*, 771 F.2d 1335, 1338

21   (9th Cir. 1985). "Federal courts lack jurisdiction to decide moot cases because their

22   constitutional authority extends only to actual cases or controversies." *Sample*, 771 F.2d at 1338.

23   Because Judge Lizama vacated the default judgment against Bradshaw, there is no longer an

24   issue to be addressed in this action. Bradshaw should not be able to maintain what amounts to an

25   appeal in federal court for an amount of money he no longer owes in state court.[11] While it is

26

27    [11]    The Rooker-Feldman doctrine holds that when an action in the federal district court is a
      de facto appeal of a state, or in this case Commonwealth, court ruling, the Federal claim must be
28    dismissed for lack of subject matter jurisdiction. *See Doe v. Mann*, 415 F.3d 1038, 1042 (9th
      Cir. 2005) ("Mary Doe requests that we 'undo' a prior state court judgment, which is another

1   possible for a court to choose to adjudicate a moot issue when there is a likelihood that plaintiff's

2   injury may occur again, *see Sample*, 771 F.2d at 1338-39, there is no likelihood in this case that

3   Bradshaw's alleged injury is capable of repetition.

4          Furthermore, although it is possible in 42 USC §§ 1981 and 1983 cases to award punitive

5   damages without establishing liability for compensatory or nominal damages, the plaintiff cannot

6   recover unless he shows that the defendant violated a federally protected right. *See Passantino v.*

7   *Johnson & Johnson Consumer Products, Inc..,* 212 F.3d 493, 514 (9th Cir. 2000).    As

8   demonstrated more fully below, this is not the case here as Bradshaw's "federally protected

9   rights" are nothing more than a collection of alleged torts dressed up as constitutional violations.

10  Indeed, the fact that Judge Lizama vacated the default judgment in the Bisom Lawsuit

11  demonstrates that Bradshaw's constitutional protections were not only preserved, but that they

12  were enforced.[12]

13         Because the controversy is moot, this case must be dismissed for lack of subject matter

14  jurisdiction under FRCP 12(b)(1). *See White*, 227 F.3d at 1242 ("Because standing and mootness

15  both pertain to a federal court's subject-matter jurisdiction under Article III, they are properly

16  raised in a motion to dismiss under Federal Rule of Civil Procedure (b)(1) . . . ."). To the extent

17  that the mootness question depends on the ability to state a claim under §§ 1981 and 1983, the

18  case must be dismissed for failing to meet the threshold for survival under Rule 12(b)(6).

19       **III.    Plaintiff's 42 U.S.C. 1983 claims should be dismissed because Bradshaw**

20                 **does not raise facts to support those claims and in the alternative they**

21                 **sound in tort and do not raise constitutional issues: Claims 1-7.**

22         Federal law requires that "a litigant complaining of a violation of a constitutional right . .

23  . utilize 42 U.S.C. § 1983." *Azul-Pacifico, Inc. v. City of Los Angeles*, 973 F.2d 704, 705 (9th

24

25  ───────────────────────

26  way of presenting a federal district court with a de facto appeal that bars subject-matter
    jurisdiction under the *Rooker-Feldman* doctrine.").

27       [12] Even assuming the Plaintiff's claims for attorneys' fees or punitive damages are not moot,
    Judge Lizama's decision unequivocally moots any claim for relief from the judgment entered
28  against Bradshaw for $139,000.00.

1    Cir. 1992). Section 1983 requires that plaintiff prove that: "(1) a person acting under the color of

2    state law committed the conduct at issue; and (2) the conduct deprived the Plaintiff of some right

3    protected by the Constitution or laws of the United States." *Seed v. Hudson*, No. CIV. A. 93-

4    0008, 1994 WL 229096 at *6 (D.N. Mar. I. May 11, 1994) (citing *Leer v. Murphy*, 844 F.2d 628,

5    632-33 (9th Cir.1988)); *see also Daniels v. Williams*, 474 U.S. 327, 330-31 (1986) (holding that

6    mere negligence cannot form the basis of a Fourteenth Amendment violation actionable under §

7    1983).

8         At the very least, § 1983 demands that Bradshaw plead that Justice Castro deprived him

9    of "some right protected by the Constitution or laws of the United States." *Seed*, 1994 WL

10   229096 at *6 (citing *Leer*, 844 F.2d at 632-33). Simple torts, however, do not necessarily equate

11   to a violation of constitutional rights. For example, medical malpractice does not become a

12   constitutional violation just because the plaintiff happened to be a prisoner and false

13   imprisonment does not become a Fourteenth Amendment violation just because the defendant

14   happens to be a state official. *Davis v. Hall*, 375 F.3d 703 (8th Cir. 2004). The Amended

15   Complaint contains outlandish and unsubstantiated statements to the effect that "[Justice] Castro

16   was lost in his own courtroom in 2000 in SC case 96-1320," Amended Complaint, ¶ 284, and

17   that by violating court rules Justice Castro was "involved" with Bisom in the alleged

18   "conspiracy." Amended Complaint ¶¶ 102, 125. These conspiracy claims, (the ones that relate to

19   the case at hand and not the ones Bradshaw uses to tar a sitting member of the CNMI Judiciary),[13]

20   clearly allege tort law concepts of duty of care, *see* Amended Complaint ¶ 118 (stating that

21   Justice Castro had a duty to exercise due care),[14] and not constitutional violations actionable

22   under § 1983. *See Davis*, 375 F.3d at 717 ("'Section 1983 imposes liability for violations of

23   rights protected by the Constitution, not for violations of duties of care arising out of tort law.'")

24   (citation omitted).

25         Further, vague and conclusory allegations of participation in civil rights violations are

26

27   [13]   Amended Complaint ¶¶ 126-127.
      [14]   In fact, paragraphs 80-127 of the Amended Complaint are on what Bradshaw designates

28   as "Judge Castro's Gross Incompetence."

1   insufficient to withstand a motion to dismiss. *See Ivey*, 673 F.2d at 268.   To prove conspiracy

2   under § 1983, "an agreement or meeting of the minds to violate. . . [the plaintiff's] constitutional

3   rights must be shown." *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989).

4         Nowhere in his long and roaming Amended Complaint does Bradshaw demonstrate any

5   "agreement or meeting of the minds to violate" Bradshaw's constitutional rights.   While full of

6   conclusory statements, *see* Amended Petition ¶ 329 ("CNMI conspired and acted through her

7   agents FOREELLI, BROWN, CASTRO, CLAYTON, and SOSEBBEE and [sic] with BISOM

8   and SORENSEN [sic] in 1997 to 2005 [sic] in the CNMI to defraud BRADSHAW"), there is not

9   a single allegation contained, *in the entire document*, that purports to explain the reason for

10  Justice Castro's participation in this grand conspiracy.

11        For example, although he states that: "Justice Castro was lost in his own courtroom**,**" and

12  **"**ran a totally and maliciously incompetent court to deny Bradshaw his due process . . .", *see*

13  Amended Complaint at ¶ 284, these allegations sounds like a duty of care, and falls short of

14  alleging a conspiracy to violate a right protected by the Constitution.   Bradshaw repeatedly

15  alleges that Justice Castro conspired or acted against him, but he does not include any facts

16  which might form a basis for these conclusory statements.   Bradshaw's bare assertion that Justice

17  Castro made judicial rulings on the issue of personal jurisdiction certainly does not support a

18  claim that Justice Castro was involved in any alleged conspiracy.   Further, Bradshaw fails to

19  allege why the Justice Castro engaged in the grand conspiracy or what he hoped to gain from it.

20  Bradshaw's simply has not alleged any facts to support his malicious and conclusory statements

21  that Justice Castro conspired against him to deprive his constitutional right.   Bradshaw has

22  provided thewho, but not the what, why or how.

23        To overcome this problem, Bradshaw resorts to alleging that the CNMI courts are

24  *generally* corrupt, *see* Amended Complaint ¶ 126, and accusing Justice Castro of "allegedly"

25  directing and receiving improper payments *in unrelated cases*. *See* Amended Complaint ¶ 127.

26  It is obvious Bradshaw is angry with Justice Castro, but concocting allegations that are unrelated

27  to his case in an effort to "prove" his case is unacceptable.   That Bradshaw attempts to use

28  slander as a means of proving his case demonstrates how weak it actually is and, obviously, fails