to establish an agreement or meeting of the minds between Justice Castro and any other defendant in this case. *See Woodrum*, 866 F.2d at 1126. Bradshaw's section 1983 claims must therefore be dismissed. *See id.* ("Woodrum's conclusory allegations that Rosson and the social workers conspired do not support a claim for violation of his constitutional rights under § 1983.").

Bradshaw's allegations of conspiracy, however construed, do not amount to a claim of a constitutional violation. The CNMI Judiciary afforded Bradshaw full access to the judicial system, Bradshaw chose to avoid service and to not respond. He chose to bring a Federal lawsuit rather than take appropriate measures to vacate the default judgment in state court. Once he finally did move to vacate his default judgment in state court, his motion was granted. This demonstrates, definitively, that Bradshaw was afforded full access to the court system with all the constitutional rights that entails. Bradshaw essentially alleges that Justice Castro erred in his judicial decisions, and thereby violated court rules and legal precedent. These claims against Justice Castro are not constitutional violations cognizable under 42 U.S.C. § 1983 and the claims should be dismissed.

### IV. "Civil Rights Violations" involving failure to follow court rules should be dismissed: Claims 1-8, 11-12.

For numerous reasons, any allegations of a violation of court rules and fraud against Justice Castro should be dismissed. First, as previously stated, dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534. A violation of court rules does not give rise to an independent cause of action. *See Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989) ("[A] violation of the Federal Rules of Civil Procedure does not give rise to an independent federal cause of action as plaintiff claims."). Not only does Bradshaw not present a cognizable legal theory, but he has not provided any support for his claims that Justice Castro conspired to violate a court rule or commit fraud. Accordingly, these allegations based upon a nonexistent cause of action and should be dismissed.

Furthermore, Federal Rule of Civil Procedure 9(b) states that fraud must be pled with

particularity. Fed. R. Civ. P. 9(b). This Court has held that the degree of particularity required by Rule 9(b) is such that a defendant can prepare an adequate answer to the allegations. *Kennedy v. Gabutin*, 2004 W.L. 2085480, at * 2 (D.N. Mar. I. 2004). Here, Justice Castro has no idea how Bradshaw was defrauded, lost his "rights," and for what reason. Justice Castro is completely unable to prepare an answer to these claims. In fact, there are no facts alleged beyond Justice Castro acting within his official function as a Judge presiding over a trial[15] that indicate wrongdoing. As a result, there is no factual basis for the fraud allegations, and they should be dismissed.

### V. Plaintiff has failed to allege the facts necessary to sustain a cause of action under the Civil Rights Acts of 1870 and 1871: Claims 6, 11-12.

The Civil Rights Act of 1870, codified today as 42 U.S.C. §§ 1981 and 1982, prohibits racial discrimination in the context of the making of contracts and transactions related to real and personal property. *See Brown v. Philip Morris*, 250 F.3d 789, 796-97 (3d Cir. 2001). Plaintiff has not asserted, nor has he argued, that he was the victim of racial discrimination on the part of Justice Castro because he has not alleged his race. Further, Bradshaw, apparently, believes that racial classifications do not exist as he denies the existence of discrimination against Jewish individuals because the "alleged Jewish race . . . does not exist." Amended Complaint ¶ 110.[16] Based upon the pleadings, Justice Castro cannot identify Bradshaw's race or national origin, other than the fact that he is an "outsider" and a "U.S. citizen whose origin is the continent al [sic] US . . . ." Amended Compliant, ¶¶ 307-308. Justice Castro cannot find a single case that supports the concept that US citizenship represents a protected class. Accordingly, it is proper to dismiss Bradshaw's Count VI for failing to plead essential facts. *See Robertson*, 749 F.2d at 534.

In order to prevail on an action brought pursuant to sections 1981 and 1982, a plaintiff must allege and prove discrimination based upon race or alienage. *See McDonald v. Santa Fe Trail Transport. Co*, 427 U.S. 273, 296 (1976); *see also White v. Pacific Media Group, Inc.* 322

---

[15] As discussed above, judicial immunity applies to official acts.
[16] Bradshaw defines his "national origin" as a continental U.S. citizen and "U.S. state-sider," but offers nothing more.

F.Supp.2d 1101, 1109-1110 (D. Haw 2004); *Pollard v. City of Hartford*, 539 F. Supp. 1156, 1164-65 (D. Conn.1982) (stating that a claim of discrimination based on national origin is not cognizable under § 1981); *Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004). Even if Bradshaw had alleged his race, there is no indication in the facts that race served as the basis of any discrimination, i.e. that a similarly situated person of another race was treated better than him or that discrimination occurred solely because of his race. His sole piece of "evidence" of racial discrimination is that he cannot own land in the CNMI. *See* Amended Complaint, ¶ 306. The fact that Bradshaw cannot purchase land in the CNMI has nothing to do with this case. Bradshaw has not pointed to a single incident where other "outsiders" or U.S. citizens, were discriminated against in Justice Castro's court or how "non-outsiders" received preferential treatment.

"Alienage," on the other hand, is defined as the state or condition of being an alien. *LeClerc v. Webb*, 419 F.3d 405, 426 (5th Cir. 2005). An alien is "any person not a citizen or national of the United States." *Id.* Based upon his allegation, Plaintiff is a U.S. citizen and not an alien. *See* Amended Complaint ¶ 308. Bradshaw's claims have no merit and should be dismissed.

Bradshaw also fails to state a claim under 42 U.S.C. § 1985. Throughout his Amended Complaint, Bradshaw recounts the judicial decisions made during the Bisom Lawsuit; however, Bradshaw does not specify any facts necessary to support a claim that a conspiracy ever existed, (necessary to support a claim under § 1985), and fails to describe with required specificity the Constitutional or other rights of which he was deprived. More importantly, the conspiracy statutes, §§ 1985(2) and (3), require allegations of class-based animus. *See Portman v. Santa Clara*, 995 F.2d 898, 909 (9th Cir.1993) ("It is well-settled that the 'equal protection' language of the second clause of section 1985(2) [requires] an allegation of class-based animus for the statement of a claim under that clause.") (quotation omitted); *Jaco v. Bloechle,* 739 F.2d 239, 245 (6th Cir.1984); *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 268 (1993) (stating that the plaintiff must show "that 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus [lay] behind the conspirators' action . . . .'") (citations omitted).

Bradshaw does not suggest that the alleged conspirators were motivated to deprive him of his civil rights by some racial or otherwise class-based animus. *See also Humphrey v. Court of Common Pleas,* 640 F. Supp. 1239, 1243 (M.D.Pa.1986) (divorced fathers seeking custody of their children do not form a protected class under § 1985). Thus, he is unable to make out a cause of action under § 1985(2) or (3). For these reasons, Bradshaw cannot sustain a cause of action under § 1981, *et seq.*

### VI. The Immigration Reform and Control Act of 1986 does not apply: Claim 10.

The Immigration Reform and Control Act of 1986 (IRCA), codified at various sections of Title 8 of the United States Code, makes it unlawful for employers to knowingly hire undocumented alien workers or for employees to use fraudulent documents to establish employment eligibility. *See Hoffman Plastics Compound, Inc v. N.L.R.B.,* 535 U.S. 137 (2002). Sections 503 and 506 of the Covenant to Establish a Commonwealth of the Northern Mariana specifically excludes the application of U.S. immigration law within the Commonwealth. *See* COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, 48 U.S.C. § 1801, at § 501 (1976); *see also generally Tran v. Com. Of Northern Mariana Islands,* 780 F. Supp. 709, 713 (D.N. Mar. I . 1991). As a matter of law, Plaintiff has not alleged a cognizable theory, and a dismissal of Claim X is proper. *See Robertson,* 749 F.2d at 534.[17]

### VII. Plaintiff's RICO, tort, contract, and U.S. Constitutional based claims are time-barred: Claims 1-17.

This Court has recognized a four-year statute of limitations for RICO claims. *See Grizzard v. Kiyoshige Terada,* 2003 WL 22997238 (D.N. Mar. I. 2003). Additionally, 42 U.S.C. §§1981, 1983 and 2000a actions are governed by the forum state's statue of limitations for personal injury actions. *See Jones v. Blanas,* 393 F.3d 918, 927 (9th Cir. 2004); *Cholla Ready Mix, Inc. v. Civish,* 382 F.3d 969, 974 (9th Cir. 2004). The Commonwealth's personal injury statute of limitations is two years. *See* 7 CMC § 2503(d) (providing for a two-year statute

---

[17] Even if the IRCA applied to the CNMI, Bradshaw is a U.S. citizen. Alleging a violation of the IRCA, therefore, is a spurious claim worthy of sanctions.

of limitations period for "[a]ctions for injury to or for the death of one caused by the wrongful act or neglect of another").

The date Bradshaw's alleged injury accrued must, at the very latest, be the date of the entry of judgment in the year 2000. "The true test to determine when an action 'accrues' is when the plaintiff could have first filed and prosecuted his or her action to successful conclusion." *Zhang Gui Juan v. Commonwealth*, Civ. No. 99-0163 (N.M.I. Super. Ct.1999). Plaintiff's alleged due process and equal protection claims, if any, each arose between 1996, when the original lawsuit was initiated, and 2000, when the judgment was entered against him. *See Bisom v. Commonwealth*, Civ. No. 96-1320. Because Plaintiff's RICO, §§ 1981 and 1983, tort and Constitutional causes of action accrued, at the very latest, in 2000, Plaintiff's claims are time-barred.

### VIII. Even if Plaintiff's RICO claims were not barred by the statute of limitations, Justice Castro was not engaged in a "Racketeering activity" and is immune from civil liability: Claim 8.

Bradshaw claims that Justice Castro violated sections 1961, 1962, 1963 and 1964 of Title 18 of the United States Code, collectively referred to as the Racketeer Influenced and Corrupt Organizations Act ("RICO"). Were Bradshaw's claims under RICO not barred by judicial immunity and the statute of limitations, which they are, his claims would nevertheless have to be dismissed because he has failed to plead the necessary elements of a RICO claim, namely that an organized enterprise caused an injury to his business or property. "To state a civil RICO claim, plaintiffs must allege (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (5) causing injury to plaintiff's business or property." *Ove v. Gwinn*, 264 F.3d 817 (9th Cir. 2001); *see also* 18 U.S.C. §§ 1962(c), 1964(c); *Chaset v. Fleer/Skybox Intern., LP*, 300 F.3d 1083, 1086 (9th Cir. 2002).

Bradshaw alleges that all of the defendants are a *"de facto"* enterprise engaged in interstate commerce. Beyond the sheer nonsensical nature of this claim, Bradshaw offers no indication of what this "enterprise" does besides "discriminate," or more precisely, persecute Bradshaw. Even if such a claim were true, persecuting Bradshaw is not an enterprise. Further,

Bradshaw only alleges that Justice Castro "illegally assumed jurisdiction." As demonstrated above, Justice Castro, at all times had jurisdiction in this case notwithstanding Bradshaw's misapprehension or willful ignorance of well established law. Finally, that Justice Castro performed his job, regardless of how Bradshaw feels about said performance, cannot be linked to defendant Brown or other unnamed "CNMI officials" who "obstructed justice" or to Sorensen and Bisom for "preparing fraudulent documents." *See* Amended Complaint at ¶ 329-338. Aside from the fact that Justice Castro is absolutely immune from this claim,[18] these allegations are simply too vague and speculative to state a RICO claim for a "racketeering activity."

### IX. **Plaintiff's Employment Contract and Principal/Agent Claims must be dismissed because there is no relationship between Justice Castro and Bradshaw. Claims 9 &13**

"In general, 'the obligation of contracts is limited to the parties making them, and ordinarily, only those who are parties to contracts are liable for their breach.'" *United States v. Borja*, No. CV-02-0016-ARM, 2003 WL 23009006, *2 (D.N. Mar. I. Dec. 12, 2003) (quoting 17A Am.Jur.2d *Contracts* § 412 (1991)).

Notwithstanding the fact that Bradshaw failed to even allege a valid employment contract in this matter, he has not alleged that he was an employee of the Judicial Branch in general or Justice Castro in particular. Additionally, Justice Castro is a complete stranger to any employment contract between the CNMI and Bradshaw and in no way can be responsible for any breach thereof. *See id.* ("The wording used in the agreements solely bind the Municipality of Tinian. Accordingly, the words of the agreements evidence that the CNMI is not a party to the agreements and cannot be held liable for their breach.")

---

[18] *See Cullinan v. Abramson*, 128 F.3d 301, 307-08 (6th Cir. 1997) (stating that like § 1983, the court had no reason to suppose that RICO was intended to abolish the absolute immunity of judges).

Further, Justice Castro is an employee and officer of the Commonwealth of the Northern Mariana Islands. The office of judge or justice is an appointed, constitutional office, under the judicial branch of government, pursuant to NMI CONST., art. 4 § 5, and functions independently of the Commonwealth governing authorities. Liability under the doctrine respondeat superior is available only because the principal, the CNMI, has the right to control the actions of the agent. *See, e.g.*, RESTATEMENT (SECOND) OF AGENCY §§ 219, 220(2) (1958). In the case of the Justice Castro and the CNMI, however, this relationship does not exist. The CNMI has no power to control the judge's actions. Indeed, the Commonwealth Constitution, via its prohibition on adjusting a sitting judge or justice's salary, mandates an independent judiciary, *see* NMI CONST., art. 4 § 6; and, without that power to control, imputed liability makes no sense.

### X. **Attorney's Fees.**

A court has discretion to award attorney's fees to a prevailing defendant in civil rights lawsuits pursuant to 42 USC § 1988. *See Miller v. Los Angeles County Board of Education*, 827 F.2d 617, 619 (9th Cir. 1987). Title 42 USC § 1988(b) allows for the recovery of attorneys fees by the prevailing party "in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the Religious Land Use and Institutionalized Persons Act of 2000 of this title . . . the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], [or] title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.]." Attorney's fees may be awarded if the plaintiff's action is "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Here, Bradshaw has twice filed a frivolous, unreasonable action against Justice Castro with absolutely no foundation. He is attempting to sue Justice Castro for lawfully presiding over litigation which left him unhappy. There are mountains of case law dismissing claims identical to this and Bradshaw is aware of them. His only response to these cases is a new, clumsy and illegitimate attempt to link subject-matter jurisdiction with the statute of limitations. As demonstrated above, this is a wasteful and needless exercise that has cost the Judiciary a substantial amount of money. Bradshaw has pled no supporting facts for any of his claims, and a cursory examination of the case law indicates his claims must fail because of judicial immunity.

Accordingly, Justice Castro intends to seek attorney's fees pursuant to 42 USC § 1988.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant Justice Castro's Motion to Dismiss.

Respectfully submitted,

**CIVILLE & TANG**

DATED: June 14, 2006

By: /s/ G. Patrick Civille
**G. PATRICK CIVILLE**
*Attorneys for Defendant*
*Justice Alexandro C. Castro*