# ADDENDUM

*Grizzard v. Kiyoshige Terada*

**Westlaw.**

Not Reported in F.Supp.2d                                                                    Page 1
Not Reported in F.Supp.2d, 2003 WL 22997238 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
District Court for the Northern Mariana Islands.
James H. GRIZZARD, Plaintiff
v.
KIYOSHIGE TERADA, Minoru Imai, and Kabushiki Kaisha Hyakumata Co., Ltd., Defendants
No. Civ.A. 99-0055.

Sept. 17, 2003.

William M. Fitzgerald, Law Office of William M. Fitzgerald, Saipan, for Plaintiff.
Eric S. Smith, Smith and Williams, Saipan, for Plaintiff/Defendants.
Perry B. Inos, Saipan, for Defendant.

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFF'S "RACKETEERING INFLUENCED AND CORRUPT ORGANIZATIONS ACT" CLAIMS FOR RELIEF and SETTING SETTLEMENT/STATUS CONFERENCE

MUNSON, J.
*1 THIS MATTER came before the court on August 7, 2003, for hearing of defendants' motion for summary judgment on plaintiff's claim for relief based on the Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 et seq. Plaintiff appeared by and through his attorney, William M. Fitzgerald; defendants Terada and Hyakumata (a Japanese corporation) appeared by and through their attorneys, Eric S. Smith (who argued), H. Douglas Galt (who argued), and Mark K. Williams; and, defendant Minoru Imai appeared by and through his attorney, Perry B. Inos.

THE COURT, having considered the written and oral arguments of counsel, rules as follows:

*Summary Judgment Standard*

Rule 56 of the Federal Rules of Civil Procedure states, in part, that judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

The party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the matters on record which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corporation v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The non-moving party must set forth by affidavit or as otherwise provided in Rule 56 specific facts showing that there is a genuine issue of material fact for trial. *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103-1104 (9th Cir.), cert. denied, 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

The court must view the evidence in the light most favorable to the non-moving party; if direct evidence from both parties conflicts, summary judgment must be denied. *Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). However, although a trial court may not weigh conflicting versions of fact on a motion for summary judgment, *Baxter v. MCA, Inc.,* 812 F.2d 421, 424 (9th Cir.), cert. denied, *William v. Baxter,* 484 U.S. 954, 108 S.Ct. 346, 98 L.Ed.2d 372 (1987), citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986), and although all inferences are drawn in favor of the non-moving party, *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962), the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electrical,* 475 U.S. at 586. The summary judgment standard is the same as that for judgment as a matter of law under Fed.R.Civ.P. 50(a): whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d 1145, 1149 n. 4 (9th Cir.1998), quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250-252, 106 S.Ct. at 2511-12 (1986). If the factual context makes the non-moving party's claim implausible, then that party must come forward with more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial. See *Matsushita Elec. Indus. Co. v. Zenith Radio*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 2
Not Reported in F.Supp.2d, 2003 WL 22997238 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

Corp., 475 U.S. at 587, 106 S.Ct. at 1356 (1986).

RICO Allegations in the Complaint

*2 In the first amended complaint, plaintiff alleges that all defendants engaged in a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c) and that defendants Terada and Imai engaged in a conspiracy in violation 18 U.S.C. § 1962(d). The goal of these allegedly criminal activities was to defraud plaintiff in regards to his ownership interest in Suwaso Corporation "by overstating administrative and general expenses, overstating loans payments due, and hiding or disguising unauthorized disbursements of funds by Imai to himself and his cronies." First Amended Complaint, ¶ 31 (Jan. 18, 2000). Defendants are also accused of "knowingly and willfully transport[ing] money ... knowing that such money had been taken by fraud." Id. at ¶ 33. Plaintiff alleges that the sum of defendants' acts meets the "pattern of racketeering activity" requirement of 18 U.S.C. § 1962(c). Plaintiff's second claim for relief alleges a conspiracy between Terada and Imai to "conduct and participate directly and indirectly in the affairs of the Suwaso Enterprise through a pattern of racketeering activity," which included creation and submission of false representations as to the amount of money used to benefit Suwaso Corporation, the creation and submission of false books, records, loan documents, and financial reports, illegal cash transfers out of the Commonwealth to Japan, and conversion of corporate property to their own use, all in violation of 18 U.S.C. § 1962(d). Id. at ¶¶ 41-42.

Given the uncontroverted affidavits [FN1] and overwhelming documentary evidence placed before the court by defendants, combined with plaintiff's inability to meet his burden of presenting plausible evidence to show a genuine issue of material fact, and, more so, because the factual context makes plaintiff's claim inherently and extremely unlikely, which required him to present "more persuasive evidence than otherwise would be necessary to show that there is a genuine issue for trial," and which he failed to do, defendants' motion for summary judgment is granted.

FN1. Defendants' motion to strike portions of the affidavits of Tim Goodwin, Robert Campbell, and Goo Ho Cho was conceded by plaintiff to be well-taken and the portions of the affidavits objected to are deemed stricken and offer no support for plaintiff's opposition to the motion for summary judgment.

Findings of Fact [FN2]

FN2. The district court is not required to make findings of fact and conclusions of law on a motion for summary judgment, but such findings and conclusions are helpful to the reviewing court. See e.g. Underwager v. Channel 9 Australia, 69 F.3d 361, 366 n. 4 (9th Cir.1995), citing, Gaines v. Haughton, 645 F.2d 761, 768 n. 13 (9th Cir.1981), cert. denied, 454 U.S. 1145, 102 S.Ct. 1006, 71 L.Ed.2d 297 (1982). Of course, "findings of fact" on a summary judgment are not findings in the strict sense that the trial judge has weighed the evidence and resolved disputed factual issues; rather, they perform the narrow function of pinpointing for the reviewing court those facts which are undisputed and indicate the basis for summary judgment. All Hawaii Tours, Corp. v. Polynesian Cultural Center, 116 F.R.D. 645 (D.Haw.1987), reversed on other grounds, 855 F.2d 860 (9th Cir.1988).

1. Suwaso Corporation ("Suwaso") was incorporated in 1985 to construct, own, and operate Coral Ocean Point Resort Club, comprising a golf course and country club.

2. Plaintiff, now deceased, was and remains a minority shareholder in Suwaso. He initially owned ten percent of the corporation but his ownership interest was later reduced, in documents he prepared, to 2.5 percent. (Plaintiff conceded at oral argument that his ownership interest is now only 2.5 percent and defendants acknowledged that plaintiff still owns a 2.5 percent interest in the corporation.)

3. Defendant Hyakumata Corporation owns 90 percent of the shares and defendant Terada owns the remainder. Hyakumata is the only shareholder who paid for his shares of Suwaso stock and he was the sole financier of the Coral Ocean Point project.

4. Plaintiff was the attorney for the corporation, both pre- and post-incorporation, serving in that capacity from 1985 through 1997. He prepared the articles of incorporation, was an original incorporator, an original shareholder, an original corporate officer, a member of the initial board of directors, and served

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00027   Document 138-3   Filed 06/16/2006   Page 5 of 20

Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 22997238 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

as the corporation's registered agent. During the time plaintiff served as corporate legal counsel, Suwaso leased the land for the Coral Ocean Point project, which included a hotel, restaurant, golf course, and supporting buildings. In addition to his ownership interest in the corporation, plaintiff was paid $2,000.00 per month as a retainer for his legal services. This sum was increased to $3,000.00 per month in 1994.

*3 5. The exhibits entered in support of defendants' motion for summary judgment show that during the time plaintiff was the corporation's legal counsel, all financial details, including the loan information which is a vital component of plaintiff's claims for relief, was disclosed in the corporate records, annual reports, and corporate reports and tax returns filed with the Commonwealth government. Presumptively, plaintiff had access to these documents and more than likely prepared most of them. These documents were reviewed by Deloitte, Touche & Tohmatsu, an independent international accounting firm.

6. As the corporation's legal counsel, a director and corporate officer, as well as a shareholder, plaintiff had, or certainly should have had, personal, direct, timely, and unrestricted knowledge of all aspects of the corporation's operations, including the financing.

Conclusions of Law

1. The court has federal question jurisdiction pursuant to 18 U.S.C. § 1331, diversity jurisdiction pursuant 18 U.S.C. § 1332, and supplemental jurisdiction pursuant to 18 U.S.C. § 1367.

2. The court has personal jurisdiction over all the parties.

3. Venue is proper in this court in that all defendants reside in, can be found in, have agents in, and/or transact or have transacted business within this judicial district.

4. The elements of a civil RICO action are: (1) conduct, (2) of an enterprise, (3) through a pattern, (4) of racketeering activity (*i.e.* a pattern of predicate acts), (5) causing injury to plaintiff's business or property. *Grimmett v. Brown,* 75 F.3d 506, 510 (9th Cir.1996), citing 18 U.S.C. §§ 1962(c), 1964(c), and *Sedima S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496, 105 S.Ct. 3275, 3284-85, 87 L.Ed.2d 346 (1985).

5. None of the elements of a civil RICO action have been shown to exist by plaintiff. Plaintiff failed to meet his burden of presenting credible, plausible, direct evidence in opposition to the affidavits and exhibits presented by defendants in their motion for summary judgment on the RICO claims. *Matsushita Electrical,* 475 U.S. at 586. All of the documentary evidence presented supported defendants' assertions; plaintiff's submissions were simply unsupported suppositions, amorphous expressions of doubt, and unsubstantiated statements. Plaintiff presented nothing to raise a sufficient disagreement to require submission to a jury; the evidence was so overwhelmingly one-sided in favor of defendants on the RICO claims for relief that they must prevail as a matter of law. *Blue Ridge Ins. Co. v. Stanewich,* 142 F.3d at 1149 n. 4, quoting *Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 250-252, 106 S.Ct. at 2511-12 (1986). [FN3]

> FN3. Although not a basis for the court's decision on this summary judgment motion, the court notes that plaintiff appears to be stymied by the RICO statute of limitations. In the Ninth Circuit, the four-year civil RICO statute of limitations begins to run "when a plaintiff knows or should know of the injury which is the basis for the action." *Stitt v. Williams,* 919 F.2d 516, 525 (9th Cir.1990). Here, due to plaintiff's intimate and active participation in the affairs of the corporation as shareholder, director, officer, and legal counsel, and further due to his role in the preparation of many of the legal documents of the corporation, he knew or should have known well before November 30, 1995 (the date four years prior to the filing of this lawsuit), of the malfeasance he now alleges.

FOR THE FOREGOING REASONS, defendants' motion for summary judgment on plaintiff's two RICO claims for relief is granted and those claims are dismissed with prejudice. The court defers ruling on whether or not it will retain supplemental jurisdiction over the common law claims.

*4 IT IS ORDERED that the parties and their attorneys shall attend a settlement/status conference on Friday, October 10, 2003, at 9:00 a.m.

D.N.Mar.I.,2003.
Grizzard v. Kiyoshige Terada
Not Reported in F.Supp.2d, 2003 WL 22997238 (D.N.Mar.I.)

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 22997238 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

Page 4

**Briefs and Other Related Documents** (Back to top)

- 1:99cv00055 (Docket) (Nov. 29, 1999)

**END OF DOCUMENT**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Kennedy v. Gabutin*

Westlaw

Not Reported in F.Supp.2d                                                                                                     Page 1
Not Reported in F.Supp.2d, 2004 WL 2085480 (D.N.Mar.I.)
(Cite as: 2004 WL 2085480 (D.N.Mar.I.))

**Motions, Pleadings and Filings**

Only the Westlaw citation is currently available.

District Court for the Northern Mariana Islands.
Michael W. KENNEDY, doing business as MK1 Air Conditioning and Refrigeration,
Plaintiff
v.
Rosalina T. GABUTIN, Joseph C. Gabutin, Felix M. Mendiola, Lourdes T. Mendiola,
Joaquin F. Tudela, Sr., and Edith Tudela, Defendants
No. Civ.A. 03-0016.

Sept. 17, 2004.

ORDER DENYING DEFENDANTS THE MENDIOLAS' MOTION TO DISMISS

NUNSON, J.

*1 THIS MATTER came before the court on Thursday, September 16, 2004, for hearing of defendants the Mendiolas' motion to dismiss the third amended complaint for lack of both the jurisdictional amount and ancillary jurisdiction, and also to dismiss for failure to state a claim under Fed.R.Civ.P. 9. Plaintiff appeared by and through his attorney, Mark K. Williams; defendants the Mendiolas appeared by and through their attorney, Victorino DLG. Torres. Settling defendants the Tudelas appeared by and through their attorney, Joaquin DLG. Torres.

THE COURT, having considered the written and oral arguments of counsel, rules as follows:

Defendants the Mendiolas moved to dismiss the third amended complaint on three grounds. First, that the amount in controversy, as to them, does not meet the jurisdictional minimum of $75,000.00 and, second, that there is no ancillary jurisdiction over them because the lawsuit as to defendant Rosalina Gabutin had been settled before they were made parties. Third, that the allegedly fraudulent conveyance is not pleaded with the particularity required by Fed.R.Civ.P. 9.

The initial complaint in this matter was filed June 6, 2003, and named only Rosalina Gabutin as defendant. Similarly, the first amended complaint, filed September 29, 2003, named only Rosalina Gabutin as defendant. Both complaints alleged diversity jurisdiction and sought an amount greater than $75,000.00.

On November 26, 2003, plaintiff and defendant Gabutin filed a settlement agreement with the court, by the terms of which the plaintiff agreed to accept the settlement amount "and release Defendant from further liability and responsibility as alleged in the Complaint." "Settlement Agreement and Consent Judgment Thereon," Docket No. 4. Jurisdiction was expressly reserved in this court to enforce the terms of the settlement. "Settlement Agreement," ¶ 5.

It is alleged that, in anticipation of entering the settlement agreement, defendant Gabutin transferred the real property identified in the third amended complaint to defendants the Mendiolas on November 5, 2003.

After a hearing on plaintiff's motion for an order in aid of judgment, the court, pursuant to its retained jurisdiction "to enforce any and all terms and conditions set forth in the Stipulated Settlement," *supra* at ¶ 5, entered an order which stated in part that plaintiff was "permitted to amend its pleadings to file an amended complaint and/or a supplemental complaint for the purpose of *inter alia* setting aside conveyances of real property that Defendant made allegedly to avoid payment on the judgment." "Order After Hearing (May 17, 2004), Docket No. 10.

On May 18, 2004, plaintiff filed his second amended complaint, adding all the defendants who also are named in the third amended complaint, which is presently before the court. There is no claim by the new defendants that they were not properly served.

Traditionally, "ancillary jurisdiction" describes a federal court's assertion of jurisdiction over claims or parties over whom the court lacks independent subject matter jurisdiction, but that arise out of the same conduct, transaction, or occurrence as the plaintiff's original claim, which was encompassed by the court's subject matter jurisdiction. 16 *Moore's Federal Practice* ¶ 106 .03[4] (2001). The United States Supreme Court has noted that ancillary jurisdiction has been asserted (1) to permit disposition by a single court of claims which are

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00027   Document 138-3   Filed 06/16/2006   Page 9 of 20

Not Reported in F.Supp.2d                                                                                      Page 2
Not Reported in F.Supp.2d, 2004 WL 2085480 (D.N.Mar.I.)
(Cite as: 2004 WL 2085480 (D.N.Mar.I.))

factually interdependent, and (2) to enable a court to manage its proceedings, vindicate its authority, and effectuate its decrees. *Id.* See also *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1012 n. 5 (9th Cir.1999) (the doctrine of ancillary jurisdiction is equitable in nature and allows federal courts to effectuate their decrees). Ancillary jurisdiction primarily involves resolution of disputes involving non-parties to the main action, and is authorized even in the absence of an independent basis for federal jurisdiction over the new parties, if the dispute arose out of the same transaction or occurrence as the main claim. *Id.*

*2 The U.S. Court of Appeals for the Ninth Circuit recognizes that federal courts possess the power to protect their judgments by setting aside fraudulent conveyances, *Thomas, Head and Greisen Employees Trust v. Buster* ("Thomas, Head"), 95 F.3d 1449, 1453 (9th Cir.1996), cert. denied, 520 U.S. 1117, 117 S.Ct. 1247 (1997). This power "derives from the long-recognized principle that a federal court may assert authority over non-federal claims 'when necessary to give effect to the court's judgments." ' Citing *Finley v. United States*, 490 U.S. 545, 551, 109 S.Ct. 2003, 2008, 104 L.Ed.2d 593 (1989) and others. In *Thomas, Head,* after plaintiff trust fund had obtained judgment against a real estate mortgage broker for misrepresentation, it initiated proceedings against the broker's transferees to recover allegedly fraudulent conveyances of the broker's properties. The transferees were not parties to the original action or judgment. *Id.*

In distinguishing the case before them from the U.S. Supreme Court's decision in *Peacock v. Thomas*, 516 U.S. 349, 116 S.Ct. 862, 867-69 (1996), the Ninth Circuit noted that in *Peacock* the Supreme Court had held that ancillary jurisdiction could not be used to establish a new defendant's liability for the *original* judgment. In *Thomas, Head,* the Ninth Circuit held that ancillary jurisdiction could be used to seek disgorgement of property from fraudulent transferees. It is this latter scenario which faces the court in the instant matter and, as in *Thomas, Head,* this court finds *Peacock* inapposite.

Accordingly, because plaintiff is not seeking to establish defendants the Mendiolas' liability as to the original judgment and is simply seeking, rather, disgorgement of assets allegedly conveyed to them fraudulently, the motion to dismiss for lack of ancillary jurisdiction is denied. In instances of ancillary jurisdiction, the issue of the $75,000.00 jurisdictional amount does not come in to play because such proceedings are not original proceedings for which federal subject matter jurisdiction must be alleged and proved.

Defendants' alternative argument for dismissal is that the claim against them fails to plead fraud with the particularity required by Fed.R.Civ.P. 9(b), "Fraud, Mistake, Condition of the Mind." The degree of particularity required by Rule 9 is only such that a defendant can prepare an adequate answer to the allegations. See e .g. *Bosse v. Crowell, Collier & MacMillan*, 565 F.2d 602 (9th Cir.1977).

A review of the third amended complaint shows that the conveyance being challenged as fraudulent occurred between defendant Rosalina Gabutin and the Mendiolas (her sister and brother-in-law). The Mendiolas' knowledge of Rosalina Gabutin's imminent sentencing is alleged, as well as that it was her upcoming sentencing that triggered the conveyance, and that the consideration was insufficient. Further, the date of the allegedly fraudulent transfer and the specific identity of the real property transferred are both alleged.

*3 Here, the number of parties is small and they are all known personally to one another. The details of the allegedly fraudulent transfer are alleged to be known by the defendants. Accepting as it must that all allegations of material fact are true, *Enesco Corp. v. Price/Costco, Inc.*, 146 F.3d 1083, 1085 (9th Cir.1998), the court concludes that the allegations in the third amended complaint are set forth in sufficient detail to allow defendants to prepare an adequate answer. Further, a review of the case law shows that an equitable claim to set aside a fraudulent transfer is treated differently than a claim of straight fraud and the "particularity" requirement is often deemed unnecessary or less onerous than a fraud claim. See U.S.Code Service, Court Rules 1--12, Notes and Commentary to Rule 9.

FOR THE REASONS STATED ABOVE, defendants the Mendiolas' motion to dismiss is denied on all grounds and they shall file their answer within the time prescribed by the Federal Rules of Civil Procedure.

IT IS SO ORDERED.

Not Reported in F.Supp.2d, 2004 WL 2085480 (D.N.Mar.I.)

**Motions, Pleadings and Filings (Back to top)**

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                          Page 3
Not Reported in F.Supp.2d, 2004 WL 2085480 (D.N.Mar.I.)
**(Cite as: 2004 WL 2085480 (D.N.Mar.I.))**

- 1:03cv00016 (Docket) (Jun. 06, 2003)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

# *Seed v. Hudson*

Westlaw.

Not Reported in F.Supp.
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

Page 1

Only the Westlaw citation is currently available.
District Court for the Northern Mariana Islands.
Terrance Ross SEED, and Randall Seed, Plaintiffs,
v.
Henry HUDSON, personally and in his capacity as Director, United States Marshals Service, Jose R. Mariano, personally and in his capacity as United States Marshal for the Northern Mariana Islands, Joaquin L.G. Salas, personally and in his capacity as Deputy United States Marshal, and Gregorio Camacho, personally and in his capacity as Director, Department of Public Safety for the Commonwealth of the Northern Mariana Islands, Defendants.
No. CIV. A. 93-0008.

May 11, 1994.

G. Anthony Long, Saipan, MP, for plaintiffs.
Douglas H. Strand, Asst. Atty. Gen., Saipan, MP, for defendants.

ORDER ON CROSS MOTIONS FOR SUMMARY JUDGMENT

MUNSON, Judge.
*1 This matter comes before the Court on cross motions for summary judgment by Plaintiffs and by Defendant Gregorio Camacho.[FN1] For the reasons that follow, Defendant Camacho's motion for summary judgment on the issues of the statute of limitations and qualified immunity is DENIED. Plaintiffs' motion for summary judgment on the issue of qualified immunity is GRANTED. Plaintiffs' motion for summary judgment on the merits is GRANTED IN PART and DENIED IN PART.

Plaintiffs were federal pretrial detainees incarcerated at the Saipan Detention Center, which is operated by the government of the Commonwealth of the Northern Mariana Islands ("CNMI"). The United States Marshals Service contracts with the CNMI to house its federal prisoners in the CNMI's detention facilities. Plaintiffs brought suit under 42 U.S.C. § 1983 alleging that the conditions under which they were held at the detention center violated their constitutional rights. Plaintiff Terrance Seed's incarceration at the Saipan Detention Center began on April 29, 1991. Plaintiff Randall Seed, Terrance's brother, was incarcerated at the Saipan Detention Center on May 10, 1991. On May 13, 1991, Randall was transferred to a facility on Guam, and he was released from pretrial detention on May 20, 1991. After a hearing on May 24, 1991, this Court ruled that certain conditions at the jail violated Terrance's constitutional rights and ordered that he be released on bond. He was so released later that day.

*Defendant Camacho's Motion for Summary Judgment*

Camacho offers two grounds for summary judgment. First, he contends that Plaintiff Randall Seed's claims are barred by the two year statute of limitations applicable to his § 1983 claim. 7 Commonwealth Code § 2503(d); see Wilson v. Garcia, 471 U.S. 261, 276-280, 105 S.Ct. 1938, 1947-49 (1985) (holding that claims brought under 42 U.S.C. § 1983 are subject to the local statute of limitations applicable to personal injury actions). Title 7 Commonwealth Code § 2508 provides that if the defendant is outside of the CNMI when the cause of action accrues, the statute of limitations is tolled until the defendant returns to the CNMI. Camacho claims via affidavit that he was within the CNMI on May 21, 1991, the date Randall's cause of action accrued. Plaintiffs point to the December 20, 1993 declaration of Captain Jose San Nicholas, one of Camacho's subordinates, wherein he stated that Camacho was not within the CNMI on that date. Because the record contains conflicting evidence on that question, there exists a genuine issue of material fact precluding the entry of summary judgment on the issue of the statute of limitations.

As his second ground, Camacho argues that he is entitled to qualified immunity from this suit. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727 (1982), established a two-part test to determine whether a public official is entitled to qualified immunity. First, the court must look to the applicable law and determine whether the public official's actions violated a constitutional right that was clearly established at the time the actions occurred. Harlow, 457 U.S. at 818, 102 S.Ct. at 2738. The Court has determined that, for the purposes of Defendant's motion for summary judgment, this first prong has been met. Second, if the first part is met, the public official must show that, due to extraordinary circumstances, he did not know, nor reasonably should have known, of the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 2
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

relevant legal standards. _Harlow, 457 U.S. at 819, 102 S.Ct. at 2739._ In other words, "[u]nder th[e clearly established] law, could a reasonable officer have believed his conduct was lawful?" _Act Up!/Portland v. Bagley, 988 F.2d 868, 871 (9th Cir.1993)._

*2 Camacho argues that his conduct was reasonable because his only insight into the relevant standard was a collection of statements and letters from U.S. Marshal Service personnel to the effect that the Saipan jail met all applicable federal standards. This argument misses the mark. The inquiry is not simply whether the conduct was reasonable; rather, the question is whether a reasonable officer, with full knowledge of the relevant legal standard, could believe that his conduct comported with that standard. Camacho contends that his only knowledge of the relevant standard was gleaned from the Marshal Service, and that it was reasonable for him to believe that that was the correct standard. _See Anderson v. Creighton, 483 U.S. 635, 641, 107 S.Ct. 3034, 3039-40 (1987)_ (holding that qualified immunity should apply to officers who "reasonably but mistakenly conclude" that their conduct was constitutional).

The Ninth Circuit, however, recently held in _Hallstrom v. City of Garden City, 991 F.2d 1473, 1483 (9th Cir.), cert. denied, Killeen v. Hallstrom, 114 S.Ct. 549 (1993),_ that a law enforcement officer may not rely solely on the opinions of local judicial officers as the basis for his belief as to the relevant legal standard. In _Hallstrom,_ the defendants claimed qualified immunity on the basis of two unpublished orders from the same federal district court in which the court granted summary judgment against other plaintiffs asserting similar constitutional claims as the _Hallstrom_ plaintiffs. _Hallstrom, 991 F.2d at 1483._ The Ninth Circuit reversed the district court's determination that the defendants had qualified immunity because the district court did not analyze the defendants' actions in light of clearly established Ninth Circuit and Supreme Court law. _Id._ The Ninth Circuit stated:

While at one level it may seem harsh not to allow law enforcement officers to rely on local judicial officers' opinions, the Supreme Court requires what is essentially an artificial test, one that specifically looks to objective, not subjective, reasonableness. A judicial officer's misjudgment will not obviate or excuse another official's obligation to act with _objective_ reasonableness. Under the objective test, an official is charged with knowledge of controlling Supreme Court and Ninth Circuit precedent.

_Id._ (citations omitted).
In this case, Camacho claims to have relied not on the opinions of local judicial officers, but rather on the opinions of United States Marshals Service personnel. As the _Hallstrom_ case points out, however, Camacho's subjective beliefs as to the clearly established law are not material to the determination of qualified immunity. Under the objective test for qualified immunity, Camacho "is charged with the knowledge of controlling Supreme Court and Ninth Circuit precedent" as to the clearly established law with respect to pretrial detention conditions. _Id._

_Pretrial Detainees and the Clearly Established Law_

*3 The Supreme Court in _Bell v. Wolfish, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-72 (1979),_ ruled that a government can, in accordance with due process, incarcerate an individual charged with a criminal offense prior to conviction so long as the conditions of pretrial detention do not amount to punishment of the pretrial detainee. The confinement conditions of pretrial detainees is thus analyzed under the due process clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition of cruel and unusual punishment that is applied to convicted prisoners. _Id._ "[W]hile the eighth amendment proscribes cruel and unusual punishment for convicted inmates, the due process clause of the fourteenth amendment proscribes any punishment of pretrial detainees." _Redman v. County of San Diego, 942 F.2d 1435, 1440 n. 7 (9th Cir.1991), cert. denied, 112 S.Ct. 972 (1992)._

On the other hand, prison conditions which would constitute cruel and unusual punishment under the Eighth Amendment would, by definition, constitute impermissible punishment under the Fourteenth Amendment. For example, it is clearly established that prison conditions that result in "serious deprivation of basic human needs" or that "deprive inmates of the minimal civilized measure of life's necessities" constitute cruel and unusual punishment. _Rhodes v. Chapman, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399 (1981)_ (citing _Hutto v. Finney, 437 U.S. 678, 98 S.Ct. 2565 (1978); Estelle v. Gamble, 429 U.S. 97, 97 S.Ct. 285 (1976))._ The Ninth Circuit further instructs that:
In analyzing a challenge to prison conditions under the Eighth Amendment, a court should examine each challenged condition of confinement, such as adequacy of the quarters, food, medical care, etc., and

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00027    Document 138-3    Filed 06/16/2006    Page 14 of 20

Not Reported in F.Supp.                                                                    Page 3
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

determine whether that condition is compatible with "the evolving standards of decency that mark the progress of a maturing society."

Wright v. Rushen, 642 F.2d 1129, 1133 (9th Cir.1981) (quoting Trop v. Dulles, 356 U.S. 86, 101, 78 S.Ct. 590, 598 (1958)).

The conditions of which Plaintiffs complain include: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; (5) inadequate plumbing; (6) denial of ability to brush teeth; (7) inadequate cell space; and (8) confinement in an area with a convict serving a prison sentence. As discussed below, Camacho does not dispute that Plaintiffs were subjected to each of these conditions. An abundance of Ninth Circuit case law holds that the existence of any one of the first seven of those conditions violates both the Eighth and the Fourteenth Amendments. See, e.g., Thompson v. City of Los Angeles, 885 F.2d 1439, 1448 (9th Cir.1989) (denial of mattress, blanket, and pillow); Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir.1979) (denial of outdoor exercise); Martino v. Carey, 563 F.Supp. 984 (D.Ore.1983) (inadequate shelter, inadequate plumbing, lack of blankets, sheets, and mattresses, denial of exercise); Rutherford v. Pitchess, 457 F.Supp. 104 (C.D.Cal.1978) (inadequate cell space, denial of exercise, inadequate lighting, inability to wash clothes); Dillard v. Pitchess, 399 F.Supp. 1225 (C.D.Cal.1975) (inability to rest comfortably before trial dates, unclean living conditions, inadequate showering facilities); accord Johnson-El v. Schoemehl, 878 F.2d 1043, 1054-55 (8th Cir.1989) (unsanitary conditions, inadequate lighting held to be violations of pretrial detainee's clearly established rights); see generally Note, Constitutional Limits on the Conditions of Pretrial Detention, 79 Yale L.J. 941 (1970).

*4 Plainly, the law regarding the constitutionality of pretrial detention facilities was clearly established in May 1991. Camacho must show "extraordinary circumstances" [FN2] why he should not be charged with the knowledge that inhumane and indecent prison conditions violate both the Eighth and Fourteenth Amendments in order to show that he "reasonably but mistakenly conclude[d]" [FN3] that the pretrial detention conditions at the Saipan jail were constitutional. He has not made such a showing, and consequently, he is not entitled to qualified immunity. Accordingly, his motion for summary judgment on that ground is denied.

*Plaintiffs' Motion for Summary Judgment*

Plaintiffs have cross moved for summary judgment on the issue of qualified immunity and on the merits of their claims.

In Act Up!/Portland v. Bagley, 988 F.2d 868 (9th Cir.1993), the United States Court of Appeals for the Ninth Circuit addressed the district court's duty when presented with a motion for summary judgment on the issue of qualified immunity. In that case, the court held, contrary to standing Ninth Circuit precedent, that whether a reasonable officer could have believed that his actions were justified under the law is a question of law to be determined by the trial court. The court stated that that question "should be determined by the district court at the earliest possible point in the litigation. Where the underlying facts are undisputed, a district court must determine the issue on a motion for summary judgment." Act Up!, 988 F.2d at 873.

As discussed more fully below, the underlying facts regarding the conditions at the jail are undisputed. Also, there is no dispute as to what information Camacho possessed about the jail conditions at the time of Plaintiffs' incarceration. Camacho claims that he believed that the jail met federal standards and therefore met constitutional requirements. Camacho Affidavit of Mar. 21, 1994, at 3, 4. However, his "subjective beliefs" on the subject are "irrelevant." Anderson, 483 U.S. at 641, 107 S.Ct. at 3040. The Court must determine, "in light of clearly established law and the information [Camacho] possessed," id., whether a reasonable officer in Camacho's position could have believed that the jail conditions were constitutional. In my opinion, no reasonable officer presented with the law and the facts could have believed that the conditions to which Plaintiffs, as pretrial detainees, were subjected were constitutional. Accordingly, Camacho is not entitled to qualified immunity from this suit, and Plaintiffs' motion for summary judgment on that issue is granted.

Turning now to Plaintiffs' motion for summary judgment on the merits, Plaintiffs list eight specific conditions at the jail which they contend were unconstitutional. Plaintiffs complain of: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; (5) inadequate plumbing; (6) denial of ability to brush teeth; (7) inadequate cell space; and (8) confinement in an area with a convict

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00027   Document 138-3   Filed 06/16/2006   Page 15 of 20

Not Reported in F.Supp.                                                                                  Page 4
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

serving a prison sentence. As evidence that those conditions existed, Plaintiffs offer the transcript of the May 24, 1991 hearing before this Court, including the testimony of Plaintiff Terrance Seed, United States Marshal Phillip Krell, and Captain Jose San Nicholas of the CNMI Department of Public Safety. Plaintiffs also offer the declarations of Defendant Camacho and Vicente T. Seman, Chief of the CNMI Division of Corrections, as well as this Court's Order of May 24, 1991, releasing Terrance Seed. Defendant has presented no evidence contradicting Plaintiffs allegations as to the conditions at the jail. The Court, however, notes that with respect to condition (6), the testimony of Captain San Nicholas at the May 24, 1991 hearing contradicts Plaintiffs' assertions that they were not allowed to brush their teeth daily. Thus, there exists a genuine issue with respect to that claimed condition. Plaintiffs' evidence with respect to the other seven conditions alleged by Plaintiffs remains uncontroverted.

*5 Next, the constitutionality of each of those conditions must be examined separately. _Wright,_ 642 F.2d at 1133. I find that the first five challenged conditions each constitute a deprivation of a basic human need in contravention of the Fourteenth Amendment. _Thompson v. City of Los Angeles,_ 885 F.2d 1439, 1448 (9th Cir.1989) (pretrial detainee's "uncontroverted allegation that he was provided with neither a bed nor even a mattress unquestionably constitutes a cognizable Fourteenth Amendment claim."); _Rutherford v. Pitchess,_ 457 F.Supp. 104, 117 (C.D.Cal.1978) ("An inmate must be permitted at least twice per week to receive clean outergarments, undergarments, socks and a towel in exchange for those that he had been using."); _Spain v. Procunier,_ 600 F.2d 189, 199-200 (9th Cir.1979) (holding that denial of outdoor exercise constitutes cruel and unusual punishment); _Martino v. Carey,_ 563 F.Supp. 984, 1000 (D.Ore.1983) (finding denial of adequate lighting in jail constituted Eighth Amendment violation); _Martino,_ 563 F.Supp. at 999 ("The provision of adequate means of hygiene, and the sanitary disposal of bodily wastes so that the wastes do not contaminate the cells, are constitutionally required.").

As to cell size, Plaintiffs contend that they were each confined in a cell measuring six feet by seven or eight feet, i.e., somewhere between 42 and 48 square feet. In _Bell,_ the Supreme Court held that double-bunking of pretrial detainees in rooms containing approximately 75 square feet of floor space, or 37.5 feet per detainee, did not amount to punishment under the Fourteenth Amendment. _Bell,_ 441 U.S. at 543, 99 S.Ct. at 1876. Consequently, it cannot be said as a matter of law that the cell size in this case is violative of the Constitution.

With respect to Plaintiffs' claim that they were housed in an area with a convicted person serving a prison sentence, Plaintiffs have cited no authority to the Court for the proposition that such a practice is unconstitutional. My own research on the point uncovered two cases reaching opposite results. In _Morales Feliciano v. Hernandez Colon,_ 697 F.Supp. 37, 45-46 (D.P.R.1988), the court found that the conditions in the jail were so intolerable that commingling pretrial detainees with convicted inmates constituted punishment of the detainees in violation of the Fifth and Fourteenth Amendments. Moreover, the court found that because the pretrial detainees were not members of any of the organized prison "gangs" in that jail, their lot was worse than that of the convicts.

In this case, Plaintiffs allege that a convicted rapist serving a 70-year sentence was housed in the same facility as they were. Plaintiffs, however, do not allege any specific injury as a result of that arrangement. For that reason, I find that this case is more like _Martin v. Tyson,_ 845 F.2d 1451, 1456 (7th Cir.), cert. denied, 488 U.S. 863, 109 S.Ct. 162 (1988), where the court found that it was not unconstitutional to lodge pretrial detainees with convicted inmates, especially in light of the fact that the plaintiff did not allege that he had been injured as a result of his cell placement. I find that confining Plaintiffs in an area with a convict serving a prison sentence did not violate Plaintiffs' constitutional rights, and it would serve no useful purpose to litigate that particular claim.

*6 Finally, I must determine whether Plaintiffs are entitled to summary judgment on their § 1983 claim against Camacho in his personal capacity. Section 1983 requires that the claimant prove: (1) that a person acting under the color of state law committed the conduct at issue; and (2) that the conduct deprived the claimant of some right protected by the Constitution or laws of the United States. _Leer v. Murphy,_ 844 F.2d 628, 632-33 (9th Cir.1988). That Camacho is a person who was acting under the color of state law is undisputed. The issue is whether his conduct led to the alleged constitutional deprivations of which Plaintiffs complain.

As discussed above, pretrial confinement conditions are analyzed under the due process clause of the

Case 1:05-cv-00027    Document 138-3    Filed 06/16/2006    Page 16 of 20

Not Reported in F.Supp.                                                                        Page 5
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

Fourteenth Amendment rather than the Eighth Amendment's cruel and unusual punishment standard which is used for convicted prisoners. _Bell v. Wolfish_, 441 U.S. 520, 535, 99 S.Ct. 1861, 1871-72 (1979). That is not to say, however, that "every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." _Bell_, 441 U.S. at 537, 99 S.Ct. at 1873. "[W]e must be cognizant of both the deference accorded to prison officials in their difficult task of managing the security needs of the prison, and the right of the pretrial detainee, once subjected to the normal limitations and conditions that attach to their confinement, to be free from punishment." _Redman_, 942 F.2d at 1441.

Prison officials are faced with similar competing interests when dealing with both pretrial detainees and convicted prisoners. In recognition of that fact, the Ninth Circuit has held that the court should use the same standard to determine violations of the Fourteenth Amendment's proscription of punishment of pretrial detainees as it does to determine violations of the Eighth Amendment. _Redman_, 942 F.2d at 1442. The _Redman_ court stated that:

The requirement of conduct that amounts to "deliberate indifference" provides an appropriate balance of the pretrial detainees' right not to be punished with the deference given to prison officials who manage prisons. This standard also comports with the purpose of the due process clause: to protect against deliberate, but arbitrary, choices by government.

We therefore hold that deliberate indifference is the level of culpability that pretrial detainees must establish for a violation of their personal security interests under the fourteenth amendment. We also hold that conduct that is so wanton or reckless with respect to the "unjustified infliction of harm as is tantamount to a knowing willingness that it occur" will also suffice to establish liability because it is conduct equivalent to a deliberate choice. This may be termed "reckless indifference."

_Redman_, 942 F.2d at 1443 (citations and footnotes omitted).

Thus, in order to prevail on this motion, Plaintiffs must show that the uncontroverted facts establish: (1) that Camacho, "in acting or failing to act, was deliberately indifferent to the mandates of the [Fourteenth Amendment] and (2) that [his] indifference was the actual and proximate cause of the deprivation of" Plaintiffs' Fourteenth Amendment rights to be free from any punishment. _Leer_, 844 F.2d at 634.

*7 As to the first step, the Supreme Court held in _Wilson v. Seiter_, 111 S.Ct. 2321, 2324 (1991), that the court must inquire into the state of mind of the defendant government official to determine whether or not he was deliberately indifferent to a convicted prisoner's Eighth Amendment rights. The Ninth Circuit in _Redman_ expressly left open the question of whether that same inquiry is required to determine whether an official was deliberately indifferent to the Fourteenth Amendment rights of a pretrial detainee. _Redman_, 942 F.2d at 1443.

I need not decide that question for the purposes of the instant motion, however, because Plaintiff has not produced any evidence sufficient to meet the second step of the analysis. In other words, Plaintiffs have not proven that Camacho's deliberate indifference, if any, was the actual and proximate cause of their alleged constitutional deprivation. Plaintiffs have simply alleged that the conditions existed and that Camacho knew they existed. A genuine issue of material fact exists as to the causal connection between the complained of conditions at the jail and any act or omission by Camacho performed under the color of state law. Accordingly, summary judgment is not appropriate on that issue.

CONCLUSION

For the foregoing reasons, Defendant Camacho's motion for summary judgment on the issues of the statute of limitations and qualified immunity is DENIED. Plaintiffs' motion for summary judgment on the issue of Camacho's qualified immunity is GRANTED. Plaintiffs' motion for summary judgment on the merits is GRANTED IN PART as to the existence and unconstitutionality of the following conditions of their confinement: (1) denial of a mattress, blanket and pillow; (2) denial of ability to wash clothes; (3) denial of exercise; (4) inadequate lighting; and (5) inadequate plumbing. Plaintiffs' motion for summary judgment as to Defendant Camacho's liability to them under 42 U.S.C. § 1983 is DENIED.

IT IS SO ORDERED.

FN1. In an Order dated February 10, 1994, I dismissed the claims against all defendants in their official capacities and against Defendants Hudson and Mariano in their

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp. Page 6
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.)

personal capacities. In that Order, I also granted Defendant Salas' motion for summary judgment. Thus, the only remaining defendant is Camacho in his personal capacity.

FN2. *Harlow,* 457 U.S. at 819, 102 S.Ct. at 2739.

FN3. *Anderson,* 483 U.S. at 641, 107 S.Ct. at 3030.

D.N.Mariana Islands,1994.
Seed v. Hudson
Not Reported in F.Supp., 1994 WL 229096 (D.N.Mar.I.)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*United States v. Borja*

Westlaw.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

Page 1

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
    District Court for the Northern Mariana Islands.
        UNITED STATES OF AMERICA, Plaintiff,
                            v.
    Francisco M BORJA, Mayor of Tinian and
Aguiguan, a chartered municiaplity and political
subdivision of the Commonwealth of the Northern
Mariana Islands; and the Commonwealth of the
        Northern Mariana Islands, Defendants.
                No. CV-02-0016-ARM.

                    Dec. 12, 2003.

     ORDER ON MOTION TO DISMISS FIRST
            AMENDED COMPLAINT
MUNSON, J.
*1 THIS MATTER is before the Court on Defendant Commonwealth of the Northern Mariana Islands' Motion to Dismiss First Amended Complaint (Doc. # 26) and Plaintiff United States of America's Opposition to Motion to Dismiss (Doc. # 30). Upon review of the record, memoranda of the parties and the applicable law, the Court makes the following disposition.

                    I. BACKGROUND

Starting in October of 1991 and continuing to 1996, the then Mayors of Tinian and Aguiguan executed "Joint Funding Agreements" with the United States Department of the Interior, Geological Survey, for water resource investigation on the island of Tinian. Each of the agreements only named the "Municipality of Tinian" as a party to the agreement. Each agreement was signed solely by the then Mayor of Tinian on behalf of the "Municipality of Tinian." The cumulative effect of these agreements was that the United States was owed $2,765,499.83 in 1999.

On May 28, 1999 and July 26, 1999, Charles A. Wilson, Director, Debt Management Services, United States Department of the Treasury, submitted letters to the current Mayor of Tinian and Aguiguan, Francisco M. Borja, advising him that the Secretary of the Interior would accept a reduced amount of $1,589,367.96 as compromise payment of the total debt. As part of this compromise, the Mayor was to make a $393,648.00 payment on September 1, 1999, a $619,736.00 payment on September 1, 2000 and a $575,983.96 payment on September 1, 2001. The Mayor agreed to the compromise. However, the Mayor paid only $249,000 for the first payment and never made any other payments to the United States.

On April 30, 2002, the United States filed the instant action. Alleging that the Mayor of Tinian and Aguiguan "at all times relevant to this complaint was acting on behalf of the Municipality of Tinian and Aguiguan, or the Commonwealth of the Northern Mariana Islands ["CNMI"], or both," (Compl.¶ 5), the United States sought to collect monies, penalties and interest owed under the agreements. Following certification to the Commonwealth Supreme Court to determine whether Tinian and Aguiguan was a chartered municipality, see United States v. Borja, No. 02-0001-OA, 2003 MP 8 (holding that Municipality of Tinian and Aguiguan was a chartered municipality that could sue and be sued), the United States filed an amended complaint (Doc. # 20) on June 2, 2003. On July 30, 2003, Defendant CNMI filed the Fed.R.Civ.P. 12(b)(6) motion to dismiss now before the Court. The United States filed its brief in opposition and the matter was submitted to the Court on October 9, 2003.

                II. STANDARD OF REVIEW

Dismissal of a claim under Fed.R.Civ.P. 12(b)(6) is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957); Navarro v. Block, 250 F.3d 729, 732 (9th Cir.2001). Dismissal is warranted under 12(b)(6) where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. Robertson v. Dean Witter Reynolds, Inc., 749 F.2d 530, 534 (9th Cir.1984).

*2 In reviewing a Fed.R.Civ.P. 12(b)(6) motion to dismiss, the court must assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337-38 (9th Cir.1996). However, legal conclusions need not be taken as true merely because they are cast in the form of factual

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Case 1:05-cv-00027    Document 138-3    Filed 06/16/2006    Page 20 of 20

Not Reported in F.Supp.2d                                                                                                        Page 2
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

allegations. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). When ruling on a motion to dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint and matters of which the court takes judicial notice. *Venetian Casino Resort L.L.C. v. Cortez,* 96 F.Supp.2d 1102, 1106 (D.Nev.2000).

### III. DISCUSSION

#### A. CNMI Motion and Argument

The CNMI argues that the United States fails to state a claim for which relief can be granted.[FN1] Specifically, the CNMI argues that the First Amended Complaint and the attached documents fail to show that the CNMI was a party to the joint funding agreements such as to obligate the CNMI to the United States for any monies still due. This lack of contractual privity between the CNMI and the United States, the CNMI asserts, mandates dismissal of the claims by this Court.

> FN1. The CNMI also argues that the claims asserted in the complaint are barred by the statute of limitations and the doctrine of sovereign immunity. As the Court disposes of this case on an alternate basis, the Court will not address these issues.

Where the United States is a party to a contract, the contract is construed according to general principles of contract interpretation. *Mobil Oil Exploration v. United States,* 530 U.S. 604, 607 (2000); *Saavedra v. Donovan,* 700 F.2d 496, 498 (9th Cir.1983). In general, "the obligation of contracts is limited to the parties making them, and ordinarily, only those who are parties to contracts are liable for their breach." 17A Am.Jur.2d *Contracts* § 421 (1991). To determine whether the CNMI is a party to the joint funding agreements, the Court must first look solely at the words used within the agreements. If the language of the agreements is plain and unambiguous, the intention expressed in that language controls rather than whatever may be claimed to have been the actual intention of the parties. *Id.* § 352.

A plain reading of the joint funding agreements readily indicates that the CNMI is a stranger to the agreements. Each of the agreements only named the "Municipality of Tinian" as a party to the agreement. Each agreement was solely signed by the then Mayor of Tinian on behalf of the Municipality of Tinian. The CNMI is not mentioned in the agreements in any capacity, let alone a capacity obliging it to the United States for payment of money. The wording used in the agreements solely bind the Municipality of Tinian. Accordingly, the words of the agreements evidence that the CNMI is not a party to the agreements and cannot be held liable for their breach.

#### B. United States' Response

The United States nevertheless argues that the CNMI is still liable for monies due under the joint funding agreements. In opposition to the CNMI's motion, the United States contends that privity exists between the CNMI and the United States because the Mayor of Tinian and Aguiguan acted as an agent of the CNMI in undertaking duties imposed by the CNMI Constitution.

##### 1. *Express Authority*

\*3 The United States first argues that, under the Constitution and statutes of the CNMI, the Mayors of Tinian and Aguiguan had express authority to bind the CNMI when they signed the joint funding agreements. Specifically, the United States argues that "[t]he constitutionally required delegation by the Governor of 'responsibility for ... the administration of public services" to the Mayor of Tinian and Aguiguan, N.M.I. Const. art. III § 17, 'in the Commonwealth government,' 1 CMC § 5101, combined with the 'additional duty' imposed through a public law passed by the legislature and signed by the Governor to provide water service in the public interest, 1 CMC § 5107(h)(2), all in furtherance of the Covenant's command that '[t]he executive power of the Northern Mariana Islands will be vested in a popularly elected Governor and such other officials as the Constitution or laws of the Northern Mariana Islands may provide,"[FN2] lead to the ineluctable conclusion that as a matter of law, the Mayor of Tinian and Aguiguan is an agent of the executive branch of the CNMI government." (Doc. # 30, United States' Oppo. Mot. Dismiss at 11).

> FN2. Quoting but not citing section 203(b) of the Covenant to Establish a Commonwealth of the Northen Mariana Islands in Political Union with the United States of America, 48 U.S.C. § 1801 note.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.