Not Reported in F.Supp.2d                                                                 Page 3
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

### a. *1 CMC § 5101*

The United States' argument suggests that 1 CMC § 5101 expressly designates the Mayor of Tinian and Aguiguan as a member of the CNMI executive branch of government. In this regard, the United States misapprehends the position and role of a Mayor as set forth in the Constitution and statutes of the CNMI.

N.M.I. Const. art. VI § 1 states that "[a]gencies of local government shall be established as provided by this article." Section 2 of Article VI establishes the Office of Mayor in Rota, Tinian and Aguiguan, Saipan and the islands north of Saipan and calls for the election of the mayor. Section 3 of Article VI outlines the mayor's powers and duties. Section 4 of Article VI authorizes compensation for the mayor. Section 6 of Article VI mandates the creation of municipal councils in Rota, Tinian and Aguiguan, Saipan and the islands north of Saipan, lists qualifications needed to serve on the councils, and outlines the procedure by which vacancies shall be filled. Section 7 of Article VI lists the powers and duties of the councils. Finally, Section 8 of Article VI establishes the chartered municipality form of government on Rota and Tinian and Aguiguan. See *Borja,* No. 02-001-OA, 2003 MP 8, at ¶ 22.

Title 1, Division 5 of the Commonwealth Code mirrors and helps implement N.M.I. Const. art. VI. 1 CMC § 5101 provides that: "There are in the Commonwealth government as agencies of local government the offices of the mayors, composed of the duly-elected mayors of Saipan, Rota, Tinian and Aguiguan, and the islands north of Saipan." 1 CMC § § 5102-5104 mandate the election of mayors, describe what should be done in case of a vacancy in the Office of Mayor and lists the qualifications to run for mayor. 1 CMC § 5106 lists powers and duties of mayors similar to those contained in N.M.I. Const. art. VI § 3. Finally, 1 CMC § 5107 lists additional powers and duties conferred on mayors by the legislature pursuant to N.M.I. Const. art. VI § 3(h) ("A mayor shall perform other responsibilities provided by law").

**\*4** Contrary to the United States' interpretation, the term "in the Commonwealth government as agencies of local government" in 1 CMC § 5101 does not mean that the mayor is a member of the executive branch exercising executive power at the local government level. Rather, the term designates those governmental entities that exercise specified power

and duties over designated geographical subdivisions of the Commonwealth on behalf of and for the people of that geographical subdivision. C.f. *Analysis of the Constitution of the Commonwealth of the Northern Mariana Islands* 107 (1976) (hereinafter *Analysis of the Constitution* ). The designation of the mayor as an agency of local government is meant to emphasize the limited powers and duties of a mayor as opposed to the Commonwealth wide powers and duties of the Governor, Congress or Judiciary. As such, a mayor is not a member or agent of the executive branch such that an exercise of its powers and duties will necessarily bind the CNMI, *e.g.,* the Director of the Department of Public Works.

In reaching this conclusion, the Court notes that such an interpretation is consistent with the concept that all the executive power of the CNMI is vested in the Governor. *See* N.M.I. Const. Art. III § 1; *Analysis of the Constitution* at 58. Such an interpretation also makes sense in light of the fact that the constitutional sections providing for mayors are grouped in the same article as the sections establishing municipal councils and the chartered municipality form of government, entities clearly not related to the executive branch. Such an interpretation makes even more sense when read in light of the fact that mayors and municipal councils are elected solely by, and can only exercise their powers and duties solely for the people within their designated island jurisdictions. *See* N.M.I. Const. art. VI § § 2-7. Accordingly, the Mayor of Tinian and Aguiguan is not a member or agent of the executive branch such that an exercise of its powers and duties will necessarily bind the CNMI.

### b. *N.M.I. Const. art. III § 17*

Although the Mayor of Tinian and Aguiguan is not a member of the executive branch such that its actions necessarily binds the CNMI, the Court must still determine whether the Mayor of Tinian and Aguiguan could render the CNMI government liable in this case. Specifically, the Court must determine if N.M.I. Const. art. III § 17 could provide the Mayor of Tinian and Aguiguan with express authority to render the CNMI liable on the joint funding agreements.

N.M.I. Const. art. III § 1 states that: "The executive power of the Commonwealth shall be vested in a governor who shall be responsible for the faithful execution of the laws." N.M.I. Const. art. III § 17 states in relevant part that:
(a) The governor shall delegate to a mayor ...,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                    Page 4
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

responsibility for the execution of Commonwealth laws as deemed appropriate, and the administration of public services in the island or islands in which the mayor has been elected. Services being provided on a decentralized basis in Rota, and Tinian and Aguiguan, on the effective date of this provision shall continue. In furtherance of this section, the mayor shall have the responsibility for ensuring that the resident department heads faithfully execute their duties under the law and in accordance with the policies of the Commonwealth government for the administration of public services, in the island or islands in which the mayor has been elected.
*5 (b) Public services on Rota, Tinian and Aguiguan, shall be headed by a resident department head in the departments providing the services ...

The unique and confusing relationship between the Governor and Mayors engendered by these constitutional provisions was extensively analyzed in *Inos v. Tenorio,* No. 94-1289 (N.M.I. Sup.Ct. June 14, 1995).[FN3] Construing N.M.I. Const. art III § § 1 and 17, the court first declared that:

> FN3. Ordinarily, a federal court is not bound by a trial court level decision interpreting state or territorial law. See *Allen v. City of Los Angeles,* 92 F.3d 842, 847 (9th Cir.1996). However, the Supreme Court for the CNMI has stated that *Inos* is "authoritative law until the CNMI Supreme Court determines otherwise." *Commonwealth v. Anglo,* 5 N.M.I. 228, 230 n. 9 (1999).

It is [ ] important to distinguish between executive *power* on the one hand and executive *duties and responsibilities* on the other. N.M.I. Const. art. III repeatedly directs the Governor to delegate executive *duties and responsibilities* to other officers within the executive branch. N.M.I. Const. art. III § § 3, 11 and 14. However, nowhere in N.M.I. Const. art. III is the Governor forced to relinquish his or her ultimate control over the executive power.
*Id.* at 14 (emphasis in original). The court next declared that the definition of "delegate" contained in N.M.I. Const. art III §  17(a) meant "merely entrusting power to another to act for the good of the one who authorizes him," "rather than a complete surrender of relinquishment of power." Harmonizing these declarations, the court then concluded that "the phrase 'shall delegate' in the first sentence of N.M.I. Const. art III §  17(a) does not divest a Governor of

his or her executive power, but requires him to delegate certain duties and responsibilities to the mayors." *Id.* at 16.

The court next construed the scope of delegation mandated by N.M.I. Const. art III §  17. Finding that the "as deemed appropriate" language only qualifies that portion of N.M.I. Const. art. III §  17 requiring the Governor to delegate the duty to execute Commonwealth laws, the court ruled that the "Governor may refuse to delegate any authority to the Mayor over those departments whose primary function is the execution of law." *Id.* at 17-18. Conversely, the court ruled that where a department's primary function is the administration of public services, N.M.I. Const. art III §  17 mandates the delegation of the Governor's duties.[FN4] What constituted "public services" under N.M.I. Const. art. III §  17 was broadly construed by the court to include "all those public services which the executive branch has an obligation to deliver. *Id.* at 21. Delegation of administration of public services does not necessarily mean that a mayor is directly in charge of a department's services as a resident department head. See *Id.* at 31 n. 24. *C.f.* 1 CMC § 5201. However, it does mean that a mayor has at least a supervisory responsibility over the department's services. *Id.* at 22. This supervisory responsibility taking the form of "ensuring that the resident department heads faithfully execute their duties under the law and in accordance with the policies of the Commonwealth government." See *Id.* at 22-23.

> FN4. In a later issued decision, *Inos v. Tenorio,* No. 94-1289 (N . M.I. Sup.Ct. Oct. 18, 1995), the court clarified its prior ruling by declaring that a delegation of responsibility has to be over the entire department. *Id.* at 5-6.

In light of the *Inos* court's interpretation, N.M.I. Const. art. III §  17 could provide the Mayor of Tinian and Aguiguan with express authority to render the CNMI liable on the joint funding agreements. To have such authority, the Governor must have delegated to the Mayor of Tinian and Aguiguan responsibility over a department that administers public services.[FN5] The Mayor then must have entered into the joint funding agreements in his capacity as resident department head. Finally, the Mayor must have acted within the scope of CNMI law when it entered into the joint funding agreement. 72 Am.Jur.2d *States, Territories and Dependencies* § 72

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
(Cite as: Not Reported in F.Supp.2d)

(2001) (stating that "officers must act within their authority; a state is not bound by the unauthorized contracts of its officers").

> FN5. The United States does not argue that the Mayor of Tinian and Aguiguan entered into the joint funding agreements through a delegation of responsibility to execute Commonwealth law.

*6 As stated, the Court believes that the Mayor of Tinian and Aguiguan must be a resident department head in order to act as an agent of the CNMI. The delegation under N.M.I. Const. art. III § 17(a) gives mayors "supervisory responsibility" over the resident department head to ensure that he fulfills his duties and follows the Governor's policies. *Inos,* No. 94-1289, at 22 (N.M.I. Sup.Ct. June 14, 1995). This supervisory responsibility grants a mayor the authority "to remove, discipline and ultimately control the actions of the resident department heads". *Id.* at 31. By way of illustration,

[I]f mandatory AIDS ... testing for doctors and nurses employed at Commonwealth public hospitals became the policy of the Commonwealth government, the Secretary of Public health would be charged with the responsibility to implement the policy. As the recipient of delegated authority over he administration of public services on [Tinian and Aguiguan], the Mayor would act as the secretary's eyes and ears on [Tinian and Aguiguan] to make sure that his Resident Department Head for Public Health on [Tinian and Aguiguan] implemented the Commonwealth-wide policy. If a resident department head failed to timely comply with the mandatory AIDS testing policy, the Mayor, as supervisor, would have a duty to take immediate steps to insure the policy's implementation, including reasonable disciplinary action.

*Id.* Consistent with this delegation of supervisory responsibility, if a mayor believes that the department should enter into a contract, he must order the resident department head to enter the contract on behalf of the CNMI. The delegation of supervisory responsibility under N.M.I. Const. art. III § 17(a) does not permit a mayor to enter into the contract on behalf of the CNMI.

Only if a mayor is designated the resident department head can he contract on behalf of the CNMI. Resident department heads are part of the executive branch of the CNMI government. N.M.I. Const. art. III § 17(b). See, *e.g., Inos,* No. 94-1289, at 22, 30-31

(N.M .I. Sup.Ct. June 14, 1995). 1 CMC § 5201 permits the appointment of a mayor as a resident department head. If so appointed, a mayor is then part of the executive branch and can thus exercise any power a resident department head may have to contract. *See also* 1 CMC § 5201 (stating that "the Mayor of Tinian and Aguiguan," if designated a department's resident head, "shall have the authority necessary to efficiently and effectively carry out the administration and delivery of public services"). A contract so executed would be binding on the CNMI. Therefore, the Mayor of Tinian and Aguiguan must be a resident department head in order to act as an agent of the CNMI.

With the above discussion in mind, the Court must determine if the United States pleads a claim for relief against the CNMI. Other than the conclusory allegation that the Mayor of Tinian and Aguiguan acted as an agent of the CNMI, the United States pleads no facts demonstrating that the Governor delegated to the Mayor of Tinian and Aguiguan responsibility over a department that administers public services, that the Mayor entered into the joint funding agreements in his capacity as resident department head and that the Mayor was authorized to enter into the joint funding agreements. Accordingly, the Court finds that the United States fails to state a claim that the Mayor of Tinian and Aguiguan bound the CNMI through N.M.I. Const. art. III § 17.[FN6]

> FN6. The court notes that 1 CMC § 5107(h)(2) does not create any sort of agency relationship between the CNMI and the Mayor of Tinian and Aguiguan. Under the statute, a mayor has discretion to provide "[w]ater service to individual residences or community centers in villages, farms, or homestead areas" so long as the provision of such service is "in the public interest or are of benefit to the community." Such service is provided solely by a mayor pursuant to power granted it by the legislature under N.M.I. Const. VI § 3(h). It cannot be construed as permitting a mayor to contract with another on behalf of the CNMI.

### 2. Apparent Authority

*7 The United States next argues that the CNMI is liable on the joint funding agreements because the Mayors of Tinian and Aguiguan were acting with the apparent authority of the CNMI. However, this

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)
**(Cite as: Not Reported in F.Supp.2d)**

Page 6

theory of liability is not viable against the CNMI.

Governments cannot be held liable to a contract through apparent authority. 81A C.J.S. *States* § 156 (1977). See, *e.g.*, *Thomas v. I.N.S.*, 35 F.3d 1332, 1338 (9th Cir.1994) (stating that "[e]stoppel and apparent authority will not substitute for actual authority to bind the United States government"); *ARA Health Servs., Inc. v. Dept. of Pub. Safety & Correctional Servs.*, 685 A.2d 435, 440 (Md.1996). To hold otherwise could eviscerate the well-settled rule that a state or territorial government is not bound by a contract entered into by an agency acting beyond the power specifically conferred on it by law. 81A C.J.S. *States*, supra; See, *e.g.*, *SIU de Puerto Rico, Carib y Latinoamerica v. Virgin Islands Port Auth.*, 42 F.3d 801, 803 (3d Cir.1994). As a result, the United States cannot claim that the Mayor of Tinian and Aguiguan was an agent that could bind the CNMI through apparent authority.

## IV. CONCLUSION

Based on the foregoing, it is ORDERED that Defendant CNMI's Fed.R .Civ.P. 12(b)(6) Motion to Dismiss First Amended Complaint (Doc. # 26) is GRANTED. Accordingly, all claims for relief by the United States of America against the CNMI are hereby DISMISSED.

D.N.Mar.I.,2003.
U.S. v. Borja
Not Reported in F.Supp.2d, 2003 WL 23009006 (D.N.Mar.I.)

Briefs and Other Related Documents (Back to top)

• 1:02cv00016 (Docket) (Apr. 30, 2002)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

*Zhang Gui Juan v. Commonwealth*

**Superior Court Opinions / Civil Actions / Zhang Gui Juan v. Commonwealth, Civ. No. 99-0163**

███████████████████████████████████████████████

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ZHANG, GUI JUAN, | ) | Civil Action No. 99-0163 |
| | ) | |
| Plaintiff, | ) | **ORDER GRANTING** |
| | ) | **DEFENDANT'S MOTION** |
| vs. | ) | **TO DISMISS** |
| | ) | |
| COMMONWEALTH OF THE | ) | |
| NORTHERN MARIANA ISLANDS | ) | |
| AND TRICIA S. AGUON, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### I. PROCEDURAL BACKGROUND

**FOR PUBLICATION**
        This matter came before the Court on August 13, 1999, at 1:30 p.m. in Courtroom 223 on Defendants' Motion to Dismiss. Assistant Attorney General Robert Goldberg, Esq. appeared on behalf of the Defendants. Joe Hill, Esq. appeared on behalf of the Plaintiff. The Court, having heard and considered the arguments of counsel and being fully informed of the premises, now renders its decision.

### II. FACTS

        On March 12, 1998, Plaintiff instituted a civil action in the United States District Court for the Northern Mariana Islands (District Court) against the Government of the Commonwealth of the Northern Mariana Islands (Commonwealth) and against Tricia S. Aguon. See Zhang v. Cabrera, Civil **[p. 2]** Action No. 98-0012 (D.N.M.I. March, 12, 1999) (Complaint).
        On November 14, 1998, the District Court dismissed Plaintiff's local claims, those alleging violation of Commonwealth law, on the grounds that they contained "novel and complex" local issues best reserved for interpretation by Commonwealth Courts. See Zhang v. Cabrera, Civil Action No. 98-0012 (D.N.M.I. Nov. 14, 1998) (Order Re: Motions to Dismiss)

(Munson, J.)

On March 16, 1999, Plaintiff instituted a civil action in the Commonwealth Superior Court alleging that the Commonwealth acted in violation of Article I § 3(c) of the Commonwealth Constitution and that the Commonwealth and Officer Tricia S. Aguon (Aguon) acted in such a manner as to constitute the tort of "common law negligence." See Zhang v. Commonwealth, Civil Action No. 99-0163 (N.M.I. Sup. Ct. Mar. 16, 1999) (Complaint).

On June 29, 1999, Defendants filed a Motion to Dismiss the present civil action pursuant to Com. R. Civ. P. 12(b)(6).

## III. ISSUE

1. Whether the Court shall grant Defendant's Motion to Dismiss pursuant to Com. R. Civ. P. 12(b)(6) on the grounds that Plaintiff's complaint fails to state a claim upon which relief can be granted due to the fact that Plaintiff's complaint is barred by the two year statute of limitations period of 7 CMC § 2503.

## IV. ANALYSIS

Defendants move the Court to dismiss the present civil action with prejudice pursuant to Com. R. Civ. P. 12(b)(6), which allows a party to make a motion to dismiss for "failure to state a claim upon which relief can be granted." Com. R. Civ. P. 12(b)(6).

In considering a motion to dismiss for failure to state a claim upon which relief can be granted, "the Court must accept the allegations in the complaint as true and construe them in the light most favorable to the plaintiff." Govendo v. Micronesian Garment Mfg., Inc.,2 N.M.I. 270, 2 N.M.I. 283 (1991), citing Abramson v. Brownstein, 897 F.2d 389 (9th Cir. 1990); see also, Bolalin v. Guam Publications, [p. 3] Inc.,4 N.M.I. 176, 4 N.M.I. 179 (1994). Dismissal is improper unless the Court is absolutely certain that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. Id., see also, Hishon v. King & Spaulding, 467 U.S. 69, 73, 104 S. Ct. 2229, 2232, 81 L.Ed.2d 59 (1984) The burden is on the Defendants in the present matter as "[t]he defendant must . . . demonstrate that, even after taking the well pleaded facts as true, the plaintiff still fails to state a claim for relief." Govendo v. Marianas Public Land Corp.,2 N.M.I. 482, 2 N.M.I. 490 (1992).

Defendants argue that Plaintiff's complaint must be dismissed for the following reasons: (1) the two year statute of limitations period of 7 CMC § 2503 bars Plaintiff's complaint; (2) no cause of action exists under Article I § 3 of the Commonwealth Constitution; and (3) neither the Commonwealth nor Aguon may be held liable pursuant to the Government Liability Act and principles of "sovereign immunity."

### A. Statute of Limitations.

Defendants argue that Plaintiff's complaint filed on March 16, 1999, is barred by the two year statute of limitations period set forth at 7 CMC § 2503. Plaintiff, however, argues that the complaint was timely filed pursuant to the tolling provisions of 7 CMC § 2506 and 28 U.S.C. § 1367(d).

1. <u>Applicable Statute of Limitations Period</u>.

Plaintiff's complaint alleges that Defendants assumed an affirmative duty to guard and protect Plaintiff and then negligently performed that duty. Therefore, as Plaintiff alleges the tort of "common law negligence," the applicable statute of limitations period is set forth at 7 CMC § 2503(d). 7 CMC § 2503 states, in pertinent part:

> The following actions shall be commenced only within two years after the cause of action accrues:
>
> (a) Actions for assault and battery, false imprisonment, or slander;
> (b) Actions against the Director of Public Safety, a police officer or other person duly authorized to serve process, for any act or omission in connection with the performance of official duties:
> (c) Actions for malpractice . . .
> (d) Actions for injury . . . caused by the wrongful act or neglect of another . . .

7 CMC § 2503. As such, Plaintiff had two years in which to file a complaint from the date on which her cause of action "accrued." **[p. 4]**

2. <u>Tolling of the Statute of Limitations Period Due to Plaintiff's Incarceration</u>.

The first issue in determining when a statute of limitations period begins and ends is to calculate the date on which such cause of action "accrued." Pursuant to 7 CMC § 2512, "[e]xcept as otherwise provided, periods prescribed in this chapter shall be reckoned from the date when the cause of action accrued . . . " 7 CMC § 2512. A cause of action "accrues" as soon as the right to maintain a legal action arises. The true test to determine when an action "accrues" is when the plaintiff could have first filed and prosecuted his or her action to successful conclusion. See <u>Kansas Public Employees Retirement System v. Kroger Associates, Inc.</u>, 936 P.2d 714, 719 (Kan. 1997). "Ordinarily, a cause of action accrues at the time of the act giving rise to the alleged injury or damage." See <u>v. Hartley</u>, 896 P.2d 1049, 1054 (Kan. 1995).

In the present matter, the rape occurred on November 20, 1996. Defendants argue that the cause of action "accrued" on that date as the rape was the act giving rise to the alleged injury or damage. Defendants, therefore, contend that the two-year statute of limitations period expired on November 20, 1998, and as Plaintiff did not file the present action in the Superior Court until March 16, 1999, Defendants argue that Plaintiff's complaint is barred by the statute of limitations.

Plaintiff, however, argues that the cause of action did not "accrue" until January 23, 1997, due to the fact that the rape occurred while she was in the custody of the Department of Immigration. Pursuant to 7 CMC § 2506, imprisonment is considered a disability which affects the determination of when the statute of limitations period begins to run.

7 CMC § 2506 states, in pertinent part:

> If the person entitled to a cause of action . . . is imprisoned when the cause of action first

accrues, the action may be commenced within the time limits in this chapter after the disability is removed.

7 CMC § 2506. Plaintiff, therefore, had two years within which to file a complaint from the date on which she was released. Plaintiff was released from incarceration on January, 23, 1997. See Office of the Attorney General, et al. v. Zhang, Gui Juan, Civil Action No. 96-0952 (N.M.I. Super. Ct. Jan. 23, 1997) (Release Order/Stay of Deportation). As such, Defendant had until January 23, 1999, to file her complaint in the Superior Court. Plaintiff, however, did not file the present action in the  **[p. 5]** Superior Court until March 16, 1999. Thus, Plaintiff's cause of action is still time barred, regardless of the application of the tolling provisions of 7 CMC § 2506.

   3. Tolling of the Statute of Limitations Period Pursuant to 28 U.S.C. § 1367(d).
   Plaintiff argues that the complaint filed in the Superior Court on March 16, 1999, was timely on the grounds that the two year statute of limitations period of 7 CMC § 2503 was tolled pursuant to 28 U.S.C. § 1367(d).
   28 U.S.C. § 1367(d) states, in pertinent part:

   The period of limitations for any claim asserted under subsection (a) . . . shall be tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law provides for a longer tolling period.

28 U.S.C. § 1367(d). 28 U.S.C. § 1367(d) applies within the Commonwealth as a matter of law pursuant to 28 U.S.C. § 1367(e), which states that "[a]s used in this section, the term 'State' includes the District of Columbia, the Commonwealth of Puerto Rico, and any territory or possession of the United States." 28 U.S.C. § 1367(e); see also, Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 48 U.S.C. § 1801, reprinted in CMC at B-101 et seq.
   28 U.S.C. § 1367(d) tolls the limitation period of any supplemental claims dismissed when the federal court declines to exercise supplemental jurisdiction or where claims are voluntarily dismissed by the plaintiff. See 28 U.S.C. § 1367. All such claims are tolled while they are pending in federal court and for thirty days after their dismissal, unless state law provides for a longer tolling period. Id.
The purpose for this provision is to prevent the loss of claims to statute of limitations where state law might fail to toll the running of the period of limitations while a supplemental claim was pending in federal court. See H.R.REP. No. 734 (1990), reprinted in U.S.S.C.A.N. 6802, 6876.
   Plaintiff filed her complaint in District Court on March 12, 1998, thirteen months after the cause of action "accrued" on January 23, 1997. Plaintiff argues that the two year statute of limitations period ceased to run at this point and that the remaining eleven months of the statutory period did not begin to run again until the District Court dismissed Plaintiff's complaint on November 14, 1998. Plaintiff contends, therefore, that pursuant to 28 U.S.C. § 1367(d), the statute of  **[p. 6]** limitations period will not expire until November 14, 1999, 12 months and 30

days after the dismissal by the District Court. As such, Plaintiff contends that the complaint filed in the Superior Court on March 16, 1999, was timely.

Defendants, however, argue that Plaintiff misinterprets the tolling provision of 28 U.S.C. § 1367(d). Defendants argue that pursuant to 28 U.S.C. § 1367(d), the applicable statute of limitations "clock" continues to run while a complaint is pending in District Court.

As noted above, Plaintiff urges the Court to interpret 28 U.S.C. § 1367(d) to exclude from the limitations computation the entire interval that the federal claim was pending in District Court. Courts, however, have held that 28 U.S.C. § 1367(d) only tolls the state statute of limitations on any state claim over which a federal court has exercised supplemental jurisdiction until 30 days after its dismissal, not for the entire period of time in which the case was pending before the federal court. Huang v. Ziko, 511 S.E.2d 305, 307-308 (N.C. Ct. App. 1999). See also; Edmondson v. Gallagher, 48 F.3d 1260, 1267 (D.C. Cir. 1995). In Huang, the Court upheld a trial court's order granting summary judgment in favor of the defendant on the grounds that the applicable statute of limitations period had expired. In Huang, the plaintiff argued "that once the federal action was no longer pending, the time for filing his complaint in state court should have been extended for the portion of the three-year limitations period that had not been used when he filed the federal action." Id. at 307. The Court, however, reasoned:

> Plaintiff's contention is untenable. The rule which plaintiff would have this Court adopt is contrary to the policy in favor of prompt prosecution of legal claims. Furthermore, such a rule is contrary to the general rule that '[i]n the absence of statute, a party cannot deduct from the period of the statute of limitations applicable to his case the time consumed by the pendency of an action in which he sought to have the matter adjudicated, but which was dismissed without prejudice as to him.'

Id. at 308, citing 51 Am.Jur.2d Limitation of Actions § 311 (1970).

The Court finds that 28 U.S.C. § 1367(d) only tolls the Commonwealth statute of limitations period on any local claim over which a federal court has exercised supplemental jurisdiction until 30 days after its dismissal, not for the entire period of time in which the case was pending before the federal court. In the present matter, therefore, 28 U.S.C. § 1367(d) does not toll the statute of **[p. 7]** limitations period of 7 CMC § 2503 beyond January 23, 1999, two years from that date on which the cause of action "accrued." As such, Plaintiff's complaint filed on March 16, 1999, was untimely.

### 4. Equitable Tolling Principles.

Plaintiff makes a further argument that 28 U.S.C. 1367(d) codifies the common law principle of "equitable tolling." As such, Plaintiff argues that if Defendants have notice of a claim filed in one forum, that the statute of limitations equitably tolls while the claim is pending, thus permitting the Plaintiff an opportunity to re-file in another forum.

"In order for a statute of limitations to be equitably tolled, there must be a showing of three things: first, that the plaintiff gave timely notice to the defendant of the plaintiff's claim; second, that the resultant delay did not cause prejudice to the defendant's position; and third, that

the plaintiff acted reasonably and in good faith." Ervin v. County of Los Angeles, 848 F.2d 1018, 1019 (9th Cir. 1988); see also, Cervantes v. City of San Diego, 5 F.3d 1273 (9th Cir. 1993).

Plaintiff did in fact give timely notice of its claims against Defendants by virtue of the federal complaint filed on March 12, 1998. Plaintiff, however, has not shown that Defendants have not been prejudiced by the delay in filing the claim. Furthermore, Plaintiff's delay, while not in bad faith, was not reasonable. Plaintiff was aware that at the time the supplemental claims were dismissed by the District Court on November 14, 1998, that it had in excess of two months in which to re-file its local claims.

Furthermore, even if the Court were to look to principles of equity, the opposite equitable principle of "laches" becomes pertinent and there is a presumption of "laches" where the statute of limitations has run. Rios v. Marianas Public Land Corp.,3 N.M.I. 512, 3 N.M.I. 524 (1993). "Laches" is defined as the "neglect or delay in bringing suit to remedy an alleged wrong, which taken together with lapse of time and other circumstances, causes prejudice to the adverse party and operates as an equitable bar." "Once a presumption arises, the plaintiff must offer proof directed to rebutting the laches factors." Id. As such, Plaintiff must show that the delay in filing the complaint in the Superior Court was not unreasonable. The Court, as previously stated, the has found such delay to be unreasonable. **[p. 8]**

B. Defendants' Alternative Theories in Support of Motion to Dismiss.

Defendants also argue that Plaintiff's complaint should be dismissed on the grounds that no cause of action exists under Article I § 3 of the Commonwealth Constitution or, in the alternative, that the Commonwealth is not liable under the Government Liability Act and principles of "sovereign immunity."

Given the fact that the Court has found that the two year statute of limitations period of 7 CMC § 2503 acts to bar Plaintiff's claim, the Court need not reach Defendants' other arguments in favor of its motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, the Court finds that Plaintiff's complaint filed on March 16, 1999, is barred by the two year statute of limitations period set forth at 7 CMC § 2503. Defendants, therefore, have met their burden and have demonstrated that even after taking the well pleaded facts as true, Plaintiff still fails to state a claim for relief. As such, Defendant's Motion to Dismiss is **GRANTED**.

So ORDERED this __30th__ day of September, 1999.

/s/  Juan T. Lizama
JUAN T. LIZAMA, Associate Judge

**FOR PUBLICATION**