¶37  This is not to say that the proponent of an issue always carries the burden. An exception to the general rule sometimes shifts the burden to the party most able to come forward with the evidence. "Where the evidence necessary to establish a fact essential to a claim lies peculiarly within the knowledge and competence of one of the parties, that party has the burden of going forward with the evidence." *Morris v. Williams*, 433 P.2d 697, 715 (Cal. 1967) (citations omitted).

¶38  In this case, Bisom seeks to establish that Bradshaw requested that the government defend and indemnify him; barring an exception to the general rule that the proponent of an issue bears the burden of proof, Bisom carries the burden of establishing that Bradshaw made the requests pursuant to 7 CMC § 2304. We see no reason to deviate from the general rule. While it is certainly true that Bradshaw and the government know whether Bradshaw requested a defense and indemnification, this does not mean that this knowledge "lies peculiarly" with "one of the parties." *Id.*

¶39  Bisom could have sought the information in discovery.[13]  Com. R. Civ. Pro. 26(b)(1) deals with the scope of discovery: "[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action...." Thus, Bisom could have propounded discovery concerning the request for indemnification and would have been entitled to an answer, unless Bradshaw claimed attorney-client privilege.[14]

---

[13] During the more than three years from the filing of the action in December, 1996, until it was tried in February, 2000, Bisom could have sought the information by utilizing an oral or written deposition, interrogatories, a request for production of documents or requests for admissions pursuant to Com.R.Civ.Pro. 26(a).

[14] We assume, *arguendo*, that Bisom's alleged request for defense and indemnification is, in fact, a confidential communication between a client and an attorney. The issue of whether a government employee's request for a defense is a privileged communication is not squarely before us; consequently, we decline to address it at this time.

¶40    Bisom's contention that this information would likely be privileged is not sufficient to shift his burden to the opposition. Since privileges in general, and attorney-client privilege specifically, can be waived by failing to object to proper discovery requests, in practice a matter is not deemed privileged until the privilege is asserted. *See* Com. R.R. Civ. Pro 33(b)(1) ("Each interrogatory shall be answered separately and fully in writing under oath, unless it is objected to..."); 34(b) ("... The response shall state, with respect to each item or category, that inspection and related activities will be permitted as requested, unless the request is objected to..."); 36(a) ("...The matter is admitted unless, within 30 days after service of the request . . . the party to whom the request is directed serves upon the party requesting the admission a written answer or objection..."). *See also In re United States*, 864 F.2d 1153, 1156 (5th Cir. Tex. 1989) ("We readily agree with the district court that as a general rule, when a party fails to object timely to interrogatories, production requests, or other discovery efforts, objections thereto are waived.").

¶41    Bradshaw did not assert a privilege because he was not forced to by any discovery demand from Bisom. If the information sought by Bisom was exclusive to Bradshaw, it is only because Bisom made absolutely no effort to discover it for himself. The trial court did not err in assigning the burden of proof to Bisom.

        2.    The trial court's determination that Bradshaw did not request a defense was not clearly erroneous.

¶42    From the outset, it must be noted that each party to this appeal relies, at least in part, on a letter purportedly written by Bradshaw to prove that Bradshaw did or did not request a defense pursuant to 7CMC § 2304(a). Although properly part of the record

16

before us pursuant to Com. R. App. Pro. 10(a)[15], this letter was ruled inadmissible by the trial court; that ruling was not appealed.[16] It does not appear that the trial court relied on it at all when making its determinations; neither shall we.

¶43     Bisom lists several instances where the Attorney General's Office represented Bradshaw. Paired with a presumption that, absent contrary evidence, "where a public officer has been represented by a government attorney . . . requests for representation were made," *Sinclair*, 36 Cal.Rptr. at 811-12, Bisom argues that, regardless of where the burden of proof lies, this is enough to establish that Bradshaw requested a defense.

---

[15] Rule 10(a) reads, in pertinent part: "The original papers and exhibits filed in the Superior Court . . . shall constitute the available record on appeal in all cases." Com. R. App. Pro. 10(a).

[16] The pertinent portions of Bradshaw's purported letter are:

> Regarding CNMI SC 96-1320 and all subsequent complaints, I have never been served on any of these complaints. I have never authorized the AG to accept service for me. As far as I am concerned those cases are all mute and nonexistent. To repeat, I don't want the AG to accept service for me on anything. If Bisom wishes to sue me, he must serve me (actually with a process server).
>
> Some two certified mail packets from an unidentified party came to me from Saipan in 1996 and 1997. I refused to accept either of them and they were returned by the Post Office undelivered. Possibly these mailings were an attempt to accomplish service although I cannot be sure what were in the packets and the sender's name was not identified (beyond a return address post office box). Again, if Bisom wants an answer from me he will have to hire a process server. As I said to Doug Cotton, if I am served I will contact the AG to make the answer. Otherwise, I have not authorized the AG to make any answers for me on anything in the CNMI cases. And I have never been served!
> ...
> Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes). I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on [another] case. As for as the CNMI SC, your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

We include it because each party spent a portion of oral arguments arguing what, in fact, this document (ruled inadmissible below and consequently of no use to us) purported to prove.

17

    a. The Commonwealth does not recognize the presumption that "requests were made" in an action of this nature.

¶44  We have yet to recognize the legal presumption that, where a public officer has been represented by a government attorney, the public officer requested a defense and indemnification from the government. Our review of PELDIA convinces us that we should not. This is so due to the emphasis placed on the request by the Commonwealth Legislature.

¶45  Section 2304(a) of Title 7 lists four conditions which must be met to require the government to provide a defense for[17] and indemnify an employee. 7 CMC § 2304(a). The first requires the employee seeking protection under the Act to request that the government pay for his defense or to defend him. 7 CMC § 2304(a)(1). The fourth requires the employee to make his request in writing at least five days before an answer to the complaint must be filed. 7 CMC § 2304(a)(4). The legislature has placed a great emphasis on the request to the government from the employee.

¶46  Furthermore, PELDIA is based on the laws of California and Washington. 7 CMC § 2302. In Washington, a request of any kind is sufficient. See *Rev. Code Wash.* (ARCW) § 4.92.060.[18] In California, the request must be in writing and tendered to the government at least ten days before the trial. *See* Cal. Gov't Code § 825(a).[19]

---

[17] This may be accomplished two ways: "At the public entity's discretion, either a public entity shall pay for an employee's defense by an attorney accepted by the employee and the Attorney General or his designee, or the public entity shall defend the employee." 7 CMC § 2304(a).

[18] *Rev. Code Wash.* (ARCW) § 4.92.060 reads:
  Whenever an action or proceeding for damages shall be instituted against any state officer, including state elected officials, employee, volunteer, or foster parent licensed in accordance with chapter 74.15 RCW, arising from acts or omissions while performing, or in good faith purporting to perform, official duties, or, in the case of a foster parent, arising from the good faith provision of foster care services, such officer, employee, volunteer, or foster parent may request the attorney general to authorize the defense of

18

¶47   Faced with a variety of options, the Commonwealth Legislature chose the more restrictive route, requiring the request to be not only in writing, but tendered at least five days before an answer to the complaint must be filed. 7 CMC § 2304(a)(4). In this case, we will not presume accomplished that which the legislature has explicitly and emphatically required.

        b.    It is unclear whether California law would recognize the presumption in a case such as this.

¶48   Bisom points to a California case, *Sinclair v. Arnebergh*, 36 Cal.Rptr. 810 (App. 1964) which states, "[p]resumptions that official duty has been regularly performed, that requests for representation were made and that police officers represented were acting within the scope of their employment are justified." *Id.* at 811-12 (citing *White v. Towers*, 37 Cal.2d 727, 235 P.2d 209). Although it has been cited by California courts, it has never been cited for the proposition that one may presume that requests for indemnification were made in an action similar to Bisom's.

¶49   *Sinclair* is distinguishable from the case at bar. In *Sinclair*, a taxpayer filed suit, alleging that the city attorney's representation of city policemen in civil tort actions was *ultra vires*. The Court of Appeals held that, in an action such as this, the court is not required to accept general allegations in the complaint as true. *Id.* at 811 ("[A]n examination of the complaint shows the allegations to be general and conclusionary and

---

said action or proceeding at the expense of the state.

[19] Cal. Gov't Code § 825(a) reads, in pertinent part:
Except as otherwise provided in this section, if an employee or former employee of a public entity requests the public entity to defend him or her against any claim or action against him or her for an injury arising out of an act or omission occurring within the scope of his or her employment as an employee of the public entity and the request is made in writing not less than 10 days before the day of trial, and the employee or former employee reasonably cooperates in good faith in the defense of the claim or action, the public entity shall pay any judgment based thereon or any compromise or settlement of the claim or action to which the public entity has agreed.

the complaint should have been amended, if possible."). Consequently, when a taxpayer sues to enjoin a public official from performing his duties, allegations must be pled with specificity.

¶50　　This reading of *Sinclair* and cases discussing Cal.Gov't Code § 825(a) which require the employee to request a defense *See DeGrassi v. City of Glendora*, 207 F.3d 636, 641 (9th Cir. 2000) ("Under this section, given a proper request by the employee and her good faith cooperation in the defense of a claim based on conduct occurring within the scope of employment, the City must indemnify the employee against any judgment or the cost of a settlement to which it has agreed."); *Johnson v. State*, 447 P.2d 352, 359 (Cal. 1968) ("[Section 825] provides for defense by the public entity upon notice, and the employee's best interests clearly favor the giving of such notice."), coupled with the general principle that "[n]ormally, in an indemnification action, the burden falls upon the indemnitee to prove all elements of his claim"[20] *Harris v. Howard Univ., Inc.*, 28 F. Supp. 2d 1, 15 (D.DC. 1998), we believe it doubtful that a court in California would apply the *Sinclair* presumptions to a situation such as Bisom's.

¶51　　Without regard to our belief that California law does not recognize the presumption in the manner asserted by Bisom, the fact remains that the Commonwealth does not recognize the presumption in a case such as this. *See supra*, ¶¶ 44-47.

    c. The trial court's finding that Bradshaw did not properly request a defense or indemnification is not clearly erroneous.

¶52　　With no presumption available to Bisom, his claim that the trial court improperly considered the evidence is easily dismissed. Bisom points to the numerous times the

---

[20] In this instance, Bisom is not an indemnitee. *See supra*, ¶34. Assuming *arguendo*, that Bradshaw did request a defense and indemnification, he would be the indemnitee. It follows that a person claiming indemnification through the indemnitee should have at least the same burdens as the indemnitee.

Attorney General's Office represented Bradshaw in the case as evidence that Bradshaw did, in fact, request a defense. Also before the trial court was the fact that the Attorney General's Office allowed a default judgment to be taken against Bradshaw. This fact alone[21] permits an equally persuasive inference that Bradshaw had not, in fact, requested a defense. The trial court's determination that Bradshaw did not request a defense was not clearly erroneous.

### 3. Bisom improperly sought indemnification determinations.

¶53   Bisom further argues that (1) he properly sought determinations pursuant to 7 CMC § 2304(d) as his suit against Bradshaw was of the type contemplated by PELDIA, (2) his request for indemnification determinations was timely pursuant to statute, and (3) he had standing to request the determinations. We need not address these issues.

¶54   Before the government is obligated to defend and indemnify an employee, an employee must request in writing, at least five days before an answer to the complaint must be filed, that the government pay for his defense or to defend him. 7 CMC §§ 2304(a)(1), (4). The trial court determined that this did not occur, and we will not disturb a factual determination made by the trial court unless, "after reviewing all the evidence, we are left with a firm and definite conviction that a mistake has been made." *Camacho v. L&T Int'l Corp.*, 4 N.M.I. 323, 325 (1996). Consequently, the determinations Bisom sought were superfluous, as the government had no duty to defend or indemnify Bradshaw. The trial court was under no obligation to make the determinations Bisom requested.

---

[21] At oral argument, the Attorney General's Office pointed to the answer filed by the other defendants, which excluded a defense for Bradshaw. See Appellant's E.R. 23-27.

21

    4. It can not be said that a conflict of interest exists between the Attorney General's Office and Bradshaw.

¶55  The Model Rules of Professional Conduct are applicable in the Commonwealth through Com. Dis. R. 2. *Hwang Jae Corp. v. Marianas Trading & Dev. Corp.*, 4 N.M.I. 142, 146 n.13 (1994). Bisom argues that MRPC 1.9(a) bars the Attorney General's Office from opposing indemnification. MRPC 1.9(a) reads: "A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation."

¶56  Bisom notes that the trial court determined that the Attorney General's Office had, in fact, represented Bradshaw in the matter. In its briefs, the Attorney General's Office concedes it represented Bradshaw, calling the representation "mistaken." In its defense, the government argues that "the unilateral and mistaken actions of an attorney" can not "create an attorney-client relationship with one who does not seek such a relationship."

¶57  We need not determine whether the mistaken actions of an attorney can create an attorney-client relationship, for even if they could, we could not say that the government violated MRPC 1.9(a).[22] As there has been no showing that Bradshaw requested a defense or indemnification, it can not be said that Bradshaw wants indemnification. Thus, the Attorney General's argument against indemnification is not necessarily contrary to Bradshaw's interests, as we have absolutely no way of knowing what

---

[22] This is not to say that the Attorney General's Office did not violate any ethical rules in this action. While we, of course focus on Rule 1.9 because it deals with alleged unethical conduct while a case was pending before us, a violation of the other rules is best handled by the CNMI Bar Disciplinary Committee. We are exceptionally curious to learn how an attorney can mistakenly represent a client while "keeping a client reasonably informed about the status of the matter" pursuant to MRPC 1.4(a).

Bradshaw desires.[23] It can not be said that the Attorney General's Office violated MRCP 1.9(a) by arguing against indemnification.

## CONCLUSION

¶58    The judgment is in all respects AFFIRMED. Appellant is ordered to pay $100.00 on or before October 15, 2002 for violating Com. R. App. P. 28 (I).

SO ORDERED this 13th day of September, 2002.

/s/ John A. Manglona
JOHN A. MANGLONA, ASSOCIATE JUSTICE

/s/ Pedro M. Atalig
PEDRO M. ATALIG, JUSTICE PRO TEMPORE

/s/ Timothy H. Bellas
TIMOTHY H. BELLAS, JUSTICE PRO TEMPORE

---

[23] While we realize that, in most instances, a person would desire indemnification, we can think of many reasons why a person would not.

# EXHIBIT C

CLERK OF COURT
SUPERIOR COURT

2005 DEC 29 PM 3: 45

BY _____

**For Publication**

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| ROBERT A. BISOM, | CIVIL ACTION NO. 96-1320 |
|---|---|
| Plaintiff, | |
| v. | |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ET AL., | ORDER GRANTING ROBERT BRADSHAW'S MOTION TO VACATE JUDGMENT |
| Defendants. | |

This matter was last before the Court on October 11, 2005. Defendant Robert Bradshaw ("Bradshaw"), acting pro se, made an appearance by telephone. James Livingston, Assistant Attorney General, appeared on behalf of the Office of the Attorney General ("AG") of the Commonwealth. Plaintiff Robert Bisom ("Bisom") acting through Counsel Jay Sorensen ("Sorensen"), filed a brief opposing Bradshaw's motion. The issue before the Court is the voidability of the February 7, 2005 default judgment against Bradshaw in the Superior Court on grounds of improper personal service or fraud. Having considered the arguments and briefs, the Court is prepared to rule.

I. FACTUAL AND PROCEDURAL BACKGROUND

The following timeline summarizes a decade of litigation in this case:

November 14, 1995. Bisom sues the AG, et al. in the district court for the Northern Marianas.

[handwritten margin note: AG-Civil/ Mailed to Bradshaw]

ENTERED
DATE: _____

1

November 6, 1996. The district court dismisses Bisom's claims for lack of jurisdiction.

December 5, 1996. Bisom files his original complaint against the same defendants in the Superior Court.

December 6, 1996. Assistant Attorney General Doug Cotton sends a letter to Bradshaw, notifying him that a complaint has been filed.

December 24, 1996. Sorensen sends a letter to Cotton asking if the AG will accept service on behalf of Bradshaw.

December 31, 1996. Defendants remove the case to federal court.

January 22, 1997. Cotton sends a letter to Bradshaw, inquiring as to whether Bradshaw wants to have the AG accept service on behalf of Bradshaw.

Late 1996 or early 97. This is the time frame in which Bradshaw claims to have received two large unlabeled packages from Saipan. *See* Answer to Plaintiff's Opposition to Vacate at 5.

January 31, 1997. Bradshaw sends a letter to Cotton saying that Bradshaw has not been served and that he will not authorize the AG to accept service on his behalf.

March 1997. The district court dismisses Bisom's federal claims and remands the rest to the Superior Court.

April 17, 1997. Cotton sends a letter to Bradshaw stating that Cotton told Sorensen that the AG would not accept service for Bradshaw.

May 1, 1997. Bisom files his First Amended Complaint in the Superior Court.

May 5, 1997. According to Sorensen's copy of the returned, canceled envelope marked "unclaimed" and bearing the number Z 142 485 879, this is the first date of attempted service on Bradshaw by certified mail. It is also the date that Cotton files receipt of acknowledgement of

2

receiving the summons on behalf of the CMNI and Defendant Scott Tan. Cotton does not file an acknowledgement on behalf of Bradshaw.

May 9, 1997. The AG files a Motion for a More Definite Statement pursuant to Com. R. Civ. P. 12(e), and a Motion to Dismiss pursuant to Com. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(6). Bradshaw's name is included in the pleadings.

May 30, 1997. Bisom files his Second Amended Complaint in the Superior Court.

June 2, 1997. Cotton sends a letter to Bradshaw stating that the AG will not accept service on Bradshaw's behalf. The letter states that the AG had filed a motion to dismiss, but that the motion was not litigated, as Bisom agreed to file a Second Amended Complaint.

June 2, 1997. Bradshaw sends a letter to Cotton saying Bradshaw had not been served and that he would not authorize the AG to accept service on his behalf. Bradshaw admits in the letter that there was unclaimed letter from Sorensen, addressed to Bradshaw and languishing at his local post office.

June 4, 1997. Bisom files a certificate of service to certify mailing the second amended complaint to Bradshaw at his Washington address.

June 9, 1997. According to Sorensen's copy of the returned, canceled envelope marked "unclaimed" and bearing the number Z 142 485 883, this is the second date that Bisom attempts to serve Bradshaw by mail (this time with the second amended complaint).

June 30, 1997. The Court's records reflect that proof of service was filed on this date. The Court has a copy of two return receipts signed by "Manny." Number Z 142 485 879 is dated June 4, 1997, as opposed to the May 5, 1997 date on the returned, unclaimed envelope. Number Z 142 485 883 is dated July 2, 1997, as opposed to the June 9, 1997 date on the returned, unclaimed envelope. In sworn affidavits, Bradshaw, his postal carrier David Vanderholm, and his neighbor Carol

3

Dassow attest that Bradshaw picked up his own mail, did not authorize anyone else to pick up his mail, and lived alone. No one could determine the identity of "Manny."

December 11, 1997. Cotton filed notice of substitution of party in Superior Court. Leo Lamotte, the Public Auditor, is substituted for Bradshaw and Tan in their official capacities. Bradshaw and Tan continue to remain in the case in their individual capacities.

December 24, 1997. Bisom files his Third Amended Complaint in the Superior Court, which defendants remove.

May 6, 1998. The district court dismisses the federal claim and remands the Commonwealth claims.

November 6, 1998. The Superior Court denies defendants' motion to dismiss.

November 18, 1998. Bisom, with leave from the AG, files his Fourth Amended Complaint in the Superior Court.

March 30, 1999. The AG files an answer on behalf of the CMNI and Scott Tan, but not Bradshaw.

June 30 1999. Assistant Attorney General Bush sends Bradshaw a letter asking if Bradshaw still wants the AG to represent him, and inquiring whether Bradshaw had ever been served.

July 14, 1999. Bradshaw sends Bush a letter suggesting that proof of service was fraudulent. The letter provides an ambivalent response to Bush's question of whether the AG should continue to represent Bradshaw, and expresses a (mistaken) understanding that the AG will act to remove Bradshaw's name from the lawsuit.

August 27, 1999. Sorensen sends Assistant Attorney General David Sosebee a letter, stating that "Enclosed are copies of the Certificate of Service that show service by certified mail on [Bradshaw] on two occasions. We also have the return receipt cards."

4

August 30, 1999. In the AG's Response to Plaintiff's Motion for Partial Summary Judgment, the AG states that, "Defendant Robert D. Bradshaw, sued in his individual capacity, has not been served with summons in this case and has not appeared or answered in this case and is therefore not before this court for the purposes of this motion and response."

September 3, 1999. Plaintiff's Reply to Opposition to Motion for Partial Summary Judgment at 8 states that proof of service on Bradshaw was filed on May 6, 1997 and again on June 3, 1997, and that these were provided to defendants' counsel at the special request by letter on August 27, 1999.

February 22, 2000 (retroactive February 7, 2000). The Superior Court denies defendants' motion to remove the case from the trial docket on grounds of the lack of service on Bradshaw.

February 14, 2000. The Superior Court enters default judgment against Bradshaw.

March 9, 2000. The AG files an objection to Bisom's request for indemnification of Bradshaw on grounds that Bradshaw had never requested indemnification from the AG.

June 7, 2000. The Superior Court awards Bisom $139,000 against Bradshaw and $110,300 against the CMNI. The Court finds that the AG is not liable for indemnification under the Public Employees Legal Defense and Indemnification Act, 7 CMC § 2304.

April 10, 2000. Both parties appeal, although the AG later abandons its appeal.

July 15, 2000. Bradshaw sends a letter to the AG's office stating that he had not heard from them in a year, reiterating his impression that the AG would remove his name from the case, and stating that he had never been served, and that he would not authorize the AG to accept service on his behalf. Bradshaw received no response to this letter.

September 13, 2002. The Supreme Court issues a decision denying Plaintiff's appeal.

1. April 2004. Bradshaw calls the AG's office to ask about the case. The Assistant Attorney
2. General Ed Buckingham notifies Bradshaw in an April 6, 2004 letter of the outcome of the Superior
3. Court and Supreme Court judgments.
4. August 2004. Bradshaw contacts Tom Schweiger, director of Micronesian Legal Services
5. Corporation to find out about entry of default judgment against him. He begins making phone calls
6. to the AG's office.
7. September 12, 2004. Bradshaw asks the AG to investigate potentially fraudulent return
8. receipts in connection with service. Bradshaw understands that Buckingham has seen the return
9. receipts.
10. October 7, 2004. Assistant Attorney General Joseph Race sends a letter to Bradshaw
11. informing him that the AG referred the case to AG investigators Frank Kapileo and Alfred
12. Teregeyo.
13. October 20, 2004. Bradshaw talks to Kapileo and understands that Kapileo saw the return
14. receipts in the case file.
15. January 2005. Bradshaw talks to Race and understands that case is still being investigated.
16. Bradshaw talks to Teregeyo and understands that Kapileo removed the postal receipts from the file
17. and was taking them to the Saipan Postmaster.
18. February 15, 2005. AG Pamela Brown sends a letter to Bradshaw informing him that there is
19. still a judgment against Bradshaw, and that the AG does not represent Bradshaw. This is the first
20. time the AG informs Bradshaw that there is no attorney-client relationship.
21. March 2, 2005. Pursuant to Com. R. Civ. P. 60, Bradshaw files a motion in the Superior
22. Court to void the $139,000 judgment against him.

6

## II. ANALYSIS

### A. Bradshaw's claim to void the CMNI judgment under Com. R. Civ. P. 60 is timely.

Four years passed between the time of the default judgment against Bradshaw and the time Bradshaw filed the instant action. Bradshaw claims that he did not discover the judgment against him for three years because he was under the (mistaken) impression that the AG had removed his name from the case. His reply to Plaintiff's Opposition to Vacate at 7 states that "after three years, four amended complaints and several Bisom motions, Bradshaw came to believe that the AG had removed his name or that Bisom chose not to serve Bradshaw."

Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, misrepresentation, or other misconduct of an adverse party; where it is no longer equitable that the judgment should have prospective application; or for any other reason justifying relief from the operation of the judgment. The statute of limitations for bringing a motion for relief from a judgment is one year, when the basis for relief is newly discovered evidence or fraud by one of the parties. *Id.* However, the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant *not actually personally notified as provided by law*, or to set aside a judgment for fraud upon the court." *Id.* (emphasis added).

Bradshaw seeks to vacate the judgment on grounds of lack of notice and fraud upon the court. Thus, even if more than a year has passed since the Feb 7, 2000 default judgment against Bradshaw, Rule 60 does not limit the Court's ability to grant relief.

### B. The CMNI judgment against Bradshaw is voidable for improper personal service.

In determining whether improper service can void the judgment, the Court has considered (1) whether the complaint and summons mailed to Bradshaw by certified mail constituted service or

7

constructive service; (2) whether the service of the complaint and summons on the AG constituted service on Bradshaw; and (3) whether Bradshaw or the AG waived the right to contest service.

In Plaintiff's February 16, 2000 Supplemental Declaration in Support of Request for Entry of Default at 2, Bisom states that the "Amended and Supplemental Complaint and Summons was served to the defendant on May 5, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra." The third paragraph states that a copy of the second amended complaint was served in the same manner on June 3, 1997. The fourth amended complaint was served on only on the AG on November 20, 1998. The validity of the judgment depends on whether Bradshaw was properly served by mail with the initial complaint, whether the November 20, 1998 service of the final complaint on the AG was sufficient, or whether Bradshaw waived service.

1. **The two certified mailings to Bradshaw in 1997 did not constitute service.**

   a. <u>Certified mail, sent without a court order, did not conform to 1996 Commonwealth Rules of Civil Procedure or the Washington State Rules of Civil Procedure.</u>

Com. R. Civ. P. 4(e) provides that service may be effected by any manner authorized by CMNI law, or "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

Com. R. Civ. P. 4(k) provides for service beyond the territorial limits of CMNI "when not prohibited by law." Since Bradshaw was a resident of the State of Washington at the time of

8

service, the form of service would have to conform to Washington law.[1] Washington Superior Court Civil Rule 4(c) states: "Service of summons and process, except when service is by publication, shall be by the sheriff of the court wherein the service is made, or by his deputy, or by any person over 18 years of age who is competent to be a witness in the action, other than a party."

The only circumstance under which service can be made by mail upon a Washington resident is as follows:

> In circumstances justifying service by publication, if the serving party files an affidavit stating facts from which the court determines that service by mail is just as likely to give actual notice as service by publication, the court may order that service be made by any person over 18 years of age, who is competent to be a witness, other than a party, by mailing copies of the summons and other process to the party to be served at his last known address or any other address determined by the court to be appropriate. Two copies shall be mailed, postage prepaid, one by ordinary first class mail and the other by a form of mail requiring a signed receipt showing when and to whom it was delivered. The envelopes must bear the return address of the sender. The summons shall contain the date it was deposited in the mail and shall require the defendant to appear and answer the complaint within 90 days from the date of mailing. Service under this subsection has the same jurisdictional effect as service by publication.

Washington Superior Court Civil Rule 4(d).

Bisom did not pursue any of the means of service provided under Washington law. Although he sent Bradshaw two certified mailings, the mailings were not pursuant to a court order as Washington law requires. Thus, the two mailings that plaintiff sent did not constitute service.[2]

---

[1] The situation does not require a conflict of law analysis, as the laws governing service of process in the two interested jurisdictions, CMNI and Washington, were not at odds. The laws of both jurisdictions could be respected by the application of the Washington rule.

[2] Bradshaw has also raised the argument that service was untimely. In his Third Amended Answer to Plaintiff's Opposition to Vacate, he notes that the certified mail sent to him in May and June of 1997 would have arrived more than 120 days after the filing of Bisom's original complaint on December 5, 1997. In 1997, Com. R. Civ. P. 4(m) allowed a plaintiff 120 days in which to serve the defendant. While it appears that service would have been untimely, the Court need not consider this claim since Bisom's mailings in May and June 1997 did not constitute service.

9

b.  **The fact that Bradshaw purposefully avoided mail service is irrelevant.**

Judge Castro's February 22, 2000 ruling denying Defendant's motion to remove the case from the trial docket suggests both that Bradshaw was served and that he avoided service. Paragraph 2 states: "Defendant Robert D. Bradshaw was properly served by mail, return receipt requested but purposefully avoided service."[3]

Bradshaw clearly was avoiding service. His July 14, 1999 letter to Cotton states: "I moved in 1996 and was sure Bisom didn't have my new address (to serve me if he chose)." In a June 2, 1997 letter to Cotton, he states, "I had a certified letter from Sorenson at the Post Office which was unclaimed by me and returned to him. He should have it returned by now so I suspect he will have to hire a process server which I guess he will." His July 15, 2000 letter to the AG exclaims, "Bisom will have to serve me personally if he wants to pursue this case with me!"

As discussed above, the only lawful means of service under CNMI and Washington law were (1) personal service, (2) service by publication, and (3) service by mail pursuant to a court order. None of these means were used. It is irrelevant whether Bradshaw purposefully avoided a form of service that was impermissible. There is no evidence that Bradshaw avoided the legal forms of service. Bradshaw's answer to Plaintiff's Opposition to Vacate at 7 states that he "operated a business which was open routinely to the public. He could have been served daily and he anticipated that indeed he would be served."

Even if Bradshaw could have been served by mail, his avoidance of service could not have been deemed "constructive service." While many state courts have deemed service to be valid

---

[3]  As the ruling does not rely on the return receipts signed by "Manny," this portion of the Court's evaluation will focus only on whether any avoidance on Bradshaw's part may be deemed "constructive service."

10