1. where there is proof that the papers were actually sent to and received by the defendant,[4] federal courts interpreting mail service under Rule 4(c)(2)(C)(ii) have held that actual knowledge of the law suit does not substitute for proper service of process.[5] CNMI courts consider the interpretation of counterpart federal rules to be highly persuasive in interpreting Commonwealth procedural rules. *Tudela v. Marianas Pub. Land Corp.*, 1 N.M.I. 179, 184 (MP 1990).

   2. **The AG's appearance in court did not waive the requirement to serve Bradshaw.**

   Judge Castro's February 22, 2000 ruling denying defendant's motion to remove the case from the trial docket states in P. 4: "Defendant, Robert D. Bradshaw, has waived any potential challenge to insufficiency of service of process by his previously bringing a motion to dismiss without joining such motion." This result depends on the understandable presumption that, when the

---

[4] See *Massengill v. Campbell*, 391 F.2d 233, 235 (5th Cir.1968); *Fields v. Turlington*, 481 So.2d 960, 962 (Fla.App.1986); *Decca Leasing Corp. v. Torres*, 465 So.2d 910, 914 (La.App.1985), *cert. denied*, 468 So.2d 1211 (1985); *State of California Dept. of Forestry v. Terry*, 124 Cal.App.3d 140, 177 Cal.Rptr. 92, 95 (1981); *Hankla v. Roseland School Dist.*, 46 Cal.App.3d 644, 120 Cal.Rptr. 827, 834 (1975); *Patel v. Southern Brokers, Ltd.*, 289 S.E.2d 642, 644 (S.C. 1982); *McIntee v. State Dept. of Pub. Safety*, 279 N.W.2d 817, 820 (Minn.1979); *Merriott v. Whitsell*, 251 Ark. 1031, 476 S.W.2d 230, 232 (1972); *Thomas Organ Co. v. Universal Music Co.*, 261 So.2d 323, 327 (La.App.1972); *Schaaf v. Brown*, 200 S.W.2d 909, 910 (Ky. 1947). This is not true of the State of Washington, however. Revised Code of Washington (4.28.80) has a case note which reads: "Failing to come to door to receive service of process does not constitute evasion of service; those who are to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. *Weiss v. Glemp*, 127 Wash. 2d 726, 903 P 2d 455 (1955)."

In a more recent case, a court found that a defendant's purposeful concealment from a process server (who staked out defendant's apartment for weeks before finally catching him getting his mail) allowed the plaintiff to exclude the period of concealment from the period of the statute of limitations. *Wilson v. Williams*, 111 Wash. App. 1055, 1055 (2002). However, the court maintained, "Simply failing to open the door, even if done repeatedly, may not be sufficient to demonstrate willful evasion of process." *Id.*

[5] See, e.g., *United States v. Gluklick*, 801 F.2d 834, 836 (6th Cir.1986) ("The courts, consistent with the legislative history, have held that the defendant's failure to acknowledge service renders such service invalid"); *Geiger v. Allen*, 850 F.2d 330, 332 n. 3 (7th Cir.1988) ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court."); *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 57-58 (3rd Cir.1986); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1088-89 (4th Cir.1984).

This Court pays special attention to the position of the Ninth Circuit, which, like the other circuits, does not recognize "constructive service." See *Higgins v. Hames*, 46 F.3d 1141, 1142 (9th Cir. 1995) ("Service fails unless the defendant timely returns the signed acknowledgment form. . . . If the defendant does not return the acknowledgment, the rule provides that other methods of service must be employed."); *Ghana v. Roberts*, 19 F.3d 1440, 1440 (9th Cir. 1994) (*same*).

11

AG filed motions using Bradshaw's name, the AG was representing Bradshaw.[6] However, the statements and conduct of both Bradshaw and the AG (as well the June 7, 2000 Superior Court ruling) belie this presumption.

Although formalities are typically unnecessary for the formation of an attorney-client relationship, 10 WILLISTON ON CONTRACTS (3d ed.) § 1285, there must be at least an implied agreement between the parties. *See United States v. Costanzo*, 625 F2d 465 (3d Cir. 1980), *Houston General Ins. Co. v. Superior Court of Alameda County*, 166 Cal. Rptr. 904 (Cal. App. 1980); *George v Caton*, 600 P.2d. 822 (NM App.1979); *Stormon v. Weiss*, 65 N.W.2d. 475 (ND 1954). While initially, Bradshaw and the AG seem to have been fumbling towards an attorney-client relationship, the relationship was never consummated. After Assistant Attorney General Cotton's June 2, 1997 letter informing Bradshaw that the AG had filed a motion to dismiss, but that the motion was not litigated, the AG did not communicate with Bradshaw for two years. Bradshaw appears to have been clueless as to the course of litigation, outside of the initial proceedings in federal court. Bradshaw's Answer to Plaintiff's Opposition to Vacate Judgment at 3-5, as well as his July 14, 1999 and June 15, 2000 letters, convey his impression that he was no longer a party to the lawsuit in the Superior Court.

The last communication that Bradshaw received from the AG (prior to the communications in 2004) was the June 30, 1999 letter from Assistant Attorney General Bush. Bush inquired as to whether Bradshaw wanted the AG to represent him, and whether Bradshaw had ever been served.

---

[6] Under Com. R. Civ. P. 12(h)(1), the defense of insufficiency of process is waived if omitted from a motion made pursuant to Rule 12. The defense must be raised in the first responsive pleading made during the time period in which the defense is available. If not made then, the only remedy is to amend the first responsive pleading according to Co. R. Civ. P. 15 (a). Com. R. Civ. P. 12(h)(1). *See also Kersh v. Derozier*, 851 F.2d 1509, 1511 (5th Cir. 1988). On May 9, 1997, the AG filed motions pursuant to Rule 12(b)(2), 12(b)(4), 12(b)(6), and 12(e) on behalf of all defendants, including Bradshaw. Rule 12(b)(5), allowing dismissal for insufficiency of service of process, was not raised.

12

Bradshaw's July 14, 1999 response appears to have been the basis for the AG's abandonment of any interest in Bradshaw:

> Should you represent me further? Again I don't think I am a party to that CMNI case and if that is true, the answer is no (if the answer is yes then of course I would need representation) . . .your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me.

The AG's pleadings filed after this letter do not include Bradshaw's name among those represented by the AG. In its Motion to Remove Case from Jury Trial Docket at 4, the AG states, "The fact that a pleading was filed containing the name of Mr. Bradshaw does not make it a filing by him. Where the pleading was filed without his knowledge or consent it could not be attributed to him." In its opposition to Plaintiff's Motion for Indemnification Determinations Pursuant to 7 CMC §2304 at 4, the AG states: "Mr. Bradshaw has not authorized any such filings on his behalf and has not requested the Office of the Attorney General to represent him it [sic] this matter. . . Any actions taken by the Office of the Attorney General were done by mistake and without the knowledge or ratification by Mr. Bradshaw."

The AG's failure to follow the basic duties of an attorney towards a client provides further support for the notion that the relationship was never truly established. For instance, Rule 1.3 of the American Bar Association's Model Rules of Professional Conduct[7] requires a lawyer to "keep the client reasonably informed about the status of the matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Surely, had the AG been representing Bradshaw, it would have corrected Bradshaw's understanding (as expressed in the July 14, 1999 letter) that the AG had or would remove him from the suit.

---

[7] Rule 2 of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth provides that the Model Rules are applicable in the Commonwealth.

Further, the AG would not have blatantly violated Rule 1.16(b) by withdrawing in a manner that had a seriously adverse impact on Bradshaw: a default judgment.

Finally, Judge Castro's June 7, 2000 ruling on indemnification seems to follow the AG's reasoning: "The Court finds no evidence that Bradshaw made a request to the public entity to be indemnified pursuant to 7 CMC §2304." Whether Bradshaw failed to make a timely request for indemnification or whether he did not do so because he was never served is irrelevant to the question of the attorney-client relationship. The result is that the AG is deemed to have never represented Bradshaw. As such, the AG could not waive service through its appearance.

3.  **Service of the complaint and summons on the AG did not constitute service on Bradshaw.**

Com. R. Civ. P. 5(a-b) allows "every pleading *subsequent* to the original complaint" to be served upon the attorney of record unless service upon the party is ordered by the court. (Emphasis added). Had the original complaint been properly served on Bradshaw, and, had the AG been the attorney of record in the Superior Court case, service of subsequent pleadings on the AG would have been permissible. However, as discussed above, the original complaint was never served on Bradshaw. Further, the AG was not the attorney of record.

Even if the AG had been Bradshaw's attorney, service on the AG against the express wishes of Bradshaw would have been improper. While an attorney has implied authority to make stipulations and decisions in the management or prosecution of an action, a decision that operates as a surrender of a substantial right of the client will ordinarily not be upheld. *State v. Barley*, 81 S.E.2d 772, 773 (N.C. 1954). Bradshaw had a right, under CNMI and Washington law, to require plaintiff to serve him personally rather than through the AG. This was communicated to Bisom's lawyer by both Bradshaw and the AG. Plaintiff's failure to follow these laws should not be sanctioned by a default judgment in his favor.

14

C. **The fraud alleged does not void the CMNI judgment.**

In determining whether the judgment can be voided on grounds of fraud, the Court has considered (1) whether the actions alleged amounted to fraud; and whether (2) said actions affected the outcome of the judgment.

The documents which Bradshaw alleges to be fraudulent are the two return receipts signed by "Manny." It is clear to the Court that there is a gross inconsistency between the unclaimed packages returned to Sorensen and the return receipts accepted by "Manny," which bear the same certified mail numbers. Either the "Manny" return receipts are invalid, or the copy of the unclaimed envelope bearing Sorensen's address is invalid. Both, however, appear in Bisom's various motions as proof of service.

In his Reply to the Opposition to vacate the judgment, Bradshaw argues that both sets of documents are false. He disavows the existence of Manny and claims that the packages sent by Sorensen were unlabeled. However, in Bradshaw's June 2, 1997 letter to Cotton, he acknowledges that he purposefully failed to claim a package from Sorensen. Thus, the likely candidate for fraud is the set of return receipts signed by "Manny."

A misrepresentation is fraudulent if the actor: (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (3) knows that he does not have the basis for his representation that he states or implies. *Ada v. Sadhwani's, Inc.*, 3 N.M.I. 303, 313 (MP 1992) citing REST. (2D) TORTS § 526 (1977). Regardless of who "Manny" is, if he is not the authorized representative of Bradshaw, and plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record, then it is possible that fraud occurred.

15

However, it does not appear that the "Manny" return receipts were the basis for the Court's finding that Bradshaw had been constructively served. These returns were not mentioned in either the February 22, 2000 judgment (retroactive February 7, 2000) or the June 7, 2000 judgment. There is no order on record that even acknowledges the return receipts. Thus, while the evidence of mail fraud warrants a separate criminal investigation, it has no bearing on the outcome of this case. Although Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, Bradshaw has not shown that the judgment was grounded in fraud.

### III. CONCLUSION

Bradshaw's motion to vacate the default judgment against him for $139,000 is GRANTED, as this Court finds that Bradshaw was never properly served.

SO ORDERED this 29th day of December 2005.

Juan T. Lizama
Associate Judge, Superior Court

16

# EXHIBIT D

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

ROBERT D. BRADSHAW, )
)
Plaintiff, ) Case No. CV05-84-N-EJL
)
vs. ) MEMORANDUM ORDER
)
COMMONWEALTH OF THE NORTHERN )
MARIANA ISLANDS, et al., )
)
Defendants. )
_____)

Pending before the Court in the above-entitled matter are Defendants' motions to dismiss for lack of jurisdiction (Docket Nos. 21, 26, and 29) as well as Plaintiff's motions to seal and strike (Docket Nos. 33 and 36) and Plaintiff's motion to extend the service time and allow service by publication (Docket No. 51). Defendants' move to dismiss case for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2) and in the alternative for improper venue and insufficiency of service of process on certain Defendants. Defendants contend this Court is without personal jurisdiction over them as Defendants have insufficient contacts with Idaho. Plaintiff argues jurisdiction is proper in Idaho and nationwide service of process is appropriate in this case.

Having fully reviewed the record, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this matter shall be decided on the record before this Court without oral argument.

## FACTUAL BACKGROUND

Plaintiff Robert Bradshaw ("Bradshaw") is a former Temporary Public Auditor for the Commonwealth of Northern Mariana Islands ("CNMI"). He filed this action as a *pro se* litigant. Defendants are the CNMI, a former Acting Attorney General (Nicole Forelli) and three former

MEMORANDUM ORDER - Page 1
05ORDERS\Bradshaw_dis_05-84.WPD

CNMI Assistant Attorneys (William Bush, L. David Sosebee, and Andrew Clayton), two CNMI Supreme Court Justices (Alexandro Castro and John Manglona), a former CNMI Superior Court Judge and Supreme Court Justice (Timothy Bellas), a private attorney from the CNMI (Jay Sorensen), and a former employee of the CNMI government (Robert Bison) who was terminated from employment by Plaintiff during Bradshaw's tenure as Temporary Public Auditor.

Plaintiff's Second Amended Complaint (Docket No. 20) asserts eighteen claims under various federal statutes including criminal statutes, the Racketeer Influenced Corrupt Organizations ("RICO") Act, the Immigration Reform and Control Act and the CNMI's Indemnification Act. Bradshaw's claims arise from a civil lawsuit by Bison against Bradshaw. Bison's attorney was Sorensen. Bradshaw claims he instructed the Attorney General's office that he had not been personally served and they should deny any attempt of service on his behalf. A default judgment was entered against Plaintiff in favor of Bison on March 10, 2000. Bradshaw maintains Sorensen fraudulently served the complaint and that the court involved in the case improperly allowed defective service of process to support the default judgment as well as improperly denied indemnification under the CNMI Indemnification Act. Plaintiff also alleges the CNMI Supreme Court improperly upheld the denial of indemnification. Bradshaw also alleges the CNMI Attorney General unlawfully failed to protect Bradshaw's interests during the Bison litigation.

Bradshaw now resides in Idaho. None of the Defendants reside in Idaho. It is not disputed that Plaintiff did not personally serve Sorensen or Bison. Instead, Plaintiff had the complaint served on Jay Sorensen's sister, Cynthia Sorensen at a residence in which neither of these Defendants were residing.

## BURDEN OF PROOF

The Court's review of the motions to dismiss is undertaken with an eye on Ninth Circuit standards regarding *pro se* litigants. Tucker v. Carlson, 925 F.2d 330 (9th Cir. 1991). However, the Court reminds the Plaintiff that *pro se* litigants are held to same procedural rules as counseled litigants. King v. Atiyeh, 814 F.2d 565, 567 (9th Cir. 1987).

In a 12(b)(2) motion to dismiss the Plaintiff need only make a prima facie showing of facts supporting jurisdiction through its pleadings and affidavits to avoid dismissal. Glencore Grain

Rotterdam B.V. v. Shivnath Rai Harnarain Co., 284 F.3d 1114, 1119 (9th Cir. 2002) (citing Myers v. Bennett Law Offices, 238 F.3d 1068, 1071 (9th Cir. 2001)). The Court accepts as true Plaintiff's uncontroverted allegations, and resolves in its favor factual conflicts contained in the parties' filings. Id. Finally, if the allegations in the complaint are challenged by Defendants, the Plaintiff must prove specific facts supporting personal jurisdiction. Taylor v. Protland Paramount Corp., 383 F.2d 634, 639 (9th Cir. 1967).

## DISCUSSION

Personal jurisdiction over all parties is required before a court may decide a case in controversy. U.S. CONST. Amend. XIV. Before a court may properly exercise personal jurisdiction over a nonresident defendant it must be satisfied that two independent requirements have been met: first, that an applicable rule or statute affirmatively authorizes the assertion of personal jurisdiction over the defendant, and second, that the assertion of such jurisdiction "accords with constitutional principles of due process." Data Disc, Inc., 557 F.2d at 1285; Petrik v. Public Serv. Mut. Ins. Co., 879 F.2d 682, 684 (9th Cir. 1989). Although the two requirements are independent, they are often interrelated. For example, where federal subject matter jurisdiction is predicated on diversity, Rule 4 of the Federal Rules of Civil Procedure incorporates the state's long-arm statute as the authorizing source for service of process. In such a case, the defendant's amenability to suit in federal district court is limited by the state's rule or statute. Because a state's ability to authorize service of process is restricted by the due process clause to cases in which the defendant has certain minimum contacts with the state, a federal district court sitting in diversity will analyze the due process inquiry by assessing the defendant's contacts with the forum state. Neaves, 912 F.2d at 1065; Fields v. Sedgwick Associated Risks, Ltd., 796 F.2d 299, 301 (9th Cir. 1986).

In contrast, where the federal court's subject matter jurisdiction is predicated on a federal question and service is accomplished pursuant to a federal law authorizing nationwide or worldwide service of process, and not by reference to the state's long-arm statute, the court is no longer restricted by the due process limitations inherent to a state's authorization of service. Go-Video, Inc. v. Akai Elec. Co., Ltd., 885 F.2d 1406, 1414-15 (9th Cir. 1989); Securities Investor Protection Corp. v. Vigman, 764 F.2d 1309, 1315-16 (9th Cir. 1985). Under these circumstances, then, due

process concerns may be satisfied by a determination that the defendant has sufficient contacts with the United States as a whole. Go-Video, Inc., 885 F.2d at 1414-16; Vigman, 764 F.2d at 1315-16; Kramer Motors, Inc. v. British Leyland, Ltd., 628 F.2d 1175, 1177 (9th Cir.), cert. denied, 449 U.S. 1062 (1980).

In examining the facts of this case, the Court finds it lacks personal jurisdiction over the named Defendants regardless of the whether a state or federal statute is cited as a basis to create personal jurisdiction.

I. Idaho's Long Arm Statute Analysis

Two forms of personal jurisdiction exist: general and specific. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408 (1984). In order to exercise either type of personal jurisdiction, the state long-arm statute must be satisfied. See State of Idaho v. M.A. Hanna Co., 819 F. Supp. 1464 (D. Idaho 1993). In adopting Idaho Code § 5-514, the Idaho Legislature intended to exercise all the jurisdiction available to the State of Idaho under the due process clause of the United States Constitution. Houghland Farms, Inc. v. Johnson, 803 P.2d 978, 981 (Idaho 1990); see also Lake v. Lake, 817 F.2d 1416 (9th Cir. 1987) (determining federal cases provide guidance in determining whether personal jurisdiction exists). Thus, for the long arm statute to apply, the Court need only determine whether asserting personal jurisdiction complies with due process. M.A. Hanna Co., 819 F. Supp. 1464.

A. General Jurisdiction

General jurisdiction allows a defendant to be haled into court in a state where the defendant's contacts with that state are "substantial" or "continuous and systematic," even if the action is unrelated to those contacts. Bancroft & Masters, Inc. v. Augusta Nat. Inc., 223 F.3d 1082, 1086 (9th Cir. 2000). The defendant's contacts must approximate physical presence in the state to meet the "fairly high" standard for establishing general jurisdiction. Id. (citing Gates Learjet Corp. v. Jensen, 743 F. 2d 1325, 1331 (9th Cir. 1984)). Factors to consider in determining general jurisdiction include: "whether the defendant makes sales, solicits or engages in business in the state, serves the state's markets, designates an agent for service of process, holds a license, or is

incorporated there." Id. See also Hirsh v. Blue Cross, Blue Shield of Kansas City, 800 F. 2d 1474, 1478 (9th Cir. 1986).

None of the individually named Defendants has ever set foot in or transacted business in the State of Idaho. The Defendants have no direct business or governmental contact with Idaho. The Defendants do not solicit or engage in business in Idaho. Clearly, general jurisdiction is lacking as to each Defendant in this case and Plaintiff has not carried his burden to establish general jurisdiction.

### B. Specific Jurisdiction

When a state exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum, the State is exercising "specific jurisdiction" over the defendant. Helicopteros, 466 U.S. at 414 n. 8. Specific jurisdiction exists if a defendant has sufficient "minimum contacts" with the forum such that exercise of jurisdiction would not "offend the traditional notions of fair play and substantial justice." International Shoe Co. v. Washington, 326 U.S. 310, 316 (1945). In the Ninth Circuit, three conditions must be met in order to establish "minimum contacts": (1) the nonresident defendant must purposely direct its activities or consummate some transaction with the forum or a resident thereof, or perform some act by which it purposefully avails itself of the privilege of conducting activities within the forum; (2) the claim must arise or result from forum-related activities; and (3) the exercise of jurisdiction must be reasonable. Yahoo! Inc. v. La Ligue Le Racisme, 379 F.3d 1120, 1123 (9th Cir. 2004.)

#### 1. The nonresident defendant must purposefully conduct activities within the forum:

The connection between the defendant and the forum State required for a finding of minimum contacts must come about by an action of the defendant purposefully directed toward the forum State. Asahi Metal Industrial Co. v. Superior Ct., 480 U.S. 102, 112 (1987). This requirement ensures that a person is not hauled into court as the result of random, fortuitous, or attenuated contacts or on account of the unilateral activity of third parties. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985). Thus, the Court must examine whether Defendants' activities were directed purposefully toward the forum. Id. at 476. Purposeful availment "requires

MEMORANDUM ORDER - Page 5
05ORDERS\Bradshaw_dis_05-84.WPD

a finding that the defendant '[has] performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state.'" Doe v. Unocal Group, 248 F.3d 915, 923 (citing Sher v. Johnson, 911 F.2d 1357, 1362 (9th Cir. 1990) (quoting Sinatra v. National Enquirer, Inc., 854 F.2d 1191, 1195 (9th Cir. 1988)). However, " an individual's contract with an out-of-state party alone [cannot] automatically establish sufficient minimum contacts' to support personal jurisdiction." Id. (citing McGlinchy v. Shell Chemical Co., 845 F.2d 802, 816 n. 9 (9th Cir. 1988) (quoting Burger King, 471 U.S. at 478).

Incorporating the standards set forth in Burger King, the Ninth Circuit has expounded upon the requirements for purposeful availment, noting that purposeful direction of some act having effect in the forum constitutes sufficient contact to exert jurisdiction, and that a lesser showing of contacts with the forum may be sufficient if considerations of reasonableness so require. Doe, 248 F.3d at 923 (citing Haisten v. Grass Valley Medical Reimbursement Fund, LTD, 784 F.2d 1392, 1397 (9th Cir. 1986)). Thus, cases will arise in which the defendant has not purposefully directed its activities at the forum state, but has created sufficient contacts to allow the state to exercise personal jurisdiction where reasonable. Brand v. Menlove Dodge, 796 F.2d 1070, 1074 (9th Cir. 1986).

It is undisputed that the individual Defendants do not have "minimum contacts" with the State of Idaho. Accordingly, the Court finds the named Defendants have not purposefully directed activities in Idaho. While it appears an employee of the CNMI did originally contact Bradshaw regarding employment in CNMI, that person is not a party to this lawsuit and such limited contact with Idaho does not confer specific jurisdiction as to the government of CNMI or other governmental employees especially since the cause of action in this case is not related to the initial contact regarding Bradshaw's employment.

    2. The claim must arise out of or result from Defendant's forum-related activities:

The plaintiff's claims must arise out of the defendants' forum related activities. In making this determination, the Ninth Circuit has adopted a "but for" analysis. See Ballard v. Savage, 65

F.3d 1495, 1500 (citing <u>Shute v. Carnival Cruise Lines</u>, 897 F.2d 377, 381 (9th Cir. 1990), *rev'd on other grounds*, 499 U.S. 585 (1991)). Thus, specific personal jurisdiction is proper only where, "but for" Defendant's activities in Idaho, the Plaintiff's current alleged injuries would not have occurred. Again, it is undisputed that the current claims do not arise out of Defendants' forum related activities as the only Defendant that could be held to even have exercised Idaho activities is CNMI and this was discussed above as being insufficient to create specific jurisdiction over the named Defendants.

### 3. <u>The exercise of jurisdiction must be reasonable:</u>

The Court must also determine whether the exercise of jurisdiction is reasonable, looking at seven factors: the extent of defendant's purposeful injection into the forum state's affairs; the burden on the defendant in defending in the forum; the extent of conflict with sovereignty of the defendant's state; the interest of the forum state; the most efficient judicial resolution of the controversy; the importance of the forum to the plaintiff's interest in convenient and effective relief; and the availability of an alternative forum. <u>Dole Food Co. v. Watts</u>, 303 F.3d 1104, 1114 (9th Cir 2002). It is well established that in determining personal jurisdiction the court must focus primarily on "the relationship among the defendant, the forum, and the litigation." <u>Shaffer v. Heitner</u>, 433 U.S. 186, 204 (1977).

Based on the facts as alleged by Plaintiff, the Court finds there is nothing that can be considered "reasonable" in conferring specific jurisdiction in Idaho over these Defendants via the long-arm statute of the State of Idaho. Plaintiff argues the fact that his real property in Idaho may be subject to the default judgment entered by the court in CNMI should establish jurisdiction over the Defendants. The fact that Plaintiff resides in Idaho and may own property in Idaho establishes personal jurisdiction over Plaintiff, but it does nothing to establish personal jurisdiction over the named Defendants. The fact certain Defendants may, in the future, have contacts in Idaho does not make personal jurisdiction "reasonable" at the time the lawsuit was filed in this case.

MEMORANDUM ORDER - Page 7
05ORDERS\Bradshaw_dis_05-84.WPD

All three of the test for specific personal jurisdiction under Idaho's long-arm statute fail when applied to the record before this Court. Accordingly, Idaho's long-arm statute has not been satisfied to confer general or specific personal jurisdiction over the Defendants in this case.

II. Nationwide Service of Process

In the absence of authority to serve process using Idaho's lang-arm statute, Plaintiff argues he may seek such authority under a federal statute. Fed. R. Civ. P. 4(k)(1)(D). However, of the several federal statutes cited by Plaintiff in his Second Amended Complaint, only the RICO Act offers a nationwide service of process provision. 18 U.S.C. § 1965(b).[1]

Bradshaw alleges that the Defendants (except Bison and Sorenson) are liable under RICO as they conspired to deny his civil rights and his right to indemnification. Since Sorensen and Bison are not named in the RICO Act count of the Second Amended Complaint, nationwide service of process would not apply to these two Defendants. As to the CNMI Defendants (those connected or formerly connected to or employed by the government of CNMI), the Court finds the RICO Act claim set forth in the Second Amended Complaint is insufficient to confer personal jurisdiction over the CNMI Defendants.

Rule 4(k)(2) of the Federal Rules of Civil Procedure may apply when neither general nor specific jurisdiction can be established. If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state. Fed. R. Civ. P. 4(k)(2). There are, however, limits on the applicability of nationwide service of process under the RICO Act.

---

[1] 18 U.S.C. § 1965(b) provides:
In any action under section 1964, of this chapter in any district court of the United States in which it is shown that the ends of justice require that other parties residing in any other district be brought before the court, the court may cause such parties to be summoned, and process for that purpose may be served in any judicial district of the United States the marshal thereof.

MEMORANDUM ORDER - Page 8
05ORDERS\Bradshaw_dis_05-84.WPD

Merely alleging the CNMI Defendants' actions constituted a deprivation of Plaintiff's rights as a RICO claim is not sufficient to allow nationwide service of process. Bowen v. Oistead, 125 F.3d 800, 806 (9th Cir. 1997). The Ninth Circuit has held "[f]or nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multi district conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all the alleged co-conspirators." Butchers Union Local No. 498 v. SDC Inv., Inc., 788 F2d 535 (9th Cir. 1986). In this case, Plaintiff has not come forward with evidence to establish personal jurisdiction over any of the alleged CNMI co-conspirators and has not shown there is no other district in which a court could have personal jurisdiction over all the alleged co-conspirators. Therefore, Plaintiff has failed to establish the CNMI Defendants are amenable to service of process under the RICO Act.

As to any other federal statute cited in the Second Amended Complaint, the Court finds the Plaintiff has not carried his burden to establish that service would satisfy the constitutional concerns of fairness or reasonableness when the alleged improper actions took place in CNMI and not in Idaho and Plaintiff is the only party in Idaho. Defendants are not amenable to service of process in the District of Idaho nor could they reasonably expect that would have to defend litigation in Idaho.

## CONCLUSION

Plaintiff has not met his burden of proof to establish personal jurisdiction over the named Defendants. In examining the record in this matter, the exercise of personal jurisdiction over any of the Defendants would not be constitutional, reasonable or fair. There are no state or federal statutes that provide for the exercise of personal jurisdiction over any of the named Defendants as Plaintiff has not carried his burden to establish Idaho's long-arm statute applies or the RICO Act's nationwide service applies to confer personal jurisdiction. The other federal statutes alleged in the Second Amended Complaint do not provide for service that complies with the constitutional concerns of Fed. R. Civ. P. 4(k)(2). Having found no personal jurisdiction over any of the Defendants, the Court finds it would also be unfair and improper to allow service by publication where this Court has no personal jurisdiction over Defendants living outside the United States.

## ORDER

Based on the foregoing, and being fully advised in the premises, IT IS HEREBY ORDERED:

1) Plaintiff's motion to seal (Docket No. 33) is **GRANTED**.

2) Plaintiff's motion to withdraw or strike his answer and rebuttal to motion for extension of time to serve response pleadings FILED ON May 12, 2005 (Docket No. 36) is **GRANTED**.

3) Defendants' Motions to Dismiss (Docket Nos. 21, 26, and 29) are **GRANTED** as this Court lacks personal jurisdiction over the named Defendants and the matter is **DISMISSED WITHOUT PREJUDICE.**

4) Plaintiff's motion to extend the time for service and to serve by publication (Docket No. 51) is **DENIED**.

5) Defendants' Motion to Strike (Docket No. 56) is **GRANTED** and Plaintiff's sur-reply is **STRICKEN** (Docket No. 53) as such is not provided by the Local Rules without leave of the Court.

DATED: **July 25, 2005**

Honorable Edward J. Lodge
U. S. District Judge