F I L E D
Clerk
District Court

JUN 2 8 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert D. Bradshaw
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW | ) Case No. CV 05-0027 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al. | ) **PLAINTIFF'S OPPOSITION TO** ) **DEFENDANT'S MOTION TO** ) **DISMISS AND INCORPORATED** ) **MEMORANDUM OF POINTS AND** |
| Defendants | ) **AUTHORITIES [FED. R CIV. P. 9(B);** ) **12(B)(1); 12(B)(6).** ) Hearing: Jul 27, 2006 ) Time: 9:00 AM, ) Judge Alex R. Munson |

i

# TABLE OF CONTENTS

**Pages**

## Sections Addressing Defendants' Arguments

Introduction                                                                 1

Defendant's Argument I, Judicial Immunity                                    7

Defendant's Argument II, Action of the CNMI Makes the Issue Moot            20

Defendant's Argument III, on Torts and Lack of Facts                        21

Defendant's Argument IV, on Following Court Rules                           22

Defendant's Argument V, No Facts for 1981 & Civil Rights Acts 1870 & 1871   22

Defendant's Argument VI, Immigration & Control Act 1986                     23

Defendant's Argument VII, on RICO Being Time Barred                         23

Defendant's Argument VIII, that Castro is Not Involved in RICO             23

Defendant's Argument IX, on Breach of Bradshaw's Contract                   24

Defendant's Request for Attorney's Fees                                     24

Conclusion                                                                  25

Certificate of Service                                                      25

# TABLE OF AUTHORITIES

## Cases

Ableman v. Booth, 21 Howard 506 (1859)    13

Albrecht v. Metro Area Ambulance (580 N.W.2d 583 (N.D. 1008)    12

Bisom v. CNMI, et. al., CNMI case 96 1320    5, 8, 13,
14, 16, 18
20, 22, 23

Bisom v. CNMI, et. al. USDC Case 95-0042    16

Bradley v. Fischer, 13 Wall. 335, 20 L. Ed. 646 (1872)    13

Bradshaw v. CNMI et. al. (USDC case 05-0027)    19, 21, 22
24

Coil Company, Inc. v. Weather-Twin Corp. (539 F. Supp. 464 (1982)    12

Com. v. Ct of Common Pleas, Philadelphia City, 485 A2d 755 (Pa. 1984)    12, 18

Covington Trust Co. v. Owens, 129 S.W.2d, 186, 278 Ky. 695    12

Dahl v. Kanawha Inv. Holding Co.," 161 F.R.D. 673-686, N.D. Iowa 1995    6

Davis v. Burris, 51 Ariz. 220, 75 P. 2D 689 (1938)    10, 11

Duncan v. Peck, 844 F2d 1261 (6th Cir. 1988)    20

Forrester v. White U.S. 219, 108 S. Ct. 538, 98 L Ed. 2d 555 (1988)    9, 17

Guercio v. Brody, 814 F 2d 1115 (1987)    9

Harper v. Merckle, 638 F. 2d 848 (5th Cir.), cert. denied, 454 U.S. 816,
102 S. Ct. 93, 70 L. Ed. 2d 85 (1981)    17

Harlow et al v. Fitzgerald, 457 U.S. 800, 820-821 (1981).    10

Harris v. Harvey, 605 F. 2d 330 (7th Cir. 1979), cert. denied, 445 U.S.
938, 100 S. Ct. 1331, 63 L. Ed. 2d 772 (1980).    17

iii

Hunter v. Bryant, 112 S. Ct. @ 537).                                            10

Imbler v. Pachtman, at 433 [424 U.S. 409, 433, 1976]                            8

Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc.,
    D.C.Mich. 1952, 13F.R.D. 5.                                                 21

Jenkins v. Croft (63 S.W.3d 710, 713 (Mo. App. S.D 2002)                        18

Johnson v. Bd of County Comm'rs for County of
    Fremont (85 F 3d 489, 493 (10th Cir, 1996)                                  16

Jones v. Rundft, Leroy, Coffin & Matthews, Child, 125
    Idaho 607, 873 P. 2d 861 (1994)                                             5

King v. Love, 766 F. 2d 962, 968 (6th Cir.), cert denied, 474 U.S. 971,
    106 S. Ct. 351, 88 L. Ed. 2d 320 (1985)                                     17

Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576. 64 Sp. 2d 697.          11

LSJ Investment Co. v. O.L.D. Inc., C.A. 6th, 1999, 167 F 3d 320-325            6

McCoy v. Rivera (926 S.W.2d 78 (Mo. App. W.D. 1996)                            12

McDonald v. Krajewski, 649 F. Supp. 370)                                       20

McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100                   21

Meyers v. Contra Costa County Dept of Social Services,
    812 F2d 1154, 1158 (9th Cir. 1987)                                         9, 19

Mirolos v. Waco, 112 S. Ct. 286 (1991                                          9

Monroe v. Pape, 365 U.S. 167 (1961)                                            8

Morrison v. Lipscomb, 877 F 2d 463 (6th Cir. 1989)                             17

National Clay Products v. Health Unit Title Co., C.C.A. Iowa, 40 F.2d, 617     11

New Alaska Development Corp. v. Guetschow, 869 F. 2d 1298 (9th Cir. 1988)     17

Pierson v. Ray, 386 U.S. 547 (1967),                                           9, 10

.

iv

Pulliam v. Allen, 456 U.S. 522 (1984)                                           9

Piper v. Pierson, id. 2 Gray 120, cited in Bradley v. Fischer, 13 Wall. 335,
   20 L. Ed. 646 (1872).                                           13

Ranken v. Howard (1980) 633 F. 2d 844, cert den. Zeller v. Howard,
   101 S. Ct. 2020, 451 U.S. 939, 68 L. Ed. 326                    13

Schnabel v. Wells, C.A. 11th, 1991, 922 F 2d 726-729                             6

Scheuer v. Rhodes, 416 U.S. 232, 243 (1974).                              8, 10, 16

Schucker v. Rockwood, 846 F. 2d 1202.                                           13

Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc.,
   D.C N.Y. 1948, 8 F.R.D. 487.                                    21

Sevier v. Turner, 742 F. 2d 262 (6th Cir. 1984                                  17

Stidham v. Brooks, 5 A2d 522, 40 Del 110                                        12

Stump v. Sparkman. id. 435 U.S. 349.                                           10

Turkish State Rys. Administration v. Vulcan Iron Works,
   D.C.Pa 1957, 153F.Supp. 616)                                    21

U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293, 1 F.R.D. 548,
   550 (Holly, J.).                                                21

US District Court, Idaho Case 05-0084                                          1, 6

William P. Healy et. al. v. Sea Gull Specialty Co., 237 U.S. 479            11, 12

Zeller v. Howard, 101 S. Ct. 2020, 451 U.S. 939, 68 L. Ed. 326                 13

## Other

US Constitution                                                          8, 17, 18

Civil Rights Act of 1870                                                        22

Civil Rights Act of 1871                                                        22

v

Federal Rules of Civil Procedure:
Rule 8                                                                3, 21
Rule 9(b)                                                             3
Rule 11                                                              24
Rule 12(b)(1)                                                       3, 4
Rule 12(b)(6)                                                      3, 4, 5

386 U.S. 547, 549] from suit under 1/ Stat. 13, 42 U.S.C. 1983.    10

1986 Immigration Reform & Control Act (PL 99-603)                  7, 23

RICO, Title 18                                                     23

Title 42 USC 1981                                                 7, 18, 22

Title 42 USC 1983                                                 7, 8, 10
                                                                  18

Title 42 USC 1981-2000                                            17


CNMI Covenant                                                     23

CNMI Constitution                                                 17

7 CMC 1102(e)                                                      6

Commonwealth Judicial Reorganizaiton Act (I CMC 3001, 3202)       14


American Jurisprudence                                            11

Corpus Juris Secundum                                             11, 22, 23

Idaho Code 5-219                                                  23

Oran's Dictionary of the Law                                      11, 24

vi

## Introduction

1. COMES now plaintiff to oppose defendant Castro's Motion to Dismiss. This motion should be denied for many reasons. Defendant Castro's (hereafter Castro) motion is very similar to a like motion filed by the defendant CNMI judges on Jan 31, 2006 in opposition to plaintiff's "Amended Complaint" then before this Court with but a little editing.

2. In the editing, the motion continued a series of statements and commentary that were specifically addressing the previous complaint. There are several cases of continuing the particulars of the Amended Complaint, in difference to the Second Amended Complaint. Perhaps the most glaring instance occurred on lines 14 to 18, page 10, which cited the damages as $8,230 and $750,000. These references were in the Amended Complaint. But they were changed in the Second Amended Complaint.

3. Defendant outlines a series of alleged "Facts." As plaintiff took exception to the alleged "facts" in the motion to dismiss of Jan 31, the plaintiff again takes exception to the almost same alleged facts in the now Castro motion of Jun 16th for the same reasons as stated before in Plaintiff's opposition to the Jan 31st motion. Castro presents a series of statements as facts which are not facts. They are generally innuendoes, guesses, slander, and at best opinion and allegations. Plaintiff's opposition to the Jan 31 motion is already in the court record. Since the same opposition and essentially the same specifics are now again before the court, there is no need to repeat plaintiff's previously filed opposition to the Jan 31 motion. However, plaintiff will address some of the alleged facts that are false.

4. Castro says that the US Court in Idaho case 05-84 dismissed Bradshaw's complaint for ostensibly "several grounds" (lines 14-18, page 3). Castro included the order

1

from ID in his documentation.  As noted, the dismissal was for personal jurisdiction and nothing else.  True, the defendants raised number of issues.  But the ID court did not address them to support its dismissal.  The only issue in the dismissal was personal jurisdiction.

5.  Besides defendant's presentation of false statements which he says are facts, there is more to the problem.  The defendant's arguments are full of statements made in a positive context but which are patently false.  He makes false charges that are totally contrary to the facts in the case.  He throws a bucket of mud against the wall and hopes that some of it will stick.  He expects plaintiff and court to wade through his false charges and prove them false.

6.  It's not the plaintiff's job to have to prove defendant's false statements false.  It is the job of defendant to prove his statements true.  Castro has not done this.  He has made numerous false statements and now expects the plaintiff and court to prove him wrong.  He is trying to put the burden on the plaintiff and the court to disprove his false statements.  A perfect example of this subterfuge occurred on page 13, lines 23-24 where defendant argues that Bradshaw "resorts to alleging that the CNMI courts are generally corrupt, see Amended Complaint...126."  Paragraph 126 of the Second Amended Complaint actually says "some of the CNMI courts and judges have been accused of corruption..."  "Some accused" is considerably different than "the CNMI courts are generally corrupt."

7.  If defendant wishes to make charges in his statement of so-called facts and arguments then he must provide some proof and not just make ridiculous, irresponsible and careless false charges which are presented as true but which lack any proof.  Defendant has made these false charges and now expects the plaintiff and court to prove him wrong.  This approach is totally wrong per the American ideas of justice and proceedings.

2

8. This methodology by defendant must be contrasted to the statements made by plaintiff in the complaint. In the Complaint, plaintiff alleges. In his motion to dismiss, the defendant has alleged nothing. He repeatedly makes statements in the context of them being true facts when they are not facts at all. The Castro motion to dismiss is made in the vein that his attorney is testifying in court of things he supposedly believes true. In US courts, an attorney cannot testify unless he is under oath and subject to cross examination. Plaintiff here and now disputes all of defendant's statements unless they are specifically proven

9. Since the defendant's motion to dismiss states "facts" which are not facts, it is patently clear that everything else in the motion must be suspect. It's questionable what part, if any, of the motion is based on facts and truth.

10. The defendant's motion opens on page 1 with a statement that "Justice Alexandro C. Castro... moves to dismiss" and that "Judge Castro makes this motion." Since Castro did not sign the motion and since his attorney signed it, these statements are not technically correct. They should say that Castro through his attorney brings/makes...

11. It must be noted that the judge Lizama order of 2006 found that the Castro court in 2000 did not have personal jurisdiction over Bradshaw since Bradshaw was not legally served. The Castro motion to dismiss is filled with alleged statements of fact which are trying to argue and oppose the Lizama decision. Per res judicata and the law of the case, Castro is now barred from using these made up and alleged facts which dispute the Lizama decision.

12. In his opening statement, Castro says that his motion is made pursuant to Rules 9(b), 12(b)(1) and 12(b)(6) of the Fed. R. Civ. P. (FRCP). After making this statement, Castro does not define or delineate any of his succeeding commentary in the vein of the rules and

3

why they should be dismissed. He does allege a tie in argument II to 12(b)(1) and 12(b)(6). Otherwise, his motion makes no connections of his stated arguments to the FRCP rules allowing a dismissal. Excepting for argument II, the motion offers no specifics for the use of any of the rules to support a motion for dismissal. Without specifics on the applicability of issues under rule 12(b) to Bradshaw's complaint, the question of any dismissal is moot.

13. In his opening argument on judicial immunity, he does not even bother to try to link it to rule 12 for a dismissal at all. In his conclusion, Castro comes back with a request for a dismissal but he doesn't state what he wants dismissed or what authority prevails to allow a dismissal. Does he want the whole complaint dismissed or only the parts that are applicable to Castro or what? And what part of rule 12 applies for which specific dismissal?

14. While Castro has otherwise tried to use rule 12(b)(6) in argument II and somewhat in a vague manner in argument III, he uses it in context with a whole series of other statements and allegations of facts that are in controversy or covered by the Lizama decision. Rule 12(b)(6) specifically says that if matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment per rule 56.

15. Though Castro has included a whole array of allegations and statements beyond 12(b)(6), he fails to cite his motion as being one of summary judgment. If his motion is for summary judgment, it should involve only issues of law and supporting facts. Castro has not provided any issues of law for summary judgment. He has made allegations which he presents as evidence and facts to justify a summary judgment. In truth, Castro's alleged facts are either contrary to the Judge Lizama decision or they are facts in controversy per the Complaint. As his facts are in controversy, they cannot be used for summary judgment.

4

16. A finding of fact "cannot be made regarding a motion for summary judgment if there are disputed facts" and "In considering a summary judgment motion, it is not the function of the... (Court) to weight the evidence (Jones v. Rundft, Leroy, Coffin & Matthews, Child, 125 Idaho 607, 873 P. 2d 861 (1994)). Finally, if there are facts in controversy, it is prima facie evidence that the complaint does present facts with claims upon which relief can be granted. Thus, Castro cannot use 12(b)(6) in a motion to dismiss. But in his statements of alleged facts, they are issues of fact and not issues of law. Facts supporting issues of law are not yet in court since discovery and the trial have not yet occurred. Since the issues of the law are not before the court, Castro cannot justify a motion for summary judgment at this time.

17. Another major problem in the motion is that there is another reoccurrence of attempts to attack Bradshaw over service of process in CNMI case 96-1320. This effort devolves to the allegations that Bradshaw was provided "notice" of the 96-1320 lawsuit by the AG and that fact is sufficient to justify Judge Castro's court decisions (lines 14-28, page 1 and lines 1-11, page 2). But any notice which Bradshaw had came from his own lawyer, the AG, who clearly had no authority to serve legal notice on Bradshaw in privileged letters from a lawyer to his client. Any legal notice had to have come from plaintiff or the court. Neither Bisom or the court served legal notice on Bradshaw.

18. In Bradshaw's supporting declaration herewith, Bisom's appeal to the Supreme Court and Bradshaw's opposition to it are presented (Exhibits A and B). Therein, Bisom went to length to supposedly prove that somehow the decisions of Judge Castro on service in case 96-1320 were correct by law. As noted in Bradshaw's opposition, the Castro decisions had no basis in any law. They were made up by Bisom and Castro.

5

19. Per 7 CMC 1102(e), the CNMI law is to meet the due process needs of US law. But US law does not provide for notice only to overrule the need for proper service per the law. In Bradshaw v. CNMI et. al. (US District Court [USDC] Idaho 5-84), defendants Sorensen and Disom received notice of service of process. Yet both objected to it in their motion to dismiss on Jul 7, 2005 on the premise that "Knowledge does not constitute service... Actual notice does not substitute for proper service of process, otherwise it would be nonsensical for the Federal Rules of Civil Procedure to provide for a motion to dismiss based on insufficiency of service of process (Dahl v. Kanawha Inv. Holding Co.," 161 F.R.D. 673-686, N.D. Iowa 1995). Also, other US courts have found that actual notice as opposed to proper service per the rules is irrelevant --for example: LSJ Investment Co. v. O.L.D. Inc., C.A. 6th, 1999, 167 F 3d 320-325; and Schnabel v. Wells, C.A. 11th, 1991, 922 F 2d 726-729.

20. Another recurring theme in the motion is that regardless of Castro's actions, the CNMI courts did grant Bradshaw due process on the premise that the Judge Lizama court vacated the illegal judgment entered by Castro. Somehow this Lizama action is supposed to correct all of the previous wrongs inflicted on Bradshaw. But as the complaint notes, the vacating of the judgment does not begin to cover the wrong and hurt put on Bradshaw.

21. While Judge Lizama's decision removed the illegal judgment, it is reality that many things that happen in the CNMI happen because of pressure being applied to make them happen or because of who you know that can pull strings for you. Plaintiff spent some years in the CNMI and is well acquainted on how things work there. Thus, the case can be made that the filing of this action in US court may have influenced actions in the CNMI courts. Without this action in US court, the judgment may have never occurred in the CNMI courts.

6

22. One more major problem is the continuous opposition to the idea that Judge Castro or the CNMI has or would practice discrimination against state-side Americans. This issue really connects in the Second Amended Complaint (6th Claim, page 56) in that discrimination on the basis of race, ancestry or national origin is government policy in the CNMI. This issue also links to the 10th claim (page 64) on discrimination as addressed in the Immigration and Control Act of 1986. Because of the importance and significance of the questions of discrimination in the CNMI in terms of the Second Amended Complaint, plaintiff is addressing the whole discrimination theme in "Plaintiff's Petition for Declaratory Judgment" filed separately this date before this court. When the court rules on this petition, it will resolve many of the issues addressed in the defendant's motion to dismiss.

## Defendants' Argument I, Judicial Immunity

23. On the immunity question, Castro cited no Federal rules which would allow him to have a dismissal for immunity. Since he failed to cite such a rule, one must not exist. The alternative here is that he can raise the defense of immunity when he files his answer. On immunity, there are no CNMI laws granting CNMI judges immunity. Any immunity must come elsewhere (like from US court decisions which technically only apply to those particular cases and not carte blanche across the board to all cases).

24. The title 42 laws address all persons with no exceptions. 1981 says all persons and 1983 says every person. While some courts have excluded judicial officers (judges, and now prosecutors and other government officials) from all and every, the statutes do not make this exclusion. Every person means every person and not every person but judicial officials. In fact, in 1983, there is a stated exception to the law in an action against a judicial officer... in

7

that "injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." The very wording of this law and its exception clause for a certain class of judicial officers means that the preceding statement did and does apply to any and all judicial officers unless they are subject to the exception.

25. The wording of the exception is plain that injunctive relief will not be granted unless one of the stated needs is met. Obviously, this one exception stipulates an exception to the "every person" statement. As a minimum, this very exception demands that judicial officers be subject to the law, if they don't qualify for the exception. In fact, if declaratory relief is not available (as was the situation with Bradshaw in 96-1320), then the judicial officer is automatically covered in 1983. "The central purpose of ... 1983 is to 'give remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position'" (Imbler v. Pachtman, at 433 [424 U.S. 409, 433, 1976] quoting Monroe v. Pape, 365 U.S. 167. 172 [1961]). "It is manifest then that all state officials as a class cannot be immune absolutely from damage suits under 42 U.S.C...1983 and that to extend absolute immunity to any group of state officials is to negate *pro tanto* the very remedy which it appears Congress sought to create" (Imbler, at 433-434, citing Scheuer v. Rhodes, 416 U.S. 232, 243 [1974]).

26. Under the Common Law, there is no judicial immunity. Under equity, there is no judicial immunity. The US Constitution, Article III, Section 2, limits judicial power to the Constitution and laws of the US. There are no US laws that grant judicial immunity in the CNMI. Since there is a constitutional separation of powers, the courts lack authority to create laws which are not supported in the Constitution or statutory law. In terms of the CNMI, there are no laws granting judicial immunity. Such assertions are unconstitutional.

8

27.  Per the US Supreme Court, there is no such thing as automatic absolute judicial immunity--Pulliam v. Allen, 456 U.S. 522 (1984); and Forrester v. White, 44 U.S. 219, 108 S. Ct. 538 (1988), 44 U.S. @ 224; and Guercio v. Brody, 814 F 2d 1115 (1987).  There are, as a minimum, two tests--Does the court have subject matter jurisdiction and is the act a judicial act (Mireles v. Waco, 112 S. Ct. 286 (1991).  In terms of juridical officials, there seems to be at best a qualified or partial immunity as is true with many other public officials.

28.  Too, there is a need for the presence of an appellate or review function or opportunity when judges act improperly as stated by Chief Justice Warren of the Supreme Court.  In Pierson v. Ray, 386 U.S. 547 (1967), Justice Warren for the Court upheld judicial immunity in terms of 42 USC 1983 by saying:  "...It is a judge's duty to decide all cases within his jurisdiction that are brought before him, including controversial cases that arouse the most intense feelings in the litigants.  His errors may be corrected on appeal..."

29.  In Meyers v. Contra Costa County Dept of Social Services, 812 F2d 1154, 1158 (9th Cir. 1987), the 9th Circuit said "in spite of immunity for certain decision makers, the balance might not be struck in favor of absolute immunity were it not for the presence of safeguards build into the judicial process that tend to reduce the need for private damage actions."  With absolute judicial immunity, there are no safeguards except as they exist in the adversarial process and the appellate and review functions.  Hence, there is need for an adversarial situation and an appellant review process to be in effect to allow judicial immunity to exist.  Thus, there are exceptions to believed judicial immunity.  It is not automatic and all inclusive.  And it certainly is not authorized by law in the CNMI.

9

30. In the Pierson v. Ray 386 U.S. 547 (1967) case, Justice Douglas dissented and said: "I do not think that all judges, under all circumstances, no matter how outrageous their conduct are immune [386 U.S. 547, 540] from suit under 17 Stat. 13, 42 U.S.C. 1983. The Court's ruling is not justified by the admitted need for a vigorous and independent judiciary,..." So there is judicial belief for a limitation in the use of judicial immunity.

31. When a state official acts under a state law in a manner violative of the Federal Constitution, he comes into conflict with the superior authority of that Constitution, and he is in that case stripped of his official or representative character and is subjected in his person to the consequences of his individual capacity. The State has no power to impart to him any immunity from responsibility to the supreme authority of the United States--Scheuer v. Rhodes, 416 U.S. 232, 84 S. Ct. 1683, 1687 (1974).

32. What then we have for judges is a form of qualified immunity as is the norm for certain other government officials. "Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law" (Hunter v. Bryant, 112 S. Ct. @ 537). "Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known" (Harlow v. Fitzgerald, 457 U.S. 800).

33. In terms of the presence of the above exceptions for judicial immunity, it is crucial that the question of jurisdiction be settled. In a jurisdictional vacuum (that is, absence of all jurisdiction) the second prong necessary to absolute judicial immunity is missing Stump v. Sparkman, id, 435 U.S. 349. A judge must be acting within his jurisdiction as to subject matter and person, to be entitled to immunity from civil action for his acts Davis v. Burris, 51

10

Ariz. 220, 75 P. 2D 689 (1938). Per "Oran's Dictionary of the Law" (p. 233), Jurisdiction means "2. The persons about whom and the subject matter about which a court has the right and power to make decisions that are legally binding." Thus, jurisdiction means both personal and subject matter jurisdiction. It is not a case of one or the other. It means both!

34. "American Jurisprudence" (2d ed, v. 20, p. 460-461) further defines subject matter as (1) the nature of the cause of action and of the relief sought; (2) the class of cases to which the particular one belongs and the nature of the cause of action and of the relief sought; (3) the power of a court to hear and determine cases of the general class to which the particular one belongs; and (4) both the class of cases and the particular subject matter involved." As will be shown below, the Bisom complaint in Castro's court met none of these definitions.

35. When a judicial officer acts entirely without jurisdiction or without compliance with jurisdictional requisites he may be held civilly liable for abuse of process even though his act involved a decision made in good faith, that he had jurisdiction. (State use of) Little v. U.S. Fidelity & Guaranty Co., 217 Miss. 576. 64 Sp. 2d 697.

36. No service of summons and complaint means no personal and subject matter jurisdiction. Without personal jurisdiction there is no subject matter jurisdiction. It is the summons and complaint which grants the court both personal and subject matter jurisdiction. Specifically, it is service of the summons which serves notice of the personal jurisdiction of the court over the defendant; and, per Corpus Juris Secundum (v. 21, p. 24-25), it is delivery of the complaint and its pleadings in the case made and relief sought to the court and to the defendant that states the presence of subject matter jurisdiction for the court to proceed (National Clay Products v Health Unit Title Co., C.C.A. Iowa, 40 F.2d, 617; William P. Healy

11

et. al. v. Sea Gull Specialty Co., 237 U.S. 479; Stidham v. Brooks, 5 A2d 522, 40 Del 110; Com. v. Ct. of Common Pleas, Philadelphia City, 485 A2d 755 (Pa. 1984)). Because legal summons and complaint were never served on Bradshaw by Bisom or the court, the CNMI court never obtained personal and subject matter jurisdiction over Bradshaw.

37. In Covington Trust Co. v. Owens, 129 S.W.2d, 186, 278 Ky. 695, the court said "In determining whether a court had jurisdiction of the subject matter, it must be ascertained whether... (the Court) was given the right to pass on the particular class of case involved, and whether that particular class of case had been brought before it for determination" and "a judgment which a court has jurisdiction to render if the question is presented to it for determination, will be void, if considered when the question has not been presented."

38. In Albrecht v. Metro Area Ambulance (580 N.W.2d 583 (N.D. 1998)), the court said "For subject matter jurisdiction to attach, the particular issue to be determined must be properly brought before the court in the particular proceeding." and "A judgment or order entered by the court without the requisite jurisdiction is void." Per McCoy v. Rivera (926 S.W.2d 78 (Mo. App. W.D. 1996). "A litigant asserting that court has jurisdiction bears the burden of establishing a prima facie basis for jurisdiction." The question of subject matter jurisdiction was never properly brought before or established by the Castro court. The complaint did not properly state it (to be discussed below) and Bradshaw was never properly served to give notice of it to him. In Coil Company, Inc. v. Weather-Twin Corp. (539 F. Supp. 464 (1982)), "Under Pennsylvania law, default judgment was void where plaintiff did not give the defendant any notice that it was going to take default judgment." As a minimum, nether the plaintiff or the court gave Bradshaw any notice of a pending default judgment.

12

39. Regardless, if defendant has not been properly served with summons and complaint and if due process has not been followed in terms of the defendant, then a determination of subject matter or personal jurisdiction lacks a legal basis and is void. The questions of both personal and subject matter jurisdiction were never legally presented to the Castro court for it to determine jurisdiction. Whatever decisions or orders which Castro issued were void since the questions of jurisdiction were never legally determined or settled.

40. "No judicial process, whatever form it may assume, can have any lawful authority outside of the limits of the jurisdiction of the court or judge by whom it is issued..." Ableman v. Booth, 21 I loward 506 (1859). When a judge knows that he lacks jurisdiction, or acts in the face of clearly valid statues expressly depriving him of jurisdiction, judicial immunity is lost. Ranken v. Howard (1980) 633 F. 2d 844, cert den. Zeller v. Howard, 101 S. Ct. 2020, 451 U.S. 939, 68 L. Ed. 326.

41. "Where there is no jurisdiction, there can be no discretion, for discretion is incident to jurisdiction" Piper v. Pierson, id. 2 Gray 120, cited in Bradley v. Fischer, 13 Wall. 335, 20 L. Ed. 646 (1872). An act "done in complete absence of all jurisdiction" cannot be a judicial act. (Piper v. Pierson, id., 2 Gray 120). "Judge loses his absolute immunity from damage actions when he acts in clear absence of all jurisdiction or performance of an act which is not judicial in nature" (Schucker v. Rockwood, 846 F. 2d 1202).

42. In the case of 96-1320, personal and subject matter jurisdiction were never addressed or settled in the case. Plainly, per the context of the Dec 29, 2005 void order from the Superior Court, the trial court under Castro manifestly lacked personal jurisdiction. Since subject matter jurisdiction was dependent on personal jurisdiction and since service of

13

summons and complaint were never legally served on Bradshaw, Castro plainly lacked both personal and subject matter jurisdiction. Since Bradshaw was never personally under the court, there was never any opportunity for the court to determine subject matter jurisdiction or for him to question subject matter jurisdiction. If Bradshaw would have been afforded an opportunity to question subject matter jurisdiction, Bradshaw could have raised opposition to all aspects of the 96-1320 case as were levied against him. Bradshaw's opposition to Castro's subject matter jurisdiction was spelled out in privileged letters to the AG who filed the Jul 14, 1999 letter in Castro's court (exhibit B to Second Amended Complaint). The Complaint notes lack of jurisdiction.

43. As before Judge Castro, Bisom's Complaint (filed by Bisom on Dec 5, 1996 -see exhibit D in the accompanying Declaration), page one, has a paragraph one entitled Jurisdiction. It reads: "This court has jurisdiction by virtue of the Commonwealth Judicial Reorganization Act of 1989 (1 CMC...3001 et sq. ) and 1 CMC...3202 in particular." There is nothing in this paragraph which assigns any specific subject matter jurisdiction to Castro. This paragraph cites the organization of the court. In that context, division 3 of the code did state the original jurisdiction of the court over land and other civil cases (the 1987 law provided a limit to cases with the amount in controversy to under $5,000--since the Bisom complaint addressed contract rights over $5,000, the court could not have heard the case).

44. Beyond the possible allusion to the court's original and general jurisdiction, the complaint never spelled out any of the specific issues which would grant subject matter jurisdiction to the court. The Bisom complaint had an obligation to spell the specific issues of subject matter which tied to the general original jurisdiction granted the court. As will be cited

14

below, the complaint had a series of allegations but none of these had any statement of the applicability of subject matter jurisdiction to CNMI law and issues which could be brought before the CNMI courts. Certainly, many of the issues were not legally proper in the CNMI for determination by its court. These are discussed below--as for example with claims which were entirely relevant to federal laws and issues. This stuff could never be determined by the Superior Court as it plainly lacked subject matter jurisdiction.

45. Thus, in the Bisom complaint of 1996 on subject matter jurisdiction, the first and second claims both addressed United States laws that were inapplicable in the CNMI as found by the CNMI US District Court and thus lacking subject matter jurisdiction. The third claim was based on racial discrimination because of Bisom's alleged Jewish race. But US and CNMI civil rights laws and even Jewish authorities do not recognize a Jewish race. Therefore claim three lacks subject matter jurisdiction. Claims four, five, seven, nine, ten and eleven all concern the CNMI and defendant Tan.

46. Claims six and eight were predicated upon the alleged improper firing of Bisom. Bisom's complaint had Bradshaw's termination letter attached (herein at exhibit C). This letter, plus Bisom's own admissions in his complaint (in the tenth claim, paragraph 60--66, page 12-13) outline the unauthorized and clandestine meetings which Bisom had with the Governor-elect to oppose Bradshaw and the single audit of the CNMI then underway. The evidence Bisom submitted to the court was conclusive that Bisom was properly fired for cause. There was noting in the complaint or pleading before the court to indicate otherwise.

47. Finally, paragraphs 30-32 of the Second Amended Complaint makes note of the fact that Bradshaw was sued by Bisom in both his official and individual capacities. In case

15

95-0042 in the CNMI USDC, the Court dismissing the complaint quoted Johnson v. Bd of County Comm'rs for County of Fremont (85 F 3d 489, 493 [10th Cir, 1996]) that "When a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are 'treated as the transaction of two different legal personages.'"

48. In the complaint of case 96-1320, Bisom's original and next two amended complaints all sued Bradshaw in his official and individual capacity without any distinction, contrary to the USDC decision in 95-0042. The Bisom pleadings were always in the context of Bradshaw's actions in his official capacity and for his official duties. Bisom never alleged that Bradshaw acted beyond the scope of his designated powers. Since Bisom intermixed Bradshaw in terms of his official and individual capacities and duties without distinction as required by the USDC court order, it is manifestly clear that the Castro court completely lacked subject matter jurisdiction over all of the claims supposedly involving Bradshaw.

49. Castro unilaterally and arbitrarily cut off any option for Bradshaw to even question subject matter jurisdiction. Because Bradshaw had no opportunity to address subject matter in the Castro court or in an appellate review, the issue of subject matter jurisdiction was never settled. Castro cannot now claim that he had subject matter jurisdiction when that issue was never settled in case 96-1320. For sure, he had neither subject matter or personal jurisdiction over Bradshaw, So he is not entitled to judicial immunity.

50. In Scheuer v. Rhodes, as cited above, a judge, by law, is a state officer. The Judge then acts not as a judge, but as a private individual (in his person). When a judge acts as a trespasser of the law, when a judge does not follow the law, the Judge loses subject-matter jurisdiction and the judges' orders are not violable, but void, and of no legal force or

16

effect. As a minimum, Castro lost any alleged subject matter jurisdiction when he acted outside the law to violate Bradshaw's rights under the US Constitution.

51. In terms of the issue of whether their acts were judicial actions or not, there are also questions. US courts have found that judges acting outside of their judicial capacity are not entitled to immunity in Forrester v. White U.S. 219, 108 S. Ct. 538, 98 L Ed. 2d 555 (1988); Morrison v. Lipscomb, 877 F 2d 463 (6th Cir. 1989); King v. Love, 766 F. 2d 962, 968 (6th Cir.), cert denied, 474 U.S. 071, 106 S. Ct. 351, 88 L. Ed. 2d 320 (1985); Sevier v. Turner, 742 F. 2d 262 (6th Cir. 1984); New Alaska Development Corp. v. Guetschow, 869 F. 2d 1298 (9th Cir. 1988); Harper v. Merckle, 638 F. 2d 848 (5th Cir.), cert. denied, 454 U.S. 816, 102 S. Ct. 93, 70 L. Ed. 2d 85 (1981); and Harris v. Harvey, 605 F. 2d 330 (7th Cir. 1979), cert. denied, 445 U S 938, 100 S. Ct 1331, 63 L. Ed. 2d 772 (1980).

52. As a minimum, Bradshaw in the CNMI courts (without presence of him or his attorney) was never allowed due process as envisioned in the US and CNMI Constitutions and had no opportunity to question subject matter before the court. Bradshaw could have raised objections to both personal and subject matter jurisdiction. There is no question but that Castro lacked personal jurisdiction over Bradshaw as he was never legally served in accordance with CNMI rules/laws. If Bradshaw would have had an opportunity to address 96-1320, he would have questioned subject matter jurisdiction as there were issues in the Bisom complaint which would have denied Castro subject matter jurisdiction .

53. Certainly, Bradshaw's allegations of gross incompetence and corruption in the form of conspiracy and violation of Bradshaw's rights under 43 USC 1981-2000 by especially Castro are all sufficient to raise questions of subject matter jurisdiction as well as personal

17

jurisdiction. CASTRO was too grossly incompetent and subject to conspiracy and violations of the US Constitution and 42 USC 1981 and 1983 to be able to properly make a proper and legal determination of subject matter jurisdiction in terms of Bradshaw.

54. In the Philadelphia City case, as cited above, the court noted that "Test of whether a court has jurisdiction over a particular controversy depends upon competency of the court..." In Jenkins v. Croft (63 S.W.3d 710, 713 (Mo. App. S.D. 2002), the court said ""Judicial discretion is abused only where the trial court's ruling is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Per the court rule of not awarding decisions to a party with dirty hands, it is inconceivable that Castro would have awarded a judgment to Bisom/Sorensen with dirty hands in the Castro court. But he did!

55. As incompetent and sorry as the AG was in handling 96-1320, it did have a motion before Castro pointing out the presence of fraud and corruption on the part of Bisom. While the AG incompetently sat on its duffs for six months with this knowledge and could have easily brought it to Castro's attention earlier (thus, meaning Castro should have sanctioned the AG for its incompetence and for not bringing the matter up earlier), the fact remains that the fraud problem did finally come before Castro who either deliberately ignored it or incompetently refused to address it. In any case, the issue before Castro was profound enough to shock the sense of justice. Once Castro started illegally and incompetently issuing orders, it demonstrated as a minimum a careful lack of consideration and indeed is reflective of his incompetence to be on the bench. Bradshaw was denied his day in court.

18

56. Since Castro found Bradshaw guilty when personal and subject matter jurisdiction was never established over Bradshaw by the CNMI, it meant that Bradshaw had no way to appeal his decision to any higher court (except now to the US District Court in terms of case 05-0027). Castro's illegal decision meant that it was made in violation of the US and CNMI Constitutions and title 42 USC on due process and equal protection rights. As Bradshaw was afforded no opportunity to appeal the CNMI court decisions (beyond addressing the rule 60 issue over the judgment of $139,000 imposed on him), the presence of judicial immunity does not and cannot exist with Castro as envisioned by Chief Justice Warren (per the above quote) and in the need for safeguards build into the judicial process that would reduce the need for private damage actions--Meyers v. Contra Costa County Dept of Social Services, 812 F2d 1154, 1158 (9th Cir. 1987).

57. In terms of judicial acts, the matter of establishing jurisdiction and acting in good faith, there is a presumption that the judge involved is competent and acting impartially and fairly without any involvement of conspiracy to defraud and conspiracy to violate the US Constitution on the basis of the national origin of a party (as Bradshaw was a US state-sider being judged in a CNMI court). When a court is being run by a grossly incompetent judge, and with the related questions of conspiracy and violations of civil rights of people in his courtroom, can that judge make proper decisions on jurisdiction, on his judicial rights as a judge, or on the good faith theme? The answer is no.

58. Judicial immunity is not a panacea to use whenever a judge wants protection for his actions. It is something that can be applied only when it is necessary to protect the independence of the judiciary. "Although judicial immunity is absolute, it should apply only

19

when necessary to protect independent nature of judicial decision making process"
(McDonald v. Krajewski, 649 F. Supp. 370).

59. As a minimum, judicial immunity's purpose is not to protect an incompetent,
malicious and/or corrupt judge as is the case with Castro. When a judge takes the bench, he
is presumed to know the law. The trial of 96-1320 and defendant's present motion prove that
Castro does not know the law and is therefore clearly incompetent. He should not have been
on the bench in 2000. His motion for dismissal should be denied.

60. It is the law that the person asserting jurisdiction must, when challenged, prove
that that jurisdiction does exists; mere, good faith assertions of power and authority
(jurisdiction) are not sufficient. Bradshaw hereby challenges the personal and subject matter
jurisdiction which Castro allegedly possessed. Castro should be ordered to prove the
existence of jurisdiction in CNMI 96-1320 to the satisfaction of this honorable court.

61. Castro can claim judicial immunity as a defense. But he must prove it to the court
and not merely assert it in a motion to dismiss. In Duncan v. Peck, 844 F2d 1261 (6th Cir.
1988), 6th Cir. rejected a plea to dismiss because of qualified immunity and declared it an
"affirmative defense" which the defendant had to plead and prove.

### Defendant's Argument II Action of the CNMI Makes the Issue Moot?

62. While the $139,000 judgment against Bradshaw was vacated by the CNMI Court,
the issue is not moot. The Second Amended complaint has no claim against any defendant
for this $139,000. Regardless, the vacate action did not diminish, change or void seventeen
other claims against the defendants as outlined in the Second Amended Complaint.
Bradshaw has received no restitution on any of these issues from the Dec 29, 2005 vacate

20

order of the CNMI Court. Therefore, it is impossible to argue that case 05-0027 is now settled. There were other issues involved which have never been addressed by the CNMI in its order and can only be addressed in 05-0027.

### Defendant's Argument III (p. 11) on Torts and Lack of Facts

63. The claim that there is a lack of facts is false as the document is full of facts. True, there are numerous reports of torts as Castro committed numerous torts against Bradshaw. But even those torts occurred in the context of depriving Bradshaw of due process. Regardless, Bradshaw repeatedly cites the reality that he was denied due process by the Castro court and was denied his day in court. In fact, almost everything that happened under Castro happened precisely because he denied Bradshaw his due process rights under the US Constitution. Castro's failure to provide Bradshaw due process constitutes a fact in itself.

64. The issue of proving facts when alleging conspiracy is settled in FRCP Rule 8(e) which clearly provides that a pleader need not "plead his evidence" or state "ultimate facts" in an alleged civil conspiracy--Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc., D.C.N.Y. 1948, 8 F.R.D. 487. The nature of a conspiracy makes it impossible to state details at the pleading stage--Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., D.C.Mich. 1952, 13F.R.D. 5. Bradshaw's complaint meets these tests.

65. Numerous cases make the point that pleadings (per FRCP Rule 8) have the only function of giving notice of the nature of a claim--Turkish State Rys. Administration v. Vulcan Iron Works, D.C.Pa 1957, 153F.Supp. 616); McElroy v. United Airlines, Inc., D.C.Mo.1957, 21 F.R.D. 100; U.S. v. Johns-Manville, D.C.Ill.1941, 67 F.Supp.291, 293, 1 F.R.D. 548, 550 (Holly, J.). These cases all note that other historic issues (stating the facts, narrowing the

21

issues, and providing a means for speedy disposition of sham claims and insubstantial defenses) can be addressed through discovery.

### Defendant's Argument IV on Following Court Rules

66. Castro's failure to follow the CNMI laws and court rules in his handling of 96-1320 is a legal issue in itself as well as a fact or proof that Castro violated Bradshaw's due process rights under the US Constitution. In any case, Castro has failed to cite how this failure now would allow a dismissal per rule 12(b). Castro tries to link following the court rules to rule 9(b) on pleading particularities. But there is no connection to the two themes.

### Defendant's Argument V No Facts for 1981 & Civil Rights Act of 1870 and 1871

67. Plaintiff's separately filed "Petition for Declaratory Judgment" addresses the whole discrimination theme. A decision on that petition will help resolve this argument. Otherwise, the facts supporting the other civil rights violations scattered throughout the complaint go on to prove the violations of 42 USC 1981 and the acts of 1870 and 1871. While Castro shows race based discrimination, the issue in 1981 can include discrimination on the basis of national origin. While there is much local discrimination towards Americans (both Black and White from the US) and towards Filipinos and other outsiders, this discrimination often takes the form of national origin discrimination (i.e., that one is from mainland US and a state-sider) which is what Bradshaw claimed.

68. The actions of Castro in violating the Civil Rights Act of 1870 produced a cause of action, pursuant to which both legal and equitable remedies may be had, including compensatory and under certain circumstances, punitive damages (14A C.J.S. Section 226). This remedy is separate, distinct and independent from other civil rights remedies (ibid.). The

22

actions and omissions of Castro to impose injustice, damage and hurt on Bradshaw resulted in the constitutional deprivations to Bradshaw because Castro failed to act when he had a duty to act to prevent the deprivations, per the Civil Rights Act of 1871 (14 C.J.S. section 35).

**Defendant's Argument VI on the Immigration & Control Act of 1986 (IRCA)**

69.  On Nov 3, 1986, President Reagon terminated the US administration of the UN trusteeship over the CNMI.  Section 503 of the CNMI Covenant provided that US immigration laws in effect on the date of the termination of the US administered trusteeship that were inapplicable in the Trust Territory would remain inapplicable to the CNMI.  The IRCA became public law 99-603 on Nov 6, 1986.  Nothing in the act limits or restricts its application to the CNMI.  Since it applied to the US states, it applied to the CNMI.

**Defendant's Argument VII on RICO being Time Barred**

70.  Defendant's attempt to use the trial of 96-1320 in 2000 as the tolling date for the statute of limitations, completely ignored other relevant dates-- Sep 13, 2002 (with the Supreme Court's decision); Apr 2004 when the AG first notified Bradshaw of the court action; Dec 29, 2005 when the CNMI Superior Court entered its void order; or the three year rule or one year rule on discovery as applicable in Idaho (IC 5-219) where this suit was first filed. There is also a six year tolling provision as applied to certain legal case.  As the Complaint allows, the RICO charges covered six years, starting in Feb 2000 and continuing on to Defendant Brown in Feb 2006.  Certainly, they meet any four year test.

**Defendant's Argument VIII that Castro is Not Involved in RICO**

71.  As far as the RICO tests of conduct, enterprise, pattern, racketeering and injury, the complaint covers all of these points in terms of the CNMI and its RICO agents such as Castro.

23

Otherwise, the RICO charges are issues of fact and cannot be made issues of law without having all of the facts in to support the issues of law. All of the facts are not yet in. Anyway, Castro makes a general denial without presenting any specifics to support his denial.

72. In the RICO statutes, there is a clear right to bring civil suit under section 1064 whenever a person is injured in his business (as in Bradshaw's professional status as a CPA) or property (which includes money [per Oran's Dictionary of the Law," p. 338] both in the judgment against Bradshaw and in his expenditure of funds to obtain redress for the wrong done him) and the illegal use of the US mail.

73. For years, some of the CNMI courts have been accused of corruption and racketeering in their judicial decisions. Castro as a probate judge in 2000 arranged for his colleague Pedro Atalig (who was one of the Supreme Court justices who heard the 96-1320 appeal) to receive large sums of money as alleged improper/illegal payments in cases before Castro   Allegations and frequent charges in court of conspiracy, collusion, corruption, racketeering, etc are widespread and common within the CNMI.   Even the former AG Brown publicly noted the extensive corruption in the CNMI and her inability to deal with it.  About the only hope of dealing with Saipan corruption is to get a case into Federal court as in 05-0027.

### Defendant's Argument IX on Breach of Bradshaw's Contract

74. While Castro was not directly a party to plaintiff's employment contract, he acted as an agent for the CNMI to breach the contract with Bradshaw

### Defendant's Request for Attorney Fees

75. Defendant's charge that the Second Amended Complaint is frivolous, unreasonable or without foundation is absurd. He is not entitled to attorney's fees. In the real

24

world, much of what has happened or will happen in the CNMI has depended to a great extent upon the presence of this case now in Federal court. Before the filing of this Federal complaint, Bradshaw effectively got nothing from the CNMI. Corrupt/incompetent officials in the CNMI are not going to admit their wrong doings without a fight, essentially in US court.

### Conclusion

76. Both the Federal and CNMI rules of civil procedure offer a rule 12 provision for dismissal for lack of subject matter jurisdiction if a complaint is not properly brought before the defendant and court. The fact that this provision is in the rules means that under due process a defendant must be granted this right to question subject matter jurisdiction. Castro denied Bradshaw his right to due process and to question this fundamental issue in court.

77. Per FRCP rule 11, the Court should award plaintiff attorney fees in the form of sanctions for the frivolous, unreasonable and without foundation motion which Castro now has before the court.

78. Request that the defendants' motion be denied. A proposed order is attached.

Robert D. Bradshaw, Plaintiff, Pro Se

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 28th day of June 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 06950
Patrick Civille, Civille & Tang, PLLC, PMB 86, PO Box 10003, Saipan, MP 96950

Robert D. Bradshaw, Plaintiff, Pro Se

25

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW ) Case No. CV 05-0027

    Plaintiff

    v.

COMMONWEALTH OF THE NORTHERN ) **(PROPOSED) ORDER**
MARIANA ISLANDS (hereafter referred to )
as the CNMI); et. al. )

    Defendants )
_____)

Defendant Castro's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

**DATED** this _____ day of _____, 2006.

_____
ALEX R. MUNSON
Judge

1