APPEAL NO. 06-0006 GA

## IN THE SUPREME COURT
### FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM,                                )<br>                                )<br>                     Appellant,     )<br>                                )<br>          vs.                        )<br>                                )<br>COMMONWEALTH OF THE NORTHERN )<br>MARIANA ISLANDS, ROBERT D.      )<br>BRADSHAW, former Temporary Public )<br>Auditor, in his individual capacity, etc.   )<br>                                )<br>                                )<br>                     Appellee.    )<br>                                ) | APPEAL NO. 06-0006 GA |

## APPEAL FROM THE SUPERIOR COURT
### OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

Juan T. Lizama, Associate Judge

---

## APPELLANT'S OPENING BRIEF

---

**JAY H. SORENSEN, ESQ.**
c/o Shanghai, P.O. Box 9022
Warren, MI 48090-9022
Phone: 86-21-50838542
Facsimile: 86-21-50838542

**MARK B. HANSON**
First Floor, Macaranas Bldg.
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Phone: (670) 233-8600
Facsimile: (670) 233-5262

*EXHIBIT A.*

## TABLE OF CONTENTS

PAGE

TABLE OF AUTHORITIES...................................................... iii-iv

ISSUES PRESENTED........................................................... 1

STATEMENT OF JURISDICTION............................................. 1

STANDARDS OF REVIEW..................................................... 1

STATEMENT OF THE CASE.................................................. 2

STATEMENT OF FACTS...................................................... 4

ARGUMENT.................................................................... 8

    I. RULE 60 (b) DOES NOT AUTHORIZE
    VACATING THIS JUDGMENT BY MOTION
    BROUGHT MORE THAN ONE YEAR AFTER
    ENTRY...................................................... 8

    A. The requirement for an independent action was
    ignored..................................................
    B. The correct standard to determine whether to grant
    relief under the independent action clause of Rule
    60(b) was not employed............   ..................   11
    C. The erroneous application of Rule 60(b) was prejudicial   13

    II. THE TRIAL COURT'S CONCLUSION THAT
    BRADSHAW WAS NOT PROPERLY SERVED IS
    BASED ON A MISINTRPRETATION OF COM.R.CIV.P 4   14

    A. The trial court ignored several applicable sections
    dealing with service of process of out-of state
    defendants................................................   14
    B. CNMI law regarding service on nonresident defendants
    does not require compliance with the service provisions
    of the statutes and rules of the state where the defendant
    is residing................................................   15

    1. Legislative intent.........................................   16
    2. Plain meaning.............................................   17
    3. Analogous case law.......................................   18

2

*Ex#. A*

i

III. THE FACT THAT BRADSHAW PURPOSEFULLY
AVOIDED MAIL SERVICE IS RELEVANT AND
SHOULD HAVE BEEN CONSIDERED...................... 19

IV. DEFENDANT WAIVED ANY DEFECT OF
SERVICE BY APPEARING THROUGH COUNSEL
AND BY FAILING TO CHALLENGE SUFFICIENCY OF
PROCESS ......................................................... 23

V. THESE ISSUES HAVING ALREADY BEEN
HEARD AND DETERMINED, THE LAW OF THE
CASE DOCTRINE APPLIES TO PREVENT
GRANTING THIS MOTION................................. 26

CONCLUSION.......................................... .... 28

ADDENDUM

Rule 60, Commonwealth Rules of Civil Procedure

Polargrid LLC v. Videsh Sanchar Nigam Limited,
2006 U.S. Dist. LEXIS 17531 (D.C. S.D.N.Y April 7, 2006)



*Ex.H. A*

ii

# TABLE OF AUTHORITIES

CASES.                                                                      PAGE

*American Bankers Ins. Co of Fla. v. Northwestern Nat. Ins. Co.,*
198 F.2d 1332 (11th Cir. 1999) .......................................................   1

*Bankers Mtg. Co. v. U.S.,* 423 F.2d 73 (5th Cir. 1970)...........................   10, 12

*Benny v. Piper,* 799 F.2d 489 (9th Cir. 1986) .....................................   26

*Bruley v. Lincoln Property Co.,* 140 F.R.D. 452 (D.C. Colo. 1991)....................   16

*Camacho v. J.C. Tenorio Enters., Inc.,* 2 N.M.I. 407 (MP 1992) ............................   27

*Carteret Sav. & Loan Asso., F.A. v. Jackson,* 812 F.2d 36 (1st Cir. 1987) ...................   12

*Cherry v. Hefferman,* 182 So. 427 (Fla. 1938) ...........................................   20

*Commonwealth Ports Auth. v. Hakobotan Saipan Enter. Inc,* 2 N.M.I. 212 (MP 1991)....   16

*Corn V. Guam Coral Co.,* 318 F.2d 622 (9th Cir. 1963)......................................   9

*Creadick v. Keller,* 160 A. 909 (Del. 1932) .....................................   20

*Dee-K Enterprises, Inc. v. Heveafil SDN.BHD,* 174 F.R.D. 376 (E.D. Va. 1997) .........   18

*Export Group v. Reef Indus., Inc.,* 54 F.3d 1466 (9th Cir. 1995) ..............................   1

*Florez ex rel Wallace v. Callahan,* 156 F.3d 438 (2nd Cir 1998) ..............................   29

*Gasior v. Wentz,* 89 N.W.2d 886 (N.D. 1958) ........................................   25, 26

*Giles v. Giles,* 37 P.3d 589 (Haw. App. 2001).........................................   10

*In re Grant,* 52 F.2d 223 (M.D.N.C. 1931)......................................................   26

*Griffin v. Fed. Deposit Ins. Corp.,* 831 F.2d 799 (8th Cir. 1987)..............................   12

*Humanetics, Inc. v. Kerwit Medical Products, Inc.* 709 F.2d 942 (5th Cir 1983) ............   12

*Levinsky v. State,* 503 A.2d 534 (Vt. 1985) .......................................   11, 12

*Lockwood v. Bowles,* 46 F.R.D. 625 (D.C. D.C. 1969).........................................   13

*Majnas v. Commonwealth,* 1 N.M.I. 400 (MP 1990) .........................................   17

*Merriott v. Whitsell,* 476 S.W.2d 230 (Ark. 1972) ...........................................   20



iii

*Ex.H. A*

*Middleton v. McDonald*, 388 F.3d 614 (8th Cir. 2004) ........................................... 12

*N.C. v. W.R.C.*, 317 S.E.2d 793 (W. Va. App. 1984) .. ........... .. . . ............. ...... 12

*National Surety Co. v. State Bank*, 120 F 593 (8th Cir.1903) .................................. 12

*Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939 (10th Cir. 1987)........................ 22

*Pangelinan v. Itaman*, 4 N.M.I. 114 (MP1994) ................................................ 11

*Patel v. Southern Brokers, Ltd.*, 289 S.E.2d 642 (S.C. 1982) .................................. 20

*Polargrid LLC v. Videsh Sanchar Nigan Ltd.*, 2006 U.S. Dist. LEXIS 17531
  (S.D.N.Y April 7, 2006)........................................................................ 18

*Resource Ventures, Inc. v. Resources Mgmt. Int'l., Inc.*, 42 F. Supp. 2d 423 (D. Del. 1999)    18

*In re Estate of Rofag*, 2 N M.I. 18 (MP 1991)................................................... 16

*Sablan v. Cabrera*, 4 N.M.I. 133 (MP 1994) .................................................... 1

*Silverman v. Eastrich Multiple Investor Fund, L.P.*, 51 F.3d 28 (3rd Cir. 1995) .......... 29

*Sirok v. Rotec Engineering*, 1 CR 1065 (D.C. N.M.I. 1984).................................... 15

*State v. Raper*, 736 P.2d 680 (Wash. App. 1987) ...... . . ...... 10

*Sullivan v. Tarope*, 2006 MP 11 P33 ............................................................ 12, 13

*In re Estate of Tudela*, 4 N.M.I. 1 (MP 1993), *appeal dis.*, 43 F.3d 1479 (9th Cir. 1994)..... 1

*Tudela v. Marinas Pub. Land Corp.*, 1 N.M.I. 179,184 (MP1990) ............................. 10, 17

*Untied States v. Alexander*, 106 F.3d 874 (9th Cir. 1997) ...................................... 27, 28

*United States v Reggerty*, 524 U.S. 38, 141 L.Ed.2d 32, 118 S.Ct. 1862 (1998) ............ 11

*U.S.A. v. Pauly*, 321 F.3d 578 (6th Cir. 2003) .................................................. 1

*Wax v. Van Marter*, 189 A. 537 (Pa. Super. 1936) .......... . ............. ............ 22

*Wobol v. Villacrusis*, 4 N.M.I. 314 (MP 1995) .................................................. 27



*Exh. A*

iv

## STATUTES AND RULES

1 Commonwealth Code
      Section 3201 ................................................................... 1
      Section 3202 ................................................................... 1
      Section 8153 ................................................................... 25

7 Commonwealth Code
      Section 1102 ................................................................... 15, 16
      Section 1104 ................................................................... 15, 21

Commonwealth Rules of Civil Procedure
      Rule 4(d) ........................................................... 21
      Rule 4(c) ........................................................... 14
      Rule 4(k) ........................................................... 16-18
      Rule 4(m) ........................................................... 16
      Rule 12(h)(1) ........................................................... 24
      Rule 60(b) ........................................................... 8-12

Commonwealth Rules of Evidence
      Rule 201 ................................................................... 27

Federal Rules of Civil Procedure
      Rule 4(f) ................................................................... 18

Rules of the Ninth Circuit Court of Appeals
      Rule 39-3 ................................................................... 21

## OTHER AUTHORITIES

Advisory Committee Notes, 1993 Amendments to the Federal Rules of Civil Procedure ...... 9, 21

7 C.J.S., Attorney and Client, § 80................................................ 26

7 J. Moore's Federal Practice, ¶60.30[3] ................................................ 1

11 Wright and Miller, Federal Practice and Procedure §2868 (1973)................................................ 12

Note, *Constitutional Law: The Validity of Service of Process by Mail When There is
No Return Receipt: The Outer Limits of Due Process*, 25 Okla. L. Rev. 566 (1972) ........... 22

$\boxed{6}$

*Exh. A*

v

## ISSUE PRESENTED

Whether the Superior Court properly granted the motion to vacate the judgment entered on March 10, 2000 against defendant, Robert D. Bradshaw.

## STANDARDS OF REVIEW

Orders granting relief under Rule 60(b) are reviewed for abuse of discretion; however, to the extent the decision to grant or deny the motion is based on questions of law, they are reviewed de novo. *Export Group v. Reef Indus., Inc.*, 54 F.3d 1466, 1469 (9th Cir. 1995); *U.S.A. v. Pauly*, 321 F.3d 578 (6th Cir. 2003).

Issues involving construction and application of a statute are reviewed de novo on appeal. *In re Estate of Tudela*, 4 N.M.I. 1 (MP 1993), *appeal dismissed*, 43 F.3d 1479 (9th Cir. 1994).

To the extent the issues present application of fact findings to statutes they are mixed questions of law and fact and are reviewable de novo on appeal. *Sablan v. Cabrera*, 4 N.M.I. 133 (MP 1994).

## STATEMENT OF JURISDICTION

A.  Jurisdiction of the Superior Court is authorized by 1 CMC Section 3202.

B.  Jurisdiction of the Supreme Court is founded upon 1 CMC Section 3102. Appeal is from an order granting a motion to vacate a judgment under Rule 60 (b), Commonwealth Rules of Civil Procedure. An order granting or denying relief under Rule 60(b) is final and appealable. *American Bankers Ins. Co of Fla. v. Northwestern Nat. Ins. Co.*, 198 F.2d 1332, 1338 (11th Cir. 1999), citing, 7 J. Moore's Federal Practice, ¶60.30[3] at 60-343.

C.  The Order Granting Robert Bradshaw's Motion to Vacate Judgment was entered on December 29, 2005. Notice of Appeal was timely filed on January 30, 2006.

7

*EXH. A*

1

## STATEMENT OF THE CASE

Bisom first filed this case in the United States District Court for the Northern Mariana Islands on November 14, 1995 against the Commonwealth of the Northern Marian Islands, Robert D. Bradshaw, former Temporary Public Auditor, and Scott Tan, former Public Auditor.

On November 6, 1996 on motion of defendants, the district court entered Order Granting Defendants' Motion for Judgment on the Pleadings and Dismissing Remaining Claims for Lack of Jurisdiction. During the time the case was pending in federal court plaintiff took the deposition of Bradshaw over two days in September, 1996 in the city of Spokane, Washington.

The case having been dismissed for lack of jurisdiction from federal court, Bisom filed the case in CNMI Superior Court on December 5, 1996.

The case then went through three years of pretrial motions and maneuvers, including twice being removed to U.S. District Court by the Attorney General, on behalf of all defendants. Both times the case was remanded back to Superior Court. Defendants also filed a motion to dismiss, resulting in the Decision and Order on Defendants' Motion for Lack of Personal Jurisdiction and Failure to State a Claim and on Defendants' Motion for a More Definite Statement filed November 6, 1998. Bisom's fourth and final amended complaint was filed on November 18, 1998. [ER 1][1]

The case came on for jury trial on February 7, 2000. The first matter taken up was defendants' Motion to Remove Case from Trial Docket, arguing that because defendant Bradshaw had not yet been served, the case should go off calendar. [ER 29-34]. Order Denying Motion to Remove Case from Trial Docket was filed on February 22, 2000, effective nunc pro tunc to February 7, 2000. [ER 42]. On February 14, 2000 at the request of plaintiff default was entered as to defendant Robert D. Bradshaw. [ER 39-41].

---

[1] Items marked "ER" are referenced to the Excerpts of Record.



*EXH. A*

The jury returned its general verdict on special findings on February 25, 2000 in favor of plaintiff as to defendants Robert D. Bradshaw and the CNMI, and in favor of defendant Scott Tan. [ER 45-48]. Order and Judgment was entered on March 10, 2000 for $139,000 against Robert D. Bradshaw and for $110,300 against the CNMI. [ER 49]. By Decision and Order entered June 7, 2000 attorney's fees in the amount of $33,078.28 were awarded against Bradshaw and Bisom's request for findings of indemnity were denied. [ER 51].

Appeals by plaintiff on issues of damages and indemnification were unsuccessful *Bisom v. Commonwealth*, 2000 MP 19. Cross-appeal by defendants was filed and later abandoned. Acknowledgment of Full Satisfaction of Judgment as to defendants CNMI and Leo LaMotte, Public Auditor, in his official capacity was filed on March 14, 2003.

Bisom also appealed the dismissal of the federal claims by the district court to the Ninth Circuit Court of Appeals. *Bisom v. C.N.M.I. et al.*, Ninth Circuit Appeal No. 96-17369. That appeal resulted in the dismissals being sustained by unpublished memorandum filed September 9, 1998. It should be noted that at the times pertinent to the issues brought by this motion, the Attorney General was the attorney of record for defendant Bradshaw in that appeal and was actively representing him in the federal action.

Bradshaw filed Motion to Void/Vacate Judgment on March 16, 2005. [ER 60]. However, no notice of hearing for the motion was filed until July 7, 2005. Bradshaw filed a Request Leave of Court to Amend Motion to Void/Vacate Judgment on May 27, 2005 along with an Amended Motion to Void/Vacate Judgment appending additional affidavits. [ER 90]. Bisom filed opposition to the motion to vacate on July 21, 2005. Bradshaw subsequently filed four different sets of papers titled answers and amended answers to the opposition. The motion was finally heard on October 4, 2005. The Superior Court entered Order Granting Robert Bradshaw's Motion to Vacate Judgment on December 29, 2005. [ER 99]. Notice of appeal was timely filed January 30, 2006. [ER 115].

*Exh. A*

3

### STATEMENT OF FACTS[2]

In March, 1993 Bisom signed an Excepted Services Employment Contract to be Legal Counsel to the Office of the Public Auditor (OPA) for a two year period. [Ex C]. He began work on April 24, 1993 under the Public Auditor, Scott Tan.

On November 25, 1993 Tan's term of office as Public Auditor expired. [Ex AZ]  On November 26, 1993 Bradshaw was appointed Temporary Public Auditor. [Ex. L]  Bradshaw had been working at the Department of Finance as a special assistant to the Director of Finance. [Ex. BA].  Bradshaw was appointed by Governor Guerrero, who had earlier that month, lost his bid for re-election, and whose term of office was to end on January 10, 1994.

At the time that Bradshaw took office OPA was in the process of organizing and beginning to implement the year-end audit of the CNMI government for the fiscal year that ended September 30, 1993. The amount of the budget deficit that had been incurred by the government had been a key issue in the previous gubernatorial campaign. Accordingly, the out-going administration had an incentive to minimize that finding, and likewise, the incoming administration would find more political ammunition in a higher dollar amount. On his first day in office, November 29, 1993, Bradshaw addressed the whole OPA staff and told them that one of his priorities was to complete the audit before the end of Governor Guerrero's term.

During the first several days that Bradshaw was in the office, Bisom was confused and uncertain about the legality of Bradshaw's appointment and, therefore, his authority to act as Public Auditor. This was for several reasons:

First, he had been told previously by Scott Tan that Tan's term of office did not expire until the end of December, 1993, and so Bisom could not understand how someone else could

---

[2] The trial testimony has never been transcribed. In the prior appeal an agreed statement of facts was prepared to address a limited part of the testimony relevant to the evidentiary and damages issue then presented, but not relevant to the issues in this appeal. References labeled "Ex" herein are to trial exhibits.

*Ex.H. A*

4

be appointed. This situation was exacerbated by the fact that at the time of Bradshaw's appointment and his assuming office, Tan was gone from the Commonwealth, having taken a trip to Hong Kong with the governor-elect, Froilan Tenorio, who was a friend of Tan; so Tan was not available to consult with.

Secondly, Bisom was told by Bradshaw on the morning of Bradshaw's first day at OPA, that Bradshaw had previously been the Public Auditor in 1979 and 1980, that at that time he filed suit against the government under his employment contract, that the case was settled, and as part of the settlement, Bradshaw had agreed that he would not be reappointed as Public Auditor.

Thirdly, Bisom believed that Bradshaw had not completely severed his ties with the Department of Finance (DOF), but, in fact, had regular communication with the Director of Finance, who had been Bradshaw's superior at DOF. Also, Bradshaw had told him that he was at OPA on a temporary basis, and he was still going to be paid by DOF. Because DOF would be the agency of central focus for the audit, Bisom saw this as a major conflict of interest on the part of Bradshaw.

Bisom had an acute awareness of problems of conflicts of interest by government officials because under the Government Ethics Code Act of 1992 (1 CMC § 8501 et seq.) the Public Auditor was charged with various duties, including investigation, hearings and reports of charges of violations of that act. Tan had put Bisom in charge of the fulfilling OPA's duties in this regard.   In fact, in fulfilling those duties, he had undertaken some investigations and made some findings that resulted in animosities with members of the out-going administration.

On the afternoon of November 29, 1993, the first day Bradshaw was at OPA, there was a meeting with several people who would be involved in the year-end audit, including personnel from the accounting firm of Deloitte and Touche, then the only firm that had submitted a bid for the audit. Bisom accompanied Bradshaw to the meeting. At the meeting

*Exh. A*

5

Bradshaw announced that the contract to conduct the audit was awarded to Delloitte and Touche, and he emphasized the need to have it completed quickly and finished before the end of December. At the meeting Bisom addressed the group and said he believed it would be wrong to go forward because there had only been one bidder for the contract, that he did not see any need to finish the audit so quickly, and that he thought it could not be done adequately if rushed.

Also on that first day Bisom talked to Bradshaw about taking leave. He had two things for which he needed time off from work. One was to get medical attention in Guam for a lump on his left arm. The other was to go to Japan, his point of hire, to get his personal effects and arrange shipment, for which he had not had time to arrange before then. He had procured an extension until December 31, 1993 to do this. [Ex. H]. He told Bradshaw that this leave had already been approved by Tan.

During the time that Bisom was out of the office Bradshaw wrote a series of letters to him. There were twenty of them. Among them was one dated December 6, 1993 terminating his contract without cause. [Ex. DDD]. Later, by letter of December 28, 1993 Bradshaw terminated Bisom's contract again, this time with cause [Ex. AAA]. In between these letters Bradshaw had the termination without cause rescinded. [Ex. BB]. The significance of termination with cause was to disqualify Bisom from having his shipping and repatriation costs, and require him to vacate his government housing a day earlier. [Ex. AO]. The letter of termination for cause has twelve attachments, which are prior letters of Bradshaw to Bisom in which he charged Bisom with various wrongs.

Bisom and Bradshaw were in the office together for only two days. Bisom was out of the office from December 3 through 5, first on medical leave for minor surgery, then on annual leave. Bisom did come to the office on December 1 to turn in his government car, which he had been ordered to do. [Ex O]. He also came to the office on December 7, which is when he learned his employment had been terminated. He also learned of several

6

restrictions on his office activities and authority, as outlined in Bradshaw's letter dated December 3, 1993 and memo of the same date. [Ex. N, Ex. CCC] He also learned that he had been moved out of his office and had his work space put in a hallway on a typing table without a telephone. This too was directed by a letter. [Ex. EEE]. When Bisom learned this he felt that he was put in a position where he could not do his job, which included handling ethics complaints that required confidentiality. He saw no purpose in going back to the office after that. Bisom had retained an attorney for himself, Richard W. Pierce, who wrote Bradshaw to tell him that because of his harassment, Bisom would be on annual leave then leave without pay until January 15, 1994. [Ex. Q].

In two separate letters Bradshaw told Bisom that he planned to report Bisom to the Attorney General for criminal prosecution and to the CNMI Bar Association for ethical violations. {Ex. AAA, attachments E and F}. Criminal charges were never brought, but Bradshaw did file a formal complaint with the Bar Association's ethics committee. The charges were numerous and it took about a year before the investigation was completed. Eventually there was a finding by the ethics committee that the charges had no basis.

Bradshaw also sent a letter to the newspapers that outlined his charges in the complaint to the bar. It appeared in the Pacific Star on December 24, 1993. [Ex. T]. So knowledge that Bisom was fired and investigation into his ethical qualifications became public.

Bradshaw left Saipan in early January, 1994, before the Tenorio administration took office. He never returned to the CNMI. He did get the year-end audit for fiscal 1993 completed before he left, getting it done faster than any audit done up until the trial. [Ex. AP].

Scott Tan was appointed by the new governor to be Temporary Public Auditor. [Ex. AZ]. Tan asked Bisom to come back to OPA, which Bisom did for a period of days in January. However, because his employment had been officially terminated, he could not function as a lawyer. [Ex. AB]. What procedure to use to rehire him became an issue. [Ex.

13

EXH. A

AC]. The process of rehiring dragged on and eventually the relationship between Tan and Bisom soured. In mid-March Bisom learned he would not be rehired at OPA.

Bisom tried to find other work as a lawyer, but because of the fact that he had been terminated from his job and had an outstanding ethics complaint against him, he could find none. Even after the complaint was dismissed he was unable to find work in the legal profession. Eventually he left Saipan to return to Japan to teach English, where he remains.

## ARGUMENT

### I. RULE 60 (b) DOES NOT AUTHORIZE VACATING THIS JUDGMENT BY MOTION BROUGHT MORE THAN ONE YEAR AFTER ENTRY

A. The requirement for an independent action was ignored.

Bradshaw based his motion to void or vacate the judgment against him on the allegation that he had never been properly served, and that any proof of service on him was "obtained by alleged fraud and conspiracy and gross incompetence, malfeasance and malpractice on the part of some or all of the various parties involved at the trial in the CNMI in February-March 2000." [Motion to Void/Vacate Judgment, p.4, ¶10; ER 63].

Other than making reference to certain constitutional principles in very general terms, the moving papers do not cite any legal basis for vacating or voiding the judgment. However, relief from judgments or orders is governed by Rule 60 of the Commonwealth Rules of Civil Procedure. Under subsection (b) of that rule, all such motions "shall be made within a reasonable time," and where the basis is under any of the first three provisions of that subsection, including subsection (3), "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party," then the motion must be "not more than one year after the judgment, order, or proceeding was entered or taken."

The judgment against Bradshaw was entered on March 10, 2000. [ER 49]. Bradshaw filed his motion to void/vacate the judgment five years later on March 16, 2005. [ER60]. The

*Exh. A*

8

one year time limitation began when judgment was entered. *Curn V. Guam Coral Co.,* 318 F.2d 622, 629 (9th Cir. 1963).

The Superior Court order (herein referred to as "the order" or "the SC order") gets around this time limitation by referring to the so-called "savings provision" of the Rule 60(b), which states: "This rule does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant not actually personally notified as provided by law, or to set aside a judgment for fraud upon the court." The order concludes that since Bradshaw claims he was not personally notified as provided by law and because he claims a fraud upon the court, the fact that more than one year passed "does not limit the Court's ability to grant relief."  [Order, p.7, 1.22; ER 105].

There are several fallacies at work in this reasoning. First, it ignores pivotal language in Rule 60(b) that does, in fact, limit the power of the court. While the order emphasizes that part of the rule with the words "actually personally notified as provided by law," it completely ignores the language that says the power of the court is "to entertain an independent action." Here Bradshaw did not bring an independent action. Rather, he brought a motion in the context of the original action. This is not an unimportant distinction. This is a critical distinction.

The Advisory Committee notes to Federal Rule of Civil Procedure makes clear that two separate procedures are contemplated by Rule 60(b):

> Two types of procedure to obtain relief from judgments are specified in the rules ... One procedure is by motion in the court and in the action in which the judgment was rendered. The other procedure is by a new or independent action to obtain relief from a judgment, which action may or may not be begun in the court which rendered the judgment. ... In each case there is a limit upon the time within which resort to a motion is permitted, and this time limit may not be enlarged under Rule 60(b). If the right to make a motion is lost by the expiration of the time limits fixed in these rules, the only other procedural remedy is by a new or independent action to set aside a judgment...

/15/

*EXH. A*

9

This important distinction was explained in more detail in *Bankers Mtg. Co. v. U.S.*, 423 F.2d 73 (5th Cir. 1970):

> Rule 60(b) contemplates two distinct procedures for obtaining relief from a final judgment. The first is by motion...This procedure is intended to completely replace the ancillary common law and equitable remedies of coram nobis, coram vobis, audita querela, bill of review and bill in the nature of bill of review, which are specifically abolished by this rule. The motion for relief from final judgment must be filed in the district court and in the action in which the original judgment was entered. No independent jurisdictional ground is necessary because the motion is considered ancillary to or a continuation of the original suit.
>
> .....
>
> The second procedure contemplated by Rule 60(b) is an independent action to obtain relief from a judgment, order, or proceeding. The first saving clause specifically provides that 60(b) does not limit the power of the court to entertain such an action. It is important to emphasize that "independent action," as used in this clause, was meant to refer to a procedure which has been historically known simply as an independent action in equity to obtain relief from a judgment. This action should under no circumstances be confused with *ancillary* common law and equitable remedies or their modern substitute, the 60(b) motion.

*Id.* at 77-78, (footnotes omitted). (Emphasis in original)

As one appellate court has observed: "Clearly, an 'independent action' is not a motion." *Giles v. Giles*, 37 P.3d 589, 601 (Haw. App. 2001). An independent action should not be filed in the original case, but filed separately, with a separate case number. *Id.*

The order notes. "CNMI courts consider the interpretation of counterpart federal rules to be highly persuasive in interpreting Commonwealth procedural rules." Order, p. 11, line 3-4, citing *Tudela v. Marinas Pub. Land Corp.*, 1 N.M.I. 179,184 (MP1990) [ER 109]    The *Tudela* case also states: "A basic principle of construction is that language must be given its plain meaning. When the language of a court rule is clear, we will not construe it contrary to its plain meaning." *Id.* at 185, citing *State v. Raper*, 736 P.2d 680 (Wash. App. 1987). The plain meaning of Rule 60(b) requires that in order for relief from a judgment on grounds of fraud be given to someone seeking it after one year from the judgment's entry, then it must be

10

*Exh. A*

done by bringing a new and independent action. This was not done here. Thus, the trial court's order did not apply the correct law, thereby committing an abuse of discretion. *Pangelinan v. Itaman,* 4 N.M.I. 114,118 (MP1994) (The trial court abuses it discretion and may be reversed when it bases its decision on a clearly erroneous finding of fact, or if it does not apply the correct law.)

B.  The correct standard to determine whether to grant relief under the independent action clause of Rule 60(b) was not employed.

There is good reason to pay attention to the distinction made in Rule 60(b) between motions and independent actions in equity. In *United States v. Beggerly,* 524 U.S. 38, 141 L.Ed.2d 32, 118 S.Ct. 1862 (1998) the U.S. Supreme Court explained that independent actions must not be allowed to subvert the one year statute of limitations for Rule 60 motions:

> If relief may be obtained through an independent action in a case such as this, where the most that may be charged against the Government is a failure to furnish relevant information that would at best form the basis for a rule 60(b)(3) motion, the strict 1-year time limit on such motions would be set at naught. Independent actions must, if Rule 60(b) is to be interpreted as a coherent whole, be reserved for those cases of injustices which, in certain instances, are deemed sufficiently gross to demand a departure from rigid adherence to the doctrine of res judicata.

*Beggerly,* 524 U.S. at 46. The court concluded that "…under the Rule, an independent action should be available only to prevent a grave miscarriage of justice." *Id.* at 47.

The Supreme Court of Vermont has addressed the scope of the clause: "the independent action clause in Rule 60(b) simply preserves the historical authority of the courts of equity to reform judgments in special circumstances. However, this catch-all provision is available only when a ground justifying relief is not encompassed within any of the first five classes of the rule." *Levinsky v. State,* 503 A.2d 534, 536 (Vt. 1985)(internal quotation marks omitted.) As to the reason the power to grant relief is limited to "special circumstances," it reasoned: "This power has been and must continue to be exercised guardedly, as it carries with it an inevitable clash of two competing principles of judicial administration: the

*EXH. A*

11

principle of finality and repose of judgments, which is so fundamental to our system of justice, and the ultimate principle that justice must be done unto the parties." *Id.* at 536-37.

In order to preserve these principles, i.e. retaining some meaning to the one-year time limitation in Rule 60(b)(1) through (3) and giving due regard for finality of judgments, courts that have addressed the issue have uniformly set forth stringent parameters to sustain such an independent action. The essential elements are:

> (1) a judgment which ought not, in equity and good conscience, to be enforced; (2) a good defense to the alleged cause of action on which the judgment is founded; (3) fraud, accident, or mistake which prevented the defendant in the judgment from obtaining the benefit of his defense; (4) the absence of fault or negligence on the part of defendant; (5) the absence of any adequate remedy at law.

*National Surety Co. v. State Bank,* 120 F 593, 599 (8th Cir. 1903); *Levinsky,* 503 A.2d at 537; *Bankers Mtg. Co,* 423 F.2d at 79; *Carteret Sav. & Loan Asso., F.A. v. Jackson,* 812 F.2d 36, 39 n.6 (1st Cir. 1987); *N.C. v. W.R.C.,* 317 S.E.2d 793, 797 (W. Va. App. 1984). These have been termed "indispensable elements" required for an independent action in equity. *Humanetics, Inc. v. Kerwit Medical Products, Inc.* 709 F.2d 942, 943 (5th Cir. 1983), quoting 11 Wright and Miller, Federal Practice and Procedure §2868, at 238 (1973). [3]

*Middleton v. McDonald,* 388 F.3d 614 (8th Cir. 2004) upheld the denial of a Rule 60(b) motion on the grounds of timeliness where the plaintiff sought in 2003 to set aside a settlement and dismissal entered in 1999. In doing so, the plaintiff's request to avoid the time limitations by having his motion construed as an independent action was addressed. In denying the request, the opinion, pointing to the "heavy burden" entailed, said that in order to have an independent action entertained the movant "must show that it would be manifestly unconscionable to enforce the judgment." *Id.* at 618, quoting from *Griffin v. Fed. Deposit Ins. Corp.,* 831 F.2d 799, 803 (8th Cir. 1987).

---

[3] This court recently quoted this five-part test laid out by the Eighth Circuit in 1903, noting that it "is still viewed by some courts and commentators as a valid description of an independent action." *Sullivan v. Tarope,* 2006 MP 11 P33



*EXH. A*

Even if this had been an independent action seeking relief from the judgment, the trial court would have abused its discretion by failing to apply the correct law in that it did not apply the five elements set forth above, nor did it insist on Bradshaw showing that there was a grave miscarriage of justice or that enforcement would be unconscionable.

C.  The erroneous application of Rule 60(b) was prejudicial.

In support of his motion Bradshaw submitted three affidavits of his own testimony, three other affidavits and thirteen pieces of correspondence. [ER 60-98].  From the recitation of the factual and procedural background in the SC order, it appears that the Superior Court accepted the representations in those self-serving affidavits and accepted that the letters attached to the motion were genuine and presented all that was relevant to the issue.  For example, the SC order quotes Bradshaw's Answer to Plaintiff's Opposition of Vacate to the effect that Bradshaw maintained a business and was available to be served personally at the relevant times, accepting this representation as fact even though it is not even in the form of an affidavit, but was included in a what is a reply memorandum.  [Order p.10;ER 108].

Because Bradshaw sought relief by way of motion rather than in the form of an independent action, Bisom did not have the opportunity to cross examine Bradshaw on any of his representations, nor did he have the tools of discovery at his disposal to develop any evidence.  He was not able to determine, for example, whether there was other correspondence in the files of the Attorney General that Bradshaw was ignoring.  In the proper form of a separate case, he would have been able to do that.

In addition to evidentiary issues, an important aspect of such actions in equity is that "[i]ndependent actions may be barred through laches." *Sullivan v. Tarope*, 2006 MP 11 P33.  "That doctrine serves as a bar when the party seeking relief has not exercised due diligence in presenting his claim or defense, and the opposing party has been prejudiced by such delay." *Lockwood v. Bowles*, 46 F.R.D. 625, 629 (D.C. D.C. 1969).  Bradshaw never explained why it took five years for him to bring this matter to court.  Yet, the superior court's order does not

13

*Exh. A*

address this long delay in any way.  Neither was there any opportunity for Bisom to

demonstrate prejudice, which after five years could include such key items as the loss of

witnesses, as well as the relocation of parties and counsel.  In the context of an independent

action, the factual basis for laches could have been developed and presented.

## II.  THE TRIAL COURT'S CONCLUSION THAT BRADSHAW WAS NOT PROPERLY SERVED IS BASED ON A MISINTRPRETATION OF COM.R.CIV.P 4

A.  The trial court ignored several applicable sections dealing with service of process of out-

of-state defendants.

Service of process upon persons within the United States is governed by Com.R.Civ.P.

4(e), which provides, in pertinent part:

> Unless otherwise provided by Commonwealth law, service
> upon an individual...may be effected in any jurisdiction in the United
> States (including the Commonwealth);
>    (1) in any manner proscribed or authorized by any law of the
> Commonwealth; or
>    (2) by delivering a copy of the summons and of the complaint
> to the individual personally or by leaving copies thereof at the
> individual's dwelling house or usual place of abode with some person
> of suitable age and discretion then residing therein or by delivering a
> copy of the summons and of the complaint to an agent authorized by
> appointment or by law to receive service of process.

The SC order concludes that certified mail sent to Bradshaw was not effective because

it "did not conform to 1996 Commonwealth Rules of Civil Procedure or the Washington State

Rules of Civil Procedure." [Order p. 8, ER 106]   In arriving at this conclusion the trial court

quotes Rule 4(e)(2), but does not quote, and, in fact, ignores the language in Rule 4(e)(1).

Because that rule allows any manner of service authorized by "any law of the

Commonwealth," that would include the manner proscribed in 7 CMC §§1102 and 1104.

Even though Bradshaw was no longer residing in the Commonwealth when this case

was filed, he was nevertheless subject to the jurisdiction of the CNMI courts by virtue of

7 Commonwealth Code, Division 1, Chapter 1, Section 1102, our "so-called long-arm

*EXH. A*

14

statue." *See, Sirok v. Rotec Engineering*, 1 CR 1068, 1072 (D.C. N.M.I. 1984).   Because the events complained of by Disom occurred in the Commonwealth while Bradshaw was present therein, there is no question but that personal jurisdiction over Bradshaw existed. 7 CMC § 1102 (1), (4), and (5).   In fact, in the four and a half years of litigation leading up to the trial, this issue was never contested.

Subparagraph (b) of section 1102 reads: "Service of process upon any person who is subject to the jurisdiction of the courts of the Commonwealth, as provided in this section, may be made as provided by 7 CMC § 1104, if the person cannot be found in the Commonwealth, with the same force and effect as if process had been personally served within the Commonwealth."   Section 1104(a) says, in pertinent part:  "When service of process is provided by 7 CMC §§ 1102 and 1103, service shall be made by leaving a certified copy with the Attorney General,...; provided, that notice of the service and a copy of the summons and of the complaint are served upon the defendant personally...; *or sent by certified or registered mail, postage prepaid, with return receipt requested, by the plaintiff or the plaintiff's attorney to the defendant*." (Emphasis added).

The Order overlooks these statutes and rules completely.  Had the Superior Court taken cognizance of these provisions, it could not have concluded that CNMI law did not allow for service on defendants outside the Commonwealth by certified or registered mail.

D.   CNMI law regarding service on nonresident defendants does not require compliance with the service provisions of the statutes and rules of the state where the defendant is residing.

The SC order concludes that Bradshaw was not legally served by receipt of the packages with summons and complaint he saw and refused because the procedure employed did not comply with the specifications of service in the statutes and rules of the state of Washington, where Bradshaw was residing at the time. [Order, pp. 8-9; ER 106-107].

This conclusion is premised on the language in Com.R.Civ.P. 4(k): "All process may be served anywhere within the Commonwealth, and, when not prohibited by law, beyond the

*Exh. A*

21