APPEAL NO. 06-0006 GA

## IN THE SUPREME COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM                          )    Appeal No. 06-0006 GA
                                         )
    Appellant                        )
                                         )
vs.

COMMONWEALTH OF THE NORTHERN             )
MARIANA ISLANDS; ROBERT D.               )
BRADSHAW, former Temporary Public        )
Auditor, in his individual capacity, et al.  )
                                         )
    Appellee                         )
———— ——    ————————————)


APPEAL FROM THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

Judge Juan T. Lizama, Associate Judge


## BRIEF OF THE APPELLEE


**Robert D. Bradshaw**
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691
Appellee, Pro Se

[43]

*EXHIBIT B*

# TABLE OF CONTENTS

|  | Page |
|---|---|
| TABLE OF AUTHORITIES | iv-vi |
| STATEMENT OF THE ISSUES PRESENTED (Omitted) | |
| STATEMENT OF THE CASE (Omitted) | |
| STATEMENT OF FACTS | 1 |
| ARGUMENT | |
|     GENERAL COMMENTS ON THE BRIEF'S ARGUMENTS | 6 |
|     BISOM'S ISSUE I. RULE 60(b) DOES NOT AUTHORIZE VACATING THIS JUDGMENT BY MOTION BROUGHT MORE THAN ONE YEAR AFTER ENTRY | 9 |
|     BISOM'S ISSUE II. THE TRIAL COURT CONCLUSION THAT BRADSHAW WAS NOT PROPERLY SERVED IS BASED ON A MISINTERPRETATION OF COMM.R.CIV.P 4 | 10 |
|     BISOM'S ISSUE III. ALLEGING THAT BRADSHAW PURPOSEFULLY AVOIDED MAIL SERVICE IS RELEVANT AND SHOULD HAVE BEEN CONSIDERED | 12 |
|         A. Backdrop on State Laws and the Cases | 12 |
|         B. The CNMI Situation | 21 |
|     BISOM'S ISSUE IV. DEFENDANT WAIVED ANY DEFECT OF SERVICE BY APPEARING THROUGH COUNSEL AND BY FAILING TO CHALLENGE SUFFICIENCY OF PROCESS | 33 |
|     BISOM'S ISSUE V. THE ISSUES HAVING ALREADY BEEN HEARD AND DETERMINED, THE LAW OF THE CASE DOCTRINE APPLIES TO PREVENT GRANTING THIS MOTION | 34 |
| CONCLUSION | 34 |
| CERTIFICATE OF SERVICE | 36 |

[44]

*Exh. B*

ii

## ADDENDUM

CASES:

Cherry v. Heffernan, 182 So. 427-432 (FL 1938)                                A1

Creaddick v. Keller, 160 A.909-911 (Del 1932)                                 A5

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972)                          A7

Nikwel v. Ross School of Aviation Inc., 822 F 2d 939-946 (10th Cir, 1987) A11

Patel v. Southern Brokers, Ltd, 289 S. E. 2d 642-645 (SC 1982)              A19

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936)                          A23

Dahl v. Kanawha Inv. Holding Co., 161 F.R.D. 673-686, N.D. Iowa 1995) A26

LSJ Investment Co. v. O.L.D. Inc., 167 F 3d 320-325 (6th Cir, 1999)        A40

Schnabel v. Wells, 922 F 2d 726-729 (11th Cir, 1991)                        A46

Harper MacLeod Solicitors v. Keaty, 260 F 3d 389-400 (5th Cir, 2001)    A50

*Exh. B*

iii

# TABLE OF AUTHORITIES

## CASES                                                                              PAGE

Bisom v. Commonwealth of the Northern Mariana Islands, et al.
    CNMI Case 96-1320                                              16, 17, 18
                                                                                      19, 28, 36

Bisom v. Commonwealth of the Northern Mariana islands, et. al.
    CNMI Supreme Court Case 2000-016, 2000-023 (Consolidated)      34

Bradshaw v. Commonwealth of the Northern Mariana Islands, et. al.
    US District Court, Idaho Case 05-0084                           22

Bradshaw v. Commonwealth of the Northern Mariana Islands, et. al.
    US District Court, NMI Case 05-0027                             34

Cherry v. Heffernan, 182 So. 427-432 (FL 1938)                                        12, 13, 17

Creaddick v. Keller, 160 A.909-911 (Del 1932)                                         12, 13, 17

Dahl v. Kanawha Inv. Holding Co., 161 F.R.D. 673-686, N.D. Iowa 1995)                 22

Franklin v. Franklin, 365 MO 442 283 S.W. 2d 483, 486                                 35

Harper MacLeod Solicitors v. Keaty, 260 F 3d 389-400 (5th Cir, 2001)                  28, 29, 30,
                                                                                      31

Jackson v. FIE Corp., 302 F. 3d 515 (5th Cir Ct )                                     9

Levin v. Ruby Trading Corp. D.C.N.Y. 1965 F. Supp, 537                                20

LSJ Investment Co. v. O.L.D. Inc., 167 F 3d 320-325 (6th Cir, 1999)                   22, 23

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972)                                  12, 13, 16

Nikwei v. Ross School of Aviation, Inc., 822 F 2d, 939-946 (10th Cir 1987)            13, 17, 18
                                                                                      21

Patel v. Southern Brokers, Ltd., 289 S. E. 2d 642-645 (SC 1982)                       13, 19, 21

Polargrid LLC v. Videsh Sanchar Nigan Ltd, 2006 U.S. Dist, LEXIS 17531
    (S.D.N.Y., April 7, 2006)                                      19, 20, 22

/46/

iv

EXHIBIT B

Schnabel v. Wells, 922 Γ 2d 726-729 (11th Cir, 1991)          22, 23

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936)1          13, 17

Weiss v. Glemp, 127 Wash. 2d 726, 903 P 2d 455 (1995)          28


STATUTES AND RULES:

Comonweath Code, 7 CMC:
    Section 1102                                              10, 21, 23
                                                              26, 31, 32
    Section 1103                                              10, 21, 26,
                                                              32
    Section 1104                                              10, 11, 16
                                                              21, 23, 24,
                                                              26, 32

Commonwealth Rules of Civil Procedure:
    Rule 4                                                    10, 11, 20
    Rule 11                                                   36
    Rule 60(b)                                                9, 10, 34

CNMI Supreme Court Rules:
    Rule 10                                                   8
    Rule 11                                                   8
    Rule 28(m)                                                35
    Rule 30                                                   8
    Rule 31                                                   8
    Rule 38                                                   35
    Rule 39                                                   35
    Rule 42(c)                                                8

Federal Rules of Civil Procedure:
    Rule 8                                                    15
    Rule 12                                                   15
    60(b)                                                     29

Idaho Bar Association Rule 3.1                                9

OK statute 12 O.S. 1971 Section 1702.01(b)                   18

Revised Code of Washington (4.28.80)                         28

Virginia Code section 801-329                                13

*Exh. B*

*47*

**OTHER AUTHORITIES:**

| | |
|---|---|
| CNMI Constitution | 32 |
| The Third Judicial District Glossary of Legal Terms | 35 |
| Uniform Interstate and International Procedure Act (UIIPA) | 14, 15, 16, 18 |
| United States Constitution | 23, 26, 30, 32 |
| Wright & Miller's "Federal Practice and Procedure" | 9, 15, 19, 23, 24 |

*EXH. B.*

/48/

## STATEMENT OF FACTS

Mr Bisom's (hereafter Bisom) outline of facts in his brief is partially correct. But what is missing is primarily that many of the details the brief allege are wrong, misleading and/or deceiving, per Bradshaw's information; and otherwise that Bisom has simply failed to present the exhibits, Excerpts of Records (ER), and proof for statements alleged in his brief.

Thus, his brief has been challenged in the Supreme Court by defendant (hereafter "def") in a separate action. Bisom should either provide his cited exhibits and provide the transcript proof of his assertions on the oral case hearings or the appeal should be dismissed. In terms of just his statement of the facts, here are the main problems.

Problem 1 arises when Bisom alleged that Bradshaw's priority was to complete the audit before the end of Governor Guerrero's term (Bisom's brief, p. 4). Bradshaw said he wanted to proceed with the audit but did not link it to the Governor's term.

Problem 2 arose when Bisom did not report what transpired in a confidential discussion Bradshaw had with Bisom on Bradshaw's first day in the office (ibid. p. 5). Actually, Bradshaw instructed Bisom to go the Attorney General's (AG) office and check the file and see if there were any restrictions which would limit Bradshaw's temporary appointment. Bradshaw believed that he may have earlier agreed to not accept an appointment from the Senate President as was the law at that time. Bisom did not do as he was instructed in this privileged conversation. Instead, he immediately went to the legislature and reported his distorted views to Congressman

1

*Exh. B*

Stanley Torres.

Problem 3 notes Bisom's claims that he was absent from the office on approved leave (ibid, p. 4-6). The truth is that Bradshaw never approved any leave for Bisom.

Problem 4 is the allegation that Bradshaw worked for the Dept of Finance (ibid, p. 5). Bradshaw was paid by the Office of the Public Auditor (OPA) and not by Finance. Bradshaw was totally independent in his work at OPA and especially so since he planned on soon leaving the CNMI.

Problem 5 says that Bradshaw reported Bisom to the AG for criminal prosecution and cited an alleged trial exhibit which was not supplied in the brief (ibid, p. 7). Bradshaw's letter to Bisom on this issue is presented herein (def ER, p. 15) which specifically states Bradshaw's words to Bisom.

Problem 6 concerns Bisom's allegation that Bradshaw wrote the Pacific Star paper (Bisom's brief, p. 7). This statement is absolutely false. Bradshaw never wrote any newspaper about any issue in the OPA.

Problem 7 arises in Bisom's claim that the audit involved was the fastest one done up to 2000 (ibid, p. 7). This is not true per Bradshaw's memory.

Problem 8 concerns Bisom's claim that the Bar Association ethics investigation found "no basis" for Bradshaw's complaints against Bisom (ibid, p. 7). Bradshaw was informed that the charges had not been proven--not that they had no basis. There is a difference between these two ideas.

The brief's statement of facts (ibid, p. 6) and other allegations address Bradshaw's termination of Bisom for cause. In the 96-1320 suit, Bisom attached Bradshaw's termination letter (in an incomplete form) as an exhibit. This letter was not

50

2

EXH. B

supplied to the court in the Bisom brief. It is attached herewith (def ER, p. 1). Before dispatching this letter, Bradshaw fully coordinated its contents with Personnel Officer Norbert Sablan and an Assistant Attorney General named Jerry. They concurred in its contents as far as meeting CNMI standards for discharge with cause.

In paragraphs 62-69 of his complaint in 96-1320 (Bisom's ER, p. 10-12), Bisom confirmed the propriety of Bradshaw's termination of him for cause. Bisom admitted that he had unauthorized and clandestine meetings with the Governor-elect to discuss his work to oppose Bradshaw and the single audit underway by Deloitte and Touche. As a matter of fact, Deloitte and Touche has done single audits on the CNMI for years now--both before and after their work in 1993.

Per Bisom's own words in his complaint, he was assured by the Governor-elect that if he was fired for actively opposing and working against Bradshaw that he would be rehired when the Governor-elect took over in January 1994. This was an open admission that Bisom worked outside official government channels to oppose, block and interfere in the audit work going on at OPA.

In paragraph 66 of the complaint (ibid, p. 11), Bisom alleges that he and Tan entered into a conspiracy to defraud the CNMI with Bisom going to Japan and being rehired as off-island allowing Bisom to receive monetary and other benefits which he would not otherwise be eligible for. This shows the attitude of Bisom on how he treated CNMI laws and procedures.

As a part of his alleged facts, Bisom fails to make any mention of the reality that he/his attorney Jay H. Sorensen (hereafter "Sorensen") entered absolutely fraudulent mailing documents into the case file. The Dec 29, 2005 order of Judge Lizama makes

/S/

Exh. B

3

note of the clear presence of fraudulent documents (entries of May 5, 1997 [p. 2]; Jun 9 and 30 of 1997 [p. 3]; Aug 27, 1999 [p. 4]; and Paragraph C [p. 15-16]).

It is strange that the precise same certified numbers on the certified envelopes allegedly sent Bradshaw and returned unclaimed are the exact same numbers of those appearing on post office signed return receipts, as filed by Bisom in the case (with the signature of an alleged person named "Manny")  Obviously, both sets of documents contradict each other and cannot be true, as Judge Lizama found.

Actually, Bradshaw furnished evidence in his void/vacate motion proving that indeed the return postal receipts signed by Manny were fraudulent and designed by Bisom/Sorensen to defraud both Bradshaw and the CNMI.

Incidentally, in his "Opposition to Motion to Void/Vacate Judgment" (2d paragraph, p. 4; def ER, p. 27), as filed by Bisom/Sorensen on Oct 15, 2005, the plaintiff says that "There is nothing to indicate that plaintiff had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to." Manifestly, this statement is an open admission that Bisom/Sorensen filed the fraudulent receipts in court. Bradshaw's reply in the form of a "Answer to Plaintiff's Opposition to Motion to Void/Vacate Judgment" is at def ER (p. 39).

The AG took note of these fraudulent documents in its Motion to Remove Case From the Jury Trial Docket (def ER, p. 62) on Feb 1, 2000. This motion illustrates the paradox of two conflicting sets of documents filed in court by Bisom. The fraudulent receipts are presented in Exhibit C of this AG motion.

In Sorensen's Supplemental Declaration in Support of Request for Entry of

/52/

4

ExH. B

Default (def ER, p. 76), filed on Feb 16, 2000, Sorensen says that copies of the 1st and 2d amended complaints were served on defendant (Bradshaw) with return receipt and that the 4th amended complaint was served on the AG. Sorensen noted that the time that Bradshaw could answer had expired and that Bradshaw did not answer. The very wording of this document is that service was made on Bradshaw, that returns of service were filed with the court (showing that service was actually made); and that Bradshaw did not answer the service.

Not only is Bradshaw assured that the return postal receipts filed by Bisom/Sorensen are fraudulent but there is evidence that the two copies of the envelopes are also fraudulent. Preparing envelopes like the ones Bisom submitted to the court would be no trick on Saipan. Bradshaw had no knowledge of these two envelopes until they were submitted to him in the Plaintiff's opposition of Oct 15. 2005.

The two envelopes Bradshaw saw in 1996/1997 did not have the name of the mailer on them. The two envelopes Bisom submitted indicate that they had attorney Sorensen's name on them and were returned unclaimed by the post office and not that they were refused. This is a distinction worth noting. Where the two envelopes came from that Bisom submitted in court is anyone's guess. But Bradshaw was simply unfamiliar with them before Oct 2005.

Since the Bisom submitted two envelopes only show that they were returned unclaimed, they cannot possibly be used to establish that Bradshaw avoided service as Bisom alleges. Surely, it takes an outright refusal of service to even begin to justify a finding of avoidance of service. The Bisom envelopes do not show refusal of service.

/53/

*Exh. B*

5

There is a difference between unclaimed mailings and those refused. Since Bradshaw's letter of Jul 14, 1999 was not in evidence, Judge Castro only had the two alleged return envelopes from Bisom. These two envelopes said that they were unclaimed, not refused. So how is it that Judge Castro cooked up his avoided service theory? The two unclaimed envelopes prove nothing. They are more irrelevant and probably fraudulent documents submitted by Bisom to the court in this case.

Per the certified mailing numbers on the two allegedly unclaimed envelopes and on the allegedly returned signed postal receipts, the documents allegedly sent by Bisom and returned without delivery have numbers that are only three numbers apart though they are dated a month apart. It is strange that the Saipan Post Office only used three certified numbers in a period of a month. This seems impossible.

As a minimum, Bisom/Sorensen submitted one and possibly two sets of fraudulent documents to the CNMI court in 96-1320 to obtain a default judgment which is what happened. Surely, the appeals court will not now take action to reward the responsible person(s) involved in fraud with an unearned judgment.

## ARGUMENT

### GENERAL COMMENTS ON THE BRIEF'S ARGUMENTS

As noted above, under the facts, Bisom has failed to present the exhibits, records and proof for statements alleged in his argument. Bisom makes numerous references to oral remarks or discussions at the trial in Feb 2000 or at the 2005 hearing. Yet, he failed to provide a transcript of those hearings to authenticate what he says happened.

*54*

*Exh. B*

6

Sometimes, he makes charges of events which could be immediately proven with a transcript of the 2000 trial (as on pages 24-25 on what the AG purportedly said at the trial in case 96-1320, etc) and the void 60 hearing in the fall of 2005 (for example--page 13 when Bisom alleged that Bradshaw never explained why it took five years to bring action; page 14 where he says that Judge Lizama denied him an opportunity to demonstrate prejudice; page 14 that the trial court ignored items dealing with service of process of out of state defendants, etc). The time issue was addressed in the oral hearing by Judge Lizama. Otherwise, the transcript would establish whether Bisom's charges are true or not.

Since the record shows that the plaintiff willingly supplied false information to the court in 96-1320, the appeals court should now demand that the plaintiff prove oral statements made at the trial or dispense with them. If Bisom would have included the transcript of the hearings, many of Bisom's charges could be proven or disproven. Yet, Bisom has not supplied transcripts. And now he marches into court to claim that issues were or were not properly addressed in the oral hearings of 96 1320.

It is ridiculous to believe that a party in an appeal can make careless and unsubstantiated statements about the oral words made in a trial and yet not provide a copy of the transcript to either prove or disprove his assertions. Effectively, Bisom's failure to back up his charges with a transcript has transferred the burden to defendant to now prove or disprove his unsubstantiated statements that he filed in his opening brief.

In the US justice system, it is the job of a plaintiff to prove his allegations; not the job of the defendant to disprove the plaintiff's careless and unsubstantiated allegations

55

7

$Exh. B$

when plaintiff presents no proof. Yet, this is what Bisom has done. He makes unsubstantiated allegations and expects the burden to pass to defendant to disprove his careless and unsubstantiated allegations.

Bisom clearly expects defendant to disprove his allegations or the court must accept his allegations as true. This is an absurd and unfair posture that he has tried to create for the defendant. It is his job to prove his statements with evidence which is in fact available. The Superior Court has recordings of oral discussions in both the 2000 trial and 2005 void hearing. The transcripts will either prove or disprove his allegations. If he does not present the proof for his allegations on the oral hearings in 96-1320, then the Supreme Court must totally reject his allegations as being false and/or unsubstantiated.

If Bisom wishes to make references to items covered in the oral hearings, then he must be made to provide to the court a transcript of those hearings to either prove or disprove his allegations. As noted above, his brief has been challenged in the Supreme Court by defendant in a separate action. He should either provide his cited exhibits and records and provide a transcript of the oral hearings proving his assertions or the appeal should be dismissed for failure to comply with Supreme Court rules 10, 11, 30, 31 and 42(c).

Also, it must be noted that plaintiff's arguments are founded on a series of frivolous, unreasonable, irrelevant and wrong arguments which have brought a disruption of the administration of justice by this court. His presentations are simply not founded on legitimate issues. They are frivolous, irrelevant and totally removed from the stated purpose of the appeal. By making these frivolous arguments, plaintiff is

/56/

Exh. B

8

trying to force the court to undertake a rehearing of the case and the rule 60 void hearing.

Many bar associations have rules which limit the actions of attorneys to file frivolous actions in court. For example, the Idaho Bar Association's rule 3.1 says: "A lawyer shall not bring a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." While this rule may not apply in the CNMI, the principle is well made.

BISOM'S ISSUE I. RULE 60(b) DOES NOT AUTHORIZE VACATING THIS JUDGMENT BY MOTION BROUGHT MORE THAN ONE YEAR AFTER ENTRY

Bisom's brief notes the requirement that the action be submitted in a "reasonable time" (p. 8). Judge Lizama had discretionary authority to determine what was reasonable. As Wright & Miller's "Federal Practice and Procedure" notes (v. 4, p. 254), relief under 60(b) "is addressed to the discretion of the court." Judge Lizama used his discretion to address Bradshaw's motion to vacate.

In a 2002 case of almost two years after the default judgment (Jackson v. FIE Corp., 302 F. 3d 515 (5th Cir Ct )), the court found that "Absent extraordinary circumstances---the mere passage of time cannot convert an absolutely void judgment into a valid one...This is one reason for our having held that there is no time limit on Rule 60(b)(4) motions, and that the doctrine of laches has no effect... As a general rule, the fact that such a motion is made long after the entry of a default should not be an obstacle to the jurisdictional inquiry."

In his motion, Bradshaw did ask for a void of the judgment. So it was proper for

9

Exh. B

the court to hear the motion. As a minimum, under CNMI rule 60(b)(6), Judge Lizama had full authority to address this case.

Plaintiff also complains (p. 13) that Bradshaw did not submit an affidavit on his video store in 1998-1999 in Elk, WA and his presence there to accept service. Bradshaw's address (40203 N. Newport Hwy) was a street address and not a post office box number. Street addresses are customarily addresses where people live/work and where they can be found.

The affidavits of Ms Dassow and Mr Vanderholm (p. 96-97 of Bisom's ER) both mention Bradshaw's daily presence at 40203 N. Newport Hwy where he operated a retail store with no employees. These witnesses are conclusive that Bradshaw was present and could have been served daily by Bisom. The truth is that Bisom made no effort to effect personal service on Bradshaw in Elk, WA.

Bisom cites a one year time limit of fraud as limiting the time for the vacate motion. The truth is that Bradshaw raised a number of issues besides fraud and Judge Lizama addressed several issues to make his decision, which were not directly related to fraud, per se.

BISOM'S ISSUE II. THE TRIAL COURT CONCLUSION THAT BRADSHAW WAS NOT PROPERLY SERVED IS BASED ON A MISINTERPRETATION OF COMM.R.CIV.P 4

Bradshaw's motion addresses four issues which govern service. They are: (1) What the law says in 7 CMC 1102-1104; (2) the need to conform to the minimum standards of due process of the US courts, per 1102(e); (3) the requirements of CNMI rule 4(k) on service which must not be prohibited in the US state where served; and (4) they must be served within 120 days from the filing of the suit, per CNMI rule 4(m). The

18

Exh. B

10

suit was filed Dec 5, 1996. Service had to be made by Apr 4, 1997 or the case was to be dismissed. Service was not made per the rules.

In May and Jun 1997, Bisom's service was supposedly attempted under CMC 1104. But the truth is that Bisom did not follow 1104 because it demanded that certified mail service be made with a return receipt, with no provision for any determination or discretion by the court since 1104(b) stipulated the remedy if service was not made with return receipt.

Bisom totally bypassed the CNMI statutory laws. Once the statutory law was violated and ignored, the alternative for focus was the rules.

In order to obtain the illegal default decision from Judge Castro, Bisom used a misinterpretation and misuse of the civil rules and not the statutory requirements of the CMC. Once Bisom failed to follow the demands of the statute, as happened, the role of rule 4(k) certainly prevailed. While Judge Castro obviously did not know what was happening in his court, Judge Lizama apparently did understand this paradox. Or at least Judge Lizama ignored the failure of Bisom to follow the CMC and instead the court focused on the failure of Bisom to follow the rules.

The truth is that generic certified mail service in WA state is "prohibited" because the rules specify that it can only be done by court order. As a minimum, rule 4(k) refers to "all" service of process in the CNMI and "when not prohibited by law, beyond the territorial limits of the Commonwealth." All means all. And to reach beyond the CNMI, the implication clearly is to the CNMI long arm laws. Though he could have addressed Bisom's failure to follow 7 CMC 1104, Judge Lizama was not incorrect in addressing the requirements of rule 4(k).

/59/

*Exh. B*

11

BISOM'S ISSUE III.  ALLEGING THAT BRADSHAW PURPOSEFULLY AVOIDED MAIL

SERVICE IS RELEVANT AND SHOULD HAVE BEEN CONSIDERED

A. Backdrop on State Laws and the Cases:

Plaintiff's brief cites seven cases as allegedly proving from US case law that
Bradshaw purposely avoided mail service and that Judge Castro's order of Feb 22,
2000 was correct.  However, the plaintiff's attempt to use these cases were all
inconsistent with the facts and law in 96-1320.  The truth is that the seven cases have
almost nothing in common with 96-1320.  In terms of the state laws involved, they are
in totally different worlds.  Trying to compare 96-1320 with these seven cases is like
comparing apples and oranges.

Actually, plaintiff merely quoted a few remarks from each case out of context to
supposedly prove his point.  Yet, if the other remarks in the cases and laws in question
were actually checked, instead of blindly accepting plaintiff's argument, the words are
clear that these seven cases are far afield from 96-1320.  The only thing they have in
common is that among several issues in each case, they did address mail service and
two of them involved acts of fraud as is true in 96-1320.

Complete summations of the cases are included herewith in the Appendum.
They are as follows:

Cherry v. Heffeman, 182 So. 427-432 (FL 1938) (hereafter "Cherry," Appendum, p. A1)

Creaddick v. Keller, 160 A.909-911 (Del 1932) (hereafter "Creaddick," Appendum, p.

A5)

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972) (hereafter "Merriott," Appendum,

p. A7)

/60/

EXH. 13

12

Nikwei v. Ross School of Aviation, Inc. 822 F 2d, 939-940 (10th Cir 1987) (hereafter "Nkiwei," Appendix, p. A11)

Patel v. Southern Brokers, Ltd, 289 S. E. 2d 642 645 (SC 1982) (hereafter "Patel" Appendum, p. A19)

Polargrid LLC v. Videsh Sanchar Nigan Ltd, 2006 U.S. Dist, LEXIS 17531 (S.D.N.Y. April 7, 2006) (hereafter Polargrid," filed with Bisom's brief)

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936) (hereafter "Wax," Appendix, p. A23)

All of these cases were in the state courts except for Nikwei and Polargrid which were in Federal court. But Nikwei was served per the local OK laws/rules. Four of the above cases concerned out of state motorists who were involved in traffic accidents in the states of the suits (Cherry, Creaddick, Merriott and Wax).

The background for the out of state motorists started in 1927 when states like Massachusetts realized that they had a problem when out of state motorists would come into their states, have traffic accidents and then leave the state with unresolved damages. MA and then other states began enacting long arm statutes to reach out of state motorists involved in accidents. Per an article on GA law on the Internet (www.lawskills.com/case/gas/id/66757), all fifty states have nonresident motorist laws.

These out of state motorist acts typically include several elements on service. First, they must be served on the Secretary of the State or some other state official where the suit is filed (the state official becomes the attorney in fact for the out of state defendant by statutory law). Even some other state long arm statutes use service on the Secretary of the State. For example, under Virginia Code section 801 320, service

13

*Exh. B*

is made on the Secretary of the Commonwealth who becomes the statutory agent for the defendant.

By law, notice is given by the Secretary of the State or official or by the plaintiff to the defendant in the state where the defendant resides. This notice can often be mailed--sometimes by certified return receipt and even sometime by regular first class mail. The last feature of this mailing provision is that great discretion is granted to the courts to decide if the mailing was adequate for the required notice.

Adequate notice does not necessarily mean that the defendant has actually learned of the suit; but rather that the procedure used to alert him must have been reasonably likely to inform him, even if they actually failed to do so.

Thus, when an out of state motorist is involved in a traffic accident, he must be careful about avoiding any type of service of process that might be made on him. He can't just return to his home state and ignore the accident and any damages he may have caused in the suit state.

Otherwise, there are state long arm statutes which address other issues besides motor vehicles. Starting in 1962, a committee from some states prepared the Uniform Interstate and International Procedure Act (UIIPA) which has been used by many states to be able to exercise personal jurisdiction under their long arm statutes for out of state defendants.

Under Section 2.01(3) of the UIIPA, certified mail, return receipt, can be used to give actual notice. This provision adds that "proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." This "other evidence...satisfactory to the court" opens the door for the court

/62/

14

EXH. B

to exercise discretion on whether service was made or not on the simple basis of having given notice.

Many US states have adopted the UIIPA in whole or in part and/or modified it for their own purposes. But the CNMI has not adopted the UIIPA and there is nothing in CNMI law which would allow the CNMI court to exercise the discretion allowed under the UIIPA. CNMI law simply does not make this grant of discretion to its courts.

This "notice" communication must be contrasted with the normal and usual purpose of delivery of process to include a summons and complaint. Per Wright & Miller (v. 4A, p. 68), the purpose of the pleading (as in the process/complaint) is: (1) to provide notice of a claim or defense; (2) state the facts each party believes to exist; (3) narrow the issues that must be litigated; and (4) provide means for a speedy disposition of sham claims and insubstantial defenses.

It is the need to provide this information in the suit beyond notice which opens the door to motions to dismiss under Federal rules 8 and 12 and particularly for failure to state a claim. Many of these needs under the civil procedure rules are not an immediate issue with the actual notice need in many out of state motorists acts/long arm statutes.

The reason is essentially because the Secretary of State becomes the statutory agent for the defendant to accept service of process. Since the Secretary of State or other official becomes the agent for service of process on the defendant, some states allow notice to be made by a letter or summons with a provision that the complaint can be mailed later to the defendant.

These nonresident motorist/long arm statute laws should not be confused with

63

15

Exh. B

the normal civil procedure rules used by the US and state courts. While the long arm laws under the UIIPA allow great discretion to the courts to decide whether actual notice is given or not, the normal state court rules do not typically grant this latitude.

The court rules spell out precisely what a court can do on service of process. Many state rules even spell out precise provisions for the determination of a default judgment (like AR, OK, SC, etc). When certified mail is authorized, these rules often spell out the exact remedy to be followed (like with AR). This remedy provision is what is at 7 CMC 1104(b) in the CNMI.

As a matter of information, most US state rules of civil procedure limit the entry of a default judgment on a defendant via certified mail unless a signed return receipt is provided to the court as proof of service. Many states require that certified mail service be made by the Clerk of Court, Sheriff, Secretary of State, etc to insure the propriety of the mailing and avoid fraud that can ensue as happened in CNMI case 96-1320.

In terms of focus on out of state motorists/long arm statutes, the most crucial point in addressing them is on what the law actually says. In the case of OK, AR and certain other states, which have adopted the UIIPA, notice can be made by certified mail with discretion being given to the court on deciding if notice was given.

The Merriott case was a nonresident motorist case. Under AR law, the two key elements of the certified mailing was that it provide "actual notice" and that proof of service include a "signed receipt or such other evidence of personal delivery to the addressee satisfactory to the court" (item A, p. 231-232). This terminology from the UIIPA opens the door for the court's discretion on whether notice is given or not.

But otherwise and importantly, the actual notice must be served by the county

*64*

16

*Exh. B*

sheriff. In Merriott, the plaintiff's attorney mailed the notice, which was contrary to the law. Thus, though actual notice was given, the case was never-the-less remanded to the trial court for further action. As a minimum, the mailing or serving of the notice by the sheriff (or Clerk of Court) takes the question out of the hands of the plaintiff who could attempt fraudulent mailing actions as happened in the CNMI 96-1320 case under appeal.

In the nonresident motorist Creaddick case, the DE case required service on the Secretary of the State with a registered letter mailed to the out of state defendant of the notice (p. 909). The court found that plaintiff complied with the law.

In the nonresident motorist Cherry case, the FL Secretary of State became the agent of the defendant to receive process (page 429-430). In this case, notice in a letter was sent by registered mail. And in later litigation with the defendant, delivery of the notice was established.

In the nonresident motorist Wax case, the PA Secretary of Revenue became by law the agent for delivery of civil process (page 538). The court found that service was made on the Secretary and that the defendant was properly given actual notice.

The Nikwei case occurred in the US courts with service being made under the provisions of the OK long arm statute. The court (page 944) noted "In Oklahoma, the object of the state notice statutes is to provide a method of notification which 'is reasonably calculated to give [the defendant] knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be sent; the notice requirement will necessarily vary with the circumstances and condition.'"

[65]

Exh. B

17

While the court upheld the delivery of notice, there were several other key issues present in Nikwei which made this determination possible. The defendant's actions involved clear evidence of oppressive, malicious, fraudulent and wanton acts against the out of country plaintiffs, as well as blatant acts to hide and conceal defendant's whereabouts in order to avoid service. The fraud found as fact by the court was clearly paramount in the court's decision (item 6, page 939; conclusion, page 946).

The defendant was caught in lies and deceptions to the court. For example, he lied about being away from home when the service by certified mail was made. From the court's findings, it appears that the court's decision was heavily influenced by the fraud and lies and the defendant's flagrant and outright efforts to avoid service of process in many instances over a period time.

Interestingly, this case has some similarities with 96-1320 in that Bisom/Sorensen were also caught in acts of malicious prosecution, fraud, deception, etc as discussed above. Based on the Nikwei case, the fraudulent acts by Bisom/Sorensen should be sufficient grounds to deny plaintiff's appeal and the award of a judgment

Finally, it should be noted that Oklahoma adopted the UIIPA. Thus, OK statute (12 O.S. 1971 Section 1702.01(b)) states; "When service is made by mail, proof of service shall include receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." This liberal provision from the UIIPA opens the door for the court to use much discretion in its case review. So the issue of service devolved to providing evidence of "delivery" of the notice to the satisfaction of the

[66]

18

Exh - B

court.

Thus, it became discretionary for the court to decide if notice was given. Based on the several issues involved (fraud, lies, deception, etc), the court found (page 945) that indeed service on the defendant or his wife was successful per the OK law.

The Patel case was a SC state case involving the SC long arm statutes. This case also involved fraudulent representations. As was true with the other cases cited above, the SC law only required that evidence show delivery of the actual notice to the defendant to the satisfaction of the court (para 3[1], page 643). The court found that the needed notice was delivered.

The last case, Polargrid, was filed in US court in NY. Service was made on an out of country defendant corporation per rule 4(f)(2)(C)(ii) which was made by the Clerk of Court via Federal Express which is considerably different from a mailing made by the plaintiff or his attorney in a case. The difference should be seen at once. Many people and their lawyers (like in the Bisom case) might be prone to submit fraudulent service documentation whereas the clerk is presumed to be more honest and upright in a mailing.

Obviously, before the postal tracking services since 2004, US mail services offered enormous opportunities for mail fraud and even certified mail was not totally reliable (as the US Congress foresaw--v. 4, p. 56, Wright & Miller, 1987 ed). Actually, this problem Congress foresaw is exactly what occurred in CNMI case 96-1320 when Bisom/Sorensen misappropriated post office forms and prepared fraudulent certified mail receipts to show service on Bradshaw when the service never happened (as described above). When you are dealing with crooks, it is very easy to prepare postal

|67|

19

EXH. B

documents to reflect anything one may desire.

Besides the Clerk of Court mailing in Polargrid, the plaintiff also sent process by Federal Express. The mailings by the Clerk and plaintiff were both received and signed for. The issue then before the court devolved to whether Federal Express service was the same as mail service. The court found that the Federal Express service complied with the law.

Finally, it must be noted that per rule 4(f)(3), the federal courts have much authority to establish how service can be made to a foreign resident. Some US Courts have allowed mailings by ordinary first class mail only without any need for a signed return receipt (Levin v. Ruby Trading Corp. D.C.N.Y. 1965 F. Supp, 537).

Importantly, under nonresident motorist laws, where service is made on the Secretary of State of some other official as agent for defendant, with only a mailing of a notice to the defendant, there have been cases where the courts have ruled the notice sufficient even though the defendant refused to accept the certified mailing. In domestic disputes, like divorce, etc, it appears that the courts are also allowed some discretion on deciding if service is made.

But under most other long arm statutes, without the provisions of service being made on the Secretary of State or other official as defendant's agent, and even with the great latitude allowed the courts with their discretion to determine the validity of delivery of the notice, cases are rare where the courts have ruled that the defendant had to have accepted certified mail or be found in a served situation.

The reason for this rarity is because the US courts prefer that cases be tried on their merits and not decided by default judgments. Yet, Judge Castro has shown no

20

*Exh. B*