hesitancy in issuing default judgments.  Nikwei and Patel are two of the rare cases.

So court discretion on service is limited in some states.  For certain, actual notice in the absence of following the law means absolutely nothing.  Therefore, whether notice ever came to Bradshaw or not means nothing if Bisom failed to follow the law.  Simply stated, Bisom did not obey the law on service.  Therefore any alleged notice means nothing and is irrelevant as will be proven below.

B.  The CNMI Situation:

This backdrop takes one to the CNMI long arm statute in 7 CMC 1102-1104.  This law is totally different from all of the ones discussed above.  Beyond being long arm statutes and allowing certified mail service, they have virtually nothing in common with the seven cases cited by Bisom.

First, the CNMI law has no recognition of the roles of a secretary of state who becomes the statutory agent to receive process for the defendant or for the Clerk of Court or Sheriff to mail the process.

Though there is mention of serving the AG, the reason for this service is not stated or clarified.  In fact, a reading of this statute leads one to believe that service on the AG is to be made after service on the defendant.  In any case, the AG does not become the statutory agent for the delivery of process on the defendant, nor is authority granted to the AG to mail the process to the defendant.

Second, Section 1102(e) notes that the Legislature intended that jurisdiction be coextensive with the minimum standards of due process as determined by the US Federal Courts.  In the federal courts, mail service is out of the question except by using a signed waiver and/or the mailings by the Clerk of Court to foreign countries, as

/69/

21

Exh. B

noted above in Polargrid. Judge Lizama's order cites this reality and the fact that the CNMI courts interpret it that way (p. 11).

In the federal rules, actual notice does not substitute for proper service of process, per the rules. While by some state laws actual notice is sufficient for long arm statutes, this is not the case with the Federal rules and laws. For due process to occur, it takes an actual service of process to a defendant.

For example, in Bradshaw v. CNMI et. al. (US District Court Idaho 5-84), defendants Sorensen and Bisom received notice of service of process. Yet both objected to it in their motion to dismiss on July 7, 2005 on the premise that "Knowledge does not constitute service... Actual notice does not substitute for proper service of process, otherwise it would be nonsensical for the Federal Rules of Civil Procedure to provide for a motion to dismiss based on insufficiency of service of process (Dahl v. Kanawha Inv. Holding Co.," 161 F.R.D. 673-686, N.D. Iowa 1995) (hereafter Dahl, Appendum, p. A26).

Dahl is particularly relevant because it involved a case where actual notice was delivered by certified mail where the defendant signed the return receipt but did not return the waiver. Thus the court found that actual notice does not dispense with proper service (item 7, p. 673).

Also, other US courts have found that actual notice as opposed to proper service per the rules is irrelevant --for example: LSJ Investment Co. v. O.L.D. Inc., C.A. 6th, 1999, 167 F 3d 320-325 (hereafter LSJ, at Appendum, p. A40]; and Schnabel v. Wells, C.A. 11th, 1991, 922 F 2d 726-729 [hereafter Schnabel, at Appendum, p. A46]).

In Schnabel, the return receipt of a certified letter was signed and returned to

/70/

*EXH. B*

22

the Court  The Court found that "If defendant receives mail service, but chooses not to respond, plaintiff must effect personal service, and defendant's actual notice does not eliminate personal service requirements" (item 1, p. 726). Also, the Court added (item 4, p. 726) that Summons and complaint served on defendant by certified mail, return receipt requested, was not proper service..."

In LSJ, the plaintiff served three defendants by certified mail, return receipt under Ohio law.  Two defendants signed the return receipts while the third defendant's mailing was undelivered by the Post office.  The plaintiff then mailed the third defendant's process by ordinary first class mail.  While notice was given, it did not conform to the rules.

There is another important point in the Federal rules.  Under the Federal rules, it is erroneous to believe "that service could be effected by mail without the affirmative cooperation of the defendant" (v. 4, p. 9, 2000 ed, Wright & Miller")).  Thus, mail service per the Federal courts is limited to proper service as stated in the rules and is totally dependent upon the cooperation of the defendant.

Manifestly, the alleged service by Bisom on Bradshaw in 96-1320 did not conform to the Federal rules for due process.  Therefore, Bisom's efforts were contrary to 7 CMC 1102(e). Bradshaw was never given his due process rights under the US Constitution.  The Feb 2000 judgment was clearly void.

Of next importance and number three, Section 1104(a) provides "that notice of the service and a copy of the summons and of the complaint are served upon the defendant personally by any person authorized to serve process." This wording is clear enough that the service must involve more than just the notice (which could have

/71/

23

*Exh. B*

been delivered by a certified letter if that was the only need). For due process, service must include both the summons and the complaint which includes the several items outlined above from Wright & Miller.

Fourth, 1104(a) says nothing about satisfaction of the court and nothing to allow a court's discretion on what constitutes service in terms of a certified mailing, return receipt.

Actually, for a certified mailing per 1104(a), the plaintiff must file a affidavit with the Clerk of Court showing that the summons and complaint "were served or sent by certified or registered mail.... the return receipt signed by the defendant shall be filed with the affidavit. The service shall be deemed complete upon delivery of the required papers to the defendant outside the Commonwealth, personally or by mail as provided." Note the words "return receipt signed by the defendant shall be filed." This leaves no option on service, short of a signed return receipt.

The CNMI law does not allow any discretion in the service of process by mail or in the documents which must be filed with the Clerk of Court upon completion of service. It is all fixed by law.

Fifth, Section 1104(b) provides a statutory statement of the available remedy to the plaintiff if service by mail cannot be properly effected under 1104(a). The law clearly says that if service cannot be made by mail, obviously by any means of mail falling short of getting the required return receipt signed and returned, then the court can order service by publication.

Certainly, virtually everything about the CNMI law is totally different from the laws in the cases cited by Bisom in his brief. They have virtually nothing in common.

Exh. B

They are different and cannot be joined together as Bisom has done.

To whatever extent Judge Castro thought he could unilaterally and arbitrarily decide whether service was made or not, he clearly could not decide things beyond the clear and unambiguous statements of the CNMI law. The law is not confusing; though Bisom and the Feb 2000 trial court created confusion in trying to interpret things into the law which simply are not present.

Bisom's brief (page 19) devotes much of a page to prove that Bradshaw avoided service by quoting from Bradshaw's privileged letter to the AG on Jul 14, 1999. Judge Castro, per his order, made the same assertion.

But the point missed by both Judge Castro and Bisom is that this letter was not admitted into evidence. Therefore, it is totally and completely irrelevant for the trial in 2000 and the decisions issued by Judge Castro. True, it was the only evidence before the court as to what happened, but it was not admitted into evidence and thus could not have any role whatsoever in the court's decision.

When Bradshaw filed his void motion in 2005, he quoted this letter and authenticated its proprioty. But this reality cannot change or alter what the trial court said and did in Feb 2000. Judge Castro had already settled the irrelevant status of the letter for the trial in Feb 2000 when he refused to allow it into evidence. Thus, the letter means nothing in terms of the decisions of Judge Castro. The attempts of Bisom to justify the Judge's decision on the basis of a non admitted letter is utterly ridiculous.

As for as the letter, Bradshaw acknowledges that two large envelopes came without the name of the mailers. Bradshaw had seen this type of unidentified mailings before from Bisom/Sorensen. So he suspected at once that they were from Sorensen

/73/

$Exh. B$

and so notified the AG who was supposed to be Bradshaw's lawyer. Postal Clerk Vanderholm also acknowledged the same two unidentified mailings as the court can determine with a reading of Mr Vanderholm's affidavit. Mr Vanderholm supports Bradshaw's statements and not those of Bisom as his brief attempts to convey.

The issue here is that neither plaintiff Bisom or Judge Castro in the court in Feb 2000 bothered to follow the CNMI laws and rules. Manifestly, they certainly did not obey 7 CMC 1102-1104. They made up their own rules and practices as they went along to violate Bradshaw's due process rights under the US Constitution (rights which they were expressly not allowed to violate in 7 CMC 1102(e) as discussed above).

Though Judge Lizama did correctly discern the fraud from Bisom/Sorensen and the fact that their alleged service was invalid per WA law, it must be noted that the court's statement about Bradshaw avoiding service was predicated upon privileged correspondence from Bradshaw to the AG.

With the exception of Bradshaw's letter of Jul 14, 1999, none of this Bradshaw correspondence was ever before the Judge Castro trial court in Feb 2000. The only letter that was before the court, the Jul 14, 1999 letter, was never admitted into evidence.

Therefore whatever the Jul 14 letter said or purported to say was in reality totally irrelevant and of no bearing on the actions of Judge Castro to make his statement about avoiding service or of whatever findings the later Judge Lizama court may have stated in its order on avoiding service (p. 19 of the Bisom brief). The truth from the record is manifestly clear that Bradshaw certainly never avoided legal service and

/74/

26

EXH. B

proper service by law

As Judge Lizama reported in his order (p.10), "It is irrelevant whether Bradshaw purposefully avoided a form of service that was impermissible. There is no evidence that Bradshaw avoided the legal forms of service." In Judge Lizama's order, this issue of avoiding service came up only because Bradshaw was candid, frank and truthful and hid nothing from the Lizama court; and willingly supplied the court his privileged correspondence with the AG. This openness is not what one finds with the fraudulent actions of Bisom/Sorensen found in case 96-1320.

None of Bradshaw's letters to the AG were even before the Judge Castro court in 2000, besides the letter of Jul 14, 1999 (and it was not admitted into evidence). Therefore, what Bradshaw wrote the AG is totally irrelevant and of no bearing on this case during its trial in Feb 2000. None of Bradshaw's letters to the AG could have been legally used by Judge Castro for his decision. They simply weren't present in the court action in 2000.

Bradshaw knew about the court action in Saipan only because the AG notified him of it in a privileged letter and not because he was ever properly served and notified by the plaintiff, the court or CNMI law and rules. Therefore no notice was ever present or given to Bradshaw by the plaintiff or court.

Bradshaw was never under any compulsion or obligation to report his address changes to Bisom; nor was Bradshaw obligated to accept mail from Bisom, whether it was identified or not. Bisom and the CNMI Courts had no jurisdiction over Bradshaw until and unless proper service of summons and complaint were made on Bradshaw as provided by CNMI law/court rules. Proper service was never made.

/75/

27

Exh. B

As a minimum, per both WA and US court rules, a defendant is under no obligation to accommodate a process server. The Revised Code of Washington (4.28.80) has a case note which reads: "Failing to come to door to receive service of process does not constitute evasion of service; those who are to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. Weiss v. Glemp, 127 Wash. 2d 726, 903 P 2d 455 (1995)."

Obviously, the same reasoning applies to certified mail. No one in the state of Washington has to accept it or be found avoiding service. The US rules also recognize a need for cooperation from a defendant for the use of mail service, as cited above.

While the seven cases cited above by Bisom are far removed from 96-1320 (except for the presence of fraud in a couple of them as is true with the Bisom case), it is interesting that one Federal case in 2001 had several features similar to the Bisom case. It is Harper MacLeod Solicitors v. Keaty 260 F 3d 389-400 (5th Cir, 2001)) (hereafter Harper).

In Harper the plaintiff sued two persons and a law partnership located in Louisiana in Federal court in Texas. Plaintiff served process per the TX out of state long arm statutes. Per the law, he served the summons and complaint on the Texas Secretary of State with the believed addresses of the three parties. The TX Secretary of State served the process on all three defendants by certified mail, return receipt.

All three defendants received the process, signed the return receipts and returned them to the Secretary of State who in turn notified the plaintiff that his process

Exh. B

had been properly served. But the defendants, all lawyers, did not answer the complaint. The US court in Texas made a default judgment in favor of the plaintiff. The TX order said that the court had personal jurisdiction on the out of state defendants and that the defendants had been properly served with summons and complaint.

When the plaintiff tried to collect the judgment in LA, the defendants filed action in LA Federal court to have the default voided under rule 60(b) because of alleged defective service of process.

Per the defendants, the TX long arm law specifically stated that service by the Secretary of State was to be made to defendants' home or home office address. As it turned out the addresses furnished the Secretary of State had some problems despite delivery of process and notice to the defendants who signed the postal return receipts.

The address given for the law partnership was a former address and the personal addresses of the two other defendants had a typographical error in their suite number. Yet, delivery of the notices/process was otherwise properly made and the three defendants all received actual notice of the lawsuit; though they chose to completely ignore the notice and not even answer the complaint.

The US Court in LA found that under the TX long arm statutes, the errors were sufficient to cause the default action to be voided. The decision was appealed to the 5th Cir which upheld the LA findings.

This case (at Addendum, p. A50) offered several major findings of real relevance to the Bisom case at hand. For example (in item 2), the US court said:

> Distract Court must set aside a default judgment as void if it determines
> that it lacked personal jurisdiction over the defendant because of

29

EXH. B

      `·`      defective service of process.

Actually, this is the precise situation in the Bisom case. Whatever delivery of process there was, it was defective, at least in terms of the fraudulent documents which Bisom alleged that he served on Bradshaw. Otherwise, the decision of Judge Castro on avoiding service totally lacked any semblance of law, fact and truth and was therefore void. Per the Federal rules, Bradshaw never came under the personal jurisdiction of the Judge Castro court

In Item 3, the Federal court offered a most fascinating conclusion, viz:

> Defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect; defendants are always free to ignore judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding.

This is almost what happened with Bradshaw in the Bisom case. As it turned out Bradshaw was in a state of ignorance of the trial and default judgment until the year 2004, when he tried to get the AG to take some action to correct the mess made by the AG, Bisom and the Feb 2000 Trial Court. Regardless, per the Federal rules, Bradshaw had no compulsion to appear before the time he did to challenge the default judgment which was made by the Feb 2000 trial court since Judge Castro lacked both personal and subject matter jurisdiction and denied Bradshaw an opportunity to challenge jurisdiction.

In item 10, the court found:

> In diversity actions, the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants.

In item 11, the court noted:

/78/

30

E×H. B

> The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had or enforced.

Item 12 is very relevant as it fits the Feb 2000 trial court precisely-- as follows:

> If the rendering court did not have jurisdiction, its judgment is invalid.

Item 14 assesses the TX long arm laws, viz:

> Texas courts have consistently required strict compliance with the terms of the Texas long arm statute, and actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against the defendant.

Item 15 adds:

> Substitute service on the Texas Secretary of State was defective under the Texas long arm statute with respect to each nonresident defendant... and that the defendants may have had actual notice of service was of no consequence.

Paragraph (15) discussion on page 399 noted:

> the Texas Supreme Court has expressly rejected an actual notice exception to strict compliance with the terms of the long arm statute.

The point of the above findings from the US Court, which assessed the TX long arm law in terms of out of state defendants, is that both the Federal and TX state laws found that actual notice could never take the place of proper service of process. Without proper service of process, as provided by law, the court lacks personal jurisdiction over a defendant. Such a defendant is under no compulsion to even acknowledge the court proceedings when service of process is not properly accomplished.

Since the CNMI 7 CMC 1102(e) law places the CNMI law into a posture of compatibility with the federal rules for due process, it is manifest that the CNMI court actions under Judge Castro completely violated the CNMI laws/rules and violated

/79/

31

Exh. B

Bradshaw's due process rights under the US Constitution.

In the Bisom case, the AG informed Bradshaw of the filing of the suit; but never anything about the trial or default judgment. Regardless, this notification of the suit from Bradshaw's own lawyer, the AG, certainly did not constitute a legal notice of anything.

The CNMI laws and rules on service outline precisely the procedure of how a summons and complaint is to be served. There is nothing in those laws/rules that say anything about a person's own lawyer being allowed to give notice. Bradshaw was sued in his official capacity by Bisom for the complaint and the 1st and 2d amended complaints. The AG was Bradshaw's lawyer by the CNMI Constitution and statutory law on the duties of the AG. While the AG abandoned its fiduciary duty of being Bradshaw's lawyer before the trial, it did not alter reality.

Legal, proper service of process was never attempted on Bradshaw by plaintiff or the court. CNMI long arm laws at 7 CMC 1102-1104 were never complied with in respect to Bradshaw and the alleged service on him.

Certainly, the Bisom submitted fraudulent return postal receipts had no propriety in granting the CNMI trial court jurisdiction over Bradshaw. As far as Judge Castro and his making of a wrong and unjustified decision on Bradshaw avoiding service, the judge simply had no power or discretion under the statute or rules to make such a decision. The law was plain and clear of exactly what could be done to effect service and a statement of precisely what action could be taken when proper service by return receipt could not be made. Judge Castro did not follow the law.

While the Feb 2000 trial court can flippantly and incompetently argue that actual

/86/

32

Exh. B

notice of the suit was given Bradshaw (as it turned out by his AG lawyer and not legally by the plaintiff or court), this actual notice means nothing in the absence of proper service of process per the CNMI laws and rules.

As a minimum, Bisom's presentation of his seven irrelevant cases in his brief to supposedly prove service on Bradshaw is a frivolous effort which interferes in the operation of justice in this court. The relevant laws in these cases are totally different than the CNMI laws/rules.

Surely the plaintiff's lawyer must have understood the law on the seven cases he presented in his appeal. He must have known that they were irrelevant and a waste of time to address by the court. Yet, he proceeded with them, apparently believing that this court is incompetent and stupid and would never read the cases or check the applicable laws. Thus, did the plaintiff try to deceive and once more pull the wool over the eyes of a CNMI court to obtain a judgment that he was not entitled to by law?

### BISOM'S ISSUE IV.  DEFENDANT WAIVED ANY DEFECT OF SERVICE BY APPEARING THROUGH COUNSEL AND BY FAILING TO CHALLENGE SUFFICIENCY OF PROCESS

There is no dispute that the AG accepted service for Bradshaw and filed motions in Bradshaw's name before the trial of Feb 2000. However, the Declaration of L. David Sosebee (Bisom's ER, p. 29), filed on Feb 3, 2000 was a declaration to the court that the AG's Office "does not represent defendant Bradshaw." Yet, Judge Castro found that the AG was Bradshaw's lawyer (ibid, p. 42).

While Judge Castro was certainly confused and did not understood what was

[81]

33

Exh. B

before him, the Supreme Court in its review of 2000-016, 2000-023 (Consolidated) took note that the AG did not represent Bradshaw at the trial. Therefore, the AG had no power to waive anything in terms of Bradshaw. Judge Castro's Order of Feb 22, 2000 was thus wrong. In fact, it was wrong in almost all aspects.

Though the Supreme Court chose to not criticize Judge Castro, the court did not show any charity to the AG's office in the 2002 appeal. The court repeatedly found the AG's office guilty of repeated mistakes (plural), an alleged conflict of interest and violation of bar association ethic rules.

## BISOM'S ISSUE V. THE ISSUES HAVING ALREADY BEEN HEARD AND DETERMINED, THE LAW OF THE CASE DOCTRINE APPLIES TO PREVENT GRANTING THIS MOTION

True, Judge Castro heard the case in Feb 2000. But it was far from being determined at that time. There was two appeals filed in 2002. In 2005, the rule 60(b) hearing happened. Now in 2006, that hearing is under appeal.

Finally, many of the related issues on the fraud and corruption by the alleged thieves and crooks Bisom/Sorensen are now in Federal Court (case 05-0027) with a plea that Bisom/Sorensen be required to refund the $140,000 that was illegally collected from the CNMI through fraud and the incompetence and bias of the trial court in Feb 2000.

## CONCLUSION

Plaintiff has come into court in bad faith and with dirty hands for this appeal. He is trying to make the court rule that he has clean hands when his hands are dirty. With

/82/

34

Exh. B

dirty hands, the equitable principle cannot be applied to his appeal.

The Third Judicial District Court Internet site's (www.the3rdjudicialdistrict.com) Glossary of Legal Terms defines the "clean hands doctrine" as "Under this doctrine, equity will not grant relief to a party, who, as an actor, seeks to set judicial machinery in motion and obtain some remedy, if such party in prior conduct has violated conscience or good faith or other equitable principle" Franklin v. Franklin, 365 Mo. 442, 283 S.W. 2d 483, 486.

Bisom with his dirty hands has brought up an array of material which is irrelevant and frivolous to the propriety of Judge Lizama's decision. Yet, he expects the court to use this irrelevant and frivolous material to clean up his dirty hands and bad faith and now award him a judgment which he legally is not entitled to have.

In this case, the damaged defendant has spent much money, time and effort on this case and its appeal. The defendant is entitled to sanctions.

Per Supreme Court rule 38 the court can award just damages and sanctions up to double the costs to the appellee if the court finds that the appeal is frivolous. With costs of $7,500 to defendant, the sanctions can be up to $15,000. Manifestly, the Bisom appeal is frivolous, unreasonable and without foundation.

If the court cannot impose sanctions on the basis of the trivolous and unreasonable filing by Bisom, defendant asks the court to award sanctions on the basis of its disciplinary power over attorneys before it in their roles as officers of the court. Judges have authority to award sanctions in equity as a remedy to the damaged party.

Otherwise, per Supreme Court rules 28(m) and 39, defendant will seek costs

/83/

35

Exh. B

and attorney fees if this case is dismissed or found against plaintiff as allowed in Commonwealth rules of civil procedure 11 and others and of the Supreme Court rules.

The plaintiff's appeal should be denied. He has presented nothing in the way of evidence which justifies the Feb 2000 trial court's findings. Nor has plaintiff presented any evidence that the primary findings by Judge Lizama on improper service was in error.

With the obvious and undeniable presence of fraud and deception on the trial court in Feb 2000 by Bisom/Sorensen, it would seem unthinkable that the appeals court will now reverse Judge Lizama's decision and once more reward Bisom/Sorensen with an illegal judgment that they never earned in the first place. Defendant Bradshaw asks the court to uphold and affirm the decision of Judge Lizama that Bradshaw was not properly served in case 96-1320.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this ___2c th___ day of June 2006 at Calder, Idaho.

_Robert D. Bradshaw_

Robert D. Bradshaw, Defendant, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___2o th___ day of June 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorenson, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst AG, Caller Box 10007, Capitol Hill, Saipan, MP 96950

_Robert D. Bradshaw_

Robert D. Bradshaw, Defendant, Pro Se

[84]

Exh. B

36

# ADDENDUM



ix



council to enforce the assessment and collection of taxes "in the same manner" as provided by law for the assessment and collection of state taxes. This court held that the existence of the warrant was a necessary part of the machinery for the collection of municipal taxes because it was necessary in the case of state and county taxes.

In our previous decisions, we have called attention to the fact that a certificate or verification of the assessment roll by the tax assessor is for the purpose of securing uniformity in assessments and fair valuations of real estate, and to safeguard the interests of the tax paying public, and that a failure to comply with this requirement renders the assessment roll invalid. As this seems to be a fundamental principle of state taxation established in the early days by our statutes with reference to state and county taxation, and retained to this good day, the constitutional provision above referred to requires it to be observed with regard to municipal taxation. Adherence to that principle would require us to hold that the assessments involved in this case, and the proceedings based thereon, were and are void. It does not appear that the omissions complained of had been supplied (under Chapter 10,040), at the time these certificates were sold. And the subsequent attempted validating acts expressly related to validation of what the officers had done; not what they had omitted to do. And in Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524, we held that the rule that a taxpayer may waive his right, or may be estopped by laches or otherwise, to contest the validity of a tax lien, is not applicable when such lien is utterly void.

The case of Tax Securities Corporation v. Manatee Company, 115 Fla. 655, 155 So. 742, dealt with voidable assessments. It does not uphold the theory that laches can breathe life into a void assessment.

As a tax roll does not become a valid tax roll until it has been signed or verified, the defendants could not be held guilty of laches for failure to earlier complain of the void tax rolls involved in this case. However it appears that their father, the former owner, had vigorously and persistently objected to the omission of personal property from the tax rolls involved in this case.

Furthermore, the assessments were illegal and void under the decision of this court in Coombes v. City of Coral Gables, 124 Fla. 374, 168 So. 524, in that there was a deliberate omission to assess personal property, which cast an unfair burden upon the then owner of this real estate.

Since the tax sale certificates involved in this case, under the facts pleaded, are, as I see it, void, the decree below should be reversed in toto. In any event, the most that the appellee could possibly be entitled to in equity would be the amount it actually paid for such certificates; in other words, the most that equity could possibly allow it is reimbursement, but should deny it the right to collect interest and penalties based on a void, or even on a voidable assessment.

I think therefore that the order and decree appealed from should be reversed.

ELLIS, C. J., agrees to the conclusion.



**CHERRY et ux. v. HEFFERNAN et al.**

Supreme Court of Florida, Division A.

April 9, 1938.

Rehearing Denied July 14, 1938.

**1. Prohibition ⟺19**

The state is not a necessary party to a proceeding in prohibition. Comp.Gen.Laws 1927, § 5450.

**2. Automobiles ⟺235**

A nonresident motorist cannot employ the terms of the act providing for substituted service of process on nonresident motorists to defeat the purpose of the act. Acts 1935, c. 17254.

**3. Automobiles ⟺235**

The purpose of the statute providing for substituted service of process on nonresident motorists was to give the classes named therein notice of any action brought against them, that they might submit themselves to the jurisdiction of the court and offer such defense as they may be advised. Acts 1935, c. 17254.

**4. Automobiles ⟺235**

In automobile accident case against nonresident motorist, where service of summons ad respondendum was made on Secretary of State according to statute and a copy thereof sent by registered mail to the nonresident

who refused to accept the letter, nonresident could not restrain the proceedings in the action against him on ground of lack of proper service. Acts 1935, c. 17254.

**5. Appearance ⊂═9(1)**

In action against nonresident motorist, where substituted service of process was made upon Secretary of State, according to statute, and nonresident appeared in Supreme Court with suggestion for prohibition to restrain prosecution of the action, such appearance constituted a "general appearance" and submission to the jurisdiction of the court even if service were not sufficient. Acts 1935, c. 17254.

[Ed. Note.—For other definitions of "General Appearance," see Words & Phrases.]

———

Original proceeding for writ of prohibition by E. M. Cherry and wife against D. J. Heffernan and another, as Judges of the Civil Court of Record in and for Dade County, Florida, and others, to restrain defendants from entering, or causing to be entered, any orders of any nature whatsoever in a cause pending therein against plaintiffs. A rule nisi was granted, and defendants moved to vacate it.

Rule nisi ordered quashed.

Casey, Walton & Spain, DuBose & Rhudy, and Thos. V. McCaul, Jr., all of Miami, for plaintiffs

Blackwell & Walker, of Miami, for defendants.

**TERRELL, Justice.**

The plaintiffs, E. M. Cherry and Lena Robertson Cherry, are residents of Scotland Neck, N. C. The defendants Coy McMahon and Ives Dairy Company, a Florida corporation, are residents of Florida. In August, 1937, while the Cherrys were temporarily in Florida operating their automobile along the federal highway in Dade county, they collided with a milk truck of Ives Dairy Company driven by Coy McMahon. The Cherrys were injured and their automobile was damaged. The milk truck was also damaged and Coy McMahon was injured. The Cherrys soon after returned to their home in North Carolina.

In October, 1937, the Cherrys filed a common-law action in the circuit court of Dade county against Ives Dairy Company, which was in November, 1937, dismissed and a new action was brought by the same plaintiffs

against the same defendant in the United States District Court for the Southern District of Florida laying damages in the sum of $50,000.

Ives Dairy Company then brought a common-law action against the Cherrys for the benefit of itself, Coy McMahon, and its workmen's compensation insurance carrier. Ætna Casualty & Surety Company. The Cherrys being nonresidents, service was made on them as provided by chapter 17254, Acts 1935, that is to say, by serving the summons ad respondendum on the Secretary of State, who was paid the statutory fee of $2. and the plaintiff, through its counsel, forwarding from Miami, Fla., on December 11, 1937, in registered air mail, a letter addressed to E. M. Cherry and Lena Robertson Cherry at their residence in Scotland Neck, N. C., with return receipt requested, said letter containing a copy of the summons ad respondendum, a copy of the certificate of Hon. R. A. Gray, Secretary of State, to the effect that he had received the statutory fee, had been duly served with notice of the institution of the action and the service of the summons ad respondendum on him, which registered letter the Cherrys, as defendants, refused to accept, and having been so refused, it was returned to counsel for Ives Dairy Company endorsed by the Post Office Department "refused," and it was thereupon filed with the case papers in the office of the clerk of the civil court of record of Dade county.

The said registered letter having been "refused," the judge of the civil court of record of Dade county entered an order December 24, 1937, requiring the Cherrys to enter their appearance on the rule day in January, 1938, and upon their failure or refusal to do so, a default would be entered against them. The Cherrys forthwith applied to this court for writ of prohibition to restrain the plaintiffs, the judges of the civil court of record for Dade county and its clerk, from entering or causing to be entered, any orders of any nature whatsoever in the cause pending therein. A rule nisi was granted, a motion to vacate which we now are confronted with.

The motion to vacate the rule nisi is grounded on the charge that the state is a necessary party to prohibition, that a certified transcript of the record of the cause in the civil court of record was not attached to the suggestion for prohibition, and that it affirmatively appears that the provisions of chapter 17254, Acts 1935, were not sub-

stantially complied with by Ives Dairy Company in their attempt to serve process upon the Cherrys and consequently the order entered by the civil court of record requiring the Cherrys to file their appearance under penalty of default was not within its jurisdiction to enter.

[1] The state is not a necessary party to a proceeding in prohibition. Section 5450, Compiled General Laws of 1927; Frederick, County Solicitor, v. Rowe, Judge, 105 Fla. 193, 140 So. 915. It affirmatively appears that a certified transcript of the proceedings in the civil court of record of Dade county is attached to the suggestion for writ of prohibition.

As to the service, chapter 17254, Acts 1935, provides for constructive or substituted service on non resident owners, drivers, operators, agents of them, or those permitting or having motor vehicles driven for or by them in the state of Florida. When such persons accept the privilege of the public highways of the state, said acceptance shall be equivalent to the appointment by him or them of the Secretary of State as their agent upon whom may be served all process in any action or proceeding against them growing out of any accident or collision in which they may be involved while operating their automobile on the public roads of this state.

Service of such process shall be made by leaving a copy including a fee of $2 with the Secretary of State and may be served on the defendant in the following manner: (1) Notice of the service and copy of the process mailed and registered by the plaintiff or his attorney to defendant and defendant's return receipt and affidavit of the plaintiff or his attorney of compliance filed with the papers in the case on or before the return day of the process or within such time as the court may allow. (2) Such notice and copy may be served upon the defendant, if found within the state by an officer duly qualified to serve legal process. (3) If found without the state, by a sheriff or deputy sheriff of any county of this state. (4) By any duly constituted public officer qualified to serve like process in the state or jurisdiction where the defendant is found and the officer's return showing such service to have been made filed in the case on or before the return day of the process or within such time as the court may allow.

It is not contended that any of these methods of service were attempted except the

first, and petitioners contend that the service so made was insufficient to give the court jurisdiction because no return receipt has been filed in the civil court of record of Dade county showing delivery of the service and notice by registered mail to the defendant as the act requires. To support this contention, petitioners rely on State ex rel. Palmer v. Gray, 92 Fla. 1123, 111 So. 242; Standley v. Arnow, 13 Fla. 361; Creadick v. Keller, 5 W.W.Harr. 169, 35 Del. 169, 160 A. 909; Dwyer v. Shalek, 232 App.Div. 780, 248 N.Y.S. 355; Spearman v. Stover, La.App., 170 So. 259; and 5 Am.Jur., Automobiles, § 591.

[2] These decisions hold that statutes providing for constructive or substituted service on nonresidents are in derogation of common rights and must be strictly construed. They provide a means for giving notice to and for securing jurisdiction over the parties and classes described, and being so, the steps required to be taken must be substantially complied with. It was never contemplated, however, that a nonresident could employ the terms of the act to defeat its purpose.

[3, 4] The purpose of the act was to give the classes named therein notice of any action brought against them that they might submit themselves to the jurisdiction of the court and offer such defense as they may be advised. It is shown here that the terms of the act in so far as giving notice was required were complied with to the letter. If defendant chooses to flout the notice and refuse to accept it, he will not be permitted to say in the next breath that he has not been served.

Many states have enacted statutes of this kind for the purpose of securing service on automobile operators readily. They have been generally upheld and the service under them held good if there is reasonable probability that the notice was received. Having been returned "refused" and having entered another forum for the purpose of defeating it, it would be ridiculous to assume that it was not received. Wuchter v. Pizzutti, 276 U.S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230; Wax v Van Marter, 124 Pa Super 573, 189 A. 537; Creadick v. Keller, 5 W.W. Harr 169, 35 Del 169, 160 A 909

[5] Even if the service was not otherwise sufficient when the Cherrys came into this court with their suggestion for prohibition and fail in the effort, this may amount to a general appearance and a submission to

[88]

Exh. B (A3)

420    Fla.    182 SOUTHERN REPORTER

the jurisdiction of the court  Rorick et al. v. Stilwell et al., 101 Fla. 4, 133 So. 609.

The motion to quash the rule nisi is granted.

It is so ordered.

ELLIS, C. J., and BUFORD, J., concur.

WHITFIELD, P. J., and BROWN and CHAPMAN, JJ., concur in the opinion and judgment.



**KENNEY v. LANGSTON et al.**

*Supreme Court of Florida.*

July 1, 1938.

Rehearing Denied July 14, 1938.

**1. Trial ⟨⟩139(1)**

The legal sufficiency of evidence is a matter of law for the court.

**2. Trial ⟨⟩139(1)**

Where the evidence will not in law support a verdict for plaintiff, there can be no recovery, and the court should direct a verdict for the defendant.

**3. Contracts ⟨⟩323(1)**

In action on alleged contract employing plaintiff to prepare a certain bid to be submitted for defendant for construction of a hospital and to supervise construction work on hospital, wherein the defendants set up the defense that plaintiff's bid was too inaccurate to use, evidence *held* insufficient in law to support a verdict for plaintiff, as respects direction of verdict for defendant.

Error to Circuit Court, Orange County; Frank A. Smith, Judge.

Action by Thomas F Kenney against E. C. Langston and W. T. Murphy, copartners, doing business under the firm name and style of the Langston & Murphy Construction Company, to recover on an alleged contract of employment, whereby plaintiff was to prepare a certain bid to be submitted for the defendant for the construction of a hospital, and to supervise construction work on hospital. To review a judgment

in favor of the defendants, the plaintiff brings error.

Judgment affirmed.

George P. Garrett, of Orlando, for plaintiff in error.

Akerman & Dial and Giles & Gurney, all of Orlando, for defendants in error.

CHAPMAN, Justice.

This cause is here for review on writ of error to a final judgment entered in behalf of the defendants in the Circuit Court of Orange County, Florida, on April 28, 1937. The material portions of the declaration are that on or about April 17, 1936, in Orange County, Florida, the defendants employed the plaintiff to prepare a certain bid to be submitted for the defendants to the Florida State Tuberculosis Board for the construction of a tuberculosis hospital to be constructed in Orange County, Florida, and said defendants further employed the plaintiff, in the event that said bid was successful, to supervise the construction work of the hospital.  The plaintiff accepted the employment, and the plaintiff and defendants agreed that the plaintiff should be paid for his services so to be rendered a $5,000 supervision fee and one-third of the net profits of the construction work undertaken by the defendants by their successful bid for said work.

Attached to the declaration is a bill of particulars dated August 23, 1936, for the amount due plaintiff on account of breach of the oral contract of employment in connection with the construction of a hospital for the Florida State Tuberculosis Hospital Board, viz.:

"Supervision fee .............. $ 5,000.00
To one-third profit figure added to actual costs in making bid, $30,000.00 ............. 10,000.00
To one-third of additional profit figure of $20,000.00 of anticipated profits in connection with said contract .... 6,666.67

Total ................. $21,666.67
Together with interest from date of filing this suit, August 23, 1936, at 8% per annum, until paid."

To the declaration the defendants filed pleas: (1) General issues; (2) they never promised as alleged; (3) the defendants agreed with the plaintiff that he should pre-

409

In the Delaware case of Liberty Brand Canning Co. v. American Stores Co., 1 W. W. Harr, (31 Del.) 492. 115 A. 198. decided without written opinion, it was held that the service of process on the assistant secretary of the resident agent of a Delaware Corporation was not sufficient.

We do not regard those authorities as opposed to the conclusion of the Court in the present case.

The motion to quash is refused.[1]

---

## CREADICK v. KELLER et al.

Superior Court of Delaware. New Castle. May 27, 1932.

**Automobiles ⊙=285.**

Service against nonresident motorist was not invalidated, where noncompliance with statute was caused by motorist's refusal to receive letter and sign receipt (35 Del. Laws, c. 225, § 2).

35 Del. Laws, c. 225, § 2, provides that, in serving a nonresident motorist, a copy of the process with notice of service on the secretary of state should be sent by registered mail by plaintiff to nonresident defendant, and defendant's return receipt and plaintiff's affidavit of defendant's nonresidence, and of the sending of the copy of process with the notice, should be filed in the action with the declaration.

---

Action by Carlton E. Creadick against Andrew E. Keller and Anna V. Keller, who were sued with Colonial Stages East, Incorporated. On motion of defendants' attorney to quash the return of the Sheriff on the writ of summons.

Motion refused.

PENNEWILL, C. J., and HARRINGTON and RICHARDS, JJ., sitting.

W. Thomas Knowles, of Wilmington, for plaintiff.

James M. Mulloy, of Wilmington, for defendants, appeared specially.

[1] While the constitutionality of this statute was not attacked, a somewhat similar statute was held good in Hess v. Pawloski, 274 U. S. 352, 47 S. Ct. 632, 71 L. Ed. 1091; Id., 250 Mass. 22, 144 N. E. 760, 35 A. L. R. 945, and see annotation page 931.

See, also, Wuchter v. Pizzutti, 276 U. S. 13, 48 S. Ct. 259, 72 L. Ed. 446, 57 A. L. R. 1230, and see annotation page 1239; Kane v. N. J., 242 U. S. 160, 37 S. Ct. 30, 61 L. Ed. 222; Huddy on Autom. Law (8th Ed.), vols. 15, 16, p. 142; Blashfield Ency. of Autom. Law, vol. 2, p. 1518.

Superior Court for New Castle County, No. 12, January Term, 1932.

Case heard on motion of the defendants' attorney to quash the return of the Sheriff on the writ of summons.

PENNEWILL, C. J., delivering the opinion of the Court:

In this case objection is made to the service of process and it is based on the plaintiff's failure to file with his declaration a return receipt signed by the defendant upon receiving by registered mail from the plaintiff a copy of the process and notice of its service.

The statute, chapter 225, vol. 35, Laws of Delaware, provides that

"Service of the legal process provided for in Section 1 * * * shall be made upon the Secretary of State of the State of Delaware in the same manner as is now or may be thereafter provided by law for service or writs of summons. * * * Provided, that a copy of the process with notice of such service, and that under the provisions of this Act it shall be as effectual to all intents and purposes as if it had been made upon such nonresident personally within this State, are forthwith sent by registered mail by the plaintiff in said civil action to said nonresident defendant therein, and the defendant's return receipt and the plaintiff's affidavit of the defendant's non-residence and of the sending of the copy of the process with the notice aforesaid are filed in the said action with the declaration." Section 2.

It is argued that the service is incomplete and invalid because the defendant's return receipt was not filed as required by the statute. But it does appear from plaintiff's affidavit and is not denied, that the defendants were non-residents and that the plaintiff sent to each of the defendants by registered mail a copy of the process, with notice of service. It further appears from the affidavit and envelope attached thereto that a letter containing the required information was sent by registered mail to each of the defendants, at their correct address, to be delivered to addressees only; that a return receipt was requested; that said letters were delivered to the defendants and each of them refused to accept delivery thereof. It is clear from the record that the plaintiff's failure to fully comply with the requirements of the statute was caused by the defendant's refusal to receive the letters and sign the receipt. Such refusal made it impossible for the plaintiff to file the return receipt with his declaration. It would create an intolerable situation if the defendant could, by his own wilful act, or refusal to act, prevent the plaintiff from maintaining his action. It is a situation the Court cannot recognize. Although perhaps immaterial to the question under consideration, it

EXH. B

may be stated that it appears from an affidavit attached to the declaration that the contents of the envelope above mentioned were delivered personally by the affiant to each of the defendants. It was also contended in this case that the service was invalid because it was made on the Assistant Secretary of State. The Court have considered and passed upon a similar question in the cases of William E. Derrickson and Pearl F. Derrickson v. Charles S. Bannett, recently decided. 4 W. W. Harr. (34 Del.) ——, 160 A. 907, and it is not necessary to repeat here the opinion given in those cases.

The motion to quash the service in the present case is refused.

---

### FELSTEAD v. EASTERN SHORE EXPRESS, INC.

Superior Court of Delaware. New Castle.

May 27, 1932.

1. **Automobiles** ⚖=235.
   Service on assistant secretary of state held valid service on nonresident motorist (35 Del. Laws c. 225).

2. **Automobiles** ⚖=235.
   Failure of affidavit filed with declaration against nonresident motorist to show that defendant was informed of effectuality of service of which notice was given, and that such notice was sent defendant by registered mail, invalidated service under statute (35 Del. Laws, c. 225).

3. **Automobiles** ⚖=235.
   Statutory requirements for service on nonresident motorists must be complied with to give court jurisdiction (35 Del. Laws, c. 225).

Action by Mabel Felstead against the Eastern Shore Express, Inc. On motion of defendant's attorney to quash the return of the sheriff on the writ of summons.

Motion sustained.

PENNEWILL, C. J., and RICE and HARRINGTON, JJ., sitting.

Leonard G. Hagner, of Wilmington, for plaintiff.

James R. Morford, of Wilmington, for defendant, appeared specially.

Superior Court for New Castle County, No. 188, January Term, 1932.

⚖=For other cases see same topic and KEY NUMBER in all Key Number Digests and Indexes

Case heard on motion of defendant's attorney to quash the return of the Sheriff on the writ of summons.

PENNEWILL, C. J., delivering the opinion of the Court:

Defendant in the above case appeared specially to argue a motion to quash the writ of summons and the return thereon on the ground that service was effected on the Assistant Secretary of State and not on the Secretary of State as required by law.

The motion to quash is based also on another ground which will be considered after disposing of the first one.

In the cases of William E. Derrickson and Pearl F. Derrickson v. Charles Bannett, recently decided, 4 W. W. Harr. (34 Del.) ——, 160 A. 907, an objection similar to the first one made to the service in the present case was considered by this Court at some length, and the service on the Assistant Secretary was held to be valid.

[1] It is not necessary to repeat here the opinion or reasons given for the Court's conclusion in the cases referred to. It is sufficient to say that we adhere to our ruling in those cases and hold the service on the Assistant Secretary of State in the instant case valid.

[2] Another ground or reason for the motion to quash is, that it does not appear that the plaintiff has complied with the requirements of chapter 225, volume 35, Laws of Delaware, with respect to the completion of service by the filing of the required affidavit with the declaration.

The affidavit the plaintiff is required to file with his declaration must show the defendant's non-residence, the sending by registered mail a copy of the process with notice of service, to the defendant, and that the defendant was informed that the service, "shall be as effective to all intents and purposes as if it had been made upon such non-resident personally within this State, and that such notice was sent to the non-resident forthwith by registered mail."

In the present case it does not appear that the defendant was informed that the service of the process, of which notice is given, would be as effectual to all intents and purposes as if it had been made upon the defendant personally within this State, and that such notice was sent to the defendant by registered mail.

[3] It may be admitted that the statute in the part we are now considering, was unskillfully drawn, and that some of its provisions are not clearly expressed. They may seem unreasonable, but they must be complied with to give the Court jurisdiction.

"Where the statute prescribes that juris-

91
Ex. B (A6)

entry was continued up until 1969. Just how and when this can be said to have come to Leslie's attention, I do not know, and I submit that the majority is engaging in the rankest kind of speculation to say that it did. Appellees' witness, Frank Page, put the interval when Leslie Cooper was in Arkansas for some extended period of time as being between 1917 and 1951, during which time Page paid rents on this 20 acres and other lands owned by Leslie to R. J. Cooper, not Leslie. It is reasonable to assume that if R. J. Cooper was collecting the rents, he was also paying the taxes.

Furthermore, Leslie Cooper certainly cannot be charged with notice, much less knowledge, of a patently void and indefinite description on the tax books. One of the purposes of requiring a proper description on the tax books is to inform the taxpayer what property is taxed, and a description such as the one used here does not properly identify any land because the owner cannot know from this description what lands were assessed as his, nor whether the land of others might be included in the assessment. American Portland Cement Co. v. Certain Lands, 179 Ark. 553, 17 S.W.2d 281. In this connection, there is no evidence that the tax book description on Leslie's land was changed. An acreage change is the only change indicated on the description of Leslie's land, which was according to government survey calls. This being the case, the number of acres set opposite the description is of no significance. Plant v. Sanders, 209 Ark. 108, 189 S.W.2d 720. There is not even any evidence that the reduced acreage figure appeared opposite the description of Leslie's land in tax books for years subsequent to 1941.

Because I think that appellees failed to meet their burden of proof, and because I think that the chancellor clearly did not require them to meet the burden imposed, I would reverse the decree.

**J. H. MERRIOTT, Appellant,**

v.

**Earl WHITSELL, Appellee.**

No. 5-5727.

Supreme Court of Arkansas.

Feb. 21, 1972.

Automobile accident case. The Garland County Circuit Court, Henry M. Britt, J., dismissed the action for want of prosecution, predicated on a holding that plaintiff had failed to obtain service of process upon defendant, and plaintiff appealed. The Supreme Court, Fogleman, J., held that although defendant, a nonresident motorist who was involved in a collision in Arkansas and who was subject to the jurisdiction of the Arkansas courts under the Uniform Interstate and International Procedure Act, could not defeat jurisdiction by the simple expedient of refusing to accept a registered letter, there was, nonetheless, a defect in the service of process, namely, the fact that process was served by plaintiff's attorney who was not a proper person to serve process under the Act; however, the invalidity of the service, standing alone, did not render the summons itself void, and it was thus improper to dismiss the action simply on the basis of a holding that the service was invalid.

Reversed and remanded for further proceedings.

Byrd, J., dissented and filed an opinion in which Brown, J., joined.

**1. Automobiles ⬥235**

Although defendant, a nonresident motorist who was involved in a collision in Arkansas and who was subject to the jurisdiction of the Arkansas courts under the Uniform Interstate and International Procedure Act, could not defeat jurisdiction by the simple expedient of refusing to accept

a registered letter, there was, nonetheless, a defect in the service of process, namely, the fact that process was served by plaintiff's attorney who was not a proper person to serve process under the Act; however, the invalidity of the service, standing alone, did not render the summons itself void, and it was thus improper to dismiss the action simply on the basis of a holding that the service was invalid. Ark.Stats. §§ 27-306, 27-312, 27-319, 27-322 to 27-324, 27-327, 27-339, 27-340, 27-342.1, 27-342.2, 27-2501 to 27-2507, 27-2503.

**2. Process ☞82**

One who is subject to the jurisdiction of the courts of Arkansas under the Uniform Interstate and International Procedure Act cannot defeat jurisdiction by the simple expedient of refusing to accept a registered letter. Ark.Stats. §§ 27-2501 to 27-2507, 27-2503.

**3. Process ☞31**

In order to be valid, service must be made by one duly authorized.

**4. Process ☞55**

Attorney for plaintiff is not a proper person to serve process under the Uniform Interstate and International Procedure Act. Ark.Stats. §§ 27-2501 to 27-2507, 27-2503.

**5. Process ☞153**

Invalidity of service, standing alone, does not render the summons itself void.

———◆———

Hobbs & Longinotti, Hot Springs, for appellant.

FOGLEMAN, Justice.

The circuit court dismissed appellant's action against appellee, who was alleged to be a nonresident motorist involved in a collision in Arkansas with a motor vehicle owned by appellant. The order of dismissal for want of prosecution was based upon the circuit judge's holding that appellant had failed to obtain service of process

upon appellee. We find that this action constituted reversible error.

The allegations of the complaint, which was filed May 18, 1970, bring the action within the scope of Ark.Stat.Ann. § 27-2502, subd. C, par. 1(c) (Supp.1971). While the summons issued does not appear in the record, we find the affidavit of one of appellant's attorneys reciting that, on or about the second day of July, 1970, he mailed a copy of the summons and complaint to appellee at 682 Westphal Avenue, Columbus, Ohio, by registered mail, but that appellee refused to accept the missive when delivered, and that it was returned to the affiant. An envelope, addressed to appellee at the address given in the affidavit and bearing the return address of appellant's attorneys, postmarked July 2, 1970, was incorporated into the affidavit. It bore notations indicating that it was transmitted as registered airmail for delivery to the addressee only, with return receipt requested, and returned to the sender for the reason that it was refused.

Appellant relies upon our version of the Uniform Interstate and International Procedure Act, Act 101 of 1963 [Ark.Stat. Ann. §§ 27-2501 to 27-2507 (Supp.1971)], to sustain the service in this case. He now contends that the service is in full compliance with § 27-2503, which in pertinent part provides.

A. Manner and proof of service.

1. When the law of this State authorizes service outside this State, the service, when reasonably calculated to give actual notice, may be made:

   *    *    *    *    *

    (c) by any form of mail addressed to the person to be served and requiring a signed receipt;

   *    *    *    *    *

2. Proof of service outside this State may be made by affidavit of the individual who made the service or in the manner prescribed by the law of this State, the order pursuant to which the service is made, or the law

of the place in which the service is made for proof of service in an action in any of its courts of general jurisdiction. When service is made by mail, proof of service shall include a receipt signed by the addressee or other evidence of personal delivery to the addressee satisfactory to the court.

[1-4] We agree with appellant that one, who is subject to the jurisdiction of the courts of this state under the act, cannot defeat the jurisdiction by the simple expedient of refusing to accept a registered letter. The avoidance of authorized service of proper process by a wilful act or refusal to act on the part of the defendant would create an intolerable situation and should not be permitted. Creadick v. Keller, 35 Del. 169, 160 A. 909 (1932); Cherry v. Heffernan, 132 Fla. 386, 182 So. 127 (1938). See also, Lendsay v. Cotton, 123 So.2d 745, 95 A.L.R.2d 1029 (Fla.App. 1960); Paxson v. Crowson, 47 Del. 114, 87 A.2d 881 (1952). Even so, there is a defect in the service of process that appellant cannot overcome. In order to be valid, service must be made by one duly authorized. Hughes v. Martin, 1 Ark. 386. The United States District Court for the Eastern District of Arkansas has held that the attorney for the plaintiff is not a proper person to serve process under the act. Davis v. Triumph Corp., D.C., 258 F.Supp 418 (1966). We agree. The section of the statute involved contains the following provision:

B. Individuals eligible to make service. Service outside this State may be made by any individual permitted to make service of process under the law of this State or the law of the place in which the service is made or who is designated by a court of this State.

Generally, a summons is directed to the sheriff of the proper county. Ark.Stat. Ann. §§ 27-306, 27-312 (Repl.1962). It is to be delivered to the sheriff or other officer authorized to execute it. Ark.Stat.

Ann. § 27-319 (Repl.1962). It is to be served in Arkansas in a tort action by the officer to whom directed, upon proper showing, by a jailer, coroner or constable or by a person appointed by the officer to whom directed by endorsement on the summons, or by the court. Ark.Stat.Ann. §§ 27-322 to 27-324, 27-327 (Repl.1962). The attorney for the plaintiff is not a person authorized by statute in this case, and there is nothing in the record to indicate that he was appointed to serve the summons. Therefore, the service is void. See Rutherford v. Moody, 59 Ark. 328, 27 S.W. 230; Hughes v. Martin, supra.

[5] A personal judgment may be based upon service by the attorney for the plaintiff by registered mail when the defendant was a domiciliary of the state at the time the cause of action arose or at the time of the service of process. Ark.Stat.Ann. § 27-339 (Repl.1962). See Harrison v. Matthews, 235 Ark. 915, 362 S.W.2d 704. But this is not such a case. This case is also unlike those in which the attorney for the plaintiff notifies the nonresident defendant of the service of process upon the Secretary of State as statutory agent of the defendant for service. See, e. g., Ark.Stat. Ann. §§ 27-340, 27-342.1, 27-342.2 (Repl. 1962); Jenkins v. Hill, 240 Ark. 197, 398 S.W.2d 679. The invalidity of the service, however, standing alone, does not render the summons itself void. Hughes v. Martin, supra; Davis v. Triumph Corp., supra.

The order of dismissal is based upon the court's holding that the service was invalid, and it recites only that plaintiff has failed to obtain service of summons or process. Since the dismissal upon this ground would prevent the service of a properly issued summons by a duly authorized person, we set it aside as erroneous and remand the case for further proceedings consistent with this opinion.

BYRD, Justice.

I would affirm this case. The record shows only the following information: (1)