WAX v. VAN MARTER  Pa. 537
130 A.

lars on the death of her husband, Harry Paul. Claim for the endowment was also made by David Paul, Administrator c. t. a. of the Estate of Harry Paul, deceased; whereupon the defendant filed a petition for leave to pay the money into court and to interplead. The said petition was allowed and leave was granted. The defendant paid into court the sum of five hundred dollars, less seventy-five dollars (which represented fifty dollars, the cost of erecting a tombstone upon the grave of the said Harry Paul, and twenty-five dollars as counsel fee to the attorney for the plaintiff). The issue as to who was entitled to the fund was tried by the writer of this opinion without a jury.

"The evidence at the trial disclosed that the said Harry Paul died on November 12, 1934; and that at the time of his death he was a member in good standing of the defendant association; that upon the death of a member an endowment of about five hundred dollars (depending upon the total membership) was payable. * * *

"The deceased died without issue and left a will, which was admitted to probate, in which he [specifically disposed of the endowment death benefit in said association and] directed the defendant to pay one dollar to his wife, Minnie, and no more, and the balance to his brother, David Paul, to be divided by him [with his two sisters]. * * *

"Letters [of administration c. t. a.] were granted to David Paul, one of the claimants herein. * * *

"The widow remarried on January 20, 1935.

"The court found in favor of David Paul, the administrator of the Estate of Harry Paul, deceased, and directed that the money paid in court be paid to the said David Paul, administrator c. t. a. of the estate of Harry Paul, deceased.

"The plaintiff, Minnie Frey, filed motions and reasons for a new trial and for judgment in her favor notwithstanding the finding. As already indicated, the only issue here was: Who is entitled to the fund? The provisions of the constitution and by-laws of the association are very vague and indefinite. They make no definite provision for beneficiaries. The only definite provision is that contained in Section 13, which reads: 'Where a will is left the member's wishes shall be adhered to'. In the instant case the member did leave a will and made explicit directions as to the payment of the endowment. He had the right, in the absence of any provisions to the contrary, to make such provision."

We agree with the court below that the extracts from the constitution and by-laws offered in evidence make no definite provision for beneficiaries. The section relied on by the appellant (article 9, § 1) does not provide that on the death of a member leaving a wife, she shall receive the endowment benefit, but only that upon the death of a member *or his wife*, who are entitled to benefits, that is, who are in good standing, the association shall pay all necessary funeral expenses.

The judgment is affirmed.



## WAX v. VAN MARTER.

Superior Court of Pennsylvania.

Jan. 29, 1937.

1. **Automobiles** ⚖=235

Service of process on a nonresident operator or owner of a motor vehicle by registered mail addressed to defendant's last-known address as provided by statute was sufficient, though the letter was returned marked "Refused" and there was no registered mail return receipt to attach to the return of service as required by statute (75 P. S. §§ 1201, 1202).

2. **Automobiles** ⚖=235

Where copy of summons and statement of claim sent by registered mail to last-known address of nonresident owner or operator of motor vehicle was returned marked "Refused," if refusal was by a third person, defendant may apply to the court to set aside the service or open the judgment against him (75 P.S. § 1202).

---

Appeal No. 228, October term, 1936, from judgment and order of Municipal Court, Philadelphia County, No. 39, September term, 1935; Vivian Frank Gable, Judge.

Trespass for damages from the negligent operation of a motor vehicle by Nelson Wax against George E. Van Marter. Judgment for plaintiff for want of an answer under

130 A.—34½



which damages were assessed at $300, and from an order discharging a rule to strike off the judgment, defendant appeals.

Affirmed.

Argued before KELLER, P. J., and CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES, and RHODES, JJ.

Albert Laub, of Philadelphia, for appellant.

Morris M. Wexler and Levick, Wexler & Weisman, all of Philadelphia, for appellee.

BALDRIGE, Judge.

The only question involved in this appeal is whether the service of process was valid.

[1] The plaintiff, on April 3, 1935, instituted an action of trespass in Philadelphia against the defendant, a resident of Trenton, N. J. Service of summons and statement of claim were made upon the secretary of revenue under section 1 of the Act of 1929, May 14, P.L. 1721, as amended April 24, 1931, P.L. 50, § 1 (75 P.S § 1201), which provides that any nonresident operator or owner of a motor vehicle within this state constitutes the secretary of revenue of the commonwealth his agent for the service of civil process in proceedings arising by reason of an accident or collision occurring within this commonwealth. In pursuance of that act, copies of the summons and statement were sent to the defendant's last-known address. The letter, unopened, was returned by the postal authorities, marked "Refused," and was attached to the return of summons. Judgment for want of an appearance was entered thereafter. A writ of inquiry was issued and damages were assessed. Defendant thereupon entered a special appearance and, at his instance, a rule was granted to strike off the judgment, on the ground that there was no registered mail return receipt attached to the plaintiff's return of service, as required under section 2 of the act of 1929, supra, as amended May 16, 1935, P.L. 174, § 1 (75 P.S. § 1202). The court below, after argument, discharged the rule. Defendant appealed.

Section 2 of the act of 1935, supra, provides: "Such process shall be served, by the officer to whom the same shall be directed, upon the Secretary of Revenue of the Commonwealth of Pennsylvania, by sending by registered mail, postage prepaid, at least fifteen (15) days before the return day of such process, a true and attested copy thereof, and by sending to the defendant, by registered mail, postage prepaid, a like true and attested copy, with an endorsement thereon of the service upon said Secretary of Revenue, addressed to such defendant at his last known address. The registered mail return receipts of the Secretary of Revenue and of such defendant shall be attached to and made a part of the return of service of such process."

Similar statutes exist in thirty-five states. Such legislation has been held valid as a proper exercise of the police power of the state in regulating the use of its highways by nonresident motorists. Hess v. Pawloski, 274 U.S. 352, 47 S.Ct. 632, 71 L.Ed. 1091; Stoner v. Higginson et al., 316 Pa. 481, 175 A. 527; Vaughn v. Love et al. (Pa.Sup.) 188 A. 299.

The validity of service similar to the case at bar seems to have been passed upon thus far by only one appellate court. In Creadick v. Keller et al., 5 W.W.Harr. (35 Del.) 169, 160 A. 909, a registered letter addressed to each defendant "to be delivered to addressees only" was returned "refused." The court, in declining to set aside service, stated: "It is clear from the record that the plaintiff's failure to fully comply with the requirements of the statute was caused by the defendant's refusal to receive the letters and sign the receipt. Such refusal made it impossible for the plaintiff to file the return receipt with his declaration. It would create an intolerable situation if the defendant could, by his own wilful act, or refusal to act, prevent the plaintiff from maintaining his action."

[2] In the instant case, nothing appears upon the record to show under what circumstances the letter was refused, or that defendant's address was his correct one. Service has been held invalid where a letter was returned because the addressee could not be found (Smyrnios v. Weintraub [D.C. Mass.] 3 F.Supp. 439); or the addressee had moved and left no address (Syracuse Trust Co. v. Keller, 5 W.W.Harr. [35 Del.] 304, 165 A. 327); or no such street could be found in the directory (Lewis v. James, 19 Pa.Dist. & Co. R. 16). This appellant argues that the letter addressed to him may have been refused by a third person. If that can be shown, he is not without a remedy; he may apply to the court to set aside the service or to open the judgment. In Vaughn v. Love, supra, a nonresident defendant was permitted to attack the sheriff's return showing service upon an adult member of his family within the jurisdiction when such service was not in fact made. The rule of

BASSANI PROCESSES v. EDWARD STERN & CO.   Pa.   529
189 A.

conclusiveness of the sheriff's return was held not to prevent a nonresident defendant from establishing his nonresidence by evidence dehors the record.

The general trend of decisions is toward sustaining the validity of the service of process if there is a reasonable probability that the requirements of the statute were complied with and that the defendant received actual notice. Wuchter v. Pizzutti, 276 U. S. 13, 48 S.Ct. 259, 72 L.Ed. 446, 57 A.L.R. 1230. In this case, the plaintiff followed the provisions of the statute; he could do no more. It is very apparent that the purpose of the act of 1929 and its amendments, supra, is to provide for service on motor vehicle drivers who can quickly pass beyond our border and evade service of process. This statute must be interpreted with reference to its purpose and the object to be obtained, and construed, if possible, so that it is not incapable of execution which would defeat its very purpose.

It could readily be concluded that the defendant's scheme was to evade service on him by refusing to accept the notice of process. Such willful, artificial conduct, having for its purpose the nullifying of a part of an act of assembly, ought not be rewarded with success. Fortunately, a good service does not depend on whether the signature of the defendant is on the return receipt, but rather on the reasonable probability that the notice reached him. "Statutes are to be construed so as may best effectuate the intention of the makers." Com. v. Provident Trust Co., 287 Pa. 251, 258, 134 A. 377, 379. It was said in Com. ex rel. v. Wilkes-Barre, 258 Pa. 130, 136, 101 A. 929, 931: "A statute will not be construed so as to defeat the object of the Legislature, if it can reasonably be avoided. * * * It is presumed, as well on the ground of good faith as on the ground that the Legislature would not do a vain thing, that it intends its acts and every part of them to be valid and capable of being carried out." See, also, In re Foster's Petition, 243 Pa. 92, 89 A. 819; First Nat. Bank of Pittsburgh v. Baird, 300 Pa. 92, 150 A. 165.

We are of the opinion that the facts established that the defendant had reasonable notice of the action instituted against him and that he had an opportunity given him to defend it.

Decree of the court below is affirmed, at appellant's costs.

BASSANI PROCESSES, Inc., v. EDWARD STERN & CO., Inc.

Superior Court of Pennsylvania.
Jan. 29, 1937.

1. Patents ⚖=214.
Licensee under patent has no right to terminate license without consent of licensor.

2. Patents ⚖=218(3)
Licensor under patent held entitled to collect from licensee royalty provided for under a written agreement, which was for life of patent, though licensee had ceased to use patented equipment and had attempted to return it to licensor, where nonuser by licensee was nowhere referred to in agreement nor any right of cancellation given to licensee.

Appeal No. 429, October term, 1936, from judgment of Municipal Court, Philadelphia County, No. 912, June term, 1936; Vivian Frank Gable, Judge.

Assumpsit by Bassani Processes, Incorporated, against Edward Stern & Co., Incorporated, for royalty under written license agreement. Verdict and judgment for plaintiff for $253, and the defendant appeals.

Affirmed.

Argued before KELLER, P. J., and CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, JAMES, and RHODES, JJ.

H. J. Seman, Edward S. Weyl, and Kraus & Weyl, all of Philadelphia, for appellant.

Paul Maloney and Evans, Bayard & Frick, all of Philadelphia, for appellee.

STADTFELD, Judge.

This is an action of assumpsit instituted by Bassani Processes, Incorporated, against Edward Stern & Co., Incorporated, to recover the sum of $250 alleged to be due as a royalty under a written license agreement between the parties.

Plaintiff, in its statement of claim, averred that under a written agreement, copy of which is attached to the statement, it licensed defendant to use certain United States letters patent, and in consideration of such license defendant agreed to pay the sum of $250 per annum, in

William L. DAHL and Ruth
E. Dahl, Plaintiffs,

v.

KANAWHA INVESTMENT HOLDING
COMPANY a/k/a Kanawha Investment
Company, et al., Defendants.

No. C 94–3092.

United States District Court,
N.D. Iowa,
Central Division.

June 13, 1995.

Debtors sued numerous defendants, alleging misconduct of many kinds, in making and foreclosing of various loans. Defendants moved to dismiss and for sanctions, and plaintiffs moved for default judgment against certain defendants. The District Court, Bennett, J., held that: (1) action would not be dismissed for want of prosecution; (2) plaintiffs failed to effect proper service of process; (3) plaintiffs failed to state claims against all but six defendants; (4) failure to effect proper service precluded default judgments; and (5) Rule 11 sanctions were not warranted.

Motions granted in part and denied in part.

1. Federal Civil Procedure ⌬1758.1

Dismissal for want of prosecution was unwarranted in action by pro se plaintiffs alleging misconduct of many kinds in making and foreclosing of various loans; although plaintiffs filed no resistances after being granted several extensions of time to respond to motions to dismiss, there was no willful disobedience of court order, as court did not require some action that plaintiffs failed to take. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.; U.S.Dist.Ct.Rules N.D.Iowa, Rule 14, subds. f, i

2. Attorney and Client ⌬62

Pro se litigants are not excused from complying with court order or substantive and procedural law.

3. Federal Civil Procedure ⌬1741

District court has authority, in its discretion, to dismiss action with prejudice for failure to comply with court orders or Federal Rules of Civil Procedure. Fed.Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

4. Federal Civil Procedure ⌬1721

Dismissal with prejudice should be used sparingly because it is drastic sanction. Fed. Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

5. Federal Civil Procedure ⌬1758.1

To determine whether dismissal for want of prosecution is appropriate, court should consider whether plaintiff willfully refused to comply with court orders. Fed. Rules Civ.Proc.Rule 41(b), 28 U.S.C.A.

6. Federal Civil Procedure ⌬414, 515.1

Plaintiffs failed to effect proper service of process on defendants; copies of "green cards," or return receipts, from their certified mailings of complaint to defendants showing who signed for receipt of each complaint were not sufficient evidence acknowledging receipt of summons and complaint, nothing in record indicated mailing of request for waiver of service, and plaintiffs did not file any waiver of service obtained from any defendant. Fed.Rules Civ.Proc.Rule 4(d), 28 U.S.C.A.

7. Federal Civil Procedure ⌬412

Although certified mail "green cards," or return receipts, may indicate actual notice of lawsuit, actual notice does not dispense with requirements for proper service of process. Fed.Rules Civ.Proc.Rule 4(d), 28 U.S.C.A.

8. Federal Civil Procedure ⌬532.1, 1751

General rule is that when court finds that service is insufficient but curable, it generally should quash service and give plaintiff opportunity to re-serve defendants; however, dismissal may be proper without opportunity to cure where proper service would be futile. Fed.Rules Civ.Proc.Rules 4(d), 12(b)(5), 28 U.S.C.A.

9. Federal Civil Procedure ⌬1771

In ruling on motion to dismiss for failure to state claim, issue is not whether plaintiff will ultimately prevail, but rather, whether

plaintiff was entitled to offer evidence in support of his or her claims. Fed.Rules Civ. Proc.Rule 12(b)(6), 28 U.S.C.A.

**10. Federal Civil Procedure ⚖1829, 1835**

In considering motion to dismiss for failure to state claim, court must assume that all facts alleged in complaint are true, and must liberally construe those allegations. Fed. Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**11. Federal Civil Procedure ⚖1772**

Judge's disbelief of complaint's factual allegations does not warrant dismissal for failure to state claim. Fed.Rules Civ.Proc. Rule 12(b)(6), 28 U.S.C.A.

**12. Federal Civil Procedure ⚖1773**

It is only in "unusual case" where complaint on its face reveals some insuperable bar to relief such that dismissal for failure to state claim is warranted. Fed.Rules Civ. Proc.Rule 12(b)(6), 28 U.S.C.A.

**13. Federal Civil Procedure ⚖1751, 1781, 1837.1**

Dismissal for failure to state claim was appropriate as to defendants against whom plaintiffs failed to effect proper service of process, and against whom plaintiffs failed to state any factual allegations; however, plaintiffs were entitled to opportunity to cure defects in service as to six defendants against whom plaintiffs did make factual allegations. Fed.Rules Civ.Proc.Rule 12(b)(6), 28 U.S.C.A.

**14. Federal Civil Procedure ⚖2417**

Plaintiffs' motions for default judgment were not on proper procedural footing where plaintiffs did not make first step, i.e., seeking entry of default from clerk of court. Fed. Rules Civ.Proc.Rule 55, 28 U.S.C.A.

**15. Federal Civil Procedure ⚖2450**

To determine whether defaulted defendant has meritorious defense, likelihood of success is not measure; defendant's allegations are "meritorious" if they contain even hint of suggestion that, if proven at trial, would constitute complete defense. Fed. Rules Civ.Proc.Rule 55, 28 U.S.C.A.

See publication Words and Phrases for other judicial constructions and definitions.

**16. Federal Civil Procedure ⚖2416**

Plaintiffs who never properly served defendants were entitled to neither entry of default nor entry of default judgment, as plaintiffs could not make showing that defendants failed to plead or otherwise defend. Fed.Rules Civ.Proc.Rule 55(a), 28 U.S.C.A.

**17. Federal Civil Procedure ⚖2415**

As precondition to entry of either default or default judgment, moving party must show that opposing party has failed to plead or otherwise defend. Fed.Rules Civ.Proc Rule 55(a), 28 U.S.C.A.

**18. Federal Civil Procedure ⚖2774(3)**

Defendants were not entitled to Rule 11 sanctions against pro se plaintiffs based on plaintiffs' filing of second motion for default; that motion followed asserted second attempt to serve defendant by certified mail, even though it evinced the same misconception of effectiveness of such service, and thus, second request for default judgment was not willful flaunting of procedural rules, but rather, was attempt to cure past procedural flaws. Fed.Rules Civ Proc.Rules 4(d), 11, 28 U.S.C.A.

---

Plaintiffs William L. Dahl and Ruth E. Dahl, Kanawha, IA, prosecuted this litigation pro se.

Defendant Lee E. Nikolas was represented by Glenn L. Smith of Finley, Alt, Smith, Scharnberg, May & Craig, P.C., Des Moines, IA.

Defendant James E. Mallen was represented by Roger S. Hanson, Santa Ana, CA.

Defendants David Siegrist, Lawrence Espe, Edward J. Engstrom, Wayne Rietma, Marvin Stupka, John R. Mackaman, Russell Wunschel and Barry Nadler appeared pro se.

Defendant Richard W. Collison was represented by Russell S. Wunschel of Wunschel & Eich, Carroll, IA.

Defendant Quenton R. Boyken was represented by Roger T. Stetson of Belin, Harris, Lamsom, McCormick, P.C., Des Moines, IA.



Defendants Jon Stuart Scoles and Dale E. Ruigh were represented by Asst. Atty. Gen. Pamela D. Griebel.

Defendant James Veldhouse was represented by Richard R. Winga of Laird, Heiny, McManigal, Winga, Duffy and Stambaugh, P.L.C., Mason City, IA.

The unknown defendant(s) and yet unnamed defendants were represented by Thomas J. Bice and James L. Kramer of Johnson, Erb, Gibb, Bice & Carlson, P.C., Fort Dodge, IA.

Defendant First Nat. Bank was represented by Barry J. Nadler of Newbrough, Johnston, Brewer, Maddux & Nadler, Ames, IA.

Defendant Norwest Bank was represented by Roger W. Stone of Simmons, Perrine, Albright & Ellwood, L.L.P., Cedar Rapids, IA.

TABLE OF CONTENTS
I.  INTRODUCTION AND BACKGROUND..................................................675
II. LEGAL ANALYSIS.................................................................677
    A. Motions To Dismiss..........................................................677
        1. Want of prosecution.....................................................678
        2. Insufficiency of service................................................679
        3. Motions to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)....................682
    B. Motions For Default Judgment................................................683
    C. The Motions For Sanctions...................................................685
III. CONCLUSION....................................................................686

---

BENNETT, District Judge

A sort of "Alice in Wonderland" quality pervades this lawsuit in which no claims are made against persons appearing in the caption of the lawsuit, but claims are made against persons not so identified. The pro se plaintiffs want default judgments against persons not identified as defendants in the caption, as well as a few who are so identified, and nearly all of the defendants want the complaint dismissed as to them for failure to state a claim upon which relief can be granted. The court has rarely encountered pleadings in which the objection that the complaint "fails to state a claim" against the objecting party could be taken so literally. Nonetheless, the court has attempted to make sense out of the nonsensical, and to achieve a resolution of the motions that is in accord with both justice and common sense.

### I. INTRODUCTION AND BACKGROUND

One thing at least is clear from the prolix complaint in this matter: the plaintiffs are William L. Dahl and Ruth E. Dahl, and they are alleging misconduct of many kinds in the making and foreclosing of various loans they obtained in the early 1990s. Claims appear to have been brought pursuant to 42 U.S.C. § 1983, the Securities Acts of 1933 and 1934, the Federal Truth In Lending Act, the Consumer Credit Protection Act, the Credit Control Act, the Farm Credit Acts of 1976, 1985, 1988, and 1990, and the First, Fifth, Seventh, and Fourteenth Amendments to the United States Constitution. See, e.g., Complaint, ¶ 1 (jurisdictional statement). The exact nature of the misconduct alleged is not altogether clear, but it appears to include "invading the right of good faith in contract, fraudulent use of contract, knowing use of implied contracts, failing to abide by Constitutional mandates of the 1st, 5th and 14th Amendments of the United States Constitution therein violating Plaintiff's [sic] rights so listed in 'Jurisdiction.'" See, e.g., Complaint, ¶¶ 4–7. The complaint is 95 pages and 198 numbered paragraphs long.

Eighteen defendants, all of whom are identified in the caption of the complaint, have moved for dismissal for want of proper service and failure to state a claim upon which relief can be granted. One defendant, David Michel, who does not appear to have been identified anywhere, has also moved for dismissal. The Dahls have moved for default judgment against seven defendants identified either in the caption or body of the complaint, none of whom have moved for dismissal, and against three defendants who appear only in the caption and who have moved for dismissal. No motion to dismiss has been filed by and no motion for default judgment has been filed against one defendant identi-

676   161 FEDERAL RULES DECISIONS

fied only in the caption, Dennis W. Johnson, and two defendants identified only in the body, Farmers State Bank and Fulton State Bank. The court is of the opinion that a clearer explanation of the identities of the persons involved in this litigation and, more particularly, in the motions to dismiss or for default judgment, can be made in chart form. Hence, the following:

MOTIONS FOR DISMISSAL OR DEFAULT JUDGMENT

| DEFENDANT | NAMED IN CAPTION | NAMED IN BODY | ANSWER DATE (1995)/ DKT. # | MOTION TO DISMISS DATE (1995)/ DKT. # | RESISTED BY PLAINTIFF DATE (1995)/ DKT. # | MOTION FOR DEFAULT DATE (1995)/ DKT. # | RESISTED DATE (1995)/ DKT. # |
|---|---|---|---|---|---|---|---|
| Scoles | Yes | No | | 1/6 #4 | | | |
| Ruigh | Yes | No | | 1/6 #4 | | | |
| Nadler | Yes | No | | 1/9 #6 | 4/26 #69 [1] | 2/27 #62 | 3/6 #65 |
| | | | | | | 4/12 #77 | 4/14 #80 |
| 1st Nat'l Bank | Yes | No | | 1/9 #6 | 4/26 #89 [2] | 2/27 #62 | 3/6 #65 |
| | | | | | | 4/12 #77 | 4/14 #80 |
| Wunschel | Yes | No | 1/10 #7 | 1/10 #8 | | | |
| Collison | Yes | No | 1/10 #7 | 1/10 #8 | | | |
| Boyken | Yes | No | | 1/12 #12 | | | |
| Kanawha Inv. | Yes | No | | 1/17 #14 | | | |
| Espe | Yes | No | | 1/17 #16 | | | |
| Mallen | Yes | No | | 1/17 #18 | | | |
| Rietma | Yes | No | | 1/17 #20 | | 2/27 #62 | 3/15 #69 |
| | | | | | | 4/12 #77 | 4/19 #86 |
| Engstrom | Yes | No | | 1/17 #22 | | | |
| Stupka | Yes | No | | 1/17 #24 | | | |
| Siegrist | Yes | No | | 1/17 #26 | | | |
| Mackaman | Yes | No | 1/20 #31 | 1/20 #31 [3] | | | |
| Norwest Bank | Yes | No | | 1/25 #33 | 2/1 #42 [4] | | |
| Veldhose | Yes | No | | 1/26 #36 | | | |
| Nikolas | Yes | No | | 1/27 #38 | | | |
| Brick | Yes | No | | | | 2/27 #62 | 3/22 #71 |
| Hyland | Yes | No | | | | 2/27 #62 | 3/8 #66 |
| | | | | | | 4/12 #77 | |
| French | No | Yes [5] | | | | 2/27 #62 | |
| Dixon | No | Yes [6] | | | | 2/27 #62 | |
| Wainwright | No | Yes [7] | | | | 2/27 #62 | |

1. Although this filing has been docketed as a resistance to the January 9, 1995, motion to dismiss filed by Nadler and First National Bank, a closer reading indicates that it is in fact a resistance to those defendants' motion for sanctions and a motion to dismiss, i.e., motion to strike, the motion for sanctions. The court will construe the motion as it has read it, and not as a resistance to any motion to dismiss for failure to state a claim.

2. See supra, note 1.

3. Mackaman's answer asserts that the complaint should be dismissed for failure to state a claim upon which relief can be granted. Pursuant to Fed.R.Civ.P. 12(b), a party may assert such grounds for dismissal at the party's option either in the answer or by pre-answer motion. Mackaman alone among the defendants has elected the former method.

4. The purported resistance simply states that plaintiffs are "objecting to [dismissal of] Defendant NORWEST BANK, IOWA N.A. from the Complaint and do expect that Default shall be filed against Defendant for failure to Answer Complaint forthwith, but in the alternative Plaintiff's respectfully request an Order to issue granting extension of time to Plaintiffs to file objection and response to Defendant's motion...." The court construes this filing not as a resistance, but as a motion for extension of time to file a resistance.

5. Defendant Carolyn French is first identified in paragraph 4 of the complaint. Allegations are made against her in paragraphs 18-22, 48-81, and 187.

6. Defendant Patricia Dixon is first identified in paragraph 6 of the complaint. Allegations are made against her in paragraphs 18-22, 118-152 (although there is no paragraph 134), and 187.

7. Defendant Jim Wainwright is first identified in paragraph 5 of the complaint. Allegations are made against him in paragraphs 18-22, 83-116, and 187.

[114]

Exh. B

(A29)

DAHL v. KANAWHA INV. HOLDING CO. 677
Cite as 161 F.R.D. 673 (N.D.Iowa 1995)

### MOTIONS FOR DISMISSAL OR DEFAULT JUDGMENT

| DEFENDANT | NAMED IN CAPTION | NAMED IN BODY | ANSWER DATE (1995)/ DKT. # | MOTION TO DISMISS DATE (1995)/ DKT. # | RESISTED BY PLAINTIFF DATE (1995)/ DKT. # | MOTION FOR DEFAULT DATE (1995)/ DKT. # | RESISTED DATE (1995)/ DKT. # |
|---|---|---|---|---|---|---|---|
| Mitchell | No | Yes [8] | | | | 2/27 #62 | |
| Michel/Michael | No | No | | 3/13 #68 | | | |
| Farmers State Bank | No | Yes [9] | | | | | |
| Johnson | Yes | No | | | | | |

A few salient facts concerning the procedural stance of this matter do require some further comment. First, the Dahls have not resisted any of the motions to dismiss.[10] Instead, on February 13, 1995, Chief Magistrate Judge John A. Jarvey granted the Dahls an extension of time until February 18, 1995, within which to respond to some of the motions to dismiss. On February 27, 1995, this court granted the Dahls a further extension until April 14, 1995. On April 17, 1995, this court granted the Dahls a third extension of time to respond to the motions to dismiss until April 24, 1995, and granted the Dahls' motion for leave to file one response and objection to all of the motions to dismiss. Finally, on May 2, 1995, this court granted the Dahls a last extension of the deadline to resist the motions. The court's order stated that

> Plaintiffs shall have to and including June 1, 1995, to file such a response. *However, plaintiff is advised that there will be no further extensions of the time to file the response to the motions to dismiss except upon a showing of extreme and exceptional circumstances precluding timely resistance.*

(Emphasis in the original). The Dahls have neither filed the required response, nor made a timely request for a further extension stating extreme and exceptional grounds, or any grounds at all.

Second, the court recognizes that none of the defendants against whom default judgments are sought has filed an answer. Only five of those defendants have resisted the motions for default judgment against them. Defendants Nadler, First National Bank, and Rietma resist entry of default on the ground that they have moved to dismiss the complaint, and therefore, pursuant to Fed.R.Civ.P. 12(a), no answer is required of them until ten days after the court disposes of their motions to dismiss. Defendants Hyland and Brick assert as grounds for denial of the Dahls' motions for default judgment against them the lack of any proper service of process upon them.

As a further matter, on May 5, 1995, defendants Nadler and First National Bank moved for sanctions against the Dahls pursuant to Fed.R.Civ.P. 11 for filing the April 12, 1995, motions for default judgment. Nadler and First National Bank assert that this second motion for default judgment was filed for the purpose of harassing the defendants, delaying this matter, and increasing the costs of this litigation. Defendant Rietma filed a similar motion on May 11, 1995. The court turns to disposition of these dispositive motions and motions for sanctions.

### II. LEGAL ANALYSIS

#### A. Motions To Dismiss

In the circumstances of this case, the court finds that it must consider granting the various defendants' motions to dismiss on three grounds: (1) want of prosecution; (2) insufficiency of service; and (3) failure to state a claim upon which relief can be granted. The court will consider each of these grounds in turn.

---

8. Defendant Steve Mitchell is first identified in paragraph 7 of the complaint. Allegations are made against him in paragraphs 18–22, 153–186, and 187.

9. Defendant Farmers State Bank is first identified in paragraph 3 of the complaint. Allegations are made against it in paragraphs 18–186. However, in paragraph 107, the defendant bank is identified as Fulton Bank, not Farmers State Bank.

10. The court explained the ineffectiveness of the apparent resistances to some of the motions to dismiss *supra*, notes 1–3.

[115]

EXH- B

(A 30)

678                161 FEDERAL RULES DECISIONS

*1. Want of prosecution*

[1] The court finds that despite being granted several extensions of time to respond to the motions to dismiss, the Dahls have filed no resistances. The latest extension of time gave the Dahls until June 1, 1995, to file responses to the motions to dismiss and cautioned that no further extensions would be granted without a showing of extreme and exceptional grounds. Rule 14(f) of the Local Rules of the United States District Court for the Northern District of Iowa, N.D.Ia.LR 14(f), requires that where a motion is filed,

> [e]ach party opposing the motion shall serve and file within fourteen (14) days from the time when a copy of the motion has been served a brief written statement of the reasons in opposition to the motion and a list of citations of the authorities on which that parties relied.... If no resistance is filed the motion may be granted.

N.D.Ia.LR 14(i) requires that if a resisting party is unable to timely file a resistance to a summary judgment motion, it must then submit to the court a motion for continuance within 14 days of the filing of the summary judgment motion.

[2] In this case, although the Dahls initially sought extensions of time to resist the motions, they ultimately failed to file a resistance. Pro se litigants are not excused from complying with court orders or substantive and procedural law. *Farnsworth v. City of Kansas City, Mo.*, 863 F.2d 33, 34 (8th Cir. 1988), *cert. denied*, 493 U.S. 820, 110 S.Ct. 77, 107 L.Ed.2d 43 (1989); *Am. Inmate Paralegal Assoc. v. Cline*, 859 F.2d 59, 61 (8th Cir.), *cert. denied*, 488 U.S. 996, 109 S.Ct. 565, 102 L.Ed.2d 590 (1988); *Burgs v. Sissel*, 745 F.2d 526, 528 (8th Cir.1984). This court, therefore, has the option of granting the defendants' motions under Rule 14(f).

[3, 4] Fed.R.Civ.P. 41(b) also provides for dismissal for failure of the plaintiff to prosecute or to comply with the rules of civil procedure or any order of the court, and states that such a dismissal is an adjudication on the merits. Fed.R.Civ.P. 41(b); *See also Am. Inmate Paralegal Assoc.*, 859 F.2d at 61 (court may dismiss under Rule 41(b) for failure to comply with court order, and such a dismissal operates as an adjudication on the merits). Thus, the district court has authority, in its discretion, to dismiss an action with prejudice for failure to comply with court orders or the Federal Rules of Civil Procedure. *Aziz v. Wright*, 34 F.3d 587, 589 (8th Cir.1994) ("An action may be dismissed pursuant to Rule 41(b) if a plaintiff has failed to comply with any order of the court."), *cert. denied*, — U.S. —, 115 S.Ct. 752, 130 L.Ed.2d 652 (1995); *Omaha Indian Tribe v. Tract I—Blackbird Bend Area*, 933 F.2d 1462, 1468 (8th Cir.) (citing rules 16, 37, and 41 as granting authority to dismiss for failure to comply with court orders), *cert. denied*, 502 U.S. 942, 112 S.Ct. 379, 116 L.Ed.2d 331 (1991); *see also Fletcher v. Southern Farm Bureau Life Ins. Co.*, 757 F.2d 953, 956 (8th Cir.1985) (dismissal as sanction is reviewed for abuse of discretion). However, dismissal with prejudice should be used sparingly because it is a drastic sanction. *Woods v. Union Pacific R.R. Co.*, 957 F.2d 548, 550 (8th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 189, 121 L.Ed.2d 133 (1992); *Omaha Indian Tribe*, 933 F.2d at 1468; *Mullen v. Galati*, 843 F.2d 293, 294 (8th Cir.1988) (dismissal under Rule 41(b) is a "severe sanction").

[5] To determine whether dismissal for want of prosecution is appropriate, the Eighth Circuit Court of Appeals applies a balancing test, "'balancing the policy of giving the plaintiff her day in court against [the] polices of preventing undue delay, avoiding court congestion, and preserving respect for court procedures.'" *Omaha Indian Tribe*, 933 F.2d at 1468 (quoting *Garrison v. Int'l Paper Co.*, 714 F.2d 757, 760 (8th Cir.1983)); *see also Garland v. Peebles*, 1 F.3d 683, 686 (8th Cir.1993) (same balancing test). The balancing test "'focuses in the main upon the degree of egregious conduct which prompted the order of dismissal and to a lesser extent upon the adverse impact of such conduct upon both the defendant and the administration of justice in the District Court.'" *Id.* (quoting *Brown v. Frey*, 806 F.2d 801, 804 (8th Cir.1986), in turn quoting *Moore v. St. Louis Music Supply Co, Inc.*, 539 F.2d 1191, 1193 (8th Cir.1976)); *Garland*, 1 F.3d at 686–87 (also citing *Brown*). Dismissal as a sanction is "only appropriate where there has

[116]                                          Exh. B (A31)

been a clear record of delay or contumacious conduct." *Garland v. Peebles*, 1 F.3d 688, 686 (8th Cir.1993) (considering dismissal for failure to prosecute); *Taylor v. City of Ballwin, Mo.*, 859 F.2d 1330, 1332 (8th Cir.1988) (dismissal for failure to make discovery); *Am. Inmate Paralegal Assoc.*, 859 F.2d at 61 (applying "clear record of delay and contumacious conduct" standard for dismissal for failure to make discovery to dismissal under Rule 41(b)). The court should consider whether the party whose action was dismissed willfully refused to comply with court orders. *Id.* "Willful as used in the context of a failure to comply with a court order ... implies a conscious or intentional failure to act, as distinguished from accidental or involuntary noncompliance." *Id.* (quoting *Welsh v. Automatic Poultry Feeder Co.*, 439 F.2d 95, 97 (8th Cir.1971)); *see also Aziz*, 34 F.3d at 589 (finding dismissal proper under Rule 41(b) for willful disregard of court order and court's warning of consequences for failure to comply); *Fletcher*, 757 F.2d at 956 (dismissal under Rule 41(b) is warranted in cases of "'willful disobedience of a court order or continued or persistent failure to prosecute a complaint,'" quoting *Givens v. A.H. Robins Co., Inc.*, 751 F.2d 261, 263 (8th Cir.1984)); *Mullen*, 843 F.2d at 204 (also quoting *Givens*). In *Omaha Indian Tribe*, the appellate court affirmed the district court's dismissal of the plaintiff's action for a pattern of disregard for court orders culminating in a refusal to file an adequate proposed final pretrial order. *Id.*

Here, the court finds that upon balancing "'the policy of giving the plaintiff[s] [their] day in court against [the] policies of preventing undue delay, avoiding court congestion, and preserving respect for court procedures,'" *Omaha Indian Tribe*, 933 F.2d at 1468, that dismissal for want of prosecution pursuant to Fed.R.Civ.P. 41(b) would be inappropriate. The court finds no willful disobedience of a court order. *Aziz*, 34 F.3d at 589 (dismissal proper for failure to comply with court orders); *Taylor*, 859 F.2d at 1332 (contumacious conduct or disregard of court orders grounds for dismissal); *Am. Inmate Paralegal Assoc.*, 859 F.2d at 61 (same). The court did not require some action which the Dahls have failed to take. Rather, the court, albeit repeatedly, granted the Dahls an extension of time to respond to dispositive motions. Although that response was required by both the Federal Rules of Civil Procedure and the local rules, those rules provide the most appropriate sanction for failing to respond: likelihood that the motion will be granted. The court therefore will consider the merits of the motions to dismiss as they appear in the absence of any resistance or response.

The court is mindful that the Dahls' conduct has delayed disposition of this matter. *See Taylor*, 859 F.2d at 1332 (undue delay may be grounds for dismissal); *Am. Inmate Paralegal Assoc.*, 859 F.2d at 61 (same). However, the court granted the Dahls' requests for extensions of time on what it considered adequate cause, and should not now sanction the Dahls for any delay by dismissing their action for want of prosecution pursuant to Fed.R.Civ.P. 41(b). Although the court will not now dismiss the Dahls' complaint for want of prosecution, the court will not tolerate delays for the sake of delay, and will, in proper circumstances, dismiss complaints for undue delay. Furthermore, the Dahls are warned that failure to respond to a dispositive motion, either by resisting the motion or by filing a pleading indicating no resistance to the motion, may, in the future, expose them to sanctions pursuant to N.D.Ia.LR 1(e) and Fed.R.Civ.P. 41(b), including possible dismissal for want of prosecution. However, at this time, the court finds other good and sufficient grounds for granting the motions to dismiss filed by various defendants and deems such dismissal sufficient sanction for any of the Dahls' procedural failings thus far.

### 2. Insufficiency of service

[6] The defendants moving for dismissal have done so in part on the ground that they have never been properly served with the complaint in this matter.[11] Fed.R.Civ.P.

---

11. Defendants Brick and Hyland assert insufficiency of service as grounds for denying the Dahls' motions for default judgment as to them.

**680**                **161 FEDERAL RULES DECISIONS**

12(b)(5) provides for dismissal of actions for "insufficiency of service of process." The Dahls have filed with the court copies of the "green cards" or return receipts from their certified mailings of the complaint to the defendants showing who signed for receipt of each complaint. However, the court concludes that certified mail return receipts do not prove effective service of process for a number of reasons.

First, the Eighth Circuit Court of Appeals ruled that under former Fed.R.Civ.P. 4(c)(2)(C)(ii), which authorized service by certified mail if the defendant returned an acknowledgment of service, that "the signing of the 'green card' was not sufficient to evidence acknowledgment of receipt of the summons and complaint and consequently did not satisfy the requirement of Rule 4(c)(2)(C)(ii) that service be acknowledged in order to be effective." *Culley v. Mayo Foundation*, 886 F.2d 161, 165 (8th Cir.1989); *see also Schnabel v. Wells*, 922 F.2d 726, 728 (11th Cir.1991) ("A certified mail receipt cannot be construed to constitute an adequate substitute for the [acknowledgement of service] form required by the Rule in light of Congress's express rejection of this method of acknowledgment when proposed by the Supreme Court."). It is clear that under former Fed.R.Civ.P. 4(c)(2)(C)(ii), the Dahls did not effect proper service on any of the defendants, because they received no valid acknowledgment of service.

When the Federal Rules of Civil Procedure were revised in 1993, the provisions for service by certified mail with acknowledgement were extensively revised and were moved to subsection (d) of the Rule. Fed. R.Civ.P. 4(d). The Advisory Committee noted the following:

> The former text [of Rule 4(c)(2)(C)(ii)] described this process as service-by-mail. This language misled some plaintiffs into thinking that service could be effected by mail without the affirmative cooperation of the defendant. E.g., *Gulley v. Mayo Foundation*, 886 F.2d 161 (8th Cir.1989). It is more accurate [now] to describe the communication sent to the defendant as a request for a waiver of formal service.

Fed.R.Civ.P. 4(d), Notes of the Advisory Committee on 1993 Amendment. Thus, Fed. R.Civ.P. 4, as currently amended, provides for mailing of a complaint to the defendant with a request for waiver of service. Fed. R.Civ.P. 4(d)(2).[12] The newly amended rule

---

12. The newly-amended rule provides, in pertinent part:

> (2) An individual, corporation, or association that is subject to service under subdivision (e) [individual within a judicial district of the United States], (f) [individual in a foreign country], or (h) [corporation or association] and that receives notice of an action in the manner provided in this paragraph has a duty to avoid unnecessary costs of serving the summons. To avoid costs, *the plaintiff may notify such a defendant of the commencement of the action and request that the defendant waive service of a summons.* The notice and request
> 
> (A) shall be in writing and shall be addressed directly to the defendant, if an individual, or else to an officer or managing or general agent (or other agent authorized by appointment or law to receive service of process) of a defendant subject to service under subdivision (h);
> (B) shall be dispatched through first-class mail or other reliable means;
> (C) shall be accompanied by a copy of the complaint and shall identify the court in which it has been filed;
> (D) shall inform the defendant, by means of a text prescribed in an official form promulgated pursuant to rule 84, of the consequences of
> compliance and of failure to comply with the request;
> (E) shall set forth the date on which the request is sent;
> (F) shall allow the defendant a reasonable time to return the waiver, which shall be at least 30 days from the date on which the request is sent, or 60 days from that date if the defendant is addressed outside any judicial district of the United States; and
> (G) shall provide the defendant with an extra copy of the notice and request, as well as a prepaid means of compliance in writing.

Fed.R.Civ.P. 4(d)(2). The rule also identifies the consequences of a defendant's failure to comply with a request for waiver:

> If a defendant located within the United States fails to comply with a request for waiver made by a plaintiff located within the United States, the court shall impose the costs subsequently incurred in effecting service on the defendant unless good cause for the failure be shown.

*Id.* The Eleventh Circuit Court of Appeals noted that under former Rule 4(c)(2), the defendant's penalty for declining to return the acknowledgment of service form was that "defendant may be required to pay the additional costs of procuring service by alternate means." *Schnabel*, 922 F.2d at 728 (citing former Fed.R.Civ.P. 4(c)(2)(D)).

/118/   EXH. B   

Received   Jun-29-2006  02:13   From-           To-US DISTRICT COURT, N   Page 004

provides a number of conditions, including receipt of a waiver of service, before mere mailing of a complaint to a defendant effects proper service. *Id.*[13] The Dahls plainly have not met the conditions for effective service in this case, because nothing in the record indicates the mailing of a request for waiver of service, and certainly the Dahls have not filed with the court any waiver of service obtained from any defendant. Under the former rule, the plaintiff was responsible for obtaining proper service on defendants. *See Lee v. Armontrout*, 991 F.2d 487, 489 (8th Cir.) (per curiam) (plaintiff was responsible for obtaining proper service, including providing marshal with proper address for service on defendant), *cert. denied,* ––– U.S. –––, 114 S.Ct. 209, 126 L.Ed.2d 166 (1993). The court finds nothing in the newly-amended version of the rule that relieves a plaintiff of that responsibility, even though defendants are now required to be more cooperative in waiving service. The court therefore concludes that the Dahls have not obtained effective service on any of the defendants in this matter.

[7] Although the certified mail "green cards" may indicate actual notice of this lawsuit, actual notice does not dispense with the requirements for proper service of process. *See, e.g., McGinnis v. Shalala,* 2 F.3d 548, 551 (6th Cir.1993) (delivery by certified mail provides actual notice of suit, but does not satisfy adequate service requirements of Rule 4); *Mid Continent Wood Products, Inc. v. Harris,* 936 F.2d 297, 301–303 (7th Cir.1991) (rejecting district court's test for grounds for exception to strict compliance with Rule 4's service of process requirements where defendant had actual notice, holding that "valid service of process is necessary in order to assert personal jurisdiction over a defendant."); *Friedman v. Estate of Presser,* 929 F.2d 1151, 1155 (6th Cir.1991) ("For the great majority of courts ... actual knowledge of the law suit does not substitute for proper service of process under [former]

Rule 4(c)(2)(C)(ii)," citing cases so holding, including cases basing this conclusion on legislative history.); *Schnabel,* 922 F.2d at 728 (actual notice of lawsuit does not eliminate requirement of proper service); *Young v. Mt. Hawley Ins. Co.,* 864 F.2d 81, 82–83 (8th Cir.1988), *cert. denied,* 493 U.S. 919, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989) (same). This court concludes that if actual notice could substitute for proper service of process, it would be nonsensical for the Federal Rules of Civil Procedure to provide for a motion to dismiss based on insufficiency of service of process, Fed.R.Civ.P. 12(b)(5), because no such motion could be filed without actual notice of the lawsuit. *Accord Grand Entertainment Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 492 (3d Cir.1993) ("Notice to a defendant that he has been sued does not cure defective service, and an appearance for the limited purpose of objecting to service does not waive the technicalities of the rule governing service."). Thus, actual notice of this lawsuit by defendants does not substitute for adequate service of process, and the grounds for dismissal pursuant to Fed.R.Civ.P. 12(b)(5) are present here.

[8] However, the "general rule" is that "'when a court finds that service is insufficient but curable, it generally should quash the service and give the plaintiff an opportunity to re-serve the defendant.'" *See, e.g., Gregory v. United States Bankruptcy Court,* 942 F.2d 1498, 1500 (10th Cir.1991) (quoting *Pell v. Azar Nut Co.,* 711 F.2d 949, 950 n. 2 (10th Cir.1983)), *cert. denied,* 504 U.S. 941, 112 S.Ct. 2276, 119 L.Ed.2d 202 (1992). However, dismissal may be proper without opportunity to cure where proper service would be futile. *Gregory,* 942 F.2d at 1500. The court will return to the question of whether, and against whom, this matter should simply be dismissed or whether plaintiffs should be given the opportunity to cure defective service after the court considers the grounds asserted for dismissal pursuant to

---

Thus, the present penalty for failure to waive service without good cause is very similar to that formerly imposed for failure to acknowledge service.

13. Fed.R.Civ.P. 4(d)(4) provides that [w]hen the plaintiff files a waiver of service with the court, the action shall proceed, except as provided in paragraph (3), as if a summons and complaint had been served at the time of filing the waiver, and no proof of service shall be required.

Fed.R.Civ.P. 12(b)(6), failure to state a claim upon which relief can be granted.

### 3. *Motions to dismiss pursuant to Fed. R.Civ.P. 12(b)(6)*

[9–12] A motion to dismiss requires the court to review only the pleadings to determine whether the pleadings state a claim upon which relief can be granted. Fed. R.Civ.P. 12(b).[14] Such motions "can serve a useful purpose in disposing of legal issues with the minimum of time and expense to the interested parties." *Hiland Dairy, Inc. v. Kroger Co.*, 402 F.2d 968, 973 (8th Cir.1968), cert. denied, 395 U.S. 961, 89 S.Ct. 2096, 23 L.Ed.2d 748 (1969). The issue is not whether a plaintiff will ultimately prevail, but rather whether the plaintiff is entitled to offer evidence in support of the plaintiff's claims. *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *United States v. Aceto Agricultural Chemical Corp.*, 872 F.2d 1373, 1376 (8th Cir.1989). In considering a motion to dismiss under Rule 12(b)(6), the court must assume that all facts alleged in the plaintiff's complaint are true, and must liberally construe those allegations. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* The *Rule* does not countenance dismissals based on a judge's disbelief of a complaint's factual allegations. *Neitzke v. Williams*, 490 U.S. 319, 327, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989). Thus, it is only in the "unusual case" where the complaint on its face reveals some insuperable bar to relief that a dismissal under *Rule* 12(b)(6) is warranted. *Fusco v. Xerox Corp.*, 676 F.2d 332, 334 (8th Cir.1982). With these standards in mind, the court will consider the various defendants' motions to dismiss for failure to state a claim upon which relief can be granted.

[13] This is indeed such an "unusual case," because the complaint does on its face reveal some insuperable bar to relief such that a dismissal under *Rule* 12(b)(6) is warranted, at least as to the majority of the defendants. *Fusco*, 676 F.2d at 334. That insuperable bar is the lack of any factual allegations at all against those defendants. Thus, even taking all of the factual allegations as true, it appears beyond doubt that the plaintiffs can prove no set of facts in support of their claim which would entitle them to relief against those defendants. *Conley*, 355 U.S. at 45–46, 78 S.Ct. at 102. In these circumstances, the judge's belief or disbelief of the complaint's factual allegations does not even enter the picture, because there are no allegations as to these defendants to be believed or disbelieved. *See Neitzke*, 490 U.S. at 327, 109 S.Ct. at 1832 (judge's disbelief of factual allegations is not proper basis for granting dismissal pursuant to Rule 12(b)(6)). Nor can any amount of "liberal construction" attach the factual allegations made to any of the defendants identified in the caption. Thus, even though civil rights complaints must be liberally construed, and the court believes that the Dahls have attempted to state such claims, the Dahls must still allege facts which state a cause of action. *Davis v. Hall*, 992 F.2d 151, 152 (8th Cir.1993). No facts appear in the complaint stating any allegation of a cause of action against most of these defendants.[15]

The only defendants the Dahls have attempted to serve against whom allegations are made are defendants French, Dixon, Wainwright, and Mitchell. *See* Chart and accompanying footnotes, *supra* at page 676.

---

14. However, where on a Rule 12(b)(6) motion to dismiss "matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56." Fed.R.Civ.P. 12(b)(6). No other materials have been offered in support of the motion to dismiss in this case. Therefore, the motion to dismiss will not be disposed of as provided in Rule 56, but only according to the standards stated herein.

15. Defendants Scoles and Ruigh, in moving for dismissal, observed that the complaint has the appearance of having the wrong caption attached, because of this complete lack of factual allegations against defendants named in the caption, while copious factual allegations are made against defendants not so identified.