**728**  **922 FEDERAL REPORTER, 2d SERIES**

vice by certified mail, restricted delivery, was proposed by the United States Supreme Court under the provisions of the Rules Enabling Act. However, Congress expressly rejected this method of service, instead providing for service by first class mail with a notice and acknowledgment to be executed by the defendant under penalty of perjury. A sponsor of the amendment, Mr. Edwards of California, stated that this method was preferred over the certified mail method because it avoided the notice problems created by the certified mail proposal. However, he also stated that actual notice is not of itself sufficient, noting that "if the proper person receives the notice but fails to return the acknowledgment form, another method of service authorized by law is required." Statement By a Member of the House Committee on the Judiciary, 128 Cong.Rec. H9848 (daily ed. Dec. 15, 1982) (statement of Rep. Edwards), *reprinted in* 1982 U.S.Code Cong. & Admin.News 4434, 4439–40. *See also Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1088 (4th Cir.1984).

[1,2] This result is mandated by the plain wording of the mail service rule. If a defendant receives mail service, but chooses not to respond, the plaintiff must effect personal service. The defendant's actual notice of the lawsuit does not eliminate this requirement. *See Young v. Mt. Hawley Ins. Co.*, 864 F.2d 81, 82–83 (8th Cir.1988), *cert. denied*, — U.S. —, 110 S.Ct. 281, 107 L.Ed.2d 261 (1989); *Armco, Inc. v. Penrod-Stauffer Building Systems, Inc.*, 733 F.2d 1087, 1088–89 (4th Cir.1984); *Worrell v. B.F. Goodrich Co.*, 845 F.2d 840, 841–41 (9th Cir.1988), *cert. denied*, — U.S. —, 109 S.Ct. 3191, 105 L.Ed.2d 699 (1989); *McDonald v. United States*, 898 F.2d 466, 468 (5th Cir.1990); *Stranahan Gear Co. v. NL Industries, Inc.*, 800 F.2d 53, 56 (3d Cir.1986). Instead, defendant's penalty for declining to return the acknowledgment form is that defendant may be required to pay the additional costs of procuring service by alternate means. *See* Rule 4(c)(2)(D); *Armco*, 733 F.2d at 1088.

[3] Since actual notice is not adequate when mail service is properly effected but the defendant chooses not to return the acknowledgment form, we are aware of no authority for holding that actual notice may cure service defectively executed. We therefore adopt the reasoning of the Fifth Circuit in *Norlock v. City of Garland*, 768 F.2d 654 (5th Cir.1985). In that case, nearly identical factually to the case at bar, the court of appeals stated:

> Finding no error in the court's insistence on compliance with the plain language of the rule, we affirm. Service by mail is quick, convenient, and inexpensive. Because, however, it is subject to abuse, the well-considered requirements of the rules, designed to ensure that mail service will be adequate, are not to be disregarded with impunity.

*Norlock*, 768 F.2d at 655.

[4] Schnabel urges us to distinguish *Norlock* from the case at bar, noting that in *Norlock* the plaintiff sent the summons and complaint by regular mail, while Schnabel sent his documents by certified mail and obtained an acknowledgment card indicating that the forms had been received. This is a distinction without a difference. A certified mail receipt cannot be construed to constitute an adequate substitute for the form required by the Rule in light of Congress's express rejection of this method of acknowledgment when proposed by the Supreme Court. Accordingly, we conclude that the summons and complaint was not properly served on defendant Wells.

[5] Finally, plaintiff Schnabel suggests that the district court abused its discretion in granting judgment in favor of the defendant. However, under Rule 4(j), dismissal is mandatory if service is not perfected within 120 days of filing the complaint unless good cause is shown. No showing of cause was made in this case. Indeed, Schnabel was on notice as of January 18, 1989 when Wells filed his answer that sufficiency of process was at issue. At that time, more than two months remained of the 120 day period provided by Rule 4(j), yet Schnabel made no attempt to correct

SHERMAN INTERN. CORP. v. LIBERTY MUT. INS. CO.     729
Cite as 922 F.2d 729 (11th Cir. 1991)

the defective service or even to inquire into the alleged deficiency. Consequently, dismissal without prejudice was mandated by Rule 4(j). Furthermore, because the statute of limitations expired, reinstatement of the action was barred under Georgia law, and judgment for the defendant was properly entered.

## III. CONCLUSION

For the reasons stated above, we conclude that the district court did not err in entering judgment in favor of defendant Jonathan Wells, and therefore, the judgment of the district court is AFFIRMED.



SHERMAN INTERNATIONAL CORPORATION, Plaintiff-Appellant,

v.

LIBERTY MUTUAL INSURANCE COMPANY, Defendant-Appellee.

No. 89-7722.

United States Court of Appeals, Eleventh Circuit.

Jan. 29, 1991.

Insured filed claim with fire insurer for loss of new building and personal property. The United States District Court for the Northern District of Alabama, No. 88-PT 2006-S, Robert B. Propst, J., granted summary judgment for insurer. On appeal, the Court of Appeals held that under unambiguous policy terms, insured had "constructed" damaged building, not "acquired" it from independent contractor, and thus was not covered under policy's extension provisions for loss from fire occurring more than 30 days after construction of new building began.

Affirmed.

Insurance ⟨=163(2)

Insured had "constructed" new office warehouse, not "acquired" it from independent contractor, and thus, under Alabama law, was not covered under fire policy extension provisions for loss from fire more than 30 days after construction began and one week after insured moved into new building.

See publication Words and Phrases for other judicial constructions and definitions.

Mark S. Boardman, Porterfield, Bainbridge, Mims, Harper & Mills, P.A., Birmingham, Ala., for plaintiff-appellant.

Eugene P. Stutts, Maston E. Martin, Jr., Spain, Gillon, Grooms, Blan & Nettles, Birmingham, Ala., for defendant-appellee.

Appeal from the United States District Court for the Northern District of Alabama.

Before HATCHETT and ANDERSON, Circuit Judges, and GODBOLD, Senior Circuit Judge.

PER CURIAM:

One week after Sherman International Corporation moved into its new office-warehouse fire damaged the building and its contents. Sherman filed a claim with its insurer, Liberty Mutual Insurance Co., for the loss of the building and the personal property it contained. Liberty Mutual denied the claim, Sherman sued, and the district court granted Liberty Mutual summary judgment. We affirm.

## BACKGROUND

Sherman acquired the property on which the office-warehouse was built in 1987 when it purchased the assets of Johnston Concrete Products. Liberty Mutual was Johnston's insurer, and it added Sherman as an insured on all of its policies with Johnston and later renewed the policy for 1988. When Liberty Mutual renewed the policy the only structure on the site was a concrete plant. In early 1988 Sherman constructed a block plant on the site, but it did



EXH- B    A-49

run on June 26, 2000, the date the Supreme Court handed down *Apprendi* and has therefore expired. *See Lopez*, 248 F.3d at 433; *but see In re Vial*, 115 F.3d 1192, 1197 n. 9 (4th Cir.1997)(en banc)(interpreting the initial recognition of the right referred to in § 2255(3) to be the date the Supreme Court rules on the collateral availability of the rule). I therefore find myself unpersuaded the Government's sky-is-falling retroactivity argument.

For the foregoing reasons, I would hold that the district court erred in denying as futile Clark's motion to amend his initial § 2255 petition. I would therefore reverse and remand to the district court for further proceedings consistent with this opinion rather than the majority's remand without direction on the question of retroactivity.



**HARPER MACLEOD SOLICITORS,**
Plaintiff-Appellant,

v.

**KEATY & KEATY, doing business as Keaty Law Firm, Defendant Appellee.**

No. 00-30906.

United States Court of Appeals,
Fifth Circuit.

July 26, 2001.

Scottish law firm sought to register in the Eastern District of Louisiana a default judgment obtained in the Southern District of Texas. Defendants challenged its validity, alleging deficient service of process. The United States District Court for the Eastern District of Louisiana, Sarah S. Vance, J., 2000 WL 297694, sustained that challenge and voided the default judgment, and law firm appealed. The Court of Appeals, Benavides, Circuit Judge, held that: (1) the district court in which a default judgment is registered may rely on Rule of Civil Procedure on relief from void judgment to entertain jurisdictional challenges to the validity of default judgments issued by another district court; (2) Louisiana district court properly applied federal law when determining the preclusive effect of the jurisdictional recitations and related factual findings contained in the Texas court's original and amended judgments; and (3) substitute service on the Texas Secretary of State was defective under the Texas long-arm statute.

Affirmed.

King, Chief Judge, filed an opinion specially concurring.

1. Federal Civil Procedure ⇐2411

Federal courts generally disfavor default judgments.

2. Federal Civil Procedure ⇐2444.1

District court must set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process.

3. Federal Courts ⇐71, 95

Defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect; defendants are always free to ignore judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding.

**4. Federal Courts ⚖︎776, 829**

Though Court of Appeals generally reviews a district court's ruling on a motion for relief from judgment solely for abuse of discretion, motions for relief on ground the judgment is void leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not, and thus review is effectively de novo. Fed.Rules Civ.Proc.Rule 60(b), (b)(4), 28 U.S.C.A.

**5. Federal Civil Procedure ⚖︎2442.1**

District court in which a default judgment is registered may rely on Rule of Civil Procedure for relief from void judgment to entertain jurisdictional challenges to the validity of default judgments issued by another district court. 28 U.S.C.A. § 1963; Fed.Rules Civ.Proc.Rule 60(b)(4), 28 U.S.C.A.

**6. Federal Civil Procedure ⚖︎2621**
   **Judgment ⚖︎720**

Principles of issue preclusion apply with equal force in the court of rendition of a judgment and the court of registration of the judgment; neither should readjudicate issues first heard and ruled on by another federal court.

**7. Federal Courts ⚖︎95**

A defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted.

**8. Federal Courts ⚖︎420**
   **Judgment ⚖︎828.4(2)**

District court in Louisiana, in which default judgment rendered by district court in Texas was registered, properly applied federal law, rather than Texas rule of absolute verity of plain jurisdictional recitals contained within a judgment, when determining the preclusive effect of the jurisdictional recitations and related factual findings contained in the Texas court's original and amended judgments; Court of Appeals declined to apply full faith and credit principles. 28 U.S.C.A. § 1963; Fed.Rules Civ.Proc.Rule 60(b)(4), 28 U.S.C.A.

**9. Judgment ⚖︎713(1)**

Traditional rules of preclusion as adopted in federal case law, whether under the doctrine of collateral estoppel or res judicata, require that the party to be estopped from relitigating a claim have had a full and fair opportunity to litigate the issue.

**10. Federal Courts ⚖︎417**

In diversity actions, the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants. U.S.C.A. Const.Amend. 5.

**11. Constitutional Law ⚖︎305(4.1)**

The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had or enforced. U.S.C.A. Const.Amend. 5.

**12. Federal Civil Procedure ⚖︎2393**

If the rendering court did not have jurisdiction, its judgment is invalid.

**13. Judgment ⚖︎17(3)**

To support a default judgment against a jurisdictional challenge, Texas law requires plaintiffs to prove that (1) the pleadings established that the defendants were amenable to service, and (2) evidence in the record demonstrates the defendants were in fact served in the manner required by the Texas long arm statute. V.T.C.A., Civil Practice & Remedies Code § 17.044(b).





EXH. B

14. Judgment ⚖︎=17(3)
    Process ⚖︎=83

Texas courts have consistently required strict compliance with the terms of the Texas long arm statute, and actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against the defendant. V.T.C.A., Civil Practice & Remedies Code § 17.044(b).

15. Attorney and Client ⚖︎=30
    Process ⚖︎=80

Substitute service on the Texas Secretary of State was defective under the Texas long-arm statute with respect to each nonresident defendant where, inter alia, none of the addresses provided to the Secretary accurately stated a home or home office address for any one of the defendants, in that it provided the Secretary with a former address for service upon defendant law partnership and addresses for individual defendants that contained a typographical error in the suite number, and that the defendants may have had actual notice of service was of no consequence. V.T.C.A., Civil Practice & Remedies Code § 17.044(b).

---

Lance James Arnold (argued), Baldwin & Haspel, New Orleans, LA, Elizabeth Bonvillain Kamin, Woodard, Hall & Primm, Houston, TX, for Plaintiff-Appellant.

Shawn David Sentilles (argued), Francis Joseph Lobrano, Lobrano & Lobrano, Belle Chasse, LA, for Defendant-Appellee.

Appeal from the United States District Court for the Eastern District of Louisiana.

* Circuit Judge of the Third Circuit, sitting by designation.

Before KING, Chief Judge, and ALDISERT * and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

Appellees Thomas Keaty, Robert Keaty and Keaty & Keaty, d/b/a the Keaty Law Firm, (the Defendants) suffered a default judgment in the Southern District of Texas in favor of Appellant Harper Macleod Solicitors (Harper), a Scottish law firm. When Harper sought to register the default judgment in the Eastern District of Louisiana pursuant to 28 U.S.C. § 1963, the Defendants challenged its validity alleging deficient service of process. The Louisiana district court sustained that challenge and, using Rule 60(b)(4), voided the default judgment. Harper now appeals, arguing that (1) the Texas district court's jurisdictional findings should be afforded preclusive effect in accordance with Texas law, and (2) service on the Defendants sufficiently complied with the Texas long arm statute to support the default judgment issued by the Texas district court. After concluding that district courts have authority to entertain motions challenging the validity of another district court's judgment using Rule 60(b)(4), we confirm the propriety of the district court's reliance on federal rules of issue preclusion to determine that the Texas district court's jurisdictional findings did not preclude the Defendants from arguing their jurisdictional claims. Further, we agree with the Louisiana district court's conclusion that service on the Defendants was defective under Texas law. Accordingly, we AFFIRM the judgment of the Louisiana district court voiding the default judgment of the Texas district court.

FACTUAL AND PROCEDURAL BACKGROUND

On August 18, 1998, Harper filed suit against the Defendants in the Southern

District of Texas, Galveston Division (the Texas Court). Harper alleged fraud and breach of contract in relation to its referral of two personal injury plaintiffs to the Defendants. Federal jurisdiction was founded on diversity of citizenship.

Harper attempted service on the Defendants in accordance with the Texas long-arm statute by forwarding three copies of the complaint, as well as three summonses, to the Texas Secretary of State (the Secretary). Harper provided the Secretary with the following "home or home office" addresses for the Defendants:

1. To Defendant Keaty & Keaty d/b/a The Keaty Firm's home or home office:
   345 Doucet Road, Suite 104
   Lafayette, LA 70503

2. To Defendant Robert M. Keaty's home or home office:
   c/o Keaty & Keaty
   1140 World Trade Center
   Two Canal Street
   New Orleans, LA 70130

3. To Defendant Thomas S. Keaty Jr.'s home or home office:
   c/o Keaty & Keaty
   1140 World Trade Center
   Two Canal Street
   New Orleans, LA 70130

On September 1, 1998, Harper received from the Secretary certifications attesting that two copies of the summons and complaint had been delivered by certified mail to each defendant at the address provided for that defendant. The Secretary further certified that return receipts had been received "bearing Signature of Addressee's Agent."

The Defendants did not appear in the Texas Court. On January 14, 1999, the Texas Court entered an Amended Default Judgment in favor of Harper. The order adjudged the Defendants jointly and severally liable to Harper for $1,108,784.30 in liquidated damages, inclusive of pre-judgment interest and attorneys' fees. The order also recited that the Texas Court had jurisdiction over the Defendants and that the Defendants had been "properly served with the Summons and Complaint."

On March 2, 1999, Harper registered the default judgment in the Eastern District of Louisiana (the Louisiana Court) pursuant to 28 U.S.C. § 1963,[1] then commenced collection activities, specifically seeking the issuance of writs of execution and various garnishments. Defendants responded to the collection activities by challenging the validity of the Texas Court judgment.[2]

On June 4, 1999, Harper filed an unopposed Rule 60(a) motion in the Texas Court seeking to amend the default judgment to include express findings in support of that court's exercise of personal jurisdiction over the Defendants. The Texas Court subsequently signed an Order specifying that (1) Harper "properly provided the Texas Secretary of State with the addresses of each of the Defendants' 'home or home office' address" in accordance with the Texas long arm statute; (2)

---

1. Section 1963 provides.

   A judgment in an action for the recovery of money or property entered in any ... district court ... may be registered by filing a certified copy of the judgment in any other district ... when the judgment has become final by appeal or expiration of the time for appeal.... A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner....

   28 U.S.C. § 1963 (Supp.2000).

2. The Defendants styled their challenge as an "Answer and Counterclaim Under Rule 13 Asserting an Independent Action to Vacate 'Void' Default Judgment For Lack of Personal Jurisdiction."



Exh. B



the record reflected that the Secretary actually forwarded process to each of the Defendants; (3) the record reflected that each Defendant had actually received process; and (4) the Texas Court had properly exercised personal jurisdiction over the Defendants.

Harper then moved for summary judgment in the Louisiana Court as to the validity of the Texas Court's default judgment. The district court granted the motion as unopposed on November 19, 1999, having granted the Defendants several extensions to oppose. The Defendants filed a "motion for reconsideration" on December 20, 1999 in support of which they offered evidence suggesting that neither the Keaty Law Firm nor Keaty & Keaty existed as a legal entity at the time Harper attempted service. Moreover, the Defendants maintained that none of the addresses provided to the Secretary by Harper accurately reflected the "home or home office" address of any of the Defendants. Because Texas law requires strict compliance with the Texas long arm statute, the Defendants asserted that service was defective and the Texas judgment void.

Treating Defendants' motion as a Rule 60(b)(4) request for relief from judgment on grounds of insufficient service, the Louisiana Court determined that (1) the Texas Court's jurisdictional findings did not preclude the Defendants from collaterally raising jurisdictional defects under federal res judicata principles, and (2) service to the Defendants was defective under Texas law. As a consequence, the Louisiana court declared that "the default judgment entered by the United States District Court, Southern District of Texas, Galveston Division is void." Harper's subsequent motion for relief from judgment pursuant to Rule 60(b)(1) or (b)(6) was denied and final judgment was entered on July 13, 2000. This appeal followed.

## DISCUSSION

[1–3] Federal courts generally disfavor default judgments, preferring to resolve disputes according to their merits. *Lindsey v. Prive Corp.*, 161 F.3d 886, 892 (5th Cir.1998); *Seven Elves, Inc. v. Eskenazi*, 635 F.2d 396, 403 (5th Cir.1981) (noting that Rule 60(b) should be "applied most liberally to judgments in default.") This circuit has held that a district court *must* set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of defective service of process. *See, e.g., Bludworth Bond Shipyard, Inc. v. M/V Caribbean Wind*, 841 F.2d 646, 649 (5th Cir.1988). In this case, we are presented with defendants that suffered a default judgment in one federal district court, then challenged that judgment as void for lack of jurisdiction in the district court of registration. It is well-established that defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect. Defendants are "always free to ignore ... judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, 102 S.Ct. 2099, 2106, 72 L.Ed.2d 492 (1982); *Broadcast Music, Inc. v. M.T.S. Enterprises, Inc.*, 811 F.2d 278, 281 (5th Cir.1987).

Harper, as the beneficiary of the default judgment, has not challenged the ability of a registering court to grant relief from another district court's judgment using Rule 60(b)(4) when the rendering court did not properly exercise jurisdiction. Instead, Harper alternatively argues that (1) a registering court should apply the relevant state law on issue preclusion to determine the effect of jurisdictional findings



made by a rendering district court sitting in diversity, or (2) service on the Defendants was proper because it sufficiently complied with the Texas long arm statute.

[4] Though we generally review a district court's Rule 60(b) ruling solely for abuse of discretion, *Bludworth Bond*, 841 F.2d at 649, "Rule 60(b)(4) motions leave no margin for consideration of the district court's discretion as the judgments themselves are by definition either legal nullities or not." *Carter v. Fenner*, 136 F.3d 1000, 1005 (5th Cir.1998). As a consequence, our review of the issues raised in this appeal is effectively de novo. *See Export Group v. Reef Industries, Inc.*, 54 F.3d 1466, 1469 (9th Cir.1995) ("We review de novo ... a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one.").

## I. A Registering Court May Rely on Rule 60(b)(4) to Entertain Jurisdictional Challenges to the Validity of a Default Judgment Issued By Another District Court

[5] Although both the Louisiana Court and the parties assume that Rule 60(b)(4) empowers a registering court to void a judgment rendered by another district court, the scope of a registering court's power to alter or amend judgments rendered by another court through Rule 60(b) is uncertain. *See* WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE: Civil 2d § 2787 (1995).[3] Typically, relief under Rule 60(b) is sought in the court that rendered the judgment at issue. *See id.* at § 2865. At least one circuit, the Seventh, has suggested that Rule 60(b) motions *must* be presented to the court that rendered the judgment in question. *See Board of Trustees, Sheet Metal Workers' Nat'l Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031, 1034 (7th Cir.2000).[4] Interpreting 28 U.S.C. § 1963, the court in *Elite Erectors* reasoned that a registering court has no authority over the judgment being registered. *Id.* Consequently, a registering district court could not, according to the Seventh Circuit, tell the rendering court not to enforce the judgment. *Id.* The court also expressed concern that various registering courts might resolve Rule 60(b) motions to modify or annul the same judgment differently. *Id.* The majority of circuits, however, has held or suggested that registering courts may rely on Rule 60(b)(4) to void a default judgment if the rendering court was without jurisdiction over the defendant. *See F.D.I.C. v. Aaro-*

---

3. This Court has never expressly recognized the authority of a registering court to void a judgment rendered in another district court. The Fifth Circuit cases relied upon by the district court to support its review of the Texas Court's jurisdiction, as well as those cited by the parties, involved either a rendering court considering a Rule 60(b)(4) motion to void its own judgment, *see Bludworth*, 841 F.2d at 648–49; *Broadcast Music*, 811 F.2d at 281; *Recreational Properties v. Southwest Mortg. Serv.*, 804 F.2d 311, 314 (5th Cir.1986), or a district court's refusal to afford full faith and credit to a state court default judgment because the state court had no jurisdiction over the defendant. *See A.L.T. Corp. v. Small Business Administration*, 801 F.2d 1451 (5th Cir.1986).

4. Prior to *Elite Erectors*, the Seventh Circuit had suggested that a registering court could use Rule 60(b)(4) to void the judgment of another court. *See In re Joint Eastern & Southern Dist. Asbestos*, 22 F.3d 755, 762 n. 15 (7th Cir.1994) ("'[T]he authority of the registration court to entertain a motion under Rule 60(b)(4) appears to be well-established."); *Fuhrman v. Livaditis*, 611 F.2d 203, 205 (7th Cir.1979) (refusing to "conclude that a registering court presented with a motion for relief from judgment based on lack of personal jurisdiction must in every instance defer to the court which originally issued the judgment....").

HARPER MACLEOD SOLICITORS v. KEATY & KEATY    395
Cite as 260 F.3d 389 (5th Cir. 2001)

nian, 93 F.3d 636, 639 (9th Cir.1996); Morris ex rel. Rector v. Peterson, 759 F.2d 809, 811 (10th Cir.1985); Indian Head Nat. Bank of Nashua v. Brunelle, 689 F.2d 245, 249 (1st Cir.1982); Covington Indus., Inc. v. Resintex A.G., 629 F.2d 730, 733 (2d Cir.1980). Even the Seventh Circuit in Elite Erectors, though not granting registering courts authority over judgments through Rule 60(b), held that a registering court "was free to disregard the judgment ... if the rendering court lacked jurisdiction." Elite Erectors, Inc., 212 F.3d at 1034.

[6, 7] We join the majority of circuits and hold that registering courts may use Rule 60(b)(4) to sustain jurisdictional challenges to default judgments issued by another district court. Though judicial efficiency and comity among district courts often counsel a registering court to defer ruling on Rule 60(b) motions in favor of the rendering court, see Fuhrman, 611 F.2d at 205, such deference is less appropriate when the challenged judgment was issued without the benefit of argument from one party and the basis for the 60(b) challenge is jurisdictional. See Covington Indus., 629 F.2d at 733. Requiring deference to a rendering court for determination of jurisdictional issues related to a default judgment is also difficult to reconcile with the established rule that a party may suffer a default judgment then collaterally attack that judgment upon enforcement. See id. at 733–34 (citations omitted). Finally, as noted in Elite Erectors, "[w]hether or not the district court enters an order under the Rule 60(b)(4), principles of issue preclusion would prevent re-litigation of the jurisdictional question in other courts of registration." Elite Erectors, Inc., 212 F.3d at 1034. Principles of issue preclusion apply with equal force in courts of rendition and registration: neither should re-adjudicate issues first heard and ruled on by another federal court. Therefore, even under the rule of Elite Erectors, a court of registration effectively can tell a rendering court not to enforce a default judgment when the defaulting defendant never appeared in the court of rendition and had a valid jurisdictional complaint. That one district court may exercise such authority over another is a necessary consequence of the established rule that a defendant may challenge a rendering court's personal jurisdiction in a court in which enforcement of a default judgment is attempted. Such authority also reflects the federal system's disdain for default judgments.

II. The Louisiana Court Properly Applied Federal Rules of Issue Preclusion to Determine the Preclusive Effect of the Texas Court's Jurisdictional Findings.

[8, 9] Having concluded that the Louisiana Court had authority to undertake an independent inquiry into the jurisdictional basis of the Texas Court's judgment using Rule 60(b)(4), we next consider the first of Harper's two primary arguments on appeal: whether the Louisiana Court properly applied federal law when determining the preclusive effect of the jurisdictional recitations and related factual findings contained in the Texas Court's original and amended judgments. Traditional rules of preclusion as adopted in federal case law— whether under the doctrine of collateral estoppel or res judicata—require that the party to be estopped from re-litigating a claim have had a full and fair opportunity to litigate the issue. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326, 99 S.Ct. 645, 649, 58 L.Ed.2d 552 (1979). The Louisiana Court determined that "[b]ecause defendants did not have their day in court," they were not precluded from litigating the service of process issues collaterally.

[10] In diversity actions like the one that produced the underlying default judgment in this case, the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants. See *Southmark Corp. v. Life Investors, Inc.*, 851 F.2d 763, 772 n. 15 (5th Cir.1988); *Stuart v. Spademan*, 772 F.2d 1185, 1189 (5th Cir.1985). Thus, Texas law provides the foundation for the Defendants' argument that service of process in the Texas proceeding was defective such that the Texas Court did not properly exercise jurisdiction over them when it rendered default judgment. On appeal, Harper argues that Texas law should also be applied to determine the preclusive effect of the jurisdictional findings contained in the Texas Court's original and amended default judgments. Because Texas maintains the common law rule of absolute verity, under which plain jurisdictional recitals contained within a judgment are conclusive as to the rendering court's jurisdiction in a collateral proceeding,[5] Harper asserts that the Defendants should be barred from raising technical service of process issues collaterally in the Louisiana Court.

As support for its argument, Harper relies principally on the Supreme Court's full faith and credit jurisprudence which provides that "a federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S.Ct. 892, 79 L.Ed.2d 56 (1984); *Allen v. McCurry*, 449 U.S. 90, 96, 101 S.Ct. 411, 415, 66 L.Ed.2d 308 (1980) ("[T]hough the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so.") Applying this rule, this circuit has held that when a federal court is asked to enforce a state judgment, the rendering state's law determines the preclusive effect of jurisdictional findings contained within the judgment, subject of course to the Due Process Clause. See *A.L.T. Corp.*, 801 F.2d at 1455, 1458–59.[6] Harper seeks to extend this rationale, reasoning that the Louisiana Court should have followed Texas' process for bringing a jurisdictional challenge to a default judgment.[7] Harper

---

5. See *Akers v. Simpson*, 445 S.W.2d 957, 959 (Tex.1969) ("It is the firmly established rule in Texas that a defendant who is not served and who does not appear may not, as a matter of public policy, attack the verity of a judgment in a collateral proceeding; the jurisdictional recitals import absolute verity.").

6. We note that the Defendants do not argue that they had no notice of the claim pending against them such that enforcement of the Texas Court's judgment would violate the Due Process Clause. Instead, the Defendants argue that service upon them violated technical requirements of Texas law, and, under that law alone, was insufficient.

7. Harper's argument also finds some jurisprudential support in a recent Supreme Court decision holding that, while federal law determines the preclusive effect of all federal judgments on the merits of a case, the federal rule of decision in diversity cases generally should refer to the law of the state in which the rendering court sits. See *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 121 S.Ct. 1021, 1028, 149 L.Ed.2d 32 (2001); *see also Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415, 429–31, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996). Thus, Texas law determines the preclusive effect of the substantive issues addressed in the Texas Court's default judgment. *Semtek* did not address the role of state law in determining the preclusive effect



**HARPER MACLEOD SOLICITORS v. KEATY & KEATY**  397
Cite as 260 F.3d 389 (5th Cir. 2001)

concedes, however, that because this case involves enforcement of a federal district court judgment by another federal district court, neither the Full Faith and Credit Clause nor the full faith and credit statute,[8] or the cases interpreting them, control. *See Baldwin v. Iowa State Traveling Men's Ass'n*, 283 U.S. 522, 524, 51 S.Ct. 517, 518, 75 L.Ed. 1244 (1931).

[11, 12] We decline to extend full faith and credit principles to cases like this one involving the enforcement of a federal judgment by another federal court. We begin our analysis by reiterating the power of a court of registration to inquire into the jurisdiction of the rendering court before enforcing the rendering court's judgment. *See Covington Indus.*, 629 F.2d at 732 ("When, in an enforcement proceeding, the validity of the judgment is questioned on this ground [of lack of personal jurisdiction], the enforcing court has the inherent power to void the judgment[.]" (citing *Baldwin*, 283 U.S. at 525, 51 S.Ct. 517)).[9] Moreover, federal case law has long allowed parties to federal lawsuits to rely on this power by granting defendants the ability "to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 706, 102 S.Ct. 2099; *Broadcast Music, Inc.*, 811 F.2d at 281. Application of Texas' rule of absolute verity would undermine this foundational principle of federal jurisdictional law by preventing defendants from testing a district court's jurisdiction by suffering a default judgment, then raising jurisdictional issues when the default judgment is enforced. For that reason, we decline to sustain Harper's request that we use Texas law to determine the preclusive effect of jurisdictional findings contained in a federal judgment.[10]

---

of *jurisdictional findings* made by a federal court sitting in diversity. Moreover, Harper has not argued that Texas law on issue preclusion should apply to jurisdictional recitals under the Supreme Court's *Erie* jurisprudence. Thus, we need not address Harper's argument in terms of *Erie*.

8. This statute provides:

   [t]he ... judicial proceedings of any court of any such State ... shall have the same full faith and credit in every court within the United States and its Territories and Possessions as they have by law or usage in the courts of such State....

   28 U.S.C. § 1738 (1982).

9. This principle has a long lineage in our jurisprudence. *See Chicago Life Ins. Co. v. Cherry*, 244 U.S. 25, 29, 37 S.Ct. 492, 61 L.Ed. 966 (1917) ("There is no doubt of the general proposition that in a suit upon a judgment the jurisdiction of the court rendering it over the person of the defendant may be inquired into."); *Hall v. Lanning*, 91 U.S. 160, 165, 23 L.Ed. 271 (1875) ("[T]he jurisdiction of a foreign court over the person or the subject matter embraced in the judgment or decree of such court is always open to inquiry[.]"). The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had or, as germane to this case, be enforced. *See, e.g., Ins. Corp. of Ireland, Ltd.*, 456 U.S. at 702, 102 S.Ct. 2099 ("The requirement that a court have personal jurisdiction flows not from Art. III, but from the Due Process Clause."). If the rendering court did not have such jurisdiction, its judgment is invalid. *See N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 143 (5th Cir.1996) ("A judgment is void ... if the court that rendered it lacked jurisdiction ... of the parties[.]" (internal quotations omitted) (quoting *Williams v. New Orleans Pub. Serv., Inc.*, 728 F.2d 730, 735 (5th Cir.1984))); *Broadcast Music, Inc.*, 811 F.2d at 281 ("A court which lacks personal jurisdiction over a defendant cannot enter a valid judgment against that defendant.").

10. We recognize that our refusal to apply state law to resolve this question turns on the substance of Texas law. We need not determine in this case whether a different state law could be used as the federal rule for determining the preclusive effect of jurisdictional find-

**398**     **260 FEDERAL REPORTER, 3d SERIES**

Since application of state law in this case is inappropriate, the Louisiana Court properly applied federal rules of issue preclusion to determine whether the Texas Court's jurisdictional findings precluded litigation of the Defendants' jurisdictional arguments. The Louisiana Court noted "[n]owhere in the ruling is there any mention of any challenges or exhibits made by defendant. It appears that defendant was not present for, nor in any way, participated in the proceeding." Based upon this finding, we agree with the Louisiana Court's decision to afford the Texas court's jurisdictional recitals no preclusive effect.

### III. The Louisiana Court Properly Ruled That Service Upon the Defendants Was Defective Pursuant to Texas Law

[13] Having determined that the district court properly undertook an independent review of the Texas Court's jurisdiction to enter a default judgment against the Defendants, we next turn to the merits of the jurisdictional issues raised. The parties agree that Texas law, specifically the Texas long arm statute and the cases interpreting it, determine whether service of process was effective on the Defendants. *See* FED. R. CIV. PROC. 4(e)(1) (West 1999). To support a default judgment against a jurisdictional challenge, Texas law requires plaintiffs to prove that (1) the pleadings established that the Defendants were amenable to service, and (2) evidence in the record demonstrates the Defendants were in fact served in the manner required by the Texas long arm statute. *Bludworth*, 841 F.2d at 649; *Whitney v. L&L Realty Corp.*, 500 S.W.2d 94, 95–96 (Tex.1973).[11]

The Defendants do not dispute that the record reveals that they were amenable to service, thus the inquiry before the district court, and before this Court, implicates only the second prong of *Whitney*.

Section 17.044(b) of the Texas Civil Practice & Remedies Code provides for substituted service on the Secretary for nonresident defendants doing business in Texas that do not maintain a regular place of business in Texas, provided that the relevant proceeding arises out of business done in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.044(b) (West 1999). Specifically, plaintiffs must comply with notice requirements of section 17.045(a):

> If the Secretary of State is served with duplicate copies of process for a nonresident, he shall require a statement of the name and address of the nonresident's home or home office and shall immediately mail a copy of the process to the nonresident.

*Id.* at § 17.045(a). In analyzing whether Harper complied with the Texas long arm statute, we must screen the record "to factually determine that the address provided to the Secretary of State was in fact the home or home office of the nonresident defendant (notwithstanding it was so labeled)." *Mahon v. Caldwell, Haddad, Skaggs, Inc.*, 783 S.W.2d 769, 771 (Tex. App.1990, writ denied).

[14] Texas courts have consistently required strict compliance with the terms of the Texas long arm statute. *See Mahon*, 783 S.W.2d at 771. According to the Texas Supreme Court, "[a] typographical error in the forwarding address ... is

---

ings made by a federal district court sitting in diversity.

11. This Court has previously noted possible tension between Texas and federal law on the burden of proof: Texas law assigns the burden of proving service issues to the plaintiff, while the movant under Rule 60(b) generally bears the burden of proof. *Bludworth Bond*, 841 F.2d at 649 n. 7. As in *Bludworth*, however, the addresses provided to the Secretary by Harper are uncontested and consequently we are able to determine the adequacy of service as a matter of law. *See id.*

/144/   EXH. B   (A54)

HARPER MACLEOD SOLICITORS v. KEATY & KEATY 399
Cite as 260 F.3d 389 (5th Cir. 2001)

grounds to set aside a default judgment based on substituted service." *Royal Surplus Lines Ins. Co. v. Samaria Baptist Church*, 840 S.W.2d 382, 383 (Tex.1992); *see also Commission of Contracts of General Executive Committee of Petroleum Workers Union of Republic of Mexico v. Arriba, Ltd.*, 882 S.W.2d 576, 585 (Tex. App.1994, no writ) ("If the Secretary of State sends the citation and a copy of the petition to the nonresident defendant using an incorrect address for the defendant, then a default judgment should be set aside.") Moreover, "[a]ctual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against [the defendant]. Rather, jurisdiction is dependent upon citation issued and service in a manner provided for by law." *Wilson v. Dunn*, 800 S.W.2d 833, 836 (Tex.1990).

[15] The Louisiana Court held that service was defective with respect to each of the Defendants because, inter alia, none of the addresses provided to the Secretary accurately stated a home or home office address for any one of the defendants. Harper has not provided any basis for reversing this determination. Instead, Harper concedes that it provided the Secretary with (1) "a former address for service upon the partnership Keaty & Keaty d/b/a The Keaty Firm at its Lafayette office;" and (2) addresses for Robert and Thomas Keaty that contained "a typographical error in the suite number." According to Texas law, such mistakes render service defective. *Royal Surplus Lines*, 840 S.W.2d at 383; *Arriba*, 882 S.W.2d at 585. That the Defendants may have had actual notice of service is of no consequence since the Texas Supreme Court has expressly rejected an actual notice exception to strict compliance with the terms of the long arm statute. *Wilson*, 800 S.W.2d at 836. The district court

therefore properly determined that service was inadequate under Texas law and could not support a default judgment.

CONCLUSION

A party may contest personal jurisdiction or method of service by refusing to appear, suffering a default judgment, then collaterally attacking that default judgment when the plaintiff initiates enforcement proceedings. Thus, the Louisiana Court properly considered whether the Texas Court had jurisdiction over the Defendants. In undertaking its jurisdictional analysis, the Louisiana Court appropriately applied federal rules of issue preclusion to determine that the Texas Court's jurisdictional recitals were not entitled to deference because they were not produced after full and thorough litigation. Finally, the Louisiana Court correctly concluded that Harper failed to provide the Secretary with an accurate "home or home office" address for any of the Defendants. Hence, we AFFIRM the Louisiana Court's judgment voiding the Texas Court's default judgment under Rule 60(b)(4).

AFFIRMED.

KING, Chief Judge, specially concurring:

I concur in the judgment and in all of Judge Benavides's fine opinion with the exception of Part I, which addresses whether a registering court has the power to alter or amend a rendering court's judgment through Rule 60(b). I write only to state that I agree with Judge Easterbrook's treatment of this issue in *Board of Trustees, Sheet Metal Workers' National Pension Fund v. Elite Erectors, Inc.*, 212 F.3d 1031 (7th Cir.2000). As in *Elite Erectors*, the central issue in this case is whether the rendering court had jurisdiction over the Defendants to enter the default judgment against them. I concur in

**400**   **260 FEDERAL REPORTER, 3d SERIES**

the judgment in this case, however, because under either Judge Easterbrook's analysis or Judge Benavides's analysis, the result is the same because the registering court is "free to disregard the [rendering court's] judgment, without formally annulling it under Rule 60(b)(4), if the rendering court lacked jurisdiction." *Id.* at 1034.



In the Matter of: Steven M. HICKMAN; Gina L. Hickman, Debtors.

Steven M. Hickman; Gina L. Hickman, Appellees,

v.

State of Texas, Appellant.

No. 00–10604.

United States Court of Appeals, Fifth Circuit.

July 26, 2001.

Owner of bail bonding business filed for bankruptcy. State sought determination of dischargeability of debtors' bond forfeiture debt. The United States Bankruptcy Court for the Northern District of Texas held debt nondischargeable, and debtors appealed. The District Court, Terry R. Means, J., reversed, and state appealed. The Court of Appeals, Benavides, Circuit Judge, held that bail bond forfeiture debt was dischargeable.

Affirmed.

\* Circuit Judge of the Eleventh Circuit, sitting

**1. Bankruptcy** ⇐3358

Bankruptcy Code provision excepting "forfeiture" from discharge excludes from discharge only those forfeitures imposed because of misconduct or wrongdoing by debtor. Bankr.Code, 11 U.S.C.A. § 523(a)(7).

See publication Words and Phrases for other judicial constructions and definitions.

**2. Bankruptcy** ⇐3358

Surety's obligation upon bail bond that was forfeited when third-party criminal defendant failed to appear for trial was not excepted from discharge in surety's bankruptcy case: under Texas law, obligation was not type of forfeiture to which Bankruptcy Code's nondischargeability provision applied. Bankr.Code, 11 U.S.C.A. § 523(a)(7).

---

Clifford Franklin McMaster, Fort Worth, TX, for Appellees.

Katherine Anne LaRoe, Fort Worth, TX, for Appellant.

Appeal from the United States District Court for the Northern District of Texas.

Before HILL\*, JOLLY and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

The State of Texas appeals the district court's determination that the debt owed to it by Gina and Steven Hickman ("the Hickmans") arising from bail bond forfeitures was dischargeable. The State argues that because the default of a bail bond is colloquially referred to as a "forfeiture," a judgment against a bail bond surety should be nondischargeable under the

by designation.

