**CIVILLE & TANG**
2nd Floor, Cabrera Center
PMB 86, P.O. Box 10003
Saipan, MP  96950-8908
Telephone: (670) 235-1725
Facsimile: (670) 235-1726

Attorneys for Defendant Justice Alexandro C. Castro

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>　　　　　Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI), NICOLE C. FORELLI, former Acting Attorney General of the CNMI, in her personal/individual capacity; WILLIAM C. BUSH, former Assistant Attorney General of the CNMI, in his personal/individual capacity; D. DOUGLAS COTTON; former Assistant Attorney General of the CNMI, in his personal/individual capacity; L. DAVID SOSEBEE, former Assistant Attorney General of the CNMI, in his personal/individual capacity; ANDREW CLAYTON, former Assistant Attorney General of the CNMI, in his personal/individual capacity; Other UNKNOWN and UNNAMED person or persons in the CNMI, in their personal/ individual capacity; ALEXANDRO C. CASTRO, former Justice ProTem of the CNMI SUPERIOR COURT, in his personal/individual capacity; PAMELA S. BROWN, former Attorney General of the CNMI; in her personal/individual capacity; ROBERT A. BISOM; and JAY H. SORENSEN.<br><br>　　　　　　　　　　Defendants. | CIVIL ACTION NO. 05-0027<br><br>**DEFENDANT CASTRO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br>[ L.R. 7.1 (c) (3)]<br><br>**(Electronically Filed)**<br><br><br>Date:　　　July 27, 2006<br>Time:　　　9:00 a.m.<br>Judge:　　　Honorable Alex R. Munson |

**DEFENDANT'S MOTION**

Defendant Justice Alexandro C. Castro ("Justice Castro") moved to dismiss Plaintiff Robert Bradshaw's ("Bradshaw") Second Amended Complaint in the above entitled action on the grounds of judicial immunity, mootness, and Bradshaw's failure to state a claim upon which relief could be granted. Now Justice Castro by Civille & Tang file this reply to "Plaintiff's Opposition to Defendant's Motion to Dismiss and Incorporated Memorandum of Points and Authorities" (hereafter "Opposition").

**FACTUAL AND PROCEDURAL ISSUES**

We recognize and correct at the outset the unintentional oversights contained in Justice Castro's Motion to Dismiss identified in Bradshaw's Opposition. In parsing over four hundred paragraphs, equating to seventy-five pages, of Bradshaw's Second Amended Complaint ("Complaint"), some de minimus errors were made in the Motion to Dismiss, for which we apologize to the Court. These included: (1) an inadvertent discussion of Bradshaw's original demand for compensation ($750,000) which included the $139,000 awarded under the Bisom judgment, rather than his most recent demand for over $2.25 Million in compensatory and punitive damages, and which requested that the amounts awarded under the Bisom judgment be returned to the CNMI; (2) a failure to note in the beginning of the Motion to Dismiss that Justice Castro made his claims and arguments through his counsel and not on his own behalf *pro se*, (though the fact that Defendant Castro is acting through counsel is otherwise obvious from the pleadings filed in this matter); and (3) a notation that Bradshaw's Idaho lawsuit was dismissed on several grounds (as distinguished from rationalized on several grounds) when it was dismissed on the one ground identified in the Motion to Dismiss – lack of personal jurisdiction. None of these unintentional errors, however, affected the substantive arguments presented in the Motion, or change the fact that, even if every allegation in the Complaint were taken as true, Bradshaw has failed to state a claim for which relief can be granted.

Unlike the minor oversights Bradshaw identified above, which we clarify, and which do not in any way affect the substantive arguments presented in the Motion, Bradshaw erroneously contends that Justice Castro's Motion to Dismiss does not address the standards for dismissal

under Rule 12(b)(6) and fails to discuss why his claims should be dismissed under Rule 12(b)(6). This is plainly wrong. As explained fully in the Motion to Dismiss, dismissal is warranted where the complaint lacks a cognizable legal theory or where the complaint presents a cognizable legal theory yet fails to plead essential facts under that theory. *See Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984). Throughout his Complaint, Bradshaw failed to do one of the following: state a claim; support a claim with sufficient facts; or, in some cases he failed to state a claim *and* support it with sufficient facts. Furthermore, Justice Castro's Motion to Dismiss refers to facts contained within Bradshaw's Complaint, whether attached as exhibits or incorporated by reference, or facts that could be judicially noticed. This is not, therefore, a motion for summary judgment. *See* Fed. R. Civ. P. 12 (b)(6); *see also United States v. Ritchie*, 342 F.3d 903, 908 (9th 2003) ("A court may, however, consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment."). The remainder of Bradshaw's contentions will be addressed under their respective substantive headings.

## JUDICIAL IMMUNITY

Even assuming Bradshaw sufficiently alleged legal claims against Justice Castro, which he did not as discussed later, each and every claim is barred by absolute judicial immunity. In an attempt to ignore this well-established precedent, Bradshaw completely misconstrues the law regarding judicial immunity. Bradshaw contends that judicial immunity cannot be raised in a motion to dismiss under Rule 12(b)(6), which is plainly erroneous. *See e.g. Branson v. City of Los Angeles*, 912 F.2d 334, 335-336 (9th Cir. 1990); *see also Brookings v. Clunk*, 389 F.3d 614, 617 (6th.Cir. 2004) (reversing the denial of a 12(b)(6) motion based on judicial immunity).

Furthermore, Bradshaw's argument that there are no common law, Commonwealth or U.S. laws granting judicial immunity is also patently wrong. In the Motion to Dismiss, Defendant Castro cites Supreme Court authority stating that judicial immunity is rooted in the

common law. The Motion cites 7 CMC § 3401 for the proposition that the Commonwealth applies the Restatement in the absence of "written law or local customary law to the contrary." Title 7 CMC § 3401. The Motion to Dismiss explicitly cites the RESTATEMENT (SECOND) OF TORTS § 895D(2) (1979), which provides: "A public officer acting within the general scope of his authority is immune from tort liability for an act or omission involving the exercise of a judicial or legislative function." REST (2D) TORTS § 895D(2); *see also id.* cmt. c. Clearly, the Commonwealth recognizes common law judicial immunity as it is found in the Restatement, and clearly Bradshaw ignores this and states otherwise with absolutely no support. *See also Bank of Saipan, Inc. v. Atalig,* 2005 MP 3, 2005 WL 3767671, *3 (N.M.I. 2005) (recognizing common law immunities in the CNMI).

In his Opposition, Bradshaw further attempts to analogize or equate judicial immunity to the type of defense discussed in *Duncan v. Peck,* 844 F.2d 1261 (6th Cir. 1988). *Duncan* holds that private individuals cannot claim good faith immunity from a § 1983 action, but may assert a good faith defense. *See id.* at 1264-66. *Duncan* did not even involve a judge. Clearly, *Duncan* is not on point. Justice Castro is not a private individual but rather a Judge acting in his judicial capacity. Judicial immunity applies here. It is absolute and means immunity from suit. *See Mitchell v. Forsyth,* 472 U.S. 511, 526 (1985).

Bradshaw also unpersuasively attempts to distinguish the policy underlying immunity as explained in *Meyers v. Contra Costa County Department of Social Services,* 812 F.2d 1154 (9th Cir. 1987), from the present case. The portion of the *Meyers* decision referred to by Bradshaw did not involve a determination of judicial immunity *vel non.* Additionally, each government employee or agent was held immune, and although Bradshaw attempts to use this case to buttress his proposition that the doctrine of judicial immunity should not be applied in this case, *Meyers* actually buttresses Justice Castro's argument. The *Meyers* court stated that:

> The insulation of the judge from political influence, the importance of precedent in resolving controversies, the adversary nature of the process, and the correctability of error on appeal are just a few of the many checks on malicious action by judges.... Because these features of the judicial process tend to enhance the reliability of information and the impartiality of the decisionmaking process, there is a less pressing need for individual suits to correct constitutional error.

*Meyers*, 812 F.2d at 1158 (quoting *Butz v. Economou*, 438 U.S. 478, 512 (1978)). These safeguards persist, and the controlling law continues to hold that judicial immunity is absolute in nature - - it is the equivalent of immunity from suit, not just a defense to liability. *See Mitchell*, 472 U.S. at 526. In fact, the adversarial process and judicial review produced the Order setting aside the judgment against Bradshaw in the Bisom lawsuit, thereby reinforcing Meyers' holding that it is not necessary to file personal suits against judges to redress decisional errors made within their jurisdiction, even if such errors arguably violate the litigant's rights.

Bradshaw further attacks absolute judicial immunity with erroneous claims that: (1) judicial immunity does not exist with regard to statutory civil rights claims and is only a limited right as to all other claims; and (2) that judicial immunity is destroyed if there is no personal jurisdiction. Both claims have long been rejected by the courts.

Bradshaw's contentions regarding civil rights claims are completely without a legal basis. Bradshaw eschews all relevant and binding court analysis and instead opts for his own interpretation of his civil rights claims vis-à-vis the Civil Rights Act of 1871 and 42 U.S.C. § 1983. Instead of relevant case law, Bradshaw posits an argument based on statutory interpretation. He states that "title [sic] 42 laws address [sic] all persons with no exceptions," and that "1981 [sic] says all persons and 1983 [sic] says every person." Although Bradshaw then admits that "some courts have excluded judicial officers (judges, [sic] and now prosecutors and [sic] other government officials) from all and every, the statutes do not make this exclusion," Bradshaw does not state that the "some courts" he refers to include the Supreme Court of the United States and all lower courts bound by its decisions. *See, e.g., Stump v. Sparkman*, 435 U.S.

349, 356 (1978) (re-stating its holding that the doctrine of judicial immunity was applicable in suits under § 1 of the Civil Rights Act of 1871, 42 U.S.C. § 1983, because "the legislative record gave no indication that Congress intended to abolish this long-established principle") (citing *Pierson v. Ray*, 386 U.S. 547 (1967)). This attempt to substitute his opinion for that of the U.S. Supreme Court is a frivolous and astounding abuse of the court system. Further, although Bradshaw cites *Sparkman* in another place in his brief, *see* Opposition at ¶ 33, he prefers to ignore the same decision and insert his own interpretation of Title 42 USC §§ 1981 and 1983 as he deems convenient. Moreover, as cited in the Motion to Dismiss, judicial immunity has been extended to all federal claims asserted in Bradshaw's Complaint.

In his Opposition, Bradshaw erroneously states that the lack of personal jurisdiction in the Bisom lawsuit equated to a lack of subject matter jurisdiction. Subject matter jurisdiction and personal jurisdiction are different concepts. *See United States v. Morton*, 467 U.S. 822, 828 (1984) ("Subject-matter jurisdiction defines the court's authority to hear a given type of case, whereas personal jurisdiction protects the individual interest that is implicated when a nonresident defendant is haled into a distant and possibly inconvenient forum.").

The CNMI Superior Court is a court of general jurisdiction. Article IV of the CNMI Constitution provides: "The Commonwealth superior court shall have original jurisdiction in all cases in equity and at law." CNMI CONST. ART. IV § 2. Title 1 CMC § 3202 also provides that the CNMI Superior Court shall have "original jurisdiction over all civil actions, in law and in equity...." Title 1 CMC § 3202. Bradshaw is aware and even admits that Bisom's use of the jurisdictional statute in the original lawsuit was a "possible allusion" to the Superior Court's jurisdiction. Clearly, jurisdiction over "all civil actions" encompassed Bisom's civil action against Bradshaw. *See Sparkman*, 435 U.S. at 359-60. Justice Castro, as the Superior Court trial judge, had a constitutional and statutory grant of subject matter jurisdiction to hear the claims

asserted in Bisom matter, including each claim Bradshaw identifies in his Opposition, *to wit*: claims involving violation of federal laws, claims for racial discrimination, and claims for improper firing or termination, as well as the claims actually raised in the Bisom matter. Justice Castro asks the Court to take judicial notice of the complaint filed by Bisom, provided in the Declaration filed herewith.

Bradshaw essentially argues that Justice Castro incorrectly (maliciously, incompetently, accidentally, or otherwise) ruled that his court had personal jurisdiction over Bradshaw. As stated in the Motion to Dismiss, Ninth Circuit authority holds that a lack of personal jurisdiction does not destroy judicial immunity. *See Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986). Even assuming Justice Castro lacked personal jurisdiction, absolute judicial immunity would still apply because Justice Castro had subject matter jurisdiction and, as alleged in the Complaint, at all times acted in his judicial capacity. *See Sparkman*, 435 U.S. at 356, 362; *see also Schucker v. Rockwood*, 846 F.2d 1202, 1204 (9th Cir. 1988). Judges retain immunity "when they rule on matters belonging to categories within their court's jurisdiction, even when they fail to comport with procedural niceties necessary to give the court power over the particular matter." *O'Neil v. City of Lake Oswego*, 642 F.2d 367, 370 (9th Cir. 1981).

A lack of personal jurisdiction does not equate to a lack of subject-matter jurisdiction in the context of judicial immunity. Such an argument has been deemed sanctionable when raised in another case. In *Crabtree By and Through Crabtree v. Muchmore*, 904 F.2d 1475, 1477 (10th Cir. 1990), the Crabtrees, like Bradshaw, filed a § 1983 civil rights suit against, among others, an Oklahoma state judge alleging that the state judge acted absent jurisdiction because he had no personal jurisdiction over the Crabtree children. *Id.* The Tenth Circuit soundly rejected this idea and held that if such a theory were accepted "no judge could claim judicial immunity for his actions if he incorrectly determined that his court had personal jurisdiction over parties to a suit . . ." *Id.* The Tenth Circuit, however, went further than just outright dismissing the Crabtrees'

personal jurisdiction argument and held that "no attorney, charged with the responsibility of reading the Supreme Court's decision in *Stump v. Sparkman,* 435 U.S. 349, 98 S. Ct. 1099, 55 L.Ed.2d 331 (1978), and our opinion in *Van Sickle v. Holloway,* 791 F.2d 1431 (10th Cir.1986), could believe that absolute judicial immunity would not bar the action against Judge Cook." *Id.* The Court held that because the suit was so frivolous, the trial court did not err in imposing sanctions under FRCP 11 and 42 U.S.C. § 1988. *See id.* The very argument for which the Crabtrees received sanctions is exactly the argument Bradshaw makes to this Court, and is likewise sanctionable here.[1]

### MOOTNESS AND STATUTE OF LIMITATIONS

"Federal courts lack jurisdiction to decide moot cases because their constitutional authority extends only to actual cases or controversies." *See Sample v. Johnson*, 771 F.2d 1335, 1338 (9th Cir. 1985). The only judicial action that could possibly be taken against Justice Castro regarding his decision in pronouncing a judgment in the Bisom lawsuit is in the nature of a reversal of that decision, and such action has been accomplished by the 2005 decision setting the judgment entered against Bradshaw aside, mooting any remedy against Justice Castro.

Additionally, an action "accrues" "when the plaintiff could have first filed and prosecuted his or her action to successful conclusion." *Zhang Gui Juan v. Commonwealth*, Civ. No. 99-0163 (N.M.I. Super. Ct. 1999). Bradshaw's Complaint does not allege any claims against Justice Castro arising after the judgment entered against him in the Bisom matter. The allegations and attachments to the Complaint show that Bradshaw knew of the trial, attempted to participate by

---

[1] As a *pro se* litigant, Bradshaw is held to the same procedural rules as all counseled litigants, *see King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987), and he has a duty to put forth legal contentions that are warranted by existing law. FRCP 11(b)(2) states that "[b]y presenting to the court . . . a pleading . . . or other paper, an . . . unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,-- . . . the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law . . . ." FRCP 11(b)(2). Bradshaw completely ignores this requirement, and his efforts to defeat judicial immunity by misstating case law warrant sanctions from this Court.

having his name withdrawn, and then made no further inquiry until April, 2004. Bradshaw's claims against Justice Castro, if any, arose at the latest in 2000, the date of the judgment against him in a case in which he was fully aware.

## BRADSHAW FAILED TO ALLEGE FACTS SUPPORTING HIS § 1983 CLAIMS

At the very least, section 1983 demands that Bradshaw plead that Justice Castro deprived him of "some right protected by the Constitution or laws of the United States." *Seed v. Hudson*, No. CIV. A. 93-008, 1994 WL 229096, at *6 (D.N. Mar. I. May 11, 1994) (citing *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988)). Bradshaw's Complaint fails to allege facts sufficient to state a claim that Justice Castro was part of a conspiracy to deprive Bradshaw of his constitutional rights aside from bare allegations that Justice Castro made judicial decisions against Bradshaw. *See Crabtree*, 904 F.2d at 1476.[2] Conclusory allegations of this nature cannot survive a motion to dismiss. *See id.*; *see also Ivey v. Bd. of Regents of Univ. of Ak*, 673 F.2d 266, 268 (9th Cir. 1982). Furthermore, Bradshaw's "facts" are the alleged tortious acts by Justice Castro (i.e., incompetence and lack of due care) during the trial. Simple torts do not automatically equate to a violation of constitutional rights, and Bradshaw's allegations of incompetence in the courtroom fail to generate a claim upon which relief can be granted. *See Baker v. McCollan*, 443 U.S. 137, 146-147 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law. . . . false imprisonment does not become a violation of the Fourteenth Amendment merely because the defendant is a state official.").

---

[2] The 10th Circuit in *Crabtree* affirmed the lower court's decision that the plaintiffs failed to state a claim under § 1983 against attorneys involved in a state court lawsuit by alleging a conspiracy between a judge and attorneys in the case to deny the plaintiffs' rights. The Circuit Court affirmed the District Court's decision for the substantially the reasons given by the District Court, and attached the District Court's decision to its opinion. *Id.* at 1476 (affirming dismissal against the judge on judicial immunity grounds). In its decision, the District Court recognized that conspiracy claims are rarely supported by direct evidence, and that claims of conspiracy must be viewed with caution during the pre-trial disposition phase, but nonetheless explained: "However, the rule is clear that allegations of conspiracy must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action. A conspiracy cannot be found from allegations of judicial error, ex parte communications (the manner of occurrence and the substance of which were not alleged) or adverse rulings absent specific facts demonstrating an agreement to commit the alleged improper actions." *Id.* at 1481.

## BRADSHAW FAILED TO STATE A CLAIM FOR ALLEGED VIOLATIONS OF COURT RULES AND BREACH OF EMPLOYMENT CONTRACT

Dismissal is warranted where the complaint lacks a cognizable legal theory, *see Robertson*, 749 F.2d at 534, and a violation of court rules does not give rise to an independent cause of action. *See Rogers v. Furlow*, 729 F. Supp. 657, 660 (D. Minn. 1989). Additionally, Bradshaw did not have a contract with Justice Castro, and therefore he cannot state a claim for breach of contract against Justice Castro.

## SECTION 1981 CLAIMS and the CIVIL RIGHTS ACT of 1870 & 1871

In order to prevail in an action brought pursuant to sections 1981 and 1982, a plaintiff must allege and prove discrimination based upon race or alienage. *See McDonald v. Santa Fe Trail Transport. Co*, 427 U.S. 273, 296 (1976) (§1981). Nowhere in the Complaint does Bradshaw state sufficient facts to support a claim that race served as the basis of any discrimination in this case, i.e. that a similarly situated person of another race was treated better than he was treated or that discrimination occurred solely because of his race. *See id.* Bradshaw's allegation that there is open discrimination against U.S. citizens in the CNMI is clearly insufficient to support his present claim that he was discriminated against in the Bisom lawsuit on the basis of his race.

## IMMIGRATION

Sections 503 and 506 of the Covenant to Establish a Commonwealth of the Northern Mariana specifically exclude the application of U.S. immigration law within the Commonwealth, with limited exceptions not applicable here. *See* COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITED STATES OF AMERICA, 48 U.S.C. § 1801, at § 503(a) (1976). As a matter of law, Bradshaw has not alleged a cognizable theory to support his immigration claims, and a dismissal of his claims are proper. *See Robertson*, 749 F.2d at 534.

## RICO

Bradshaw has also failed to plead the necessary elements of a RICO claim, namely, that an organized enterprise caused an injury to his business or property. *See Chang v. Chen*, 80 F.3d

1293, 1299-1300 (9th Cir. 1996) (explaining that in order for a group to qualify as an enterprise, the decision-making "structure should provide 'some mechanism for controlling and directing the affairs of the group on an on-going rather than an *ad hoc* bases.' . . . A conspiracy, however, is not an enterprise for purposes of RICO.") (citing *United States v. Riccobene*, 709 F.2d 214, 222 (3d Cir. 1983); *Warfield v. Garner*, 346 F.Supp.2d 1033, 1052 (D. Ariz. 2004) ("Absent specific facts demonstrating a structured association, Plaintiff's Complaint fails to plead a cognizable RICO enterprise."). Although he has now alleged that it is "widely known" that Justice Castro accepted bribes as a probate judge, this is an insufficient factual allegation to support Bradshaw's specific claims presented in this case. Aside from the offensive nature of an accusation that fails to demonstrate any proof of RICO activity, Bradshaw not only fails to show an enterprise, but, in this suit, he alleges no gain by Justice Castro and no reason for the de facto enterprise.

## CONCLUSION

Justice Castro's Motion to Dismiss is based on Bradshaw's failure to allege facts that, even if true, constitute a cause of action. *See Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir.1996). Judicial Immunity has also long been recognized as the basis for a 12(b)(6) dismissal. *See Branson*, 912 F.2d at 335-336. Judicial immunity cannot be overcome by allegations of bad faith, corruption, or malice, s*ee Pierson*, 386 U.S. at 554, and applies as a bar to suit even if the acts complained of were "[g]rave procedural errors or acts in excess of judicial authority." *Schucker*, 846 F.2d at 1204. Bradshaw has failed to provide this Court with any authority to pierce Justice Castro's absolute judicial immunity. Instead, he misrepresents the law. This kind of misrepresentation and bad faith litigation has been sanctioned by other courts. *See Crabtree,* 904 F.2d at 1477-78. Based upon the foregoing, this honorable Court should grant Justice Castro's Motion to Dismiss. An award of attorneys' fees is also warranted in this matter.

Respectfully submitted,

CIVILLE & TANG

DATED: July 6, 2006    By: /s/ G. Patrick Civille
G. PATRICK CIVILLE
*Attorneys for Defendant Justice Alexandro C. Castro*

# ADDENDUM

Case 1:05-cv-00027   Document 146   Filed 07/06/2006   Page 12 of 18

# *Bank of Saipan, Inc. v. Atalig*

Westlaw.

Not Reported in F.Supp.2d　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 1
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3
**(Cite as: Not Reported in F.Supp.2d)**

H

Supreme Court of the Commonwealth of the
Northern Mariana Islands.
BANK OF SAIPAN, INC., Appellant,
v.
Acting Secretary of Commerce Fermin M. **ATALIG**, in his official capacity as the Commonwealth of the Northern Mariana Islands Director of Banking, pursuant to 4 CMC § 6105(a), Appellee,
andRandall T. FENNELL, in his official capacity as Former Receiver for the Bank of Saipan, Real Party in Interest.
**Nos. 02-029-GA, 03-008-GA.**

Submitted Nov. 12, 2003.
Decided March 7, 2005.

Mair, Mair, Spade & Thompson, Saipan, MP, Calvo and Clark, LLP, Mariana Heights Business Park, Saipan, MP, for Bank of Saipan.
Richard W. Pierce, Law Office of Richard W. Pierce, Saipan, MP, for Randall T. Fennell.
Benjamin I. Sachs, Assistant Attorney General, James D. Livingstone, Assistant Attorney General, Office of the Attorney General, Saipan, MP, for Sec. of Comm. Fermin M. **Atalig**.

BEFORE: VIRGINIA SABLAN ONERHEIM, MICHAEL J. BORDALLO, and JESUS C. BORJA, Justices Pro Tempore.

OPINION
ONERHEIM, J.
*1 Appellant Bank of Saipan, Inc. ("Bank") seeks to vacate the trial court's orders granting immunity and indemnification to the temporary receiver for the Bank of Saipan, Randall T. Fennell ("Fennell"). This Court has jurisdiction over judgments and orders of the trial court pursuant to Article IV, Section 3 of the Northern Mariana Islands Constitution and Title 1 Section 3102(a) of the Commonwealth Code.[FN1] After careful consideration this Court finds that these orders of immunity and indemnification were prematurely issued and are hereby REVERSED.

FN1. Appellant Bank of Saipan asserted that the "collateral order" doctrine may alternatively be applied. Because these orders are final and appealable, the application of the "collateral order" doctrine is unnecessary. Furthermore, Fennell and the Secretary of Commerce conceded this point. "The Order discharging and exonerating Mr. Fennell was final and appealable." *Joint Opposition Brief of Appellees Acting Secretary of Commerce Fermin M. Atalig and Randall T. Fennell* at 1.

I.

The issues presented before this Court are: (1) whether the trial court erred when it issued its September 27, 2002 and December 31, 2002 orders exonerating Fennell and conferring immunity and indemnification upon him where there was no live suit or controversy against Fennell and (2) whether the extent of the immunity granted was excessive. The standard of review for whether the trial court erred in granting immunity is *de novo*.[FN2]

FN2. *Rayphand v. Tenorio,* 2003 MP 12 ¶¶ 2-3.

II.

On April 30, 2002, the Acting Secretary of Commerce Fermin M. **Atalig** ("Secretary of Commerce"), in his official capacity as the CNMI Director of Banking, filed an *Ex Parte Petition for Appointment of Receiver for Bank of Saipan Under 4 CMC § 6106(f)* ("Petition") in the trial court. On the same day, the trial court appointed Fennell as temporary receiver for the Bank with restricted powers for a "limited duration not to exceed thirty days." [FN3] On May 10, 2002, the trial court: (1) extended the duration of Fennell's term "until such time as [the Secretary of Commerce] or the Receiver moves the Court to substitute a new receiver or to terminate the receivership" and (2) expanding his powers beyond those initially granted by the trial court's April 30, 2002 order.[FN4]

FN3. *Order Granting Petition for Appointment of Receiver,* issued on April 30, 2002.

FN4. *Clarification of Order Granting*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                    Page 2
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3
**(Cite as: Not Reported in F.Supp.2d)**

*Petition for Appointment of Receiver,* issued on May 10, 2002.

Fennell served as receiver for the Bank of Saipan from April 30, 2002 to September 27, 2002. The Bank alleged that during the course of Fennell's term as receiver, Fennell and the trial court engaged in improper *ex parte* communications. In addition, the Bank alleged that Fennell was a conflicted receiver due to hostility lingering from previous litigation in which Fennell represented a client having adversary interests to those of the Bank. The Bank filed *Respondent's Emergency Motion to Replace Temporary Receiver* on May 17, 2002, in the trial court.[FN5] The CNMI Government separately sought Fennell's replacement and through the office of the Attorney General, it filed a *Motion for Substitution of Receiver* on May 24, 2002 in the trial court. The trial court eventually replaced Fennell as receiver with Antonio S. Muna on September 27, 2002.[FN6]

FN5. In addition, proceedings on similar issues were simultaneously ongoing in this Court. On May 28, 2002, the Bank filed a *Petition for Writ of Mandamus* in this Court to remove Fennell from the receivership and appoint a new receiver, reassign the case to another judge, and vacate certain orders issued by the trial court in this case. After oral arguments on this matter, the parties negotiated a stay and submitted a *Stipulation and Order for Stay of Proceeding* on November 7, 2002. Pursuant to this Stipulation, this Court ordered a stay of the proceedings on November 13, 2002. A status conference was held on August 12, 2003, in which the parties requested leave to file additional briefing in this matter. Such leave was granted and on August 26, 2003, the Court lifted the stay. The writ was denied by this Court on August 12, 2004 due to changed circumstances after this stay by the parties ended. *Bank of Saipan v. Superior Court,* 2004 MP 15. In particular, a new receiver was in place, a new judge was assigned to the case, and no *ex parte* communications were taking place in the trial court. *Id.*

FN6. *Order Appointing Antonio S. Muna as Receiver,* issued September 27, 2002.

While Fennell was the receiver, he filed a request to exonerate himself on August 9, 2002, in the trial court.[FN7] On September 24, 2002, the trial court held a hearing on Fennell's request for exoneration. On September 27, 2002, the trial court issued an *Order Granting the Receiver's Request for Exoneration* ("Exoneration Order"), which gave Fennell full **judicial immunity** from suits arising out of Fennell's duties as Receiver. In addition, the Exoneration Order provided that the Bank must indemnify Fennell in any such suit. In that Exoneration Order, the court made the following findings:

FN7. *Memorandum in Support of Request to Exonerate Receiver,* filed on August 9, 2002. The Bank filed a *Memorandum in Opposition to Request to Exonerate Receiver* on August 23, 2002. Fennell filed *Receiver's Reply to Opposition to Exoneration for Receiver* on August 30, 2002.

*2 1. On April 30, 2002, this court appointed Randall Fennell ("Mr.Fennell") as Temporary Receiver for the Bank.

2. Upon appointment, Mr. Fennell, acting as an officer of this court and in full accordance with this court's orders, performed all the necessary and required duties of Receiver. At all times during his tenure as Receiver, Mr. Fennell acted in the best interests of the Bank and its depositors. Mr. Fennell provided reports this court [sic] as to the Bank's condition.

The court finds that Mr. Fennell did an exceptionally good job in the face of an exceptionally difficult undertaking. The court also finds that Mr. Fennell's actions in preserving assets and protecting the depositors of the Bank of Saipan were done in a professional and exemplary manner.

3. In releasing Mr. Fennell from this court's service, the court exonerates and confers full **judicial immunity** upon Mr. Fennell. "As court-appointed officers, receivers enjoy protections when following courts' orders ... 'Court appointed receivers act as arms of the court and are entitled to share the appointing judge's absolute immunity provided that the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." *INF Enter v. Donnellon,* 729 N.E.2d 1221, 1222 (Ohio Ct.App.1999) (quoting *Davis v. Bayless,* 70 F.3d 367, 373 (5th Cir.1995)); *see also Hervey v. Dyer,* 972 P.2d 42, 45 (Okla.Civ.App.1998) (stating that it is well recognized that a receiver appointed by and acting on behalf of the court shares the court's immunity from liability). It is further ordered that the Bank and the Receivership shall indemnify Mr.

Not Reported in F.Supp.2d                                                                                                    Page 3
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3
**(Cite as: Not Reported in F.Supp.2d)**

Fennell for any and all claims arising from Mr. Fennell's actions as Receiver.
4. Mr. Fennell is ordered to submit his billings and invoices for approval and payment.[FN8]

> FN8. *Order Granting the Receiver's Request for Exoneration* ("Exoneration Order"), issued September 27, 2002.

These are all of the findings of the trial court in the Exoneration Order.

The trial court later amended this order on December 31, 2002, with an *Order Granting Randall T. Fennell's Final Billings and Request for Clarification on Order of Exoneration* ("Clarification Order") stating that "[i]t is further ordered that the Bank and the Receivership shall defend and indemnify Mr. Fennell for any and all claims arising from Mr. Fennell's actions as Receiver." [FN9] No claims were filed against Fennell when these orders were entered. The Bank now appeals the Exoneration Order and Clarification Order while the Secretary of Commerce and Fennell argue that the orders should be upheld.

> FN9. *Order Granting Randall T. Fennell's Final Billings and Request for Clarification on Order of Exoneration,* issued December 31, 2002.

### III.

The Bank argues that immunity conferred upon receivers is qualified and not absolute. Further, the Bank maintains that receivers must act in good faith in order to be immune and this immunity is determined by the court in which the receiver is sued, not the receivership court. The Bank contends that the trial court's grant of immunity to Fennell was unprecedented as it was conferred prior to any live controversy before the court in which Fennell's actions were challenged. The Bank goes on to describe allegations of Fennell's misconduct as receiver. Finally, the Bank argues that its obligation to defend and indemnify Fennell against "any and all claims" is overbroad.

*3 Fennell and the Secretary of Commerce [FN10] counter by arguing that a receiver's discharge cuts the receiver off from future liability. They conclude that since the Bank had a chance to sue Fennell before his discharge and did not, the Bank has waived its right to complain about Fennell's conduct after the trial court has discharged and exonerated him. They also assert that the receivership may still be sued, albeit with a different receiver.[FN11] They challenge the Bank's allegations of misconduct by him as receiver. Lastly, Fennell and the Secretary of Commerce maintain that the Bank's duty to defend and indemnify Fennell is fair.

> FN10. Fennell and the Secretary of Commerce filed a joint opposition brief.

> FN11. "The official liability remains with the receivership, but it now lies with [the new receiver], who would be sued, officially, while the property remains in the custody of the trial court. See *McNulta v. Lochridge,* 141 U.S. 327, 332, 12 S.Ct. 11, 13, 35 L.Ed. 796 (1891)." *Joint Opposition Brief of Appellees Acting Secretary of Commerce Fermin M. Atalig and Randall T. Fennell* at 20.

It is widely supported that receivers are entitled to immunity. "[R]eceivers are court officers who share the immunity awarded to judges." [FN12] That immunity, however, is limited-even judges are not entitled to absolute immunity for their actions.[FN13] Furthermore, when judges are sued they can then move for dismissal based on immunity. Here, however, Fennell did not move for dismissal based on immunity because there was no suit filed against Fennell.

> FN12. *New Alaska Dev. Corp. v. Guetschow,* 869 F.2d 1298, 1303 (9th Cir.1989) (citing *Kermit Constr. Corp. v. Banco Credito Y Ahorro Poncerio,* 547 F.2d 1, 2 (1st Cir.1976)); see also *Property Mgmt. & Invs., Inc. v. Lewis,* 752 F.2d 599, 602 (11th Cir.1985); *T & W Inv. Co., Inc. v. Kurtz,* 588 F.2d 801, 802 (10th Cir.1978); *Bradford Audio Corp. v. Pious,* 392 F.2d 67 (2nd Cir.1968).

> FN13. "Judges are afforded absolute immunity when they (1) perform a normal judicial function; unless they are (2) acting in the clear absence of all jurisdiction." *Davis v. Bayless,* 70 F.3d 367, 373 (5th Cir.1995) (citing *Stump v. Sparkman,* 435 U.S. 349, 357-60, 98 S.Ct. 1099, 1105-06, 55 L.Ed.2d 331, 339 (1978)).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3
**(Cite as: Not Reported in F.Supp.2d)**

Page 4

Fennell and the Secretary of Commerce have cited no legal authority in which any court granted immunity prior to a suit filed against the receiver. Whether or not a receiver is entitled to immunity is "to be resolved at a plenary hearing with sworn witnesses and documentary proof, so that the question of law as to whether the Receiver breached any duty owing a fiduciary may be fairly resolved." [FN14] Perhaps Fennell is entitled to some sort of immunity should a subsequent suit be filed against him, but that is to be determined by analysis of the facts before the court hearing that suit.

FN14. *149 Clinton Ave. N., Inc. v. Grassi*, 382 N.Y.S.2d 185, 188 (N.Y.App.Div.1976).

The receivership may still be sued even though there is a new receiver, but only for suits against the receiver in his *official* capacity. Suits may still be forthcoming against Fennell in his *personal* capacity. "If the receiver exceeds the authority granted by the court or fails to use ordinary care, the general rule is that he or she may be sued in a *personal* capacity." [FN15] Immunity is conditioned on the requirements that "the challenged actions are taken in good faith and within the scope of the authority granted to the receiver." [FN16] Therefore, receivers may generally be entitled to qualified immunity but they may be held personally liable if they act in bad faith or outside the scope of authority granted by the court. [FN17]

FN15. *INF Ent., Inc. v. Donnellon*, 729 N.E.2d 1221, 1222 (Ohio Ct.App.1999) (emphasis added).

FN16. *Davis*, 70 F.3d at 373 (citations omitted).

FN17. *See* 16 Fletcher Cyclopedia of Private Corp. §§ 7864, *et seq.* (2004); 75 C.J.S. *Receivers* § 192 (2002); 65 Am.Jur.2d *Receivers* § 295 (2001).

It was impossible to determine if Fennell met these requirements, however, because there was no case or controversy against Fennell before the trial court. "The ripeness doctrine prevents courts from deciding theoretical or abstract questions that do not yet have a concrete impact on the parties." [FN18] With no live controversy before the trial court, the court could not determine whether "the challenged actions were taken in good faith."

FN18. *Assiniboine and Sioux Tribes of Fort Peck Indian Reservation v. Bd. of Oil and Gas Conservation of Montana*, 792 F.2d 782, 787-88 (9th Cir.1986) (citations omitted).

This pre-suit grant of immunity is without statutory or caselaw support in the Commonwealth or in any other jurisdiction. None of the receivership cases cited by Fennell and the Secretary of Commerce involved immunity conferred in advance. There is no precedent for a trial court ordering such a sweeping grant of immunity before any suit has been initiated before trial.

*4 In addition to the premature confirmation of immunity to Fennell, the obligation of the Bank to defend and indemnify Fennell for "any and all claims" is patently overbroad. It is appropriate for a court to order indemnification and the obligation to defend for "all cases arising out of acts done or omitted by receivers *honestly and in good faith* in the exercise of the authority derived from their appointment and in an honest endeavor to discharge their duties as officers of the courts." [FN19] Here, however, the Exoneration Order and Clarification Order made no mention of the requirement of honesty or good faith. Instead, these Orders simply provide that Fennell is indemnified for "any and all claims," without any prerequisite at all. Consequently, the grant of indemnity here by the trial court is likely too broad and over-reaching. Because the Court finds that the Exoneration and Clarification Orders were prematurely issued, however, the issue of whether the immunity granted was excessive is moot and need not be ruled on by the Court.

FN19. *Mo. & K.I. Ry. Co. v. Edson*, 224 F. 79, 83 (8th Cir.1915) (emphasis added).

IV.

This Court finds that the trial court's Exoneration Order and Clarification Order granting immunity and indemnification to Fennell are premature. As such, these rulings of the trial court are hereby REVERSED.

SO ORDERED.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Not Reported in F.Supp.2d                                                                                                          Page 5
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3
**(Cite as: Not Reported in F.Supp.2d)**

               ERRATA

BORJA, J.
On March 7, 2005, this Court issued its Opinion in the above captioned appeal. It incorrectly listed the citation as *Bank of Saipan, Inc. v. Atalig*, 2005 MP 2.

The correct citation is *Bank of Saipan, Inc. v. Atalig*, 2005 MP 3.

SO ORDERED this 10th day of March 2005.

N. Mariana Islands,2005.
Bank of Saipan, Inc. v. Atalig
Not Reported in F.Supp.2d, 2005 WL 3767671 (N. Mariana Islands), 2005 MP 3

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.