**CIVILLE & TANG**
2nd Floor, Cabrera Center
PMB 86, P.O. Box 10003
Saipan, MP 96950-8908
Telephone: (670) 235-1725
Facsimile: (670) 235-1726

Attorneys for Defendant Justice Alexandro C. Castro

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI), NICOLE C. FORELLI, former Acting Attorney General of the CNMI, in her personal/individual capacity; WILLIAM C. BUSH, former Assistant Attorney General of the CNMI, in his personal/individual capacity; D. DOUGLAS COTTON; former Assistant Attorney General of the CNMI, in his personal/individual capacity; L. DAVID SOSEBEE, former Assistant Attorney General of the CNMI, in his personal/individual capacity; ANDREW CLAYTON, former Assistant Attorney General of the CNMI, in his personal/individual capacity; Other UNKNOWN and UNNAMED person or persons in the CNMI, in their personal/individual capacity; ALEXANDRO C. CASTRO, former Justice ProTem of the CNMI SUPERIOR COURT, in his personal/individual capacity; PAMELA S. BROWN, former Attorney General of the CNMI; in her personal/individual capacity; ROBERT A. BISOM; and JAY H. SORENSEN.<br><br>Defendants. | CIVIL ACTION NO. 05-0027<br><br>DECLARATION OF G. PATRICK CIVILLE IN SUPPORT OF DEFENDANT CASTRO'S REPLY TO PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS<br><br>(Filed Electronically)<br><br>Date:   July 27, 2006<br>Time:   9:00 a.m.<br>Judge:  Honorable Alex R. Munson |

I, G. PATRICK CIVILLE, hereby declare:

1. I am an attorney admitted to practice before this Court, and am a member of the firm of Civille & Tang, the attorneys representing Defendant Justice Alexandro C. Castro in this action. I submit this declaration in support of Defendant's Reply to Plaintiff's Opposition to Motion to Dismiss. I have personal knowledge of the facts set forth herein, and if called upon to testify, I would and could competently testify thereto.

2. Attached hereto is a true and accurate copy of the following exhibit:

Exhibit A:   Fourth Amended Complaint, filed 11/18/98, *Bisom v. Commonwealth*, Civil Case No. 96-1320 (N.M.I. Super. Ct.)

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed this 6th day of July, 2006.

_____
G. PATRICK CIVILLE

-1-

# EXHIBIT A

JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. 234-1414
Fax. No. 234-1417

Attorney for Plaintiff

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM,<br><br>        Plaintiff,<br><br>    vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, LEO L. LAMOTTE, CNMI Public Auditor, in his official capacity, ROBERT D. BRADSHAW, formerly appointed Temporary Public Auditor, in his individual capacity; SCOTT KHENG SHANG TAN, formerly CNMI Public Auditor, in his individual capacity,<br><br>        Defendants. | CIVIL CASE NO. 96-1320<br><br>**FOURTH AMENDED COMPLAINT** |

Plaintiff alleges:

### JURISDICTION

1. This court has jurisdiction by virtue of the Commonwealth Judicial Reorganization Act of 1989 (1 CMC § 3001 et seq.) and 1 CMC § 3202 in particular.

1

## PARTIES

2. Plaintiff is a citizen of the United States and during the times relevant to this complaint was a resident of Japan and the CNMI.

3. Defendant ROBERT D. BRADSHAW is a citizen of the United States and was formerly a resident of the CNMI and now a resident of the state of Washington.

4. Defendant SCOTT KHENG SHANG TAN is a citizen of the United States and is a resident of the CNMI.

5. Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI) is a political and governmental entity in union with the United States of America.

## GENERAL ALLEGATIONS

6. During April, 1993 plaintiff was hired by defendant CNMI to serve as Legal Counsel in the office of the Public Auditor.

7. The employment of plaintiff was memorialized in that certain Exempted Service Employment Contract, together with Conditions of Employment, a true copy of which is attached to the Complaint originally filed by plaintiff as Exhibit A and incorporated herein by reference as if set forth in full.

8. At the time he was hired plaintiff was residing in Kyoto, Japan.

9. At the time plaintiff was hired the Public Auditor was defendant TAN.

10. On or about April 23, 1993 plaintiff began to work as legal counsel pursuant to his having been hired as hereinabove

2

alleged.

11. On or about November 25, 1993 the term of office of TAN expired and he ceased functioning as Public Auditor.

12. On or about November 25, 1993 defendant BRADSHAW was appointed as "Temporary Public Auditor".

13. The appointment of defendant BRADSHAW as Temporary Public Auditor was done by then Governor Lorenzo I. Deleon Guerrero, whose term of office was to expire on January 10, 1994, at which time he was to be succeeded by the successful candidate for Governor, Froilan Tenorio.

14. At the time that defendant BRADSHAW was designated Temporary Public Auditor, he was in the employ of the Department of Finance, in which employ he remained during the time he acted in the capacity of Temporary Public Auditor.

15. On or about December 28, 1993 defendant BRADSHAW caused plaintiff's employment to be terminated for cause, which termination was effected as of January 4, 1994, as documented by Exhibit B, C and D attached to the Complaint originally filed.

16. In doing the things alleged herein the individual defendants were acting in their official capacity as Public Auditor, Temporary Public Auditor, or Acting Pubic Auditor in the course and scope of their employment and as agents of defendant, CNMI, and/or in their individual capacities.

17. Plaintiff has, and continues to incur attorney's fees and costs as a result of the acts of defendants as alleged herein.

**FIRST CLAIM**--Intentionally Omitted

18 - 23.  Deleted.

**SECOND CLAIM**--Intentionally Omitted

24 - 25.  Deleted.

**THIRD CLAIM**--CNMI Constitutional Violations
Against Defendants Bradshaw,
Individually and Officially, and the CNMI

26. Plaintiff incorporates herein by reference paragraph 1-17 hereinabove alleged as if set forth here in full.

27. Defendants have violated plaintiff's rights as guaranteed by Article I, Section 2 of the Constitution of the Northern Mariana Islands in that plaintiff's employment was terminated due to the perception that plaintiff's political position was aligned with the previous Public Auditor and hostile to the outgoing administration, because of his questioning the legal authority of the person appointed as Temporary Public Auditor and because of his questioning the legality and propriety of the "single audit" being done as desired by the out-going administration, as hereinabove alleged.

28. Defendants have violated plaintiff's right to procedural due process guaranteed by Article I, Section 5 of the CNMI Constitution in that when defendant terminated the employment of plaintiff, defendant failed to give plaintiff proper notice and an opportunity to be heard to contest the adverse personnel action, despite the fact that plaintiff had a legally cognizable property right.

29. Defendants have violated plaintiff's right to equal protection of the laws guaranteed by Article I, Section 6 of the CNMI Constitution in that plaintiff's employment was terminated as an act of discrimination based on plaintiff's being of the Jewish race.

30. Defendants have violated plaintiff's rights as guaranteed by Article I, Section 5 of the CNMI Constitution in that: in the process of terminating plaintiff's employment, defendant Bradshaw made charges impairing plaintiff's reputation for honesty, integrity or morality; defendant Bradshaw publicly disclosed the charges of plaintiff's unethical and dishonest conduct; and the accuracy of the charges were disputed by plaintiff. Notwithstanding these facts plaintiff was not given a hearing or other opportunity to clear his name.

31. As a direct and proximate result of the action of defendants, as hereinabove alleged, plaintiff has been damaged in an amount according to proof, including, but not limited to the loss of: salary, housing benefits, annual leave benefits, medical benefits, use of government vehicle, retirement benefits, expatriation and repatriation benefits and allowances; and plaintiff has suffered general damages, including emotional distress and loss of earning capacity.

**FOURTH CLAIM**--Contract Against Defendant CNMI

32. Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

33. Plaintiff performed all of the duties and responsibilities and fulfilled the conditions of his employment contract.

34. Defendant CNMI breached the employment contract by terminating it for cause when, in fact, no real cause existed to terminate the employment contract.

### FIFTH CLAIM--Wrongful Discharge Against Defendant CNMI

35. Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

36. The contract between plaintiff and defendant included an implied covenant of good faith and fair dealing.

37. Defendant CNMI breached that covenant by terminating plaintiff's employment in that the reason for doing so was in retaliation for plaintiff's failure to support the Temporary Public Auditor despite plaintiff's good faith belief that the Temporary Public Auditor was illegally appointed and that the manner in which he intended to conduct the "single audit" was improper and politically motivated, and also due to the fact that plaintiff was of the Jewish race.

### SIXTH CLAIM--Intentional Causing Emotional Distress Against Defendant Bradshaw Individually

38. Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

39. During the month of December, 1995, defendant BRADSHAW instituted and maintained a course of conduct that included:

confiscating the keys to plaintiff's office; confiscating the keys to the government car assigned to plaintiff and which he was authorized to use; instructing plaintiff that he could neither make nor receive telephone calls without the prior consent of defendant; instructing plaintiff that he was not to leave the office without the prior consent of defendant; retracting previous permission to leave Saipan to go to Guam for medical purposes; refusal of annual leave previously granted; assigning plaintiff from his office to a work station in a hallway common area; threatening to have plaintiff evicted from his home; filing a formal complaint with the CNMI Bar Association charging plaintiff with ethics violations without legal or factual foundation for such charges.

40. The actions of defendants were extreme and outrageous and done intentionally or recklessly with the desire to inflict severe emotional distress or were certain or substantially certain that such distress would result from his conduct.

41. As a direct and proximate result therefrom, plaintiff did suffer severe emotional distress, including anguish, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry.

42. As a direct and proximate result therefrom, plaintiff suffered economic loss, including the cost of hiring attorneys to defend him with regard to said ethics violation complaint.

43. As to the course of conduct hereinabove alleged, defendant BRADSHAW, acted with malice and in the conscious

disregard of the rights of plaintiff.

### SEVENTH CLAIM--Indemnification Against Defendant CNMI

44. Plaintiff incorporates herein by reference paragraphs 1-17 as hereinabove alleged as if set forth here in full.

45. On or about December 10, 1993, defendant BRADSHAW, while purporting to act in his official capacity as Temporary Public Auditor, filed a complaint against plaintiff with the CNMI Bar Association accusing him of violations of legal ethnics.

46. Plaintiff made a request in writing to defendant CNMI to pay for his defense against such claims, which plaintiff reasonably and in good faith believed occurred within the scope of his employment as legal counsel of the Public Auditor.

47. Defendant did not respond to plaintiff's written request.

48. Defendant unreasonably withheld acceptance of the attorney selected by plaintiff.

49. On or about December 14, 1994, the plaintiff was notified by the Disciplinary Committee of the CNMI Bar Association that the complaint had been dismissed after a thorough investigation found that none of ethics violation charges had a legal or factual basis upon which to proceed.

50. Plaintiff has incurred legal expenses, including attorney's fees, in the successful defense of these allegations.

51. Plaintiff has made demand for reimbursement of these legal expenses, but defendant has failed and refused to reimburse

plaintiff for his expenses.

### EIGHTH CLAIM--Violations of Civil Service Act Against Defendant Bradshaw Individually (1 CMC Section 8101 et seq.)

52. Plaintiff incorporates herein by reference paragraph 1-17 and 31 hereinabove alleged as if set forth here in full.

53. Defendant Bradshaw took the actions as herein alleged and terminated plaintiff's employment because of the political and\or religious actions or beliefs of plaintiff or for the failure of the plaintiff to take political action for a political purpose in violation of 1 CMC section 8145(f).

54. The termination of plaintiff's contract by defendant Bradshaw was an act of discrimination against plaintiff on account of his race, in violation of 1 CMC § 8141.

55. Defendant Bradshaw's conduct as herein alleged constitutes political coercion in violation of 1 CMC section 8152(b).

56. As a direct and proximate result thereof plaintiff has suffered damages, both tangible and intangible, has incurred attorney's fees and court costs.

### NINTH CLAIM--Quantum Merit Against Defendant CNMI

57. Plaintiff incorporates herein by reference paragraphs 1-17 hereinabove alleged as if set forth here in full.

58. During early January, 1994 defendant BRADSHAW ceased acting as Temporary Public Auditor and was replaced by defendant

9

TAN.

59. On or about January 14, 1994 at the special request of defendant TAN, plaintiff was asked to work in the office of the Public Auditor on administrative tasks, pending his being rehired pursuant to a new contract as legal counsel, which defendant represented would occur shortly thereafter.

60. Plaintiff did return to the office of the Public Auditor and worked for three days.

61. Plaintiff has not been paid for the days he worked in January, 1994.

**TENTH CLAIM**--Promissory Estoppel Against
Defendants Tan, Officially
and Individually and the CNMI

62. Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

63. On or about November 25, 1993, after plaintiff had heard that Robert Bradshaw had been appointed to be Temporary Public Auditor, plaintiff contacted defendant TAN, who was away from Saipan, by telephone. During that telephone conversation TAN told plaintiff: that TAN was and would remain the Public Auditor until the end of his term at the end of December, 1993; that plaintiff should continue to follow the orders and directions of TAN insofar as the office and, in particular the conduct of the "single audit"; that he should meet with representatives of the Governor-Elect's Transition Committee concerning the conduct of the "single audit"; that TAN would protect and take corrective measures for anything that should

happen to plaintiff in doing what TAN asked of him.

64. On or about November 27, 1993 plaintiff met with representatives of the Governor-Elect's Transition Committee, who told plaintiff, among other things, that if he were fired for opposition to the manner of the conduct of the "single audit" that he would be rehired when the new administration took office.

65. On or about January 17, 1994, defendant TAN was appointed as Temporary Public Auditor, and assumed that position.

66. During the last half of January, 1994 defendant TAN continued to assure plaintiff that he would be hired again as the counsel for OPA. During this time TAN told plaintiff: that he should go to Japan to be eligible to be hired "off-island" so that he would enjoy benefits such as bringing his personal effects still in Japan to Saipan at government expense and that he would send plaintiff a written contract for employment as OPA counsel on terms and conditions similar to the previous employment contract, while plaintiff was in Japan.

67. On or about February 1, 1994 plaintiff left Saipan to go to Japan as TAN had directed him to do. During the month of February, 1994, plaintiff waited for the written contract to arrive. TAN continued to reassure plaintiff, until late February, while plaintiff was in Japan, that plaintiff would be re-hired imminently. Then, in late February and while plaintiff was waiting for the new contract, defendant indicated to plaintiff that defendant was unsure that defendant would re-hire plaintiff. Defendant told plaintiff that plaintiff would be

called and told within a few days. After several such conversations but still with no final resolution, in late February, discouraged and frustrated by the failure to complete re-hiring of him, plaintiff returned to Saipan to continue to pursue re-employment as OPA counsel.

68. Finally, on or about March 10, 1994, TAN communicated to plaintiff, by statements made to plaintiff's attorney, that TAN would not rehire plaintiff for the OPA counsel job. However, TAN also represented that he would see to it that plaintiff received "full compensation" for whatever he was due from loss of his job.

69. Plaintiff reasonably relied upon the representations of defendant TAN in that he went to Japan and returned, forwent other employment possibilities while staying in Japan and Saipan awaiting rehiring and then awaiting compensation, and retained an apartment in Japan due to the uncertainty of whether he would have employment in Saipan and would be allowed shipment of his personal effects, or full compensation therefor, all to plaintiff's detriment.

### ELEVENTH CLAIM--Fraudulent Misrepresentation Against Defendant Tan Individually

70. Plaintiff incorporates herein by reference paragraphs 1-17, 31, and 63 through 69 as hereinabove alleged as if set forth here in full.

71. In making the representations of his intention to re-hire plaintiff, as hereinabove alleged, defendant TAN

12

misrepresented his true intentions with the intent to deceive plaintiff in that he did not intend to re-hire him.

72. Plaintiff acted in justifiable reliance on the representations of defendant TAN to his detriment as hereinabove alleged.

73. Defendant TAN acted with malice and in the conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgement as follows:

1. For compensatory damages against defendant Robert D. Bradshaw according to proof;

2. For punitive damages against defendant Robert D. Bradshaw in an amount within the discretion of the trier of fact;

3. For compensatory damages against defendant Scott Kheng Shang Tan according to proof;

4. For punitive damages against defendant Scott Kheng Shang Tan in an amount within the discretion of the trier of fact;

5. For damages against defendant Commonwealth of the Northern Mariana Islands according to proof;

6. For reimbursement of plaintiff's attorney's fees and expenses in defense of the complaint filed with the Disciplinary Committee of the CNMI Bar Association;

7. For pre-judgment interest as allowed by law;

8. For reasonable attorneys fees incurred;

9. For costs of suit incurred;

10. For such other and further relief as the court may deem proper.

*[signature]*
JAY H. SORENSEN
Attorney for Plaintiff