**CIVILLE & TANG, PLLC**
2nd Floor, Cabrera Center
PMB 86, P.O. Box 10003
Saipan, MP   96950-8908
Telephone: (670) 235-1725
Facsimile: (670) 235-1726

Attorneys for Defendant Justice Alexandro C. Castro

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI), NICOLE C. FORELLI, former Acting Attorney General of the CNMI, in her personal/individual capacity; WILLIAM C. BUSH, former Assistant Attorney General of the CNMI, in his personal/individual capacity; D. DOUGLAS COTTON; former Assistant Attorney General of the CNMI, in his personal/individual capacity; L. DAVID SOSEBEE, former Assistant Attorney General of the CNMI, in his personal/individual capacity; ANDREW CLAYTON, former Assistant Attorney General of the CNMI, in his personal/individual capacity; Other UNKNOWN and UNNAMED person or persons in the CNMI, in their personal/individual capacity; ALEXANDRO C. CASTRO, former Justice ProTem of the CNMI SUPERIOR COURT, in his personal/individual capacity; PAMELA S. BROWN, former Attorney General of the CNMI; in her personal/individual capacity; ROBERT A. BISOM; and JAY H. SORENSEN.<br><br>Defendants. | CIVIL ACTION NO. 05-0027<br><br>**DEFENDANT JUSTICE ALEXANDRO C. CASTRO'S OPPOSITION TO PLAINTIFF'S PETITION FOR DECLARATORY JUDGMENT**<br>**[L.R. 7.1(c)(2)]**<br><br>Date:     July 27, 2006<br>Time:    9:00 a.m.<br>Judge:   Hon. Alex R. Munson |

Defendant, Justice Alexandro C. Castro, hereby opposes Plaintiff Robert Bradshaw's ("Bradshaw") Petition for Declaratory Judgment[1] ("Petition") in the above-entitled action because the Petition was filed in violation of the Federal Rules of Civil Procedure ("FRCP"), Bradshaw lacks standing to raise the issues in the Petition and the Court therefore lacks jurisdiction, and the Petition fails to state a claim upon which relief in the underlying case should be granted. For these reasons, the Petition should be denied, or, in the alternative, should be dismissed or stricken from the record. Assuming the Court treats the Petition as properly filed and as an amendment of the complaint, dismissal is warranted under FRCP 12(b)(1) and 12(b)(6). In short, the Petition is an improper attempt to amend the complaint, add new claims, and request new relief on questions in which Bradshaw has no cognizable interest and which are irrelevant to the claims raised in Bradshaw's Second Amended Complaint against Justice Castro.

## FACTUAL BACKGROUND

The facts underlying the genesis of this case are set forth in full in Justice Castro's June 19, 2006 Motion to Dismiss Bradshaw's Second Amended Complaint ("Motion to Dismiss"), as clarified in Justice Castro's July 7, 2006 Reply to Bradshaw's Opposition to the Motion to Dismiss. The essential facts are as follows: Bradshaw was sued by Robert Bisom ("Bisom") in the CNMI Superior Court, Case No. Civil No. 96-1320, stemming from Bisom's termination by Bradshaw as Temporary Public Auditor of the CNMI ("Bisom Lawsuit"). Bradshaw's Second Amended Complaint ("Amended Complaint") ¶ 27. Defendant Justice Castro presided over the Bisom matter as trial judge. A judgment was eventually entered against Bradshaw on March 10, 2000, in the amount of $139,000. *See Bisom v. Commonwealth*, Civil No. 96-1320 (N.M.I. Super. Ct. Mar. 10, 2000) (Attached to Defendant Castro's Motion to Dismiss as **"Exhibit A"**). The judgment was affirmed by the CNMI Supreme Court in an opinion issued on September 13, 2002. *See Bisom v. Commonwealth*, 2002 MP 19 (Sept. 13, 2002) (attached to Defendant Castro's Motion to Dismiss as **"Exhibit B"**). Bradshaw thereafter attempted to challenge the

---

[1] Although filed as a "Petition" and requesting collateral relief, Bradshaw filed, refers and treats the "Petition" as a "motion" which was filed under the same case number as the underlying suit.

-1-

Bisom judgment collaterally; *to wit*, on March 7, 2005, he filed a lawsuit in the U.S. District Court for the District of Idaho alleging various constitutional and statutory violations against individuals involved in the Bisom Lawsuit, including Defendant Justice Castro. *See See Bradshaw v. Commonwealth*, Case No. CV 05-84-N-EJL (D. Idaho. July 25, 2005) (attached to Defendant Castro's Motion to Dismiss as **"Exhibit D"**). The Idaho court granted a motion to dismiss Bradshaw's complaint due to a lack of personal jurisdiction. *See id*. Bradshaw then filed the instant lawsuit on the same, or substantially similar, grounds as alleged in the Idaho lawsuit.

While the instant lawsuit was pending, on December 29, 2005, the CNMI Superior Court vacated the Bisom judgment on Bradshaw's motion. *See Bisom v. Commonwealth*, Civil Action No. 96-1320, Order Granting Robert Bradshaw's Motion to Vacate Judgment, p. 16 (N.M.I. Super. Ct. Dec. 29, 2005) (attached to Defendant Castro's Motion to Dismiss as **"Exhibit C"**).

By order dated February 21, 2006, this Court granted a motion to dismiss for failure to make a short and plain statement of the claims under Rules 8(a) and 8(e) of the Federal Rules of Civil Procedure, but granted Bradshaw leave to file a Second Amended Complaint within twenty days. Bradshaw filed the Second Amended Complaint, alleging essentially the same facts and arguments as alleged in his First Amended Complaint (all of which are addressed in Defendant Castro's June 19, 2006 Motion to Dismiss). Defendant Sorensen again moved to dismiss under FRCP 8, and that motion was denied by this Court in an order filed on June 12, 2006.

Bradshaw's claims in his Second Amended Complaint against Justice Castro include claims under the U.S. civil rights laws (primarily 42 U.S.C. § 1983), RICO, breach of contract and tort. All claims against Justice Castro were based on Bradshaw's allegation that Justice Castro committed various procedural errors during the Bisom Lawsuit, which, Bradshaw claims, amount to a violation of Bradshaw's constitutional rights. Bradshaw also alleged, without substantiation in fact, that Justice Castro was part of a conspiracy to violate Bradshaw's rights in the Bisom Lawsuit. Justice Castro filed a motion to dismiss Bradshaw's Second Amended Complaint on June 19, 2006, which is presently pending before the Court.

Bradshaw filed an opposition to Justice Castro's motion, and concurrently therewith filed

the present "Petition for Declaratory Judgment." In his Petition, Bradshaw requests that the Court render a declaratory judgment as follows:

1. That the Court declare the land restriction laws in the NMI illegal by the US Constitution and law.
2. That the Court find that the NMI has a government policy of racial, ancestry and/or national origin discrimination against US citizens of non-NMI racial descent.
3. That the Court find that the CNMI practices racial, ancestry and/or national origin discrimination against US citizens of non-NMI racial descent.
4. That the Court find that it is unconstitutional to have two classes or kinds of US citizens in the Northern Mariana Islands.
5. That the Court find that the CNMI government policy of racial, ancestry and/or national origin discrimination against US citizens of non-NMI descent is illegal by the US Constitution and law.
6. That the Court find that PL 99-603 "generally" applies to the NMI.
7. That the Court find that Section 102 of PL 99-603 specifically applied in the NMI in 1990-1994.

Bradshaw's Petition was filed with the same index number as his original action, but he characterizes it as a "motion." Whether the present filing is deemed a "Petition" or a "Motion," it is an abuse of the litigation process, is patently defective, and should be denied, dismissed, or stricken from the record.

**MEMORANDUM OF POINTS AND AUTHORITIES**

At the outset, it must be emphasized that Bradshaw's Petition for Declaratory Judgment is nearly impossible to comprehend in the context of this case. Due to the bizarre nature of the Petition, it is extremely difficult to fashion an appropriate response. While the Court may treat the Bradshaw Petition as it deems fit, the instant responsive pleading is not intended to clarify or rationalize in any way an otherwise irrational filing, but rather, is an opposition as best we can articulate in light of Bradshaw's unorthodox filing. As such, and in construing Bradshaw's Petition in all possible lights, the instant response is an opposition to the Petition, and requests the alternative relief of dismissing or striking the Petition.

A.   **The Petition must be Dismissed Because it is Procedurally Defective.**

A request for a declaratory judgment must be brought in accordance with the proper procedural rules whether such relief is requested in the first instance or after the filing of a

complaint. Bradshaw has not complied with the appropriate procedures for requesting the declaratory judgment sought in the instant Petition, and the Petition should therefore be denied, or, in the alternative, stricken or dismissed.

**1. Bradshaw failed to Comply with FRCP 7 Regarding Filing a Pleading.**

A declaratory judgment petition must be filed by pleading. Title 28 U.S.C. § 2201 provides: "In a case of actual controversy within its jurisdiction . . . any court of the United States, upon the filing of an appropriate *pleading,* may declare the rights and other legal relations of any interested party seeking such declaration . . . ." Title 28 U.S.C. § 2201 (emphasis added). FRCP 57 states that "the procedure for obtaining a declaratory judgment pursuant to Title 28, U.S.C., § 2201, shall be in accordance with these rules . . . ." Fed. R. Civ. Pro. 57. Because 28 U.S.C. § 2201 and FRCP, read together, require declaratory relief to be brought in the form of a pleading governed by the Federal Rules, any attempt to file a "Petition" for declaratory judgment must be made in accordance with FRCP 7(a) which governs the form of pleadings in the federal courts.[2] Bradshaw appears to have filed a new suit under an old number and then, by couching the new suit as a "motion," has requested what essentially amounts to summary judgment on the new issues raised in the motion. Because Bradshaw's lawsuit is currently pending, any attempt to file a new suit within that lawsuit violates the pleading requirements of FRCP 7(a).

**2. Bradshaw failed to Comply with FRCP 15's Requirements for Amending a Complaint.**

The Federal Rules of Civil Procedure allow a party to amend its pleading once as a

---

[2] FRCP 7(a) specifically governs pleadings, and provides:

> There shall be a complaint and an answer; a reply to a counterclaim denominated as such; an answer to a cross-claim, if the answer contains a cross-claim; a third-party complaint, if a person who was not an original party is summoned under the provisions of Rule 14; and a third-party answer, if a third-party complaint is served. No other pleading shall be allowed, except that the court may order a reply to an answer or a third-party answer.

Fed. R. Civ. Pro. 7(a)

-4-

matter of course. "Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." FRCP 15(a). Bradshaw has already been given the opportunity to file a cogent or at least comprehensible Amended Complaint. *Pro se* litigants such as Bradshaw are held to the same standards of federal civil procedure as any other litigant. *King v. Atiyeh*, 814 F.2d 565, 567 (9th Cir. 1987). Bradshaw has not sought to amend his complaint, and the new request for declaratory judgment cannot be interjected into the present lawsuit in the absence of proper amendment. FRCP 15(a); *see also Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 - 1315 (11th Cir. 2004) (stating that new claims must be asserted in a Rule 15(a) motion).³

### 3. Bradshaw Failed to Raise his Summary Judgment Issues by Proper Pleading.

Bradshaw also states that his Petition is filed pursuant to FRCP 56. Assuming the Petition could be construed as an attempt to gain declaratory relief through a motion for summary judgment under Rule 56, such motion should be denied because, as indicated previously, Bradshaw had not properly raised the issues in which he seeks a declaration through appropriate pleading in his Complaint.⁴ The liberal pleading requirements under the Federal Rules "[do] not afford plaintiffs with an opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald and Co.*, 382 F.3d 1312, 1314 -1315 (11th Cir.

---

³ The Petition is an inadequate substitute for actual evidence of discrimination and a failed attempt to support the insufficient claims alleged in Bradshaw's Amended Complaint. Reading through the motion for Declaratory Judgment, it appears that Bradshaw is attempting to supplement or, more precisely, amend his Second Amended Complaint insofar as the Civil Rights Act of 1870, codified today as 42 U.S.C. §§ 1981 and 1982, prohibits racial discrimination in the context of the making of contracts and transactions related to real and personal property. *See Brown v. Philip Morris*, 250 F.3d 789, 796-97 (3d Cir. 2001). Without fully repeating our Motion to Dismiss, which has full argument as to the lack of merit of Bradshaw's claim that he was the victim of racial discrimination as a non-NMI U.S. citizen, it is clear that this Petition for a Declaratory Judgment is, in a light as favorable as possible, an improper attempt to amend his Second Amended Complaint. This attempt is fruitless in any event because the issues raised in Bradshaw's Petition are not actionable themselves and fail to support his claims for relief.

⁴ Furthermore, summary judgment would be inappropriate as Bradshaw has not included any supporting facts nor has he provided any reasoning which might show why existing case law regarding the NMI Constitution should be overturned.

2004). "At the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." *Id.* ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment.").

If the Court views Bradshaw's request for declaratory relief as a motion for summary judgment, notwithstanding that the Federal Rules require that claims for declaratory relief be raised by appropriate pleading, Defendant moves that the Court deny his motion. As explained below, the issues raised for determination in the Petition are not relevant to resolving any claim in the Complaint, and are therefore inappropriate for disposition by way of any motion, whether under FRCP 56(c) or otherwise. The Court lacks jurisdiction to decide the issues.

Overall, Bradshaw's present filing, i.e., "the Petition," is couched as a motion filed in an on-going case, and is therefore improper. It is not a new pleading filed in compliance with FRCP 7, and is an improper attempt to add a new claim to his Complaint in contravention of the rules governing amendment to the Complaint under FRCP 15(a). Additionally, in light of the procedural deficiencies, Bradshaw's attempt to seek declaratory relief by way of a summary judgment motion must be denied for failure to properly bring the issues before the Court, and for failure to present dispositive issues over which the court has jurisdiction.

**B.     The Petition must be Dismissed for Lack of Standing, Lack of Jurisdiction, and Failure to State a Claim Upon Which Relief Can be Granted.**

Assuming the Court treats Bradshaw's Petition as properly filed under the relevant Rules of Civil Procedure, the Petition nonetheless should be denied or, alternatively, dismissed under FRCP 12(b)(1) and 12(b)(6), for lack of standing and lack of jurisdiction, and for failure to state a claim upon which relief can be granted.

**1. Bradshaw Lacks Standing to Bring a Petition for Declaratory Relief.**

Each of Bradshaw's requests for relief involve declarations of law that he has absolutely no stake in; he therefore lacks standing to bring the Petition.

The "case or controversy" requirement embodied in Article III of the U.S. Constitution establishes limits on the judiciary, underscoring the separation of governmental powers. *See Allen v. Wright*, 468 U.S. 737, 750 (1984). The Article III requirement encompasses the

doctrine of standing, and standing has been characterized as "perhaps the most important" of the case or controversy doctrines. *Allen*, 468 U.S. at 750.

"As the United States Supreme Court has stated, '[i]n essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'" *Coalition of Clergy, Lawyers, and Professors v. Bush*, 310 F.3d 1153, 1157 (9th Cir. 2002) (quoting *Warth v. Seldin,* 422 U.S. 490, 498, 95 S. Ct. 2197, 45 L.Ed.2d 343 (1975)). Standing requires three minimum elements: "First, the plaintiff must have suffered an 'injury in fact'-an invasion of a legally protected interest which is (a) concrete and particularized, . . . and (b) 'actual or imminent, not 'conjectural' or 'hypothetical,' . . . ." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (citations omitted). "By particularized, [the Supreme Court] mean[s] that the injury must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1. "Second, there must be a causal connection between the injury and the conduct complained of-the injury has to be 'fairly ⋯ trace[able] to the challenged action of the defendant, and not ⋯ th[e] result [of] the independent action of some third party not before the court.' . . . Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61 (citations omitted).

In order for a party to have standing to bring a petition for a Declaratory Judgment, there must be an actual controversy. *Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 273 (1941). A necessary part of an existing controversy, for purposes of declaratory relief, is that the party be in a position to resume the activity he or she claims was prevented as a result of the unconstitutional actions alleged. *See RK Ventures, Inc. v. City of Seattle,* 307 F.3d 1045, 1056-57 (9th Cir. 2002). In other words, the plaintiff must have an injury that can be "redressed by the declaratory relief requested." *Cornett v. Donovan,* 51 F.3d 894, 897 (9th Cir.1995). For example, the parties lacked standing to pursue declaratory relief in *RK Ventures v. City of Seattle* because their nightclub was no longer in business and no longer subject to a nuisance abatement ordinance which was the subject of the lawsuit. *Id.* The *RK Ventures* Court also cited *Blair v. Shanahan,* 38 F.3d 1514, 1519 (9th Cir.1994), which held that a plaintiff who was unlikely to panhandle again lacked standing to request declaratory relief against an anti-panhandling statute.

*See Shanahan*, 38 F.3d at 1519. Similarly, the *RK Ventures* Court cited *Cornett v. Donovan*, which held that a former mental patient who was no longer institutionalized at state facility lacked standing to pursue declaratory relief in suit asserting the facility denied patients right of access to courts. *Cornett*, 51 F.3d at 897.

Bradshaw lacks standing here to seek a declaration on the validity of the laws of the CNMI pertaining to land ownership, or the applicability of the immigration laws to the NMI. In his Petition, Bradshaw alleges he lives in Idaho and has not alleged that he is attempting to purchase land in the CNMI, or that he ever plans to return to the CNMI. Also, it is highly unlikely that Bradshaw would ever come back to the NMI to reside or work after: (1) setting up a residence in Idaho; and (2) accusing "some" courts, the people and the government of the CNMI of wholesale and wide ranging race-based discrimination. Bradshaw, in fact, has not made any assertion that he intends to move to the NMI or resume working in the NMI. Therefore, Bradshaw lacks standing to bring the present Petition.

Furthermore, the Supreme Court "has repeatedly held that an asserted right to have the Government act in accordance with law is not sufficient, standing alone, to confer jurisdiction on a federal court." *Allen v. Wright*, 468 U.S. 737, 754 (1984). "[A]ssertion of a right to a particular kind of Government conduct, which the Government has violated by acting differently, cannot alone satisfy the requirements of Art. III without draining those requirements of meaning. [Parties] . . . have no standing to complain simply that their Government is violating the law." *Id.* at 754-55 (citations omitted). With regard to the issues raised in Bradshaw's Petition, Supreme Court precedent makes clear that a challenge to a statute or law "based on the stigmatizing injury often caused by racial discrimination" accords a basis for standing "only to 'those persons who are personally denied equal treatment' by the challenged discriminatory conduct." *Id.* at 755. Bradshaw has made no allegation that he is personally harmed or injured by the alleged acts or laws he seeks to invalidate. As explained further below, Bradshaw also makes no allegation that the declaration of the existence of any alleged systemic discrimination in the CNMI, rising, as Bradshaw claims, to the level of official government policy, was the cause of any alleged injury in the Bisom Lawsuit. *See id.* (holding that "[t]he links in the chain

of causation between the challenged Government conduct and the asserted injury are far too weak for the chain as a whole to sustain respondents' standing"). He therefore lacks standing to challenge the laws put in issue in his Petition, or to have a judgment declared on the questions relating to general discriminatory practices in the NMI.

### 2. Declaratory Relief Should be Denied Because Bradshaw has Already Commenced Suit and is Merely Attempting to Use the Petition to Gain a Litigation Advantage in a Manner that does not Support his Claims for Relief in the Amended Complaint.

The purpose of a petition for Declaratory Judgment is to allow a party who is uncertain of its rights to obtain an early adjudication without having to wait for its adversary to file suit. *See Shell Oil Co. v. Rusetta*, 290 F.2d 689, 691-692 (9th Cir. 1961). Bradshaw has not alleged that he is uncertain of his rights, or that his Petition preempts a lawsuit that could be filed against him. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995). It is apparent that Bradshaw attempts to use Declaratory Judgment as a litigation tool to force this Court to circumvent a determination of the relevant and dispositive issues in an ongoing case. This is an impermissible tactic which should be immediately foreclosed.

Additionally, Declaratory Judgment relief is only available when there is a "substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality . . . ." *Maryland Cas. Co.*, 312 U.S. at 273. In other words, there must be an actual case or controversy, *id.*, and the court is prohibited from issuing an advisory opinion. *Travelers Ins. Co. v. Obusek*, 72 F.3d 1148, 1153 (3rd Cir. 1995). Moreover, the party invoking federal jurisdiction has the burden of proving standing. *Lujan*, 504 U.S. at 561. The subject matter of the declaratory judgment "must not be nebulous or contingent but must have taken on fixed and final shape so that a court can see what legal issues it is deciding, what effect its decision will have on the adversaries, and some useful purpose to be achieved in deciding them." *Public Service Comm. of Utah v. Wycoff Co., Inc.* 344 U.S. 237, 244 (U.S. 1952). Where the relief sought "would not resolve the entire case or controversy as to any [party] ..., but would merely determine a collateral legal issue governing certain aspects of ... pending or future suits," *Calderon v. Ashmus* 523 U.S. 740, 747 (1998), a declaratory judgment action falls outside the

constitutional definition of a "case." *Id.* at 746.

The Petition represents a misplaced attempt to prove the collateral issue of discrimination. As explained in his Reply to Justice Castro's Motion to Dismiss, the Petition "addresses the whole discrimination theme." *See* Bradshaw's Opposition to Motion to Dismiss, ¶ 67. This attempt, however, fails because a finding of institutional racism does not, in and of itself, aid in proving his claims in the underlying lawsuit.

For example, in Claim 6 of the Amended Complaint, Bradshaw alleges there is open discrimination against outsiders in the CNMI which is promoted by the CNMI Constitution. Amended Complaint at ¶ 306. As it pertains to Claim 6, Bradshaw attempts to use the Petition as a substitute for actual evidence. Even if this Court were to grant Bradshaw's Petition, it would fail to prove his claim. Assuming, *arguendo*, that there is open discrimination against "outsiders" in the CNMI, this does not explain why Bisom, a member of the same "outsider" class was treated "preferentially." Bisom received a default judgment in the underlying suit, but he is a non-NMI U.S. citizen, exactly what Bradshaw claims to be. Getting the court to declare that the CNMI government is generally racist does nothing to advance Bradshaw's claims.

In Claim 10, Bradshaw alleges discrimination caused him to lose his right to indemnification under his employment contract. The vehicle for expressing this claim, however, frivolous or misplaced, is the Immigration and Control Act. Simply stated, this is a contract dispute. Bradshaw believes that local government employees receive indemnification for lawsuits against them as part of their employment contracts but that he was denied same because of his national origin. The pleadings on file show that Bradshaw, however, specifically declined representation on at least one occasion when it was offered. This is a contractual employment issue and has nothing to do with general discrimination. The ultimate decision to decline his eventual request is a fact issue.

Regarding his claims for violations of the Civil Rights Acts of 1870 and 1871, Claims 11 and 12, Bradshaw continues to attempt to prove specific narrow violations of his rights with a general decree from this Court that discrimination exists in the CNMI. As with all his claims as they relate to discrimination, a blanket decree from this Court gets Bradshaw no closer to his

1  goal. Nowhere in the Complaint or Petition does Bradshaw state sufficient facts to support a
2  claim that race served as the basis of any discrimination in this case, i.e. that a similarly situated
3  person of another race was treated better than he was treated or that discrimination occurred
4  solely because of his race. *See McDonald v. Santa Fe Trail Transport. Co*, 427 U.S. 273, 296
5  (1976) (§1981). Rather, Bradshaw would like this Court to ratify, through a completely specious
6  procedure, his view that the CNMI is a den of racists and it is therefore only natural that
7  everyone conspired against him, including members of his own race.[5]

8  Furthermore, Justice Castro, while he is of NMI descent, is not subject to damages based
9  on alleged involvement in institutional discrimination because: (1) he is a Justice who has
10 complete judicial immunity with regard to judicial actions taken within his jurisdiction (as fully
11 argued in the Motion to Dismiss Bradshaw's Amended Complaint); and (2) as a Justice, his job
12 is to interpret the law and not to act as lawmaker in the context of the governmental bureaucratic
13 framework.

14 Bradshaw's claim that the Northern Mariana Islands have a governmental policy of racial
15 discrimination against US citizens is a red herring which inappropriately muddles the issues in
16 this case. The fact that persons of NMI descent own land in the NMI in fee simple while persons
17 of non-NMI descent may not own land in fee simple has absolutely no relevance to this lawsuit.
18 Bradshaw submits no real evidence, by way of scientific study or otherwise, to in any way
19 support his claim that there is widespread discrimination against non-NMI U.S. citizens in the
20 NMI. Bradshaw further fails to establish in his Amended Complaint or in the Petition that he
21 was personally discriminated against. Specifically, the questions presented for review in
22 Bradshaw's present Petition relating to the validity of NMI land laws, the history of NMI
23 treatment of descent in the real property context, and the applicability of U.S. immigration laws
24 within the NMI do not support Bradshaw's allegations that he was discriminated against in the

---

[5] Even if all of the declaratory relief were granted, Bradshaw's case is essentially about an injury Bradshaw allegedly sustained in the form of a judgment for $139,000.00 entered against him. At this point, the Superior Court has invalidated that judgment. Bradshaw has received due process of law with regarding to the judgment entered against him from the standpoint of the judicial process.

1 context of the Bisom Lawsuit. Bradshaw has failed to provide any cognizable link between the
2 two outside of pure speculation. Proving the issues in the Petition to support Bradshaw's
3 Supplemental Complaint is truly a non-sequitur, rendering determination of the Petition
4 improper in this case. The Petition should therefore be denied, or, alternatively, dismissed under
5 FRCP 12(b)(1) and 12(b)(6), for lack of jurisdiction based on the lack of a case or controversy
6 on the issues Bradshaw raises, and for failure to state a claim upon which relief can be granted.

7 At this point, Bradshaw's additional filings have crossed the line of prejudice, insofar as
8 Justice Castro, a Justice with full judicial immunity, continues to be inundated with filings and
9 forced to incur further expense to defend against Plaintiff Bradshaw's continual and baseless
10 filings. *Cf. Marx v. Gumbinner*, 855 F.2d 783, 788 (11th Cir. 1988), abrogated on other grounds
11 by *Burns v. Reed*, 500 U.S. 478 (1991) (citing *Mitchell,* 472 U.S. at 526, for the proposition that
12 the essence of absolute immunity is the "entitlement not to have to ⋯ stand trial or face the other
13 burdens of litigation").[6] Courts have stated that those entitled to absolute immunity should not
14 only be free from the burden of trial, but should also be free of other aspects of the litigation,
15 including, for instance, pre-trial discovery. *See id*. The same logic applies to the burdens in this
16 case associated with responding to frivolous motions and petitions. The function of absolute
17 judicial immunity is completely undermined in the present case by requiring Justice Castro to
18 respond to frivolous and unnecessary filings.

19 With the CNMI court's budget slashed, and able to support only a shoestring staff, it is
20 imperative that the CNMI Judiciary not continue to bear the financial burden of baseless *pro se*

---

[6] In *Marx v. Gumbinner*, 855 F.2d 783, 788 (11th Cir. 1988), the Eleventh Circuit discussed the policy underlying absolute immunity for government officials, explaining:

> Absolute immunity is an entitlement to be free from suit for money damages. To repeat, the purpose of the immunity is to shield officials from the distractions of litigation arising from the performance of their official functions. To fulfill its purpose, official immunity protects government officials not only from having to stand trial, but also from having to bear *the other burdens attendant to litigation,* including pretrial discovery.

*Id.*

filings. Accordingly, because the Petition for Declaratory Judgment is baseless and improper and because the lawsuit is without merit, the Petition for Declaratory Judgment and the lawsuit against Justice Castro in its entirety should be dismissed.

C. **Attorney's Fees.**

A court has discretion to award attorney's fees to a prevailing defendant in civil rights lawsuits pursuant to 42 USC § 1988. *See Miller v. Los Angeles County Board of Education*, 827 F.2d 617, 619 (9th Cir. 1987). Title 42 USC § 1988(b) allows for the recovery of attorneys fees by the prevailing party "in any action or proceeding to enforce a provision of sections 1981, 1981a, 1982, 1983, 1985, and 1986 of this title . . . the Religious Land Use and Institutionalized Persons Act of 2000 [42 U.S.C.A. § 2000cc et seq.], [or] title VI of the Civil Rights Act of 1964 [42 U.S.C.A. § 2000d et seq.]." Attorney's fees may be awarded if the plaintiff's action is "frivolous, unreasonable, or without foundation." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Here, Bradshaw filed a frivolous, unreasonable Petition for declaratory judgment in the context of supporting his civil rights claims against Justice Castro. Bradshaw is essentially attempting to use an otherwise valid remedy for a party with standing to assert rights in an actual controversy for improper purposes amounting to dilatory and prejudicial litigation tactics. Accordingly, Justice Castro intends to seek attorney's fees pursuant to 42 USC § 1988.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should deny Bradshaw's Petition in whole as it applies to Justice Castro, or, in the alternative, dismiss the Petition or strike it from the record in this matter.

Respectfully submitted,

**CIVILLE & TANG**

DATED: July 13, 2006

By: _____
G. PATRICK CIVILLE
Attorneys for Defendant
Justice Alexandro C. Castro

-13-