**KRISTIN D. ST. PETER T-0039**
**Assistant Attorney General**
**Commonwealth of the Northern Mariana Islands**
**Office of the Attorney General-Civil Division**
**2nd Floor, Hon. Juan A. Sablan Memorial Bldg.**
**Caller Box 10007**
**Saipan, MP 96950**

**Attorney for: Defendant Clayton**

F I L E D
Clerk
District Court

JUL 2 5 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, NICOLE C. FORELLI, WILLIAM C. BUSH, D. DOUGLAS COTTON, L. DAVID SOSEBEE, ANDREW CLAYTON, UNKNOWN AND UNNAMED PERSONS IN THE CNMI OFFICE OF THE ATTORNEY GENERAL, ALEXANDRO C. CASTRO, JOHN A. MANGLONA, TIMOTHY H. BELLAS, PAMELA BROWN, ROBERT BISOM, AND JAY H. SORENSEN,<br><br>Defendants. | Case No. 05-0027<br><br>**DEFENDANT CLAYTON'S MOTION TO DISMISS SECOND AMENDED COMPLAINT AND INCORPORATED MEMORANDUM OF POINTS AND AUTHORITIES**<br>**[CIV. R. FED. P. 12 (b) (6)]**<br><br>HEARING:  AUG 1 0 2006<br>TIME:  9:00 a.m.<br><br>JUDGE:   HON. ALEX R. MUNSON |

**MOTION**

Now Comes, the Commonwealth of the Northern Mariana Islands Attorney General's Office on behalf of Andrew Clayton and moves to dismiss Plaintiff Robert D. Bradshaw's Complaint in the above entitled action on the grounds that Plaintiff has failed to state a claim upon which relief can be granted. Defendant Clayton submits this motion pursuant to Federal Rule of Civil Procedure 12 (b) (6).

**PARTIES**

Plaintiff Robert Bradshaw is an individual and former Temporary Public Auditor of the CNMI government currently residing in the State of Idaho (hereafter "Plaintiff" or "Plaintiff Bradshaw").

Defendant CNMI is the governmental entity for the Northern Mariana Islands in political union with the United States of America.

Defendant Andrew Clayton is an individual currently residing in Shanghai, China. Mr. Clayton was an employee of the CNMI government serving as an Assistant Attorney General from 1999 until 2003. Mr. Clayton was served via publication in Saipan Tribune by order of this Court, and said service was perfected on July 20, 2006.

**FACTS**

This lawsuit arises as a result of the following facts. In mid-1993 Robert Bisom was hired as legal counsel for the CNMI office of Public Auditor. In November 1993, Plaintiff Bradshaw was appointed as Temporary Public Auditor. On or around December of 1993, Plaintiff Bradshaw caused Mr. Bisom's employment to be terminated. In 1996, Mr. Bisom filed suit against, among others, the CNMI government and Plaintiff Bradshaw as an individual. On December 6, 1996, Mr. Cotton, in his capacity as an Assistant Attorney General for the CNMI, sent Plaintiff Bradshaw a letter advising that Mr. Bisom had filed suit against Plaintiff Bradshaw and telling him to expect service of a summons and complaint. AGO letter to Bradshaw dated December 6, 1996 attached to Second Amended Complaint. In a handwritten letter to Mr. Cotton dated January 31, 1997, Plaintiff Bradshaw advises "I will not authorize the CNMI to accept service for me at this time." Bradshaw letter to Cotton dated January 31, 1997 attached to Second Amended Complaint. Furthermore, in a letter dated July 14, 1999 from Plaintiff Bradshaw to Mr. Bush, in his capacity as an Assistant Attorney General, Plaintiff

states:

> "Some two certified mail packets from an unidentified party came to me from Saipan in 1996 and 1997. I refused to accept either of them and they were returned by the Post Office undelivered. Possibly these mailings were an attempt to accomplish service although I cannot be sure what were in the packets and the sender's name was not identified (beyond a return address post office box). Again, if Bisom wants an answer from me he will have to hire a process server. As I said to Doug Cotton, if am served I will contact the AG to make the answer. Otherwise, I have not authorized the AG to make any answer for me on anything in the CNMI case. And I have never been served." Plaintiff Bradshaw's letter to Mr. Bush dated July 14, 1999 ¶ 3 attached to Amended Complaint.

Plaintiff Bradshaw goes on to say,

> "as for as the CNMI SC, **your office has never and should never have represented me** on this at all that I am aware of. As I was never served, **I never asked for any assistance and the CNMI SC never should have been told that the AG represents me**." Bradshaw letter to Mr. Bush dated July 14, 1999 ¶ 9 attached to Amended Complaint.

At Plaintiff Bradshaw's direction and because he never requested PELDIA protection pursuant to 7 C.M.C. §2304 (2000) *et seq.*, the CNMI government was not under any obligation to indemnify or defend Plaintiff.

On February 25, 2000, a jury awarded Bisom a one hundred ten thousand three hundred dollar ($110,300) judgment against the CNMI government and a default judgment totaling one hundred thirty-nine thousand dollars ($139,000) for compensatory and punitive damages against Plaintiff Bradshaw, in his individual capacity. *Bisom v. Commonwealth,* Civil No. 96-1320 (N.M.I. Super. Ct. 2000). Mr. Bisom then appealed to the CNMI Supreme Court requesting that the CNMI government indemnify Plaintiff Bradshaw and pay Bradshaw's share of the judgment. *Bisom v. Commonwealth*, 2002 MP 19 (N.M.I Sup. Ct. 2002). The CNMI Supreme Court ruled against Bisom holding that because Plaintiff Bradshaw never requested a defense or indemnification through PELDIA, the CNMI

1  government was under no obligation to defend or indemnify Plaintiff Bradshaw. *Bisom v.*

2  *Commonwealth*, 2002 MP 19 at ¶ 54-57.

3        On or about April 2004, Plaintiff Bradshaw claims he was notified of the judgment against

4  him. Plaintiff then contacted the CNMI Attorney General's Office. The Attorney General's Office

5  responded by sending Plaintiff Bradshaw copies of the various opinions rendered in the *Bisom* case.

6  April 4, 2004 letter from AGO attached to Second Amended Complaint. On or before October 7,

7  2004, the Attorney General's Investigative Unit advised Plaintiff that his allegations of wrong doing in

8  connection with the *Bisom* case were being investigated. October 7, 2004 letter from AGIU attached

9  to Second Amended Complaint. Ms. Brown, in her capacity as Attorney General, then responded to

10  Plaintiff's untimely requests for indemnification in the *Bisom* case by advising Plaintiff that she was

11  bound by the CNMI Supreme Court's holding in *Bisom v. Commonwealth*, 2002 MP 19. Based upon

12  this holding, the CNMI government is not liable for the judgment entered against Plaintiff

13  individually. February 15, 2005 letter from Brown attached to Second Amended Complaint.

14        In September 2005, Plaintiff moved in CNMI Superior Court to set aside the judgment entered

15  against him. *See Bisom v. Commonwealth,* Civ. No. 96-1320. On December 29, 2005, Judge Lizama

16  of the Commonwealth Superior Court vacated the default judgment against him, which served as basis

17  of most, if not all, of Plaintiff's allegations against the Defendants in this case.

18        Judge Lizama's opinion goes on to say that Plaintiff Bradshaw and the Commonwealth

19  Attorney General's Office never "consummated" an attorney-client relationship.

**PROCEDURAL BACKGROUND**

20

21        Plaintiff initially filed an action very similar to this action in the U.S. District Court for the

22  District of Idaho on March 7, 2005. Plaintiff then filed a Second Amended Complaint with the U.S.

3

District Court of Idaho on May 18, 2005, which asserted at least seventeen claims under an exhaustive list of federal civil and criminal statutes, including, among others, the Racketeer Influenced and Corrupt Organizations Act ("RICO"), the Immigration Reform and Control Act ("IRCA") and numerous Federal Civil Rights causes of action.[1]  The action was filed against two Justices of the CNMI Supreme Court, one former Superior Court Judge, and four Assistant Attorneys General because of their participation in the civil matter previously litigated before the CNMI Superior Court. Shortly thereafter, Defendants moved to dismiss Plaintiff's complaint on several grounds, including the lack of personal jurisdiction.  On July 25, 2005, the U.S. District Court of Idaho granted Defendants' motion to dismiss.[2]

On around September Plaintiff filed this lawsuit on the same, or substantially similar, grounds as the matter dismissed by the U.S. District Court of Idaho.  On February 21, 2006, this Court dismissed Plaintiff's Amended Complaint, but granted Plaintiff leave to file a Second Amended Complaint.  Plaintiff's Second Amended Complaint was filed with this Court on March 30, 2006.  By order of this Court, Defendant Clayton was served via publication in the Saipan Tribune, and said service was completed on July 20, 2006.

## STANDARD OF REVIEW

*Pro se* litigants are held to the same procedural rules as counseled litigants. *King v. Atiyeh,* 814 F.2d 565, 567 (9th Cir. 1987).  Dismissal under Federal Rule 12(b)(6) is appropriate when "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957); *Navarro v. Block,* 250 F.3d 729, 732 (9th

---

[1] *See Bradshaw v. Commonwealth of the Northern Mariana Islands, et al.,* Case No. CV 05-84-N-EJL (D. Idaho. 2005).

1   Cir.2001). Dismissal is warranted where the complaint lacks a cognizable legal theory or where the

2   complaint presents a cognizable legal theory yet fails to plead essential facts under that theory.

3   *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 534 (9th Cir.1984).

4      In reviewing a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, the court must

5   assume the truth of all factual allegations and must construe them in the light most favorable to the

6   non-moving party. *Cahill v. Liberty Mut. Ins. Co.,* 80 F.3d 336, 337-338 (9th Cir.1996). However,

7   legal conclusions need not be taken as true merely because they are cast in the form of factual

8   allegations. *Roberts v. Corrothers,* 812 F.2d 1173, 1177 (9th Cir.1987). When ruling on a motion to

9   dismiss, the court may consider the facts alleged in the complaint, documents attached to the complaint

10  and matters of which the court takes judicial notice. *Venetian Casino Resort L.L.C. v. Cortez,* 96

11  F.Supp.2d 1102, 1106 (D.Nev.2000).

12                                    **ARGUMENT**

13     Because of the voluminous nature of Plaintiff Bradshaw's complaint and the numerous parties

14  named, one almost needs a scorecard to keep track of the causes of action and against whom they are

15  alleged.  Defendants will attempt to keep their analysis of the various counts as simple and succinct as

16  possible.

17  I.    <u>As a result of Judge Lizama's December 29, 2005 order vacating the default judgment</u>
           <u>against Bradshaw, this matter is moot.</u>
18

19     Now that the default judgment against Plaintiff Bradshaw has been vacated, his alleged injury

20  no longer exists.   Therefore, any federal questions over which this Court has subject matter

21

22  [Footnote continued from previous page]

---

[2] *See id.* at 10.

jurisdiction are moot.[3]  Whenever an action loses its character as a present live controversy during the course of litigation, federal courts are required to dismiss the action as moot. *In re Di Giorgio,* 134 F.3d 971, 974 (9th Cir.1998).  Accordingly, this matter should be dismissed.

As for damages, the money judgment against Plaintiff was vacated and, therefore no longer an issue.  With regard to punitive damages, it is possible in 42 USC § 1981 and 1983 cases to recover punitive damages without establishing liability for compensatory or nominal damages, but only if the plaintiff can show that the defendant violated a federally protected right. *Passantino v. Johnson & Johnson Consumer Products, Inc.,* 212 F.3d 493, 514 (9th Cir. 2000).  In this instance, Plaintiff has not adequately pled, nor do the facts support, that his federally protected rights were violated.

On the contrary, the precise fact that Plaintiff was able to vacate the judgment against him is proof positive that he received the process he was due and equal protection under the law.

II.    <u>Defendant Clayton is entitled to immunity.</u>

The universal basis for dismissing each count of Plaintiff's complaint is immunity.  There are two kinds of immunity shielding Mr. Clayton individually from civil liability: absolute judicial and qualified immunity.

a.    *Absolute Judicial Immunity.*

If a government attorney is performing acts "intimately associated with the judicial phase" of litigation, that attorney is entitled to absolute immunity from damage liability. *Dillman v. Peterson,* 1993 WL 226104, at 5 (N.D. Cal. June 21, 1993) (citing *Flood v. Harrington,* 532 F.2d 1248, 1251 (9th Cir. 1976); *see also Fry v. Melaragno,* 939 F.2d 832, 837 (9th Cir.1991) (stating that if a government

---

[3] If this honorable Court rules favorably on Defendant Clayton's Motion to Dismiss on the counts over which this Court has subject matter jurisdiction, Mr. Clayton will then file a motion to remove this matter to Commonwealth Superior Court on the grounds that the amount in controversy does not exceed $75,000. *See* 28 U.S.C. § 1332 (2005).

1   attorney is performing acts intimately associated with the judicial phase of litigation in either the civil

2   or criminal context, the attorney is entitled to absolute immunity from civil liability for damages). Mr.

3   Clayton's alleged conduct occurred during the judicial phase of litigation involving Plaintiff Bradshaw.

4   As a matter of law, they cannot be held liable.

5        Frankly, it is unclear why Mr. Clayton is a named defendant in this lawsuit. The only mention

6   Plaintiff makes of Mr. Clayton in his facts is in paragraph 145, where he indicates that Mr. Clayton

7   represented the Commonwealth before the Supreme Court in 2002. Second Amended Complaint.

8   There is no indication Mr. Clayton and Mr. Bradshaw ever communicated let alone shared an attorney-

9   client or any other relationship. Plaintiff Bradshaw continues to lumps Mr. Clayton in with the other

10  AG Defendants and considers this a sufficient basis for his numerous causes of action. Federal Rule of

11  Civil Procedure 8, however, requires more than broad assertions.

12        b.    *Qualified Immunity.*

13        Qualified immunity shields public officials from liability if their actions did not "violate clearly

14  established statutory or constitutional rights of which a reasonable person would have known."

15  *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). In analyzing

16  claims of qualified immunity, courts ask, first, if the plaintiff has asserted the violation of any

17  constitutional or statutory right at all, and then assess whether the right was clearly established at the

18  time of Defendant's actions. *Siegert v. Gilley*, 500 U.S. 226, 232, 111 S.Ct. 1789, 1793, 114 L.Ed.2d

19  277 (1991).

20        Throughout his complaint, Plaintiff Bradshaw's fails to allege that Mr. Clayton violated a

21  clearly established statutory or constitutional right. When Plaintiff's argument is boiled down to its

22  core, the underlying theme is that Plaintiff feels he has a statutory and constitutionally protected right

7

1   to indemnification and a defense.  For numerous reasons discussed herein, his conclusion is erroneous.

2   If, on the off chance this Court were to find that Plaintiff was entitled to indemnification, in light of

3   Plaintiff's confusing July 14, 1999 letter to the Attorney General's Office, his right to indemnification

4   was not clearly established.  Thus, Mr. Clayton is entitled to qualified immunity because they did not

5   violate a clearly established law.

6        III.    <u>Plaintiff's RICO, tort and U.S. Constitutional based claims are time-barred.</u>

7        This Court has recognized a four-year statute of limitations for Racketeer Influenced and

8   Corrupt Organizations Act, or RICO claims.  *Grizzard v. Kiyoshige Terada*, 2003 WL 22997238

9   (D.N.Mar.I. 2003).   The Commonwealth has a two-year statute of limitations period for most tort and

10  all personal injury claims.   Specifically, 7 CMC § 2503(d) (2000) provides that a two-year statute of

11  limitations period applies to "[a]ctions for injury to or for the death of one caused by the wrongful act

12  or neglect of another. "   The date Plaintiff's alleged injury accrued will be discussed in more detail

13  shortly, but suffice it to say Plaintiff's RICO, common law tort and personal injury allegations are

14  time-barred.[4]

15       The United States Supreme Court has ruled that the local personal injury statute of limitations

16  period applies to U.S. Constitution-based § 1983 and § 1981 claims.  *Wilson v. Garcia*, 471 U.S. 261,

17  279 (1985) (applying local statute of limitations for personal injury actions to due process-based

18  Section 1983 claim); *see also Goodman v. Lukens Steel Co.*, 482 U.S. 656, 664 (1987) (applying local

19  statute of limitations for personal injury actions to Section 1981 claim involving equal protection)

20  *<u>overruled</u> by Jones v. R.R. Donnelley & Son Co.*, 541 U.S. 369, 382 (2004).   The Supreme Court

21  _____

22  [4] The default judgment that is the basis of Plaintiff's complaint was entered in 2000.  Plaintiff initially filed an action very similar to this action in the U.S. District Court for the District of Idaho on March 7, 2005.  The Amended Complaint was file in this action in September 2005.

reasoned that the due process and equal protection claims were "in essence claims for personal injury" and applied the same statute of limitations period to each. *See Goodman*, 482 U.S. at 661, 664. After all, the Supreme Court found that "[t]he atrocities that concerned Congress in 1871 [when it enacted Section 1983] plainly sounded in tort . . . ." *Wilson*, 471 U.S. at 277. The Ninth Circuit applying the *Wilson* decision has held that the two-year period for personal injury actions found in 7 CMC § 2503(d) applies to U. S. Constitution-based claims. *See Taman v. Marianas Public Land Corp.*, 4 N.M.I. 287 (1994) (citing *Taman v. Marianas Pub. Land Corp.*, App. No. 90-16254 at 2-4 (9th Cir. July 8, 1992) (unpublished slip op.)).

Our analysis, however, is affected by the U.S. Supreme Court's 2004 holding in *Jones*, which embraces a four-year statute of limitations for claims arising under § 1981, and arguably § 1983, that accrue after December 1990. *See Jones v. R.R. Donnelley & Son Co.*, 541 U.S. 369, 382 (2004). As far as Defendant knows, this Court has yet to address *Jones* and its application.

Regardless of which statute of limitations is applied, the two-year or the four-year, Plaintiff's claims are still time-barred.

"The true test to determine when an action "accrues" is when the plaintiff could have first filed and prosecuted his or her action to successful conclusion." *See Zhang Gui Juan v. Commonwealth*, Civ. No. 99-0163 (N.M.I. Super. Ct.1999). Plaintiff's alleged due process and equal protection claims, if any, each arose between 1996, when the original lawsuit was initiated, and 2000, when the judgment was entered against him. *See Bisom v. Commonwealth*, Civ. No. 96-1320. Though Plaintiff Bradshaw may claim that he was not aware of any injury until 2004, Plaintiff knew that there was an ongoing legal action against him as early as 1996 and simply chose to ignore it. *See* Bradshaw letter to Mr. Bush dated July 14, 1999 attached to Second Amended Complaint.

9

Plaintiff's RICO, tort and Constitutional causes of action accrued at the very latest in 2000, the year the default was entered against Mr. Bradshaw. Plaintiff then filed this action in 2005. Accordingly, Plaintiff's claims are time-barred.

IV.    The *Younger* doctrine requires this Court to abstain because the *Bisom* case is still pending before the CNMI Supreme Court.

The *Younger* doctrine requires federal courts to abstain in cases where the following conditions are present: (1) state proceedings are pending; (2) the state proceedings involve an important state interest; and (3) the state proceedings will afford the plaintiff an adequate opportunity to raise his constitutional claims. *Parker v. Commonwealth of Ky., Bd. of Dentistry,* 818 F.2d 504, 508 (6th Cir.1987). This doctrine, announced in the context of state criminal proceedings, has been extended to state civil proceedings as well. *See Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 17, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987), *see also Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

In this instance, the default judgment against Plaintiff Bradshaw was set aside by Judge Lizama in December 2005. Judge Lizama's ruling has since been appealed to the Commonwealth Supreme Court. Because the case making its way through the Commonwealth Court system is substantially related to this matter, the first prong of the *Younger* test is satisfied. *See Bisom v. Commonwealth,* Civ. No. 96-1320, *see also Federal Express Corp. v. Tennessee Pub. Serv. Comm'n,* 925 F.2d 962, 969 (6th Cir.1991) ("[I]f a state proceeding is pending at the time the action is filed in federal court, the first criteria for *Younger* abstention is satisfied.").

As for the second prong of the test, allowing the CNMI Supreme Court time to consider Plaintiff's motion to set aside does satisfy an important state interest. The vast majority of Plaintiff's complaint is predicated upon the assumption that the Superior Court allowed fraudulent documents to

10

be introduced as evidence.  At the very least, there is an important state interest in allowing the Court

to consider this issue.

Third and finally, the state proceeding should allow the Plaintiff adequate opportunity to raise

his Constitutional claims.  Plaintiff has not been deprived of any constitutionally protected rights.  In

fact, after Judge Lizama's decision, it is clear that the exact opposite is true.

V.    The Rooker-Feldman doctrine urges the dismissal of this matter.

The Rooker-Feldman doctrine holds that when an action in federal court is a de facto appeal of

a Commonwealth court ruling, the Federal claim must be dismissed for lack of subject matter

jurisdiction.  *See Senido v. Office of the Attorney General*, CV-03-0037 ARM pg 4 (D.N. Mar. I.

2003), *see also D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983), *Rooker v. Fidelity Trust Co.*,

263 U.S. 413 (1923).  As this Court has point out, if a litigant "feels a state proceeding has violated

their constitutional right" they should appeal "that decision through their state court and thence to the

Supreme Court" *Id*.

Although the Defendant remain unclear what Plaintiff's injury is, any injury he sustained

flowed from the Commonwealth Superior Court's decision in *Bisom*, now on appeal to the CNMI

Supreme Court.  *Bisom v. Commonwealth,* Civil No. 96-1320 (N.M.I. Super. Ct. 2000).  Defendant,

therefore, urge this Court's application of the Rooker-Feldman doctrine and; thus, a dismissal on the

grounds that this action is a de facto appeal best resolved in the Commonwealth courts.

VI.    Plaintiff's Service by Publication is Inconsistent with Rule 4.

Since 2003 Mr. Clayton has resided in Shanghai China.  Because China is a signatory to the

Hague Convention, Federal Rule of Civil Procedure 4 (f) provides that service upon individuals

residing in China must be consistent with the Convention.  *See In re Schwinn Bicycle Company,* et 248

11

B.R. 328, 36 Bankr.Ct.Dec. 25 (2000); *see also Furukawa Elec. Co. of North America v. Yangtze*

*Optical*, 2005 WL 3071244 (D.Mass.2005).

As the First Circuit Court of Appeals has pointed out "strict adherence to the Civil Rules is the

better practice." *Aoude v. Mobil Oil Corp.,* 862 F.2d 890, 895 (1st Cir.1988). With respect to service

of process, great deference should be given to the Hague Convention as "the 'law of the land' under

the supremacy clause of the Constitution." *Cooper v. Makita, U.S.A., Inc.,* 117 F.R.D. 16, 17

(D.Me.1987). *See also Ballard v. Tyco Intern., Ltd.,* 2005 WL 1863492, 2 (D.N.H.) ("The Hague

Convention provides a mechanism through which a plaintiff can effect service that will give

appropriate notice to the party being sued and will not be objectionable to the nation in which that

defendant is served."); *Golub v. Isuzu Motors,* 924 F.Supp. 324, 328 (D.Mass.1996) (requiring

plaintiff to proceed under the Hague Convention where there is a "reasonable prospect that the plaintiff

will ultimately be able to serve the defendant properly."); *Borschow Hosp. & Medical Supplies, Inc. v.*

*Burdick-Siemens Corp.,* 143 F.R.D. 472, 478 (D.P.R.1992) (discussing the duty of serving documents

in a manner consistent with the Hague Convention).

In this instance, service by publication is inconsistent with the Hague Convention, which

prescribes the documents to be served and the method of service. Moreover, Plaintiff Bradshaw never

even attempted to serve Defendant Clayton in the manner described in the Hague Convention, thus he

has not demonstrated good cause to circumvent compliance. There is no sufficient reason to excuse

Bradshaw's non-compliance. *See Trask v. Service Merchandise Co., Inc.,* 135 F.R.D. 17, 22

(D.Mass.1991)("[T]he absence of at least a good faith attempt to comply with the Hague Convention

prohibits this court from applying the liberal standards of Fed.R.Civ.P. 4 in analyzing the propriety of

service····"). Accordingly, Plaintiff's complaint should be dismissed because the method of service

undertaken does not comport with the service requirements described by the Hague Convention.

VII.   <u>Each and every count of Plaintiff's complaint should be dismissed for either failure to state a cognizable legal theory, failure to plead essential facts or both.</u>

**COUNT I**

The allegations in Count I are against Defendants Bisom and Sorensen and need not be addressed by Mr. Clayton.

**COUNT II**

Plaintiff Bradshaw's second count alleges gross incompetence and malpractice, violations of Plaintiff's Fifth, Ninth and Fourteen Amendments rights and breach of fiduciary duty to indemnify Plaintiff against the Ms. Forelli, Mr. Cotton, Mr. Bush, Mr. Clayton and Mr. Sosebee (not served at this time).  It is unclear from the pleading which party allegedly violated 42 U.S.C. § 1983.

a.    *The gross incompetence and malpractice claims should also be dismissed.*

There is no recognized federal cause of action for gross incompetence.  *Telepo v. Boylan Funeral Home*, 2005 WL 783059 FN3 (E.D.Pa.).  Plaintiff's allegations based upon this theory should, therefore, be dismissed.

The elements of a legal malpractice, or negligence claim are: "[1] the existence of an attorney-client relationship [2] the existence of a duty on the part of a lawyer, [3] failure to perform the duty, and [4] the negligence of the lawyer as a proximate cause [5] of damage to the client." *Kopit v. White*, 131 Fed. Apprx. 107, 109 (D.Nev 2005); *see also Warmbrodt v. Blanchard*, 100 Nev. 703, 692 P.2d 1282, 1285 (1984).

Any attempts by Plaintiff Bradshaw to sustain a malpractice action against Mr. Clayton should fail because they never shared an attorney-client relationship.  Because Plaintiff Bradshaw declined

the Attorney General's assistance during the *Bisom* case and failed to submit a PELDIA request, no

attorney-client relationship ever existed between Bradshaw and the Attorney General's Office.

Bradshaw letter to Mr. Bush dated July 14, 1999 ¶ 9 attached to Second Amended Complaint; *see also*

*Bisom v. Commonwealth*, 2002 MP 19 ¶ 54-57 (holding Plaintiff Bradshaw never requested a defense

or indemnification through PELDIA and the CNMI government was under no obligation to defend or

indemnify Plaintiff Bradshaw).

> b.   *Allegations that Mr. Clayton violated Plaintiff's constitutional rights to dues process and equal protection under the Fifth, Ninth and Fourteenth Amendments fail to state a claim, and even if there was a claim it would be time-barred.*

1.   The Fifth Amendment only applies to the federal government.

As a threshold matter, the Fifth Amendment of the U. S. Constitution does not restrict the

Commonwealth.  The Fifth Amendment limits the activities of the federal government.  *Sirilan v.*

*Castro*, 1 CR 1082, 1107-08 (D.N.M.I. App. Div. 1984).  Instead, the Fourteenth Amendment limits

the conduct of the Commonwealth.  *Id.*  In fact, the Supreme Court has held that the first ten

amendments to the U. S. Constitution do not vest rights in individuals against <u>any</u> government but only

the Federal Government.  *See Delaware v. Van Arsdall*, 475 U.S. 673, 705 (1986), *Dilutaoch v. C& S*

*Concrete Block Products*, 1 N.M.I. 478, 576 (1991) (citing *Barron v. The Mayor and City Council of*

*Baltimore,* 8 L.Ed. 672, 674 (1833)).   As a result, Plaintiff's Fifth Amendment claim should be

dismissed.

2.   There is no direct cause of action under the Fourteenth Amendment.

Plaintiff Bradshaw cannot assert direct causes of action under equal protection or due process

clauses of the Fourteenth Amendment.  Section 1 of the Fourteenth Amendment of the U. S.

**1**

Constitution, which applies to the Commonwealth,[5] does not permit a direct cause of action. "[The

**2**

Plaintiff] can state no such direct cause of action [under the U. S. Constitution] because . . . federal law

**3**

requires that 'a litigant complaining of a violation of a constitutional right . . . utilize 42 U.S.C. §

**4**

1983.'" *Sablan v. Tenorio*, 4 N.M.I. 351, 361 (1996) (quoting *Azul-Pacifico, Inc. v. City of Los*

**5**

*Angeles*, 973 F.2d 704, 705 (9th Cir. 1992) (other citation omitted)). In other words, § 1983 provides

**6**

the exclusive remedy for violations of U. S. Constitutional rights.

**7**

Plaintiff's defective § 1983 allegations notwithstanding, his failure to state a claim under §

**8**

1983 will be addressed nonetheless. *See* 42 U.S.C. § 1983 (1996). Section 1983 requires that the

**9**

Plaintiff prove: "(1) that a person acting under the color of state law committed the conduct at issue;

**10**

and (2) that the conduct deprived the Plaintiff of some right protected by the Constitution or laws of

**11**

the United States." *Seed v. Hudson*, 1994 WL 229096; *see also Leer v. Murphy,* 844 F.2d 628, 632-33

**12**

(9th Cir.1988), *Daniels v. Williams,* 474 U.S. 327, 330-31, 106 S.Ct. 662, 664-65, 88 L.Ed.2d 662

**13**

(1986) (plaintiff must plead more than mere negligence in a 42 U.S.C. § 1983 action)

**14**

At the very least, Plaintiff Bradshaw must demonstrate that the actions of Mr. Clayton in

**15**

someway deprived him of "some right protected by the Constitution or laws of the United States."

**16**

Plaintiff has failed to plead exactly which federally protected right Mr. Clayton violated.

**17**

Because of Plaintiff's failure to plead specifics, Mr. Clayton is left speculating about which

**18**

protected right, real or imagined, Plaintiff is asserting. The best Mr. Clayton is able to do is guess that

**19**

Plaintiff believes he has a protected right to counsel in a civil context and the Constitution, or other

**20**

U.S. laws, required Defendants to defend him in the original *Bisom* lawsuit. If this is Plaintiff's

**21**

**22**

---

[5] The remainder of the Fourteenth Amendment is inapplicable to the Commonwealth. See Covenant to Establish a Commonwealth of the Northern Marianas Islands in Political Union with the United States of America, 48 U.S.C. § 1801, at § 501.

15

contention, he is mistaken.  Nothing in the U.S. Constitution or other U.S. laws requires the Defendant

to defend or indemnify Plaintiff Bradshaw.   In its review of this matter, the CNMI Supreme Court

agreed with this conclusion. [6] *Bisom v. Commonwealth*, 2002 MP 19 ¶ 54-57.  Thus, because Plaintiff

does not have a Constitutionally, or otherwise protected, right to counsel Plaintiff's § 1983 allegations

must fail.[7]

It is impossible to defend against Plaintiff's claim, without knowing which constitutional

provision or federal law was allegedly violated.  Mr. Clayton does, however, wish to reassert his right

to absolute immunity.  Again, Plaintiff's § 1983 argument should be dismissed for failing to plead a

cognizable theory.

3.    Plaintiff's equal protection and due process claims are time-barred.

Mr. Clayton re-assert his argument that Plaintiff's § 1983 claim is time-barred.

4.    No cause of action exists under the Ninth Amendment.

The Ninth Amendment, which provides "the enumerations in the Constitution, of certain rights,

shall not be construed to deny or disparage others retained by the people" states but a truism.

*Massachusetts v. Upton,* 466 U.S. 727, 737 (1984).  It has never been recognized as independently

securing any constitutional right, for purposes of pursuing a civil rights claim. *Strandberg v. City of*

*Helena*, 791 F.2d 744, 748 (D. Mont. 986); *see also Canton Beach NAACP v. Runnels,* 617 F.Supp.

607, 609 n. 3 (S.D.Miss.1985); *Bartel v. F.A.A.,* 617 F.Supp. 190, 194 (D.D.C.1985); *Charles v.*

---

[6] The CNMI Supreme Court has already held that because Plaintiff Bradshaw never requested a defense or indemnification through PELDIA, the CNMI government was under no obligation to defend or indemnify Plaintiff Bradshaw. *Bisom v. Commonwealth*, 2002 MP 19 ¶ 54-57.

[7] Plaintiff could not sustain a § 1983 action against the Commonwealth either.  Plaintiffs can only bring actions under 42 U.S.C. § 1983 against "persons" as defined by the statute.  The Commonwealth is not a "persons" for the purposes of § 1983. *See Sablan v. Tenorio*, 4 N.M.I. 351, FN 25 (N. Mar. I. 1996)(quoting *DeNieva v. Reyes*, 966 F.2d 480, 483 (9th Cir. 1992)).

16

1  *Brown,* 495 F.Supp. 862, 864 (N.D.Ala.1980).   Accordingly, the Ninth Amendment does not offer

2  Plaintiff Bradshaw a cause of action, and Plaintiff's allegations to the contrary should be dismissed as

3  a matter of law.

## COUNT III

5     In Count III, Plaintiff Bradshaw alleges an obstruction of justice, actions to hide and cover-up

6  criminal actions manifested in the CNMI courts, conspiracy, civil rights violation under 42 USC §

7  1983, violations of his constitutionally protected rights to due process and equal protection pursuant to

8  the Fifth, Ninth, and Fourteenth Amendments, gross incompetence, and malpractice against Ms.

9  Brown.  Mr. Clayton will not address this Count

## COUNT IV

11    Because Count IV makes allegations against "unknown person" or "persons," it will not be

12  addressed by Mr. Clayton.

## COUNT V

14    Because Count V makes allegations against Justice Castro, it will not be addressed by Mr.

15  Clayton.

## COUNT VI

17    Because Count VI addresses Judge Castro and Article XII of the Commonwealth Constitution,

18  it will not be addressed by Mr. Clayton.

## COUNT VII

20    Plaintiff alleges in Count VII that Defendant CNMI and its agents, Ms. Forelli, Mr. Sosebee,

21  and Justice Castro were in engaged in a conspiracy to interfere with Plaintiff Bradshaw's Civil Rights

22  under the U.S. Constitution and 42 USC 1985.  This Count will not be addressed by Mr. Clayton.

1

## COUNT VIII

2

Count VIII alleges that Defendants CNMI, Ms. Forelli, Mr. Clayton, Mr. Sosebee (not served),

3

Ms. Brown, and Justice Castro violated 18 U.S.C. § 1961, 1962, 1963 and 1964 (2000), collectively

4

referred to as the Racketeer Influenced and Corrupt Organizations Act, or RICO.  Plaintiff further

5

alleged, once again, that Defendants violated his Constitutionally protected right to due process and

6

equal protection.

7

     a.  *Mr. Clayton was not engaged in "racketeering activity" and is immune from civil liability.*

8

To prevail on a civil RICO claim, a plaintiff must prove that the defendant engaged in (1)

9

conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity and, additionally, must

10

establish that (5) the defendant caused injury to plaintiff's business or property. 18 U.S.C. §§ 1962(c),

11

1964(c). *See Chaset v. Fleer/Skybox Intern., LP* 300 F.3d 1083, 1087 (9th Cir.2002).  The Plaintiff

12

alleges that the "racketeering activity" of fraud began when Defendant Bisom prepared fraudulent

13

documents to mislead the Court and obtain a default judgment. Plaintiff's Amended Complaint at ¶

14

247.  Then, Plaintiff alleges that Defendants Sosebee and Forelli withdrew from representing

15

Bradshaw. Finally, Plaintiff alleges that Defendant Brown obstructed justice in the 2004-2005 cases

16

before the Superior Court and the Federal District Court in Idaho, but fails to provide any specifics

17

with respect to this allegation.  Plaintiff does not describe any specific allegations against Defendant

18

Clayton, and this Count should be dismissed as to Mr. Clayton.

19

## COUNT IX

20

Count IX alleges breach of employment contract against Defendants CNMI, Ms. Forelli, Mr.

21

Bush, Mr. Cotton, Mr. Clayton, Mr. Sosebee (not served) and Ms. Brown.  It is worth noting that

22

Plaintiff employment contract was with the CNMI government, and not Defendants Forelli, Bush,

1   Cotton, Clayton, Sosebee and Brown individually.  On that basis alone, Count IX should be dismissed.

2       a.    *The onus is on employee to ask for indemnification under PELDIA.*

3   As a matter of law, Plaintiff did not possess an implied contract right to a defense or

4   indemnification.  On the contrary, Plaintiff had a conditional expressed right, derived from statutory

5   law, to be defended and indemnified.

6   The Public Employee Legal Defense and Indemnification Act, or "PELDIA" can be found at 7

7   C.M.C. § 2301 (2000), *et seq.*  Under the terms of PELDIA, the onus is on the employee, or in this

8   instance the Plaintiff, to expressly request indemnification not less than five days before an answer is

9   filed in the underlying lawsuit.  *See* 7 C.M.C. § 2304 (2000); *see also Bisom v. Commonwealth*, 2002

10  MP 19 ¶ 54-57.    In his Second Amended Complaint, Plaintiff states that his July 14, 1999, letter

11  should suffice as a request for indemnification for PELDIA purposes.  Plaintiff's revisionist

12  interpretation of this letter is untenable as a matter of fact and law.

13  Specifically, Plaintiff states, "as for as the CNMI SC [Bisom matter], your office has never and

14  should never have represented me on this at all that I am aware of.  As I was never served, I never

15  asked for any assistance and the CNMI SC never should have been told that the AG represented me."[8]

16  Plaintiff Bradshaw, as a matter of fact, failed to properly request indemnification and representation as

17  required by PELDIA.  As a result and in a view shared by the CNMI Supreme Court, he is not entitled

18  to either. *Bisom v. Commonwealth*, 2002 MP 19.

19  Plaintiff has, thus, failed to allege facts sufficient to support his indemnification claims.  Count

20  IX should, accordingly, be dismissed.

21

22

# COUNT X

Count X alleges that because of Plaintiff's national origin Defendants CNMI, Ms. Forelli, Mr. Bush, Mr. Cotton, Mr. Clayton, Mr. Sosebee (not served), and Ms. Brown violated the Immigration Reform and Control Act of 1986 and breached the CNMI's contract with Plaintiff by not granting him a defense and indemnification.

a.    *U.S. immigration law does not apply to the CNMI.*

The Immigration Reform and Control Act of 1986 (IRCA), codified at various sections of Title 8, makes it unlawful for employers to knowingly hire undocumented alien workers or for employees to use fraudulent documents to establish employment eligibility. *See Hoffman Plastics Compound, Inc v. N.L.R.B.,* 122 S.Ct. 1275, 1277,152 L.Ed.2d 271(2002).  Sections 503 and 506 of the Covenant to Establish a Commonwealth of the Northern Mariana specifically excludes the application of U.S. immigration law within the Commonwealth.  *See Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America,* 48 U.S.C. § 1801, at § 501 (1976); see also generally Tran v. Com. of Northern Mariana Islands,* 780 F. Supp. 709 (D.N. Mar. I .1991).

As a matter of law, Plaintiff has not alleged a cognizable theory, and a dismissal of Count X is proper. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d at 534.[9]  Plaintiff's indemnification claims were previously addressed.

-----

[Footnote continued from previous page]

[8] Bradshaw July 14, 1999 letter attached ¶ 9 to Second Amended Complaint.

[9] Even if the IRCA applied to the CNMI, Plaintiff Bradshaw is a U.S. citizen.  The Northern Mariana Islands is a U.S. territory. Defendants are, therefore, unclear exactly how IRCA would apply as a matter of law.

**COUNTS XI AND XII**

Plaintiff alleges in Count XI that Defendant CNMI and its agents, Ms. Forelli, Mr. Bush, Mr. Cotton, Mr. Clayton, Mr. Sosebee (not served at this time) and Ms. Brown violated, in some way, the Civil Rights Act of 1870.[10]  Count XII similarly asserts that Defendant CNMI and its agents, Ms. Forelli, Mr. Bush, Mr. Cotton, Mr. Clayton, Mr. Sosebee and Ms. Brown violated the Civil Rights Act of 1871 as well as Plaintiff's Constitutional rights to due process and equal protection.

      a.    *Plaintiff has failed to allege the facts necessary to sustain a cause of action under the Civil Rights Acts of 1870 and 1871.*

The Civil Rights Act of 1870 and 1871, codified today at 42 U.S.C. §§1981, 1982, 1983, 1985 and 1986 (2000), were enacted to abolish the last vestiges of slavery. *See Davidson v. O'Lone,* 752 F.2d 817 fn 5(3rd Cir. 1984); *see also Brown v. Philip Morris,* 250 F.3d 789, 796-7 (C.A. Pa. 2001).  The overriding purpose of those amendments was to secure "the freedom of the slave race, the security and firm establishment of that freedom, and the protection of the newly-made freeman and citizen from the oppression of those who had formerly exercised unlimited dominion over him" (quoting *The Slaughter-House Cases,* 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1872).

Plaintiff has not asserted, nor has he argued, that he was the victim of racial discrimination on the part of Mr. Clayton.   In fact, Plaintiff Bradshaw does not even allege or mention his race or ethnicity in his Second Amended Complaint, let alone how his race caused him to be discriminated against.  Based upon the pleadings, Defendant Clayton cannot identify Plaintiff's race or national origin, other than the fact that he is a U.S. citizen.  Moreover, there are no allegations that Plaintiff is

---

[10] Defendant Sosebee has yet to be served with process in this matter.  Once properly served, Defendant Sosebee will join this Motion to Dismiss.  Until then, Defendant Sosebee refuses to waive proper service.

even in a protected class. Accordingly, it is proper to dismiss Plaintiff's Counts XI and XII for failing to plead essential facts. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d at 534.

In order to prevail on an action brought pursuant to §1981 and 1982, a plaintiff must allege and prove discrimination based upon race or alienage. *See McDonald v. Santa Fe Trail Transport. Co*, 427 U.S. 273, 296 (1976)*; see also White v. Pacific Media Group, Inc.* 322 F.Supp 1101 (D.Haw 2004), *Pollard v. City of Hartford,* 539 F.Supp. 1156, 1164-65 (D.Conn.1982), *Sagana v. Tenorio*, 384 F.3d 731, 739 (9th Cir. 2004) (holding § 1981 does prohibit discrimination based upon alienage).

Even if Plaintiff had alleged his race, there is no indication in the facts that race served as the basis of any discrimination, i.e. that a similarly situated person of another race was treated better than him or that discrimination occurred solely because of his race. "Alienage," on the other hand, is defined as the state or condition of being an alien. *See LeClerc v. Webb*, 419 F.3d 405, 426 (5th Cir. 2005). An alien is "any person not a citizen or national of the United States." *Id.* Based upon his allegation, Plaintiff is a U.S. citizen and not an alien. Second Amended Complaint at ¶ 7. His § 1981 and 1982 claims must, therefore, be dismissed.

Plaintiff cannot sustain an action under § 1983, because he has failed to properly allege which Constitutional, or other legally protected, right Mr. Clayton violated. *See Seed v. Hudson*, 1994 WL 229096. Plaintiff does not have a right to counsel or indemnification, Constitutionally protected, or otherwise. *Bisom v. Commonwealth*, 2002 MP 19 ¶ 54-57.

In order to prove a claim for relief under § 1985 and its companion 1986, Plaintiff Bradshaw must show: (1) a conspiracy; (2) for the purpose of depriving a person of the equal protection of the laws, generally in a race or class based context; (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of a right or privilege of a United States

22

citizen.  Based upon his Second Amended Complaint, Plaintiff cannot sustain this burden.  *See*

*Mustafa v. Clark County School Dist.,* 157 F.3d 1169 (9th Cir. 1998); *see also McCalden v. California*

*Library Ass'n,* 955 F.2d 1214, 1223 (9th Cir.1990), cert. denied, 504 U.S. 957 (1992) (holding section

1986 claim valid only if valid section 1985 claim exists).

Plaintiff Bradshaw does not specify any facts to support a claim that a conspiracy ever existed

and fails to describe the Constitutional or other rights of which he was deprived.  Most importantly,

Plaintiff Bradshaw does not suggest that the alleged conspirators were motivated to deprive him of his

civil rights by some racial or otherwise class-based animus. *See Buchanan v. Buchanan*, 1994 WL

680992 at 4 (9th Cir. Wash. 1994) (holding complaint must allege motivation behind the conspiracy,

rights deprived, and conspirators were motivated to deprive him of his civil rights by some racial or

otherwise class-based animus).  Thus, he is unable to make out a cause of action under § 1985(3) and

as a result § 1986.

For these reasons, Counts XI and XII should be dismissed.

## COUNT XIII

Plaintiff fails to allege a cause of action in Count XIII and it should be dismissed.

## COUNT XIV

Plaintiff fails to allege a cause of action in Count XIV and it should be dismissed.

## COUNT XV

In Count XIV, Plaintiff claims that the CNMI and its agents Mr. Clayton slandered and

damaged Plaintiff Bradshaw's professional reputation, though Plaintiff fails to allege how or when he

was slandered by Mr. Clayton.

The Restatement (Second) of Torts § 586 provides that "an attorney at law is absolutely

23

privileged to publish defamatory matter concerning another in communication preliminary to a proposed judicial proceeding, [and]. . .during the course and as part of, a judicial proceeding." *See Restatement (Second) of Torts* § 586 (1977). Mr. Clayton, thus, is not liable for alleged slanderous activity, which occurred in connection with the *Bisom* case.

Defendants reassert their immunity arguments. *See Fry v. Melaragno,* 939 F.2d at 837 (holding that if a government attorney is performing acts intimately associated with the judicial phase of litigation in either the civil or criminal context, the attorney is entitled to absolute immunity from civil liability for damages). Moreover, pursuant to the Government Liability Act, the CNMI and its agents and employees cannot be held liable for slander. 7 C.M.C. § 2204 (b) (2000).

Accordingly, it is proper to dismiss Count XV.

## COUNTS XVI AND XVII

Counts XVI and XVII fail to state a cause of action and thus lack a cognizable legal theory, and Mr. Clayton is unable to respond. *See Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d at 534. Accordingly, these Counts should be dismissed.

## CONCLUSION

WHEREFORE, based upon the foregoing, this honorable Court should grant, in whole or in part, Defendant Clayton's Motion to Dismiss.

Respectfully submitted,

OFFICE OF THE ATTORNEY GENERAL

Dated: July 25, 2006

By _____
Kristin D. St. Peter

24

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a copy of the foregoing was served, via U.S. Mail, on the _25_ day of July, 2006, upon the following:

Robert D. Bradshaw
Plaintiff, Pro Se
P.O. Box 473
1530 W. Trout Creek Road
Calder, ID 83808

Jay Sorensen
c/o Shanghai
Post Office Box 9022
Warren, MI 48090-9022
Telephone:    (86) 21 5083-8542
Facsimile:    (86) 21 5083-8542

Civille and Tang, PLLC
330 Herman Cortez Ave, Suite 200
Hagatna, Guam 96910
Telephone:    671-472-8868
Facsimile:    671-477-2511

Mark Hanson
PMB 738
PO Box 10000
Saipan, MP 96950
Telephone 670-233-8600


Kristin D. St. Peter
Assistant Attorney General

25