F I L E D
Clerk
District Court

AUG – 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone 208-245-1691**
Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW

     Plaintiff

     v.

COMMONWEALTH OF THE NORTHERN
MARIANA ISLANDS (hereafter referred to
as the CNMI); et. al.
     Defendants

) Case No. CV 05-0027
)
)
)
)
)
) **PLAINTIFF'S OPPOSITION**
) **TO DEFENDANT CLAYTON'S**
) **MOTION TO DISMISS SECOND**
) **AMENDED COMPLAINT**
) Hearing: Aug 24, 2006
) Time: 9:00 AM,
) Judge Alex R. Munson

i

Received    Aug-07-2006 00:48    From-    To-US DISTRICT COURT, N    Page 003

# TABLE OF CONTENTS

|  | PAGES |
|---|---|
| Title Page | i |
| Table of Contents | ii |
| Table of Authorities | iii |
| Introduction | 1 |
| Defendant's Argument I, CNMI Actions Make the Complaint Moot | I |
| Argument II, Absolute Immunity | 1 |
| Argument II, Why Defendant Clayton Is In the Lawsuit | 8 |
| Argument II, Qualified Immunity | 9 |
| Argument II, Immunity Conclusion | 13 |
| Argument III, Time Barred Claims | 15 |
| Argument IV, Younger Case Prevents Federal Action on Case in State Court | 15 |
| Argument V, Rooker-Feldman Doctrine | 18 |
| Argument VI, Service by Publication Not Consistent with Rule 4 | 19 |
| Argument VII, Failure to State Legal Theories, Facts or Claims | 19 |
| Conclusion | 21 |

Received Aug-07-2006 00:48    From-    To-US DISTRICT COURT, N    Page 004

# TABLE OF AUTHORITIES

| CASES | PAGES |
|---|---|
| Anderson v. Creighton, 483 U.S. 635, 638 (1987) | 13 |
| Barrett v. US, 798 F 2d 565 (2d Cir 1986) | 6 |
| Berge v. Gortan, 88 Wash 2d 756, 767 P. 2d 187 (1977) | 4 |
| Better Gov't Bureau v. McGraw (In re Allen) (CA4 W. VA.) 106 F 3d, 582, 36 FR Serv 3d 1196, reh, en banc, den (CA4) 1997 US App LEXIS 17737 (applying W. Va. law) | 4 |
| Bisom v. CNMI, et. al., CNMI Case 96-1320. Appeal 0016 & 0023-GA | 3, 6, 8, 10, 11, 12, 14, 15, 16 |
| Bisom v. CNMI, et. al., USDC Case 05-0042 | 12 |
| Bivens v. Six Unknown Fed. Narcotics Agents 403 US 388, 410 (1971) | 10 |
| Bradshaw v. CNMI, et. al., USDC Case 05-0027 | 1, 5, 10, 15, 17 |
| Burns v. Reed, 500 U.S. 478, 494-95 (1991) | 10 |
| Butz v. Economou, 438 U.S. 478, 506, 98 S. Ct. 2894, 2910, 57 L. Ed. 2d 895 (1978) | 6 |
| Dennis v. Sparks, 449 US 24, 28-29, 101 S. Ct. 183, 186-87, 66 L. Ed. 2d 185 (1980) | 13 |
| Flood v. Harrington, 532 F. 2d 1248, 1250 (0th Cir 1976) | 1, 18 |
| Flood v. New Hanover County, 125 F 3d 213, 217-18 (4th Cir. 1997) | 21 |
| Fry v. Melaragno, 939 F. 2d 832, 837 (9th Cir 1991) | 1, 14 |
| Haines v. Kerner, 404 US 519, 30 L. Ed 2d 652, 92 S. Ct. 594 (1972) | 21 |
| Harlow v. Fitzgerald, 457 U.S. 800 (1982) | 10, 13 |
| He v Commonwealth, et. al., 2003 MP 3, Civil 99-0268/99-0269; | |

Received   Aug-07-2006 00:48   From-   To-US DISTRICT COURT, N   Page 005

Appeals Nos. 00-037/00-038, CNMI Supreme Court, 2003    10

Hope v. Pelzer, 536 U.S. 730 (2002)    10

Hunter v. Bryant, 112 S. Ct. @ 537    10

Imbler v. Pachman, supra, 424 U.S. 430    7, 13, 14

Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc.,
D.C. Mich. 1952, 13F.R.D. 5.    20

Karim-Panahi v. Los Angeles Police Dept, 839 F 2d 621, 623,
9th Cir 1988    21

McMaster v. Cabinet for Human Resources, 824 F. 2d 518,
520 (6th Cir 1987)    21

Meza v. Washington State Dept of Social and Health Services,
683 F 2d 314    5

Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411,
2 Fed. R. Serv. 3d 221 (1985)    4, 6, 7, 14

Monroe v. Pape, 365 U.S. 167, 172 (1961)    13

NL Indus., Inc. v. Kaplan, 792 F 2d 896, 898 (9th Cir. 1986)    21

Parker v. Commonwealth of Ky Bd of Dentistry (818 F 504
[6th Cir 1987])    15, 16

Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17, 107 S. Ct. 158, 95
[6th Cir. 1987]    15, 16

Saucier v. Katz, 533 U.S. 194, 202 (2001)    10

Scheuer v. Rhodes, 416 U.S. 232, 243 [1974]    14

Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc.,
D.C.N.Y. 1948, 8 F.R.D. 487    20

Sosa v. DIRECTV (Case No. 04-55036 in the 9th Cir; D.C.
CV -03-05973-AHM)    17, 18

Received    Aug-07-2006 00:48    From-    To-US DISTRICT COURT, N    Page 006

Swint v. Chambers County Comm'n 514 U.S. 35, 42 1155 Ct 1203,
    1208, 1431 L. Ed. 2d 60, 60 70 (1095)                              10

U.S. v. Anzelmo, 319 Fed. Supp. 1006 (E.D. La. 1970)                  3

Wilhelm v. Turner, 298 F. Supp. 1335 (S.D. Iowa 1969), judgment
    aff'd. 431 F. 2d 177 (8th Cir. 1970))                             3, 5

Younger v. Harris, 401 U.S. 37. 91 S. Ct. 746, 27 L. Ed. 2d 669 [1971]  15, 16

Zahrey v. Coffey, 221 F. 3d 342 (2d Cir 1995)                         7

OTHER

US Constitution, Article III, Section 2                              14

US Constitution, First Amendment                                    16, 18

US Constitution, Fifth Amendment                                    19

US Constitution, Fourteenth Amendment                               16

42 USC 1981                                                          13, 19

42 USC 1983                                                          2, 4, 8, 13, 14, 19

CNMI Covenant with the US                                           10

IC 5 210                                                             15

Federal Rules Civil Procedure 8(e)                                   19

Federal Rules Civil Procedure 12(b)                                  21

American Jurisprudence 2d (1997 ed)                                  4, 5

Convention on the Service Abroad of Judicial and Extrajudicial
    Documents in Civil or Commercial Matters                         19

Corpus Juris Secundum (2004 ed)                                      3

## Introduction

1. Comes now plaintiff to oppose defendant Clayton's motion to dismiss for failure to state a claim and other reasons. Besides defendant's work of presenting a number of false statements, unsubstantiated allegations and statements taken out of context as being true facts, this motion should be denied first for non-compliance with Local Rule 7.1.c (if still in effect) in not providing tables of contents and authorities; and next for the following reasons.

### Defendant's Argument I, CNMI Actions Make the Complaint Moot

2. While the $139,000 judgment against plaintiff was vacated by the Superior Court (SC), the issue is not moot. The 2d amended complaint has no claim against any defendant for the $139,000. Regardless, the vacate did not diminish, change or void 17 other claims against the defendants as outlined in the 2d amended complaint. Bradshaw has received no restitution on any of these issues from the Dec 29, 2005 vacate order of the CNMI.

3. So it is impossible to argue that case 05-0027 is now settled. There were other issues involved which were not addressed by the SC in its order. But they are in 05-0027. Yet, in a complete 180 degree turn, the CNMI in Argument IV says that under the Younger doctrine the Federal court must now abstain since there is an appeal under way. This argument contradicts completely Argument I that the case is moot.

### Argument II, Absolute Immunity

4. While there is prosecutorial immunity in criminal matters, that immunity does not automatically reach all government lawyers beyond prosecutors; although the defendant claims that government civil lawyers are also entitled to absolute judicial immunity--citing Fry v. Melaragno, 939 F. 2d 832, 837 (9th Cir 1991) and a CA case which reportedly cited Flood

1

v. Harrington, 532 F. 2d 1248, 1250 (9th Cir 1976).

5. Plaintiff has checked both Flood and Fry and cannot link either of them to absolute immunity in terms of the NMI situation. These cases concerned IRS lawyers involved in tax litigation in tax court. Though their focus was supposedly on tax collections they were in a position to turn the cases into criminal cases where they could assume prosecutorial roles with US attorneys.

6. Fry actually addressed qualified immunity but did allow absolute immunity for government civil lawyers when they are in a trial in the courtroom in their official capacity. Please note that these cases involved US government lawyers and not state lawyers which presents an entirely different profile in terms of 42 USC 1983. There was an IRS agent also involved. The court found him entitled to qualified immunity; but added that he did not have any authority to cause criminal charges to be brought against the taxpayer and was thus not entitled to absolute immunity.

7. Furthermore, Fry said: "Government official seeking immunity bears burden of showing that the immunity is justified for functions in question." Defendant's motion never even addressed the prospect that he had any burden to show anything beyond claiming absolute immunity. Fry added: When considering claims of government immunity, presumption is that qualified rather than absolute is sufficient to protect government officials in the exercise of their duties.

8. Finally Fry cited the US Supreme Court in its address of agency attorneys and the function of a prosecutor which said: "In either case, the evidence will be subject to attack through cross-examination, rebuttal, or reinterpretation by opposing counsel. Evidence which

2

Received    Aug-07-2006 00:48          From—                    To—US DISTRICT COURT, N    Page 009

is false or unpersuasive should be rejected upon analysis by an impartial tryer of facts."
Obviously, the Supreme Court could not be referring to Judge's Castro's court.  Therefore,
these words do not encompass 96-1320.

   9.  Just like Justice Castro denied Bradshaw any opportunity to oppose or appeal his
unjust findings and actions in 96-1320, the same thing applies with Clayton and the AG
lawyers.  Whatever they did, they denied Bradshaw his due process rights to hear it in court
or to attack or oppose their actions in the courtroom   In other words, they arbitrarily and
capriciously shoved their illegal actions down the throat of Bradshaw without him having any
recourse  to oppose them.

   10.  Corpus Juris Secundum (p. 608-9, v. 7A, 2004 ed) lays out the latest on liabilities
of an attorney general viz: "In the administration of criminal law, the attorney general...enjoys
the same immunity as that which attaches to the acts of judicial officers...It is only when the
attorney general, or his or her staff, act clearly outside their jurisdiction that they lose
immunity from suit (citing Wilhelm v. Turner, 298 F. Supp. 1335 (S.D. Iowa 1969), judgment
aff'd. 431 F. 2d 177 (8th Cir. 1970)).  An attorney general is generally not liable for the
conduct of his or her subordinates on the basis of respondent superior, or for their
negligence, unless he or she has actually cooperated in their acts. Any immunity on the part
of an attorney general from prosecution does not, however, extend to charges of conspiracy
and substantive violations of statutes (citing U.S. v. Anzelmo, 319 Fed. Supp. 1006 (E.D. La.
1970))...An action to prevent the enforcement of an unconstitutional statute is, however,
generally brought against the attorney general as an individual, and not as an officer on the
theory that the act is personal and not a official act, and that he or she is personally liable for

3

same...A claim of personal liability based on an abuse of discretion in failing to exercise discretion to institute litigation pursuant to statute requires a showing that the attorney general not only made an error or mistake but that the error was result of corrupt or malicious motives (citing Berge v. Gortan, 88 Wash 2d 756, 767 P. 2d 187 (1977). A claim against a surety can only be based upon an abuse of discretion with which he or she is vested (ibid)...The attorney general is therefore immune from liability for an alleged malicious use of process when he or she acts within his or her jurisdiction, but is only entitled to immunity so long as his or her actions do not violate clearly established statutory or constitutional rights which a reasonable person would have known (citing Mitchell v. Forsyth, 472 U.S. 511, 105 S. Ct. 2806, 86 L. Ed. 2d 411, 2 Fed. R. Serv. 3d 221 (1985))."

11. In Berge, the court said: "To establish abuse of discretion on part of Attorney General it must be demonstrated that Attorney General's action was somehow 'arbitrary and capricious.' that is, willful and unreasoning action, action without consideration and in disregard of facts and circumstances."

12. To this Corpus outline, American Jurisprudence 2d (p. 38, v. 7, 1997 ed) adds: "An attorney general's actions outside the scope of statutorialy limited powers has sometimes been held to subject him or her to action pursuant to 42 USC 1983 (citing Better Gov't Bureau v. McGraw (In re Allen) (CA4 W. VA.) 106 F 3d, 582, 36 FR Serv 3d 1196, reh, en banc, den (CA4) 1997 US App LEXIS 17737 (applying W. Va. law), although there is also authority to the contrary."

13. The above lays out the essence of the question of absolute immunity. To whatever extent it exists, it exists with limitations and subject to many factors present. As a minimum,

4

there are many opportunities to bring suit against AG people on the premise of gross and malicious malpractice/negligence and for violating Bradshaw's constitutional rights.

14. Prosecutors have only qualified immunity in their role of being a public official for ministerial, administrative, investigative, etc duties. (15 Am. Jur 2d Civil Rights, p. 312-315). This same is true for other government civil lawyers if it can be successfully argued that they have absolute immunity in a courtroom trial.

15. Bradshaw sees no reason to follow this theory since it is irrelevant to 05-0027 as the AG now maintains that there was no attorney-client relationship between the AG and Bradshaw. In the absence of a relationship, the AG could not possibly be involved in a courtroom and trial situation with Bradshaw. As Bradshaw was sued officially, he believes that there was a relationship and that the AG had a fiduciary duty to Bradshaw (de jure with the original and 1st and 2d amended Bisom complaints and de facto otherwise).

16. "Public and opposing parties have a right to expect conscientious service from government counsel"-- Meza v. Washington State Dept of Social and Health Services, 683 F 2d 314). The above cited Wilhelm case adds "It is only when Attorney General or his staff act clearly outside their jurisdiction that they lose their immunity from suit."

17. If the NMI AG had no relationship with Bradshaw, why then did it file papers in court in Bradshaw's name? Why then did it accept service of process on the 4th amended complaint as argued by Bisom? Why then did Judge Castro say that the AG was Bradshaw's attorney? Why then did the AG write Bradshaw on Jun 30, 1999 and ask for a response on the premise of it being a privileged reply when the AG some weeks later illegally revealed Bradshaw's privileged letter to others without authorization? Why then did the AG

5

supposedly represent Bradshaw at the 2002 appeal but actually end up working against him in a conflict of interest?  Why then did the AG conduct litigation on 96-1320 to completely mess it up and bring damage on Bradshaw.  Why then did not the AG notify Bradshaw of the trial and appeal and the fact it alleged no attorney-client relationship.  If the AG did not have jurisdiction in this case, why then did it engage in a number of illegal activities involving Bradshaw which would subject them to suit.  If the AG went into court and started incompetently litigating a case where it had no jurisdiction because of a lack of attorney-client relationship, why then can the AG believe that it has immunity from all of its incompetent and unjustified actions in an illegal court action.

18. In the above cited Mitchell, the Supreme Court raised three relevant issues in deciding absolute immunity for government lawyers--(1) whether a historical or common law basis exists for immunity from suit arising out of performance of the function; (2) whether performance of the function poses obvious risks of harassing or vexatious litigation against the official; and (3) whether there exists alternatives to damage suits against the official as a means of redressing the wrongful conduct.  In terms of Clayton, none of these three can be applied to his functions in case 96-1320.

19. "Like federal officers, state officers who seek absolute exemption from personal liability for unconstitutional conduct must bear the burden of showing that public policy requires an exemption of that scope"--Butz v Economou, 438 U.S. 478, 506, 98 S. Ct. 2894, 2910, 57 L. Ed. 2d 895 (1978), as quoted in Barrett v US, 798 F 2d 565 (2d Cir 1986). The AG's motion does not even address the role of public policy in the NMI and whether public policy holds that AG civil lawyers should be entitled to absolute immunity. In the case of the

6

NMI, it will be disastrous for public policy if AG civil lawyers have absolute immunity.

20. Prosecutors are immune from liability for conduct as that conduct is intimately associated with the judicial phase of the criminal process. Imbler v. Pachman, supra. 424 U.S. 430. To whatever extent a government lawyer beyond prosecutors may claim absolute immunity, that immunity can only apply to the courtroom while in their official capacity. In terms of the AG lawyers, none of them were in trial and official capacity as lawyer Sosebee notified the court before the Bisom trial that the AG did not represent Bradshaw.

21. Prosecutors who conspire to fabricate evidence can be held liable for violating a persons' constitutional rights   Zahrey v. Coffey, 221 F. 3d 342 (2d Cir 1995). Prosecutor was on notice that using false evidence might subject him to liability. Fabricating evidence in his investigative role violates the standards of due process.

22. In terms of suing Clayton, the point is that prosecutors, in their role of prosecuting in the courtroom, have some judicially granted immunity. But in their other roles, outside the courtroom, they do not have this immunity. In Mitchell above, the Supreme Court ruled that John Mitchell, Attorney General of the US, did not have absolute judicial immunity in Federal Court for civil rights violations involving an unauthorized wiretap (which clearly involved an investigatory function on a national security issue). If the Attorney General of the US can be sued for a civil rights violation, then assuredly Ms Clayton and the AG lawyers can be sued.

23. Regardless, the defendant's argument won't hold water because the AG also argues that there was no attorney-client relationship with Bradshaw in Argument VII. If there was no attorney-client relationship, why is it and how is it that they can claim judicial immunity for courtroom work in a trial when they had no courtroom work to do. The two arguments in II

7

and VII contradict each other. The CNMI can't have it both ways.

24. Too, since Bradshaw was never served, it is impossible to argue that the AG went to trial and took any action whatsoever for Bradshaw in any context. In the absence of service, none of the AG lawyers had trial work in an official capacity for Bradshaw. Since they were not involved in trial action, one must wonder what role they played regarding Bradshaw.

25. In examining the above cases, it is clear that there can be a distinction between US civil lawyers and those of a state attorney general's office. Also, the above cases discuss absolute immunity in the context of official capacity. It's impossible to reconcile the actions of the NMI AG lawyers who though pretending to be operating under color of law were actually involved in violating laws and their oaths of office as well as denying Bradshaw his rights under the US constitution. Thus, they were not acting in official capacity but in their personal capacities as they are sued herein.

26. Even in the concept of allowing immunity for acts intimately associated with the courtroom trial, it is impossible to argue that the malicious negligence and incompetence of the AG could have any legitimate bearing on any trial in a legitimate court. The fact that they had a bearing in the Castro court goes to prove nothing. In any case, just as Judge Castro lacked personal jurisdiction, the same is true with the AG lawyers. As Bradshaw was never legally served (and the AG knew it), there is no way that they can claim to have jurisdiction. Without jurisdiction, their acts toward Bradshaw were illegal and subject to 42 USC 1983 suit.

## Argument II, Why Defendant Clayton is in the Lawsuit

27. Defendant Clayton's Motion to Dismiss the Second Amended Complaint raises an objection on lines 5 to 11 on page 11 that defendant Clayton should not be lumped in with

8

the other AG defendants since he allegedly did nothing wrong.

28. The complaint notes that the CNMI Supreme Court's decision, appeal nos. 00-0016 & 0023-GA, consolidated (on pages 12, 13, and 22), cited repeated cases of mistakes and mistaken actions (plural) by the AG. On page 22, the Supreme Court decision opened the possibility that an attorney(s) in the Office of the AG had violated Bar Association ethics. The Supreme Court did not establish which person(s) were responsible for the malpractice, mistakes, etc. In its decision (page 12), the Court also allowed that in the AG appearance and presentation there was a conflict of interest between the CNMI and Bradshaw.

29. As a minimum, Clayton was involved in a conflict of interest before the Supreme Court. Bradshaw was the defendant in the appeal and supposedly Clayton represented him. In fact, Clayton represented the CNMI and Bradshaw had no representation. Yet, Clayton made no effort to advise Bradshaw of the appeal and the non-representation. For the cited mistakes, violation of ethics and the decision to drop the appeal as previously filed, it is unclear at this stage what role Mr Clayton had in this malicious malpractice.

## Argument II, Qualified Immunity

30. Under qualified immunity, government officials generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established laws or constitutional rights of which a reasonable person would have known. Thus, the official's conduct is measured by reasonableness and reference to clearly established laws and laws which do not violate a person's constitutional rights.

31. There is a two-part inquiry: (1) Was the law governing the official's conduct clearly established? (2) Under the law, could a reasonable official have believed his conduct was

9

lawful? Thus, was it a law or constitutional violation which was known to be in effect? Harlow v. Fitzgerald, 457 U.S. 800 (1982). Saucier v. Katz, 533 U.S. 194, 202 (2001); Hope v. Pelzer, 536 U.S. 730 (2002).

32. Qualified immunity protects government officials from meritless lawsuits--Harlow v. Fitzgerald, 457 U.S. 800 (1982) and Bivens v. Six Unknown Fed. Narcotics Agents 403 US 388, 410 (1971). Case 05-0027 has merit! "Government officials performing discretionary functions are entitled to qualified immunity unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known" (Harlow v. Fitzgerald, 457 U.S. 800). Qualified immunity does not protect incompetent people (Burns v. Reed, 500 U.S. 478. 494 95 [1991]; Hunter v. Bryant, 112 S. Ct. @ 537).

33. A government "official's claim of qualified immunity is the defining example of a right that can be vindicated adequately only if pre judgment appeal is available"--Swint v. Chambers County Comm'n 514 U.S. 35, 42 1155 Ct 1203, 1208, 1431 L. Ed. 2d 60, 69-70 (1995) as quoted in He v. Commonwealth, et. al., 2003 MP 3, Civil 99-0268/99-0269; Appeals Nos. 00-037/00-038, CNMI Supreme Court, 2003. Bradshaw had no rights of an appeal beyond rule 60.

34. The malicious negligence of the AG's office is detailed in Bradshaw's second amended complaint (i.e., para 44-51, 66-282, 318-370) The AG had a fiduciary duty to Bradshaw--de jure for the original complaint and the 1st and 2d amended complaints since Bradshaw was sued in his official capacity and AG had a legal duty to defend him. Too, since Bradshaw was a former official with the CNMI, the AG had a de facto fiduciary duty.

10

35. In Aug 1999, the AG became aware that Bisom/Sorensen had prepared fraudulent receipts showing service on Bradshaw that never happened. The AG sat on this information and did nothing for the next six months until just before the trial in Feb 2000. The AG then brought the issue to the attention of Judge Castro with a motion to take the case off of the trial docket which Castro denied. In this motion, the AG illegally used in court Bradshaw's privileged correspondence to justify its illegal actions.

36. Next, the AG notified the court on Feb 1, 2000 that the AG did not represent Bradshaw. Though the AG had a fiduciary duty to Bradshaw, the AG did not notify Bradshaw of the trial or of its withdrawal; the AG did not notify Bradshaw that it had accepted service on the 4th amended complaint, nor did the AG notify Bradshaw of the appeal in 2002. Bradshaw was left holding the bag. Instead of appealing the ridiculous decision of Castro, the AG decided not to appeal it and let it slide with a damaging judgment against Bradshaw.

37. On Apr 5, 1997, the AG failed to file for dismissal under rule 4(m) for the expiration of the 120 days. The AG failed to file for dismissal for malicious prosecution. The AG failed to file for dismissal for statute of limitation being up in May 1997.

38. By Bradshaw's privileged letter of Jul 14, 1999 the AG was notified of the need to go into court and take action to remove Bradshaw from the case. Bradshaw relied on the AG words that the AG would do this. AG did not do so.

39. In September 2004, Bradshaw brought the many 96-1320　problems to the attention of AG Brown. After six months, the AG still took no action to resolve the mess.. As Bradshaw was sued in his official capacity in the original and 1st and 2d amended complaints, the AG consistently had a fiduciary duty to Bradshaw who was a former official of

11

the CNMI, but took no action.

40. The CNMI Supreme Court has already found that the AG's office messed up case 96 1320 and is incompetent (this decision is now filed with this court at Exhibit B of the Declaration of G. Patrick Civille in Support of Defendant's Motion to Dismiss).

41. Paragraph 156 of the second amended complaint outlines the CNMI Supreme Court's decision, appeal nos 00-0016 & 0023-GA, consolidated (on pages 12, 13, and 22), which cited repeated cases of mistakes and mistaken actions (plural) by the AG. On page 22, the Supreme Court decision opened the door that an attorney(s) in the Office of the AG had violated the Bar Association ethics rules. In its decision (page 12), the Supreme Court also allowed that in the AG appearance and presentation there was a conflict of interest.

42. While the case can be made that some clerk in a government office might not know the law or understand questions of constitutional rights of people, this argument cannot be made for Clayton or the other AG defendants. These people are all lawyers. Above all others, these lawyers are presumed to know the law and to understand the role of constitutional rights of people. Since the AG personnel were all lawyers working on the 96-1320 case, there is no way that they can claim qualified immunity or ignorance of the legal aspects of their mishandling of the case. They clearly know and understood what was happening.

43. The actions of the AG lawyers were not reasonable. Their actions were not what one would expect from competent lawyers. Their actions violated Federal and local laws and Bradshaw's constitutional rights as spelled out in the second amended complaint.

44. The Supreme Court has repeatedly recognized that when government officials abuse their offices, action(s) for damages may offer the only realistic avenue for vindication of

12

constitutional guarantees--Anderson v. Creighton, 483 U.S. 635, 638 (1987), quoting Harlow v. Fitzgerald, 457 U.S. 800, 814.

45. The US Supremo Court and the 9th Circuit have left no doubt that attorneys are liable to section 1983 claims which "subjects any person who deprives someone of a constitutional right under color of state law to civil liability for that deprivation" --42 USC section 1983 (1994); Dennis v. Sparks, 449 US 24, 28-29, 101 S. Ct. 183, 186-87, 66 L. Ed. 2d 185 (1980). Therefore, the AG defendants are not entitled to qualified immunity.

### Argument II, Immunity Conclusion

46. On immunity, there are no CNMI laws granting CNMI government lawyers immunity. Any immunity must come from elsewhere (like from US court decisions which technically only apply to those particular cases and not carte blanche across the board to all cases).

47. The title 42 laws address all persons with no exceptions. 1981 says all persons and 1983 says every person. While some courts have excluded judicial officers (judges, and now prosecutors and government attorneys) and other government officials from all and every, the statutes do not make this exclusion. Every person means every person and not every person but government attorneys and officials.

48. "The central purpose of ... 1983 is to 'give remedy to parties deprived of constitutional rights, privileges and immunities by an official's abuse of his position'" (Imbler v. Pachtman, at 433 [424 U.S. 409, 433, 1976] quoting Monroe v. Pape, 365 U.S. 167. 172 [1961]). "It is manifest then that all state officials as a class cannot be immune absolutely from damage suits under 42 U.S.C...1983 and that to extend absolute immunity to any group of

13

state officials is to negate *pro tanto* the very remedy which it appears Congress sought to create" (Imbler, at 433-434, citing Scheuer v. Rhodes, 416 U.S. 232, 243 [1974]).

49. Under the Common Law, there is no government lawyer immunity. Under equity, there is no government lawyer immunity. The US Constitution, Article III, Section 2, limits judicial power to the Constitution and laws of the US. There are no US laws that grant judicial and government lawyer immunity in the CNMI. Since there is a constitutional separation of powers, the courts lack authority to create laws which are not supported in the Constitution or statutory law. In terms of the CNMI, there are no laws granting judicial immunity. Such assertions are unconstitutional.

50. The bottom line on the immunity question is that defendant Andrew Clayton is not eligible for any immunity--absolute or qualified. In his actions, he worked outside his jurisdiction (he lacked jurisdiction). As a minimum his situation is not covered by the US Supreme Court in discussing hypothetical issues like being in a courtroom and being allowed to challenge, question, argue or appeal the unjust and illegal actions of an incompetent judge and AG office. Bradshaw was sued in his official capacity. The CNMI and its attorneys like Andrew Clayton had a fiduciary duty to Bradshaw--to at least notify him of the appeal and the non-representation by the AG at the appeal.

51. As Fry noted, government lawyers claiming immunity bear the burden of proving the applicability and necessity of that immunity in their functions. So far, the AG has done nothing to prove the applicability and necessity of immunity. The best sum up comes from the US Supreme Court in Mitchell. The attorney general is only entitled to immunity so long as his or her actions do not violate clearly established statutory or constitutional rights which a

14

Received    Aug-07-2006 01:09    From-    To-US DISTRICT COURT, N    Page 001

reasonable person would have known (as cited above).

### Argument III, Time Barred Claims?

52. Defendant's attempt to use the trial of 96-1320 in 2000 as the tolling date for the statute of limitations, completely ignored other relevant dates-- Sep 13, 2002 (with the Supreme Court's decision); Apr 2004 when the AG first notified Bradshaw of the court action; Dec 29, 2005 when the CNMI Superior Court entered its void order; or the three year rule or one year rule on discovery as applicable in Idaho (IC 5-219) where this suit was first filed. There is also a six year tolling provision as applied to certain legal case. As the complaint allows, the RICO charges covered six years, starting in Feb 2000 and continuing on to Defendant Brown in Feb 2006. Certainly, they meet any four year test.

53. In any case, the AG use of this argument contradicts its Argument IV below on the case still being active in the CNMI. Obviously, if there is a time bar, then the case cannot be alive in the CNMI courts. The CNMI can't have it both ways.

### Argument IV, Younger Case Prevents Federal Action on Case in State Court

54. Plaintiff's review of Younger v. Harris, 401 U.S. 37. 91 S. Ct. 746, 27 L. Ed. 2d 669 [1971]; Parker v. Commonwealth of Ky Bd of Dentistry (818 F 504 [6th Cir 1987]); and Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 17, 107 S. Ct. 158, 95 [6th Cir. 1987]) show no linkage between them and 05-0027. These three cases are inapplicable to 05-0027.

55. In Parker, a state administrative body initiated disciplinary action against the plaintiff. Before a hearing could be held on it, the plaintiff filed an action in federal court seeking to enjoin the administrative body from disciplining him and seeking a declaratory judgment that his actions were protected under the First and Fourteenth amendments of the

15

Received   Aug-07-2006 01:09         From-         To-US DISTRICT COURT, N   Page 002

US Constitution. This case at hand has nothing whatever to do with Parker.

56. In Pennzoil, the plaintiff filed suit in Federal court after a jury finding but before the trial court even entered its judgment on the matter. Faced with a need to post a $10.53 billion bond; plaintiff raised US and Texas state constitutional questions despite the fact that those issues were not raised during the trial.

57. Thus, the state courts had no opportunity to adjudicate the constitutional questions. In this one case, the Supreme Court extended Younger. But nothing in the decision extended civil actions automatically to the level of criminal actions in state courts. There seems to be nothing in this case or other ones at the appellate level to automatically extend the issue to civil proceedings as well as criminal. Thus, Younger does not always apply in all civil cases.

58. In Younger, the court held that a federal district court was prohibited from enjoining state criminal proceedings which were pending in state court. Harris had been indicted for violating the CA Criminal Syndicalism act and sued in Federal court to enjoin the county attorney, Younger, from prosecuting him on the basis of constitutional free speech.

59. In Younger, the US Supreme Court also said that there were exceptions in those situations where the pending state proceeding would not afford an adequate opportunity to vindicate the plaintiff's constitutional rights (which is the situation with Bradshaw and the CNMI). Thus, Younger only applies when (1) plaintiff was given the opportunity to vindicate his claims in state proceedings; (2) action was criminal case; and (3) the court proceedings were not complete. 05-0027 does not meet these tests. The CNMI Supreme Court finalized 96-1320 in 2002 and they denied Bradshaw an opportunity to vindicate his claims.

Received    Aug-07-2006 01:08    From-    To-US DISTRICT COURT, N    Page 003

60. On line 13 of page 12 of their motion, the defendant argues Younger in the vein that Bradshaw's complaint mentions the fraud in CNMI case 96-1320 and the allegation that this is an important issue to (presumably) allow the state court to consider it in the appeal. This is a joke since the question was brought to the attention of AG Brown in 2004. Brown reacted with a process of obstructing justice by destroying and hiding documents in the case to protect the guilty. It's absurd to think that now the CNMI will actually do something about the fraud perpetuated upon its incompetent court. But this issue creates another contradiction in terms of the CNMI now pleading the Rooker-Feldman doctrine in Argument V below.

61. There is nothing in the three cases cited by defendants which place a duty on a plaintiff to exhaust all possible local options before filing an action in federal court. With the situation in the CNMI, plaintiff's efforts to resolve the case without a lawsuit, and the fact that Supreme Court justices were involved, there was little hope of any resolution from the CNMI without this Federal action.

62. Regardless, the issue of the $139,000 is only a part of the damages faced by plaintiff. There were other issues involved as the 17 claims in the complaint note. Truly, 96-1320 is not over from Bradshaw's point of view, in terms of damages to Bradshaw. On the surface, the case can be made that Plaintiff's actions in the Federal courts certainly influenced and perhaps contributed to the CNMI SC decision on Dec 29, 2005. Plaintiff has spent some years in the CNMI and fully knows how things work there. One can just about bank on it that this action in Federal court played a major role in the CNMI SC decision.

63. Sosa v. DIRECTV (Case No. 04-55036 in the 9th Cir; D.C. CV -03-05973-AHM) made reference to the US courts rule of filing parallel litigation in different tribunals. This case

17

Received  Aug-07-2006  01:08        From-        To-US DISTRICT COURT, N  Page 004

in the US courts was reportedly the same with the same parties as one filed in CA state courts called Blanchard v. DIRECTV. In Blanchard, a state court complaint was dismissed by the SC. Thereupon, the plaintiff filed in the USDC and an appeal to the CA Court of Appeals. This case cited the above mentioned Flood v. Harrington 532 F 2d 1248 (9th Cir 1976) which also involved parallel cases in both US and CA courts. The point is that US courts do allow filings simultaneously in both US and state courts over the same issue.

64. In any case, AG argument IV totally contradicts arguments I, III and V. If Younger applies, it would negate the assertion that the case is moot or that the statute of limitation means dismissal of the case. The CNMI can't have it both ways on these different arguments.

## Argument V, Rooker-Feldman Doctrine

65. While the purpose of justice would be greatly served if the US District Court was an appellate review court over the actions of the CNMI courts, this fact is irrelevant in terms of the 2d amended complaint. Almost all of the present 17 claims and facts are devoted to issues which are totally unrelated to the idea that the US Court was in a appellate review mode.

66. The primary issue in the 2d amended complaint which the AG might argue is para 230 which notes that the actions of Bisom/Sorensen caused an illegal payout to them of $140,000 from the CNMI. Bradshaw has pled that they be made to refund this $140,000 to the CNMI. While Bradshaw made this issue a part of his 1983 claim and the reality that this payout damaged him, possibly it is what is behind the CNMI citation of Rooker-Feldman.

67. Maybe the AG does not want any efforts made to make Bisom/Sorensen refund the $140,000 to the CNMI. If so, one must wonder "who" or what party the AG represents in its use of Rooker-Feldman. Is the AG trying to help the CNMI or hurt the CNMI?

Received   Aug-07-2006 01:00        From-                    To-US DISTRICT COURT, N    Page 005

68. In any case, it presents one more contradiction in this AG motion since the AG has in the above discussion on the Younger doctrine also indicated that somehow the CNMI is now all of a sudden interested in the fraud perpetuated on its incompetent court.

69. If the CNMI has this interest, why would it attack Bradshaw's complaint and try to dismiss it on the premise of Rooker-Feldman which arguably could only apply in terms of the $140,000. Does the AG now want this Court to dismiss the $140,000 plea of the 2d amended complaint? It indeed seems strange that the AG would bring Rooker-Feldman up when Bradshaw's focus is to get the $140,000 refunded to the CNMI. Something is wrong here.

### Argument VI, Service by Publication Not Consistent with Rule 4

70. Article 1 of the "Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters" does "not apply where the address of the person to be served with the document is not known." Plaintiff does not have a address for Clayton. Regardless, what does this item have to do with failure to state a claim under rule 12(b)(6)?

### Argument VII, Failure to State Legal Theories, Facts or Claims

71. The Covenant section 501 says that the 5th amendment to the US Constitution does apply to the CNMI. Bradshaw primarily did use 42 USC 1983 in the actions against the defendants. As for as the allegation that there was no attorney-client relationship between Bradshaw and the CNMI AG, Judge Castro said that there was such a connection in 96-1320. Anyway, this theory completely contradicts the above remarks on judicial immunity. If there was no relationship, the AG can't claim absolute judicial immunity for the trial of 2000.

72. The argument VII stresses the inapplicability of the 2d amended complaint's claim of discrimination prohibited by the Immigration and Control Act of 1986. The immigration

19

Received   Aug-07-2006 01:08   From-   To-US DISTRICT COURT, N   Page 006

laws cited in the Covenant that were ineffective in the NMI were those in effect on the day that the trusteeship ended--which was Nov 3, 1986  Any US laws after that date had to be addressed in some other manner.  The immigration act of 1986 became law on Nov 6, 1986. The plaintiff finds nothing in the law to restrict its applicability to the CNMI.

73. Defendant argues that Bradshaw's allegations of conspiracy are not supported by facts and that allegations of conspiracy do not constitute a cause of action without facts. FRCP Rule 8(e) clearly provides that a pleader need not "plead his evidence"  or state "ultimate facts" in an alleged civil conspiracy--Screen Writers' Guild, Inc. v. Motion Picture Ass'n of America, Inc., D.C.N.Y. 1948, 8 F.R.D. 487. The nature of a conspiracy makes it impossible to state details at the pleading stage--Jack Loeks Enterprises, Inc. v. W. S. Butterfield Theatres, Inc., D.C. Mich. 1952, 13F.R.D. 5. The complaint meets these tests.

74. Defendant's motion repeatedly argues that the 2d amended complaint is defective because it fails to "prove" the issues (lines 8-13, page 15; lines 7-18, page 18; lines 4, 19-22, page 22).  Two paragraphs even specify the need to "prove" facts or the action cannot be sustained (line 3, page 22 and line 1, page 23).  The proof of allegations must arise in a trial and not in the complaint made up of allegations.

75. Defendant claims that the 2d amended complaint fails to cite cognizable legal theories or plead facts  But defendant has failed to produce any facts or evidence proving the alleged lack of legal theories and facts. The defendant's motion makes broad claims of the alleged deficiencies but provides no proof or evidence of the assertions.

76. The incorporating paragraphs tie all of the claims together to the statements of facts and legal theories scattered throughout the complaint. If the plaintiff has cited legal

theories, facts or claims in any of the paragraphs, it means that they are tied together in the
incorporating paragraphs. Thus, Clayton cannot claim a lack of theories, facts or claims.

### Conclusion

77. Furthermore, on legal theories, the Supreme Court settled that question in 1972. A
reviewing court is required to take notice of and incorporate relevant statutes and rules and
precedents even if not pleaded in the complaint by a pro se plaintiff (Haines v. Kerner, 404
US 519, 30 L. Ed 2d 652, 92 S. Ct. 594 (1972)). Even if Bradshaw failed to cite all of the legal
theories and laws available in his claim, the court has a duty to take note of them in its review.

78. A complaint must be construed in a light most favorable to the Plaintiff when
considering a motion to dismiss--McMaster v. Cabinet for Human Resources, 824 F. 2d 518,
520 (6th Cir 1987); must afford the plaintiff the benefit of any doubt in civil rights cases when
the plaintiff appears pro se (Karim-Panahi v. Los Angeles Police Dept, 839 F 2d 621, 623, 9th
Cir 1988); must accept the factual allegations contained within the plaintiff's complaint as
true  Flood v. New Hanover County, 125 F 3d 213, 217-18 (4th Cir. 1997); must accept as
true all material allegations in the complaint, as well as reasonable inferences to be drawn
from them--NL Indus., Inc. v. Kaplan, 792 F 2d 896. 898 (9th Cir. 1986); and must survive
dismissal unless it appears beyond all doubt that the plaintiff can prove no set of facts in
support of his claim which would entitle him to relief--Haines v. Kerner, 404 U.S. 519 (1972).

79. The defendant has failed to meet his burden to show that plaintiff's second
amended complaint fails to state a claim upon which relief may be granted per FRCP
12(b)(6). Because of the reasons cited above, the defendant's motion to dismiss should be
denied. The defendant has submitted no cause for the dismissal of the second amended

...

complaint. A proposed order is attached.

I declare under the penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge and belief  Dated this 5th

day of August 2006 at Calder, Idaho.

Robert D. Bradshaw, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 5th day of August 2006, I caused to be served a true copy of
the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950

Robert D. Bradshaw, Plaintiff, Pro Se

22

To-US DISTRICT COURT, N    From-    08:10  0002-70-guA  bevieceR    Page 008

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW                    )    Civil Action No. 05-0027

     Plaintiff

     v.

COMMONWEALTH OF THE NORTHERN    )    **(PROPOSED)  ORDER**
MARIANA ISLANDS (hereafter referred to    )
as the CNMI);    )
         Defendants    )
——————————————————————

Defendant Andrew Clayton's Motion to Dismiss is denied.

**IT IS SO ORDERED.**

**DATED** this _____day of _____2006.


                          _____
                          ALEX R. MUNSON
                               Judge

1