FILED
Clerk
District Court

SEP - 8 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW,<br><br>Plaintiff,<br><br>vs.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et. al.,<br><br>Defendants. | Case No. CV-05-0027<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT CLAYTON'S MOTION TO DISMISS** |

**THIS MATTER** came before the court on August 24, 2006 upon defendant Clayton's motion to dismiss. The following parties appeared: Plaintiff *pro se* by telephone; defendant Sorensen *pro se* by telephone; and defendants Commonwealth of the Northern Mariana Islands, Forelli, Bush, Brown, Clayton, and Cotton by and through Assistant Attorney General Kristin D. St. Peter.

**THE COURT,** having considered the arguments of the parties, **GRANTS IN PART and DENIES IN PART** defendant Clayton's motion to dismiss. Plaintiff shall file an amended complaint in conformity with this order within twenty days.

## I. BACKGROUND

The factual basis for plaintiff's complaint stems from a series of actions by defendants in conjunction with *Bisom v. Commonwealth*, CV-95-42 (D.N. Mar. I. 1996), *Bisom v. Commonwealth*, CV-96-0052 (D.N. Mar. I. 1997), *remanded to Bisom v. Commonwealth*, No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000), *Bisom v. Commonwealth*, CV-95-00042-ARM (9th Cir. 1998), *Bisom v. Commonwealth*, CV-98-0002 (D. N. Mar. I. 1998), *remanded to Bisom v.*

//

*Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000), and *Bisom v. Commonwealth,*
No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000) [collectively Bisom case].

In regards to defendant Clayton, plaintiff alleges that defendant Clayton injured plaintiff by
violating his constitutional right to equal protection, due process, and a fair trial by: (1) failing to
defend him in the Bisom case in violation of the Commonwealth Constitution, Commonwealth
statute, and plaintiff's employment contract; and (2) committing legal malpractice by disclosing a
letter plaintiff sent to defendant Bush that was protected by attorney-client privilege, failing to
represent plaintiff in the Commonwealth Supreme Court case, and for arguing theories in the
Commonwealth Supreme Court case to plaintiff's detriment in violation of defendant Clayton's
professional obligation to prevent a conflict of interest.  Plaintiff also alleges that defendant Clayton,
as an agent for the Commonwealth, an enterprise engaged in interstate and foreign commerce,
colluded against plaintiff so that a default could be entered against plaintiff in the Bisom case.

Plaintiff prays for damages he incurred for defending the Bisom case, damage to his
livelihood and reputation, and damages for emotional and mental distress.

## II. ANALYSIS

Under Federal Rule of Civil Procedure 12(b)(6), "[a] complaint should not be dismissed . . .
'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim
which would entitle him to relief." *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir.
1990) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). "Dismissal can be based on the lack of
a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."
*Id.* In reviewing the sufficiency of the complaint, the "issue is not whether a plaintiff will ultimately
prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v.
Rhodes*, 416 U.S. 232, 236 (1974). Accordingly, "[a]ll allegations of material fact are taken as true
and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mutual Ins. Co.*,
80 F.3d 336, 337-38 (1996). Furthermore, because a *pro se* litigant is generally not held to the

1  stringent standards and formal pleadings required by lawyers, the court will dismiss the complaint

2  only if it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim

3  which would entitle him to relief." *Haines v. Kerner*, 404 U.S. 519, 596 (1972) (quoting *Conley*, 355

4  U.S. at 45-46 (internal quotes omitted). "All pleadings shall be so construed as to do substantial

5  justice." Fed. R. Civ. P. 8(f).

6       Defendant Clayton makes several arguments, both general to the complaint as a whole and

7  specific to each claim in the complaint. Accordingly, the court will review each in turn, beginning

8  with the general arguments.

9

10  **A. Mootness**

11       Defendant Clayton first argues that plaintiff's claims are moot as a result of Judge Lizama's

12  December 29, 2005, order vacating the default judgment against plaintiff in the Bisom case.

13  "Whenever an action loses its 'character as a present live controversy' during the course of litigation,

14  [the court is] required to dismiss the action as moot." *In re Di Giorgio*, 134 F.3d 971, 974 (9th Cir.

15  1998).

16       The case, however, is not moot as to defendant Clayton because, as alleged, defendant

17  Clayton violated plaintiff's due process rights by failing to defend plaintiff in the Bisom case, or

18  alternatively, by disclosing confidential information and arguing theories to plaintiff's detriment in a

19  conflict of interest situation. Accordingly, there is a live controversy as to whether defendant Clayton

20  injured plaintiff as plaintiff alleges.

21

22  **B. Statute of Limitations**

23       Defendant Clayton asserts that the relevant statute of limitations bars plaintiff's claims

24  against him. In support of this, he contends that either a two or four year statute of limitations applies

25  to plaintiff's claims and that this action accrued more than four years ago.

26  //

3

Finding no relevant precedent set by the Supreme Court of the Commonwealth of the Northern Mariana Islands ("CNMI Supreme Court") on the issue of when a claim accrues, the court believes that the CNMI Supreme Court would look to federal law on this issue. "Under federal law, a cause of action generally accrues when a plaintiff knows or has reason to know of the injury which is the basis of his action." *Gibson v. United States*, 781 F.2d 1334, 1344 (9th Cir. 1986) (quoting *Cline v. Brusett*, 661 F.2d 108, 110 (9th Cir. 1981)).

Defendant Clayton argues that the claims against him are time barred because plaintiff's injuries occurred no later than in 2000, when judgment in the Bisom case was entered. This, however, is incorrect as plaintiff is still defending the Bisom case.

Furthermore, defendant Clayton claims that even though plaintiff allegedly was not aware of any injury until 2004, plaintiff had reason to know of the injury because plaintiff was aware of the Bisom case as early as 1996. Regardless of whether plaintiff was aware of the Bisom case as early as 1996, plaintiff had no reason to know that defendant Clayton failed to represent him in the Bisom case until he received an April 6, 2004, letter from the AG's office addressed to him. *See* Letter from Benjamin Sachs to Robert Bradshaw (Apr. 6, 2004), *in* Second Amended Complaint, exh. A12. Absent leave of court, it is counsel's affirmative duty to serve notice of his withdrawal as counsel to his client. *See* N. Mar. I. Commw. Super. Ct. R. Practice 5(d). Furthermore, because defendant Bush, in his June 30, 1999, letter to plaintiff, implied that he was currently representing plaintiff in the Bisom case and that if plaintiff answered his questions he would continue to represent plaintiff in the Bisom case, plaintiff had every reason to believe that the AG's Office would continue to represent him in the Bisom case. *See* Letter from William C. Bush to Robert D. Bradshaw (June 30, 1999), *in* Second Amended Complaint, exh. A10 (stating "Do you want to have the Office of the Attorney General continue to represent you?" and "If you wish to have us continue to provide your defense, then please answer the remaining questions. Your answers will be protected under the attorney-client privilege"); Letter from Robert D. Bradshaw to William C. Bush (July 14, 1999), *in* Second

//

4

Amended Complaint, exh. B6-9 (asking for limited representation and answering defendant Bush's questions) .

Accordingly, simply being aware that the Bisom case was pending would not put plaintiff on notice that his attorney withdrew as counsel or that his attorney represented him improperly, and, therefore, the statute of limitations does not bar plaintiff's claims against defendant Clayton.

## C. Younger Abstention

Defendant Clayton claims that under *Younger v. Harris*, 401 U.S. 37 (1971), the court must abstain from this case. *Younger* abstention is based on equity and comity. *Attorney General v. Torres*, 419 F.3d 1017, 1022 (9th Cir. 2005). Accordingly, "[a]bsent 'extraordinary circumstances,' *Younger* abstention is proper when the following three conditions have been met: (1) There are ongoing state judicial proceedings; (2) The proceedings implicate important state interests; and (3) The state proceedings provide the plaintiff with an adequate opportunity to raise the federal claim." *Id.* The essence of *Younger* abstention is to prevent "duplicative legal proceedings [that] may be interpreted to reflect negatively on the District's ability to enforce constitutional principles." *Id.* at 1024.

Defendant Clayton claims that Bisom's appeal of Judge Lizama's December 29, 2005, order vacating the default judgment is an "ongoing state judicial proceeding" that invokes *Younger* abstention. However, as stated above, Judge Lizama's order deals with the dispute between plaintiff and defendant Bisom regarding plaintiff's liability to defendant Bisom for termination of defendant Bisom's employment.  Because the proceedings by Judge Lizama will not allow plaintiff the opportunity to raise his claim against the moving defendants for their alleged failure to represent him in the Bisom case, Bisom's appeal of Judge Lizama's order is not an "ongoing state judicial proceeding" in the *Younger* abstention sense. Accordingly, this case does not result in duplicative legal proceedings and, therefore, *Younger* abstention does not apply.

//

5

**D. Rooker-Feldman Doctrine**

Defendant Clayton urges the court to dismiss the case based on the Rooker-Feldman doctrine because this case is a *de facto* appeal of the Bisom case. Defendant Clayton's Motion to Dismiss Second Amended Complaint and Incorporated Memorandum of Points and Authorities at 11, No. 155 (July 25, 2006); *see D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). Under the Rooker-Feldman doctrine, the court lacks subject matter jurisdiction to review final determinations of the CNMI Superior Court. *See Feldman*, 460 U.S. at 476.

The Rooker-Feldman doctrine does not apply because plaintiff is not requesting the court to review the CNMI Superior Court's ruling in the Bisom case. The Bisom case dealt with whether plaintiff was liable to defendant Bisom for damages. Here, plaintiff is seeking damages from defendant Clayton for violating his legal right to have received representation from the AG's office and the resulting monetary and emotional expense he incurred in defending the Bisom case.

Furthermore, because defendant Clayton does not articulate exactly what he believes the court would be reviewing in regards to the CNMI Superior Court ruling in the Bisom case, defendant Clayton has not met his burden of demonstrating that the Rooker-Feldman doctrine applies. Accordingly, the court does not find that this case is a *de facto* appeal of the Bisom case and, therefore, the Rooker-Feldman doctrine does not apply.


**E. Service by Publication**

Defendant Clayton requests the court to dismiss plaintiff's claim for improper service of process. Defendant Clayton asserts that because he resides in Shanghai, China, plaintiff's service of process must comport to Federal Rule of Civil Procedure 4(f) ("Rule 4(f)"). Defendant further asserts that Rule 4(f) requires plaintiff to serve defendant Clayton in accordance with the Convention on Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, *concluded* Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.A. 163 [hereinafter Hague Service Convention].

Defendant Clayton claims that plaintiff never attempted to serve Defendant Clayton in the manner required by the Hague Service Convention and has not shown good cause for his failure to do so.

The court agrees that, because defendant Clayton lives abroad, plaintiff must first attempt to serve process on defendant Clayton in compliance with Rule 4(f). The court, however, does not agree that Rule 4(f) requires plaintiff to serve defendant in accordance with the Hague Service Convention. Rule 4(f) states:

> Unless otherwise provided by federal law, service upon an individual whom a waiver has been obtained and filed, other than an infant or an incompetent person, may be effected in a place not within any judicial district of the United States:
> (1) by any internationally agreed means reasonably calculated to give notice, such as those means authorized by the [Hague Service Convention]; or
> (2) if there is no internationally agreed means of service or the applicable international agreement allows other means of service, provided that service is reasonably calculated to give notice . . .; or
> (3) by other means not prohibited by international agreement as may be directed by the court.

Once again, as the court explained in its Order Regarding Motions Heard on June 8, 2006, at 6 n.1, No. 134 (June 12, 2006), the Hague Service Convention does not apply because:

> (1) Plaintiff does not have the address of defendant [Clayton]; . . . Affidavit in Support of Motion to Serve Andrew Clayton by Publication and For A Change to the Period Allowed For Service From 120 Days to 240 Days, No. 36 (Dec. 9, 2005); *see* Hague Service Convention art. 1 ("The Convention shall not apply where the address of the person to be serviced with the document is not known."); and
> (2) . . . [S]ervice is deemed complete upon the fourth publication [so] there is no "occasion to transmit a judicial or extrajudicial document for service abroad." Hague Service Convention art. 1 ("The [Hague Service] Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad."); *see Volkswagenwerk Aktiengesellshaft v. Schlunk*, 486 U.S. 694, 704 (1988) ("[T]he internal law of the forum is presumed to determine whether there is occasion for service abroad.").

Order Regarding Motions Heard on June 8, 2006, at 6 n.1.

Here, plaintiff does not know defendant Clayton's address; simply knowing that defendant Clayton resides in Shanghai, China, is not enough. Furthermore, defendant Clayton does not provide proof or even suggest that plaintiff knows defendant Clayton's address. Without defendant Clayton's

address, it is impossible for plaintiff to follow the procedure set out in the Hague Service Convention. Moreover, the court reiterates that Article 1 specifically states that the Hague Service Convention does not apply in these types of circumstances.

Accordingly, because defendant Clayton's motion to dismiss for improper service of process is tantamount to an appeal of the court's earlier order, or alternatively, because defendant Clayton's motion lacks merit, the court **DENIES** defendant Clayton's motion to dismiss the complaint against him for improper service.

## F. Second Claim

Defendant Clayton argues that the second claim should be dismissed because: (1) he has absolute immunity; (2) he has qualified immunity; (3) gross incompetence is not a recognized federal cause of action; (4) there was no attorney-client relationship between the AG's office and plaintiff to support a claim for legal malpractice; (5) the Fifth and Ninth Amendment do not provide plaintiff a cause of action in this case; and (6) plaintiff fails to state a claim under 42 U.S.C. § 1983.

## 1. Absolute Judicial Immunity

Defendant Clayton claims that he has absolute judicial immunity. "Government officials sued in their individual capacities under § 1983 may raise the affirmative defenses of qualified or absolute immunity." *Butler v. Elle*, 281 F.3d 1014, 1021 (9th Cir. 2002). "The [government] official seeking immunity bears the burden of showing that such immunity is justified for the function in question." *Fry v. Melaragno*, 939 F.2d 832, 836 n.6 (9th Cir. 1991).

Defendant Clayton cites to *Flood v. Harrington*, 532 F.2d 1248, 1250-51 (9th Cir. 1976), for the proposition that he has absolute judicial immunity in this case. In *Flood v. Harrington*, the Ninth Circuit held that absolute judicial immunity extends to "damages allegedly caused by the initiation of prosecution and the presentation of the state's case" and to "prosecutorial conduct 'intimately associated with the judicial phase of the criminal process.'" *Flood*, 532 F.2d at 1251 (quoting *Imbler*

1    *v. Pachtman*, 424 U.S. 409, 430 (1976)).

2       Here, plaintiff alleges that defendant Clayton conspired against him in the Bisom case. In the

3    Bisom case, defendant Clayton was not performing the role of a prosecutor. Rather, he was

4    performing the role of defense counsel in a civil case. Furthermore, defendant Clayton was not

5    opposing plaintiff's position in the Bisom case but, instead, were allies and were allegedly defending

6    plaintiff from Bisom's claims. Accordingly, because defendant Clayton was not performing the

7    function of a prosecutor and did not initiate prosecution of the Bisom case and his conduct was not

8    associated with the judicial phase of a criminal process, *Flood* does not support defendant Clayton's

9    argument.

10       "[I]t is only the specific function performed, and not the role or title of the official, that is the

11    touchstone of absolute immunity." *Miller v. Gammie*, 335 F.3d 889, 897 (9th Cir. 2003) (en banc).

12    Regardless of his title, the court looks to the function defendant Clayton performed in the Bisom

13    case. Defendant Clayton was functioning like any attorney would when defending a client.

14    Accordingly, because a defense attorney is not shielded by absolute judicial immunity, defendant

15    Clayton does not have absolute judicial immunity in this case.

16

17    **2. Qualified Immunity**

18       Defendant Clayton also claims that he has qualified immunity in this case because his actions

19    "[did] not violate 'clearly established' statutory or constitutional rights of which a reasonable person

20    would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Qualified immunity generally

21    protects government officials in the course of performing the discretionary duties of their offices."

22    *Butler*, 281 F.3d at 1021. In determining whether an official has qualified immunity, the court

23    examines the "objective legal reasonableness" of a government official's conduct. *Id.* (quoting

24    *Harlow*, 457 U.S. at 818). Accordingly, the court must first determine whether the official violated a

25    statutory or constitutional right. If the court finds that the official violated a statutory or

26    constitutional right, the court must then determine: "(1) whether the violated right was clearly

9

1  established [at the time the action occurred], and (2) whether a reasonable public official could have

2  believed that the particular conduct at issue was lawful." *Butler*, 281 F.3d at 1021.

3      Plaintiff alleges that defendant Clayton violated his statutory right to be defended and

4  indemnified in the Bisom case and his U.S. constitutional right to due process and equal protection.[1]

5  *See* Complaint ¶ 253, at 48. In response, defendant Clayton claims that plaintiff did not submit a

6  request for defense and indemnification as required by the Public Employee Legal Defense and

7  Indemnification Act of 1986 ("P.E.L.D.I.A."), P.L. 5-12, and therefore plaintiff did not have a right

8  to be defended and indemnified.

9      Under P.E.L.D.I.A., plaintiff must have requested the AG's office to "defend him against any

10  claim against him for an injury arising out of an act that he reasonably and in good faith believes has

11  occurred within the scope of his employment as an employee of [the Commonwealth] (whether or

12  not the employee is sued in an official or private capacity)." P.E.L.D.I.A. § 3(a)(1). This request must

13  be made in writing not less than five days before an answer must be filed. P.E.L.D.I.A. § 3(a)(4).

14  Because, as alleged, plaintiff has never had to file an answer to Bisom's claims in the

15  Commonwealth Superior Court, as long as plaintiff made a request to be defended from Bisom's

16  claim in the Commonwealth Superior Court, then plaintiff's statutory right, and possibly his

17  constitutional right to due process, may have been violated.

18      If an attorney-client relationship had ever existed between plaintiff and the AG's office, then

19  there is a strong implication that plaintiff requested to be defended in the Bisom case. While

20  defendant Clayton claims that an attorney-client relationship never existed, numerous allegations and

21  exhibits attached to the Second Amended Complaint suggest that the AG's office and plaintiff had

22

23  ─────────────────

24  [1] Plaintiff also claims that his rights under the Constitution of the Northern Mariana Islands, art. III, §
11 were violated. Section 11 states, in relevant part, that "The Attorney General shall be responsible
25  for providing legal advice to the governor and executive departments, representing the
Commonwealth in all legal matters, and prosecuting violations of Commonwealth law." Because §
26  11 does not provide plaintiff with a personal right, the AG defendants could not have violated his
Commonwealth constitutional rights by not defending him in the Bisom case.

some form of attorney-client relationship.[2] First, defendant Cotton sent at least five letters to plaintiff in regards to the Bisom case. Many of them updated plaintiff on the Bisom case and expressed an interest in whether plaintiff had been served.[3] In one letter, defendant Cotton inferred that he would submit a response once it was due. *See* Letter from D. Douglas Cotton to Robert Bradshaw (Apr. 17, 1997), *in* Second Amended Complaint, exh. A7 ("Please let me know when you are served so that we will be able to determine when our response is due." ). In the same letter, defendant Cotton explained to plaintiff that he told defendant Bisom that he would not accept service on plaintiff's behalf.[4] *Id.*

The most conspicuous expression that an attorney-client relationship existed until at least June 30, 1999, is contained in defendant Bush's June 30, 1999, letter to plaintiff. *See* Letter from

---

[2] Throughout their brief, defendants cite to *Bisom v. Commonwealth*, 2002 MP 19 (N. Mar. I.), to suggest that the issue of whether an attorney-client relationship existed was already decided. However, because defendant Clayton did not articulate why issue preclusion should apply against plaintiff - a party who did not participate in the litigation - defendant Clayton fails to meet his burden. *See Offshore Sportswear, Inc. V. Vuarnet Int'l, B.V.*, 114 F.3d 848, 850 (9th Cir. 1997) ("The party asserting preclusion bears the burden of showing with clarity and certainty what was determined by the prior judgment.").

[3] In relevant part, they state: (1) "[I]f you are served with a Summons and Complaint, please call me immediately because service starts the time running for your response[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Dec. 6, 1996), *in* Second Amended Complaint, exh. A3, No. 83 (Mar. 30, 2006); (2) "Please let me know immediately if any attempt is made to serve you with the Summons and Complaint. In addition, please let me know your new telephone number and a fax number, if available, where I can send documents if necessary[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Jan. 22, 1997), *in* Second Amended Complaint, exh. A4; (3) "Please let me know when you are served so that we will be able to determine when our response is due[,]" Letter from D. Douglas Cotton to Robert Bradshaw (Apr. 17, 1997), *in* Second Amended Complaint, exh. A7; and (4) "Please let me know when you are served[,]" Letter from D. Douglas Cotton to Robert Bradshaw (June 2, 1997), *in* Second Amended Complaint, exh. A8.

[4] Defendant Cotton may have been referring to his letter to defendant Sorensen, defendant Bisom's counsel during the Bisom case. *See* Letter from D. Douglas Cotton to Jay H. Sorensen (Dec. 31, 1996), *in* Second Amended Complaint, exh. A5-6, No. 83 ("Should plaintiff still desire to serve the Summons in this action after reading this letter, I will agree to accept service on behalf of Scott Tan. I am checking on whether Robert Bradshaw would like us to accept service on his behalf.").

William C. Bush to Robert D. Bradshaw (June 30, 1999). In that letter, defendant Bush indicated that he is now in charge of handling the defense in the Bisom case. Defendant Bush also disclosed his legal perspective on the Bisom case, information that he would not be permitted to disclose to plaintiff had plaintiff not been a client as it would be protected by the attorney-client privilege held by the other defendants in the Bisom case. In addition, he asks:

> Do you want to have the Office of the Attorney General continue to represent you? All claims against you in case 96-1320 are now listed as being in your individual capacity. We will defend if you will cooperate. I have not yet filed an answer to the claims directed only toward you. If you do not wish to have this office represent you further, I will transmit that information to the Superior Court, and I will ask to have the Attorney General withdrawn as your representative. If we withdraw, then no information previously provided by you to this office as your attorney in this litigation could be used by this office to your detriment. If you wish to have us continue to provide your defense, then please answer the remaining questions. Your answers will be protected under the attorney-client privilege.

Defendant Bush closed his letter by asking plaintiff for his contact information, such as a phone number or email address, so that he could "exchange information regarding [plaintiff's] defense."

The strongest evidence to support that an attorney-client relationship had existed are the numerous representations that defendants Cotton and Bush, as officers to the court, made to the court. Upon taking judicial notice of all the files to the Bisom case,[5] the court found at least forty-six representations indicating that the AG's office was plaintiff's counsel in the Bisom case. *See* App. I. These representations were made by defendants Cotton and Bush. Accordingly, they are considered admissions by a party-opponent. *See* Fed. R. Evid. 801(d)(2).

Thus, an attorney-client relationship between the AG's office and plaintiff existed at some point. Furthermore, the court cannot find any reason why an attorney-client relationship would have existed without plaintiff's request, either written, oral, or by inference, to be defended. Accordingly, construing the facts in the light most favorable to the non-moving party, plaintiff has properly pled

---

[5] Upon the moving defendants' suggestion and upon the consent of all the parties, the court took judicial notice of all files to the Bisom case.

that he was eligible to be defended and was being defended by the AG's office. Because the AG's office failed to represent plaintiff throughout the Bisom case or failed to notify plaintiff of its intent to withdraw as plaintiff's counsel, N. Mar. I. Commw. Super. Ct. R. Practice 5(d), plaintiff properly pled that his rights under P.E.L.D.I.A. were violated. Furthermore, because plaintiff pled that the AG's office failed to notify plaintiff of its intention to withdraw as plaintiff's counsel, plaintiff has properly pled that defendant Clayton, as Assistant Attorney General defending the Bisom case, violated plaintiff's rights under P.E.L.D.I.A.

Second, defendant Clayton claims that even if plaintiff's constitutional or statutory right was violated, it was not clearly established at the time the violation occurred because plaintiff's request in his July 14, 1999, letter was equivocal. *See* Letter from Robert D. Bradshaw to William C. Bush (July 14, 1999).

Plaintiff's July 14 letter was four full pages, single spaced and typed. It was written in response to defendant Bush's June 30 letter. *See* Letter from William C. Bush to Robert D. Bradshaw (June 30, 1999). In it, plaintiff explains that he has not been personally served, that he has no knowledge of facts that may result in constructive service, and that he has not authorized the AG's office to accept service. He then spends two full pages explaining what he knows about Bisom's claims.

In regards to the authority plaintiff was willing to grant the AG's office in regards to the Bisom case, plaintiff reiterated that "[a]s I said to Doug Cotton, if I am served I will contact the AG to make the answer." Letter from Robert D. Bradshaw to William C. Bush at 1 (July 14, 1999). Plaintiff also stated:

> . . . . Should you file a motion to strike my name individually from the suit? Since you have suggested it, it seems like a good idea although I don't know that it is necessary other than if this thing goes to trial and Bisom tries to later claim service on me; thus, a pre-trial motion as you suggest would flush out whatever case he might try to make[ ].
>
> Accordingly, if you wish to file a motion to have me removed individually from the CNMI case, you have my permission and agreement. If you don't feel that such a motion will benefit your case, fine and I understand. . . .

As for [] cooperating with you, I feel that I have went the extra mile to cooperate with the AG on this case. If you have knowledge otherwise, please advise me as I would like to hear about it.

Since the [federal] case is now history, I don't see that I have any role in anything further. However, I am anxious to help you and the CNMI case in any way possible. In that sense, I will supply whatever information I can. . . .

Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes.) I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on the 95-0042 case. As [far] as the CNMI [case], your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI [superior court] never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

*Id.*

Plaintiff's last paragraph quoted above, which defendant Clayton argues is an equivocal request for a defense, must be construed in light of the entire letter and defendant Bush's June 30 letter, to which plaintiff was replying. In defendant Bush's June 30 letter, he stated: "If you do not wish to have this office represent you further, I will transmit that information to the Superior Court, and I will ask to have the Attorney General withdrawn as your representative." *See* Letter from William C. Bush to Robert D. Bradshaw at 2 (June 30, 1999). Because plaintiff repeatedly expressed to defendants Cotton and Bush that he would not authorize the AG's office to accept service, his statement, "As I was never served, I never asked for any assistance and the CNMI [Superior Court] never should have been told that the AG represents me," would mean to a reasonable attorney who read the letter that the AG's office should never have appeared in court on plaintiff's behalf.

Construing this in the light most favorable to the nonmoving party, plaintiff properly alleged that his July 14 letter expressed that he does not authorize the AG's office to accept service but that he does authorize the AG's office to file a motion to remove him individually from the Bisom case and to represent him in the event that the court deemed that he was a party to the case. Thus,

plaintiff's request for a defense from the AG's office was not equivocal and plaintiff has alleged a violation of a "'clearly established' statutory or constitutional right of which a reasonable person would have known." Accordingly, as alleged, defendant Clayton does not have qualified immunity in this case.

### 3. Gross Incompetence

Defendant Clayton contends that plaintiff's allegations based on the theory of gross incompetence should be dismissed because it is not a recognized federal cause of action. Because a *pro se* litigant is not generally held to the stringent standards and formal pleadings required by lawyers, *Haines*, 404 U.S. at 596, the court understands plaintiff's second claim as alleging that defendant Clatyon failed to represent plaintiff in the Bisom case in violation of due process and equal protection rights, Commonwealth and malpractice laws, and in breach of his employment contract. Accordingly, the court need not consider whether gross incompetence is a recognized cause of action because plaintiff has not pled such theory. *See Karim-Panahi v. Los Angeles Police Dept.*, 839 F.2d 621, 623 (9th Cir. 1988) ("In civil rights cases where the plaintiff appears pro se, the court must construe the pleadings liberally and must afford plaintiff the benefit of any doubt.").

### 4. Legal Malpractice

Defendant Clayton urges the court to dismiss plaintiff's claim for legal malpractice on the basis that an attorney-client relationship never existed. For plaintiff's theory of legal malpractice to withstand defendant Clayton' motion to dismiss, plaintiff must have alleged that either he had an attorney-client relationship with the AG's office or that he was a non-client that the AG's office owed a duty of care. *See* 7 N. Mar. I. Code § 3401 (2004) (In the absence of local law, the Restatement governs.); Restatement (Third) of Law Governing Lawyers § 50 ("[A] lawyer owes a client the duty to exercise care . . . in pursuing the client's lawful objectives in matters covered by the representation."); Restatement (Third) of Law Governing Lawyers § 51 (listing circumstances in

which an attorney owes a duty to a prospective client or other non-clients). As explained above, in construing the allegations of material fact in the light most favorable to the non-moving party, an attorney-client relationship is properly pled. Furthermore, because defendant Clayton was acting on behalf of the AG's office in the Supreme Court appeal during the time in which the AG's office had failed to notify plaintiff of its intent to withdraw as plaintiff's counsel, defendant Clayton had a duty to plaintiff that is covered by plaintiff's legal malpractice claim. Accordingly, because defendant Clayton did not challenge any other aspect of plaintiff's malpractice claim, the court **DENIES** defendant Clayton's motion to dismiss the malpractice claim.

### 5. Fifth and Ninth Amendment

Defendant Clayton argues that the court should dismiss portions of plaintiff's second claim to the extent that it alleges a violation of the Fifth and Ninth Amendments because the Fifth Amendment does not limit the conduct of the Commonwealth and no individual right exists under the Ninth Amendment. Defendant Clayton is correct. *See Barron v. City of Baltimore*, 32 U.S (7 Pet.) 243, 248 (1833) ("[T]he fifth amendment must be understood as restraining the power of the general government, not as applicable to the states."); *Strandberg v. City of Helena*, 791 F.2d 744, 748 (1986) ("[T]he Ninth Amendment has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claim."). While section 501 of the Covenant to Establish the Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, 48 U.S.C. 1801 (1993) [hereinafter Covenant], does provide that the Fifth and Ninth Amendments apply within the Commonwealth, it specifies that they will only be applicable "as if the [Commonwealth] were one of the several States." Covenant § 501. Accordingly, the court **DISMISSES WITH PREJUDICE** any allegation within the second claim that defendant Clayton violated plaintiff's Fifth and Ninth Amendment rights.

//

//

## 6. 42 U.S.C. § 1983

Defendant Clayton also urges the court to dismiss plaintiff's allegations that his due process and equal protection rights under the Fourteenth Amendment were violated. Defendant Clayton suggests that plaintiff has not asserted a claim under 42 U.S.C. § 1983, and because a due process or equal protection violation may only be asserted under § 1983, the court must dismiss plaintiff's allegations of due process and equal protection violations. While the court agrees that plaintiff may only utilize § 1983 for these types of claims, the court is not persuaded that plaintiff failed to assert his due process and equal protection claims under 42 U.S.C. § 1983.

For a claim to fall under § 1983, plaintiff must allege: "(1) that a person acting under color of state law committed the conduct at issue, and (2) that the conduct deprived the claimant of some right, privilege, or immunity protected by the Constitution or laws of the United States." *Leer v. Murphy*, 844 F.2d 628, 632-33 (9th Cir. 1988). Plaintiff alleges that defendant Clayton was acting as a member of the AG's office in connection with the Bisom case. Accordingly, plaintiff satisfied the first prong that defendant Clayton was acting under color of state law. In addition, plaintiff also alleges that defendant Clayton violated his due process and equal protection rights under the Fourteen Amendment. At this stage of the proceedings, that is all that is required. Accordingly, **THE COURT DENIES** defendant Clayton's motion to dismiss plaintiff's second claim.

## G. Eighth Claim

Defendant Clayton urges the court to dismiss plaintiff's eighth claim[6] for failure to make specific allegations of conspiracy against defendant Clayton. "All pleadings shall be so construed as to do substantial justice." Fed. R. Civ. P. 8(f).

//

//

---

[6] Plaintiff's eighth claim alleges a violation of the Racketeer Influence and Corrupt Organizations Act ("RICO").

17

In plaintiff's general allegations, he states:

> In the Supreme Court appeal in [March through September of 2002], the [Commonwealth] was represented by [Assistant Attorney General] Clayton. On the appeal, the Supreme Court upheld the trial court. But importantly, just as the trial court had [plaintiff's] letter of July 14, 1999, the Supreme Court also had it and quoted part of it in it decision.

Second Amended Complaint ¶ 145, at 28. While this suggests that plaintiff was injured by defendant Clayton for continuing to disregard plaintiff's attorney-client privilege, plaintiff does not allege that such injury was perpetrated in connection with an alleged conspiracy. Accordingly, plaintiff's eight claim is **DISMISSED WITHOUT PREJUDICE** with leave for plaintiff to amend his eighth claim.

## H. Ninth Claim Against Defendant Commonwealth

In plaintiff's ninth claim for breach of employment contract, plaintiff does not make an allegation that defendant Clayton injured plaintiff. Accordingly, defendant Clayton's motion to dismiss plaintiff's ninth claim is **DENIED**.

## I. Tenth Claim

In plaintiff's tenth claim, he alleges that the Commonwealth, through its agent defendant Clayton, discriminated against him in violation of the Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359 (codified as amended in scattered sections of 8 U.S.C.). Defendant Clayton urges the court to dismiss plaintiff's tenth claim because the Covenant excludes the application of the Immigration Reform and Control Act of 1986 to the Commonwealth. Defendant Clayton is correct. *See* Covenant §503 & 506. Accordingly, plaintiff's tenth claim against defendant Clayton is **DISMISSED WITH PREJUDICE**.

//

//

//

**M. Fourteenth Claim**

While defendant Clayton asserts that plaintiff fails to allege a cause of action in his fourteenth claim for an intentional tort, he does not explain why.[7] Without more than a mere legal conclusion that plaintiff fails to allege a cause of action, defendant Clayton fails to meet his burden. Accordingly, the court **DENIES** defendant Clayton's motion to dismiss plaintiff's fourteenth claim.

**N. Fifteenth Claim**

In relevant part, plaintiff alleges in his fifteenth claim that defendant Clayton slandered plaintiff in connection with the Bisom case and intentionally inflicted emotional distress upon plaintiff. "An attorney at law is absolutely privileged to publish defamatory matter concerning another in communication preliminary to a proposed judicial proceeding, [and] . . . during the course, and as part of, a judicial proceeding." Restatement (Second) of Torts § 586 (1977); *see* N. Mar. I. Code § 3401. Accordingly, defendant Clayton is absolutely privileged for any communications within any judicial proceeding. On the other hand, defendant Clayton is not privileged to publish or utter defamatory matters outside of any judicial proceedings.

Because plaintiff does not allege that the slander occurred outside of any judicial proceeding and because his allegations seem to suggest that the slander occurred in connection with a judicial proceeding, plaintiff's fifteenth claim is **DISMISSED WITHOUT PREJUDICE** with leave for plaintiff to amend his fifteenth claim. *See Noll*, 809 F.2d at 1448.

**O. Sixteenth and Seventeenth Claim**

While plaintiff labels paragraphs 383 to 397 as the sixteenth and seventeenth claims for loss of enjoyment of life and extra expense placed on plaintiff, respectively, no such causes of action

---

[7] Plaintiff alleges in his fourteenth claim that the moving defendants, with the exception of the Commonwealth, "have acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on [plaintiff]." Second Amended Complaint ¶ 376, at 68.

exist. Accordingly, to the extent that they are considered separate causes of action, plaintiff's

sixteenth and seventeenth claims are **DISMISSED WITH PREJUDICE**. However, because the

substance of the paragraphs explains the damages plaintiff seeks, plaintiff is allowed leave to amend

his complaint to include those factual allegations, if and where appropriate.

### III. Conclusion

      **FOR THE FORGOING REASONS, THE COURT:**

      **GRANTS** defendant Clayton's motion to dismiss with prejudice the Fifth and Ninth

Amendment theories contained in plaintiff's second claim;

      **GRANTS** defendant Clayton's motion to dismiss plaintiff's eighth claim without prejudice;

      **GRANTS** defendant Clayton's motion to dismiss plaintiff's tenth claim with prejudice;

      **GRANTS** defendant Clayton's motion to dismiss plaintiff's eleventh, twelfth, sixteenth, and

seventeenth claim with prejudice but allows plaintiff leave to amend the complaint to include the

facts alleged in these claims, if and where appropriate;

      **GRANTS** defendant Clayton's motion to dismiss plaintiff's fifteenth claim without

prejudice;

      **ALLOWS** plaintiff leave to amend his eighth and fifteenth claims;

      **DENIES** all other motions; and

      **ORDERS** that plaintiff file an amended complaint in conformity with this order within

twenty days.

      **IT IS SO ORDERED.**

      **DATED** this 8th day of September, 2006.


                                       ALEX R. MUNSON
                                            Judge

**Appendix I**

The following forty-six documents contain representations by either defendant Cotton or defendant Brown that the AG's office was plaintiff's attorney in the Bisom case.

*Bisom v. Commonwealth*, CV-95-0042 (D.N. Mar. I. 1996)

1.      Answer to Complaint, No. 5 (Jan. 8, 1996).
2.      Stipulation and Order to Continue Case Management Conference, No. 11 (Feb. 21, 1996).
3.      Pre-Discovery Disclosure Statement, No. 15 (Apr. 1, 1996).
4.      Conference Statement, No. 16 (Apr. 1, 1996).
5.      Defendants' Motion to Extend Production Request Response Time, No. 25 (June 12, 1996).
6.      Ex Parte Motion Under Rule 220-11 For Motion To Expedite Hearing On Defendants' Motion To Extend Production Request Response Time, No. 26 (June 12, 1996).
7.      Memorandum In Support of Defendants' Motion to Extend Product Request Response Time, No. 27 (June 12, 1996).
8.      Certificate of Counsel Under Rule 220-11, No. 28 (June 12, 1996) (attorney stating that he is counsel for plaintiff in his individual and official capacity).
9.      Stipulation, Re: Confidentiality Agreement, No. 35 (July 26, 1996).
10.     Notice of Deposition of Plaintiff Robert A. Bisom, No. 37 (Sept. 6, 1996).
11.     Notice of Deposition of the Disciplinary Committee of the Commonwealth of the Northern Marianas Bar Association, No. 39 (Sept. 30, 1996).
12.     Notice of Deposition of Stanley Tudela Torres, No. 40 (Sept. 30, 1996).
13.     Notice of Motion and Motion For Judgment on the Pleadings and For Summary Judgment, No. 45 (Oct. 4, 1996).
14.     Notice of Motion and Motion in Limine to Exclude Matson Letter, No. 50 (Oct. 18, 1996).
15.     Reply Memorandum of Points and Authorities In Support of Motion For Judgment on the Pleadings and For Summary Judgment, No. 54 (Oct. 24, 1996).
16.     Request To Schedule Oral Discovery Motion, No. 57 (Oct. 28, 1996).
17.     Memorandum of Points and Authorities In Support of Opposition To Plaintiff's Motion In Limine To Admit Matson Letter, No. 58 (Oct. 25, 1996).
18.     Memorandum of Points and Authorities In Opposition To Motion To Compel; Declaration of Robert B. Dunlap II, No. 62 (Oct. 31, 1996).

*Bisom v. Commonwealth*, CV-96-0052 (D.N. Mar. I. 1997)

19.     Defendants' Reply to Plaintiff's Opposition to Motion to Require Plaintiff to File A Bond For Costs, No. 13 (Mar. 10, 1997).
20.     Defendants' Memorandum of Points and Authorities in Opposition To Plaintiff's

Motion to Remand, No. 12 (Mar. 7, 1997).

21. Declaration of Loren A. Sutton In Support of Defendants' Opposition To Plaintiff's Motion to Disqualify, No. 11 (Mar. 7, 1997).

22. Defendants' Memorandum of Points and Authorities In Opposition To Plaintiff's Motion to Disqualify, No. 10 (Mar. 7, 1997).

23. Order Re: Hearing Schedule, No. 7 (Feb. 7, 1997).

24. Notice of Motion and Motion to Require Plaintiff to File A Bond For Costs, No. 6 (Feb. 6, 1997).

*Bisom v. Commonwealth*, CV-98-0002 (D. N. Mar. I. 1998)

25. Defendants' Notice of Motion and Motion to Amend Notice of Removal of Action, No. 17 (Mar 5, 1998).

26. Ex Parte Motion For Leave to Exceed the Page Limits For A Reply Brief, No. 16 (Mar. 3, 1998).

27. Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss, No. 14 (Feb. 27, 1998).

28. Defendants' Memorandum of Points and Authorities in Opposition To Plaintiff's Motion to Remand, No. 9 (Feb. 20, 1998).

29. Defendants' Notice of Motion and Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State A Claim, No. 3 (Jan. 23, 1998) (specifically arguing for Bradshaw).

*Bisom v. Commonwealth,* No. 96-1320 (N. Mar. I. Commw. Super. Ct. 2000)

30. Notice of Motion and Motion For More Definite Statement (May 9, 1997) (specifically arguing claims against Bradshaw).

31. Defendants' Notice of Motion and Motion to Dismiss for Lack of Subject Matter Jurisdiction, Failure to State A Claim, and Insufficiency of Process (May 9, 1997) (specifically arguing about claims against Bradshaw in both his official and individual capacity).

32. Notice of Motion and Motion to Require Plaintiff to File A Bond For Costs (May 9, 1997).

33. Defendants' Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State A Claim (June 26, 1997).

34. Notice of Motion and Motion For More Definite Statement (June 26, 1997)

35. Stipulation for Extension of Time to File Opposition (July 9, 1997).

36. Defendants' Reply to Plaintiff's Opposition to Motion to Dismiss For Lack of Personal Jurisdiction and Failure to State A Claim (July 17, 1997).

37. Defendants' Reply to Plaintiff's Opposition to Motion For More Definite Statement (July 17, 1997).

38. Memorandum of Points and Authorities, Re: Entitlement of Plaintiff to the Protections of the Civil Service System.

39.    Reply to Plaintiff's Brief, Re: Coverage Under Civil Service System (Aug. 20, 1997).

40.    Defendant's Notice of Non-Opposition to Plaintiff's Motion For Leave to File Third Amended Complaint (Dec. 10, 1997).

41.    Notice of Substitution of Party (Dec. 11, 1997) (specifically identifying Bradshaw in his official capacity).

42.    Notice of Plaintiff of Removal to Federal Court (Jan. 23, 1998).

43.    Defendants' Memorandum in Support of Motion for Reconsideration (Dec. 7, 1998).

44.    Defendant's Motion for Reconsideration of Decision (Dec. 10, 1998).

45.    Reply to Opposition to Motion For Reconsideration (Dec. 28, 1998).

46.    Unopposed Motion to Enlarge Time (Aug. 18, 1999).