F I L E D
Clerk
District Court

SEP 1 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone 208-245-1691**

Plaintiff, Pro Se

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW                  ) Civil Action No. 05-0027

      Plaintiff

      v.

COMMONWEALTH OF THE NORTHERN    ) **MEMORANDUM OF POINTS**
MARIANA ISLANDS (hereafter referred to ) **AND AUTHORITIES IN SUPPORT**
as the CNMI); et. al.                                 ) **OF MOTION FOR PARTIAL**
                                ) **SUMMARY JUDGMENT**
                                )
          Defendants                         ) Date:  OCT 1 2 2006  _____
                                )
_____)  Time:  9:00 Am  _____

i

# TABLE  OF  CONTENTS

PAGES

Title Page                                                                               i

Table of Contents                                                                        ii

Table of Authorities                                                                     iii

Introduction                                                                             1

Item I — The 120-Day Limitation on Service                                               1

Item II — The Defective First Amended Complaint                                          2

Item III — Failure to Comply With Order for Service 2d Amended
    Complaint                                                                            2

Item IV — The Presence of Fraud                                                          3

Item V — Failure to Follow Applicable Laws/Rules in Service                              9

Item VI — Malicious Prosecution                                                          10

Item VII--Castro Decision Feb 22, 2000 Made Without Personal
    Jurisdiction                                                                         15

Item VIII — Fiduciary Duty Owed Bradshaw                                                 18

Item IX — The Incompetent AG's Office                                                    18

Item X -- The Illegal $140,000 Judgment Imposed on the CNMI                              20

Item XI — The CNMI is a Enterprise per RICO                                              21

Item XII — Immigration Reform and Control Act 1986 (PL 99-603)                           22

Conclusion                                                                               22

Petition to the Court                                                                    23

Certificate of Service                                                                   25

# TABLE OF AUTHORITIES

CASES:                                                                    PAGES

Ada v. Sadhwani's Inc., 3 N.M.I. 303, 313 (MO 1992) citing
   REST. (2D) TORTS (section 526 (1977)                     8

Bisom v. CNMI, CNMI Case 96-1320                                          1, 11, 12, 16, 18, 22
                                                                          24

Bisom v. CNMI, CNMI Supreme Court Case 2000-16 and 2000-23 GA            19

Bisom v. CNMI, CNMI Supreme Court Case 06-0005 GA                        7, 16

Bisom v. CNMI, USDC Case 95-0042                                         11, 12, 24

Bivens v. Six Unknown Named Agents 303 US 388 (1971)                     22

Bradshaw v. CNMI, USDC Case 05-0027                                      2, 22

Castellano v. Fragozo, 311 F. 3d 689, 698-99 (5th Cir 2002)             13

Fabiano v. City of Palos Hills, 336 Ill. App. 3d 635, 784 N.E. 2d 258,
   271 Ill. Dec. 40 (1st Dist. 2003)                          13

Franklin v. Franklin, 365 Mo. 442, 283 S.W. 2d 483, 486                  9

Grogan v. Garner, 498 US 279 (1991)                                      9

Johnson v. Bd of County Comm'rs for County of Fremont
   (85 F 3d 489, 493 [10th Cir, 1996])                         12

Mary Patricia Roth v. Frances O'Brien, et. al. Civil Action -4-2787.
   US Distract Court Eastern Dist of PA, Nov 2004              20

Pacific Micronesia Corp, Petitioner, v. National Labor Relations Board,
   Respondent, case No   99-1078, cited by US Cir Ct DC
   on Jun 27, 2000                                             22

Pangelinan v. Itaman, 4 N.M.I. 114, 119-120 (1994) citing
   Restatement of Torts, (section) 526                         6

Poppell v. City of San Diego, 149 F. 3d 951, 961 (9th Cir 1998)        14

Reeves v. Ernst & Young, 507 U.S. 170, 183 (1993)                          21

OTHER:

US Constitution                                                            17

US Constitution, 14th Amendment                                            22

US PL 99-603 (8 USC 1324)                                                  22, 25

18 USC 1961-1965                                                           25

28 USC 1331                                                                22

42 USC 1981-1985                                                           13

CNMI Constitution                                                          18, 24

CNMI Covenant Section 503                                                  22

1 CMC, Div 2, S 2153                                                       18

PELDIA (CNMI Public Employee's Indemnification Act 7 CMC 2301)             18, 24

7 CMC 1102                                                                 10, 13, 17, 24

7 CMC 1104                                                                 9, 10, 13, 17, 24

CNMI Rules of Civil Procedure Rule 4                                       2, 17, 24

CNMI Rules of Civil Procedure Rule 4(c)(1)                                 1, 23

CNMI Rules of Civil Procedure Rule 4(d)                                    13

CNMI Rules of Civil Procedure Rule 4(e)                                    13

CNMI Rules of Civil Procedure Rule 4(f)                                    13

CNMI Rules of Civil Procefure Rule 4(k)                                    10, 13

CNMI Rules of Civil Procedure Rule 4(m)                                    1, 13, 15, 19, 23

| | |
|---|---|
| Revised Code of Washington 4.28.80 | 10 |
| Third Judicial District Court (www.the3rdjudicialdistrict.com) Glossary of Legal Terms | 9 |
| US District Court form AO 440 on Summons in a Civil Case | 5 |
| CNMI form for Return of Service | 4, 5 |
| American Jurisprudence 2d | 14 |
| Oran's Dictioanry of the Law | 5 |
| Webster's New World Dictionary, 2d College Edition | 22 |

## Introduction

1.  This memorandum is filed in support of Plaintiff's Motion for Partial Summary Judgment to outline the specific items requested for judgment and the authorities in support thereof.  This memorandum is further supported by the pleading in the second amended complaint (hereafter 2AC) and in plaintiff's supporting affidavit (hereafter BA) to include its Exhibit (hereafter Ex.) A which offers a detailed summary of events in CNMI case 96-1320.

## Item I — The 120-Day Limitation on Service

2. The 2AC, in paragraphs [para] 48-54, 69, 234-237, 287), alleges that Bisom in case 96-1320 only had 120 days to serve Bradshaw and this was not done. Per the CNMI's Superior Court's (SC) certified docket for case 96-1320 (Ex. B BA), Bisom's complaint was filed (Ex. C BA) and summons issued Dec 5, 1996. On May 1, 1997, Bisom filed his first amended complaint (his 1st, 2d, 3d and 4th amended complaints are at Ex. D, E, F, G BA).

3. From filing of the complaint and issuance of summons, the docket shows no return of service form for the summons/complaint on Bradshaw from 1996 until 1999. From 12-5-1996 to 4-5-1997, the docket and file show no court order to dismiss the case or extend time deadline for service. Per NMI Rules of Civil Procedure (crcp) rule 4(c)(1) a summons together with a copy of the complaint "shall" be served on the defendant within the time allowed under subsection (m). Rule 4(m) says if service is not made on defendant within 120 days after the filing of the complaint, the court "shall" dismiss the action or extend the time for service.

4. Bradshaw shows that Rules 4(c)(1) and 4(m) were never complied with (Ex. A, B BA). Service was not made by Apr 5, 1997 and no motion or order was filed in the SC for an extension of time/for dismissal of the case as provided in rule 4(m). On Apr 5, 1997, case 96-

1320 was dead by law. By Apr 5, 1997, the SC was obligated in that it "shall" issue an order to dismiss the suit. In case 05-0027, the USDC should find that per the facts and the law involved, the complaint and summons against Bradshaw were null and void on Apr 5, 1997. All case transactions and events after Apr 4, 1997 were of no legal effect.

## Item II — The Defective First Amended Complaint

5. Bisom filed his 1st amended complaint on May 1, 1997 (Ex. A, D BA).  Defendant CNMI filed motions.  These actions precipitated on May 20, 1997 a stipulation by the AG and Bisom and ordered by Judge Castro (hereafter Castro) which provided that Bisom would correct deficiencies in the complaint and file a 2d amended complaint and serve it on the parties by May 30, 1997 (Ex. A, H BA).  While this stipulation ordered by Castro did not state a dismissal of the 1st amended complaint, per se, that was the reality of the order.

6.  Per crcp 4 and order of US District Court (USDC) Jun 12, 2006, re service on Sosebee, Bisom and Clayton, an active, valid complaint must be on file at the court when service is made.  Based on Castro's order, the 1st amended complaint was defective and dead on May 20, 1997.  Bisom's alleged service/attempt at service after that date was void.

## Item III — Failure to Comply With Order for Service 2d Amended Complaint

7. Per the stipulation and order (Ex. A, H BA) Bisom was to correct, file and serve his 2d amended complaint by May 30, 1997.  This was not done. Later, the AG filed motions on Bisom's 2d amended complaint (which were settled by Castro's order of Nov 6, 1998--Ex. I BA).  Too Bisom and Castro both claimed service/avoidance of service of the 2d amended complaint after May 30, 1997.  As Bisom did not comply with the order (Ex. A, H BA), there was no legal service or attempted service of Bisom's 2d amended complaint on Bradshaw.

## Item IV — The Presence of Fraud

8. Bradshaw's 2AC (i.e., para 35, 52, 74-143, 161-167, 176, 184, 207-209, 216-219) alleges that Bisom/Sorensen misappropriated US postal forms and engaged in fraud on the SC to obtain a default against Bradshaw. The file shows no proof of service or the filing of a return of service on Bradshaw until Aug 27, 1999. On Aug 27, 1999 (Ex. A, J BA), Bisom's attorney, Mr Sorensen (hereafter Sorensen) sent Asst AG Sosebee (hereafter Sosebee) a letter stating: "Enclosed are copies of the Certificates of service that show service by certified mail on (Bradshaw) on two occasions. We also have the return receipt cards."

9. On 9-3-1999, Bisom's Reply to Opposition to Motion for Partial Summary Judgment (p. 13-14, Ex. K BA) cited the AG "Bradshaw has not been served with summons and has not appeared in this case" and added:  "This is a bald assertion by Defendants. No evidentiary support, nor any legal authority is cited, and no procedurally adequate means has been utilized to attack jurisdiction or service. This assertion is factually incorrect. Proof of service on Bradshaw was filed on May 6, 1997 and again on June 3, 1997. These were provided to defendants' counsel at the special request by letter of August 27, 1999. (Copy attached)."

10. On Feb 1, 2000, Sosebee filed Motion to Remove Case From jury Trial Docket (Ex. A, L BA) that says Bisom "has previously supplied copies of two United States Mail Domestic Receipt cards, neither of which bear the signature of defendant, Robert D. Bradshaw."

11. Sosebee's motion included certificates of service signed by Annabelle Guevarra (Sorensen's employee) that she mailed a copy of the amended complaint and summons by certified mail on May 5, 1997 to Bradshaw in Elk, WA certified #Z142 485 879; and she mailed the 2d amended complaint and summons to Bradshaw in Elk, WA certified mail,

3

receipt #Z 142 485 883 on Jun 3, 1997. The court may note that these two certified numbers were only four numbers apart--meaning that in a month's time, only four certified letters were sent by the Saipan post office. This seems impossible.  Also, the actual documents involved only shows that Guevarra mailed copies of the summons and complaint by certified mail. These certificates were not return of service forms. They do not show actual service. The CNMI SC uses a form for return of service filings (see example at Ex. M BA).  For service on the CNMI and Scott Tan, an Acknowledgment of Receipt of May 6, 1997 was filed with the SC from Cotton and Tan (Ex. B BD).

12. The Sosebee motion of Feb 1, 2000 (Ex. L BA) also had attached two return receipts signed by one "Manny" evidently Mongohia, as agent for Bradshaw. Receipt # Z 142 485 879 was signed on 6/4/97 and receipt #Z 142 485 883 was signed on 7/2/97. The receipt numbers of letters allegedly mailed by Guevarra are precisely the same numbers as those allegedly signed for by Manny. Elk mailman David Vanderholm (Ex. D 2AC) says that he delivered no mail to a Manny at Bradshaw's address. In fact, Vanderholm says that there were no Mannys on his mail route. Next, Sosebee's Motion (Ex. L BA) included a copy of Bradshaw's privileged letter of Jul 14, 1999 to the AG claiming no receipt of service.

13. On Feb 3, 2000, Sorensen filed Opposition to Motion to Remove Case from Trial Docket (Ex. A, N BA). This opposition (p. 2) cites Bradshaw's privileged letter of Jul 14, 1999 provided by the AG and says:  "Bradshaw received two certified mail packets from Saipan in 1996 and 1997. Plaintiff, in fact, sent two such envelopes with summons and complaint, true copies of which are attached."  Only one envelope was attached to the record furnished Bradshaw. It has the name of Jay H. Sorensen on the mailing label. Bradshaw's letter of Jul

4

14, 1999 noted that the two envelopes to him did not have the name of the party on the mailing envelopes. They came only with a Saipan post office box return address.

14. In Sorensen's Sep 3, 1999 Reply to Opposition to Motion for Summary Judgment (p. 14, Ex. K BA) he said that "Proof of service on Bradshaw was filed..."  On Feb 16, 2000, Sorensen filed Supplemental Declaration in Support of Request for Entry of Default (Ex. O BA) which said:  "2. That a copy of the Amended and Supplemental Complaint and Summons was served to the defendant on May 5, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra,  3. That a copy of the Second Amended Complaint and Amended Summons was served to the defendant on June 3, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra. 4. On November 20, 1998, plaintiff's Fourth Amended Complaint was served on Douglas Cotton, Office of the Attorney General... 5. The time within which this defendant may answer has expired, the defendant has not answered and no extensions of that time has been given."

15. Sorensen's declaration of Feb 16, 2000 (Ex. A, O BA) said service was made on Bradshaw and Cotton (as attorney for Bradshaw); return of service forms were filed in court; and that Bradshaw made no answer to summons and complaint served on him. The return of service form is filed after service is made (Oran's Dictionary of the Law, p. 371; the reverse side of US District Court form AO 440 on Summons in a Civil Case; and the CNMI SC form [Ex. M BA]). A certificate of service is a showing only that a mailing was made. Guevarra signed certificates of service (Ex. A, L BA). Yet, Sorensen says service was made (p. 13 Ex. K BA) and he filed return of service forms (showing actual service on Bradshaw). Thus,

Sorensen's declaration for default has an evident reference to the receipts signed by the so-called Manny. Sorensen filed these documents in court and used them to enter his default. There is no other explanation for the default entries filed on Feb 14-16, 2000 (Ex. A, O, P BA).

16. After Bradshaw filed 2005 motion to void judgment on him (Ex. A, Q BA) with a note of the fake postal receipts, Sorensen filed an Opposition to Motion to Void/Vacate Judgment on Jul. 15, 2005 (p. 4, Ex. R BA) that said: "in order to establish fraud, it must be shown by clear and convincing evidence that the person making the representation either: (1) knew or believed that what they were representing were false; or, (2) doubted the accuracy of the representation, or (3) knew they had no basis for making the representation. *Pangelinan v. Itaman*, 4 N.M.I. 114, 119-120 (1994), citing Restatement of Torts, (section) 526. There is nothing to indicate that plaintiff had any way to know or even suspect that the postal receipts that was returned did not bear the signature of the person it was addressed to. Accordingly, there is no basis to conclude there was any fraud." This is an admission that Sorensen filed the postal receipts but with the qualification that he did not know that they were fraudulent.

17. This opposition (Ex. R BA) had attached two alleged copies of mailing envelopes to Bradshaw. One was certified # Z 142 485 879 which shows that a first notice was made on May 9, 1997 and the letter was returned unclaimed on May 24, 1997 (which was after the 1st amended complaint's May 20, 1997 deadline). On the alleged post office return receipts, this exact same certified number appears but it shows receipt by Manny on 6/4/97 (that was after the May 20, 1997 deadline). The second envelope shows certified # Z 142 485 883 with its first notice on 6-9-97 and it being returned on 6-24-97 (that was after the 2d amended complaint's May 30, 1997 deadline). This number is the same as the postal receipt allegedly

signed by Manny on 7/2/97 (which is after the May 30, 1997 deadline per Castro's order).

18. The two sets of documents, one showing a Manny signing return postal receipts and the other showing the return of the same certified letters as unclaimed to Saipan, cannot both be true. One set has to be false/fraudulent. Since the two envelopes filed by Sorensen show his name while the two which Bradshaw took note of in his Jul 14, 1999 letter did not show a name, it must be allowed that both sets of documents can be fraudulent. Dec 29, 2005, Lizama issued a vacate order (Ex. J BA) and noted (p. 3-4, 15-16) the two conflicting sets--the postal receipts showing service and envelopes showing no service (he concludes the likelihood that the postal return receipts are fraudulent). In both sets, the dates show service/attempted service on Bradshaw for the 1st amended complaint after May 20, 1997 and for the 2d amended complaint after May 30, 1997. Per the May 20, 1997 SC order (Ex. H BA), the alleged service or attempt for both complaints is illegal.

19. In Sorensen's 2006 USDC answer to 2AC, he said: "(4) that to whatever extent anyone may have misrepresented the receipts by plaintiff of service of process, such misrepresentation was not the cause of the default judgment entered against Bradshaw; and hence, did not result in any harm to plaintiff." But his defense is contrary to the evidence showing that he filed motions for default on Feb 14-16, 2000 (Ex. O, P BA) on the basis that service was made on Bradshaw and with having filed "return of service" forms with the court. Return of service forms are completed after service is made, They are filed with the court to prove that service was made. Certificates of service of mailing are not return of service forms.

20. In Sorensen's appeal to the NMI Supreme Court (p. 2/8, Ex. S BA), he said that the default on Bradshaw was made per the default motion he filed in the SC on Feb 14, 2000. It

cannot be argued that no harm came to Bradshaw from the fake receipts. Because Sorensen filed the receipts in court, Sosebee went to court on Feb 1, 2000 and illegally revealed Bradshaw's privileged letter of Jul 14, 1999 (Ex. A, L BA). This privileged letter prompted Sorensen in his opposition to counter it by filing two envelopes which he claims the post office returned to him as unclaimed from certified letters sent to Bradshaw (p. 7, Ex. N BA).

21. All of this came up because of Sosebee's action to bring the paradox of conflicting data to the attention of the SC. The fact is that the submission of the fraudulent postal receipts played a major role in the actions of Sosebee, Sorensen and Castro in Feb 2000, as well as providing evidence that the receipts were the precise reason for the entry of default.

22. The latest Jul 06 Supreme Court Reply Brief by Sorensen admits that Sorensen did indeed furnish the fake receipts to his opposing counsel, Sosebee (p. 7, Ex. T BA). But he argues that he did not submit the signed return receipts to the SC. In his view, submission of the receipts to his opposing counsel does not constitute submitting them to the court or causing any harm. Actually Sorensen did submit the receipts to the SC because they were in the file in support of the default motion as described to Bradshaw by a number of people in the AG's office during the period Sep 2004 to Mar 2005 (Ex. A, BA; Ex. J, 2AC).

23. In Lizama's order (p. 15, Ex. J BA), the judge noted that a misrepresentation is fraudulent if the actor:  "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (3) knows that he does not have the basis for his representation that he states or implies. Ada v. Sadhwani's Inc., 3 N.M.I. 303, 313 (MO 1992) citing REST. (2D) TORTS (section 526 (1977)."  The Judge concluded that "plaintiff or his lawyer knowingly caused the

filing of an unauthorized receipt into the court record..." Per this statement and item (3) of his cite, the action by Sorensen/Bisom was fraudulent. In US courts, the standard for proof of fraud in civil actions are often "clear and convincing evidence"--Grogan v. Garner, 498 US 279 (1991). In many states (like NJ, MA, etc), the evidence for fraud is only a "preponderance of the evidence." In 96-1320, both the preponderance of evidence and the presence of clear and convincing evidence are sufficient for a judgment of fraud on the part of Sorensen/Bisom.

24. Bisom came to court in bad faith/with dirty hands. With dirty hands, the equitable principle cannot apply to him. Third Judicial District Court (www.the3rdjudicialdistrict.com) Glossary of Legal Terms defines the "clean hands doctrine" as "Under this doctrine, equity will not grant relief to a party, who, as an actor, seeks to set judicial machinery in motion and obtain some remedy, if such party in prior conduct has violated conscience or good faith or other equitable principle Franklin v. Franklin, 365 Mo. 442, 283 S.W. 2d 483, 486."

### Item V — Failure to Follow Applicable Laws/Rules in Service

25. Bradshaw's 2AC (i.e., para 42-231) alleges that Bisom's attempt at service on him never complied with existing CNMI, US or Washington state laws/rules. Bisom/Sorensen made their own rules for service of process. First, they allegedly sent certified mail with return receipts with unidentified mailers. When this didn't work, they prepared fake postal receipts showings delivery of service on the fictitious Manny. When Sosebee filed an objection to this approach, they produced two alleged mailing envelopes with Sorensen's name on them.

26. 7 CMC 1104 cites service of process by certified mail, return receipt. This process is spelled out in detail with no allowance for deviation. While many US states have motor vehicle/long arm laws which allow service of process on the Secretary of State or some other

9

official as agent for the accused; for notice to be made by the clerk of court, sheriff, or some other official; and/or for the court to be granted discretion in deciding if notice was made on a defendant; 7 CMC 1102-1104 offers none of this (yet, Bisom claimed it--Ex. N, O, R, S BA).

27. Per 7 CMC 1104(b), if service is not made by certified mail, the statutory remedy is defined as service by publication via a court order. 7 CMC 1102(e) prescribes a need to follow US laws for due process. US laws do not provide for service of process by notice only (and certainly not by defendant's own lawyer as claimed in 96-1320 on Bradshaw). US laws require legal/proper delivery of summons and complaint as spelled out in the rules. As Lizama noted (p. 14, Ex. J BA), there was a need to follow Washington State laws where Bradshaw resided, per CNMI rule 4(k). WA state laws do not provide for service of summons and complaint by certified mail, return receipt, except by court order. Revised Code of Washington 4.28.80 has a case note which says that those to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. Whatever service Bisom attempted, it did not follow CNMI, US or WA state laws/rules. Therefore, his alleged attempted service was illegal and without force of law.

## Item VI — Malicious Prosecution

28. The 2AC alleges malicious prosecution by Bisom on Bradshaw (i.e., para 22-231, 236) as also cited/described by Cotton in his letter to Sorensen on Dec 31, 1996 (Ex. A2, 2AC). Bisom had no case (per Dec 28, 1993 termination letter to Bisom; Ex. U BA). While the discharge focus was on Bisom's bad attitude and general rebellion, there were two primary issues--his actions to interfere in and cause trouble for Bradshaw, Office of Public Auditor (OPA) and an audit of the CNMI (items 8 and 12), and his abandonment of his job (item 1).

a. Per 2AC (para 22- 23), Bisom had secret negotiations on Nov 25-27, 1993 with former OPA Tan and Governor-elect Tenorio to oppose/stop scheduled audit of the NMI by Deloitte & Touche (which for years audited the NMI). Per Bisom's complaints in USDC case 95-0042 and NMI SC case 96-1320 (Ex. A-G BA; para 60-61 of the complaint; para 63-64 in the 4th amended complaint), promises were made that if he was fired for his actions, he would be rehired in Jan 1994 when Tenorio took over. These promises by Tan and Tenorio prove that Bisom worked against Bradshaw/OPA outside of government channels in a illegal and disruptive fashion. In Bisom's Aug 5, 1999 Affidavit of Plaintiff in Support of Motion for Partial Summary Judgment (p. 3, Ex. V BA), he admitted he abandoned his job on 12-3-1993.

b. Bisom's  4th amended complaint offers three claims against Bradshaw (third, sixth and eighth). The 3d (para 29) and 8th (para 54) claims were based on alleged racial discrimination because of the Jewish race. There is no cause for action in a discrimination lawsuit in the CNMI/US over a Jewish race. There is no Jewish race, per Jewish authorities or US case law. Similar federal claims were dismissed by the USDC.

c. The 6th claim cited alleged but unproved false charges and/or Bradshaw's proper discretionary actions in his supervisory role. Bisom's Affidavit in Support of Partial Summary Judgment (Ex. V BA with p 2 of attached Ex. F) showed Bisom improperly leaked OPA data to people (see letter [Ex. U BA] items 3 and 4). Even the filing with the Bar was discretionary, legal and proper (in 95-42 deposition Bisom admitted he had talks at NMI legislature about OPA without authorization). While the Bar never advised Bradshaw of its finding, the AG said they were not as Bisom claimed. Bisom never submitted any evidence in court to justify his allegation that the Bar found that Bradshaw's complaint had "no basis."

11

Other issues in Bisom's claim 6 were also unproved. Since they are unproved allegations or concerned Bradshaw's discretionary actions as Bisom's supervisor, they are now irrelevant.

29. In USDC case 95-0042, Bisom sued Bradshaw in his official and individual capacities. In the dismissal of 95-42, the USDC order of 11-22-96, the Court quoted Johnson v. Bd of County Comm'rs for County of Fremont (85 F 3d 489, 493 [10th Cir, 1996]} "When a governmental official is sued in his official and individual capacities for acts performed in each capacity, those acts are 'treated as the transaction of two different legal personages.'"

a. Bisom refiled his complaint in the CNMI SC 96-1320. He again sued Bradshaw in both his official and individual capacities with essentially the same charges as those dismissed in 95-0042 to include claims over federal laws. Rather than obey the USDC 95-0042 order, Bisom continued like allegations in his 1st and 2d amended complaints and with confusion over official/individual capacities and duties. The pleadings and supporting documentation cited Bradshaw's official duties and capacities. Twice this suit was removed to USDC to have improper issues removed. After changes, the case returned to the SC. But the pleadings continued to reflect Bradshaw's duties as being official and in his official capacity.

b. After four amended complaints and numerous actions back and forth in the courts, Bisom proceeded to trial with his 4th amended complaint. But even therein, he never addressed the need to distinguish between Bradshaw's duties and capacities in terms of being official or individual, as required in the USDC order for vase 95-0042. Thus, thru six Bisom complaints, he never distinguished between official/individual duties and capacities.

30. As cited above, Bisom ignored the 120-day limit for service; the deficient/void 1st amended complaint; the service needs of the 2d amended complaint; the statute of

limitations; and CNMI, federal and Washington state rules for service of process and proceeded to use fraud and to push forward with malicious prosecution. His motive was to hurt and injure Bradshaw and collect all the money possible from the CNMI and Bradshaw. As a minimum, Bisom made off with $130 which he owed Bradshaw from the USDC order for him to pay costs in 95-0042 and he tried to obtain another $139,000 from Bradshaw. He did obtain $140,000 from the CNMI from the default. Thru this, Bisom/Sorensen had dirty hands,

31. Bisom violated CNMI court orders, court rules 4(d), (e), (f), (k), (m) and 7 CMC 1102-1104 by refusing to serve Bradshaw legally. While malicious prosecution can be a cause of action on its own merits in state court, it also may support and be the basis of a civil rights suit under 42 USC 1981-1985 Castellano v. Fragozo, 311 F. 3d 689, 698-99 (5th Cir 2002); Fabiano v. City of Palos Hills, 336 Ill. App. 3d 635, 784 N.E. 2d 258, 271 Ill. Dec. 40 (1st Dist. 2003). In Castellano, the 5th circuit offered a detailed analyses of the use of malicious prosecution to support a 1983 claim. The 5th Circuit noted that "our sister circuits take two broad approaches to malicious prosecution claims under (section) 1983. The first is to require proof of all common law elements of malicious prosecution, usually based on the law of the state where the offense occurred, as well as proof of a constitutional violation--an approach adopted in various forms by the First, Second, Third, Ninth, and Tenth Circuits..."

32. For civil rights violation under 42 USC 1983, a malicious prosecution case must rest upon a denial of rights secured under federal law and not state law (per Castellano). As also found in Castellano, "the sum of elements borrowed from state tort law by some synergism is a constitutional right itself..."  In the case of 05-0027, the malicious prosecution noted against Bisom is only one of many issues that are noted in the 2AC. The complaints

against Bisom include the lack of a case, fraud in court to obtain a default judgment, and the failure to comply with CNMI, US and WA law/rules in service of process.

33. The Ninth Circuit found that the state tort of malicious prosecution alone is not sufficient for a 1983 claim if there is a state remedy available, but there is an exception if the defendant had the intent "to deprive a person of equal protection of the law or otherwise to subject a person to a denial of constitutional rights"-- Poppell v. City of San Diego, 149 F. 3d 951, 961 (9th Cir 1998). As noted above, malicious prosecution was not done alone by Bisom. Too, there was no remedy by Bradshaw for malicious prosecution in the CNMI. Last, Bradshaw's claim under 1983 is that Bisom did intend and act to deprive Bradshaw equal protection of the law and to subject Bradshaw to a denial of his constitutional rights.

34. Per 52 Am Jur 2d (p. 9), elements of action for malicious prosecution are: "(1) the institution of original judicial pleadings by or at the instance of a party; (2) the termination of such proceedings in the party's favor; (3) malice in instituting the proceedings; and (4) the suffering of injury/damage by the sued person as a result of prosecution or proceedings." Bisom's action against Bradshaw meets the tests. Bisom filed six actions against Bradshaw with the same frivolous claims that were not supported by evidence and as dismissed by the USDC. After the USDC ended his first action with a need to distinguish between official and individual capacities and duties, Bisom continued the action without this determination. There was a clear presence of malice in Bisom's prosecuting actions on Bradshaw. The suit ended with judgment for Bisom. Bradshaw's character and professional status were injured and damaged by the bad publicity; the loss of $130; the judgment of another $139,000 against him; the necessity of Bradshaw to spend $4,000 to get the illegal judgment reversed;

14

and now expanding more money to gain restitution for the damage done him.

**Item VII--Castro Decision Feb 22, 2000 Made Without Personal Jurisdiction**

35. Per the 2AC, Castro's order of Feb 22, 2000 is cited (i.e., para 80-210, 283-370). As a minimum, this case should have been dismissed by Castro for many reasons: It involved malicious prosecution; there was no statement of a legitimate claim; and it violated the 120-day rule for service, the deficient/void 1st amended complaint, the service needs of the 2d amended complaint, and the fact that Castro lacked personal jurisdiction.

36. Sorensen submitted his default to Castro on Feb 14, 2000 (Ex. A, P BA) while Castro's decision on avoiding service came eight days later on Feb 22, 2000 (Ex. A, X BA). As Sosebee noted in his Feb 1, 2000 declaration to Castro (p. 2, Ex. Y BA), the AG did not represent Bradshaw. Yet, Castro said that the AG did (p. 2, Ex. X BA). The Supreme Court said that the AG did not represent Bradshaw (p. 12, Ex. Z BA).

37. While Sosebee tried to have Bradshaw's privileged letter of Jul 14, 1999 admitted, Castro refused. Sorensen then conveniently produced two return mailing envelopes which supposedly showed that the 1st and 2d amended complaints were mailed to Bradshaw and returned unclaimed to Sorensen. But per crcp rule 4(m) and Castro's order of May 20, 1997 (Ex. H BA), the 1st and 2d amended complaints were dead by law and could not be legally served. Thus, they could not be the subject of a court order after May 20/30, 1997.

38. Sorensen's opposition 2-3-2000 (p. 2-3, Ex. N BA); 7-15-2005 (p. 5-6, Ex. R BA); and 5-24-2006 brief (p. 19-23, Ex. S BA) cite alleged case law provisions that a certified letter returned from a person being served by mail means avoidance of service. Sorensen cited some 7 cases to allegedly prove his point. On the cites, none of the cases in Bisom's motions

15

had anything to do with 96-1320. This reality was explained by Bradshaw in his opposition to Bisom's appeal filed with the NMI Supreme Court on 6-20-2006 (p. 12-33/60-87, Ex. AA BA). Bisom cited some case law dealing with US long arm statutes where states have allowed their secretary of state to be the agent for an accused out-of-state party. Service of process is made on these state officials. Either the state official, sheriff, court clerk or plaintiff mails a registered/certified letter of notice to the defendant. Usually these cases arise in automobile accidents where a party causes damage in a state and then retreats to his own state.

39. Bradshaw's opposition brief presented the cases in detail to prove that Sorensen's argument was totally irrelevant to 96-1320 (p. 12-33/60-81, Ex. AA BA). With 96-1320, it's like comparing apples and oranges. They have almost nothing in common. Sorensen merely took a few words out of context and shoved them before the CNMI courts with an obvious anticipation that the CNMI courts were incompetent and would never check the cases to see what they really said. Bisom then filed his illegal motion for default on Feb 14-16, 2000 (Ex. A, O, P BA) on the basis of fraudulent documents showing service on Bradshaw. This default was filed/entered by the Clerk of Court 8 days before Castro issued his order of Feb 22, 2000 (Ex. A, X BA). While Castro ended his Feb 22 order with nunce pro tunc to Feb 7, 2000, his order (p. 1) opened with a reference to the hearing of Feb 7. 2000 and the fact that Castro had taken the matter "under advisement." If the issue was taken under advisement on Feb 7, 2000, there was no order issued until Feb 22, 2000. Thus Castro's order of Feb 22, 2000 was totally irrelevant to any and all questions of alleged service on Bradshaw.

40. Bisom's default could not possibly have been filed/entered on the basis of Castro's order since the issue had been taken under advisement and the order did not come out until

16

8 days later after the entry of default. Too, Sorensen's Feb 14-16, 2000 filings (Ex. A, O, P BA) make no reference to or mention of Castro's coming order or the hearing of Feb 7, 2000. Sorensen did not file his default motion on the basis of Castro's order (which came out 8 days later). Instead Sorensen filed it on the premise of the fake receipts that he had entered in court. The default supplement (Ex. A, O BA) states that Bisom served Bradshaw and Cotton, that return of service forms were prepared and filed with the SC and that Bradshaw failed to answer the service made on him. None of this has anything to do with the Castro order of Feb 22, 2000 wherein Castro alleged that Bradshaw avoided service (Ex. A, X BA). Bradshaw could not possibly have avoided service if he was served and did not answer as Sorensen stated on Feb 14-16, 2000 to enter the default into the records by the SC.

41. Lizama's order on Dec 29, 2006 (Ex. J BA) prove that Castro lacked authority to issue order on Feb 22, 2000 (though his order proved to be irrelevant on the default entry on Feb 14, 2000). As Lizama notes, legal service was never made on Bradshaw. With the 120-day limit on service, the deficient/void 1st amended complaint and the service limits on the 2d amended complaint, Castro could not make legal decisions on Bradshaw. The CNMI service provisions spelled out in 7 CMC 1102-1104 and the SC rule 4 were not complied with.

42. Under 7 CMC 1102(e) and 1104, Castro had no authority for his order of Feb 22, 2000 (Ex. A, X BA). Under 1102(e), service had to comply with the standards of due process under the US Constitution. Under 1104, the remedy for plaintiff unable to serve a complaint by certified mail is to apply for a court order to serve the summons by publication. As the Castro order of Feb 22, 2000 (Ex. X BA) had been taken under advisement it had nothing to do with the Bisom default filing entering default on Feb 14-16, 2000 (Ex. A, O, P BA). Per the

17

records, the default of Feb 14-16, 2000 could not have been entered on the basis of Castro's order of Feb 22, 2000 (which was then under advisement).

43. As Sorensen alleges that postal return receipts on certified letters sent Bradshaw were removed and used by alleged unknown party to return to him, it means that whatever documents he filed in his motions (Ex. N and R) to prove attempted service were incomplete without the presence of unused certified return receipts attached to the mailing envelopes.

## Item VIII — Fiduciary Duty Owed Bradshaw

44. In case 96-1320, Bradshaw was sued in the original complaint and 1st and 2d amended complaints in his official capacity. In all of Bisom's filings, Bradshaw was charged in his official capacity and duties. In the various proceedings, Bisom always argued that Bradshaw acted in his official capacity and duty (for example in Aug 5, 1999 Memorandum of Points and Authorities in his Motion for Partial Summary Judgment--p. 4-5, Ex. JJ BA).

45. Per the NMI Constitution (Art III, Sect 11), government organization act (1 CMC, Div 2, S 2153) and PELDIA (7 CMC 2301), the NMI had a duty to defend Bradshaw and reimburse him for any losses. The NMI had a fiduciary duty to Bradshaw--de jure for Bisom's original complaint and the 1st and 2d amended complaints since Bradshaw was sued in his official capacity and NMI had a legal duty to defend him. As Bradshaw was a former official with the NMI, the NMI had a de facto fiduciary duty for all the complaints filed. Since Jan 2000, the NMI has denied any duty to Bradshaw (Ex. A, Y, BB, CC, DD BA).

## Item IX — The Incompetent AG's Office

46. The incompetence/malpractice of the AG's office is detailed in Bradshaw's 2AC (i.e., para 44-51, 66-282, 318-370). In Aug 1999, Sosebee became aware that Sorensen had

prepared fake receipts showing service on Bradshaw that never happened. For the next six months, Sosebee sat on this data and did nothing until before the trial in Feb 2000. He then brought the issue to Castro with a motion to take the case off of the trial docket which was denied (Ex. A, L BA). Sosebee also notified the court and Bisom on Feb 1, 2000 that the AG did not represent Bradshaw (Ex. A, Y BA). Though the AG had a fiduciary duty to Bradshaw, the AG did not represent Bradshaw at the trial (but earlier did enter actions in court in Bradshaw's name); notify Bradshaw of the trial; the AG withdrawal; that the AG had accepted service on the 4th amended compliant; of the Bisom Supreme Court appeal and action. Despite the fiduciary duty, AG did not appeal the default entry illegally entered in the SC.

47. In 1997, AG failed to file for dismissal under rule 4(m); for the void 1st amended complaint; the lack of service on the 2d amended complaint; for malicious prosecution; and for time limitations. By Bradshaw's letter of Jul 14, 1999 (Ex. B 2AC) the AG was notified of the need to go into SC and take action to remove Bradshaw from the case. AG did not do so. Instead the AG illegally revealed Bradshaw's privileged letter to others without authorization (Ex. A, L BA). In Sep 2004, Bradshaw brought the 96-1320 problems to the attention of AG Brown (Ex. J 2AC). After six months, Brown did nothing but obstruction of justice by losing or destroying the evidence (though warned of the need to secure the fraudulent documents).

48. Since the AG personnel on 96-1320 were all lawyers, they knew and understood what was happening. This is true of Sosebee and his boss Forelli. The AG's malicious incompetence was pointed out in the Supreme Court appeal in 2002 (Ex. A, Z BA). The Court repeatedly cited "mistakes" (plural), ethics violations and an allowance of a conflict of interest by the CNMI AG. With the Supreme Court pronouncement, there is no need for Bradshaw to

have to prove the gross incompetence and malicious malpractice by the AG.

49. The decision of the CNMI Supreme Court in Appeal 2000-16 and 2000-23 GA (Ex. A, Z BA) issued in Sep 2002 proves the presence of AG malicious incompetence and malpractice. Both negligence and inaction by local government officials are legitimate causes of action of civil rights laws (14 C.J.S. 37, 249). Lawyers act under color of state law for purposes of a civil rights violation when there is a malicious violation of an individual's civil rights through a knowing abuse of the legal process. Attorney malpractice citations can be filed with Civil Rights complaint-- Mary Patricia Roth v. Frances O'Brien, et. al. Civil Action -4-2787. US Distract Court Eastern Dist of PA, Nov 2004.

### Item X -- The Illegal $140,000 Judgment Imposed on the CNMI

50. In the 2AC (para 223, 230), Bradshaw alleges that the $140,000 judgment and pay out by the CNMI to Bisom happened because of the activities of Bradshaw and the default judgment entered on him by the CNMI SC. The affidavit of Bradshaw supporting this motion outlines the role of the entry of default upon this judgment. The General Verdict with Special Findings Re Defendant CNMI Government (Ex. EE BA) finds for Bisom for Breach of Contract ($100,000) and for Wrongful Termination ($10,300). In the Bisom complaint and amendments and the Order of Jun 7, 2000 (p. 7, Ex. FF BA), these issues are defined as a result of the activities of Bradshaw. In the default, the legal conclusion was that Bradshaw admitted Bisom's allegations against him. Thus, the judgment against the CNMI arose because of the default against Bradshaw. Attorney fees of some $33,000 were awarded to Bisom as a result of the Order of Jun 7, 2000 (Exhibit FF BA). This order was predicated upon the activities of Bradshaw and the level of success Bisom achieved against Bradshaw (p. 7-9, Ex. FF BA).

20

51. In Bisom's request for attorney fees, he said in para one that attorney fees be awarded and included in the judgment against Bradshaw (Ex. GG BA). In his appeal brief on May 24, 2006 (p. 7/13, Ex. S BA) he said: "On February 14, 2000 at the request of the plaintiff default was entered as to defendant Robert D. Bradshaw..." In this same appeal, plaintiff (p. 8) added: "By Decision and Order entered June 7, 2000 attorney's fees in the amount of $33,078.28 were awarded against Bradshaw..." This brief proves that the judgment against the CNMI and attorney fees arose from the default entered by Bisom on Feb 14, 2000. As noted above, the order of Castro on Feb 22, 2000 (Ex. X BA) did not establish the default on Bradshaw which happened 8 days earlier by the entry of default by Bisom/Sorensen.

52. In terms of law, Lizama's order (Ex. A, J BA) is clear that the default judgment against Bradshaw was illegal and had no force of law. Therefore, the $140,000 judgment against the CNMI arising from the activities of Bradshaw and the default judgment is illegal; has no basis in law; and must be reversed. The fact that the AG's office was incompetent and chose to not appeal or follow up on this theme does not alter its reality.

## Item XI — The CNMI is a Enterprise per RICO

53. Per the 2AC (i.e., para 328-338), Bradshaw alleges RICO criminal activity involving mail fraud, obstruction of justice, etc in the NMI. Per 18 USC 1961-1965 definitions, the CNMI is an enterprise which injured Bradshaw's property. The CNMI and its government is involved in/affects interstate commerce in the US, CNMI, and foreign entities which sell to the US. The elements for RICO per 18 USC 1961-1965 are: (1) Conduct, (2) enterprise, (3) a pattern, (4) of racketeering activity, and (5) causing injury to plaintiff's property." The CNMI qualifies as a enterprise per this definition which is managed by the CNMI government and its key agents

21

such as Brown, Forelli, etc (per Reeves v. Ernst & Young, 507 U.S. 170, 183 (1993)).

### Item XII — Immigration Reform and Control Act 1986 (PL 99-603)

54. Covenant Section 503 says that US immigration laws inapplicable in the Trust Territory will be inapplicable in the NMI when the US ends its trusteeship.   On Jun 27, 2000, the US Cir Ct for the DC Circuit found that "'immigration and naturalization laws of the United States' generally do not apply in the CNMI" (Pacific Micronesia Corp, Petitioner, v. National Labor Relations Board, Respondent, case No 99-1078). The word general is not totally or necessarily all inclusive (p. 581, "Webster's New World Dictionary," 2d College Edition).

55.  The US terminated its trusteeship over the NMI on Nov 3, 1986.  PL 99-603 became law on Nov 6, 1986.  Nothing in the act presented any restrictions in the NMI. Section 102 of the IRCA amends title 8 of the US Code to add a (new) section 274B (8 USC 1324b) which specifically prohibits discrimination in employment on national origin or citizenship status.  This section specifically applies in the NMI.

### Conclusion

56. On Constitutional tort claims--US courts have held that municipalities can be sued for the constitutional torts of its police under the 14th amendment and 28 USC 1331, Bivens v. Six Unknown Named Agents 303 US 388 (1971). Government officials can be sued under civil rights laws for tort claims. In the CNMI Judges' motion to dismiss 05-0027 in Jan 2006 they said that the US Supreme Court has recognized the right to sue in criminal matters.

57. In his several presentations on case 96-1320 in this court (per above), Sorensen's assertions do not measure up to the facts in the case. They are therefore false. He cannot march into court with false statements that are unsubstantiated and expect that they will

legally be accepted as true (when they are false). Under the Federal rules of evidence, evidence must exist, be true and be relevant to be admitted into court. Sorensen has made broad statements which are not supported by evidence; which are patently false per the records in the case; and/or which are irrelevant to the case. None of his broad, unsubstantiated charges can be admitted into evidence at a trial.

### Petition to the Court

58. Plaintiff asks that the Court issue summary judgments on the above items--viz:.

Item I:  Per crcp rules 4(c)(1) and 4(m), the plaintiff in CNMI case 96-1320 had 120 days from the complaint's Dec 5, 1996 date to make service. Failing service on Bradshaw by Apr 4, 1997, the SC was obligated by rule 4(m) to dismiss the complaint or extend the service deadline by order. The Court should find that the 96-1320 complaint was null and void on Apr 5, 1997 for purposes of law as plaintiff did not make service within the required 120 days and the SC did not dismiss the action or extend the deadline.

Item II:  Bisom's 1st amended complaint was deficient and void on May 20, 1997 and could not have later served any basis for service of process/avoiding of service on Bradshaw.

Item III:  No service/attempted service was made by May 30, 1997 on Bradshaw for Bisom's 2d amended complaint.  Service/attempted service after May 30, 1997 was illegal.

Item IV:  The 96-1320 files show that Bisom supplied postal return receipts to the SC to show service of process in 1997 on Bradshaw contrary to other documents he later submitted showing service was not made as Bradshaw allegedly did not sign for and receive the exact same two certified mailings at the Elk, WA post office (as they were returned unclaimed). The findings of Lizama in his vacate order of Dec 29, 2006 and the words of Bisom in his Jul 05

23

opposition to Bradshaw's motion and Jul 06 Supreme Court Brief prove that Bisom/Sorensen prepared the postal receipts submitted to the court (Ex. A, J, R and T BA). The court must find that the postal receipts submitted to the court or the unclaimed certified mailing envelopes or both sets of documents submitted are fraudulent per clear and convincing evidence. Also, the Court should find that the Bisom motion and declaration filed in 96-1320 (Ex. O, P BA) show the default was made on the premise that Bradshaw was served per return of service forms filed with the SC and did not answer that service. Hence, the alleged postal receipts did play a role in the entry of the default and the injury placed on Bradshaw.

Item V:  Per 7 CMC 1102-1104 and the crcp rule 4, the 96-1320 Bisom did not follow the US, CNMI or Washington state laws on service or comply with the minimum standards of US due process of law in serving or attempting to serve Bradshaw.

Item VI: In USDC 95-0042 and NMI 96-1320, Bisom engaged in malicious prosecution (a proper cause of action under 42 USC 1983) in pursuing Bradshaw through six actions though his case lacked factual foundations and was not in compliance with the law .

Item VII: Castro's order of Feb 22, 2000 (Ex. A, X BA) was illegal (per 7 CMC 1102-1104; crcp rule 4; and Lizama's vacate order of Dec 29, 2005 [Ex. A, J BA]). Service on the 1st and 2d amended complaints could not be attempted after May 20/30, 1997 as both complaints were dead per crcp 4(m) and SC order of May 20, 1997 (Ex. H BA). As Castro's order was made after he took under "advisement" the case on Feb 7, 2000, the court must find that his order could not have influenced the actions of Bisom to file his default motion on Feb 14, 2000 (Ex. A, P BA). Castro's order was thus irrelevant to the default on Bradshaw.

24

Item VIII Under the CNMI Constitution, Government Organization Act and PELDIA, the CNMI/AG in 96-1320 had a de jure fiduciary duty to Bradshaw in Bisom's original and 1st and 2d amended complaints. For the 3d and 4th amended complaints the duty was de facto.

Item IX: AG's office was maliciously negligent (a proper cause of action under 42 USC 1983) in case 96-1320 from 1997 to 2005 when the AG refused to take corrective action.

Item X:  The some $140,000 judgment against the CNMI and its pay out to Bisom occurred because of the default entered on Bradshaw. As this default was illegally obtained, the judgment of $140,000 and pay out by the CNMI also is illegal and lacks force of law.

Item XI:  Per 18 USC 1961-65, the CNMI and its government is a RICO enterprise managed by the CNMI government and its agent personnel.

Item XII: IRCA section 102 of the IRCA/274B (8 USC 1324b) prohibiting discrimination in employment on national origin or citizenship status specifically applies in the NMI.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this _____4th_____ day of ____September____ 2006 at Calder, Idaho.

_____
Robert D. Bradshaw, Plaintiff Pro Se

## CERTIFICATE  OF  SERVICE

I HEREBY CERTIFY that on the 4th day of Sep 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B. Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950.

_____,
Robert D. Bradshaw, Plaintiff, Pro Se

25