F I L E D
Clerk
District Court

SEP 1 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert D. Bradshaw
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691

Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW | ) Civil Action No. 05-0027 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al. | ) PROPOSED FINDINGS<br>) OF UNCONTROVERTED FACT<br>) IN SUPPORT<br>) OF MOTION FOR PARTIAL<br>) SUMMARY JUDGMENT<br>) |
| Defendants | ) Date: OCT 1 2 2006<br>) Time: 9:00 pm<br>) |

1. This Proposed Findings of Uncontroverted Fact are submitted with Plaintiff's Motion for Partial Summary Judgment. The following facts are communicated from filings in the CNMI case 96-1320 file (attached herein as Exhibits [Ex.] with Bradshaw's Affidavit Supporting this motion) or other incontrovertible sources.

2. Item I, on the 120 day limitation on service.

    a. Per the CNMI docket (Ex. B) and file, Mr Bisom (hereafter Bisom) filed his 96-1320 complaint and summons on Bradshaw on Dec 5, 1996.

1

   b. Per the docket (Ex. B) and file, no return of service form on Bradshaw was filed by Apr 5, 1997.

   c. The docket (Ex. B) and file show no service on or attempted service on Bradshaw by Apr 5, 1997.

   d. The docket (Ex. B) and file show no order was issued by the Superior Court (SC) dismissing the case or extending the 120 day deadline for service per CNMI rules of civil procedure (crcp) rule 4(m) by Apr 5, 1997.

   e. CNMI Case 96-1320 was governed by the 120 day rule of crcp rules 4(c)(1) and 4(m) for service of process on a defendant.

   f. The docket (Ex. B) and file show no record that the parties or the SC complied with crcp rules 4(c)(1) and 4(m) by Apr 5, 1997.

   g. Without service by Apr 4, 1997, the complaint and summons against Bradshaw was null and void on Apr 5, 1997.

3. Item II, the Defective First Amended Complaint.

   a. The docket (Ex. B) shows that Bisom's 1st Amended complaint was issued on May 1, 1997.

   b. The docket (Ex. B) and file show that the CNMI filed motions arguing defects in the 1st amended complaint.

   c. On May 20, 1997, Bisom and the CNMI AG entered into a stipulation (Ex. H) as ordered by the SC that Bisom would correct some or all deficiencies in the 1st amended complaint and file and serve on defendants a 2d amended complaint by May 30, 1997.

d. Per crcp 4 and order of US District Court (USDC) NMI Jun 12, 2006 in Case 05-0027, re service on Sosebee, Bisom and Clayton, an active, valid complaint must be on file at the court when service is made.

e. The stipulation (Ex. H) was an effective dismissal of the 1st amended complaint on May 20, 1997.

f. Any service or attempted service of the 1st amended complaint after May 20, 1997 was null and void per the Castro order of May 20, 1997 (Ex. H).

g. The docket (Ex. B) shows that the SC never altered, changed or modified its order of May 20, 1997.

h. The docket (Ex. B) and file show that Bradshaw was not served the 1st amended complaint by May 20, 1997.

4. Item III, on Service of the 2d Amended Complaint by May 30, 1997.

a. Per the stipulation as ordered by the SC (Ex. H), Bisom was to prepare, file and serve a 2d Amended complaint by May 30, 1997 on Bradshaw.

b. Per the docket (Ex. B), Bradshaw was not served or attempted to be served with the 2d amended complaint by May 30, 1997.

c. Per the stipulation and order of May 20, 1997 (Ex. H), any service or attempted service on Bradshaw was null and void after May 30, 1997.

d. Per the docket (Ex. B), there was never a court order to alter, change or modify the provisions of the stipulation and order of May 20, 1997 regarding service on Bradshaw of the 2d amended compliant by May 30, 1997.

  e. Failing service of the 2d Amended complaint on Bradshaw by May 30, 1997, the 2d amended complaint as for as Bradshaw was dead by May 30, 1997.

 5. Item IV on Submission of Fraudulent Documents to the SC

  a. On Aug 27, 1999, Bisom, thru his attorney Sorensen, submitted a letter (Ex. A, J) to Asst AG Sosebee that he served Bradshaw on two occasions by certified mail and that he (Sorensen) had the post office return receipts in his possession.

  b. On Sep 3, 1999, Bisom filed Reply to Opposition for Partial Summary Judgment (Ex. K) in which he said "Proof of service" on Bradshaw was filed with the court and furnished to the AG by "letter of Aug 27, 1999 (Copy attached)."

  c. On Feb 1, 2000, Sosebee filed a motion to Remove Case from Jury Trial Docket (Ex. L) which noted that Bisom had previously supplied two US post office return receipts but which did not show the signature of Bradshaw. Sosebee's motion included copies of two alleged certificates of mailings of the 1st (allegedly mailed May 5, 1997 to Bradshaw in Elk, WA certified #Z142 485 879) and 2d (certified #Z 142 485 883 allegedly mailed to Bradshaw on Jun 3, 1997) amended complaints by Annabelle Guevarra and two post office return receipts signed by the alleged Manny respectively on 6/4/97 and 7/2/97.

  d. On Feb 3, 2000 Bisom filed opposition to the motion to remove case from trial docket (EX. N) which allegedly had attached two copies of return certified mail envelopes from Sorensen's office to Bradshaw showing they were returned to him unclaimed.

  e. In his Jul 15, 2005 opposition to Bradshaw's Motion to void the judgment (Ex. R), Bisom submitted two envelopes as allegedly a part of the Feb 3, 2000 opposition (Ex. N). These two envelopes had the same certified numbers as those appearing on the certificates

4

of service in Sosebee's Motion to remove case from trial calendar of Feb 1, 2000 (ex. L).

 f. The just cited filings (Ex. L, N, R) indicate that certified # Z 142 485 879 shows that a first notice was made on May 9, 1997 at the Elk WA Post Office and the letter was returned by the Elk WA Post office as unclaimed on May 24, 1997. The second envelope shows certified # Z 142 485 883 with its first notice on 6-9-97 and it being returned unclaimed on 6-24-97. These same two certified numbers appear on the two Post office return receipts as signed by the alleged Manny on 6/4/97 and 7/2/97 (Ex. L).

 g. Bisom's Sep 3, 1999 Reply to Opposition to Motion for Summary Judgment (Ex. K) said that "Proof of service on Bradshaw was filed..."

 h. In the Feb 16, 2000 Supplemental Declaration to Motion for Default (Ex. O), Sorensen said that the 1st and 2d amended complaints were served; that proof of service documents were filed with the court; and that Bradshaw made no answer on the documents served on him.

 i. Proof of service are filed after service is made to show proof that service was made.

 j. Proofs of service are different documents from certificates of service which are filed to merely show a mailing of a document.

 k. Sorensen's declaration of Feb 16, 2000 (Ex. O) also said that service of the 4th amended complaint was made on Asst AG Cotton and that Bradshaw/the AG did not answer this service.

 l. Some documents in the case file (Ex. A, J, K, L, O, P), show that service was made on the 1st amended complaint per certified # Z 142 485 879 and on the 2d amended

5

complaint per certified # Z 142 485 883 and that proof of service was filed with the court.

m. Conversely, in some filings, Bisom claims that service was attempted but not made on the exact same documents with the exact same certified numbers (Ex. N, R, S, T). Obviously, both sets of documents cannot be true. One set in whole or part has to be fraudulent.

n. Sorensen in Opposition to Motion to Void/Vacate Judgment on Jul. 15, 2005 (Ex. R) admits that he filed the post office return receipts with the court but with the qualification that he did not know that the receipts were fraudulent.

o. Sorensen in his answer to the 2AC (USDC Case 05-0027) admits para 91 of the 2AC in that per the default entry, service was made on Bradshaw and Bradshaw "did not answer the served complaints;" and para 92 in the 2AC in that Bisom "represented to the court that he had served defendant (in reference to BRADSHAW) by certified mail and defendant had signed the receipt,...There is nothing to indicate that plaintiff (in reference to BISOM) had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to."

p. In his affirmative defense in his answer to the 2AC, Sorensen effectively admitted filing the postal receipts in court in his statement that "To whatever extent anyone may have misrepresented the receipt by plaintiff of service of process..."

q. In the Jul 06 Supreme Court Reply Brief (Ex. T) by Sorensen, he admits that he did furnish the alleged post office return receipts to his opposing counsel, Sosebee.

r. In terms of the 1st amended complaint, any alleged service after May 20, 1997 was illegal per the SC stipulation and order of May 20, 1997 (Ex. H). The alleged

6

service on 6-9-97 (Ex. L) was contrary to the order of May 20, 1997 (Ex. H). After May 20, 1997, the envelope which Bisom filed in court (Ex. A, J, N, R) showed that certified letter # Z 142 485 879 with the 1st amended complaint was mailed on May 5, 1997 and reached the Elk, WA Post office where it allegedly was waiting to be picked up by Bradshaw on May 20, 1997. The post office returned it unclaimed on May 24, 1997. This alleged attempt at service from May 20 to May 24, 1997 was illegal per the order of May 20, 1997 (Ex. H). This same certified receipt number was allegedly received by Manny on 7/2/97 (Ex. L).

    s. On the 2d amended complaint, certified # Z 142 485 883 allegedly showed it mailed on Jun 3, 1997 and reached the Elk Post Office on Jun 9, 1997 and returned on Jun 24, 1997 (Ex. A, J, N, R); and also showed that it was receipted by the alleged Manny on Jul 2, 1997 (Ex. L).

    t. The 2d amended complaint had to be served by May 30, 1997 per the Castro order of May 20, 1997 (Ex. H). Service or attempted service of the 2d amended complaint was not made by May 30, 1997 (Ex. A, J, L, N, R) as required per the order of May 20, 1997 (Ex. H).

    u. In Sorensen's 2006 USDC answer to 2AC, he said: "that to whatever extent anyone may have misrepresented the receipts by plaintiff of service of process, such misrepresentation...did not result in any harm to plaintiff."

    v. But harm did come to Bradshaw from the receipts since Bisom used them to support his motion for default entered on Feb 14-16, 2000 (Ex. O, P).

    w. The entrance of the alleged postal return receipts and the conflicting facts arising from Sorensen's filings into the record influenced Sosebee to submit Bradshaw's

privileged letter to the court (Ex. L) and to further contribute to a number of actions by Sorensen, Sosebee, Castro, AG's office, USDC, SC, and much legal action by Bradshaw (Ex. A, B, J, K, L, N, O, P, Q, R, S, T, U, V, W, X, Y, Z, AA, etc) . Harm did come to Bradshaw.

6. Item V, Failure to Follow Laws/Rules in Service of Process.

    a. In the service or attempts to serve Bradshaw, per the docket (Ex. B) and file, there was no compliance with the due process provision of US laws as stated in 7 CMC 1102(e) to serve Bradshaw legally.  Legal service is a mandatory part of due process.

    b. In service or attempting to serve Bradshaw, Bisom did not comply with Washington state service laws (Ex. J) as stated in crcp 4(k) and Revised Code of Washington 4.28.80 to obtain a court order for service by certified mail.

    c. As Bradshaw lived in the state of Washington when service or attempted service was allegedly made on him, Bradshaw was under no obligation to arrange time and place for service or to otherwise accommodate process server.

    d. In service or attempting to serve Bradshaw, Bisom did not obtain a court order as stated in 7 CMC 1104(b) to make service by publication when he could not serve Bradshaw by certified mail (Ex. A, B, J).

7. Item VI, Malicious Prosecution.

    a. Bisom admits in his complaint (para 60-61 and para 63-64 in the 4th amended complaint) that he had negotiations on Nov 25-27, 1993 with former OPA Tan and Governor-elect Tenorio to oppose/stop scheduled audit of the NMI by Deloitte & Touche (which for years audited the NMI) and to work against Bradshaw and OPA (Ex. C, G).

b. In Bisom's Aug 5, 1999 Affidavit of Plaintiff in Support of Motion for Partial Summary Judgment (Ex. V), he admitted he abandoned his job on Dec 3, 1993.

c. There is no legal recognition of a so-called Jewish race as alleged by Bisom in his 3d and 8th claims in his complaint (Ex. C, D, E, F, G).

d. Bisom's 96-1320 complaints did not obey the US District Court's dismissal order for case 95-0042 (Ex. C, D, E, F, G).

e. On Dec 31, 1996, Asst AG Cotton wrote Sorensen to warn him that if he served Bradshaw with the complaint and its first two claims that Bradshaw had a cause of action against Bisom for malicious prosecution (Ex. A2, 2AC).

f. Bisom's complaint and 1st amended complaint (Ex. C, D) continued with the 1st and 2d claims based on violations of US laws.

g. The original complaint and 1st and 2d amended complaints (Ex. C, D, E) failed to distinguish between Bradshaw's official and individual capacities and duties.

h. Bisom's 6th claim cited alleged charges never proven in SC (Ex. C, G).

i. Bisom/Sorensen pursued Bradshaw thru six actions in court (Ex. C, D, E, F, G) and numerous filings with dirty hands (Ex. J, L, N, R and Sorensen's answer of the 2AC).

j. Per clean hands doctrine, a party cannot have gain in court with dirty hands. Bisom/Sorensen were in court with dirty hands.

8. Item VII, Castro's Order of Feb 22, 2000.

a. Sorensen's opposition Feb 3, 2000 (Ex. N); Jul 15, 2005 (Ex. R); and May 24, 2006 brief (Ex. S) cite alleged case law provisions that a certified letter returned unclaimed from a person being served by mail means avoidance of service. Sorensen cited some 7

9

cases to allegedly prove this point. On the cites, none of the cases in Bisom's motions had anything to do with 96-1320 in proving that a returned unclaimed certified letter equates to avoidance of service. The cases involved service on a Secretary of State or other state official with only a notice to the accused party.

    b. Bisom entered his default motion on Feb 14, 2000 (Ex. P).

    c. Bisom's default motion (Ex. P) and Sorensen's later declaration in support thereof (Ex. O) do not discuss or mention any court hearings or court decisions as made on Feb 7, 2000 or any other dates as affecting the request for default.

    d. The default motion (Ex. P) and declaration (Ex. O) both indicate that the reason for default was service made on Bradshaw by certified mail with "return of service" forms filed in court and with the result that Bradshaw did not answer the served documents.

    e. In answer to the 2AC, Sorensen admits para 91 that "BISOM's request for default judgment stated that service was made and that BRADSHAW did not answer the served complaints" and para 92 that Bisom "represented to the court that he had served defendant (in reference to BRADSHAW) by certified mail and defendant had signed the receipt,...There is nothing to indicate that plaintiff (in reference to BISOM) had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to."

    f. The SC issued its order of Feb 22, 2000 (Ex. X) claiming that Bradshaw was served by mail but avoided service.

    g. This Castro order refers to a hearing of Feb 7, 2000 and says that it involves issues taken under "advisement" at that hearing (Ex. X).

  h. If the issues involved were taken under advisement, they were not decided until Castro issued his order of Feb 22, 2000 (Ex. X).

  i. Before Feb 22, 2000, Castro's order of Feb 22, 2000 could have had no legal influence on any action in the case.

  j. Since Bisom's default motion was entered on Feb 14, 2000 (Ex. P), which is 8 days before the Castro order (Ex. X), the default could not have been entered or influenced by Castro's order of Feb 22, 2000 (Ex. X).

  k. Bisom/Sorensen maintain that the default against Bradshaw was made on the basis of their default motion actions filed on Feb 14-16, 2000 (Ex. O, P, R, S, T).

  l. Bisom's request for default on Feb 14, 2000 was entered into the SC official record by the Clerk of Court on Feb 14, 2000 (Ex. P).

  m. Since Sorensen admits that the US postal return receipts on the 1st and 2d amended complaints sent Bradshaw by certified mail were allegedly removed from the certified letters and used by some alleged unknown party to return them to him (Ex. R, S, T and Sorensen's answer to the 2AC), it means that whatever documents Bisom submitted to court in his motions (Ex. N and R) trying to prove attempted service were incomplete and lacking without the presence of the unused certified return receipts that had been supposedly attached to the mailing envelopes for mailing to Bradshaw. Without the return of these postal receipts attached to the letters, if the letters were returned by the post office unclaimed, the letters prove nothing when they are incomplete and lacking the attached return receipts.

 9. Item VIII, CNMI's Fiduciary Duty to Bradshaw

      a. Bradshaw was sued in his official capacity in Bisom's original complaint and 1st and 2d amended complaints (Ex. C, D, E).

      b. Throughout the complaints and documents in the case, Bradshaw is cited in his official capacity and duties (Ex. C, D, E, F, G, V, JJ).

      c. For the complaint and 1st and 2d amend complaints (Ex. C, D, E), the CNMI had a de jure fiduciary duty to Bradshaw as he was a former official of the CNMI government.

      d. For all of Bisom's complaints (Ex. C-G), the CNMI had a de facto fiduciary duty to Bradshaw as he was a former official with the CNMI government.

10. Item IX, the Maliciously Incompetent, Malpracticing and Negligent AG's Office.

      a. In 1997, AG failed to file for dismissal on Bradshaw for 120 day limit per rule 4(m); for service after May 20, 1997 limit on void 1st amended complaint; for lack of service on 2d amended complaint; for malicious prosecution; and/or for time limitations (Ex. A, B).

      b. Bradshaw's letter of Jul 14, 1999 notified the AG of the need to go into SC and take action to remove Bradshaw from the case (Ex. B3 2AC). AG did not do so (Ex. A, B).

      c. The AG illegally revealed Bradshaw's privileged letter of Jul 14, 1999 to others without authorization (Ex. L).

      d. In Sep 2004, Bradshaw brought the 96-1320 problems to the attention of AG Brown. After six months, Brown did nothing to resolve the issues (Ex. J, 2AC).

      e. In Aug 1999, Asst AG Sosebee became aware that Bisom had submitted to him postal receipts showing service on Bradshaw that were contrary to other records in the case (Ex. J, K, L). For the next six months, Sosebee sat on this data and did nothing until before the trial in Feb 2000. He then brought the issue to Castro with a motion to take the

case off of the trial calendar which was denied (Ex. L).

    f. Sosebee notified the SC and Bisom on Feb 1, 2000 that the AG did not represent Bradshaw (Ex. Y).

    g. The AG did not represent Bradshaw at the trial (but earlier did enter actions in court in Bradshaw's name without Bradshaw's authorization) or notify Bradshaw of the trial; of the AG withdrawal; that the AG had accepted service on the 4th amended compliant; and of the Bisom Supreme Court appeal and action; nor did the AG appeal the default entry entered in the SC against Bradshaw (Ex. A, B, J, P and the 2AC).

    h. The Supreme Court 96-1320 Appeal 2000-16 and 2000-23 GA repeatedly cited "mistakes" (plural), ethics violations and allowance of conflict of interest by AG (Ex. Z).

    i. The CNMI Supreme Court findings of mistakes, ethics violations, and possible conflict of interest prove AG malicious and gross negligence/malpractice.

11. Item X, the $140,000 Judgment on the CNMI. The General Verdict with Special Findings Re Defendant CNMI Government found for Bisom for Breach of Contract and for Wrongful Termination (Ex. EE). In the Bisom complaint and amendments (Ex. C-G); the Decision and Order of Jun 7, 2000 (Ex. FF); and the Bisom Appeal Brief to the Supreme Court on May 24, 2006 for Appeal 06-0005 GA (Ex. S), these findings were the result of the activities of Bradshaw and the default judgment entered on him.

12. Item XI, the CNMI is an Enterprise. The CNMI is involved in promoting commercialism between foreign entities and the US (See Bradshaw's supporting affidavit).

13. Item XII, PL 99-603, discrimination against US citizens applies in the CNMI.

a. US laws on immigration in effect on the day the UN trusteeship ends over the CNMI were not to be in effect after the trusteeship ends.

b. President Reagon terminated the Trusteeship on Nov 3, 1986.

c. The Immigration and Reform Control Act became PL 99-603 on Nov 6, 1986.

14. Many of the above facts involve actions of Sorensen as expressly stated in documents he submitted to the SC and signed. In his answer to the 2AC, he denied many of the above facts as clearly set forth in documents which he himself signed or knew about as they were submitted in the SC. So while the documents submitted to the SC clearly say one thing, Mr Sorensen has denied many of them in his answer to Bradshaw's 2AC.

15. Under rule 11 of the Federal rules of civil procedure, an attorney signing a document certifies to its correctness. If Mr Sorensen's answer to the 2AC contradicts his previous filings in court, it then raises a question of propriety/perjury.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this ___4th___ day of __September__ 2006 at Calder, Idaho.

_____
Robert D. Bradshaw, Plaintiff Pro Se

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on the __4th__ day of __Sep__ 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B. Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950.

_____, Robert D. Bradshaw, Plaintiff, Pro Se