# CHRONOLOGY OF EVENTS CNMI CASE 96-1320

| Date | Event |
|---|---|
| Jan 4, 1994 | Bradshaw terminated Bisom for cause from the NMI Office of the Public Auditor (OPA)--Exhibit U. |
| Nov 14, 1995 | Bisom sued Bradshaw, Scott Tan and the CNMI in the NMI US District Court (USDC), case 95-0042. |
| Nov 6, 1996 | USDC dismissed Bisom's suit for lack of jurisdiction. |
| Dec 5, 1996 | Bisom filed an appeal to 9th Circuit, case 96-17369. |
| Dec 5, 1996 | Bisom filed a similar complaint in the CNMI Superior Court (SC), case 96-1320 (Ex. C herein). |
| Dec 5, 1996 | SC issued summons for CNMI, Tan and Bradshaw (Docket). |
| Dec 6, 1996 | Asst AG Cotton writes Bradshaw (Ex. A1 2d Amended Complaint [hereafter 2AC]) to say that Bisom has filed a new complaint in Superior Court (SC). |
| Dec 24, 1996 | Sorensen writes Cotton asking if the AG will accept service for Bradshaw (Ex. J herein). |
| Dec 31, 1996 | Defendants thru the AG remove the 96-1320 case to the USDC to address the federal claims. In USDC, the case is 96-0052. |
| Dec 31, 1996 | Cotton advises Bisom's attorney Jay Sorensen (hereafter Sorensen) that the AG will accept service for Tan and the CNMI but will check on Bradshaw (Ex. A2, Bradshaw's Second Amended Complaint [hereafter 2AC]). Cotton further warns Sorensen that if he continues with his complaint against Bradshaw he could be sued for malicious prosecution. |
| Jan 22, 1997 | Cotton writes Bradshaw to say to advise him if there is an attempt to serve Bradshaw (Ex. A2 2AC). As the AG had not been served by this date, the AG went to the Superior Court and obtained a copy of Bisom's complaint which he sent a copy of to Bradshaw. There is no way that notice can accrue from the action of Bradshaw's lawyer in sending a copy of the complaint which he obtained at the courthouse. |
| Jan 31, 1997 | Bradshaw writes Cotton and advises that he will not authorize the AG to accept service for him and that he will not relinquish his $130 claim against |

1

EXHIBIT A

|  |  |
|---|---|
|  | Bisom for Bradshaw's expenses (Ex. B1, 2AC). |
| Mar 27, 1997 | The USDC dismisses federal claims in case 96-0052 with prejudice and remands case back to CNMI, where it is 96-1320. |
| Apr 5, 1997 | Per CNMI Rules of Civil Procedure (crcp) rule 4(m), the SC upon motion or on its own initiative "shall" dismiss the complaint which is not served within 120 days, or by order extend the time period if good cause exists for the failure. On Apr 5, 1997, the CNMI SC was obligated by law to dismiss case 96-1320 on this day. This law was not obeyed by the parties. Hereafter, 96-1320 is null and void. |
| Apr 17, 1997 | Cotton writes Bradshaw that he has advised Sorensen that the AG will not accept service for Bradshaw. Cotton further advises Bradshaw that he can expect Bisom to attempt to "personally serve" Bradshaw with the summons and complaint (Ex. A3, 2AC). The crcp rule 4(e)(2) defines personal service as service in person on the defendant at his dwelling place or usual place of abode. Bradshaw relied on this letter that he would be served in person at his home or dwelling place. |
| May 1, 1997 | Bisom files his 1st amended and supplemental complaint (Docket). |
| May 5, 1997 | Bisom allegedly mailed his 1st amended complaint and summons by certified mail (ticket # Z 142 485 878) to Bradshaw (Ex. L, N, and R herein). Apart from other court filings in 1999 and 2000 on the question of service, the docket shows nothing on this alleged mailing of the 1st amended complaint. There is no entry for this alleged mailing as a proof, return or certificate of service. Since there is no record of this alleged mailing and certificate in the Docket around May 5, 1997, it is highly probable that the mailing never took place/was never made a part of the case record and is therefore illegal. |
| May 6, 1997 | Bisom serves his 1st amended complaint on the CNMI and Tan with service on Cotton (Docket and Ex. D herein). |
| May 9, 1997 | Bisom's mailing of the 1st amended complaint allegedly reached the Elk, WA post office by May 9, 1997 as it is so marked (Ex. L, N and R). Four days first class mail service from Saipan to Elk, WA seems impossible and must be questioned. |
| May 9, 1997 | On behalf of defendants, the AG files Motion to Dismiss for lack of personal jurisdiction, failure to state claim and insufficiency of process; Motion for more definite statement; and Motion to require a bond for costs |

*EXHIBIT A*

(Docket).

May 20, 1997   Bisom and AG enter into stipulation which is so ordered by the SC (Ex. H herein). The stipulation provides that (1) Bisom will prepare a 2d amended complaint to correct some/all of the deficiencies cited by the AG; (2) Bisom will "file and serve" the second amended compliant and summons on or before May 30, 1997; (4) Bisom will supply bond; (5) the defendants' motions will go off the calendar. The AG acted for all defendants in signing this stipulation (though the AG lacked authority to accept service of process for Bradshaw). As of this date, the 1st amended complaint was dead for all purposes to all defendants.

While this stipulation ordered by Castro did not state a dismissal of the 1st amended complaint, per se, that was the reality of the order. Per crcp rule 4 and order of the USDC on Jun 12, 2006 re service on defendants Sosebee, Bisom and Clayton, an active, valid complaint must be on file at the court when service is made. Based on Castro's order, the 1st amended complaint was defective and dead on May 20, 1997. Any alleged service or attempt at service after that date was void. Though Bisom and Castro would later claim service/avoidance of service after May 20, 1997 for the 1st amended complaint, such allegations were illegal by the terms of Castro's Order of May 20, 1997.

May 24, 1997   The return envelope of the alleged May 5, 1997 mailing of the 1st amended complaint shows that this mailing envelope was returned by the Elk, WA post office as unclaimed on May 24, 1997. Whether this mailing was ever sent to the Elk post office or not, the fact remains that the 1st amended complaint was dead by SC order on May 20, 1997. From May 20, 1997 on, it could not possibly have any legal bearing on case 96-1320.

May 30, 1997   Bisom filed his 2d amended complaint (Ex. E herein) and amended summons. But per the stipulation as ordered by the SC, Bisom was obligated to both file and serve his 2d amended complaint and amended summons by May 30, 1997. This was not done as no service was made on Bradshaw by May 30, 1997 (Docket)--although Bisom and the SC would later allege that service or attempt at service happened in Jun-Jul 1997 long after May 30, 1997.

Since no service was made of the 2d amended complaint and amended summons by May 30, 1997, the 2d amended complaint was null, void and dead for Bradshaw on May 30, 1997. As Bisom did not comply with the Castro order (Ex. H herein), Bisom's 2d amended complaint was not legally served or attempted to be served on Bradshaw by the May 30, 1997

EXHIBIT A

3

|  |  |
|---|---|
|  | deadline. |
| Jun 2, 1997 | Bradshaw writes Cotton to tell him that he had a certified letter from Sorensen at the Elk post office which was returned (Ex. B2 2AC). Bradshaw remembers two letters from Saipan with no identification of mailers but only a Saipan post office box. As Sorensen served Bradshaw previously with such deceptive mailings, Bradshaw at once believed that the letters were from Sorensen as this seems to be his MO in mailing complaints. In the letter to Cotton, Bradshaw referred to the mailing as "evidently" Sorensen tried the mails with complaint which went back unclaimed. In any case, if this was an attempt of service, it was told to the AG who earlier wrote Bradshaw asking to be informed on any attempt at service. If this was a legal attempt at service, then the AG was properly notified about it and must bear any repercussions over it. Bradshaw also mentions the 120 day limit on service and the statute of limitations. |
| Jun 2, 1997 | Bisom served 2d amended complaint on Cotton for the CNMI and Tan (Docket). This may have occurred a day or so earlier. |
| Jun 2, 1997 | Cotton writes Bradshaw that the AG told Sorensen it would accept service for Tan and the CNMI but not Bradshaw. Cotton advises that Bradshaw can expect to be served soon (Ex. A4 2AC). |
| Jun 4, 1997 | In later filings (Ex. J, L, and R, herein), Bisom claimed that the 1st amended complaint (certified # Z 142 485 878) was served on Bradshaw by certified mail, return receipt, on an alleged person named "Manny" signing for the lst amended complaint on Jun 4, 1997 (but service time for the 1st amended complaint ended on May 20, 1997; thus, meaning this alleged service or attempted service was illegal). |
| Jun 5, 1997 | The Docket shows the filing by Bisom of a certificate of service for Bradshaw. This filing was for the alleged mailing of the 2d amended complaint to Bradshaw. But since service of the 2d amended complaint was not made by May 30, 1997, the 2d amended complaint was null, void and dead for Bradshaw. No court order was ever forthcoming to legally extend the deadline of May 30, 1997. |
| Jun 9, 1997 | Bisom's alleged mailing of Jun 3, 1997 of the 2d amended complaint allegedly reached the Elk, WA post office by Jun 9, 1997 as it is so marked (Ex. L, N and R herein). Six days first class mail service from Saipan to Elk, WA seems impossible and must be questioned. |
| Jun 24, 1997 | A later filed envelope of the alleged mailing to Bradshaw (certified # Z 142 |

4

EXHIBIT A

|  |  |
|---|---|
|  | 485 883) shows that the Elk post office returned it as unclaimed to the mailer on Jun 24, 1997 (Ex. R herein). |
| Jun 26, 1997 | AG filed motions to dismiss and for more definite statement on the 2d amended complaint (Docket). |
| Jul 2, 1997 | In later filings (Ex. J, L, and R, herein), Bisom claimed that the 2d amended complaint was served on Bradshaw by certified mail (certified #Z 142 485 883), return receipt, on an alleged person named "Manny" signing for the lst amended complaint on Jul 2, 1997 (but service time for the 2d amended complaint ended on May 30, 1997). |
| Dec 11, 1997 | Defendant filed notice of substitution of parties to change the caption for the official capacity from Bradshaw to Leo Lamotte, then Public Auditor (Docket and Ex. J herein). |
| Dec 24, 1997 | Bisom filed 3d Amended Complaint (Ex. F herein). Bradshaw was no longer sued in his official capacity on the case caption. But the case contents alleged that Bradshaw acted officially and in his official capacity and duties. |
| Dec 30, 1997 | The Docket shows a certificate of service on Cotton, evidently for the 3d amended complaint. But no service was made, attempted or reported on Bradshaw. |
| Jan 23, 1998 | CNMI thru AG removes 3d amended complaint to the USDC where the case became 98-0002. |
| Mar 17, 1998 | Cotton writes Bradshaw and provides an update on case 96-1320 (Ex. A5 2AC). |
| May 6, 1998 | USDC dismissed the Federal claims in case 98-0002 with prejudice and remanded the case back to the NMI SC where it became again 96-1320. |
| Sep 9, 1998 | The 9th Cir upheld the dismissal of USDC 95-0042. |
| Nov 6, 1998 | After some litigation by the AG and Bisom, the SC issued a decision and order to settle the remaining issues in the AG motion to dismiss (Ex. I herein). |
| Nov 18, 1998 | Bisom filed a 4th amended complaint (Ex. G herein). |
| Nov 20, 1998 | Docket shows certificate of service by Bisom on Cotton. Later, Bisom claimed that he served the 4th amended complaint on Cotton for Bradshaw |

5

EXHIBIT A

|  |  |
|---|---|
|  | (Exhibit O herein). Evidently, this happened on Nov 20, 1998 per this filing. This service on Cotton may have been just before Cotton left the CNMI for the US. |
| Dec 22, 1998 | There is a service of a document by Bisom on Asst AG Bush who must have taken over case 96-1320 about this time. |
| Mar 30, 1999 | The CNMI and Tan thru Asst AG Bush filed an answer to the 4th amended complaint (Ex. W herein). This Answer filed by the AG admitted that Bradshaw may have acted in his official capacity (Ex. W herein). |
| Jun 30, 1999 | Bush writes Bradshaw to outline the case and ask some questions (Ex. A6 2AC).  In this letter, Bush says that Bradshaw's reply will be protected under the attorney client privilege.  Bush mentioned the two year limit on torts and says he can go into court and have Bradshaw's name removed from the case. |
| Jul 14, 1999 | Bradshaw writes Bush's to answer his letter and questions (Ex. B3 2AC). Bradshaw says yes for Bush to go into court and remove his name. Bradshaw advises no service of process so far on him.  If Bisom claims it, it will be fraudulent.  Bradshaw is mystified that the AG has been taking action for him in court since Bradshaw had never been served.  Bradshaw states no need for AG assistance unless and until he is served, then he will need AG assistance.  Bradshaw acknowledges that two envelopes came to the Elk post office from Saipan with no identification of the mailers (they had Saipan post office boxes).  As these envelopes appeared to be precisely of the same kind and  type used previously by Sorensen in serving Bradshaw, Bradshaw did suppose that they were from Sorensen (Ex. E 2AC) and especially since Cotton had alerted Bradshaw to expect service (though Cotton stated to expect personal service and not mail service). |
| Jul 1999 | Bradshaw writes Bush an undated letter (but evidently near Jul 20, 1999) to further update him (Ex. B4 2AC). |
| Jul 20, 1999 | Bradshaw writes Bush to further update him (Ex. B5 2AC). |
| Aug 5, 1999 | Bisom files motion for partial summary judgment (Docket, Ex. V and JJ herein). |
| Aug 19, 1999 | Bush is still the lead attorney on 96-1320 as he accepted service this date from Bisom (Docket). |
| Aug 27, 1999 | Sosebee is now the lead attorney as Sorensen writes him a letter stating: |

6

*EXHIBIT A*

|  |  |
|---|---|
|  | "Enclosed are copies of the Certificates of Service that show service by certified mail on (Bradshaw) on two occasions. We also have the return receipt cards" (Ex. J herein). This letter was examined by Judge Lizama (hereafter Lizama) as he cites it in his order (page 4, Ex. J herein). Bradshaw ordered a certified true copy of this document and letter from the SC Clerk of Court but was advised that the letter is no longer in the file. |
| Aug 30, 1999 | In his response to Bisom's motion for partial summary judgment (Exhibit J herein), Sosebee said: "Defendant Robert D. Bradshaw, sued in his individual capacity, has not been served with summons in this case and has not appeared or answered in this case and is therefor not before this court for the purposes of this motion and response." |
| Sep 3, 1999 | In Sorensen's reply to Opposition to Motion for Partial Summary Judgment (Ex. K herein), Sorensen notes Sosebee's opposition that "Bradshaw has not been served with summons and has not appeared in this case." Sorensen then added: "This is a bald assertion by Defendants. No evidentiary support, nor any legal authority is cited, and no procedurally adequate means has been utilized to attack jurisdiction or service. This assertion is factually incorrect. Proof of service on Bradshaw was filed on May 6, 1997 and again on June 3, 1997. These were provided to defendants' counsel at the special request by letter of August 27, 1999. (Copy attached)." So near Aug 27, 1999, Sorensen twice advised the AG of alleged service on Bradshaw with return receipts in his possession. |
| Feb 1, 2000 | Just before the trial was to start on Feb 7th, Sosebee filed Motion to remove the case from the jury trial docket (Ex. L herein). Sosebee's motion (p. 2) makes note of the fact that Bisom "has previously supplied copies of two United States Mail Domestic Receipt cards, neither of which bear the signature of defendant, Robert D. Bradshaw." Sosebee adds that Bisom was aware of no service on Bradshaw since Sep 3, 1999. |
|  | Sosebee's motion had attached a certificate of service signed by Annabelle Guevarra that she mailed a copy of the amended complaint and summons by certified mail on May 5, 1997 to Bradshaw in Elk, WA via certified receipt #Z142 485 879; and another certificate of service by Guevarra that she mailed the 2d amended complaint and summons to Bradshaw in Elk, WA via certified mail, receipt #Z 142 485 883 on Jun 3, 1997. |
|  | These two certified numbers were only four numbers apart--meaning that in a month's time, only four certified letters were sent out by the Saipan post office. This seems impossible and must therefore be questioned. The Docket shows a filing of this alleged certificate for the 2d amended complaint but |

EXHIBIT A

7

1st amended complaint was included with service on the AG.

As a minimum, this suggests that possibly the first certificate of service may be questioned. Also, the actual alleged documents involved only shows that Guevarra mailed copies of the summons and complaint by certified mail. These certificates were not return of service forms. They do not show actual service. The CNMI SC uses a particular form for return of service filings (an example is at Ex. M herein as used by the AG in case 96-1320).

The Sosebee motion of Feb 1, 2000 (Ex. L herein) also had attached two return receipts signed by one "Manny" evidently Mongohia, as agent for Bradshaw. Receipt # Z 142 485 879 was signed on 6/4/97 and receipt #Z 142 485 883 was signed on 7/2/97. Since the postal regulations only allow certified mail to be held for 15 days before returning it, and since mail time from Saipan to Elk, WA was about 8-12 days, it seems unlikely that these letters were held that long in the Elk post office before delivery.

Obviously, the receipt numbers of letters allegedly mailed by Guevarra are precisely the same numbers as those allegedly signed for by Manny. Regardless, mailman David Vanderholm (Ex. D, 2AC) says that he delivered no mail to a Manny at Bradshaw's address. In fact, Vanderholm says that there were no Mannys on his mail route. Next, Sosebee's Motion (Ex. L) included a copy of Bradshaw's privileged letter of Jul 14, 1999 to the AG claiming no receipt of service.

| | |
|---|---|
| Feb 1, 2000 | Sosebee filed a declaration (Ex. Y herein) in which he notified the SC and Bisom that the AG did not represent Bradshaw. |
| Feb 3, 2000 | Sorensen filed his Opposition to motion to Remove Case from jury Trial Docket (Ex. N herein). This opposition (p. 2) cites Bradshaw's privileged letter of Jul 14, 1999 provided by the AG and says: "Bradshaw received two certified mail packets from Saipan in 1996 and 1997. Plaintiff, in fact, sent two such envelopes with summons and complaint, true copies of which are attached." |

Only one envelope was attached to the record furnished Bradshaw. It has the name of Jay H. Sorensen on the mailing label. Bradshaw's letter of Jul 14, 1999 noted that the two envelopes to him did not have the name of the party on the mailing envelopes. They came only with a Saipan post office box return address. Bradshaw believes that both of these envelopes could be fraudulent since they do not comport with what Bradshaw knew about in Jul 1999 when he sent his privileged letter to the AG.

EXHIBIT A

| | |
|---|---|
| Feb 7, 2000 | The trial commenced as scheduled and the SC denied the removal motion. There was a discussion of service on Bradshaw but the SC made no decision on this issue at this time but did take the matter under advisement (Ex. X herein). |
| Feb 14, 2000 | Bisom thru Sorensen filed a request for the entry of default on Bradshaw. The SC Clerk of Court signed and entered the alleged default on Feb 14, 2000 (Ex. P herein). |
| Feb 16, 2000 | Sorensen filed a supplemental declaration in support of the request for default (Ex. O herein). Sorensen said: "2. That a copy of the Amended and Supplemental Complaint and Summons was served to the defendant on May 5, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra, 3. That a copy of the Second Amended Complaint and Amended Summons was served to the defendant on June 3, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra. 4. On November 20, 1998, plaintiff's Fourth Amended Complaint was served on Douglas Cotton, Office of the Attorney General... 5. The time within which this defendant may answer has expired, the defendant has not answered and no extensions of that time has been given." |
| | Sorensen's declaration of Feb 16, 2000 (Ex. O herein) said service was made on Bradshaw and Cotton (as attorney for Bradshaw), that return of service forms were filed in court and that Bradshaw made no answer to summons and complaint served on him. The return of service form is filed after service is made (Oran's Dictionary of the Law, p. 371; the reverse side of US District Court form AO 440 on Summons in a Civil Case; and the CNMI SC form [Ex. M herein]). |
| | A certificate of service is a showing only that a mailing was made. Guevarra signed certificates of service (Ex. L herein). Yet, Sorensen says he filed return of service forms to show actual service on Bradshaw. Thus, Sorensen's declaration for default has a clear reference to the receipts signed by the so-called Manny. Sorensen filed these documents in court and used them to enter his default. There is no other explanation to account for the allegation that service was made and that proof of that service existed. Therefore, this has to be the explanation for the default entries filed on Feb 14 and 16, 2000 (Ex. O, P herein). |
| Feb 22, 2000 | Eight days after the SC had already entered Bisom's request for default, the SC presiding Justice Castro issued his order (Ex. X herein). It stated that Bradshaw avoided service of the 1st and 2d amended complaints. While |

*EXHIBIT A*

9

Castro ended his Feb 22 order with nunce pro tunc to Feb 7, 2000, his order (p. 1) opened with a reference to the hearing of Feb 7. 2000 and the fact that Castro had taken the matter "under advisement."

If the issue was taken under advisement on Feb 7, 2000, there was no order issued until Feb 22, 2000. Since the default was already entered in the records on Feb 14, 2000, the Castro order of Feb 22, 2000 could not possibly have influenced the default as filed/entered by the Clerk of Court eight days earlier.

Regardless, since the case had to be dismissed on Apr 5, 1997 (per CNMI SC rule 4(m)) and since the 1st amended complaint was dead on May 20, 1997 and the 2d amended complaint was dead on May 30, 1997; and since as a minimum, there was never an attempt to serve Bradshaw while the 1st and 2d amended complaints were alive and valid; Castro's order of Feb 22, 2000 was totally irrelevant to case 96-1320 even if the issue was not under advisement as Castro's order so stated.

| | |
|---|---|
| Feb 25, 2000 | Trial ended and verdict was entered. |
| Mar 9, 2000` | AG files objection to Sorensen's request for indemnification on grounds that Bradshaw never requested indemnification (Ex. J herein). |
| Apr 10, 2000 | Bisom and CNMI both appealed to the CNMI Supreme Court (Ex. J herein). Later the AG dropped its appeal. |
| Jun 7, 2000 | The SC awards Bisom $139,000 from Bradshaw and $140,000 from the CNMI and finds that the NMI is not liable for indemnification for Bradshaw (Ex. J herein). |
| Jul 15, 2000 | Bradshaw writes the AG to further update them and indicated that Bush suggested that he would go into court and have Bradshaw's name removed from 96-1320 (Ex. B6, 2AC). Bradshaw notes that it has been over a year since hearing from Bush and there have been no further communications from the AG to Bradshaw. |
| Mar 28, 2002 | The CNMI Supreme Court heard the Bisom appeal (Exhibit Z herein) |
| Sep 13, 2002 | The CNMI Supreme Court issued its order on the appeal (Exhibit Z herein). |
| Apr 17, 2004 | Bradshaw is notified by the AG of the outcome of case 96-1320 (Exhibit A7 2AC). |

*EXHIBIT A*

10

| | |
|---|---|
| Aug 2004 | Bradshaw called the Micronesian Legal Services asking for help as he is indigent. Tom J. Schweiger checked the case file and noted the default judgment with supporting postal receipts signed by Manny (Ex. J 2AC). Schweiger also said that the file contained some similar receipts reporting mailings by the AG to Bradshaw. |
| Sep 12, 2004 | Bradshaw contacted the AG for assistance and representation and reported the presence of fraudulent documents in case 96-1320. Asst AG Buckingham was fully briefed (Exhibit J 2AC). Buckingham inspects the file and sees the fraudulent receipts. |
| Oct 7, 2004 | AG investigator Race writes Bradshaw to say that he had assigned the fraud case to investigators Frank Kapileo and Alfred Terregeyo (Ex. A8 2AC). |
| Oct 20, 2004 | Bradshaw calls Kapileo who says he and Terregeyo has the file and fraudulent postal receipts in their possession (Ex. J 2AC). |
| Jan 2005 | Bradshaw calls Kapileo/Terregeyo. Terregeyo says that Kapileo has the receipts and is at the post office talking to the post master about the case (Ex J 2AC). |
| Jan 25, 2005 | Bradshaw writes AG to outline the several attempts to get help and PELDIA indemnification from the CNMI (Ex. F 2AC). Bradshaw outlined the problem over losing the fraudulent postal receipts in the case file and the need to take precautionary measures by making certified true copies and securing the originals. Finally, there was a suggestion of turning this matter over to US postal inspectors and the FBI. |
| Feb 7, 2005 | Bradshaw writes the AG to again ask for assistance and indemnification (Ex. F 2AC). |
| Feb 15, 2005 | AG Brown writes Bradshaw to say that Bradshaw is not entitled to PELDIA or AG assistance (Ex. A9 2AC). |
| Mar 2, 2005 | Bradshaw files crcp rule 60 motion with the SC to void the judgment against him. |
| Mar 7, 2005 | Bradshaw filed case 05-0084 in the USDC Idaho. Per the Idaho Code 5-219, a party has three years to file suit for torts and/or one year upon notification. Bradshaw's Idaho suit met the statute of limitations. |
| Apr 5, 2005 | Bradshaw writes the SC and tries to get copies of the fake receipts filed in court by Sorensen (Ex. HH herein). |

*EXHIBIT A*

| | |
|---|---|
| May 23, 2005 | Bradshaw filed his amended motion to Void/Vacate judgment entered against him (Ex. Q herein). Bradshaw specifically complained of the fraudulent postal receipts entered into the case by Bisom/Sorensen. |
| Jun 2005 | In a telephone conversation with Bernie Sablan, Clerk of the CNMI Superior Court, she informed Bradshaw that the postal receipts requested by Bradshaw are no longer in the 96-1320 case file and she cannot send copies to Bradshaw. |
| Jun 20, 2005 | Bradshaw writes Matthew Ryden, CNMI attorney in Boise, Idaho, to note that the SC Clerk had informed him that the original fake postal receipts in the 96-1320 case file are now missing (Ex. I I herein). |
| Jul 13, 2005 | CNMI Attorney Matthew Ryden in Boise, Idaho writes Bradshaw to say that the AG office "did not access, let alone 'take possession' of the CNMI Superior Court file... Thus, even CNMI AG representatives endeavored to review the court's file, which they did not, they could not have 'taken possession' of the same" (Ex. G 2AC).  Ryden is saying that the AG never even looked at he postal receipts which whey supposedly were investigating for the prior year. |
| Jul 15, 2005 | Bisom thru Sorensen filed his opposition to Bradshaw's Void Motion (Ex. R herein). Sorensen said: "in order to establish fraud, it must be shown by clear and convincing evidence that the person making the representation either: (1) knew or believed that what they were representing were false; or, (2) doubted the accuracy of the representation, or (3) knew they had no basis for making the representation. *Pangelinan v. Itaman*, 4 N.M.I. 114, 119-120 (1994), citing Restatement of Torts, (section) 526. There is nothing to indicate that plaintiff had any way to know or even suspect that the postal receipts that was returned did not bear the signature of the person it was addressed to. Accordingly, there is no basis to conclude there was any fraud." This statement is a clear admission that Sorensen filed the postal receipts but with the qualification that he did not know that they were fraudulent. |
| | This Sorensen opposition had attached as exhibits two copies of mailing envelopes to Bradshaw from Sorensen. One was certified # Z 142 485 879 which shows that a first notice was made on May 9, 1997 and the letter was returned unclaimed on May 24, 1997. On the Sorensen alleged post office return receipts, this exact same certified number appears but it shows a receipt by Manny on 6/4/97. The second envelope shows certified # Z 142 485 883 with its first notice on 6-9-97 and it being returned on 6-24-97. This |

12

*EXHIBIT A*

number is precisely the same one as the postal return receipt allegedly signed by Manny on 7/2/97.

Since the first alleged mailing occurred May 5, 1997 and the alleged returned envelope show that the Elk, WA post office made its first notice by May 9, 1997, it means that this first class certified letter went from Saipan to Elk, WA in four days. This is impossible for US mail service in May 1997. The second mailing was allegedly made on Jun 3, 1997 with its first notice made in Elk, WA on Jun 9, 1997. Six days first class mail service seems impossible in June 1997. Something is clearly wrong with these dates.

Bradshaw admitted to this court that two certified mailings from unidentified mailers came from Saipan to him in Elk. But Bradshaw does not recognize these two envelopes with Sorensen's name on them. Furthermore, the two sets of documents, one showing a Manny signing return postal receipts and the other showing the return of the same certified letters as unclaimed to Saipan, cannot both be true. One set has to be false/fraudulent. Since the two envelopes filed by Sorensen show his name while the two which Bradshaw took note of in his Jul 14, 1999 letter did not show a name, it must be allowed that both sets of documents are fraudulent.

As will be covered below, on Dec 29, 2005, Lizama issued his vacate order (Ex. J herein). In his order (p. 3, 4, 15 and 16), Lizama notes the presence of the two conflicting and contrary sets of documents filed in court by Sorensen. The Judge notes the paradox of the contradicting documents and concludes the likelihood that the postal return receipts are fraudulent.

In both the alleged return postal receipts and the returned unclaimed envelopes, the dates involved show service/attempted service on Bradshaw for the 1st amended complaint after May 20, 1997 and for the 2d amended complaint after May 30, 1997. The alleged service for both alleged documents is illegal and void per the stipulation order of Castro (Ex. H herein).

| | |
|---|---|
| Jul 25, 2005 | Idaho USDC dismissed 05-0084 for lack of personal jurisdiction. |
| Aug 20, 2005 | Bradshaw filed 05-0027 in the NMI USDC. |
| Dec 29, 2005 | SC Justice Lizama granted Bradshaw's motion to void (Ex. J herein). In Lizama's order (p. 15), the judge noted that a misrepresentation is fraudulent if the actor: "(a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (3) knows that he does not have the basis for his |

13

EXHIBIT A

representation that he states or implies. Ada v. Sadhwani's Inc., 3 N.M.I. 303, 313 (MO 1992) citing REST. (2D) TORTS (section 526 (1977))." The Judge concluded that "plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record..."

Per this statement and item (3) of his cite, the action by Sorensen/Bisom was fraudulent. In US courts, the standard for proof of fraud in civil actions are often "clear and convincing evidence"--Grogan v. Garner, 498 US 279 (1991). In many states (like NJ, MA, etc), the evidence for fraud is only a "preponderance of the evidence." In 96-1320, both the preponderance of evidence and the presence of clear and convincing evidence are sufficient for a judgment of fraud on the part of Sorensen/Bisom.

| | |
|---|---|
| Jan 30, 2006 | Bisom appealed. CNMI Supreme Court Appeal 06-0005 (Docket). |
| Apr 14, 2006 | Bradshaw's writes AG asking for AG assistance and indemnification (Ex. BB herein). |
| Apr 26, 2006 | Acting AG Baka's writes Bradshaw saying no AG assistance (Ex. CC herein). |
| May 24, 2006 | Sorensen/Bisom filed his opening brief on the appeal (Ex. S herein). In his appeal to the NMI Supreme Court (p. 2), he said that the default on Bradshaw was made per the default motion he filed in the SC on Feb 14, 2000. Thus, it cannot be argued that no harm came to Bradshaw from the fake receipts. Because Sorensen filed the receipts in court, Sosebee went to court on Feb 1, 2000 and illegally revealed Bradshaw's privileged letter of Jul 14, 1999 (Ex. L herein).<br><br>This privileged letter prompted Sorensen in his opposition to counter it by filing two envelopes which he claims the post office returned to him as unclaimed from certified letters sent to Bradshaw (Ex. N herein). All of this came up because of Sosebee's action to bring the paradox of conflicting data to the attention of the SC (by showing that Bradshaw claimed no service while Sorensen claimed service by certified mail with return receipts which were supposedly signed and returned to Sorensen).<br><br>The fact is that the submission of the fraudulent postal receipts played a major role in the actions of Sosebee, Sorensen and Castro in Feb 2000, as well as providing evidence that the receipts were the precise reason for the entry of default. |
| Jun 20, 2006 | Bradshaw filed his opposition brief on the Bisom appeal (Ex. AA herein--the full exhibit plus supporting documents are on file with the USDC under the |

*EXHIBIT A*

|  |  |
|---|---|
|  | Bradshaw declaration supporting his opposition to the Castro Motion to Dismiss of Jun 28, 2006). |
| Jun 21, 2006 | Sorensen filed his answer on 05-0027 with this Court. In his answer to the 2AC filed in the USDC, he denied all 397 paragraphs but for 14 paragraphs which he admitted (and another 15 paragraphs which were omitted as being incorporating). He did admit his Jul 2005 "Opposition to Motion to Void/Vacate Judgment" (p. 4) which referred to the postal receipts and acknowledged that BISOM had "represented to the court that he had served defendant (in reference to BRADSHAW) by certified mail and defendant had signed the receipt,...There is nothing to indicate that plaintiff (in reference to BISOM) had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to." |
|  | Otherwise, Sorensen denied the fake postal receipts. In his answer, he stated the following: "(4) that to whatever extent anyone may have misrepresented the receipts by plaintiff of service of process, such misrepresentation was not the cause of the default judgment entered against Bradshaw; and hence, did not result in any harm to plaintiff." |
|  | But his defense is contrary to the evidence and records in the case. The truth is that he filed motions for default on Feb 14 and 16, 2000 (Ex. O, P herein) on the basis of service on Bradshaw and with having filed "return of service" forms with the court. Return of service forms are completed after service is made, They are then filed with the court to prove that service was made. Certificates of service of mailing are not return of service forms. |
| Jul 5, 2006 | Bisom filed his reply brief on the appeal (Ex. T herein). Sorensen admits that he did indeed furnish the fake receipts to his opposing counsel, Sosebee (p. 7, Ex. T). But he argues that he did not submit the signed return receipts to the SC clerk. In his view, submission of these receipts to his opposing counsel does not constitute submitting them to the court or causing any harm. |
|  | Actually Bisom did submit the receipts to the clerk because they were in the file in support of the default motion as described to Bradshaw by a number of people in the AG's office during the period Sep 04 to Mar 05 (Ex. J 2AC). Allegedly, these receipts were either destroyed or hidden by personnel in the AG's office under the supervision of AG Brown. Tampering with evidence is obstruction of justice. This Reply Brief by Sorensen admits that Sorensen did indeed furnish the fake receipts to his opposing counsel, Sosebee (p. 7, Ex. T herein). But he argues that he did not submit the signed return receipts to the SC. |

15

EXHIBIT

A

|  |  |
|---|---|
|  | In his view, submission of the receipts to his opposing counsel does not constitute submitting them to the court or causing any harm. Actually Bisom did submit the receipts to the SC because they were in the file in support of the default motion as described to Bradshaw by a number of people in the AG's office during the period Sep 04 to Mar 05 (Ex. J, 2AC). Allegedly, these receipts were either destroyed or hidden by personnel in the AG's office under the supervision of AG Brown. Tampering with evidence is obstruction of justice. |
| Jul 17, 2006 | Asst AG St Peter's letter to Bradshaw says that the AG's office does not represent Bradshaw and is under no obligation to do so (Ex. DD herein). |

*EXHIBIT A*