JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. 234-1414
Fax. No. 234-1417

Attorney for Plaintiff


### IN THE SUPERIOR COURT
### FOR THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS


| | | |
|---|---|---|
| ROBERT A. BISOM, | ) | CIVIL CASE NO. 96-1320 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **FOURTH AMENDED** |
| | ) | **COMPLAINT** |
| COMMONWEALTH OF THE NORTHERN | ) | |
| MARIANA ISLANDS, LEO L. | ) | |
| LAMOTTE, CNMI Public Auditor, | ) | |
| in his official capacity, | ) | |
| ROBERT D. BRADSHAW, formerly | ) | |
| appointed Temporary Public | ) | |
| Auditor, in his individual | ) | |
| capacity; SCOTT KHENG SHANG | ) | |
| TAN, formerly CNMI Public | ) | |
| Auditor, in his individual | ) | |
| capacity, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff alleges:

### JURISDICTION

1.  This court has jurisdiction by virtue of the

Commonwealth Judicial Reorganization Act of 1989 (1 CMC § 3001 et

seq.) and 1 CMC § 3202 in particular.

*Exhibit
G*

1

**PARTIES**

2.  Plaintiff is a citizen of the United States and during the times relevant to this complaint was a resident of Japan and the CNMI.

3.  Defendant ROBERT D. BRADSHAW is a citizen of the United States and was formerly a resident of the CNMI and now a resident of the state of Washington.

4.  Defendant SCOTT KHENG SHANG TAN is a citizen of the United States and is a resident of the CNMI.

5.  Defendant COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (CNMI) is a political and governmental entity in union with the United States of America.

**GENERAL ALLEGATIONS**

6.  During April, 1993 plaintiff was hired by defendant CNMI to serve as Legal Counsel in the office of the Public Auditor.

7.  The employment of plaintiff was memorialized in that certain Exempted Service Employment Contract, together with Conditions of Employment, a true copy of which is attached to the Complaint originally filed by plaintiff as Exhibit A and incorporated herein by reference as if set forth in full.

8.  At the time he was hired plaintiff was residing in Kyoto, Japan.

9.  At the time plaintiff was hired the Public Auditor was defendant TAN.

10.  On or about April 23, 1993 plaintiff began to work as legal counsel pursuant to his having been hired as hereinabove

2

*EXHIBIT G*

alleged.

11.  On or about November 25, 1993 the term of office of TAN expired and he ceased functioning as Public Auditor.

12.  On or about November 25, 1993 defendant BRADSHAW was appointed as "Temporary Public Auditor".

13.  The appointment of defendant BRADSHAW as Temporary Public Auditor was done by then Governor Lorenzo I. Deleon Guerrero, whose term of office was to expire on January 10, 1994, at which time he was to be succeeded by the successful candidate for Governor, Froilan Tenorio.

14.  At the time that defendant BRADSHAW was designated Temporary Public Auditor, he was in the employ of the Department of Finance, in which employ he remained during the time he acted in the capacity of Temporary Public Auditor.

15.  On or about December 28, 1993 defendant BRADSHAW caused plaintiff's employment to be terminated for cause, which termination was effected as of January 4, 1994, as documented by Exhibit B, C and D attached to the Complaint originally filed.

16.  In doing the things alleged herein the individual defendants were acting in their official capacity as Public Auditor, Temporary Public Auditor, or Acting Pubic Auditor in the course and scope of their employment and as agents of defendant, CNMI, and/or in their individual capacities.

17.  Plaintiff has, and continues to incur attorney's fees and costs as a result of the acts of defendants as alleged herein.

EXHIBIT

G

3

**FIRST CLAIM**--Intentionally Omitted

18 - 23.  Deleted.

**SECOND CLAIM**--Intentionally Omitted

24 - 25.  Deleted.

**THIRD CLAIM**--CNMI Constitutional Violations
Against Defendants Bradshaw,
Individually and Officially, and the CNMI

26.  Plaintiff incorporates herein by reference paragraph 1-17 hereinabove alleged as if set forth here in full.

27.  Defendants have violated plaintiff's rights as guaranteed by Article I, Section 2 of the Constitution of the Northern Mariana Islands in that plaintiff's employment was terminated due to the perception that plaintiff's political position was aligned with the previous Public Auditor and hostile to the outgoing administration, because of his questioning the legal authority of the person appointed as Temporary Public Auditor and because of his questioning the legality and propriety of the"single audit" being done as desired by the out-going administration, as hereinabove alleged.

28.  Defendants have violated plaintiff's right to procedural due process guaranteed by Article I, Section 5 of the CNMI Constitution in that when defendant terminated the employment of plaintiff, defendant failed to give plaintiff proper notice and an opportunity to be heard to contest the adverse personnel action, despite the fact that plaintiff had a legally cognizable property right.

4

EXHIBIT
G

29.  Defendants have violated plaintiff's right to equal protection of the laws guaranteed by Article I, Section 6 of the CNMI Constitution in that plaintiff's employment was terminated as an act of discrimination based on plaintiff's being of the Jewish race.

30.  Defendants have violated plaintiff's rights as guaranteed by Article I, Section 5 of the CNMI Constitution in that: in the process of terminating plaintiff's employment, defendant Bradshaw made charges impairing plaintiff's reputation for honesty, integrity or morality; defendant Bradshaw publicly disclosed the charges of plaintiff's unethical and dishonest conduct; and the accuracy of the charges were disputed by plaintiff.  Notwithstanding these facts plaintiff was not given a hearing or other opportunity to clear his name.

31.  As a direct and proximate result of the action of defendants, as hereinabove alleged, plaintiff has been damaged in an amount according to proof, including, but not limited to the loss of:  salary, housing benefits, annual leave benefits, medical benefits, use of government vehicle, retirement benefits, expatriation and repatriation benefits and allowances; and plaintiff has suffered general damages, including emotional distress and loss of earning capacity.


**FOURTH CLAIM**--Contract Against Defendant CNMI

32.  Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

5

*EXHIBIT G*

33.   Plaintiff performed all of the duties and responsibilities and fulfilled the conditions of his employment contract.

34.   Defendant CNMI breached the employment contract by terminating it for cause when, in fact, no real cause existed to terminate the employment contract.

### FIFTH CLAIM--Wrongful Discharge Against Defendant CNMI

35.   Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

36.   The contract between plaintiff and defendant included an implied covenant of good faith and fair dealing.

37.   Defendant CNMI breached that covenant by terminating plaintiff's employment in that the reason for doing so was in retaliation for plaintiff's failure to support the Temporary Public Auditor despite plaintiff's good faith belief that the Temporary Public Auditor was illegally appointed and that the manner in which he intended to conduct the "single audit" was improper and politically motivated, and also due to the fact that plaintiff was of the Jewish race.

### SIXTH CLAIM--Intentional Causing Emotional Distress Against Defendant Bradshaw Individually

38.   Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

39.   During the month of December, 1995, defendant BRADSHAW instituted and maintained a course of conduct that included:

*EXHIBIT*
*G*

6

confiscating the keys to plaintiff's office; confiscating the keys to the government car assigned to plaintiff and which he was authorized to use; instructing plaintiff that he could neither make nor receive telephone calls without the prior consent of defendant; instructing plaintiff that he was not to leave the office without the prior consent of defendant; retracting previous permission to leave Saipan to go to Guam for medical purposes; refusal of annual leave previously granted; assigning plaintiff from his office to a work station in a hallway common area; threatening to have plaintiff evicted from his home; filing a formal complaint with the CNMI Bar Association charging plaintiff with ethics violations without legal or factual foundation for such charges.

40.  The actions of defendants were extreme and outrageous and done intentionally or recklessly with the desire to inflict severe emotional distress or were certain or substantially certain that such distress would result from his conduct.

41.  As a direct and proximate result therefrom, plaintiff did suffer severe emotional distress, including anguish, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment and worry.

42.  As a direct and proximate result therefrom, plaintiff suffered economic loss, including the cost of hiring attorneys to defend him with regard to said ethics violation complaint.

43.  As to the course of conduct hereinabove alleged, defendant BRADSHAW, acted with malice and in the conscious

EXHIBIT
G

disregard of the rights of plaintiff.

**SEVENTH CLAIM**--Indemnification Against Defendant CNMI

44.  Plaintiff incorporates herein by reference paragraphs 1-17 as hereinabove alleged as if set forth here in full.

45.  On or about December 10, 1993, defendant BRADSHAW, while purporting to act in his official capacity as Temporary Public Auditor, filed a complaint against plaintiff with the CNMI Bar Association accusing him of violations of legal ethnics.

46.  Plaintiff made a request in writing to defendant CNMI to pay for his defense against such claims, which plaintiff reasonably and in good faith believed occurred within the scope of his employment as legal counsel of the Public Auditor.

47.  Defendant did not respond to plaintiff's written request.

48.  Defendant unreasonably withheld acceptance of the attorney selected by plaintiff.

49.  On or about December 14, 1994, the plaintiff was notified by the Disciplinary Committee of the CNMI Bar Association that the complaint had been dismissed after a thorough investigation found that none of ethics violation charges had a legal or factual basis upon which to proceed.

50.  Plaintiff has incurred legal expenses, including attorney's fees, in the successful defense of these allegations.

51.  Plaintiff has made demand for reimbursement of these legal expenses, but defendant has failed and refused to reimburse

*EXHIBIT G*

plaintiff for his expenses.

### EIGHTH CLAIM--Violations of Civil Service Act
#### Against Defendant Bradshaw Individually
#### (1 CMC Section 8101 et seq.)

52. Plaintiff incorporates herein by reference paragraph 1-17 and 31 hereinabove alleged as if set forth here in full.

53. Defendant Bradshaw took the actions as herein alleged and terminated plaintiff's employment because of the political and\or religious actions or beliefs of plaintiff or for the failure of the plaintiff to take political action for a political purpose in violation of 1 CMC section 8145(f).

54. The termination of plaintiff's contract by defendant Bradshaw was an act of discrimination against plaintiff on account of his race, in violation of 1 CMC § 8141.

55. Defendant Bradshaw's conduct as herein alleged constitutes political coercion in violation of 1 CMC section 8152(b).

56. As a direct and proximate result thereof plaintiff has suffered damages, both tangible and intangible, has incurred attorney's fees and court costs.

### NINTH CLAIM--Quantum Merit Against Defendant CNMI

57. Plaintiff incorporates herein by reference paragraphs 1-17 hereinabove alleged as if set forth here in full.

58. During early January, 1994 defendant BRADSHAW ceased acting as Temporary Public Auditor and was replaced by defendant

EXHIBIT
G

TAN.

59.    On or about January 14, 1994 at the special request of defendant TAN, plaintiff was asked to work in the office of the Public Auditor on administrative tasks, pending his being rehired pursuant to a new contract as legal counsel, which defendant represented would occur shortly thereafter.

60.    Plaintiff did return to the office of the Public Auditor and worked for three days.

61.    Plaintiff has not been paid for the days he worked in January, 1994.

### TENTH CLAIM--Promissory Estoppel Against Defendants Tan, Officially and Individually and the CNMI

62.    Plaintiff incorporates herein by reference paragraphs 1-17 and 31 as hereinabove alleged as if set forth here in full.

63.    On or about November 25, 1993, after plaintiff had heard that Robert Bradshaw had been appointed to be Temporary Public Auditor, plaintiff contacted defendant TAN, who was away from Saipan, by telephone.  During that telephone conversation TAN told plaintiff: that TAN was and would remain the Public Auditor until the end of his term at the end of December, 1993; that plaintiff should continue to follow the orders and directions of TAN insofar as the office and, in particular the conduct of the "single audit"; that he should meet with representatives of the Governor-Elect's Transition Committee concerning the conduct of the "single audit"; that TAN would protect and take corrective measures for anything that should

EXHIBIT
G

happen to plaintiff in doing what TAN asked of him.

64.   On or about November 27, 1993 plaintiff met with representatives of the Governor-Elect's Transition Committee, who told plaintiff, among other things, that if he were fired for opposition to the manner of the conduct of the "single audit" that he would be rehired when the new administration took office.

65.   On or about January 17, 1994, defendant TAN was appointed as Temporary Public Auditor, and assumed that position.

66.   During the last half of January, 1994 defendant TAN continued to assure plaintiff that he would be hired again as the counsel for OPA.  During this time TAN told plaintiff: that he should go to Japan to be eligible to be hired "off-island" so that he would enjoy benefits such as bringing his personal effects still in Japan to Saipan at government expense and that he would send plaintiff a written contract for employment as OPA counsel on terms and conditions similar to the previous employment contract, while plaintiff was in Japan.

67.   On or about February 1, 1994 plaintiff left Saipan to go to Japan as TAN had directed him to do.  During the month of February, 1994, plaintiff waited for the written contract to arrive.  TAN continued to reassure plaintiff, until late February, while plaintiff was in Japan, that plaintiff would be re-hired imminently.  Then, in late February and while plaintiff was waiting for the new contract, defendant indicated to plaintiff that defendant was unsure that defendant would re-hire plaintiff.  Defendant told plaintiff that plaintiff would be

EXHIBIT
G

called and told within a few days.  After several such
conversations but still with no final resolution, in late
February, discouraged and frustrated by the failure to complete
re-hiring of him, plaintiff returned to Saipan to continue to
pursue re-employment as OPA counsel.

68.   Finally, on or about March 10, 1994, TAN communicated
to plaintiff, by statements made to plaintiff's attorney, that
TAN would not rehire plaintiff for the OPA counsel job.  However,
TAN also represented that he would see to it that plaintiff
received "full compensation" for whatever he was due from loss of
his job.

69.   Plaintiff reasonably relied upon the representations of
defendant TAN in that he went to Japan and returned, forwent
other employment possibilities while staying in Japan and Saipan
awaiting rehiring and then awaiting compensation, and retained an
apartment in Japan due to the uncertainty of whether he would
have employment in Saipan and would be allowed shipment of his
personal effects, or full compensation therefor, all to
plaintiff's detriment.

### ELEVENTH CLAIM--Fraudulent Misrepresentation
#### Against Defendant Tan Individually

70.   Plaintiff incorporates herein by reference paragraphs
1-17, 31, and 63 through 69 as hereinabove alleged as if set
forth here in full.

71.   In making the representations of his intention to re-
hire plaintiff, as hereinabove alleged, defendant TAN

EXHIBIT
G

misrepresented his true intentions with the intent to deceive plaintiff in that he did not intend to re-hire him.

72.   Plaintiff acted in justifiable reliance on the representations of defendant TAN to his detriment as hereinabove alleged.

73.   Defendant TAN acted with malice and in the conscious disregard of the rights of Plaintiff.

WHEREFORE, Plaintiff prays for judgement as follows:

1.   For compensatory damages against defendant Robert D. Bradshaw according to proof;

2.   For punitive damages against defendant Robert D. Bradshaw in an amount within the discretion of the trier of fact;

3.   For compensatory damages against defendant Scott Kheng Shang Tan according to proof;

4.   For punitive damages against defendant Scott Kheng Shang Tan in an amount within the discretion of the trier of fact;

5.   For damages against defendant Commonwealth of the Northern Mariana Islands according to proof;

6.   For reimbursement of plaintiff's attorney's fees and expenses in defense of the complaint filed with the Disciplinary Committee of the CNMI Bar Association;

7.   For pre-judgment interest as allowed by law;

8.   For reasonable attorneys fees incurred;

9.   For costs of suit incurred;

EXHIBIT
G

13

10.    For such other and further relief as the court may deem
proper.

JAY H. SORENSEN
Attorney for Plaintiff

APR 29, 2005

EXHIBIT
9

14

JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. 234-1414
Fax. No. 234-1417

Attorney for Plaintiff

## IN THE SUPERIOR COURT
### FOR THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROBERT A. BISOM, | ) | CIVIL CASE NO. 96-1320 |
| Plaintiff, | ) | |
| vs. | ) | **STIPULATION RE MOTIONS;** |
| | ) | **ORDER THEREON** |
| COMMONWEALTH OF THE NORTHERN | ) | |
| MARIANA ISLANDS, ROBERT D. | ) | |
| BRADSHAW, formerly appointed | ) | |
| Temporary Public Auditor, in | ) | |
| his official and individual | ) | |
| capacities; SCOTT KHENG SHANG | ) | |
| TAN, formerly CNMI Public | ) | |
| Auditor, in his official and | ) | |
| individual capacities, | ) | |
| | ) | |
| Defendants. | ) | |

**RECITALS:**

A.  Defendants have brought the following motions:  Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and Insufficiency of Process; Motion for a More Definite Statement; Motion to Require Plaintiff to File a Bond for Costs.

Exhibit
H

1

B.   These motions are set for hearing on June 4, 1997.

C.   Plaintiff is willing to amend the pleadings to meet some of the points raised by defendants' motions, and to provide some security for defendants' costs.

Accordingly, the parties hereto, by and through their attorneys of record, hereby stipulate and agree as follows:

1.   Plaintiff will amend his Amended and Supplemental Complaint in certain regards to clarify the allegations and will amend the summons.

2.   Plaintiff will file and serve the second amended complaint and amended summons on or before May 30, 1997.

3.   Defendant will have thirty (30) days from receipt of service to respond to the second amended complaint.

4.   On or before May 30, 1997 Plaintiff's counsel will deposit the amount of $812.50 into his trust account, proof of which shall be given to defense counsel, to be held by plaintiff's counsel in trust, to secure the payment of the cost bill in defendants' favor in <u>Bisom v. CNMI, et al.</u> (District Court Civil Action No. 95-0042), to be paid to the office of the Attorney General in the event that the appeal of that case now pending (Ninth Circuit Court of Appeals No. 96-17369) is concluded in favor of defendants.

5.   All three of defendants' motions shall go off calendar, without prejudice to defendants' right to challenge the legal sufficiency of the allegations of the second amended complaint.

2

*EXHIBIT H*

6.   Defendants agree not to seek further security for costs until after determination of Ninth Circuit Appeal No. 96-17369.

OFFICE OF THE ATTORNEY GENERAL

_____
JAY H. SORENSEN
Attorney for Plaintiff

_____
D. DOUGLAS COTTON
Attorney for Defendants CNMI,
Robert D. Bradshaw and Scott
Kheng Shang Tan

## ORDER

IT IS SO ORDERED.

Dated: _____   _____
ALEXANDRO C. CASTRO
Presiding Judge

3

*EXHIBIT H*

11-06-08

IN THE SUPERIOR COURT
OF THE ·
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM,                          )        CIVIL ACTION NO. 96-1320
                                          )
                    Plaintiff,            )
                                          )
         vs.                              )
                                          )
COMMONWEALTH OF THE NORTHERN              )        **DECISION AND ORDER**
MARIANA ISLANDS,                          )
ROBERT D. BRADSHAW, in his official and   )
individual capacity,                      )
SCOTT CHANG SANG TAN, in his official and )
individual capacity,                      )
                                          )
                    Defendants.           )
_____)

## I. PROCEDURAL BACKGROUND

Pursuant to stipulation, the Defendants' Motion to Dismiss for Lack of Personal Jurisdiction and

Failure to State a Claim *and* Defendants' Motion for a More Definite Statement have been submitted

on the pleadings for decision. The parties also submitted additional written argument on the issue of

whether Plaintiff, as an attorney for the Public Auditor with Excepted Service Employee status, is

entitled to the protections afforded by the Civil Service System.

The Court, having considered the written arguments of counsel, and the record herein, now

rules on Defendants' motions as follows:

**FOR PUBLICATION**

[p. 2]                          ## II. STANDARD OF REVIEW

In ruling upon a Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim

upon which relief can be granted, the trial court must take the well-pleaded facts alleged in the

Exhibit
I

1.

complaint as true and admitted. *Govendo v. Marianas Public Land Corp.* 2 N.M.I. 485, 490 (1992). The Court must also "draw reasonable inferences from the allegations" in the complaint. *In re Adoption of Magofna*, 1 N.M.I. 449, 454 (1990). However, "there is no duty to strain to find inferences favorable to the nonmoving party." *Id.* The burden is on the moving party to prove that as a matter of law no claim exists. *See, e.g., Govendo, supra,* at 490; *Sazerac Co. Inc. v. Falk,* 861 F.Supp. 253 (D.C.N.Y. 1994).

### III. DISCUSSION

Defendants seek dismissal of several causes of action from Plaintiff's complaint. The Court will address each argument raised by the Defendants in sequential order:

### 1. Motion To Dismiss Third Cause Of Action For Failure To State A Claim For Violation Of Procedural Due Process.

Plaintiff alleges in his third cause of action, violations of his right to procedural due process under Article I, Section 6 of the Constitution of the Commonwealth of the Northern Mariana Islands("CNMI Constitution").[1]  Defendants move to dismiss this claim on the grounds that Plaintiff was not a member of the Civil Service System and, as such, "[t]he provisions of the personal Service System Rules and Regulations for the Executive Branch, which provide certain notice and procedural protections to Civil Service employees, did not apply to plaintiff." *See Defendants' Motion to Dismiss* at 2.

Article XX of the CNMI Constitution provides, inter alia, that "[e]xemption from the civil service shall be as provided by law, and the commission shall be the sole authority **[p. 3]** authorized by law to exempt positions from civil service classification." The CNMI Supreme Court, relying on legislative history from the Second Constitutional Convention, has interpreted this language to mean that "only if the legislature passes a law providing for exemptions may there be exemptions from the civil service system. Only the legislature can exempt government employees from the civil service system."

---

[1] Initially, Plaintiff conceded that the Court should dismiss this claim with prejudice. *See Plaintiff's Opposition to Motion to* Dismiss at 1-2. Plaintiff now contends that he was covered by the Civil Service Act and, as such, he is entitled to its protection and "does have a viable claim for violations of his rights to due process." *See Plaintiff's Brief Re Coverage Under Civil Service System* at 2-5.

*EXHIBIT*
*I*

*Manglona v. Civil Serv. Comm'n,* 3 N.M.I. 244, 249 (1992).[2]

In response to the foregoing constitutional mandate, the CNMI legislature enacted 1 CMC, Division 8, Chapter 3. 1 CMC §8131(a) states: "Except as provided in this section, the Civil Service System shall apply to all employees of and positions in the Commonwealth government now existing or hereafter established." This provision then exempts twelve (12) separate and distinct positions from the Civil Service System. A cursory examination reveals that the only possible exemptions that could conceivably apply to Plaintiff here are 1 CMC §8131(a)(2) and 1 CMC §8131(a)(7).

The first exemption reads:

> Persons or organizations retained by contract where the Personnel Office has certified that the service to be performed is special or unique and non-permanent, is essential to the public interest, and that because of the degree of expertise or special knowledge required and the nature of the services to be performed, it would not be practical to obtain personnel to perform such service through normal public service recruitment procedures.

1 CMC §8131(a)(2). This category requires that the position be "non-permanent." The term "permanent" is defined as a position "which is authorized to continue longer than one (1) year." See, Part III, Sub-part B.2, PSSRR. Because plaintiff's contract was for two (2) years, he does not fall into this exemption category.

The second exemption provides: "Positions specifically exempted by any other law of the Commonwealth." 1 CMC §8131(a)(7). The statute that covers staffing of the Public Auditor's Office is 1 CMC §2305(a) and it reads: **[p. 4]**

> <u>Pursuant to applicable civil service laws and regulations</u>, the Public Auditor may appoint and remove those employees as he or she deems necessary to perform the duties of the office. These employees may include assistant public auditors, accountants, auditors, financial management analysts, investigators, <u>attorneys</u>, <u>paralegals</u>, secretaries, and clerks and the Public Auditor may determine their salaries and duties <u>consistent with civil service laws and regulations</u>. The total amount of all such salaries shall not exceed the funds available to the Public Auditor.

1 CMC §2305(a) (emphasis added). It is undisputed that Plaintiff here was hired under a contract labeled "Excepted Service Employment Contract." *See Exhibit "A", Plaintiff's Second Amended Complaint.* Plaintiff argues, however, that the "Excepted Service Employment Contract" caption does not preclude him from the procedural due process rights afforded to Commonwealth's Government

---

[2] In a somewhat different context, this conclusion has been reiterated by the CNMI Supreme Court in *Sonoda v. Cabrera,* (Certified Question No. 96-001, USDC Civil Action No. 96-0012, April 29, 1997).

EXHIBIT
I

employees under the Personnel Service System Rules and Regulations("PSSRR"). *See Plaintiff's Brief Re Coverage Under Civil Service System* at 2-5.

The United States District Court for the Northern Mariana Islands visited a similar issue in Olopai-Taitano v. Guerrero, (USDC Civil Action No. 93-0019, October 13, 1994). In *Olopai-Taitano,* the plaintiff was hired as the Administrator of the Division of Youth Services. *Id.* at 1. Plaintiff's Contract was designated an "Excepted Service Contract." *Id.* at 3. In her complaint, Plaintiff argued, inter alia, that the due process rights afforded to her under the Civil Service System had been violated when she was terminated. *Id.* at 1.

The District Court agreed. In addressing Defendants' argument that Olopai-Taitano was not entitled to the protections afforded by the Civil Service System, the Court first noted that Olopai-Taitano's position was a permanent position expressly created under 1 CMC § 2371, and not on the list of exempt positions set forth in 1 CMC § 8131(a). Second, the District Court noted that "the CNMI Excepted Service Personnel Regulations provide that excepted service contracts shall only be used for employees who are listed as exempt for the Civil Service System by 1 Commonwealth Code § 8131." *Id.* at 3. Thus, because Plaintiff's position was a permanent position and not specifically exempt from the Civil Service System under 1 CMC § 8131(a), the District Court concluded that, in spite of the Excepted Service contract, "Plaintiff was entitled to the due process protections set forth in the CNMI Personnel Regulations for civil service **[p. 5]** employees." *Olopai-Taitano* at 4.

This Court agrees with and hereby adopts the reasoning of the *Olopai-Taitano* Court. Defendants here have produced no evidence to establish that the position of Legal Counsel to the Office of the Public Auditor was a "non-permanent" position as required by 1 CMC §8131 (a)(2). Defendants failed to carry their burden in establishing that, as a matter of law, Plaintiff's claim is without merit. Plaintiff does have a constitutionally protected property right which, as claimed in paragraph 28 of the Second Amended Complaint, was violated by Defendant's failure "to give plaintiff proper notice and an opportunity to be heard to contest the adverse personnel action."[8] Accordingly, Defendants' motion to dismiss Plaintiff's claim for violation of procedural due process in the third cause of action is DENIED.

---

[8] See, Article I, Section 5, CNMI Constitution; Article XIV, Section 1, U.S. Constitution; *Board of Regents v. Roth,* 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972); *Batson v. Geisse,* 857 F.2d 1300, 1305 (9ᵗʰ Cir. 1988); *Christian v. Cecil County,* 817 F. Supp. 1279 (D.Md. 1993).

4.

EXHIBIT
I

**2. Motion To Dismiss Fifth Cause Of Action On The Ground That The CNMI Is Immune From Suits Arising From The Intentional Torts Of Its Employees.**

_____Defendants concede that the cause of action for implied covenant of good faith and fair dealing is contractual and not tortuous. See Defendants' Reply to Plaintiff's Opposition at 1. Contract causes of action against the CNMI are generally allowed pursuant to 7 CMC § 2251(b). For these reasons, Defendants' motion to dismiss the fifth cause of action on the ground that the CNMI is immune from suits arising from the intentional torts of its employees is DENIED.

**3. Motion To Dismiss Sixth Cause Of Action For Intentional Infliction Of Emotional Distress Against Defendant Bradshaw.**

_____To establish the cause of action for intentional infliction of emotional distress, a plaintiff must show that the conduct complained of: (1) was extreme and outrageous; (2) was intentional or reckless; (3) caused emotional distress; and (4) caused severe distress. Arriola v. Insurance Co. Of N.Am, 2 CR 113, 121 (N.M.I. Trial Ct. 1985).

In his Complaint, Plaintiff alleges that during a one month period he: [p. 6]

        A.     had the keys to his office and government car confiscated;

        B.     was forced to obtain Bradshaw's prior consent before receiving or making telephone calls;

        C.     was told that he could not leave his office without Bradshaw's prior consent;

        D.     was denied permission to go to Guam for medical reasons;

        E.     had approval for annual leave retracted;

        F.     was forced to move his desk into the public hallway;

        G.     was threatened to be evicted from his home; and,

        H.     was reported to the CNMI bar without cause.

*See Second Amended Complaint* at 6-8.

Defendant Bradshaw takes the position that none of these acts are sufficient to establish a cause of action for intentional infliction of emotional distress under the RESTATEMENT SECOND OF TORTS. *Motion* at 8-10.

The factual circumstances alleged by Plaintiff here for intentional infliction of emotional distress are

EXHIBIT
I

sufficient to withstand Defendants' Rule 12(b)(6) motion to dismiss. In so doing, the Court echoes the

reasoning expressed by the California Supreme Court in Molien v. Kaiser Foundation Hospital:

> [T]he jurors are best situated to determine whether and to what extent the defendant's conduct caused emotional distress, by referring to their own experience. In addition, there will doubtless be circumstances in which the alleged emotional injury is susceptible to objective ascertainment by expert medical testimony. <u>To repeat: this is a matter of proof to be presented to the trier of fact. The screening of claims on this basis at the pleading stage is a usurpation of the jury's function.</u>

27 Cal.3d 916, 616 P.2d 813 (1980) (citations omitted) (emphasis added).

Accordingly, Defendant Bradshaw's motion to dismiss the sixth cause of action for intentional infliction

of emotional distress is DENIED.

**[p. 7]**

## 4. <u>Motion To Dismiss The Eighth Cause Of Action For Violations Of The Civil Service Act.</u>

_____Plaintiff's eighth cause of action seeks redress against defendant Bradshaw individually for alleged

violations of the Civil Service Commission Act, 1 CMC §§ 8145(f) and 8152(b). These sections state as

follows:

> No public official or employee shall discharge, promote, demote, or, in any manner, change the status or compensation of any other official or employee, or promise or threaten to do so because of the political or religious actions or beliefs of the other official or employee or for the failure of the other official or employee to take any political action for any political purpose whatsoever or to advocate or fail to advocate the candidacy of any person seeking elective office.

1 CMC §8145(f).

> It is an offense for any person to cause or threaten to be caused a demotion in rank or civil service classification or position or a decrease in pay or any other benefit, or tenure of employment, of any government employee, with intent to discourage or encourage such government employee to support any candidate for public office, initiative or referendum or political party.

1 CMC § 8152(b).

In his Second Amended Complaint, Plaintiff alleges that Mr. Bradshaw "was appointed as the

Temporary Public Auditor" on or about November 25, 1993, approximately three weeks after the November

6, 1993 general election. _Second Amended Complaint, para. 12._ Plaintiff also alleges that "Mr. Bradshaw

*EXHIBIT*

*I*

6.

did not cause Plaintiff's employment to be terminated for cause until on or before December 28, 1993." *Id.* at 15.

In their motion to dismiss, Defendants argue that 1 CMC § 8152(b) cannot be a basis of recovery because all facts pled in Plaintiff's complaint took place after the November 6, 1993 general election. Motion at 11. According to the Defendants:

> Plaintiff does not, and cannot, allege that any actions taken by Mr. Bradshaw were intended to "discourage or encourage" plaintiff 'to support any candidate for public office" or political party because the election had already been held and decided before Mr. Bradshaw was appointed Temporary Public Auditor and before Mr. Bradshaw terminated plaintiff.

Id.

Plaintiff counters that Defendants are reading 1 CMC § 8152(b) too narrowly and that **[p. 8]** because Plaintiff alleges in his complaint that the actions taken against him were politically motivated, even though the actions took place after the general election, that his eighth cause of action should stand. See Opposition to Motion to Dismiss at 9. Plaintiff stresses that a strict reading of 1 CMC § 8152(b) would overly narrow the statute's application and act contrary to the legislature's intent to protect civil employees from political retaliation. Id. This Court agrees.

_____1 CMC § 8152 is entitled "Coercion of Public Employees for Political Purposes Made Unlawful." It is totally illogical to this Court that the Legislature would prohibit coercion of public employees for political purposes prior to elections, but would implicitly allow coercion of, or retaliation against, public employees for political purposes following elections. See Dela Cruz v. Hotel Nikko Saipan, Civil Action No. 91-259 (Super. Ct. July 10, 1995) (Courts are constrained to adopt reasonable interpretations of statutes); See also, Pierce v Van Dusen, 78 F. 693, 696 (1897) cited with approval in SUTHERLAND STAT. CONT. § 46.07 (5th Ed.) ("While the intention of the legislature must be ascertained from the words used to express it, the manifest reason and obvious purpose of the law should not be sacrificed to a literal interpretation of such words."). Therefore, Defendants' motion to dismiss the Eighth cause of action for violations of the Civil Service Act is DENIED.

Defendants also move to dismiss the eighth cause of action based on 1 CMC § 8145(f) arguing that "Defendants have been unable to locate any CNMI authority holding that there is a private right of action under 1 CMC § 8145(f)." Motion to Dismiss at 12. Neither party cites any authority on Plaintiff's standing to

7.

*Exhibit I*

sue under 1 CMC § 8145(f).

In order to have standing to maintain an action complaining of the wrongful acts of public officials, a private citizen must aver a special interest or a special injury not common to the public generally. See Friends of Chamber Music v. Denver, 696 P.2d 309, 315 (Colo. 1985) (en banc); See also, Ex parte Levitt, 302 U.S. 633 (1937) ("When an individual or a private citizen suffers an injury peculiar to himself from a public wrong which is not sustained by the public in general, he may sue in his own name and for his own benefit for such wrong."). While a failure **[p. 9]** to perform a duty to the public imposed upon an officer can form the basis of an action, if the duty is a duty to the individual, then a neglect to perform it, or to perform it properly, is an individual wrong, and may support an individual action for damages. Northwest Steel Co. v. School Dist., 148 P.1134, 1135 (Or. 1915)(en banc).

Because Plaintiff's complaint alleges causes of actions based on perceived wrongs to his <u>individual rights</u>, i.e., special injury not common to the public generally, he has standing to sue under 1 CMC § 8145(f). Accordingly, Defendants' motion to dismiss the Eighth cause of action based on 1 CMC § 8145(f) on the theory that Plaintiff has no standing to sue is also DENIED.

## 5. Motion To Dismiss The Tenth Cause Of Action For Promissory Estoppel.

Defendants move to dismiss Plaintiff's tenth cause of action for promissory estoppel, arguing that pursuant to 7 CMC § 2204(b), the CNMI has not consented to being sued for promissory estoppel and as such, it has sovereign immunity against such suits.[4] 7 CMC § 2204(b) provides that the CNMI Government is not liable for:

> Any claim arising out of . . . misrepresentation, deceit, or interference with contractual rights.

The doctrine of promissory estoppel requires the presence of four elements: (1) the party to be estopped must be appraised of the facts; (2) he must intend that his conduct be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and, (4) he must rely upon the conduct to his injury. In re Blankenship, 3 N.M.I.

---

[4] Defendants also argue that the CNMI's sovereign immunity extends to Defendant Tan in his official capacity.

8

*EXHIBIT I*

209, 214 (1992).[5]

_____Contrary to Defendants' assertion, promissory estoppel generally does not involve **[p. 10]** misrepresentation, but involves a promise by one party upon which another relies to his detriment and which the promisor should reasonably have foreseen would cause the promisee to so rely. See, e.g., Tiffany Inc. v. W.M.K. Transit Mix, Inc., 493 P.2d 1220 (1972). Thus, causes of action based on the theory of promissory estoppel need not be based on "misrepresentation or deceit" - the promisor may have had every intent of fulfilling the promise at the time it was made and he may have made his promise based on facts or circumstances which existed at the time the promise was made. For these reasons, Defendants' motion to dismiss the tenth cause of action based on promissory estoppel is hereby DENIED.

### 6. Motion For A More Definite Statement.

Defendants move, pursuant to Rule 12(e) of the Commonwealth Rules of Civil Procedure, for an order requiring Plaintiff to submit a more definite statement of his claims against Defendant Tan as alleged in the Third and Tenth Causes of Action. Defendants argue that a more definite statement must be made in the complaint so that they can ascertain whether Tan is being sued in his professional or individual capacity. Motion for More Definite Statement at 5-6.

Under similar facts in granting Defendants' motion for a more definitive statement, the Court in Bower v. Weisman, 639 F. Supp. 532 (S.D.N.Y. 1986) held: "Obviously, [Defendant] cannot effectively respond to [Plaintiff's] complaint until he knows which claims [Plaintiff] is asserting against him in his individual capacity." Accordingly, Defendants' motion for a more definite statement is therefore GRANTED.

### IV. CONCLUSION and ORDER

FOR THE FOREGOING REASONS:

1.    Defendants' Motion to Dismiss Plaintiff's claim for violation of procedural due process in the third cause of action is **DENIED**.

---

[5] *See also*, Blacks Law Dictionary, 3rd Edition. ("Promissory estoppel is that which arises when there is a promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on part of promisee, and which does not induce such action or forbearance and such promise is binding if injustice can be avoided only by enforcement of promise.")

EXHIBIT
I

2.    Defendants' Motion to Dismiss the fifth cause of action on the grounds that the [p. 11] CNMI is immune from suits arising from the intentional torts of its employees is **DENIED**.

3.    Defendants' Motion to Dismiss the sixth cause of action for intentional infliction of emotional distress is **DENIED**.

4.    Defendants' Motion to Dismiss the eighth cause of action for violations of the Civil Service Act is **DENIED**.

5.    Defendants' Motion to Dismiss the tenth cause of action for promissory estoppel is **DENIED**.

6.    Defendants' Motion for a More Definite Statement as to the third cause of action is **GRANTED**.

7.    Defendants' Motion for a More Definite Statement as to the tenth cause of action is **GRANTED**.

Within fifteen(15) days of this Order, Plaintiff shall file an amended complaint in conformance with this Decision.

SO ORDERED this _6_ day of November, 1998.


/s/  Alexandro C. Castro
ALEXANDRO C. CASTRO, Judge Pro Tem


10.

EXHIBIT
I