CLERK OF COURT
SUPERIOR COURT

For Publication

2005 DEC 29 PM 3: 45

BY _____

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| ROBERT A. BISOM, | CIVIL ACTION NO. 96-1320 |
|---|---|
| Plaintiff, | |
| v. | |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ET AL., | ORDER GRANTING ROBERT BRADSHAW'S MOTION TO VACATE JUDGMENT |
| Defendants. | |

This matter was last before the Court on October 11, 2005. Defendant Robert Bradshaw ("Bradshaw"), acting pro se, made an appearance by telephone. James Livingston, Assistant Attorney General, appeared on behalf of the Office of the Attorney General ("AG") of the Commonwealth. Plaintiff Robert Bisom ("Bisom") acting through Counsel Jay Sorensen ("Sorensen"), filed a brief opposing Bradshaw's motion. The issue before the Court is the voidability of the February 7, 2005 default judgment against Bradshaw in the Superior Court on grounds of improper personal service or fraud. Having considered the arguments and briefs, the Court is prepared to rule.

I. FACTUAL AND PROCEDURAL BACKGROUND

The following timeline summarizes a decade of litigation in this case:

November 14, 1995. Bisom sues the AG, et al. in the district court for the Northern Marianas.

ENTERED
DATE: _____

1

AG-Civil/
Mailed to
Bradshaw

Exhibit
J

November 6, 1996. The district court dismisses Bisom's claims for lack of jurisdiction.

December 5, 1996. Bisom files his original complaint against the same defendants in the Superior Court.

December 6, 1996. Assistant Attorney General Doug Cotton sends a letter to Bradshaw, notifying him that a complaint has been filed.

December 24, 1996. Sorensen sends a letter to Cotton asking if the AG will accept service on behalf of Bradshaw.

December 31, 1996. Defendants remove the case to federal court.

January 22, 1997. Cotton sends a letter to Bradshaw, inquiring as to whether Bradshaw wants to have the AG accept service on behalf of Bradshaw.

Late 1996 or early 97. This is the time frame in which Bradshaw claims to have received two large unlabeled packages from Saipan. *See* Answer to Plaintiff's Opposition to Vacate at 5.

January 31, 1997. Bradshaw sends a letter to Cotton saying that Bradshaw has not been served and that he will not authorize the AG to accept service on his behalf.

March 1997. The district court dismisses Bisom's federal claims and remands the rest to the Superior Court.

April 17, 1997. Cotton sends a letter to Bradshaw stating that Cotton told Sorensen that the AG would not accept service for Bradshaw.

May 1, 1997. Bisom files his First Amended Complaint in the Superior Court.

May 5, 1997. According to Sorensen's copy of the returned, canceled envelope marked "unclaimed" and bearing the number Z 142 485 879, this is the first date of attempted service on Bradshaw by certified mail. It is also the date that Cotton files receipt of acknowledgement of

2

EXHIBIT J

1. receiving the summons on behalf of the CMNI and Defendant Scott Tan. Cotton does not file an acknowledgement on behalf of Bradshaw.

2. May 9, 1997. The AG files a Motion for a More Definite Statement pursuant to Com. R. Civ. P. 12(e), and a Motion to Dismiss pursuant to Com. R. Civ. P. 12(b)(2), 12(b)(4), and 12(b)(6). Bradshaw's name is included in the pleadings.

3. May 30, 1997. Bisom files his Second Amended Complaint in the Superior Court.

4. June 2, 1997. Cotton sends a letter to Bradshaw stating that the AG will not accept service on Bradshaw's behalf. The letter states that the AG had filed a motion to dismiss, but that the motion was not litigated, as Bisom agreed to file a Second Amended Complaint.

5. June 2, 1997. Bradshaw sends a letter to Cotton saying Bradshaw had not been served and that he would not authorize the AG to accept service on his behalf. Bradshaw admits in the letter that there was unclaimed letter from Sorensen, addressed to Bradshaw and languishing at his local post office.

6. June 4, 1997. Bisom files a certificate of service to certify mailing the second amended complaint to Bradshaw at his Washington address.

7. June 9, 1997. According to Sorensen's copy of the returned, canceled envelope marked "unclaimed" and bearing the number Z 142 485 883, this is the second date that Bisom attempts to serve Bradshaw by mail (this time with the second amended complaint).

8. June 30, 1997. The Court's records reflect that proof of service was filed on this date. The Court has a copy of two return receipts signed by "Manny." Number Z 142 485 879 is dated June 4, 1997, as opposed to the May 5, 1997 date on the returned, unclaimed envelope. Number Z 142 485 883 is dated July 2, 1997, as opposed to the June 9, 1997 date on the returned, unclaimed envelope. In sworn affidavits, Bradshaw, his postal carrier David Vanderholm, and his neighbor Carol

3

EXHIBIT
J

Dassow attest that Bradshaw picked up his own mail, did not authorize anyone else to pick up his mail, and lived alone. No one could determine the identity of "Manny."

December 11, 1997. Cotton filed notice of substitution of party in Superior Court. Leo Lamotte, the Public Auditor, is substituted for Bradshaw and Tan in their official capacities. Bradshaw and Tan continue to remain in the case in their individual capacities.

December 24, 1997. Bisom files his Third Amended Complaint in the Superior Court, which defendants remove.

May 6, 1998. The district court dismisses the federal claim and remands the Commonwealth claims.

November 6, 1998. The Superior Court denies defendants' motion to dismiss.

November 18, 1998. Bisom, with leave from the AG, files his Fourth Amended Complaint in the Superior Court.

March 30, 1999. The AG files an answer on behalf of the CMNI and Scott Tan, but not Bradshaw.

June 30 1999. Assistant Attorney General Bush sends Bradshaw a letter asking if Bradshaw still wants the AG to represent him, and inquiring whether Bradshaw had ever been served.

July 14, 1999. Bradshaw sends Bush a letter suggesting that proof of service was fraudulent. The letter provides an ambivalent response to Bush's question of whether the AG should continue to represent Bradshaw, and expresses a (mistaken) understanding that the AG will act to remove Bradshaw's name from the lawsuit.

August 27, 1999. Sorensen sends Assistant Attorney General David Sosebee a letter, stating that "Enclosed are copies of the Certificate of Service that show service by certified mail on [Bradshaw] on two occasions. We also have the return receipt cards."

4

*EXHIBIT J*

1. August 30, 1999. In the AG's Response to Plaintiff's Motion for Partial Summary Judgment, the AG states that, "Defendant Robert D. Bradshaw, sued in his individual capacity, has not been served with summons in this case and has not appeared or answered in this case and is therefore not before this court for the purposes of this motion and response."

September 3, 1999. Plaintiff's Reply to Opposition to Motion for Partial Summary Judgment at 8 states that proof of service on Bradshaw was filed on May 6, 1997 and again on June 3, 1997, and that these were provided to defendants' counsel at the special request by letter on August 27, 1999.

February 22, 2000 (retroactive February 7, 2000). The Superior Court denies defendants' motion to remove the case from the trial docket on grounds of the lack of service on Bradshaw.

February 14, 2000. The Superior Court enters default judgment against Bradshaw.

March 9, 2000. The AG files an objection to Bisom's request for indemnification of Bradshaw on grounds that Bradshaw had never requested indemnification from the AG.

June 7, 2000. The Superior Court awards Bisom $139,000 against Bradshaw and $110,300 against the CMNI. The Court finds that the AG is not liable for indemnification under the Public Employees Legal Defense and Indemnification Act, 7 CMC § 2304.

April 10, 2000. Both parties appeal, although the AG later abandons its appeal.

July 15, 2000. Bradshaw sends a letter to the AG's office stating that he had not heard from them in a year, reiterating his impression that the AG would remove his name from the case, and stating that he had never been served, and that he would not authorize the AG to accept service on his behalf. Bradshaw received no response to this letter.

September 13, 2002. The Supreme Court issues a decision denying Plaintiff's appeal.

5

EXHIBIT J

1. April 2004. Bradshaw calls the AG's office to ask about the case. The Assistant Attorney General Ed Buckingham notifies Bradshaw in an April 6, 2004 letter of the outcome of the Superior Court and Supreme Court judgments.

2. August 2004. Bradshaw contacts Tom Schweiger, director of Micronesian Legal Services Corporation to find out about entry of default judgment against him. He begins making phone calls to the AG's office.

3. September 12, 2004. Bradshaw asks the AG to investigate potentially fraudulent return receipts in connection with service. Bradshaw understands that Buckingham has seen the return receipts.

4. October 7, 2004. Assistant Attorney General Joseph Race sends a letter to Bradshaw informing him that the AG referred the case to AG investigators Frank Kapileo and Alfred Teregeyo.

5. October 20, 2004. Bradshaw talks to Kapileo and understands that Kapileo saw the return receipts in the case file.

6. January 2005. Bradshaw talks to Race and understands that case is still being investigated. Bradshaw talks to Teregeyo and understands that Kapileo removed the postal receipts from the file and was taking them to the Saipan Postmaster.

7. February 15, 2005. AG Pamela Brown sends a letter to Bradshaw informing him that there is still a judgment against Bradshaw, and that the AG does not represent Bradshaw. This is the first time the AG informs Bradshaw that there is no attorney-client relationship.

8. March 2, 2005. Pursuant to Com. R. Civ. P. 60, Bradshaw files a motion in the Superior Court to void the $139,000 judgment against him.

EXHIBIT J

## II. ANALYSIS

**A.    Bradshaw's claim to void the CMNI judgment under Com. R. Civ. P. 60 is timely.**

Four years passed between the time of the default judgment against Bradshaw and the time Bradshaw filed the instant action. Bradshaw claims that he did not discover the judgment against him for three years because he was under the (mistaken) impression that the AG had removed his name from the case. His reply to Plaintiff's Opposition to Vacate at 7 states that "after three years, four amended complaints and several Bisom motions, Bradshaw came to believe that the AG had removed his name or that Bisom chose not to serve Bradshaw."

Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, misrepresentation, or other misconduct of an adverse party; where it is no longer equitable that the judgment should have prospective application; or for any other reason justifying relief from the operation of the judgment. The statute of limitations for bringing a motion for relief from a judgment is one year, when the basis for relief is newly discovered evidence or fraud by one of the parties. *Id.* However, the rule "does not limit the power of a court to entertain an independent action to relieve a party from a judgment, order, or proceeding, or to grant relief to a defendant *not actually personally notified as provided by law*, or to set aside a judgment for fraud upon the court." *Id.* (emphasis added).

Bradshaw seeks to vacate the judgment on grounds of lack of notice and fraud upon the court. Thus, even if more than a year has passed since the Feb 7, 2000 default judgment against Bradshaw, Rule 60 does not limit the Court's ability to grant relief.

**B.    The CMNI judgment against Bradshaw is voidable for improper personal service.**

In determining whether improper service can void the judgment, the Court has considered (1) whether the complaint and summons mailed to Bradshaw by certified mail constituted service or

7

*EXHIBIT T*

constructive service; (2) whether the service of the complaint and summons on the AG constituted service on Bradshaw; and (3) whether Bradshaw or the AG waived the right to contest service.

In Plaintiff's February 16, 2000 Supplemental Declaration in Support of Request for Entry of Default at 2, Bisom states that the "Amended and Supplemental Complaint and Summons was served to the defendant on May 5, 1997 by certified mail, postage prepaid, at his last known address, as appears from the return of service by Annabelle Guevarra." The third paragraph states that a copy of the second amended complaint was served in the same manner on June 3, 1997. The fourth amended complaint was served on only on the AG on November 20, 1998. The validity of the judgment depends on whether Bradshaw was properly served by mail with the initial complaint, whether the November 20, 1998 service of the final complaint on the AG was sufficient, or whether Bradshaw waived service.

 1. **The two certified mailings to Bradshaw in 1997 did not constitute service.**

  a. <u>Certified mail, sent without a court order, did not conform to 1996 Commonwealth Rules of Civil Procedure or the Washington State Rules of Civil Procedure.</u>

Com. R. Civ. P. 4(e) provides that service may be effected by any manner authorized by CMNI law, or "by delivering a copy of the summons and of the complaint to the individual personally or by leaving copies thereof at the individual's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein or by delivering a copy of the summons and of the complaint to an agent authorized by appointment or by law to receive service of process."

Com. R. Civ. P. 4(k) provides for service beyond the territorial limits of CMNI "when not prohibited by law." Since Bradshaw was a resident of the State of Washington at the time of

8

service, the form of service would have to conform to Washington law.[1] Washington Superior Court Civil Rule 4(c) states: "Service of summons and process, except when service is by publication, shall be by the sheriff of the court wherein the service is made, or by his deputy, or by any person over 18 years of age who is competent to be a witness in the action, other than a party."

The only circumstance under which service can be made by mail upon a Washington resident is as follows:

> In circumstances justifying service by publication, if the serving party files an affidavit stating facts from which the court determines that service by mail is just as likely to give actual notice as service by publication, the court may order that service be made by any person over 18 years of age, who is competent to be a witness, other than a party, by mailing copies of the summons and other process to the party to be served at his last known address or any other address determined by the court to be appropriate. Two copies shall be mailed, postage prepaid, one by ordinary first class mail and the other by a form of mail requiring a signed receipt showing when and to whom it was delivered. The envelopes must bear the return address of the sender. The summons shall contain the date it was deposited in the mail and shall require the defendant to appear and answer the complaint within 90 days from the date of mailing. Service under this subsection has the same jurisdictional effect as service by publication.

Washington Superior Court Civil Rule 4(d).

Bisom did not pursue any of the means of service provided under Washington law. Although he sent Bradshaw two certified mailings, the mailings were not pursuant to a court order as Washington law requires. Thus, the two mailings that plaintiff sent did not constitute service.[2]

---

[1] The situation does not require a conflict of law analysis, as the laws governing service of process in the two interested jurisdictions, CMNI and Washington, were not at odds. The laws of both jurisdictions could be respected by the application of the Washington rule.

[2] Bradshaw has also raised the argument that service was untimely. In his Third Amended Answer to Plaintiff's Opposition to Vacate, he notes that the certified mail sent to him in May and June of 1997 would have arrived more than 120 days after the filing of Bisom's original complaint on December 5, 1997. In 1997, Com. R. Civ. P. 4(m) allowed a plaintiff 120 days in which to serve the defendant. While it appears that service would have been untimely, the Court need not consider this claim since Bisom's mailings in May and June 1997 did not constitute service.

EXHIBIT J

b. <u>The fact that Bradshaw purposefully avoided mail service is irrelevant.</u>

Judge Castro's February 22, 2000 ruling denying Defendant's motion to remove the case from the trial docket suggests both that Bradshaw was served and that he avoided service. Paragraph 2 states: "Defendant Robert D. Bradshaw was properly served by mail, return receipt requested but purposefully avoided service."[3]

Bradshaw clearly was avoiding service. His July 14, 1999 letter to Cotton states: "I moved in 1996 and was sure Bisom didn't have my new address (to serve me if he chose)." In a June 2, 1997 letter to Cotton, he states, "I had a certified letter from Sorenson at the Post Office which was unclaimed by me and returned to him. He should have it returned by now so I suspect he will have to hire a process server which I guess he will." His July 15, 2000 letter to the AG exclaims, "Bisom will have to serve me personally if he wants to pursue this case with me!"

As discussed above, the only lawful means of service under CNMI and Washington law were (1) personal service, (2) service by publication, and (3) service by mail pursuant to a court order. None of these means were used. It is irrelevant whether Bradshaw purposefully avoided a form of service that was impermissible. There is no evidence that Bradshaw avoided the legal forms of service. Bradshaw's answer to Plaintiff's Opposition to Vacate at 7 states that he "operated a business which was open routinely to the public. He could have been served daily and he anticipated that indeed he would be served."

Even if Bradshaw could have been served by mail, his avoidance of service could not have been deemed "constructive service." While many state courts have deemed service to be valid

---

[3]  As the ruling does not rely on the return receipts signed by "Manny," this portion of the Court's evaluation will focus only on whether any avoidance on Bradshaw's part may be deemed "constructive service."

10

EXHIBIT T

where there is proof that the papers were actually sent to and received by the defendant,[4] federal courts interpreting mail service under Rule 4(c)(2)(C)(ii) have held that actual knowledge of the law suit does not substitute for proper service of process.[5] CMNI courts consider the interpretation of counterpart federal rules to be highly persuasive in interpreting Commonwealth procedural rules. *Tudela v. Marianas Pub. Land Corp.*, 1 N.M.I. 179, 184 (MP 1990).

2. **The AG's appearance in court did not waive the requirement to serve Bradshaw.**

Judge Castro's February 22, 2000 ruling denying defendant's motion to remove the case from the trial docket states in P. 4: "Defendant, Robert D. Bradshaw, has waived any potential challenge to insufficiency of service of process by his previously bringing a motion to dismiss without joining such motion." This result depends on the understandable presumption that, when the

---

[4] See *Massengill v. Campbell*, 391 F.2d 233, 235 (5th Cir.1968); *Fields v. Turlington*, 481 So.2d 960, 962 (Fla.App.1986); *Decca Leasing Corp. v. Torres*, 465 So.2d 910, 914 (La.App.1985), cert. denied, 468 So.2d 1211 (1985); *State of California Dept. of Forestry v. Terry*, 124 Cal.App.3d 140, 177 Cal.Rptr. 92, 95 (1981); *Hankla v. Roseland School Dist.*, 46 Cal.App.3d 644, 120 Cal.Rptr. 827, 834 (1975); *Patel v. Southern Brokers, Ltd.*, 289 S.E.2d 642, 644 (S.C. 1982); *McIntee v. State Dept. of Pub. Safety*, 279 N.W.2d 817, 820 (Minn.1979); *Merriott v. Whitsell*, 251 Ark. 1031, 476 S.W.2d 230, 232 (1972); *Thomas Organ Co. v. Universal Music Co.*, 261 So.2d 323, 327 (La.App.1972); *Schaaf v. Brown*, 200 S.W.2d 909, 910 (Ky. 1947). This is not true of the State of Washington, however. Revised Code of Washington (4.28.80) has a case note which reads: "Failing to come to door to receive service of process does not constitute evasion of service; those who are to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. *Weiss v. Glemp*, 127 Wash. 2d 726, 903 P 2d 455 (1955)."
  In a more recent case, a court found that a defendant's purposeful concealment from a process server (who staked out defendant's apartment for weeks before finally catching him getting his mail) allowed the plaintiff to exclude the period of concealment from the period of the statute of limitations. *Wilson v. Williams*, 111 Wash. App. 1055, 1055 (2002). However, the court maintained, "Simply failing to open the door, even if done repeatedly, may not be sufficient to demonstrate willful evasion of process." *Id.*

[5] See, e.g., *United States v. Gluklick*, 801 F.2d 834, 836 (6th Cir.1986) ("The courts, consistent with the legislative history, have held that the defendant's failure to acknowledge service renders such service invalid"); *Geiger v. Allen*, 850 F.2d 330, 332 n. 3 (7th Cir.1988) ("The rule in this and other circuits is that service by mail is not complete until an acknowledgment is filed with the court."); *Stranahan Gear Co., Inc. v. NL Indus., Inc.*, 800 F.2d 53, 57-58 (3rd Cir.1986); *Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1088-89 (4th Cir.1984).
  This Court pays special attention to the position of the Ninth Circuit, which, like the other circuits, does not recognize "constructive service." See *Higgins v. Hames*, 46 F.3d 1141, 1142 (9th Cir. 1995) ("Service fails unless the defendant timely returns the signed acknowledgment form. . . . If the defendant does not return the acknowledgment, the rule provides that other methods of service must be employed."); *Ghana v. Roberts*, 19 F.3d 1440, 1440 (9th Cir. 1994) (same).

11

EXHIBIT 7 J

AG filed motions using Bradshaw's name, the AG was representing Bradshaw.[6] However, the statements and conduct of both Bradshaw and the AG (as well the June 7, 2000 Superior Court ruling) belie this presumption.

Although formalities are typically unnecessary for the formation of an attorney-client relationship, 10 WILLISTON ON CONTRACTS (3d ed.) § 1285, there must be at least an implied agreement between the parties. *See United States v. Costanzo*, 625 F2d 465 (3d Cir. 1980), *Houston General Ins. Co. v. Superior Court of Alameda County*, 166 Cal. Rptr. 904 (Cal. App. 1980); *George v Caton*, 600 P.2d. 822 (NM App.1979); *Stormon v. Weiss*, 65 N.W.2d. 475 (ND 1954). While initially, Bradshaw and the AG seem to have been fumbling towards an attorney-client relationship, the relationship was never consummated. After Assistant Attorney General Cotton's June 2, 1997 letter informing Bradshaw that the AG had filed a motion to dismiss, but that the motion was not litigated, the AG did not communicate with Bradshaw for two years. Bradshaw appears to have been clueless as to the course of litigation, outside of the initial proceedings in federal court. Bradshaw's Answer to Plaintiff's Opposition to Vacate Judgment at 3-5, as well as his July 14, 1999 and June 15, 2000 letters, convey his impression that he was no longer a party to the lawsuit in the Superior Court.

The last communication that Bradshaw received from the AG (prior to the communications in 2004) was the June 30, 1999 letter from Assistant Attorney General Bush. Bush inquired as to whether Bradshaw wanted the AG to represent him, and whether Bradshaw had ever been served.

---

[6] Under Com. R. Civ. P. 12(h)(1), the defense of insufficiency of process is waived if omitted from a motion made pursuant to Rule 12. The defense must be raised in the first responsive pleading made during the time period in which the defense is available. If not made then, the only remedy is to amend the first responsive pleading according to Co. R. Civ. P. 15 (a). Com. R. Civ. P. 12(h)(1). *See also Kersh v. Derozier*, 851 F.2d 1509, 1511 (5th Cir. 1988). On May 9, 1997, the AG filed motions pursuant to Rule 12(b)(2), 12(b)(4), 12(b)(6), and 12(e) on behalf of all defendants, including Bradshaw. Rule 12(b)(5), allowing dismissal for insufficiency of service of process, was not raised.

EXHIBIT J

Bradshaw's July 14, 1999 response appears to have been the basis for the AG's abandonment of any interest in Bradshaw:

> Should you represent me further? Again I don't think I am a party to that CMNI case and if that is true, the answer is no (if the answer is yes then of course I would need representation) . . .your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me.

The AG's pleadings filed after this letter do not include Bradshaw's name among those represented by the AG. In its Motion to Remove Case from Jury Trial Docket at 4, the AG states, "The fact that a pleading was filed containing the name of Mr. Bradshaw does not make it a filing by him. Where the pleading was filed without his knowledge or consent it could not be attributed to him." In its opposition to Plaintiff's Motion for Indemnification Determinations Pursuant to 7 CMC §2304 at 4, the AG states: "Mr. Bradshaw has not authorized any such filings on his behalf and has not requested the Office of the Attorney General to represent him it [sic] this matter. . . Any actions taken by the Office of the Attorney General were done by mistake and without the knowledge or ratification by Mr. Bradshaw."

The AG's failure to follow the basic duties of an attorney towards a client provides further support for the notion that the relationship was never truly established. For instance, Rule 1.3 of the American Bar Association's Model Rules of Professional Conduct[7] requires a lawyer to "keep the client reasonably informed about the status of the matter" and to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Surely, had the AG been representing Bradshaw, it would have corrected Bradshaw's understanding (as expressed in the July 14, 1999 letter) that the AG had or would remove him from the suit.

---

[7] Rule 2 of the Disciplinary Rules and Procedures for Persons Practicing Law in the Courts of the Commonwealth provides that the Model Rules are applicable in the Commonwealth.

13

EXHIBIT

J

Further, the AG would not have blatantly violated Rule 1.16(b) by withdrawing in a manner that had a seriously adverse impact on Bradshaw: a default judgment.

Finally, Judge Castro's June 7, 2000 ruling on indemnification seems to follow the AG's reasoning: "The Court finds no evidence that Bradshaw made a request to the public entity to be indemnified pursuant to 7 CMC §2304." Whether Bradshaw failed to make a timely request for indemnification or whether he did not do so because he was never served is irrelevant to the question of the attorney-client relationship. The result is that the AG is deemed to have never represented Bradshaw. As such, the AG could not waive service through its appearance.

### 3. Service of the complaint and summons on the AG did not constitute service on Bradshaw.

Com. R. Civ. P. 5(a-b) allows "every pleading *subsequent* to the original complaint" to be served upon the attorney of record unless service upon the party is ordered by the court. (Emphasis added). Had the original complaint been properly served on Bradshaw, and, had the AG been the attorney of record in the Superior Court case, service of subsequent pleadings on the AG would have been permissible. However, as discussed above, the original complaint was never served on Bradshaw. Further, the AG was not the attorney of record.

Even if the AG had been Bradshaw's attorney, service on the AG against the express wishes of Bradshaw would have been improper. While an attorney has implied authority to make stipulations and decisions in the management or prosecution of an action, a decision that operates as a surrender of a substantial right of the client will ordinarily not be upheld. *State v. Barley*, 81 S.E.2d 772, 773 (N.C. 1954). Bradshaw had a right, under CNMI and Washington law, to require plaintiff to serve him personally rather than through the AG. This was communicated to Bisom's lawyer by both Bradshaw and the AG. Plaintiff's failure to follow these laws should *not be* sanctioned by a default judgment in his favor.

EXHIBIT J

C. **The fraud alleged does not void the CMNI judgment.**

In determining whether the judgment can be voided on grounds of fraud, the Court has considered (1) whether the actions alleged amounted to fraud; and whether (2) said actions affected the outcome of the judgment.

The documents which Bradshaw alleges to be fraudulent are the two return receipts signed by "Manny." It is clear to the Court that there is a gross inconsistency between the unclaimed packages returned to Sorensen and the return receipts accepted by "Manny," which bear the same certified mail numbers. Either the "Manny" return receipts are invalid, or the copy of the unclaimed envelope bearing Sorensen's address is invalid. Both, however, appear in Bisom's various motions as proof of service.

In his Reply to the Opposition to vacate the judgment, Bradshaw argues that both sets of documents are false. He disavows the existence of Manny and claims that the packages sent by Sorensen were unlabeled. However, in Bradshaw's June 2, 1997 letter to Cotton, he acknowledges that he purposefully failed to claim a package from Sorensen. Thus, the likely candidate for fraud is the set of return receipts signed by "Manny."

A misrepresentation is fraudulent if the actor: (a) knows or believes that the matter is not as he represents it to be, (b) does not have the confidence in the accuracy of his representation that he states or implies, or (3) knows that he does not have the basis for his representation that he states or implies. *Ada v. Sadhwani's, Inc.*, 3 N.M.I. 303, 313 (MP 1992) citing REST. (2D) TORTS § 526 (1977). Regardless of who "Manny" is, if he is not the authorized representative of Bradshaw, and plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record, then it is possible that fraud occurred.

15

EXHIBIT
J

However, it does not appear that the "Manny" return receipts were the basis for the Court's finding that Bradshaw had been constructively served. These returns were not mentioned in either the February 22, 2000 judgment (retroactive February 7, 2000) or the June 7, 2000 judgment. There is no order on record that even acknowledges the return receipts. Thus, while the evidence of mail fraud warrants a separate criminal investigation, it has no bearing on the outcome of this case. Although Com. R. Civ. P. 60(b) allows a court to vacate a judgment on grounds of fraud, Bradshaw has not shown that the judgment was grounded in fraud.

### III. CONCLUSION

Bradshaw's motion to vacate the default judgment against him for $139,000 is GRANTED, as this Court finds that Bradshaw was never properly served.

SO ORDERED this 29th day of December 2005.

Juan T. Lizama
Associate Judge, Superior Court

16

EXHIBIT J