1  JAY H. SORENSEN
   Attorney at Law
2  4th Floor, Suite A
3  Horiguchi Bldg., Garapan
   P.O. Box 1184
4  Saipan, MP 96950
   Tel. No. 234-1414
5  Fax. No. 234-1417

6
   Attorney for Plaintiff
7

8           IN THE SUPERIOR COURT
                    FOR THE
9     COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

10 ROBERT A. BISOM,                    CIVIL ACTION NO. 96-1320

11            Plaintiff,

12      vs.
                                       REPLY TO OPPOSITION TO
13                                     MOTION FOR PARTIAL
                                       SUMMARY JUDGMENT
14 COMMONWEALTH OF THE
   NORTHERN MARIANA
15 ISLANDS, LEO L. LAMOTTE,
   CNMI Public Auditor, in his official
16 capacity, ROBERT D.
   BRADSHAW, formerly appointed
17 Temporary Public Auditor, in his
   individual capacity, SCOTT
18 KHENG SHANG TAN, formerly
   CNMI Public Auditor, in his
19 individual capacity,
                                       Date:  September 8, 1999
20                                     Time:  2:30 p.m.
            Defendants.               Judge: Hon. Alexandro C. Castro
21

22

23

24

25      Plaintiff hereby replies to Defendants' opposition to Plaintiff's motion for partial

26 summary judgment.

27 \\

28 \\

1.

Exhibit
K

I.    **THERE IS NO DISPUTE CONCERNING THE ESSENTIAL FACTS AND THIS CASE IS RIPE FOR PARTIAL SUMMARY JUDGMENT.**

In their "Response to Plaintiff's Motion for Partial Summary Judgment," Civil Action No. 96-1320, Aug. 30, 1999 ("Defendants' Response"), Defendants do not contest any of the facts set forth in Plaintiff's Motion and accompanying Affidavit in Support. It is uncontested that Plaintiff was not provided any pre-termination of employment hearing or any post-termination hearing. Because these facts are not disputed, this case is ripe for partial summary judgment as a matter of law.

It is important to keep in mind the narrow scope of this motion. It seeks a determination of liability (damages being reserved for trial ) on only three issues: (1) that Plaintiff was denied due process when Defendants Bradshaw and the Commonwealth failed to provide him any hearing either before or after he was terminated (a property interest claim); (2) that Plaintiff was denied due process when Defendants Bradshaw and the Commonwealth failed to provide him any hearing either before or after publicly attacking Plaintiff's professional competence, ethics, and reputation (a liberty interest claim); and, (3) that Plaintiff may maintain a cause of action against the Commonwealth for denial of his due process rights guaranteed under Article I, Section 5 of the Commonwealth Constitution.

None of the facts asserted by Plaintiff going to his property interest claim or his liberty interest claim were effectively refuted by Defendants in their Response to Plaintiff's Motion. No affidavit or declaration of any kind was attached. This is a default on the part of Defendants and all factual assertions by Plaintiff must therefore be taken as true. Com.R.Civ.P. 56(e).

In a motion for summary judgment, Defendants have a clear obligation to either refute the factual allegations made by Plaintiff, or set forth additional facts demonstrating the existence of a genuine issue of material fact. This must be done by way of an affidavit or lawful declaration filed with the Court. Com.R.Civ.P. 56(e). No other form of factual denial or assertion of fact satisfies Rule 56(e), and it is not sufficient for opposing counsel to attempt to refute facts from within the body of the opposition memorandum.

Once a movant for summary judgment has shown that no genuine issue of material

- 2 -

*EXHIBIT K*

1    fact exists, the burden shifts to the opponent to show that such an issue does exist.
2    ... Pursuant to Com.R.Civ.P. 56(e), the opponent, by affidavit or otherwise, must
     set forth specific facts showing . . . a genuine issue for trial. General denials or
3    conclusory statements are insufficient.

4    Riley v. Public School System, 4 N.M.I. 85, 89 (1994). See also, Aldan-Pierce v. Mafnas, 3 CR 326,

5    333 (D.NMI App. Div. 1988).

6        Defendants' duties to effectively oppose a motion for summary judgment are spelled out even

7    more clearly in Borja v. Rangamar, et al., 3 CR 890 (Com.Sup.Ct. 1989):

8        To create a question of fact, the adverse party responding to a properly made and
         supported summary judgment motion must set forth specific facts showing that there
9        is a genuine issue for trial. In determining whether a genuine issue of fact exists, the
         court can only consider evidence which would be admissible and have probative
10       force at trial.

11
         It is a general rule of summary judgment procedure that denying the allegations of
12       affidavits supporting a motion for summary judgment does not, ipso facto, create a
         genuine issue of material fact.  Mere denials unaccompanied by statements of any
13       facts which would be admissible in evidence at hearing, are not sufficient to raise a
         genuine issue of fact.
14

15   Id., 3 CR at 897 (citations omitted).

16       No admissible evidence was submitted by Defendants.  Accordingly, in the present posture

17   of this case, this Court must take as true the facts that Plaintiff was terminated from his employment

18   contract without cause, in bad faith, for an improper reason and purpose, and without any pre- or

19   post-termination hearing. See "Affidavit of Plaintiff is Support of Partial Summary Judgment," Civil

20   Action No. 96-1320, August 13, 1999.  As demonstrated below, this deprived Plaintiff of both his

21   liberty and property rights in violation of his constitutionally-guaranteed right to due process.

22

23   **II.    DEFENDANTS' MISCONSTRUE THE DUTY TO PROVIDE A PRE-
             DEPRIVATION HEARING AND IMPROPERLY ATTEMPT TO
24           SHIFT RESPONSIBILITY FOR CONDUCTING SUCH HEARING TO
             PLAINTIFF.**
25

26       Defendants argue that Plaintiff is not entitled to summary judgment now because, ". . .

27   plaintiff has made no request for hearing nor has he made any appeal to the Civil Service

28   Commission. . . . It therefore is a question for the finder of fact as to whether plaintiff was denied

- 3 -

*Exhibit*

*K*

1  a hearing where he requested none." This refrain is repeated several times in attempt to manufacture

2  out of thin air a question of fact in desperate attempt to avoid this summary judgment. *See*

3  Defendants' Response, pp. 3, 6, 8, and 9. Defendants cite no authority for this proposition

4  whatsoever.  No authority is cited because there is none.  The law does not support the

5  unprecedented idea that it is the duty of the person deprived of his rights to force the government to

6  provide him a hearing to determine whether the government's acts are illegal, wrongful,

7  unauthorized by law, arbitrary, or capricious.  The proposition is abhorrent to principles of due

8  process and would turn the entire body of constitutional due process law on its head going back as

9  far as the Magna Carta.  It must be rejected by this Court.

10      Defendants' argument plainly misconstrues the unambiguous language of the Constitution,

11  does not comport with decisional law setting forth due process protections required in an

12  employment setting, is plainly at odds with the Civil Service Commission's "Personnel Service

13  System Rules and Regulations," and just as plainly is at odds with the duties of the Office of the

14  Public Auditor under the Commonwealth Administrative Procedures Act ("APA"), 1 CMC §§ 9101 -

15  9115. As demonstrated below, even in the absence of a clear rule of law that plaintiff was entitled

16  to the protections of the Civil Service Act and the Civil Service Commission's administrative

17  procedures, Defendants cannot escape liability for denial of due process.

18      **A. Constitutional law clearly holds that the government bears the responsibility to**

19  **provide a hearing before depriving Plaintiff of his rights to liberty, property, his reputation,**

20  **or his employment.**  Article I, Section 5 of the Commonwealth Constitution provides that "No

21  person shall be deprived of life, liberty or property without due process of law." This clear language

22  means that Plaintiff cannot be deprived of his liberty or property interests in employment unless and

23  until he is provided a due process hearing. The undisputed facts here are that no hearing was given

24  and no hearing was ever offered. It is frivolous to suggest that the government and its officials may

25  deprive Plaintiff of his rights while placing the burden on Plaintiff to structure his own due process

26  hearing, including its procedural and substantive law, create his own forum in which such a hearing

27  would take place, and initiate his own demand for such a hearing.

28      Article I, Section 5 of the Commonwealth Constitution affords the same protection as the

- 4 -

*EXHIBIT*

*K*

1  Due Process Clause of the 14th Amendment to the United States Constitution. <u>Office of the Attorney</u>

2  <u>General v. Rivera</u>, 3 N.M.I. 436, 445 n. 3 (1993).   In the setting of employment terminations, the

3  process that is due has been construed by the U.S. Supreme Court many times. [1]

4      **1. Plaintiff's liberty interest in employment.**  The United States Supreme Court has held

5  that an individual's interest in employment in "the common occupations of life" is a protected liberty

6  interest, <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 92 S.Ct. 2701, 2707, 33 L.Ed.2d

7  548 (1972), and held that an individual's interest in their professional reputation is also a protected

8  liberty interest:

9      Where a person's good name, reputation, honor, or integrity is at stake because of
       what the government is doing to him, notice and an opportunity to be heard are
10     essential.

11  *Roth, supra, quoting from* <u>Wisconsin v. Constantineau</u>, 400 U.S. 433, 437, 91 S.Ct. 507, 510, 27

12  L.Ed.2d 515; <u>Wieman v. Updegraff</u>, 344 U.S. 183, 191, 73 S.Ct. 215, 219, 97 L.Ed. 216; <u>Joint Anti-</u>

13  <u>Fascist Refugee Committee v. McGrath</u>, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817; <u>United States</u>

14  <u>v. Lovett</u>, 328 U.S. 303, 316-317, 66 S.Ct. 1073, 1079, 90 L.Ed. 1252; <u>Peters v. Hobby</u>, 349 U.S.

15  331, 352, 75 S.Ct. 790, 801, 99 L.Ed 1129, *and citing* <u>Cafeteria & Restaurant Workers v. McElroy</u>,

16  367 U.S. 886, 898, 81 S.Ct. 1743, 1750, 6 L.Ed.2d 1230. "In such a case, due process would accord

17  an opportunity to refute the charge before [the government officials who made them]." *Roth,* 92 S.Ct.

18  at 2707.

19      **2. Plaintiff's property interest in employment.**  Furthermore, the Supreme Court has

20  recognized that a person has constitutionally-protected property interest in not being dismissed from

21  public employment without opportunity for a hearing:

22     Similarly, in the area of public employment, the Court has held that a public college
       professor dismissed from an office held under tenure provisions . . . and college
23     professors and staff members dismissed during the terms of their contracts . . . have
       interests in continued employment that are safeguarded by due process. Only last
24     year, the Court held that this principle proscribing summary dismissal from public
       employment without hearing or inquiry required by due process also applied to a
25

26  _____

27      [1] *See* discussion of applicability of U.S. decisional law at p. 11 of Plaintiff's "Memorandum
    of Points and Authorities in Support of Motion for Partial Summary Judgment," Civil Action 96-
28  1320, Aug. 5, 1999.

*EXHIBIT*
*K*

teacher recently hired without tenure or a formal contract, but nonetheless with a clearly implied promise of continued employment.

*Roth*, 92 S.Ct. at 2709 *(internal citations and quotations omitted).*

**3. Due process is required *before* an employee is terminated from employment.** Finally, *Roth* clearly establishes that it is the government's duty to provide notice of and an opportunity to be heard in such a hearing:

Before a person is deprived of a protected interest, he must be afforded opportunity for some kind of hearing except in extraordinary circumstances where some valid governmental interest is at state that justifies postponing the hearing until after the event.

*Roth, supra*, 92 S.Ct. at 2705 n. 7. It is not the duty of Plaintiff to demand a hearing in the absence of an offer for one from the government.

It is important to notice that in each expression of the due process principle, the Court emphasizes the point that a hearing is required *before a person is deprived.* This rule is clear and unambiguous. "When protected interests are implicated, the right to some kind of *prior* hearing is paramount." *Id.,*92 S.Ct. at 2705 *(emphasis supplied). See also* Wolff v. McDonnell, 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed. 2d 935 (1974) (collecting cases) ("The Court has consistently held that some kind of hearing is required *at some time before a person is finally deprived* of his property interests.") *(emphasis supplied);* Bushe v. Burkee, 649 F.2d 509, 515 (7th Cir. 1981) ("due process requires that a person receive notice of charges brought against him so that he may understand why he is being investigated and have an opportunity to prepare a response.").

Since the government failed to offer or provide any pre-deprivation hearing, it cannot be heard now to complain. As the Third Circuit Court held in Abraham v. Pekarski, 728 F.2d 167 (3rd Cir. 1984),

The defendants urge somewhat half-heartedly that no evidence adduced at trial supported Abraham's due process claim. That contention in frivolous. It was conceded in the trial court that Abraham was discharged without any hearing whatsoever. If Abraham had a property interest in not being discharged except for good cause, the conceded fact that he was discharged without a hearing is alone enough to support a verdict in his favor. . . . A post-termination judicial finding respecting an employment dismissal is not a substitute for a pre-termination due process hearing.

*EXHIBIT*

*K*

1    *Id.,* 728 F.2d at 170.

2    **4. Commonwealth Supreme Court precedent supports Plaintiff's position.**  The due

3    process principles stated in the cases above have all been recognized in different, non-employment

4    settings by our Commonwealth Courts.  They have been expressed as follows:

5    > In an administrative proceeding where a person's life, liberty, or property are at stake,
> Article I, Section 5 of the Commonwealth Constitution requires, at a minimum, that
6    > the person be accorded meaningful notice and a meaningful opportunity to a hearing,
7    > appropriate to the nature of the case.

8    Office of the Attorney General v. Paran, 4 N.M.I. 191, 194 (1994) (*quoting from* Office of the

9    Attorney General v. Rivera, 3 N.M.I. 436, 445 (1993), *in turn quoting from*, Office of the Attorney

10    General v. Deala, 3 N.M.I. 110, 116 (1992)).

11    In addition, it has been held that ". . . a fundamental requirement of due process is the

12    opportunity to be heard at a meaningful time in a meaningful manner." In re Hafadai Beach Hotel

13    Extension, 4 N.M.I. 37, 45 (1993) (*quoting from* Mathews v. Eldridge, 424 U.S. 319, 333, 96 S.Ct.

14    893, 902, 47 L.2d.2d 18, 32 (1976).

15    **5. It is improper to attempt to shift the burden to Plaintiff.**  It is improper to attempt to

16    blame Plaintiff for Defendants' failure to provide any due process whatsoever.  *See* Defendant's

17    Response, p. 9.  The suggestion that Defendants have no duty to provide notice, opportunity to be

18    heard, or a meaningful hearing unless Plaintiff independently structures and demands such a hearing

19    is incorrect as a matter of law.  It also misses one critical point: Plaintiff *has* found the only avenue

20    available to him for a hearing to redress the denials of equal protection and denial of due process

21    visited upon him by Defendants: this law suit.

22    **B.  The  Commonwealth  Civil  Service  Commission's  administrative  rules  clearly**

23    **required  the  government  to  notify  Plaintiff  of  his  right  to  appeal  his  dismissal.**  The

24    Commonwealth Civil Service Commission has set forth the procedural due process requirements for

25    terminating an employee in the "Personnel Service System Rules and Regulations" ("Personnel

26    Rules") (the pertinent portions of these rules are attached hereto as EXHIBIT 1).  Termination of

27    employment is defined as a "separation" from employment undertaken as an "adverse action" under

28    the Personnel Rules at Section III.D2.  On the merits, the Rules require that "An action against an

*EXHIBIT*

*K.*

1    employee may not be taken under this part except for such cause as will promote the efficiency of

2    the service." Personnel Rules, § III.D2, C. [2/]

3          The procedure for terminating a public employee are set forth in Section III.D2, M., entitled

4    "Procedure for taking adverse actions." *See* EXHIBIT 1. Section III.D2, M., sets forth the procedural

5    steps required to ensure the employee's right to appeal a termination under 1 CMC § 8134(a) is

6    ensured. They are also a form of codification of the employee's constitutional due process rights

7    discussed above. These procedural steps do not require extensive discussion. It is enough to note

8    that the employee must be given advance notice of termination, Section III.D2, M., (1), the employee

9    must be given the right to answer personally or in writing the allegations made against him, Section

10   III.D2, M., (3), the employing agency must 'consider" the employee's answer, Section III.D2, M.,

11   (4), prior to actual termination of employment, management must give the employee a written

12   decision outlining the reasons for termination and setting forth which of the reasons in the advance

13   notice were found to have been sustained, Section III.D2, M., (6), and subsection (7) unambiguously

14   provides "*The decision must tell the employee of appeal rights,*" Section III.D2, M., (7) (*emphasis*

15   *added*). Once again, it is undisputed as a matter of fact, that these mandatory procedures were not

16   followed in this case.

17         **C. The Commonwealth Administrative Procedures Act clearly provides that the agency**

18   **was required to provide a hearing before depriving Plaintiff of his employment.** Clearly the

19   act of terminating Plaintiff from his employment was "agency action" as defined by the

20   Commonwealth APA. 1 CMC § 9101(c). Accordingly, the act of terminating Plaintiff is now subject

21   to judicial review for compliance with the APA. Camacho v. Northern Marianas Retirement Fund,

22   1 N.M.I. 362, 366 (1990); In re Dolores San Nicolas, 1 N.M.I. 329, 334 (1990).

23         Under the Commonwealth APA, the critical point of departure is whether a person is subject

24   to a "sanction" as defined at 1 CMC § 9101(o). Under the relevant portion of § 9101(o), a sanction

25   is any act of an agency that is a (1) prohibition, requirement, limitation, or other condition affecting

26

27

28   _____

     [2/] Plaintiff contends in his Fifth and Eighth Claims that he was wrongfully terminated in
     violation of the standard stated in Personnel Rules Section III.D2.C, above.

*EXHIBIT*
*K*

1 the freedom of a person; (2) withholding of relief where adjudication is required by law; (3)

2 destruction, taking, seizure, or withholding of property; or (7) taking other compulsory or restrictive

3 action. *Id.* Once an agency of the government determines it will take action that will impose or

4 otherwise work a sanction upon any person, the agency is required to comply with the administrative

5 adjudication procedures set forth at 1 CMC § 9108.

6      It is clear here that the act of terminating Plaintiff from his employment before the expiration

7 of his contract was a "sanction" as defined by the Commonwealth APA. Under established

8 precedent, it affected plaintiff's liberty and therefore his "freedom." *See Roth, cases cited and*

9 *discussion supra, Section II. A.* Termination without a hearing also withheld relief where

10 adjudication was clearly required by constitutional law, clearly affected a taking of a property interest

11 possessed by Plaintiff, and clearly was a compulsory action affecting plaintiff's personal rights as

12 these are defined in the APA. Accordingly, Defendants were obligated by the APA to provide

13 Plaintiff with an administrative hearing.

14      1 CMC § 9108(a), which sets forth the general requirement for an administrative hearing,

15 provides in relevant part that, "This section applies in every adjudication in which a sanction may

16 be imposed . . . unless an agency proceeding therefor is required by law to be preceded by notice and

17 opportunity to be heard. In an adjudication under this section, all parties shall be afforded an

18 opportunity for a hearing after reasonable notice." Furthermore, it is clearly established law that in

19 an employment termination the Commonwealth Administrative Procedures Act requires "the

20 proponent of an order or decision" (i.e., the government) to bear the burden of proof and the burden

21 of going forward with the evidence against the employee. <u>In re San Nicolas</u>, *supra*, 1 N.M.I. at 335-

22 337 (1990), *citing* 1 CMC § 9109(I).

23      It is thus clear that Defendants failed to comply with the Commonwealth APA when they

24 took adverse action terminating Plaintiff. The APA puts every agency of the government on notice

25 of the duty to provide hearings before imposing a sanction, and provides a structure for such

26 hearings. Even if the Public Auditor was not aware that Plaintiff was entitled to the specific

27 procedures of the Civil Service Commission, both Defendants Bradshaw and the Commonwealth

28 had to be aware that the Commonwealth APA provided Plaintiff with a right to some kind of

EXHIBIT
K

1  hearing. It is incredible and incorrect to suggest, as Defendants attempt to do, that Plaintiff had no

2  right to a hearing at all unless he demanded one. Constitutional principles gave him a due process

3  right and the APA codified those principles. Neither Defendant Bradshaw nor the Commonwealth

4  had any right to ignore them.

5

6      **III.    THE GOVERNMENT'S RELIANCE ON *SHEARER* IS MISPLACED.**

7

8      Defendants argue that Plaintiff has artfully pleaded his case to allege constitutional violations

9  rather than a tort claim for defamation, *see* Defendants' Response, p. 4. Defendants rely on United

10  States v. Shearer, 473 U.S. 52, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985) in an effort to shoe-horn a

11  completely unrelated concept into this case. Further, as demonstrated below, Defendants' reliance

12  on *Shearer* is misplaced because the case is thoroughly disreputable and not precedent at all.

13      Defendants fail to advise the court that *Shearer* was a mere plurality opinion, that no majority

14  of justices could agree with the portion of the opinion upon which Defendants' rely, that it is a highly

15  controversial opinion that has caused a split of authority among the various federal circuits, that this

16  split of authority has gone unresolved for the past 19 years since *Shearer* was announced, that its true

17  holding is limited to circumstances where both the perpetrator of the tort and the victim are currently

18  serving members of the U.S. military subject to a special doctrine of law applicable only to members

19  of the military, and that the Ninth Circuit Court has resounding rejected the rationale of *Shearer*

20  several times. *See discussion of Shearer and rejection of Part IIA by Ninth Circuit in* Senger v.

21  United States, 103 F.3d 1437, 1441 (9th Cir. 1996); Kearney v. United States, 815 F.2d 535, 536-537

22  (9th Cir. 1987); Morrill v. United States, 821 F.2d 142 (9th Cir. 1987); and, Bennett v. United States,

23  803 F.2d 1502, 1503 (9th Cir. 1986). Because it is not a majority opinion, *Shearer* is not precedent

24  and is entitled to only so much weight as persuasive authority as a court may wish to give it. In the

25  Ninth Circuit, defendants fail to point out, *Shearer* is not good law at all. It should be given no sway

26  as authority in the Commonwealth either, especially in this case.

27  \\

28  \\

*EXHIBIT K*

## IV.    THE GRAVAMEN OF PLAINTIFF'S FOURTH CLAIM AND CAUSE OF ACTION ARE CONSTITUTIONAL VIOLATIONS.

1
2

3    Contrary to Defendants' suggestion, Plaintiff's Complaint is not a defamation tort dressed
4    up in constitutional wolves clothing to hide its true intent. *See* Defendants Response, pp. 4-6.  The
5    gravamen of Plaintiff's action is an action for denial of equal protection and due process.  Plaintiff
6    seeks redress for denial of his constitutional rights.  The complaint sounds in constitutional law and
7    not in common law tort.  Beyond the clear manner in which the Complaint is drafted, this can also
8    be seen in part by the fact that while a tort claim for defamation might have been lodged against
9    Defendant Bradshaw in his individual capacity, and he is sued in other counts in his individual
10    capacity, no such claim was stated.

11    It is disingenuous of defendants to "agree" with Plaintiff that "fundamental fairness requires
12    that an individual be permitted to defend himself publicly against official charges, however informal,
13    which threaten to stain his personal or professional future," *see* Defendants' "Response to Plaintiff's
14    Motion for Partial Summary Judgment," p. 8, while at the same time argue that Plaintiff can
15    vindicate such rights only through a tort action.  There is no common law tort action that provides
16    redress or vindication of these interests.  The absence of "fundamental fairness" is redressed through
17    constitutional causes of action where the government has previously denied due process.

18    Plaintiff's Fourth Claim clearly seeks redress for violation of his constitutional rights,
19    including the failure to provide an opportunity to protect his liberty interest in his professional
20    reputation, his liberty interest and right to work in the common occupations, and his property interest
21    in his continued employment under contract with the government.  As a matter of clearly established
22    law these interests are protected by the due process clause. *See discussion <u>Board of Regents of State</u>*
23    *<u>Colleges v. Roth</u> supra*, p. 3 (*citing cases*).

24    \\
25    \\
26    \\
27    \\
28    \\

*EXHIBIT K*

1
2
3
4

**V.    THE COMMONWEALTH HAS WAIVED SOVEREIGN IMMUNITY FROM SUIT FOR ALL CIVIL ACTIONS ARISING OUT OF ANY LAW OF THE CNMI, INCLUDING THE COMMONWEALTH CONSTITUTION, AND THIS COURT HAS EXCLUSIVE JURISDICTION OVER THEM.**

5
6

7 CMC § 2251, entitled "Other Actions Against the Commonwealth Government," is, in relevant part, as follows:

7
8
9

> Except as otherwise provided [in the Government Liability Act applicable only to torts], actions upon the following claims may be brought against the Commonwealth Government in the Commonwealth Trial Court which shall have exclusive original jurisdiction thereof:
> . . .

10

> (b)    Any other civil action or claim against the Commonwealth Government founded upon any law of this jurisdiction . . .

11

*Id.*

12
13
14
15
16
17
18
19

This statute is a waiver of sovereign immunity by the Government of the Commonwealth for the actions specified. Section 2251 is a clear and unambiguous waiver of the government's sovereign immunity from suit. The Government consents to be a party to any action brought under Commonwealth law. It cannot be disputed that Plaintiff's third claim and cause of action brought under Article I, Section 5 of the Commonwealth Constitution is a founded upon a "law of this jurisdiction" within the meaning of 7 CMC § 2251(b). 7 CMC § 2251 does not provide the substantive law structuring such a suit, but there can be no question it waives sovereign immunity from suit.

20
21
22
23
24
25
26
27

The extent that the government is liable as a party is answered by the substantive law of the particular cause of action brought against the government. Here that substantive law is provided by Article I, Section 5 of the Commonwealth Constitution, the common law, Restatement of Torts Section 874A, persuasive decisional law from a large number of State courts, and CNMI precedent demonstrating that our Constitution is "self-executing." *See discussion,* Plaintiff's Motion at pp. 11-23. These sources of substantive law must be read together as providing the basis for Plaintiff's third cause of action stated against the Government because the plain language of 7 CMC § 2251 indicates it is meant to be read together some other source of substantive law "of this jurisdiction." Standing

28

- 12 -

*Exhibit*
*14*

1  by itself, 7 CMC § 2251 fulfills the similar purposes of (1) waiving sovereign immunity, and (2)

2  fixing the jurisdiction of this court to hear such suits.   Taken with the substantive law of the

3  Constitution, namely Article I, Section 5, it provides Plaintiff with a cause of action against the

4  Government.

5       In light of this, once again Plaintiff reminds the Court that the facts are not in dispute.

6  Defendants Bradshaw and the Government of the Commonwealth of the Northern Mariana Islands

7  failed to provide Plaintiff with any form of pre- or post-termination hearing.  This failure violated

8  Plaintiff's right to due process guaranteed by Article I, Section 5 of the Commonwealth Constitution.

9  Accordingly, the government is liable to Plaintiff for damages (the amount of which is as yet

10 undetermined) in an action brought under Article I, Section 5.  The Commonwealth Constitution is

11 a law of this jurisdiction, and the government has waived sovereign immunity from suit for its

12 violation. 7 CMC § 2251.  The authorities cited by Plaintiff in his opening brief demonstrate that the

13 Government is substantively liable for damages in such a suit.

14

15       **VI.    THE CLAIM FOR QUANTUM MERUIT IS SETTLED.**

16       Defendants' Response attached a letter to Plaintiff's attorney offering settlement of the Ninth

17 Claim.  That settlement has been effected, and this issue is moot.

18

19       **VII.   DEFENDANT BRADSHAW HAS BEEN PROPERLY SERVED, HAS**

20       **WAIVED OBJECTION TO IMPROPER SERVICE IN ANY EVENT,**
         **AND THE OFFICE OF THE ATTORNEY GENERAL HAS ALREADY**

21       **ENTERED   APPEARANCE   ON   DEFENDANT   BRADSHAW'S**
         **BEHALF AS HIS ATTORNEY OF RECORD.**

22

23       Defendants state in three places in their opposition papers that defendant, Robert D.

24 Bradshaw in his individual capacity is not before the court.  The apparent basis for this assertion is

25 that "Bradshaw has not been served with summons and has not appeared in this case." (Response,

26 p. 4).

27

28       This is a bald assertion by Defendants.  No evidentiary support, nor any legal authority is

- 13 -

EXHIBIT
K

1    cited, and no procedurally adequate means has been utilized to attack jurisdiction or service.

2    This assertion is factually incorrect. Proof of service on Bradshaw was filed on May 6, 1997

3    and again on June 3, 1997. These were provided to defendants' counsel at the special request by

4    letter on August 27, 1999. (Copy attached).

5    Even if this was factually correct, any defect in service of process on Bradshaw has been

6    waived, due to the fact that a motion to dismiss under Com.R.Civ.P. 12(b)(6) was brought, on his

7    behalf and no motion pursuant to 12(b)(5) was included in that motion. Accordingly, Bradshaw is

8    now foreclosed from making any challenge of insufficiency of service of process. Com.R.Civ.P.

9    12(g) and (h)(1); and see, Lipofsky v. New York State Workers Camp Board, 861 F.2d 1257, 1258-

10   59 (11th Cir. 1988) (Such defenses are waived when a defendant files a responsive pleading or Rule

11   12 motion failing to assert them.); Madden v. Cleland, 105 F.R.D. 520, 523 (N.C.Ga. 1985) ("The

12   defendants waived any defect in service by filing a motion to dismiss under Federal Rule of Civil

13   Procedure 12(b)(6) without raising the defenses of insufficiency of the form of process or the service

14   of process."); and see 5A Wright and Miller, FEDERAL PRACTICE AND PROCEDURE, § 1391.

15

16   **VIII.  CONCLUSION**

17   For the forgoing reasons, this Court should award and enter partial summary judgment in

18   favor of Plaintiff pursuant to Rule 56, Com.R.Civ.P., on the following issues: (1) that Plaintiff was

19   denied the process that was due to him as a result of the acts of Defendants Bradshaw and the

20   Government of the Commonwealth of the Northern Mariana Islands in terminating him from his

21   employment without providing a meaningful hearing, (2) that Plaintiff was denied the process that

22   was due to him as a result of the acts of Defendants Bradshaw and the Government of the

23   Commonwealth in tarnishing Plaintiff's good name, reputation, honor, and integrity without

*EXHIBIT*

*K*

providing a meaningful hearing, and (3) that the Government of the Commonwealth of the Northern

Mariana Islands is liable in money damages for the deprivations caused to Plaintiff in amounts to

be determined at trial.

SIGNED this *3rd* day of September, 1999.

JAY H. SORENSEN
Attorney for Plaintiff

I hereby certify that the foregoing hereof is a full true
and correct copy of the original on file in the Office
of the Clerk of Courts, Susupe, Saipan, Mariana Islands.

Date OCTOBER 31, 2001

CLERK OF COURT
NORTHERN MARIANA ISLANDS
SAIPAN, MP 96950



EXHIBIT K