ORIGINAL

L. David Sosebee
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Civil Division - Capitol Hill
2nd Floor Administration Bldg.
Saipan, MP 96950
Telephone:   (670) 664-2341
Telecopier:  (670) 664-2349

Attorney for Defendants CNMI, LaMotte, and Tan

IN THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM,<br><br>                    Plaintiff,<br><br>v.<br><br>COMMONWEALTH OF THE<br>NORTHERN MARIANA ISLANDS, et<br>al.,<br><br>                    Defendants. | CIVIL ACTION NO. 96-1320<br><br>MOTION TO REMOVE CASE FROM<br>JURY TRIAL DOCKET<br><br>Date: Feb. 7, 2000<br>Time: 9:00 am<br>Judge: Alexandro C. Castro |

### Points and Authorities in Support of Motion
### to Remove Case from Trail Schedule

This case is presently set on the jury trial schedule for the week beginning February 7, 2000. This case is not ready to proceed to trial because a named defendant, specifically Robert D. Bradshaw, has not been served or appeared in this case.

EXHIBIT "L"

1

Rule 4 of the Commonwealth Rules of Civil Procedure are substantially the same as the Federal Rules of Civil Procedure and the decisions under the Federal Rules are instructive as there is no Commonwealth precedent in the matter.

When service of process is challenged, the burden of proving its validity falls on the serving party. Systems Signs Supplies v. United States Dept. of Justice, 903 F.2d 1011 (5th Cir. 1990). Plaintiff is the serving party.

In the present case, plaintiff purports to have sent the Amended Summons and Complaint to defendant, Robert D. Bradshaw, 40203 N. Newport Hwy., Elk, WA 99009, on May 5, 1997. Exhibit A. Plaintiff also purports to have sent a Second Amended Complaint and Amended Summons to defendant Bradshaw at the same address, on June 3, 1997. Exhibit B. Plaintiff has previously supplied copies of two United States Mail Domestic Return Receipt cards, neither of which bear the signature of defendant, Robert D. Bradshaw. Exhibit C. Defendant Bradshaw has not authorized anyone to accept service for him and has not been served with the any of the complaints in this case. Exhibit D, July 14, 1999 letter from Bradshaw to the Office of the Attorney General. For service of process to be valid on agent, it must be shown that the alleged agent was actually appointed by defendant for specific purpose of receiving process. United States v. Marple Community Record, Inc., 335 F. Supp. 96 (ED Pa. 1971). In this case, the plaintiff has not shown that the person signing the Return Receipt Cards was an agent appointed by Bradshaw for the specific purpose of receiving service. In deed, Bradshaw has specifically stated that no such authority had been granted. Exhibit D.

EXHIBIT L

Plaintiff has also indicated the reliance on a previous filing by the Office of the Attorney General to show an appearance by defendant Bradshaw. Service of process, in absence of voluntary appearance or conscious waiver, is indispensable prerequisite to court's jurisdiction to proceed. Beecher v. Wallace, 381 F.2d 372 (9th Cir. 1967). In the present case, any appearance by Bradshaw based on a filing by the Office of the Attorney General would have been neither a voluntary appearance nor a conscious waiver in that Bradshaw had not consented to being represented by that office. Exhibit D, p. 1, ¶ 3. Clearly, from Bradshaw's statements, the Office of the Attorney General had no authority to represent him or answer for him. It could hardly be argued that a mistaken and unauthorized appearance for a party to a suit would be sufficient to confer jurisdiction of the court.

Plaintiff has been aware of the failure to serve defendant Bradshaw since at least September 3, 1999. *See* Plaintiff's Reply to Opposition to Motion for Partial Summary Judgment, p. 13, l. 19. Plaintiff has taken no action to secure service between that time and the date of this motion. When this issue arose in that pleading, the plaintiff relied on two cases is support of waiver by defendant Bradshaw. In Lipofsky v. New York State Workers Comp Board, 861 F.2d 1257, 1258-59 (11th Cir. 1988), that court held that a defense under FRCP 12(b) was waived when a defendant files a responsive pleading or Rule 12 motion failing to assert them. A similar holding was made in Madden v. Cleland, 105 F.R.D. 520, 523 (C.D. Ga. 1985). The problem with these holdings and why they are distinguishable in this case is that the defendant in this case did not file and did not

EXHIBIT L

3

authorize the filing of any responsive pleadings. The fact that a pleading was filed containing the name of Mr. Bradshaw does not make it a filing by him. Where the pleading was filed without his knowledge or consent it could not be attributed to him.

For the reasons stated above, defendants CNMI, LaMotte, and Tan request this matter be taken off the trial schedule pending service on defendant Bradshaw.

Dated January 31, 2000.

                              Respectfully submitted,

                              OFFICE OF THE ATTORNEY GENERAL

                              By: _____
                                  L. David Sosebee
                                  Assistant Attorney General

                              Attorney for Defendants CNMI, LaMotte, and Tan

I hereby certify that the foregoing hereof is a full true and correct copy of the original on file in the Office of the Clerk of Courts, Susupe, Saipan, Mariana Islands.

Date: 10/25/05

CLERK OF COURT
[...] MARIANA ISLANDS
[...]

EXHIBIT L

4

JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. (670) 234-1414
Fax. No. (670) 234-1417

Attorney for Plaintiff

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM, ) | CIVIL CASE NO. 96-1320 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| COMMONWEALTH OF THE NORTHERN ) | |
| MARIANA ISLANDS, ET AL., ) | |
| ) | |
| Defendants. ) | |

I hereby certify that a copy/copies of the

_____AMENDED AND SUPPLEMENTAL COMPLAINT AND SUMMONS_____

was/were served by:

   \*\*\*   Certified mail, postage prepaid, delivered to the possession of the U.S. Post Office on May 5, 1997 showing the address below, as evidenced by receipt for certified mail, a copy of which is attached hereto.

   \*\*   Delivery to the address set forth below on May 5, 1997, as evidenced by the acknowledgment of receipt, which is filed concurrently.

            \*\*   D. Douglas Cotton, Esq.
                 Assistant Attorney General
                 Attorney General's Office
                 2nd Floor, Administration Building
                 Caller Box 10007, Saipan, MP 96950

EXHIBIT
L

EXHIBIT A

\*\*\*      Robert D. Bradshaw
         40203 N. Newport Hwy
         Elk, WA 99009


Dated:  May 6, 1997.             _____
                                 ANNABELLE GUEVARRA

EXHIBIT
L



EXHIBIT
L.

JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. (670) 234-1414
Fax. No. (670) 234-1417

Attorney for Plaintiff

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM, ) | CIVIL CASE NO. 96-1320 |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CERTIFICATE OF SERVICE |
| ) | |
| COMMONWEALTH OF THE NORTHERN ) | |
| MARIANA ISLANDS, ET AL., ) | |
| ) | |
| Defendants. ) | |

I hereby certify that a copy/copies of the

___SECOND AMENDED COMPLAINT AND AMENDED SUMMONS___

was/were served by:

___***___ Certified mail, postage prepaid, delivered to the possession of the U.S. Post Office on June 3, 1997 showing the address below, as evidenced by receipt for certified mail, a copy of which is attached hereto.

     ***    Robert D. Bradshaw
              40203 N. Newport Hwy
              Elk, WA 99009

Dated: June 4, 1997.

                                    ANNABELLE GUEVARRA

EXHIBIT B

EXHIBIT L



1184

Z 142 485 883

Receipt for Certified Mail
No Insurance Coverage Provided
Do not use for International Mail
(See Reverse)

Sent to: ROBERT O. BRADSHAW
Street and No.: 40203 N. NEWPORT HWY
P.O., State and ZIP Code: ELK, WA 99009

| | |
|---|---|
| Postage | $ 1.80 |
| Certified Fee | 1.10 |
| Special Delivery Fee | |
| Restricted Delivery Fee | |
| Return Receipt Showing to Whom & Date Delivered | 1.10 |
| Return Receipt Showing to Whom, Date, and Addressee's Address | |
| TOTAL Postage & Fees | $ 4.00 |
| Postmark or Date | |

PS Form 3800, March 1993

EXHIBIT
L,

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| ROBERT D. BRADSHAW<br>40203 N. NEWPORT HWY<br>ELK, WA 99009 | Z 142 485 879 |
| | 4b. Service Type<br>☐ Registered ☐ Insured<br>☐ Certified ☐ COD<br>☐ Express Mail ☐ Return Receipt for Merchandise |
| | 7. Date of Delivery<br>6/4/95 |
| 5. Signature (Addressee)<br>*Manny Mongoliu* | 8. Addressee's Address (Only if requested and fee is paid) |
| 6. Signature (Agent) | |

PS Form 3811, December 1991  ☆ U.S.G.P.O.: 1992-307-530   **DOMESTIC RETURN RECEIPT**

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

| 3. Article Addressed to: | 4a. Article Number |
|---|---|
| ROBERT D. BRADSHAW<br>40203 N. NEWPORT HWY<br>ELK, WA 99009 | Z 142 485 883 |
| | 4b. Service Type<br>☐ Registered ☐ Insured<br>☐ Certified ☐ COD<br>☐ Express Mail ☐ Return Receipt for Merchandise |
| | 7. Date of Delivery<br>2/2/97 |
| 5. Signature (Addressee)<br>*Manny* | 8. Addressee's Address (Only if requested and fee is paid) |
| 6. Signature (Agent) | |

PS Form 3811, December 1991  ☆ U.S.G.P.O.: 1992-307-530   **DOMESTIC RETURN RECEIPT**

EXHIBIT C

EXHIBIT L

July 14, 1999

CNMI Attorney General, ATTN. William C Bush
Saipan, CM 96950

RECEIVED
Office of the Attorney General
Civil Division
Date: AUG 03 1999
Time: 2:30 pm
Rec'd by: _____

Dear Mr Bush;

Thank you for your letter of Jun 30, 1999, just recently received by me. In 1995, I was a party to the US District Court Case 95-0042, after service. I made an answer to this complaint in 1995 and gave it to the CNMI AG. I was never furnished a copy of what answer was filed but I assume that whoever made the answer filed what I sent Saipan. In the answer I said that I never knew that Bisom was a Jew before the complaint. Recently, I have learned that the US District Court decision was upheld by the Appeals Court in a 1998 decision (according to the local Clerk of Court of the District Court in Saipan).

Regarding CNMI SC 96-1320 and all subsequent complaints, I have never been served on any of these complaints. I have never authorized the AG to accept service for me. As far as I am concerned those cases are all mute and non-existent. To repeat, I don't want the AG to accept service for me on anything. If Bisom wishes to sue me, he must serve me (actually with a process server).

Some two certified mail packets from an unidentified party came to me from Saipan in 1996 and 1997. I refused to accept either of them and they were returned by the Post Office undelivered. Possibly these mailings were an attempt to accomplish service although I cannot be sure what were in the packets and the sender's name was not identified (beyond a return address post office box). Again, if Bisom wants an answer from me he will have to hire a process server. As I said to Doug Cotton, if I am served I will contact the AG to make the answer. Otherwise, I have not authorized the AG to make any answers for me on anything in the CNMI cases. And I have never been served!

As for as constructive service, I have no knowledge of any attempts by anyone to serve papers on me. I live by myself and there is no one at my house except me. I have no employees or anyone else present who could accept service on my behalf. I don't have any reason to believe that Bisom can come up with any basis of service. If he attempts it, surely it would constitute some type of a fraud. If he produces a signature, it is not mine.

I assume that the CNMI has a cut off date for service like the 180 days or so for the feds. Surely, we are long past that date whatever it is. Couple that with the statute of limitations and I see no way that I am a part of the CNMI case. Should you file a motion to strike my name individually from the suit? Since you have

EXHIBIT D

EXHIBIT L

suggested it, it seems like a good idea although I don't know that it is necessary (other than if this thing goes to trial and Bisom tries to later claim service on me; thus, a pre-trial motion as you suggest would flush out whatever case he might try to make).

Accordingly, if you wish to file a motion to have me removed individually from the CNMI case, you have my permission and agreement. If you don't feel that such a motion will benefit your case, fine and I understand. There is a possibility that Bisom's lawyer may have "mistakenly" thought he made service on this and has neglected to verify the fact. He may not really know about the lack of service. I suppose for this reason, I have never been anxious to bring the matter up (thus letting him stay in the dark).

As for as me cooperating with you, I feel that I have went the extra mile to cooperate with the AG on this case. If you have knowledge otherwise, please advise me as I would like to hear about it.

Since the Fed case is now history, I don't see that I have any role in anything further. However, I am anxious to help you and the CNMI case in any way possible. In that sense, I will supply whatever information I can. If the case goes to trial and you wish me to come to Saipan, I would consider it. In saying this I would want something more firm on my expenses than how Cotton handled the situation for me for the Spokane deposition some years ago. I lived in Idaho, several hundred miles from Spokane. I agreed to come to Spokane or Boise if Bisom would pay my expenses. Cotton (without consulting me) agreed with Bisom on this deposition with a $25 a day or so motel bill limit (I now have forgotten the amount but it was not enough) which was ridiculous so I ended up never even being completely reimbursed by Bisom for my expenses. I sent Doug a bill to include the unreimbursed costs in the 95-0042 case (which Bisom is supposed to pay).

Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes). I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on the 95-0042 case. As for as the CNMI SC, your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

The Jew question - I know some very good Jews and indeed some very bad Jews (like Bisom if he is a Jew and I still don't know that fact). There was never any

EXHIBIT
L

reason for me to know that Bisom was a Jew since he never said that to me. And certainly he is not a religious Jew (religious Jews wear breads and he always was clean shaven). Otherwise, he looked like a majority type white and his name was no clue for anything.

In Bisom's deposition, he claims that he deceptively entered into Guy Gabaldon's confidence and found out that I sent Guy some alleged "anti-Semitic" literature from the US and that I fired Bisom because he was a Jew. All of this probably didn't come from Gabaldon although I allow that Bisom fraudulently and deceptively tried to manipulate something out of Gabaldon to claim that I am anti-Semitic to justify his lawsuit.

Gabaldon and I have been friends for 20 years. It is true that Guy has had some bad experiences with some Saipan Jews (particularly a liberal reporter who was very hostile to Gabaldon). After I came back to the states in 1994, I mailed some copies of a newsletter complaining about the Jewish lobby and how they are able to walk into Washington and get anything they want free for the state of Israel.

The newsletter was put out from Washington DC by Victor Marchetti, a former official with the CIA in the Director's office. Marchetti is a well known personality, having been on TV several times on discussions about the CIA. He put out this newsletter as a Washington watch and I have forgotten what the name is. Perhaps his letter was a little pro-Arab although I am not sure. In any case, he did do a good job of reporting on the flow of money ($5 billion annually), airplanes, technology, wealth and you name it to Israel - sometimes illegally and without Congressional authorization.

Frankly, I practice Judaism and am more anxious to see Israel built up (even at the expense of the stupid US taxpayers) as much as probably anyone in America. I did send some of this stuff from Marchetti to Gabaldon but none of it was Jew hatred stuff. It was only a complaint about the incompetence and stupidity of American officials that have given the wealth of this nation away all over the world. I learned long ago that this stupidity was not about to end because it has happened all over the world in the last 50 years.

In any case, this seems to be the basis for Bisom to bring his lawsuit and charge discrimination because he is allegedly a Jew. But all Jewish authorities (and I have had some three different Jewish Encyclopedias plus access to other authoritative sources) agree that there is no Jewish race. I agree with this. There is a Jewish religion which I willingly try to practice. But again, Bisom is certainly no religious Jew as is plainly evident when looking at him. In order to determine how deceptive Bisom was with Gabaldon, you will have to call Gabaldon and talk with him. He is well known and respected by many on Saipan. As for as I know,

EXHIBIT L

he has never been deposed so Bisom must realize that he is on thin ice with lying about Gabaldon.

Reaching me? I live in the backwoods and at the moment it is impossible beyond this post office address. I might perhaps get you a fax number of a neighbour if it is needed. You should know that once your office (the AG) has my address, phone number or whatever, Bisom's lawyer also has it if he wants it. Local secretaries do trade information between each other. For example, I moved in 96 and was sure Bisom didn't have my new address (to serve me if he chose). Sure enough, he (or his secretary) seems to have gotten it - evidently from the AG's office (although he did not serve me). So if you need a fax number, I will request that only you have it.

Last, I am not trying to tell or suggest anything to you or your office on this case beyond my deposition, the above remarks and previous correspondence. However, my gut feeling is that Bisom wants to settle this thing short of a trial. He has requested a jury trial which my guess is would be disastrous for him. Bisom has no friends that I know of on Saipan. None of the political factions like him so when he went before the jury, he would largely face enemies.

Ray Guerreo is a local politician with pull with Teno. Ray really hates Bisom. SO if you want an ally to try to find out Bisom's problems and skullduggery, call Ray. He likely would help you in anyway possible and it is plausible that Ray may know something that would be detrimental to Bisom. You can read my files and see where Bisom crossed Ray by going on TV to make charges that were improper from the Auditor's office.

Finally, in closing, may I point out that I have essentially never been furnished by the AG any of these CNMI motions, filings, etc, etc. I did receive copies of the first two or so in 1996 but none of the more recent ones were sent me - perhaps because I was not served and was not a party to them. I do know that Bisom changed some of the complaints between 95-0042 and the few later ones which I saw. For example, he deleted the reference to the Jewish religion and substituted Jewish race (which as I said, does not exist in fact). I have assumed that Cotton or someone in the AG's office would carefully go over each petition to note any discrepancies from former petitions. Please let me know if I can help you further and the final results of this case.

Yours very truly,

Robert D. Bradshaw, Box 3590, Oldtown, ID 83822

EXHIBIT L