APPEAL NO. 06-0005 GA

# IN THE SUPREME COURT
# FOR THE
# COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM, ) | APPEAL NO. 06-0005 GA |
| ) | |
| Appellant, ) | |
| ) | |
| vs. ) | |
| ) | |
| COMMONWEALTH OF THE NORTHERN ) | |
| MARIANA ISLANDS, ROBERT D. ) | |
| BRADSHAW, former Temporary Public ) | |
| Auditor, in his individual capacity, etc. ) | |
| ) | |
| ) | |
| Appellee. ) | |
| ) | |

APPEAL FROM THE SUPERIOR COURT
OF THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

Juan T. Lizama, Associate Judge

---

**APPELLANT'S REPLY BRIEF**

---

**JAY H. SORENSEN, ESQ.**
c/o Shanghai, P.O. Box 9022
Warren, MI 48090-9022
Phone: 86-21-50838542
Facsimile: 86-21-50838542

**MARK B. HANSON**
First Floor, Macaranas Bldg.
Beach Road, Garapan
PMB 738, P.O. Box 10,000
Saipan, MP 96950
Phone: (670) 233-8600
Facsimile: (670) 233-5262

Exhibit 1

1

# TABLE OF CONTENTS

| | PAGE |
|---|---|
| TABLE OF CONTENTS | 2 |
| TABLE OF AUTHORITIES | 3-4 |
| I. BRADSHAW'S ACCUSATION OF FRAUD ON THE PART OF BISOM AND HIS COUNSEL IS BASESLESS AND IS IRRATIONAL | 5 |
| II. WHETHER THERE WAS FRAUD IN THE PROOF OF SERVICE ON BRADSHAW, IT WAS IMMATERIAL TO THE DETRMINATION WHETHER THE COURT HAD ACQUIRED PERSONAL JURISDICTION OVER HIM | 6 |
| III. BRADSHAW'S REQUEST TO HAVE THE JUDGMENT VACATED BY MOTION WAS LIMITED BY RULE 60(b) TO BEING BROUGHT WITHIN ONE YEAR | 7 |
| IV. THE SUPERIOR COURT'S ORDER THAT BRADSHAW HAD TO BE SERVED IN ACCORDANCE WITH WASHINGTON LAW IS BASED ON A MISINTERPRETATION OF COM.R.CIV.P. 4 | 8 |
| V. BRADSHAW OFFERS NO AUTHORITY NOR ANY GOOD REASON TO EXCUSE REFUSAL TO ACCEPT MAIL HE KNEW CONTAINED SUMMONS AND COMPLAINT | 9 |
| A. Case law | 10 |
| B. Unclaimed vs. Refused | 12 |
| C. Consideration of the July 14, 1999 letter to Bush | 12 |
| VI. THE ATTORNEY GENERAL HAVING APPEARED FOR BRADSHAW, INCLUDING MAKING A MOTION TO DISMISS ON HIS BEHALF, ANY CHALLENGE TO INSUFFICIENT SERVICE OF PROCESS WAS THEREAFTER WAIVED | 13 |
| VII. BY FAILING TO RECOGIZE AND TO FOLLOW THE TRIAL JUDGE'S PRIOR FINDINGS AND HOLDINGS, THE SUPERIOR COURT ORDER REPRESENTS AN ABUSE OF DISCRETION | 15 |
| CONCLUSION | 17 |

*EXHIBIT T*

**TABLE OF AUTHORITIES**

CASES                                                                                       PAGE

*Bisom v. C.N.M.I.*, 2002 MP 19                                                              16

*Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673 (N.D. Iowa 1995)                          11

*Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389 (5th Cir. 2001)                   12

*Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002)                                         7

*LSJ Investment Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320 (6th Cir. 1999)                     11

*Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939 (10th Cir.1988)                      11

*Polargrid LLC v. Videsh Sanchar Nigan* Ltd., 2006 U.S. Dist. LEXIS 17531
  (S.D.N.Y. April 7, 2006)                                                                   9

*Schnabel v. Wells*, 922 F.2d 726 (11th Cir. 1991)                                           11

*Sirok v. Rotec Engineering*, 1 CR 1065 (D.C. N.M.I. 1984)                                   11

*Thomas v. Bible*, 983 F.2d 152 (9th Cir. 1993)                                              16

*United States v. Alexander*, 106 F.3d 874 (9th Cir. 1997)                                   16, 17

*United States v. Mendelsohn*, 896 F.2d 1183 (9th Cir. 1990)                                 13


STATUTES AND RULES

7 Commonwealth Code
    Section 1102(a)                                                      8
    Section 1102(e)                                                      8
    Section 1104                                                         6,9
    Section 3305                                                         13
    Section 3307                                                         13

Commonwealth Rules of Civil Procedure
    Rule 4(k)                                                            8
    Rule 12(b)(6)                                                        14
    Rule 12(h)                                                           14
    Rule 12(g)                                                           14
    Rule 60(b)(3)                                                        8
    Rule 60(b)(4)                                                        8

*EXHIBIT T*

Commonwealth Rules of Evidence
    Rule 801(d)(2)      13

Federal Rules of Civil Procedure
    Rule 4(d)      11
    Rule 4(e)(1)      10
    Rule 60(b)(4)      7,8


OTHER AUTHORITIES

Note: *Constitutional Law: The Validity of Service of Process by Mail When There is No Return Receipt: The Outer Limits of Due Process*, 25 Okla.L.Rev. 566 (1972).      11

Fed.R.Civ.P. 4(d), Notes of the Advisory Committee on 1993 Amendment      11

EXHIBIT T

I. BRADSHAW'S ACCUSATION OF FRAUD ON THE PART OF
BISOM AND HIS COUNSEL IS BASELESS AND IS IRRATIONAL

Appellee's brief is replete with references to the "fraudulent actions of Bisom/Sorensen found in case 96-1320." (p. 27).[1] The brief makes these comments as if the accusation was established fact. But it is not established anywhere other than in Bradshaw's mind. There is no indication or evidence whatever that Bisom or his counsel had anything to do with the signing of the postal return receipts about which Bradshaw complains.

In fact, in a part of the Superior Court's order that has not been appealed, it is made clear that despite the fact that the judge received factual input from Bradshaw only, and nothing in rebuttal from Bisom, that fraud had not been proven. The order says that fraud requires proof that an actor knows that he does not have the basis for his representations, and that this has not been shown. (Order Granting Robert Bradshaw's Motion to Vacate Judgment, filed December 29, 2005, p. 15, 16).[2]

The accusation is not only outrageous, it is illogical Why would Bisom and his counsel go to the trouble of and resort to conniving with and corrupting post office employees when there are much easier, and legal, alternatives to effecting service? And why, if they had decided to use forgery to prove receipt of the amended and second amended complaints on Bradshaw, would they have chosen to forge a name that they had no way of connecting to Bradshaw? If forgery and fraud were the plan, then it would have been a much better plan to either forge Bradshaw's name or that of someone whom they could claim acted for him. And finally, if they did make that

---

[1] Other examples are: "…the record shows that the plaintiff willingly supplied false information to the court in 96-1320."(p. 7). "…Sorensen/Bisom were also caught in acts of malicious persecution, fraud, deception, etc.." (p.18). "…Bisom/Sorensen misappropriated post office forms and prepared fraudulent certified mail receipts to show service on Bradshaw when the service never happened…" (p.19)

[2] This order will be referred to herein for the sake of brevity as "the SC order."

*EXHIBIT T*

*T*

5

effort and take that kind of risk, why did they never file it as proof of service? (see discussion below) Bradshaw's theory of fraud just does not make any sense.

## II. WHETHER THERE WAS FRAUD IN THE PROOF OF SERVICE ON BRADSHAW, IT WAS IMMATERIAL TO THE DETRMINATION WHETHER THE COURT HAD ACQUIRED PERSONAL JURISDICTION OVER HIM

Much more to the point for the purposes of this appeal is that this fraud theory is not germane to the default judgment. In the last section of the SC order, which part is not being challenged in this appeal, it concludes that the return receipts with the "Manny" signatures were not the basis for the trial judge's conclusion that a default judgment was warranted, and thus, whatever there was in the way of evidence of mail fraud, "…it has no bearing on the outcome of this case." (SC Order, p. 16).

This conclusion is correct, because the basis for the trial judge's conclusion that personal jurisdiction over Bradshaw was established, thus leading to the ability to request default, was set forth in the Order Denying Motion to Remove Case from Trial Docket, filed and signed by Judge Castro on February 22, 2000 (made retroactive to February 7, 2000). Those reasons are: that Bradshaw had been properly served by mail, return receipt requested (as per 7 CMC § 1104(a)), but had purposefully avoided service; that Bradshaw had previously appeared through counsel, the AG's office; and that his right to challenge sufficiency of service of process had been waived by having made a motion to dismiss without including any such objection (pursuant to Com.R.Civ.Proc. 12(h)(1)). [ER 43]

Part of the service procedure under 7 CMC section 1104(a) is: "The plaintiff or his or her attorney shall file an affidavit of service with the clerk of courts showing that copies of the summons and complaint were served or sent by certified or registered mail, and in the latter case, the return receipt signed by the defendant shall

*Exhibit 7*

7

be filed with the affidavit." Neither the plaintiff nor his attorney ever completed this procedure. There were Certificates of Service filed, signed by Annabelle Guevarra, a member of the staff of Bisom's attorney, who performed the mailing. These two certificates are included in the supplemental excerpts of record filed by Bradshaw at pages 66-70. However, these were both done right after mailing and included only the postal Receipt for Certified Mail, which only shows that postage was paid and the date when the certified items were mailed. They did not include the signed return receipt, as they were done several days before the envelopes even reached Bradshaw's address. The signed return receipts were never filed with the clerk by Bisom or his counsel.

Copies of the signed receipts were later furnished to Mr. Sosebee, who was the responsible assistant for the AG's office shortly before and during the trial. Mr. Sosebee attached those copies to the Motion to Remove Case from Jury Trial Docket filed by him on February 1, 2000. It is copies of these attached exhibits to that motion that Bradshaw has included in his excerpts of record. Had Mr. Sosebee not attached copies of them to his motion, there would be nothing of the signed return receipts in the court's file at all. Thus, those signed return receipts were not a factor in the determination that personal jurisdiction over Bradshaw had been established.

### III. BRADSHAW'S REQUEST TO HAVE THE JUDGMENT VACATED BY MOTION WAS LIMITED BY RULE 60(b) TO BEING BROUGHT WITHIN ONE YEAR

Bradshaw's motion cites and quotes from the case of *Jackson v. FIE Corp.*, 302 F.3d 515 (5th Cir. 2002) to argue that there is no time limit to bringing his motion. However, as the brief recites, that case was one where relief was sought under Fed.R.Civ.P. 60(b)(4) on the grounds that there were insufficient contacts between the forum state and the defaulted defendant. That court ruled that the sufficiency of the

EXHIBIT 7

defendant's contacts could be raised by a Rule 60(b)(4) motion at any time because there is no time limit on challenge to a void judgment.

But in this case, the issue brought by Bradshaw was different. There was never any question about whether there were sufficient contacts by Bradshaw with the CNMI as the forum, since all the occurrences that led to Bisom's suit happened in the Commonwealth while Bradshaw was present. See, 7 CMC §1102(a) (1), (2), and (5). Bradshaw grounded his motion on the failure to serve him properly and the allegation that it was fraud that led to the trial judge's determination that default could be entered against him. [Motion to Void/Vacate Judgment, p.4; ER 63]. Thus, subsection (b)(3) of Rule 60, and not subsection (b)(4), governs in this instance. That means, according to the express direction of that rule that "[t]he motion shall be made…not more than one year after the judgment or proceeding was entered or taken."

### IV. THE SUPERIOR COURT'S ORDER THAT BRADSHAW HAD TO BE SERVED IN ACCORDANCE WITH WASHINGTON LAW IS BASED ON A MISINTERPRETATION OF COM.R.CIV.P. 4

The SC order construed Com.R.Civ.P. 4(k) to the effect that defendants who reside outside the Commonwealth can only be served with summons and complaint in a manner authorized by the laws of the state where they reside, even if Commonwealth service provisions are fully complied with. [Order. 8-9; ER 106-107] Bisom's opening brief makes the points that this interpretation is antithetical to the intent of the legislature as expressly set forth in 7 CMC § 1102(e), that it ignores the statute's plain meaning, and that analogous case law supports the opposite conclusion, namely, that service in accordance with local statutes are valid so long as the law of the defendant's state does not expressly prohibit the manner of service employed.

EXHIBIT T

Bradshaw's brief offers no cogent counterpoint to these arguments. It does, in the next section, point out some factual distinctions between this case and the federal case discussed in the opening brief, *Polargrid LLC v. Videsh Sanchar Nigan* Ltd., 2006 U.S. Dist. LEXIS 17531 (S.D.N.Y. April 7, 2006). [Appellee's brief, pp. 19-20] However, the case was cited as analogous authority, not controlling, and the distinctions in jurisdictions and circumstances do not lessen the persuasiveness of its rationale, nor do they detract from the point that the interpretation of the SC order is at odds with the way other courts have looked at the phrase "unless prohibited by law" in the context of statutes governing service of process.

## V. BRADSHAW OFFERS NO AUTHORITY NOR ANY GOOD REASON TO EXCUSE REFUSAL TO ACCEPT MAIL HE KNEW CONTAINED SUMMONS AND COMPLAINT

Bradshaw's response to the argument that defendants ought not to be allowed to thwart authorized service by registered or certified mail by refusing to accept it is that he was under no obligation to accept since such service was not properly made. (Appellee's Brief, pp. 27, 31). Why it is that such service was not proper the brief does not clearly identify. Unlike the SC order, Bradshaw acknowledges the existence of 7 CMC § 1104, and discusses it at length. He asserts that neither Bisom nor the trial judge followed the law. (Appellee's Brief, pp. 21, 32) The reasoning for these conclusions is not explained.

There is the suggestion that this was because service was not done in accordance with Washington law--that is to say, that service by certified mail is not an authorized procedure under Washington law, as the SC order concluded. (Appellee's Brief, p. 26). However, the brief offers nothing in rebuttal to the arguments made in

*Exhibit T*

the opening brief as to why this construction is at cross-purposes with the law's legislative intent, is contrary to its plain meaning, and is bad policy.

There is also the suggestion that service was defective because it was predicated on the fact that "... Bisom submitted fraudulent return postal receipts..." (Appellee's Brief, p. 32). However, as explained above, that simply did not happen. Those signed postal return receipts were never submitted nor filed by Bisom nor his counsel.

There are some subsidiary points in the discourse in this section of the brief that will be discussed here.

A. Case law.

Bradshaw chides Bisom's opening brief for citing and quoting from seven cases that are not only distinguishable, but are so different from this one that including them for the court's consideration is sanctionable misconduct. (Appellee's Brief, p. 33) To make the point, the brief discusses out-of-state motorist acts, the Uniform Interstate and International Procedure Act, the role of states' Secretary of State under these laws, and differences in how federal courts and rules deal with service of process.[3] (Appellee's Brief, pp. 13-19). All of this does little to advance the decision whether courts should or should not allow litigants who know that process is being served on them by mail according to statutory provisions to avoid service by simply refusing to accept their mail.

Bradshaw's brief contends "...cases are rare where the courts have ruled that the defendant had to have accepted certified mail or be found in a served situation." (Appellee's Brief, p. 20). Yet, there is no authority whatever cited for this contention.

---

[3] The reliance on federal law and rules is misplaced. Under Fed.R.Civ.P. 4(e)(1) service on an individual may be accomplished "pursuant to the law of the state in which the district court is located, or in which service is effected,..." Thus, in a federal forum, the rule is clear that the service provisions of the state of the defendant's residence is but one of two options one needs to comply with.

EXHIBIT

T

10

By contrast, the opening brief cited authority that "…where delivery by mail has been 'refused' by the addressee, and the letter is returned to the sender with that notation, '[t]he almost unanimous line of authority indicates that due process has been satisfied and that the court has acquired personal jurisdiction over the defendant.'" *Nikwei v. Ross School of Aviation, Inc.*, 822 F.2d 939, 944-945 (10th Cir.1988), quoting Note: *Constitutional Law: The Validity of Service of Process by Mail When There is No Return Receipt: The Outer Limits of Due Process*, 25 Okla.L.Rev. 566, 567 (1972).

In fact, Bradshaw's brief does not even give one example of a case that holds that defendants in that situation may refuse service by registered or certified mail. The cases he does cite do not support this contention. *Dahl v. Kanawha Inv. Holding Co.*, 161 F.R.D. 673 (N.D. Iowa 1995) and *Schnabel v. Wells*, 922 F.2d 726 (11th Cir. 1991) are both cases that deal with a different species of service provisions, namely, those authorized by Rule 4(d), Federal Rules of Civil Procedure, formerly designated Fed.R.Civ.P. 4(c)(2)(C)(ii) before revision in 1993. As the Dahl case points out, these provisions require the cooperation of the defendant being served and is in the nature of a "request for a waiver of formal service." *Dahl*, 161 F.R.D. at 680, quoting from Fed.R.Civ.P. 4(d), Notes of the Advisory Committee on 1993 Amendment. While Com.R.Civ.P. 4(d) is the same kind of voluntary service provision, 7 CMC §1104(a) is not that kind of statute. In fact, it is designed to implement the CNMI's long-arm statute, whose intent is to expand the jurisdiction of the Commonwealth's courts to the maximum extent permitted by due process. *Sirok v. Rotec Engineering*, 1 CR 1065 (D.C. N.M.I. 1984).

The other two cases cited in Bradshaw's brief are ones that do not involve refusal to accept certified mail. In *LSJ Investment Co., Inc. v. O.L.D., Inc.*, 167 F.3d 320 (6th Cir. 1999) the certified mail addressed to defendant came back unsigned and marked "Attempted Not Known," and plaintiff then tried regular mail, neither of

*EXHIBIT T*

which complied with the Ohio service provisions. There was no evidence that defendant was avoiding service. Similarly, *Harper Macleod Solicitors v. Keaty & Keaty*, 260 F.3d 389 (5th Cir. 2001) dealt with different issues. In that case service was determined to be defective because plaintiff there did not provide the current address of the defendant partnership and had a typographical error in the address for the individual defendants. *Id.* at 399. No such claim has been made in this case.

B. Unclaimed vs. Refused.

In the statement of facts section of the brief the argument is made that since the envelopes that were before the court are marked "unclaimed" rather than "refused" [ER 37,38], they are insufficient to find that Bradshaw avoided service. (Appellee's Brief, p. 5-6).

Before addressing that fine distinction, it is best to review the evidence before the court. In Bradshaw's letter of July 14, 1999 to William Bush in the AG's office, he discusses the two certified mail packets from Saipan that he received. The letter says: "I refused to accept either of them and they were returned by the Post Office undelivered." [ER 84]. In addition, the affidavit which Bradshaw submitted from his former mail carrier, David Vanderholm, says of the same envelopes from Saipan: "...Mr. Bradshaw refused to accept them." [ER 97].

C. Consideration of the July 14, 1999 letter to Bush.

The brief also argues that consideration of his letter to William Bush dated July 14, 1999 could not provide a basis for any rulings against him because it was, first of all, privileged, and secondly, not admitted into evidence. (Appellee's Brief, p. 25).

As to the latter point, it is not accurate to say that the letter was ruled inadmissible or not admitted into evidence. What the court ruled was: "The motion relies on facts set forth in a form that fails to comply with the requirements of a

12

EXHIBIT T

supporting affidavit or declaration." [Order Denying Motion to Remove Case from Trial Docket filed Feb. 22, 2000, p. 1-2; ER 42-43]. The Commonwealth Code provides for methods of presenting sworn testimony for consideration by the courts, particularly for purposes of motions. 7 CMC § 3305 provides for declarations if made within the Commonwealth and 7 CMC § 3307 for affidavits if outside the Commonwealth. The use of a letter in place of sworn testimony for a matter as important as taking a case off calendar right before the scheduled trial was not justified by the moving party.

However, this is not the same as a ruling that the letter was inadmissible. In fact, it was properly considered by the trial judge, as it was sufficiently authenticated by the writer's attorney, and it was admissible despite the hearsay rule as the statement of a party opponent when offered against the declarant. Com.R.Evid. 801(d)(2).

With regard to the complaint that the letter was privileged as a confidential communication between attorney and client, Bradshaw's attorney attached the letter to a motion that was filed and served. To whatever extent it may have been protected by the attorney-client privilege, that privilege was waived by disclosure. *United States v. Mendelsohn*, 896 F.2d 1183, 1188-1189 (9th Cir. 1990).

### VI. THE ATTORNEY GENERAL HAVING APPEARED FOR BRADSHAW, INCLUDING MAKING A MOTION TO DISMISS ON HIS BEHALF, ANY CHALLENGE TO INSUFFICIENT SERVICE OF PROCESS WAS THEREAFTER WAIVED

Bradshaw's brief admits there is no dispute that the AG appeared and filed motions on his behalf before the trial. [p. 33]

The court files reflect that on May 9, 1997 Defendants' Notice of Motion and Motion to Dismiss for Lack of Personal Jurisdiction, Failure to State a Claim, and

EXHIBIT
T

Insufficiency of Process was filed. Then, on June 26, 1997 Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim was filed. Both motions purported to be brought on behalf of the Commonwealth, Robert D. Bradshaw and Scott Tan. As part of them, the AG moved under Com.R.Civ.P. 12(b)(6) to dismiss the Sixth and Eighth claims, which were both against Bradshaw only in his individual capacity. [ER 6,9] As to the motions challenging personal jurisdiction and sufficiency of process, they were made on behalf of the Commonwealth and Scott Tan, but not for Bradshaw.

The AG's affirmative representation of Bradshaw was not a mistake or the result of an oversight. That office continually acted for him up until just before the time of trial, when it took the position that Bradshaw had never been served. Most notably, after the ruling on the motions to dismiss, the AG filed a motion for reconsideration. This was filed on December 7, 1998 by Mr. Bush, Mr. Cotton, who had previously handled the case for defendants, having left the office by then. The moving papers indicate that the AG was acting as "Attorney for Defendants." Part of the motion was to reconsider the court's denial of the motion to dismiss the sixth claim, which was for intentional infliction of emotional distress against Bradshaw individually, and the eighth claim, which was for violations of the Civil Service Act, also against Bradshaw individually. (Defendants' Memorandum in Support of Motion for Reconsideration, filed Dec. 7, 1998, pp. 16-18).

Thus, the conclusion is inescapable that under the terms of Com.R.Civ.P. 12(h)(1), by failing to join a motion based on insufficiency of service of process at that time in 1997 with the Rule 12(b)(6) motions made on Bradshaw's behalf, a waiver by him of any further challenge to service of process had been effected.

Furthermore, under Rule 12(g), "… the party shall not thereafter make a motion based on the defense or objection omitted…" Because the motion to

EXHIBIT
T

void/vacate the default judgment was based on the defense or objection that service of process was improper, the motion should have been denied because, by the terms of Rule 12(g), such a motion was precluded.

The brief contends that the AG was not his lawyer and therefore had no power to waive anything on his behalf. (Appellee's Brief, pp. 33-34). First, it is noteworthy that in the previous section the Bradshaw's brief asserts that his letter of July 14, 1999 to Bush was privileged. (p. 25). The assertion of the attorney-client privilege admits an attorney-client relationship. Moreover, when one reviews the correspondence between Bradshaw and the attorneys at the AG's office it is clear that an attorney-client relationship was in place. Bradshaw produced as part of his motion six letters from the AG to him dated before the trial in 2000. [ER 66,67,70,71, 72, 73] He also included three letters from him to the AG's office during that same time frame. [ER 81, 82, 84][4] From this flow of communication and from the continuous affirmative defense that was provided for Bradshaw's benefit, it is clear that Bradshaw and the Assistant AG's that handled the case assumed they were in an attorney-client relationship.

VII. BY FAILING TO RECOGIZE AND TO FOLLOW THE TRIAL JUDGE'S PRIOR FINDINGS AND HOLDINGS, THE SUPERIOR COURT ORDER REPRESENTS AN ABUSE OF DISCRETION

Bradshaw's brief has two responses to the argument that the SC order failed to give cognizance to the law of the case doctrine and was therefore an abuse of discretion. The first one is that Judge Castro's February 22, 2000 Order Denying Motion to Remove Case from Trial Docket was not "determined," pointing out that

---

[4] There is an indication there may be more correspondence between them. The letter of June 30, 1999 from William Bush references "Your letter of May 25, 1999 to the Attorney General." [ER 73] That letter was not included as part of the motion. This suggests Bradshaw was selective in his presentation of the evidence.

15

*Exhibit T*

there was a subsequent appeal. But this point has no merit because the February 22, 2000 order was not at issue in that appeal, so those determinations were not affected by it. Moreover, the two rulings that were appealed both resulted in sustaining the trial judge's decisions. *Bisom v. C.N.M.I.*, 2002 MP 19.

The second thing Bradshaw relies on is that there is currently pending another case, filed in federal district court, were these issues are even now being litigated. This is factually correct. Bradshaw has filed a case, *Bradshaw v. Commonwealth of the Northern Mariana Islands, et al.* (Dist. N.M.I. Civ. No. 05-05-0027). Bradshaw has named as defendants not only Bisom and Sorensen, but also the CNMI government, the former Attorney General, Pamela Brown, and four other former assistants from that office, as well as Justice Castro.

However, even though that case is currently still pending in federal district court, it has no bearing on this appeal in general, nor on the question whether the law of the case doctrine applies in particular. "Under the 'law of the case' doctrine, a court is generally precluded from reconsidering an issue that has already been *decided by the same court*, or a higher court *in the identical case*." *United States v. Alexander*, 106 F.3d 874, 876 (9th Cir. 1997), quoting *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993)(emphasis added). The District Court for the Northern Mariana Islands is not the same court as the C.N.M.I. Superior Court, nor is it a higher court. In addition, Bradshaw's case is not the identical case to this one. Bisom's case was about his termination from his employment with the Office of the Public Auditor. Bradshaw's case is about an alleged conspiracy of litigants, attorneys and judges to deprive him of his civil rights. Thus, whatever may be the outcome of the case pending before the district court, it has no bearing on whether the law of the case doctrine applies in this instance.

EXHIBIT T

As demonstrated in the opening brief, the order of February 22, 2000 made findings and conclusions that precluded Bradshaw from any attack on whether the court had jurisdiction over him and on whether he was properly served with summons and complaint. The SC order of December 29, 2005 fails to respect the finality and authority of those rulings. Because none of the exceptions to the law of the case doctrine apply here, that was an abuse of discretion. *Alexander,* 106 F.3d at 876.

## CONCLUSION

The SC order is flawed in several ways. It granted a motion that was time barred. It concluded that service was not properly made by ignoring the existence of the very statute that was utilized to effect service, then it misconstrued Com.R.Civ.P. 4(k) to maintain that service was not properly effected. It failed to recognize the significance of Bradshaw's avoiding service. It noted but ignored the waiver provisions of Com.R.Civ.P. 12(g) and 12(h). And it ignored the trial judge's prior rulings regarding service of process and personal jurisdiction over Bradshaw, then ruled inapposite to those findings. Any one of these abuses of discretion would be grounds for reversal. The SC order must be reversed and the judgment reinstated.

/s/ Jay H. Sorensen
Jay H. Sorensen
(CNMI Bar No. F0127)
Attorney for Appellant

EXHIBIT T

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 5, 2006 the following document,

APPELLANT'S REPLY BRIEF

or a copy thereof, was served on the parties or counsel listed here, according

to the rules of this court, as indicated.

Robert D. Bradshaw
P.O. Box 473
1530 W.. Trout Creek Road
Calder, Idaho 83808                    Via U.S. Mail

Gregory Baka
Office of the Attorney General
Second Floor, Juan A. Sablan Bldg.
Caller Box 10007
Saipan, MP 95960                       Via electronic service

/s/ Jay H. Sorensen
JAY H. SORENSEN

EXH 18 T