APPEAL NO. 06-0006 GA

# IN THE SUPREME COURT
## OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM           )   Appeal No. 06-0006 GA
                        )
       Appellant            )

vs.

COMMONWEALTH OF THE NORTHERN    )
MARIANA ISLANDS; ROBERT D.         )
BRADSHAW, former Temporary Public    )
Auditor, in his individual capacity, et al.    )
                              )
       Appellee             )
_____)

## APPEAL FROM THE SUPERIOR COURT
### OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

Judge Juan T. Lizama, Associate Judge

---

## BRIEF OF THE APPELLEE

---

**Robert D. Bradshaw**
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691
Appellee, Pro Se

/43/

*EXHIBIT AA*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES......................................................... iv-vi

STATEMENT OF THE ISSUES PRESENTED (Omitted)

STATEMENT OF THE CASE (Omitted)

STATEMENT OF FACTS ........................................................... 1

ARGUMENT

    GENERAL COMMENTS ON THE BRIEF'S ARGUMENTS....... 6

    BISOM'S ISSUE I.  RULE 60(b) DOES NOT AUTHORIZE
    VACATING THIS JUDGMENT BY MOTION BROUGHT MORE
    THAN ONE YEAR AFTER ENTRY................................................ 9

    BISOM'S ISSUE II.  THE TRIAL COURT CONCLUSION THAT
    BRADSHAW WAS NOT PROPERLY SERVED IS BASED ON A
    MISINTERPRETATION OF COMM.R.CIV.P 4............................. 10

    BISOM'S ISSUE III.  ALLEGING THAT BRADSHAW
    PURPOSEFULLY AVOIDED MAIL SERVICE IS RELEVANT AND
    SHOULD HAVE BEEN CONSIDERED........................................ 12

        A.  Backdrop on State Laws and the Cases.............................. 12
        B.  The CNMI Situation................................................... 21

    BISOM'S ISSUE IV.  DEFENDANT WAIVED ANY DEFECT
    OF SERVICE BY APPEARING THROUGH COUNSEL AND BY
    FAILING TO CHALLENGE SUFFICIENCY OF PROCESS...... 33

    BISOM'S ISSUE V.  THE ISSUES HAVING ALREADY BEEN
    HEARD AND DETERMINED, THE LAW OF THE CASE DOCTRINE
    APPLIES TO PREVENT GRANTING THIS MOTION................ 34

CONCLUSION........................................................................ 34

CERTIFICATE OF SERVICE.................................................... 36

/44/

EXH.
AA
B

# ADDENDUM

CASES:

Cherry v. Heffernan, 182 So. 427-432 (FL 1938)                                    A1

Creaddick v. Keller, 160 A.909-911 (Del 1932)                                     A5

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972)                              A7

Nikwei v. Ross School of Aviation Inc., 822 F 2d 939-946 (10th Cir, 1987) A11

Patel v. Southern Brokers, Ltd, 289 S. E. 2d 642-645 (SC 1982)                   A19

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936)                                A23

Dahl v. Kanawha Inv. Holding Co., 161 F.R.D. 673-686, N.D. Iowa 1995) A26

LSJ Investment Co. v. O.L.D. Inc., 167 F 3d 320-325 (6th Cir, 1999)              A40

Schnabel v. Wells, 922 F 2d 726-729 (11th Cir, 1991)                             A46

Harper MacLeod Solicitors v. Keaty, 260 F 3d 389-400 (5th Cir, 2001)            A50



Exh. AB

# TABLE OF AUTHORITIES

<u>CASES</u>                                                    <u>PAGE</u>

Bisom v. Commonwealth of the Northern Mariana Islands, et al.
  CNMI Case 96-1320                                        16, 17, 18
                                                           19, 28, 36

Bisom v. Commonwealth of the Northern Mariana islands, et. al.
  CNMI Supreme Court Case 2000-016, 2000-023 (Consolidated)   34

Bradshaw v. Commonwealth of the Northern Mariana Islands, et. al.
  US District Court, Idaho Case 05-0084                      22

Bradshaw v. Commonwealth of the Northern Mariana Islands, et. al.
  US District Court, NMI Case 05-0027                        34

Cherry v. Heffernan, 182 So. 427-432 (FL 1938)             12, 13, 17

Creaddick v. Keller, 160 A.909-911 (Del 1932)              12, 13, 17

Dahl v. Kanawha Inv. Holding Co., 161 F.R.D. 673-686, N.D. Iowa 1995)   22

Franklin v. Franklin, 365 MO 442 283 S.W. 2d 483, 486       35

Harper MacLeod Solicitors v. Keaty, 260 F 3d 389-400 (5th Cir, 2001)   28, 29, 30,
                                                           31

Jackson v. FIE Corp., 302 F. 3d 515 (5th Cir Ct )           9

Levin v. Ruby Trading Corp. D.C.N.Y. 1965 F. Supp, 537      20

LSJ Investment Co. v. O.L.D. Inc., 167 F 3d 320-325 (6th Cir, 1999)   22, 23

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972)       12, 13, 16

Nikwei v. Ross School of Aviation, Inc., 822 F 2d, 939-946 (10th Cir 1987)   13, 17, 18
                                                           21

Patel v. Southern Brokers, Ltd., 289 S. E. 2d 642-645 (SC 1982)   13, 19, 21

Polargrid LLC v. Videsh Sanchar Nigan Ltd, 2006 U.S. Dist, LEXIS 17531
  (S.D.N.Y., April 7, 2006)                                19, 20, 22

/46/

iv

EXHIBIT B
AA

Schnabel v. Wells, 922 F 2d 726-729 (11th Cir, 1991)          22, 23

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936)1          13, 17

Weiss v. Glemp, 127 Wash. 2d 726, 903 P 2d 455 (1995)          28


STATUTES AND RULES:

Comonweath Code, 7 CMC:
    Section 1102          10, 21, 23
                          26, 31, 32
    Section 1103          10, 21, 26,
                          32
    Section 1104          10, 11, 16
                          21, 23, 24,
                          26, 32


Commonwealth Rules of Civil Procedure:
    Rule 4          10, 11, 20
    Rule 11         36
    Rule 60(b)      9, 10, 34

CNMI Supreme Court Rules:
    Rule 10         8
    Rule 11         8
    Rule 28(m)      35
    Rule 30         8
    Rule 31         8
    Rule 38         35
    Rule 39         35
    Rule 42(c)      8

Federal Rules of Civil Procedure:
    Rule 8          15
    Rule 12         15
    60(b)           29

Idaho Bar Association Rule 3.1          9

OK statute 12 O.S. 1971 Section 1702.01(b)          18

Revised Code of Washington (4.28.80)          28

Virginia Code section 801-329          13

[47]

EXH. AA

OTHER AUTHORITIES:

CNMI Constitution — 32

The Third Judicial District Glossary of Legal Terms — 35

Uniform Interstate and International Procedure Act (UIIPA) — 14, 15, 16, 18

United States Constitution — 23, 26, 30, 32

Wright & Miller's "Federal Practice and Procedure" — 9, 15, 19, 23, 24



EXH. AA

## STATEMENT OF FACTS

Mr Bisom's (hereafter Bisom) outline of facts in his brief is partially correct. But what is missing is primarily that many of the details the brief allege are wrong, misleading and/or deceiving, per Bradshaw's information; and otherwise that Bisom has simply failed to present the exhibits, Excerpts of Records (ER), and proof for statements alleged in his brief.

Thus, his brief has been challenged in the Supreme Court by defendant (hereafter "def") in a separate action. Bisom should either provide his cited exhibits and provide the transcript proof of his assertions on the oral case hearings or the appeal should be dismissed. In terms of just his statement of the facts, here are the main problems:

Problem 1 arises when Bisom alleged that Bradshaw's priority was to complete the audit before the end of Governor Guerrero's term (Bisom's brief, p. 4). Bradshaw said he wanted to proceed with the audit but did not link it to the Governor's term.

Problem 2 arose when Bisom did not report what transpired in a confidential discussion Bradshaw had with Bisom on Bradshaw's first day in the office (ibid, p. 5). Actually, Bradshaw instructed Bisom to go the Attorney General's (AG) office and check the file and see if there were any restrictions which would limit Bradshaw's temporary appointment. Bradshaw believed that he may have earlier agreed to not accept an appointment from the Senate President as was the law at that time. Bisom did not do as he was instructed in this privileged conversation. Instead, he immediately went to the legislature and reported his distorted views to Congressman



1



Stanley Torres.

Problem 3 notes Bisom's claims that he was absent from the office on approved leave (ibid, p. 4-6). The truth is that Bradshaw never approved any leave for Bisom.

Problem 4 is the allegation that Bradshaw worked for the Dept of Finance (ibid, p. 5). Bradshaw was paid by the Office of the Public Auditor (OPA) and not by Finance. Bradshaw was totally independent in his work at OPA and especially so since he planned on soon leaving the CNMI.

Problem 5 says that Bradshaw reported Bisom to the AG for criminal prosecution and cited an alleged trial exhibit which was not supplied in the brief (ibid, p. 7). Bradshaw's letter to Bisom on this issue is presented herein (def ER, p. 15) which specifically states Bradshaw's words to Bisom.

Problem 6 concerns Bisom's allegation that Bradshaw wrote the Pacific Star paper (Bisom's brief, p. 7). This statement is absolutely false. Bradshaw never wrote any newspaper about any issue in the OPA.

Problem 7 arises in Bisom's claim that the audit involved was the fastest one done up to 2000 (ibid, p. 7). This is not true per Bradshaw's memory.

Problem 8 concerns Bisom's claim that the Bar Association ethics investigation found "no basis" for Bradshaw's complaints against Bisom (ibid, p. 7). Bradshaw was informed that the charges had not been proven--not that they had no basis. There is a difference between these two ideas.

The brief's statement of facts (ibid, p. 6) and other allegations address Bradshaw's termination of Bisom for cause. In the 96-1320 suit, Bisom attached Bradshaw's termination letter (in an incomplete form) as an exhibit. This letter was not



2

EXH. B
AA

supplied to the court in the Bisom brief. It is attached herewith (def ER, p. 1). Before dispatching this letter, Bradshaw fully coordinated its contents with Personnel Officer Norbert Sablan and an Assistant Attorney General named Jerry. They concurred in its contents as far as meeting CNMI standards for discharge with cause.

In paragraphs 62-69 of his complaint in 96-1320 (Bisom's ER, p. 10-12), Bisom confirmed the propriety of Bradshaw's termination of him for cause. Bisom admitted that he had unauthorized and clandestine meetings with the Governor-elect to discuss his work to oppose Bradshaw and the single audit underway by Deloitte and Touche. As a matter of fact, Deloitte and Touche has done single audits on the CNMI for years now--both before and after their work in 1993.

Per Bisom's own words in his complaint, he was assured by the Governor-elect that if he was fired for actively opposing and working against Bradshaw that he would be rehired when the Governor-elect took over in January 1994. This was an open admission that Bisom worked outside official government channels to oppose, block and interfere in the audit work going on at OPA.

In paragraph 66 of the complaint (ibid, p. 11), Bisom alleges that he and Tan entered into a conspiracy to defraud the CNMI with Bisom going to Japan and being rehired as off-island allowing Bisom to receive monetary and other benefits which he would not otherwise be eligible for. This shows the attitude of Bisom on how he treated CNMI laws and procedures.

As a part of his alleged facts, Bisom fails to make any mention of the reality that he/his attorney Jay H. Sorensen (hereafter "Sorensen") entered absolutely fraudulent mailing documents into the case file. The Dec 29, 2005 order of Judge Lizama makes

Exh. B
AA

note of the clear presence of fraudulent documents (entries of May 5, 1997 [p. 2]; Jun 9 and 30 of 1997 [p. 3]; Aug 27, 1999 [p. 4]; and Paragraph C [p. 15-16]).

It is strange that the precise same certified numbers on the certified envelopes allegedly sent Bradshaw and returned unclaimed are the exact same numbers of those appearing on post office signed return receipts, as filed by Bisom in the case (with the signature of an alleged person named "Manny"). Obviously, both sets of documents contradict each other and cannot be true, as Judge Lizama found.

Actually, Bradshaw furnished evidence in his void/vacate motion proving that indeed the return postal receipts signed by Manny were fraudulent and designed by Bisom/Sorensen to defraud both Bradshaw and the CNMI.

Incidentally, in his "Opposition to Motion to Void/Vacate Judgment" (2d paragraph, p. 4; def ER, p. 27), as filed by Bisom/Sorensen on Oct 15, 2005, the plaintiff says that "There is nothing to indicate that plaintiff had any way to know or even suspect that the postal receipt that was returned did not bear the signature of the person it was addressed to." Manifestly, this statement is an open admission that Bisom/Sorensen filed the fraudulent receipts in court. Bradshaw's reply in the form of a "Answer to Plaintiff's Opposition to Motion to Void/Vacate Judgment" is at def ER (p. 39).

The AG took note of these fraudulent documents in its Motion to Remove Case From the Jury Trial Docket (def ER, p. 62) on Feb 1, 2000. This motion illustrates the paradox of two conflicting sets of documents filed in court by Bisom. The fraudulent receipts are presented in Exhibit C of this AG motion.

In Sorensen's Supplemental Declaration in Support of Request for Entry of



4

Exh. AA

Default (def ER, p. 76), filed on Feb 16, 2000, Sorensen says that copies of the 1st and 2d amended complaints were served on defendant (Bradshaw) with return receipt and that the 4th amended complaint was served on the AG. Sorensen noted that the time that Bradshaw could answer had expired and that Bradshaw did not answer. The very wording of this document is that service was made on Bradshaw, that returns of service were filed with the court (showing that service was actually made); and that Bradshaw did not answer the service.

Not only is Bradshaw assured that the return postal receipts filed by Bisom/Sorensen are fraudulent but there is evidence that the two copies of the envelopes are also fraudulent. Preparing envelopes like the ones Bisom submitted to the court would be no trick on Saipan. Bradshaw had no knowledge of these two envelopes until they were submitted to him in the Plaintiff's opposition of Oct 15, 2005.

The two envelopes Bradshaw saw in 1996/1997 did not have the name of the mailer on them. The two envelopes Bisom submitted indicate that they had attorney Sorensen's name on them and were returned unclaimed by the post office and not that they were refused. This is a distinction worth noting. Where the two envelopes came from that Bisom submitted in court is anyone's guess. But Bradshaw was simply unfamiliar with them before Oct 2005.

Since the Bisom submitted two envelopes only show that they were returned unclaimed, they cannot possibly be used to establish that Bradshaw avoided service as Bisom alleges. Surely, it takes an outright refusal of service to even begin to justify a finding of avoidance of service. The Bisom envelopes do not show refusal of service.

[53]

ExH AA

There is a difference between unclaimed mailings and those refused. Since Bradshaw's letter of Jul 14, 1999 was not in evidence, Judge Castro only had the two alleged return envelopes from Bisom. These two envelopes said that they were unclaimed, not refused. So how is it that Judge Castro cooked up his avoided service theory? The two unclaimed envelopes prove nothing. They are more irrelevant and probably fraudulent documents submitted by Bisom to the court in this case.

Per the certified mailing numbers on the two allegedly unclaimed envelopes and on the allegedly returned signed postal receipts, the documents allegedly sent by Bisom and returned without delivery have numbers that are only three numbers apart though they are dated a month apart. It is strange that the Saipan Post Office only used three certified numbers in a period of a month. This seems impossible.

As a minimum, Bisom/Sorensen submitted one and possibly two sets of fraudulent documents to the CNMI court in 96-1320 to obtain a default judgment which is what happened. Surely, the appeals court will not now take action to reward the responsible person(s) involved in fraud with an unearned judgment.

## ARGUMENT

### GENERAL COMMENTS ON THE BRIEF'S ARGUMENTS

As noted above, under the facts, Bisom has failed to present the exhibits, records and proof for statements alleged in his argument. Bisom makes numerous references to oral remarks or discussions at the trial in Feb 2000 or at the 2005 hearing. Yet, he failed to provide a transcript of those hearings to authenticate what he says happened.

/54/

Ex A
AA

Sometimes, he makes charges of events which could be immediately proven with a transcript of the 2000 trial (as on pages 24-25 on what the AG purportedly said at the trial in case 96-1320, etc) and the void 60 hearing in the fall of 2005 (for example--page 13 when Bisom alleged that Bradshaw never explained why it took five years to bring action; page 14 where he says that Judge Lizama denied him an opportunity to demonstrate prejudice; page 14 that the trial court ignored items dealing with service of process of out of state defendants, etc). The time issue was addressed in the oral hearing by Judge Lizama. Otherwise, the transcript would establish whether Bisom's charges are true or not.

Since the record shows that the plaintiff willingly supplied false information to the court in 96-1320, the appeals court should now demand that the plaintiff prove oral statements made at the trial or dispense with them. If Bisom would have included the transcript of the hearings, many of Bisom's charges could be proven or disproven. Yet, Bisom has not supplied transcripts. And now he marches into court to claim that issues were or were not properly addressed in the oral hearings of 96-1320.

It is ridiculous to believe that a party in an appeal can make careless and unsubstantiated statements about the oral words made in a trial and yet not provide a copy of the transcript to either prove or disprove his assertions. Effectively, Bisom's failure to back up his charges with a transcript has transferred the burden to defendant to now prove or disprove his unsubstantiated statements that he filed in his opening brief.

In the US justice system, it is the job of a plaintiff to prove his allegations; not the job of the defendant to disprove the plaintiff's careless and unsubstantiated allegations



7

Exh. AA

when plaintiff presents no proof. Yet, this is what Bisom has done. He makes

unsubstantiated allegations and expects the burden to pass to defendant to disprove

his careless and unsubstantiated allegations.

Bisom clearly expects defendant to disprove his allegations or the court must

accept his allegations as true. This is an absurd and unfair posture that he has tried to

create for the defendant. It is his job to prove his statements with evidence which is in

fact available. The Superior Court has recordings of oral discussions in both the 2000

trial and 2005 void hearing. The transcripts will either prove or disprove his

allegations. If he does not present the proof for his allegations on the oral hearings in

96-1320, then the Supreme Court must totally reject his allegations as being false

and/or unsubstantiated.

If Bisom wishes to make references to items covered in the oral hearings, then

he must be made to provide to the court a transcript of those hearings to either prove

or disprove his allegations. As noted above, his brief has been challenged in the

Supreme Court by defendant in a separate action. He should either provide his cited

exhibits and records and provide a transcript of the oral hearings proving his

assertions or the appeal should be dismissed for failure to comply with Supreme Court

rules 10, 11, 30, 31 and 42(c).

Also, it must be noted that plaintiff's arguments are founded on a series of

frivolous, unreasonable, irrelevant and wrong arguments which have brought a

disruption of the administration of justice by this court. His presentations are simply

not founded on legitimate issues. They are frivolous, irrelevant and totally removed

from the stated purpose of the appeal. By making these frivolous arguments, plaintiff is

trying to force the court to undertake a rehearing of the case and the rule 60 void hearing.

Many bar associations have rules which limit the actions of attorneys to file frivolous actions in court. For example, the Idaho Bar Association's rule 3.1 says: "A lawyer shall not bring a proceeding, or assert or controvert an issue therein, unless there is a basis in law and fact for doing so that is not frivolous, which includes a good faith argument for an extension, modification or reversal of existing law." While this rule may not apply in the CNMI, the principle is well made.

BISOM'S ISSUE I. RULE 60(b) DOES NOT AUTHORIZE VACATING THIS JUDGMENT BY MOTION BROUGHT MORE THAN ONE YEAR AFTER ENTRY

Bisom's brief notes the requirement that the action be submitted in a "reasonable time" (p. 8). Judge Lizama had discretionary authority to determine what was reasonable. As Wright & Miller's "Federal Practice and Procedure" notes (v. 4, p. 254), relief under 60(b) "is addressed to the discretion of the court." Judge Lizama used his discretion to address Bradshaw's motion to vacate.

In a 2002 case of almost two years after the default judgment (Jackson v. FIE Corp., 302 F. 3d 515 (5th Cir Ct )), the court found that "Absent extraordinary circumstances---the mere passage of time cannot convert an absolutely void judgment into a valid one...This is one reason for our having held that there is no time limit on Rule 60(b)(4) motions, and that the doctrine of laches has no effect... As a general rule, the fact that such a motion is made long after the entry of a default should not be an obstacle to the jurisdictional inquiry."

In his motion, Bradshaw did ask for a void of the judgment. So it was proper for



9



the court to hear the motion. As a minimum, under CNMI rule 60(b)(6), Judge Lizama had full authority to address this case.

Plaintiff also complains (p. 13) that Bradshaw did not submit an affidavit on his video store in 1998-1999 in Elk, WA and his presence there to accept service. Bradshaw's address (40203 N. Newport Hwy) was a street address and not a post office box number. Street addresses are customarily addresses where people live/work and where they can be found.

The affidavits of Ms Dassow and Mr Vanderholm (p. 96-97 of Bisom's ER) both mention Bradshaw's daily presence at 40203 N. Newport Hwy where he operated a retail store with no employees. These witnesses are conclusive that Bradshaw was present and could have been served daily by Bisom. The truth is that Bisom made no effort to effect personal service on Bradshaw in Elk, WA.

Bisom cites a one year time limit of fraud as limiting the time for the vacate motion. The truth is that Bradshaw raised a number of issues besides fraud and Judge Lizama addressed several issues to make his decision, which were not directly related to fraud, per se.

BISOM'S ISSUE II. THE TRIAL COURT CONCLUSION THAT BRADSHAW WAS NOT
    PROPERLY SERVED IS BASED ON A MISINTERPRETATION OF COMM.R.CIV.P 4

Bradshaw's motion addresses four issues which govern service. They are: (1) What the law says in 7 CMC 1102-1104; (2) the need to conform to the minimum standards of due process of the US courts, per 1102(e); (3) the requirements of CNMI rule 4(k) on service which must not be prohibited in the US state where served; and (4) they must be served within 120 days from the filing of the suit, per CNMI rule 4(m). The



Exh B
pg A

suit was filed Dec 5, 1996. Service had to be made by Apr 4, 1997 or the case was to be dismissed. Service was not made per the rules.

In May and Jun 1997, Bisom's service was supposedly attempted under CMC 1104. But the truth is that Bisom did not follow 1104 because it demanded that certified mail service be made with a return receipt, with no provision for any determination or discretion by the court since 1104(b) stipulated the remedy if service was not made with return receipt.

Bisom totally bypassed the CNMI statutory laws. Once the statutory law was violated and ignored, the alternative for focus was the rules.

In order to obtain the illegal default decision from Judge Castro, Bisom used a misinterpretation and misuse of the civil rules and not the statutory requirements of the CMC. Once Bisom failed to follow the demands of the statute, as happened, the role of rule 4(k) certainly prevailed. While Judge Castro obviously did not know what was happening in his court, Judge Lizama apparently did understand this paradox. Or at least Judge Lizama ignored the failure of Bisom to follow the CMC and instead the court focused on the failure of Bisom to follow the rules.

The truth is that generic certified mail service in WA state is "prohibited" because the rules specify that it can only be done by court order. As a minimum, rule 4(k) refers to "all" service of process in the CNMI and "when not prohibited by law, beyond the territorial limits of the Commonwealth." All means all. And to reach beyond the CNMI, the implication clearly is to the CNMI long arm laws. Though he could have addressed Bisom's failure to follow 7 CMC 1104, Judge Lizama was not incorrect in addressing the requirements of rule 4(k).

11

## BISOM'S ISSUE III.  ALLEGING THAT BRADSHAW PURPOSEFULLY AVOIDED MAIL SERVICE IS RELEVANT AND SHOULD HAVE BEEN CONSIDERED

A.  Backdrop on State Laws and the Cases:

Plaintiff's brief cites seven cases as allegedly proving from US case law that Bradshaw purposely avoided mail service and that Judge Castro's order of Feb 22, 2000 was correct.  However, the plaintiff's attempt to use these cases were all inconsistent with the facts and law in 96-1320.  The truth is that the seven cases have almost nothing in common with 96-1320.  In terms of the state laws involved, they are in totally different worlds.  Trying to compare 96-1320 with these seven cases is like comparing apples and oranges.

Actually, plaintiff merely quoted a few remarks from each case out of context to supposedly prove his point.  Yet, if the other remarks in the cases and laws in question were actually checked, instead of blindly accepting plaintiff's argument, the words are clear that these seven cases are far afield from 96-1320.  The only thing they have in common is that among several issues in each case, they did address mail service and two of them involved acts of fraud as is true in 96-1320.

Complete summations of the cases are included herewith in the Appendum. They are as follows:

Cherry v. Heffernan, 182 So. 427-432 (FL 1938) (hereafter "Cherry," Appendum, p. A1)

Creaddick v. Keller, 160 A.909-911 (Del 1932) (hereafter "Creaddick," Appendum, p.

A5)

Merriott v. Whitsell, 476 S.W. 2d 230-233 (Ark 1972) (hereafter "Merriott," Appendum,



p. A7)



Nikwei v. Ross School of Aviation, Inc. 822 F 2d, 939-946 (10th Cir 1987) (hereafter

"Nkiwei," Appendum, p. A11)

Patel v. Southern Brokers, Ltd, 289 S. E. 2d 642-645 (SC 1982) (hereafter "Patel"

Appendum, p. A19)

Polargrid LLC v. Videsh Sanchar Nigan Ltd, 2006 U.S. Dist, LEXIS 17531 (S.D.N.Y.

April 7, 2006) (hereafter Polargrid," filed with Bisom's brief)

Wax v. Van Marter, 189 A. 537-539 (PA Super 1936) (hereafter "Wax," Appendum, p.

A23)

All of these cases were in the state courts except for Nikwei and Polargrid which

were in Federal court. But Nikwei was served per the local OK laws/rules. Four of the

above cases concerned out of state motorists who were involved in traffic accidents in

the states of the suits (Cherry, Creaddick, Merriott and Wax).

The background for the out of state motorists started in 1927 when states like

Massachusetts realized that they had a problem when out of state motorists would

come into their states, have traffic accidents and then leave the state with unresolved

damages. MA and then other states began enacting long arm statutes to reach out of

state motorists involved in accidents. Per an article on GA law on the Internet

(www.lawskills.com/case/gas/id/66757), all fifty states have nonresident motorist laws.

These out of state motorist acts typically include several elements on service.

First, they must be served on the Secretary of the State or some other state official

where the suit is filed (the state official becomes the attorney in fact for the out of state

defendant by statutory law). Even some other state long arm statutes use service on

the Secretary of the State. For example, under Virginia Code section 801-329, service



13



is made on the Secretary of the Commonwealth who becomes the statutory agent for the defendant.

By law, notice is given by the Secretary of the State or official or by the plaintiff to the defendant in the state where the defendant resides. This notice can often be mailed--sometimes by certified return receipt and even sometime by regular first class mail. The last feature of this mailing provision is that great discretion is granted to the courts to decide if the mailing was adequate for the required notice.

Adequate notice does not necessarily mean that the defendant has actually learned of the suit; but rather that the procedure used to alert him must have been reasonably likely to inform him, even if they actually failed to do so.

Thus, when an out of state motorist is involved in a traffic accident, he must be careful about avoiding any type of service of process that might be made on him. He can't just return to his home state and ignore the accident and any damages he may have caused in the suit state.

Otherwise, there are state long arm statutes which address other issues besides motor vehicles. Starting in 1962, a committee from some states prepared the Uniform Interstate and International Procedure Act (UIIPA) which has been used by many states to be able to exercise personal jurisdiction under their long arm statutes for out of state defendants.

Under Section 2.01(3) of the UIIPA, certified mail, return receipt, can be used to give actual notice. This provision adds that "proof of service shall include a receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." This "other evidence...satisfactory to the court" opens the door for the court

/62/

14

Exhp B

to exercise discretion on whether service was made or not on the simple basis of having given notice.

Many US states have adopted the UIIPA in whole or in part and/or modified it for their own purposes. But the CNMI has not adopted the UIIPA and there is nothing in CNMI law which would allow the CNMI court to exercise the discretion allowed under the UIIPA. CNMI law simply does not make this grant of discretion to its courts.

This "notice" communication must be contrasted with the normal and usual purpose of delivery of process to include a summons and complaint. Per Wright & Miller (v. 4A, p. 68), the purpose of the pleading (as in the process/complaint) is: (1) to provide notice of a claim or defense; (2) state the facts each party believes to exist; (3) narrow the issues that must be litigated; and (4) provide means for a speedy disposition of sham claims and insubstantial defenses.

It is the need to provide this information in the suit beyond notice which opens the door to motions to dismiss under Federal rules 8 and 12 and particularly for failure to state a claim. Many of these needs under the civil procedure rules are not an immediate issue with the actual notice need in many out of state motorists acts/long arm statutes.

The reason is essentially because the Secretary of State becomes the statutory agent for the defendant to accept service of process. Since the Secretary of State or other official becomes the agent for service of process on the defendant, some states allow notice to be made by a letter or summons with a provision that the complaint can be mailed later to the defendant.

These nonresident motorist/long arm statute laws should not be confused with



15



the normal civil procedure rules used by the US and state courts. While the long arm laws under the UIIPA allow great discretion to the courts to decide whether actual notice is given or not, the normal state court rules do not typically grant this latitude.

The court rules spell out precisely what a court can do on service of process. Many state rules even spell out precise provisions for the determination of a default judgment (like AR, OK, SC, etc). When certified mail is authorized, these rules often spell out the exact remedy to be followed (like with AR). This remedy provision is what is at 7 CMC 1104(b) in the CNMI.

As a matter of information, most US state rules of civil procedure limit the entry of a default judgment on a defendant via certified mail unless a signed return receipt is provided to the court as proof of service. Many states require that certified mail service be made by the Clerk of Court, Sheriff, Secretary of State, etc to insure the propriety of the mailing and avoid fraud that can ensue as happened in CNMI case 96-1320.

In terms of focus on out of state motorists/long arm statutes, the most crucial point in addressing them is on what the law actually says. In the case of OK, AR and certain other states, which have adopted the UIIPA, notice can be made by certified mail with discretion being given to the court on deciding if notice was given.

The Merriott case was a nonresident motorist case. Under AR law, the two key elements of the certified mailing was that it provide "actual notice" and that proof of service include a "signed receipt or such other evidence of personal delivery to the addressee satisfactory to the court" (item A, p. 231-232). This terminology from the UIIPA opens the door for the court's discretion on whether notice is given or not.

But otherwise and importantly, the actual notice must be served by the county



16

sheriff. In Merriott, the plaintiff's attorney mailed the notice, which was contrary to the law. Thus, though actual notice was given, the case was never-the-less remanded to the trial court for further action. As a minimum, the mailing or serving of the notice by the sheriff (or Clerk of Court) takes the question out of the hands of the plaintiff who could attempt fraudulent mailing actions as happened in the CNMI 96-1320 case under appeal.

In the nonresident motorist Creaddick case, the DE case required service on the Secretary of the State with a registered letter mailed to the out of state defendant of the notice (p. 909). The court found that plaintiff complied with the law.

In the nonresident motorist Cherry case, the FL Secretary of State became the agent of the defendant to receive process (page 429-430). In this case, notice in a letter was sent by registered mail. And in later litigation with the defendant, delivery of the notice was established.

In the nonresident motorist Wax case, the PA Secretary of Revenue became by law the agent for delivery of civil process (page 538). The court found that service was made on the Secretary and that the defendant was properly given actual notice.

The Nikwei case occurred in the US courts with service being made under the provisions of the OK long arm statute. The court (page 944) noted "In Oklahoma, the object of the state notice statutes is to provide a method of notification which 'is reasonably calculated to give [the defendant] knowledge at a meaningful time and in a meaningful manner of the attempted exercise of jurisdiction and an opportunity to be heard. No rigid formula exists as to the kind of notice that must be sent; the notice requirement will necessarily vary with the circumstances and condition.'"

17

While the court upheld the delivery of notice, there were several other key issues present in Nikwei which made this determination possible. The defendant's actions involved clear evidence of oppressive, malicious, fraudulent and wanton acts against the out of country plaintiffs, as well as blatant acts to hide and conceal defendant's whereabouts in order to avoid service. The fraud found as fact by the court was clearly paramount in the court's decision (item 6, page 939; conclusion, page 946).

The defendant was caught in lies and deceptions to the court. For example, he lied about being away from home when the service by certified mail was made. From the court's findings, it appears that the court's decision was heavily influenced by the fraud and lies and the defendant's flagrant and outright efforts to avoid service of process in many instances over a period time.

Interestingly, this case has some similarities with 96-1320 in that Bisom/Sorensen were also caught in acts of malicious prosecution, fraud, deception, etc as discussed above. Based on the Nikwei case, the fraudulent acts by Bisom/Sorensen should be sufficient grounds to deny plaintiff's appeal and the award of a judgment

Finally, it should be noted that Oklahoma adopted the UIIPA. Thus, OK statute (12 O.S. 1971 Section 1702.01(b)) states; "When service is made by mail, proof of service shall include receipt signed by the addressee or other evidence of delivery to the addressee satisfactory to the court." This liberal provision from the UIIPA opens the door for the court to use much discretion in its case review. So the issue of service devolved to providing evidence of "delivery" of the notice to the satisfaction of the

court.

Thus, it became discretionary for the court to decide if notice was given. Based on the several issues involved (fraud, lies, deception, etc), the court found (page 945) that indeed service on the defendant or his wife was successful per the OK law.

The Patel case was a SC state case involving the SC long arm statutes. This case also involved fraudulent representations. As was true with the other cases cited above, the SC law only required that evidence show delivery of the actual notice to the defendant to the satisfaction of the court (para 3[1], page 643). The court found that the needed notice was delivered.

The last case, Polargrid, was filed in US court in NY. Service was made on an out of country defendant corporation per rule 4(f)(2)(C)(ii) which was made by the Clerk of Court via Federal Express which is considerably different from a mailing made by the plaintiff or his attorney in a case. The difference should be seen at once. Many people and their lawyers (like in the Bisom case) might be prone to submit fraudulent service documentation whereas the clerk is presumed to be more honest and upright in a mailing.

Obviously, before the postal tracking services since 2004, US mail services offered enormous opportunities for mail fraud and even certified mail was not totally reliable (as the US Congress foresaw--v, 4, p. 56, Wright & Miller, 1987 ed). Actually, this problem Congress foresaw is exactly what occurred in CNMI case 96-1320 when Bisom/Sorensen misappropriated post office forms and prepared fraudulent certified mail receipts to show service on Bradshaw when the service never happened (as described above). When you are dealing with crooks, it is very easy to prepare postal



EXH AA

documents to reflect anything one may desire.

Besides the Clerk of Court mailing in Polargrid, the plaintiff also sent process by Federal Express. The mailings by the Clerk and plaintiff were both received and signed for. The issue then before the court devolved to whether Federal Express service was the same as mail service. The court found that the Federal Express service complied with the law.

Finally, it must be noted that per rule 4(f)(3), the federal courts have much authority to establish how service can be made to a foreign resident. Some US Courts have allowed mailings by ordinary first class mail only without any need for a signed return receipt (Levin v. Ruby Trading Corp. D.C.N.Y. 1965 F. Supp, 537).

Importantly, under nonresident motorist laws, where service is made on the Secretary of State of some other official as agent for defendant, with only a mailing of a notice to the defendant, there have been cases where the courts have ruled the notice sufficient even though the defendant refused to accept the certified mailing. In domestic disputes, like divorce, etc, it appears that the courts are also allowed some discretion on deciding if service is made.

But under most other long arm statutes, without the provisions of service being made on the Secretary of State or other official as defendant's agent, and even with the great latitude allowed the courts with their discretion to determine the validity of delivery of the notice, cases are rare where the courts have ruled that the defendant had to have accepted certified mail or be found in a served situation.

The reason for this rarity is because the US courts prefer that cases be tried on their merits and not decided by default judgments. Yet, Judge Castro has shown no

hesitancy in issuing default judgments. Nikwei and Patel are two of the rare cases.

So court discretion on service is limited in some states. For certain, actual notice in the absence of following the law means absolutely nothing. Therefore, whether notice ever came to Bradshaw or not means nothing if Bisom failed to follow the law. Simply stated, Bisom did not obey the law on service. Therefore any alleged notice means nothing and is irrelevant as will be proven below.

B. The CNMI Situation:

This backdrop takes one to the CNMI long arm statute in 7 CMC 1102-1104. This law is totally different from all of the ones discussed above. Beyond being long arm statutes and allowing certified mail service, they have virtually nothing in common with the seven cases cited by Bisom.

First, the CNMI law has no recognition of the roles of a secretary of state who becomes the statutory agent to receive process for the defendant or for the Clerk of Court or Sheriff to mail the process.

Though there is mention of serving the AG, the reason for this service is not stated or clarified. In fact, a reading of this statute leads one to believe that service on the AG is to be made after service on the defendant. In any case, the AG does not become the statutory agent for the delivery of process on the defendant, nor is authority granted to the AG to mail the process to the defendant.

Second, Section 1102(e) notes that the Legislature intended that jurisdiction be coextensive with the minimum standards of due process as determined by the US Federal Courts. In the federal courts, mail service is out of the question except by using a signed waiver and/or the mailings by the Clerk of Court to foreign countries, as

noted above in Polargrid. Judge Lizama's order cites this reality and the fact that the CNMI courts interpret it that way (p. 11).

In the federal rules, actual notice does not substitute for proper service of process, per the rules. While by some state laws actual notice is sufficient for long arm statutes, this is not the case with the Federal rules and laws. For due process to occur, it takes an actual service of process to a defendant.

For example, in Bradshaw v. CNMI et. al. (US District Court Idaho 5-84), defendants Sorensen and Bisom received notice of service of process. Yet both objected to it in their motion to dismiss on July 7, 2005 on the premise that "Knowledge does not constitute service... Actual notice does not substitute for proper service of process, otherwise it would be nonsensical for the Federal Rules of Civil Procedure to provide for a motion to dismiss based on insufficiency of service of process (Dahl v. Kanawha Inv. Holding Co.," 161 F.R.D. 673-686, N.D. Iowa 1995) (hereafter Dahl, Appendum, p. A26).

Dahl is particularly relevant because it involved a case where actual notice was delivered by certified mail where the defendant signed the return receipt but did not return the waiver. Thus the court found that actual notice does not dispense with proper service (item 7, p. 673).

Also, other US courts have found that actual notice as opposed to proper service per the rules is irrelevant --for example: LSJ Investment Co. v. O.L.D. Inc., C.A. 6th, 1999, 167 F 3d 320-325 (hereafter LSJ, at Appendum, p. A40]; and Schnabel v. Wells, C.A. 11th, 1991, 922 F 2d 726-729 [hereafter Schnabel, at Appendum, p. A46]).

In Schnabel, the return receipt of a certified letter was signed and returned to



Exh. B

the Court  The Court found that "If defendant receives mail service, but chooses not to respond, plaintiff must effect personal service, and defendant's actual notice does not eliminate personal service requirements" (item 1, p. 726).  Also, the Court added (item 4, p. 726) that Summons and complaint served on defendant by certified mail, return receipt requested, was not proper service..."

In LSJ, the plaintiff served three defendants by certified mail, return receipt under Ohio law.  Two defendants signed the return receipts while the third defendant's mailing was undelivered by the Post office.  The plaintiff then mailed the third defendant's process by ordinary first class mail.  While notice was given, it did not conform to the rules.

There is another important point in the Federal rules.  Under the Federal rules, it is erroneous to believe "that service could be effected by mail without the affirmative cooperation of the defendant" (v. 4, p. 9, 2000 ed, Wright & Miller")).  Thus, mail service per the Federal courts is limited to proper service as stated in the rules and is totally dependent upon the cooperation of the defendant.

Manifestly, the alleged service by Bisom on Bradshaw in 96-1320 did not conform to the Federal rules for due process.  Therefore, Bisom's efforts were contrary to 7 CMC 1102(e).  Bradshaw was never given his due process rights under the US Constitution.  The Feb 2000 judgment was clearly void.

Of next importance and number three, Section 1104(a) provides "that notice of the service and a copy of the summons and of the complaint are served upon the defendant personally by any person authorized to serve process."  This wording is clear enough that the service must involve more than just the notice (which could have

Ex #, A

been delivered by a certified letter if that was the only need). For due process, service must include both the summons and the complaint which includes the several items outlined above from Wright & Miller.

Fourth, 1104(a) says nothing about satisfaction of the court and nothing to allow a court's discretion on what constitutes service in terms of a certified mailing, return receipt.

Actually, for a certified mailing per 1104(a), the plaintiff must file a affidavit with the Clerk of Court showing that the summons and complaint "were served or sent by certified or registered mail.... the return receipt signed by the defendant shall be filed with the affidavit. The service shall be deemed complete upon delivery of the required papers to the defendant outside the Commonwealth, personally or by mail as provided." Note the words "return receipt signed by the defendant shall be filed." This leaves no option on service, short of a signed return receipt.

The CNMI law does not allow any discretion in the service of process by mail or in the documents which must be filed with the Clerk of Court upon completion of service. It is all fixed by law.

Fifth, Section 1104(b) provides a statutory statement of the available remedy to the plaintiff if service by mail cannot be properly effected under 1104(a). The law clearly says that if service cannot be made by mail, obviously by any means of mail falling short of getting the required return receipt signed and returned, then the court can order service by publication.

Certainly, virtually everything about the CNMI law is totally different from the laws in the cases cited by Bisom in his brief. They have virtually nothing in common.



ExHBA B

They are different and cannot be joined together as Bisom has done.

To whatever extent Judge Castro thought he could unilaterally and arbitrarily decide whether service was made or not, he clearly could not decide things beyond the clear and unambiguous statements of the CNMI law. The law is not confusing; though Bisom and the Feb 2000 trial court created confusion in trying to interpret things into the law which simply are not present.

Bisom's brief (page 19) devotes much of a page to prove that Bradshaw avoided service by quoting from Bradshaw's privileged letter to the AG on Jul 14, 1999. Judge Castro, per his order, made the same assertion.

But the point missed by both Judge Castro and Bisom is that this letter was not admitted into evidence. Therefore, it is totally and completely irrelevant for the trial in 2000 and the decisions issued by Judge Castro. True, it was the only evidence before the court as to what happened, but it was not admitted into evidence and thus could not have any role whatsoever in the court's decision.

When Bradshaw filed his void motion in 2005, he quoted this letter and authenticated its propriety. But this reality cannot change or alter what the trial court said and did in Feb 2000. Judge Castro had already settled the irrelevant status of the letter for the trial in Feb 2000 when he refused to allow it into evidence. Thus, the letter means nothing in terms of the decisions of Judge Castro. The attempts of Bisom to justify the Judge's decision on the basis of a non admitted letter is utterly ridiculous.

As for as the letter, Bradshaw acknowledges that two large envelopes came without the name of the mailers. Bradshaw had seen this type of unidentified mailings before from Bisom/Sorensen. So he suspected at once that they were from Sorensen



25



and so notified the AG who was supposed to be Bradshaw's lawyer.  Postal Clerk Vanderholm also acknowledged the same two unidentified mailings as the court can determine with a reading of Mr Vanderholm's affidavit.  Mr Vanderholm supports Bradshaw's statements and not those of Bisom as his brief attempts to convey.

The issue here is that neither plaintiff Bisom or Judge Castro in the court in Feb 2000 bothered to follow the CNMI laws and rules.  Manifestly, they certainly did not obey 7 CMC 1102-1104.  They made up their own rules and practices as they went along to violate Bradshaw's due process rights under the US Constitution (rights which they were expressly not allowed to violate in 7 CMC 1102(e) as discussed above).

Though Judge Lizama did correctly discern the fraud from Bisom/Sorensen and the fact that their alleged service was invalid per WA law, it must be noted that the court's statement about Bradshaw avoiding service was predicated upon privileged correspondence from Bradshaw to the AG.

With the exception of Bradshaw's letter of Jul 14, 1999, none of this Bradshaw correspondence was ever before the Judge Castro trial court in Feb 2000.  The only letter that was before the court, the Jul 14, 1999 letter, was never admitted into evidence.

Therefore whatever the Jul 14 letter said or purported to say was in reality totally irrelevant and of no bearing on the actions of Judge Castro to make his statement about avoiding service or of whatever findings the later Judge Lizama court may have stated in its order on avoiding service (p. 19 of the Bisom brief).  The truth from the record is manifestly clear that Bradshaw certainly never avoided legal service and



EXH B

proper service by law

As Judge Lizama reported in his order (p.10), "It is irrelevant whether Bradshaw purposefully avoided a form of service that was impermissible. There is no evidence that Bradshaw avoided the legal forms of service." In Judge Lizama's order, this issue of avoiding service came up only because Bradshaw was candid, frank and truthful and hid nothing from the Lizama court; and willingly supplied the court his privileged correspondence with the AG. This openness is not what one finds with the fraudulent actions of Bisom/Sorensen found in case 96-1320.

None of Bradshaw's letters to the AG were even before the Judge Castro court in 2000, besides the letter of Jul 14, 1999 (and it was not admitted into evidence). Therefore, what Bradshaw wrote the AG is totally irrelevant and of no bearing on this case during its trial in Feb 2000. None of Bradshaw's letters to the AG could have been legally used by Judge Castro for his decision. They simply weren't present in the court action in 2000.

Bradshaw knew about the court action in Saipan only because the AG notified him of it in a privileged letter and not because he was ever properly served and notified by the plaintiff, the court or CNMI law and rules. Therefore no notice was ever present or given to Bradshaw by the plaintiff or court.

Bradshaw was never under any compulsion or obligation to report his address changes to Bisom; nor was Bradshaw obligated to accept mail from Bisom, whether it was identified or not. Bisom and the CNMI Courts had no jurisdiction over Bradshaw until and unless proper service of summons and complaint were made on Bradshaw as provided by CNMI law/court rules. Proper service was never made.



27

ExH AA

As a minimum, per both WA and US court rules, a defendant is under no obligation to accommodate a process server. The Revised Code of Washington (4.28.80) has a case note which reads: "Failing to come to door to receive service of process does not constitute evasion of service; those who are to be served with process are under no obligation to arrange time and place for service or to otherwise accommodate process server. Weiss v. Glemp, 127 Wash. 2d 726, 903 P 2d 455 (1995)."

Obviously, the same reasoning applies to certified mail. No one in the state of Washington has to accept it or be found avoiding service. The US rules also recognize a need for cooperation from a defendant for the use of mail service, as cited above.

While the seven cases cited above by Bisom are far removed from 96-1320 (except for the presence of fraud in a couple of them as is true with the Bisom case), it is interesting that one Federal case in 2001 had several features similar to the Bisom case. It is Harper MacLeod Solicitors v. Keaty 260 F 3d 389-400 (5th Cir, 2001)) (hereafter Harper).

In Harper the plaintiff sued two persons and a law partnership located in Louisiana in Federal court in Texas. Plaintiff served process per the TX out of state long arm statutes. Per the law, he served the summons and complaint on the Texas Secretary of State with the believed addresses of the three parties. The TX Secretary of State served the process on all three defendants by certified mail, return receipt.

All three defendants received the process, signed the return receipts and returned them to the Secretary of State who in turn notified the plaintiff that his process



28

ExH. B
pia

had been properly served. But the defendants, all lawyers, did not answer the complaint. The US court in Texas made a default judgment in favor of the plaintiff. The TX order said that the court had personal jurisdiction on the out of state defendants and that the defendants had been properly served with summons and complaint.

When the plaintiff tried to collect the judgment in LA, the defendants filed action in LA Federal court to have the default voided under rule 60(b) because of alleged defective service of process.

Per the defendants, the TX long arm law specifically stated that service by the Secretary of State was to be made to defendants' home or home office address. As it turned out the addresses furnished the Secretary of State had some problems despite delivery of process and notice to the defendants who signed the postal return receipts.

The address given for the law partnership was a former address and the personal addresses of the two other defendants had a typographical error in their suite number. Yet, delivery of the notices/process was otherwise properly made and the three defendants all received actual notice of the lawsuit; though they chose to completely ignore the notice and not even answer the complaint.

The US Court in LA found that under the TX long arm statutes, the errors were sufficient to cause the default action to be voided. The decision was appealed to the 5th Cir which upheld the LA findings.

This case (at Addendum, p. A50) offered several major findings of real relevance to the Bisom case at hand. For example (in item 2), the US court said:

> Distract Court must set aside a default judgment as void if it determines that it lacked personal jurisdiction over the defendant because of



29

$EX^{1/4}AA^{18}$

defective service of process.

Actually, this is the precise situation in the Bisom case. Whatever delivery of process there was, it was defective, at least in terms of the fraudulent documents which Bisom alleged that he served on Bradshaw. Otherwise, the decision of Judge Castro on avoiding service totally lacked any semblance of law, fact and truth and was therefore void. Per the Federal rules, Bradshaw never came under the personal jurisdiction of the Judge Castro court.

In Item 3, the Federal court offered a most fascinating conclusion, viz:

> Defendants need not appear in a federal court without authority to exercise personal jurisdiction over them to raise a jurisdictional defect; defendants are always free to ignore judicial proceedings, risk a default judgment, then challenge that judgment on jurisdictional grounds in a collateral proceeding.

This is almost what happened with Bradshaw in the Bisom case. As it turned out Bradshaw was in a state of ignorance of the trial and default judgment until the year 2004, when he tried to get the AG to take some action to correct the mess made by the AG, Bisom and the Feb 2000 Trial Court. Regardless, per the Federal rules, Bradshaw had no compulsion to appear before the time he did to challenge the default judgment which was made by the Feb 2000 trial court since Judge Castro lacked both personal and subject matter jurisdiction and denied Bradshaw an opportunity to challenge jurisdiction.

In item 10, the court found:

> In diversity actions, the law of the forum state, subject to the constitutional limits imposed by the Due Process Clause, controls the ability of a district court to exercise personal jurisdiction over nonresident defendants.

In item 11, the court noted:



30

Exhbt

The requirement that a court have jurisdiction over the person before rendering judgment is rooted in due process and is a basic requirement that must be satisfied before a valid judgment can be had or enforced.

Item 12 is very relevant as it fits the Feb 2000 trial court precisely-- as follows:

If the rendering court did not have jurisdiction, its judgment is invalid.

Item 14 assesses the TX long arm laws, viz:

Texas courts have consistently required strict compliance with the terms of the Texas long arm statute, and actual notice to a defendant, without proper service, is not sufficient to convey upon the court jurisdiction to render default judgment against the defendant.

Item 15 adds:

Substitute service on the Texas Secretary of State was defective under the Texas long arm statute with respect to each nonresident defendant... and that the defendants may have had actual notice of service was of no consequence.

Paragraph (15) discussion on page 399 noted:

the Texas Supreme Court has expressly rejected an actual notice exception to strict compliance with the terms of the long arm statute.

The point of the above findings from the US Court, which assessed the TX long arm law in terms of out of state defendants, is that both the Federal and TX state laws found that actual notice could never take the place of proper service of process. Without proper service of process, as provided by law, the court lacks personal jurisdiction over a defendant.  Such a defendant is under no compulsion to even acknowledge the court proceedings when service of process is not properly accomplished.

Since the CNMI 7 CMC 1102(e) law places the CNMI law into a posture of compatibility with the federal rules for due process, it is manifest that the CNMI court actions under Judge Castro completely violated the CNMI laws/rules and violated

Bradshaw's due process rights under the US Constitution.

In the Bisom case, the AG informed Bradshaw of the filing of the suit; but never anything about the trial or default judgment. Regardless, this notification of the suit from Bradshaw's own lawyer, the AG, certainly did not constitute a legal notice of anything.

The CNMI laws and rules on service outline precisely the procedure of how a summons and complaint is to be served. There is nothing in those laws/rules that say anything about a person's own lawyer being allowed to give notice. Bradshaw was sued in his official capacity by Bisom for the complaint and the 1st and 2d amended complaints. The AG was Bradshaw's lawyer by the CNMI Constitution and statutory law on the duties of the AG. While the AG abandoned its fiduciary duty of being Bradshaw's lawyer before the trial, it did not alter reality.

Legal, proper service of process was never attempted on Bradshaw by plaintiff or the court. CNMI long arm laws at 7 CMC 1102-1104 were never complied with in respect to Bradshaw and the alleged service on him.

Certainly, the Bisom submitted fraudulent return postal receipts had no propriety in granting the CNMI trial court jurisdiction over Bradshaw. As far as Judge Castro and his making of a wrong and unjustified decision on Bradshaw avoiding service, the judge simply had no power or discretion under the statute or rules to make such a decision. The law was plain and clear of exactly what could be done to effect service and a statement of precisely what action could be taken when proper service by return receipt could not be made. Judge Castro did not follow the law.

While the Feb 2000 trial court can flippantly and incompetently argue that actual

[80]

32



notice of the suit was given Bradshaw (as it turned out by his AG lawyer and not legally by the plaintiff or court), this actual notice means nothing in the absence of proper service of process per the CNMI laws and rules.

As a minimum, Bisom's presentation of his seven irrelevant cases in his brief to supposedly prove service on Bradshaw is a frivolous effort which interferes in the operation of justice in this court. The relevant laws in these cases are totally different than the CNMI laws/rules.

Surely the plaintiff's lawyer must have understood the law on the seven cases he presented in his appeal. He must have known that they were irrelevant and a waste of time to address by the court. Yet, he proceeded with them, apparently believing that this court is incompetent and stupid and would never read the cases or check the applicable laws. Thus, did the plaintiff try to deceive and once more pull the wool over the eyes of a CNMI court to obtain a judgment that he was not entitled to by law?

BISOM'S ISSUE IV. DEFENDANT WAIVED ANY DEFECT OF SERVICE BY

APPEARING THROUGH COUNSEL AND BY FAILING TO CHALLENGE

SUFFICIENCY OF PROCESS

There is no dispute that the AG accepted service for Bradshaw and filed motions in Bradshaw's name before the trial of Feb 2000. However, the Declaration of L. David Sosebee (Bisom's ER, p. 29), filed on Feb 3, 2000 was a declaration to the court that the AG's Office "does not represent defendant Bradshaw." Yet, Judge Castro found that the AG was Bradshaw's lawyer (ibid, p. 42).

While Judge Castro was certainly confused and did not understood what was



33

Ex H3A B

before him, the Supreme Court in its review of 2000-016, 2000-023 (Consolidated) took note that the AG did not represent Bradshaw at the trial. Therefore, the AG had no power to waive anything in terms of Bradshaw. Judge Castro's Order of Feb 22, 2000 was thus wrong. In fact, it was wrong in almost all aspects.

Though the Supreme Court chose to not criticize Judge Castro, the court did not show any charity to the AG's office in the 2002 appeal. The court repeatedly found the AG's office guilty of repeated mistakes (plural), an alleged conflict of interest and violation of bar association ethic rules.

### BISOM'S ISSUE V. THE ISSUES HAVING ALREADY BEEN HEARD AND DETERMINED, THE LAW OF THE CASE DOCTRINE APPLIES TO PREVENT GRANTING THIS MOTION

True, Judge Castro heard the case in Feb 2000. But it was far from being determined at that time. There was two appeals filed in 2002. In 2005, the rule 60(b) hearing happened. Now in 2006, that hearing is under appeal.

Finally, many of the related issues on the fraud and corruption by the alleged thieves and crooks Bisom/Sorensen are now in Federal Court (case 05-0027) with a plea that Bisom/Sorensen be required to refund the $140,000 that was illegally collected from the CNMI through fraud and the incompetence and bias of the trial court in Feb 2000.

### CONCLUSION

Plaintiff has come into court in bad faith and with dirty hands for this appeal. He is trying to make the court rule that he has clean hands when his hands are dirty. With





dirty hands, the equitable principle cannot be applied to his appeal.

The Third Judicial District Court Internet site's (www.the3rdjudicialdistrict.com) Glossary of Legal Terms defines the "clean hands doctrine" as "Under this doctrine, equity will not grant relief to a party, who, as an actor, seeks to set judicial machinery in motion and obtain some remedy, if such party in prior conduct has violated conscience or good faith or other equitable principle" Franklin v. Franklin, 365 Mo. 442, 283 S.W. 2d 483, 486.

Bisom with his dirty hands has brought up an array of material which is irrelevant and frivolous to the propriety of Judge Lizama's decision. Yet, he expects the court to use this irrelevant and frivolous material to clean up his dirty hands and bad faith and now award him a judgment which he legally is not entitled to have.

In this case, the damaged defendant has spent much money, time and effort on this case and its appeal. The defendant is entitled to sanctions.

Pér Supreme Court rule 38 the court can award just damages and sanctions up to double the costs to the appellee if the court finds that the appeal is frivolous. With costs of $7,500 to defendant, the sanctions can be up to $15,000. Manifestly, the Bisom appeal is frivolous, unreasonable and without foundation.

If the court cannot impose sanctions on the basis of the frivolous and unreasonable filing by Bisom, defendant asks the court to award sanctions on the basis of its disciplinary power over attorneys before it in their roles as officers of the court. Judges have authority to award sanctions in equity as a remedy to the damaged party.

Otherwise, per Supreme Court rules 28(m) and 39, defendant will seek costs



35

and attorney fees if this case is dismissed or found against plaintiff as allowed in Commonwealth rules of civil procedure 11 and others and of the Supreme Court rules.

The plaintiff's appeal should be denied.  He has presented nothing in the way of evidence which justifies the Feb 2000 trial court's findings.  Nor has plaintiff presented any evidence that the primary findings by Judge Lizama on improper service was in error.

With the obvious and undeniable presence of fraud and deception on the trial court in Feb 2000 by Bisom/Sorensen, it would seem unthinkable that the appeals court will now reverse Judge Lizama's decision and once more reward Bisom/Sorensen with an illegal judgment that they never earned in the first place. Defendant Bradshaw asks the court to uphold and affirm the decision of Judge Lizama that Bradshaw was not properly served in case 96-1320.

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief.  Dated this _____20th_____ day of June 2006 at Calder, Idaho.

_____Robert D. Bradshaw_____

Robert D. Bradshaw, Defendant, Pro Se

## CERTIFICATE  OF  SERVICE

I HEREBY CERTIFY that on the _____20th_____ day of June 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Kristin St Peter, Asst AG, Caller Box 10007, Capitol Hill, Saipan, MP 96950

_____Robert D. Bradshaw_____

Robert D. Bradshaw, Defendant, Pro Se

[84]

Exh B

36