

4-14-06

The CNMI Attorney General
Caller Box 10007
Capitol Hill
Saipan, MP 96950

Gentlemen:

In previous discussion with Ms St Peter and Mr Livingston of your office, I have been led to believe that you will defend both me and the actions of the CNMI Superior Court in its void order on Dec 29, 2006 in case 96-1320. It was my understanding that the CNMI AG had an obligation to provide this defense.   Clearly, there seems to be no conflict of interest in such litigation as the CNMI and me are certainly together on this appeal issue.

In the Transmittal Form from the Superior Court Clerk of Court for Supreme Court case 06-0005 GA, Mr Livingston is shown as counsel for Appellee.

As this case may be proceeding soon, the purpose of this letter is to confirm that your office will provide this defense.  For my protection, I need this confirmation in writing.  Alternatively, I may have to plan on making this defense, depending upon what the appellant may actually appeal.  Of course, right now, I don't know what will be specifically appealed.  Possibly the appeal will address an alleged error of the court or something else not directly affecting the facts and law in the case.

May I please hear from you in writing on your position of this?  If you need a formal request from me on this defense, please consider this letter as constituting a formal request for AG assistance on this appeal and indemnification for any losses incurred.

Yours very truly,


Robert D. Bradshaw
PO Box 473
Calder, ID 83808
Phone   208-245-1691

Exhibit
BB



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950

**Civil Division**
Tel: (670) 664-2341/42
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/67/68
Fax: (670) 234-7016

**Investigative Unit**
Tel: (670) 664-2310/12
Fax: (670) 664-2319

**Division of Immigration**

**Saipan**
Tel: (670) 236-0922/23
Fax: (670) 664-3190

**Rota**
Tel: (670) 532-9436
Fax: (670) 532-3190

**Tinian**
Tel: (670) 433-3712
Fax: (670) 433-3730

**Domestic Violence Intervention Center**
Tel: (670) 664-4583/4
Fax: (670) 234-4589

April 26, 2006

Mr. Robert D. Bradshaw
P.O. Box 473
Calder, ID 83803

Dear Mr. Bradshaw:

Thank you for your letter of April 14, 2006, seeking confirmation that our office will provide you with legal representation in Supreme Court Case No. 06-005 GA.

The Superior Court's Transmittal Form naming Mr. Livingstone as counsel of record for Appellee was in error.

In a letter to you dated February 15, 2005, then-Attorney General Pamela Brown indicated this office is not in a position to represent you. A copy of the letter is enclosed for your reference. We continue to maintain that position.

Sincerely,

*Gregory Baka*

GREGORY BAKA
Acting Attorney General

*Exhibit*

*CC*




Commonwealth of the Northern Mariana Islands
**Office of the Attorney General**
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950

**Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366
Fax: (670) 234-7016

July 17, 2006

**ORIGINAL VIA MAIL DELIVERY**

Mr. Robert D. Bradshaw
P.O. Box 473
Calder, ID 83808

Re: *Bradshaw v. CNMI, et al*, U.S. District Court Case No. 05-0027

Dear Mr. Bradshaw:

I am writing in response to your letter dated July 2, 2006, which I received on July 14, 2006. I will certainly pass your settlement offer along to the Attorney General and the Public Auditor's Office. With our Motion to Dismiss pending, however, your August 2, 2006 deadline may be unrealistic.

As for the rest of your letter, many of the assertions made in your letter are factually incorrect. Moreover, it is inappropriate for me to discuss Attorney General's litigation strategy regarding this matter with you.

My clients' position continues to be that the Attorney General's Office never represented you, nor was it under any obligation to do so, in the Superior Court matter which resulted in a default judgment against you, later set aside by Judge Lizama. Your complaint describes in great detail allegations of "gross incompetence" and wrong doing, and it is your burden to prove these allegations. The U.S. District Court will decide if your claims have merit. I see no need to rehash these allegations in our communications.

Very Truly Yours,

Kristin D. St. Peter
Assistant Attorney General

Cc:    Mathew Gregory, Attorney General
        Nancy Gottfried, Counsel OPA

Exhibit
DD

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM,　　　　　　　　) 　CIVIL CASE NO. 96-1320

　　　　　　Plaintiff,　　　　　　)

　　　　vs.　　　　　　　　　　　)

　　　　　　　　　　　　　　　　　)　**GENERAL VERDICT WITH**
COMMONWEALTH OF THE　　　　　　 )　**SPECIAL FINDINGS RE**
NORTHERN MARIANA ISLANDS,　　　)　**DEFENDANT CNMI GOVERNMENT**
LEO L. LAMOTTE, CNMI Public　　)
Auditor, in his official capacity,　)
ROBERT D. BRADSHAW, formerly　)
appointed Temporary Public Auditor,　)
in his individual capacity;　　　　)
SCOTT KHENG SHANG TAN,　　　)
formerly CNMI Public Auditor,　　)
in his individual capacity,　　　　)

　　　　　　Defendants.　　　　　)

We, the jury in the above entitled action, find as follows:

1.  On the Claim for Breach of Contract:

FOR PLAINTIFF _____X_____　　FOR DEFENDANT _____

2.  On the Claim for Wrongful Termination:

FOR PLAINTIFF _____X_____　　FOR DEFENDANT _____

3.  On the Claim for Promissory Estoppel:

FOR PLAINTIFF _____　　FOR DEFENDANT _____X_____

If you have found in favor of plaintiff on any of the above claims, then answer the questions that apply below.

1

*Exhibit*
*EE*

4. What is the total amount of damages for Breach of Contract?

Answer: $ _100,000. $^{00}$_

5. What is the total amount of damages for Wrongful Termination?

Answer: $ _10,300. $^{00}$_

6. What is the total amount of damages for Promissory Estoppel?

Answer: $_____

Plaintiff may not recover for the same damages more than once as to each defendant. Therefore, if any element of damage is duplicated in any of the dollar amounts above, then you must reconcile these figures by adjusting for that duplication for purposes of the next question. If there is no duplication, you may just add the dollar figures above together to answer the next question.

7. What is the total amount of damages against defendant CNMI government?

Answer: $ _110,300. $^{00}$_

Dated: _Feb. 25, 2600_          _____
                                Foreperson

2

EXHIBIT
EE

**IN THE SUPERIOR COURT**

**OF THE**

**COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ROBERT A BISOM, ) | CIVIL ACTION NO. 96-1320 |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| ) | |
| COMMONWEALTH OF THE ) | |
| NORTHERN MARIANA ISLANDS, ) | **DECISION AND ORDER** |
| LEO L. LAMOTTE, CNMI Public Auditor, ) | |
| in his official capacity, ROBERT D. ) | |
| BRADSHAW, formerly appointed ) | |
| Temporary Public Auditor, in his <u>individual</u> ) | |
| capacity, SCOTT KHENG SHANG TAN, ) | |
| formerly CNMI Public Auditor, in his ) | |
| <u>individual</u> capacity, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I. INTRODUCTION

THIS MATTER came before the court on March 30, 2000 on Plaintiff's Application for Attorney's Fees and Request for Indemnification Determinations pursuant to 7 CMC §2304(d). Jay Sorenson appeared on behalf of the plaintiff, Robert A. Bisom ("Bisom"). David Sosebee appeared on behalf of the defendants, the CNMI government ("CNMI") and Robert D. Bradshaw

("Bradshaw")(collectively the "Defendants"). The court heard counsels' oral arguments and took the matter under advisement.  The court now renders its decision.

## II. ISSUES

1. Whether 7 CMC § 2304 ("The Public Employee Legal Defense and Indemnification Act") requires Defendant, Robert D. Bradshaw, to submit a request to be indemnified before the court can make a determination of actual fraud, actual malice or willful criminal intent.

2. Whether Plaintiff, Robert A. Bisom, a prevailing party, is entitled to recover attorney's fees under 1 CMC § 8153 ("The Political Coercion Statute") where Bisom did not adequately identify the time spent on matters related to the political coercion claim.

## III. FACTUAL AND PROCEDURAL BACKGROUND

The issues before this court arose out of an action filed by Bisom against the CNMI, Public Auditor Leo L. Lamotte, and former Public Auditors Robert Bradshaw and Scott Tan.  After a jury trial, the jury rendered a general verdict with special findings.  On February 28, 2000, Bisom filed a petition, requesting the court to determine whether Bradshaw should be indemnified by the CNMI pursuant to the Public Employee Legal Defense and Indemnification Act, 7 CMC §§ 2301 et seq. Specifically, Bisom asked the court to determine whether Bradshaw acted within the scope of his employment and whether Bradshaw acted with actual fraud, actual malice or with willful criminal intent. (See Pl.'s Req. for Indemnification Determinations Pursuant to 7 CMC §2304(d), p. 1.)  On March 1, 2000, Bisom filed a second motion, asking the court to grant his application for attorney's fees for 415.1 hours, which his counsel incurred in litigating this action.

On March 9, 2000, Defendants filed an objection to Bisom's request for indemnification determinations on the basis that Bradshaw never requested to be indemnified by the CNMI. Defendants also argue that Bisom's application for attorney's fees should be denied on the grounds that the total amount of hours identified in the application does not reflect the actual hours attributed to the political coercion claim.  Specifically, Defendants challenge the billing of 91.6 hours, which they claim Bisom's attorney spent on matters unrelated to the political coercion claim.  They also question

-2-

EXHIBIT
FF

1 the accounting of 309.1 hours, which Bisom did not clearly identify as time spent on matters dealing

2 with the political coercion claim. On March 10, 2000, the court entered an order and judgment,

3 which included a judgment for Plaintiff against Bradshaw in the amount of $139,000.

## IV. ANALYSIS AND DISCUSSION

**A.    Indemnification**

7 CMC § 2304 reads as follows:

**Request for Defense; Payment of Defense, Settlement or Judgment; Implied Right of Indemnification; Findings Required.**

(a) *General Rule for Public Defense of an Action.* At the public entity's discretion, either a public entity shall pay for an employee's defense by an attorney accepted by the employee and the Attorney General or his designee, or the public entity shall defend the employee, and the public entity shall pay any settlement (to which the public entity has agreed) or any judgment if::

(1) The employee requests the public entity to pay for his defense or to defend him against any claim against him for an injury arising out of an act that he reasonably and in good faith believes has occurred within the scope of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2) The employee has not acted because of actual fraud, actual malice, or willful criminal misconduct;

(3) The employee reasonably cooperates in good faith in the defense of the claim; and

(4) The employee makes his request in writing to the public entity not less than five days before an answer must be filed; provided, that an employee against which a claim is pending on June 24, 1986, shall have 60 days within which to make his written request.

The acceptance of an attorney under this subsection (a) of this section shall not be unreasonably withheld by the Attorney General or his designee.

(b) *Public Entity's Implied Right of Indemnification.* If a request is made under subsection (a) of this section, and if there is a potential conflict of interest between the defense of the public entity and the employee, the employee shall be notified of the potential conflict of interest, and both parties may waive the potential conflict of interest. The public entity shall be deemed to have reserved the right to seek indemnification against the employee under subsection (a) of this section after settlement of or judgment upon any claim.

(c) *Public Entity's Right to Seek Indemnification Defined.* If a public entity pays any defense fees or any claim or judgment either itself or against any employee, for an injury arising out of an act of the employee, the public entity may recover from the employee the amount of its payment only if:

(1) The employee's liability did not arise out of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2) The employee acted because of actual fraud, actual malice, or willful criminal misconduct; or

- 3 -

*EXHIBIT*
*FF*

       (3) The employee willfully failed or refused to conduct the defense of the claim in good faith.

(d) *Findings of Fact Required.* Prior to the entry of judgment upon any claim coming under subsection (a) of this section, any party may request the court to determine if:

       (1) The employee has acted within the scope of his employment; and
       (2) The employee has acted because of actual fraud, actual malice, or willful criminal misconduct.

7 CMC § 2304. This section imposes a duty upon the defendant employee to request the public entity to defend him or her and within the 5 day time-limit provided for in subsection (a)(4).

     Bisom's request for findings of fact under 7 CMC § 2304(d) is futile. 7 CMC § 2304(d) is triggered by a proper request for indemnification, pursuant to 7 CMC § 2304(a), which must be submitted by the defendant employee to the public entity in which he or she works. Without such a request, a finding of actual fraud, actual malice or willful criminal misconduct would not be appropriate.

     The court finds no evidence that Bradshaw made a request to the public entity to be indemnified pursuant to 7 CMC § 2304(a). Therefore, Bisom's request for indemnification determinations pursuant to 7 CMC § 2304(d) is hereby **DENIED.**

## B.    Attorney's Fees

     At the close of Bisom's trial, the jury found in his favor on the political coercion claim. A person who prevails in his or her claim of political coercion may recover from the perpetrator of the political coercion attorney's fees incurred in matters related to the prosecution of such claim. 1 CMC § 8153. Initially, Bisom sought this court's approval for its application for attorney's fees in the amount of $83,020.00, which is based on a total of 415.1 hours incurred at a rate of $200.00 per hour. The Defendants objected to Bisom's calculations for attorney's fees and moved the court to require Bisom to resubmit his application in more detail and only as to those hours spent litigating the political coercion claim. Bisom responded by stating the difficulty in dividing the hours spent on every claim based on the fact that they all involved the same set of facts and related legal theories. To support his argument, Bisom cited *Hensley v. Eckerhart*, 461 U.S. 424, 103 S.Ct. 1933 (1983), for the proposition that the court, in determining reasonable attorney's fees in an action involving both successful and unsuccessful claims, should focus on the significance of the overall relief obtained in

-4-

*EXHIBIT*
*FF*

1    relation to the hours reasonably expended on the litigation. *Id.*, 461 U.S. at 435, 103 S.Ct. at 1940.

2    However, at the hearing held on March 30, 2000, Bisom agreed to accept, in satisfaction of his fees,

3    50% of his original request.

## 1. The Methodology

5    In *Hensley*, the Supreme Court addressed the issue of whether a partially prevailing plaintiff

6    may recover attorney's fees for legal services incurred in litigating unsuccessful claims. The Court, in

7    its analysis, began by deriving a "lodestar" figure, which is essentially the result of the hours plaintiff's

8    counsel reasonably spent on the litigation multiplied by a reasonably hourly rate. *Hensley*, 461 U.S.

9    at 433, 103 S.Ct. at 1939. The burden is on the prevailing party to show the reasonableness of the

10   hours claimed. *Id.* The court may then reduce this figure accordingly where the documentation of

11   hours is inadequate or where the hours were not "reasonably expended". *Id.* This "lodestar" figure

12   may then be further adjusted upward or downward based on certain considerations, most importantly

13   whether the unsuccessful claims are related to the successful claims. *Schwarz v. Secretary of Health*

14   *and Human Services*, 73 F.3d 895,  901 (9th Cir.1995).

15   If the court finds that the unsuccessful claims are related to the successful claims, then the court

16   should evaluate the significance of the overall relief plaintiff obtained in relation to the hours reasonably

17   expended on the litigation. *Id.* at 901-902. If the successful and unsuccessful claims are unrelated,

18   then the unsuccessful claims should not be considered in any reasonable fee award. *Id.* at 901. The

19   court has discretion in deciding what is a reasonable fee and may attempt to identify specific hours that

20   should be eliminated or simply reduce the award to account for the limited success. *Hensely*, 461

21   U.S. at 436-437, 103 S.Ct. at 1941.

22   The court notes that the cases cited above dealt with attorneys' fees under the Civil Rights

23   Attorneys' Fees Award Act, which applies to prevailing parties in federal civil rights cases. The

24   statute, which is the basis for attorney's fees in Bisom's case, allows the recovery of attorney's fees

25   only as to the attorney's time spent in litigating the political coercion claim. The court is not aware of

26   any CNMI statute or case law that addresses the precise issues raised here. Thus, the court will apply

27   the methodology suggested in *Hensley* and its progenies in order to make a reasonable decision as

28   to attorney's fees in this case.

*EXHIBIT*

*FF*

### a. The "Loadstar" Figure

Applying the methodology, the court finds that Bisom's application for 415.1 hours is reasonable in light of the complexity of his case, the number of claims advanced, and the length of time the action was in litigation. The court also finds that Bisom's counsel's fee rate of $200 per hour is reasonable in light of his experience and because the rate is in line with those charged by other lawyers performing similar services in the community. Multiplying the 415.1 hours by the hourly rate of $200 amounts to $83,020.00. This represents the "lodestar" figure.

### b. Inadequate Records

Bisom's time records fail to properly document the subject matter indicating the nature of the time his counsel spent working on his case. Thus, the court finds appropriate a reduction of the "lodestar" figure by 15% or $12,453.00. This percentage is reasonably conservative compared to the lower court's ruling in *Hensley*, which was acknowledged by the U.S. Supreme Court as a proper reduction of one counsel's hours by 30% "to account for his inexperience and failure to keep contemporaneous records." *Hensley*, 461 U.S. at 438 n.13, 103 S.Ct. at 1942 n13. This reduction leaves $70,567.00 as the new "lodestar" figure.

### c. Unsuccessful Claims

Turning to the claims, the court begins its analysis by determining Bisom's success in litigating his case. Bisom originally brought nine claims against the Defendants, one of which was the quantum meruit claim against the CNMI that the parties settled out of court. Of the eight claims that were brought to trial, Bisom was unsuccessful in litigating three of them. He was not successful in his claim for promissory estoppel against the CNMI and Defendant Scott Tan ("Tan"), his claim for fraudulent misrepresentation against Defendant Tan, and his claim for indemnification against the CNMI. If these unsuccessful claims are unrelated to Bisom's successful claims, they should not be considered in assessing reasonable attorneys fees. Related claims are claims involving a common core of facts or that are based on related legal theories. *Thorne v. City of El Segundo,* 802 F.2d 1131, 1141 (9th Cir.1986). Unrelated claims are those that are distinctly different and are based on different facts and legal theories. *Id.* In determining what claims are related and unrelated, the test is "whether the relief

-6-

EXHIBIT
FF

1   sought on the unsuccessful claim 'is intended to remedy a course of conduct entirely distinct and

2   separate from the course of conduct that gave rise to the injury on which the relief granted is

3   premised.'" *Id.* (quoting *Mary Beth G. v. City of Chicago*, 723 F.2d 1263, 1279 (7th Cir.1983)).

4           In applying the test in *Thorne*, the court finds that the two unsuccessful claims against

5   Defendant Tan are unrelated to the successful claims in that the alleged course of conduct that gave

6   rise to the claims against Defendant Tan occured after Bisom's employment termination and are

7   therefore distinct. Furthermore, the claim for indemnification arose out of Bradshaw's conduct in filing

8   a complaint against Bisom with the CNMI Bar Association and not in relation to his employment

9   termination. Thus, the court finds it reasonable to reduce the adjusted "lodestar" figure by 37.5%[1],

10  which amounts to $26,462.63. This leaves $44,104.37 as the new "loadstar" figure.

11          **d. Successful Claims**

12          With respect to the remaining five claims, Bisom was successful in litigating the following:

13  (1) violations of Plaintiff Bisom's due process rights; (2) breach of contract; (3) wrongful termination;

14  (4) intentional infliction of emotional distress; and (5) political coercion. With respect to the claim for

15  violations of due process, Bisom sued both the CNMI and Bradshaw. The claims for breach of

16  contract and wrongful termination were against the CNMI only. And, the claims for intentional

17  infliction of emotional distress and political coercion were against Bradshaw only. All these claims

18  ultimately arose out of the single act of terminating Plaintiff Bisom from his employment. However,

19  only Bradshaw, in his individual capacity, was sued and found liable for political coercion. As such,

20  it is improper to consider the claims against the CNMI, for breach of contract and wrongful

21  termination, in assessing attorney's fees as authorized by the political coercion statute ( 1 CMC §

22  8153). Thus, the court finds it reasonable to further adjust the "lodestar" figure downward by 25%[2]

23  or $11,026.09. This leaves a remaining total of $33,078.28.

24

25  _____

26  [1] Because of the poor documentation of hours, the court will allocate equal time among the eight claims.
    Therefore, each claim will be allocated 12.5% of the time spent in the litigation. The 12.5% is derived by dividing 100%

27  by 8 claims.

28      [2]Id.

                                -7-                                    EXHIBIT
                                                                       FF

1    With respect to the remaining three claims, (1) violations of due process (by Bradshaw); (2)

2    intentional infliction of emotional distress; and (3) political coercion, the court finds them to be related

3    successful claims. The relief sought in these three cases, including the political coercion claim, was for

4    monetary damages against Bradshaw for his actions in improperly terminating Bisom's employment.

5    These actions arose from the same course of conduct and a common core of facts. Therefore, a

6    reasonable award of attorney's fees for political coercion involves consideration of the time spent

7    litigating these three remaining claims. Thus, the court finds the adjusted "lodestar" figure in the

8    amount of $33,078.28 to be a reasonable award of attorney's fees.

9    The court finds that the reduction in hours and the ultimate fee award are reasonable in light

10    of Bisom's counsel's vague documentation of hours, the scope of the fee recovery authorized by the

11    political coercion statute, and the level of success achieved against Bradshaw. The court finds support

12    in *Rural Water System v. City of Sioux*, 38 F.Supp.2d 1057 (1999), where the district court

13    reduced the prevailing party's request for attorney's fees based on what the court believed were hours

14    not reasonably expended or hours expended on unrelated claims. In *Rural Water System*, the court

15    made an across-the-board reduction of 20% for lack of success on state law claims where the claims

16    involved proof of facts distinct from those required to prove the federal claim. The court also made

17    an across-the-board reduction of 10% to account for the difference in the prevailing party's relief

18    requested and granted. Then, the court reduced another 10% for the many examples of excessive

19    billing indicated in counsel's application. The court, however, declined to make any reductions for

20    "block billing" because the prevailing party rectified its initial block billing inadequacy by providing

21    clearly itemized records of hours incurred. *Rural Water System, 38* F.Supp at 1064-66. Unlike the

22    prevailing party in *Rural Water System*, Bisom did not replace the time records he initially submitted

23    with a revised documentation clearly identifying the subject matter of his time expenditures.

24    As emphasized in both *Hensely* and *Schwarz*, the burden is on the applicant for attorney's

25    fees to provide the court with a record of hours that clearly identifies the basis or subject matter for

26    the expenditure. The court "[will] not view with sympathy any claim that a district court abused its

27    discretion in awarding unreasonably low attorney's fees in a suit in which [plaintiff was] only partially

28

- 8 -

*E X H I B I T*

*F F*

1  successful if counsel's records do not provide a proper basis for determining how much time was

2  spent on particular claims." *Hensley*, 461 U.S. at 437 n.12, 103 S.Ct. at 1941 n.12 (quoting *Nadeau*

3  *v. Helgemoe,* 581 F.2d 275, 279 (1ˢᵗ Cir.1987)).

4

5                              **V. CONCLUSION**

6           For the foregoing reasons, Bisom's request for determinations of actual fraud, actual malice

7  or willful criminal intent pursuant to 7 CMC § 2304(d) is hereby **DENIED** on the ground that

8  Defendant Bradshaw did not request to be indemnified as required by 7 CMC § 2304(a). As to

9  Bisom's request for attorney's fees, the court hereby reduces Bisom's request from $83,020.00 to

10 **$33,078.28**. This figure is reasonable in light of Bisom's counsel's vague documentation of hours, the

11 scope of the fee recovery authorized by the political coercion statute, and the level of success

12 achieved against Bradshaw.

13           SO ORDERED this _7ᵗʰ_ day of _June_, 2000.

14

15

16

17                              _____
                                ALEXANDRO C. CASTRO, Judge Pro Tem

18

19

20

21

22

23

24

25

26

27

28
                                        - 9 -

                                                        EXHIBIT
                                                        FF

**JAY H. SORENSEN**
**Attorney at Law**
**4th Floor, Suite A**
**Horiguchi Building**
**P.O. Box 1184**
**Saipan, MP 96950**
**Tel. No. 234-1414**
**Fax. No. 234-1417**

Attorney for Plaintiff

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROBERT A. BISOM, | ) | CIVIL CASE NO. 96-1320 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **APPLICATION FOR** |
| COMMONWEALTH OF THE | ) | **ATTORNEY'S FEES;** |
| NORTHERN MARIANA ISLANDS, | ) | **DECLARATIONS IN SUPPORT** |
| LEO L. LAMOTTE, CNMI Public | ) | |
| Auditor, in his official capacity, | ) | |
| ROBERT D. BRADSHAW, formerly | ) | |
| appointed Temporary Public Auditor, | ) | |
| in his individual capacity; | ) | |
| SCOTT KHENG SHANG TAN, | ) | |
| formerly CNMI Public Auditor, | ) | Date: Mar. 20, 2000 |
| in his individual capacity, | ) | Time: 11:00 am |
| | ) | Judge: Castro |
| Defendants. | ) | |
| | ) | |

Plaintiff hereby requests that attorney's fees be awarded and included in the judgment

against Robert D. Bradshaw pursuant to 1 CMC § 8153 inasmuch as plaintiff prevailed in his

claim under the provisions of that statute.

1

*Exhibit GG*

## DECLARATION OF JAY H. SORENSEN

**I, JAY H. SORENSEN,** do hereby declare:

1. I am an attorney license to practice law in all courts in the Commonwealth of the Northern Mariana Islands. I submit this declaration in support of this application for attorney's fees.

2. I was admitted to practice in the State of California in December, 1974. I am also admitted to practice in the United States District Court for the Central District of California and the Ninth Circuit of Appeals. I was in the private practice of law in Ventura, California for approximately 11 years from 1975 to 1986. The emphasis of that practice was civil litigation, about half of which was bodily injury all representing plaintiffs. The other half was various, including real-estate and commercial. When I left Ventura to come to Saipan I was a partner in a three-person firm and I was President of the Ventura Trial Lawyer's Association and an active member of the California Trial Lawyers Association.

3. I came to Saipan in October, 1986, was admitted to the United States District Court for the Northern Mariana Islands on October 7, 1986. I took the bar exam and was admitted to the commonwealth courts on May 1, 1987. Since that time I have been continuously in a private practice of law.

4. Throughout the pendency of this case, my standard billing rate for matters handled on an hourly (i.e. not contingency) basis has been $200 per hour. For someone of my level of experience, I believe this rate is lower than the average of what is customary in the legal community in Saipan. I believe that $200 per hour is appropriate for someone of my skill level and experience in these matters.

2

EXHIBIT
GG

5. Attached hereto is an accounting of the time I have spent as counsel for plaintiff in the above matter since the time of the initial conference with the plaintiff. This account is taken from my daily time sheets, which I retain and can produce for the court if necessary. It accurately reflects the time I have spent on this case, to the extent that I have remembered to enter the tasks in this case on my time records. This represents only the time spent in the Superior Court case. It does not include the many hours spent while the case was pending in the federal courts. The total number of hours, including preparation of this application is 415.1 hours.

6. Included in the Bill of Costs are copy costs that I advanced. They should be self-explanatory. They are charged at $0.25 per copy, which is the rate I am entitled to be reimbursed for according to my retainer agremeent with plaintiff. This is the rate I routinely am reimbursed under both hourly and contingent agreements.

I declare under penalty of perjury the foregoing is true and correct. Signed this _1st_ day of March, 2000.

JAY H. SORENSEN

### DECLARATION OF ERIC S. SMITH

I, **ERIC S. SMITH**, do hereby declare:

1. I am an attorney at law with offices in Saipan, CNMI. I have been licensed to practice law in the CNMI since 1985. I have been in the private practice of law since February, 1993.

EXHIBIT
GG

2.  I am aware of what the prevailing hourly rates of attorneys in this community. Based on my knowledge and experience, the rate of $200 per hour is the prevailing rate and is reasonable for an attorney with the level of experience of Jay H. Sorensen.

I declare under penalty of perjury the foregoing is true and correct.  Signed this _____ day of March, 2000.

ERIC S. SMITH

4

EXHIBIT
GG

BISOM, ROBERT VS. CNMI, ET AL.
SUPERIOR COURT CIVIL ACTION NO. 96-1320
ACCOUNTING OF HOURS

--------------------------------------------------------------------
DATE          DESCRIPTION                                    HOURS
--------------------------------------------------------------------
          NOVEMBER, 1996
11/29/96  Legal research on and preparation of complaint to file
            in Superior Court.                                 2.4

          DECEMBER, 1996
12/4      Tel/con w/ client re filing complaint in Superior Ct.  0.2
          Complete Complaint.                                  0.4
          Preparation of Summons.                             0.3
          Draft letter to D. Cotton re accepting service.     0.4
18        Tel/con w/ client re service and appeal.            0.2
24        Letter to D. Cotton re accepting service.           0.4


          APRIL, 1997
4/30/97   Preparation of Amended and Supplemental Complaint.  0.8

          MAY, 1997
5/2/97    Tel/con w/ client re amended complaint, etc.        0.3
          Tel/con w/ D. Cotton re service/settlement.         0.2
5         Legal research on Ethics rules that might apply.    0.6
14        Review of Motions to Dismiss.                       1.3
15        Review and legal research re Motions for Security for
            costs.                                            1.4
          Review & legal research re motion to dismiss.       0.9
          Letter to D. Cotton re motions.                     0.8
16        Tel/con w/ D. Cotton re motions & stip.             0.2
          Preparation of stip re motions.                     0.2


          JUNE, 1997
6/3/97    Tel/con w/ client re status.                        0.3
11        Tel/con w/ D. Cotton re service on Bradshaw.        0.2
24        Legal research on due process and property interests.  1.9
30        Tel/con w/ client re job offer and case.            0.2
          Fax to client re motion to dismiss.                 0.2


          JULY, 1997
7/2/97    Review of Motion to Dismiss.                        0.5
3         Note to client re motion to dismiss.                0.2
8         Preparation of Opposition to Motion to Dismiss.     3.7
9         Preparation of Opposition to Motion to Dismiss.     2.8
10        Preparation of Opposition to Motion to Dismiss.     5.6
22        Tel/con w/ D. Cotton re motions.                    0.2
          Letter to court re submitting motions w/o oral argument  0.3
24        Tel/con w/ Bisom re amended complaint.              0.2
          Stip re amended complaint.                          0.2

5.

*EXHIBIT*
*GG*

-page 2-

|  | AUGUST, 1997 |  |
|---|---|---|
| 8/15/97 | Preparation of Brief re civil service coverage. | 5.2 |
| 16 | Preparation of Brief re civil service coverage. | 4.6 |
|  | Preparation of Brief re civil service coverage. | 2.2 |
| 18 | Preparation of Brief re civil service coverage. | 4.9 |
|  | SEPTEMBER, 1997 |  |
| 9/19/97 | Letter to client re status. | 0.8 |
|  | OCTOBER, 1997 |  |
| 10/3/97 | Tel/con w/ client re status. | 0.2 |
| 7 | Review of letter from client and disc. action against Tan. | 0.3 |
| 28 | Tel/con w/ Guy Gabaldon re his deposition. | 0.2 |
|  | NOVEMBER, 1997 |  |
| 11/5/97 | Preparation of Motion for Leave to Amend. | 3.8 |
| 6 | Preparation of Motion for Leave to File Amended Complaint. | 1.6 |
| 7 | Fax message to client. | 0.6 |
| 26 | Preparation of Motion for leave to file third amended complaint w/ FMLA claim. | 2.8 |
| 28 | Tel/con w/ G. Gabaldon. | 0.2 |
|  | Fax to client re status. | 0.3 |
|  | DECEMBER, 1997 |  |
| 12/3/97 | Tel/con w/ D. Cotton re motion to amend. | 0.2 |
| 16 | Review of Notice of Sub. of Party Defendant. | 0.2 |
| 24 | Appeared at hearing for Motion for Leave to Amend. | 0.7 |
|  | Preparation of Order. | 0.2 |
|  | JANUARY, 1998 |  |
| 1/5/98 | Tel/con w/ client re depo of G. Gabaldon. | 0.3 |
| 7 | Tel/con w/ client re depo of G. Gabaldon. | 0.3 |
| 26 | Fax letter to client. | 0.5 |
| 30 | Tel/con w/ client re depo and motions. | 0.2 |
|  | Preparation of Motion to Remand. | 0.7 |
|  | FEBRUARY, 1998 |  |
| 2/2/98 | Tel/con w/ D. Cotton re motions. | 0.2 |
|  | Preparation of Motion to Remand. | 1.8 |
| 3 | Preparation of Motion to Remand. | 0.7 |
| 4 | Preparation of Motion to Disqualify. | 1.6 |
|  | Preparation of Stip to continue motion to dismiss. | 0.5 |
| 5 | Tel/con w/ G. Gabaldon. | 0.2 |
|  | Fax to client. | 0.6 |
|  | Tel/con w/ client re depo of Gabaldon. | 0.3 |
| 6 | Fax to client. | 0.3 |
| 9 | Tel/con w/ client. | 0.2 |
| 16 | Tel/con w/ client re motion and deposition. | 0.3 |
| 19 | Preparation of Response to Motion to Dismiss. | 4.9 |
| 20 | Preparation of Opposition to Motion to Dismiss. | 0.8 |

EXHIBIT
GG

-page 3-

| | | |
|---|---|---|
| 24 | Review of Disqualification documents. | 0.8 |
| | Legal research & fax to client re motion to reconsider. | 0.7 |
| 25 | Preparation of Reply to Opposition to Motion to Remand. | 4.3 |
| 26 | Preparation of Reply to Opposition to Motion to Remand. | 7.2 |
| 27 | Preparation of Reply to Opposition to Motion to Remand. | 4.9 |

MARCH, 1998

| | | |
|---|---|---|
| 3/5/98 | Preparation for oral argument for motions. | 1.7 |
| 6 | Preparation for oral argument. | 1.1 |
| | Attended hearing of motion to remand, etc. | 1.0 |
| | Fax to client re hearing. | 0.5 |

MAY, 1998

| | | |
|---|---|---|
| 5/5/98 | Tel/con w/ client re status. | 0.2 |

JUNE, 1998

| | | |
|---|---|---|
| 6/3/98 | Attended Status Conference. | 0.8 |
| 5 | Tel/con w/ client. | 0.2 |
| 16 | Tel/con w/ G. Gabaldon re deposition. | 0.2 |
| | Tel/con w/ client's wife re deposition. | 0.2 |
| 17 | Tel/con w/ client re deposition. | 0.2 |
| | Fax to G. Gabaldon. | 0.2 |
| 25 | Preparation of Notice of Deposition. | 0.2 |

JULY, 1998

| | | |
|---|---|---|
| 7/3/98 | Tel/con w/ client. | 0.2 |
| 13 | Conference w/ client re deposition. | 0.8 |
| 15 | Preparation for deposition of Guy Gabaldon. | 0.8 |
| | Conference w/ client and G. Gabaldon re depo. | 0.8 |
| 16 | Attended deposition of Guy Gabaldon. | 2.5 |

AUGUST, 1998

| | | |
|---|---|---|
| 8/18/98 | Fax message to client. | 0.6 |

SEPTEMBER, 1998

| | | |
|---|---|---|
| 9/11/98 | Fax message to client. | 0.6 |

NOVEMBER, 1998

| | | |
|---|---|---|
| 11/10/98 | Tel/con w/ clerk re copy of order. | 0.1 |
| | Review of Decision on Motion to Dismiss. | 0.4 |
| | Fax message to client re decision. | 0.3 |
| 11 | Review of Order and files re amending complaint. | 1.2 |
| 12 | Legal research re Amending Complaint. | 0.5 |
| 13 | Tel/con w/ client re amended complaint. | 0.3 |
| 16 | Preparation of Fourth Amended Complaint. | 1.2 |
| | Fax to client re amendmends to complaint. | 0.4 |
| 17 | Fax to client re amended complaint, etc. | 0.3 |

EXHIBIT
GG

7.

-page 4-

```
            DECEMBER, 1998
12/14/98    Legal research on Motions for Reconsideration.        2.2
            Preparation of Opposition to motion for reconsideration  3.3
16          Preparation of Opposition to motion to reconsider.    4.3
17          Preparation of Opposition to motion to reconsider.    3.9
18          Preparation of Opposition to motion to reconsider.    7.8
19          Preparation of Opposition to motion to reconsider.    2.2
21          Preparation of Opposition to motion to reconsider.    4.0
29          Review of Reply to Opposition.                        0.8
            Fax to client re motion.                              0.4


            JANUARY, 1999
1/4/99      Preparation for oral argument of motion for
             reconsideration.                                     2.8
5           Attended hearing on Motion for Reconsideration.       1.4
            Tel/con w/ client re hearing.                         0.3
6           Tel/con w/ client re Guy Gabaldon.                    0.2
13          Tel/con w/ Ohana Gabaldon re her possible testimony.  0.2
            Tel/con w/ client re depos.                           0.2
18          Tel/con w/ Ohana Gabaldon.                            0.2
20          Tel/con w/ client re depo of O. Gabaldon.             0.2
22          Tel/con w/ client.                                    0.2


            FEBRUARY, 1999
2/1/99      Fax to client re discovery.                           0.2


            MARCH, 1999
3/8/99      Conference w/ client.                                 1.5
9           Conference w/ client.                                 0.6
10          Conference w/ client re future discovery, etc.        2.8
11          Conference w/ client re depo of S. Tan, etc.          0.9
12          Conference w/ client re discovery.                    1.4
17          Fax to client.                                        0.3
            Preparation of Request for Production.                1.4


            APRIL, 1999
4/13/99     Letter to G. Gabaldon re depo transcript.             0.3
14          Legal research on Authentication & Jud. Notice Q's re
             Hawaii rules.                                        0.5
            Fax message to client.                                0.5
20          Fax message to client.                                0.4
23          Preparation of Interrogs.                             0.8
26          Revise RFP.                                           0.6
            Fax memo to client.                                   0.8
28          Tel/con w/ Robert re interrogs & RFP's.               0.4
29          Tel/con w/ client re discovery.                       0.2
            Finalize interrogs.                                   0.4
            Letter to W. Bush re interrogs.                       0.5
```

8.

EXHIBIT
GG

-page 5-

MAY, 1999
| 5/5/99 | Tel/con w/ client re status, plans, etc. | 0.2 |
| 11 | Tel/con w/ client re interrogs. | 0.2 |
| 14 | Tel/con w/ client re S. Tan. | 0.2 |
| 19 | Tel/con w/ client re witness. | 0.2 |
| 21 | Tel/con w/ client re witnesses. | 0.2 |
| 27 | Tel/con w/ client re trial and deposition. | 0.2 |

JUNE, 1999
| 6/2/99 | Tel/con w/ client. | 0.2 |
| 3 | Tel/con w/ D. Castro. | 0.1 |
| | Tel/con w/ B. Bush re interrogs and RFP. | 0.3 |
| 4 | Tel/con w/ client. | 0.2 |
| | Tel/con w/ Guy Gabaldon. | 0.1 |
| 18 | Tel/con w/ B. Bush re settlement possibilities. | 0.2 |
| 21 | Tel/con w/ B. Bush re settlement. | 0.2 |
| | Preparation of Motion to Compel. | 0.5 |
| 22 | 2 tel/con w/ client re settlement. | 0.3 |
| 23 | Fax to client re settlement. | 0.4 |
| 25 | Tel/con w/ D. Castro. | 0.2 |
| 28 | Fax letter to client. | 0.2 |
| 29 | Tel/con w/ D. Castro re meeting. | 0.2 |
| | Fax message to client. | 0.2 |

JULY, 1999
| 7/1/99 | Tel/con w/ client re interview of D. Castro. | 0.2 |
| | Review of file and research re summary judgment motion. | 1.8 |
| 2 | Review of fax from client. | 0.1 |
| | Review of Answers to interrogs & RFP. | 0.8 |
| | Tel/con w/ B. Bush re interrogs, etc. | 0.3 |
| | Letter to B. Bush re further answers. | 0.4 |
| | Preparation of motion for summary judgment. | 1.4 |
| 3 | Fax to client re responses. | 0.3 |
| | Preparation of motion for summary judgment. | 3.8 |
| 5 | Preparation of motion for summary judgment. | 5.5 |
| 6 | Review of files to prepare to interview of D. Castro. | 0.6 |
| | Fax message to client. | 0.2 |
| | Tel/con w/ client re interview with D. Castro. | 0.2 |
| 7 | Go to house of D. Castro and back. | 0.6 |
| 8 | Tel/con w/ client re case. | 0.2 |
| | Conference w/ G. Clark re implied right of action issue | 0.6 |
| | Interview of D. Castro. | 0.9 |
| 9 | Preparation of Motion for Summary Judgment. | 5.1 |
| 12 | Preparation of Motion for Summary Judgment. | 4.1 |
| 13 | Tel/con w/ client re discovery. | 0.2 |
| | Preparation of Motion for Summary Judgment. | 5.7 |
| 14 | Preparation of Motion for Summary Judgment. | 0.4 |
| 19 | Preparation of Motion for Summary Judgment. | 4.2 |
| 20 | Preparation of Motion for Summary Judgment. | 1.7 |
| 21 | Tel/con w/ client re declaration. | 0.2 |
| | Preparation of Motion for Summary Judgment. | 5.8 |

9.

EXHIBIT
GG

-page 6-

| | | |
|---|---|---:|
| 22 | Preparation of Motion for Summary Judgment. | 3.2 |
| 23 | Preparation of Motion for Summary Judgment. | 5.4 |
| 24 | Legal research. | 2.2 |
| 27 | Preparation of Motion for Summary Judgment. | 1.7 |
| 28 | Preparation of Motion for Summary Judgment. | 1.6 |
| | Fax to client. | 0.4 |
| 29 | Preparation of Motion for Summary Judgment. | 2.1 |
| | Fax to client re affidavit. | 0.8 |
| | Preparation of Motion to Compel. | 1.4 |
| 30 | 2 tel/con w/ client re affidavit. | 0.4 |
| | Fax to client. | 0.3 |
| | Preparation of Motion for Summary Judgment. | 2.2 |
| 31 | Preparation of Motion to Compel. | 0.9 |
| | **AUGUST, 1999** | |
| 8/2/99 | Tel/con w/ Bisom re affidavit. | 0.2 |
| 3 | Review of files re medical treatment. | 0.6 |
| 24 | Review of Application and Order re continuance. | 0.3 |
| | 2 tel/con w/ client re motions and trial. | 0.2 |
| 27 | Review of Supplemental Answers and Interrogs. | 0.4 |
| | Letter to D. Sosebee. | 1.2 |
| 28 | 2 tel/con w/ client re trial. | 0.3 |
| 30 | Tel/con w/ client re possible continuance of trial. | 0.3 |
| | Review of Opposition to Motion for Partial S/Judgment. | 0.5 |
| | Legal research on issues re appearance. | 0.7 |
| 31 | 2 tel/con w/ client re trial, motions and offer. | 0.4 |
| | Legal research and draft response re lack of service on Bradshaw. | 4.6 |
| | **SEPTEMBER, 1999** | |
| 9/2/99 | Letter to AG re stip to continue. | 0.2 |
| 3 | Tel/con w/ client re trial date. | 0.2 |
| | Preparation of Reply to Opposition. | 1.9 |
| 7 | Tel/con w/ client re trial setting. | 0.2 |
| 8 | Preparation for hearing. | 2.3 |
| | Attended hearing on motions for summary judgment and compel. | 1.1 |
| | Tel/con w/ client re hearing and trial. | 0.2 |
| | **OCTOBER, 1999** | |
| 10/14/99 | Tel/con w/ client re status of case. | 0.2 |
| | **NOVEMBER, 1999** | |
| 10/29/99 | Tel/con w/ client re status. | 0.2 |
| 11/1/99 | Tel/con w/ G. Gabaldon. | 0.2 |
| | **DECEMBER, 1999** | |
| 12/8/99 | Tel/con w/ client re trial issues. | 0.2 |
| 16 | Tel/con w/ client re trial. | 0.2 |

EXHIBIT
GG

10.

-page 7-

|  | JANUARY, 2000 |  |
|---|---|---|
| 1/7/00 | Tel/con w/ client re trial witnesses. | 0.2 |
| 19 | Tel/con w/ client re trial preparation. | 0.2 |
|  | Fax letter to Dr. M. Cruz. | 0.3 |
|  | Fax to client. | 0.2 |
|  | Tel/con w/ client re waiving jury. | 0.2 |
| 21 | 2 tel/con w/ client re trial. | 0.3 |
| 28 | Conference w/ client re trial. | 1.5 |
| 29 | Preparation for trial. | 4.4 |
| 31 | Preparation of trial. | 3.6 |
|  | Tel/con w/ D. Sosebee re his motion. | 0.2 |
|  | Review of Motion to take off trial calendar. | 0.3 |

|  | FEBRUARY, 2000 |  |
|---|---|---|
| 2/2/00 | Preparation of Response to Motion to Vacate Trial. | 0.8 |
|  | Preparation for Trial. | 1.7 |
| 3 | Review of Decision on Motion for summary Judgment. | 0.5 |
|  | Preparation for trial. | 6.6 |
| 4 | Preparation for trial. | 11.8 |
| 5 | Preparation for trial. | 8.8 |
| 6 | Preparation for trial. | 10.8 |
| 7 | Attended trial. | 7.0 |
|  | Preparation for trial. | 3.2 |
| 8 | Attended trial. | 6.0 |
| 9 | Attended trial. | 7.2 |
|  | Preparation for trial. | 1.6 |
| 10 | Attended trial. | 6.9 |
|  | Preparation for trial. | 2.8 |
| 11 | Attended trial. | 4.8 |
|  | Preparation of jury instructions. | 2.1 |
| 12 | Preparation for trial. | 7.8 |
| 13 | Preparation for trial. | 5.2 |
| 14 | Attended trial. | 6.1 |
|  | Preparation for trial. | 3.8 |
| 15 | Attended trial. | 2.4 |
|  | Preparation for trial. | 0.8 |
| 16 | Preparation of jury instruction. | 12.3 |
| 17 | Attended trial re jury instructions. | 4.6 |
|  | Preparation for trial. | 2.3 |
| 19-20 | Preparation for Argument. | 6.8 |
| 21 | Preparation for Argument. | 7.7 |
| 22 | Attended trial. | 6.6 |
| 23 | Attended trial. | 1.5 |
| 24 | Tel/con w/ Jugde & D. Sosebee re jury question. | 0.2 |
|  | Preparation of Special Instruction. | 0.5 |
| 25 | Preparation of Request for Indemnification. | 4.4 |
|  | Preparation of Order and Judgment. | 1.2 |
|  | Attended trial for verdict. | 0.9 |
| 28 | Finalize request for indemnification. | 0.8 |
|  | Tel/con w/ J. Flores re jury service fee. | 0.2 |
|  | Fax letter to D. Sosebee re form of judgment. | 0.4 |

Total Hours:                415.1

*11.*

*EXHIBIT GG*



April 5, 2005

Ms Bernie Sablan
Clerk of the CNMI Superior Court
PO Box 500307
Saipan, MP 96950, phone 670-236-9766/9767

Dear Ms Sablan:

Would you please be good enough to make and supply to me one certified true copy of the transcript of the court record of trial in February 2000 in Superior Court Civil case 96-1320 and one each certified true copies of each of the postal receipts, front and back, submitted to the court and entered into evidence as exhibits in case 96-3120.

I don't know how many pages are involved here, but I am enclosing my check for $30 payable to your office to cover the charges. If this is not enough, please bill me for any additional needs or telephone me and I will forward a check for the additional needs.

Thanking you, I am,

Yours very truly,


Robert D. Bradshaw
PO Box 473
Calder, ID 83808, Phone 208-245-1691


*Exhibit*
*H H*



June 20, 2005

Mr Matt Ryden
Hall,. Farley and Company, Phone 208-395-8500
PO Box 1271
Boise, ID 83701

Dear Mr Ryden:

In a recent telephone conversation with Bernie Sablan, Clerk of the CNMI Superior Court, she told me that the postal return receipts which were formerly in the Case 96-1320 file are not presently there.

It should be noted that on Sep 12, 2004, the CNMI AG took possession of this case file and the postal receipts "for review." At least ten people in the CNMI have seen those receipts, including some 5 or 6 persons in the AG's office in the past ten months. The AG held this file and the receipts until recently when they were supposedly returned to the Clerk of Court.

All along, I have recommended, urged and pleaded, both orally and in writing, for the AG to have certified true copies made of those receipts to avoid any future questions about them. I don't know what the AG has done. But I do know that when it comes time for discovery that if those receipts are missing or if there is any evidence of alternations or tampering with them, I will take positive action. I will immediately go into the US Court and bring the matter to the attention of the court and I will contact a US attorney and the FBI. I'm sure Federal people will take a dim view of "obstruction of justice" involving a case before a US Court.

I recommend that you bring this matter to the attention of your CNMI client and/or forward my letter to them. If there is any obstruction of justice in this case, I am going to Federal people at once.

Yours very truly,

Robert D. Bradshaw
PO Box 473
Calder, ID 83808, phone 208-245-1691

Copy furnished:  Senator Pete Reyes, CNMI Senate Minority Leader

Exhibit
II