Received Sep-22-2006 06:54    From-    To-US DISTRICT COURT, N    Page 002

202. Ever since trying to obtain some resolution on this case from the CNMI AG and courts (from Sep 2004 to date), the AG consistently has avoided writing letters to BRADSHAW or allowing BRADSHAW to have any knowledge of the facts in the case. Instead, the AG has generally acted to lie, deceive, twist, distort, stall, delay, obfuscate, hide and deny BRADSHAW any information which would help him learn the facts.

203. BRADSHAW tried to obtain copies of documents from the AG--both before filing US civil action 05-84 and afterwards in the form of two requests for documents under discovery (in May and June 2005). The AG simply refused to honor the requests. Since Jun 1999, the AG has consistently kept the facts of 96-1320 in secret from BRADSHAW.

204. Starting in Feb 2005, BRADSHAW made many phone calls and sent numerous letters to the SC Clerk of Court with checks enclosed for copies of documents. In Oct 2005, BRADSHAW wrote the Chief Judge about the matter. Starting in early Dec 2005, the clerk began filling some of these requests for documents from the 96-1320 case file.

205. But in a Jun 2005 telephone conversation, the Clerk said that the postal receipts in question are not now in the file.

206. In learning of the missing records, BRADSHAW contacted the CNMI lawyer, Hall Farley, who sent back the enclosed letter Exhibit "G."

207. In the Hall Farley letter, the CNMI AG denied ever seeing the alleged fraudulent postal receipts. The AG pretended to be in total ignorance about its contacts with BRADSHAW from Sep 2004 until Mar 2005. This AG alleged ignorance happened three months after the 05-84 suit was filed in the US Idaho court over this very question.

Received  Sep-22-2006 06:54          From-                    To-US DISTRICT COURT, N          Page  003

208. In a Jun 18, 2006 letter (Exhibit "H"), the Clerk further informed BRADSHAW that the attached exhibit/letter to the 02/03/00 "Opposition to Motion to Remove Case From Trial Docket" is now missing. This letter is important in establishing the fraud in 96-1320. It is clear that some person(s) have reviewed/rifled the 96-1320 court case file and removed and hid or destroyed a number of documents.

209. While the case file has been rifled and altered and documents hidden or destroyed, a copy of the fraudulent receipts from BISOM/SORENSEN remained. They are attached to the AG's motion of Feb 1, 2000 to take the case off of the calendar. Exhibit "I" a is copy of the fraudulent receipts entered by BISOM/SORENSEN.

210. BRADSHAW's contacts with the AG in 2004-2005 are spelled out in the affidavit at Exhibit "J" as filed in the CNMI SC case 96-1320 in the summer of 2005. Local newspaper reports of the trial finding BRADSHAW guilty of BISOM's allegations are at Exhibit "K."

### FIRST CLAIM--Civil Rights Violations (42 USC 1983)

211. Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as if set forth here in full.

212. In 1996-2003 at the CNMI SC in case 96-1320 on Saipan, defendant ROBERT A. BISOM and his attorney defendant JAY H. SORENSEN violated plaintiff's due process, equal protection of the law and other rights under the US Constitution and the 14th amendment of the US Constitution and 42 USC 1983.

213. BISOM/SORENSEN engaged in malicious prosecution to bring on the injury to plaintiff. Three times the USDC NMI dismissed the BISOM claims. Among other things, BISOM never addressed the distinction between official and individual capacities and duties.

214. Yet, BISOM kept and maintained the essential same allegations against BRADSHAW in all six of his complaints in 95-0042 and 96-1320.

215. BISOM/SORENSEN knew that there was a bar against them to proceed with their litigation against BRADSHAW.

216. By the summer of 1999, BISOM/SORENSEN then misappropriated US postal forms for purposes of fraud. In 1999 and 2000, they entered fraudulent US mail postal receipts and submitted contradictory alleged mailing envelopes to BRADSHAW in case 96-1320 to obtain a default judgment against BRADSHAW in violation of 18 USC 241-242; 1341; 1342; 1349; 1707; and 39 USC 3005/4005.

217. BISOM/SORENSEN submitted two sets of postal documents to the court. In 1999, the set of fraudulent receipts were submitted. On Feb 3, 2000, BISOM/SORENSEN submitted two alleged mailing envelopes which involved the exact same certified numbers as for the two return receipts. The mailing envelopes showed them to be undelivered and returned to sender. The two sets of documents were contradictory and impossible.

218. In the 2005 Opposition to Motion to Void/Vacate Judgment in the CNMI case 96-1320, BISOM/SORENSEN admitted submitting both sets of contradicting documents to the SC. Obviously, one or both sets of postal documents were fraudulent.

219. BRADSHAW allows that both of them could be fraudulent. Certainly, the return postal receipts were fraudulent. Whether BISOM/SORENSEN ever mailed the envelopes submitted to the court remains a question mark.

220. BISOM/SORENSEN violated CNMI court rule 4 (d), (e), (I) and (m), 7 CMC Sections 1102 and 1104 and WA state laws and rules by not serving BRADSHAW in

Received  Sep-22-2006 06:54        From-        To-US DISTRICT COURT, N    Page 006

accordance with the law  They denied BRADSHAW his day in court to answer their complaint.

221.  In the BISOM complaints, BISOM admitted that he worked outside official government channels and without authority to block and oppose the audit work of BRADSHAW

222.  In a CNMI AG deposition with BISOM in 1996, he also admitted that in 1993 he went to the CNMI legislature and discussed confidential OPA information with certain legislatures.  These facts prove that BISOM was properly fired by BRADSHAW for cause.

223.  BISOM/SORENSEN obtained a judgment against BRADSHAW for $139,000.  They also obtained a judgment and settlement of $140,000 in 2003 from the CNMI in part as a result of the illegal default judgment.  BRADSHAW was due $130 from BISOM in case 95-0042.  In the 2003 settlement of 96-1320, BRADSHAW lost this $130.

224.  The illegal actions and improper judgments allowed by the defendants brought a loss of property (money) to plaintiff.  BRADSHAW was also slandered and defamed in the CNMI media.

225.  BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged.  His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting.

226.  These events further brought much emotional distress, pain and suffering to BRADSHAW.  They also brought about a loss of enjoyment of life to BRADSHAW.

227.  The actions of BISOM/SORENSEN were extreme and outrageous.  They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and

44

Received  Sep-22-2006 06:54         From—         To-US DISTRICT COURT, N    Page 006

other damage on BRADSHAW.

228.  To address the illegal judgment, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000.  The SC granted this motion on Dec 29, 2005. This action costs BRADSHAW personally $4,000.  The actions of BISOM/SORENSEN make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries BISOM/SORENSEN caused.

229.  BRADSHAW prays for relief from the actual damages of the $130 in case 95-0042, $4,000 in case 96-1320, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to BISOM/SORENSEN.

230.  Since BISOM/SORENSEN collected $140,000 illegally from the CNMI because of the alleged actions of BRADSHAW and the default judgment, BRADSHAW asks that BISOM/SORENSEN be made to repay this $140,000 to the CNMI.  BRADSHAW further requests that the CNMI Bar Assn and US authorities be advised of this case for further action.

231.  Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $279,000 from BISOM and $279,000 from SORENSEN for emotional and mental distress and the loss of the enjoyment of life.

### SECOND CLAIM--Civil Rights Violations (42 USC 1983)

232.  Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as if set forth here in full.

233.  In 1996-2003 in CNMI case 96-1320, AG defendants FORELLI, COTTON, BUSH, CLAYTON and SOSEBEE each individually and collectively acted to violate BRADSHAW's

Received  Sep-22-2006 06:54      From-      To-US DISTRICT COURT, N    Page 007

due process, equal protection and other rights under the US Constitution, the 14th amendment to the Constitution and 42 USC 1083 and their own oath of office.

234. On Apr 4, 1997, the 120 days were up for service of the BISOM 96-1320 complaint. Defendant COTTON was obligated to move in court for the dismissal of the complaint against BRADSHAW.

235. Since there was a bar to BISOM"s suit as presented in the SC in 1996 and thereafter, the AG should have filed for dismissal against BRADSHAW. The AG failed to exercise due diligence.

236. Since there was evidence of malicious prosecution in case 96-1320 in 1996 and thereafter, the AG should have filed for dismissal against BRADSHAW. The AG failed to exercise due diligence.

237. Since the CNMI SC lacked both personal and subject matter jurisdiction over BRADSHAW in 1996 and thereafter, the AG should have moved for a dismissal against BRADSHAW. The AG failed to exercise due diligence.

238. With the filing of the 1st amended compliant by BISOM in May 1997, the two-year statute of limitations was up on CNMI torts. The AG should have filed for dismissal against BRADSHAW in 1997 and thereafter.

239. With the filing of the complaint and the 1st and 2d amendments in 1996-1997 and thereafter, the AG should have moved for dismissal against BRADSHAW for lack of service of process.

240. Per BISOM's later motion for default judgment, COTTON allegedly accepted service of the 4th amended complaint in 96-1320 and failed to file an answer, notify

BRADSHAW of the event or advise the SC that the AG did not represent BRADSHAW.

241. Defendant BUSH became the AG lead attorney on 96-1320 in the summer of 1999. BUSH offered to go into court and have BRADSHAW's name removed from the case for lack of service/statute of limitations. BRADSHAW agreed. BUSH did not do so

242. Defendant SOSEBEE became lead attorney in Aug 1999. He learned in Aug 1999 that BRADSHAW claimed no service and yet BISOM/SORENSEN held US postal receipts showing alleged service on BRADSHAW to a person named Manny.

243. SOSEBEE sat on these facts from Aug 1999 to Feb 2000 and did nothing to resolve them for six months until six days before the trial.

244. On Feb 1, 2000, SOSEBEE filed a motion to take the case off of the 96-1320 calendar on the basis of the contradictory and confusing documents in the case. SOSEBEE filed in court both copies of the fraudulent receipts and the privileged letter from BRADSHAW to BUSH stating the lack of service. SOSEBEE did not have BRADSHAW's permission for the revealing of BRADSHAW's privileged letter in court. This was a lack of due diligence.

245. On or about Feb 1, 2000, SOSEBEE, with the approval of Acting AG FORELLi, notified the SC and SORENSEN that the AG was withdrawing from representing BRADSHAW. But BRADSHAW was never told of this decision.

246. The withdrawal was made despite the fact that BRADSHAW was sued in his official capacity for his duties as an official of the CNMI government. The AG had a fiduciary duty to legally protect the OPA and BRADSHAW.

247. By Feb 3, 2000, both SOSEBEE and FORELLI knew that BISOM/SORENSEN had submitted two sets of postal documents which were totally contradictory. One or both

47

sets had to be fraudulent.

248. Yet, AG FORELLI refused to order a criminal investigation and prosecution of BISOM/SORENSEN though there was incontrovertible court documents showing the presence of fraud/attempted fraud on the CNMI and BRADSHAW.

249. In 1999-2000, SOSEBEE sat back, did nothing and allowed the grossly incompetent CASTRO court to enter a default judgment against BRADSHAW to obtain judgments against BRADSHAW and the CNMI.

250. The AG did file a notice of appeal to the Supreme Court. But later, SOSEBEE/CLAYTON dropped the appeal.

251. The CNMI AG persons were effectively found guilty of gross and malicious incompetence and malpractice by the CNMI Supreme Court in its review of case 96-1320 in 2002.

252. Specifically the court cited AG personnel several times for mistakes (plural), and violation of ethic rules. The court also allowed that the AG person(s) were involved in a conflict of interest in court.

253. The CNMI AG had a fiduciary duty by the CNMI Constitution and laws to render legal assistance and indemnification to BRADSHAW for his official work in the CNMI. The AG persons did not render this help. After Jun 1999, they became adversaries and worked consistently against BRADSHAW.

254. BRADSHAW was sued in his official capacity in the 96-1320 complaint and its 1st and 2d amended complaints. In the pleadings, BRADSHAW was repeatedly cited in his official capacity and for his official duties in the CNMI. Yet, the AG did nothing to defend

BRADSHAW in his official capacity.

255. The AG persons abandoned BRADSHAW in about Jul 1999 and allowed a default judgment to be entered against him in the CNMI courts. The AG then refused to appeal the illegal decision made in the CASTRO court.

256. BRADSHAW was due $130 from BISOM in case 95-0042. In the 2003 settlement of 96-1320 by CLAYTON, BRADSHAW lost this $130.

257. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media.

258. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW.

259. The actions of the AG defendants were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

260. To address the illegal judgment, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000. The actions of the AG defendants make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

261. BRADSHAW prays for actual damages of $4,000 in case 96-1320, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such

49

other relief as the court may decide and order/allocate to the AG defendants.

262  Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from SOSEBEE and $139,000 from the other AG defendants as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

263. Defendants are not eligible for qualified immunity in that their acts were outside their designated duties. Their acts were beyond the purview of a reasonable person. Their acts violated US and CNMI laws and rules. And their acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

**THIRD CLAIM--Civil Rights Violations (42 USC section 1983).**

264. Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as if set forth here in full.

265. Defendant Pamela BROWN violated BRADSHAW's rights and benefits to the US Constitution, the 14th amendments and 42 USC 1983 and her own oath of office.

266. Though having a fiduciary duty to assist BRADSHAW and to indemnify BRADSHAW for his official work in the CNMI, she became an adversary to work against BRADSHAW in 2004/2005. She engaged personally in or by influencing others to hide/destroy records in CNMI case 96-1320 and USDC (ID) case 05-0084.

267. Per the affidavit of BRADSHAW's contacts with the AG, BRADSHAW was informed by AG personnel that BROWN's office had possession of the case file 96-1320 and the fraudulent postal receipts in question. BROWN supposedly spent some ten months investigating the alleged fraud in case 96-1320. She ended up hiding, losing or destroying

the key documents involved.

268. BROWN or others under her influence hid or destroyed various documents in case file 96-1320 in violation of 18 USC 1503, 1510, 1511, and 1519 and 39 USC 3005/4005.

269. Since BRADSHAW contacted the AG in Sep 2004 to obtain relief, BROWN and her office has consistently acted to lie, deceive, twist, distort, deny, obsfucate, and stall.

270. The actions of AG BROWN were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

271. To address the illegal judgment, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action costs BRADSHAW personally $4,000 because BROWN refused to provide assistance. The actions of BROWN makes BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

272. BRADSHAW prays for relief for the actual damages of $100 due him in 96-1320 from Sep 2004 to Feb 2005; $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to BROWN.

273. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from BROWN as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

51

274. BROWN is not eligible for qualified immunity in that her acts were outside her designated duties. Her acts were not judicial in a courtroom. Her acts were beyond the purview of a reasonable person. Her acts violated US and CNMI laws and rules. And her acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

### FOURTH CLAIM--Civil Rights Violations (42 USC 1983)

275. Plaintiff incorporates herein by reference paragraphs 1-210 as hereinabove alleged as it set forth here in full.

276. An unknown person or persons in the CNMI took action in about 2000 and again later in 2004-2005 to deprive BRADSHAW of his due process and equal protection rights under the US Constitution.

277. In about 2000, the person(s) misappropriated US postal forms. These forms were prepared to illegally reflect something allegedly sent to BRADSHAW. This unknown person(s) then entered fraudulent US mail postal receipts in case 96-1320. These documents contributed to the illegal $139,000 judgment against BRADSHAW. These acts violated 18 USC 241-242; 1341 1342; 1349; 1707; and 39 USC 3005/4005.

278. Another or the same unknown person(s) was influenced or ordered by AG BROWN to hide, lose or destroy documents from the 96-1320 case file in 2004-2005. This action hurt BRADSHAW in cases before the CNMI SC and the USDC in Idaho.

279. BRADSHAW was injured in his property (money). His character was slandered in the CNMI media and the media coverage affected his ability to earn a living by his profession. He lost the enjoyment of life he was entitled to by the US Constitution.

52

280. BRADSHAW prays for relief for the actual damages of $100 due him in 96-1320 from Sep 2004 to Feb 2005; $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to the unidentified person(s).

281. Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $139,000 from unidentified person(s) as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

282. Defendant is not eligible for qualified immunity in that her acts were outside his/her designated duties. The acts were beyond the purview of a reasonable person. The acts violated US and CNMI laws and rules. And the acts violated the due process and equal protection rights and benefits of BRADSHAW per the US Constitution and US law.

### FIFTH CLAIM--Intentionally Omitted

283-303. Deleted

### SIXTH CLAIM--Intentionally Omitted

304-317. Deleted

### SEVENTH CLAIM--Civil Rights Violations (42 USC 1985)

318. Plaintiff incorporates herein by reference paragraphs 1-317 as hereinabove alleged as if set forth here in full.

319. The CNMI; through her agents CLAYTON, BROWN, SOSEBEE and his boss FORELLI; and defendant BISOM through his agent SORENSEN; conspired and committed acts in 1999-2000 individually/collectively to injure BRADSHAW in his person/property, and to interfere in and deprive BRADSHAW of due process and his rights and privileges under

53

the US Constitution in a defacto conspiracy to violate the US Constitution and 42 USC 1985. The prima facie and circumstantial evidence in case 96-1320 establish clear collusion by the defendants to systematically deny BRADSHAW his rights under US law.

320. Under 42 USC 1985, a conspiracy can result from a meeting of the minds or an understanding or agreement among conspirators, and the existence of such conspiracy may be inferred from circumstances and need not be demonstrated to exist as a matter of express agreement (AM Jur 2nd, section 174 on Civil Rights). A tacit understanding is sufficient to constitute a conspiracy and an inference of agreement can be made where particular acts performed together are unlikely to have been undertaken by the actors without such an agreemnt (ibid). The government actors worked under color of law but outside the scope of their employment. But principals are responsible for the actions of their agents.

321. Besides circumstantial evidence, there are facts supporting the alleged conspiracy. First, the case file allegedly contained receipts in the file similar to the ones filed by BISOM showing that the AG office in 1996-2002 sent BRADSHAW an alleged message(s) in certified letter(s) which were similar to the fraudulent ones filed by BISOM showing receipt by the flotitious Manny. Second, it is inconceivable that all involved responsible people in the AG's office could incompetently ignore and pass over very obvious fraudulent documents and assertions as filed by BISOM in Case 96-1320. There is prima facie evidence of some compelling reasons(s) for the incredible malicious malpractice, gross incompetence, negligence and lack of due care in handling case 96-1320. For some compelling reason(s), the CNMI AG's office acted on behalf of the CNMI government to hide, assist and aid BISOM in his illegal actions against BRADSHAW. Aside from conspiracy, there is no plausible

54

explanation as to what happened.

322. The defendants all knew and understood that BISOM/SORENSEN had entered fraudulent documents in case 96-1320 to defraud BRADSHAW and the CNMI. They conspired and acted together to hide and alter this fact to make out that the default judgment on BRADSHAW was ostensibly made for other reasons. The ultimate culprit used by the CNMI and her agents in the conspiracy came to be a SC order of Feb 22, 2000 which charged that BRADSHAW had avoided service. But this order was made eight days after BISOM had already entered his request for default on the premise that service had been made on BRADSHAW and that "return of service" forms had been filed with the court (evidently the fraudulent postal receipts which BISOM must have filed in court to support his default request). But the SC order of Feb 22, 2000 was made on the basis that the court had taken under "advisement" a hearing on Feb 7, 2000 on certain questions. If the issue was taken under advisement earlier, the decision and order was not made until the day of the order of Feb 22, 2000. If the actors involved were acting responsibly and in good faith with some measure of prudence and intelligence, it would have been impossible for the parties to have alleged the same culprit and explanation for the default charge. The culprit was alleged to be the SC order of Feb 22, 2000. The AG's office has historically had a reputation for incompetence and lack of diligence accruing because many of the personnel are short timers more interested in beach time, snorkel diving and leisure activities than in legal work. While CLAYTON and BROWN were not likely involved initially, they too joined in the understanding or agreement when they later became involved in the case

55

323. More evidence of the conspiracy surfaces from the fact that service on BRADSHAW had to be made within 120 days per CNMI rule 4(m); the fact that the SC issued an order on May 20, 1997 as approved by the SC which demanded that service on BRADSHAW had to have been made by May 20, 1997 for BISOM's 1st amended complaint and by May 30, 1997 for BISOM's second amended complaint. None of these legal deadlines were met. The CNMI and BISOM and their agents were fully aware of these deadlines which had not been met. Next, the service or lack of service alleged by BISOM in no case complied with 7 CMC 1102-1104, CNMI rules of service of process, Washington state laws on service (as BRADSHAW resided in WA state) or US laws and rules on due process and the US Constitution. All of the actors involved were lawyers. They fully understood all of these laws and rules. They cannot all claim ignorance of the law.

324. Another evidence of conspiracy between the AG and BISOM/SORENSEN surfaces in the case file show that Asst AG SOSEBEE had a habit of sometimes "personally" serving papers on lawyer SORENSEN. It is unclear what prompted or necessitated personal visits by SOSEBEE and SORENSEN since they were ostensibly adversaries in a court action. Only a conspiracy makes sense. The reasons for the conspiracy are clear enough. For BISOM/SORENSEN, the push was for gain and to put hurt on BRADSHAW who was not present to defend himself. While some of the defendants may have participated in the plunder given BISOM, it is also plausible that the grossly incompetent malpracticing AG actors participated simply to avoid having to do work which would interfere in their leisure activities.

56

325. The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff. BRADSHAW was also slandered and defamed in the CNMI media. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged. His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting. These events further brought much emotional distress, pain and suffering to BRADSHAW. They also brought about a loss of enjoyment of life to BRADSHAW. The actions of the defendants were extreme and outrageous. They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other injury on BRADSHAW and/or to interfere in BRADSHAW's civil rights per the US Constitution. Because the CNMI SC was totally incompetent and biased, the actors were able to successfully bring this conspiracy to fruition and impose a judgment on BRADSHAW which was illegal since service was never legally made.

326. To address the illegal judgment entered by the SC, BRADSHAW brought action in the CNMI SC in 2005 to void the default judgment of $139,000. The SC granted this motion in Dec 2005. This action cost BRADSHAW personally $4,000. The actions of the defendants make BRADSHAW continue to incur expense in the courts to obtain relief from the injuries caused.

327. BRADSHAW prays for relief for the actual damages of $4,000 in case 06-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to BROWN, FORELLI, SOSEBEE, CLAYTON, BISOM, SORENSEN and the CNMI. BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other

57

damages of $279,000 from FORELLI, SOSEBEE, BROWN, CLAYTON, BISOM , SORENSEN and the CNMI as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

### EIGHTH CLAIM--RICO Violations (18 USC 1961-1964)

328. Plaintiff incorporates herein by reference paragraphs 1-327 as hereinabove alleged as if set forth here in full.

329. The defendant CNMI conspired and acted through her agents FORELLI, BROWN, CLAYTON, and SOSEBEE and with BISOM and SORENSEN in 1997 to 2005 in the CNMI to defraud BRADSHAW  The defendants violated BRADSHAW's constitutional rights and his business and property interests under the US Constitution and 14th amendment and 18 USC 1961-1964.

330. The CNMI is engaged in promoting interstate and foreign commerce with the US and is an RICO enterprise by definition.  Though the AG defendants acting in collusion are a de facto enterprise as well (to the extent that they could achieve personal gain), they are also agents acting for the CNMI enterprise which is primarily engaged in interstate and foreign commerce.  Since lawyer SORENSEN was an officer of the CNMI Courts, he also was an agent for the CNMI enterprise as well as being a principal for his own part in the RICO activities.

331. The CNMI action against BRADSHAW involved collusion among its agents and SORENSEN and BISOM and with evidence of conspiracy (as established in the preceding claim seven on conspiracy).  The actions involved criminal activities; established in a pattern; and involved a multiple number of related/linked incidents starting in 1997 and continuing till

58

2005. BRADSHAW was injured from this conspiracy.

332. RICO involved a series of actions. They included the acts of SORENSEN/BISOM by 1999 to prepare fraudulent documents to obtain a default judgment against BRADSHAW; the acts of someone in the CNMI to also prepare fraudulent postal receipt documents; the acts of FORELLI and SOSEBEE in 2000 to illegally withdraw from representing BRADSHAW without notifying BRADSHAW before the trial; the acts of FORELLI in 2000 to ignore improper/illegal acts by BISOM/SORENSEN in the CNMI courts in 1999-2000; the actions of the CNMI courts in 1996-2000 to illegally assume jurisdiction over BRADSHAW which they lacked in order to enter a default judgment against BRADSHAW in a malicious and grossly incompetent manner; acts of CLAYTON to mishandle the appeal and not notify BRADSHAW and the acts of BROWN to personally or by influencing others to hide/destroy documents and work against Bradshaw in cases in 2004-2005 before the CNMI SC and the USDC of Idaho.

333. As cited/allowed in previously cited claims herein, the prima facie and circumstantial evidence in case 96-1320 establishes collusion and conspiracy by the parties. This has contributed to commit RICO. This evidence includes the presence of the same type of mysterious postal receipt documents from both BISOM/SORENSEN and the AG's office; the incredible decision of the AG's office to hide and cover up evidence of criminal acts of fraud by BISOM/SORENSEN; the obvious efforts of the AG's office to continuously work to aid and assist BISOM and work against BRADSHAW in its actions. The gross incompetence and malicious negligence and malpractice can only be only be explained in the vein of conspiracy. It is inconceivable that all of the several lawyers in the AG's office could all be so incompetent and negligent without the presence of conspiracy. Even tho role of the SC in the

59

case logically involved conspiracy. It is hard to appreciate that any judge could be so stupid and incompetent as was the SC judge in 96-1320--apart from conspiracy. Finally, there is the evidence of unnecessary and improper contact between SOSEBEE and SORENSEN. All of this suggests conspiracy.

334. The prevalence of criminal and racketeering activities in the CNMI government and among its employees are well established. As cited herein, SC Justice Castro is alleged to have used his judicial position in the year 2000 to rip off parties before his court. In one instance he allegedly used his office to bestow an improper/illegal payment of almost $300,000 to his colleague Pedra Atalig. Castro allegedly shared in this plunder. As recently as July 2006, the local Saipan papers reported on several of the currently acknowledged corruption cases on going in the CNMI. For example, Crispin Kaipat, Clerk of the Supreme Court, misappropriated some $36,000 from a deceased estate which he administered; Ramon Mafnas, Commissioner of Public Safety, allegedly made off with $650,000 from the estate of his deceased brother; Raajkumar Kurapati, Chief Financial and Administration Officer of the Northern Mariana College, was accused of receiving $7,666 in improper annual leave payment; Benigno Fejeran, Member of Board of Directors of the Commonwealth Ports Authority, was accused of improper business dealings; the Saipan Liberation Day Committee allegedly misused up to $50,000; and eight new corruption cases are being investigated by the Public Auditor.

335. The illegal actions and improper judgments allowed by the defendants brought plaintiff a loss of property (money as well as unnecessary, excessive and destructive wear and tear on plaintiff's car in order to go to distant legal libraries, consult lawyers, file papers,

Received   Sep-22-2006 07:07   From—   To-US DISTRICT COURT, N   Page 002

make copies, fax documents, etc)   BRADSHAW was also slandered and defamed in the CNMI media. BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged.  His professional status as a CPA was damaged in the media to affect his ability to earn a living when he resumes the practice of accounting.

336.  These events brought much emotional distress, pain and suffering to BRADSHAW.  Since these problems arose in the year 2004, the stress on BRADSHAW has created and exuberated health problems.  The legal conflicts forced on BRADSHAW and the need to proceed pro se have also brought about a loss of enjoyment of life to BRADSHAW. The actions of the defendants were extreme and outrageous.  They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.

337.  BRADSHAW prays for relief for the actual damages of $4,000 in case 96-1320 for the void action, $4,000 in case 05-0084 and all other costs incurred to date in case 05-0027 as expanded and such other relief as the court may decide and order/allocate to FORELLI, SOSEBEE, CLAYTON, BROWN, BISOM, SORENSEN and the CNMI.  Finally, BRADSHAW prays for relief for the punitive, exemplary, compensatory, special, general and other damages of $270,000 from FORELLI, SOSEBEE, CLAYTON, BROWN, BISOM, SORENSEN and the CNMI as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

338.  The CNMI acted through its agents in this claim.  A principal is responsible for the actions and omissions of an agent.

Received  Sep-22-2006  07:07    From-    To-US DISTRICT COURT, N    Page 003

**NINTH CLAIM--Employment Contract Breached, Supplemental Claim**

339.  Plaintiff incorporates herein by reference paragraphs 1-338 as hereinabove alleged as if set forth here in full.

340.  By the terms of BRADSHAW's employment contract with the CNMI, the CNMI implied its duty to provide BRADSHAW legal assistance and indemnification for his official actions.  This is a fiduciary duty for BRADSHAW's official capacity suit and actions.  There is also an implied benefit of the Employee's Indemnification Act (PELDIA) for BRADSHAW's personal and individual actions in the performance of his duties.  These benefits were denied BRADSHAW.

341.  The CNMI acted in 1997-2005 through its agents FORELLI, BUSH, COTTON, CLAYTON, SOSEBEE, and BROWN to breach BRADSHAW's contract.

342.  The illegal actions and improper judgments allowed by the defendants brought a loss of money to plaintiff.  BRADSHAW was also slandered and defamed in the CNMI media.

343.  BRADSHAW's personal character, reputation, good name, standing, property rights, etc were damaged.  His professional status as a CPA was damaged in the media. to affect his ability to earn a living when he resumes the practice of accounting.  These events further brought much emotional distress, pain and suffering to BRADSHAW.  They also brought about a loss of enjoyment of life to BRADSHAW.

344.  The actions of the defendants were extreme and outrageous.  They were done recklessly, maliciously and intentionally with a desire to inflect monetary, emotional and other damage on BRADSHAW.  They cased a loss of the enjoyment of life to BRADSHAW.

Received    Sep-22-2006 07:07    From-    To-US DISTRICT COURT, N    Page 004

AG's office and the SC.  SORENSEN was an officer of that court as well as being an agent for BISOM.  The actions of the defendant CNMI and its agents and SORENSEN and BISOM

345.  BRADSHAW prays for relief for the actual damages of $4,000 in case 96-1320 for the void action, $4,000 in case 05 0084 and all other costs incurred to date in case 05 0027 as expanded and such other relief as the court may decide and order/allocate to the CNMI.

346.  Last, BRADSHAW prays for relief for the punitive, exemplary, special, general, compensatory and other damages of the amount of the contract ($55,000) from the CNMI as the court may allocate for emotional and mental distress and the loss of the enjoyment of life.

### TENTH  CLAIM--Intentionally  Omitted

347-355. Deleted

### ELEVENTH  CLAIM-Violation  Civil  Rights  Act  of  1870  and  42  USC  1981

356.  Plaintiff incorporates herein by reference paragraphs 1-355 as hereinabove alleged as it set forth here in full.

357.  The CNMI, acting through its activities of its agents in the AG's office (like BROWN, CLAYTON, SOSEBEE and FORELLI)  and SC in upholding illegal employment practices and actions in its courts, acted with BISOM (and his agent SORENSEN) to discriminate against BRADSHAW and deprive him of due process, equal rights under the law and constitutional rights on the basis of his national/racial origin as being a US state sider in contrast to the local NMI persons of NMI racial descent.  While the AG defendants and BISOM (through his agent SORENSEN) were all Americans of non NMI ancestry/racial descent, they all participated in the discrimination for money or personal benefit/gain.  For BISOM/SORENSEN, the gain is obvious, they stood to reap a court judgment against BRADSHAW which was impossible without the participation and effective concurrence of the

Received  Sep-22-2006  07:10      From-      To-US DISTRICT COURT, N      Page 001

AG's office and the SC. SORENSEN was an officer of that court as well as being an agent for BISOM. The actions of the defendant CNMI and its agents and SORENSEN and BISOM clearly violated the Civil Rights Act of 1870, 42 USC 1981 and the US Constitution. While the courts have excluded the CNMI as a person under 42 USC 1983, the CNMI is a person under the Civil Rights Act of 1870 and 42 USC 1981 and is therefore liable for depriving BRADSHAW his rights under the US Constitution.

358. It is CNMI government policy to discriminate against persons of non-NMI racial descent as established in articles XI and XII of the CNMI Constitution which restricts land ownership from so-called aliens (or persons of non NMI racial descent) and in local laws and employment actions which grants favoritism to local indigenous people. This racial discrimination permeates throughout the whole structure of government in its dealing with persons of non-NMI racial descent. In the summer of 2002, the NMI legislature introduced a bill to amend the NMI Constitution to prohibit anyone other than persons of Northern Marianas descent from running for public office. This bill was defeated, but it shows the attitude of local indigenous citizens to discriminate against outsiders. In June 2006, the NMI legislature passed Senate Bill 15-46 which provided that foreigners (which by definition included US citizens of non-NMI descent) could obtain limited ownership interests in condominium apartments above the ground floors. US citizens from mainland America are considered foreigners in the eyes of the CNMI. The AG lawyers and court officials know and understand this prevailing discrimination. They either go along with it or they are out of a job.

359. The racial, ancestry and national origin discrimination in favor of local people of NMI racial descent, who are US citizens, and other US citizens, who are not of NMI descent,

Received    Sep-22-2006 07:10    From-    To-US DISTRICT COURT, N    Page 002

means that there are two distinctively different classes of US citizens in terms of the NMI,

based on racial, ancestry or national origin factors. The US Constitution does not provide for

two classes of US citizens. There is only one class per the Constitution. While the AG

defendants may not in their own right likely engage in racial discrimination against a fellow

American outsider like BRADSHAW, they would gladly accept money as paid lawyers to

defend and work for the racial discrimination interests of the CNMI. After all, gangsters like Al

Capone and Lucky Luicano could and did buy the best lawyers available with money. The

same applies to defendants SORENSEN and BISOM who stood to gain by participating with

the CNMI in its discrimination against BRADSHAW.

360. The fact that the AG lawyers may not have discriminated against a fellow

American means nothing in the long run. They were bought and paid for by their employer.

In order to earn their money, they willingly did and would engage in whatever was necessary

in the context of their jobs. They were agents working for the CNMI in its discrimination

practices against BRADSHAW, the US Constitution; 42 USC 1981 and the Civil Rights Act of

1870. The CNMI acted through its agents in this claim. A principal is responsible for the

actions and omissions of an agent.

361. The actions of defendants in violating the Civil Rights Act of 1870 produced a

cause of action, pursuant to which both legal and equitable remedies may be had, including

compensatory and under certain circumstances, punitive damages (14A C.J.S. Section 226).

This remedy is separate, distinct and independent from other civil rights remedies (ibid.). The

actions of the defendants violated BRADSHAW's US Constitutional rights to due process and

equal protection of the laws. The defendants acted recklessly, deliberately, maliciously and

Received   Sep-22-2006 07:10        From-        To-US DISTRICT COURT, N    Page 003

with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW. BRADSHAW's character, professional reputation, good name, standing, property rights, etc. BRADSHAW was damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.

362. BRADSHAW accordingly suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury. BRADSHAW suffered loss of the enjoyment of life. The remedy is for the court to order restitution, removal of the illegally gained judgments and payment of damages to the plaintiff as specified in the preceding claims.

TWELFTH CLAIM--Intentionally Omitted

363-370. Deleted.

THIRTEENTH CLAIM--Intentionally Omitted

371-374. Deleted.

FOURTEENTH CLAIM--Intentional, Malicious and/or Irresponsible Actions

Causing Damage to Plaintiff BRADSHAW's Reputation

as an Employer, Supervisor, and as a Person

375. Plaintiff incorporates herein by reference paragraphs 1-374 as hereinabove alleged as if set forth here in full.

376. The NMI defendant and its agents FORELLI, BUSH, CLAYTON, SOSEBEE, BROWN, and COTTON; and BISOM/SORENSEN acted recklessly, deliberately, maliciously and with intent and foreknowledge to bring hurt, damage and injury on BRADSHAW.

Received  Sep-22-2006  07:10    From-    To-US DISTRICT COURT, N    Page 004

BRADSHAW's character. professional reputation. good name. standing. property rights, etc. were damaged, defamed, slandered, maligned and infringed upon by the actions of the defendants.

377.  From Dec 1996 to date, BRADSHAW accordingly has suffered much pain and distress (mentally, emotionally and physically) and expended much money, personal funds and recourses and efforts in an attempt to obtain redress and to correct the injury.

378.  The remedy is for the court to order restitution and removal of the illegally gained judgments and payment of damages by the defendants to the plaintiff as specified in the preceding claims

## FIFTEENTH CLAIM Intentional, Malicious and/or Irresponsible Actions Causing Emotional and Mental Distress On BRADSHAW

379.  Plaintiff incorporates herein by reference paragraphs 1-378 as hereinabove alleged as if set forth here in full.

380.  The failure to exercise legitimate and proper due care and concern and/or honesty and trueful actions in the conduct of their duties on SC case 96-1320 by defendant CNMI and BISOM; and SORENSEN have resulted in the slandering, libeling and damage to plaintiff BRADSHAW; and have resulted in placing great emotional and mental distress upon plaintiff BRADSHAW from 1996 to date.

381. BRADSHAW was accused of being political and an anti Semite in the CNMI media as a result of the illegal CNMI and BISOM action and judgment against BRADSHAW (see Exhibit K herein and the motion for partial summary judgment and supporting memorandum and affidavit filed by BISOM in 1999--see Exhibits V and JJ to BRADSHAW's

Received  Sep-22-2006  07:10          From-          To-US DISTRICT COURT, N          Page 006

Affidavit supporting his motion for partial summary judgment as filed in this court on Sep 14, 2006). The anti-Semite charges will have adverse effect when BRADSHAW chooses in the future to make religious pilgrimages to the state of Israel and/or to relocate there for retirement (as is planned by plaintiff). The state of Israel is known to monitor the activities of people alleged to be anti-Semites. The political charges will affect BRADSHAW throughout the rest of his life--both in work and retirement. The BISOM/SORENSEN and the CNMI courts have branded BRADSHAW both an anti-Semite and political as such in the media.

382   The actions and omissions of the defendants were extreme and outrageous and done intentionally, recklessly and/or irresponsibly with the result of causing severe emotional and mental distress or were certain or substantially certain that such distress would result from their conduct, actions and omissions. The remedy is for the court to order restitution and removal of the illegally gained judgments and payment of damages by the defendants to the plaintiff as specified in the preceding claims.

### SIXTEENTH  CLAIM--Intentionally  Omitted

383-386 Deleted.

### SEVENTEENTH  CLAIM--Intentionally  Omitted

387-397.  Deleted.

**WHEREFORE,** Plaintiff BRADSHAW prays for judgment as follows:

1.  For the CNMI to be compelled to produce for BRADSHAW's inspection/copying at the Clerk of SC's office all of the documents on process service/non-service on BRADSHAW and "all" alleged postal receipts as submitted to the SC by BISOM/AG in 96-1320.

Received  Sep-22-2006  07:10        From-        To-US DISTRICT COURT, N    Page 006

2. For the appointment of a Special Prosecutor to investigate the operations of the CNMI AG and its courts in SC case 96-1320.

3. For an independent investigation to be made of BRADSHAW's criminal complaint of conspiracy and fraud against ROBERT A. BISOM, JAY H. SORENSEN, and/or whomever of their associates; L. DAVID SOSEBEE and whomever else in the Office of the AG responsible for the preparation and submission in court of alleged postal documents; and of AG PAMELA BROWN and others influenced by her for hiding/destroying documents in cases before the CNMI and US courts.  Alternatively, request the US District Court to forward this case to the FBI and the appropriate US Attorney for investigation and resolution in the vein of criminal violations.

4. For the particulars of this case to be forwarded to the CNMI Bar Association for appropriate action on allegations of criminal misconduct by CNMI attorneys.

5. For ROBERT A. BISOM to be ordered to repay the $140,000 which he collected from the CNMI in case 96-1320 on the premise that the money was obtained in an illegal manner.

6. For BRADSHAW to be declared to be eligible by CNMI laws for needed legal assistance and indemnification in SC case 96-1320 in connection with both the official and individual claims for his work in the CNMI in 1993-1994.

7. For actual damages (to include $8,230.00 in previous litigation and expenses by BRADSHAW) against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, L. DAVID SOSEBEE, PAMELA S. BROWN, D. DOUGLAS COTTON and ANDREW CLAYTON of the Office of the CNMI AG; ROBERT A. BISOM; and attorney JAY H. SORENSEN according to

Received   Sep-22-2006 07:10        From-        To-US DISTRICT COURT, N   Page 007

proof and as apportioned, allocated, and assigned to each defendant by the trier of the facts;

8. For punitive, special, compensatory, general, exemplary and other damages of Two Million and Two hundred and Eighty-five Thousand Dollars ($2,285,000) against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, L. DAVID SOSEBEE, D. DOUGLAS COTTON, PAMELA S. BROWN and ANDREW CLAYTON of the AG's office; ROBERT A. BISOM; and JAY H. SORENSEN according to proof, in an amount to be apportioned, allocated and assigned to each defendant at the discretion of the trier of the facts;

9. For damages against the CNMI; defendants NICOLE C. FORELLI, WILLIAM C. BUSH, D. DOUGLAS COTTON, L. DAVID SOSEBEE, ANDREW CLAYTON and PAMELA S. BROWN of the Office of the CNMI AG; ROBERT A. BISOM; and JAY H. SORENSEN: for interest at the prevailing rate thereon for outstanding claims;

10. For reasonable attorney and investigatory fees and other expenses incurred by BRADSHAW in representation, consultations, inquiries and investigations;

11. For costs of suit incurred;

12. For such other and further relief as the court may deem proper.

## BRADSHAW FILES THIS ACTION PRO SE

13. Pleadings in this case are being filed by plaintiff In Propria Persona, where they are to be considered without regard to technicalities. Propria pleadings are not to be held to the high standards of perfection as practicing lawyers. A claim can only be dismissed for failure to state a claim if it appears "beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." See Haines v. Kerner et. al. 404 US 519; 92 S. Ct. 594, also See Power 914 F2d 1459 [11th Cir 1990], also see Hulsey v. Owens

63 F3d 354 [5th Cir 1995]. also see in Re Hall v. Bellmon 935 F 2d 1106 [10th Cir 1991]).

14. In Puckett v. Cox, It was held that a pro-se pleading requires less stringent reading than one drafted by a lawyer (456 F2d 233 [Sixth Circuit USCA]).

15. Finally, a reviewing court is required to take notice of and incorporate relevant statutes and rules and precedents even if not pleaded in the complaint by a pro se plaintiff (Haines v. Kerner, 404 US 519, 30 L. Ed 2d 652, 92 S. Ct. 594 (1972)).

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this 21st day of September 2006 at Calder, Idaho.

Robert D. Bradshaw, Plaintiff Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 21st day of Sep 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Gregory Baka, Dep Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950

Robert D. Bradshaw, Plaintiff, Pro Se