Received  Sep-22-2006  07:49    From-    To-US DISTRICT COURT, N    Page 004

## AFFIDAVIT

The undersigned, Robert D. Bradshaw, hereby certifies and affirms that before trial in Superior Court Civil Case 96-1930, the last communication received by me from the CNMI Attorney General occurred around Jun 30, 1999 from Asst AG William C. Bush, as prompted upon my initiation. No further communications, messages, letters, faxes, phone calls, etc were received by my on this case or its appeal, 2000-016 and 2000-023, until April 2004 when I received a letter from the AG, as initiated by my phone call to Mr Sachs of the AG office. On Jul 15, 2000, I wrote the AG on this matter but my letter was not answered.

In terms of communications from Mr Bisom and/or his attorney Jay H. Sorenson, I have never had any communications from them whatsoever in any form in this Case or its appeal. In about early 1997, I did receive two packages which were unidentified as to senders. They came via certified mail without any identification as to who their mailers were--although they did have a return post office box address. These two packages or mailings were returned to their senders by the post office.

In terms of possible "constructive service" from Mr. Bisom or his attorney or the AG on Civil Case 96-1320 or its appeal on Supreme Court case 2000-016 and 2000-023, I live alone and I have no other persons in my household or on my property who would accept mail or any form of service from anyone. I have no wife, no children, no employees, no friends, no colleagues, no acquaintances, etc who have or would accept mail or personal legal services on my behalf. All mail addressed to me in the US since 1994 would come only to me and no one else. I have known no one or had anyone on my property named Manny or anything close to that in the US since 1994. These facts are uncontroverted.

Dated at St. Maries, Idaho, this _9th_ day of _August_ 2005

_Robert D. Bradshaw_
Robert D. Bradshaw

"C"

STATE OF IDAHO
COUNTY OF BENEWAH

I, _____ **Jerry Lee Nelson** _____, Notary in and for the State of Idaho,

residing at _____ **St. Maries, Idaho.** _____ do hereby certify that on this

_____ **9** _____ day of _____ **August** _____ 2005, personally appeared

before me Robert D. Bradshaw, to me known to be the individual described in and who

executed the within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _____ **9** _____ day of **August** 2005.

NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

**JERRY LEE NELSON**
**Notary Public**
**State of Idaho**

MY APPOINTMENT EXPIRES

_____ **11/15/07** _____

2

Received  Sep-22-2006 07:49    From-    To-US DISTRICT COURT, N    Page 006

## AFFIDAVIT

The undersigned, David Vanderholm, hereby certifies and affirms the following:

I have been the rural mail carrier along the North Newport Highway in Elk, Washington from 1987 to the present.  In 1996-1998, I delivered mail to Robert D. Bradshaw who operated a video store at 40203 N. Newport Hwy.  As a part of my duties, when present on my working days, all mail coming to Mr Bradshaw on my route would have come into my hands and/or my attention--certainly in 1996-1998 when Bradshaw lived in Elk and even somewhat in 1999-2000 after Mr Bradshaw moved and his mail was being forwarded or returned from Elk.  After Mr Bradshaw moved in late 1998, I delivered no more mail as addressed to him in Elk.  It was forwarded to his new address and/or eventually returned.

A question has come to my attention over certified mail from Saipan, MP 96950 to Mr Bradshaw.  Reportedly, two certified mail packets came in letter sized brown envelopes in late 1996 and/or 1997 from an unidentified sender but with a Saipan Post Office box.  Reportedly, these were returned by the Elk Post Office as Mr Bradshaw refused to accept them.

Otherwise, it has been brought to my attention that some four or so more certified mail packets allegedly came to Mr Bradshaw in Elk from Saipan, MP 96950 in about 1998-1999 and that they were receipted by a third party in Elk, possibly named "Manny" or something similar.  I recall no instance when I had a certified mailing for Mr Bradshaw which was delivered to a third party.  Postal regulations require the delivery of certified mail to persons 18 years old or older at the address so stated and persons known to the carrier.  For sure, I would have remembered four of these mailings.  If the mailings were in letter sized brown envelopes without a named mailer, they would have really stuck out.  Finally, I have never known a person named Manny (evidently a Hispanic derived name) or anything similar on my route.

Dated at Deer Park, Washington this _10_ day of _May_ 2005

_____
David Vanderholm
US Post Office, 9409 Bridges Road, Elk, WA
Phone. 509-292-2750

STATE OF WASHINGTON
COUNTY OF SPOKANE

I, _Jeanetta R Taylor_, Notary in and for the State of Washington,

residing at _Newport, WA_ do

hereby certify that on this _10th_ day of _May_ 2005, personally

appeared before me David Vanderholm, to me known to be the individual described in and who executed the

within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _10th_ day of _May_ 2005.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF
WASHINGTON

MY APPOINTMENT EXPIRES _Feb 16, 2008_

"D"

Received    Sep-22-2006 07:48    From-    To-US DISTRICT COURT, N    Page 007

CERTIFIED MAIL

Z 347 304 518

FIRST CLASS

BRAD365  97417C003 1A95 11/22/95
NOTIFY SENDER OF NEW ADDRESS
BRADSHAW
GENERAL DELIVERY
ONTARIO OR 97914-9999

RETURN RECEIPT
REQUESTED

11-25

Received    Sep-22-2006  07:49        From-        To-US DISTRICT COURT, N    Page  008

The following is transmitted by both FAX and US mail:

Jan 25, 2005

AG, Commonwealth of the Northern Mariana Islands
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

Reference is made to CNMI Superior Court Case No 96-1320 (in which the case file shows post office receipts allegedly from me showing that I received service on the complaint and its amendments by certified mail), my written and telephone communications on this matter to your office from Sep 12, 2004 on to this date, my attached memo for record (enclosures C and D), and my request from me to file a criminal complaint against the person or persons whom had prepared the receipts, all of which I deem to be forgeries and involving fraud to prompt a $139,000 default judgment against me in the Superior Court case.

It is my understanding that your office has undertaken an investigation commenced on or about Sep 12, 2004 on my request to file criminal charges against the party or parties producing the alleged mail receipts. In my conversation with Mr Buckingham of your office, I noted the possibility that the alleged mail receipts involved could become lost or damaged in the course of your investigation. I strongly recommended that your office make xerox copies of the original receipts and have a notary certify them as certified true copies of an original. These copies can be used in your investigation while the actual receipts can be safeguarded and secured to prevent loss or damage. I hope that this security process was implemented.

I also suggested to Mr Buckingham that Postal inspectors are available in the US to precisely investigate matters such as my complaint. This process could be done fairly quickly and involve little expense to the CNMI (although each passing day since Sep 12, 2004 goes to make it more possible that the Postal records or people will be unable to determine what happened). Finally, I suggested that this whole thing can be referred to the FBI as it involves interstate fraud and possible conspiracy to defraud both me and the CNMI (I note that the CNMI has already paid out over $100,000 in this matter plus the judgment of $139,000 against me).

In the Supreme court decision on this case, it appears that plaintiff argued that under the CNMI indemnification act, the CNMI should pay the $139,000. The court said that since I allegedly had not asked for any indemnification, none is due (apparently, the court said that if I had asked for indemnification, the plaintiff would have been paid the $139,000 judgment). Of course, it is totally wrong (and I would suggest that it is absurd and virtually impossible to believe) that "I had not asked for indemnification." The truth is that my attorney, the AG, had not informed me on what had happened or was happening on this case, despite my many contacts and persistence with the AG on this matter.

In any case, in accordance with the Supreme Court decision, I sent your office the attached letter (enclosure A) on Sep 12, 2004 by both fax and mail requesting indemnification. Mr Buckingham confirmed by telephone conversation that he had seen my fax. As I desired something in writing on this matter, I wrote the attached letter (enclosure B) on Nov 26, 2004 asking for a formal confirmation. I never received a reply.

Again, I ask for a formal confirmation on this request from me for indemnification of $139,130 and what your response is to my request. I will only note here that if this request is not honored promptly, I am continuing to incur expenses for phone calls, postage, etc, plus much pain and suffering. I hope that your office with address these needs promptly. Thanking you, I am,

Your very truly,

Robert D. Bradshaw
PO Box 473, Calder, ID 83808, Phone 208-245-1691

(38)

This letter is being transmitted by both fax 670-664-2349 and  US mail.

Feb 7, 2005

Attorney General, CNMI
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

The purpose of this letter is to once more ask for AG representation,  assistance
and indemnification on Civil Case 96-1320.

On Sep 12, 2004 and thereafter I furnished your office affidavits of 23 Aug 2004
from me on all correspondence from your office to me and my correspondence to
you on the question of service.  Beyond these letters from me, my files show at
least one more letter, copy attached,  which discussed the case but did not
comment on service (hence I did not send it to you earlier in  2004).

On the question of indemnification.  page 18 of the Supreme Court decision
indicates that indemnification  is contingent upon the employee requesting
government defense in the court action five days before the answer is filed on the
complaint.  My letter of Jul 14, 1999  did request defense if service was effected
(though the alleged service was unbeknown to me, the court  decided that service
was made).   Therefore this request date of five days before an answer was made
was met or was otherwise inapplicable, irrelevant and/or impossible (for many
reasons including the reality that no answer was ever made in court).

Too, in my conversation with Mr Buckingham on Sep 12, 2004 I brought up the
matter of me filing criminal charges and asked him to represent me and to follow
up in Superior Court to have that $139,000 judgment stricken from the record on
the basis of fraud.   Several times, I noted to Mr Buckingham that he was
supposed to be my attorney, per my view.  Mr Buckingham and I also briefly
noted the situation with the statutes of limitations.

Of course, all along, I have wanted your office to make a prompt investigation of
this matter and go into the CNMI Superior Court and have the judgment against
me completely stricken.  Also I made request on Sep 12, 2004 for your office to
take immediate action on the question of the CNMI indemnification act.  If the
CNMI paid the $139,000 in Sep 2004, the question of the striking the judgment
from the record because of fraud could have been delayed a few days or weeks
after Sep 12, 2004.





Received    Sep-22-2006 07:49    From-    To-US DISTRICT COURT, N    Page 010

On indemnification, page 10 of the Supreme Court decision notes the trial court's decision to refuse indemnification to Bradshaw for the $139,000 default judgment because "there was no request by defendant Bradshaw" for indemnification under Section 2304(a).    But the court decision was made even after there was a recognition that there was a conflict of interest on the question of indemnification between Bradshaw and the CNMI government (p. 12 of the decision).

By copy of the attached letters, I have requested indemnification from the CNMI via letters to the Public Auditor and the AG (copies attached).    Once again, I recommend that the CNMI take immediate action to indemnify me for the previously cited $139,130 plus the new expenses incurred by me on 96-1930 (approximately $100 in telephone calls, fax charges, postage, paper and copies, car expenses, notary charges, etc).

Finally, I note that I have filed criminal complaints with your office against the party or parties responsible for representations made to the CNMI courts about alleged certified letters being sent to me.    As I noted in my Jul 14, 1999 letter to the AG, any such allegations are fraudulent.    Because the statutes of limitations dates are in jeopardy, I urge the CNMI to take immediate action on this letter. Thanking you, I am,

Yours very truly,

Robert D. Bradshaw
PO Box 473
Calder, ID 83808
Phone   208-245-1691



Received    Sep-22-2006  07:58    From-    To-US DISTRICT COURT, N    Page 001

LAW OFFICE
# HALL, FARLEY, OBERRECHT & BLANTON, P.A.

702 WEST IDAHO STREET, SUITE 700
KEY FINANCIAL CENTER
BOISE, IDAHO 83702

POST OFFICE BOX 1271
BOISE, IDAHO 83701

TELEPHONE (208) 395-8500
FACSIMILE (208) 395-8585
V:\Forms_Word\BOILERPLATE\Letterhead.doc

E-MAIL: nrmtacs@hallfarley.com
WEB PAGE: www.hallfarley.com

RICHARD E. HALL    KEELY E. DUKE
DONALD J. FARLEY    JAMES S. THOMSON, II
PHILLIP S. OBERRECHT    SCOTT R. LEARNED
J. CHARLES BLANTON    BRYAN A. NICKELS
RAYMOND D. POWERS    MATTHEW J. RYDEN
CANDY WAGAHOFF DALE    BRENT T. WILSON
J. KEVIN WEST    CHRIS D. COMSTOCK
BART W. HARWOOD    JILL M. IWASZ
JOHN J. BURKE    JENNIFER A. SWARTZ
KEVIN J. SCANLAN    KARIN DWELLE
TAMSEN L. LEACHMAN

*With Attorneys Admitted to Practice Law in
Idaho, Oregon, Washington and Utah*

July 13, 2005

Robert D. Bradshaw
P.O. Box 473
1530 W. Trout Creek Road
Calder, ID  83808

Re.    *Bradshaw v. CNMI, et al*
HFOB File No. 3-635

Dear Mr. Bradshaw:

This letter is written in response to your letter dated June 20, 2005.

Representatives of the CNMI Office of the Attorney General ("CNMI AG") did not access, let alone "take possession" of, the CNMI Superior Court's file regarding Case No. 96-1320 on September 12, 2004, or on any other date. Moreover, Ms. Sablan has confirmed that the Superior Court of the CNMI does not check out or otherwise permit lawyers or other persons to take possession of its files. By contrast, the Court permits inspection of its files <u>only</u> at the clerk's window in the presence of the clerk. Thus, even if CNMI AG representatives endeavored to review the court's file, which they did not, they could not have "taken possession" of the same.

The CNMI AG strenuously denies that it altered, removed or tampered with any of the CNMI Superior Court's records concerning Case No. 96-1320 or any other case.

Very truly yours,

Matthew J. Ryden

MJR:ccv
cc:    clients





Received Sep-22-2006 07:58 From- To-US DISTRICT COURT, N Page 002

# SUPERIOR COURT

COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS
P.O. BOX 500307
SAIPAN, MP 96950

January 18, 2006

Robert D. Bradshaw
P.O. Box 473
Calder, ID 83808

Dear Mr. Bradshaw [illegible]

Enclosed you [illegible] documents [illegible] requested [illegible] your letter [illegible] the court does not have the letter [illegible] request [illegible] Opposition [illegible] to R[illegible] Case filed on February 03, 2000

Should you n[illegible] addition[illegible] information [illegible] let me kn[illegible]

Sincerely,

Bernadita A. Sablan
Clerk of Court

(42)

11H

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4 a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

ROBERT D. BRADSHAW
40203 N. NEWPORT HWY
ELK, WA 99009

4a. Article Number
Z 142 485 811

4b. Service Type
☐ Registered        ☐ Insured
☐ Certified         ☐ COD
☐ Express Mail      ☐ Return Receipt for Merchandise

7. Date of Delivery
6/2/98

5. Signature (Addressee)
Manny Mangohig

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1991    ☆ U.S.P.O. 1993-307-030    DOMESTIC RETURN RECEIPT

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):
1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

ROBERT D. BRADSHAW
40203 N. NEWPORT HWY
ELK, WA 97009

4a. Article Number
Z 142 485 883

4b. Service Type
☐ Registered        ☐ Insured
☐ Certified         ☐ COD
☐ Express Mail      ☐ Return Receipt for Merchandise

7. Date of Delivery
7/12/97

5. Signature (Addressee)
Manny

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form 3811, December 1991    ☆ U.S.P.O. 1993-307-030    DOMESTIC RETURN RECEIPT

EXHIBIT C

Received   Sep-22-2006  07:58        From-        To-US DISTRICT COURT, N     Page 004



**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone  208-245-1691**

Defendant, Pro Se

# IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM | ) Civil Action No 96-1320 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS; ROBERT D. BRADSHAW, former Temporary Public Auditor, in his individual capacity, et al. | ) **BRADSHAW'S AFFIDAVIT ON** ) **TELEPHONE AND FAX** ) **CONTACTS WITH THE CNMI** ) **ATTORNEY GENERAL--** ) **IN REFERENCE TO** |
| Defendants | ) **CNMI CASE 96-1320** |

1.  Attached as exhibit A hereto is a record from Verizon of long distance phone calls made by me to Saipan on the dates indicated. The 234 numbers in Aug and early Sep 2004 were calls to Micronesian Legal Services Corp or calls trying to reach them. The 664 numbers are generally to the CNMI AG but calls to 664-2312 and a few of the other calls were to the AG Investigating office. There were a few other calls made by me to the AG in St Maries, ID, some 30 miles away on a telephone calling card which did not provide a record of calls. I also sent several faxes to the AG. And Mr. Ed Buckingham called me a few times.



Received   Sep-22-2006 07:58   From-   To-US DISTRICT COURT, N   Page 005

2. In April 2004, I learned from the CNMI AG that a default judgment for $139,000 was made against me in the CNMI Superior Court Civil Case 96-1320 (as outlined in both the CNMI Superior Court case file 96-1320 and the US District Court of Idaho file 5-84)

3. In Aug 2004, I asked Tom J. Schweiger, former director of Micronesian Legal Services Corp (now with the AG), to help me find out about the 96-1320 default that was entered. He checked the case file and on Sep 9th said that the basis of the judgment was that Robert A. Bisom in 96-1320 filed in court documents showing process service upon me by two means—Bisom served the CNMI AG for me and he also allegedly served on me by alleged certified mailings of summons and complaints which were allegedly receipted by a person apparently named "Manny." Schweiger said that the case files also showed some similar receipts for alleged mailings to me from the AG. He added that he remembered the Bisom case and that the two AG lawyers at the trial of the case had a violent argument which almost turned into a fight.

4. On Sep 12, 2004 (Sep 13, 2004 Saipan time), I contacted the CNMI AG's office and spoke to "Heather" in the Criminal Division. She was briefed on the alleged fraudulent mailing receipts filed in 96-1320 and informed that I wished to file criminal charges against the person(s) who filed the receipts. She referred me to Mr. Lemons who I fully briefed on the alleged fraudulent mailing receipts. He referred me to Asst AG Ed Buckingham who was supposed to be my contact and the person who would conduct an investigation into my allegations.

5. I talked to Mr. Buckingham and informed him fully about the postal receipts and also the fact that the AG had accepted service on the case though Jay Sorensen



Received   Sep-22-2006  07:58       From-                    To-US DISTRICT COURT, N    Page 006

had been expressly told that the AG would not accept service. In our discussion, I remarked that I thought that the AG had a file copy of the case file in its office. But Mr. Buckingham said that the AG did not have file copies of the cases it defended. He added that he would check the file copy at Superior Court.

6. I went to St Maries, ID and faxed the documents I had in my possession on this case with notarized affidavits of my reply on them or the mailing of them (as are now filed in the CNMI Superior Court file 96-1320 and in the US District Court of Idaho file 5-84). I then called Mr. Buckingham back and he verified that he had seen the process service documents filed with the alleged postal return receipts and return of service forms and that the documents on file were as I described (based on the findings of Tom Schweiger). I had the impression that Mr. Buckingham had the documents in front of him, although this might not have been the case.

7. I specifically noted to Mr. Buckingham that I wanted to file criminal charges against the persons responsible for the fraudulent mailing receipts and that I wanted the AG, which was supposed to be my lawyer in this case, to follow up with a court action in the Saipan Superior Court to have the judgment stricken or voided on me as it was obtained by fraud. Otherwise, I specifically requested that the AG at once to take action to pay the $139,000 to Bisom on the basis of the Indemnification Act.

8. I strongly recommended to Mr. Buckingham that certified true copies of the fraudulent receipts be made and used in the investigation and that his office or the court take action to secure the case file as it involved alleged fraud. I also recommended to Mr. Buckingham that the documents or copies thereof be forwarded to the US Postal authorities as they involved US postal fraud. I then suggested that



the AG make for me a certified true copy of the postal receipts and I would at once take them to the US postal inspector in Spokane for an investigation. He said that he would refer the case to Pamela Brown for a decision on what the AG would do on it. Ms Brown was off Island but due back in a few days.

7. Thereafter, I called Mr. Buckingham back on Sep 19 and many times thereafter to get a response on AG follow-up. He told me that Ms Brown was briefed and she had authorized the AG to investigate the fraud charges. I noted to Buckingham that the mail receipts should also be sent to the FBI as the FBI lab has a capability to completely analyze both the writings and the ink used to try to determine who wrote them and if they were prepared by the same pen, and so forth. While Mr. Buckingham did not confirm that he would go the FBI with the documents, he seemed receptive to the idea. I had a feeling that he was limited in what decisions he could make but would have to refer matters to Pamela Brown for any decisions. In our several conversations, I also suggested that he send me copies of the alleged postal return receipts and that I would take them to US Postal inspectors for a postal investigation. I followed up on Jan 25, 2005 with the letter to the AG at Exhibit B (sent by both fax and mail) which recaps the need to make copies of the alleged fraudulent documents, to secure them adequately, and another mention of the need for US Postal Investigators and the FBI.

8. In late Sep 2004, Mr. Buckingham informed me that he had briefed and asked Mr. Joseph Race, acting director in charge of the CNMI investigations, to investigate the case. In a Oct 7, 2004 letter from Mr. Race, he noted that he tried to call me and that he had referred the case to Frank Kapileo and Alfred Teregeyo. I called



4

them a few times and on Oct 20, 2004 I talked to Mr. Kapileo and offered my help and any information which he might need from me. He noted to me that he had the case file in front of himself and he and Mr. Teregeyo were both reading it. He did not say why or how that he came into possession of the case file. But he acknowledged seeing the postal receipts in the file.

9. I made several other contacts with Mr. Buckingham and the investigators over the next several weeks. Their responses were always that they were investigating the case and would get back with me. At one point in time, in January 2005, I discussed the case with Mr. Race. I remember his words that it looked to him like I got a dirty deal from the documents filed by Bisom in court. I had the impression that Mr. Race had personally seen the alleged postal receipts. I asked to speak to Mr. Aldan, who had been appointed Chief of Investigations. Mr. Race said that Mr. Aldan was in Pam Brown's office briefing her--presumably on my case.

10. In Jan 2005, I also tried to talk to Mr. Kapileo but he was out of the office, so Mr. Teregeyo took my call and we chatted about the case. Mr. Teregeyo said that he had the file but that Mr. Kapileo had removed the postal return receipts and had taken them with him to the local Saipan Post Office--supposedly Mr. Kapileo was then talking to the Saipan Postmaster about the receipts (suggesting that he by then had shown the receipts to the postmaster or someone at the Post office). I also repeated my earlier comments that if the AG would send me copies, I would take the receipts to the US Postal Inspectors.

11. In late Jan 2005, I became concerned that the CNMI would not supply me copies of the receipts and that the AG was not making any effort to involve the US



Received   Sep-22-2006 07:58       From-                  To-US DISTRICT COURT, N       Page 009

postal inspectors or the FBI. I called Mr. Buckingham several times in Jan and early Feb. 2005 and tried to encourage him to take some action since he was supposed to be the Asst AG in charge of the case, per Mr. Lemons' words to me.

12. Mr. Buckingham was always friendly and seemed cooperative, interested and concerned. He maintained several times that he had spoken to or was going to speak about the case to Pam Brown, Mr. Race and/or Mr. Aldan. Mr. Buckingham conveyed to me his efforts and desire to get a colorable investigation and to resolve the case. At one time, he suggested that he would make copies of the file and/or at least the documents in question and mail them to me. I said that this would be good.

13. In the meantime, I continued to send faxes and write letters to the AG outlining the need for action to secure the documents by making copies and to pay the $139,000 to Bisom.

14. In my last telephone conversation with Mr. Buckingham in early Feb 2005, his demeanor to me had completely changed. Whereas he had always been a nice, friendly person interested in trying to resolve the case, he abruptly became as cold as ice and was clearing putting some distance between himself and me. In terms of sending me any of the documents, he said no that I had misunderstood him and that the case file was then in the possession of the AG "for review" as he put it.

15. He further communicated that he had been taken off the case and that someone else in the AG's office would contact me in the future on the case. While he did not say so, it seemed clear to me that Mr. Buckingham had been reprimanded and disciplined for trying to be friendly and trying to resolve the case with me. It was clear that Pam Brown herself or others had dressed him down, directly or indirectly.



To-US DISTRICT COURT, N    Page 010                    —From—    Sep-22-2006 07:58    Received

16. No other persons in the AG's office contacted me until I received Ms Brown's letter of Feb 15, 2005 which effectively said that the AG would do nothing further on the case (as filed by me in both the CNMI 96-1320 file and the US District Court of Idaho file 5-84). It was then that I clearly understood that the AG had become an hostile, adversarial party who in the future would work against me and act to protect the guilty parties involved in 96-1320 who had filed the fraudulent documents. I then filed a motion with the CNMI Superior Court to void the judgment and filed suit in the Idaho US District Court.

17. In the US District Court case, I tried to obtain the receipts by discovery. But the CNMI, through its attorney so far has refused my discovery request (s).

18. In June 2005, in a conversation I had with Ms Bernie Sablan, Clerk of the CNMI Superior Court, she told me that the case file on 96-1320, was in her possession for the judge to use in my motion to void. She said that the alleged postal receipts showing service are not presently in the file. I had the impression that Ms Sablan was unaware that the AG's office had had possession of the 96-1320 case file.

19. In all my contacts with the CNMI AG, I was led to believe that the AG had possession of certainly the mail receipts and indeed generally the whole 96-1320 file.

DATED this _____ 2/07 _____ day of _____ Vuley _____ 2005 at St. Maries, Idaho.

Robert D. Bradshaw

STATE OF IDAHO
COUNTY OF BENEWAH



7

I, _Matthew E. Blood_ _____, Notary of the state of Idaho

and county of Benewah, residing at _Benewah County_ _____

do hereby certify that on this ____ 21st ____ day of

____ July ____ 2005, personally appeared before me Robert D,

Bradshaw, to me known to be the Individual described in and who executed the within

instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this 21st day of ____ July ____ 2005.

_Matthew E. Blood_

NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

MY APPOINTMENT EXPIRES

____ 07-11-06 ____

MATTHEW E. BLOOD
Notary Public
State of Idaho

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 22d day of _July_ 2005, I caused to be served a
true copy of the foregoing document by US Mail Postage Paid to each of the following:

Marc Lyons/Rudy J. Verschoor, Ramsden & Lyons (phone 208-664-5818)
PO Box 1336
Coeur d'Alene, ID 83816-1336

Jay H. Sorenson (phone 805-485-6662), Attorney for Robert A. Bisom
4234 Clubhouse Drive
Somis, CA 93066.

Commonwealth of the Northern Mariana Islands, Attention the Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol Hill
Saipan, MP 96950

SCOTT KHENG SHANG TAN, c/o CNMI Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol IIII
Saipan, MP 96950

_Robert D. Bradshaw_

Robert D. Bradshaw, Defendant, Pro Se



8