1  MATTHEW T. GREGORY  # F0205
   Attorney General
2  GREGORY BAKA  # F0199
   Deputy Attorney General
3  OFFICE OF THE ATTORNEY GENERAL
   Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
4  Caller Box 10007, Capital Hill
   Saipan, MP  96950-8907
5  Telephone:    (670) 664-2341
   Fax:          (670) 664-2349
6  E-mail:       gbaka79@yahoo.com

7  Attorneys for Defendants Commonwealth of the Northern Mariana Islands,
   Nicole C. Forelli, William C. Bush, D. Douglas Cotton, L. David Sosebee,
8  Andrew Clayton, and Pamela S. Brown

9

10              UNITED  STATES  DISTRICT  COURT

11          FOR  THE  NORTHERN  MARIANA  ISLANDS

12

13  ROBERT D. BRADSHAW,              )  CIVIL  ACTION  NO.  05-0027
                                     )
14              Plaintiff,           )
                                     )
15          vs.                      )
                                     )
16  COMMONWEALTH  OF  THE            )  **CNMI DEFENDANTS' MOTION**
    NORTHERN  MARIANA  ISLANDS,      )  **TO DISMISS THIRD AMENDED**
17  NICOLE  C.  FORELLI,  WILLIAM  C. )  **COMPLAINT; MEMORANDUM**
    BUSH,  D.  DOUGLAS  COTTON,      )  **OF LAW IN SUPPORT;**
18  L.  DAVID  SOSEBEE,  ANDREW      )  **CERTIFICATE OF SERVICE**
    CLAYTON,  UNKNOWN  AND           )
19  UNNAMED  PERSONS  IN  THE  CNMI   )
    OFFICE  OF  THE  ATTORNEY        )  Hearing:    Thursday, December 7, 2006
20  GENERAL,  ALEXANDRO  C.  CASTRO, )  Time:       9:00 a.m.
    JOHN  A.  MANGLONA,  TIMOTHY  H. )  Judge:      Hon. Alex R. Munson
21  BELLAS,  PAMELA  S.  BROWN,      )
    ROBERT  A.  BISOM,  AND  JAY  H. )
22  SORENSEN,                        )
                                     )
23              Defendants.          )
    ─────────────────────────────────)

24

25

# TABLE OF CONTENTS

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. STANDARD FOR MOTION TO DISMISS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. DISCUSSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
    A. The CNMI is Not a "Person" for Purposes of 42 U.S.C. § 1983 . . . . . . . . . . . . . . . . 4
    B. Alleged Violations of Criminal Statutes Provide No Basis for Civil Liability, and Therefore
        Provide No Basis for the Exercise of Federal Jurisdiction . . . . . . . . . . . . . . . . . . . . . . 5
    C. Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted for Violation of his
        Right to Procedural Due Process . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
    D. Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted for Violation of his
        Right to Equal Protection . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
    E. Allegations of Conspiracy and Violations of 42 U.S.C. § 1985 Must Be Plead With
        Particularity . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
    F. Plaintiff's RICO Allegations Based Upon Damages Allegedly Suffered as a Result of the *Bisom*
        Litigation in Local Court Fail to State a Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
    G. The Court is Without Equity Jurisdiction to Order Defendants to Investigate or Prosecute
        Allegations of Criminal Wrong-doing, or to Order the Appointment of a Special
        Prosecutor . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13
    H. The Attorneys General and Assistant Attorneys General Are Entitled To Absolute
        Prosecutorial Immunity with Respect to Certain of Plaintiff's Claims for Damages Relief
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    I. The Attorneys General and Assistant Attorneys General Are Entitled To Qualified Immunity
        with Respect Plaintiff's Claims for Relief Based Upon Alleged Breach of Attorney-Client
        Relationship and Malpractice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
    J. The CNMI is Not a "Citizen" for Purposes of Diversity Jurisdiction, and Diversity Jurisdiction
        is Therefore Destroyed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    K. Plaintiff Cannot Meet the Amount in Controversy Required to Establish Subject Matter
        Diversity Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    L. Following Dismissal of Plaintiff's Federal Claims, his Remaining Claims Asserting Violations of
        Local Law are Due to Be Dismissed Pursuant to 28 U.S.C. § 1367(c) . . . . . . . . . . . 20

IV. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

1

**TABLE OF AUTHORITIES**

2

**CASES**

3

*Aguon v. Commonwealth Ports Auth.*, 316 F.3d 899 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . 4

4

*Aldabe v. Aldabe*, 616 F.2d 1089 (9th Cir. 1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

5

*Allen v. Gold Country Casino*, ___ F.3d ___, 2006 WL 2788494 (9th Cir. Sept. 29, 2006) . . . . . . . . . 5

6

*Annamaria M. v. Napa Valley Unified Sch. Dist.*, ___ F. Supp. 2d ___, 2006 WL 1525733 (N.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

7

*Arriola v. Insurance Co. of N. Am.*, 2 Commw. Rptr. 113 (N.M.I. Commw. Tr. Ct. 1985) . . . . . . . 16

8

*Baker v. McCollan*, 443 U.S. 137 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

9

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696 (9th Cir.1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

10

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

11

*Bisom v. Commonwealth*, No. 96-1320 (N.M.I. Super. Ct.) . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 14, 15

12

*Bisom v. Commonwealth*, 2002 MP 19, 6 N.M.I. 475, 2002 WL 32983568 . . . . . . . . . . . . . . . . . . . 2

13

*Bisom v. Northern Mariana Islands*, CV-95-0042 (D.N.M.I.). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

14

*BMW, Inc. v. Gore*, 517 U.S. 559 (1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

15

*Board of Regents v. Roth*, 408 U.S. 564 (1972). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

16

*Boros v. Baxley*, 621 So. 2d 240 (Ala. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

17

*Botello v. Gammick*, 413 F.3d 971 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

18

*Bradshaw v. Northern Mariana Islands*, CV-05-0027 (D.N.M.I.) . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

19

*Brook v. Carey*, ___ F. Supp. 2d ___, 2006 WL 2620584 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . . . 9

20

*Bryan v. Adventist Health Sys./West*, 289 F.3d 1162 (9th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . 1, 21

21

*Charfauros v. Board of Elections*, 1998 MP 16, 5 N.M.I. 188, 1998 WL 34073646 . . . . . . . . 4, 18, 19

22

*Davis v. Scherer*, 468 U.S. 183 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

23

*DeNieva v. Reyes*, 966 F.2d 480 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

24

*Doe I v. The Gap, Inc.*, 2001 WL 1842389 (D.N.M.I. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . 4, 12, 17

25

1  *Dyack v. Northern Mariana Islands*, 317 F.3d 1030 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . 1, 15, 21

2  *Edwards v. Marin Park*, 356 F.3d 1058 (9th Cir. 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

3  *Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

4  *Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002) . . . . . . . . . . . . . . . . . 9

5  *Gass v. Schlotfeldt*, ___ F. Supp. 2d ___, 2006 WL 889745 (W.D. Wash. 2006) . . . . . . . . . . . . 10-13

6  *Hansen v. Calif. Dep't of Corr.*, 920 F. Supp. 1480 (N.D. Cal. 1996) . . . . . . . . . . . . . . . . . . . . 7

7  *Harris v. Broderick*, 126 F.3d 1189 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

8  *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375 (2nd Cir. 1975) . . . . . . . . . . . . . . . . . 13

9  *Ivey v. Board of Regents*, 673 F.2d 266 (9th Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

10  *Jones v. Tozzi*, ___ F. Supp. 2d ___, 2006 WL 2472752 (E.D. Cal. 2006) . . . . . . . . . . . . . . . . . 9

11  *Liebenstein v. Crowe*, 826 F. Supp. 1174 (W.D. Wis. 1992) . . . . . . . . . . . . . . . . . . . . . . . . 7

12  *Lockary v. Kayfetz*, 587 F. Supp. 631 (N.D. Cal. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

13  *Malley v. Briggs*, 475 U.S. 355 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 15

14  *McMurty v. Wiseman*, ___ F. Supp. 2d ___, 2006 WL 23755792 (W.D. Ky. 2006) . . . . . . . . . . . . 19

15  *Metro Indust., Inc. v. Sammi Corp.*, 82 F.3d 839 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . 6

16  *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826 (1989) . . . . . . . . . . . . . . . . . . . . . . . 15

17  *Ngiraingas v. Sanchez*, 495 U.S. 182 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

18  *O'Connor v. Nevada*, 507 F. Supp. 546 (D. Nev. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 13, 14

19  *Olim v. Wakinekona*, 461 U.S. 238 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

20  *Pena v. Gardner*, 976 F.2d 469 (9th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

21  *Phillips v. Lithia Motors, Inc.*, ___ F. Supp. 2d ___, 2006 WL 1113608 (D. Or. 2006) . . . . . . . . . . 11

22  *Pillsbury, Madison & Sutro v. Lerner*, 31 F.3d 924 (9th Cir.1994) . . . . . . . . . . . . . . . . . . . . . . . 4

23  *Raitport v. Provident Nat. Bank*, 451 F. Supp. 522 (E.D. Pa. 1978) . . . . . . . . . . . . . . . . . . . . . . 14

24  *Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090 (S.D. Cal. 2006) . . . . . . . . . . . 16, 17

25  *Roe v. City and County of San Francisco*, 109 F.3d 578 (9th Cir. 1997) . . . . . . . . . . . . . . . . . . . 14

*Ross v. United States Attorney's Office*, 511 F.2d 524 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . .  13

*Shaw v. Hahn*, 56 F.3d 1128 (9th Cir. 1995)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  6

*Smith v. Superior Court*, 10 Cal. App. 4th 1033, 13 Cal. Rptr.2d 133 (Ct. App. 1992) . . . . . . . . . . .  19

*Terarecon, Inc. v. Fovia, Inc.*, ___ F. Supp. 2d ___, 2006 WL 2691405 (N.D. Cal. 2006) . . . . . . . .  19

*Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  11

*United States v. Cox*, 342 F.2d 167 (5th Cir. 1965)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13

*Wabol v. Villacrusis*, 958 F.2d 1450 (9th Cir. 1992)  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  8

*Woodrum v. Woodward County*, 866 F.2d 1121 (9th Cir. 1989)  . . . . . . . . . . . . . . . . . . . . . . . . . . .  9

**CONSTITUTIONAL AUTHORITY**

U.S. Const. amend XIV . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4, 7, 8

**FEDERAL STATUTES**

18 U.S.C. § 1341 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 1342 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 1349 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 1707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 1961 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 5, 12

18 U.S.C. § 1964 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 241 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

18 U.S.C. § 242 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

28 U.S.C. § 1331 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5

28 U.S.C. § 1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3, 5, 15, 16, 20

28 U.S.C. § 1367(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 4, 5, 20, 21

42 U.S.C. § 1981 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 7, 8

42 U.S.C. § 1983 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 4

42 U.S.C. § 1985 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 9

**CNMI STATUTES**

7 CMC § 2301  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

7 CMC § 2304 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 6, 7

7 CMC § 2305 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**RULES OF PROCEDURE**

Fed. R. Civ. P. 12(b)(6) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 4

Fed. R. Civ. P. 9(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 19

1   Pursuant to Fed. R. Civ. P. 12(b)(6), defendants Commonwealth of the Northern Mariana Islands

2   ("CNMI"); Nicole C. Forelli; William C. Bush; D. Douglas Cotton; L. David Sosebee; Andrew Clayton; and

3   Pamela S. Brown respectfully move the Court to dismiss all claims asserting federal question and diversity

4   jurisdiciton contained in the *Third Amended Complaint* with prejudice, and to dismiss all remaining claims

5   without prejudice pursuant to 28 U.S.C. § 1367(c).[1]

6   ## I. INTRODUCTION

7   The Court should be more than familiar with plaintiff Bradshaw's claims in this case. *See* "Order

8   Regarding Motions Heard on August 2006," *Bradshaw v. Northern Mariana Islands*, CV-05-0027 (D.N.M.I.

9   Sept. 8, 2006), pp. 2, 3. Robert Bradshaw was at one time the acting Public Auditor for the Commonwealth

10  of the Northern Mariana Islands, who terminated the employment of a staff attorney named Robert Bisom.

11  Bisom, in turn, sued Bradshaw and others for wrongful termination in two related cases, one in the CNMI

12  Superior Court, *Bisom v. Commonwealth*, No. 96-1320 (N.M.I. Super. Ct.), and another in federal court

13  styled *Bisom v. Northern Mariana Islands*, CV-95-0042 (D.N.M.I.). At the time, there was considerable

14  confusion as to whether or not the Office of the Attorney General for the CNMI represented Bradshaw, and

15  in the confusion, Bisom was able to obtain a default judgment against Bradshaw in the CNMI Superior Court

16

17

18

19

20

21

---

22   [1]Title 28 U.S.C. § 1367(c) provides that the district courts may decline to exercise supplemental
23   jurisdiction if  "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially
     predominates over the claim or claims over which the district court has original jurisdiction, (3) the district
     court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there
24   are other compelling reasons for declining jurisdiction." In the absence of federal question or diversity
     jurisdiction, it is within the Court's discretion to decline to exercise supplemental jurisdiction and to dismiss
25   claims based upon local law without prejudice pursuant to 28 U.S.C. § 1367(c). *See Dyack v. Northern
     Mariana Islands*, 317 F.3d 1030, 1037-38 (9th Cir. 2003); and *Bryan v. Adventist Health Sys./West*, 289
     F.3d 1162, 1169 (9th Cir. 2002).

1   in the amount of $139,000.00.[2]  That default judgment was later set aside by a different judge, and the

2   propriety of that ruling is presently on appeal to the CNMI Supreme Court.

3         As a result of being hauled into court by Bisom, and having suffered a number of adverse rulings in

4   the local courts, including a default judgment that was later set aside, Bradshaw claims to be the victim of

5   a vast civil rights conspiracy involving Bisom, and Bisom's attorney Jay H. SORENSEN; the original

6   Superior Court judge who entered the default judgment against him, the Supreme Court for the CNMI; and

7   various attorneys general and assistant attorneys general for the CNMI who allegedly failed to provide him

8   a defense to Bisom's lawsuits that he contends he was entitled to under local law, refused to indemnify him

9   under local law for a default judgment that was later set aside, and refused to investigate and prosecute

10  allegations of criminal wrongdoing by Bisom and his attorney that Bradshaw brought to the attention of the

11  Office of Attorney General.  He alleges violations of his federal rights to due process and equal protection

12  under the 14th Amendment pursuant to 42 U.S.C. §§ 1983 and 1981; conspiracy to violate his civil rights

13  pursuant to 42 U.S.C. § 1985; a RICO conspiracy pursuant to 18 U.S.C. §§ 1961 through 1964; and,

14  invoking the diversity and supplemental jurisdiction in this Court, what appear to be three claims under local

15  law: (1) breach of employment contract; (2) "Intentional, Malicious and/or Irresponsible Actions Causing

16

17        [2]In various correspondence from Bradshaw to the Attorney General's Office, Bradshaw's rationale
18  appeared to be that there was no need for the CNMI Attorney General's Office to represent him or file any
    appearance on his behalf until he had been properly served. At the time a $139,000 default judgment was
19  entered against him by Superior Court Judge pro tempore Alexandro Castro in *Bisom v. Commonwealth*,
    Civil Case No. 96-1320, in local court, he still had not been properly served. A different Superior Court judge
20  would later set the default judgment aside. So, Bradshaw has no damages to speak of, other than perhaps
    the un-itemized costs of copying, postage and telephone calls he claims for having to defend himself once he
21  realized a default judgment had been entered against him and that the CNMI AG's Office had determined he
    was not entitled to representation and indemnification under local law. It is a matter of dispute whether
22  Bradshaw ever formally requested representation in writing as mandated by 7 CMC § 2304(a)(4), which
    requires that the "employee make[] his request in writing to the public entity not less than five days before
23  an answer must be filed…." Adding to the confusion caused in part by Bradshaw's equivocation as to
    whether he wished representation and under what circumstances was the fact that if Bradshaw was never
24  properly served, the five days to make a written request for representation and indemnification under local
    law never began to run. *See generally Bisom v. Commonwealth*, 2002 MP 19, ¶¶ 33-54, 6 N.M.I. 475, 482-
25  87, 2002 WL 32983568, and *Bisom v. Commonwealth*, Civil Action No. 96-1320 (N.M.I. Super. Ct.
    Dec. 29, 2005), available at http://www.cnmilaw.org/pdf/superior_court/ 05-12-29-V96-1320. pdf.

Damage to Plaintiff's Reputation as an Employer, Supervisor, and as a Person"; and (3) "Intentional, Malicious and/or Irresponsible Actions Causing Emotional and Mental Distress."[3]  Bradshaw claims actual damages in the amount of $8,230 as the current costs of having to defend against the two cases brought against him by Bisom, *see Third Amended Complaint*, p. 69, ¶ 7, and "punitive, special, compensatory, general, exemplary and other damages" in the amount of $2,285,000. *See Third Amended Complaint*, p. 70, ¶ 8.

Now on his third amended complaint, and despite specific directions from this Court with respect to amending his complaint to state non-conclusory facts in support of proper causes of action, plaintiff has done hardly more in his *Third Amended Complaint* than delete certain claims for relief from his *Second Amended Complaint* which the Court has already dismissed. Plaintiff has not amended his complaint to allege any supplemental facts that are not based on conjecture and speculation, nor has he deleted factual allegations that are now irrelevant and immaterial to any claim the Court has not previously dismissed.  Indeed, the first 282 paragraphs of his *Third Amended Complaint*, which contain his factual allegations and first four claims for relief, are identical to the first 282 paragraphs of his *Second Amended Complaint*.[4]

For the reasons discussed below, plaintiff has stated no federal claim upon which relief can be granted under the United States Constitution or any federal law; and he has stated no basis for this court to exercise diversity jurisdiction. Absent federal question or diversity jurisdiction over any claim, this Court should

---

[3]At p. 3, ¶ 5 of the Third Amended Complaint, Bradshaw asserts diversity jurisdiction over his local law claims. Discussed within, this Court does not have diversity jurisdiction over Bradshaw's local law claims because the presence of the CNMI destroys complete diversity of citizenship, and because despite his exorbitant demand for punitive damages, as a matter of law, Bradshaw will be unable to meet the $75,000 amount in controversy requirement of 28 U.S.C. § 1332 sufficient to confer subject matter jurisdiction upon this Court.

[4]At p. 20, lines 14-18 of this Court's "Order Regarding Motions Heard on August 2006," *Bradshaw v. Northern Mariana Islands*, CV-05-0027 (D.N.M.I. Sept. 8, 2006), the Court specifically advised the plaintiff that he has no right to have a criminal investigation initiated, and ordered stricken "all allegations in the complaint regarding defendant Brown's failure to investigate plaintiff's criminal complaint." Nonetheless, at p. 69, ¶ 3 of his Third Amended Complaint, Bradshaw seeks by way of relief that the Court order "an independent investigation to be made of BRADSHAW's criminal complaint of conspiracy and fraud against ROBERT A. BISOM, JAY H. SORENSEN, and/or whomever of their associates . . . ."

1   exercise its discretion and dismiss Bradshaw's supplemental claims which assert novel claims under local law.

2   Accordingly, while plaintiff's claims for relief based upon local law are due to be dismissed outright,

3   following dismissal of plaintiff's "federal" claims, the Court should dismiss the local law claims pursuant to

4   28 U.S.C. § 1367(c).

5                              **II. STANDARD FOR MOTION TO DISMISS**

6        A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal
         theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri*
7        *v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.1988). In considering a motion to
         dismiss for failure to state a claim, a court must accept as true all material allegations in the
8        complaint, as well as reasonable inferences to be drawn from them. However, a court need
         not accept as true unreasonable inferences, unwarranted deductions of fact, or conclusory
9        legal allegations cast in the form of factual allegations. *See, e.g., Pillsbury, Madison & Sutro*
         *v. Lerner*, 31 F.3d 924, 928 (9th Cir. 1994) (internal quotation omitted).
10
     *Doe I v. The Gap, Inc.*, 2001 WL 1842389 * 1 (D.N.M.I. 2001).
11
                                        **III. DISCUSSION**
12
     **A. The CNMI is Not a "Person" for Purposes of 42 U.S.C. § 1983.**
13
14        To the extent Bradshaw seeks monetary relief directly against the CNMI, or against any named

15   official sued in his or her official capacity for violation of his rights to equal protection and due process under

16   the 14th Amendment to the U.S. Constitution or any other federal law pursuant to 42 U.S.C. § 1983, those

17   demands for relief are due to be immediately dismissed. For neither the CNMI nor any official acting in his

18   or her official capacity is a "person" for purposes of damages liability under 42 U.S.C. § 1983. *Aguon v.*

19   *Commonwealth Ports Auth.*, 316 F.3d 899, 901 (9th Cir. 2003); *DeNieva v. Reyes*, 966 F.2d 480, 483

20   (9th Cir. 1992); *Charfauros v. Board of Elections*, 1998 MP 16, 5 N.M.I. 188, 1998 WL 34073646; *see also*

21   *Ngiraingas v. Sanchez*, 495 U.S. 182, 192 (1990) (in a suit for money damages, neither Guam nor its officers

22   acting in their official capacity are "persons" under § 1983). And while local officials sued in the official

23   capacity may be sued for injunctive relief, the CNMI itself may not be sued for either injunctive or monetary

24   relief under § 1983. *Aguon*, 316 F.3d at 904 n.2; *DeNieva*, 966 F.2d at 483 n.3. All claims brought pursuant

25   to § 1983 against the CNMI, whether for damages or equitable relief are due to be immediately dismissed.

1

**B. Alleged Violations of Criminal Statutes Provide No Basis for Civil Liability, and Therefore Provide No Basis for the Exercise of Federal Jurisdiction.**

2

At page 3, ¶ 6 of his *Third Amended Complaint*, Bradshaw asserts that this Court has jurisdiction

3

pursuant to 18 U.S.C. §§ 241 and 242. However, the Ninth Circuit Court of Appeals has expressly held that

4

these criminal statutes do not provide a private cause of action or civil remedy in the event they are violated.

5

*See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir. 1980) (Title 18 U.S.C. §§ 241 and 242 "provide no

6

basis for civil liability"); *accord Allen v. Gold Country Casino*, ___ F.3d ___, 2006 WL 2788494, *5

7

(9th Cir. Sept. 29, 2006).  To the extent Bradshaw seeks to invoke federal question jurisdiction pursuant to

8

any criminal statute that does not provide an independent civil remedy, *cf.* 18 U.S.C. 1964(c), he has failed

9

to state a claim upon which relief can be granted. Bradshaw also attempts to invoke jurisdiction pursuant to

10

18 U.S.C. §§ 1341, 1342, 1349, 1707, 1961 – 1965. Except with respect to 18 U.S.C. § 1964(c), which

11

provides a civil remedy in the district court for violations of RICO, none of these statutes confers jurisdiction

12

upon the Court either. Although the plaintiff invokes diversity jurisdiction under 28 U.S.C. § 1332 in ¶ 6 of

13

his *Third Amended Complaint*, for reasons discussed within, the Court does not have diversity jurisdiction.

14

What arguably remains for analysis, then, is federal question jurisdiction pursuant to 28 U.S.C. § 1331, and

15

supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

16

**C. Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted for Violation of his Right to Procedural Due Process.**

17

18

Bradshaw's due process claim is anything but clear. "Process is not an end in itself. Its constitutional

19

purpose is to protect a substantive interest to which the individual has a legitimate claim of entitlement." *Olim*

20

*v. Wakinekona*, 461 U.S. 238, 250 (1983).  Due process merely requires that the state provide a fair

21

procedure before depriving an individual of a protected liberty or property interest. Property interests are

22

defined by state law. "To have a property interest in a benefit, a person clearly must have more than

23

an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have

24

a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577 (1972).

25

1    Bradshaw's due process claim appears to be that he was wrongfully denied a legal defense from

2  the CNMI Attorney General's Office and indemnification in the Bisom litigation that he claims he was entitled

3  to pursuant to the Public Employee Legal Defense and Indemnification Act of 1986 ("PELDIA"), Pub. L.

4  5-12, *as amended by* Pub. L. 9-68, *formerly codified at* 7 CMC §§ 2301 – 2307, *repealed by* Pub. L. 15-22.

5  The question whether Bradshaw had a "legitimate claim of entitlement" versus a "unilateral expectation" of

6  a right to representation and indemnification under CNMI law is far from clear. Although this Court appears

7  to have made a preliminary assessment that an attorney-client relationship of sorts did exist between

8  Bradshaw and the Office of Attorney General that was breached, *see* Sept. 8, 2006  "Order Regarding

9  Motions Heard on August 2006," pp. 10-12, two local courts appear persuaded otherwise. In setting aside

10  the default judgment against Bradshaw, Superior Court Judge Juan T. Lizama found that "[w]hile initially,

11  Bradshaw and the AG seem to have been fumbling towards an attorney-client relationship, the relationship

12  was never consummated." "Order Granting Robert Bradshaw's Motion to Vacate Judgment," p. 12, *Bisom*

13  *v. Commonwealth*, Civil Action No. 96-1320 (N.M.I. Super. Ct. Dec. 29, 2005), *available at* http://

14  www.cnmilaw. org/pdf/superior_court/05-12-29-CV96-1320.pdf. And previously, the Supreme Court of the

15  Commonwealth of the Northern Mariana Islands affirmed the trial court's finding that there was insufficient

16  evidence that Bradshaw had ever made a formal request for indemnification as required by 7 CMC § 2304,

17  thus finding that the CNMI owed no duty to Bradshaw. *Bisom v. Commonwealth*, 2002 MP 19, ¶¶ 33-54,

18  6 N.M.I. 475, 482-87, 2002 WL 32983568.[5]

19    _____

20    [5]Admittedly, Bradshaw was not a party to the appeal, because in hindsight we know that he had not
    yet been properly served, and it was Bisom who was asserting Bradshaw's rights to indemnification as if in
21    the capacity of a third party beneficiary, not Bradshaw himself. If Bisom were in privity with Bradshaw, then
    Bradshaw would clearly be barred by collateral estoppel and issue preclusion from relitigating his "right" to
22    indemnity and representation. *Cf. Metro Indus., Inc. v. Sammi Corp.*, 82 F.3d 839, 848 (9th Cir. 1996); *Shaw
    v. Hahn*, 56 F.3d 1128, 1131 (9th Cir. 1995) ("The doctrine of issue preclusion, of course, cannot be applied
23    against a litigant who was not a party to or in privity with a party to the prior proceeding."), *cert. denied*,
    516 U.S. 964 (1995). But this Court need not decide whether Bisom and Bradshaw are in privity for
24    purposes of issue preclusion on the question whether Bradshaw is entitled to indemnification under PELDIA.
    It is enough for purposes of ascertaining whether Bradshaw had a "legitimate claim of entitlement" protected
25    by the due process clause versus a "unilateral expectation" of a right to representation and indemnification
    under CNMI law that three justices of the CNMI Supreme Court and one Superior Court judge appear to

1    Even assuming that Bradshaw had a legitimate claim of entitlement to representation and

2    indemnification under local law, as noted earlier, all that due process requires is that the state provide a fair

3    procedure before depriving an individual of a protected liberty or property interest. Title 7 CMC § 2305

4    provided: "If an employee pays any claim or judgment against him that the public entity is required to pay

5    under 7 CMC § 2304 and for which the public entity has no right of indemnification against employee under

6    7 CMC § 2304, the employee may recover the amount of such payment from the public entity." A "fair

7    procedure" to determine whether Bradshaw is entitled to representation and indemnification is available to

8    Bradshaw in the local courts. To date, Bradshaw has suffered no damages, inasmuch as the $139,000 default

9    judgment has been set aside. If he ever does, he has a remedy that satisfies due process.

10    **D. Plaintiff Has Failed to State a Claim Upon Which Relief Can Be Granted for Violation of his Right to Equal Protection.**

11    One has to examine the Bradshaw's complaint carefully to comprehend the nature of his equal

12    protection claim. The only facts he alleges in support of his equal protection claim are found in his Eleventh

13    Claim, at pp. 63 – 65, ¶¶ 357 – 360, in which he purports to assert a claim for relief pursuant to 42 U.S.C.

14    § 1981. Bradshaw contends that he has been denied equal protection under the 14th Amendment and § 1981

15    based upon his status as a "US statesider in contrast to the local NMI persons of NMI racial descent." *Third*

16    *Amended Complaint*, p. 63, ¶ 357. But the only non-conclusory factual allegation Bradshaw tenders in

17    support of his equal protection and § 1981 claims is that "[i]t is CNMI government policy to discriminate

18    against persons of non-NMI racial descent as established in articles XI and XII of the CNMI Constitution

19

20    believe otherwise. This takes on additional significance later in determining whether, in the qualified immunity analysis, the right to representation and indemnity at issue here was "clearly established." There is certainly

21    room for serious debate, and in the qualified immunity analysis, that is enough. *See Malley v. Briggs*, 475 U.S. 355, 341 (1986) ("[I]f officers of reasonable competence could disagree on this issue, immunity should

22    be recognized"); *Hansen v. Calif. Dep't of Corr.*, 920 F. Supp. 1480, 1488 (N.D. Cal. 1996) ("[I]f there are reasonable, not insubstantial bases in the authorities for disagreement about what the law was or would be

23    in the case at bar, we should not hold that the law was 'clearly established.' If rationally, what the state of the law was is a close question, the law cannot be deemed 'clearly established' for purposes of immunity.");

24    *Liebenstein v. Crowe*, 826 F. Supp. 1174, 1183 (W.D. Wis. 1992) ("If reasonable minds would differ as to whether the official's conduct was clearly illegal, then immunity should attach.").

25

7

which restricts land ownership from so-called aliens (or persons of non NMI racial descent) and in local laws and employment actions which grant favoritism to local indigenous people." *Third Amended Complaint*, p. 64, ¶ 358.

Of course, Bradshaw tenders no allegation of fact with respect to any specific racial or other class-based animus directed toward him personally. "To state a claim under 42 USC § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment, a plaintiff must show that the defendants acted with an intent or purpose to discriminate against the plaintiff based upon membership in a protected class." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). "In the usual case, this requires a plaintiff to allege that similarly situated persons who are not in the same protected class as the plaintiff were treated differently. . . . The allegation that [plaintiff] is a member of a protected class alone is not sufficient to state a claim of discrimination." *Annamaria M. v. Napa Valley Unified Sch. Dist.*, ___ F. Supp. 2d ___, 2006 WL 1525733, *9 (N.D. Cal. 2006) (citations omitted). Absent specific allegations of discrimination against him personally, and that he has been treated differently from similarly situated persons who are not in the same protected class, Bradshaw's allegations of *de jure* discriminatory practices in the CNMI are probative of nothing, for restrictions on alienage of land to non-CNMI citizens have been expressly upheld by the courts against equal protection and other constitutional challenges. *See Wabol v. Villacrusis*, 958 F.2d 1450 (9th Cir. 1992) (CNMI constitutional restriction on land alienation not subject to equal protection attack), *cert. denied sub nom. Philippine Goods, Inc. v. Wabol*, 506 U.S. 1027 (1992). Bradshaw's reference to a provision in the CNMI Constitution that has been upheld and is the law of this Circuit is inadequate to state a claim for violation of his right to equal protection under the 14th Amendment or 42 U.S.C. § 1981. Accordingly, Bradshaw's demand for relief based upon alleged equal protection violations are due to be dismissed with prejudice.

   **E. Allegations of Conspiracy and Violations of 42 U.S.C. § 1985 Must Be Plead With Particularity.**

   Bradshaw's Seventh Claim at pp. 53 - 57, ¶¶ 319 - 325 of the *Third Amended Complaint* alleges conspiracy to violate his civil rights pursuant to 42 U.S.C. § 1985.[6] It is nothing but speculation, conjecture, and legal conclusions, peppered with anecdotal "evidence" such as that the "AG's office has historically had a reputation for incompetence and lack of diligence accruing because many of the personnel are short timers more interested in beach time, snorkel diving and leisure activities than in legal work." *Third Amended Complaint*, p. 55, ¶ 322. It is unclear what evidence of a present day conspiracy that is offered to prove. When pleading a conspiracy a "plaintiff must make some showing of an agreement or a meeting of the minds on the part of defendants to violate his constitutional rights. *Woodrum v. Woodward County*, 866 F.2d 1121, 1126 (9th Cir. 1989) (citing *Fonda v. Gray*, 707 F.2d 435 (9th Cir. 1983)). Conspiracy allegations must be supported by material facts and not be merely conclusory statements. *Lockary v. Kayfetz*, 587 F. Supp. 631 (N.D. Cal. 1984)." *Brook v. Carey*, ___ F. Supp. 2d ___, 2006 WL 2620584, * 11 (E.D. Cal. 2006). "Vague and conclusory allegations are not sufficient to support a claim for civil rights violations based on conspiracy." *Id.* (citing *Ivey v. Board of Regents*, 673 F.2d 266, 268 (9th Cir. 1982) and *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)). And while the heightened pleading standard no longer applies to civil rights claims generally, *see Galbraith v. County of Santa Clara*, 307 F.3d 1119, 1126 (9th Cir. 2002), it does still apply to conspiracy claims. *Jones v. Tozzi*, ___ F. Supp. 2d ___, 2006 WL 2472752, * 12, 13 (E.D. Cal. 2006).

   First articulated in *Harris v. Broderick*, 126 F.3d 1189 (9th Cir. 1989), the heightened pleading standard requires that a conspiracy claim be "plead with particularity as to which defendants conspired, how they conspired and how the conspiracy led to a deprivation of [the plaintiff's constitutional rights...." *Id.*, 126 F.3d at 1196; *Jones*, at * 13. Bradshaw's conspiracy claim is nothing but speculative fluff and nonsense. He

---

   [6]This claim had previously been dismissed from Bradshaw's *Second Amended Complaint*, because he failed to allege facts in support of a conspiracy. He was granted leave to amend. "Order Regarding Motions Heard on August 2006," pp. 21, 22. Bradshaw's *Third Amended Complaint* fares no better.

assumes a conspiracy must have existed among the various defendants and others because he can think of no other reason for various adverse ruling by the local courts, and because he cannot accept the Attorney General's decision not to investigate and prosecute his allegations of criminal wrong-doing by Bisom, SORENSEN and others. But Bradshaw pleads no *facts* with particularity as to which defendants conspired, how, with whom, and how any conspiracy led to any constitutional deprivation. Accordingly, Bradshaw's conspiracy claim is due to be dismissed with prejudice.

### F. Plaintiff's RICO Allegations Based Upon Damages Allegedly Suffered as a Result of the *Bisom* Litigation in Local Court Fail to State a Claim.

In *Gass v. Schlotfeldt*, ___ F. Supp. 2d ___, 2006 WL 889745 (W.D. Wash. 2006), a case remarkably similar to the case at bar, a state court defendant sued a state court plaintiff's attorneys in federal court alleging mail fraud in violation of civil RICO for having improperly obtained a default judgment against him, which was subsequently set aside:

> The underlying case has its roots in a state court proceeding involving Mr. Gass on the one hand and an entity called Olson Engineering on the other. The defendants here represented Olson, Mr. Gass' adversaries, in the underlying state court litigation. In that case, Olson sought payment for work done for Mr. Gass, and commenced a litigation against him for breach of contract. Olson, through its attorneys, claimed in the underlying action that it could not locate Mr. Gass and proceeded to serve him by mail. A default judgment in the amount of approximately $63,000 was taken.

> When he learned of the judgment, Gass sought to have it vacated, alleging among other things that Olson's attorneys (the defendants in this case) had engaged in fraud, misrepresentation, violations of Rule 11, and the like. The bulk of his claim was that the attorneys had lied in obtaining the default judgment when they told the Court that Mr. Gass could not be located in Washington state.

> Judge John Nichols of the Clark County Superior Court heard and rejected these allegations, but nevertheless vacated the default judgment. At the same time, he ordered Gass to pay Olson $1000 in terms and he permitted Olson to "attach" the property at issue prior to judgment. Gass subsequently sought to sell the property (receiving a $1000 "discount" in the form of being permitted to apply the sanction to the claimed amount) and voluntarily settled with Olson, in order to convey clean title to his purchaser. The underlying state court action was therefore dismissed.

> Gass now sues Olson's attorneys here, accusing them, in addition to the transgressions he claimed in state court, of mail fraud and asserting a RICO claim.

10

\* \* \*

Defendants seek Summary Judgment on Plaintiffs' claims against them, arguing that Gass cannot establish the required elements of a civil RICO claim, including a predicate act; that he has not suffered any damages (also an essential element a RICO claim); and that even the elements were established, the conduct about which Gass complains is privileged.

*Gass*, \* 1, 2. As in *Gass*, the plaintiff here seeks to sue Bisom and his attorney for having obtained a default judgment against him in local court that was later set aside.

Under 18 U.S.C. § 1962, a plaintiff must establish that the defendant in a civil RICO claim (1) conducted 92) and enterprise (3) through a pattern (4) of racketeering activity. "Racketeering activity" under 18 U.S.C. § 1961 includes indictable offenses under a variety of federal statutes, including mail fraud and wire fraud. To allege a violation of mail fraud it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud. *See Miller v. Yokohama Tire Corp.*, 358 F.3d 616 at 620 (9th Cir.2004). As the defendants correctly point out, mail fraud cannot be predicated on misrepresentations of law or misrepresentations as to matters of law, which are matters of opinion and not actionable as fraud, even if they are false. *Miller* at 621.

*Gass*, \* 2; *see generally, Turner v. Cook*, 362 F.3d 1219 (9th Cir. 2004) (discussing the requisite substantive elements necessary to plead a cause of action under civil RICO). The predicate acts Bradshaw alleges are contained at ¶ 332 of his *Third Amended Complaint*:

RICO involved a series of actions. They included the acts of SORENSEN/BISOM by 1999 to prepare fraudulent documents to obtain a default judgment against BRADSHAW; the acts of someone in the CNMI to also prepare fraudulent postal receipt documents; the acts of FORELLI and SOSEBEE in 2000 to illegally withdraw from representing BRADSHAW without notifying BRADSHAW before the trial; the acts of FORELLI in 2000 to ignore improper/illegal acts by BISOM/SORENSEN in the CNMI courts in 1999-2000; the actions of the CNMI courts in 1996-2000 to illegally assume jurisdiction over BRADSHAW which they lacked in order to enter a default judgment against BRADSHAW in a malicious and grossly incompetent manner; acts of CLAYTON to mishandle the appeal and not notify BRADSHAW and the acts of BROWN to personally or by influencing others to hide/destroy documents and work against BRADSHAW in cases in 2004-2005 before the CNMI SC and USDC of Idaho.

Aside from the fact that Bradshaw suggests not a scintilla of evidence in support of his speculative legal conclusions,[7] none of the "acts" he alleges constitutes "racketeering activity" constitute an indictable offense within the meaning of 18 U.S.C. § 1961.

> Plaintiffs must allege a "pattern of racketeering activity" in order to state a claim based on violation of RICO § 1962(a) or § 1962(c). A " 'pattern of racketeering activity' requires at least two acts of racketeering." *See* 18 U.S.C. § 1961(5). Acts of racketeering include "any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion ··· which is chargeable under State law and punishable by imprisonment for more than one year" and specific enumerated offenses indictable under Title 18 of the United States Code, including peonage and involuntary servitude. *See* 18 U.S.C. § 1961(1), § 1581, § 1584.

*Doe I v. The Gap, Inc.*, 2001 WL 1842389 * 6 (D.N.M.I. 2001).

There is no such crime as "illegally withdraw[ing]" from representing someone; nor is it a crime for an assistant attorney general to "ignore improper/illegal acts"; and even assuming *arguendo* that Bradshaw's appeal was mishandled "in a malicious and grossly incompetent manner," that is not a predicate act within the meaning of RICO.

Finally, just as in *Gass*, Bradshaw has suffered no legally compensable damages because the default judgment he complains of as his injury has been set aside.

> An additional fatal flaw in Mr. Gass' claim is that he cannot prove that any alleged RICO violation caused him any damage. Mr. Gass was sued by Olson Engineering for failing to pay for services allegedly rendered. *A default judgment was obtained, but vacated.* The trial court issued a prejudgment "writ of attachment" on the property, which Mr. Gass chose to pay off in order to sell the subject property. Though he might have preferred not to, he did so "voluntarily" as he deemed that option superior to continuing to litigate the validity of Olson's claim and potentially losing the sale. The lawsuit was thereafter dismissed with prejudice, as Mr. Gass concedes. Finding that he suffered damage would require this court to adjudicate the validity of Olson's claim in a manner directly contrary to the judgment entered in state court. Again, this is not something that this court can or will do.

---

[7]As is true of conspiracy claims, the "heightened pleading" standard of Fed. R. Civ. P. 9(b) applies to RICO claims. *Edwards v. Marin Park*, 356 F.3d 1058, 1065-66 (9th Cir. 2004); *Phillips v. Lithia Motors, Inc.*, ___ F. Supp. 2d ___, 2006 WL 1113608, * 5 (D. Or. 2006). Bradshaw's RICO claim is woefully deficient and comes nowhere close to articulating a cause of action that meets the heightened pleading standard.

*Gass* at * 2 (emphasis added; footnote omitted). Even if Bradshaw had properly alleged predicate acts under RICO, he has no damages. Bradshaw has simply failed to state a claim upon which relief can be granted under RICO. His Eighth Claim for relief is due to be dismissed.

### G. The Court is Without Equity Jurisdiction to Order Defendants to Investigate or Prosecute Allegations of Criminal Wrong-doing, or to Order the Appointment of a Special Prosecutor.

As this Court has previously noted at p. 20 of its Sept. 8, 2006 "Order Regarding Motions Heard on August 2006," "a complainant does not have a right to have a criminal investigation initiated." *See O'Connor v. Nevada*, 507 F. Supp. 546, 549 (D. Nev. 1981) (holding that it would violate the doctrine of separation of powers for a federal court to order a prosecutor to conduct an investigation or initiate a prosecution), (citing *Ross v. United States Attorney's Office*, 511 F.2d 524 (9th Cir. 1975), *cert. denied*, 423 U.S. 831 (1975); *Inmates of Attica Corr. Facility v. Rockefeller*, 477 F.2d 375 (2nd Cir. 1975); and *United States v. Cox*, 342 F.2d 167 (5th Cir. 1965), *cert. denied*, 381 U.S. 935 (1965)).  Nevertheless, and despite the fact that this Court specifically ordered stricken those allegations from the *Second Amended Complaint*, Bradshaw has repeated the same demands for equitable and damages relief in his *Third Amended Complaint* based upon the alleged failure of the CNMI Attorney General's Office to investigate and prosecute his criminal complaints against various other defendants in this lawsuit. See, *Third Amended Complaint* at p. 69, ¶ 2 (seeking the appointment of a special prosecutor "to investigate the operations of the CNMI AG and its courts in case 96-1320") and p. 69, ¶ 3 (seeking "an independent investigation to be made of BRADSHAW'S criminal complaint of conspiracy and fraud against ROBERT A. BISOM, JAY H. SORENSEN, and/or whomever of their associates . . . .").  Any demand for equitable relief against any member of the CNMI Attorney General's Office due to that Office's alleged failure to investigate and prosecute Bradshaw's criminal complaints is due to be dismissed with prejudice. [8]

---

[8]The Attorney General is troubled by Bradshaw's renewal of allegations and demands for relief that the Court has specifically ordered stricken from the Second Amended Complaint, and is tempted to seek sanctions for having to address these demands yet again. Although sanctions in a published opinion may serve to educate future plaintiffs, in the interest of judicial economy, and to avoid protracted litigation over collateral issues, defendants leave the matter to the Court's discretion.

**H. The Attorneys General and Assistant Attorneys General Are Entitled To Absolute Prosecutorial Immunity with Respect to Certain of Plaintiff's Claims for Damages Relief.**

Defendants are familiar with the Court's prior rulings that the Attorneys General and Assistant Attorneys General defendants are not entitled to claim absolute prosecutorial immunity. That may be true with respect to plaintiff's claims for negligence and legal malpractice in allegedly failing to provide him a proper defense in the Superior Court of the CNMI in *Bisom v. Commonwealth*, No. 96-1320 (N.M.I. Super. Ct.). However, defendants respectfully submit that when plaintiff's claims for relief are examined closely, that they are, indeed, entitled to absolute immunity with respect to plaintiff's claims for damages based upon alleged failure to investigate and prosecute allegations of criminal wrong-doing by other defendants. *See Botello v. Gammick*, 413 F.3d 971, 977 (9th Cir. 2005) (prosecutor's decision not to prosecute plaintiff's cases "intimately tied to judicial process" and thus entitled to absolute immunity); *accord, Roe v. City and County of San Francisco*, 109 F.3d 578, 583 (9th Cir. 1997) ("There can be no question that the nature of the decision not to prosecute is 'intimately associated with the judicial phase of the criminal process.' Therefore, consistent with our sister circuits, we hold that a prosecutor is entitled to absolute immunity for the decision not to prosecute."); *see also O'Connor v. Nevada*, 507 F. Supp. at 549 (prosecutor's failure or refusal to investigate and initiate criminal prosecution cannot provide the basis for civil liability), (citing *Raitport v. Provident Nat'l Bank*, 451 F. Supp. 522, 528 (E.D.Pa. 1978)). To the extent Bradshaw seeks damages against any named defendant from the CNMI Attorney General's Office based upon their failure to investigate or prosecute his complaints of criminal wrongdoing by other defendants in this lawsuit, those claims are barred by absolute prosecutorial immunity.

**I. The Attorneys General and Assistant Attorneys General Are Entitled To Qualified Immunity with Respect Plaintiff's Claims for Relief Based Upon Alleged Breach of Attorney-Client Relationship and Malpractice.**

Again, the defendants are familiar with the Court's prior rulings that they may not be entitled to qualified immunity. Defendants respectfully submit that the Court's earlier analysis was in error, at least with respect to whether plaintiff has stated any claim for relief based upon the U.S. Constitution or federal law. While the Court may have given the plaintiff the benefit of the doubt that he had articulated a claim that the defendants violated some law, in particular, laws governing whether an attorney-client relationship did or not

14

exist upon which plaintiff may or may not have a local cause of action, and whether the defendants violated some local statutory right under CNMI law with respect to providing the plaintiff a defense and indemnification in *Bisom v. Commonwealth*, No. 96-1320 (N.M.I. Super. Ct.), the analysis whether a defendant is entitled to qualified immunity in a civil rights action depends not on whether *any* law was clearly established, but whether it is clearly established that the defendant has violated the U.S. Constitution or federal law. *Davis v. Scherer*, 468 U.S. 183, 194 (1984) ("Officials sued for constitutional violations do not lose their qualified immunity merely because their conduct violates some statutory or administrative provision."). *Baker v. McCollan*, 443 U.S. 137, 146 (1979) ("Section 1983 imposes liability for violations of rights protected by the Constitution, not for violations of duties of care arising out of tort law . . . .") Stated differently, and assuming *arguendo* that plaintiff has alleged a claim upon which relief can be granted under local law, he has not stated a claim upon which relief can be granted under the U.S. Constitution or federal law for allegedly depriving him of property without due process. Considering that three justices of the CNMI Supreme Court and a Superior Court judge have declined to hold that Bradshaw had properly complied with PELDIA so as to entitle him to a defense and indemnity from the CNMI, it cannot be said that Bradshaw's "property rights" were clearly established. *See Malley v. Briggs*, 475 U.S. 355, 341 (1986) ("[I]f officers of reasonable competence could disagree on this issue, immunity should be recognized"). Accordingly, the defendants from the CNMI Attorney General's Office are entitled to qualified immunity as to any "due process" claim for damages that they committed legal malpractice or violated local law with respect to failing to provide him a defense or indemnifying him from liability under local law.

**J. The CNMI is Not a "Citizen" for Purposes of Diversity Jurisdiction, and Diversity Jurisdiction is Therefore Destroyed.**

At p. 3, ¶ 5 of the *Third Amended Complaint*, Bradshaw claims this Court has diversity jurisdiction over his local law claims due to diversity of citizenship. But plaintiff, the master of his own complaint, has named a defendant in this action that precludes the exercise of diversity jurisdiction, namely, the CNMI. It is settled law in the Ninth Circuit that the CNMI is not a "person" for purposes of diversity jurisdiction, and that "the CNMI's presence as a defendant in the action destroys complete diversity, precluding jurisdiction under [28 U.S.C.] § 1332." *Dyack v. Northern Mariana Islands*, 317 F.3d 1030, 1037 (9th Cir. 2003)

15

(citing *Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 829 (1989)). Accordingly, due to the presence of the CNMI as a defendant, this Court does not have diversity jurisdiction to entertain Bradshaw's local law claims contained in his Ninth, Fourteenth and Fifteenth Claims for Relief.

**K. Plaintiff Cannot Meet the Amount in Controversy Required to Establish Subject Matter Diversity Jurisdiction.**

Even if diversity jurisdiction were not destroyed due to the presence of the CNMI as a named defendant, plaintiff cannot meet the amount in controversy requirement to establish diversity jurisdiction. As noted previously, Bradshaw claims actual damages in the amount of $8,230 as the current costs of having to defend against the two cases brought against him by Bisom. *See Third Amended Complaint*, p. 69, ¶ 7. By itself, that does not meet the $75,000 threshold to establish diversity subject matter jurisdiction under 28 U.S.C. § 1332 (diversity jurisdiction exists "where the matter in controversy exceeds the sum or value of $75,000, exclusive of costs, and is between . . . citizens of different states"). Bradshaw also claims "punitive, special, compensatory, general, exemplary and other damages" in the amount of $2,285,000. *Third Amended Complaint*, p. 70, ¶ 8. And while "a court is obligated to consider claims for both actual and punitive damages in determining the jurisdictional amount," *see Rasidescu v. Midland Credit Mgmt., Inc.*, 435 F. Supp. 2d 1090, 1097 (S.D. Cal. 2006), Bradshaw's claims for punitive damages based upon his claims for emotional distress and damage to his reputation still require that he set forth facts in his complaint establishing the outrageousness of the conduct at issue as a matter of law. This, plaintiff cannot do.[9]

In the first place, and absent any non-conclusory allegations of fact as to wanton and malicious conduct on the part of any named defendant, Bradshaw's claim of $2,285,000 in punitive damages is so disproportionate to his claim of $8,230 of actual damages for having to defend himself in the two *Bisom* cases

---

[9]It should be noted that although titled "Intentional, Malicious and/or Irresponsible Actions Causing Emotional and Mental Distress on Bradshaw," plaintiff's Fifteenth Claim at pp. 67, 68 ¶¶ 380 - 382 actually sounds more in negligence than any intentional tort. Paragraph 380 speaks in terms of the "failure to exercise legitimate and proper due care and concern . . . ." The CNMI does not recognize a cause of action for negligent infliction of emotional distress. *Arriola v. Insurance Co. of N. Am.*, 2 Commw. Rptr. 113, 124 (N.M.I. Commw. Tr. Ct. 1985) (stating this cause of action is not recognized by the Restatement of Torts 2d §§ 46 & 436A, and declining to create such a cause of action). Thus, allegations of mere negligence, lack of due diligence and failure to exercise "proper due care and concern" are insufficient as a matter of law to state a claim.

as to be constitutionally suspect. *See BMW, Inc. v. Gore*, 517 U.S. 559, 574-75 (1996); *Rasidescu*, 435 F. Supp. 2d at 1098.

Secondly, Bradshaw's factually unsupported allegations that he has suffered damage to his reputation as a result of the *Bisom* litigation, that he was "slandered and defamed," not by any named defendant in this action, but "in the CNMI media," which presumably reported on his litigation with Bisom, *see, e.g., Third Amended Complaint*, p. 62, ¶¶ 342, 343, simply fail to state a claim for intentional infliction of emotional distress. Otherwise, every party who suffered an adverse ruling in litigation that was reported in the press would have a claim for intentional infliction of emotional distress. Bradshaw's claim that he had been slandered has previously been dismissed by this Court with leave to amend, because Bradshaw failed to allege that any defamatory statements were published outside any judicial proceeding, as opposed to during a judicial proceeding which would be absolutely privileged. "Order Regarding Motions Heard on August 2006," p. 25. Bradshaw's amended allegations of slander do not comply with the Court's directive to plead extra-judicial facts in support of his defamation claim, and therefore add nothing to the calculation of intentional distress damages.

Thirdly, and more importantly, in light of a legitimate question as to whether the Attorney General's Office even owed Bradshaw a duty of representation or indemnification in the local courts, *see* note 5, *supra*, and accompanying text, his factual allegations in support of emotional distress damages due to the Attorney General's Office defendants' alleged legal malpractice, negligence and failure of due diligence, simply fail to state a claim for intentional infliction of emotional distress.[10] The CNMI Supreme Court has set forth the standards generally applicable to pleading a cause of action for intentional infliction of emotional distress under local law.

In our Commonwealth the common law is drawn from the Restatements.
7 CMC § 3401; *Castro v. Hotel Nikko Saipan*, 4 N.M.I. 268, 272, n. 5 (1995)

---

[10]At p. 48, ¶ 251 of his *Third Amended Complaint*, Bradshaw asserts that "CNMI AG persons were effectively found guilty of gross and malicious incompetence and malpractice by the CNMI Supreme Court in its review of case 96-1320 in 2002." This completely mischaracterizes the decision in the case, which suggested nothing of the sort, not even in dicta. What Bradshaw's hyperbole does illustrate, however, is the necessity to closely examine the complaint for *facts*, not simply legal conclusions "cast in the form of factual allegations." *Doe I v. The Gap, Inc.*, 2001 WL 1842389 * 1.

("In the absence of contrary statutory or customary law this Court applies the common law as expressed in the Restatements."), *appeal dismissed*, 96 F.3d 1259 (9th Cir.1996). The action asserted by plaintiffs is defined in the Restatement (Second) of Torts § 46 (1965) (hereinafter Restatement) as "Outrageous Conduct Causing Severe Emotional Distress," and is, in relevant part, as follows:

> One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it for such bodily harm.

*Id.*

To maintain a cause of action for the intentional infliction of emotional distress requires proof of four elements: (1) that the conduct complained of was outrageous; (2) that the conduct was intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. *See Arriola v. Insurance Company of North America*, 2 CR 113, 121 (Trial Ct. 1985) (citing *Chuy v. Philadelphia Eagles Football Club*, 595 F.2d 1265 at 1273 (10th Cir.1979)).

Comment h. to Restatement § 46 sets forth an important duty of courts to guard the gateway to the cause of action for intentional infliction of emotional distress. The reasons for this appear from the history of this cause of action and the justifiable reluctance of courts of law to become embroiled in petty disputes that nonetheless cause someone to feel emotionally disturbed and distressed. Accordingly, comment h. requires the court to judge the sufficiency of the conduct alleged to have caused the emotional distress before allowing the case to proceed to a full trial:

> It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery . . . .

Restatement § 46 cmt. h.

It is well established that before a claim for the intentional infliction of emotional distress raises a question of fact requiring resolution by trial, the plaintiff must set forth facts establishing the outrageousness of the conduct as a matter of law:

> If courts do not in clear cases exercise their review of such claims in the first instance, the standards of outrageousness will be expanded into an unreviewable jury question, diluting the importance of the cause of action and the available relief.

*Keiter v. Penn Mutual Ins.* Co., 900 F. Supp. 1339, 1348 (D.Haw. 1995).

*Charfauros v. Board of Elections*, 1998 MP 16, ¶¶ 61 - 64, 5 N.M.I. 188, 1998 WL 34073646 *16, 17, (footnotes omitted).

As noted by Special Judge Wiseman, writing for the CNMI Supreme Court in *Charfauros*, "the fact that one must institute legal process to enforce their rights or secure their interests does not, standing alone,

state a claim for the intentional infliction of emotional distress." *Id.*, ¶ 75, *19. "It is important to note that the need to assert one's rights as against another does not *ipso facto* give rise to a cause of action for the intentional infliction of emotional distress. Society expects its community members to withstand some strain and pressure necessarily inherent in asserting their legal rights without automatically leading to a claim for emotional distress." *Id.*, ¶ 79, *21.

The general rule in the majority of jurisdictions is that mere allegations of professional negligence are insufficient to support a claim for punitive damages or recovery for emotional distress absent factual assertions supporting a conclusion of oppression, fraud[11] or malice. *See Smith v. Superior Court*, 10 Cal. App. 4th 1033, 13 Cal. Rptr. 2d 133 (1992) (holding that absent non-conclusory factual allegations of intentional or affirmative misconduct, professional negligence is insufficient to permit recovery for emotional distress or punitive damages); *McMurty v. Wiseman*, ___ F. Supp. 2d ___, 2006 WL 2375579, * 2 (W.D. Ky. 2006) (canvassing cases and finding that the majority of jurisdictions subscribe to the rule that punitive damages may only be recovered in a legal malpractice action for conduct that is fraudulent, malicious, willful, wanton or reckless), (citing *Boros v. Baxley*, 621 So. 2d 240, 244-45 (Ala. 1993) (holding that there can be "no recovery for emotional distress [or punitive damages] where the [legal malpractice] does not involve any affirmative wrongdoing but merely neglect of duty")). Breach of a fiduciary duty, assuming there was one in this case, *cf. Third Amended Complaint* at p. 46, ¶ 253 ("The CNMI AG had a fiduciary duty by the CNMI Constitution and laws to render legal assistance and indemnification to BRADSHAW for his official work in the CNMI"), without more, is simply not enough to recover punitive damages for intentional infliction of emotional distress.[12] Stripped of its speculation and conjecture, Bradshaw's complaint

---

[11]Fraud, of course, must be alleged with particularity and is subject to the heightened pleadings standard, *see* Fed. R. Civ. P., Rule 9(b); and conclusory allegations are insufficient to defeat a motion to dismiss. *Terarecon, Inc. v. Fovia, Inc.*, ___ F. Supp. 2d ___, 2006 WL 2691405, * 2 - 4 (N.D. Cal. 2006). Absent specific factual allegations of who, what, when, where and how he was damaged, Bradshaw's complaint alleges nothing more than simple negligence, which does not support a claim for punitive damages.

[12]Again, three justices of the CNMI Supreme Court and one Superior Court judge have declined to hold that there existed a bona fide attorney-client relationship between Bradshaw and the Attorney General's Office or that the CNMI had a clear and unequivocal duty under PELDIA to provide representation and indemnification to Bradshaw in the *Bisom* cases. While Bradshaw may not be bound by the 2002 decision of the CNMI Supreme Court because he was not a party, and likely not in privity with Bisom (a defense

alleges nothing more than simple professional negligence against the various members of the CNMI Attorney General's Office.[13]

Bradshaw's complaint comes nowhere close to articulating facts that meet the standard required to plead a cause of action for intentional infliction of emotional distress; and because he has failed to adequately allege non-conclusory facts in support of a claim for intentional misconduct, his punitive damage demands are due to be disregarded in calculating the jurisdictional amount for diversity subject matter jurisdiction under 28 U.S.C. § 1332. This Court does not have diversity jurisdiction over Bradshaw's local law claims.

**L. Following Dismissal of Plaintiff's Federal Claims, his Remaining Claims Asserting Violations of Local Law are Due to Be Dismissed Pursuant to 28 U.S.C. § 1367(c).**

As noted earlier, 28 U.S.C. § 1367(c) provides that the district courts may decline to exercise supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." In the absence of federal question or diversity jurisdiction, it is within the Court's discretion to decline to exercise supplemental jurisdiction and to dismiss Bradshaw's remaining claims based upon local law without prejudice pursuant to 28 U.S.C. § 1367(c). *See Dyack v. Northern Mariana Islands*, 317 F.3d 1030, 1037-38 (9th Cir. 2003);

---

the Attorney General reserves in the unlikely case this case should go forward), the proverbial writing is certainly on the wall on this question of purely local law.

[13]While Bradshaw casts conclusory aspersions against former Attorney General Pamela Brown, asserting that she conspired with unnamed others to hide or destroy various parts of a court file in her custody, *see, e.g.*, *Third Amended Complaint*, pp. 35, 36, ¶¶ 176 - 182; pp. 50, 51, ¶¶ 267, 268, it remains nothing but speculation and conjecture. Bradshaw offers no factual specifics, and he acknowledges he is only speculating that he is the victim of any intentional tort that may warrant punitive damages. *See Third Amended Complaint*, p. 37, ¶ 183 ("Regardless of whatever role BROWN had in the loss or hiding of those court documents, as [sic] a minimum, BROWN was grossly and maliciously incompetent."). Read in their entirety, not in isolation, Bradshaw's "factual" allegations against former Attorney General Brown are nothing more than that her office mishandled a file and perhaps mislaid its contents, assuming they ever existed. In its best light, Bradshaw alleges Brown perpetrated a fraud on him. But fraud must be plead with particularity, not by assumption, speculation or conjecture. Bradshaw's allegations against former Attorney General Brown thus offer nothing to the analysis of whether he has adequately plead a claim for intentional infliction of emotional distress against any member of the CNMI Attorney General's Office.

20

*Bryan v. Adventist Health Sys./West*, 289 F.3d 1162, 1169 (9th Cir. 2002). Reduced to their essence, considering that Bradshaw's claims of legal malpractice and lack of due diligence on the part of the CNMI Attorney General's Office, and claims that the CNMI defendants violated *local* law in failing to provide him a defense and indemnify him in the *Bisom* cases are novel questions of local law, the first three, if not all four of the factors militate in favor of dismissing plaintiff's local law claims pursuant to § 1367(c) in order to allow these questions of local law which predominate over any putative questions of federal law to be decided in the first instance by the local courts.

### IV. CONCLUSION

There is no basis for the assertion of any federal claim based upon the U.S. Constitution or federal law against any employee of the CNMI Attorney General's Office; diversity jurisdiction does not exist; and in the absence of federal question or diversity jurisdiction, plaintiff's supplemental claims asserted pursuant to local law are due to be dismissed.

**WHEREFORE**, defendants Commonwealth of the Northern Mariana Islands; Nicole C. Forelli; William C. Bush; D. Douglas Cotton; L. David Sosebee; Andrew Clayton; and Pamela S. Brown respectfully move the Court to dismiss all federal claims contained in the *Third Amended Complaint* with prejudice and to dismiss all remaining claims pursuant to 28 U.S.C. § 1367(c).

OFFICE OF THE ATTORNEY GENERAL
MATTHEW T. GREGORY, Attorney General

Gregory Baka
Deputy Attorney General
Attorney for Defendants Commonwealth of the
    Northern Mariana Islands, Nicole C. Forelli,
    William C. Bush, D. Douglas Cotton,
    L. David Sosebee, Andrew Clayton,
    and Pamela S. Brown

## CERTIFICATE OF SERVICE

Pursuant to Federal Rule of Civil Procedure 5(d), the undersigned declarant states as follows:

1.       I am eighteen years of age or older, and I certify that I caused to be served the following

documents to the last known address(es) listed below on the date(s) indicated.

**CNMI DEFENDANTS' MOTION TO DISMISS THIRD AMENDED COMPLAINT; MEMORANDUM OF LAW IN SUPPORT; CERTIFICATE OF SERVICE**

2.       As set forth below, this service was accomplished by personal delivery; U.S. Mail; deposit with

Clerk of Court (in attorney box), <u>cf.</u> Fed. R. Civ. P. 5(b)(2)(D); or electronic service, <u>see</u> Local Rule 5.1.

| | |
|---|---|
| Robert D. Bradshaw | Plaintiff, pro se |
| P. O. Box 473 | Tel:  (208) 245-1691 |
| 1530 W. Trout Creek Road | Fax:  N/A |
| Calder, ID  83808-0473 | **Via U.S. Mail** |

| | |
|---|---|
| Mark B. Hanson, Esq.  # F0261 | Attorney for Defendant Bisom |
| Macaranas Building, 1st Floor | Tel:  (670) 233-8600 |
| Beach Road, Garapan | Fax:  (670) 233-5262 |
| PMB  738, P. O. Box 10,000 | E-mail:  mark@saipanlaw.com |
| Saipan, MP  96950-8900 | **Via Electronic Service** |

| | |
|---|---|
| Jay H. Sorensen, Esq.  # F0127 | Defendant, pro se |
| c/o Shanghai, China | Tel:  (86) 21-5083-8542          Fax:  same |
| P. O. Box 9022 | E-mail:  subpar@fastmail.cn |
| Warren, MI  48090-9022 | **Via E-Mail** |

| | |
|---|---|
| G. Patrick Civille, Esq.  # F0139 | Attorney for dismissed judicial Defendants |
| Civille & Tang, PLLC | Tel:  (671) 477-9891/2 |
| 330 Hernan Cortez Ave., Ste. 200 | Fax:  (671) 472-2601 |
| Hagåtña, GU  96910 | E-mail:  pciville@guamattorneys.com |
| | **Via Electronic Service** |

3.       I declare under penalty of perjury that the foregoing is true and correct.  Executed on

Friday, 20 October 2006.

_Gregory Baka_
Deputy Attorney General
Attorney for Defendants Commonwealth of the
        Northern Mariana Islands, Nicole C. Forelli,
        William C. Bush, D. Douglas Cotton,
        L. David Sosebee, Andrew Clayton,
        and Pamela S. Brown