F I L E D
Clerk
District Court

NOV - 2 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert D. Bradshaw
PO Box 473
1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691

Plaintiff, Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D BRADSHAW<br><br>    Plaintiff<br><br>v.<br><br>COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al.<br><br>    Defendants | ) Civil Action No 05-0027<br>)<br>)<br>)<br>) **OPPOSITION TO CNMI**<br>) **DEFENDANTS' MOTION TO DISMISS**<br>) **THIRD AMENDED COMPLAINT**<br>)<br>) Hearing Dec 7, 2006<br>) Time: 9:00 AM<br>) Judge Alex R. Munson |

## Introduction

1. COMES now plaintiff to oppose CNMI Defendants' Motion to Dismiss Third Amended Compliant.

1

Received    Nov-03-2006 05:50       From-            To-US DISTRICT COURT, N     Page 003

2. Most of defendants' motion devolves to issues which the Court has earlier addressed and decided in its orders of Feb 21, Jun 12, and Sep 8, 2006. In particular, the Court's order of Feb 21, 2006 has already found that the complaint had merit and the statement of jurisdiction was satisfactory. Now the AG puts forth a number of arguments why jurisdiction and the federal claims are not satisfactory.

3. Previously, the AG and its defendants had opportunities to address and oppose the statements of jurisdiction and the several federal claims. The AG did so and filed its opposition with the court and the court issued its order on the pleadings on Sep 8, 2006. Based on this order and the earlier orders from the Court there was no issue or need over amending the first 282 paragraphs of the complaint as the AG now opposes (lines 7-17, page 3 of the AG's motion to dismiss).

4. The Federal Rules of Civil Procedure (FRCP) has no provisions to allow the AG to continuously dig up old issues in the complaint which the AG has already addressed in its motions to dismiss the first and second amended complaints and which the Court has acted upon and decided. The AG has offered no court case law which allows it to go back and readdress issues that were addressed and decided earlier by the Court. The CNMI is now estopped by law from reopening these issues.

5. If there is any doubt of the jurisdiction of this Court over the issues raised in the complaint, they are settled by the fact that this Court has "inherent equity powers" which grants the Court leeway to address issues which common sense, equity and justice demand.

Received   Nov-03-2006 05:50        From-        To-US DISTRICT COURT, N   Page 004

6. If the AG can continuously go back and resurrect issues previously addressed by the AG and decided by the Court, this case will never be concluded because the AG can continuously bring up old issues to no end.

7. While the complaint's statements of jurisdiction address the overall questions of jurisdiction, it does not specifically define each federal law and jurisdiction question for each defendant in paragraphs 1 to 6 of the complaint. Plaintiff followed the normal and usual practice of attorneys in the citations of jurisdiction. Obviously, if it was necessary in the opening paragraphs on jurisdiction to specifically link each federal law and jurisdiction to each of the defendants, the Court would have earlier ordered it. In so doing, plaintiff certainly would not have tied diversity jurisdiction to the CNMI. Regardless, plaintiff has no place linked diversity jurisdiction to the CNMI entity. As a minimum, the CNMI certainly involved supplemental jurisdiction which is proper and which is cited.

### Discussion on the Specific Items Raised

8. Item IIIA on CNMI not a person per 42 USC 1983. None of the 1983 claims in the complaint cite the CNMI as a party. Too, the 1983 claims have all been previously addressed by the AG and decided upon by the Court.

9. Item IIIB on Criminal Statutes for Jurisdiction. This issue has already been decided by the Court in its earlier orders. Regardless, the postal laws involve violations of federal criminal laws. Per 18 USC 4, any person knowing of a US felony is to report it as soon as possible to a US judge. There is a penalty of a fine and three years in jail for failure to comply with this law. Plaintiff had a duty to report these criminal violations to the Federal courts.

3

Received   Nov-03-2006 05:50        From-                    To-US DISTRICT COURT, N        Page 005

10. Item IIIC on Violations of Rights of Procedural Due Process.

a. These issues have been addressed earlier by the AG in its motions to dismiss and now decided by the Court. It is redundant to bring them up again.

b. Regardless, the AG claims that local 7 CMC 2304 exists to allow plaintiff to sue the CNMI in CNMI courts to recover the monetary damages imposed on Bradshaw so far. It is ludicrous to even assume that this law represents any measure of fairness or justice to Bradshaw.

c. The complaint has already spelled out how plaintiff has walked the extra mile in an effort to try to get the CNMI to accept responsibility and do something responsible on the mess which the CNMI and its agents created. In Sep 2004, the CNMI could have went into the CNMI courts and had the illegal judgments against both Bradshaw and the CNMI reversed. This would have paved the way for the CNMI to receive a complete refund of the $140,000 which the CNMI paid Bisom in an illegal and improper judgment.

d. Rather than do the right and fair thing, the CNMI has consistently acted to lie, deceive, twist, distort and obfuscate. In fact, even in plaintiff's acts to plead for a refund of the illegally gained $140,000, the CNMI actually went into court in its opposition to the 1st and 2nd amended complaints and tried to have the court act against Plaintiff's efforts to achieve a refund of the $140,000 (under the CNMI's promotion of the Rooker-Feldman's doctrine for dismissal).

e. Even if the AG wished to fight plaintiff in court, the AG as a minimum could have initiated action on its own, and independently of whatever Bradshaw does or does not do, to obtain a refund of the $140,000. For some strange and totally incomprehensible reason, the

4

AG has never shown any interest in getting back the illegally dispensed $140,000 to Bisom. It appears that the CNMI and especially its AG's office is quite happy with the earlier payout of the $140,000 (all of this even allows for some strange continuing presence of the conspiracy or an understanding of it as the complaint alleges). If the CNMI has no interest in the $140,000 it paid out, there is simply no way that the CNMI is going to allow Bradshaw to have any justice in its courts under 2304 (unless, of course, this action is present in the US courts which then can act as a motivation to the CNMI).

    f. Bradshaw offered to settle this thing months ago with the CNMI (not with Bisom) at very little cost to the CNMI. The CNMI suggested or at least made plaintiff believe that the AG would have to defend this case in CNMI courts if Bisom appealed. So although it was not then necessary, Bradshaw acceded to the AG position (as it then seemed good for all parties concerned) and added that settlement was contingent on Bisom canceling any appeals or subsequent actions. With the appeal, Bradshaw then believed the AG would then pick up the case on appeal. The letters at Exhibits A, B and C (in the accompanying declaration) all attest to the refusal of the AG to do anything in help to Bradshaw. If Bradshaw was in local court under 7 CMC 2304, the AG and justice Castro would do as they have consistently done all along. They would fight and oppose Bradshaw all the way.

    g. Since the very people who created the mess in CNMI case 96-1320, the CNMI AG and CNMI courts, are still around and in control, it is almost a certainty that Bradshaw could never prevail in the local courts on anything (unless this action is active in the US courts which really is the deciding factor whether the CNMI will do anything or not). Justice Castro is not only a Supreme Court justice but he is often the Acting Chief Judge of the CNMI courts.

Received   Nov-03-2006 05:50      From-      To-US DISTRICT COURT, N      Page 007

He is believed to be a vindictive person who would take his spite out on Bradshaw, given a chance.

h. What then could Bradshaw do faced with a local court under the control of Justice Castro? There would be no possibility of a change of venue. It was no win. Even if one did win, the party would never collect the judgment as the CNMI now has over $9 million in outstanding court judgments which have not been paid and probably won't be paid--ever. The only judgments the CNMI will be paying in the coming days are those which involve a person with local connections to the political structure. Mainly, this involves local people able to influence a number of local votes.

11. Item IIID on failure to state a claim for violation of equal protection. This issue seems to center on plaintiff's 11th claim which was revised at the Court's direction. It concerns 42 USC 1981; yet the AG spends a page (p. 8) citing issues under 1983. These arguments are off track and need not be addressed by plaintiff. Plaintiff's presentation of the related facts are clear enough. It is unclear why the AG chooses to attack truth cited in the complaint.

12. Item IIIE on 42 USC 1985, Claim seven. Plaintiff's claim is simple and clear enough.

a. While several pieces of evidence are submitted in the complaint sufficient to establish some particulars of the claim, plaintiff cites one important fact--the failure of the CNMI AG to make any effort to defend the case. Not only did the AG withdraw, leaving Bradshaw holding the bag (see Exhibit E in the supporting declaration), but the AG seems to have done nothing at the trial--to defend Bradshaw, Scott Tan or even the CNMI itself.

b. Attached (in the accompanying declaration) is Exhibit D, the Exhibit Log Sheet prepared by the Clerk of Superior Court for the 96-1320 trial in 2000. This document presents the submission of 74 exhibits by Bisom/Sorensen. Asst AG Sosebee presented one exhibit. Information received from Superior Clerk of Court office alleges that Sosebee called no witnesses (although this must be wrong as he surely called at least the personnel officer).

c. Obviously, something is fundamentally wrong if Asst AG Sosebee was supposed to be defending this case. In Meza v. Washington state Dept. of Social services (683 F 2d 314), the court said that "Public and opposing parties have right to expect conscientious service from government counsel." Bradshaw, Tan or even the CNMI did not get this from Sosebee.

d. While some of the parties in the AG's office and the Superior Court could be totally stupid and incompetent (as the CNMI Supreme Court has already determined), it is manifestly evident that this stupidity and malicious lack of diligence by all of the parties involved (including the judge) cannot possibly explain what happened on this case. Only conspiracy provides an explanation.

13. Item IIIF on 8th Claim, RICO.

a The AG cites paragraph 332 in the complaint as being plaintiff's only proof of RICO as if the cited acts are not criminal acts. The truth is that RICO in paragraph 328 incorporates all of the preceding paragraphs. The RICO claim is far greater than paragraph 332. Regardless, the acts of 332 are criminal acts by federal law when they involve conspiracy as charged in the complaint.

b. While Bradshaw purposely did not sue everybody in the AG's office involved, this same conspiracy of "understanding" has continued ever since the trial of 96-1320 in 2000

7

and the actions of Ms Forelli and Mr Sosebee. Ms Forelli claims she knew nothing about the case. But she was the AG and should have known.

c. Previously before the court Ms St Peter has attempted to ridicule Bradshaw for suing the several parties now in the complaint. The truth is since Feb 2000, there has been perhaps 25 people in the CNMI AG and Court offices who have worked overtime to block, thwart and oppose the actions of Bradshaw. All of these parties could have been sued and under RICO as they have all participated in this conspiracy at least in an understanding level. Bradshaw chose to only cite Ms Brown as she was the chief boss of the whole effort.

14. Item IIIG Criminal Investigation and Special Prosecutor.

a. This issue arises in connection with paragraphs 2 and 3 of Plaintiff's request for judgment/remedy  Surely, a person injured by criminal actions may ask a federal judge to have it investigated and/or forwarded to proper authorities (like the US Post Office, the FBI, special prosecutor, etc) for investigation and prosecution if called for. While the plaintiff does not have power to demand, order or initiate a criminal investigation or prosecution, a US Court can order an investigation by investigatory and/or prosecutorial authorities to determine if the prosecutor wants to proceed. If the Court follows the request, the ordering or initiation of the investigation involves the decision of the court and not the plaintiff (and what does this have to do with the Court's comments on Ms Brown?). That's the whole purpose of 18 USC 4, as cited above. Regardless, the AG and Court addressed these issue in previous litigation and no mention was made of striking the requests made to the Court.

b. The Court on its own initiative did order plaintiff to strike all "allegations" regarding Ms Brown's failure to investigate plaintiff's criminal complaint and the words obstruction of

Received    Nov-03-2006 05:50       From-                        To-US DISTRICT COURT, N        Page 010

justice. Plaintiff struck the "allegations." Plaintiff's request "for the court to order" an investigation is something entirely different from the Court's words about Ms Brown. While the AG may not understand the difference and what the Court actually ordered, there is a difference (like with apples and oranges). Either that or the AG is attempting some trick or sham designed to get the court to do take action against Bradshaw.

c. Herein, the AG calls for sanctions to be applied against Bradshaw for daring to make such requests for the Court to order an independent investigation of criminal acts and violations of US postal laws  This is just more proof of the continuing conspiratorial "understanding" in the AG's office to hide and cover-up all facets of this case. Since the CNMI could possibly obtain a refund of the illegally paid out $140,000 to Bisom, it is hard to understand the AG's position since the mess was brought to Brown's attention in Sep 2004.

d. If the AG doesn't like these requests to the Court, he could have called for them to be stricken.

15. Item IIIH on Absolute immunity. and item III I on qualified immunity  The court has previously decided these issues. Accordingly, plaintiff requests that both of these items be stricken in their entirety from the motion. The resurfacing of issues previously decided is improper and a sham possibly designed to set up a situation where the CNMI can appeal the previous decision of the Court which the CNMI did not appeal when it had an opportunity. The continued presence of these issues in the motion are prejudicial to the plaintiff.

16. Item IIIJ On CNMI is Not a Citizen for Diversity. This issue is not in contention. The complaint does not say or suggest that the CNMI is a citizen for diversity. Certainly,

supplemental diversity under 28 USC 1367 and the inherent powers of the Court cover the CNMI.

17. Item IIIK Amount in Controversy. This issue has already been addressed and settled by the Court in its previous decisions.

18 Item IIIL Remaining Claims under 28 USC 1367. The AG's previous filings and the court decisions have already addressed this objection.

19 In its Introduction, the AG relies on the CNMI confusion over whether the AG did or did not represent Bradshaw at the 2000 trial of 96-1320  The legal fiduciary duty of the CNMI to defend Bradshaw is laid out clearly enough.

a. Bradshaw was sued in his official capacity in Bisom's original complaint and in the 1st and 2d amended complaints.  Even in the 3d and 4th amended complaints, the allegations were made on the context of Bradshaw's official duties and capacity.

b. There is no denying that Bradshaw was certainly entitled to legal assistance in his official capacity.  Per the law outlined by the US District Court in case 95-0042, Bisom had a requirement to distinguish between official capacity and duties as opposed to individual duties and capacity.  Bisom never made this distinction.  He could have and should have served the AG for Bradshaw in his official capacity, per local rules.  Otherwise, the AG told Bradshaw that he would be personally served and to notify him when it happened. Bradshaw complied with the AG requests.

c. There is no denying that the CNMI Superior Court was certainly in a state of confusion  Per Exhibit E (in the accompanying declaration), Asst AG Sosebee notified the court on Feb 1, 2000 that he did not represent Bradshaw.  In a decision and order signed by

10

Justice Castro on Feb 1, 2000 (Exhibit F in the accompanying declaration). Justice Castro defined by court order that the AG did not represent Bradshaw. Yet, on Feb 22, 2000, after taking an issue under advisement, justice Castro completely reversed his previous order without address or explanation and said that the AG did represent Bradshaw (see Exhibit G in the accompanying declaration).

d. Obviously, the two orders completely contradicted themselves and did produce gross confusion. This confusion is totally incomprehensible unless one realizes that the CNMI Court, as agents for the CNMI, was involved in a RICO conspiracy to rip off Bradshaw. The stupidity and malicious incompetence and lack of care is so gross that they cannot be explained apart from conspiracy and conspiracy in a RICO operation.

### Conclusion

20. The AG's motion essentially does nothing but attempts to rehash previous issues addressed and settled by the court. There is no basis for the Court to have to readdress them when their purpose can be prejudicial to the plaintiff in an attempt by the AG to use sham and deception to set up a situation where the AG can now appeal the court's previous rulings which the AG did not appeal at that time.

21. Under the FRCP rule 1, the purpose of the rules is to secure a just, speedy and inexpensive determination of every action. The AG has brought up issues which are in absolute defiance of rule 1. Thus, the AG's motion should be dismissed entirely and parts of it (items IIIH and III I) stricken as outlined above herein.

22. The AG has opened the door for sanctions against the plaintiff. Rather than sanctions against the plaintiff, plaintiff recommends sanctions/fine against the CNMI to be

11

Received Nov-03-2006 06:00      From-      To-US DISTRICT COURT, N      Page 003

paid to the Court (not to Bradshaw) for the actions of the AG in bringing up frivolous and irrelevant issues which the AG either addressed earlier or could have addressed in previous filings and issues which have already been decided by the Court. These frivolous issues have only caused both the plaintiff and the Court a waste of time in addressing them. They seem to have been predicated by the AG in an attempt to prejudice the Plaintiff.

23. Finally, a reviewing court is required to take notice of and incorporate relevant statutes and rules and precedents even if not pleaded in the complaint by a pro se plaintiff (Haines v. Kerner, 404 US 519, 30 L. Ed 2d 652, 92 S. Ct. 594 (1972)).

I declare under the penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge and belief. Dated this ___2d___ day of November 2006 at Calder, Idaho.

_____
ROBERT D. BRADSHAW, Plaintiff Pro Se

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the ___2d___ day of Nov 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Gregory Baka, Dep Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B. Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950

_____
Robert D. Bradshaw, Plaintiff, Pro Se