Received    Nov-03-2006 06:16    From-    To-US DISTRICT COURT, N    Page 002

F I L E D
Clerk
District Court

NOV - 2 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone 208-245-1691**

Plaintiff, Pro Se

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW | ) Case No. CV 05-0027 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al. Defendants | ) **DECLARATION OF ROBERT D.** ) **BRADSHAW IN SUPPORT OF** ) **PLAINTIFF'S OPPOSITION TO** ) **CNMI DEFENDANTS' MOTION TO** ) **DISMISS THE THIRD AMENDED** ) **COMPLAINT** ) Hearing: Dec 7, 2006 ) Time: 9:00 AM ) Judge Alex R. Munson |

I, ROBERT D. BRADSHAW, hereby declare:

1. I am the plaintiff in the above captioned case. I submit this declaration in support of Plaintiff's Opposition to CNMI Defendants' Motion to Dismiss the Third Amended Complaint. I have personal knowledge of the information set forth herein, and if called upon to testify, I would and could competently testify thereto.

1

2. Attached hereto are true and accurate copies of the following exhibits in support of

Plaintiff's Opposition to CNMI Defendants' Motion to Dismiss the Third Amended Complaint.

Exhibit A:  Bradshaw's Letter of Apr 14, 2006 Asking for AG assistance and indemnification.

Exhibit B:  Acting AG Baka's Letter of Apr 26, 2006 saying no AG assistance.

Exhibit C:  Asst AG St Peter's Letter of Jul 17, 2006 saying that the AG's office does not represent Bradshaw and is under no obligation to do so.

Exhibit D:  Clerk's Exhibit Log Sheet from trial of 96-1320, Feb 2000.

Exhibit E:  Asst AG Sosebee's Feb 1, 2000 Declaration

Exhibit F:  Justice Castro's Decision and Order of Feb 1, 2000.

Exhibit G.  Justice Castro's Feb 22, 2000 Order Denying Motion to Remove

Case From Trial Docket.

I declare under the penalty of perjury under the laws of the United States of America

that the foregoing is true and correct to the best of my knowledge and belief. Dated this

_____ day of November 2006 at Calder, Idaho.

Robert D. Bradshaw, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _____ day of Nov 2006, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
Gregory Baka, Dep Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B. Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950

Robert D. Bradshaw, Plaintiff, Pro Se

2

Received  Nov-03-2006 05:18    From-    To-US DISTRICT COURT, N    Page 004



COPY

4-14-06

The CNMI Attorney General
Caller Box 10007
Capitol Hill
Saipan, MP  96950

Gentlemen:

In previous discussion with Ms St Peter and Mr Livingston of your office, I have been led to believe that you will defend both me and the actions of the CNMI Superior Court in its void order on Dec 29, 2006 in case 96-1320. It was my understanding that the CNMI AG had an obligation to provide this defense.   Clearly, there seems to be no conflict of interest in such litigation as the CNMI and me are certainly together on this appeal issue.

In the Transmittal Form from the Superior Court Clerk of Court for Supreme Court case 06-0005 GA, Mr Livingston is shown as counsel for Appellee.

As this case may be proceeding soon, the purpose of this letter is to confirm that your office will provide this defense.  For my protection, I need this confirmation in writing.   Alternatively, I may have to plan on making this defense, depending upon what the appellant may actually appeal.   Of course, right now, I don't know what will be specifically appealed.   Possibly the appeal will address an alleged error of the court or something else not directly affecting the facts and law in the case.

May I please hear from you in writing on your position of this?  If you need a formal request from me on this defense, please consider this letter as constituting a formal request for AG assistance on this appeal and indemnification for any losses incurred.

Yours very truly,


Robert D. Bradshaw
PO Box 473
Calder, ID  83808
Phone  208 245-1691

Exhibit A

3



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950

**Civil Division**
Tel: (670) 664-2341/42
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/67/68
Fax: (670) 234-7016

**Investigative Unit**
Tel: (670) 664-2310/12
Fax: (670) 664-2319

**Division of Immigration**

**Saipan**
Tel: (670) 236-0972/73
Fax: (670) 664-3190

**Rota**
Tel: (670) 532-9456
Fax: (670) 532-9190

**Tinian**
Tel: (670) 433-3712
Fax: (670) 433-3730

**Domestic Violence Intervention Center**
Tel: (670) 664-4283/4
Fax: (670) 234-4589

April 26, 2006

Mr. Robert D. Bradshaw
P.O. Box 473
Calder, ID 83803

Dear Mr. Bradshaw:

Thank you for your letter of April 14, 2006, seeking confirmation that our office will provide you with legal representation in Supreme Court Case No. 06-005 GA.

The Superior Court's Transmittal Form naming Mr. Livingstone as counsel of record for Appellee was in error.

In a letter to you dated February 15, 2005, then-Attorney General Pamela Brown indicated this office is not in a position to represent you. A copy of the letter is enclosed for your reference. We continue to maintain that position.

Sincerely,

*Gregory Baka*

GREGORY BAKA
Acting Attorney General

Exhibit



④

Received   Nov-03-2006 05:10        —From—                To-US DISTRICT COURT, N   Page 006



**Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

Commonwealth of the Northern Mariana Islands
**Office of the Attorney General**
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950



**Criminal Division**
Tel: (670) 664-2366
Fax: (670) 234-7016

July 17, 2006

## ORIGINAL VIA MAIL DELIVERY

Mr. Robert D. Bradshaw
P.O. Box 473
Calder, ID 83808

Re: *Bradshaw v. CNMI, et al*, U.S. District Court Case No. 05-0027

Dear Mr. Bradshaw:

I am writing in response to your letter dated July 2, 2006, which I received on July 14, 2006. I will certainly pass your settlement offer along to the Attorney General and the Public Auditor's Office. With our Motion to Dismiss pending, however, your August 2, 2006 deadline may be unrealistic.

As for the rest of your letter, many of the assertions made in your letter are factually incorrect. Moreover, it is inappropriate for me to discuss Attorney General's litigation strategy regarding this matter with you.

My clients' position continues to be that the Attorney General's Office never represented you, nor was it under any obligation to do so, in the Superior Court matter which resulted in a default judgment against you, later set aside by Judge Lizama. Your complaint describes in great detail allegations of "gross incompetence" and wrong doing, and it is your burden to prove these allegations. The U.S. District Court will decide if your claims have merit. I see no need to rehash these allegations in our communications.

Very Truly Yours,

Kristin D. St. Peter
Assistant Attorney General

Cc:    Mathew Gregory, Attorney General
       Nancy Gottfried, Counsel OPA

Exhibit
C

Received    Nov-03-2006 06:16    From-    To-US DISTRICT COURT, N    Page 007

THE HONORABLE VIRGINIA SABLAN ONERHEIM    Pro Tem
ASSOCIATE JUDGE, FAMILY COURT DIVISION    Judge Castro
SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

**EXHIBIT LOG SHEET**

Page ___1___ of ___5___

Case Name: Besom v. CMM 1, et al    Case No: 96-1320    Date: 2-8-00

| PLAINTIFF | ID | AD | ~~DEFENDANT~~ Plaintiff | ID | AD |
|---|---|---|---|---|---|
| Dear letter for S. Jam | A | ✓ | 12-26-93 letter | W | |
| 3/12/93 letter | B | ✓ | 12-27-93 letter | X | |
| employment Contract | C | ✓ | 12-30-93 letter | Y | ✓ |
| 4-6-93 Note | D | ✓ | 1-3-94 letter | Z | ✓ |
| 6-3-93 Memo | E | ✓ | 1-14-93 letter | AA | |
| 6-16-93 letter | F | ✓ | 1-17-94 Memo | AB | ✓ |
| 9-24-93 Memo | G | ✓ | 1-20-94 Memo | AC | ✓ |
| 10-7-93 Memo | H | ✓ | 1-24-94 letter | AD | |
| 9-23-93 letter | I | ✓ | 1-30-94 letter | AE | ✓ |
| 11-14 letter | J | ✓ | 2-11-94 letter | AF | |
| 11-19-93 Memo | K | ✓ | 2-17-94 letter | AG | ✓ |
| 11-26-93 letter | L | ✓ | 3-2-94 letter | AH | ✓ |
| Agreement | M | ✓ | 4-26-94 letter | AI | ✓ |
| 12-3-93 Memo | N | ✓ | 3-23-94 letter | AJ | |
| 12-6-93 Memo | O | | 5-17-94 letter | AK | ✓ |
| Excuse Slip 12-6-93 | P | ✓ | 5-23-94 letter | AL | ✓ |
| 12-8-94 letter | Q | ✓ | 5-30-94 letter | AM | ✓ |
| 12-22-93 Memo | R | | 5-31-94 letter | AN | ✓ |
| 12-23-93 letter | S | | 8-4-94 Memo | AO | ✓ |
| Newspaper Clipping | T | ✓ | 6-22-99 Memo | AP | ✓ |
| 12-24-93 Clipping | U | ✓ | 12-28-93 letter | AAA | ✓ |
| Clipping | V | ✓ | 12-3-93 letter | BBB | ✓ |

Deputy Clerk

Received    Nov-02-2006 06:16    From-    To-US DISTRICT COURT, N    Page 008

**THE HONORABLE VIRGINIA SABLAN ONERHEIM** *Pro Tem*
**ASSOCIATE JUDGE, FAMILY COURT DIVISION** *Judge Castro*
**SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS**

**EXHIBIT LOG SHEET**
Page ___2___ of ___2___

Case Name: __Robert A. Bisom vs. Crown, et al.__  Case No: ___CV96-1370___  Date: __2/14/00__

| PLAINTIFF | ID | AD | DEFENDANT | ID | AD |
|---|---|---|---|---|---|
| 12-3-93 letter | CCC | ✓ | | | |
| 12-6-93 letter | DDD | ✓ | | | |
| 12-7-93 letter | EEE | ✓ | | | |
| 12-7-93 letter | FFF | ✓ | | | |
| 12-10-93 letter | GGG | ✓ | | | |
| 12-28-93 letter | HHH | ✓ | | | |
| 12-30-93 letter | III | ✓ | | | |
| Contract | AQ | | | | |
| Dest. Court Conviction | AR | | | | |
| Sup. Court Conviction | AS | | | | |
| 2-14-94 letter | AT | ✓ | | | |
| 9-13-93 ✓ | AU | ✓ | | | |
| notes | AV | ✓ | | | |
| 5/10/96 letter from Lenette | AW | ✓ | | | |
| TT's passport (copy) 14 pages | AX | admitted ✓ | | | |
| District notice/Decision 12/6/96 | AY | | | | |
| NoPA 11-24-93 | AZ | ✓ | | | |
| Neg for PA 11-28-93 | BA | ✓ | | | |
| Ltr. 12-27-93 fr. Bradshaw | BB | ✓ | | | |
| Crown Pacific 5 pages | BC | ✓ | | | |
| Various letters/docs. 25 pages | BD | ✓ | | | |
| RV96 BGR 1 page 4 pages | BE | ✓ | | | |

(7)

*Deputy Clerk*

To-US DISTRICT COURT, N    Page 008    Nov-03-2006 09:18    From-    Received

*THE HONORABLE VIRGINIA SABLAN ONERHEIM* Pro Tem
*ASSOCIATE JUDGE, FAMILY COURT DIVISION* Judge Castro
*SUPERIOR COURT OF THE COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS*

**EXHIBIT LOG SHEET**
Page ___7___ of ___7___

Case Name: Bisom vs. CNMI, et al.   Case No: CA 96-1370   Date: 2/14/00

| PLAINTIFF | ID | AD | DEFENDANT | ID | AD |
|---|---|---|---|---|---|
| Letters from Employer 4 pages | BF | ✓ | Guy Gabaldon | 1 | |
| Statement of account 1pg | BG | — | | | |
| Economic Damages, page 3 individual | BH | ✓ | | | |
| Income Tax "1993" 5 pages | BI | ✓ | | | |
| BDG wire transfer 1 pages | BJ | ✓ | | | |
| Air freight Receipts Contractor 3 pages | BK | ✓ | | | |
| Post. Contractor 3 5 pages | BL | | | | ... |
| Ltr. 5/23/94 (Mr. Tan) | BM | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

(8)

_____
Deputy Clerk

# COPY

L. David Sosebee
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Civil Division – Capitol Hill
2nd Floor Administration Bldg.
Saipan, MP 96950
Telephone:    (670) 664-2341
Telecopier:   (670) 664-2349

Attorney for Defendants CNMI, LaMotte, and Tan

### IN THE SUPERIOR COURT
### OF THE
### COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A. BISOM, | |
| **Plaintiff,** | CIVIL ACTION NO. 96-1320 |
| v. | DECLARATION OF L. DAVID SOSEBEE |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, et al., | |
| **Defendants.** | |

Pursuant to Com. R. Civ. P. 6(c), L. David Sosebee declares the following:

1.    I am an Assistant Attorney General of the Commonwealth of the Northern
Mariana Islands.

2.    Defendants seek to shorten time for the hearing of defendants' Motion To
Remove Case From Jury Trial Docket.

3.    On January 28, 2000, plaintiff served a Notice in Lieu of Subpoena
requesting that the defendants, Bradshaw, Tan and LaMotte appear for

1

Exhibit
E 29

trial on February 8, 2000, at 9:00 a.m. The Office of the Attorney General represents defendants Tan and LaMorte. The office does not represent defendant Bradshaw

4.    Plaintiff's counsel have previously been advised that the office does not represent Mr. Bradshaw and that Mr Bradshaw has not been served with citation in this case and has not appeared. Without service on Mr. Bradshaw, this case is not ready for trial.

5.    Defendants seek to shorten time for the hearing of these motions because a named defendant has not been served in this suit and the case is set for trial the week beginning February 7, 2000.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on January 31, 2000 at Saipan, Commonwealth of the Northern Mariana Islands.

/S/
L. David Sosebee
Assistant Attorney General

2

⑩

EXHIBIT
E    30

Received    Nov-03-2006 05:26    From-    To-US DISTRICT COURT, N    Page 002

IN THE SUPERIOR COURT

OF THE

COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT A BISOM, | CIVIL ACTION NO. 96-1320 |
| Plaintiff, | |
| v. | DECISION AND ORDER |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, LEO L. LAMOTTE, CNMI Public Auditor, in his official capacity, ROBERT D. BRADSHAW, formerly appointed Temporary Public Auditor, in his individual capacity, SCOTT KHENG SHANG TAN, formerly CNMI Public Auditor, in his individual capacity, | |
| Defendants. | |

## I. INTRODUCTION

THIS MATTER came before the court on September 8, 1999 on Plaintiff's motions for partial summary judgment and to compel further responses to interrogatories and requests to produce documents. Jay Sorenson appeared on behalf of the plaintiff, Robert A. Bisom. Assistant Attorney General, David Sosebee, appeared on behalf of the defendants, the CNMI government, Leo L.



Exhibit F

Received    Nov-03-2006 09:26    From-    To-US DISTRICT COURT, N    Page 003

1  Lamotte, and Scott Kheng Shang Tan (collectively the "Defendants"). The court granted Plaintiff's
2  request for attorneys fees in the amount of $860.00 in connection with Plaintiff's motion to compel. The
3  court took under advisement the partial summary judgment motion. Having heard counsels' arguments
4  and reviewed the pleadings and documents on file, the court now renders its decision on this issue

## II. FACTUAL BACKGROUND[1]

**A.    The Parties**

   1. Plaintiff, Robert A. Bisom, is a citizen of the United States and, during the times relevant to this action, was a resident of the CNMI.

   2. Defendant Robert D. Bradshaw is a citizen of the United States and, during the times relevant to this action, was a resident of the CNMI.

   3. Defendant Scott Kheng Shang Tan is a citizen of the United States and, during the times relevant to this action, was a resident of the CNMI.

   4. Defendant Commonwealth of the Northern Mariana Islands (CNMI) is a political and governmental entity in union with the United States of America.

**B.    Employment Termination**

   This case involves an ex-employee of the Public Auditor's Office who was terminated from his employment as legal counsel prior to the expiration of his employment contract. Plaintiff, Robert A. Bisom ("Bisom"), was hired by Defendant, Scott K. S. Tan ("Tan") in April 1993 to serve as legal counsel to the CNMI Public Auditor's Office ("PAO"). Tan was then the Public Auditor. On November 25, 1993, Tan's term of office had expired and Defendant, Robert D. Bradshaw ("Bradshaw"), was appointed Temporary Public Auditor by the then governor, Larry Guerrero.

   After Bradshaw took office, he sent Bisom a series of letters accusing Bisom of wrongdoing. Among the letters were

---

[1]The Defendants, in their Response to Plaintiff's Motion for Partial Summary Judgment, failed to provide the facts leading up to Bisom's termination and this motion. Therefore, the court has no other choice but to accept the facts as Bisom presents them.

- 2 -



1    (1) a letter dated December 3, 1993 that stated "You are not to leave this office or contact

2    anyone about this office without my personal approval," directing Bisom to refer all contacts to

3    Bradshaw and return over all files to Bradshaw  In this letter, Bradshaw withdrew Bisom's authority

4    to act on behalf of OPA without Bradshaw's prior approval. (Aff. of Pl. in Supp. of Mot. for Summ.

5    J., Ex. B);

6    (2) a letter dated December 6, 1993, giving Bisom notice that his employment was being

7    terminated without cause to be effective 30 days thereafter. (*Id.* at Ex. C);

8    (3) a letter dated December 7, 1993, advising Bisom that his office was reassigned to another

9    employee, and that he was to work on a table in an administrative area that was open, offering no

10   privacy or security for confidential matters. (*Id.* at Ex. D);

11   (4) a letter dated December 28, 1993, giving Bisom notice that his employment was being

12   terminated with cause effective 7 days thereafter. (*Id.* at Ex. E).

13   After Bisom received the December 7, 1993 letter, he considered himself constructively terminated, as

14   he felt it was impossible for him to function in his job with the restrictions imposed on him.

15   Bradshaw brought charges of unethical conduct before the Bar Association Disciplinary

16   Committee against Bisom. He also furnished to the *Pacific Star*, a newspaper then in circulation in

17   Saipan, a running account of the events that led to his decision to fire Bisom and copies of memos and

18   letters Bradshaw sent to Bisom.

19   When Bradshaw left the Commonwealth in early January, 1994, Tan was appointed by the new

20   governor to be the Public Auditor on a temporary basis. Tan asked Bisom to return to the OPA, which

21   Bisom did for three days in January, 1994.

22

23   **III. PROCEDURAL BACKGROUND**

24   1.    On December 5, 1996, Bisom filed, in this court, a complaint alleging 11 causes of

25   action.

26

27

28

13

Received   Nov-03-2006 05:26       From-       To-US DISTRICT COURT, N       Page 006

2.     On December 31, 1996, Defendants removed the action to the United States District Court for the Northern Mariana Islands ("District Court") pursuant to the provisions of 28 U.S.C. §1441(b) in that the action arose out of 42 U.S.C. §§ 1981 and 1983.

3.     On January 31, 1997, Plaintiff filed a Notice of Motion and Motion to Remand the case back to this court. Plaintiff also filed a motion to disqualify the Honorable Judge Alex R. Munson and one of his law clerks, Randy Schmidt. On February 6, 1997, Defendants filed a Motion to Require Plaintiff to File a Bond for Costs. On March 21, 1997, the District Court denied Plaintiff's motion to disqualify. On March 27, 1997, the District Court entered an order dismissing the two federal causes of action with prejudice and denying Defendants' Motion for a Bond for Costs as moot. The District Court then remanded the remaining claims to this court.

4.     On May 1, 1997, Plaintiff filed, in this court, an Amended and Supplemental Complaint containing claims for violations of the CNMI Constitution, breach of contract, wrongful discharge, intentional infliction of emotional distress, indemnification, violations of the Civil Service Act, quantum meruit, promissory estoppel, and fraudulent misrepresentation.

5.     On May 9, 1997, Defendants filed, in this court, a Motion to Require Plaintiff to File a Bond for Costs. On May 20, 1997, the court entered a stipulated order whereby Plaintiff agreed to deposit, before May 30, 1997, the amount of $812.50 into his trust account to secure payment of the cost bill in Defendants' favor in *Bisom v. CNMI, et al.* in the event that the appeal of that case pending in the Ninth Circuit is concluded in Defendants' favor.

6.     On May 30, 1997, Plaintiff filed, in this court, his Second Amended Complaint.

7.     On June 26, 1997, Defendants filed a Notice of Motion and Motion for More Definite Statement and a Notice of motion and Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim. The parties stipulated to submit the matter without the benefit of oral argument. On August 7, 1997, the court requested the parties to brief the issue of whether Plaintiff was entitled to the protection afforded by the Civil Service System.

8.     On July 9, 1997, the parties stipulated to extend the time for Plaintiff to file his opposition to Defendants' Motions to Dismiss and for a More Definite Statement.



Received    Nov-03-2006 06:26        From-        To-US DISTRICT COURT, N    Page 006

9.    On December 1, 1997, Plaintiff filed a Notice of Motion and Motion for Leave to File a Third Amended Complaint to include a twelfth claim for violation of the Family and Medical Leave Act. On December 24, 1997, this court granted Plaintiff's motion.

10.    On January 23, 1998, Defendants filed in District Court a Notice of Removal of Action under 28 U.S.C. § 1441(b). On March 5, 1998, Defendants filed a Motion to Amend Notice of Removal of Action to include 28 U.S.C. § 1441(c). On this same date, Defendant also filed a Motion to Dismiss for Lack of Personal Jurisdiction and Failure to State a Claim.

11.    On February 5, 1998, Plaintiff moved to disqualify the Honorable Judge Alex R. Munson and one of his law clerks, Randy Schmidt. On February 10, 1998, the District Court denied Plaintiff's motion to disqualify.

12.    On March 6, 1998, Plaintiff filed a Motion to Remand the case back to this court on the grounds that it presents novel and complex issues of state law.

13.    On November 6, 1998, the court ruled that Plaintiff was covered under the Civil Service Act. In the same decision, the court denied Defendants' Motion to Dismiss Plaintiff's third cause of action regarding violation of procedural due process, fifth cause of action regarding the CNMI's immunity from suits arising from the intentional torts of its employees, sixth cause of action for intentional infliction of emotional distress, eighth cause of action for violations of the Civil Service Act, and the tenth cause of action for promissory estoppel. However, the court granted Defendants' motion for a more definite statement as to the third and tenth causes of action in Plaintiff's complaint.

14.    On November 18, 1999, Plaintiff filed a Fourth Amended Complaint.

15.    On December 10, 1998, Defendants filed a Motion for Reconsideration of the court's November 6, 1998 decision. On March 16, 1999, the court denied Defendants' Motion for Reconsideration.

16.    On June 24, 1999, Plaintiff filed a Motion to Compel Answers and Request to Produce Documents. On August 5, 1999, Plaintiff filed a Motion to Further Compel Answers and Requests to Produce Documents. On that same date, Plaintiff filed a Motion for Partial Summary Judgment.

To-US DISTRICT COURT, N    Page 007    From-    02:50 0000-S0-voN    beviebeR

17.    On August 18, 1999, the court granted Defendant's Motions to Enlarge Time and Continue Hearing and to Waive Hearing on the Motion to Enlarge and Continue.

## IV. ISSUES

1.    Whether the failure to hold a hearing before an employee of the Public Auditor's office is terminated violates a due process right guaranteed by Article 1, Section 5 of the Commonwealth Constitution.

2.    Whether the failure to afford an employee of the Public Auditor's office the opportunity to refute a public attack on his reputation for truthfulness and integrity violates a due process right guaranteed by Article 1, Section 5 of the Commonwealth Constitution.

3.    Whether a direct cause of action may be maintained against the government for the violation of due process guaranteed by Article 1, Section 5 of the Commonwealth Constitution when done by a public official acting in that capacity.

## V. STANDARD OF REVIEW

Summary judgment should be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, show that there is no genuine issue regarding any material fact and that the moving party is entitled to judgment as a matter of law. Com. R. Civ. P. 56(c).

On a motion for summary judgment, the movant must show that there are no genuine issues of material fact. *See Castro v. Hotel Nikko Saipan, Inc.*, 4 N.M.I. 268, 272 (1995) (citing *Riley v. Public Sch. Sys.*, 4 N.M.I. 85 (1994)). Once this is shown, the burden shifts to the non-moving party, who must set forth specific facts, by affidavit or otherwise, showing a genuine issue for trial. *See Riley v. Public Sch. Sys.*, 4 N.M.I. 85, 89 (1994). To defeat a summary judgment motion, the non-moving party must assert sufficient factual indicia from which a reasonable trier of fact could reasonably find in his favor. *Castro* at 272. General denials or conclusory statements are insufficient. *Id.* Essentially, the inquiry is whether the evidence presents a sufficient disagreement to require submission to a jury or

- 7 -

(17)

whether it is so one-sided that one party must prevail as a matter of law. *Id.* (citing *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 251-2, 106 S.Ct.2505, 2512). The trial court must review the

evidence and inferences in the light most favorable to th- non-moving party. *See Bank of Am. v. Park*

*v. Mendiola*, 2 N.M.I. 233, 240 (1991).

## VI. ANALYSIS

1. *Whether the failure to hold a hearing before an employee of the Public Auditor's*
   *Office is terminated violates a due process right guaranteed by Article 1, Section*
   *5 of the CNMI Constitution.*

Plaintiff Bisom claims that the termination of his employment before the expiration of his contract

and in the absence of notice and opportunity to be heard before the agency took action violated his due

process rights. The Fourteenth Amendment to the U.S. Constitution has been made applicable to the

Commonwealth pursuant to Covenant §501(a). *In re "C.T.M."*, 1 N.M.I. 410, 413 (1990). Under

Article 1, Section 5 of the Commonwealth Constitution ("CNMI Constitution"), no person shall be

deprived of life, liberty or property without due process of law. N.M.I. Const. art. I, §5.

Bisom argues that he has a constitutionally-protected property interest in his employment which

entitled him to notice and an opportunity to be heard prior to his termination. The first question to be

decided by this court is whether Bisom has a property interest protected by Article 1, Section 5 of the

CNMI Constitution. To have a property interest in a benefit, a person must have a legitimate claim of

entitlement to it. *See Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701,

2709 (1972). For such an entitlement to exist, he or she must have more than an abstract need or desire

for it and more than a unilateral expectation of it. *Id.* "A property interest must arise from an

independent source such as a state or federal statute, municipal ordinance or charter, an express or

implied contract, or a contract implied from policies and practices of a particular institution." *Olive v.*

*City of Scottsdale*, 969 F.Supp. 564, 571 (1996) (citing *Perry v. Sindermann*, 408 U.S. 593, 601,

92 S.Ct. 2694, 2699 (1972)). Should a protected property interest exist, before an individual is

---

2 COVENANT TO ESTABLISH A COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS IN POLITICAL UNION WITH THE UNITES STATES OF AMERICA, 48 U.S.C. §1601 note, reprinted in Commonwealth Code at B-1-1 et seq.

Received    Nov-03-2008  05:28        From-        To-US DISTRICT COURT, N    Page 008

1  deprived of it, he or she must be accorded meaningful notice and a meaningful opportunity to a hearing

2  appropriate to the nature of the case. *See Office of the Attorney General v. Paran*, 4 N.M.I. 191,

3  194 (1998)

4        The property interest in this case arises out of an express contract. Bisom and the OPA entered

5  into a written contract which secured Bisom's employment with the OPA for two years. An employee

6  has a property interest in his job if he has an expectation of continued employment. *See Roth, supra*,

7  408 U.S. at 577, 92 S.Ct. at 2709 (citing *Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97

8  L.Ed. 216 (1952) (holding that college professors and staff members dismissed during the terms of their

9  contracts have interests in continued employment that are safeguarded by due process)). In *Roth*, the

10  Plaintiff was appointed as an assistant professor at a state university for a fixed term of one academic

11  year. After the completion of his one-year term, he was informed that he would not be rehired for the

12  next academic year and Plaintiff therefore instituted an action against the university partly for depriving

13  him of his due process rights because the university officials did not advise him of the reasons for its

14  decision not to rehire him. The Court found that Plaintiff did not have an interest in continued re-

15  employment after the expiration of his one-year term. However, the Court did find that, even in the

16  absence of a formal contract, Plaintiff did have a protected property interest in his continued employment

17  up until the last day of his one-year term by virtue of the terms of his appointment, which the Court found

18  to be the equivalent of an employment contract. *Id.*

19        In this case, Bisom's two-year employment contract with the PAO affords him a reasonable

20  expectation of continued employment up until the expiration of his contract. As such, the court

21  concludes that Bisom does have a property interest entitling him to meaningful notice and meaningful

22  opportunity to be heard before being terminated.

23        Given the existence of a protected property right, the next question to be addressed is whether

24  Bisom was provided notice and an opportunity to be heard. On November 6, 1998, the court ruled

25  that Plaintiff was entitled to the due process protections provided in the CNMI Personnel Service

26  System Rules and Regulations ("PSSRR"). Decision and Order of November 6, 1998. Under the

27  PSSRR, the procedures for taking adverse actions against employees provide as follows:

28

Received    Nov-03-2006 08:28    From-    To-US DISTRICT COURT, N    Page 010

1   (1) The appointing authority must give the employee at least thirty (30)
    days advance written notice of the proposed action.
2   (2) The notice must state any and all reasons for the proposed action
    specifically and in detail.
3   (3) The employee has the right to answer personally and/or in writing.
    The employee shall be allowed not more than twenty (20) days to
4   answer the notice of proposed action.
   (4) If the employee answers, management must consider that answer.
5   (5) If at all practicable, the employee must be kept on active duty in
    the regular position during the notice period.
6   (6) Management must give the employee a written decision before the
    adverse action is effected. The decision must state which of the
7   reasons in the advance notice have been found sustained and which
    have been found not sustained.
8   (7) The decision must tell the employee of appeal rights.
**Personnel Service System Rules and Regulations at Part III.M.**

9
10    Part III.M of the PSSRR requires an employee covered under the Civil Service System to

11 receive advance written notice of the proposed action followed by a written decision stating those

12 reasons in the advance notice that were sustained and not sustained. The decision must also tell the

13 employee of his or her appeal rights. Part III.M of the PSSRR also states that after the agency provides

14 the employee with its official letter of decision, the employee may appeal in writing to the Civil Service

15 Commission ("Commission") and then request for a hearing before the Commission.

16    Bisom received two termination notices. On December 6, he received a notice that his

17 employment was being terminated without cause effective 30 days thereafter. (See Aff. of Pl. in Supp.

18 of Mot. for Summ. J., Ex. C). On December 28, he received a second notice that his employment was

19 being terminated effective 7 days thereafter. (*Id.* at Ex. F) Only the latter listed the reasons for Bisom's

20 employment termination, but in neither of the notices was Bisom informed of his appeal rights.

21    However, there are two other occasions where the Public Auditor took action adverse to

22 Bisom's employment and Bisom was given notice that could have been sufficient to inform him that he

23 had appeal rights. On December 3, 1993, Bisom was informed that he was no longer authorized to act

24 for the Public Auditor or for OPA without the Public Auditor's approval. In this letter, Bradshaw gave

25 Bisom the opportunity to discuss any of the instructions he was given if Bisom believed that any one of

26 them violated his constitutional rights or his contract with the OPA. Furthermore, on December 7,

27 1993, a day after Bisom was given his first termination notice, Bradshaw sent Bisom another letter

28 informing Bisom that he was being moved to a work space in the administrative area of the office and

(19)

1  that Bisom had to turn in all of the keys to the office that were in his possession. In this letter, Bradshaw

2  did give Bisom the opportunity to respond in writing if he had any concerns regarding Bradshaw's

3  actions. Finally, in his own affidavit, Bisom admitted that he could no longer do his work because of the

4  restrictions placed on him by Bradshaw as a result of the December 3, 1993 and December 7, 1993

5  letters. (See Aff. of Pl. in Supp. of Mot. for Summ. J., p. 3) Bisom admitted that he stopped coming

6  to work because of the adverse actions taken against him. Yet, even after being offered the opportunity

7  to raise such concerns, there is no evidence that Bisom ever exercised the opportunity he was given.

8  Therefore, a trier of fact could reasonably find that the Auditor's actions in taking away Bisom's

9  authority to act on behalf of the OPA provided sufficient notice that Bisom's employment was being

10  terminated and that Bisom could have accepted the opportunity to raise this issue with Bradshaw. The

11  trier of fact could also reasonably find or infer that the sequence of events provided Bisom with notice

12  that his job was in jeopardy and that he was given the opportunity to raise his concerns in writing before

   the expiration of the notice period.

13         Thus, the court finds that Bisom did have a protected property interest in continued employment

14  and that he was entitled to a meaningful notice and a meaningful opportunity to be heard prior to his

15  termination. However, there are genuine issues as to whether Bisom was, in fact, given meaningful

16  notice and meaningful opportunity to be heard. Therefore, summary judgment is **DENIED** as to this

17  issue.

18         2.      *Whether the failure to afford an employee the opportunity to refute a public*
               *attack on his reputation for truthfulness and integrity violates a due process right*
19             *guaranteed by Article 1, Section 5 of the CNMI Constitution.*

20         Bisom claims that his due process right, secured by his liberty interest, was violated when he was

21  not given notice and an opportunity for a hearing to refute Bradshaw's public attack on his reputation

22  for truthfulness and integrity. To establish a liberty interest, the individual must show both a tangible loss

23  and a "charge made by the government against him that might seriously damage his standing and

24  associations in his community." *Roth v. Veteran's Administration of the Government of the United*

25  *States*, 856 F.2d 1401, 1410 (9th Cir. 1988). A liberty interest is implicated when a person's good

26  name, reputation, honor, or integrity is at stake or when the government action stigmatizes him or her,

27  "effectively foreclosing his or her ability to take advantage of other employment opportunities." *Id.* at

28

Received    Nov-03-2006 06:38    From-    To-US DISTRICT COURT, N    Page 002

1411. Once a liberty interest is established, "the procedural protections of due process apply if the

accuracy of the charge is contested, there is some public disclosure of the charge, and it is made in

connection with the termination of employment or the alteration of some right or status recognized by

state law." *Jones v. Los Angeles Community College District*, 702 F.2d 203, 206 (9th Cir.1983).

Where a protected liberty interest exists, notice and opportunity to be heard are required. *See Board*

*of Regents of State Colleges v. Roth, supra*, 408 U.S. at 573, 92 S.Ct. at 2707.

Bisom contends that Bradshaw violated his liberty interest in two ways. For one, Bradshaw

brought charges of unethical conduct before the Bar Association Disciplinary Committee ("Disciplinary

committee") without affording him an opportunity to respond to those charges. And, second, Bradshaw

furnished the *Pacific Star*, a newspaper then in general circulation in Saipan, a running account of the

events that led to his decision to fire Bisom, including personal notes and letters Bradshaw sent to

Bisom discussing Bisom's possible violations of Commonwealth law. Bisom claims Bradshaw's actions

have impaired his reputation for honesty, integrity, and morality, by not being given the opportunity to

refute the allegations against him.

In *Roth v. Veteran's Administration of the Government of the United States, supra*, the

Ninth Circuit court reversed the lower court's decision denying summary judgment for defendants on

Roth's liberty interest claim. Roth alleged that the defendants damaged his reputation and caused him

to lose "professional momentum, career development, professional opportunities, and good standing in

the psychiatric/medical communities." 856 F.2d at 1411. The Ninth Circuit concluded that these

allegations did not show that the defendants stigmatized Roth to the extent of foreclosing his opportunity

to practice in his chosen profession. As a result, a reasonable jury could have found that Roth did not

have a clearly established liberty right that was violated by the defendants' actions. *Id*

In this case, Bisom alleges the Defendants attacked his reputation for honesty, integrity, and

morality. However, Bisom did not set forth, in his affidavits or otherwise, any facts to show how

Defendants' actions placed his reputation at stake or stigmatized him. Thus, a reasonable jury could

conclude that Defendants' actions in publicly disclosing the allegations against Bisom did not stigmatize

Bisom or impair his ability to seek other opportunities in his chosen profession. Because there is a

Received    Nov-03-2006 05:39    From-    To-US DISTRICT COURT, N    Page 003

1  genuine issue as to whether Bisom has a clearly protected liberty interest, summary judgment is

2  precluded as to this issue.

3      Furthermore, even if Bisom did have a liberty interest, he failed to allege facts sufficient to trigger

4  the procedural due process protections afforded by Article 1, Section 5 of the CNMI Constitution. It

5  is undisputed that Bradshaw brought an action against Bisom before the Disciplinary committee and

6  published, in a newspaper of general circulation, the events leading up to Bisom's termination.

7  However, there is an issue as to whether Bisom contested the accuracy of the charges brought against

8  him. Bisom contends that he did. To support this argument, he points to one of a series of letters

9  printed in the *Pacific Star* on December 24, 1993. In this particular letter, dated December 8, 1993,

10  Bisom's attorney at the time, Richard W. Pierce ("Pierce"), wrote to Bradshaw informing Bradshaw

11  that he had constructively discharged Bisom without cause by Bradshaw's unreasonable acts and

12  demands on Bisom. (See Aff. of Pl. in Supp. of Mot. for Summ. J., Ex. F.) A reasonably jury could

13  find that this does not show Bisom contested the charges against him.

14      Defendants also deny that Bisom contested the allegations made against him. Based on another

15  one of the letters published in the *Pacific Star* on December 24, 1993, Bradshaw informed Bisom that

16  he was going to institute an investigation against Bisom and that he was also going to file an ethics

17  complaint with the bar association. At the end of the letter, Bradshaw offered Bisom the opportunity

18  to comment in writing about the matter if he had any concerns. This invitation to comment on the OPA's

19  adverse actions against Bisom appears in some of the other letters Bradshaw wrote to Bisom that were

20  printed in the *Pacific Star*. However, Bisom presents no other evidence or affidavit to show that he

21  did contest the charges made against him. Therefore, a reasonable jury could find that Bisom was given

22  the opportunity to refute a public attack on his reputation for truthfulness and integrity and that he failed

23  to exercise it. A reasonable jury could also find that Bisom took no action to contest any allegations

24  against him. There are genuine issues of fact as to whether Bisom had a liberty interest and, if he did,

25  whether he contested the accuracy of the charges made against him. Accordingly, Plaintiff's motion for

26  partial summary judgment is **DENIED** on this issue.

27

28



Received　Nov-03-2006 05:38　　From-　　To-US DISTRICT COURT, N　　Page 004

3.　　*Whether a direct cause of action may be maintained against the government for the violation of due process guaranteed by Article 1, Section 5 of the Commonwealth Constitution when done by a public official acting in that capacity.*

Bisom claims that his due process, freedom of speech, and equal protection rights were violated by Bradshaw, while the latter was acting as a public official. According to Bisom, "the failure to provide an opportunity to protect his liberty interest in his professional reputation, his liberty interest and right to work in the common occupations, and his property interest in his continued employment under contract with the government" are constitutional violations. (Pl's Reply to Opp'n to Mot. for Partial Summ. J., p. 11 ) Bisom argues that the government, as Bradshaw's employer, is also liable for Bradshaw's actions because it is the government that empowered Bradshaw to function as the Temporary Public Auditor.

According to Bisom, the CNMI government waived sovereign immunity from suit for civil actions arising out of any law of the CNMI. "States retain sovereign immunity from private suits in their own courts." *Alden v. Maine*, 119 S.Ct. 2240, 2266 (1999). This immunity is a constitutional privilege beyond Congress' power to abrogate by Article I legislation. *Id.* However, this privilege does not confer upon the state a concomitant right to disregard the Constitution. *Id.* States and their officers are still bound by obligations imposed by the Constitution and by federal statutes that comport with the constitutional design. *Id.* Thus, the constitutional principle of sovereign immunity is subject to certain limits. Where the state consents to be sued, it waives its sovereign immunity. *Id.* at 2267.

Bisom claims the CNMI Legislature ("Legislature") waived its sovereign immunity when it enacted 7 CMC § 2251, which provides as follows:

> Except as otherwise provided in article 1 of this chapter (commencing with 7 CMC § 2201), actions upon the following claims may be brought against the Commonwealth government in the Commonwealth [Superior] Court which shall have exclusive original jurisdiction thereof:
>
> (b) Any other civil action or claim against the Commonwealth government founded upon any law of this jurisdiction or any regulation issued under such law.

7 CMC § 2251

However, Bisom fails to point out that the Legislature enacted the Government



Received    Nov-03-2006 06:39        From-        To-US DISTRICT COURT, N    Page 006

1  Liability Act of 1983 (the "Act"), codified under 7 CMC § 2201 *et seq.*, to limit the CNMI

2  government's liability for tort actions. The preamble to Public Law 3-51, the Act's enabling legislation,

3  reveals the Legislature's intent:

> *To prescribe the limits of government liability in tort*, to regulate
> the collection of attorney fees, to provide for the payment of judgments
> against the Commonwealth, to repeal Sections 251(1)(c), 252, and
> 253 of Title 6 of the Trust Territory Code, and for other purposes.

6  PL 3-51 **(emphasis added).**

7  Under the Act, the CNMI government shall be liable in tort for the negligence of

8  its employees when they are acting within the scope of their employment. 7 CMC § 2202. The Act

9  further expressly provides that the government shall not be liable for certain actions, including intentional

10 torts and

> (a) any claim based upon an act or omission of an employee of the
> government exercising due care, in the execution of a statute or
> regulation, whether or not the statute or regulation is valid, or based
> upon the exercise or performance or the failure to exercise or perform
> a discretionary function or duty on the part of a Commonwealth agency
> or an employee of the government, whether or not that discretion is
> abused.

16 7 CMC § 2204.

17 These provisions explicitly waived or preserved the government's sovereign immunity

18 by consent. However, the waiver or preservation of sovereign immunity as to these torts does not affect

19 the government's immunity for those torts not mentioned under the Act. Because the Legislature created

20 this Act with the intent to limit the government's tort liability, the absence of any other consenting

21 provisions addressing any other torts, including constitutional torts, preserves the CNMI's sovereign

22 immunity as to those other torts.

23 Bisom's reliance on 7 CMC § 2251 is misplaced. Bisom's alleged constitutional deprivations

24 are constitutional torts. A constitutional tort is any action for damages for violation of a constitutional

25 right against a government or individual defendants. *Brown v. State*, 89 N.Y.2d 172, 177, 674 N.E.2d

26 1129, 1132, 652 N.Y.S.2d 223, 226 (1996). As a tort, it comes under the Act limiting the

27 government's tort liability. Since there is no provision under the Act that shows the government's

28

Received    Nov-03-2006 06:39         From-                    To-US DISTRICT COURT, N    Page 006

1  consent to be sued for constitutional torts, the government did not waive its sovereign immunity as to this

2  type of tort.

3      The provision of 7 CMC § 2251 is subject to the provisions in 7 CMC § 2201 et. seq. A

4  review of these two provisions clearly suggests that the Legislature enacted 7 CMC § 2251 to waive

5  the government's sovereign immunity for other civil actions other than tort actions. It is counterintuitive

6  to limit the government's liability in tort in one statutory provision and then allow it to be sued in tort

7  under another statutory provision. For these reasons, Bisom may not maintain a direct cause of action

8  against the government for any constitutional violations that may have been committed by a government

9  employee. The government is immune from liability for constitutional torts. Plaintiff's motion for

10  summary judgment on this issue is **DENIED**.[3]

11

12                                **ORDER**

13

14  Based on the foregoing analysis:

15      1.    Plaintiff's motion for summary judgment for the violation of due process based on a

16            property right is **DENIED**.

17      2.    Plaintiff's motion for summary judgment for the violation of due process based on a

18            liberty right is **DENIED**.

19      3.    Plaintiff's motion for summary judgment as to the government's liability for constitutional

20            violations is **DENIED**. Because Bisom cannot maintain an action against the CNMI

21

22  _____

23      [3]Bisom argues, in the alternative, that the due process clause in the CNMI Constitution is self-executing and,
        therefore, takes effect immediately without the aid of legislative enactment. Bisom maintains that, because the due
24      process clause is self-executing, it gives rise to an action against the government for damages for the violation of a
        constitutional provision, relying on the analysis of the Court of Appeals of New York in *Brown v. State*, 89 N.Y.2d 172,
25      674 N.E.2d. 1129, 652 N.Y.2d. 223 (1996). However, the self-executing nature of a constitutional provision only means
        that the right established is operative without any further legislation. *Figueroa v. State*, 61 Haw.369, 382, 604 P.2d 1198,
26      1206 (1980). The fact that it is self-executing does not, in and of itself, give rise to an action for money damages for
        constitutional violations unless the government consents to be sued. *Id.* Where the state constitution does not provide
27      for monetary damages for constitutional violations and there is no legislation allowing monetary damages for such
        violations, the state retains its sovereign immunity from such suits. *Id.; See also Tremblay v. Wehter*, 1996 WL 176381
28      (Conn.Super) (1996). Here, the CNMI government has not given its consent to be sued for monetary damages for
        constitutional torts.



government on this issue, the Third Claim in Bisom's Fourth Amended Complaint is

**DISMISSED** as to the CNMI government.

SO ORDERED this ____ day of February, 2000.

ALEXANDRO C. CASTRO, Judge Pro Tem

I hereby certify that ............... is a full true
and correct copy of ............... in the Office
of the Clerk of Courts, C........... unds.
Date ...............

CLERK OF COURT
NORTHERN MARIANA ISLANDS
SAIPAN, MP 96950

- 16 -

800  ege9  N  ,TЯUOƆ TƆIЯTƧIꓷ ƧU-oT                    –moɿꟻ        88:80  8002-80-voИ  bevieɔeЯ

**JAY H. SORENSEN**
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. 234-1414
Fax. No. 234-1417

Attorney for Plaintiff

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROBERT A. BISOM, | ) | CIVIL CASE NO. 96-1320 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER DENYING MOTION TO** |
| | ). | **REMOVE CASE FROM TRIAL** |
| COMMONWEALTH OF THE | ) | **DOCKET** |
| NORTHERN MARIANA ISLANDS, | ) | |
| et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendants' Motion to Remove Case from Trial Docket, filed January 31, 2000, came

on for hearing on February 7, 2000 before the Honorable Alexandro C. Castro, judge pro

tem, presiding. Jay H. Sorensen appeared for plaintiff and L. David Sosebee appeared for

defendants.

The matter having been heard and taken under advisement, the Court finds:

1. The motion relies on facts set forth in a form that fails to comply with the

1

(27)

*Exhibit*
*21 G*

requirements of a supporting affidavit or declaration.

2. Defendant Robert D. Bradshaw was properly served by mail, return receipt requested but purposefully avoided service.

3. The Office of the Attorney General has appeared on behalf of Robert D. Bradshaw as his attorney of record.

4. Defendant, Robert D. Bradshaw, has waived any potential challenge to insufficiency of service of process by his previously bringing a motion to dismiss without joining such motion.

5. Vacation of the trial date, in light of the time this case has been pending, in light of the efforts of plaintiff to answer ready for trial on the date set for trial, the added expense of a continuance and the lateness of this motion weighs in favor of denial.

Accordingly, good cause appearing, IT IS ORDERED that defendants' motion to vacate trial date is denied.

It is further ordered that this should be effective nunc pro tunc to the dates of the oral announcement of this decision on February 7, 2000.

Dated: _Feb. 22, 2000._

_____
ALEXANDRO C. CASTRO
Judge Pro Tem of the Superior Court

I hereby certify that the foregoing hereof is a full true and correct copy of the original on file in the Office of the Clerk of Court, Superior Court, Mariana Islands.

Date _1/25/05_

2

EXHIBIT
26 G

26