AFFIDAVIT

The undersigned, Robert D. Bradshaw, hereby certifies and affirms that the following letters, copies attached herewith, were the only letters received by me from the CNMI Attorney General relative to Superior Court Case 96-1320:

1. Letter from D. Douglas Cotton, dated Dec 6, 1996, suggesting that I may be soon served with a new complaint.
2. Letter from D. Douglas Cotton, dated Jan 22, 1997, with an attached copy of a letter dated on Dec 31, 1996 and sent by him to attorney Jay H. Sorensen, attorney for Robert Bisom, stating that the Attorney General will not accept service on behalf of Robert D. Bradshaw, without my approval.
3. Letter from D. Douglas Cotton, dated Apr 17, 1997, stating that he had advised attorney Sorensen that the Attorney General would not accept service for me of the summons and complaint on this case.
4. Letter from D. Douglas Cotton, dated Jun 2, 1997, stating that the CNMI did not agree to accept service for me and that I could expect to be served by plaintiff.
5. Letter from D. Douglas Cotton, dated Mar 17, 1998, with no mention of service.
6. Letter from William C. Bush, dated Jun 30, 1999, which asked if I had been served with the complaint or any subsequent amendments. This letter was in response to my inquiry.
7. Letter from Benjamin Sachs, dated Apr 6, 2004, made in response to my telephone inquiry.
8. Letter from Joseph H. Race, dated Oct 7, 2004, on my request for an investigation of SC 96-1320.
9. Letter from Pamela Brown, dated Feb 15, 2005, saying that indemnification for me on 96-1320 is denied and that the AG will provide no more assistance to me.

Dated at St.Maries, Idaho, this _9th_ day of _August_ 2005

_Robert D. Bradshaw_
Robert D. Bradshaw

STATE OF IDAHO
COUNTY OF BENEWAH

I, ____Jerry Lee Nelson_____, Notary in and for the State of Idaho,

residing at____St. Maries, Idaho_____do hereby certify that on this

____9_____ day of ____August_____ 2005, personally appeared

1

A

before me Robert D. Bradshaw, to me known to be the individual described in and who

executed the within instrument for the uses and purposes herein

mentioned.

Given Under My hand and Official Seal; this ___9___ day of __August__ 2005.

JERRY LEE NELSON
Notary Public
State of Idaho

NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

MY APPOINTMENT EXPIRES

___11/15/07___

2



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor-Administration Building, Capitol Hill
Caller Box 10007, Saipan, MP 96950

Attorney General/Civil Division
Tel: (670) 664-2341
Fax: (670) 664-2349

Criminal Division
Tel: (670) 234-7771/7111
Fax: (670) 234-7016

December 6, 1996

Robert Bradshaw
40203 N. Newport Hwy.
Elk, WA 99009

Re: Bisom v. CNMI

Dear Robert:

According to the news, Bisom has filed a new complaint in the Superior Court. We have not yet been served and do not have a copy so I do not know for certain who the defendants are and what causes of action he has included. When we obtain a copy, I will send it to you. In the meantime, if you are served with a Summons and Complaint, please call me immediately because service starts the time running for your response.

Please give me a call if you have any questions in the meantime.

Very truly yours,

D. Douglas Cotton

DDC/ddc

State of Idaho
County of Kootenai
I, Cynthia Limmons, a notary public, do certify that on the 20 day of February in the year of 2005, I carefully compared the attached copy of letter, with the original. It is a complete and true copy of the original document.

Notary Public
Commission expires 10/20/2007



# Commonwealth of the Northern Mariana Islands
# **Office of the Attorney General**

2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

January 22, 1997

Robert Bradshaw
40203 N. Newport Hwy.
Elk, WA  99009

      Re:  Bisom v. CNMI

Dear Robert:

      Enclosed for your file is a copy of the new Complaint that Robert Bisom filed in the Superior Court. Also enclosed is a copy of a letter I recently sent plaintiff's counsel. Please let me know immediately if any attempt is made to serve you with the Summons and Complaint. In addition, please let me know your new telephone number and a fax number, if available, where I can send documents if necessary.

      If you have any questions, please give me a call at 011.670.664.2333.

                Very truly yours,

                D. Douglas Cotton

Enclosures

State of Idaho
County of Kootenai
I, Cynthia Timmons, a notary public, do certify that on the ___ day of February in the year of 20___, I carefully compared the attached copy of _____, with the original. It is a complete and true copy of the original document.

Notary Public
Commission expires 10/20/2007



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor-Administration Building, Capitol Hill
Caller Box 10007, Saipan, MP 96950

Attorney General/Civil Division
Tel: (670) 664-2341
Fax: (670) 664-2349

Criminal Division
Tel: (670) 234-7771/7111
Fax: (670) 234-7016

December 31, 1996

<u>VIA TELECOPIER</u> (234-1417)

Jay H. Sorensen
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950

Re:  Bisom v. CNMI

Dear Jay:

Should plaintiff still desire to serve the Summons in this action after reading this letter, I will agree to accept service on behalf of Scott Tan. I am checking on whether Robert Bradshaw would like us to accept service on his behalf.

I have reviewed plaintiff's proposal regarding the 42 U.S.C. Sections 1981 and 1983 claims and I cannot accept his proposal. As you know, defendants have removed this action to federal court. Since Judge Munson has already granted judgment against plaintiff on his Section 1981 and Section 1983 claims, I have no doubt that Judge Munson will dismiss these claims again and likely sanction plaintiff at the same time. Consequently, defendants will not agree not to attack those claims.

Furthermore, if plaintiff actually serves the Summons and Complaint, defendants will be forced to consider possible cross-claims against plaintiff. At a minimum, I believe that (1) that the CNMI has a claim against plaintiff for malicious prosecution in connection with plaintiff's third claim for constitutional violations against the CNMI; and (2) that Mr. Bradshaw will have a claim against plaintiff for malicious prosecution in connection with the first two claims if plaintiff serves the new complaint. I also believe that defendants will have a claim for sanctions under Rule 11 due to the inclusion of the first two claims in the new complaint. Furthermore, I believe that the Court, on its own initiative pursuant to Rule 11(c)(1)(B), may direct plaintiff to show cause why he has not violated Rule 11 in connection with the first two claims in the new complaint.

As always, defendants are interested in a resolution of this matter without protracted litigation. I believe that defendants will agree to release all claims that they may have against plaintiff, as well as the judgment for costs, if plaintiff will dismiss his complaint with prejudice. As we have discussed before, I also believe that defendants will agree to a small monetary

discussed before, I also believe that defendants will agree to a small monetary payment in conjunction with the settlement. Any release or payment, of course, would not be based upon any admission of liability but would be made only in the interest of a speedy resolution of this matter. Please let me know if plaintiff wishes to discuss settlement of this matter.

If plaintiff does not wish to settle this matter, please let me know whether plaintiff intends to immediately pay the judgment for costs. If not, defendants intend to collect the amount through any legal means.

Very truly yours,

D. Douglas Cotton

2



# Commonwealth of the Northern Mariana Islands
# **Office of the Attorney General**

2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

Attorney General/Civil Division
Tel: (670) 664-2341
Fax: (670) 664-2349

Criminal Division
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

April 17, 1997

Robert Bradshaw
40203 N. Newport Hwy.
Elk, WA  99009

     Re:  Bisom v. CNMI

Dear Robert:

     As you may know, we removed this action to the United States District Court after plaintiff refiled his Complaint in the Superior Court. Plaintiff then made a motion to remand the action back to the Superior Court, which the District Court granted after once again dismissing the first two causes of action for violation of 42 U.S.C. Sections 1983 and 1981. Enclosed for your files is a copy of the District Court's Order.

     It is now up to plaintiff to serve the Summons and Complaint. I told plaintiff's counsel that we would not agree to accept service on your behalf. Consequently, you can expect plaintiff to attempt to personally serve you with the Summons and Complaint. I do not know if plaintiff knows exactly where you live, but he does know that you now live in Washington. Please let me know when you are served so that we will be able to determine when our response is due.

     Please give me a call if you have any questions in the meantime.

                Very truly yours,

                D. Douglas Cotton

Enclosure

State of Idaho
County of Kootenai
I, Cynthia Timmm, a notary public, do certify that on the 20 day of February in the year of 20__, I carefully compared the attached copy of _letter_, with the original. It is a complete and true copy of the original document

Notary Public
Commission expires 10 26 2007



# Commonwealth of the Northern Mariana Islands
# **Office of the Attorney General**

2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

June 2, 1997

Robert Bradshaw
40203 N. Newport Hwy.
Elk, WA 99009

      Re: Bisom v. CNMI

Dear Robert:

      After this case was remanded to the Superior Court, we agreed to accept service of plaintiff's Summons and Amended and Supplemental Complaint on behalf of Scott Tan and the CNMI. We did not agree to accept service on your behalf. We then filed a motion for a more definite statement and a motion to dismiss. Rather than oppose our motions, plaintiff's counsel agreed to file yet another amended complaint, which he did on May 30, 1997. Plaintiff's counsel just faxed me a copy of the Second Amended Complaint and Amended Summons that he intends to serve you with. Plaintiff has the same address for you as shown on this letter. Assuming you are still at that address, you can expect to be served soon, if you haven't been already. Please let me know when you are served. In addition, please let me know your phone number.

      The Second Amended Complaint suffers from many of the same problems as the earlier complaint. Consequently, I intend to file another motion for more definite statement and a motion to dismiss. I will send you copies after they are filed.

      If you have any questions, please give me a call.

Very truly yours,

D. Douglas Cotton

State of Idaho
County of Kootenai
I, Cynthie Timmons, a notary public, do certify that on the 20 day of February in the year of 2005 I carefully compared the attached copy of _____ letter _____, with the original. It is a complete and true copy of the original document.

Notary Public
Commission expires 10/20/2007



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

March 17, 1998

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

Robert Bradshaw
40203 N. Newport Hwy.
Elk, WA  99009

Dear Robert:

Thanks for the note.  The following is a quick update on the case since my last letter:

We filed a motion to dismiss several of the claims in the complaint.  The motion was taken under submission by Judge Castro who sat on it for six months or so without deciding any of the issues.

Bisom then filed a motion to amend his complaint to add two additional claims, including a claim for violation of the Family and Medical Leave Act (a federal claim). (A copy of the new complaint is enclosed.)  The motion was granted and after Bisom filed his third amended complaint, we removed the case to the federal court.  Bisom filed another motion to disqualify Judge Munson, which the Judge denied before we could even file an opposition.  Bisom also filed a motion to remand the case to superior court. At the hearing, the Judge, on his own motion, dismissed the FMLA claim, which was the only thing keeping the case in the federal court.  Consequently, Judge Munson remanded the remaining Commonwealth claims back to the superior court.

All of the briefing has been completed on our motion to dismiss, which will probably end up back in front of Judge Castro.  We have no idea when he will rule on it. Until he does, not much will happen with the case.

On another note, the Ninth Circuit just set the oral argument for Bisom's appeal of the dismissal by Judge Munson of Bisom's two claims for violation of 42 U.S.C. § 1983.  The oral argument will be heard in May, and, depending on the panel, it may be months after that before we have a decision from Ninth Circuit.  If they reverse, we'll be back in the federal court to try those two federal claims.

If you've gotten a phone number yet, please let me know it in case I need to get in touch with you more quickly than the mail.  If you have any questions, please give me a call at (670) 664-2333.

State of Idaho
County of Kootenai
I, Cynthis Timmins, a notary public, do certify that on the 20 day of February in the year of 2005 I carefully compared the attached copy of letter, with the original.  It is a complete and true copy of the original document.

Enclosure

Notary Public
Commission expires 10/20/2007

Very truly yours,

*D. Douglas Cotton*

D. Douglas Cotton
Assistant Attorney General

CYNTHIA TIMMONS
NOTARY
PUBLIC
STATE OF IDAHO



# Commonwealth of the Northern Mariana Islands
# **Office of the Attorney General**

2nd Floor-Administration Building Capitol Hill
Caller Box 10007, Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366/2367/2368
Fax: (670) 234-7016

State of Idaho
County of Kootenai
I, Cynthie Timmons, a notary public, do
certify that on the 20 day of February
in the year of 20 05, I carefully compared the
attached copy of _____ with the
original. It is a complete and true copy of the original
document.

_____
Notary Public
Commission expires 10/20/2007



June 30, 1999

Robert D. Bradshaw
P.O. Box 3590
Oldtown, ID  83822

Re:  Your letter of May 25, 1999 to the Attorney General

Dear Mr. Bradshaw:

The task of handling the defense in the various Bisom lawsuits has been assigned to me.  I will try to answer your questions, and I need some information from you as well.

Here is a brief summary of the litigation to date—

US District Court  95-0042, Complaint filed November 14, 1995.  The CNMI won judgment against all federal claims, and the remaining state claims were dismissed without prejudice on November 22, 1996.

US Court of Appeals 96-17369, appeal filed December 5, 1996.  Appeal of judgment in case 95-0042.  Currently awaiting decision.

CNMI Superior Court 96-1320, Complaint filed December 5, 1996.  Removed to US District Court December 31, 1996.

US District Court 96-0052, on removal from CNMI Superior Court December 31, 1996.  Federal claims dismissed with prejudice, and state claims remanded back to CNMI Superior Court on March 27, 1997.

CNMI Superior Court 96-1320, on remand from US District Court March 27, 1997.  Amended and Supplemental Complaint filed May 1, 1997.  Second Amended Complaint filed May 30, 1997.  Motion to dismiss certain claims filed June 23, 1997.  Third Amended Complaint filed December 24, 1997.  Removed to US District Court on January 23, 1998.

US District Court 98-0002, on removal from CNMI Superior Court, January 23, 1998.  Federal claim dismissed with prejudice, state claims remanded back to CNMI Superior Court on May 6, 1998.

CNMI Superior Court 96-1320, on remand from US District Court, May 6, 1998.  Motion to dismiss denied November 6, 1998.  Fourth Amended Complaint filed November 18, 1998.  Motion for

Robert D. Bradshaw
Page 2

reconsideration filed December 7, 1998. Motion for reconsideration denied March 16, 1999. Answer of CNMI and Scott Tan to Fourth Amended Complaint filed March 30, 1999.

In response to an inquiry from me, on June 21, 1999, Bisom offered to settle all claims against all defendants for $150,000. We have not responded.

My review of the case indicates that Bisom should not be legally entitled to more than the amount he could have picked up to close out his employment with the government, or less than $2000, all attributable to the government. If the litigation goes to decision, the full exposure of all defendants might exceed $500,000, most of that in the form of punitive damages against the individual defendants, Scott Tan and Robert Bradshaw

I need your answers to the following questions—

1.  Do you want to have the Office of the Attorney General continue to represent you? All claims against you in case 96-1320 are now listed as being in your individual capacity. We will defend if you will cooperate. I have not yet filed an answer to the claims directed only toward you. If you do not wish to have this office represent you further, I will transmit that information to the Superior Court, and I will ask to have the Attorney General withdrawn as your representative. If we withdraw, then no information previously provided by you to this office as your attorney in this litigation could be used by this office to your detriment. If you wish to have us continue to provide your defense, then please answer the remaining questions. Your answers will be protected under the attorney-client privilege.

2.  Were you ever personally served with the Complaint and/or Summons, or with any subsequent amended complaints, in 96-1320? If not, are you aware of any event that might constitute constructive service? If there has been no service perfected, then I may be able to get you out of 96-1320 on the two-year statute of limitations for tort claims.

3.  What do you know about the basis for Bisom's claims relating to discriminatory actions taken by you because Bisom is a Jew?

4.  How can we make contact to exchange information regarding your defense on a basis closer to real-time? My private e-mail address is b.bush@saipan.com. My direct line in the AG's office is 670-664-2331.

For your information, Doug Cotton returned to the mainland one year ago. He is now living with his family in Dallas, Texas.

Sincerely,

*William C. Bush*
William C. Bush
Assistant Attorney General

State of Idaho
County of Kootenai
I, Cynthia Timmons, a notary public, do certify that on the 20 day of February in the year of 2005, I carefully compared the attached copy of title _____, with the original. It is a complete and true copy of the original document.

Notary Public
Commission expires 6/20/2007



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950

| **Civil Division** | **Immigration Division** | **Criminal Division** |
|---|---|---|
| Tel: (670) 664-2341/2342 | Tel: (670) 236-0922/0923 | Tel: (670) 664- 2366/2367/2368 |
| Fax: (670) 664-2349 | Fax: (670) 664-3190 | Fax: (670) 234-7016 |

April 6, 2004

Mr. Robert D. Bradshaw
P.O Box 473
Calder, Idaho 83808

Dear Mr. Bradshaw

Per the instructions of Benjamin Sachs, I am sending you copies of the following documents that you have requested:

1.    Order & Judgment dated March 10, 2000

2.    Judgment by Supreme Court entered 9/13/02

3.    Opinion and Order in Bisom v. Commonwealth 2002 MP 19.

I trust this is responsive to your inquiry

Sincerely,

Benjamin Sachs
Assistant Attorney General
Director, Civil Division

State of Idaho
County of Kootenai
I, Cynthia Timmins, a notary public, do certify that on the 20 day of February in the year of 20 0 __ I carefully compared the attached copy of _____, with the original. It is a complete and true copy of the original document.

Notary Public
Commission expires _____



COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS
## OFFICE OF THE ATTORNEY GENERAL
2ND FLOOR - ADMINISTRATION BLDG., CAPITOL HILL
SAIPAN, MP 96950

ATTORNEY GENERAL
DEPUTY ATTORNEY GENERAL
CIVIL LITIGATION DIVISION
SOLICITORS DIVISION
Tel: (670) 322-4311/4312
FACSIMILE: (670) 322-4320

CRIMINAL DIVISION
Tel: (670) 234-7771/7111/6207
FACSIMILE: (670) 234-7016

October 7, 2004

Mr. Robert D. Bradshaw
PO Box 473
Calder, Idaho 83808
208-245-1691

Dear Mr. Bradshaw:

As a point of introduction, I am the A/Chief Investigator for the CNMI Attorney General's Investigations Unit, based in Saipan. I have tried to reach you on the telephone several times without success.

Your information was forwarded to me by Assistant Attorney General Ed Buckingham for follow-up. In turn, I have assigned this case ( #04-182) to AGIU Investigators Frank Kapileo and Alfred Teregeyo for the follow-up and investigation – 670-664-2312. They will be your contact in the CNMI for any additional information that you might wish to provide, or need progress reports.

Best wishes and be assured of thorough follow-up and necessary attention to this matter.

Sincerely,

Joseph H. Race, A/Chief
Attorney General's Investigations Unit



Commonwealth of the Northern Mariana Islands
# Office of the Attorney General
2nd Floor Hon. Juan A. Sablan Memorial Bldg.
Caller Box 10007, Capitol Hill
Saipan, MP 96950

**Attorney General/Civil Division**
Tel: (670) 664-2341
Fax: (670) 664-2349

**Criminal Division**
Tel: (670) 664-2366
Fax: (670) 234-7016

February 15, 2005

Robert D. Bradshaw
PO Box 473
Calder, Idaho 83808

Dear Mr. Bradshaw:

I am writing in response to your faxed letter to the Attorney General dated February 7, 2005, which was received on February 9, 2005. Your letter requests "that the CNMI take immediate action to indemnify me for the previously cited $139,130 plus the new expenses incurred by me on 96-1930 (approximately $100 in telephone calls, fax charges, postage, paper and copies, car expenses, notary charges, etc.)."

As a preliminary matter, based upon your telephone inquiry in April, 2004, the Office of the Attorney General furnished to you copies of the judgment and order entered by the CNMI Superior Court and by the Supreme Court in *Bisom v. Commonwealth*, Civil Action No. 96-1320 (N.M.I. Superior Ct. filed Mar. 10, 2000), *aff'd*, Appeal Nos. 00-0016GA & 00-0023-GA (N.M.I. Supreme Ct. Sept.13, 2002). A copy of the Supreme Court's Opinion and Order in *Bisom v. Commonwealth*, 2002 MP 19 (2002), was also furnished to you at the same time.

As a result, you were notified of the entry in March, 2000 of a money judgment against you in the sum of $139,000, which judgment was subsequently affirmed on appeal in September, 2002.

Furthermore, by virtue of the aforementioned Opinion and Order, you were notified that according to the CNMI Supreme Court, you did not submit a timely request for indemnification or defense under the Public Employees Legal Defense and Indemnification Act (PELDIA). *Bisom v. Commonwealth*, 2002 MP 19 ¶24. In addition, you were notified that Mr. Bisom's attorney's attempt to have the Commonwealth pay the judgment entered against you under PELDIA was denied by the Superior Court, because of its determination that you had not requested to be indemnified as required by 7 CMC §2304(a). The Supreme Court affirmed this decision. 2002 MP at ¶¶ 57-58.

Almost six months later, you sent the Office of the Attorney General a letter in September, 2004, to "formally request indemnification under the commonwealth indemnification act." Based upon my review, it appears that your letter claiming a right to indemnification was initially received in the Office of the Attorney General by mail on 9/29/04, and that subsequently, copies of the same letter were received, by mail or by fax, on 1/26/05, 2/7/05, and 2/9/05.



Robert D. Bradshaw
February 15, 2005
Page 2

Under the provisions of PELDIA, 7 CMC §2304(a), the following four conditions must be satisfied in order for a public employee or former employee to receive legal representation at the expense of the Commonwealth government or a public entity such as the Office of the Public Auditor:

(1) The employee requests the public entity to pay for his defense or to defend him against any claim against him for an injury arising out of an act that he reasonably and in good faith believes has occurred within the scope of his employment as an employee of the public entity (whether or not the employee is sued in an official or private capacity);

(2) The employee has not acted because of actual fraud, actual malice, or willful criminal misconduct;

(3) The employee reasonably cooperates in good faith in the defense of the claim; and

(4) The employee makes his request in writing to the public entity not less than five days before an answer must be filed; provided, that an employee against which a claim is pending on June 24, 1986, shall have 60 days within which to make his written request.

(Emphasis added) Under the circumstances, including the prior determination by the CNMI Superior Court that you did not request to be indemnified as required by 7 CMC §2304(a), which was upheld on appeal by the Supreme Court, the Office of the Attorney General is not willing to provide legal representation or indemnification for you in this case.

Please be advised that the Office of the Attorney General previously acted as counsel for the CNMI and the Office of the Public Auditor and, in that capacity, entered into a settlement agreement with Robert A. Bisom on September 30, 2002, concerning the *Bisom v. Commonwealth* case. As a result of a settlement in the amount of $140,000.00, a portion of the money judgment entered in favor of Mr. Bisom was satisfied in full.

However, the settlement agreement reached in September, 2002, expressly provided that it did not "affect Plaintiff's ability to enforce the judgment against co-defendant, Robert D. Bradshaw, entered against him in his personal capacity, for which it has been determined that the government of the Commonwealth is not liable. *Bisom v. CNMI*, 2002 MP 19 (Opinion and Order of September 19, 2002)."

Consequently, the Office of the Attorney General must also decline employment as counsel for you in the *Bisom v. Commonwealth* case, because it would impermissibly conflict with our representation of the Commonwealth and the Office of the Public Auditor, and there are no screening measures that we could utilize to avoid the appearance of a conflict of interest.

In closing, we recommend that you promptly consult an attorney or law firm to evaluate the enforceability of the judgment and order entered against you, whether there are grounds for challenging the judgment and order at this juncture, the likelihood of success in challenging such judgment and order, and the availability of any other legal or equitable remedies that you might have.

Robert D. Bradshaw
February 15, 2005
Page 3

In order to facilitate such an evaluation, the Office of the Attorney General will agree to pay for a telephone consult by you with a CNMI-licensed attorney whom I find acceptable.  Stephanie Flores, Esq. of Torres Brothers, P.C., a law firm located at the Bank of Guam Building, Third Floor, Saipan, MP 96950 (telephone number: 670-233-5506), has indicated her willingness to provide this limited service for you, at the expense of my Office.  Please let me know immediately if you wish to consult with Ms. Flores, so that I can make the necessary arrangements, including copying of relevant documents and materials for review by Ms. Flores.

Very truly yours,

OFFICE OF THE ATTORNEY GENERAL

PAMELA BROWN
Attorney General

AFFIDAVIT

The undersigned, Robert D. Bradshaw, hereby certifies and affirms that the attached copies of letters from me were mailed by me to the CNMI Attorney General on or about the dates indicated and as relative to service on Superior Court Case 96-1320:

1.  Letter of Jan 31, 1997, to D. Douglas Cotton, stating that I had not been served and asserting that I would not authorize the CNMI AG to accept service on my behalf.
2.  Letter of Jun 2, 1997, to D. Douglas Cotton, asserting that I had not been served by Bisom and that I had not authorized the AG to accept service for me.
3.  Letter of Jul 14, 1999, to William C. Bush, in response to his letter of Jun 30, 1999, and asserting by me that I had never been served in the Civil Case No. 96-1320, that I had not authorized the AG to accept service for me.
4.  Undated letter, to William C. Bush, in response to his letter of Jun 30, 1999, and further answering his questions in his June 30, 1999 to me.  Though undated, this letter probably was dated around Jul. 20, 1999 in that the next letter was an essential repeat of this undated letter.
5.  Letter of Jul. 20, 1999, to William C. Bush, in response to his letter of Jun 30, 1999, and further answering his questions to me in his June 30, 1999 letter.
6.  Letter of Jul 15, 2000 to the CNMI Attorney General indicating that I had not been served and that I had not and was not authorizing the AG to represent me on service.

Dated at St. Maries, Idaho, this _9th_ day of _August_ 2005

_Robert D. Bradshaw_
Robert D. Bradshaw


STATE OF IDAHO
COUNTY OF BENEWAH

I, _____**Jerry Lee Nelson**_____, Notary in and for the State of Idaho,

residing at_____**St. Maries, Idaho**_____ do hereby certify that on this

____**9**_____ day of ___**August**_____ 2005, personally appeared

1



before me Robert D. Bradshaw, to me known to be the individual described in and who

executed the within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this ____9____ day of __August____ 2005.

NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

**JERRY LEE NELSON**
Notary Public
State of Idaho

MY APPOINTMENT EXPIRES

____11/15/07_____

2

31 Jan 1997

MR. DOUG COTTON
ASST. AG, CNMI

Dear Doug:

Reference your letter of Jan 22, 1997 ref to Bjison vo CNMI. My answers are as follows:

① I have not been served with this summons.

② I am not a resident of the CNMI. They have <u>No</u> jurisdiction over me — Do they ??

③ I will not authorize the CNMI to accept service for me at this time.

④ I will not release my claims while I earlier advised you of — As I remember I am due some $130 for my expenses.

⑤ Last, if I can help on anything, Please advise me, I have No telephone. Thanks!

Regards
Robert D Bradshaw
40203 N. NEWPORT H
ELK, WA 99009

June 2, 1997

Mr Douglas Cotton, Asst AG
Office of the Attorney General
Admin Bldg, Capitol Hill, Caller Box 1007
Saipan, MP 96950

Dear Doug:

As of today, I have not been served with Bisom's latest action. I do expect that it will come with a process server in a few days. I had a certified letter from Sorenson at the Post Office which was unclaimed by me and returned to him. He should have it returned by now so I suspect he will have to hire a process server which I guess he will. On receipt of service I will notify you.

You know every thing I know on this so you can respond. I do not have a telephone and won't have one. I will try to find a commercial fax number you can use to ask me any questions. In the meantime, several concerns are floating around in my mind which I now pose to you.

True, I did accept mail service on the original case CV 95-0042 filed in federal court in 1995. I have never been served with any other summons since then nor have I authorized you to accept any service on my behalf.

I believe that this original was dismissed in Dec 1996 at which time, Bisom or Sorenson filed it in CNMI Superior Court. I was not served with this action. Evidently, it was later refiled in federal court. I was not served with that one. Now its back to Superior Court and I expect that I MIGHT get served with this one as they have evidently tried the mails but the summons went back unclaimed.

Several questions now surface. First, there is a CMNI statute of limitations on this. I guess its three years which means it expired in December 1996 (my termination letter?). Maybe the original complaint's life was kept alive with the Federal dismissal but the subsequent lack of service on me suggests that if there was any basis to extent the statute of limitations, surely it has expired. In other words, there has been two complete breaks in this case to me since I was not a party to the December 1996 (Possibly 96-1320?) action filed in Superior Court. I was not a party to the subsequent filing in Federal court.

Even if there was a basis to keep this thing alive, surely it has long since expired because complaints have to be served in 120 days in federal court. I don't know what the CMNI service date requirements are but they surely don't exceed the 120 days. So from the Dec 1995 dismissal, more than 150 days have passed. It plainly looks like any linkage I had with the old case is now broke. Time has dragged by and now far exceeds the statute of limitations. I don't see how that they can keep pushing me on this thing.

Last, I don't know what Sorenson's current complaint says but I do have a copy of the perhaps first one he filed in Superior Court (96-1320 but I thought this was filed in 1996?). You sent me a copy with your Jan 22, 1997 letter letting me know that I could expect service (which never

happened- my last action "to" Bisom was in December 1993 and late Dec on his termination as I best recall).

In looking over this 96-1320 complaint (which was possibly filed after the statute of limitations expired), its quite evident that Bison/Sorenson is broaching new complaints never filed against me which certainly had no life or basis from the federal action filed in 1995. In other words, they had no life for a carryover.

For example, the claims and complaints concerned my alleged violations of Commonwealth law (but I don't understand the Civil rights ones citing 42 USC 1983) and filed in Superior Ct based on Commonwealth law and jurisdiction. These claims had no life or basis in the 1995 federal lawsuit (unless it be the civil rights ones which I don't understand). The statute of limitations has long since expired and now they are placing them in court. I have real problems with this from the standpoint of justice.

Too, there are the issues you raised in your letter to Sorenson on Dec 1996. Please let me know about this. I will do the best I can when I am served. I will notify you immediately (I will call you collect). I am retired living on Social Security. I have no funds for telephone calls and fax charges. Again, I will not relinquish my claims for costs (around $130 or so - $50 additional plus the $80 I did not receive from the deposition). Best wishes. Please advise me of any questions.

Bob Bradshaw
40203 N. Newport Hwy
Elk, WA 99009

July 14, 1999

CNMI Attorney General, ATTN. William C Bush
Saipan, CM 96950

Dear Mr Bush;

Thank you for your letter of Jun 30, 1999, just recently received by me. In 1995, I was a party to the US District Court Case 95-0042, after service. I made an answer to this complaint in 1995 and gave it to the CNMI AG. I was never furnished a copy of what answer was filed but I assume that whoever made the answer filed what I sent Saipan. In the answer I said that I never knew that Bisom was a Jew before the complaint. Recently, I have learned that the US District Court decision was upheld by the Appeals Court in a 1998 decision (according to the local Clerk of Court of the District Court in Saipan).

Regarding CNMI SC 96-1320 and all subsequent complaints, I have never been served on any of these complaints. I have never authorized the AG to accept service for me. As far as I am concerned those cases are all mute and non-existent. To repeat, I don't want the AG to accept service for me on anything. If Bisom wishes to sue me, he must serve me (actually with a process server).

Some two certified mail packets from an unidentified party came to me from Saipan in 1996 and 1997. I refused to accept either of them and they were returned by the Post Office undelivered. Possibly these mailings were an attempt to accomplish service although I cannot be sure what were in the packets and the sender's name was not identified (beyond a return address post office box). Again, if Bisom wants an answer from me he will have to hire a process server. As I said to Doug Cotton, if I am served I will contact the AG to make the answer. Otherwise, I have not authorized the AG to make any answers for me on anything in the CNMI cases. And I have never been served!

As for as constructive service, I have no knowledge of any attempts by anyone to serve papers on me. I live by myself and there is no one at my house except me. I have no employees or anyone else present who could accept service on my behalf. I don't have any reason to believe that Bisom can come up with any basis of service. If he attempts it, surely it would constitute some type of a fraud. If he produces a signature, it is not mine.

I assume that the CNMI has a cut off date for service like the 180 days or so for the feds. Surely, we are long past that date whatever it is. Couple that with the statute of limitations and I see no way that I am a part of the CNMI case. Should you file a motion to strike my name individually from the suit? Since you have

suggested it, it seems like a good idea although I don't know that it is necessary (other than if this thing goes to trial and Bisom tries to later claim service on me; thus, a pre-trial motion as you suggest would flush out whatever case he might try to make).

Accordingly, if you wish to file a motion to have me removed individually from the CNMI case, you have my permission and agreement. If you don't feel that such a motion will benefit your case, fine and I understand. There is a possibility that Bisom's lawyer may have "mistakenly" thought he made service on this and has neglected to verify the fact. He may not really know about the lack of service. I suppose for this reason, I have never been anxious to bring the matter up (thus letting him stay in the dark).

As for as me cooperating with you, I feel that I have went the extra mile to cooperate with the AG on this case. If you have knowledge otherwise, please advise me as I would like to hear about it.

Since the Fed case is now history, I don't see that I have any role in anything further. However, I am anxious to help you and the CNMI case in any way possible. In that sense, I will supply whatever information I can. If the case goes to trial and you wish me to come to Saipan, I would consider it. In saying this I would want something more firm on my expenses than how Cotton handled the situation for me for the Spokane deposition some years ago. I lived in Idaho, several hundred miles from Spokane. I agreed to come to Spokane or Boise if Bisom would pay my expenses. Cotton (without consulting me) agreed with Bisom on this deposition with a $25 a day or so motel bill limit (I now have forgotten the amount but it was not enough) which was ridiculous so I ended up never even being completely reimbursed by Bisom for my expenses. I sent Doug a bill to include the unreimbursed costs in the 95-0042 case (which Bisom is supposed to pay).

Should you represent me further? Again, I don't think I am a party to that CNMI case and if that is true, the answer is no (if the answer is yes then of course I would need representation; although I cannot perceive how it could be yes). I suppose if Bisom appealed the Circuit Court decision to the Supreme Court, I will continue to need help on the 95-0042 case. As for as the CNMI SC, your office has never and should never have represented me on this at all that I am aware of. As I was never served, I never asked for any assistance and the CNMI SC never should have been told that the AG represents me. Hence, why is there now a need to contact them to have the AG withdrawn as my attorney?

The Jew question - I know some very good Jews and indeed some very bad Jews (like Bisom if he is a Jew and I still don't know that fact). There was never any

reason for me to know that Bisom was a Jew since he never said that to me. And certainly he is not a religious Jew (religious Jews wear breads and he always was clean shaven). Otherwise, he looked like a majority type white and his name was no clue for anything.

In Bisom's deposition, he claims that he deceptively entered into Guy Gabaldon's confidence and found out that I sent Guy some alleged "anti-Semitic" literature from the US and that I fired Bisom because he was a Jew. All of this probably didn't come from Gabaldon although I allow that Bisom fraudulently and deceptively tried to manipulate something out of Gabaldon to claim that I am anti-Semitic to justify his lawsuit.

Gabaldon and I have been friends for 20 years. It is true that Guy has had some bad experiences with some Saipan Jews (particularly a liberal reporter who was very hostile to Gabaldon). After I came back to the states in 1994, I mailed some copies of a newsletter complaining about the Jewish lobby and how they are able to walk into Washington and get anything they want free for the state of Israel.

The newsletter was put out from Washington DC by Victor Marchetti, a former official with the CIA in the Director's office. Marchetti is a well known personality, having been on TV several times on discussions about the CIA. He put out this newsletter as a Washington watch and I have forgotten what the name is. Perhaps his letter was a little pro-Arab although I am not sure. In any case, he did do a good job of reporting on the flow of money ($5 billion annually), airplanes, technology, wealth and you name it to Israel - sometimes illegally and without Congressional authorization.

Frankly, I practice Judaism and am more anxious to see Israel built up (even at the expense of the stupid US taxpayers) as much as probably anyone in America. I did send some of this stuff from Marchetti to Gabaldon but none of it was Jew hatred stuff. It was only a complaint about the incompetence and stupidity of American officials that have given the wealth of this nation away all over the world. I learned long ago that this stupidity was not about to end because it has happened all over the world in the last 50 years.

In any case, this seems to be the basis for Bisom to bring his lawsuit and charge discrimination because he is allegedly a Jew. But all Jewish authorities (and I have had some three different Jewish Encyclopedias plus access to other authoritative sources) agree that there is no Jewish race. I agree with this. There is a Jewish religion which I willingly try to practice. But again, Bisom is certainly no religious Jew as is plainly evident when looking at him. In order to determine how deceptive Bisom was with Gabaldon, you will have to call Gabaldon and talk with him. He is well known and respected by many on Saipan. As for as I know,

he has never been deposed so Bisom must realize that he is on thin ice with lying about Gabaldon.

Reaching me? I live in the backwoods and at the moment it is impossible beyond this post office address. I might perhaps get you a fax number of a neighbour if it is needed. You should know that once your office (the AG) has my address, phone number or whatever, Bisom's lawyer also has it if he wants it. Local secretaries do trade information between each other. For example, I moved in 96 and was sure Bisom didn't have my new address (to serve me if he chose). Sure enough, he (or his secretary) seems to have gotten it - evidently from the AG's office (although he did not serve me). So if you need a fax number, I will request that only you have it.

Last, I am not trying to tell or suggest anything to you or your office on this case beyond my deposition, the above remarks and previous correspondence. However, my gut feeling is that Bisom wants to settle this thing short of a trial. He has requested a jury trial which my guess is would be disastrous for him. Bisom has no friends that I know of on Saipan. None of the political factions like him so when he went before the jury, he would largely face enemies.

Ray Guerreo is a local politician with pull with Teno. Ray really hates Bisom. SO if you want an ally to try to find out Bisom's problems and skullduggery, call Ray. He likely would help you in anyway possible and it is plausible that Ray may know something that would be detrimental to Bisom. You can read my files and see where Bisom crossed Ray by going on TV to make charges that were improper from the Auditor's office.

Finally, in closing, may I point out that I have essentially never been furnished by the AG any of these CNMI motions, filings, etc, etc. I did receive copies of the first two or so in 1996 but none of the more recent ones were sent me - perhaps because I was not served and was not a party to them. I do know that Bisom changed some of the complaints between 95-0042 and the few later ones which I saw. For example, he deleted the reference to the Jewish religion and substituted Jewish race (which as I said, does not exist in fact). I have assumed that Cotton or someone in the AG's office would carefully go over each petition to note any discrepancies from former petitions. Please let me know if I can help you further and the final results of this case.

Yours very truly,

Robert D. Bradshaw, Box 3590, Oldtown, ID 83822

CNMI Attorney General, ATTN.: William C. Bush
Saipan, CM 96950

Dear Mr Bush.

Doug Cotton was able top piece together the events of 1993 which precipitated the Bisom lawsuit. Possibly you too have time to go through the thousands of pages of documents, depositions, etc and have attained some perspective of what happened. Anyway, I have prepared a synopsis of what happened to assist you.

In 1993, Larry Guerrero was the Republican Governor running for re-election. he was opposed by Democrat Froylan Tenorio. The campaign was bitter and hard. Scott Tan was Public Auditor but his tenure was up around Nov 21st, 1993. Bisom was hired by Tan as the legal counsel for the Public Auditor. Ray Guerrero was one of Larry's principle political allies and Director of CUC. I was a minor employee of the Dept of Finance.

Scott had not gotten along with Larry's administration and rumors abounded that the republicans would not reappoint him Public Auditor. However, at some point of time, Scott was led to believe (as he later orally confirmed with me) that Froylan would reappoint him if he won.

Froylan made Ray Guerrero his principle target - claiming that Ray was a crook and violating numerous CNMI laws. Just before the election, Scott and Bisom came on Saipan TV to confirm that Ray indeed was guilty of the allegations made by Froylan. For whatever reason, Bisom did most of the talking on TV.

In any case, this act violated the PA's law and made all of the Republicans furious. No way would they allow Scott to be reappointed. According to Scott (in later remarks to me), Froylan said that he would appoint Scott using temporary appointments. In the meantime, Scott laid on and arranged for the annual commonwealth audit in late Nov 1993, using the CPA firm of Delotte and Touche.

In early Nov, Larry lost and Froylan was the Governor elect. He promptly established a transition committee to plan on who would get what jobs in his new administration in Jan 1994. Around the middle of Nov, Froylan and Scott left together for a trip to Hong Kong, ostensibly on Commonwealth business. However, for this trip, Scott must have forgotten that his term would be up around Nov 21.

So, Scott's term was up and Governor Guerrero appointed me temporary Public Auditor. I was never a candidate for the permanent job and understood from Scott that Froylan would appoint him in Jan  Scott and I were then friends.

My appointment letter was on a Friday and I first came to the office the next Monday. Larry made a press release on it at once so Bisom (who Scott had left in charge of the office) learned that Friday that Scott's term was up and I was the temporary auditor. Bisom immediately called Scott in Hong Kong to brief him on what had happened. Scott consulted with Froylan and they decided that they did not want the CNMI audit scheduled in late Nov to take place. Actually, they wanted to delay it until Jan so that Scott could supervise it after he was reappointed.

In that telephone conversation or another one that weekend, Bisom was instructed to stop the audit at all costs and to go to Froylan's transition committee and coordinate his actions with them. In Bisom's complaint, he confirms the telephone calls and his meetings with the transition committee. He claims that they said that if he was fired for interfering in my work, he would be rehired in Jan when Froylan and Scott came on board.

Unbeknown to me, I came to work that Monday morning not understanding that Bisom (who I thought was my legal counsel) was involved in a conspiracy with Scott, Froylan and the transition committee to sabotage, undercut and hurt my work as public auditor. That Monday, I decided on proceeding with the audit as scheduled by Scott. I detected that Bisom was angry and tried in some ways to interfere in my decision. At that time, I never connected Bisom's opposition to me back to Scott and Froylan - although I became aware of it in a few days.

In the meantime, I, assuming that Bisom was now my "loyal" and trustworthy employee, talked to him privately and outlined a legal problem which I believed needed some attention from the AG. I ordered him to contact the AG and discuss my problem. Well, he never contacted the AG, instead, he contacted Stanley Torres, an opponent of Larry, at the Legislature and briefed him on my privileged conversation in the auditor's office (as he confirmed at his deposition with Cotton). Either he or Torres went to the paper with my legal problem. I knew at once that it came from Bisom because no one else knew of it.

I was only in Bisom's presence a few hours the first day I was in the office. the next day, he was gone most of the time (revealing public auditor information and my privileged conversation) at the legislature, possibly with the media and involved in strategy meetings with Froylan's transition committee on how he was going to stop and disrupt my work at the auditor's office.

All of these Bisom meetings were secret and clandestine and without my knowledge or authorization. After these secret meetings to conspire against me, I never saw Bisom again. He never returned to the office. He did bring a car by

and turned it in one day at noon but I was at lunch. I considered his action an abandonment of his job.

Within two days, I realized that I had a problem with Bisom - that he was disloyal, that he was violating PA rules and laws, that he was secretly working against me. I immediately gave him a 30 day notice of termination (which would be effective in early Jan 1994) without cause as allowed in his contract.

In the meantime, I discovered that Scott had a secret slush fund in his office which I thought was illegal. I closed it and turned the money into the CNMI treasurer and notified the Federal Comptroller if they wanted to audit it. Later, Scott and Froylan returned to Saipan. Whereas Scott and I had been friends, he became my enemy when he learned of my actions on the illegal slush fund.

During the month of Dec, Froylan, Scott and Bisom all three went to the media and constantly attacked me for doing the annual audit which I had proceeded with. I built a paperwork case for the termination of Bisom for cause which I did in late Dec giving him a 7 day notice. If the court should find that this termination was wrong, then surely it must be acknowledged that my earlier 30 day termination without cause would have taken effect. In either case, Bisom was gone!

Naturally, I filed a series of ethics complaints with the local Bar Association on Bisom's many actions. This group is a total joke on Saipan. And I suppose I knew that they would do nothing (they never have except in one rare case where a local lawyer was caught outright in a felony).

In Jan, my temporary appointment was up around the 20th. Froylan was sworn in I think on the 10th. I had to have an emergency operation (which I had in Eugene, OR) so I left in early Jan on sick leave (leaving the senior auditor in charge of the office). Once Froylan was Governor, Scott came to the office and took over (frankly, I believe illegally since I was still technically the temporary Public Auditor). Scott quickly brought Bisom back on board - apparently as he had promised Bisom (per Bisom's allegation).

Whether Froylan ever intended on hiring Bisom back or not, I cannot say. Possibly he planned on double crossing Bisom from day one. Or maybe he did plan on hiring Bisom back or giving him another job (like maybe being the CNMI AG or deputy AG). After his work for Froylan, Bisom perhaps expected a payback in some fashion in the context of a future, well paying, do-nothing job.

But Bisom had made many, many enemies among local people (actually of all political factions). Most people thought he was a bum or had problems of some sort. For certain, Froylan and his administration decided in early Jan that they

didn't want Bisom under any condition. So Bisom was not hired. And since he, as a lawyer, knew and understood that job promises mean little or nothing until the contract is finalized and signed by all parties, there was no reason for him to believe he had anything firm.

Scott soon got into trouble with Froylan's administration when he allegedly allowed a Chinese friend to have one of the public auditor's cars. The police found out and he was charged with a criminal act. Froylan then removed him and hired another auditor. The legal counsel position was filled with someone else.

Apparently in 1994, Bisom realized that he had been fired from a $45,000 a year job (where he apparently had little to do but show up daily) and instead of being appropriately rewarded, he got nothing. SO he proceeded with his lawsuit. And I applaud him for laying out his secret conspiracy with Scott, Froylan and the transition committee to undercut, sabotage and hurt me. I knew this stuff was going on but it's hard to prove secret clandestine meetings and agreements. Bisom has laid it out in his complaint.

Sometime in 94-95, Bisom went to Gabaldon. In a clandestine and deceptive act (without revealing who he was and what he was after), he told Gabaldon some things to make Guy take him into some confidence. Apparently, in their conversations, Gabaldon mentioned that I had mailed some of Victor Marchetti's newsletters (on the US money give away to Israel) to Gabaldon in 94, long after Bisom was fired. Bisom revealed this in his deposition, In any case, he used it as some alleged proof that I had discriminated against him for being a Jew.

The truth is that I didn't know he was a Jew in 93 and if I would have known, it would have made no difference whatsoever in my actions in firing him. The evidence seems to be that he is a liar, cheat, dishonest, disloyal bum and should be fired. I was only in his presence a few hours on the first day that I met him. Beyond what happened that day and the next one, I knew he was a problem.

A final note - I think my action and the action of the government in firing Bisom for cause was absolutely proper. I have real questions about the role of Scott, Bisom and Froylan in the conspiracy which he admits and outlines in his complaint. If the AG defends me and the government, is there any sense or conflict in also defending Scott and Froylan? Obviously, when Froylan was Governor, there was no need in asking that question. Best wishes,

Bob Bradshaw, Box 3590, Oldtown, ID  83822

July 20, 1999

CNMI Attorney General, ATTN.: William C. Bush
Saipan, CM 96950

Dear Mr Bush.

I sent you the essence of this letter a few days ago. Because mail does get lost to Saipan, I wished to send another copy. Also, may I suggest that by means you should read all the letters sent Bisom in connection with his dismissal and all the letters I filed with the local Bar Association on the ethics complaint. Not only did Bisom go out of his way to hurt my work and attack me, but he even telephoned Michael Johnson of Deloitte & Touche to threaten him over the audit he was doing.

The whole bit about discrimination is something for politically correct liberals to jump on in our modern warped society. Bisom was fired for the reasons outlined in the various communications to him. He was fired because I believed he was a dud and was absolutely no good as an employee. Obviously, in Jan 1994, the people in authority in the CNMI believed the same thing because they refused to hire him back.

The modern politically correct thing to do if one can claim discrimination is to never deal with the facts and truth of why the firing took place. instead, one can shift the argument and focus away from the true facts and focus an attack upon the party citing the facts. Slick Clinton is a master of deception and has followed this practice for years in his dealings with his opponents (as you may or may not agree). In other words, attack the attacker and never address the complaints and charges. Bisom did this. Rather than deal with what a dud he was and how sorry he was as an employee, he cooked up this anti-Jew stuff to charge me with discrimination.

And naturally, many gullible people will totally ignore the huge assortment of reasons on why he was fired and instead focus upon the alleged discrimination (I am still not convinced that he is a Jew because most Jews have got some brains and I wonder about Bisom and as I noted earlier, he clearly is not religious). Otherewise, the following letter is a duplicate of what I sent you two days ago. The following dates were recorded off the top of my head and are approximate only.

To repeat:

Doug Cotton was able top piece together the events of 1993 which precipitated the Bisom lawsuit. Possibly you too have time to go through the thousands of pages of documents, depositions, etc and have attained some perspective of what happened. Anyway, I have prepared a synopsis of what happened to assist you.

In 1993, Larry Guerrero was the Republican Governor running for re-election. he was opposed by Democrat Froylan Tenorio. The campaign was bitter and hard. Scott Tan was Public Auditor but his tenure was up around Nov 21st, 1993. Bisom was hired by Tan as the legal counsel for the Public Auditor. Ray Guerrero was one of Larry's principle political allies and Director of CUC. I was a minor employee of the Dept of Finance.

Scott had not gotten along with Larry's administration and rumors abounded that the republicans would not reappoint him Public Auditor. However, at some point of time, Scott was led to believe (as he later orally confirmed with me) that Froylan would reappoint him if he won.

Froylan made Ray Guerrero his principle target - claiming that Ray was a crook and violating numerous CNMI laws. Just before the election, Scott and Bisom came on Saipan TV to confirm that Ray indeed was guilty of the allegations made by Froylan. For whatever reason, Bisom did most of the talking on TV.

In any case, this act violated the PA's law and made all of the Republicans furious. No way would they allow Scott to be reappointed. According to Scott (in later remarks to me), Froylan said that he would appoint Scott using temporary appointments. In the meantime, Scott laid on and arranged for the annual commonwealth audit in late Nov 1993, using the CPA firm of Delotte and Touche.

In early Nov, Larry lost and Froylan was the Governor elect. He promptly established a transition committee to plan on who would get what jobs in his new administration in Jan 1994. Around the middle of Nov, Froylan and Scott left together for a trip to Hong Kong, ostensibly on Commonwealth business. However, for this trip, Scott must have forgotten that his term would be up around Nov 21.

So, Scott's term was up and Governor Guerrero appointed me temporary Public Auditor. I was never a candidate for the permanent job and understood from Scott that Froylan would appoint him in Jan  Scott and I were then friends.

My appointment letter was on a Friday and I first came to the office the next Monday. Larry made a press release on it at once so Bisom (who Scott had left in charge of the office) learned that Friday that Scott's term was up and I was the temporary auditor. Bisom immediately called Scott in Hong Kong to brief him on what had happened. Scott consulted with Froylan and they decided that they did not want the CNMI audit scheduled in late Nov to take place. Actually, they wanted to delay it until Jan so that Scott could supervise it after he was reappointed.

In that telephone conversation or another one that weekend, Bisom was instructed to stop the audit at all costs and to go to Froylan's transition committee and coordinate his actions with them. In Bisom's complaint, he confirms the telephone calls and his meetings with the transition committee. He claims that they said that if he was fired for interfering in my work, he would be rehired in Jan when Froylan and Scott came on board.

Unbeknown to me, I came to work that Monday morning not understanding that Bisom (who I thought was my legal counsel) was involved in a conspiracy with Scott, Froylan and the transition committee to sabotage, undercut and hurt my work as public auditor. That Monday, I decided on proceeding with the audit as scheduled by Scott. I detected that Bisom was angry and tried in some ways to interfere in my decision. At that time, I never connected Bisom's opposition to me back to Scott and Froylan - although I became aware of it in a few days.

In the meantime, I, assuming that Bisom was now my "loyal" and trustworthy employee, talked to him privately and outlined a legal problem which I believed needed some attention from the AG. I ordered him to contact the AG and discuss my problem. Well, he never contacted the AG, instead, he contacted Stanley Torres, an opponent of Larry, at the Legislature and briefed him on my privileged conversation in the auditor's office (as he confirmed at his deposition with Cotton). Either he or Torres went to the paper with my legal problem. I knew at once that it came from Bisom because no one else knew of it.

I was only in Bisom's presence a few hours the first day I was in the office. the next day, he was gone most of the time (revealing public auditor information and my privileged conversation) at the legislature, possibly with the media and involved in strategy meetings with Froylan's transition committee on how he was going to stop and disrupt my work at the auditor's office.

All of these Bisom meetings were secret and clandestine and without my knowledge or authorization. After these secret meetings to conspire against me, I never saw Bisom again. He never returned to the office. He did bring a car by and turned it in one day at noon but I was at lunch. I considered his action an abandonment of his job.

Within two days, I realized that I had a problem with Bisom - that he was disloyal, that he was violating PA rules and laws, that he was secretly working against me. I immediately gave him a 30 day notice of termination (which would be effective in early Jan 1994) without cause as allowed in his contract.

In the meantime, I discovered that Scott had a secret slush fund in his office which I thought was illegal. I closed it and turned the money into the CNMI treasurer and notified the Federal Comptroller if they wanted to audit it. Later, Scott and Froylan returned to Saipan. Whereas Scott and I had been friends, he became my enemy when he learned of my actions on the illegal slush fund.

During the month of Dec, Froylan, Scott and Bisom all three went to the media and constantly attacked me for doing the annual audit which I had proceeded with. I built a paperwork case for the termination of

Bisom for cause which I did in late Dec giving him a 7 day notice. If the court should find that this termination was wrong, then surely it must be acknowledged that my earlier 30 day termination without cause would have taken effect. In either case, Bisom was gone!

Naturally, I filed a series of ethics complaints with the local Bar Association on Bisom's many actions. This group is a total joke on Saipan. And I suppose I knew that they would do nothing (they never have except in one rare case where a local lawyer was caught outright in a felony).

In Jan, my temporary appointment was up around the 20th. Froylan was sworn in I think on the 10th. I had to have an emergency operation (which I had in Eugene, OR) so I left in early Jan on sick leave (leaving the senior auditor in charge of the office). Once Froylan was Governor, Scott came to the office and took over (frankly, I believe illegally since I was still technically the temporary Public Auditor). Scott quickly brought Bisom back on board - apparently as he had promised Bisom (per Bisom's allegation).

Whether Froylan ever intended on hiring Bisom back or not, I cannot say. Possibly he planned on double crossing Bisom from day one. Or maybe he did plan on hiring Bisom back or giving him another job (like maybe being the CNMI AG or deputy AG). After his work for Froylan, Bisom perhaps expected a payback in some fashion in the context of a future, well paying, do-nothing job.

But Bisom had made many, many enemies among local people (actually of all political factions). Most people thought he was a bum or had problems of some sort. For certain, Froylan and his administration decided in early Jan that they didn't want Bisom under any condition. So Bisom was not hired. And since he, as a lawyer, knew and understood that job promises mean little or nothing until the contract is finalized and signed by all parties, there was no reason for him to believe he had anything firm.

Scott soon got into trouble with Froylan's administration when he allegedly allowed a Chinese friend to have one of the public auditor's cars. The police found out and he was charged with a criminal act. Froylan then removed him and hired another auditor. The legal counsel position was filled with someone else.

Apparently in 1994, Bisom realized that he had been fired from a $45,000 a year job (where he apparently had little to do but show up daily) and instead of being appropriately rewarded, he got nothing. SO he proceeded with his lawsuit. And I applaud him for laying out his secret conspiracy with Scott, Froylan and the transition committee to undercut, sabotage and hurt me. I knew this stuff was going on but it's hard to prove secret clandestine meetings and agreements. Bisom has laid it out in his complaint.

Sometime in 94-95, Bisom went to Gabaldon. In a clandestine and deceptive act (without revealing who he was and what he was after), he told Gabaldon some things to make Guy take him into some confidence. Apparently, in their conversations, Gabaldon mentioned that I had mailed some of Victor Marchetti's newsletters (on the US money give away to Israel) to Gabaldon in 94, long after Bisom was fired. Bisom revealed this in his deposition, In any case, he used it as some alleged proof that I had discriminated against him for being a Jew.

The truth is that I didn't know he was a Jew in 93 and if I would have known, it would have made no difference whatsoever in my actions in firing him. The evidence seems to be that he is a liar, cheat, dishonest, disloyal bum and should be fired. I was only in his presence a few hours on the first day that I met him. Beyond what happened that day and the next one, I knew he was a problem.

A final note - I think my action and the action of the government in firing Bisom for cause was absolutely proper. I have real questions about the role of Scott, Bisom and Froylan in the conspiracy which he admits and outlines in his complaint. If the AG defends me and the government, is there any sense or conflict in also defending Scott and Froylan? Obviously, when Froylan was Governor, there was no need in asking that question. Best wishes,

Bob Bradshaw, Box 3590, Oldtown, ID 83822

July 15, 2000

CNMI Attorney General
Saipan, CM 96950

Gentlemen:

Over a year ago, William C. Bush of your office and I exchanged letters on the CNMI Superior Court Case 96-1320.    Mr Bush suggested that he might go into Superior Court and have my name removed from 96-1320 because I was never served with the lawsuit.

I indicated that I was not served and that I knew of no reason at all which would allow any alleged constructive service (I have no employees or family members who could have accepted service). Furthermore, I have authorized no one on Saipan to accept service for me. This includes the AG's office as I had told Doug Cotton that neither he or anyone else there could accept service for me. Bisom must serve me personally if he wants to pursue this case with me!

Since I was not served, I agreed with Mr Bush that it would be well to go into court and have my name stricken. Frankly, I thought he would do that. But now over a year has passed and I have had no further communication from Mr Bush. Perhaps he is no longer with your office.

In any case, I am wondering what the status of 96-1320 is and did Mr Bush go into court and follow his suggestion to me on removing my name from the suit? Your help will be appreciated.

Yours very truly,

Robert D. Bradshaw
PO Box 3590
Oldtown, ID 83822

AFFIDAVIT

The undersigned, Robert D. Bradshaw, hereby certifies and affirms that before trial in Superior Court Civil Case 96-1930, the last communication received by me from the CNMI Attorney General occurred around Jun 30, 1999 from Asst AG William C. Bush, as prompted upon my initiation.  No further communications, messages, letters, faxes, phone calls, etc were received by my on this case or its appeal, 2000-016 and 2000-023, until April 2004 when I received a letter from the AG, as initiated by my phone call to Mr Sachs of the AG office.  On Jul 15, 2000, I wrote the AG on this matter but my letter was not answered.

In terms of communications from Mr Bisom and/or his attorney Jay H. Sorenson, I have never had any communications from them whatsoever in any form in this Case or its appeal.  In about early 1997, I did receive two packages which were unidentified as to senders.  They came via certified mail without any identification as to who their mailers were--although they did have a return post office box address.  These two packages or mailings were returned to their senders by the post office.

In terms of possible "constructive service" from Mr. Bisom or his attorney or the AG on Civil Case 96-1320 or its appeal on Supreme Court case 2000-016 and 2000-023, I live alone and I have no other persons in my household or on my property who would accept mail or any form of service from anyone.  I have no wife, no children, no employees, no friends, no colleagues, no acquaintances, etc who have or would accept mail or personal legal services on my behalf.  All mail addressed to me in the US since 1994 would come only to me and no one else.  I have known no one or had anyone on my property named Manny or anything close to that in the US since 1994.  These facts are uncontroverted.

Dated at St. Maries, Idaho, this _9th_ day of _August_ 2005

_____
Robert D. Bradshaw

1

"C"

STATE OF IDAHO
COUNTY OF BENEWAH

I, _____Jerry Lee Nelson_____, Notary in and for the State of Idaho,

residing at____St. Maries, Idaho._____ do hereby certify that on this

_____9_____ day of _____August_____ 2005, personally appeared

before me Robert D. Bradshaw, to me known to be the individual described in and who

executed the within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _____9_____ day of __August_____2005.

_____
NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

MY APPOINTMENT EXPIRES

____11/15/07_____

JERRY LEE NELSON
Notary Public
State of Idaho

2

AFFIDAVIT

The undersigned, David Vanderholm, hereby certifies and affirms the following:

I have been the rural mail carrier along the North Newport Highway in Elk, Washington from 1987 to the present. In 1996-1998, I delivered mail to Robert D. Bradshaw who operated a video store at 40203 N. Newport Hwy. As a part of my duties, when present on my working days, all mail coming to Mr Bradshaw on my route would have come into my hands and/or my attention--certainly in 1996-1998 when Bradshaw lived in Elk and even somewhat in 1999-2000 after Mr Bradshaw moved and his mail was being forwarded or returned from Elk. After Mr Bradshaw moved in late 1998, I delivered no more mail as addressed to him in Elk. It was forwarded to his new address and/or eventually returned.

A question has come to my attention over certified mail from Saipan, MP 96950 to Mr Bradshaw. Reportedly, two certified mail packets came in letter sized brown envelopes in late 1996 and/or 1997 from an unidentified sender but with a Saipan Post Office box. Reportedly, these were returned by the Elk Post Office as Mr Bradshaw refused to accept them.

Otherwise, it has been brought to my attention that some four or so more certified mail packets allegedly came to Mr Bradshaw in Elk from Saipan, MP 96950 in about 1998-1999 and that they were receipted by a third party in Elk, possibly named "Manny" or something similar. I recall no instance when I had a certified mailing for Mr Bradshaw which was delivered to a third party. Postal regulations require the delivery of certified mail to persons 18 years old or older at the address so stated and persons known to the carrier. For sure, I would have remembered four of these mailings. If the mailings were in letter sized brown envelopes without a named mailer, they would have really stuck out. Finally, I have never known a person named Manny (evidently a Hispanic derived name) or anything similar on my route.

Dated at Deer Park, Washington this _10_ day of _May_ 2005

David Vanderholm
US Post Office, 9409 Bridges Road, Elk, WA
Phone 509-292-2750

STATE OF WASHINGTON
COUNTY OF SPOKANE

I, _Jeanetta R. Taylor_, Notary in and for the State of Washington,

residing at _Newport, WA_ do

hereby certify that on this _10th_ day of _May_ 2005, personally

appeared before me David Vanderholm, to me known to be the individual described in and who executed the

within instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _10th_ day of _May_, 2005.

NOTARY PUBLIC IN AND FOR THE STATE OF
WASHINGTON

MY APPOINTMENT EXPIRES _Feb. 16, 2008_





FIRST CLASS

CERTIFIED

MAIL

Z 347 404 518

Fold at line over top of envelope to the
right of the return address

P.O. BOX 1184
SAIPAN, MP 96950

ROBERT D. BRADSHAW
P.O. BOX 369
Gayonville, Oregon 97417

DEC - 5

BRAD369   97417O0O3 1A75 11/22/95
NOTIFY SENDER OF NEW ADDRESS
BRADSHAW
GENERAL DELIVERY
ONTARIO OR 97914-9999

RETURN RECEIPT
REQUESTED

11-25

The following is transmitted by both FAX and US mail:

Jan 25, 2005

AG, Commonwealth of the Northern Mariana Islands
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

Reference is made to CNMI Superior Court Case No 96-1320 (in which the case file shows post office receipts allegedly from me showing that I received service on the complaint and its amendments by certified mail), my written and telephone communications on this matter to your office from Sep 12, 2004 on to this date, my attached memo for record (enclosures C and D), and my request from me to file a criminal complaint against the person or persons whom had prepared the receipts, all of which I deem to be forgeries and involving fraud to prompt a $139,000 default judgment against me in the Superior Court case.

It is my understanding that your office has undertaken an investigation commenced on or about Sep 12, 2004 on my request to file criminal charges against the party or parties producing the alleged mail receipts. In my conversation with Mr Buckingham of your office, I noted the possibility that the alleged mail receipts involved could become lost or damaged in the course of your investigation. I strongly recommended that your office make xerox copies of the original receipts and have a notary certify them as certified true copies of an original. These copies can be used in your investigation while the actual receipts can be safeguarded and secured to prevent loss or damage. I hope that this security process was implemented.

I also suggested to Mr Buckingham that Postal inspectors are available in the US to precisely investigate matters such as my complaint. This process could be done fairly quickly and involve little expense to the CNMI (although each passing day since Sep 12, 2004 goes to make it more possible that the Postal records or people will be unable to determine what happened). Finally, I suggested that this whole thing can be referred to the FBI as it involves interstate fraud and possible conspiracy to defraud both me and the CNMI (I note that the CNMI has already paid out over $100,000 in this matter plus the judgment of $139,000 against me).

In the Supreme court decision on this case, it appears that plaintiff argued that under the CNMI indemnification act, the CNMI should pay the $139,000. The court said that since I allegedly had not asked for any indemnification, none is due (apparently, the court said that if I had asked for indemnification, the plaintiff would have been paid the $139,000 judgment). Of course, it is totally wrong (and I would suggest that it is absurd and virtually impossible to believe) that "I had not asked for indemnification." The truth is that my attorney, the AG, had not informed me on what had happened or was happening on this case, despite my many contacts and persistence with the AG on this matter.

In any case, in accordance with the Supreme Court decision, I sent your office the attached letter (enclosure A) on Sep 12, 2004 by both fax and mail requesting indemnification. Mr Buckingham confirmed by telephone conversation that he had seen my fax. As I desired something in writing on this matter, I wrote the attached letter (enclosure B) on Nov 26, 2004 asking for a formal confirmation. I never received a reply.

Again, I ask for a formal confirmation on this request from me for indemnification of $139,130 and what your response is to my request. I will only note here that if this request is not honored promptly, I am continuing to incur expenses for phone calls, postage, etc, plus much pain and suffering. I hope that your office with address these needs promptly. Thanking you, I am,

Your very truly,

Robert D. Bradshaw
PO Box 473, Calder, ID 83808, Phone 208-245-1691

This letter is being transmitted by both fax 670-664-2349 and US mail.

Feb 7, 2005

Attorney General, CNMI
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

The purpose of this letter is to once more ask for AG representation, assistance and indemnification on Civil Case 96-1320.

On Sep 12, 2004 and thereafter I furnished your office affidavits of 23 Aug 2004 from me on all correspondence from your office to me and my correspondence to you on the question of service. Beyond these letters from me, my files show at least one more letter, copy attached, which discussed the case but did not comment on service (hence I did not send it to you earlier in 2004).

On the question of indemnification, page 18 of the Supreme Court decision indicates that indemnification is contingent upon the employee requesting government defense in the court action five days before the answer is filed on the complaint. My letter of Jul 14, 1999 did request defense if service was effected (though the alleged service was unbeknown to me, the court decided that service was made). Therefore this request date of five days before an answer was made was met or was otherwise inapplicable, irrelevant and/or impossible (for many reasons including the reality that no answer was ever made in court).

Too, in my conversation with Mr Buckingham on Sep 12, 2004 I brought up the matter of me filing criminal charges and asked him to represent me and to follow up in Superior Court to have that $139,000 judgment stricken from the record on the basis of fraud. Several times, I noted to Mr Buckingham that he was supposed to be my attorney, per my view. Mr Buckingham and I also briefly noted the situation with the statutes of limitations.

Of course, all along, I have wanted your office to make a prompt investigation of this matter and go into the CNMI Superior Court and have the judgment against me completely stricken. Also I made request on Sep 12, 2004 for your office to take immediate action on the question of the CNMI indemnification act. If the CNMI paid the $139,000 in Sep 2004, the question of the striking the judgment from the record because of fraud could have been delayed a few days or weeks after Sep 12, 2004.



On indemnification, page 10 of the Supreme Court decision notes the trial court's decision to refuse indemnification to Bradshaw for the $139,000 default judgment because "there was no request by defendant Bradshaw" for indemnification under Section 2304(a).    But the court decision was made even after there was a recognition that there was a conflict of interest on the question of indemnification between Bradshaw and the CNMI government (p. 12 of the decision).

By copy of the attached letters, I have requested indemnification from the CNMI via letters to the Public Auditor and the AG (copies attached).    Once again, I recommend that the CNMI take immediate action to indemnify me for the previously cited $139,130 plus the new expenses incurred by me on 96-1930 (approximately $100 in telephone calls, fax charges, postage, paper and copies, car expenses, notary charges, etc).

Finally, I note that I have filed criminal complaints with your office against the party or parties responsible for representations made to the CNMI courts about alleged certified letters being sent to me.    As I noted in my Jul 14, 1999 letter to the AG, any such allegations are fraudulent.    Because the statutes of limitations dates are in jeopardy, I urge the CNMI to take immediate action on this letter. Thanking you, I am,

Yours very truly,

Robert D. Bradshaw
PO Box 473
Calder, ID 83808
Phone  208-245-1691

LAW OFFICE

# HALL, FARLEY, OBERRECHT & BLANTON, P.A.

702 WEST IDAHO STREET, SUITE 700
KEY FINANCIAL CENTER
BOISE, IDAHO 83702

POST OFFICE BOX 1271
BOISE, IDAHO 83701

TELEPHONE (208) 395-8500
FACSIMILE (208) 395-8585
V:\Forms_Word\BOILERPLATE\Letterhead.doc

E-MAIL: contact@hallfarley.com
WEB PAGE: www.hallfarley.com

RICHARD E. HALL
DONALD J. FARLEY
PHILLIP S. OBERRECHT
J. CHARLES BLANTON
RAYMOND D. POWERS
CANDY WAGAHOFF DALE
J. KEVIN WEST
BART W. HARWOOD
JOHN J. BURKE
KEVIN J. SCANLAN
TAMSEN L. LEACHMAN

KEELY E. DUKE
JAMES S. THOMSON, II
SCOTT R. LEARNED
BRYAN A. NICKELS
MATTHEW J. RYDEN
BRENT T. WILSON
CHRIS D. COMSTOCK
JILL M. TWEDT
JENNIFER A. SWARTZ
KARIN DWELLE

*With Attorneys Admitted to Practice Law in
Idaho, Oregon, Washington and Utah*

July 13, 2005

Robert D. Bradshaw
P.O. Box 473
1530 W. Trout Creek Road
Calder, ID  83808

   Re: *Bradshaw v. CNMI, et al.*
     HFOB File No. 3-635

Dear Mr. Bradshaw:

  This letter is written in response to your letter dated June 20, 2005.

  Representatives of the CNMI Office of the Attorney General ("CNMI AG") did not access, let alone "take possession" of, the CNMI Superior Court's file regarding Case No. 96-1320 on September 12, 2004, or on any other date. Moreover, Ms. Sablan has confirmed that the Superior Court of the CNMI does not check out or otherwise permit lawyers or other persons to take possession of its files. By contrast, the Court permits inspection of its files <u>only</u> at the clerk's window in the presence of the clerk. Thus, even if CNMI AG representatives endeavored to review the court's file, which they did not, they could not have "taken possession" of the same.

  The CNMI AG strenuously denies that it altered, removed or tampered with any of the CNMI Superior Court's records concerning Case No. 96-1320 or any other case.

    Very truly yours,

    Matthew J. Ryden

MJR:ccv
cc:  clients



# SUPERIOR COURT

COMMONWEALTH OF THE NORTHERN MARIANAS ISLANDS
P.O. BOX 500307
SAIPAN. MP 96950



January 18, 2006

Robert D. Bradshaw
P.O. Box 473
Calder, ID  83808

Dear Mr. Bradshaw:

Enclosed you will find documents you have requested in your letter.  Also, the court does not have the letter you are requesting on the Opposition to Motion to Remove Case filed on February 03, 2000

Should you need additional information, please let me know

Sincerely,

Bernadita A. Sablan
Clerk of Court

---

*Clerk of Court          Family Court Division          Commonwealth Recorder          Office of Adult Probation*

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

ROBERT D. BRADSHAW
40203 N. NEWPORT HWY
ELK, WA 99009

4a. Article Number
Z 142 485 879

4b. Service Type
☐ Registered    ☐ Insured
☐ Certified    ☐ COD
☐ Express Mail    ☐ Return Receipt for Merchandise

7. Date of Delivery
6/9/97

5. Signature (Addressee)
_Manny Brangohie_

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form **3811**, December 1991    ☆ U.S.G.P.O.: 1993-307-530    **DOMESTIC RETURN RECEIPT**

---

**SENDER:**
- Complete items 1 and/or 2 for additional services.
- Complete items 3, and 4a & b.
- Print your name and address on the reverse of this form so that we can return this card to you.
- Attach this form to the front of the mailpiece, or on the back if space does not permit.
- Write "Return Receipt Requested" on the mailpiece below the article number.
- The Return Receipt will show to whom the article was delivered and the date delivered.

I also wish to receive the following services (for an extra fee):

1. ☐ Addressee's Address
2. ☐ Restricted Delivery

Consult postmaster for fee.

3. Article Addressed to:

ROBERT D. BRADSHAW
40203 N. NEWPORT HWY
ELK, WA 99009

4a. Article Number
Z 142 485 883

4b. Service Type
☐ Registered    ☐ Insured
☐ Certified    ☐ COD
☐ Express Mail    ☐ Return Receipt for Merchandise

7. Date of Delivery
7/2/97

5. Signature (Addressee)
_Manny_

6. Signature (Agent)

8. Addressee's Address (Only if requested and fee is paid)

PS Form **3811**, December 1991    ☆ U.S.G.P.O.: 1993-307-530    **DOMESTIC RETURN RECEIPT**

EXHIBIT C



**Robert D. Bradshaw**
**PO Box 473**
**1530 W. Trout Creek Road**
**Calder, Idaho 83808**
**Phone 208-245-1691**

Defendant, Pro Se

## IN THE SUPERIOR COURT

## FOR THE

## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM ) Civil Action No 96-1320

      Plaintiff

      v.

COMMONWEALTH OF THE NORTHERN ) **BRADSHAW'S AFFIDAVIT ON**
MARIANA ISLANDS; ROBERT D. ) **TELEPHONE AND FAX**
BRADSHAW, former Temporary Public ) **CONTACTS WITH THE CNMI**
Auditor, in his individual capacity, et al. ) **ATTORNEY GENERAL--**
      ) **IN REFERENCE TO**
      Defendants ) **CNMI CASE 96-1320**

_____

    1. Attached as exhibit A hereto is a record from Verizon of long distance phone

calls made by me to Saipan on the dates indicated. The 234 numbers in Aug and

early Sep 2004 were calls to Micronesian Legal Services Corp or calls trying to reach

them. The 664 numbers are generally to the CNMI AG but calls to 664-2312 and a few

of the other calls were to the AG Investigating office. There were a few other calls

made by me to the AG in St Maries, ID, some 30 miles away on a telephone calling

card which did not provide a record of calls. I also sent several faxes to the AG. And

Mr. Ed Buckingham called me a few times.

1



2. In April 2004, I learned from the CNMI AG that a default judgment for $139,000 was made against me in the CNMI Superior Court Civil Case 96-1320 (as outlined in both the CNMI Superior Court case file 96-1320 and the US District Court of Idaho file 5-84).

3. In Aug 2004, I asked Tom J. Schweiger, former director of Micronesian Legal Services Corp (now with the AG), to help me find out about the 96-1320 default that was entered. He checked the case file and on Sep 9th said that the basis of the judgment was that Robert A. Bisom in 96-1320 filed in court documents showing process service upon me by two means--Bisom served the CNMI AG for me and he also allegedly served on me by alleged certified mailings of summons and complaints which were allegedly receipted by a person apparently named "Manny." Schweiger said that the case files also showed some similar receipts for alleged mailings to me from the AG. He added that he remembered the Bisom case and that the two AG lawyers at the trial of the case had a violent argument which almost turned into a fight.

4. On Sep 12, 2004 (Sep 13, 2004 Saipan time), I contacted the CNMI AG's office and spoke to "Heather" in the Criminal Division. She was briefed on the alleged fraudulent mailing receipts filed In 96-1320 and informed that I wished to file criminal charges against the person(s) who filed the receipts. She referred me to Mr. Lemons who I fully briefed on the alleged fraudulent mailing receipts. He referred me to Asst AG Ed Buckingham who was supposed to be my contact and the person who would conduct an investigation into my allegations.

5. I talked to Mr. Buckingham and informed him fully about the postal receipts and also the fact that the AG had accepted service on the case though Jay Sorensen

2

had been expressly told that the AG would not accept service. In our discussion, I remarked that I thought that the AG had a file copy of the case file in its office. But Mr. Buckingham said that the AG did not have file copies of the cases it defended. He added that he would check the file copy at Superior Court.

6. I went to St Maries, ID and faxed the documents I had in my possession on this case with notarized affidavits of my reply on them or the mailing of them (as are now filed in the CNMI Superior Court file 96-1320 and in the US District Court of Idaho file 5-84). I then called Mr. Buckingham back and he verified that he had seen the process service documents filed with the alleged postal return receipts and return of service forms and that the documents on file were as I described (based on the findings of Tom Schweiger). I had the impression that Mr. Buckingham had the documents in front of him, although this might not have been the case.

7. I specifically noted to Mr. Buckingham that I wanted to file criminal charges against the persons responsible for the fraudulent mailing receipts and that I wanted the AG, which was supposed to be my lawyer in this case, to follow up with a court action in the Saipan Superior Court to have the judgment stricken or voided on me as it was obtained by fraud. Otherwise, I specifically requested that the AG at once to take action to pay the $139,000 to Bisom on the basis of the Indemnification Act.

8. I strongly recommended to Mr. Buckingham that certified true copies of the fraudulent receipts be made and used in the investigation and that his office or the court take action to secure the case file as it involved alleged fraud. I also recommended to Mr. Buckingham that the documents or copies thereof be forwarded to the US Postal authorities as they involved US postal fraud. I then suggested that

3

the AG make for me a certified true copy of the postal receipts and I would at once take them to the US postal inspector in Spokane for an investigation. He said that he would refer the case to Pamela Brown for a decision on what the AG would do on it. Ms Brown was off island but due back in a few days.

7. Thereafter, I called Mr. Buckingham back on Sep 19 and many times thereafter to get a response on AG follow-up. He told me that Ms Brown was briefed and she had authorized the AG to investigate the fraud charges. I noted to Buckingham that the mail receipts should also be sent to the FBI as the FBI lab has a capability to completely analyze both the writings and the ink used to try to determine who wrote them and if they were prepared by the same pen, and so forth. While Mr. Buckingham did not confirm that he would go the FBI with the documents, he seemed receptive to the idea. I had a feeling that he was limited in what decisions he could make but would have to refer matters to Pamela Brown for any decisions. In our several conversations, I also suggested that he send me copies of the alleged postal return receipts and that I would take them to US Postal inspectors for a postal investigation. I followed up on Jan 25, 2005 with the letter to the AG at Exhibit B (sent by both fax and mail) which recaps the need to make copies of the alleged fraudulent documents, to secure them adequately, and another mention of the need for US Postal Investigators and the FBI.

8. In late Sep 2004, Mr. Buckingham informed me that he had briefed and asked Mr. Joseph Race, acting director in charge of the CNMI investigations, to investigate the case. In a Oct 7, 2004 letter from Mr. Race, he noted that he tried to call me and that he had referred the case to Frank Kapileo and Alfred Teregeyo. I called

4

them a few times and on Oct 20, 2004 I talked to Mr. Kapileo and offered my help and any information which he might need from me. He noted to me that he had the case file in front of himself and he and Mr. Teregeyo were both reading it. He did not say why or how that he came into possession of the case file. But he acknowledged seeing the postal receipts in the file.

9. I made several other contacts with Mr. Buckingham and the investigators over the next several weeks. Their responses were always that they were investigating the case and would get back with me. At one point in time, in January 2005, I discussed the case with Mr. Race. I remember his words that it looked to him like I got a dirty deal from the documents filed by Bisom in court. I had the impression that Mr. Race had personally seen the alleged postal receipts. I asked to speak to Mr. Aldan, who had been appointed Chief of Investigations. Mr. Race said that Mr. Aldan was in Pam Brown's office briefing her--presumably on my case.

10. In Jan 2005, I also tried to talk to Mr. Kapileo but he was out of the office, so Mr. Teregeyo took my call and we chatted about the case. Mr. Teregeyo said that he had the file but that Mr. Kapileo had removed the postal return receipts and had taken them with him to the local Saipan Post Office--supposedly Mr. Kapileo was then talking to the Saipan Postmaster about the receipts (suggesting that he by then had shown the receipts to the postmaster or someone at the Post office). I also repeated my earlier comments that if the AG would send me copies, I would take the receipts to the US Postal Inspectors.

11. In late Jan 2005, I became concerned that the CNMI would not supply me copies of the receipts and that the AG was not making any effort to involve the US

5

postal inspectors or the FBI. I called Mr. Buckingham several times in Jan and early Feb. 2005 and tried to encourage him to take some action since he was supposed to be the Asst AG in charge of the case, per Mr. Lemons' words to me.

12. Mr. Buckingham was always friendly and seemed cooperative, interested and concerned. He maintained several times that he had spoken to or was going to speak about the case to Pam Brown, Mr. Race and/or Mr. Aldan. Mr. Buckingham conveyed to me his efforts and desire to get a colorable investigation and to resolve the case. At one time, he suggested that he would make copies of the file and/or at least the documents in question and mail them to me. I said that this would be good.

13. In the meantime, I continued to send faxes and write letters to the AG outlining the need for action to secure the documents by making copies and to pay the $139,000 to Bisom.

14. In my last telephone conversation with Mr. Buckingham in early Feb 2005, his demeanor to me had completely changed. Whereas he had always been a nice, friendly person interested in trying to resolve the case, he abruptly became as cold as ice and was clearing putting some distance between himself and me. In terms of sending me any of the documents, he said no that I had misunderstood him and that the case file was then in the possession of the AG "for review" as he put it.

15. He further communicated that he had been taken off the case and that someone else in the AG's office would contact me in the future on the case. While he did not say so, it seemed clear to me that Mr. Buckingham had been reprimanded and disciplined for trying to be friendly and trying to resolve the case with me. It was clear that Pam Brown herself or others had dressed him down, directly or indirectly.

16.  No other persons in the AG's office contacted me until I received Ms Brown's letter of Feb 15, 2005 which effectively said that the AG would do nothing further on the case (as filed by me in both the CNMI 96-1320 file and the US District Court of Idaho file 5-84).  It was then that I clearly understood that the AG had become an hostile, adversarial party who in the future would work against me and act to protect the guilty parties involved in 96-1320 who had filed the fraudulent documents.  I then filed a motion with the CNMI Superior Court to void the judgment and filed suit in the Idaho US District Court.

17.  In the US District Court case, I tried to obtain the receipts by discovery.  But the CNMI, through its attorney so far has refused my discovery request (s).

18.  In June 2005, in a conversation I had with Ms Bernie Sablan, Clerk of the CNMI Superior Court, she told me that the case file on 96-1320, was in her possession for the judge to use in my motion to void.  She said that the alleged postal receipts showing service are not presently in the file.  I had the impression that Ms Sablan was unaware that the AG's office had had possession of the 96-1320 case file.

19.  In all my contacts with the CNMI AG, I was led to believe that the AG had possession of certainly the mail receipts and indeed generally the whole 96-1320 file.

DATED this _____2/10t_____ day of _____July_____ 2005 at St. Maries, Idaho.

_____
Robert D. Bradshaw


STATE OF IDAHO
COUNTY OF BENEWAH

7

I, _Matthew E Blood_____, Notary of the state of Idaho

and county of Benewah,  residing at _Benewah County_____

do   hereby   certify   that   on   this   _____21st_____   day   of

_____July_____ 2005, personally   appeared   before   me   Robert   D,

Bradshaw, to me known to be the individual described in and who executed the within

instrument for the uses and purposes herein mentioned.

Given Under My hand and Official Seal; this _21st_ day of _July_____ 2005.

_Matthew E Blood_

NOTARY PUBLIC IN AND FOR THE STATE OF IDAHO

MY APPOINTMENT EXPIRES

_07-11-06_____

```
MATTHEW E. BLOOD
Notary Public
State of Idaho
```

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the _22_ day of _July_ 2005, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Marc Lyons/Rudy J. Verschoor, Ramsden & Lyons (phone 208-664-5818)
PO Box 1336
Coeur d'Alene, ID 83816-1336

Jay H. Sorenson (phone 805-485-6662), Attorney for Robert A. Bisom
4234 Clubhouse Drive
Somis, CA 93066.

Commonwealth of the Northern Mariana Islands, Attention the Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol Hill
Saipan, MP 96950

SCOTT KHENG SHANG TAN, c/o CNMI Attorney General
2d Floor of the Juan A. Sablan Memorial Bldg
Caller Box 10007, Capitol Hill
Saipan, MP 96950

_Robert D Bradshaw_

Robert D. Bradshaw, Defendant, Pro Se

8



*Make progress every day*

## CHANGE IN CHARGES

local telephone rates affordable for all customers and for discounts to
schools, libraries, rural health care providers, and low-income families.
As a result of the LNP surcharge, the FUSF surcharge will increase. The LNP
and FUSF surcharges are not applied to customers subscribed to Verizon's
Lifeline service, except for the FUSF surcharge on incidentals.

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to
Verizon Long Distance.

## LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

## SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount |
|---|---|
| Direct Dialed | 3.37 |
| Total usage | $ 3.37 |
| Total Long Distance calls | $ 3.37 |
| Taxes and Surcharges | .26 |
| Total Verizon Long Distance Charges | $ 3.63 |

Your calling plan(s):    Timeless TTY

**Timeless TTY**

### Direct Dialed Calls

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Mon | Aug 2 | 11:53 am | HaydenLake | ID | 208 762-2310 | 2 | .34 |
| 2 | Mon | Aug 2 | 11:55 am | Coerdalene | ID | 208 667-3100 | 1 | .17 |
| 3 | Thu | Aug 12 | 1:10 pm | Spokane | WA | 509 448-1000 | 2 | .20 |
| 4 | Fri | Aug 13 | 11:23 am | Spokane | WA | 509 448-1000 | 1 | .10 |
| 5 | Fri | Aug 20 | 9:08 am | Coerdalene | ID | 208 667-9559 | 8 | 1.36 |
| 6 | Mon | Aug 23 | 5:03 pm | Susupe | NN | 670 664-2367 | 2 | .20 |
| 7 | Tue | Aug 24 | 4:10 pm | Susupe | NN | 670 234-6243 | 3 | .30 |
| 8 | Tue | Aug 24 | 4:14 pm | Capitolhl | NN | 670 323-6633 | 1 | .10 |
| 9 | Thu | Aug 26 | 4:08 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 10 | Thu | Aug 26 | 4:09 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 11 | Thu | Aug 26 | 4:09 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 12 | Thu | Aug 26 | 5:06 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 13 | Thu | Aug 26 | 5:06 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 14 | Thu | Aug 26 | 5:07 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| | | | | | | Subtotal | | $ 3.37 |

### Summary of Timeless TTY

| | | |
|---|---|---|
| 15 Plan calls | | 3.37 |
| **Total** | | **$ 3.37** |

Timeless TTY start date: 02/17/04

| | |
|---|---|
| Total Long Distance calls | $ 3.37 |

Thank you for using Verizon Long Distance.

*Exhibit 61*



*Make progress every day*

Billing Date: **10/01/04**    Page **4** of 6
Telephone Number : 208 245-1691  0111?
Account Number:  03 0134 1099768705 05
How to Reach Us :  See page 2

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to
Verizon Long Distance.

### LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount | |
|---|---|---|
| Direct Dialed | 13.90 | |
| Total usage | $ 13.90 | |
| Total Long Distance calls | | $ 13.90 |
| Taxes and Surcharges | | 1.58 |
| Total Verizon Long Distance Charges | | $ 15.48 |

Your calling plan(s):     Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Tue | Aug 31 | 3:45 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 2 | Tue | Aug 31 | 6:14 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 3 | Tue | Aug 31 | 6:15 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 4 | Wed | Sep 1 | 11:08 am | Spokane | WA | 509 998-4575 | 1 | .10 |
| 5 | Mon | Sep 6 | 4:21 pm | Susupe | NN | 670 664-2366 | 6 | .60 |
| 6 | Mon | Sep 6 | 8:25 pm | Susupe | NN | 670 234-6215 | 1 | .10 |
| 7 | Mon | Sep 6 | 9:43 pm | Susupe | NN | 670 234-7729 | 12 | 1.20 |
| 8 | Thu | Sep 9 | 5:29 pm | Susupe | NN | 670 234-7729 | 42 | 4.20 |
| 9 | Thu | Sep 9 | 6:11 pm | Susupe | NN | 670 234-7253 | 1 | .10 |
| 10 | Sun | Sep 12 | 2:41 pm | Susupe | NN | 670 664-2367 | 3 | .30 |
| 11 | Sun | Sep 12 | 2:54 pm | Susupe | NN | 670 664-2366 | 41 | 4.10 |
| 12 | Sun | Sep 19 | 3:07 pm | Susupe | NN | 670 664-2341 | 18 | 1.80 |
| 13 | Sun | Sep 19 | 4:26 pm | Susupe | NN | 670 664-2341 | 3 | .30 |
| 14 | Tue | Sep 21 | 1:51 pm | Susupe | NN | 670 664-2342 | 1 | .10 |
| 15 | Tue | Sep 21 | 2:50 pm | Susupe | NN | 670 664-2342 | 2 | .20 |
| 16 | Fri | Sep 24 | 7:43 pm | Susupe | NN | 670 664-2342 | 1 | .10 |
| 17 | Mon | Sep 27 | 2:54 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 18 | Mon | Sep 27 | 3:35 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 19 | Mon | Sep 27 | 4:31 pm | Susupe | NN | 670 664-2341 | 2 | .20 |
| | | | | | | Subtotal | | $ 13.90 |

**Summary of Timeless TTY**

| | | |
|---|---|---|
| 20 | Plan calls | 13.90 |
| | **Total** | **$ 13.90** |

Timeless TTY start date: 02/17/04

| | |
|---|---|
| Total Long Distance calls | $ 13.90 |

Thank you for using Verizon Long Distance.

**verizon**

*Make progress every day*

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to Verizon Long Distance.

## LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

## SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount | |
|---|---|---|
| Direct Dialed | .70 | |
| Total usage | $ .70 | |
| Total Long Distance calls | | $ .70 |
| Taxes and Surcharges | | .08 |
| Total Verizon Long Distance Charges | | $ .78 |

Your calling plan(s):     Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Sat | Oct 9 | 10:08 am | Soap Lake | WA | 509 246-1559 | 1 | .10 |
| 2 | Sun | Oct 17 | 3:21 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 3 | Tue | Oct 19 | 2:56 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 4 | Tue | Oct 19 | 4:59 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 5 | Wed | Oct 20 | 3:05 pm | Susupe | NN | 670 664-2312 | 2 | .20 |
| 6 | Tue | Oct 26 | 10:11 am | Summervl | SC | 843 871-5651 | 1 | .10 |
| | | | | | | Subtotal | $ | .70 |

**Summary of Timeless TTY**

| | | | |
|---|---|---|---|
| 7 | Plan calls | | .70 |
| | **Total** | **$** | **.70** |

Timeless TTY start date: 02/17/04

| | | |
|---|---|---|
| Total Long Distance calls | $ | .70 |

Thank you for using Verizon Long Distance.

**TAXES AND FEES ON SERVICES**

| | | | |
|---|---|---|---|
| 8 | Federal excise tax at 3.00% | | .02 |
| 9 | Federal Universal Service Fee - Verizon LD | | .06 |
| | **Total** | **$** | **.08** |
| | *Verizon Long Distance charges* | *$* | *.78* |
| | **Total Verizon Long Distance Charges** | **$** | **.78** |

Nonpayment of provider charges will not result in the disconnection of your local telephone service; however, collection of unpaid charges may be pursued by the service provider.

## veri*z*on

*We never stop working for you.*

Billing Date: **02/01/05**    Page 4 of 4
Telephone Number : 208 245-1691  011113
Account Number:  03 0134 1099768705 05
How to Reach Us :  See page 2

# Verizon Long Distance

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE (continued)

Total Verizon Long Distance Charges                    $ 6.64

Your calling plan(s):    Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

|   | Day | Date | Time | Place called | | Number called | Min. | |
|---|-----|------|------|--------------|---|---------------|------|---|
| 1 | Sun | Jan 23 | 2:52 pm | Susupe | NN | 670 664-2341 | 1 | .10 |
| 2 | Sun | Jan 23 | 2:56 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 3 | Sun | Jan 23 | 2:57 pm | Susupe | NN | 670 664-2312 | 2 | .20 |
| 4 | Sun | Jan 23 | 3:35 pm | Susupe | NN | 670 664-2312 | 1 | .10 |
| 5 | Sun | Jan 23 | 3:35 pm | Susupe | NN | 670 664-2312 | 7 | .70 |
| 6 | Sun | Jan 23 | 3:43 pm | Susupe | NN | 670 664-2341 | 17 | 1.70 |
| 7 | Mon | Jan 24 | 10:50 am | Pyatt | AR | 870 427-2819 | 30 | 3.00 |
|   |     |        |          |       |    | Subtotal |    | $ 5.90 |

**Summary of Timeless TTY**

| 8 | Plan calls | 5.90 |
|---|------------|------|
|   | **Total** | **$ 5.90** |

Timeless TTY start date: 02/17/04

Total Long Distance calls                    $ 5.90

Thank you for using Verizon Long Distance.

**TAXES AND FEES ON SERVICES**

| 9 | Federal excise tax at 3.00% | .19 |
|---|------------------------------|-----|
| 10 | Federal Universal Service Fee - Verizon LD | .55 |
|   | **Total** | **$ .74** |

*Verizon Long Distance charges*                    *$ 6.64*

### Total Verizon Long Distance Charges           $ 6.64

Nonpayment of provider charges will not result in the disconnection of your local telephone service; however, collection of unpaid charges may be pursued by the service provider.

The rates for these services are not regulated by the Idaho Public Utilities Commission.



**verizon**

*We never stop working for you.*

# Verizon Long Distance

### SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE (continued)

Total Verizon Long Distance Charges                    $ 13.12

Your calling plan(s):     Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Thu | Feb 3 | 2:57 pm | Susupe | NN | 670 664-2341 | 10 | 1.00 |
| 2 | Sun | Feb 6 | 1:57 pm | Susupe | NN | 670 664-2314 | 12 | 1.20 |
| 3 | Mon | Feb 7 | 2:57 pm | Susupe | NN | 670 234-8662 | 1 | .10 |
| 4 | Mon | Feb 7 | 2:58 pm | Susupe | NN | 670 235-8662 | 1 | .10 |
| 5 | Mon | Feb 7 | 3:03 pm | Susupe | NN | 670 235-8662 | 1 | .10 |
| 6 | Mon | Feb 7 | 3:08 pm | Susupe | NN | 670 235-8662 | 1 | .10 |
| 7 | Mon | Feb 7 | 3:12 pm | Susupe | NN | 670 235-8662 | 1 | .10 |
| 8 | Mon | Feb 14 | 2:00 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 9 | Sat | Feb 19 | 8:10 pm | Moses Lake | WA | 509 750-9793 | 8 | .80 |
| 10 | Sun | Feb 20 | 7:04 pm | Sandpoint | ID | 208 263-8037 | 1 | .17 |
| 11 | Mon | Feb 21 | 2:13 pm | Capitolhl | NN | 670 322-6481 | 1 | .10 |
| 12 | Mon | Feb 21 | 2:14 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 13 | Mon | Feb 21 | 2:15 pm | Susupe | NN | 670 234-6243 | 1 | .10 |
| 14 | Mon | Feb 21 | 2:16 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 15 | Mon | Feb 21 | 2:16 pm | Susupe | NN | 670 235-9006 | 1 | .10 |
| 16 | Mon | Feb 21 | 2:18 pm | Susupe | NN | 670 234-7729 | 2 | .20 |
| 17 | Mon | Feb 21 | 2:25 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 18 | Mon | Feb 21 | 2:27 pm | Susupe | NN | 670 235-4528 | 1 | .10 |
| 19 | Mon | Feb 21 | 2:33 pm | Susupe | NN | 670 234-7739 | 1 | .10 |
| 20 | Mon | Feb 21 | 2:34 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 21 | Mon | Feb 21 | 2:36 pm | Susupe | NN | 670 235-9006 | 1 | .10 |
| 22 | Mon | Feb 21 | 2:41 pm | Susupe | NN | 670 235-4528 | 1 | .10 |
| 23 | Mon | Feb 21 | 2:52 pm | Susupe | NN | 670 234-7729 | 1 | .10 |
| 24 | Mon | Feb 21 | 2:53 pm | Susupe | NN | 670 235-9006 | 3 | .30 |
| 25 | Mon | Feb 21 | 3:31 pm | Susupe | NN | 670 235-9006 | 1 | .10 |
| 26 | Mon | Feb 21 | 3:31 pm | Susupe | NN | 670 235-9006 | 2 | .20 |
| 27 | Mon | Feb 21 | 4:40 pm | Susupe | NN | 670 235-9006 | 1 | .10 |
| 28 | Mon | Feb 21 | 7:45 pm | Susupe | NN | 670 235-9006 | 4 | .40 |
| 29 | Wed | Feb 23 | 3:20 pm | Susupe | NN | 670 234-7729 | 5 | .50 |
| 30 | Wed | Feb 23 | 3:42 pm | Capitolhl | NN | 670 323-6633 | 1 | .10 |
| 31 | Wed | Feb 23 | 3:43 pm | Susupe | NN | 670 235-9315 | 1 | .10 |
| 32 | Wed | Feb 23 | 3:46 pm | Susupe | NN | 670 235-4528 | 1 | .10 |
| 33 | Wed | Feb 23 | 3:47 pm | Agana | GU | 671 477-8064 | 4 | .40 |
| 34 | Wed | Feb 23 | 3:53 pm | Susupe | NN | 670 234-7578 | 1 | .10 |
| 35 | Wed | Feb 23 | 3:54 pm | Susupe | NN | 670 234-9797 | 4 | .40 |
| 36 | Wed | Feb 23 | 8:11 pm | Susupe | NN | 670 234-6341 | 2 | .20 |
| 37 | Thu | Feb 24 | 2:03 pm | Agana | GU | 671 477-8064 | 1 | .10 |
| 38 | Thu | Feb 24 | 2:27 pm | Agana | GU | 671 477-8065 | 2 | .20 |
| 39 | Thu | Feb 24 | 5:59 pm | Capitolhl | NN | 670 322-1823 | 1 | .10 |
| 40 | Thu | Feb 24 | 5:59 pm | Capitolhl | NN | 670 322-1823 | 8 | .80 |
| 41 | Sun | Feb 27 | 4:32 pm | Susupe | NN | 670 234-6925 | 2 | .20 |
| 42 | Sun | Feb 27 | 6:45 pm | Capitolhl | NN | 670 322-1823 | 1 | .10 |
| 43 | Sun | Feb 27 | 6:46 pm | Capitolhl | NN | 670 322-1823 | 7 | .70 |
| 44 | Mon | Feb 28 | 5:49 pm | Susupe | NN | 670 236-9820 | 6 | .60 |
| 45 | Mon | Feb 28 | 5:56 pm | Susupe | NN | 670 236-9820 | 1 | .10 |
| 46 | Mon | Feb 28 | 5:58 pm | Susupe | NN | 670 236-9766 | 1 | .10 |
| 47 | Mon | Feb 28 | 7:16 pm | Susupe | NN | 670 236-9767 | 1 | .10 |
| 48 | Mon | Feb 28 | 7:17 pm | Susupe | NN | 670 236-9766 | 4 | .40 |
| | | | | | | Subtotal | | $ 11.67 |



**veri**z**on**

*We never stop working for you.*

Billing Date: **04/01/05**    Page 4 of 6
Telephone Number : 208 245-1691  011113
Account Number: 03 0134 1099768705 05
How to Reach Us :  See page 2

# Verizon Long Distance

The following long distance charges appear on your Verizon bill as a service to
Verizon Long Distance.

## LONG DISTANCE HELPFUL NUMBERS

| | |
|---|---|
| Questions about your long distance bill | 1 877 483-5305 |
| Trouble with your long distance service | 1 800 483-8494 |
| Changes to your long distance service | 1 888 483-7547 |
| Other long distance questions | 1 888 483-7547 |
| Visit our Website at | verizonLD.com |

## SUMMARY OF CHARGES FOR VERIZON LONG DISTANCE

| Domestic | Amount |
|---|---|
| Direct Dialed | 3.40 |
| Total usage | $ 3.40 |

| | |
|---|---|
| Total Long Distance calls | $ 3.40 |
| Taxes and Surcharges | .44 |
| Total Verizon Long Distance Charges | $ 3.84 |

Your calling plan(s):    Timeless TTY

**Timeless TTY**

**Direct Dialed Calls**

| | Day | Date | Time | Place called | | Number called | Min. | |
|---|---|---|---|---|---|---|---|---|
| 1 | Wed | Mar 2 | 3:00 pm | Susupe | NN | 670 236-9767 | 1 | .10 |
| 2 | Wed | Mar 2 | 3:26 pm | Susupe | NN | 670 236-9766 | 1 | .10 |
| 3 | Wed | Mar 2 | 3:44 pm | Susupe | NN | 670 235-9315 | 1 | .10 |
| 4 | Wed | Mar 2 | 7:40 pm | Susupe | NN | 670 236-9766 | 1 | .10 |
| 5 | Sun | Mar 6 | 3:18 pm | Susupe | NN | 670 236-9767 | 1 | .10 |
| 6 | Sun | Mar 6 | 3:54 pm | Gualo Rai | NN | 670 233-6952 | 2 | .20 |
| 7 | Sun | Mar 6 | 3:59 pm | Susupe | NN | 670 235-9315 | 1 | .10 |
| 8 | Sun | Mar 6 | 4:00 pm | Susupe | NN | 670 235-4529 | 2 | .20 |
| 9 | Sun | Mar 6 | 5:03 pm | Susupe | NN | 670 235-9315 | 2 | .20 |
| 10 | Sun | Mar 6 | 5:05 pm | Susupe | NN | 670 235-7190 | 3 | .30 |
| 11 | Sun | Mar 6 | 5:08 pm | Susupe | NN | 670 234-8946 | 2 | .20 |
| 12 | Sun | Mar 6 | 5:10 pm | Gualo Rai | NN | 670 233-7850 | 2 | .20 |
| 13 | Sun | Mar 6 | 5:12 pm | Susupe | NN | 670 235-4529 | 1 | .10 |
| 14 | Sun | Mar 6 | 5:29 pm | Susupe | NN | 670 235-4529 | 6 | .60 |
| 15 | Sun | Mar 13 | 2:00 pm | Susupe | NN | 670 236-2950 | 8 | .80 |
| | | | | | | Subtotal | | $ 3.40 |

**Summary of Timeless TTY**

| | | |
|---|---|---|
| 16 Plan calls | | 3.40 |
| **Total** | | **$ 3.40** |

Timeless TTY start date: 02/17/04

| | |
|---|---|
| Total Long Distance calls | $ 3.40 |

Thank you for using Verizon Long Distance.

The following is transmitted by both FAX and US mail:

Jan 25, 2005

AG, Commonwealth of the Northern Mariana Islands
Caller Box 10007, Capitol Hill
Saipan, MP 96950

Gentlemen:

Reference is made to CNMI Superior Court Case No 96-1320 (in which the case file shows post office receipts allegedly from me showing that I received service on the complaint and its amendments by certified mail), my written and telephone communications on this matter to your office from Sep 12, 2004 on to this date, my attached memo for record (enclosures C and D), and my request from me to file a criminal complaint against the person or persons whom had prepared the receipts, all of which I deem to be forgeries and involving fraud to prompt a $139,000 default judgment against me in the Superior Court case.

It is my understanding that your office has undertaken an investigation commenced on or about Sep 12, 2004 on my request to file criminal charges against the party or parties producing the alleged mail receipts. In my conversation with Mr Buckingham of your office, I noted the possibility that the alleged mail receipts involved could become lost or damaged in the course of your investigation. I strongly recommended that your office could make xerox copies of the original receipts and have a notary certify them as certified true copies of an original. These copies can be used in your investigation while the actual receipts can be safeguarded and secured to prevent loss or damage. I hope that this security process was implemented.

I also suggested to Mr Buckingham that Postal inspectors are available in the US to precisely investigate matters such as my complaint. This process could be done fairly quickly and involve little expense to the CNMI (although each passing day since Sep 12, 2004 goes to make it more possible that the Postal records or people will be unable to determine what happened). Finally, I suggested that this whole thing can be referred to the FBI as it involves interstate fraud and possible conspiracy to defraud both me and the CNMI (I note that the CNMI has already paid out over $100,000 in this matter plus the judgment of $139,000 against me).

In the Supreme court decision on this case, it appears that plaintiff argued that under the CNMI indemnification act, the CNMI should pay the $139,000. The court said that since I allegedly had not asked for any indemnification, none is due (apparently, the court said that if I had asked for indemnification, the plaintiff would have been paid the $139,000 judgment). Of course, it is totally wrong (and I would suggest that it is absurd and virtually impossible to believe) that "I had not asked for indemnification." The truth is that my attorney, the AG, had not informed me on what had happened or was happening on this case, despite my many contacts and persistence with the AG on this matter.

In any case, in accordance with the Supreme Court decision, I sent your office the attached letter (enclosure A) on Sep 12, 2004 by both fax and mail requesting indemnification. Mr Buckingham confirmed by telephone conversation that he had seen my fax. As I desired something in writing on this matter, I wrote the attached letter (enclosure B) on Nov 26, 2004 asking for a formal confirmation. I never received a reply.

Again, I ask for a formal confirmation on this request from me for indemnification of $139,130 and what your response is to my request. I will only note here that if this request is not honored promptly, I am continuing to incur expenses for phone calls, postage, etc, plus much pain and suffering. I hope that your office with address these needs promptly. Thanking you, I am,

Your very truly,

Robert D. Bradshaw
PO Box 473, Calder, ID 83808, Phone 208-245-1691

Exhibit B
1-6

# Ex-OPA counsel wins suit

**By Ferdie de la Torre**
*Variety News Staff*

A LAWYER won his lawsuit for wrongful termination of his employment against the CNMI government and then acting Public Auditor Robert D. Bradshaw.

A jury rendered a verdict Friday afternoon finding the CNMI government and Bradshaw liable to repay plaintiff Robert A. Bisom a total of $249,300 in damages.

The six-man jury, however, did not hold former Public Auditor Scott Tan liable to pay any damages to Bisom.

As against defendant CNMI government, the jurors awarded Bisom $100,000 for breach of contract and $10,300 for wrongful termination.

As against defendant Bradshaw, the jurors awarded plaintiff $55,000 for intentional infliction of emotional distress, $18,000 for discharge for political reasons, $8,000 for due process violations, $8,000 for due process violations of plaintiff's property interest, and $50,000 in punitive damages.

Supreme Court Associate Justice Alexandro C. Castro, as judge pro tem, presided over the three-week jury trial in the Superior Court. Assistant Attorney General L. David Sosebee represented the defendants while Jay H. Sorensen served as counsel for Bisom.

Sosebee said the government may appeal the case.

Bisom filed the lawsuit in 1996 against the government, Tan, and Bradshaw after he was terminated from his employment with the commonwealth for alleged political and religious reasons.

Bisom used to serve as legal counsel for the Office of the Public Auditor.

Sorensen in an earlier interview said that after Bisom was terminated, the plaintiff was offered job by then Senate president and now Lt. Gov. Jesus R. Sablan.

Sorensen added that on the day Bisom took the job, there was a change of leadership in the Senate and Sablan's decision was subsequently overturned.

The plaintiff said his termination was politically motivated because he questioned the legality and propriety of a 'single audit' as Bradshaw had wanted to conduct.

Bisom added that he was terminated because he was perceived as being a Jew.

He called opponent of former Gov. Lorenzo I. DeLeon Guerrero as well as a political ally of the previous public auditor.

Bisom stated that Bradshaw also terminated him on account of his

---

# CPA posts $360,000 earnings in January

**By Haidee V. Eugenio**
*Variety News Staff*

THE COMMONWEALTH Ports Authority (CPA) realized total of some $359,332 worth of earnings in January from both the airport and seaport divisions.

In its latest report submitted by the CPA Board of Directors last week, the aviation division's operating revenues climbed up by



Roman T. Tudela

senger by 231 percent, entry fee by 36 percent, and home port fee by 54 percent.

FY TD earnings for the seaport division went up by 34 percent to $1,676,063.

---

STANFORD RESORT HOTEL
SAN VICENTE HILL - SAIPAN

$29.00/Night
DOUBLE OCCUPANCY

• Cable TV
• Self Iron/Iron Board

(With Kitchenette and Daily Hotel Service)

Dinner B.B.Q BUFFET by Reservation
Tel: (670) 235-8500/4 • Fax: (670) 235-3042

One Month: $499
2 weeks: $300



Healthy Families-Strong Community Symposium

First Lady's Vision
FOUNDATION
invites the public to

Bridge the Gap II
FUTURE'S HEALT

---

The Law Offices of

# GORMAN & GAVRAS

PERSONAL INJURY AND AUTO ACCIDENTS

Insurance Claims

Employment Discrimination - EEOC and Title VII

Business and Civil Litigation

## FIRST CONSULTATION IS FREE

2nd Flr. J&G Bldg., Beach Rd. (across Lollipops)
Garapan, Saipan
Tel. (670) 323-2050 / 323-0404
Fax (670) 323-2003
Email: legal@gormangavras.net

---

# Justices affirm trial court's judgment in Bisom lawsuit

By Ferdie de la Torre
Variety News Staff

THE CNMI Supreme Court on Friday affirmed the trial court's judgment over legal issues pertaining to a lawyer's lawsuit for wrongful termination of his employment against the government

and then acting Public Auditor Robert D. Bradshaw.

The high court ruled that the trial court did not err in limiting the scope of damages by its decision denying admission into evidence of attorney Robert A. Bisom's calculations of his future

loss of income.

The high tribunal determined that the trial court did not err in limiting Bisom's closing argument on the subject of his future income loss.

The high court also found that the trial court did not err in denying Bisom's request for determination to compel the government to indemnify Bradshaw.

The lower court decided such motion after it found no evidence that Bradshaw made a request for indemnification.

The high tribunal ruled that none of the cases cited by Bisom convinced him that the trial court abused its discretion by disallowing the proffered testimony, exhibit or argument

Bisom made certain assumptions, namely, that he would be getting 5 percent raises every year as a lawyer until he retired at age 65.

Bisom's calculations also in-

clude a month stipend for living expenses.

"There is no showing on the record before this court how or why Bisom arrived at these figures," said the high court ruling.

penned by Associate Justice John A. Manglona and concurred by Justices Pro Tempore Pedro M. Atalig and Timothy H. Bellas.

With absolutely no foundation for the assumption that his salary would increase 5 percent per year until he retired, Bisom's projection is nothing more than bare speculation, the justices said.

They said that before the government is obligated to defend and indemnify an employee, an employee must request in writing, at least five days before an answer to the complaint must be filed, that the government pay for his defense or to defend him.

"The trial court determined that he did not occur, and we will not disturb a factual determination made by the trial court unless.