Jay H. Sorensen
c/o Shanghai
P.O. Box 9022
Warren, MI 48090-9022
Telephone: 86-21-5083-8542
Fax: 86-21-5083-8542

Attorney Appearing in Pro Se

F I L E D
Clerk
District Court

FEB - 8 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN MARIANA ISLANDS

ROBERT D. BRADSHAW,               )
                                  )
              Plaintiff,          )   Case No. CV 05-0027
     v.                           )
                                  )   **MEMORANDUM IN OPPOSITION**
COMMONWEALTH OF THE               )   **TO PLAINTIFF'S MOTION FOR**
NORTHERN MARIANA ISLANDS, et al.,) **PARTIAL SUMMARY JUDGMENT**
                                  )
          Defendants.             )   Date: March 15, 2007
_____)   Time: 9:00 a.m.

1

# TABLE OF CONTENTS

Table of Authorities ……………………………………………….. iii

Introduction ………………………………………………………. 1

**Item I:** SEVERAL REASONS  REQUIRE DENIAL OF THE REQESTED
 FINDING THAT THE 120 DAY LIMITATION VOIDED EFFECTIVE
SERVICE ………………………………………………………….. 2
A.  The Rooker-Feldman Doctrine bars jurisdiction to consider the issue ……. 2
B.  The material facts and law do not support the finding sought. …………… 6

**Item II:**  SERVICE OF THE FIRST AMENDED COMPLAINT WAS NOT
DEFICIENT, AND THE POINT IS NOT MATERIAL IN ANY EVENT……. 7

**Item III:**  SERVICE OF THE SECOND AMENDED COMPLAINT WAS
NOT ILLEGAL, AND THE POINT IS NOT MATERIAL IN ANY EVENT…… 9

**Item IV:**  PLAINTIFF HAS NOT SHOWN HE IS ENTITLEDTO ANY
JUDGMENT OR ANY OF THE REQUESTED FINDINGS REGARDING
FRAUD ON THE PART OF BISOM OR SORENSEN ………………………… 11
A.  *Rooker-Feldman* denies jurisdiction to a decide the matter.  ……………… 11
B.  There are many genuine issues of material fact.  ………………………….. 12
C.  Direct evidence submitted in opposition to the motion requires it to be denied 14
D.  The findings sought are not material………………………………………… 15
E.  The veracity of Bradshaw's contentions should be questioned………………… 15

**Item V:** THIS COURT EITHER CAN NOT OR SHOULD NOT ADDRESS
THIS ISSUE, WHICH IS NOW BEFORE THE CNMI SUPREME COURT …… 16

**Item VI:**  BRADSHAW HAS NOT PROVEN THAT HE IS ENTITLED TO
RECOVER FOR MALICIOUS PROSECUTION AGAINST SORENSEN ………. 18

**Item VII:** BRADSHAW IS NOT ENTITLED TO THE FINDING AND
LEGAL CONCLUSION HE SEEKS ……………………………………….. 20

**Item X:**  BRADSHAW CANNOT OBTAIN REVERSAL OF THE
JUDGMENT RENDERED AGAINST THE CNMI ………………………… 22

CONCLUSION ………………………………………………………….. 25

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29

1

## TABLE OF AUTHORITIES

2

<u>CASES</u>

3

*Bianchi v. Rylaarsdam*, 334 F.3d 895 (9th Cir. 2003)................................................ 3,21

4

*Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995) ................................................    3

5

*Bruley v. Lincoln Property Co.*, 140 F.R.D. 452 (D.C. Colo. 1991) ...........................    7

6

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986)............    1

7

*Cowles v. Carter*, 115 Cal. App. 3d 350, 171 Cal. Rptr. 269 (1981)............................ 20

8

*D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). 2,3,4,

9
                                                                                12,16,211,22

10

*Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026 (9th Cir 2001) ....................    4

11

*Dedham Water Co., Inc. v. Cumberland Farms Dairy, Inc.*, 972 F.2d 453 (1st Cir. 1992) ... 10

12

*Dubinka v. Judges of the Sup. Ct. of the State of Cal. for the Co. of Los Angeles,*

13

    23 F.3d  221 (9th Cir. 1994)........................................................    3

14

*G.C & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096 (9th Cir. 2003)........................  5,6

15

*Garside v. Osco Drug, Inc.*, 895 F.2d 46 (1st Cir 1990) .........................................  13

16

*Green v. City of Tucson*, 255 F.3d 1086 (9th Cir. 2001)(en banc).............................   17

17

*Hydranautics v. Filmtec Corp.*, 204 F.3d 880 (9th Cir. 2000 ), .................................  20

18

*In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc)......................................  3

19

*JMM Corp. v. Dist. of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004) .............................   17

20

*Noel v. Hall*, 341 F.3d 1148 (9th Cir 2003)........................................................    4

21

 *MacKay v. Pfeil*, 827 F.2d 540 (9th Cir. 1987) ...................................................    6

22

*McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir.1989). ...............................................   14

23

*Mahabir v. Ashcroft*, 387 F.3d 32 (1st Cir. 2004) ...............................................   21

24

*Martinez v. Stanford*, 323 F.3d 1178 (9th Cir. 2003) ...........................................   13

25

*Maymo-Melendez v. Alvarez-Ramirez*, 364 F.3d 27 (1st Cir. 2004) .........................   17

26

*Mitchell v. Estate of Hillblom*, 1997 MP 30, 5 N.M.I. 136 (1997) ...................... 18,19,20

27

*Robinson v. Ariyoshi*, 754 F.2d 1468 (9th Cir. 1985).......................................    6

28

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362(1923)....2,3,4,12,16,21,22

29

*Schmitt v. Schmitt*, 324 F.3d 484 (7th Cir. 2003) ...............................................    6

*Sirok v. Rotec Engineering*, 1 CR 1065 (D.C. N.M.I. 1984) ................................ 17

*State Highway Commission v. Faves*, 365 P.2d 97 (Or. 1961) .......................... 10

*T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626 (9th Cir. 1987) ...... 14

*Taylor v Sawyer*, 284 F.3d 1143 (9th Cir. 2002) ............................................ 21

*U.S. v. Copacabana, Inc.*, 17 F.R.D. 297 (D.C.N., 1955) ................................... 2

*Younger v. Harris*, 401 U.S.37, 91 S.Ct. 746, 27 L.Ed.2d 669(1971) ........................ 17

*Worldwide Church v. McNair*, 805 F.2d 888 (9th Cir. 1986)................................. 3,4,5

STATUTES AND RULES

28 United States Code § 1257 ..................................................................... 3

28 United States Code § 1331 ..................................................................... 3

Rule 56(c), Federal Rules of Civil Procedure .................................................. 1

Rule 56(d), Federal Rules of Civil Procedure .................................................. 2

Rule 60(b), Commonwealth of Rules of Civil Procedure ....................................
11

OTHER AUTHORITIES

RESTATEMENT OF JUDGMENTS, §115, com. b ........................................ 23

RESTATEMENT (SECOND) OF TORTS, §653 ............................................ 19

RESTATEMENT (SECOND) OF TORTS, § 674 ............................................ 19

RESTATEMENT (SECOND) OF TORTS, § 674, cmt d .................................... 19

RESTATEMENT (SECOND) OF TORTS, § 674, cmt. j .................................... 20

73 Am.Jur.2d, Stipulations, §6 .................................................................. 10

*Black's Law Dictionary* 1100 (8th ed.2004) .................................................. 21

10B Wright, Miller & Kane, Federal Practice & Procedure, §2737........................... 2

## Introduction

On motion for summary judgment, the moving party has the initial burden of demonstrating that as to any issue he seeks to have adjudicated in his favor, that "…there is no genuine issues of any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In what has become a leading case on the standards for summary judgment procedure, *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed. 2d 265 (1986), the court said: "Of course, a party seeking summary judgment *always bears the initial responsibility of informing the district court of the basis for its motion*, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." 477 U.S. at 323. (emphasis added). While that case holds that a nonmoving party must come forward with affirmative proof to avoid judgment on an issue on which it will have the burden at trial, the decision makes it clear that none of the changes to Rule 56 in any way diminished the initial burden on the moving party. 477 U.S. at 325-326

As will be demonstrated below, Bradshaw has failed to carry that burden. In addition, Rule 56 requires that the moving party show that he is entitled to judgment "as a matter of law." Thus, he has the initial burden of demonstrating not only the material facts, but also the law that applies, and how its application in this instance requires that plaintiff must prevail On this score, plaintiff has failed as well, as the moving papers provide almost no legal authority whatever supporting his position on any of the twelve

issues presented.        Another point of general application to all the "items" presented in this motion is that the motion seeks to have a whole array of facts established by the court, effectively giving Bradshaw findings that will establish liability for him on all his theories, so that all that is left for the jury to determine is the amount of damages. However, even if it assumed that all these things are proven to the point that there are no genuine issues of material fact, the jury would still have to be appraised by testimony of what happened; so there would be little, if any, savings of time.  Moreover, the findings sought are so broad and diverse, that the task of identifying them and determining how they would be articulated and imparted to the jury in an order is just not "practicable," as that term is used in Rule 56(d), the basis of partial summary judgment.  "[I]f the court determines that entering partial summary judgment by identifying the facts that no longer may be disputed would not materially expedite the litigation, it may decline to do so." 10B Wright, Miller & Kane, Federal Practice & Procedure, §2737, n. 13, citing *U.S. v. Copacabana, Inc.*, 17 F.R.D. 297, 298 (D.C.N., 1955), (holding where partial summary judgment under rule 56(d) was sought, it was "not practicable to enter the order sought by plaintiff on this motion.")

Item I:  SEVERAL REASONS  REQUIRE DENIAL OF
THE REQUESTED FINDING THAT THE 120 DAY
LIMITATION VOIDED EFFECTIVE SERVICE

A.  The Rooker-Feldman Doctrine bars jurisdiction to consider the issue.

        The *Rooker-Feldman* doctrine evolved from the Supreme Court's decision in *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983) and

*Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), and it rests on the principle that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings." *Feldman*, 460 U.S. at 482; *Rooker*, 263 U.S. 416.  The doctrine is not constitutionally based, but "arises out of a pair of negative inferences drawn from two statutes: 28 U.S.C. § 1331, which establishes the district court's original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States; and 28 U.S.C. §1257, which allows Supreme Court review of final judgments or decrees rendered by the highest court of a State in which a decision could be had." *In re Gruntz*, 202 F.3d 1074, 1078 (9th Cir. 2000) (en banc) (internal quotations omitted); *Dubinka v. Judges of the Sup. Ct. of the State of Cal. for the Co. of Los Angeles,* 23 F. 3d 218, 221 (9th Cir. 1994).

The *Rooker-Feldman* doctrine prohibits a federal district court from hearing two types of claims.  First, a federal district court cannot engage in direct appellate review of state court determinations that have previously been adjudicated in any state court.  *Worldwide Church v. McNair*, 805 F.2d 888, 890 (9th Cir. 1986)(federal district courts have "no authority to review the final determinations of a state court in judicial proceedings.")  Second, a district court may not adjudicate claims that are "inextricably intertwined" with the merits of a judgment rendered in a state court proceeding.  *Feldman*, 460 U.S. at 483, n. 16.  Were a district court to hear a claim that was inextricably intertwined with one previously decided in state court, "then the District Court is in essence being called upon to review the state court decision.  This the District Court may not do." *Id.*

1    *Rooker-Feldman* prohibits a federal district court from exercising subject matter

2 jurisdiction over a suit that is a de facto appeal from a state court judgment. *Bianchi v.*

3 *Rylaarsdam*, 334 F.3d 895, 898 (9th Cir. 2003). "Stated plainly, *Rooker-Feldman* bars any suit

4 that seeks to disrupt or "undo" a prior state-court judgment, regardless of whether the state-

5 court proceeding afforded the federal-court plaintiff a full and fair opportunity to litigate her

6 claims." *Id.* at 900. Thus, if a plaintiff's constitutional or federal claims are for the purpose of

7 attacking prior state court rulings, then the district court is without jurisdiction to decide them.

8 See, *Branson v. Nott*, 62 F.3d 287, 291 (9th Cir. 1995)(finding that plaintiff's "1983 claims

9 amount [] to nothing more than an impermissible collateral attack on prior state court

10 decisions."); *McNair*, 805 F.2d at 890, 892 (noting the application of the *Rooker-Feldman*

11 jurisdictional bar in many contexts, including §1983 and holding that the district court lacked

12 jurisdiction over that §1983 action challenging state court decisions as unconstitutional because

13 the federal claims were inextricably intertwined with state court's application of law to the

14 particular facts of the case.)

15    If the case brought in federal court seeks only in part to revisit issues previously

16 determined in state court, then that part must be segregated and excised from the case, since the

17 district court is without jurisdiction as to those issues.

> [a] federal district court dealing with a suit that is, in part, a
> forbidden de facto appeal from a judicial decision of a state
> court must refuse to hear the forbidden appeal. As part of
> that refusal, it must also refuse to decide any issue raised in
> the suit that is "inextricably intertwined" with an issue
> resolved by the state court in its judicial decision.

*Noel v. Hall*, 341 F.3d 1148, 1158 (9th Cir 2003).

The *Rooker-Feldman* doctrine has been held to apply to the decisions of lower state courts, even those interlocutory in nature. *Doe & Assocs. Law Offices v. Napolitano*, 252 F.3d 1026, 1030 (9th Cir 2001; *G.C & K.B. Investments, Inc. v. Wilson*, 326 F.3d 1096, 1103 (9th Cir. 2003). Thus, even though a decision is not yet finally decided by a state's highest court, the doctrine applies. *McNair*, 805 F.2d at 893, n.3 ("We agree with the Second and Fifth Circuits that the *Feldman* doctrine should apply to state judgments even though the state court appeals are not final.")

In Plaintiff's Item I he asks: "The Court should find that the 96-1320 complaint was null and void on apr 5, 1997, for purposes of law as plaintiff did not make service within the required 120 days and the SC did not dismiss the action or extend the deadline." (Memorandum of Points and Authorities in Support of Motion for Partial Summary Judgment, p. 23) This issue is one that Bradshaw raised in the context of his motion to vacate the judgment in Bisom v. CNMI et al., Superior Court Civil Action No. 96-1320, and is at issue again in the appeal of the order granting his motion, Appeal No. 06-0006 GA, now pending before the CNMI Supreme Court.[1] The Superior Court discussed the point in the Order Granting Robert Bradshaw's Motion to Vacate Judgment entered December 29, 2005.(hereinafter SC Vacate Order). In footnote 2 of the order, it says that it appears that service would have been untimely, but then dismisses the point as moot in light of the finding that the mailings did not constitute service. [SC Vacate Order, p.9, n.2, attached as Exhibit J

to Affidavit of Robert D. Bradshaw in Support of Plaintiff's Motion for Partial summary Judgment]  The issue is also covered in the briefs filed in the appeal of that order. [Appellant's Opening Brief, p.16, n.4, Exhibit S to Bradshaw Affidavit; Brief of the Appellee, p, 10-11, Exhibit AA to Bradshaw Affidavit].

Whether a claim is "inextricably intertwined' with a state court decision is said to depend on "whether there has already been actual consideration of and decision on the issue presented.  If consideration and decision have been accomplished, action in federal court is an impermissible appeal from the state court decision." *Wilson*, 326 F.3d at 1103-1104, quoting *Robinson v. Ariyoshi*, 754 F.2d 1468, 1472 (9th Cir. 1985), vacated on other grounds, 477 U.S. 902(1986).  Accordingly, because this issue has been addressed by the Superior Court and is being considered again by the Supreme Court, it is one "inextricably intertwined" with the CNMI case, which should soon be finalized.

*Rooker-Feldman* has been held to apply in cases presenting this issue. *MacKay v. Pfeil*, 827 F.2d 540 (9th Cir. 1987)( *Rooker-Feldman* bars subject-matter jurisdiction over federal claim that Alaska Superior Court wrongly found it had personal jurisdiction over plaintiff); *Schmitt v. Schmitt,* 324 F.3d 484 (7th Cir. 2003)(*Rooker-Feldman* bars subject-matter jurisdiction over federal claim that state court lacked personal jurisdiction.).

B.  The material facts and law do not support the finding sought.

---

[1]  Oral argument of that appeal is scheduled for February 13, 2007.

When the second amended complaint was filed on May 30, 1997, an amended summons for Bradshaw was issued at the same time.  [See, Certificate of Record by Clerk filed March 15, 2006, attached to Bradshaw Affidavit as Exhibit B, first page]  Thus, service in June, 1997 was well within the 120 day window for service under Com.R.Civ.P. 4(m).

Additionally, on December 31, 1996 the Attorney General, on behalf of all defendants, removed Civil Action 96-1320 to this federal district court. It was then remanded back to superior court on March 27, 1997. [Certificate of Record by Clerk filed March 15, 2006, Bradshaw Affidavit Ex. B]  Since the superior court lost jurisdiction and its summons was no longer valid during that time, the three month period during which the case was removed should not counted in the 120 day limitation on service.  See, *Bruley v. Lincoln Property Co.*, 140 F.R.D. 452 (D.C. Colo. 1991).

Item II:  SERVICE OF THE FIRST AMENDED
COMPLAINT WAS NOT DEFICIENT, AND
THE POINT IS NOT MATERIAL IN ANY EVENT

On this issue, Bradshaw asks that there be a holding: "Bisom's 1[st] amended complaint was deficient and void on May 20, 1997 and could not have later served any basis for service of process/avoiding service on Bradshaw." (Memorandum, p. 23).

The first thing to note is that the issue of whether Bradshaw had been properly served was the subject of Bradshaw's motion to vacate in the Superior Court, which was decided in his favor. [Vacate Order, Exhibit J to Bradshaw's affidavit].  That order is now the subject of the appeal pending before the Supreme Court.  Therefore, as with the first issue discussed above, a federal district court may not entertain that issue under *Rooker-Feldman*.

Even if there were jurisdiction to hear it, the finding would not be warranted. The argument that Bradshaw makes here is that the written Stipulation re Motions; Order Thereon filed on May 20, 1997 had another term to it that was not expressed, but, he argues, necessarily implied—that the amended complaint was simultaneously dismissed. Why this assumption logically follows is not explained, except to say "…per se, that was the reality of the order." (Memorandum, p.2) No legal authority is cited to support this proposition, other than to point to what happened regarding his own attempts to served Bisom by publication in this case. However, in this case, as noted in the Order re Motions Heard on June 8, 2006, filed on June 12, 2006, Bradshaw's Amended Complaint was dismissed by order on February 22, 2006, and the second amended complaint was not filed until March 30, 2006. This meant that during the entire four weeks that summons was published, there was no operative complaint on file. This was not the case in May, 1997 when the amended complaint in Bisom v. CNMI, et al. (Superior Court Civil Action No. 96-1320) was sent to Bradshaw's Elk, Washington address. As per the terms of that stipulation, Bisom's amended complaint remained in place, subject only to an agreement to file a second amended complaint by May 30, 1997. [copy of the stipulation is attached to Bradshaw's affidavit as Exhibit H].

Arguably, after May 30, 1997, Bisom's amended complaint would have been subject to dismissal for failure to have complied with the ordered stipulation. However, by that time, Bradshaw had already refused acceptance of the package containing summons and the amended complaint. This is proven by the copy of the envelope that contained those papers, which were returned to Sorensen, showing they were unclaimed on May 5, May 14 and May 24, 1997. [See last page of Ex. N to Bradshaw Affidavit].

1    Even if there were jurisdiction to hear this issue, and even if the point had some merit,

2    it is not material in any event. This is because the Superior Court's decision in 1997 that there

3
4    was personal jurisdiction over Bradshaw was not made solely on the basis that he had been

5    properly served with the amended complaint. There was also subsequent service of the

6    second amended complaint in June, 1997. [See Certificate of Service showing certified mail

7    sent to

8
9    Bradshaw on June 4, 1997, attached as Exhibit B to Exhibit L to Bradshaw Affidavit]. And,

10   beyond that, there were two other equally adequate basis for personal jurisdiction over

11   Bradshaw cited by the court, namely:

12

13              ...
                2. The Office of the Attorney General has appeared
14        on behalf of Robert D. Bradshaw as his attorney or record.
                3. Defendant, Robert D. Bradshaw, has waived any
15        potential challenge to insufficiency of service of process by
          his previously bringing a motion to dismiss without joining
16        such motion.

17
     Order Denying Motion to Remove Case from Trial Docket, filed February 22, 2000, p.2.
18
19   [Exhibit X to Bradshaw Affidavit].

20

21              Item III:   SERVICE OF THE SECOND AMENDED
22                          COMPLAINT WAS NOT ILLEGAL, AND THE
                            POINT IS NOT MATERIAL IN ANY EVENT
23
24        Bradshaw here asks for a finding that service or attempted service on him after May

25   30, 1997 was illegal, meaning that it was void and of no legal effect. (Memorandum, p. 23).

26
     Although it is not spelled out very clearly in the one paragraph devoted to the point in the
27
28   moving papers, the logic behind this appears to be as follows: one of the terms of the

29

1    Stipulation re Motions; Order Thereon of May 20, 1997 is: "Plaintiff will file and serve the
2    second amended complaint and amended summons on or before May 30, 1997." [Exhibit H
3
4    to Bradshaw Affidavit]. However, the second amended complaint was not sent by mail to
5    Bradshaw until June 3, 1997. [Exhibit B to Exhibit L of Bradshaw Affidavit]. Hence, since it
6    was mailed four days after the stated deadline, the attempt to serve him was a nullity[2].
7
        Again, since this deals with the issue whether personal service on Bradshaw was
8
9    effective, it is, as the last item offered by this motion, barred from consideration by a federal
10   district court due to the fact the issue has been decided in the commonwealth courts and
11   review in the nature of appeal is being sought here. *Rooker-Feldman* disallows such review.
12
     Also, like the issue just discussed above, because there were two other independent reasons
13
14   given by the Superior Court in its order of February 22, 2000 dealing with jurisdiction over
15   the person of Robert D. Bradshaw, this point is not a material one.
16
        Addressing the substance of the argument, it relies on inferring a term to the
17
18   stipulation that is not expressed—namely, that failure to make the May 30, 1997 deadline
19   would, ipso facto, forever preclude any effective service on Bradshaw. This interpretation is
20   not warranted. "As a general rule, stipulations should receive a fair and liberal construction,
21   consistent with the apparent intention of the parties, the spirit of justice, and the furtherance of
22
23   fair trials upon the merits, rather than a narrow and technical one calculated to defeat the
24   purposes of their making." 73 Am.Jur.2d, Stipulations, §6. Stipulations are restricted to the
25

26   [2] The second amended complaint was filed on May 30, 1997, the deadline date. [Exhibit
27   E to Bradshaw Affidavit]. Also, copies of the second amended complaint and amended
     summons were served the same day on D. Douglas Cotton, the Assistant Attorney
28   General handling the case.
29

1  intent manifested by the parties in the agreement. *Dedham Water Co., Inc. v. Cumberland*

2  *Farms Dairy, Inc.*, 972 F.2d 453 (1st Cir. 1992).   "The language of a stipulation,…will not be

3
4  so construed so as to give it the effect of a waiver of a right not plainly intended to be

5  relinquished." *State Highway Commission v. Faves*, 365 P.2d 97, 102 (Or. 1961).

6      Since the stipulation entered by the parties was for the purpose of avoiding a contested

7  motion, saving time and setting a time frame, a waiver of all rights to effect service on a party

8
9  by any date after the date set is not warranted, and should not be inferred.  The interpretation

   that Bradshaw urges would not be in the spirit of justice and in furtherance of trials on their

10
11  merits, but rather a narrow construction and technical.

12

13
           Item IV:  PLAINTIFF HAS NOT SHOWN HE IS ENTITLED
14                    TO ANY JUDGMENT OR ANY OF THE
15                    REQUESTED FINDINGS REGARDING FRAUD ON
                      THE PART OF BISOM OR SORENSEN
16

17      The moving papers ask for several findings: 1. That Bisom[3] "supplied' postal return

18  receipts to the superior court that were contrary to other documents he later "submitted.;"  2.

19  That Bisom/Sorensen prepared the postal receipts "submitted" to the court;  3. That the postal

20
21  receipts submitted, or the unclaimed certified mailing envelopes, or both, are fraudulent;  4.

22

23

24  _____

25  [3] The "Petition to the Court" on page 23 of the memorandum asks for findings as to
26  Bisom; yet the argument portion of the memorandum discusses things done by Sorensen.
    Bradshaw apparently  takes the position that both parties are liable for whatever the other
27  did, no matter who did what.  However, no authority for this is cited.
28

29

1   That the default entered against him was premised on the filing of the fraudulent postal

2   receipts, and, hence, caused Bradshaw injury. (Memorandum, pp. 23-24).

3

4   A. _Rooker-Feldman_ denies jurisdiction to a decide the matter.

5   Again, this is an issue which was presented to the superior court in the context of

6   Bradshaw's motion to vacate the judgment. In fact, it was the central point, inasmuch as he

7   based the motion on allegations of fraud. Com.R.Civ.P. 60(b) authorizes a court to vacate a

8

9   judgment on the grounds of fraud, misrepresentation or other misconduct of an adverse party.

10   In the Order Granting Robert Bradshaw's Motion to Vacate Judgment of December

11   29, 2005, the issue is discussed at some length. [Exhibit J to Bradshaw Affidavit. pp. 15-16.]

12   The order rejects Bradshaw's position that fraud had been proven, or that it was a factor in the

13

14   default having been entered against him. Noting that the postal return receipts are not

15   mentioned in the February 22, 2000 order, or the subsequent judgment, nor any other order in

16   the case, it concludes: "Thus, while the evidence of mail fraud warrants a separate criminal

17   investigation, it has no bearing on the outcome of this case. Although Com. R. Civ. P. 60(b)

18   allows a court to vacate a judgment on grounds of fraud, Bradshaw has not shown that the

19

20   judgment was grounded in fraud." (Ex. J, p.16)   With this motion Bradshaw is attempting to

21   get the district court to enter findings that contradict the superior court's finding. Hence, it is

22   a de facto appeal, and so, under the _Rooker-Feldman_ doctrine this issue falls outside the

23

24   jurisdiction of any federal district court.

25   B. There are many genuine issues of material fact.

26   Were it within this court's power to address, the papers presented by Bradshaw would

27   compel a decision to deny the motion in all respects, since it shows on its face that genuine

28

29

issues of material fact abound, and there is no indication that the substantive law of fraud has any application here. For example, the first finding that is requested admits that there is conflicting evidence as to the postal receipts and papers filed. The third requested finding admits that the postal receipts or the envelopes, or both, could be fraudulent. Given all the scenarios that the moving papers admit could have occurred, it impossible for there to be any specific findings along these lines to be made, even if the evidence were viewed in favor of Bradshaw, much less when viewed, as is required here, resolving all inferences in favor of the non-moving parties. Where the movant's papers are themselves insufficient to support a motion for summary judgment or on their face reveal a genuine issue of material fact the motion must be denied. See, *Martinez v. Stanford*, 323 F.3d 1178, 1182-1183 (9th Cir. 2003). Summary judgment may be granted only if the moving party affirmatively shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law, regardless of whether the party opposing the motion offers affidavits or any other materials in support of their opposition. *Id.* at 1183.

Because there is no direct evidence of the alleged fraud, nor any that the postal receipts were the cause of the entry of default against Bradshaw, the motion relies entirely on inferences from circumstantial evidence. Some of the evidence he offers is so attenuated that it cannot furnish a basis for granting his motion. For example, his basis for the conclusion that the postal receipts were filed is: "Actually Sorensen did submit the receipts to the SC because they were in the file in support of the default motion as described to Bradshaw by a number of people in The AG's office during the period Sep 2004 to Mar 2005." (Memorandum, p. 8) There is first a question whether this factual showing complies with

Rule 56(e), which requires that affidavits in support of the motion must be on personal knowledge, affirmatively show that the affiant is competent, and that it be admissible in evidence. "Hearsay evidence inadmissible at trial, cannot be considered on a motion for summary judgment." *Garside v. Osco Drug, Inc.*, 895 F.2d 46, 50 (1st Cir 1990). Bradshaw has made no showing that this is admissible hearsay. But even if it were shown that this qualified as some exception, Bradshaw's statement contains so little detail about who said what and under what circumstances, that it raises many genuine issues of fact itself.

The copies of the postal receipts furnished with the motion [See Exhibit C to Exhibit L to the Bradshaw Affidavit], also raise many questions themselves. Who signed them? Why did he sign them? What connection does the person who signed them have to any party in this case, if any? None of these questions, which are central to the findings that Bradshaw is asking for, are furnished by the moving papers.

On the issue of whether the postal receipts were filed with the superior court clerk, the motion relies on certain language in some of the papers filed by Bisom as plaintiff in the superior court action. However, none of these are by any means conclusive, and rely on their support, if any, from inferences. "Inferences must …be drawn in the light most favorable to the nonmoving party…Inferences may be drawn from underlying facts that are not in dispute, such as background or contextual facts…, and from underlying facts on which there is conflicting direct evidence but which the judge must assume may be resolved at trial in favor of the nonmoving party." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 631 (9th Cir. 1987).

C. <u>Direct evidence submitted in opposition to the motion requires it to be denied.</u>

The declaration filed herewith contains denials that Sorensen participated in any fraud regarding the preparation of the postal receipts, and it states that they were never filed with the superior court for purposes of proving that service was effected on Bradshaw. If there is direct evidence of a material fact provided by the nonmoving party that conflicts with evidence produced by the moving party, then the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact and summary judgment must be denied. *T.W. Elec. Serv.*, 809 F.2d at 631; *McLaughlin v. Liu*, 849 F.2d 1205 (9th Cir.1989).

D. The findings sought are not material.

The postal return receipts were never filed with the superior court for purposes of proving service on Bradshaw. (Declaration of Jay H. Sorensen filed herewith, ¶2)). In the superior court trial judge's Order Denying Motion to Remove Case from Trial Docket, filed February 22, 2000 (nunc pro tunc to February 7, 2000)[Exhibit X to Bradshaw Affidavit], which provided the basis for Bisom to request default against Bradshaw, there is no mention of them. In fact, just the opposite was found, namely, that Bradshaw avoided valid service. Hence, as found by the superior court in ruling on Bradshaw's motion to vacate the judgment, whether or not there was any fraud relating to those receipts, "…it has no bearing on the outcome of this case." [Exhibit J to Bradshaw Affidavit, p.16]. There is no purpose in this court entering findings on an immaterial point.

In addition, as discussed above regarding Item II, the Order Denying Motion to Remove Case From Trial Docket also held that the AG had appeared for Bradshaw, and that by moving to dismiss certain claims against him under Com.R.Civ.P. 12(b) without challenging in personam jurisdiction, he has waived any challenge to insufficiency of service

on him. Thus, there were three independent reasons that jurisdiction over the person of Bradshaw had been established, any one of which allowed Bisom to request Bradshaw's default when no answer was filed by him.

    E. The veracity of Bradshaw's contentions should be questioned.

    The memorandum filed in support of the motion contains this statement: "The Judge concluded that 'plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record...'" (Memorandum, pp. 8-9). This statement also appears in the Chronology of Events in CNMI Case 96-1320. (Exhibit A to Bradshaw Affidavit, p. 14).

    This quote is taken out of context. The full sentence reads: "Regardless of who 'Manny' is, if he is not the authorized representative of Bradshaw, and plaintiff or his lawyer knowingly caused the filing of an unauthorized receipt into the court record, then it is possible that fraud occurred." (Ex. J to Bradshaw Affidavit, p. 15). Bradshaw has misrepresented the superior court order's meaning by indicating that the judge concluded that a knowing participation in a fraud had occurred. Actually, the quoted language was used only in a conditional or hypothetical sense. Although this appears to be the most exaggerated instance, much of the argumentation for this motion depends on focusing on certain language in a document, and giving it an interpretation that is unjustified when considered in its full context.

Item V: THIS COURT EITHER CAN NOT OR SHOULD
NOT ADDRESS THIS ISSUE, WHICH IS NOW
BEFORE THE CNMI SUPREME COURT

    The issue whether Washington law precluded the manner of service on Bradshaw employed by Bisom was the key issue decided by the Order Granting Robert Bradshaw's

Motion to Vacate Judgment, providing the rationale for vacating the judgment. (Ex. J to Bradshaw Affidavit). Accordingly, it is one of the main issues in the appeal of that order. Bradshaw is attempting to get this District Court to endorse his position in that appeal. This must be the case because the issue has no independent relevance to any claim for damages Bradshaw has. It is a de facto appeal. Under *Rooker-Feldman* there is no jurisdiction to decide the matter

In the alternative, the court should abstain from deciding this issue according to the principles of *Younger v. Harris*, 401 U.S.37, 91 S.Ct. 746, 27 L.Ed.2d 669(1971). Principles of equity and notions of comity with state courts underlie this doctrine. 401 U.S at 43-44.

Absent "extraordinary circumstances," abstention under *Younger* is proper when the following three conditions have been met: (1) There are ongoing state judicial proceedings; (2) The proceedings implicate important state interests; and (3) The state proceedings provide the plaintiff with an adequate opportunity to raise the federal claims. *Green v. City of Tucson*, 255 F.3d 1086, 1091 (9th Cir. 2001)(en banc). This doctrine is also applicable to non-state entities. *JMM Corp. v. Dist. of Columbia*, 378 F.3d 1117 (D.C. Cir. 2004); *Maymo-Melendez v. Alvarez-Ramirez,* 364 F.3d 27 (1st Cir. 2004)(Puerto Rico considered a "state" for purposes of *Younger* abstention).

There are now ongoing proceedings in CNMI Supreme Court in Appeal No. 06-0005 GA, which will decide the same issue. The issue presented deals with the extent of the CNMI's long arm statute (CMC §1102 et seq.) and how its parameters should be defined given the language of Com.R.Civ.P. 4(k). The definition of the extent to which the Commonwealth may reach out and obtain personal jurisdiction over persons accused of civil wrongs is an important

1  interest to the Commonwealth and its courts.   Lastly, Bradshaw is able to present whatever

2  constitutional claims he may have in the context of this issue because the CNMI long-arm

3
   statute is intended to expand its courts' jurisdiction to the extent allowed by considerations of
4

5  federal due process.  See, *Sirok v. Rotec Engineering*, 1 CR 1065 (D.C. N.M.I. 1984).   So

6  constitutional due process is automatically part of the equation.

7
       As to the substance of the issue, to discuss it in full would expand the scope of this
8

9  opposition considerably.  However, it is set out fully in the briefs filed in Appeal No. 06-0006

10 GA, which are attached to the Bradshaw Affidavit.  Reference is made to Appellant's Opening

11 Brief (Ex. S, pp. 14-18), Brief of the Appellee (Ex. AA, pp. 10-11; 19-20), and Appellant's

12
   Reply Brief (Ex. T, pp. 8-9).
13

14

15             Item VI:  BRADSHAW HAS NOT PROVEN THAT HE IS
                         ENTITLED TO RECOVER FOR MALICIOUS
16                       PROSECUTION AGAINST SORENSEN

17
       In the Petition to the Court section of the memorandum, it says: "In USDC 95-0042
18

19 and NMI 96-1320, Bisom engaged in malicious prosecution (a proper cause of action under 42

20 USC 1983) in pursuing Bradshaw through six actions though his case lacked factual

21 foundations and was not in compliance with the law." (Memorandum, p. 24)  It is not clear
22
   whether Bradshaw seeks this finding as against Sorensen, or only against Bisom.  In other
23

24 "items" he has combined Bisom and Sorensen as if they were joint actors with common

25 liability, although providing no factual basis nor any legal authority explaining why.  The

26
   fourth amended complaint contains no claim labeled as malicious prosecution.  It appears that
27

28 the claim is being made in the context of his first claim under 42 U.S.C. §1983, wherein

29
                                         18

Sorensen is a named defendant. In any event, as shown below, for several reasons, Bradshaw has not proven liability against Sorensen.

This cause of action was discussed in a case with similarities to this, *Mitchell v. Estate of Hillblom*, 1997 MP 30, 5 N.M.I. 136 (1997). The opinion notes that the claim is properly termed "wrongful use of civil proceedings," because "malicious prosecution" involves the institution of criminal proceedings. *Id.* at n.1, citing Rest.2d, Torts, §653 at 406 (1976). The elements for it are: 1) The defendant must take an active part in the initiation, continuation, or procurement of civil proceedings against another; (2) The defendant acts without probable cause; (3) The defendant acts primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based; and (4) The proceedings must have terminated in favor of the person against whom they are brought. 5 N.M.I. at 137, citing Rest.2d, Torts, § 674 at 452 (1976).

On the first element, the Supreme Court upheld summary judgment entered for Dotts and Pierce, holding that since they were not parties but only acted as attorneys for Hillblom, they did not initiate, procure, or continue the prior action. "[A]n attorney who initiates a civil proceeding on behalf of his client (with or without probable cause) is not liable in the proceeding, if he acts primarily for the purpose of aiding his client in obtaining a proper adjudication of his claim." 5 N.M.I. at 138, citing Rest.2d, Torts, § 674, cmt d, at 453 (1976). Nothing here indicates that Sorensen acted for any other purpose than aiding his client.

As to the second element, Bradshaw has not proven this defendant acted without probable cause. In fact, since there was a jury verdict in favor of Bisom, the presumption is

1  that probable cause existed.  "Generally, the probable cause element of a malicious

2  prosecution action is conclusively established where the defendant in the underlying action

3
   has achieved a favorable result at the trial court, even though that trial court decision is later
4

5  reversed on appeal. [citation] However, there is an exception to this presumption. The

6  presumption of probable cause does not apply when the defendant procured its favorable

7  judgment in the underlying action by the knowing use of false and perjured testimony."

8
   *Hydranauntics v. Filmtec Corp.*, 204 F.3d 880, 886 (9th Cir. 2000 ), citing *Cowles v. Carter*,
9

10  115 Cal. App. 3d 350, 171 Cal. Rptr. 269 (1981).  There is no evidence of any false or

11  perjured testimony, so this element is lacking.

12

13      As to the third element, there is no evidence that Sorensen acted for any purpose other

14  than that of securing the proper adjudication of Bisom's claim.  With regard to the fourth

15  element, there has been no termination of Civil Action No. 96-1320 favorable to Bradshaw.
16

17  "Civil proceedings may be terminated in favor of the person against whom they are brought

18  when there is: (1) a favorable adjudication of the claim by a competent tribunal; or (2)

19  withdrawal of the proceedings by the person bringing them; or (3) the dismissal of the
20

21  proceedings because of a failure to prosecute them.  *Mitchell*, 5 N.M.I. at 137-138, quoting

22  Rest.2d, Torts, § 674, cmt. j at 456-57 (1976).  None of these events has occurred.  Although

23  the judgment against Bradshaw has been vacated, that does not constitute a favorable

24  adjudication of the claim, only of the procedural issue of jurisdiction.  As *Mitchell* indicates,
25

26  where the termination is technical or procedural, it is not considered favorable for these

27  purposes. 5 N.M.I. at 138.  Besides, that order vacating the judgment is currently on appeal.

28

29

Item VII:  BRADSHAW IS NOT ENTITLED TO THE
           FINDING AND LEGAL CONCLUSION HE
           SEEKS

Here Bradshaw asks this District Court to enter findings and conclusions based on

papers he has selected to overrule the Order Denying Motion to Remove Case from Trial

Docket, filed February 22, 2000 [Ex. X to Bradshaw Affidavit], a decision of the trial judge in

another court, decided seven years ago.  Several of the reasons he gives for doing this are ones

that have already been presented by him in preceding items, e.g. "violation of the 120 day rule

for service, the deficient/void 1st amended complaint, the service needs of the 2d amended

complaint, and the fact that Castro lacked personal jurisdiction." (Memorandum, p. 15).  To

the extent these are the reasons, then the answer to those arguments is already presented above

regarding Items I,II and III.

As with those issues, here again Bradshaw is attempting to "disrupt or undo" a

decision from a prior judgment of another court, which *Rooker-Feldman* disallows. *Bianchi,*

334 F.3d at 898.  There is no purpose for asking for this ruling other than to give Bradshaw an

endorsement to his position in the pending appeal.  In fact, in his memorandum, he even cites

to his appellate brief , noting its rectitude over that of Sorensen's. (Memorandum, pp.15-16).

The only new and additional point brought up in this "Item" is the argument that this

order was not a basis for the default entered against him, as it was filed eight days after the

order. (Memorandum, p.16-17)    His memorandum notes that the order was "with nunce pro

tunc to Feb 7, 2000…"[sic],  but fails to grasp the significance of that feature. (p. 16).

"'Nunc pro tunc,' which means 'now for then,' applies to actions taken by a court through its

21

1

2

3

4     inherent legal power after the time in which the actions should have been taken, with

retroactive effect." *Mahabir v. Ashcroft*, 387 F.3d 32, 33 (1st Cir. 2004), quoting *Black's*

*Law Dictionary* 1100 (8th ed.2004);  and see, *Taylor v Sawyer*, 284 F.3d 1143, 1145 (9th Cir.

5     2002). Accordingly, Judge Castro had the inherent power to enter the order of February 22,

6     2000 "nunc pro tunc," or retroactive, so as to be effective as of the date it was heard, February

7     7, 2000.

8

9         Bradshaw wants the court to accept this premise: "Sorensen did not file his default

10    motion on the basis of Castro's order (which came out 8 days later).  Instead Sorensen filed it

11    on the premise of the fake receipts that he had entered in court." (Memorandum, p. 17).  That

12    version of what occurred is not consistent with the true facts.  It ignores that the ruling was on

13    a motion to remove the case from the trial docket, brought to hearing for the first time on

14    February 7, 2000, which was the first day of the scheduled jury trial. [See, Order and

15    Judgment filed March 10, 2000, attached to the declaration of Jay H. Sorensen, filed herewith,

16    and to which Sorensen hereby requests the court take judicial notice.]   Naturally, the motion

17    had to be decided right away.  It was, and jury selection then began. Thus, the order was made

18    and announced on February 7, 2000, but not reduced to a formal written order some days later

19

20    when there was time to prepare it after the pressures of a jury trial had eased.

21

22

23                    Item X:   BRADSHAW CANNOT OBTAIN REVERSAL
                              OF THE JUDGMENT RENDERED AGAINST
24                            THE CNMI

25

26

27

28

29

Bradshaw argues that for all the reasons that have been set forth in this motion: "…the $140,000 judgment against the CNMI arising from the activities of Bradshaw and the default judgment is illegal; has no basis in law; and must be reversed." (Memorandum, p.21.)

On this item it is very clear that Bradshaw is seeking a de facto appeal. In fact, from his prospective, it is not even de facto, as he seems to view this Court as having the power of review over every judicial decision made in the Commonwealth. In any event, he is attacking collaterally the jury verdict and concomitant judgment against the CNMI rendered by the Commonwealth Superior Court. As explained above, under the *Rooker-Feldman* doctrine, a federal district court has no jurisdiction to entertain such a claim.

Bradshaw would have another problem in getting the judgment against the CNMI reversed. He lacks standing to ask for that remedy. "Where there are a number of parties to an action and a number of judgments are granted, a party who is not harmed by a judgment against another party is not entitled to have such judgment reversed or modified in the action itself or subsequently through equitable relief." Rest. Judgments §115, com. b. The judgment has been entered and satisfied. Bisom has no rights of contribution against Bradshaw. Bradshaw simply has no legally protected interest in the matter.

Substantively, there is a flaw in Bradshaw's argument on this point too. He says: "In the default, the legal conclusion was that Bradshaw admitted Bisom's allegations against him. Thus, the judgment against the CNMI arose because of the default against Bradshaw." (Memorandum. p. 20). This statement is not correct. While it may be that in some instances a defaulting party is deemed to have admitted liability, in this case, Bisom did not enjoy the benefit of any such admission. First of all, the default was not entered until well after the trial

had started. The entry of default against Bradshaw had no influence on the evidence that was presented to the jury. More importantly, Bradshaw had co-defendants with common interests and exposure. Because the liability of Bradshaw's co-defendants, LaMotte and the CNMI government, was dependent on how the jury viewed Bradshaw's actions, as a practical matter, in representing the interests of the government defendants, the Attorney General also defended Bradshaw's interests, since they were congruent insofar as defense of Bisom's contract and wrongful termination claims were concerned. Additionally, since there was no way to provide any demarcation of the evidence that was presented on the contract claims and evidence that came in on the tort claims against Bradshaw, the AG also contested and defended those claims as well.. So, as a practical matter, Bradshaw did have the benefit of counsel, in a real sense, albeit not formally.

In addition to all this, Bradshaw's letter of termination of December 28, 1993, together with all 11 of the letters to Bisom outlining Bisom's transgressions in detail, penned during their three weeks of common employment, were in evidence. [Exhibit U to Bradshaw Affidavit]. So, Bradshaw's view of facts was presented in his own words.

Not all of Bisom's claims could have been considered admitted by the jury, as they found against him on one of them. On the claim for discrimination on the basis of race, the jury found in Bradshaw's favor and against Bisom. [General Verdict With Special Findings re Defendant Robert D. Bradshaw, attached to the Declaration of Jay H. Sorensen, filed herewith].

1

CONCLUSION

2

3

Sorensen will not address Items XIII, XIV, XI and XII and takes no position on those

4

issues at this time, as the CNMI and the AG defendants appear to be the interested parties.

5

On most of the items requested this District Court does not have jurisdiction as

6

articulated under the *Rooker-Feldman* doctrine, or the Court should exercise *Younger*

7

abstention.    Even if the merits of the motion were addressed, Bradshaw has failed to produce

8

the quantum and quality of proof necessary for grant of summary judgment on any of the

9

findings or conclusions requested.  Additionally, the Court may exercise its discretion and

10

decline to rule on these matters because doing so is not practicable.

11

12

13

14

15

16

Respectfully submitted,

17

18

_____/s/_____

Jay H. Sorensen
In pro se

19

20

21

22

23

24

25

26

27

28

29

Jay H. Sorensen
c/o Shanghai
P.O. Box 9022
Warren, MI  48090-9022
Telephone:  86-21-5083-8542
Fax:  86-21-5083-8542

Attorney Appearing in Pro Se

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| ROBERT D. BRADSHAW, | ) |
| | ) |
| Plaintiff, | ) Case No. CV 05-0027 |
| v. | ) |
| | ) **DECLARATION IN OPPOSITION** |
| COMMONWEALTH OF THE | ) **TO MOTION FOR PARTIAL** |
| NORTHERN MARIANA ISLANDS, et al.,) | **SUMMARY JUDGMENT** |
| | ) |
| Defendants. | ) |
| | ) Date: March 15, 2007 |
| | ) Time: 9:00 a.m. |

I, Jay H. Sorensen, do hereby declare as follows:

1. I am a defendant in this action and submit this declaration in opposition to

plaintiff's motion for partial summary judgment.  The facts set forth herein are of my

own knowledge and I am competent to testify to them.

2. I never participated in any fraud, misrepresentation nor forgery of postal return

receipts regarding the service on Robert Bradshaw of summons and complaint in CNMI

Superior Court Civil Action No. 96-1320.

3. Regarding the original forms of PS Form 3811, Domestic Return Receipt

(copies of which are attached to the Bradshaw affidavit as Exhibit C to Exhibit L), or

1   any copies thereof, they were never filed with the CNMI Superior Court by me or

2   anyone from my office for purposes of proving service on Bradshaw.  I did, however,

3
4   send copies of those receipts to Mr. Sosabee, then the Assistant Attorney General

5   handling the case for defendants, and he attached copies of them to his Motion to

6   Remove Case From Jury Trial Docket filed February 1, 2000.

7       4. Attached hereto are true copies of General Verdict With Special Findings re

8
9   Defendant Robert D. Bradshaw and the Order and Judgment filed March 10, 2000, both

10  documents filed in Bisom v. C.N.M.I et al., (Civil Action No. 96-1320).

11      I declare under penalty of perjury under to the laws of the United States of

12  America that the forgoing is true and correct.  Executed this 8th  day of February, 2007

13
14  at Shanghai, China.

15

16

17                                      _____/ s /_____

18                                           Jay H. Sorensen

19

20

21

22

23

24

25

26

27

28

29

1                          CERTIFICATE OF SERVICE

2

3          The undersigned hereby certifies that on __February 9, 2007_____

4    a copy of the following:

5    MEMORANDUM IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL
6    SUMMARY JUDGMENT   and   DECLARATION IN OPPOSITION TO MOTION
     FOR PARITAL SUMMARY JUDGMENT
7

8    was deposited for delivery to the U.S. Post Office, first class mail, postage prepaid,

9    addressed as set forth below (except as noted):

10

11                            Robert D. Bradshaw
                              P.O. Box 473
12                            1530 W. Trout Creek Road
                              Calder, Idaho  83808
13

14                        *  Office of the Attorney General – Civil Division
                             Commonwealth of the Northern Mariana Islands
15                           2nd Floor, Hon. Juan A. Sablan Bldg
                             Caller Box 10007
16                           Saipan, MP  96950
17

18

19                         * Mark B. Hanson
                             First Floor, Macarans Bldg.
20                           Beach Road, Garapan
                             PMB 738, P.O. Box 10000
21                           Saipan, MP 96950
22

23

24
                                           _____/ s /_____
25                                              Jay H. Sorensen
26

27   * Served electronically by agreement of the parties

28

29

                                      -3-

JAY H. SORENSEN
Attorney at Law
4th Floor, Suite A
Horiguchi Building
P.O. Box 1184
Saipan, MP 96950
Tel. No. 234-1414
Fax. No. 234-1417

Attorney for Plaintiff

## IN THE SUPERIOR COURT
## FOR THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| ROBERT A. BISOM, | ) | CIVIL CASE NO. 96-1320 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **ORDER AND JUDGMENT** |
| | ) | |
| COMMONWEALTH OF THE | ) | |
| NORTHERN MARIANA ISLANDS, | ) | |
| LEO L. LAMOTTE, CNMI Public | ) | |
| Auditor, in his official capacity, | ) | |
| ROBERT D. BRADSHAW, formerly | ) | |
| appointed Temporary Public Auditor, | ) | |
| in his individual capacity; | ) | |
| SCOTT KHENG SHANG TAN, | ) | |
| formerly CNMI Public Auditor, | ) | |
| in his individual capacity, | ) | |
| | ) | |
| Defendants. | ) | |

This action came on for trial before the court and jury, Honorable Alexandro C.

Castro, judge pro tem, presiding, on February 7, 2000.  The issues having been duly tried

and the jury having duly rendered its general verdict with special findings on February 25,

1

2000:

IT IS ORDERED AND ADJUDGED, that:

1. Plaintiff recover judgment against defendant, ROBERT D. BRADSHAW, the sum of $139,000; and

2. Plaintiff recover judgment against the defendant, COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, and LEO L. LAMOTTE, CNMI Public Auditor, in his official capacity, the sum of $110,300; and

3. Plaintiff take nothing on his complaint against defendant, SCOTT KHENG SHANG TAN; and

4. Plaintiff shall recover sanctions pursuant to Order Granting Sanctions on Motion to Compel granted September 8, 1999, filed September 13, 1999, which remain unsatisfied in the amount of $566.86, as against all defendants.

5. The court reserves jurisdiction to tax and apportion costs and determine attorney's fees by subsequent order pursuant to Com.R.Civ.P. 54(e).


APPROVED: _____
ALEXANDRO C. CASTRO
Judge Pro Tem of the Superior Court


Dated: __3.10.00__        _____
CLERK OF COURT


2

IN THE SUPERIOR COURT
FOR THE
COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

ROBERT A. BISOM,               )   CIVIL CASE NO. 96-1320
                               )
              Plaintiff,        )
                               )
       vs.                     )   **GENERAL VERDICT WITH**
                               )   **SPECIAL FINDINGS RE**
COMMONWEALTH OF THE            )   **DEFENDANT ROBERT D.**
NORTHERN MARIANA ISLANDS,      )   **BRADSHAW**
LEO L. LAMOTTE, CNMI Public    )
Auditor, in his official capacity; )
ROBERT D. BRADSHAW, formerly   )
appointed Temporary Public Auditor, )
in his individual capacity;    )
SCOTT KHENG SHANG TAN,         )
formerly CNMI Public Auditor,  )
in his individual capacity,    )
                               )
              Defendants.       )
_____ )

We, the jury in the above entitled action, find as follows:

1. On the Claim for Intentional Infliction of Emotional Distress:

FOR PLAINTIFF _____X_____   FOR DEFENDANT_____

2. On the Claim for Discharge for <u>Political</u> or Religious Reasons:

FOR PLAINTIFF _____X_____   FOR DEFENDANT_____

3. On the Claim for Due Process Violations of Plaintiff's Property Interest:

FOR PLAINTIFF _____X_____   FOR DEFENDANT_____

4. On the Claim for Due Process Violations of Plaintiff's Liberty Interest:

FOR PLAINTIFF _____X_____   FOR DEFENDANT_____

1

46

5. On the Claim for Discrimination:

FOR PLAINTIFF _____    FOR DEFENDANT_____ X _____

If you have found in favor of plaintiff on any of the above claims, then answer the questions that apply below.

6. What is the total amount of damages for Intentional Infliction of Emotional Distress?

Answer: $ _55,000._ 00

7. What is the total amount of damages for Discharge for Political or Religious Reasons?

Answer: $ _18,000._ 00

8. What is the total amount of damages for Due Process Violations of Plaintiff's Property Interest?

Answer: $ _8,000._ 00

9. What is the total amount of damages for Due Process Violations of Plaintiff's Liberty Interest?

Answer: $ _8,000._ 00

10. What is the total amount of damages for Discriminatory Discharge?

Answer: $ _____0_____

Plaintiff may not recover for the same damages more than once as to each defendant. Therefore, if any element of damage is duplicated in any of the dollar amounts above, then you must reconcile these figures by adjusting for that duplication for purposes of the next question. If there is no duplication, you may just add the dollar figures above together to answer the next question.

11. What is the total amount of compensatory damages against defendant ROBERT D. BRADSHAW?

Answer: $ _89,000._ 00

12. Are punitive damages awarded against defendant ROBERT D. BRADSHAW?

YES _____ X _____        NO _____

2

47

13. If the answer is yes, then what is the amount of punitive damages?

Answer: $ _50,000.⁰⁰_

Dated: __Feb 25, 2000__

_____
Foreperson

3

48