F I L E D
Clerk
District Court

MAR - 1 2007

For The Northern Mariana Islands
By_____
(Deputy Clerk)

Robert D. Bradshaw
PO Box 473, 1530 W. Trout Creek Road
Calder, Idaho 83808
Phone 208-245-1691

Plaintiff, Pro Se

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW | ) Case No. CV 05-0027 |
| Plaintiff | ) |
| v. | ) |
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS (hereafter referred to as the CNMI); et. al. | ) REPLY TO DEFENDANT CNMI'S ) OPPOSITION TO MOTION FOR ) SUMMARY JUDGMENT |
| Defendants | ) Hearing: March 15. 2007 |
| | ) Time:  09:30 AM |
| _____ ) | Judge Alex R. Munson |

1. Comes now plaintiff to reply to CNMI defendants' opposition.

### Item VIII, Fiduciary Duty Owed Bradshaw

2. In its order of Sep 8, 2006 (top of page 4), the Court partially addressed the question of a fiduciary duty in citing Bradshaw that the CNMI breached its fiduciary duty under the CNMI statute and plaintiff's employment contract by failing to defend plaintiff in the Bisom case. At this time, plaintiff is asking the Court to define a fiduciary duty for Bradshaw and other former employees who are sued--at least for their official capacities and duties (de jure) and de facto otherwise. The CNMI cannot tell former employees that they are not entitled to anything from the CNMI once they leave their jobs. Contractually, as stated or implied, CNMI employees are due some consideration and fair treatment.

1

3. CNMI laws (7 CMC 1102-1104) allow a person to be served by publication. If, by chance, a former employee of the CNMI is sued and served in a local paper, does the CNMI have a fiduciary duty to at least advise him that he has been served in a local paper? Here, it is noted that Bradshaw served some former AG defendants in this case by publication. The AG notified them. The AG should extend the same to all CNMI former employees on the basis of a fiduciary duty. The NMI cannot wash its hands and say we owe you nothing!

4. The day Bradshaw left his NMI employment, he recognized and believed that the CNMI had a responsibility for any fall out or repercussions on him after returning to the US. Bradshaw was sued in his official capacity for his official duties. It is unthinkable that the CNMI can abrogate and deny some responsibility to Bradshaw in this situation.

### Item IX, The Incompetent AG's Office

5. Whatever called--incompetence, negligence or malpractice--the AG's office definitely has problems as cited by the NMI Supreme Court in 2000-016 and 023 wherein the court cited mistakes (plural), possible ethics violation(s) and allowed a conflict of interest which went unchallenged when Sorensen raised the issue in court. Anyway, this US Court has determined the attorney client relationship in its decision of Sep 8, 2006.

6. The case file is conclusive that the AG made multiple errors/mistakes. Negligence abounded. While some errors did happen before Asst AG Sosebee took over, he manifestly was in a position to correct and resolve most of them favorably to Bradshaw and the CNMI. He effectively did nothing for Bradshaw, his CNMI employer or his colleagues Cotton and Bush who worked on this case. Because Sosebee dropped the ball on his colleagues, their mistakes (which could have been corrected by Sosebee) survived.

7. When the AG permitted the 120 day rule and Castro 5-20-97 order (Ex H plaintiff's affidavit supporting this motion) to pass without attention, there are problems. The AG should have filed a motion in court to oppose the entry of default based on service allegedly made to Bradshaw and not answered (Ex O, P plaintiff's affidavit). With the 120 day rule and the May 20, 1997 order, the default entry should have been challenged. When Bisom files a default entry on alleged service of the 4th amended compliant on the AG with no answer by Bradshaw or the AG, there are problems. Frankly, with Sorensen's penchant for fraud, it is plausible that he lied to the court on this in his request for default. But if he lied about serving Cotton (the AG should know whether Sorensen lied or not), then the AG dropped the ball by not filing a motion in court to question the default entry.

8. For about two weeks in late Jan and early Feb 2000, Asst AG Forelli was the Acting AG--during the time that 96-1320 was going to trial and while Sosebee made the decision to abandon Bradshaw and leave him hanging. In the Dec 22, 2005 CNMI Defendants' Motion to dismiss, Ms Forelli declares "I never represented, communicated with or had any interaction with Robert Bradshaw." Ms Forelli probably told the truth. She probably never had interaction with Bradshaw during those critical days of Jan 31 to Feb 7, 2000 while she was the Acting AG (but she should have had some interaction as the AG).

9. In Aug 1999, Sosebee learned of postal return receipts which Sorensen held allegedly proving service on Bradshaw. For over 5 months, he sat on this and did nothing. Then 6 days before the trial he went to court to take the case off the trial docket (Ex L plaintiff's affidavit) with his illegal presentation of Bradshaw's privileged letter of 7-14-99 to the AG. After Mr Sosebee filed his motion to take the 96-1320 case off of the docket,

3

Bisom filed his Feb 3, 2000 opposition (Ex N Plaintiff's affidavit). The two documents had an indisputable conflict in that Bisom filed US Postal return receipts showing delivery of service to Bradshaw in Elk, WA and also alleged return envelopes from Elk, WA which showed the exact same certified numbers were never delivered to Bradshaw but were returned to Saipan unclaimed. It is easy to see that there is a presence of false documents.

10. Sosebee thought so much of his employer, his duties and his responsibilities that he never even bothered to make a reply to Sorensen's many fraudulent documents submitted in Aug 1999 and on Feb 3, 2000 in his opposition to motion to take case off of trial docket (Ex B, L, N, plaintiff's affidavit). By not even filing a reply, Sosebee effectively agreed to and legally accepted Sorensen's false filings. Both Bradshaw and the CNMI were doomed when Sosebee failed to file a reply to the Sorensen opposition. Instead of filing the needed Reply with the Court (as was required), Sosebee did nothing. Per his boss AG Forelli, Sosebee never even bothered to bring this conflict to her attention. Though he held proven false documents, he allegedly never even told the AG criminal people. These failures are illustrations of AG malpractice and negligence.

11. The Exhibit Log Sheet prepared by the Clerk of Superior Court for the 96-1320 trial in 2000 is attached at Ex I (in Bradshaw's declaration in support of his reply to Defendant Sorensen's opposition to this motion for summary judgment). This document presents the submission of 74 exhibits by Bisom. Sosebee presented one exhibit. Information received from Superior Clerk of Court office alleges that Sosebee called no witnesses to testify. In Meza v. Washington state Dept. of Social services (683 F 2d 314), the court said that "Public and opposing parties have a right to expect conscientious service

4

from government counsel." In line 23 of page 3 of Defendants' opposition, the CNMI charges that "the CNMI was vigorously defended" at the trial. In looking at the case file, one must wonder where in the world is the vigorous defense. It's not in the record. Instead, the record is full of contradictions, confusion and negligence.

12. On another matter, Bradshaw acted on the legal advice of AG Robert Kingsley and Robert Dunlap/Douglas Cotton that Bradshaw was under no obligation to accept certified mail regardless of whether it is from an identified party or not (p. 12, 4 amended Complaint--4AC). On Apr 17, 1997, Cotton advised Bradshaw (Ex A3 4AC) that he could expect Bisom to attempt to "personally serve" him. Per NMI civil rule 4(e)(2), personal service is service made on the defendant personally. It is contrasted with mail service.

13. Bradshaw reports that the two mailings (evidently from Sorensen) were unidentified as to senders as is the modus operandi (MO) of Sorensen in mailing summons (Ex H Bradshaw's declaration in support of reply to Sorensen's opposition to motion for summary judgment). On receipt of the first one, Bradshaw notified the AG. AG's letter of Jan 22, 1997 (Ex A2 4AC) advised Bradshaw to notify the AG if there was an attempt to serve him. Supposing that the first certified mailings was from Sorensen, Bradshaw so advised the AG. The AG knew about this mailing. If a reply was needed, the AG was notified. Obviously, the AG acted on the premise that the Sorensen letter did not constitute service and required no answer in court. Bradshaw acted on the AG advise.

### Item X, the Illegally Paid $140,000 to Bisom

14. The CNMI broaches this topic by claiming that Bradshaw does not have standing. In its discussion, the CNMI says that Bradshaw has no legally protected interest in a

5

judgment against the CNMI third party. The Wikipedia Internet Encyclopedia says that standing is the "ability of a party to demonstrate to the court sufficient connection to and harm from the law or actions challenged." This source says on third party standing that "A party may only assert his or her own rights and cannot raise the claims of a third party who is not before the court, exceptions exist where the third party has interchangeable economic interests with the injured party..." But the CNMI is before this court in this action and there are interchangeable economic interests (in terms of defending 96-1320) and extensive connections and ties between Bradshaw and the NMI.

15. In tort law (per Goliath Knowledge on the Internet), a plaintiff must prove that a defendant invaded the plaintiff's legally protected interest and that this resulted in harm to the plaintiff. Restatement of Torts (Section 7) defines harm as "the existence of loss or detriment in fact of any kind to a person resulting from any cause." Findlaw Internet site quotes the Colorado Court of Appeals case # 02CA1219: "Injury, in fact may be proved by showing that the action complained of has caused or has threatened to cause injury." An order (docket # 05F-077CP, Suwinski v. Vail Summit Resorts, Inc) of the Colorado Public Utilities Commission adds that a legally protected interest is "the interest must be encompassed within legal provisions which are alleged to have been violated." Clearly, this action's basis is violations of Bradshaw's contractual, civil and due process rights.

16. This Court, in order of Sep 8, 2006 (p. 4), discusses the allegation that "the CNMI breached its fiduciary duty under the CNMI statute and plaintiff's employment contract by failing to defend plaintiff in the Bisom suit. The CNMI's alleged failure to defend plaintiff in the Bisom case allegedly resulted in additional monetary expense, emotional distress,

damage to plaintiff's professional reputation, and loss of enjoyment of life."

17. As the Court found, there is far more to case 05-0077 than merely the imposition of a $139,000 judgment which the Lizama court vacated. There is more to it in the vein of the default action in case 96-1320 and its fall-out, effect and influence on the parties. Clearly, the CNMI and Bradshaw were intertwined and thoroughly connected in the lawsuit brought by Bisom against them. Both parties are now before this court. The CNMI is no remote third party not before the court.

18. It is true that in about Feb 1, 2000, the CNMI AG illegally abandoned its fiduciary duty to Bradshaw and began a campaign of being an adversary to hurt and injure Bradshaw. But this CNMI AG hostile and adversarial stance was wrong. Bradshaw and the CNMI had a relationship that meant that their interests should have been the same in 96-1320. Bradshaw does have a legally protected interest in what happened to the CNMI.

19. It is also true that any employee in any organization has a legally protected interest in what happens to his employer from the standpoint of any after-effects of his work for that employer. The situation with Bradshaw is even more linked in that Bradshaw was an official holding a CNMI constitutional office with the authority to hire and fire people. Bradshaw's work, professionalism, and duties as a supervisor or official in the CNMI meant that he has a definite legal protective interest in what happened to the CNMI from the default entry made on Bradshaw.

20. The default judgment as entered by Bisom against Bradshaw meant not only that Bradshaw was seriously injured (to the tune of #139,000 which was vacated by the Lizama court); but that there was a host of other injuries and harm also placed on Bradshaw--to

Received   Mar-02-2007   07:11        From-                    To-US DISTRICT COURT, N    Page 008

include the things cited above in this Court's decision of Sep 8, 2006. The slander, defamation, injury, hurt and damage placed on Bradshaw extended to not only him directly but to him as an employee and official with the CNMI government.

21. Once Bradshaw's work and duties are addressed in an official status as happened, there is no way that the CNMI can now claim that the injury placed on it had no linkage to Bradshaw. The essence of the problem is that according to the evidence submitted to the court (by Bradshaw in this motion for summary judgment), the $140,000 payout by the CNMI to Bisom happened because of the default entered on Bradshaw. At least that's what Bisom and his attorneys have argued in court (as established in plaintiff's Memorandum of Points and Authorities in Support of Motion for Summary Judgment).

22. Thus, per Bisom, the judgment on Bradshaw and the CNMI was due to Bradshaw's work and the 96-1320 default. Bradshaw was denied due process of law and was judged and found guilty for not only all of the damages placed directly on him but also he was found guilty of the damages placed on the CNMI (to the tune of $140,000). Bradshaw has standing and a legally protected interest to bring this issue before the Court.

23. Lujan v. Defenders of Wildlife (504 US 555, 112 S. Ct. 2130 [1992]) on this issue requires that a (1) party has suffered "an injury in fact"; thus, an invasion of a legally protected interest (actual or imminent, not conjectural or hypothetical); (2) there must be a casual connection between the injury and the conduct complained of; and (3) it must be likely as opposed to merely speculative that the injury will be "redressed by a favorable decision." The injury placed on Bradshaw meets all three of these tests as his legally protected interest was invaded; there is a connection between the injury on Bradshaw and

the actions of Bisom in obtaining an illegal payoff of $140,000 from the CNMI; and this action now before this court will redress the wrong done by a favorable decision.

24. In Donnelly, 159 F. 3d at 409), the 9th Circuit ruled that an "applicant has a 'significant protectable interest' in an action if (1) it asserts that is protected under some law, and (2) there is a relationship between its legally protected interest and the plaintiff's claims." Bradshaw's contractual, civil and due process rights are all protected by law and his legally protected interest in the payout of $140,000 is intimately connected to his claims.

25. Bendix Corp (610 P. 2d at 31); Alyeska Pipeline Service Co (604 P. 2d at 1094) noted that in an action over a legally protected interest, "the essential question becomes whether the defendant (or party) was motivated by a desire to protect this interest or was motivated by spite, malice, or some other improper objective." Bradshaw does have legally protected interest in the question of the $140,000 CNMI payoff to Bisom. While the CNMI AG's office has done Bradshaw dirty ever since 1999-2000, the truth is that Plaintiff's motivation is a desire for right and justice to prevail and nothing more. Bradshaw cites a clear responsibly for the effects of his work upon his former employer. A Bisom refund of the $140,000 to the CNMI puts no money in Bradshaw's pocket. All it will do is vindicate a wrong, injury and damage placed on Bradshaw.

27. On Bradshaw's request for refund of the $140,000 illegally taken from the CNMI, this issue concerns damages, hurt and injury placed on Bradshaw's work, person and reputation. The pay out was made precisely because of the default judgment. Bradshaw has standing on this issue (per the facts outlined in the Memorandum of Points and Authorities in Support of this Motion). A court ordered refund of the 140,000 will offer

9

Received Mar-02-2007 07:56   From-   To-US DISTRICT COURT, N   Page 001

some of the needed repair and restoration of Bradshaw's reputation and professional status damaged in case 96-1320 without due process of law. As a minimum, if the Court cannot presently order a full refund of the $140,000 at this time, plaintiff requests that the Court define the $140,000 payout as expressly a result of the default made on Bradshaw. This would be a beginning in the restoration of the damages placed on Bradshaw. One more note needs emphasis. Why would the CNMI vigorously oppose a refund of the $140,000 illegally taken from it by Bisom? This is incomprehensible to a thinking mind.

### Item XI, the CNMI a RICO Enterprise

28. The only question in this motion for summary judgment is whether the CNMI with its commercial, interstate and foreign operations qualifies as a Enterprise under the RICO rules. There is nothing else at issue in terms of the presence of repetitive criminal acts, conspiracy, etc. Actually, "RICO extends to both legitimate and illegitimate enterprises, and a legitimate enterprise enjoys neither an inherent incapacity for criminal activity nor immunity from its consequences" (p. 639, RICO violations, 11 COA 2d 627).

### Conclusion

29. The issue of 1986 immigration act is moot as the Court decided this earlier and plaintiff deleted item 12. Too, the NMI presents nothing to justify its opposition for summary judgment. Last, a reviewing court is required to take notice of and incorporate relevant statutes and rules and precedents even if not pleaded in the complaint by a pro se plaintiff (Haines v. Kerner, 404 US 519, 30 L. Ed 2d 652, 92 S. Ct. 594, 1972)).

Robert D. Bradshaw, Plaintiff, Pro Se

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the 2d day of Mar 2007, I caused to be served a true copy of the foregoing document by US Mail Postage Paid to each of the following:

Jay H. Sorensen, c/o Shanghai, PO Box 9022, Warren, MI 48090-9022
CNMI Attorney General, Caller Box 10007, Capitol Hill, Saipan, MP 96950
Mark B. Hanson, PMB 738, PO Box 10,000, Saipan, MP 96950

_____
Robert D. Bradshaw, Plaintiff, Pro Se

11