MATTHEW T. GREGORY # F0205
Attorney General
ROBERT M. WEINBERG
Assistant Attorney General
OFFICE OF THE ATTORNEY GENERAL
Hon. Juan A. Sablan Memorial Bldg., 2nd Fl.
Caller Box 10007, Capital Hill
Saipan, MP 96950-8907
Telephone: (670) 664-2333
Fax: (670) 664-2349
E-mail: rob.weinberg@yahoo.com

Attorneys for Defendants Commonwealth of the Northern Mariana Islands,
Nicole C. Forelli, William C. Bush, D. Douglas Cotton, L. David Sosebee,
Andrew Clayton, and Pamela S. Brown ("CNMI Defendants")

UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ROBERT D. BRADSHAW, ) <br> ) <br> Plaintiff, ) <br> ) <br> vs. ) <br> ) <br> COMMONWEALTH OF THE NORTHERN ) <br> MARIANA ISLANDS, et al., ) <br> ) <br> Defendants. ) <br> _____ ) | CIVIL ACTION NO. 05-0027 <br><br> **CNMI DEFENDANTS' RESPONSE TO PLAINTIFF'S MOTION FOR CHANGE OF VENUE** |

Plaintiff Bradshaw has filed a motion for change of venue alleging that he cannot receive a fair trial, in particular a fair jury trial, in the Commonwealth of the Northern Mariana Islands. He contends in a declaration that this is so because of discrimination against outsiders generally; favorable treatment in the *local* courts by Supreme Court Justice Castro, a former defendant in this case; and because Justice Castro has "relations, colleagues and friends on Saipan" who would be part of the jury pool. Bradshaw argues that because of his familial and business relations, Justice Castro would be able to exert undue influence over the outcome of any jury trial in the CNMI. Bradshaw suggests transferring venue to any district court in the continental United States, in particular, the U.S. District Court for the Eastern District of Washington. The

motion rambles and alleges vagaries and conspiracies upon conspiracies and likely does not require a reply, but in an abundance of caution, the CNMI defendants offer the following:

It is frankly odd that plaintiff, the master of his own complaint, would move at this time to transfer venue to another district court. But it is not unheard of.

> Most courts have accepted the view that plaintiffs, like defendants, may seek a transfer for the convenience of the parties and in the interest of justice. In order to prevail, a plaintiff must show that circumstances have changed since the filing of suit. *See Washington Public Utility Group v. U.S. District Court*, 843 F.2d 319, 327 (9th Cir.1987); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219 (7th Cir.1986); *Leiker v. Jarvis Products Corp.*, 1990 WL 112974 at *1 (D.Kan. Jul. 10, 1990); *Haren-Christensen Corp. v. M.S. Frigo Harmony*, 477 F.Supp. 694, 698 (S.D.N.Y.1979); *Weltman v. Fletcher*, 431 F.Supp. 448, 450 & n. 2 (N.D.Ohio 1976). *But cf. American Home Assurance Co. v. Glovegold, Ltd.*, 153 F.R.D. 695 (M.D.Fla.1994) (rejecting "change of circumstances" requirement); *Central Hudson Gas & Electric Corp. v. Empresa Naviera Santa, S.A.*, 769 F.Supp. 208, 209 (E.D.La.1991) (same).

*Moto Photo, Inc. v. K.J. Broadhurst Enterprises, Inc.*, not reported in F.Supp.2d, 2003 WL 298799, *3 (N.D.Tex. 2003); *see also Hillard v. Guidant Corp.*, 76 F. Supp.2d 566 (M.D. Pa. 1999) (while plaintiff's motion to transfer venue is authorized, transfer denied because inconvenience to witnesses not shown); *and see Ferrostaal, Inc. v. M/V Eagle*, not Reported in F.Supp.2d, 2003 WL 21496689 (S.D.N.Y. 2003) (plaintiff failed to establish change of circumstances warranting transfer of action).

**Transfer of Venue Factors**

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a).

> To support a motion for transfer, the moving party must establish: (1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that the transfer will serve the convenience of the parties and witnesses and will promote the interests of justice. *See Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F.Supp. 503, 506 (C.D.Cal.1992). A motion to transfer lies within the broad discretion of the district court, and must be determined on an individualized basis. *See Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir.2000).
>
> In determining the convenience of the parties and witnesses and the interests of justice, a Court may consider a number of factors including: (1) the plaintiff's choice of forum; (2) the convenience of the parties; (3) the convenience of the witnesses; (4) ease of access to the evidence; (5) familiarity of each forum with the applicable law; (6) feasibility of consolidation of other claims; (7) any local interest in the controversy; and (8) the relative court congestion and time of trial in each forum. *Id.* at 498-99.

*Gerin v. Aegon USA, Inc.*, 2007 WL 1033472 *3, 4 (N.D.Cal.2007). "Weighing of the factors for and against transfer involves subtle considerations and is best left to the discretion of the trial judge." *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979). *See also Ventress v. Japan Airlines*, --- F.3d ----, 2007 WL 1192010 *5 (9th Cir. 2007).

### (1) The Plaintiff's Choice of Forum

As the party who chose the venue originally, Bradshaw's preferences as to his choice of forum now are of little consequence in the determination.

> Ordinarily, the plaintiff's choice of forum is "highly esteemed." *See N2 Consulting[, LLC v. Engineered Fastener Co.]*, 2002 WL 31246770 at *2 [(N.D.Tex. Oct. 2, 2002)], quoting *Aguero v. Christopher*, 481 F.Supp. 1272, 1275 (S.D.Tex.1980). However, this factor becomes less significant where, as here, the plaintiff originally filed suit in another district. "It is one thing to give great weight to plaintiff's initial choice of forum, but it seems odd that a plaintiff who has chosen an improper forum should have great weight given to [its] second choice." *FPC Corp. v. Uniplast, Inc.*, 994 F.Supp. 945, 946 (N.D.Ill.1998), quoting 15 C. WRIGHT, A. MILLER & E. COOPER, FEDERAL PRACTICE AND PROCEDURE § 3848 at 394 (2d ed.1986). *See also Leiker[v. Jarvis Products Corp.]*, 1990 WL 112974 at *2 [(D.Kan. 1990)](if plaintiff's initial and subsequent choices of forum were accorded the same favored status, "a motion to transfer venue could become an unchecked tool for the plaintiff to shop among forums and between judges"). Consequently, this factor does not weigh in favor of or against transfer.

*Moto Photo*, 2003 WL 298799 at *4. It is appropriate that the burden should be on the plaintiff who chose the forum originally to show a change in circumstance where, as here, plaintiff may deny judge shopping, but admits that he is jury shopping.

> "[A] motion to transfer venue is not ordinarily granted at the request of the party who chose the forum in the first place." *Ferrostaal, Inc. v. Union Pacific Railroad Co.*, 109 F.Supp.2d 146, 151 (S.D.N.Y.2000) (quoting *Tucker Anthony, Inc. v. Bankers Trust Co.*, No. 93 Civ. 0257, 1994 U.S. Dist. LEXIS 128, at *19 (S.D.N.Y. Jan. 7, 1994)). As such, "when a plaintiff is a movant for a change of venue pursuant to 28 U.S.C. § 1404(a), he must show a change of circumstances that has taken place since the filing of suit in order to prevail, since the plaintiff initially chose the forum." *Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F.Supp. 1114, 1118 (S.D.N.Y.1969). "A plaintiff moving to transfer venue has already had an opportunity to choose the venue when filing the action. Therefore, a plaintiff moving to transfer must demonstrate, inter alia, that after the action was filed there was a change of circumstances that warrants transferring the action to the transferee forum." *Ferrostaal, Inc.*, 109 F.Supp.2d at 151.

*Ferrostaal, Inc. v. M/V Eagle,* 2003 WL 21496689 at *2.

1   Nothing has changed since this lawsuit was filed except that Bradshaw now realizes his case may
2   not be as palatable to a local jury as he thought it might be when it was going to be tried to a federal judge
3   without a jury. The only thing different now is that Bradshaw may be beginning to realize that he has
4   overstepped the bounds of propriety and civility by accusing local government officials of corruption and
5   conspiracy, and accusing the citizenry and government of the CNMI as a whole of racism, with no proof
6   more than conjecture and speculation.

7   The only reported decision from the Ninth Circuit discussing the question what weight to give the
8   plaintiff's views when it is the plaintiff who moves to transfer venue appears to be *Washington Public Utility*
9   *Group v. U.S. District Court*, 843 F.2d 319, 327 (9th Cir.1987). Contrary to the parenthetical description
10  provided by the district court for the Northern District of Texas in *Moto Photo*, the Ninth Circuit did not
11  expressly adopt the argument expressed by other courts that hold when a plaintiff seeks a transfer of venue
12  he must show a change of circumstances. *Cf. Harem-Christensen Corp. v. M.S. Frigo Harmony*, 477 F.Supp.
13  694, 698 (S.D.N.Y.1979) (when plaintiff is the movant he must show change in circumstances to prevail);
14  *Harry Rich Corp. v. Curtiss-Wright Corp.*, 308 F.Supp. 1114, 1118 (S.D.N.Y.1969) (plaintiffs seeking
15  change of venue must show change of circumstances). But it did not reject it, either. Rather, the Ninth
16  Circuit distinguished those cases on the basis that in the case before it, it was the defendant who was seeking
17  a transfer of venue, and the plaintiff merely joined in the motion. As the non-moving party, the plaintiff in
18  *Washington Public Utility Group* was not required to prove change of circumstance. So, the question
19  whether the plaintiff must prove a change of circumstances in order to justify his motion to transfer from
20  a venue he chose originally remains open in this Circuit.

21  It makes sense to apply a change of circumstances analysis, because it is obvious from his filings that
22  Bradshaw is forum shopping, not for the convenience of the parties or any witnesses, but for himself; and
23  not because the interests of justice require a transfer of venue, but because he fears he has already lost if he
24  has to try his claims before a local jury. That is not a legally cognizable basis that would warrant a transfer
25  of venue.

**(2) Convenience of the Parties**

While it may be more convenient for Bradshaw not to have to travel any further than from Idaho to Washington, none of the parties, plaintiff included, reside or do business in Washington State. The most plaintiff could say is that perhaps one or more defendants have flown through Washington. Bradshaw's "minimum contacts" analysis is irrelevant to the question of convenience of the parties. At least one defendant, former Attorney General Pamela Brown, still resides in the CNMI. The majority, if not entirety of non-party witnesses and potential experts whose expenses defendants may have to pay for travel and lodging all live in the CNMI. The attorneys for all the defendants except Jay Sorenson, who appears pro se, are residents of the CNMI. If the case were transferred to another district, the defendants' attorneys would have to appear pro hac vice and would be required to associate local counsel. *See* Local Rule for the Eastern District of Washington 83.2(c), available at http://www.waed.uscourts.gov/localrules/usdc_edwa.pdf ("There shall be joined of record in such appearance an associate attorney having an office in this state and admitted to practice in this court who shall sign all pleadings, motions, and other papers prior to filing and shall meaningfully participate in the case."). A transfer of venue would be terribly expensive and inconvenient for the defendants.

**(3) Convenience of the Witnesses**

Bradshaw's complaint and subsequent pleadings accuse local court and government officials of conspiracy. Doubtless, he intends to call Justice Castro as an adverse witness. If he does not, it may be necessary for one or more of the defendants to call him as a witness in order to rebut Bradshaw's spurious and slanderous allegations against Justice Castro. Bradshaw also claims there were shenanigans of some sort by the Attorney General's Office involving the court file in Superior Court case No. 96-1320, which will doubtless require testimony from the Superior Court Clerk's Office to rebut. Bradshaw has identified CNMI Assistant Attorney General Ed Buckingham as having knowledge of his claims of criminal wrongdoing by Bisom and Sorenson, and has identified unknown members of the CNMI Attorney General's Office as potential witnesses, all of whom reside in the CNMI. Bradshaw has failed to identify *any* witnesses by name

who reside in the State of Washington who have actual knowledge relevant to his claims against any of the CNMI defendants. Indeed, the only relevant information anyone in Washington might have that Bradshaw has alluded to involves alleged fraudulent postal receipts filed by Sorenson as evidence that Bradshaw had been served in the Bisom litigation, Superior Court Case No. 96-1320.

### (4) Ease of Access to the Evidence

All of the documentary evidence Bradshaw has ever pointed to as relevant in this case, except for a signature on an alleged fraudulent postal receipt by someone named "Manny," originated within the CNMI and is maintained in the ordinary course of business either in the Superior Court Clerk's Office, or in the Office of the Attorney General. None of the documentary evidence relevant to the claims in this case is located in Washington or anywhere else in the continental United States. Transfer of the trial of this case to anywhere outside the CNMI would involve enormous expense just in terms of access to documents.

### (5) Familiarity of Each Forum with the Applicable Law

Although couched in terms of civil rights violations, conspiracy, and RICO,[*] the essence of Bradshaw's claims against the CNMI defendants, former attorneys general and assistant attorneys general, is a claim for breach of fiduciary duty and legal malpractice, claims based on local law. Washington State certainly has no familiarity with CNMI law; but this Court does. The CNMI defendants are convinced that discovery will show that plaintiff has no factual or legal basis for any of his federal claims. Defendants predict that plaintiff's federal claims will be dismissed before trial, leaving nothing but local law claims which defendants submit should be dismissed as well pursuant to 28 U.S.C. § 1367(c).

---

[*] Upon reviewing LR 3.2 of the Local Rules for the Eastern District of Washington, available at http://www.waed.uscourts.gov/localrules/usdc_edwa.pdf, Bradshaw might want to reconsider either his request to transfer venue there, or whether it would even be feasible to pursue his RICO claims at all in the Eastern District of Washington. Local Rule 3.2 requires that an extremely detailed "RICO Case Statement" be filed with the court within ten days of the filing of the complaint or RICO claim. Based upon his filings in the case to-date, Bradshaw's RICO claims would *never* have survived this long in the Eastern District of Washington.

### (6) Feasibility of Consolidation of Other Claims

At first blush, this does not appear to be a factor. However, Bradshaw's claims of damages against the CNMI defendants are based on their alleged failure to represent and indemnify him in the Bisom litigation. Bisom's default judgment against him in the amount of $139,000 has been set aside by Superior Court Judge Lizama, *see* http://www.cnmilaw.org/pdf/superior_court/05-12-29-CV96-1320.pdf, and is the subject of an ongoing appeal in the CNMI Supreme Court, Case No. 06-0006. The measure of damages Bradshaw would be entitled to against the CNMI defendants for failure to represent and indemnify him in the Bisom litigation, assuming he were successful in the case at bar, is directly dependent upon the decision of the CNMI Supreme Court upholding or reversing Judge Lizama's decision. For that reason, defendants respectfully submit that consideration of *Younger* abstention is still appropriate, or, in the alternative, that a trial of this case should be stayed pending the outcome of Bisom's appeal from Judge Lizama's order setting aside the default judgment against Bradshaw.

### (7) Local Interest in the Controversy

Bradshaw has made serious unsubstantiated allegations of corruption and racism throughout the CNMI, characterizing numerous past and present government officials in the CNMI government of all manner of sordid deeds. If he has proof, let him show it, and let him trust to the federal judicial system to vindicate his federal rights if his claims have merit. Considering the seriousness of the allegations against them for actions taken within the CNMI, the defendants are entitled to a jury of their peers *from* the CNMI. Bradshaw has thrown down the gauntlet before every citizen of the CNMI. He should not be permitted to seek sanctuary in the continental United States as the day approaches when he must prove his case against the CNMI.

### (8) Relative Court Congestion and Time of Trial in Each Forum

The plaintiff has not addressed this factor, and the Court is likely in the best position to assess it. If the undersigned is reading it correctly, according to a statistical report generated by the United States Administrative Office of Reports, available at http://www.uscourts.gov/judbus2006/appendices/c3a.pdf (last

7

checked April 27, 2007), during the 12 month period ending September 30, 2006 the U.S. District Court for the Eastern District of Washington had 2,358 total civil cases pending, while the U.S. District Court for the Northern Mariana Islands 67. The Eastern District of Washington has four active judges, three senior judges and two magistrates. See http://www.waed.uscourts.gov/courtinfo/judges.html. The undersigned hesitates to speculate, and the Court is, of course, the best judge of its own docket, but the likelihood of this case being resolved and disposed of promptly is greater in the CNMI than in the Eastern District of Washington.

Another factor weighing against transfer is the potential for further unnecessary delay. *See Allen v. Scribner*, 812 F.2d 426, 436-37 (9th Cir. 1987) ("Because the transfer of this case undoubtedly would have led to delay, the district court did not abuse its discretion in denying Allen's motion notwithstanding possible inconvenience to the witnesses." *See also CFTC v. Savage*, 611 F.2d 270, 279 (9th Cir. 1979) (that "[t]he district court was familiar with the case and transfer may have led to delay" justified refusal to transfer). This case has gone on far too long, with far too many defendants, and far too many frivolous claims. Discovery has commenced and defendants anticipate filing motions for summary judgment at the earliest practicable opportunity once discovery is concluded.

**Additional Considerations - Pretrial Publicity**

Finally, Bradshaw is concerned about carryover pre- and post-trial publicity from the Bisom litigation seven years ago in local court, but he offers no proof of any actual prejudice on the part of potential jurors other than some dated newspaper articles describing allegations and testimony in that case. *Cf. Washington Public Utility Group*, 843 F.2d at 326 ("When the trial judge becomes aware through massive news coverage that a fair trial cannot be had in the place where the action was filed, the judge has a duty to protect the defendant's rights to a fair trial. *See e.g., Sheppard v. Maxwell*, 384 U.S. 333, 363, 86 S.Ct. 1507, 1522, 16 L.Ed.2d 600 (1966) ('where there is a reasonable likelihood that prejudicial news prior to trial will prevent a fair trial, the judge should continue the case until the threat abates, or transfer it to another county not so permeated with publicity')."). There is no current threat of prejudicial news reporting that would prevent a fair trial, except to the degree that Bradshaw keeps bringing up old news and making an issue over matters

long forgotten by everybody else. More importantly, there is nothing to suggest that this Court cannot, through proper voir dire questioning of the jury pool, ascertain whether there is pre-trial prejudice to such a degree that a fair and unbiased jury cannot be selected when the time comes. This is certainly true in the context of criminal trials where the stakes are obviously higher.

> It is not required, however, that the jurors be totally ignorant of the facts and issues involved. In these days of swift, widespread and diverse methods of communication, an important case can be expected to arouse the interest of the public in the vicinity, and scarcely any of those best qualified to serve as jurors will not have formed some impression or opinion as to the merits of the case. This is particularly true in criminal cases. To hold that the mere existence of any preconceived notion as to the guilt or innocence of an accused, without more, is sufficient to rebut the presumption of a prospective juror's impartiality would be to establish an impossible standard. It is sufficient if the juror can lay aside his impression or opinion and render a verdict based on the evidence presented in court.

*Irvin v. Dowd*, 366 U.S. 717, 722-23 (1961) (citations omitted). At this point in this *civil* litigation, and without more, Bradshaw's fears of pre-trial prejudice as ground for a change of venue are unfounded.

**CONCLUSION**

Transferring this case to another district where the judge is unfamiliar with case or local law; where not one party to the case lives; where no identified witnesses reside; and where none of the documentary evidence is located makes no sense, and is anything but convenient and is a waste of judicial resources. Bradshaw's Motion for Change of Venue is due to be denied.

Respectfully submitted this 30th day of April, 2007.

        OFFICE OF THE ATTORNEY GENERAL
        MATTHEW T. GREGORY
        Attorney General

        /s/ Robert M. Weinberg
        ROBERT M. WEINBERG
        Assistant Attorney General

        Attorneys for CNMI Defendants Commonwealth of the Northern Mariana Islands, Nicole C. Forelli, William C. Bush, D. Douglas Cotton, L. David Sosebee, Andrew Clayton, and Pamela S. Brown

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(d), the undersigned declarant states as follows:

1.  I am eighteen years of age or older, and I certify that I caused to be served the following documents to the last known address(es) listed below on the date(s) indicated.

2.  As set forth below, this service was accomplished by personal delivery; U.S. Mail; deposit with Clerk of Court (in attorney box), cf. Fed. R. Civ. P. 5(b)(2)(D); or electronic service, see Local Rule 5.1.

| | | |
|---|---|---|
| Robert D. Bradshaw<br>P. O. Box 473<br>1530 W. Trout Creek Road<br>Calder, ID  83808-0473 | Plaintiff, pro se<br>Tel:  (208) 245-1691<br>Fax:  N/A | **Via U.S. Mail** |
| Mark B. Hanson, Esq.  # F0261<br>Macaranas Building, 1st Floor<br>Beach Road, Garapan<br>PMB  738, P. O. Box 10,000<br>Saipan, MP  96950-8900 | Attorney for Defendant Bisom<br>Tel:  (670) 233-8600<br>Fax:  (670) 233-5262<br>E-mail:  mark@saipanlaw.com | **Via Electronic Service** |
| Jay H. Sorensen, Esq.  # F0127<br>c/o Shanghai, China<br>P. O. Box 9022<br>Warren, MI  48090-9022 | Defendant, pro se<br>Tel:  (86) 21-5083-8542   Fax:  same<br>E-mail:  subpar@fastmail.cn | **Via E-Mail** |

3.  I declare under penalty of perjury that the foregoing is true and correct.

This 30th day of April, 2007.

/s/  Robert M. Weinberg
ROBERT M. WEINBERG
Assistant Attorney General